## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ORDER AUTHORIZING (A) CONTINUED USE OF CASH MANAGEMENT SYSTEM; (B) MAINTENANCE OF EXISTING BANK ACCOUNTS; (C) CONTINUED USE OF EXISTING BUSINESS FORMS; (D) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS AND GRANT OF ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS; AND (E) INTERIM WAIVER OF <u>SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS</u>

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order (the "Order"), substantially in the form annexed hereto as Exhibit A, pursuant to sections 105, 345, 363, 364(a), 503(b), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing (a) solely to the extent permitted under the DIP Facility (defined below), the Debtors to (i) continue to use their Cash Management System (defined below), (ii) maintain existing Credit Cards and Bank Accounts (each as defined below), authorizing a waiver of certain operating guidelines relating to bank accounts, and (iii) continue

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

to use existing Business Forms (defined below), (b) an interim waiver of the deposit and

investment requirements of section 345(b) of the Bankruptcy Code, and (c) continued

performance of  Intercompany Transactions and grant of administrative expense status for

postpetition Intercompany Claims (defined below).   The Debtors also request that this Court

authorize all Banks (defined below) with which the Debtors maintain accounts to continue to

maintain, service, and administer such accounts on behalf of such Debtors.  In support of the

Motion, the Debtors rely upon and incorporate by reference the *Declaration of  Kevin Carmody*

*in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day

Declaration"), which was filed concurrently herewith.  In further support of this Motion, the

Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the

relief requested herein are sections 105, 345, 363, 364(b), 503(b), 1107(a), and 1108 of the

Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, and 9007, and Local Rule 2015-2 .

## BACKGROUND

### A.    General Background

2.    On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.    Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these cases.

4.    Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

### B.    The Debtors' Cash Management System

5.    The Debtors' business requires the collection, payment, and transfer of funds through numerous bank accounts.  In the ordinary course of business and prior to the Petition Date, the Debtors maintained a centralized cash management system (the "Cash Management System").  Like other large businesses, the Debtors designed their Cash Management System to efficiently collect, transfer, and disburse funds generated through the Debtors' operations and to accurately record such collections, transfers, and disbursements as they are made.  The Debtors' financial personnel manage the Cash Management System from the Debtors' treasury department in Dayton, Ohio.  The Debtors' Cash Management System is comprised of

approximately 40 bank accounts.  Each general category of accounts is described below and a

diagram of the Cash Management System is annexed hereto as Exhibit B.[2]

6.      The Cash Management System includes the following corporate debit and credit

cards (together, the "Credit Cards") and bank accounts (together, the "Bank Accounts") at

various banks (the "Banks") listed in the schedule annexed hereto as Exhibit C:

    a.      *Depository Accounts*.  The Debtors maintain several depository accounts (the "Depository Accounts").  These accounts are used to deposit funds into the Debtors' Cash Management System.  The Depository Accounts are zero balance accounts ("ZBAs").  Excess funds remaining in these Depository Accounts at the end of each day are swept into the Debtors' Concentration Accounts.

    b.      *Concentration Accounts.*  Funds from the Depository Accounts, Payroll Accounts, A/P Accounts, Postage Accounts, and various other accounts are swept daily to and from concentration accounts (the "Concentration Accounts") maintained at Bank of America, N.A. by Debtor Standard Register.

    c.      *Payroll and A/P Accounts*.  The Debtors maintain various accounts for payroll and accounts payable (the "Payroll Accounts" and the "A/P Accounts").  The ZBA Payroll Accounts and A/P Accounts are funded from the relevant Concentration Accounts as checks are presented for payment.

    d.      *Postage Payment Accounts*.  The Debtors maintain a variety of accounts to fund postage obligations (the "Postage Payment Accounts") on behalf of their customers.   Cash is deposited into these accounts from the Concentration Accounts as needed to pay for the Debtors' postage needs.  Some of the cash used to fund the Postage Payment Accounts was deposited with the Debtors by their customers and co-mingled in the Concentration Accounts before being transferred into the Postage Payment Accounts.

    e.      *Credit Cards*.  The Debtors maintain approximately 1,100 corporate debt and credit cards issued by Bank of America, N.A. and Fifth Third Bank

---

[2]     Debtor Standard Register acquired WorkflowOne, LLC in 2013.  Although the two legal entities subsequently merged, the legacy WorkflowOne account structure is still in use with respect to the WorkflowOne side of the business.  As a result, the Debtors have two account structures that largely operate independently from one another.

for business and travel expenses. The credit card balances are paid through ACH transfer from one of the Concentration Accounts.

    f.    *Other Accounts*.  The Debtors maintain a variety of other ZBA and stand-alone accounts that are used to pay taxes, pay insurance obligations, fund employee benefit plans, and make various other disbursements.

