## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ORDER (I) AUTHORIZING CONTINUATION OF, AND PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH, VARIOUS INSURANCE POLICIES, AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew prepetition insurance policies in the ordinary course of business and pay prepetition obligations in respect thereof; (ii) authorizing banks and other financial institutions at which the Debtors hold accounts (collectively, the "Banks") to honor and process check and electronic

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

transfer requests related to the foregoing; and (iii) granting related relief.  In support of the

Motion, the Debtors rely upon and incorporate by reference the *Declaration of Kevin Carmody*

*in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day

Declaration"), which was filed concurrently herewith.  In further support of this Motion, the

Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b) and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the

relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rule

6003(b), and Local Rule 9013-1(m).

## BACKGROUND

**A.      General Background**

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors

in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint

administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

**B.     The Debtors' Insurance Policies**

5.      In the ordinary course of their businesses, the Debtors maintain numerous insurance policies with various insurance providers (collectively, the "Insurers") that provide coverage for, among other things, products liability, general liability, property, automobile, umbrella liability, excess liability, crime, and directors and officers liability (collectively, with the Workers' Compensation Policies (as defined below), the "Insurance Policies"), as summarized in Exhibit B annexed hereto.  The Debtors incur a total of approximately $2.3 million in the aggregate in annual premiums to cover their Insurance Policies as well as other obligations, including their broker fees and premiums and costs related to the Workers' Compensation Policies (collectively, the "Insurance Obligations").  In addition, the Debtors may make retroactive adjustments in the ordinary course of business with respect to one or more of the Insurance Policies, as applicable.

**(i)     Third-Party Insurance Policies**

6.      The Debtors maintain third-party Insurance Policies through various insurance companies.  The Insurance Policies are essential to the ongoing operation of the Debtors' business.  The Debtors incur approximately $1.6 million in annual premiums relating to third-party Insurance Policies, excluding broker fees and workers' compensation plan obligations. The third-party Insurance Policies can be grouped into the following five categories:

### (a) *Property Policies*

7.    The Debtors maintain Insurance Policies that cover the Debtors' property (the "Property Policies") with FM Global and Wright National Flood Insurance Company.  Each of the Property Policies provides coverage through June 30, 2015.  The Property Policies cover losses relating to, among other things, loss or damage to property resulting from fire, flood, terrorism, weather damage, boiler and machinery, earthquake sprinkler leakage, and business interruption.  The Debtors incur approximately $450,000 in the aggregate in annual premiums for the Property Policies.  The Debtors timely remit payments to cover their Property Policies, and as of the Petition Date, all of the premiums due and owing for the Property Policies have been paid in the ordinary course.  Accordingly, the Debtors believe that there is no outstanding prepetition amount that has accrued and remains unpaid on account of the Property Policies as of the Petition Date.

### (b) *Casualty Policies*

8.    The Debtors maintain Insurance Policies that cover casualty losses (the "Casualty Policies") with National Fire Insurance of Hartford, Continental Casualty Company, and Fireman's Fund Insurance.  The Casualty Policies provide coverage through July 1, 2015.  The Casualty Policies cover losses relating to, among other things, products liability, general liability, automobile accidents (including legal liability for both bodily injury and property damage), international liability, umbrella liability, and excess umbrella coverage.  The Debtors are required to maintain certain of the Casualty Policies pursuant to applicable law.  The Debtors incur approximately $160,000 in the aggregate in annual premiums for the Casualty Policies.  As of the Petition Date, the Debtors have paid approximately $129,000 of the current premiums for the Casualty Policies in the ordinary course of business.  Accordingly, the Debtors still owe approximately $31,000 on account of the current premiums for the Casualty Policies.  Although

the Debtors timely remit payments to cover their Casualty Policies, the Debtors estimate that, as

of the Petition Date, approximately $30,915 on account of the Casualty Policies has accrued and

is unpaid.

(c)     *Management Liability Policies*

9.      The Debtors maintain Insurance Policies that cover management liability (the

"Management Liability Policies") with Zurich, XL, Navigators, Allied World, Continental

Casualty, Travelers, and Federal Insurance Company.  Collectively, the Management Policies

provide financial protection for the Debtors and their directors and officers in the event that they

are sued in conjunction with the performance of their duties as they relate to the Debtors.

