## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING DEBTORS TO HONOR AND CONTINUE CERTAIN CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to honor and continue their Customer Programs (as defined below) in the ordinary course of the Debtors' businesses. In support of the Motion, the Debtors rely on the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") and respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

requested herein are sections 105(a), 363, 1107(a), and 1108 of the Bankruptcy Code,

Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND

**A.      General Background**

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors

in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint

administration of their chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule

1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured

creditors has been appointed in these cases.

4.      Information regarding the Debtors' history and business operations, capital

structure and primary secured indebtedness, and the events leading up to the commencement of

these Chapter 11 Cases can be found in the First Day Declaration.

01:16770681.5

**B.     The Debtors' Customer Programs**

5.       Prior to the Petition Date, both in the ordinary course of the Debtors' business and as is customary in the industry, the Debtors offered and engaged in certain customer and other programs and practices (collectively, the "Customer Programs").  The Customer Programs include, but are not limited to, the following (as each is defined below): (a) Prepaid Postage Obligations; (b) Warranties and Guarantees; (c) Refunds; (d) Rebates; (e) Purchasing Group Rebates; (f) Prepaid Warehousing Obligations; (g) Prepaid Software Services; and (h) all such other similar policies, programs and practices of the Debtors, including honoring credit balances.

6.       In order to effectuate a smooth transition into chapter 11, the Debtors must not only deliver their products and services, including corporate stationary, marketing materials and other printed business documents, promotional marketing products, labels, and healthcare technology products but also maintain customer loyalty and goodwill through the Customer Programs. Indeed, the Debtors implemented the Customer Programs in the ordinary course of business prior to the Petition Date as a means by which to maintain positive, productive, and profitable relationships with their customers, encourage new purchases, enhance customer satisfaction and ensure that the Debtors remain competitive in their industry.  Although the terms of the Customer Programs may vary among the Debtors' customers, all of the Customer Programs are designed and implemented to encourage the Debtors' customers to increase their purchasing frequency and volume, resulting in larger net revenues for the Debtors and, in return, greater satisfaction for the customers.

7.       Accordingly, the Debtors' ability to honor their Customer Programs in the ordinary course of business is necessary to retain their customer base and reputation within the industry.  Pursuant to the Customer Programs the Debtors provided their customers with certain goods and services and, as a result thereof, may owe certain obligations to their customers and

01:16770681.5

3

certain subcontractors that provide goods and services to their customers, arising both prior to and after the Petition Date (collectively, the "Customer Obligations").

8.      The success and viability of the Debtors' business, and ultimately the Debtors' ability to maximize the value of the Debtors' estates, are dependent upon the patronage and loyalty of their customers.  In this regard, the Debtors' Customer Programs are critical, and any delay in honoring the Debtors' obligations thereunder will severely and irreparably impair customer relations.  Any failure to honor and pay prepetition Customer Obligations, for even a brief time, may well drive away valuable customers, thereby harming the Debtors' restructuring efforts.

9.      Accordingly, the Debtors seek authority, but not direction, to continue the Customer Programs, including authority to honor Customer Obligations arising therefrom, in their sole discretion.  A summary of the significant Customer Programs follows.

### *(1)      Prepaid Postage Obligations*

10.      In the ordinary course of business, certain of the Debtors' customers prepay for postage with respect to mailings the Debtors perform for these customers as part of their print and mail business (the "Prepaid Postage Obligations"). The monies associated with the Prepaid Postage Obligations are ultimately deposited in the Debtors' general operating account and are not segregated or otherwise held in trust for these customers.  As of the Petition Date, the Debtors were holding approximately $5.2 million on account of the Prepaid Postage Obligations. Notwithstanding the foregoing, the Debtors identify these deposits on their books and records as being the property of the customers.  And, in fact, the Debtors have used the money deposited on account of the Prepaid Postage Obligations, along with their own funds, to prepay for

approximately $7.5 million in postage that the Debtors intend to use to satisfy a substantial

portion of their Prepaid Postage Obligations.

11.     The Debtors believe that the increase in customer loyalty generated by continuing

to recognize these deposits as non-estate monies far outweighs the costs of not doing so.

Accordingly, the Debtors seek authorization, but not direction, to continue to honor the Prepaid

Postage Obligations in the ordinary course of business, including any such obligations arising

prior to the Petition Date.

