## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF ORDER
## AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF FOREIGN VENDORS

The Standard Register Company ("Standard Register") and its affiliated debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")

hereby move this Court (the "Motion") for entry an order, substantially in the form annexed

hereto as Exhibit A, pursuant to sections 105(a), 363, 503(b)(9), 1107(a) and 1108 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), authorizing the Debtors to pay, in their sole

discretion, prepetition claims of certain foreign vendors.  In support of the Motion, the Debtors

rely upon and incorporate by reference the *Declaration of Kevin Carmody in Support of the*

*Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration"),

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

which was filed with the Court concurrently herewith.  In further support of this Motion, the

Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the

relief requested herein are sections 105(a), 363, 503(b)(9), 1107(a) and 1108 of the Bankruptcy

Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND

**A.       General Background**

2.       On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors

in possession.

3.       Contemporaneously herewith, the Debtors filed a motion seeking joint

administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of

unsecured creditors has been appointed in these cases.

01:16783133.2

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

**B.      The Debtors' Foreign Vendors**

5.      As explained in more detail in the First Day Declaration, a portion of the Debtors' operations are located in Mexico.  The Mexico operations are run by Standard Register Holding, S. De R.L. De C.V., Standard Register Servicios, S. De R.L. De C.V., and Standard Register de Mexico, S. De R.L. De C.V. (collectively, the "Mexican Debtors").

6.      While the automatic stay is not, by its terms, limited in its geographical scope, as a practical matter, the ability to enforce its provisions may be limited to creditors that are subject to the jurisdiction of the United States bankruptcy courts.  In this case, certain foreign vendors and service providers (the "Foreign Vendors") lack minimum contacts with the United States and, thus, may not be subject to the jurisdiction of the Court.  These Foreign Vendors, primarily located in Mexico, provide goods and services that are essential to the Debtors' operations.  Many of the Foreign Vendors have long-standing relationships with the Debtors and provide unique or customized goods and services that cannot be obtained from other sources without significant delay and cost.

7.      Based on the substantial experience of the Debtors' management in the industry and their knowledge of the Foreign Vendors, the Debtors believe there is a significant risk that the Foreign Vendors may consider themselves beyond the jurisdiction of this Court, disregard the automatic stay, and engage in conduct that would disrupt the Debtors' operations.  Indeed, among other things, Foreign Vendors may exercise self-help (if permitted under local law), which could include reclaiming vital goods already in the Debtors' possession and shutting down the Debtors' access to essential goods and services needed to maintain the Debtors' businesses as

01:16783133.2

a going concern.  The Debtors accordingly would be challenged to maintain operations in Mexico absent the relief sought herein.

8.     Foreign Vendors may also attach or foreclose on the Debtors' assets outside the United States, or sue or otherwise initiate legal actions against one or more of the Debtors in a foreign court to recover prepetition amounts owed to them.  If these Foreign Vendors were successful in obtaining a judgment against the Debtors, the Foreign Vendors may exercise post-judgment remedies.  Because the Debtors may have only limited effective and timely recourse and no practical ability to remedy this situation (absent payment of amounts sought by Foreign Vendors), their businesses could be irreparably harmed by any such action to the detriment of their estates and their creditors.

9.     Even if Foreign Vendors stop short of exercising self-help remedies against, foreclosing on, or attaching liens on the Debtors' assets, and even if they do not commence litigation or insolvency proceedings, they could cut off trade credit, demand cash on delivery terms, or simply refuse to do business with the Debtors.  Because all of the Foreign Vendors have no (or *de minimis*) assets or operations in the United States that would be subject to the jurisdiction of this Court, the Debtors have no workable enforcement mechanism against these parties.  The cumulative impact of the Foreign Vendors' actions could have a devastating effect on the Debtors' Mexico operations and the going-concern value of their businesses.

