IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-\_\_\_\_\_ (\_\_\_) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF DERMOTT O'FLANAGAN IN
SUPPORT OF THE FINANCING MOTION**

I, Dermott O'Flanagan, make this Declaration under 28 U.S.C. § 1746 and state as follows:

1.  I am a Director with the distressed advisory and restructuring practice of Lazard Middle Market LLC ("Lazard"), investment banker to The Standard Register Company ("Standard Register") and the other above-captioned debtors and debtors in possession (collectively, the "Debtors"). I submit this Declaration in support of the Debtors' proposed entry into (A) the Super-Priority Priming Debtor in Possession Delayed Draw Term Loan Credit Agreement (the "DIP Term Loan Agreement") among the Debtors, the lenders party thereto (the "DIP Term Lenders"), and Silver Point Finance, LLC ("Silver Point"), as Administrative Agent, in the amount of up to $30 million (collectively, the "DIP Term Loans"), and (B) the Postpetition Loan and Security Agreement (the "DIP ABL Credit Agreement" and together with the DIP Term Loan Agreement, the "DIP Loan Agreements") among the Debtors, the lenders party thereto (the "DIP ABL Lenders," and together with the DIP Term Lenders, the "DIP Lenders"), and Bank of America N.A. ("BofA"), as Administrative Agent, in the amount of up to $125

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

million (the "DIP ABL Loans" and together with the DIP Term Loans the "DIP Loans"), all as more fully described in the *Debtors' Motion for Order (A) Authorizing Debtors (I) to Provide Adequate Protection to the Debtors' Secured Lenders, (II) to Obtain Interim Postpetition Financing on a Superpriority, Secured and Priming Basis in Favor of Silver Point Finance, LLC, as Administrative Agent for Proposed DIP Term Lenders, and Bank of America, N.A., as Administrative Agent for Proposed DIP ABL Lenders, and (III) to Modify the Automatic Stay; and (B) Scheduling, and Establishing Deadlines Relating to a Final Hearing and Entry of a Final Order on Postpetition Financing* (the "Financing Motion").

2. Except as otherwise indicated, all statements in this Declaration are based upon my review of relevant documents, my discussions with the Debtors and their professionals, and my personal knowledge and experience. If I were called upon to testify, I could and would testify to each of the facts set forth below.

## Qualifications of Declarant and Lazard

3. I graduated from Georgetown University with a bachelor of science degree in business administration with a concentration in finance. I have been employed at Lazard since 2004 and focused on advising corporations and other constituents on restructuring transactions for the last 8 years. I also have considerable experience with mergers, acquisitions and financing transactions. Prior to joining Lazard, from 2003 to 2004, I worked at a subsidiary of McGladery & Pullen where I focused on mergers and acquisitions of private middle market companies. I have been involved in the preparation of various valuation reports on numerous occasions. The primary individuals at Lazard responsible for day-to-day discussions with the Debtors relating to general restructuring advice, and financing efforts have been Andrew Torgove, Nicholas Verhein, and me.

4.      I have extensive experience representing companies, creditors, and other constituents in complex restructuring, mergers, acquisitions and financing transactions across a wide range of industries. I have personally served as an investment banker in over 20 transactions involving the sale of all or substantially all of a company's assets, resulting in sale proceeds ranging from under $100 million to over $500 million.

5.      Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority and is a wholly owned indirect subsidiary of Lazard Freres & Co. LLC ("Lazard Freres"), one of the largest and preeminent investment banking and financial advisory firms in the world.  Overall, since 1990, Lazard Freres and its professionals have been involved in over 250 restructuring transactions, representing over $1 trillion in debtor assets.

## Background

6.      The Debtors engaged Lazard in December 2014 to provide investment banking services including exploring restructuring, financing and M&A alternatives.  Since then, the Debtors, with Lazard's assistance, have explored a range of strategic and financial alternatives to address covenant defaults and a projected liquidity shortfall.  The Debtors worked to evaluate various in-court and out-of-court alternatives.  Ultimately, the Debtors, with the assistance of Lazard, determined that a sale of substantially all of the Debtors' assets as a going concern would maximize the value available to the Debtors' creditors.

7.      Lazard conducted extensive due diligence on the Debtors' assets and operations, including frequent onsite meetings and an extensive dialogue with the Debtors' senior management team.  Shortly after Lazard's engagement, Standard Register hired McKinsey

Recovery & Transformation Services U.S., LLC ("McKinsey RTS") to assist with the development of a strategic business plan.

8.  Due to the Debtors' severe liquidity constraints, Lazard and the Debtors did not engage in a complete pre-filing marketing process of the Debtors' business. However, the Debtors and Lazard were approached by several potential strategic buyers that expressed an interest in evaluating the transaction. These potential strategic buyers signed non-disclosure agreements and conducted due diligence in consideration for a potential acquisition of the Debtors' business operations as a going concern.

9.  As part of this process, Lazard worked with McKinsey RTS and the Debtors to establish a virtual data room to facilitate due diligence conducted by potential buyers. One of the potential buyers conducted extensive on-site diligence, including meetings with management and the Debtors' advisor. This strategic buyer ultimately submitted a term sheet and draft of an asset purchase agreement and actively pursued the stalking horse position. Other potential strategic buyers engaged in due diligence on a more limited scale.

10.  In addition to the potential strategic buyers, the lenders under that certain First Lien Credit Agreement, dated as of August 1, 2013 (the "Prepetition First Lien Credit Agreement" and the lenders thereunder, the "Prepetition First Lien Lenders") provided a term sheet for (a) the acquisition of the Debtors and (b) the provision of debtor-in-possession financing. Lazard in conjunction with the Debtors' other professionals, negotiated with the Prepetition First Lien Lenders and the potential strategic buyer on their respective asset purchase agreements. These agreements, as subsequently modified, were presented to the Restructuring Committee of Standard Register's Board of Directors, which determined that the proposal of the

Prepetition First Lien Lenders provided more value and greater certainty of consideration than the strategic buyer's proposal.

### DIP Financing and Cash Collateral

11.     In light of the Debtors' projected cash shortfall over the last month, Lazard assisted the Debtors in seeking debtor-in-possession financing from several sources to provide the liquidity that the Debtors need to operate in chapter 11.  Lazard sought debtor-in-possession financing proposals from seven potential lenders.  No party, other than the DIP Lenders, was willing to provide a proposal on terms reasonably acceptable to the Debtors and with sufficient flexibility to support the sale process primarily because of their unwillingness to engage in a contested priming fight with the Debtors' existing secured lenders.  And, no party was willing to provide debtor-in-possession financing on a junior or an unsecured basis.

12.     The DIP Loan Agreements represent the most favorable terms that the Debtors were able to negotiate with respect to debtor-in-possession financing.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Dermott O'Flanagan*
Dermott O'Flanagan