1           UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF DELAWARE
2

3  IN RE:                        )  Case No. 15-10541 (BLS)
                                 )  Chapter 11
4  THE STANDARD REGISTER COMPANY, )
   *et al.*,                      )
5            Debtors.            )  Courtroom No. 6
                                 )  824 Market Street
6                                )  Wilmington, Delaware 19801
                                 )
7                                )  March 13, 2015
                                 )  12:00 P.M.
8
                      TRANSCRIPT OF HEARING
9          BEFORE HONORABLE BRENDAN L. SHANNON
              UNITED STATES BANKRUPTCY JUDGE
10
   APPEARANCES:
11

12 For the Debtors:          Young Conaway Stargatt & Taylor
                             By:  MICHAEL NESTOR, ESQUIRE
13                           1000 North King Street
                             Wilmington, Delaware 19801
14
                             Gibson Dunn & Crutcher LLP
15                           By:  ROBERT KLYMAN, ESQUIRE
                                  SAM NEWMAN, ESQUIRE
16                           333 South Grand Avenue
                             Los Angeles, California 90071
17
   ECRO:                     LESLIE MURIN
18
   Transcription Service:    Reliable
19                           1007 N. Orange Street
                             Wilmington, Delaware 19801
20                           Telephone:  (302) 654-8080
                             E-Mail:  gmatthews@reliable-co.com
21

22 Proceedings recorded by electronic sound recording:
   transcript produced by transcription service.
23

24

25

```
 1   For Bank of America:        Richards Layton & Finger
                                 By:    MARK COLLINS, ESQUIRE
 2                               920 North King Street
                                 Wilmington, Delaware  19801
 3
     For Silver Point:           Skadden Arps
 4                               By:    RON MEISLER, ESQUIRE
                                 155 N. Wacker Drive
 5                               Chicago, Illinois  60606

 6   For Bank of America:        Parker Hudson
                                 By:    ED DOBBS, ESQUIRE
 7                               118 S. Gadsden Street, #200
                                 Tallahassee, Florida 32301
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                   INDEX

2                                                                    Page

3  NOTICE OF AGENDA MATTERS:

For the Debtors, by Mr. Nestor                                        4
4  For the Debtors, by Mr. Klyman                                        5
For Bank of America, by Mr. Collins                                  12
5  For Silver Point, by Mr. Meisler                                     28
For Bank of America, by Mr. Dobbs                                    31
6  For the Debtors, by Mr. Newman                                       41

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  All rise.

2          THE COURT:  Please be seated.  Good afternoon.

3          MR. NESTOR:  Good afternoon, Your Honor, Michael

4  Nestor, Young Conaway Stargatt & Taylor appearing on behalf

5  of the Debtors in these cases, Your Honor.  The lead Debtor

6  is going to be Standard Register Company going forward.  And

7  we want to thank Your Honor for hearing us today.  We

8  understand you're pitch hitting, but we appreciate you giving

9  us time.  It's very important and critical that we have the

10  first day orders entered today and have the money start

11  flowing as quickly as possible.

12          Your Honor, I also want to thank the office of the

13  U.S. Trustee.  We were able to get comments from Mr. Kenney

14  and resolve, I think, all of his issues with respect to all

15  of the first day pleadings.  He sent several comments,

16  questions, and concerns relative to the DIP.  And working

17  with the DIP lenders, we were able to resolve them shortly

18  before the hearing.  But we'll walk Your Honor through those

19  changes when we get the DIP.

20          Your Honor, we understand you have a tight calendar

21  today particularly with respect to this matter, so we're

22  going to try to avoid the pomp and circumstance and get right

23  to the action.

24          THE COURT:  That's fine.

25          MR. NESTOR:  So, Mr. Klyman is going to do a brief

1   overview.  What we'd like to do then is go to the cash

2   management motion, have that approved, so we'll go a little

3   bit out of order if it pleases Your Honor; then get the DIP,

4   address the DIP with Your Honor and then the rest of the

5   first day pleadings.

6          THE COURT:  That's fine.

7          MR. NESTOR:  Thank you, Your Honor.  I'll cede the

8   podium to Mr. Klyman.

9          THE COURT:  Very good.

10          MR. KLYMAN:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MR. KLYMAN:  Your Honor, before I start I want to

13   thank you on behalf of the Debtor for squeezing us in and I'd

14   like to do a brief introduction of Kevin Carmody from

15   McKinsey who's here.  He's the CRO of the Debtors.

16          THE COURT:  Welcome.

17          MR. KLYMAN:  Jerry Soward who's the general counsel,

18   Ben Cutting who's the CFO and Dermott O'Flanagan of Lazard

19   who's also here, whose declaration has been submitted.

20          Your Honor, the Debtors are in the business of

21   providing communication services and workflow solutions.  And

22   what does this mean?  Well they provide integrated

23   communications, business solutions for clients in financial,

24   industrial, retail and services industry.  They provide

25   customer communications that provide direct marketing, print

1  management such as business forms, product market and

2  labeling, promotional marketing and other associated services

3  they're also being in the healthcare field and as set forth

4  in the Carmody declaration.  They're involved in electronic

5  consent forms and software management, and other workflow

6  information important to healthcare providers, including

7  insurers and hospitals.

8       The Debtors consist of 11 entities including six

9  U.S. entities, three Mexican entities, and one Canadian

10 entity all spearheaded by The Standard Register Company.  A

11 corporate organization chart is attached to the Carmody

12 declaration as Exhibit A.  Standard Register was founded in

13 1912; it's a publicly traded company which is headquartered

14 in Dayton, Ohio.

15      The Debtors have operations in all U.S. States:

16 Puerto Rico, Canada, and Mexico.  Altogether, they currently

17 employ over 3400 employees, plus approximately 500 contract

18 workers.  They have a total of 55 production and warehouse

19 facilities in North America; the majority of which are

20 located in the United States.

21      The Debtors generated approximately $904 million

22 dollars in revenue since 2014 and $974 million dollars in

23 2012, but suffered losses of approximately $466 million

24 dollars in 2014, and $7.4 million dollars in 2013.

25      THE COURT:  I'm sorry what their losses in 2014?  It

1 sounds out of whack.

2        MR. KLYMAN:  That sounded high to me.  That's a

3 typo.  I think it's $66 million dollars in 2014 and $7.4

4 million dollars in 2013.  The Debtors' capital structure is

5 not unusual for companies this size.  They have an ABL

6 revolver provided by Bank of America and Wells.  Bank of

7 America is the administrative agent which provides up to

8 approximately $125 million dollars in aggregate loans and

9 other financial accommodations.  It's in the form of an asset

10 base revolving credit facility.   That loan matures August 1,

11 2008.

12        The ABL secured by first lien on accounts receivable

13 inventory and other working capital as described in the

14 Carmody declaration and a second priority lien it's

15 essentially all the other assets of the Debtors, the U.S.

16 Debtors, as subject to the term loans which I'll describe in

17 a minute.  As of the petition date, the Debtors have drawn

18 approximately $92.7 million dollars on the ABL loan.  And

19 they've incurred approximately outstanding letters of credit

20 in the amount of $3.6 million dollars.

21        The Debtors also have term loans, first and second

22 liens that they inherited and assumed in connection with a

23 merger with an entity called Workflow One.  The first lien

24 has Silver Point as the administrative agent in the original

25 principle amount of a $124 million dollars, also a maturity

1   date of August 1, 2018.  The first lien debt is secured by

2   first priority lien on substantially all assets of the

3   Debtors that are not subject to the first lien of the ABL

4   lender.  And as of the petition date the Debtors owed

5   approximately $115.3 million dollars on that first lien.

