**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE STANDARD REGISTER COMPANY, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15- 10541 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: April 13, 2015 at 10:00 a.m. (ET)<br>Obj. Deadline: April 6, 2015 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR AN ORDER APPROVING THE EMPLOYMENT
AND RETENTION OF GIBSON, DUNN & CRUTCHER LLP AS GENERAL
BANKRUPTCY AND RESTRUCTURING CO-COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") submit this Application (the "Application") for the entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to employ and retain Gibson, Dunn & Crutcher LLP ("Gibson Dunn") as their general bankruptcy and restructuring co-counsel, effective as of March 12, 2015, the date the Debtors filed their chapter 11 petitions (the "Petition Date") and commenced these chapter 11 cases (the "Chapter 11 Cases"), pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and to compensate Gibson Dunn pursuant to sections 330 and 331 of the Bankruptcy Code.  In support of this Application, the Debtors submit the (a)

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

*Declaration of Robert A. Klyman in Support of the Debtors' Application for an Order Approving the Employment and Retention of Gibson, Dunn & Crutcher LLP as General Bankruptcy and Restructuring Co-Counsel for the Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* (the "Klyman Declaration"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein, and (b) *Declaration of Gerard D. Sowar in Support of the Debtors' Application for an Order Approving the Employment and Retention of Gibson, Dunn & Crutcher LLP as General Bankruptcy and Restructuring Co-Counsel for the Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* (the "Sowar Declaration"), a copy of which is attached hereto as Exhibit C and incorporated by reference herein.  In further support of this Application, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 327(a) and 1107(b) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules, and Local Rules 2014-1, 2016-2 and 9013-1.

## BACKGROUND

2.     On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of

Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3. The Debtors filed a motion seeking joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No trustee, examiner, or official committee of unsecured creditors has been appointed in these cases.

4. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration"), which was filed on the Petition Date.

## RELIEF REQUESTED

5. By this Application, the Debtors seek entry of an order authorizing them to employ and retain Gibson Dunn as their general bankruptcy and restructuring co-counsel in the Chapter 11 Cases, *nunc pro tunc* to the Petition Date, pursuant to section 327(a) of the Bankruptcy Code and to compensate Gibson Dunn for all services provided to and expenses incurred on behalf of the Debtors, *nunc pro tunc* to the Petition Date, pursuant to sections 330 and 331 of the Bankruptcy Code.

## QUALIFICATIONS OF GIBSON DUNN

6. Gibson Dunn is well qualified to represent the Debtors.  Gibson Dunn is an international law firm with over 1,200 attorneys in 18 offices in major cities throughout the United States, Europe, the Middle East, Asia, and South America.  The firm maintains offices in New York City, Los Angeles, Century City, Orange County, San Francisco, Palo Alto, Dallas, Denver, and Washington, D.C., as well as in London, Paris, Munich, Brussels, Dubai, Sao Paulo, Singapore, Beijing and Hong Kong.  Gibson Dunn has extensive expertise and experience in

3

virtually all aspects of bankruptcy, litigation, finance, real estate, tax, securities, and other corporate issues that may arise in these Chapter 11 Cases.

7. The numerous attorneys practicing in Gibson Dunn's international Business Restructuring and Reorganization Practice Group have played significant roles in many large and complex cases under the Bankruptcy Code, including, without limitation, representing the debtors in the chapter 11 cases of Natrol, Inc., Arcapita Bank B.S.C.(c), Pacific Monarch Resorts, Inc., R.E. Loans, LLC, TBS Shipping Services, Inc., Freedom Communications, Inc., Leap Wireless, Inc., Almatis B.V., Building Materials Holding Corporation, Fleetwood Enterprises, Inc., Scotia Pacific Company LLC, Hoop Holding LLC, The FINOVA Group Inc., FLAG Telecom Holdings Limited, American Pad and Paper Company, House2Home, Inc., Trump Hotel and Casino Resorts, Convergent Communications, Inc., Medscape, Inc., Microage, Inc., Money's Foods, CollegeClub.com, Asbestos Claims Management Services, Financial News Network, First Republic Bank Corporation, Solutia, Inc., Advanced Tissue Sciences, Inc., and Resorts International.