7.    Certain of the accounts used in connection with the Debtors' Mexico operations are maintained at a non-U.S. financial institution in Mexico and an account used in connection with the Debtors' Canada operations are maintained at a non-U.S. financial institution in Canada.

8.    The Cash Management System is a mainstay of the Debtors' ordinary, usual, and essential business practices.  The Debtors' system provides numerous benefits, including the ability to (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control corporate funds; (b) ensure cash availability and prompt payment of corporate, employee and vendor related expenses; and (c) reduce administrative costs by facilitating the efficient movement of funds.

**C.    The Debtors' Existing Business Forms and Check Stock**

9.    In the ordinary course of business, the Debtors use a variety of checks and business forms.  To minimize expenses to their estates and avoid unnecessarily confusing their employees, customers, and suppliers, the Debtors believe it is appropriate to continue to use all checks, correspondence, and other business forms (including, without limitation, letterhead, purchase orders, and invoices) (collectively, the "Business Forms") as such forms were in existence immediately before the Petition Date—without reference to the Debtors' status as debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms. With respect to checks, the Debtors print their own checks. Upon exhaustion of the Debtors' existing check stock, the Debtors will print new checks inclusive of a reference to the Debtors' status as debtors in possession.

**D.**     **The Debtors' Intercompany Transactions**

10.     Prior to the Petition Date, in the ordinary course of their business, the Debtors engaged in intercompany transactions and transfers (the "Intercompany Transactions").  The Intercompany Transactions may result in intercompany receivables and payables (the "Intercompany Claims").  In general, the Debtors engage in three primary types of Intercompany Transactions:

11.     **Central Receipts and Disbursements**.  In the ordinary course of business, Debtor Standard Register pays for inventory and supplies and, in some cases, collects receivables on behalf of its affiliates.  The Debtors' records of Intercompany Transactions reflect the net position of both receipts and disbursements received by or made on behalf of each of the Debtors.

12.     **Centrally Billed Expenses**.  In the ordinary course of business, the Debtors and their affiliates incur centrally billed expenses, including insurance premiums, workers' compensation obligations, advertising expenses, shipping and transportation charges, and other expenses necessary to operate the business.  Debtor Standard Register pays these expenses and then allocates them or a portion thereof to the appropriate affiliates.

13.     **Intercompany Funding**.  In the ordinary course of business, certain of the Debtors' non-Debtor affiliates require capital advances in order to meet their working capital needs.  These capital advances are then repaid as funds become available for repayment in the ordinary course of business.

14.     The Debtors track all Intercompany Transactions in their accounting system and can ascertain, trace, and account for them as needed.  If the Intercompany Transactions were discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' detriment.  Accordingly, the Debtors seek authority to continue the

Intercompany Transactions, and request, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, that postpetition Intercompany Claims resulting from ordinary course Intercompany Transactions be accorded administrative priority.  As described in more detail below, discontinuing the Intercompany Transactions would disrupt the Debtors' estates, harming their creditors and other parties in interest.

**E.    The Debtors' Depository Policies and Practices**

15.    Prior to the Petition Date, in the ordinary course of their business, the Debtors developed policies and practices for deposits ("Prepetition Practices") of excess funds within the Cash Management System.  In particular, under the Prepetition Practices, excess funds within the Cash Management System are either (a) maintained in domestic bank accounts below amounts insured by the United States (through FDIC or FSLIC), (b) maintained in domestic banks that have signed Uniform Depository Agreements with the United States Trustee for Region Three,[3] or (c) used to pay down outstanding loan balances.

16.    The Debtors seek an interim waiver for 60 days of section 345(b) of the Bankruptcy Code.  The waiver would permit the Debtors to maintain their Bank Accounts without posting a bond or other security, as would otherwise be required under section 345(b), while the Debtors take steps to comply with the requirements of the Bankruptcy Code if necessary.

**RELIEF REQUESTED**

17.    The Debtors seek entry of an order, pursuant to Bankruptcy Code sections 105, 345, 363, 364(b), and 503(b), Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, authorizing (a) continued use of their Cash Management System (including as required under the

---

[3]    Santander Bank, at which the Debtors maintain a relatively small Bank Account, has not yet signed Uniform Depository Agreements with the United States Trustee for Region Three.

Debtors' proposed postpetition lending facilities (together, the "DIP Facility") and in accordance

with the budget (the "DIP Budget")) and the payment of related prepetition obligations,

(b) maintenance of existing Bank Accounts, including a waiver of certain operating guidelines

relating to bank accounts, (c) continued use of existing Business Forms, (d) continued

performance of Intercompany Transactions and grant of administrative status for postpetition

Intercompany Claims, and (e) an interim waiver of the deposit and investment requirements of

section 345(b) of the Bankruptcy Code to the extent they apply to any of the Debtors' Bank

Accounts.