Collectively, these policies provide three "sides" of coverage.  "Side A" policies cover losses, up

to $45 million with no deductible, incurred by individual directors and officers resulting from

claims for which the Debtors have not indemnified them.  The Debtors' Side A excess policy

provides directors and officers with coverage up to an aggregate limit of $45 million in losses

and helps protect their personal assets by covering claims for which the Debtors are unwilling or

unable to indemnify them, which includes coverage for directors and officers personally if the

Debtors become insolvent or do not have the resources to cover such directors and officers, or if

such directors or officers have acted outside the scope of their authority under the applicable

bylaws.

10.     "Side B" policies cover losses, up to $30 million with a $500,000 deductible,

incurred by the Debtors for indemnifying their directors and officers for claims against such

directors and officers for authorized actions in the course performing their duties in accordance

with the applicable bylaws.

11.    "Side C" policies cover losses, up to $30 million with a $500,000 deductible, incurred by the Debtors as a result of securities claims made directly against the Debtors, where any of the Debtors are defendants in such actions.

12.    Additionally, the Debtors also maintain policies that cover (a) fiduciary liability for wrongful acts committed, attempted or allegedly attempted, or the failure to act, by any person for whose wrongful acts or omissions the Debtors are legally liable; (b) employment-related claims against the Debtors, such as harassment and discrimination; (c) kidnap, ransom and extortion payments related to any associate of the Debtors who is kidnapped, held for ransom, or extorted during the course of employment with Debtors, which includes ransom payments and any other costs associated with extricating such associate; and (d) crime and the loss of corporate assets resulting from employee theft and dishonesty, loss of money and securities inside and outside the Debtors' premises, counterfeit currency, and forgery.

13.    The Debtors' Management Liability Policies provide coverage through December 31, 2015 and include a pre-paid six-year "tail" coverage policy.  Two of the Debtors' other policies (a kidnap/ransom and extortion policy and a crime policy) do not expire until May 31, 2016 and May 31, 2017, respectively.  The Debtors incur approximately $724,000 in the aggregate in annual premiums to cover the Management Liability Policies.  The Debtors timely remit payments to cover their Management Liability Policies, and as of the Petition Date, all of the premiums due and owing for the Management Liability Policies were paid in the ordinary course of business.  Accordingly, the Debtors believe there are no outstanding amounts that have accrued prepetition and are unpaid on account of the Management Liability Policies.

(d)    *Professional Liability Policies*

14.    The Debtors maintain Insurance Policies that cover professional liability (the "Professional Liability Policies") with Beazley USA Services, Inc., Columbia Casualty

Company (CNA), and Illinois National Insurance Company, an AIG Specialty Insurance

Company.  The current Professional Liability Policies provide coverage through December 1,

2015 and cover losses related to, among other things, cyber and privacy liability, and third party

financial damage caused by a negligent act, error, or omission committed in the preparation or

dissemination of matter printed for third parties.  The Debtors incur approximately $255,000 in

the aggregate in annual premiums to cover the Professional Liability Policies.  The Debtors

timely remit payments to cover their Professional Liability Policies, and as of the Petition Date,

all of the premiums due and owing for the Professional Liability Policies were paid in the

ordinary course of business.  Accordingly, the Debtors believe there are no outstanding amounts

that have accrued prepetition and are unpaid on account of the Professional Liability Policies.

### (e)    *International Liability Policies*

15.    The Debtors maintain Insurance Policies that cover foreign property and

international liability (the "International Liability Policies") with (a) Chubb and (b) Vigilante

Insurance, a subsidiary of Chubb.  The policy with Chubb provides (i) general liability coverage

that protects legal liability imposed by violations in tort in Mexico; (ii) automobile liability

coverage that provides legal liability against bodily injury and property damage arising out of the

hired or non-owned use of a vehicle in Mexico; (iii) workers' compensation coverage for the

Debtors' associates while traveling in Mexico on corporate business; and (iv) property coverage

for the Debtors' assets located in Mexico.  The policy with Vigilant is a general liability policy

that covers DIC (difference in conditions), DIL (difference in limits), Global Medical Assistance

Cards covered under this policy, and the Debtors' headquarters individuals during international

travel.  The Debtors incur approximately $34,285 in the aggregate in annual premiums to cover

the International Liability Policy.  The Debtors timely remit payments to cover their International

Liability Policies, and as of the Petition Date, the premiums due and owing for the International

Liability Policies were paid in the ordinary course of business.  Accordingly, the Debtors believe there are no outstanding amounts that have accrued prepetition and are unpaid on account of the International Liability Policies.