### (2)     *Warranties, Satisfaction Guarantees, and Refunds*

12.     The Debtors provide various warranty services and make various guarantees (the

"Warranties and Guarantees") with respect to their goods and services.  If the Debtors are unable

to continue to honor their prepetition Warranties and Guarantees with their customers, the

Debtors risk losing customers, revenue, and their reputation.

13.     Given the nature of the Debtors' businesses, the Warranties and Guarantees

generally will not result in the Debtors incurring or paying prepetition obligations in cash to the

customers.  For example, if a product does not meet the customer specifications, is faulty, or is

otherwise unacceptable in some fashion, the Debtors, at their cost and expense (postpetition)

would replace, fix, or otherwise correct the product.

14.     Estimating the amount of obligations that may arise through the Debtors' various

Warranties and Guarantees is impracticable. The ability to continue to provide the Warranties

and Guarantees is vital to the Debtors' ongoing relationship with their customers. The Debtors

believe that the increase in customer loyalty generated by the Warranties and Guarantees far

outweighs the costs of such programs. Accordingly, the Debtors seek authorization, but not

01:16770681.5

direction, to continue to honor Customer Obligations under the Warranties and Guarantees in the ordinary course of business, including obligations arising prior to the Petition Date.

15.     If a customer is not satisfied with the products and services provided by the Debtors or if a customer overpays through an accounting oversight or other reason, the Debtors, in their business judgment, may provide a credit, refund the money, or redo the project.  As a result, certain customers may hold contingent claims against the Debtors for refunds, allowances, discounts, returns, and other credits relating to products and services provided by the Debtors (collectively, the "Refunds").

16.     Ascertaining with precision an estimate of the aggregate amount of prepetition Refunds is impracticable.  However, in 2014, the Debtors issued approximately $950,000 in Refunds to customers.

17.     The ability to continue to provide the Refunds to customers is vital to the Debtors' ongoing relationship with their customers. The Debtors believe that, without the ability to provide the Refunds, many customers would be unwilling to continue to do business with the Debtors.  Accordingly, the Debtors seek entry of an order authorizing, but not directing, them to continue to provide Refunds and pay Customer Obligations associated therewith in the ordinary course of business, including claims arising prior to the Petition Date.

*(3)*     ***Rebates***

18.     Prior to the Petition Date, the Debtors offered certain customers rebates (the "Rebates").  For certain customers, the Debtors provided rebates based upon buying volumes (*i.e.*, the more the customer buys, the greater the rebate the Debtors provide to the customer).  In addition, the Debtors participate in certain purchasing groups (the "Group Purchasing Organizations"), wherein administrators bring parties into the Group Purchasing Organizations

who enter into contracts to do business with the Debtors.  Pursuant to the applicable contracts, the Debtors may provide Rebates to members of the Group Purchasing Organizations and/or pay fees to the group administrators (collectively, the "Purchasing Group Rebates").

19.     As of February 28, 2015, the Debtors had approximately $8.4 million in accrued but unpaid Rebates, including the Purchasing Group Rebates, owing to customers.

20.     The Debtors request authority, but not direction, to continue to offer the Rebates and the Purchasing Group Rebates in the ordinary course of business, including Rebates and Purchasing Group Rebates earned or related to products purchased prior to the Petition Date.

### *(4)     Prepaid Warehousing*

21.     In the ordinary course of business, customers will prepay for warehousing in connection with orders for custom-printed documents (the "Prepaid Warehousing Obligations"), and the Debtors will break up the order into batches and ship the batches over time.  As of the Petition Date, the Debtors are holding approximately $1.8 million in payments associated with the Prepaid Warehousing Obligations.

22.     The Debtors believe it is necessary to honor the Prepaid Warehousing Obligations as part of maintaining customer confidence.  Accordingly, the Debtors seek authorization, but not direction, to continue to honor the Prepaid Warehousing Obligations in the ordinary course of business, including any such obligations arising prior to the Petition Date.

### *(5)     Prepaid Software Services*

23.     As part of certain software licenses purchased by customers, some customers will also prepay for future and ongoing support, upgrades, and maintenance (the "Prepaid Software Services").  As of the Petition Date, the Debtors are holding approximately $5.4 million in payments associated with Prepaid Software Services.  As with other Customer Obligations,

01:16770681.5

7

honoring the Prepaid Software Services is crucial to maintaining customer confidence and

loyalty.  Therefore, the Debtors seek authorization, but not direction, to continue to honor and

perform the Prepaid Software Services in the ordinary course of business, including any

obligations arising prior to the Petition Date.