10.     In light of these consequences, the Debtors have concluded that payment of the Foreign Claims is essential to avoid disruptions to the Debtors' businesses.  Indeed, the Debtors calculate that the amount of the Foreign Vendors' prepetition claims (collectively, the "Foreign Claims")[2] pales in comparison to the potential damage to the Debtors' businesses if the Debtors'

---

[2]     The Foreign Claims include all prepetition claims for goods or materials and services provided to the Debtors, as well as import/export fees, customs fees, or duties related to such claims.

01:16783133.2

Mexico operations were to shut down without warning.  Therefore, the Debtors' other creditors will benefit from the Debtors' payments to the Foreign Vendors.

11.    The Debtors propose to pay the prepetition claims of Foreign Vendors only to the extent necessary and only on such terms and conditions as are appropriate, in the Debtors' business judgment, to avoid disruptions to their business.  If the Court authorizes payment of the Foreign Claims, the Debtors estimate that the maximum amount they would pay to Foreign Vendors is approximately $1.6 million.

## RELIEF REQUESTED

12.    By this motion, the Debtors seek entry of an order  authorizing the Debtors to pay, in their sole discretion, the Foreign Claims in the amount of up to $1.6 million.

13.    The Debtors propose to pay Foreign Claims only for those Foreign Vendors that agree, to the Debtors' satisfaction, to continue to supply goods or services to the Debtors according to (a) the most favorable trade terms and practices (including, without limitation, credit limits, pricing, timing of payments, allowances, rebates, discounts, and other applicable terms and programs) in effect between the Foreign Vendor and the Debtors within the one year period preceding the Petition Date or (b) such other trade terms and practices as agreed to by the Debtors and the Foreign Vendor (the "Customary Trade Terms").  However, if the Debtors are unable to negotiate continued supply upon Customary Trade Terms, the Debtors seek authority, based on their business judgment, to pay Foreign Vendors all or a portion of their Foreign Claims in return for the continued supply of critical goods and services (even if such payment is not according to the Customary Trade Terms).

14.    Some of the Foreign Vendors also may have obtained mechanics' liens, possessory liens, or similar trade liens (the "Trade Liens") on the Debtors' assets based upon the claims held by those Foreign Vendors.  As a further condition of receiving payment on account

01:16783133.2

of a Foreign Claim, the Debtors propose that a Foreign Vendor must agree to take whatever action is necessary to remove, to the Debtors' satisfaction, the Trade Lien at the Foreign Vendor's sole cost and expense.

15.    Finally, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized to receive, process, honor, and pay any and all checks presented for payment of, and to honor all wire transfer requests made by the Debtors related to Foreign Claims whether such checks were presented or wire transfer requests were submitted prior to or after the Petition Date, as directed by the Debtors, provided that sufficient funds are available in the applicable accounts to make the payments.

## BASIS FOR RELIEF REQUESTED

**A.    Payment of the Foreign Claims is Warranted Pursuant to Section 363 of the Bankruptcy Code**

16.    Courts in this district consistently authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances.  In authorizing such payments, those courts generally rely on legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code.  Here, the Court should follow the overwhelming precedent in this district and authorize the Debtors to pay the Foreign Claims.

17.    Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section

363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

18.     The Debtors have a strong business purpose for paying the Foreign Claims here. Indeed, failure to pay the Foreign Claims—or at least some portion of them—jeopardizes the Debtors' supply chain of essential goods and services.  If the Foreign Vendors are unwilling to provide their goods and services postpetition because of their outstanding prepetition claims, the Debtors' operations would suffer dramatically, compromising the value of the Debtors' estates to the detriment of all creditors.

19.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *In re Ionosphere Clubs*, 98 B.R. at 176.  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id.* at 175-176 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

20.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in  *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581

(3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating courts may authorize payment of pre-petition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. at 824-45 (noting that, in the Third Circuit, debtors may pay pre-petition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

21.     This flexible approach is particularly critical where prepetition creditors—here, the Foreign Vendors—are essential to the Debtors' continuing operations.  In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'"  *Id.*  The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code."  *Id.* at 932.