6        The Debtors also have a second lien facility; also

7   Silver Point is the administrative agent in the principle

8   amount of approximately $96 million dollars.  That second

9   lien is perfected by the same collateral that secures the

10  first lien term loan, also junior to the rights of the term

11  loan lender.  There's a first lien lender and junior to

12  whatever the ABL has as a first lender.  The relative rights

13  of the ABL in the first and second lien term lenders are

14  governed by an inter-creditor committee.

15       The Debtor also has 18 capital leases in the

16  aggregate amount of $10.6 million dollars as of the petition

17  date.  The Debtors are also subject to a qualified pension.

18  The Debtors believe that it is underfunded in the approximate

19  amount of approximately $193.6 million dollars.  The Debtors

20  made contributions to the qualified pension plan of

21  approximately $24.7 million dollars in 2013 and $37.2 million

22  in 2014, and they face projected contributions in 2015 of

23  approximately $24.8 million dollars.  The Debtors also

24  estimate that they have trade debt of approximately $72.7

25  million dollars as of the petition date.

1  So why are we here?  Well, because of declining

2  demand of the printing business the Debtors have struggled to

3  achieve revenue and EBITDA targets, make interest payments on

4  the secured debt, contributions, count backs.  We did obtain

5  an amendment from our term loan lenders with respect to

6  levers covenants but we remain highly levered and cash

7  constraints.  And those amendments expire at the end of

8  February.

9  The Debtors plan of action is to implement 363 sale

10  on an expedited basis.  The Debtors retained Lazard

11  prepetition to market the company.  All of that will be laid

12  out in the bid procedures hearing which will be before Judge

13  Shannon.  The ABL and term loan lenders are supportive of a

14  sale process.  Silver Point as the first lien term lender has

15  agreed to be the stalking horse under that sale process.

16  The first day motions, Your Honor, as supported by

17  the declaration of Kevin Carmody and the declaration of

18  Dermott O'Flanagan and I'd like to make sure that those are

19  included as part of the record.

20  THE COURT:  Any objection to their admission?  I

21  hear none.  They're admitted without objection.

22  [Declarations of Kevin Carmody and Dermott O'Flanagan

23  received into evidence].

24  MR. KLYMAN:  Thank you, Your Honor.  The first

25  motion we'd like to address, Your Honor, is joint

1  administration which is at Tab 3, I believe, in your hearing

2  binder, item three on the docket.  There are 11 Debtors:

3  integrated financial and business operation to clearly reduce

4  the administrative burden and joint administration;

5  therefore, we respectfully request that Your Honor enter a

6  joint admin motion; an order approving the joint admin

7  motion.

8         THE COURT:  Do you have any changes to the order?

9         MR. KLYMAN:  No, Your Honor.

10         THE COURT:  I have no comment.  Does anyone wish to

11  be heard?  I'll approve joint administration.

12         MR. KLYMAN:  Your Honor, would you like these orders

13  handed up at the end or as you --

14         THE COURT:  No, let's do them as we go; otherwise,

15  I'll lose track.

16         UNIDENTIFIED SPEAKER:  [indiscernible].

17         THE COURT:  Yes, of course.  Thank you.

18         MR. KLYMAN:  Thank you, Your Honor.  Your Honor, as

19  Mr. Nestor mentioned we'd like to take some of these out of

20  order from the agenda.  I'd like to move next to the DIP

21  financing motion which is at Tab 15.

22         THE COURT:  I thought he said cash management first.

23  Do you want to do the DIP first?

24         MR. NESTOR:  Well, Your Honor, the DIP order wasn't

25  here yet, but it has arrived, so we can go with it.

1          THE COURT:  All right.  Go ahead.

2          MR. KLYMAN:  Your Honor, as laid out in the Carmody

3    declaration, the Debtors have an acute need for the DIP

4    financing.  The Debtors do not have sufficient cash

5    collateral to operate their business.  We currently have only

6    approximately $1.5 million dollars in cash which is subject

7    to the lenders security [indiscernible].

8          Absent the DIP loan, the Debtors would start out

9    with a primi fight that they likely could not win.  And, in

10   fact, as set forth in the O'Flanagan declaration, Lazard went

11   out to at least seven lenders to see if any of them would be

12   interested in either providing unsecured debt, administrative

13   debt, junior debt or fighting the battle and came up with no

14   lenders willing to pursue that.

15         Your Honor, the DIP loan and the terms of it are

16   laid out in great detail in the Carmody declaration motion.

17   I'm happy to provide you with an overview or just identify a

18   couple of points that need to be emphasized.  And then we can

19   talk about where we are in the order.

20         THE COURT:  Yeah we don't need to go through it.  I

21   did read the declarations and I went through the motion in

22   detail, so I'm aware of what's going on.

23         MR. KLYMAN:  The one item that did drop out of the

24   motion that is buried in the order that I just wanted to

25   highlight for the record is that we are providing as part of

1  the adequate protection cash interest payments to the ABL

2  lender and the first lien term lender.  That's in our DIP

3  budget.  That's buried in the order that was not highlighted

4  in the motion.  I just wanted to make sure that's clear on

5  the record.

6          THE COURT:  Okay.

7          MR. KLYMAN:  So, Your Honor, with that, maybe I can

8  turn it over to Mr. Collins to talk about the changes that

9  were made to the order in response to the comments by the

10 U.S. Trustee and based on recent experience in front of Your

11 Honor.

12          THE COURT:  Okay.

13          MR. COLLINS:  Good afternoon, Your Honor, for the

14 record Mark Collins of Richards Layton & Finger on behalf of

15 Bank of America.

16          THE COURT:  Good afternoon.

17          MR. COLLINS:  May I approach, Your Honor, with the

18 blackline?

19          THE COURT:  Yes.  Can you share a blackline with my

20 colleagues?  Thank you.

21          MR. COLLINS:  Your Honor, we have made a number of

22 changes to the form of order both with respect to comments

23 from Mr. Kenney, as well as precedent of Your Honor with

24 respect to DIP orders of what you'd like to see and don't

25 like to see in these DIP orders.  And we did our best in the

1  past 24 hours or so to mark up the order, and if I could walk

2  you through that.

3          THE COURT:  Sure.

4          MR. COLLINS:  The first change of note is on page 5.

5  With respect to the notice of this motion, Your Honor, we

6  completely struck that the notice was due and sufficient for

7  all purposes and simply say that it complies with the

8  Bankruptcy Code, the Bankruptcy Rules and the local rules.

9          THE COURT:  Okay.

10          MR. COLLINS:  Next material change is on page 17.

11  We struck the last sentence of paragraph 6(h), as being

12  redundant of what was earlier in recycles.  Next change, Your

13  Honor, is page 21.  We did two things, Your Honor, and if I'm

14  going too fast please let me know.

15          THE COURT:  You're fine.

16          MR. COLLINS:  We made clear that this sentence with

17  respect to the inability to avoid the DIP loan under

18  applicable law is subject to paragraph 27 with respect to the

19  roll-up.  And we also struck the words state or restrained as

20  really not being appropriate for this concept.

21          THE COURT:  Okay.

22          MR. COLLINS:  We also with the next sentence struck

23  the words and directed with respect to the Debtors'

24  obligation to perform all acts in connection with the

25  execution of the DIP documents.

1          THE COURT:  Okay.

2          MR. COLLINS:  Page 25 in paragraph (e), 9(e) you

3  made clear that it's subject to the entry of a final order

4  with respect to our lien for security interest.