8. Since August 2009, Gibson Dunn's attorneys have provided corporate and strategic advice to the Debtors pursuant to and in accordance with the engagement letter dated as of August 14, 2009 (the "Engagement Letter"), a true and correct copy of which is attached to the Klyman Declaration as Exhibit 1. Gibson Dunn's attorneys have become familiar with many aspects of the Debtors' business and legal affairs and have worked closely with the Debtors' management and other professionals. Gibson Dunn is well acquainted with the Debtors' corporate history, debt structure, and business operations and, as a result, has developed experience and expertise regarding the Debtors that will assist in providing effective and efficient services in these Chapter 11 Cases.

9.      Prior to execution of the Engagement Letter, Gibson Dunn was involved in certain unrelated transactions in which Gibson Dunn represented a party adverse to or opposite of Standard Register.  These matters are all inactive.  Such situations are common in the legal marketplace today, especially in large law firms, and Gibson Dunn does not believe its past, limited involvement with the Debtors in any way represents an issue in this engagement.

10.     Until December 24, 2014, an employee of Silver Point Capital, L.P., which Gibson Dunn understands to be an affiliate of Silver Point Finance, LLC and Standard Acquisition Holdings, LLC (collectively "Silver Point)", served on the Board of Directors of Standard Register.  Gibson Dunn represented the Debtors at this time.  Neither the individual employee who was a director nor Silver Point was ever a client of Gibson Dunn in connection with the Debtors.

## SERVICES TO BE PROVIDED

11.     The Debtors seek to employ Gibson Dunn on an hourly basis to act as the Debtors' general bankruptcy and restructuring co-counsel in the Chapter 11 Cases and in any and all matters that arise with respect thereto or to the Debtors.  In particular, the Debtors anticipate that Gibson Dunn will render, among others, the following professional services:

(a)   advise the Debtors of their rights, powers, and duties as debtors in possession under chapter 11 of the Bankruptcy Code;

(b)   prepare, on behalf of the Debtors, all necessary and appropriate applications, motions, proposed orders, other pleadings, notices, schedules, and other documents, and review all financial and other reports to be filed in the Chapter 11 Cases;

(c)   advise the Debtors concerning, and prepare responses to, applications, motions, other pleadings, notices, and other papers that may be filed and served in the Chapter 11 Cases;

(d)   advise the Debtors with respect to, and assist in the negotiation and documentation of, financing agreements and related transactions;

(e)     review the nature and validity of any liens asserted against the Debtors' property and advise the Debtors concerning the enforceability of such liens;

(f)     advise the Debtors regarding its ability to initiate actions to collect and recover property for the benefit of their estates;

(g)     counsel the Debtors in connection with any plan of reorganization (or liquidation) and related documents;

(h)     advise and assist the Debtors in connection with any potential property dispositions, including the pending sale of substantially all of the Debtors' assets;

(i)     advise the Debtors concerning executory contract and unexpired lease assumptions, assignments, and rejections as well as lease restructurings and recharacterizations;

(j)     assist the Debtors in reviewing, estimating, and resolving claims asserted against the Debtors' estates;

(k)     commence and conduct any and all litigation necessary or appropriate to assert rights held by the Debtors, protect assets of the Debtors' chapter 11 estates, or otherwise further the goal of completing the Debtors' successful reorganization;

(l)     provide corporate, employee benefit, litigation, tax, and other general nonbankruptcy services to the Debtors to the extent requested by the Debtors; and

(m)     perform all other necessary or appropriate legal services in connection with the Chapter 11 Cases for or on behalf of the Debtors.