18.     To enable the Debtors to carry out the relief requested, the Debtors also request

that the Court authorize their cash management banks to continue to service and administer the

Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in

the usual and ordinary course, and to receive, process, honor and pay any and all checks and

drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition

Date by the holders or makers thereof, as the case may be, in accordance with the orders of this

Court.

**BASIS FOR RELIEF REQUESTED**

**A.      Continued Use of the Cash Management System Is Essential to the Debtors'
        Business Operations**

19.     In light of the substantial size and complexity of the Debtors' operations, the

maintenance of the Debtors' current Cash Management System is important for the preservation

and enhancement of the value of the Debtors' business.

20.     The Debtors' request for authorization to continue to use their Cash Management

System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in

possession to "use property of the estate in the ordinary course of business, without notice or a

01:16770675.6

hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession

with the flexibility to engage in the ordinary transactions required to operate its business. *See,*

*e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also In re Nellson Nutraceutical,*

*Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of section 363(c) is

a debtor's ability to continue the routine transactions necessitated by its cash management

system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447,

1453 (10th Cir. 1996). Nevertheless, the Debtors bring this Motion out of an abundance of

caution, to the extent any aspect of the Cash Management System could be considered as outside

the ordinary course of business for purposes of section 363(c).

21.     Courts in this and other districts have noted that an integrated cash management

system "allows efficient utilization of cash resources and recognizes the impracticalities of

maintaining separate cash accounts for the many different purposes that require cash." *In re*

*Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997

F.2d 1039 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d

1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer

more efficiently and effectively its financial operations and assets"). The United States Court of

Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain

separate accounts "would be a huge administrative burden and economically inefficient." *In re*

*Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993). For these reasons, the Debtors

should be permitted to continue their Cash Management System.

22.     The Cash Management System has been used by the Debtors for many years and

is a customary and essential business practice. The widespread use of such systems

demonstrates the numerous benefits they provide, including the ability to control and monitor

corporate funds, invest idle cash, ensure cash availability, and reduce administrative expenses by

facilitating the movement of funds.  In light of the size and complexity of the Debtors'

operations, the value of the Debtors' estates cannot be maximized if the Cash Management

System is substantially disrupted.  In addition, subject to the terms of the DIP Facility, certain

Bank Accounts in the Cash Management System may be subject to a cash dominion structure

whereby cash will be swept from certain accounts on a daily basis into a collection account in the

name of the agent under the revolving portion of the DIP Facility and applied to outstanding

obligations in accordance with the financing orders approving the DIP Facility.  Furthermore,

preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that

inevitably would be associated with any substantial disruption of the Cash Management System

will facilitate the stabilization of the Debtors' business operations.

23.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash

Management System, including the Bank Accounts, because the Debtors have implemented

appropriate mechanisms to ensure that unauthorized payments will not be made on account of

obligations incurred prior to the Petition Date.  Specifically, with the assistance of their

professionals and consistent with prior practice, the Debtors will continue to maintain detailed

records of all transfers of cash and record all transactions on applicable accounts.  Therefore, the

Debtors should be permitted to continue to manage their cash and transfer monies among the

Bank Accounts in accordance with the Cash Management System.

24.     In complex chapter 11 cases such as these have granted substantially similar

relief.  *See, e.g.*, *In re Brookstone Holdings Corp*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4,

2014); *In re F & H Acquisition Corp.*, No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013); *In re

Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Jan. 24, 2013); *In re

*Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); *In re THQ Inc.*, No.

12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012); *In re Delta Petroleum Corp.*, No. 11-14006

(KJC) (Bankr. D. Del. Dec. 16, 2011).  Similar authorization is appropriate in these Chapter 11

Cases.

**B.      The Court Should Authorize the Debtors to Maintain Existing Bank Accounts**

25.      The Office of the United States Trustee ("U.S. Trustee") has established several

operating guidelines for chapter 11 debtors in possession, including a requirement that the debtor

in possession open new bank accounts and close all existing accounts.  This requirement was

designed to provide a clear line of demarcation between prepetition and postpetition claims and

payments and to help protect against the inadvertent payment of prepetition claims.  The U.S.

Trustee's guidelines also require opening a separate operating account and a special tax payment

account into which all funds (including funds held in trust for employee tax withholdings) that

may be collected and/or payable during the pendency of a debtor's case will be deposited.  This

requirement is meant to provide cash collateral for, and ensure payment of, certain priority tax

claims such as federal and state payroll taxes and sales taxes.