>    **(ii)      The Insurance Broker**

16.      The Debtors employ Hylant Group, Inc. as their insurance broker (the "Broker") to assist them with the procurement and negotiation of their Insurance Policies.  The Broker provides services to and receives compensation (the "Broker Fees") from the Debtors pursuant to certain contracts with the Debtors.  The Debtors pay an annual fee of approximately $125,000 to the Broker.  The Debtors timely remit payments to cover their Broker Fees, and as of the Petition Date, the Debtors have paid $31,250 to the Broker for services rendered in the ordinary course of business.  Accordingly, the Debtors still owe $93,750 during the remaining three quarters of 2015.  However, the Debtors believe that no amount has accrued prepetition and remains unpaid on account of the Broker Fees as of the Petition Date.

>    **(iii)     The Workers' Compensation Policies**

17.      The Debtors maintain  workers' compensation policies (collectively, the "Workers' Compensation Policies") with (a) Liberty Mutual Insurance, to provide excess coverage in all states except Ohio and Washington and to provide claim administration services in these states, (b) Safety National Casualty Corporation, to provide excess coverage in Ohio, and (c) Hunter Consulting Company, to provide claim administration services in Ohio.  The Debtors' policy with Safety National Casualty Corporation provides coverage through October 1, 2016, while the policy with Liberty Mutual Insurance provides coverage through July 1, 2015 and will need to be renewed on or before this date.  The Debtors incur approximately $591,000 in annual premiums for the Workers' Compensation Policies.  The Debtors timely remit payments to cover their Workers' Compensation Policies, and as of the Petition Date, the

Debtors have paid approximately $540,000 of the current premiums for the Workers'

Compensation Policies. Accordingly, the Debtors still owe approximately $52,000 on account of

the current premiums for the Workers' Compensation Policies. As of the Petition Date, the

Debtors estimate that approximately $45,303 has accrued prepetition and remains unpaid on

account of the Workers' Compensation Policies.

## **RELIEF REQUESTED**

18.    The Debtors seek entry of an order authorizing, but not directing, the Debtors to

(i) continue and renew their Insurance Policies, including their Workers' Compensation Policies,

and (ii) honor all of their prepetition and postpetition obligations under and in connection with

the Insurance Policies on an uninterrupted basis and in accordance with the same practices and

procedures as were in effect before the Petition Date.[2]  This would include (i) renewing or

obtaining new insurance policies as needed in the ordinary course of business and (ii) paying all

prepetition obligations under the Workers' Compensation Policies and all prepetition amounts

arising under the Insurance Policies, including the Broker Fees (collectively, the "Insurance

Obligations").

19.    The Debtors also seek entry of an order authorizing the Banks to receive, process,

honor, and pay checks or electronic transfers used by the Debtors to pay the foregoing and to rely

on the representations of such Debtors as to which checks are issued and authorized to be paid in

accordance with this Motion.

---

[2]    Nothing in this Motion should be construed as an assumption of any executory contract or unexpired lease
between the Debtors and any other party, nor should it be construed as a rejection of any executory contract or
unexpired lease with any creditor. The Debtors reserve the right to contest the amount claimed to be due by any
person or entity.

## BASIS FOR RELIEF REQUESTED

**A.      Honoring the Insurance Policy Obligations is Warranted Under Section 363(b) of the Bankruptcy Code**

20.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

21.      The Debtors have satisfied the business judgment standard.  First, the coverage provided under the Insurance Policies is essential for preserving the value of the Debtors' assets and, in many instances, such coverage is required by various regulations, laws and contracts that govern the Debtors' business operations.  Indeed, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C.

§ 1112(b)(4)(C).  Moreover, maintenance of insurance policies is required by the operating

guidelines established by the Office of the United States Trustee (the "U.S. Trustee").  *See* 3

United States Trustee Manual, § 3-3.2.3 (Oct. 1998) ("A debtor must obtain appropriate

insurance coverage, and documentation regarding the existence of the coverage must be provided

to the Office of the United States Trustee as early in the case as possible.").  Second, if the

Debtors fail to perform their obligations under the Insurance Policies, their coverage thereunder

could be voided.  Such a disruption of the Debtors' insurance coverage could expose the Debtors

to serious risks, including but not limited to:  (a) direct liability for the payment of claims that

otherwise would have been payable by the Insurance Carriers; (b)  material costs and other losses

that otherwise would have been reimbursed by the Insurance Carriers under the Insurance

Policies; (c) the loss of good standing certification in jurisdictions that require the Debtors to

maintain certain levels of insurance coverage; (d) the inability to obtain similar types of

insurance coverage; and (e) higher costs for re-establishing lapsed policies or obtaining new

insurance coverage.  Any or all of these consequences could cause serious harm to the Debtors'

business.  Granting the relief requested herein will enhance the likelihood of the Debtors'

successful rehabilitation, thereby furthering the goals of chapter 11: "facilitating the continued

operation and rehabilitation of the debtor."  *In re Ionosphere Clubs*, 98 B.R. 174, 176 (Bankr.