## RELIEF REQUESTED

24.     By this Motion, the Debtors seek entry of an order authorizing the Debtors, in

their sole discretion, to maintain and administer their Customer Programs and to honor the

Customer Obligations thereunder in the ordinary course of business.

25.     The Debtors also seek entry of an order authorizing banks and other financial

institutions to receive, process, honor, and pay checks or electronic transfers used by the Debtors

to pay the foregoing and to rely on the representations of such Debtors as to which checks are

issued and authorized to be paid in accordance with this Motion.

## BASIS FOR RELIEF REQUESTED

**A.      Continuation of the Customer Programs is Warranted Pursuant to Section 363 of
the Bankruptcy Code**

26.     Courts have authorized payment of prepetition obligations under section 363(b) of

the Bankruptcy Code where a sound business purpose exists for doing so.  *See*, *e.g.*, *In re*

*Ionosphere Clubs. Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business

justification existed to justify payment of prepetition wages); *see also Armstrong World Indus.,*

*Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983)

(relying on section 363 to authorize a contractor to pay prepetition claims of some suppliers who

were potential lien claimants because payments were necessary for general contractors to release

funds owed to the debtors).  In addition, section 363(c) allows a debtor-in-possession to enter

into transactions involving property of the estate in the ordinary course of business without an

order of the court.  *See, e.g.*, *In re James A. Phillips*, 29 B.R. at 395 n.2 ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").  Indeed, where retaining the loyalty and patronage of customers is critical to a successful reorganization, courts have not hesitated to grant the relief requested.  In *In re Federated Dep't Stores, Inc.*, 1990 Bankr. LEXIS 102 (Bankr. S.D. Ohio Jan. 15, 1990), the court authorized debtors to treat deposits or prepayments on goods and services "in the same manner as Debtors treated Deposits prior to the commencement of [the] cases."

27.     The Debtors' request for relief in this Motion is appropriate under each of the foregoing standards.  The Debtors seek to continue their Customer Programs and to honor any Customer Obligations without interruption during the pendency of the Chapter 11 Cases.  The Customer Programs are an integral part of the Debtors' business that enable the Debtors to attract and retain customers.  If the Debtors do not honor their Customer Programs in the ordinary course of business, the Debtors would be significantly less competitive, which undoubtedly would lead to a decrease in business.

28.     Moreover, the Debtors would risk isolating certain customer constituencies or, possibly, even encouraging them to initiate business relationships with the Debtors' competitors. The failure to honor the Customer Programs could erode the Debtors' hard-earned reputation and brand loyalty, which, in turn, could adversely affect the Debtors' ability to maximize the value of these estates.  Accordingly, in the exercise of their sound judgment, the Debtors believe that a sound business purpose exists for the relief requested herein because it will pay dividends with respect to the value of the Debtors' business, both in terms of profitability and the engendering of goodwill, especially at this critical time following the filing of the Chapter 11 Cases.

01:16770681.5

29.     In addition, because the Debtors pay the Customer Program Obligations in the ordinary course of business, the Debtors submit that Court approval of the Debtors' payment of postpetition Customer Obligations is not necessary because of the authority granted to them by section 363(c).  Indeed, most, if not all, of the Customer Programs are standard practice in the Debtors' industry.  Nonetheless, for the avoidance of doubt, the Debtors request that the Court grant the relief requested herein and enter an order authorizing them to pay the Customer Obligations in the ordinary course of the Debtors' business.

**B.     Continuation of the Customer Programs is Warranted Pursuant to Section 105(a) of the Bankruptcy Code and Under the Doctrine of Necessity**

30.     The Debtors' proposed payment of the Customer Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity."

31.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177); *accord In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)

("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.")

32.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the…[business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. denied* 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

33.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization.").  The doctrine is frequently invoked early in a

reorganization, particularly in connection with payment of prepetition claims.  The court in *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), observed the decisional authority that supports "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" (quoting *In re Chateaugay Corp.*, 80 B.R. at 287).  The court stated that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor…." *Ionosphere Clubs*, 98 B.R. at 176.

34.    As stated above, the payment of the Customer Obligations is essential to maintain the Debtors' relationships with their customers, who are essential to the Debtors' businesses.  In turn, the maintenance of the Debtors' business during the Chapter 11 Cases is crucial to the Debtors' ability to rehabilitate for the benefit of all stakeholders.  Thus, this Court should exercise its equitable powers to grant the relief requested herein.