22.     As in *Just for Feet*, the payment of the Foreign Claims "is critical to the Debtors' reorganization."  *Just for Feet*, 242 B.R. at 826.  Moreover, the Debtors have narrowly tailored the definition of Foreign Vendors to include only those suppliers who are most likely to assert that the automatic stay is inapplicable to them and who provide products or services that are

essential to preserve the value of the Debtors' business as a going concern. Finally, with respect to each Foreign Vendor, the Debtors have examined other legal options short of payment of such vendor's prepetition claims and have determined that there exists no practical or legal alternative to payment of the Foreign Claims without significant disruption of the Debtors' business operations. To preserve their business, and maximize their enterprise as a going concern, the Debtors must be able to continue operating their business—and that requires that this Court permit the Debtors to maintain their supply chain of essential goods and services.

23.     Courts in this district and in other jurisdictions routinely authorize chapter 11 debtors to pay claims to foreign entities outside the reach of the court's jurisdiction, where it would be unduly time-consuming and expensive to seek to enforce an order of the bankruptcy court in the creditor's home country, and where the payments are essential to the debtor's continued operations. *See, e.g.*, *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (MFW) (Bankr. D. Del. May 13, 2009) (order authorizing the debtors to pay up to $800,000 in prepetition claims of foreign vendors); *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. Mar. 9, 2009) (same up to $3.5 million); *In re Leiner Health Prods. Inc.*, No. 08-10446 (KJC) (Bankr. D. Del Apr. 8, 2008) (same up to $11.9 million); *In re Amtrol Holdings, Inc.*, No 06-11446 (KG) (Bankr. D. Del. Jan. 11, 2007) (same up to $875,000); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 21, 2006) (same up to $3.4 million); *see also In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006); *In re Delta Air Lines, Inc.*, No. 05-17923 (ASH) (Bankr. S.D.N.Y. Sept. 16, 2005); *In re Northwest Airlines Corp.*, No. 05-17930

(ALG) (Bankr. S.D.N.Y. Sept. 15, 2005).[3]  The Debtors respectfully submit that similar relief is warranted in these Chapter 11 Cases.

**B.     The Court May Also Authorize Payment of the Foreign Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

24.     The Debtors, operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 BR. 487, 497 (Banks. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including operating business's going-concern value." *Id.*

25.     It has been noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only by the preplan satisfaction of a prepetition claim."  The *CoServ* court specifically noted that pre-plan of reorganization satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98.  The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.  Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

---

[3]     Because of the voluminous nature of the orders cited herein, copies of such orders are not attached to this motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

26.     Payment of the Foreign Claims meets the test set forth in *CoServ*.  As described above, the Debtors have narrowly tailored the amounts payable on account of Foreign Claims to encompass only those Foreign Vendors that are essential to the business and operation of Debtors' businesses.  Any interruption of the Debtors' operations could cost the Debtors' estates hundreds of thousands of dollars in lost revenues and furthermore, could cause the Debtors' to lose a significant amount of customers.  The harm that would stem from the failure to pay of any of the Foreign Vendors is disproportionate to the amount of the prepetition claims that the Debtors are seeking to pay hereunder.  Moreover, with respect to each Foreign Vendor, the Debtors have examined other options short of payment of such Foreign Claims and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of the Foreign Claims.  Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Foreign Claims.  Accordingly, the Court should grant the relief requested herein.

**C.     Section 503(b)(9) of the Bankruptcy Code Supports Payment of the Foreign Claims**

27.     Furthermore, with respect to Foreign Claims that arise from goods provided within 20 days of the petition date, the issue of payment proves to be mostly one of timing.  Section 503(b)(9) of the Bankruptcy Code provides administrative expense treatment to claims arising from goods received by the Debtors in the 20 days prior to the Petition Date.  As a result, the Debtors would have to pay these Foreign Claims in full, to the extent they fall within the scope of section 503(b)(9) of the Bankruptcy Code, regardless of the timing of such payment.