5          THE COURT:  Okay.

6          MR. COLLINS:  Subject to the entry of the final

7  order subject to support of any lien or security interest of

8  any lessor or landlord under agreement or applicable State

9  law.  We'll give them notice and bring this back for purposes

10 of the final hearing.

11         Page 27, paragraph 11(a) we simply defined the

12 concept of the roll-up there as we used the term roll-up

13 labor in the document.

14         THE COURT:  Okay.

15         MR. COLLINS:  We corrected a typographical error on

16 page 28 in paragraph 20(b).  Page 30 there's something now

17 used to define term roll-up.  Page 32 with respect to

18 paragraph 13(d), Your Honor, what's more traditional I think

19 in our District.  It provides for the review period, the

20 professional fees associated with the lenders.  There is a 10

21 day review period.  If there are no objections the Debtors

22 are then to pay the undisputed fees within three business

23 days after the review period.  To the extent there is an

24 objection the Debtors will withhold payment of the disputed

25 amount and that would be then determined by Your Honor in due

1  course.

2          THE COURT:  Okay.  And then you track that again on

3  page 35 and 36?

4          MR. COLLINS:  Yes.  In paragraph 15, Your Honor, I

5  had to do a couple things here.  Paragraph 15 deals with both

6  the 506(c) waiver and the equities of the case exception

7  under 552(b).  We've made those two concepts subject to entry

8  of a final order with respect to the prepetition secured

9  obligations.  We made the 506(c) also subject to the final

10  order with respect to the DIP agent on behalf of any DIP

11  credit party.

12          So what is being affected, implemented as part of

13  the interim order is that the DIP agent on behalf of any DIP

14  credit party with respect to the new money, not the roll-up,

15  gets the benefit of the equities of the case exception under

16  552(b).

17          THE COURT:  Okay I understand.

18          MR. COLLINS:  Next page 38, paragraph 17 we just

19  modified the language to make it more consistent so it says

20  subject to entry of a final order to 506(c) waiver.

21          Page 41, paragraph 20(a) instead of having a bar to

22  the entry of an order in the future, it would now constitute

23  an event of default if there is entered in these cases, the

24  orders are set forth bearing.

25          THE COURT:  Okay; good.

1          MR. COLLINS:  Page 42 instead of having DIP order

2    say what must go into any dismissal order, we simply have

3    this state that notwithstanding the entry of any dismissal

4    order the claims and the liens remain in full force and

5    effect.

6          THE COURT:  I'll think about that one.

7          MR. COLLINS:  Okay, page 43; again, to be consistent

8    in paragraph (e) with respect to credit bid rights that is

9    subject to entry of the final order.  And we struck the last

10   sentence of that paragraph.

11         Page 45, paragraph 21 we have here authorizing

12   officers to execute the documents.  And we also struck the

13   relation back in time with respect to the filing of any such

14   documents.

15         THE COURT:  Very good.

16         MR. COLLINS:  We also, Your Honor, with respect to

17   the filing office with respect to perfection documents.

18   They're simply authorized to accept the certified copy rather

19   than a directed one.

20         Page 46 contains the same language with respect to

21   the payment of lender professional fees.

22         THE COURT:  Right.

23         MR. COLLINS:  Page 48, paragraph 24(b), Your Honor,

24   what we did here I think what this does is that during the

25   notice period, the default notice period obviously parties

1  can come in and object.  It provides, though, that any such

2  objection shall be to whether or not there has been an event

3  of default.  That is, however, subject to Your Honor's

4  further order or Judge Shannon's further order.  So unless

5  otherwise ordered by the Court, the issue that would be

6  presented during the default notice period would be whether

7  or not there an event of default has occurred.

8        THE COURT:  Well does that mean, I'm just trying to

9  be clear; does that mean that a party could -- so you've

10 declared event of default, the five day period starts.  The

11 Debtors come in and say Your Honor you shouldn't allow

12 lifting of the automatic stay, etcetera for the following

13 reasons, three of which have nothing to do about whether an

14 event of default has occurred.  I haven't or Judge Shannon

15 hasn't at that time ordered that that's appropriate, but we

16 go to an emergency hearing clear that Courts can hear those

17 arguments and decide at that time whether or not they're

18 appropriate?

19       MR. COLLINS:  That's correct, Your Honor.  So you

20 would decide at that hearing if you thought it appropriate to

21 go into those other areas.  In other words, the Debtors or

22 whoever the party would be would have to show some reason to

23 go beyond the terms of the DIP credit agreement itself, some

24 justification, some cause.

25       THE COURT:  Well they're going to have to -- okay,

1  all right.

2          MR. COLLINS:  Okay.  Page 51, this was a comment

3  from Mr. Kenney.  He notes that paragraph 27(a) is subject to

4  the provisions of subparagraph (e) below and (e) below simply

5  provides that to the extent a Chapter 7 Trustee or a Chapter

6  11 Trustee is appointed during the investigation period, they

7  are not bound by the Debtors' stipulations or have the

8  benefit of the balance of the investigation period.

9  Similarly, if there is a cause of action that has been filed

10  by a creditor's committee or another party with record of

11  standing and a Trustee is appointed they can then continue to

12  pursue that litigation.

13          THE COURT:  Okay.

14          MR. COLLINS:  In paragraph 28 we modified the title

15  to the paragraph, so we struck Debtors' waivers and titled it

16  certain Debtors' defaults.  And noted that if the Debtor did

17  these items below it would constitute an event of default.

18  If an order is entered similarly, it would constitute an

19  event of default.

20          THE COURT:  Okay.

21          MR. COLLINS:  And, Your Honor, we were just

22  clarifying language we added on page 54 which is more of a

23  it's actually an intercreditor issue more than anything else.

24          Paragraph 31 on page 55 comments of Mr. Kenney and

25  we've added in shall solely by reasoning thereof making it

1  clear that it's not in all capacities or in all actions.

2  It's simply with respect to the credit extension.  And I

3  think I've captured all of those material changes, Your

4  Honor.

5       THE COURT:  Does anyone have anything else before I

6  provide my comments?

7       MR. KLYMAN:  Your Honor, for the record Robert

8  Klyman of Gibson on behalf of the Debtors.  I just wanted to

9  point out to Your Honor that in the summary of the DIP order

10  in the motion where it says it's qualified by the order,

11  there were just a couple of things I wanted to bring to your

12  attention that are changed in the order.  And that is with

13  respect to the professional fee carve-out.  There's a

14  parenthetical that limits counsel for the Debtors for six

15  weeks of its budget expenses and negotiations and the point

16  is that parenthetical has been struck.  And there's also a

17  typo to the amount of the aggregate carve-out amount.  We

18  left out a zero.  And when you put it back in, it matches the

19  amount that's in the order $4,450,968.00 for the aggregate

20  professionals.

21       THE COURT:  Okay.

22       MR. KLYMAN:  Thank you.

23       THE COURT:  I don't have a huge number of comments.

24  I thought the DIP order for the most part was pretty clean.

25  And you have captured some of them already, and I'll work off

1  the blackline I guess, but I have to work because my comments

2  are on the previous blackline so.  Do the best we can to go

3  as quickly as possible.

4        First is a question, Mr. Collins, page 20, paragraph

5  (e) I think that's all one sentence.  That entire paragraph

6  is subject to entry of the final order, is that correct?

7  That's not, well --

8        MR. COLLINS:  Yes, Your Honor.

9        THE COURT:  And then you say without limiting, all

10  of that is subject to the [indiscernible]?