12.     The Debtors require knowledgeable counsel to provide these essential professional services. Gibson Dunn has stated its desire and willingness to act in the Chapter 11 Cases and provide the necessary services as attorneys for the Debtors. As noted above, Gibson Dunn has substantial expertise in all of these areas, and has gained valuable knowledge of the Debtors' business and financial affairs as a result of its prepetition representation of the Debtors and negotiation with the Debtors' various stakeholders. For all of these reasons, the Debtors believe that Gibson Dunn is both well qualified and uniquely able to represent the Debtors' interests in the Chapter 11 Cases.

## PREPETITION PAYMENTS TO GIBSON DUNN

13.     Prior to the Petition Date, as security for payment of fees and expenses, the Debtors made advance payments to Gibson Dunn against which Gibson Dunn applied fees

6

101871108.7

earned and expenses incurred. The Debtors compensated Gibson Dunn on a current basis upon presentation of invoices detailing the fees and expenses incurred on the Debtors' behalf. Prepetition payments were remitted by The Standard Register Company through its centralized cash management system.

14. As of the Petition Date, Gibson Dunn has been paid for all professional services and expenses rendered to the Debtors prior to the Petition Date, and the remaining amount of the advance payment approximates $861,250 (the "Remaining Advance Payment").[2] Pursuant to the Debtors' debtor-in-possession financing provided in accordance with the *Interim Order (I) Authorizing Debtors In Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. § 364; (III) Providing Adequate Protection to Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Bankruptcy Rule 4001-2* [Docket No. 59] (the "DIP Order"), the DIP Credit Parties (as defined in the DIP Order) have agreed to fund a budget for professional fees through the case that does not require application of the Advance Payment on a current basis. Instead, the DIP Credit Parties and the Debtors agreed to factor in the Remaining Advance Payment into the Aggregate Carve-Out Cap (as defined in the DIP Order). As a result of the foregoing, Gibson Dunn intends to apply the Remaining Advance Payment if and when a Carve-Out Trigger Notice is delivered in accordance

---

[2] Gibson Dunn has not yet completed its final reconciliation of prepetition fees and expenses applied against the Advance Payment. Gibson Dunn will apply the Remaining Advance Retainer to those prepetition fees and expenses, and provide details regarding such final reconciliation in Gibson Dunn's first application for interim compensation.

7

101871108.7

with the DIP Order; if no such Carve-Out Trigger Notice is delivered, Gibson Dunn will apply the Remaining Advance Payment to its Final Fee Application that is approved by the Court.[3]

15.     During the 90 days before the Petition Date, Gibson Dunn invoiced the Debtors, and the Debtors paid Gibson Dunn as follows: (a) January 2015, advance payment of $800,000 and application of fees and expenses in the amount of $50,000 (including $16,265.55 for an invoice dated October 2, 2014); (b) February 2015, advance payment of $1,705,050.91 and application of fees and expenses in the amount of $1,369,236.30; and (c) March 2015, advance payment of $1,700,000, and application of fees and expenses in the amount of $1,924,564.

16.     In this case, the general security retainer is appropriate for several reasons. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation[] [and] whether the retention, as proposed, is in the best interests of the estate[.]"); *see also In re CTC Commc'n Grp., Inc.*, Case No. 0212873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43 ("I agree and adopt wholeheartedly Judge Carey's decision in the Insilco case."). First, these types of retainer agreements reflect normal business terms in the marketplace. *See Insilco*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Gibson Dunn and the Debtors are sophisticated business entities that have negotiated the retainer at arm's length. Third, the retention of Gibson Dunn is in the best interests of the Debtors' estates, because the

---

[3] In addition, the Aggregate Carve-Out Cap assumes that the Remaining Advance Payment will be no more than $750,000. To the extent the Remaining Advance Payment exceeds $750,000 after Gibson Dunn applies the Remaining Advance Retainer to those prepetition fees and expenses described in footnote 2 above, any excess will be either applied to Gibson Dunn's allowed post-petition fees and expenses or, at Gibson Dunn's option, deducted from the portion of the Aggregate Carve-Out Cap allocable to Gibson Dunn's fees and expenses.