26.      To avoid substantial disruption to the normal operation of their business and to

preserve a "business as usual" atmosphere, the Debtors request that they be permitted to continue

to use the existing Bank Accounts without establishing separate accounts for cash collateral or

tax payments.  Allowing the Debtors to maintain the Bank Accounts will assist them in

accomplishing a smooth transition to operations under chapter 11.  Moreover, the Debtors can

distinguish between prepetition and postpetition obligations and payments without closing the

Bank Accounts and opening new ones.  Additionally, all Banks with which the Debtors maintain

the Bank Accounts will be immediately advised not to honor checks, advises, drafts, or other

requests for payment issued prior to the Petition Date, unless (a) otherwise expressly permitted

by this Order, as represented to the Banks by the Debtors as set forth below, (b) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors; and (c) supported by sufficient funds in the Bank Account in question.  Therefore, the goals of the U.S. Trustee guidelines can be satisfied, and the Debtors' creditors can be protected, without closing the Bank Accounts.

27.     In addition, the Debtors are current on all of their known priority tax obligations and have strict systems in place to make sure that these claims are satisfied on a timely basis. Altering the Bank Account structure would interrupt these systems, thereby significantly disrupting the Debtors' business operations and jeopardizing the Debtors' prompt and timely payment of employee taxes and other priority tax obligations.  The Debtors' systems provide the protections required by the U.S. Trustee guidelines—ensuring payment of taxes—without requiring the creation of new accounts and payment procedures.

28.     Thus, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, automated clearing house payments ("ACH Payments") and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH Payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; *provided*, *however*, that any check, advise, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise

presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

29.     The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of the Motion either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  Both as part of the Motion and in other motions that have been concurrently filed, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations.  With respect to some of these obligations, the Debtors issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the Debtors will create the relevant check once the Court enters an order permitting the Debtors to do so.  The Debtors intend to inform the Banks which such checks should be so honored.  Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

30.     In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees").  The Debtors respectfully request that the Court authorize the Banks to (a) continue to charge the Debtors the Bank Fees and (b) charge-

back returned items to the Bank Accounts in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.  The Debtors further request that the Court order that the liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective Bank at which the Bank Account is located.

31.      Although the Debtors are requesting the waiver of the requirement that they close all Bank Accounts and open new debtor-in-possession bank accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of the estate.  Subject to the DIP Facility and except as otherwise provided in the Order, nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion, or as required by any debtor in possession financing agreements that are approved by the Court; *provided*, *however*, that any new domestic account is established at a bank that is insured with the FDIC or the FSLIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the U.S. Trustee's List of Authorized Bank Depositories for the District of Delaware.

32.      Consistent with the relief courts in this District have granted in other chapter 11 cases, the Debtors' continued use of the Bank Accounts should be authorized.  *See, e.g.*, *In re Brookstone Holdings Corp*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re F & H Acquisition Corp.*, No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013); *In re Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Jan. 24, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); *In re THQ Inc.*, No. 12-

13398 (MFW) (Bankr. D. Del. Dec. 20, 2012); *In re Delta Petroleum Corp.*, No. 11-14006

(KJC) (Bankr. D. Del. Dec. 16, 2011).

**C.      The Debtors Should be Authorized to Use Existing Check Stock and Related
         Business Forms**

33.      Local Bankruptcy Rule 2015-2(a) provides:

Where the debtor uses pre-printed checks, upon motion of the debtor, the Court
may, without notice and hearing, permit the debtor to use its existing checks
without the designation "Debtor-in-Possession" and use its existing bank
accounts.  However, once the debtor's existing checks have been used, the debtor
shall, when reordering checks, require the designation "Debtor-in-Possession" and
the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

34.      The Debtors use numerous Business Forms in the ordinary course of their

business.  In order to minimize expenses to their estates, the Debtors request authority to

continue using their existing prepetition Business Forms without reference to their status as

debtors in possession or any other alteration.  It is essential that the Debtors be authorized to

continue using their existing Business Forms because they routinely deal with a large number of

vendors and customers, and changing business forms would impose a substantial burden without

corresponding benefit.  With respect to checks, upon exhaustion of the Debtors' existing check

stock, the Debtor will print all checks inclusive of the legend "Debtor in Possession."

35.      Courts in this District have routinely granted the same or similar relief as

requested in the Motion to chapter 11 debtors.  *See, e.g.*, *In re A123 Sys., Inc.*, Case No. 12-

12859 (KJC) (Bankr. D. Del. Oct. 18, 2012) (granting interim relief); *In re WP Steel Venture*

*LLC*, No. 12-11661 (KJC) (Bankr. D. Del. Jun. 1, 2012); *In re DSI Holdings, Inc.*, Case No. 11-

11941 (KJC) (Bankr. D. Del. June 28, 2011); *In re Friendly Ice Cream Corp.*, Case No. 11-

13167 (KG) (Bankr. D. Del. Oct. 6, 2011); *In re Neb. Book Co.*, Case No. 11-12005 (PJW)

(Bankr. D. Del. June 28, 2011); *In re L.A. Dodgers LLC*, Case No. 11-12010 (KG) (Bankr. D.