S.D.N.Y. 1989).

22.    The Debtors may also need to renew or replace certain of the Insurance Policies

during the course of these Chapter 11 Cases, or enter into new policies.  If the Debtors do not

pay prepetition amounts owing, including upward and/or downward adjustments, in respect of

the Insurance Policies, there is a risk that the Insurance Carriers will refuse to renew the

Insurance Policies.

23.     Although the Debtors believe that the renewal, modification, or new execution of the Insurance Policies would constitute ordinary course transactions not requiring Court approval, the Debtors nevertheless seek authority to continue to renew and modify the Insurance Policies in order to assure the Debtors' Insurance Carriers that the Debtors have full authority with respect to new or modified arrangements without the need to obtain further approval from the Court.

**B.     Honoring the Insurance Policy Obligations is Warranted Under the Doctrine of Necessity**

24.     The Court may authorize payment of prepetition claims under section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" (also referred to as the "necessity of payment" rule).  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

25.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh and New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *accord In re*

*Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of

payment doctrine permits "immediate payment of claims of creditors where those creditors will

not supply services or material essential to the conduct of the business until their pre-

reorganization claims shall have been paid"); *see also Just for Feet, Inc.*, 242 B.R. at 824-26

(noting that the Third Circuit permits debtors to pay prepetition claims that are essential to

continued operation of business); *Official Comm. of Unsecured Creditors of Motor Coach Indus.*

*Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.)*, No. 08-12136

BLS, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying a stay pending appeal on the

grounds that there is not a serious basis to challenge the doctrine of necessity in the Third

Circuit).

26.     Honoring the Debtors' obligations with regards to the Insurance Policies is

warranted under the doctrine of necessity.  As described above, continuation of the Insurance

Policies is essential to preserve the value of the Debtors' assets and minimize exposure to risk.

Furthermore, insurance coverage is required by the Office of the United States Trustee as well as

various jurisdictions in which the Debtors operate.

**C.      The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

27.     In connection with the foregoing, the Debtors respectfully request that the Court

(a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers

issued by the Debtors in accordance with this Motion, without regard to whether any checks or

transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the

representations of the Debtors with respect to whether any check or transfer issued or made by

the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and

other financial institutions having no liability to any party for relying on such representations by

the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

## D.      Immediate Relief Is Justified

28.      Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

29.      Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

30.     As described herein, the Debtors will suffer immediate and irreparable harm without Court authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

31.     To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

32.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent that they are deemed applicable.

## DEBTORS' RESERVATION OF RIGHTS

33.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim on account of any Insurance Policy under applicable law and to assume or reject any agreements with Insurance Policy providers in accordance with the applicable provisions of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

34.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; (vi) the Insurers; (vii) the Banks; and (viii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:　March 12, 2015
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　 _/s/ Maris J. Kandestin_____
　　　　　　　　　　　　　　　　 Michael R. Nestor (No. 3526)
　　　　　　　　　　　　　　　　 Kara Hammond Coyle (No. 4410)
　　　　　　　　　　　　　　　　 Maris J. Kandestin (No. 5294)
　　　　　　　　　　　　　　　　 Andrew L. Magaziner (No. 5426)
　　　　　　　　　　　　　　　　 YOUNG CONAWAY STARGATT & TAYLOR, LLP
　　　　　　　　　　　　　　　　 Rodney Square
　　　　　　　　　　　　　　　　 1000 North King Street
　　　　　　　　　　　　　　　　 Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　 Telephone:　　(302) 571-6600
　　　　　　　　　　　　　　　　 Facsimile:　　　(302) 571-1253
　　　　　　　　　　　　　　　　 mnestor@ycst.com
　　　　　　　　　　　　　　　　 kcoyle@ycst.com
　　　　　　　　　　　　　　　　 mkandestin@ycst.com
　　　　　　　　　　　　　　　　 amagaziner@ycst.com