35.    Moreover, if the Debtors do not honor the Customer Obligations, the Debtors would risk isolating certain customer constituencies or, possibly, even encouraging them to initiate business relationships with the Debtors' competitors.  The failure to honor the Customer Programs could erode the Debtors' hard-earned reputation and brand loyalty, which, in turn, could adversely affect the Debtors' prospects for a successful reorganization.  Accordingly, in the exercise of their sound judgment, the Debtors believe that a sound business purpose exists for the relief requested herein because it will pay dividends with respect to the long-term

restructuring of the Debtors' business, both in terms of profitability and the engendering of

goodwill, especially at this critical time following the filing of the Chapter 11 Cases.

C.     **The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

36.     In connection with the foregoing, the Debtors respectfully request that the Court

(a) authorize all applicable banks and other financial institutions (the "Banks") to receive,

process, honor, and pay all checks and transfers issued by the Debtors in accordance with this

Motion, without regard to whether any checks or transfers were issued before or after the Petition

Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to

whether any check or transfer issued or made by the Debtors before the Petition Date should be

honored pursuant to this Motion (such banks and other financial institutions having no liability to

any party for relying on such representations by the Debtors provided for herein); and (c)

authorize the Debtors to issue replacement checks or transfers to the extent any checks or

transfers that are issued and authorized to be paid in accordance with this Motion are dishonored

or rejected by the Banks.

D.     **Immediate Relief Is Justified**

37.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after

the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation

regarding property of the estate" only if such relief is necessary to avoid immediate and

irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the

absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a

going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990)

(discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule

4001).

01:16770681.5

38.     Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions.  *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

39.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization to continue the Customer Programs uninterrupted.   Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

40.     To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the

01:16770681.5

Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

41.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## DEBTORS' RESERVATION OF RIGHTS

42.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim on account of any Customer Obligation.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

43.    The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; (vi) the Banks; and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to

01:16770681.5

Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in

accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the

Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as the Court may deem just and proper.

Dated:   March 12, 2015
         Wilmington, Delaware            */s/ Andrew L. Magaziner*
                                         Michael R. Nestor (No. 3526)
                                         Kara Hammond Coyle (No. 4410)
                                         Maris J. Kandestin (No. 5294)
                                         Andrew Magaziner (No. 5426)
                                         YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                         Rodney Square
                                         1000 North King Street
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 571-6600
                                         Facsimile: (302) 571-1253
                                         mnestor@ycst.com
                                         kcoyle@ycst.com
                                         mkandestin@ycst.com
                                         amagaziner@ycst.com

                                         -and-

                                         Robert A. Klyman (CA No. 142723)
                                         Samuel A. Newman (CA No. 217042)
                                         Jeremy L. Graves (CO No. 45522)
                                         Sabina Jacobs (CA No. 274829)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         333 South Grand Avenue
                                         Los Angeles, CA 90071-1512
                                         Telephone: (213) 229-7000
                                         Facsimile: (213) 229-7520
                                         rklyman@gibsondunn.com
                                         snewman@gibsondunn.com
                                         jgraves@gibsondunn.com
                                         sjacobs@gibsondunn.com

                                         *Proposed Counsel to the Debtors and
                                         Debtors in Possession*

01:16770681.5

# EXHIBIT A

## PROPOSED ORDER

01:16770681.5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. ___ |

### ORDER AUTHORIZING DEBTORS TO HONOR AND CONTINUE CERTAIN CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS

Upon the *Debtors' Motion for an Order Authorizing Debtors to Honor and Continue Certain Customer Programs in the Ordinary Course of Business* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having reviewed the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that it may enter a final order consistent with Article III of the United States Constitution;; and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and the Court having considered the First Day Declaration; and the

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]  All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is GRANTED as set forth herein.

2.       Objections to the Motion, if any, shall be and hereby are OVERRULED.

3.       The Debtors are authorized, but not directed, to maintain and administer, in the ordinary course of business and in a manner consistent with past practice, the Customer Programs and to honor the Customer Obligations thereunder in the ordinary course of business as set forth in the Motion.

4.       The Debtors' satisfaction of the Warranties and Guarantees by replacing, fixing, or otherwise correcting any defective product shall not be deemed to be a cash expenditure.

5.       Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

6.       The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with the Customer Programs and the Customer Obligations that are dishonored or rejected.

7.       The Debtors, their officers, employees and agents are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

01:16770681.5

8.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved order regarding post-petition financing and any budget in connection therewith.

9.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed (a) an admission as to the validity or priority of any claim against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     This Court shall retain jurisdiction over any matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____, 2015
        Wilmington, Delaware


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

01:16770681.5