**D.     The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

28.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**E.     Immediate Relief Is Justified**

29.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

30.     Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or

threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and

irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable

harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional

standards governing the issuance of preliminary junctions.  *See* 9 Alan N. Resnick & Henry J.

Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable

harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when

granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir.

2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

31.    As described herein and in the First Day Declaration, the Debtors will suffer

immediate and irreparable harm without Court authorization to pay the Foreign Claims and other

related relief requested herein.

32.    Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested

herein should be granted.

## REQUEST FOR WAIVER OF STAY

33.    To implement the foregoing, the Debtors seek a waiver of any stay of the

effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any

"order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors

submit that the relief requested in this Motion is necessary to avoid immediate and irreparable

harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample

cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

34.    To implement the foregoing immediately, the Debtors respectfully request a

waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to

apply.

01:16783133.2

## DEBTORS' RESERVATION OF RIGHTS

35.     Nothing contained herein is intended or should be construed as an admission of the validity or priority of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim with respect to Foreign Vendors in accordance with applicable law and to assume or reject any agreements with such parties in accordance with the applicable provisions of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

36.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A, in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; (vi) the Banks; and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:16783133.2

14

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    March 12, 2015
       Wilmington, Delaware

*/s/ Maris J. Kandestin*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and Debtors in Possession*

01:16783133.2

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket  No. ___ |

**ORDER AUTHORIZING PAYMENT
OF PREPETITION CLAIMS OF FOREIGN VENDORS**

Upon the *Debtors' Motion for Entry of An Order Authorizing Payment of Prepetition Claims of Foreign Vendors* (the "Motion")[2] of Standard Register and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and in consideration of the First Day Declaration; and it appearing that notice of the Motion has been given as set forth in the Motion and that such notice is

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

01:16783133.2

adequate and no other or further notice need be given; and a hearing having been held to

consider the relief requested in the Motion; and upon the record of the hearing on the Motion and

all of the proceedings had before the Court; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and

all other parties in interest; and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      The Debtors' payment of Foreign Claims owed to Foreign Vendors shall not

exceed, in the aggregate, $1.6 million, unless otherwise ordered by the Court.

3.      The Debtors are authorized, in their sole discretion, to pay the Foreign Claims of

Foreign Vendors upon such terms and in the manner provided in the Motion and this Order, in

the ordinary course of business, when due, and not on an accelerated basis, *provided, however*,

that any Foreign Vendor that accepts payment pursuant to the authority granted in this Order

agrees to supply goods and services to the Debtors postpetition on (a) the most favorable trade

terms and practices (including, without limitation, credit limits, pricing, timing of payments,

allowances, rebates, discounts, and other applicable terms and programs) in effect between the

Foreign Vendor and the Debtors within one year before the Petition Date or (b) such other trade

terms and practices as agreed to by the Debtors and the Foreign Vendor (the "Customary Trade

Terms"); *provided further, however*, that the Debtors have the right to adjust normal trade terms

with any Foreign Vendor according to the facts and circumstances.

01:16783133.2

2

4.      Any Foreign Vendor that accepts payment from the Debtors on account of all or a portion of a prepetition claim pursuant to this Order shall be deemed to (a) agree to the terms and provisions of this Order and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets and properties to the extent of such payment.

5.      Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Foreign Claims that are dishonored or rejected.

7.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved order regarding post-petition financing and any budget in connection therewith.

8.      Nothing contained herein shall be construed as an admission of the validity or priority of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; and any payment made pursuant to the Court's order shall not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.      The Debtors expressly reserve their rights to contest any invoice or claim with respect to Foreign Vendors in accordance with applicable law and to assume or reject any

01:16783133.2

agreements with such parties in accordance with the applicable provisions of the Bankruptcy Code.  The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

10.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied by the contents of the Motion.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2015
          Wilmington, Delaware


_____

UNITED STATES BANKRUPTCY JUDGE

01:16783133.2