11        MR. COLLINS:  Yes, Your Honor.

12        THE COURT:  I'll just let Judge Shannon worry about

13  that.  My next comment this is an important one it sort of

14  first arises on page 23, subparagraph (c) and this will be

15  familiar to you, Mr. Collins, from Caldot just a few days

16  ago.  And it goes to the definition of permitted senior

17  liens.  And the issue here is that there is a priming

18  facility going into place and your adequate protection liens

19  going into place that are senior to -- well that are senior

20  subject to a series of except for, the carve-out if you will.

21  And the problem is with the definition of permitted senior

22  liens is that it's too narrow.

23        Permitted senior liens as defined only include those

24  that would not be a violation of the prepetition credit

25  agreements.  I don't know if any others exist.  But all valid

1  perfected unavoidable liens need to be protected.  And we

2  inserted some language in Caldot to that effect which was

3  fine to me.  I don't know if you want to check your notes;

4  that's important.  We need to protect that.  It appears

5  elsewhere and I think I -- well it appeared twice I this

6  paragraph; i.e., permitted senior liens as a defined term and

7  I know it appears elsewhere, and I think I've marked it.  And

8  when we come to it, I'll make that.

9         Paragraph (e) on page 25 you've made a change to

10  subparagraph (e) to make it subject to entry of a final

11  order.  I would like subparagraph (b) and (c) also to be

12  subject to entry of the final order; particularly worried

13  about notice given the rest of that language.

14         MR. MEISLER:  Sorry, Your Honor, Ron Meisler on

15  behalf of the term lenders.  I did not hear your last

16  comment. You said page 25, subparagraph (e) you wanted

17  subsection (c) subject to entry of a final order and also

18  another subsection.

19         THE COURT:  D.

20         MR. MEISLER:  D.

21         THE COURT:  D as in dog.  Actually I said them

22  backwards which is what confused you.  I'm trying to

23  understand my notes.  I'd like to add in on page 28

24  subparagraph (e) or paragraph (e) I'd like to add in two

25  places unless otherwise ordered by the Court.  And they are

1   at the end of the first proviso so it should read now prior

2   to full payment of the DIP obligation unless otherwise

3   ordered by the Court, Debtor shall not be authorized to use

4   cash collateral, etcetera.  And then the next sentence,

5   second line if the cash collateral arise from the sale of

6   both ABL priority collateral and term loan priority

7   collateral, unless otherwise ordered by the Court, the

8   provisions of the agreement apply rate of allocation.

9        The next changes to point out then on page 29 at the

10  bottom there permitted senior liens appears twice and that

11  goes to explaining the definition of that.  And at the end of

12  that sentence which is actually, paragraph is actually at the

13  top of page 30 I'd like to add at the very top there unless

14  otherwise ordered by the Court.  So it will read 510, 549 and

15  550 of the Bankruptcy Code and unless otherwise ordered by

16  the Court no lien avoided or preserved for the benefit of the

17  estate, etcetera, etcetera.

18       And then in the next paragraph, hopefully you can

19  hear me all right.  Sorry, the next paragraph after the whole

20  litany of numbers there's a parenthetical that begins which

21  shall at all times be senior for the right to be

22  [indiscernible], except the Trustee or any creditor in these

23  Chapter 11 cases or any type of proceeding under Bankruptcy

24  Code.  I'd like to strike that clause.  And then begin -- oh

25  yeah I'm sorry.  Begin the next paragraph, subparagraph (c)

1  with and unless otherwise ordered by the Court until the

2  roll-up of the prepetition debt after entry of the final

3  order, etcetera, leaving some flexibility for Judge Shannon

4  in case the roll-up gets delayed or for some other reason, I

5  want to make sure there's an ability to provide appropriate

6  relief.

7         And page 34, paragraph (a) just point out that

8  permitted senior liens appears in that paragraph twice.  And

9  I'd like to add at the end of that paragraph third line up

10 that starts and a lien, at the very end there.  It should be

11 and unless otherwise ordered by the Court no lien avoided and

12 preserved, etcetera.

13        And then subparagraph (b) this is the same comment

14 being carried over.  It's actually on page 35 at the very top

15 which is to strike the parenthetical that begins which shall

16 at all times, etcetera until the proviso.  I guess obviously

17 the definition or defined terms stay the same.

18        Page 41, paragraph 20(a) to draft my comment with

19 your change, so thank you.  Same on page 42 with your change

20 and that language so just addresses an issue I had.  You need

21 to strike the paragraph (c) and subparagraph (d) on page 42

22 and 43.  Figure out what should be in a plan and a discharge

23 when those arise; forgo the ability to [indiscernible].

24        You've addressed my comment about credit bidding;

25 thank you.  And page 45 you've addressed my comments; thank

Case 15-10541-BLS    Doc 69    Filed 03/16/15    Page 24 of 51

24

1  you.  Sorry page 47 it's amendment to DIP financing document
2  in romanette three which is about eight or nine lines down --
3  well actually, sorry after romanette three the sentence
4  begins any amendment or modification that constitutes
5  material change the effective must be approved by the Court.
6  Next sentence for purpose hereof a material change shall mean
7  a change, etcetera, etcetera.  I'm a little worried that
8  that's too narrow.  So I'd like it to say for purposes hereof
9  a material change shall mean without limitation a change,
10 etcetera.

11        You addressed my change in connection with the
12 default entity, so thank you.  Page 49, paragraph (c) I'm not
13 sure what this means.  But I think it conflicts with the
14 later proviso that says that this interim order controls in
15 the event of any inconsistencies. So maybe somebody can
16 explain to me what this is designed to do.

17        MR. COLLINS:  Your Honor, I'll take a first shot.
18 But I think to make it certain for additions in the interim
19 order that are not necessarily from the DIP credit agreement.
20 They don't conflict or simply don't they're not there.  And
21 as a result this simply says that these are additive rights
22 to the lenders that are set forth in the DIP order that may
23 not otherwise be set forth in the credit agreement.

24        THE COURT:  Well see I'm worried that this is saying
25 that forget about what the interim order says.  There might

1  be additional cumulative rights in the DIP documents.  Am I

2  getting it backwards?  Am I expanding?  I'm worried that I'm

3  expanding what's being approved beyond the four corners of

4  the interim order.

5        MR. COLLINS:  I think it's really both ways, I

6  think, Your Honor, since there's rights, powers, privileges

7  pursuant to this interim order shall be in addition to and

8  cumulative with those contained in the DIP financing

9  documents.  For this added to what is in the DIP financing

10 document, but if there is an inconsistency then the order

11 will default.

12       THE COURT:  All right.  I'll allow it for the

13 interim order.  I'll let Judge Shannon worry about it.

14       MR. COLLINS:  Thank you, Your Honor.

15       THE COURT:  Okay right below it 25(a) I'd like to

16 add unless otherwise ordered by the Court after the subject

17 to.  So it would be subject to the ABL term DIP intercreditor

18 agreement, unless otherwise ordered by the Court, all

19 previous practices, etcetera will stay in place.

20       Page -- well actually my change is on 52, page 52,

21 paragraph 27(b) at the very end is a proviso and this talks

22 about extensions of time to the challenge period.  The

23 proviso says that such order is entered before the expiration

24 of any applicable period as set forth in clause one and two.

25 But clause one and two are the original 75, 60 day and don't

1 include clause three which is some of later date.  So this

2 implies that there can only be one extension, because

3 otherwise any further extension would be beyond the -- and I

4 don't think that's what it's -- I don't think that's

5 appropriate.  I could be that there are several extensions.