101871108.7

Engagement Letter and Advance Payment allow the Debtors to maintain the prepetition relationship established with Gibson Dunn. Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted *In re CTC Communications Group, Inc.*, the facts and circumstances of the Chapter 11 Cases support the approval of the security retainer.

### GIBSON DUNN'S FEES FOR SERVICES TO BE RENDERED IN CONNECTION WITH THE CHAPTER 11 CASES

17. Except as described in this paragraph, pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, as set forth in the Klyman Declaration, Gibson Dunn intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and (b) seek reimbursement of actual and necessary out-of-pocket expenses.

18. Gibson Dunn's current hourly rates for matters related to these Chapter 11 Cases range as follows: $860 to $1,225 for partners, $820 to $825 for of counsel, $505 to $815 for associates, and $395 to $420 for paraprofessionals. Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4] Gibson Dunn represented the Debtors during the twelve-month period before the Petition Date using the hourly rates listed above. These hourly rates are

---

[4] The hourly rates charged by Gibson Dunn professionals differ based on, among other things, the professional's level of experience. Like many of its peer law firms, Gibson Dunn increases the hourly billing rate of attorneys and paraprofessionals each year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Fee Guidelines")). As set forth in the Proposed Order, Gibson Dunn will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

9

101871108.7

consistent with the rates that Gibson Dunn charges other nonbankruptcy and chapter 11 clients, regardless of the location of the chapter 11 case. Moreover, the rate structure is appropriate and not significantly different from (a) the rates Gibson Dunn charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Gibson Dunn will perform in these Chapter 11 Cases.

19. A list of the professionals currently expected to provide services to the Debtors and the current hourly rates for these professionals for 2015 is attached to the Klyman Declaration as <u>Exhibit 2</u>. In addition, as necessary, other Gibson Dunn professionals and paraprofessionals will provide services to the Debtors.[5]

20. Gibson Dunn will maintain detailed, contemporaneous records of time spent, as well as any actual and necessary expenses incurred, in connection with the rendering of the legal services described above by category and nature of the services rendered. Notwithstanding the foregoing, Gibson Dunn acknowledges its compensation will be subject to approval by this Court.

21. As set forth in the Klyman Declaration, Gibson Dunn intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court. Gibson Dunn has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these

---

[5] Although Gibson Dunn does not anticipate using contract attorneys during these Chapter 11 Cases, in the unlikely event that it becomes necessary to use contract attorneys, Gibson Dunn will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Gibson Dunn will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

10

101871108.7

Chapter 11 Cases, other than as permitted pursuant to section 504 of the Bankruptcy Code. Gibson Dunn also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the U.S. Trustee Fee Guidelines, both in connection with this Application and the interim and final fee applications to be filed by Gibson Dunn in these Chapter 11 Cases.

22. By separate applications, the Debtors are seeking Court approval for the retention of: (a) Young Conaway Stargatt & Taylor LLP, as the Debtors' co-restructuring counsel; (b) McKinsey Recovery and Transformation Services U.S., LLC, to provide (i) temporary employees in a consulting capacity, and (ii) Kevin Carmody as the Debtors' Chief Restructuring Officer; (c) Lazard Fréres & Co. LLC and Middle Market LLC, as their investment banker; (d) Prime Clerk LLC, as their administrative advisor and claims and noticing agent; (e) Palisades Capital Advisors, LLC as their pension advisor; and (f) Dinsmore & Shohl LLP as their special counsel and conflicts counsel. The Debtors may also file motions or applications to employ additional professionals.