Del. June 28, 2011).

**D.      Cause Exists to Permit Continued use of Intercompany Transactions and Postpetition Intercompany Claims Should Be Given Administrative Priority Status**

36.      As described above, the Debtors enter into certain Intercompany Transactions in

the ordinary course of business.  The Intercompany Transactions reduce the administrative costs

incurred by the Debtors.  If the Intercompany Transactions were to be discontinued, the Cash

Management System and related administrative controls would be disrupted.

37.      The continuation of the Intercompany Transactions will not prejudice the

Debtors' estates or their creditors.  Furthermore, the Debtors maintain strict records of all

transfers of cash and can readily account for all Intercompany Transactions.  Accordingly, the

Debtors believe that continuation of the Intercompany Transactions is in the best interests of the

Debtors' estates and creditors.

38.      Because the Debtors engage in Intercompany Transactions on a regular basis and

such transactions are common among similar enterprises, the Debtors believe the Intercompany

Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the

Bankruptcy Code and, therefore, do not require the Court's approval.  Nonetheless, out of an

abundance of caution, the Debtors are seeking express authority to engage in such transactions

on a postpetition basis.  The continued performance of the ordinary course Intercompany

Transactions is necessary to ensure the Debtors' ability to operate their business after the Petition

Date.

39.      To ensure that each individual Debtor will not fund, at the expense of its own

creditors, the operations of another Debtor, the Debtors respectfully request that, pursuant to

sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims arising after the

01:16770675.6

Petition Date be awarded administrative expense priority status. If all Intercompany Claims against the Debtors are accorded administrative expense priority status, each entity will continue to bear the ultimate payment responsibility for such ordinary course transactions.

40.    Section 503(b)(1) of the Bankruptcy Code provides, in pertinent part, that after notice and a hearing "there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate including – wages, salaries, and commissions for services rendered after the commencement of the case . . . ." 11 U.S.C. § 503(b)(1). Administrative expense treatment for intercompany transactions has been granted in other comparable chapter 11 cases in this District and should be granted here. *See, e.g.*, *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Jan. 30, 2013); *In re Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) (Bankr. D. Del. Jan. 24, 2013); *In re THQ Inc.*, No. 12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012); *In re PMI Grp., Inc.*, No. 11-13730 (BLS) (Bankr. D. Del. Jan. 6, 2012); *In re William Lyon Homes*, No. 11-14019 (CSS) (Bankr. D. Del. Dec. 20, 2011).

**E.    Cause Exists to Grant an Interim Waiver of Section 345(b) to Allow the Debtors to Continue Use of Their Cash Management System Without the Need to Post a Bond or Provide Other Security**

41.    Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U.S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303. *See* 11 U.S.C. § 345(b). Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved

investment guidelines "for cause." *Id.*; s*ee also In re Serv. Merch. Co.*, 240 B.R. 894, 896

(Bankr. M.D. Tenn. 1999).  Moreover, Local Rule 2015-2 provides that, if a motion for waiver

of the section 345 requirements is filed on the first day of a chapter 11 case, the Court may grant

an interim waiver of the section 345 requirements until such motion is heard.  *See* Local Rule

2015-2.

      42.     In *Service Merchandise*, the court identified the following factors for determining

whether cause exists to waive the requirements of Bankruptcy Code section 345(b):

(a)     the sophistication of the debtor's business;

(b)     the size of the debtor's business operations;

(c)     the amount of investments involved;

(d)     the bank ratings of the financial institutions where the debtor's funds are held;

(e)     the complexity of the case;

(f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     the benefit to the debtor of current practices;

(i)     the harm, if any, to the estate; and

(j)     the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.

*Service Merchandise*, 240 B.R. at 896.  Examining these factors, the *Service Merchandise* court

concluded that "cause" existed in that case because the debtors were "large, sophisticated

[companies] with a complex cash management system," with the ability to shift money as needed

to insure the safety of their funds.  *Id.*  Moreover, the benefits to the debtor of waiving the

section 345(b) requirements far outweighed any potential harm to the estate, and the failure to

waive the requirements "would needlessly handcuff this debtor's reorganization efforts."  *Id.* at 896-97.

43.     As in *Service Merchandise*, the Debtors operate a sophisticated enterprise with a complex Cash Management System that provides the Debtors with the ability to transfer funds rapidly to ensure their safety.  In light of the *Service Merchandise* factors and the safety of the institutions that the Debtors propose to utilize as a continuation of their Prepetition Practices, the Debtors believe that sufficient cause exists to allow deviation from the investment guidelines set forth in section 345(b) of the Bankruptcy Code.  Satisfaction of those requirements would impose needless costs on the Debtors' estates and the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business.