　　　　　　　　　　　　　　　　 -and-

　　　　　　　　　　　　　　　　 Robert A. Klyman (CA No. 142723)
　　　　　　　　　　　　　　　　 Samuel A. Newman (CA No. 217042)
　　　　　　　　　　　　　　　　 Jeremy L. Graves (CO No. 45522)
　　　　　　　　　　　　　　　　 Sabina Jacobs (CA No. 274829)
　　　　　　　　　　　　　　　　 GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　 333 South Grand Avenue
　　　　　　　　　　　　　　　　 Los Angeles, CA 90071-1512
　　　　　　　　　　　　　　　　 Telephone: (213) 229-7000
　　　　　　　　　　　　　　　　 Facsimile: (213) 229-7520
　　　　　　　　　　　　　　　　 rklyman@gibsondunn.com
　　　　　　　　　　　　　　　　 snewman@gibsondunn.com
　　　　　　　　　　　　　　　　 jgraves@gibsondunn.com
　　　　　　　　　　　　　　　　 sjacobs@gibsondunn.com

　　　　　　　　　　　　　　　　 *Proposed Counsel to the Debtors and*
　　　　　　　　　　　　　　　　 *Debtors in Possession*

## EXHIBIT A

## PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

**ORDER (I) AUTHORIZING CONTINUATION OF, AND PAYMENT OF
PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF
BUSINESS IN CONNECTION WITH, VARIOUS INSURANCE POLICIES, AND
(II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECKS AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

Upon the *Debtors' Motion for Order (i) Authorizing Continuation of, and Payment of Prepetition Obligations Incurred in the Ordinary Course of Business in Connection With, Various Insurance Policies, and (ii) Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related Thereto* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

found that notice of the Motion has been given as set forth in the Motion and that such notice is

adequate and no other or further notice need be given; and the Court having determined that it

may enter a final order consistent with Article III of the United States Constitution; and upon

consideration of the First Day Declaration; and a hearing having been held to consider the relief

requested in the Motion; and upon the record of the hearing and all of the proceedings had before

the Court; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, their estates, their creditors and all other parties in interest; and

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, without interruption and in
accordance with the same practices and procedures as were in effect before the Petition Date, to
maintain and honor all of their prepetition Insurance Obligations under or in connection with the
Insurance Policies.

3.      The Debtors are authorized, but not directed, without interruption and in
accordance with the same practices and procedures as were in effect before the Petition Date, to
maintain and honor all their obligations under or in connection with the Workers' Compensation
Policies.

4.      The Debtors are authorized to renew or to obtain new insurance policies or to
execute other agreements in connection with the Insurance Policies.

5.      Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Insurance Obligations that are dishonored or rejected.

7.      Nothing in the Motion or this Order, or the Debtors' payment of any claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim or Lien; (c) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (d) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid on account of any Insurance Policies.

8.      Nothing herein shall be deemed to constitute the post-petition assumption of any executory contract under section 365 of the Bankruptcy Code or authority to lift or modify the automatic stay set forth in section 362 of the Bankruptcy Code.  To the extent that the Insurance Obligations, the Insurance Bond, or the Workers' Compensation Policies or any related contracts or agreements are deemed executory contracts under section 365 of the Bankruptcy Code, neither the relief granted hereby nor any actions or payments made by the Debtors pursuant to this Order shall be deemed an assumption or rejection of any such contract or agreement pursuant to section 365 of the Bankruptcy Code, or that any such contract or agreement is an executory contract under section 365 of the Bankruptcy Code.

01:16770680.5

3

9.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved order regarding post-petition financing and any budget in connection therewith.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