6 I don't know.  So my proposed fix is to add at the end of the

7 sentence or the expiration of any continued period is the

8 language.  Or you could simply include romanette three and

9 four in the proviso; however you want to proceed.  You get

10 the idea.

11         MR. COLLINS:  Yeah we do.

12         THE COURT:  All right paragraph 28 you addressed my

13 concern.  Page 56, paragraph 33 this whole first sentence

14 about max proof claim the first long sentence is duplicative

15 of the other provision that's in the order about not needing

16 to file a proof of claim.  So I'm worried there's

17 inconsistency.  In other words there are two different

18 provisions in the order that talk about not being required to

19 file a proof of claim. And I want you to make sure either

20 pick one or make sure they're consistent.

21         MR. MEISLER:  Your Honor, one is for the

22 [indiscernible].

23         THE COURT:  Okay that's the DIP.  All right thank

24 you.

25         MR. COLLINS:  There is a typo, Your Honor, in the

1  second line of paragraph 33, which we will correct in the

2  clean order.

3         THE COURT:  Oh, I see.  Shall not be required,

4  shall be required?

5         MR. COLLINS:  Right.

6         THE COURT:  Pick one.  All right, almost done.

7  Page 58, paragraph 34, last sentence.  In no event shall any

8  DIP party have any obligation to make extensions, etc.  I

9  would like to add at the beginning of that sentence, unless

10  otherwise ordered by the Court.  Page 60, paragraph 37, I

11  would just like to begin that with the adverb solely.  So it

12  will say solely to the extent the prepetition agent, etc.,

13  has that right and the right is transferred.

14         MR. COLLINS:  Okay.         THE COURT:  Paragraph

15  38 has to go.  Page 61, paragraph 40, are we aware if there

16  any safe harbor, re-purchase agreements, swap agreements.  I

17  doubt it.  It might be customer, there might be forward

18  contracts with customers, I suppose.

19         MR. COLLINS:  I am not aware of any, Your Honor,

20  but I'm looking to others.

21         MR. MEISLER:  Your Honor.

22         THE COURT:  I mean, basically, this says that I'm

23  not trumping Sections 555, etc.

24         MR. MEISLER:  Exactly, Your Honor.

25         THE COURT:  All right.

1       MR. MEISLER:  I think that the Debtors, in fact,

2  do have swap schedules, etc.

3       THE COURT:  They will be unaffected.

4       MR. MEISLER:  Exactly.

5       THE COURT:  Well, I am not worried about the

6  Debtors' rights as much as I am for creditor rights that

7  might be being forgone that would otherwise be subject to the

8  safe harbors.

9       MR. MEISLER:  Your Honor, I think it says exactly

10  that.

11       THE COURT:  I'm not a big fan of saying that the

12  law is what the law is, but fine, that's it.  That's it.

13  That's all the comments I have.

14       MR. COLLINS:  Your Honor, if we could turn back,

15  I'm sorry, to page 20, paragraph 7E.  Your Honor, we do have

16  an error in that paragraph where we say upon entry of a final

17  order, it is the lenders and I think the Debtors' intent as

18  well that this be an operative provision in this interim

19  order as opposed to the very heart of the DIP facility and

20  how the DIP facility proceeds can be used.

21       THE COURT:  So you are striking entry of the final

22  order?

23       MR. COLLINS:  Right, so this paragraph would be

24  operative during interim period, obviously subject to

25  parties' objections at the final hearing.  This really goes

1  to --

2            THE COURT:  Okay.  Then I have two comments.

3            MR. COLLINS:  Okay.

4            THE COURT:  If we are going to strike upon entry

5  of the final order, that's fine.  We need to start the

6  paragraph with and less otherwise ordered by the Court.

7  Debtors may obtain and then if you go down, this was my

8  original comment, to the next sentence which begins without

9  limiting the generality of the forgoing sentence, unless

10  otherwise ordered by the Court, no proceeds, etc.

11            MR. COLLINS:  Okay.

12            THE COURT:  Those were my original comments

13  anyway.

14            MR. COLLINS:  Okay.

15            THE COURT:  Anything else?

16            MR. COLLINS:  No, Your Honor.

17            THE COURT:  Subject to those changes, I am happy

18  to approve the DIP.

19            MR. MEISLER:  Your Honor, I do have some comments.

20            THE COURT:  Okay.

21            MR. MEISLER:  Your Honor, we are adjusting this

22  real time, so you will excuse the pace.  Your Honor, if I

23  could start with page 42, survival of the interim order.

24  Your Honor, 42, survival of interim order and, Your Honor,

25  what we are looking for here is a new money lender and our

1  $30 million dollars of all new money.  Your Honor, the

2  lenders are asking for certainty that they know that when

3  they get this order entered and they are lending money in

4  reliance upon this order, that there wouldn't be a plan or

5  any other future order that would derogate or diminish our

6  rights from what is in this order.

7         THE COURT:  I am not going to promise that.  It

8  may be appropriate at a future time to do just that.

9         MR. MEISLER:  But, Your Honor, I am puzzled by --

10        THE COURT:  I am not going to forgo the Court's

11 ability of fashion an appropriate remedy based on facts and

12 circumstances that I don't know may or may not adhere.

13        MR. MEISLER:  But, Your Honor, that's, we are not

14 coming to you as --

15        THE COURT:  Don't lend, that's my ruling.

16        MR. MEISLER:  Your Honor, with respect to

17 paragraph 23, page 47, your insertion of without limitation

18 after material change; it causes the metric of a material

19 change to be vague, which will limit the Debtors' flexibility

20 and the lenders' flexibility.  So with that in mind, I would

21 ask that you reconsider whether, in fact, you do need that

22 language.

23        THE COURT:  Well, this is saying that those are

24 the only material changes.

25        MR. MEISLER:  That is true.

1          THE COURT:  Its saying that shorten the DIP or the

2   maturity, increasing the aggregate amount, increasing the

3   rate of interest or adding specific events of default, or

4   adding or enlarging remedies available are the only material

5   changes.  So you've got a 50 something page order that

6   contains a number of [indiscernible], some of which are very

7   important, such as a challenge period, such as provisions

8   about payment of fees that if you change, are material

9   changes.  So it's too narrow.

10          MR. MEISLER:  Your Honor, how would you feel if

11   what we did is, instead of without limitation, we added a

12   provision that says and any materially adverse change?  So

13   how about if we added that instead of --

14          THE COURT:  Material change is any material

15   change.  Your saying that the definition of material change

16   will include materially adverse change.

17          MR. MEISLER:  In other words, if we don't think

18   it's a material change, having that extra adverse, that's

19   where I think it will give more flexibility.

20          THE COURT:  So where exactly do you want to put

21   that?

22          MR. DOBBS:  Your Honor, may I please the Court, my

23   name is Ed Dobbs, I am appearing on behalf of the working

24   capital lenders Bank of America and Wells Fargo.  What we

25   would suggest in that sentence is perhaps to delete Your

1  Honor's suggestion for without limitation and at the end add

2  or any other change that would materially diminish the rights

3  or materially increase the responsibilities of the Debtor.

4  In an ABL loan we are going to be making changes.

5           THE COURT:  That's too narrow because there are

6  rights that flow and protections that flow to parties other

7  than the Debtor that you could change without it being

8  material change.