23. Each of the firms listed above works, and will continue to work, under the direction of the Debtors' management. The Debtors' directors and senior management are committed to minimizing duplication of services to reduce professional costs, among other things. To that end, Gibson Dunn will work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

24. It is Gibson Dunn's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Gibson Dunn's policy to charge its clients only the amount actually incurred by Gibson Dunn in connection with

11

such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.  In addition, Gibson Dunn professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

25. Consistent with past practice, Gibson Dunn will charge no more than $0.10 per page for standard duplication services in these Chapter 11 Cases.  Gibson Dunn does not charge its clients for incoming facsimile transmissions.

26. The Debtors will be approving a prospective budget and staffing plan for Gibson Dunn's engagement for the post-petition period as appropriate.  In accordance with the U.S. Trustee Fee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

## GIBSON DUNN'S DISINTERESTEDNESS

27. To the best of the Debtors' knowledge, information and belief, other than in connection with the Chapter 11 Cases, in prior representations of the Debtors, and as specifically disclosed below, Gibson Dunn has no connection with the Debtors; Gibson Dunn does not represent, and has not represented, any entity other than the Debtors in matters related to the Chapter 11 Cases; Gibson Dunn does not have any connection with, and has not represented in the past, the United States Trustee for the District of Delaware, or any person employed in the Office of the United States Trustee for the District of Delaware; and Gibson Dunn does not have any connection with the Debtors' creditors, any other party in interest, or its respective attorneys and accountants, except as set forth below (and more specifically in <u>Exhibit 4</u> to the Klyman Declaration).

28. To check and clear conflicts, and in preparing the Klyman Declaration, Gibson Dunn used a set of procedures that it has developed and used in comparable cases to ensure

12

compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals in chapter 11 cases. As set forth in the Klyman Declaration, pursuant to these procedures, Gibson Dunn performed the following actions to determine whether Gibson Dunn or any of its attorneys has any connections with, has in the past represented, or is currently representing potential parties in interest in the Chapter 11 Cases:

(a) A list of interested parties (the "Interested Parties") was created using information provided by the Debtors and additional information identified by Gibson Dunn. The list of Interested Parties is composed of the following entities, whose identities are set forth in Exhibit 3, which is attached to the Klyman Declaration:

    (i) the Debtors and their non-debtor subsidiaries;

    (ii) the Debtors' officers and directors;

    (iii) major business affiliations of the Debtors' officers and directors and related persons;

    (iv) the Debtors' secured creditors;

    (v) the Debtors' 50 largest unsecured creditors on a consolidated basis as identified in their chapter 11 petitions;

    (vi) parties relating to significant litigation involving the Debtors;

    (vii) the Debtors' landlords;

    (viii) the Debtors' equity holders (greater than 5%);

    (ix) the Debtors' largest customers;

    (x) the Debtors' insurance companies;

    (xi) the Debtors' utility providers;

    (xii) the Debtors' ordinary course professionals;

    (xiii) the Debtor's professionals in the Chapter 11 Cases;

    (xiv) counsel and other advisors retained by significant parties;

    (xv) United States Trustee for the District of Delaware and employees in the Office of the United States Trustee for the District of Delaware;

    (xvi) United States Bankruptcy Judges in the District of Delaware; and

    (xvii) other significant parties in interest.

(b) Gibson Dunn compared each of the Interested Parties to the names that Gibson Dunn maintains in its master client database created from its conflict clearance and billing records. Gibson Dunn's client database includes: (i) the name of each current or former client; (ii) the names of any entities materially related to, or

materially adverse to, such current or former clients; (iii) the names of the Gibson Dunn attorneys responsible for such current or former clients; (iv) the status of the matter as either "active" or "inactive"; and (v) the dates on which the matter was opened and/or closed; and