44.     The Debtors hereby request that this Court grant them a 60-day extension of the time to comply with the investment requirements of section 345 and authorize the Debtors to continue investing their excess funds in accordance with the Prepetition Practices.  During the extension period, the Debtors propose to discuss with the Office of the U.S. Trustee what modifications to their Prepetition Practices, if any, would be appropriate under the circumstances.

45.     Courts in this District have granted relief similar.  *See, e.g.*, *In re Ambient Corp.*, Case No. 14-11791 (KG) (Aug. 11, 2014) (waiving 345(b) deadline); *In re Natrol, Inc.*, Case No. 14-11446 (BLS) (June 23, 2014) (granting a 75-day waiver of the 345(b) deadline); *In re Altegrity, Inc.*, Case No. 15-10226 (LSS) (Feb. 10, 2015) (granting a 60-day waiver of the 345(b) deadline); *In re Trump Entm't Resorts, Inc.*, Case No. 14-12103 (KG) (Sept. 10, 2014) (same); *In re Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (June 18, 2013) (same).

**F.      The Court Should Authorize Applicable Banks to Continue to Service and Administer the Debtors' Bank Accounts**

46.      In connection with the foregoing, the Debtors respectfully request that the Court

(a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers

issued by the Debtors in accordance with this Motion, without regard to whether any checks or

transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the

representations of the Debtors with respect to whether any check or transfer issued or made by

the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and

other financial institutions having no liability to any party for relying on such representations by

the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or

transfers to the extent any checks or transfers that are issued and authorized to be paid in

accordance with this Motion are dishonored or rejected by the Banks.

**G.      Immediate Relief Is Justified**

47.      Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after

the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation

regarding property of the estate" only if such relief is necessary to avoid immediate and

irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the

absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a

going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990)

(discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule

4001).

48.      Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief

requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike

Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or

threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions.  *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

49.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization for the relief requested herein.

50.     Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

51.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

52.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## DEBTORS' RESERVATION OF RIGHTS

53.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' right to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

## NOTICE

54.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; (vi) the Banks; and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:16770675.6

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as the Court may deem just and proper.

Dated:   March 12, 2015
            Wilmington, Delaware

*/s/ Maris J. Kandestin*

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. ___ |

**ORDER AUTHORIZING (A) CONTINUED USE OF CASH MANAGEMENT SYSTEM; (B) MAINTENANCE OF EXISTING BANK ACCOUNTS; (C) CONTINUED USE OF EXISTING BUSINESS FORMS; (D) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS AND GRANT OF ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS; AND (E) INTERIM WAIVER OF <u>SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS</u>**

Upon the *Debtors' Motion for Order Authorizing (a) Continued Use of Cash Management System; (b) Maintenance of Existing Bank Accounts; (c) Continued Use of Existing Business Forms; (d) Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Grant of Administrative Expense Status for Postpetition Intercompany Claims; and (e) Interim Waiver of Section 345(b) Deposit and Investment Requirements* (the "<u>Motion</u>")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]   All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

having found that venue of these cases and the Motion in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b); and the Court having found that notice of the Motion has been

given as set forth in the Motion and that such notice is adequate and no other or further notice

need be given; and the Court having determined that it may enter a final order consistent with

Article III of the United States Constitution; and upon consideration of the First Day Declaration;

and a hearing having been held to consider the relief requested in the Motion; and upon the

record of the hearing and all of the proceedings had before the Court; and the Court having found

and determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates, their creditors and all other parties in interest; and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is GRANTED as set forth herein, *nunc pro tunc* to the Petition Date.

2.       The Debtors are authorized, but not directed, to continue using the Cash

Management System as described in the Motion, subject to the limitations in this Order and

solely to the extent permitted under the terms of the DIP Facility.  The Debtors may transfer

funds into, out of, and through the Cash Management System, using ordinary transfer methods in

accordance with the Debtors' prepetition practices, consistent with the cash dominion or other

provisions of the DIP Facility.  Any change to the Cash Management System shall require the

prior written consent of all agents under the DIP Facility; provided, however, that no Bank

responding to any request for such a change shall be obligated to confirm or verify that such

consent has been obtained, no Bank shall be liable to any agent under the DIP Facility in the

event that Debtors fail to obtain such consent, and all Banks may rely upon instructions from the

Debtors with respect to any such change.  Without limiting the generality of the foregoing, but

subject to all of the terms and conditions of this Order, each Debtor is authorized to (a)

designate, maintain and continue to use, with the same account numbers, all of its Bank

Accounts and Credit Cards in existence on the Petition Date, including, without limitation, those

accounts identified on Exhibit C to the Motion, (b) treat each Bank Account for all purposes as

an account of a Debtor in its capacity as debtor in possession, and (c) use, in their present form,

all Business Forms, without reference to their status as debtors in possession, except as otherwise

provided in this Order.