01:16770680.5

4

**<u>EXHIBIT B</u>**

**INSURERS, INSURANCE POLICIES & INSURANCE OBLIGATIONS**

## SUMMARY OF INSURANCE OBLIGATIONS

| TYPE OF COVERAGE | INSURER & LAST 4 DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | ANNUAL PREMIUM / FEES |
|---|---|---|---|---|
| **1. MANAGEMENT LIABILITY POLICIES** | | | | |
| Directors & Officers Liability (primary) | Zurich American Insurance Company Policy 0204 | 05/31/2014 | 12/31/2015 | $ 221,500 |
| Directors & Officers Liability (first layer excess) | XL Specialty Insurance Company Policy 8314 | 05/31/2014 | 12/31/2015 | $ 62.00 |
| Directors & Officers Liability (second layer excess) | Navigators Insurance Company Policy 96IV | 05/31/2014 | 12/31/2015 | $ 54.00 |
| Directors & Officers Liability (Side A excess) | Allied World National Assurance Company Policy 0235 | 05/31/2014 | 05/31/2015 | $ 63,000 |
| Fiduciary Liability (primary) | Continental Casualty (CNA) Policy 9555 | 05/31/2014 | 05/31/2015 | $ 75,000 |
| Fiduciary Liability (first layer excess) | Travelers Casualty and Surety Company of America Policy 9663 | 05/31/2014 | 05/31/2015 | $ 46,000 |
| Fiduciary Liability (second layer excess) | Federal Insurance Company (Chubb) Policy 4364 | 05/31/2014 | 05/31/2015 | $ 18,000 |
| Employment Practices Liability | Continental Casualty Company (CNA) Policy 5490 | 05/31/2014 | 05/31/2015 | $ 91,350 |
| Kidnap, Ransom & Extortion | Federal Insurance Company (Chubb) Policy 8015 | 05/31/2014 | 05/31/2017 | $ 5,211 |
| Blanket Crime Insurance | Continental Casualty (CNA) Policy 95-13 | 05/31/2013 | 05/31/2016 | $ 30,000 |

| Type of Coverage | Insurer & Last 4 Digits of Policy Number | Effective Date | Expiration Date | Annual Premium / Fees |
|---|---|---|---|---|
| **2. International** | | | | |
| Foreign Liability / Property / Casualty / Workers' Compensation (Mexico) | Chubb Insurance Policy PM 406-4 | 07/01/2014 | 0701/2015 | $24,235 |
| Global Travel General Liability (International) | Vigilant Insurance Company (subsidiary of Chubb) Policy 4007 & 4007CIN | 07/01/2014 | 0701/2015 | $ 10,050 |
| **3. Property** | | | | |
| Property | Factory Mutual Insurance Company Policy 414 | 06/30/2014 | 06/30/2015 | $ 445,779 |
| Flood (Sacramento only) | Wright National Flood Insurance Company Policy 3600 | 06/30/2014 | 06/30/2015 | $ 2,853 |
| **4. Casualty** | | | | |
| General Liability | National Fire Insurance of Hartford (CNA) Policy 0466 | 07/01/2014 | 07/01/2015 | $ 64,715 |
| Business Automobile Liability | National Fire Insurance of Hartford (CNA) Policy 0421 | 07/01/2014 | 07/01/2015 | $ 22,107 |
| Umbrella Liability Policy (primary) | Continental Casualty Company (CNA) Policy 2535 | 07/01/2014 | 07/01/2015 | $ 51,687 |
| Excess Liability (second layer excess) | Fireman's Fund Insurance Company Policy 4457 | 07/01/2014 | 07/01/2015 | $ 21,398 |

| Type of Coverage | Insurer & Last 4 Digits of Policy Number | Effective Date | Expiration Date | Annual Premium / Fees |
|---|---|---|---|---|
| **5. Professional Liability** | | | | |
| Professional Liability, Errors & Omissions & Cyber/Privacy Liability (primary) | Beazley USA Services, Inc. Policy 0201 | 12/01/2014 | 12/01/2015 | $ 125,475 |
| Professional Liability, Errors & Omissions & Cyber/Privacy Liability (first layer excess) | Columbia Casualty Company (CNA) Policy 1658 | 12/01/2014 | 12/01/2015 | $ 76,125 |
| Professional Liability, Errors & Omissions & Cyber/Privacy Liability (second layer excess) | AIG Specialty Insurance Company Policy 22-92 | 12/01/2014 | 12/01/2015 | $ 53,288 |
| **6. Workers' Compensation** | | | | |
| Workers' Compensation & Employers' Liability (claim administrator and excess coverage for all states except Ohio and Washington) | Liberty Mutual Insurance Policy 5-014 | 07/01/2014 | 07/01/2015 | $ 510,337 |
| Workers' Compensation & Employers' Liability (excess for Ohio) | Safety National Casualty Corporation Policy 1878 | 10/01/2014 | 10/01/2016 | $ 72,033 |
| Workers' Compensation & Employers' Liability (claim administrator for Ohio) | Hunter Consulting Company | n/a | n/a | $ 8,328 |
| **7. Brokerage Services** | | | | |
| Insurance Broker | Hylant Group, Inc. | n/a | n/a | $ 125,000 |