9           MR. DOBBS:  In our loan agreement, Your Honor?

10          THE COURT:  In this interim order.

11          MR. DOBBS:  No, I am talking the changes to our

12  loan agreement in an ABL facility; that happens almost

13  weekly.  We will be making minor changes that will be

14  redefining eligibility in a way that enhances availability

15  for the borrowers borrowing purposes.  So we are not talking

16  about changing, in any way, the order, but just changing our

17  loan documents in ways that don't diminish the Debtors

18  capacity to borrow or increase our remedies or defaults.  We

19  are going to be doing that almost weekly in an ABL type

20  facility and it would be cumbersome to have to get Court

21  approval for every one of those.  We would not know what

22  would be material, otherwise, if we used the words without

23  limitation.  We would be coming to the Court almost

24  constantly.

25          THE COURT:  All right, I don't like your language,

1  but let's see if we can work around it.  What was that

2  language again?

3        MR. DOBBS:  Your Honor, it would say or a change

4  that would otherwise materially diminish the rights of the

5  Debtors or --

6        THE COURT:  Can we leave without limitation in the

7  main paragraph and then put the language you just stated that

8  says without limiting the generality of forgoing; any of that

9  would not constitute a material change.

10        MR. DOBBS:  I didn't follow that, Your Honor, I'm

11  sorry.

12        THE COURT:  Well, we had the general definition of

13  material change, which I have problem with because I'm afraid

14  it's to narrow.

15        MR. DOBBS:  Yes.

16        THE COURT:  So the next sentence starts without

17  limiting the generality of the forgoing.  So, in other words,

18  notwithstanding the definition we just said, there is

19  something here that makes it specific that any amendment to

20  postpone or extend the date or deadline is not a material

21  change.  Could we then just add the language you suggested,

22  which is any change regarding the working capital facility,

23  as you defined it, and just say that's not material?  That

24  will address your concerns and make sure you can make the

25  kind of amendments that you want to make to adjust the

1  relationship without it being deemed material.

2          MR. DOBBS:  Your Honor, we will try to craft some

3  language and run it by the U.S. Trustee and Your Honor.

4          THE COURT:  Okay.

5          MR. DOBBS:  Thank you.

6          THE COURT:  I'm trying to agree with you, but put

7  it in an appropriate place.

8          MR. DOBBS:  Yes, Your Honor.

9          MR. MEISLER:  Apologies to the Court, but I still

10 have a few more to go through.

11         THE COURT:  Of course.

12         MR. MEISLER:  Paragraph 25A says subject to the

13 ABL term intercreditor agreement, almost otherwise ordered by

14 the Court and then it talks about how certain things are

15 going to work because it may not be perfectly clear whether

16 its ABL priority collateral or DIP term loan collateral.  So

17 what it is getting to is its helping clarify the fact that

18 you may sell something and that thing that you might sell, a

19 portion of it might be ABL priority collateral and a portion

20 of it might be DIP term loan collateral.  So I am just not

21 sure why it is that we need it, unless otherwise ordered by

22 the Court.

23         THE COURT:  Well, let's imagine a 363 asset sale

24 where a large asset is being sold and we might get into a

25 fight, shockingly, between the ABL and the DIP on exactly

1  whose collateral it is.  My concern is to limit the Court's

2  decision as to what property of the estate, whose collateral

3  it is to the terms of an intercreditor agreement that the

4  Debtor is not even a party to.  So I need to preserve the

5  ability of the Court to fashion an appropriate remedy, in

6  effect, the power to decide whose collateral it is, not

7  surrender that to the intercreditor agreement.

8           MR. MEISLER:  Would it change your mind, however,

9  if, in fact, the Debtors were a party.  They are a party

10 acknowledging and agreeing to the intercreditor.

11          THE COURT:  No, that's to a certain extent

12 superfluous to the underlying concern, which is subjecting

13 this Court's power to decide whose collateral property of the

14 estate is to an intercreditor agreement.

15          MR. MEISLER:  Okay.  Thank you, Your Honor.

16          THE COURT:  And that's all I'm trying to preserve.

17          MR. MEISLER:  Your Honor, I'm moving to paragraph

18 27B, page 52.  I think this is more of a cleanup or

19 clarification change.  This is where you asked that Romanette

20 III and IV be added to the proviso.  I just want to clarify,

21 I think it's really just three because the proviso modifies

22 Romanette IV.

23          THE COURT:  Well that was my problem.  I think the

24 proviso modifies the entire sentence.

25          MR. MEISLER:  Well, as soon as you add the, or

1  three of the sentence, right, then it does modify that whole

2  sentence.  What it's trying to say is that if the Court were

3  to order for cause shown, then and such orders entered before

4  the expiration of any applicable period, and then it's roping

5  in Romanette I, II and III.  I think if we were to add

6  Romanette IV, and I'm not saying I am opposed to doing it, I

7  just think as a matter of --

8              THE COURT:  Well, my point was, and it's still

9  confusing for me, what that proviso is modifying.  Is it

10 saying --

11             MR. MEISLER:  Your Honor, what its saying is that

12 if for whatever reason some party comes up to the Court and

13 demands and requests that the challenge period is extended,

14 that this Court has the leeway to extend those periods and it

15 can be extended by order as long as that order comes down

16 either within the 75 or 60 days or as agreed to by the

17 parties.

18             THE COURT:  See, here's the problem, the 60 or 75

19 days may pass, there may have been a voluntary agreement to

20 extend that period a certain amount of time, say an

21 additional 90.

22             MR. MEISLER:  Understood.

23             THE COURT:  And someone might come in on day 89

24 and say, Your Honor, we, for cause, we don't have consent,

25 want to extend this another 90 days.  The problem is the way

1  this is written now, you can't do that because it says that

2  any order for cause has to be entered before the expiration

3  of the 60/75 day period.  I can't limit the ability to extent

4  it for cause past that time.  So if there is a voluntary

5  extension, I still need to be able to extend for cause.  The

6  way it's drafted now, I can't do that.

7         MR. MEISLER:  So, Your Honor, just so I better

8  understand, what you are saying is that if the Debtors, the

9  DIP lenders and the Creditors Committee, for example, agree,

10 consensually, to extend the challenge period and some equity

11 holder, if you will, or --

12        THE COURT:  No, it could be the Committee.  You

13 agree to extend the time for 90 days, an additional 90 days.

14        MR. MEISLER:  Yeah.

15        THE COURT:  But then they come back and they want

16 another 90.  You say look, you've had more than enough time,

17 we gave you all the documents, what the heck are you doing?

18 You are trying to hold us up, let's get this sale done.  No,

19 I am not going to agree to a further extension.  Perfectly

20 reasonable comment from a lender.  They say too bad; I am

21 going to go to the Court and ask for an extension of time

22 despite your ability, you're saying you are not going to give

23 me an extension of time for another 90 days.  I am going to

24 come into Judge Shannon and say I want another 90 days.  The

25 way this is written, he doesn't have the power to do that.

1           MR. MEISLER:  Now, Your Honor, in that scenario

2   what you are saying seems fine to me, but if some other

3   party, that's not a party to that agreement, comes in, so the

4   period has been extended consensually by 90 days and Acme

5   Company comes up and says hey, I know the challenge period,

6   that 60/75 day period --

7           THE COURT:  Yeah, but the extension you are going

8   to agree to, the first extension you are going to agree to is

9   solely going to be to the Committee anyway.  Once you have a

10  Committee you are not going to agree to expand the other

11  party time.

12          MR. MEISLER:  Understood, Your Honor.

13          THE COURT:  So in my scenario we have already

14  forgone the ability for, you know, some equity holder to do

15  that because the initial 75 day period has expired.  There

16  has been a consensual agreement to expand the period so you

17  are not going to consent to expand it to anybody other than

18  the Committee.  Now, we are in a situation where we want to

19  have a for cause extension.  My problem, maybe we are talking

20  past each other, but I want to preserve Judge Shannon's right

21  to extend the challenge period for cause.