(c) Any matches between the Interested Parties and the entities in Gibson Dunn's client database were identified, reviewed by an attorney and compiled for purposes of this Application. To the extent that Gibson Dunn currently represents, or has represented within the last three years, any of the Interested Parties, the identities of such entities is set forth in <u>Exhibit 4</u> of the Klyman Declaration. In determining whether a client is presently represented by Gibson Dunn, Gibson Dunn relied on the existence of an "active" notation on the report to reflect current representation. With respect to matters showing as "inactive," Gibson Dunn relied on the "closed date" to determine whether the representation occurred within the past three years. If an "inactive" matter showed no "closed date," Gibson Dunn assumed for purposes of this disclosure that the matter was inactive during the past three years and did not include the client on <u>Exhibit 4</u>, except "inactive" matters opened on or after March 12, 2012, which showed no "closed date" for which the client is included on <u>Exhibit 4</u> to the Klyman Declaration.

29. Based on the search of names set forth in <u>Exhibit 3</u>, Gibson Dunn concluded it has the following connections with the Debtors and the Interested Parties:

(a) Prior to the Petition Date, Gibson Dunn performed certain legal services for the Debtors, as described above. After Gibson Dunn's reconciliation of, and the completion of any necessary adjustments to, the Advance Payment, as described above and in footnote 2, the Debtors do not believe they will owe Gibson Dunn any amount for services performed or expenses incurred prior to the Petition Date;

(b) Prior to execution of the Engagement Letter, Gibson Dunn was involved in certain unrelated transactions in which Gibson Dunn represented a party adverse to or opposite of the Debtors. These matters are all inactive. Such situations are common in the legal marketplace today, especially in large law firms, and Gibson Dunn does not believe this past, limited involvement with the Debtors in any way represents an issue in this engagement.

(c) Gibson Dunn has over 1,200 attorneys. A general inquiry of all Gibson Dunn attorneys was sent by electronic mail to determine whether any such individuals holds claims against, or stock or securities of the Debtors (other than in connection with investments in mutual funds, blind trusts or other investments as to which such individual has no discretion as to the selection of the individual underlying assets). Based solely on responses to this inquiry, no Gibson Dunn attorneys reported owning any debt or equity securities of the Debtors (other than securities that may be owned in connection with investments in mutual funds,

14

        blind trusts or other investments as to which such individual has no discretion as to the selection of the individual underlying assets);

(d)     From time to time, Gibson Dunn has referred matters to other professionals who may be retained in these Chapter 11 Cases. Likewise, certain of these professionals may have referred matters to Gibson Dunn; and

(e)     From time to time, Gibson Dunn has represented, and likely will continue to represent, certain creditors of the Debtor and other parties actually or potentially adverse to the Debtor in matters unrelated to the Debtor or the Chapter 11 Cases. As described below, Gibson Dunn has undertaken a detailed search to determine whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters. Due to the breadth of Gibson Dunn's client base, the firm is not subject to the undue influence of any single client.

30.     Gibson Dunn's connections with the Interested Parties are set forth in <u>Exhibit 4</u> to the Klyman Declaration, which lists the Interested Parties that Gibson Dunn has represented in the past three years or is currently representing in matters wholly unrelated to the Chapter 11 Cases. As a supplement to the disclosure of Gibson Dunn's connections with the Interested Parties set forth in <u>Exhibit 4</u>, and without limiting such disclosure, Gibson Dunn represents, formerly has represented and in the future likely will represent the following entities and/or their affiliates or related entities—which may be secured creditors of the Debtors—as identified by Gibson Dunn's master client database, in matters wholly unrelated to the Chapter 11 Cases: Silver Point Capital, L.P., Wells Fargo Bank, N.A., Bank of America, N.A., Credit Suisse and Fortress Investment Group, LLC. In addition, Gibson Dunn represents, formerly has represented and in the future likely will represent the following entities and/or their affiliates or related entities—which may be unsecured creditors of the Debtors— as identified by Gibson Dunn's master client database, in matters wholly unrelated to the Chapter 11 Cases: Georgia-Pacific LLC, Hewlett-Packard Company, Novation LLC, Salesforce.com Inc., Tenet, and Unisource Worldwide, Inc. These entities, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, are among the other Interested Parties in these Chapter 11 Cases.