   3.  Each Bank at which any Bank Account is maintained is authorized to continue to

service and administer such Bank Account as a depository account of a Debtor as debtor in

possession, without interruption and in the usual and ordinary course of business, and to receive,

process, honor and pay, in accordance with this Order, any or all checks, drafts, wires or ACH

Payments drawn on such Bank Account.

   4.  Each Bank is authorized to accept and rely upon, without further inquiry, all

representations from a Debtor as to which checks, drafts, wires or ACH Payments are dated prior

to, on or after the Petition Date and which checks are to be honored or dishonored, regardless of

whether or not such payment or honoring is or is not authorized by an order of the Court.  No

Bank shall incur, and each is hereby released from, any liability for relying upon a Debtor's

instruction as to which checks, drafts, wires or ACH Payments should be honored or dishonored

or for such Bank's inadvertence in honoring any check, draft, wire or ACH Payment at variance

from a Debtor's instructions unless such inadvertence constituted gross negligence or willful

misconduct on the part of such Bank. Each Debtor shall promptly provide a list of checks to each

Bank for each Bank Account maintained at such Bank, specifying by check sequencing number, dollar amount and payee information those checks that are to be dishonored by such Bank, which checks may include those issued after the Petition Date as well as those issued prior to the Petition Date that are not to be honored or paid according to any order of the Court, and each Bank may honor all other checks.

5.      Except for those checks, drafts, wires or ACH Payments that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Bank to pay or honor any check, draft or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date.

6.      Notwithstanding anything to the contrary herein, no Bank shall be obligated to honor any check or other payment item drawn on a Bank Account at such Bank unless there are sufficient and collected funds in such Bank Account.

7.      The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreement that exists between them relating to any Bank Account, or other cash management service relating to the Cash Management System, except to the extent expressly prohibited by this Order, and the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges and remedies afforded them under such agreements except to the extent expressly modified by the terms of this Order or the order approving the DIP Facility.

8.      Bank of America, N.A. ("BofA") shall be authorized to exercise rights of offset pursuant to the terms of any pre-petition agreement that exists between BofA and any Debtor with respect to any indebtedness owed by a Debtor to BofA that arises out of or relates to such Debtor's Cash Management System, regardless of whether such indebtedness was incurred or

01:16770675.6

arose prior to or after the Petition Date, including, without limitation, (i) all fees and expenses (including, without limitation, analysis and overdraft fees or charges) related to the maintenance or administration of any Bank Account or lockbox or the processing of any ACH Transfer or wire transfer, (ii) all overdrafts in any Bank Account and any indebtedness arising from returned checks initially deposited in a Bank Account, (iii) all amounts payable or reimbursable to such Bank at any time in respect of ACH Transfers or wire transfers, and (iv) Credit Card balances or fees.

9.      For Banks at which the Debtors hold accounts that are party to a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

10.     For Banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause such Banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of this Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

11.     The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided* that (a) the opening, closing, or use of any such bank account is not prohibited or restricted by

the terms of the DIP Facility, and (b) the Debtors give notice of the closing of any Bank

Accounts or the opening of any new bank accounts within fifteen (15) days thereafter to the

Office of the U.S. Trustee for the District of Delaware, all agents under the DIP Facility, and any

statutory committees appointed in the Chapter 11 Cases; *provided*, *further*, that the Debtors shall

only open any such new bank accounts at banks that have executed a Uniform Depository

Agreement with the Office of the U.S. Trustee for the District of Delaware, or at banks that are

willing to immediately execute such an agreement.

12.    The Debtors are authorized to use their existing Business Forms; *provided*, that

once the Debtors' existing check stock has been exhausted, the Debtors shall include, or direct

others to include, the designation "Debtor in Possession" and the corresponding bankruptcy case

number on all checks as soon as it is reasonably practicable to do so.

13.    The Debtors are authorized to continue performing Intercompany Transactions in

the ordinary course of business; *provided* that (a) such Intercompany Transactions shall be

conducted at arm's length and in good faith between the Debtors and (b) the Debtors shall

document and trace such Intercompany Transactions.

14.    Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, postpetition

Intercompany Claims resulting from such Intercompany Transactions shall be accorded

administrative priority and, subject to the DIP Budget and the order approving the DIP Facility,

the Debtors are authorized to honor and pay Intercompany Claims arising in connection with

Intercompany Transactions.

15.    The Debtors' time to comply with section 345(b) of the Bankruptcy Code is

hereby extended until the date that is 60 days after the date hereof, without prejudice to the

Debtors' right to seek further waivers from the U.S. Trustee without further Order of this Court.