22          MR. MEISLER:  Understood.

23          THE COURT:  This limits.

24          MR. MEISLER:  And that for cause then is between

25  the parties that agree to extend the time and its within, as

1  long as that for cause comes up within that extended period

2  of time, for those parties that are party to the consensual

3  agreement.

4         THE COURT:  Say that again.

5         MR. MEISLER:  So if we were to take a Venn

6  diagram, if you will, and we were to put in the circle all

7  the people that are party to this consensual extension of

8  time, anybody outside of this circle, if they pass the 60/75

9  days, I don't have a problem with that.  Your Honor, we are

10  on the same page.

11        THE COURT:  All right, well let's see if we can

12  figure it out.  I hear you.  You were worried that somewhere

13  someone would be able to resurrect standing to object to the

14  challenge period.

15        MR. MEISLER:  Correct, Your Honor.

16        THE COURT:  I am not trying to do that.  What I am

17  trying to make sure is that whoever has this agreed extension

18  of time, has the ability to come in and ask for more time

19  despite your disagreement.

20        MR. MEISLER:  Terrific.  Thank you.

21        MR. DOBBS:  Your Honor, one more request for the

22  Court to consider.  I'm, sorry, were you finished?

23        MR. MEISLER:  I have the same comments.

24        MR. DOBBS:  Your Honor, in paragraph 34, Your

25  Honor's insertion in the last sentence on page 58, paragraph

1    34, unless otherwise ordered by the Court.  Would it be

2    acceptable to have that be a qualifier solely for the use of

3    cash collateral?  Clearly, the banks would not be obliged to

4    lend money to people other than to whom they have agreed to

5    lend money, but, obviously, Your Honor, with respect to the

6    cash collateral, that would be subject to future orders of

7    the Court.  So I would like to ask that it be or unless

8    otherwise ordered by the Court to permit the use of the cash

9    collateral, insert that language there.

10            THE COURT:  That's fine.

11            MR. MEISLER:  Your Honor, my last question for the

12   Court, you asked to strike the DIP collateral rights, which

13   is basically a pay over provision. I would ask for this Court

14   to consider if we could make that as a subject to entry of a

15   final order so that if parties have an objection to the pay

16   over, then we get to revisit it.

17            THE COURT:  That's fine.

18            MR. MEISLER:  Terrific.  Thank you, Your Honor.

19   Your Honor, that's it for me.  Thank you.

20            THE COURT:  Very good.  Send it over, I will sign

21   it or hand it up and I will sign it.

22            MR. KLYMAN:  Your Honor, for the record Robert

23   Klyman of Gibson on behalf of the Debtors.  We still have a

24   few more to go.

25            THE COURT:  Yup.

1          MR. KLYMAN:  And I am hoping that the counsel for

2   the lenders and certain counsels for the Debtor can hand

3   markup an order while we are talking so we can hand it up

4   during this hearing and we can make sure to pay people this

5   afternoon.  With that, Your Honor, I would cede the podium to

6   my colleague, Sam Newman, who is going to deal with cash

7   management and utilities.

8          THE COURT:  All right.

9          MR. NEWMAN:  Thank you, Your Honor.  May I

10  approach, I have blacklines?

11          THE COURT:  Yes.

12          MR. NEWMAN:  Your Honor, I heard earlier you read

13  the pleadings, so I will dispense with any detailed

14  description, unless you have questions.  The Debtors have a

15  fairly typical cash management structure covering about 40

16  accounts.  If you look at Exhibit B to the motion.

17          THE COURT:  Hang on.  I'm sorry; I have the wrong

18  notebook out.

19          MR. NEWMAN:  It's all right.

20          THE COURT:  What tab are we on?

21          MR. NEWMAN:  Tab 5, Your Honor.

22          THE COURT:  Yeah, we can go right into the orders.

23          MR. NEWMAN:  Yes, Your Honor.  We have received

24  comments from the United States Trustees' office.  I believe

25  you have addressed all of them.  If you look at the redline,

1  the U.S. Trustee has asked, on page 2, that we struck this is

2  an interim, so that we had an opportunity for further

3  amendment at the final.  On page 3, there is just conforming

4  changes indicating the interim order.

5       The next is a substantive change at paragraph 10.

6  The Debtors have one account that is with Santander Bank that

7  is not subject to the U.S. Trustees' existing guidelines.

8  The reason for this is that they are a substantial customer

9  and have acquired, as part of the arrangement, that we

10  maintain the account with their bank.  There is very little

11  money in that bank account at this time, nor is there any

12  intention of putting a significant amount of money in that

13  bank account during the case; however, the U.S. Trustee has

14  asked us to try to get them subject to the U.S. Trustee

15  agreement or otherwise make a reasonably satisfactory

16  arrangement, which is set forth in paragraph 12, to do that

17  or use its very best efforts and will either get the U.S.

18  Trustees' consent or come back to the Court if we have a need

19  for further relief.

20       We also note the Debtor has a couple of bank

21  accounts outside the country and we have agreed that we will

22  provide statements for those bank accounts and U.S. dollar

23  balances.  That would come under the operating reports so the

24  U.S. Trustee will have that information.  Otherwise, there

25  are a couple of comments in paragraph 15 regarding

1  maintaining records and 18, limiting disbursements.

2          THE COURT:  Okay.  I literally have one comment

3  and that is what's now paragraph 3.  Looking at the clean,

4  third line down, the sentence begins any change to the cash

5  management system shall require prior written consent of all

6  agents.  I would like to start that sentence with unless

7  otherwise ordered by the Court.  Other than that, I have no

8  comments.

9          MR. NEWMAN:  Your Honor, will you interlineate

10  that or do you need another?

11          THE COURT:  I already have.

12          MR. NEWMAN:  Thank you, Your Honor.

13          THE COURT:  Sign the order as well.

14          MR. NEWMAN:  Thank you, Your Honor.  Your Honor,

15  tab 6 is utilities.  And I have already handed up that order.

16          THE COURT:  Yes.

17          MR. NEWMAN:  There were no substantive changes to

18  that order.

19          THE COURT:  You've already made the only change I

20  had.

21          MR. NEWMAN:  With that, Your Honor, I will cede

22  the podium to my colleague, Mr. Klyman, who will proceed, I

23  believe, with [indiscernible].

24          THE COURT:  All right, I've signed the utilities

25  order.

1        MR. NEWMAN:  Thank you, Your Honor.

2        MR. KLYMAN:  Your Honor, I did skip one in my

3   haste to get the cash management.  Its docket 4, retention of

4   Prime Clerk.

5        THE COURT:  Yup.

6        MR. KLYMAN:  We did make one change to the order,

7   Your Honor, in response to the request of the U.S. Trustee to

8   provide that Prime Clerk cannot establish accounts in the

9   name of and as agent for the Debtors.

10        THE COURT:  Okay.

11        MR. KLYMAN:  May we approach with an order, Your

12   Honor?

13        THE COURT:  Did you strike paragraph 19?  If not,

14   I will.  It's fine.

15        MR. KLYMAN:  Paragraph 19 that we are authorized

16   to take all action necessary.

17        THE COURT:  Am I looking at the wrong one?  Prime

18   Clerk, right?

19        MR. KLYMAN:  Yes.

20        THE COURT:  Notwithstanding anything to the

21   contrary, any payment made or authorization shall be subject

22   to requirements proposed on the DIP.