15

Services provided to the above listed entities, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, do not individually represent a material percentage of Gibson Dunn's revenue for the twelve-month period prior to the Petition Date. Moreover, Gibson Dunn has a diverse client base and does not believe that any individual entity (or in the case of affiliated entities, any such affiliate group) on the Interested Parties list represents more than 1.1% of Gibson Dunn's revenue for the twelve-month period prior to the Petition Date. Further, only one entity on the Interested Parties list (Hewlett-Packard) exceeded more than 1% of such revenue. To be clear, Gibson Dunn does not and will not represent any of these parties in connection with the Chapter 11 Cases.

31. Gibson Dunn is confident that its diligence has resulted, to the greatest extent possible, in the disclosure of all potential conflicts. However, despite the efforts described above to identify and disclose Gibson Dunn's connections with parties in interest in the Chapter 11 Cases, as set forth in the Klyman Declaration, Gibson Dunn is unable to state with absolute certainty that every client representation or other connection has been disclosed because Gibson Dunn is an international law firm with over 1,200 attorneys across the globe. In this regard, if Gibson Dunn discovers additional information that requires disclosure, Gibson Dunn will file a supplemental disclosure with the Court. Additionally, to the extent that issues may arise which would cause the Debtors to be adverse to any of Gibson Dunn's existing clients, Gibson Dunn will obtain and disclose waivers and/or, to the extent that it would not be appropriate for Gibson Dunn to represent the Debtors with respect to such matters, Young Conaway Stargatt & Taylor LLP, Dinsmore & Shohl LLP, or other counsel employed by the Debtors will represent the Debtors in connection with such matters.

101871108.7

32. Based upon the foregoing, to the best of the Debtors' knowledge, information, and belief, Gibson Dunn represents no interest adverse to the Debtors or their estates. Accordingly, Gibson Dunn is a "disinterested person" within the meaning of sections 101(14) and 1107 of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

33. Section 327(a) of the Bankruptcy Code provides that a debtor in possession may, with the court's approval, employ professionals that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as defined by section 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. *See* 11 U.S.C. §§ 101(14). Additionally, section 1107(b) of the Bankruptcy Code provides that a professional is not disqualified for employment by a chapter 11 debtor in possession under section 327(a) of the Bankruptcy Code solely because of its employment by or representation of the debtor before the commencement of the case. *See* 11 U.S.C. § 1107(b).

34. Gibson Dunn's services will enable the Debtors to execute faithfully their duties as debtors in possession, and are necessary to the successful functioning of the Chapter 11 Cases. Based upon both its extensive experience and expertise, and its prior representation of the Debtors, Gibson Dunn is both well-qualified and uniquely able to represent the Debtors during the Chapter 11 Cases in an efficient, cost-effective and timely manner. As stated above, the Debtors do not believe that Gibson Dunn holds or represents any interest adverse to the Debtors' estates, and they believe that Gibson Dunn is a "disinterested person" under the Bankruptcy Code. Accordingly, the Debtors submit that the retention of Gibson Dunn is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

35. The Debtors further request approval of the employment of Gibson Dunn *nunc pro tunc* to the Petition Date. Such relief is warranted by the circumstances presented by these

17

Chapter 11 Cases. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity and speed that have characterized these Chapter 11 Cases have necessitated that the Debtors, Gibson Dunn and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

## NOTICE

36. The Debtors will provide notice of this Application to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

18

101871108.7

WHEREFORE, the Debtors respectfully request that the Court enter an order in the form annexed hereto granting the relief requested herein and such other relief as the Court deems just and proper.

Dated:  March 23, 2015
        Dayton, Ohio

Respectfully submitted,

THE STANDARD REGISTER COMPANY

/s/ Gerard D. Sowar
Gerard D. Sowar

Executive Vice President, General Counsel and Secretary of The Standard Register Company

101871108.7