01:16770675.6

16.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2015
        Wilmington, Delaware

        _____
        UNITED STATES BANKRUPTCY JUDGE

01:16770675.6

## **EXHIBIT B**

## **CASH MANAGEMENT DIAGRAM**

# • Legacy Standard Register Account Structure



1

- # Legacy WorkflowOne Account Structure



# EXHIBIT C

## LIST OF BANK ACCOUNTS

| Bank | Bank ID | Account Number | Account Name | Contact |
|---|---|---|---|---|
| Bank of America, N.A. | 061000052 | ****41 | The Standard Register Company | Stephen L. Burch, CTP |
| Bank of America, N.A. | 061000052 | ****58 | The Standard Register Company | Vice President |
| Bank of America, N.A. | 061000052 | ****66 | The Standard Register Company | Global Treasury Solutions Officer |
| Bank of America, N.A. | 111000012 | ****37 | The Standard Register Company | Bank of America Merrill Lynch |
| Bank of America, N.A. | 111000012 | ****60 | The Standard Register Company | 312 Walnut Street, Cincinnati, OH 45202 |
| Bank of America, N.A. | 111000012 | ****73 | The Standard Register Company | t: 513.929.5113 | c: 312.965.3048 | f: |
| Bank of America, N.A. | 111000012 | ****86 | The Standard Register Company | 312.453.5127 |
| Bank of America, N.A. | 111000012 | ****99 | The Standard Register Company | Stephen.L.Burch@baml.com |
| Bank of America, N.A. | 111000012 | ****09 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****12 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****25 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****38 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****41 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****54 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****67 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****70 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****68 | The Standard Register Company | |
| Bank of America, N.A. | 111000012 | ****74 | Standard Register Holding S De R L De CV | |
| Bank of America, N.A. | 111000012 | ****87 | Standard Register Servicios S De RL De CV | |
| Bank of America, N.A. | 111000012 | ****90 | Standard Register de Mexico S De R L De CV | |
| Fifth Third Bank (Western Ohio) | 42202196 | ****08 | WorkflowAP | Christa Jessee |
| Fifth Third Bank (Western Ohio) | 42202196 | ****66 | Workflow Concentration Acc | Assistant Vice President |
| Fifth Third Bank (Western Ohio) | 42202196 | ****81 | Workflow Workers Comp | Fifth Third Bank |
| | | | | Corporate Treasury Management |
| | | | | Ph: 937-227-6041 |
| | | | | Fax: 937-227-6454 |
| | | | | Christa.Jessee@53.com |
| PNC | '041000124 | ****93 | PNC Lockbox | Dave Ruther |
| PNC | '041000124 | ****13 | The Relizon Co | Vice President |
| PNC | '041000124 | ****03 | Utilities | Treasury Management Officer |
| PNC | '041000124 | ****15 | WORKFLOWONE LLC | PNC Bank |
| PNC | '041000124 | ****97 | WORKFLOWONE LLC | 201 E. 5th Street |
| PNC | '041000124 | ****26 | WORKFLOWONE LLC | Cincinnati, OH  45201 |
| PNC | '041000124 | ****73 | WORKFLOWONE LLC | Office Phone - 513-651-8651 |

| Bank | | | Account | Contact |
|---|---|---|---|---|
| Key Bank | 41001039 | ****74 | Business Checking | Lynn Parker Barclay<br>AVP, Sr. Treasury Client Manager<br>KeyBank Enterprise Commercial Payments<br>303 Broadway St., Suite 1700<br>Cincinnati, OH 45202- 4253<br>Ph. 513-830-1034<br>Fax 513-830-1996 |
| First Citizens Bank | 053 906 041 | ****01 | Business Checking | Raymond Shrader<br>First Citizens<br>3300 Cumberland Blvd., Ste 100<br>Atlanta, GA 30339<br>678-867-7856 |
| First Citizens Bank | 053 906 041 | ****01 | Business Checking | |
| First Citizens Bank | 053 906 041 | ****01 | Business Checking | |
| Royal Bank of Canada | ROYCCAT2 | ****12 | SRC Technologies Canada Business Checking | Lynn Parker Barclay<br>AVP, Sr. Treasury Client Manager<br>KeyBank Enterprise Commercial Payments<br>303 Broadway St., Suite 1700<br>Cincinnati, OH 45202- 4253<br>Ph. 513-830-1034<br>Fax 513-830-1996 |
| Santander Bank | 231372691 | ****04 | Standard Register Depository | 877.768.2265 |
| Banamex | BNMXMXMM | ****15 | STANDARD REGISTER HOLDING | USA and Canada:  1 855 295 7093<br>resuelve@banamex.com |
| Banamex | BNMXMXMM | ****70 | STANDARD REGISTER SERVICIO | |
| Banamex | BNMXMXMM | ****56 | STANDARD REGISTER DE MEXIC | |
| Banamex | BNMXMXMM | ****61 | STANDARD REGISTER DE MEXIC | |
| Banamex | BNMXMXMM | ****37 | STANDARD REGISTER HOLDING | |
| | | | | |