23        MR. KLYMAN:  Your Honor, I think we struck it.

24        THE COURT:  Just give me a second.  All right,

25   I've signed that order.

1        MR. KLYMAN:  Thank you, Your Honor.  The next one,

2   which is at tab 7, docket 7, is the motion for order

3   authorizing payment of prepetition sales, use, franchise,

4   income and other taxes.

5        THE COURT:  Hang on.  Sorry.

6        MR. KLYMAN:  I believe we struck the language with

7   respect to the DIP financing budget in that order and that

8   [indiscernible].

9        THE COURT:  I'll sign the order as modified.

10       MR. KLYMAN:  Thank you, Your Honor.  Next is at

11  tab 8, docket 8, it's the motion for order authorizing

12  continuation of and payment of prepetition insurance policies

13  incurred in the ordinary course.  The change to that order,

14  Your Honor, is the same as in the last one, just strike that

15  language with respect to the DIP financing.

16       THE COURT:  Okay.  That was my only change.  I

17  signed the order as modified.

18       MR. KLYMAN:  Thank you, Your Honor.  I apologize

19  for playing ping pong at the stand, but I will yield the

20  podium to Mr. Newman for critical vendors.

21       THE COURT:  Okay.

22       MR. NEWMAN:  Thank you, Your Honor.  We have a

23  modified order.  May I approach?

24       THE COURT:  What are we on?

25       MR. NEWMAN:  This is docket number 9, critical

1  vendors.

2          THE COURT:  You are keeping me jumping.  All

3  right, come on up.  Did we just do insurance?

4          MR. NEWMAN:  Yes, sir.

5          THE COURT:  Okay.  Thank you.

6          MR. NEWMAN:  Your Honor, I will take just a

7  moment, unless you would rather not, just give you a brief

8  overview of the motion.  We have asked on an interim basis to

9  have authority to spend $15 million dollars to buy between

10 existing critical vendors and chippers.  With a final request

11 of $20 million dollars, we have discussed and received

12 comments from the U.S. Trustee who has provided comments to

13 be addressed in the order.

14         This business has a number of business lines that

15 have highly fragmented, highly sensitive lender bases.  Many

16 of our vendors are not subject to any kind of enforcement

17 contract that could require them to continue to deliver what

18 are required as just in time assets to be used in our

19 process.  In particular, there is about a $350 million dollar

20 revenue line item made up of our resale and subcontracting

21 business, which is largely, think of it as a brokerage

22 business.  So we have, for example, customers with millions

23 of dollars of contract revenue for sending large mailings out

24 on a regular basis.

25         We divide the printing of a lot of that material

1  between many different subcontractors, all of whom are

2  required to deliver materials in a timely fashion, in order

3  to be able to send out daily or weekly packages.  That is

4  just one example of this $350 million dollar revenue line.

5  We are concerned that we have the ability to deal with

6  objections from that vendor base in the event that there is

7  disruption due to their being owed substantial amounts

8  prepetition.

9           We have, if you turn to the order, they have

10 addressed the issues raised by the U.S. Trustee with respect

11 to that, in a couple of ways.  First, as I indicated, this

12 will be subject to challenge under a final basis.  We have

13 taken out, in paragraph 16, the coordination of the DIP

14 financing order and then in response, in paragraph 16, to the

15 U.S. Trustees' request, we will be providing a matrix

16 identifying which payments are made and to whom, on a

17 confidential basis to the Committee and U.S. Trustee, we also

18 have both in the motion order described consent rights on

19 behalf of the existing secured lenders so that any large

20 payments [indiscernible].  With that, Your Honor, I'm happy

21 to answer any questions, but we request entry of the order as

22 modified.

23           THE COURT:  I have no questions.

24           MR. NEWMAN:  Okay.  Thank you.

25           THE COURT:  I will sign the order as modified.

1            MR. NEWMAN:  Thank you, Your Honor.  I will turn

2    the podium back over to Mr. Klyman.

3            MR. KLYMAN:  Your Honor, the next item, are you

4    ready?

5            THE COURT:  Yup, customer programs.

6            MR. KLYMAN:  Customer programs, tab 10, docket 10.

7    The order was modified to strike the language related to the

8    DIP financing.

9            THE COURT:  All right, I will sign the order as

10   modified.

11           MR. KLYMAN:  Thank you, Your Honor.  The next is

12   the motion for administrative expense priority for undisputed

13   obligations over the prepetition and deliver post-petition.

14   The change to the order besides the strike the language

15   related to the DIP financing was the U.S. Trustee comment to

16   reserve all rights to consent the delivery dates of goods

17   that were actually ordered prepetition.

18           THE COURT:  All right, I have signed it as

19   modified.

20           MR. KLYMAN:  Thank you, Your Honor.  The next is

21   the motion for entry of an order authorizing payment of

22   prepetition claims of foreign vendors.  We struck the

23   language with respect to the DIP financing.

24           THE COURT:  Okay.  I have signed the order as

25   modified.

1          MR. KLYMAN:  Your Honor, one more switch.  Mr.

2    Newman has the [indiscernible] motion and then we will wrap

3    up with the interim employee wage and benefit motion.

4          MR. NEWMAN:  There have been no comments or any

5    changes to the order, Your Honor.  Its docket number 13.

6          THE COURT:  I had no comments to that order.

7          MR. NEWMAN:  Thank you, Your Honor.

8          THE COURT:  Do you have a clean for me?

9          MR. NEWMAN:  Yes, Your Honor.  May I approach?

10         THE COURT:  Yes.  Thank you.  I've signed that

11   order.

12         MR. KLYMAN:  The last order, Your Honor, is at tab

13   14, docket 14.  It's the interim employee wage and benefit

14   motion.  There have been three changes to that order. One is

15   to strike the DIP financing language.  The second is in

16   paragraph 8, provides that payments made will be appropriate

17   to an eligible employee who was employed at the time the

18   claim was incurred, regardless of whether that employee gets

19   employed or not, so long as they were eligible at the time a

20   claim was incurred.

21         THE COURT:  Okay.

22         MR. KLYMAN:  There is also a change, Your Honor,

23   that the order will not authorize payments.  This is more

24   language than anything else, authorize payments in violation

25   of 503(c)(3) or the insiders in excess of the cap under

1  503(c)(3).

2          THE COURT:  Okay.  I have signed the order.

3          MR. KLYMAN:  Your Honor, with that, that wraps up

4  the presentation for the first days.  We are just waiting for

5  a markup of the DIP financing order.  Your Honor, I know we

6  have been at it until your hard stop, I think at 1:30, will

7  Your Honor be available after this hearing to sign our DIP

8  financing order?

9          THE COURT:  Will do.  Then you are going to need

10  to wait till, then I won't be able to look at it until I am

11  done with my summary judgment and argument.  So 5, 6,

12  somewhere along those lines.

13          MR. KLYMAN:  Expect it before 2, Your Honor.

14          THE COURT:  Okay.  I mean I will look at it today,

15  but it will have to be later, unless you get it to me sooner.

16          MR. KLYMAN:  Okay.  Thank you very much, Your

17  Honor.

18          THE COURT:  You're welcome.  We're adjourned.

19     (Court Adjourned).

20

21

22

23

24

25

1                           CERTIFICATE

2

3    I certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6
     /s/Mary Zajaczkowski                    March 13, 2015
7    Mary Zajaczkowski, CET**D-531                 Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25