## EXHIBIT B

## KLYMAN DECLARATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15- 10541 (BLS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ROBERT A. KLYMAN IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER APPROVING THE EMPLOYMENT AND RETENTION OF GIBSON, DUNN & CRUTCHER LLP AS GENERAL BANKRUPTCY AND RESTRUCTURING CO-COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

I, Robert A. Klyman, hereby declare and state as follows:

1.      I am a partner in the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). I am admitted to practice before, among others, the courts of the State of California; the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit; and I have been admitted before this Court *pro hac vice* in the above-captioned chapter 11 cases (these "Chapter 11 Cases"). I submit this declaration (this "Declaration"), pursuant to sections 327 and 329 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), in support of the *Debtors' Application for an Order Approving the Employment and Retention of*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

*Gibson, Dunn & Crutcher LLP as General Bankruptcy and Restructuring Co-Counsel For the Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* (the "Application"). Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[2]

**THE DEBTORS' RETENTION OF GIBSON DUNN**

**A.**        **Qualifications of Gibson Dunn**

2.        Gibson Dunn is well qualified to represent the Debtors.  Gibson Dunn is an international law firm with over 1,200 attorneys in 18 offices in major cities throughout the United States, Europe, the Middle East, Asia, and South America.  The firm maintains offices in New York City, Los Angeles, Century City, Orange County, San Francisco, Palo Alto, Dallas, Denver, and Washington, D.C., as well as in London, Paris, Munich, Brussels, Dubai, Sao Paulo, Singapore, Beijing, and Hong Kong.  Gibson Dunn has extensive expertise and experience in virtually all aspects of bankruptcy, litigation, finance, real estate, tax, securities and other corporate issues that may arise in these Chapter 11 Cases.

3.        The numerous attorneys practicing in Gibson Dunn's international Business Restructuring and Reorganization Practice Group have played significant roles in many large and complex cases under the Bankruptcy Code, including, without limitation, representing the debtors in the chapter 11 cases of Natrol, Inc., Arcapita Bank B.S.C.(c), Pacific Monarch Resorts, Inc., R.E. Loans, LLC,  TBS Shipping Services, Inc., Freedom Communications, Inc., Leap Wireless, Inc., Almatis B.V., Building Materials Holding Corporation, Fleetwood Enterprises, Inc., Scotia Pacific Company LLC, Hoop Holding LLC, The FINOVA Group Inc., FLAG Telecom Holdings Limited, American Pad and Paper Company, House2Home, Inc., Trump Hotel and Casino Resorts, Convergent Communications, Inc., Medscape, Inc., Microage,

---

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the Application.

2

Inc., Money's Foods, CollegeClub.com, Asbestos Claims Management Services, Financial News Network, First Republic Bank Corporation, Solutia, Inc., Advanced Tissue Sciences, Inc., and Resorts International.

4.      Since August 2009, Gibson Dunn's attorneys have provided corporate and strategic advice to the Debtors pursuant to and in accordance with the engagement letter dated as of August 14, 2009 (the "Engagement Letter"), a true and correct copy of which is attached to this Declaration as Exhibit 1.  Gibson Dunn's attorneys have become familiar with many aspects of the Debtors' business and legal affairs and have worked closely with the Debtors' management and other professionals.  Gibson Dunn is well-acquainted with the Debtors' corporate history, debt structure, and business operations and, as a result, has developed experience and expertise regarding the Debtors that will assist in providing effective and efficient services in these Chapter 11 Cases.

5.      Prior to execution of the Engagement Letter, Gibson Dunn was involved in certain unrelated transactions in which Gibson Dunn represented a party adverse to or opposite of the Debtors.   These matters are all inactive.  Such situations are common in the legal marketplace today, especially in large law firms, and we do not believe our past, limited involvement with the Debtors in any way represents an issue in this engagement.

6.      Until December 24, 2014, an employee of Silver Point Capital, L.P., which Gibson Dunn understands to be an affiliate of Silver Point Finance, LLC and Standard Acquisition Holdings, LLC (collectively "Silver Point)", served on the Board of Directors of Standard Register.  Gibson Dunn represented the Debtors at this time.  Neither the individual employee who was a director nor Silver Point was ever a client of Gibson Dunn in connection with the Debtors.

B.              **Prepetition Payments to Gibson Dunn**

7.       Prior to the Petition Date, as security for payment of fees and expenses, the

Debtors made advance payments to Gibson Dunn against which Gibson Dunn applied fees

earned and expenses incurred.  The Debtors compensated Gibson Dunn on a current basis upon

presentation of invoices detailing the fees and expenses incurred on the Debtors' behalf.

Prepetition payments were remitted by The Standard Register Company through its centralized

cash management system.

8.       As of the Petition Date, Gibson Dunn has been paid for all professional services

and expenses rendered to the Debtors prior to the Petition Date, and the remaining amount of the

advance payment approximates $861,250 (the "Remaining Advance Payment").[3]  Pursuant to the

Debtors' debtor-in-possession financing provided in accordance with the *Interim Order (I)*

*Authorizing Debtors In Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C.*

*§§ 105, 362, 363, and 364, (II) Granting Liens and Superiority Claims to Postpetition Lenders*

*Pursuant to 11 U.S.C. § 364; (III) Providing Adequate Protection to Prepetition Credit Parties*

*and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV)*

*Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Bankruptcy*

*Rule 4001-2* [Docket No. 59] (the "DIP Order"), the DIP Credit Parties (as defined in the DIP

Order) have agreed to fund a budget for professional fees through the case that does not require

application of the Advance Payment on a current basis.  Instead, the DIP Credit Parties and the

Debtors agreed to factor in the Remaining Advance Payment into the Aggregate Carve-Out Cap

(as defined in the DIP Order).  As a result of the foregoing, Gibson Dunn intends to apply the

---

[3]  Gibson Dunn has not yet completed its final reconciliation of prepetition fees and expenses applied against the
Advance Payment.  Gibson Dunn will apply the Remaining Advance Retainer to those prepetition fees and
expenses, and provide details regarding such final reconciliation in Gibson Dunn's first application for interim
compensation.

Remaining Advance Payment if and when a Carve-Out Trigger Notice is delivered in accordance with the DIP Order; if no such Carve-Out Trigger Notice is delivered, Gibson Dunn will apply the Remaining Advance Payment to its Final Fee Application that is approved by the Court.

9.      During the 90 days before the Petition Date, Gibson Dunn invoiced the Debtors, and the Debtors paid Gibson Dunn as follows:  (a) January 2015,  advance payment of $800,000 and application of fees and expenses in the amount of $50,000 (including $16,265.55 for an invoice dated October  2, 2014); (b) February 2015, advance payment of $1,705,050.91 and application of fees and expenses in the amount of $1,369,236.30; and (c) March 2015, advance payment of $1,700,000, and application of fees and expenses in the amount of $1,924,564.

C.          **Payment of Gibson Dunn's Fees and Expenses**

10.      Except as described in this paragraph, pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, Gibson Dunn intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and (b) seek reimbursement of actual and necessary out-of-pocket expenses.

11.      Gibson Dunn's current hourly rates for matters related to these Chapter 11 Cases range as follows: $860 to $1,225 for partners, $820 to $825 for of counsel, $505 to $815 for associates, and $395 to $420 for paraprofessionals.  Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4]  Gibson Dunn represented the Debtors during the twelve-month

---

[4]  The hourly rates charged by Gibson Dunn professionals differ based on, among other things, the professional's level of experience.  Like many of its peer law firms, Gibson Dunn increases the hourly billing rate of attorneys

period before the Petition Date using the hourly rates listed above.  These hourly rates are consistent with the rates that Gibson Dunn charges other nonbankruptcy and chapter 11 clients, regardless of the location of the chapter 11 case.  Moreover, the rate structure is appropriate and not significantly different from (a) the rates Gibson Dunn charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Gibson Dunn will perform in these Chapter 11 Cases.

12.    A list of the professionals currently expected to provide services to the Debtors and the current hourly rates for these professionals for 2015 is attached hereto as Exhibit 2.  In addition, as necessary, other Gibson Dunn professionals and paraprofessionals will provide services to the Debtors.

13.    Gibson Dunn will maintain detailed, contemporaneous records of time spent, as well as any actual and necessary expenses incurred, in connection with the rendering of the legal services described above by category and nature of the services rendered.  Notwithstanding the foregoing, Gibson Dunn acknowledges its compensation will be subject to approval by this Court.

14.    Gibson Dunn intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  Gibson Dunn has agreed not to share with any person or firm the compensation to be paid for

---

and paraprofessionals each year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion  and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Fee Guidelines")).  As set forth in the Proposed Order, Gibson Dunn will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

101871109.8

professional services rendered in connection with these Chapter 11 Cases, other than as permitted pursuant to section 504 of the Bankruptcy Code. Gibson Dunn also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the U.S. Trustee Fee Guidelines, both in connection with this Application and the interim and final fee applications to be filed by Gibson Dunn in these Chapter 11 Cases.

15.     By separate applications, the Debtors are seeking Court approval for the retention of: (a) Young Conaway Stargatt & Taylor LLP, as the Debtors' co-restructuring counsel; (b) McKinsey Recovery and Transformation Services U.S., LLC, to provide (i) temporary employees in a consulting capacity, and (ii) Kevin Carmody as the Debtors' Chief Restructuring Officer; (c) Lazard Fréres & Co. LLC and Middle Market LLC, as their investment banker; (d) Prime Clerk LLC, as their administrative advisor and claims and noticing agent; (e) Palisades Capital Advisors, LLC as their pension advisor; and (f) Dinsmore & Shohl LLP as their special counsel and conflicts counsel. I understand the Debtors may also file motions or applications to employ additional professionals. Gibson Dunn will work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

16.     It is Gibson Dunn's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Gibson Dunn's policy to charge its clients only the amount actually incurred by Gibson Dunn in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare,

7

meals, and lodging.  In addition, Gibson Dunn professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

17.     Consistent with past practice, Gibson Dunn will charge no more than $0.10 per page for standard duplication services in these Chapter 11 Cases.  Gibson Dunn does not charge its clients for incoming facsimile transmissions.

**D.          Gibson Dunn's Disinterestedness**

18.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Gibson Dunn, nor any partner or associate thereof, has any connection with the Debtors; Gibson Dunn does not represent, and has not represented, any entity other than the Debtors in matters related to these Chapter 11 Cases; Gibson Dunn does not have any connection with, and has not represented in the past, the United States Trustee for the District of Delaware, or any person employed by the Office of the United States Trustee for the District of Delaware; and Gibson Dunn does not have any connection with the Debtors' creditors, any other party in interest, or their respective attorneys and accountants, except as set forth below and in Exhibit 4 to this Declaration.

19.     To check and clear conflicts, and in preparing my declaration, Gibson Dunn used a set of procedures that it has developed and used in comparable cases to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals in chapter 11 cases.  Pursuant to these procedures, at my direction beginning January 29, 2015, and on a rolling basis as information became available, Gibson Dunn performed the following actions to determine whether Gibson Dunn or any of its attorneys has any connections with, has in the past represented, or is currently representing potential parties in interest in these Chapter 11 Cases:

101871109.8

(a)    A list of interested parties (the "Interested Parties") was created using information provided by the Debtors and additional information identified by Gibson Dunn. The list of Interested Parties is comprised of the following entities, whose identities are set forth in Exhibit 3, which is attached hereto:

   (i)    the Debtors and their non-debtor subsidiaries;

   (ii)    the Debtors' officers and directors;

   (iii)    major business affiliations of the Debtors' officers and directors and related persons;

   (iv)    the Debtors' secured creditors;

   (v)    the Debtors' 50 largest unsecured creditors on a consolidated basis as identified in their chapter 11 petitions;

   (vi)    parties relating to significant litigation involving the Debtors;

   (vii)    the Debtors' landlords;

   (viii)    the Debtors' equity holders (greater than 5%);

   (ix)    the Debtors' largest customers;

   (x)    the Debtors' insurance companies;

   (xi)    the Debtors' utility providers;

   (xii)    the Debtors' ordinary course professionals;

   (xiii)    professionals in the Chapter 11 Cases;

   (xiv)    counsel and other advisors retained by significant parties;

   (xv)    United States Trustee for the District of Delaware and employees in the Office of the United States Trustee for the District of Delaware;

   (xvi)    United States Bankruptcy Judges in the District of Delaware; and

   (xvii)    other significant parties in interest.

(b)    Gibson Dunn compared each of the Interested Parties to the names that Gibson Dunn maintains in its master client database created from its conflict clearance and billing records. Gibson Dunn's client database includes: (i) the name of each current or former client; (ii) the names of any entities materially related to, or materially adverse to, such current or former client; and (iii) the names of the Gibson Dunn attorneys responsible for such current or former clients; (iv) the

9

status of the matter as either "active" or "inactive"; and (v) the dates on which the matter was opened and/or closed; and

(c)    Any matches between the Interested Parties and the entities in Gibson Dunn's client database were identified, reviewed by an attorney and compiled for purposes of this declaration.  To the extent that Gibson Dunn currently represents, or has represented within the last three years, any of the Interested Parties, the identities of such entities is set forth in <u>Exhibit 4</u>, which is attached hereto.  In determining whether a client is presently represented by Gibson Dunn, I relied on the existence of an "active" notation on the report to reflect current representation. With respect to matters showing as "inactive," I relied on the "close date" to determine whether the representation occurred within the past three years.  If an "inactive" matter showed no "close date," I assumed for purposes of this disclosure that the matter was inactive during the past three years and did not include the client on <u>Exhibit 4</u>, except "inactive" matters opened on or after March 12, 2012 which showed no "close date" for which the client is included on <u>Exhibit 4</u>.

20.    Based on the search of names set forth in <u>Exhibit 3</u>, I concluded that Gibson Dunn

has the following connections with the Debtors and the Interested Parties:

(a)    Prior to the Petition Date, Gibson Dunn performed certain legal services for the Debtors, as described above.  After Gibson Dunn's reconciliation of the Advance Payment, as described above, I expect that the Debtors will not owe Gibson Dunn any amount for services performed or expenses incurred prior to the Petition Date;

(b)    Prior to execution of the Engagement Letter, Gibson Dunn was involved in certain unrelated transactions in which Gibson Dunn represented a party adverse to or opposite of the Debtors.  These matters are all inactive.  Such situations are common in the legal marketplace today, especially in large law firms, and I do not believe our past, limited involvement with the Debtors in any way represents an issue in this engagement.

(c)    Gibson Dunn has over 1,200 attorneys.  A general inquiry of all Gibson Dunn attorneys was sent by electronic mail to determine whether any such individuals holds claims against, or stock or securities of the Debtors (other than in connection with investments in mutual funds, blind trusts or other investments as to which such individual has no discretion as to the selection of the individual underlying assets).  Based solely on responses to this inquiry, no Gibson Dunn attorneys reported owning any debt or equity securities of the Debtors (other than securities that may be owned in connection with investments in mutual funds, blind trusts or other investments as to which such individual has no discretion as to the selection of the individual underlying assets);

10

(d)     From time to time, Gibson Dunn has referred matters to many of the Debtors' professionals to be retained in the Chapter 11 Cases.  Likewise, certain of the Debtors' professionals have referred matters to Gibson Dunn; and

(e)     From time to time, Gibson Dunn has represented, and likely will continue to represent, certain creditors of the Debtors and other parties actually or potentially adverse to the Debtors, but such representations have been in matters wholly unrelated to the Debtors or these Chapter 11 Cases.  As described below, Gibson Dunn has undertaken a detailed search to determine whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters, and all such known representations within the last three years are described in Exhibit 4, which is attached hereto.  Due to the breadth of Gibson Dunn's client base, the firm is not subject to undue influence of any single client.

21.     Gibson Dunn's connections with the Interested Parties are set forth in Exhibit 4, which lists the Interested Parties that Gibson Dunn has represented in the past three years or is currently representing in matters wholly unrelated to the Chapter 11 Cases.  As a supplement to the disclosure of Gibson Dunn's connections with the Interested Parties set forth in Exhibit 4, and without limiting such disclosure, Gibson Dunn represents, formerly has represented and in the future likely will represent the following entities and/or their affiliates or related entities— which may be secured creditors of the Debtors—as identified by Gibson Dunn's master client database, in matters wholly unrelated to the Chapter 11 Cases: Silver Point Capital, L.P., Wells Fargo Bank, N.A., Bank of America, N.A., Credit Suisse and Fortress Investment Group, LLC. In addition, Gibson Dunn represents, formerly has represented and in the future likely will represent the following entities and/or their affiliates or related entities—which may be unsecured creditors of the Debtors—as identified by Gibson Dunn's master client database, in matters wholly unrelated to the Chapter 11 Cases: Georgia-Pacific LLC, Hewlett-Packard Company, Novation LLC, Salesforce.com Inc., Tenet, and Unisource Worldwide, Inc.  These entities, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, are among the other Interested Parties in these Chapter 11 Cases.  Services provided to

the above listed entities, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, do not individually represent a material percentage of Gibson Dunn's revenue for the twelve-month period prior to the Petition Date.  Moreover, Gibson Dunn has a diverse client base and does not believe that any individual entity (or in the case of affiliated entities, any such affiliate group) on the Interested Parties list represents more than 1.1% of Gibson Dunn's revenue for the twelve-month period prior to the Petition Date.  Further, only one entity on the Interested Parties list (Hewlett-Packard) exceeded more than 1% of such revenue.  To be clear, Gibson Dunn does not and will not represent any of these parties in connection with the Chapter 11 Cases.

22.    Gibson Dunn believes that its diligence has resulted, to the greatest extent possible, in the disclosure of all potential conflicts.  However, despite the efforts described above to identify and disclose Gibson Dunn's connections with parties in interest in these Chapter 11 Cases, Gibson Dunn is unable to state with absolute certainty that every client representation or other connection has been disclosed, because Gibson Dunn is an international law firm with over 1,200 attorneys in 18 offices.  In this regard, if Gibson Dunn discovers additional information that requires disclosure, Gibson Dunn will file a supplemental disclosure with the Court.  Additionally, to the extent that issues may arise which would cause the Debtors to be adverse to any of Gibson Dunn's existing clients, Gibson Dunn will obtain and disclose waivers and/or, to the extent that it would not be appropriate for Gibson Dunn to represent the Debtors with respect to such matters, Young Conaway Stargatt & Taylor LLP, Dinsmore & Shohl LLP, or other counsel employed by the Debtors will represent the Debtors in connection with such matters.

101871109.8

23.     I do not believe that the connections between Gibson Dunn and the entities listed herein and in <u>Exhibit 4</u> will impair Gibson Dunn's ability to represent the Debtors in these Chapter 11 Cases.

24.     No promises have been received by Gibson Dunn or any member or associate thereof as to payment or compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.  Other than with members and regular associates of the firm, Gibson Dunn has no agreement with any other entity to share with such entity any compensation received by Gibson Dunn.

**E.          Compliance with U.S. Trustee Fee Guidelines**

25.     Consistent with the U.S. Trustee Fee Guidelines,[5] I state as follows:

- Gibson Dunn has not agreed to a variation of its standard or customary billing arrangements for this engagement;

- None of Gibson Dunn's professionals included in this engagement have varied their rate based on the geographic location of these Chapter 11 Cases;

- Gibson Dunn was retained by the Debtors pursuant to an engagement agreement dated August 14, 2009. The billing rates and material terms of the prepetition engagement are the same as the rates and terms described in the Application; and

- The Debtors will be approving a prospective budget and staffing plan for Gibson Dunn's engagement for the postpetition period as appropriate.  In accordance with the U.S. Trustee Fee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

---

[5] The U.S. Trustee Fee Guidelines themselves acknowledge that "the Guidelines do not supersede local rules, court orders, or other controlling authority."  While the Debtors and Gibson Dunn intend to work cooperatively with the U.S. Trustee to address requests for information and any concerns that may have led to the adoption of the U.S. Trustee Fee Guidelines, neither the filing of this declaration, nor anything contained herein, is intended to or shall be deemed to be an admission by Gibson Dunn that Gibson Dunn is required to comply with the U.S. Trustee Fee Guidelines. Gibson Dunn reserves any and all rights with respect to the application of the U.S. Trustee Fee Guidelines in respect of any application for employment or compensation filed in these Chapter 11 Cases.

The foregoing constitutes the statement of Gibson Dunn pursuant to sections 327(a), 329 and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), and Local Rule 2014-1.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:    March 23, 2015

       /s/ Robert A. Klyman        

Robert A. Klyman

## **EXHIBIT 1**

**ENGAGEMENT LETTER**

(attached)

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com
BBecker@gibsondunn.com

RECEIVED

AUG 1 8 2009

New Matters

August 14, 2009

Direct Dial
(212) 351-4062

Fax No.
(212) 351-6202

Client No.
00000-00000

90441-1

Kathryn A. Lamme, Esq.
Senior Vice President, General Counsel & Secretary
The Standard Register Company
600 Albany Street
Dayton, OH 45408

> Re:   *Representation of The Standard Register Company*

Dear Katie:

We are pleased to welcome The Standard Register Company as a client of Gibson, Dunn & Crutcher LLP. This letter and the attached Terms of Retention set forth the terms of our engagement.

You are retaining us to provide legal services to The Standard Register Company in connection with strategic matters including the potential acquisition of a company referred to as "Wilbur." You acknowledge the need to provide us with accurate and complete information and the need to cooperate and keep us informed of any developments related to our representation of you. Unless otherwise agreed in writing, the terms of this letter and the attached Terms of Retention will also apply to any additional matters that we handle on behalf of The Standard Register Company, and any subsidiary of The Standard Register Company to which we also provide legal services, as to which you represent that you have the authority to bind such subsidiaries to the terms of this letter.

## Fees and Billing

Dennis Friedman and I will be primarily responsible for this matter. Other attorneys and paralegals may also perform services during the course of this engagement. For more information, please refer to the section on Professional Fees in the Terms of Retention. Generally, we will bill The Standard Register Company for our services and reimbursable expenses on a monthly basis. With respect to fees relating to the proposed acquisition of Wilbur,

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO  LONDON
PARIS  MUNICH  BRUSSELS  DUBAI  SINGAPORE  ORANGE COUNTY  CENTURY CITY . DALLAS  DENVER

# GIBSON, DUNN & CRUTCHER LLP

if such transaction is not successful, we will discount our fees by 15% and if such transaction is successful, The Standard Register Company will pay us a 15% premium on our fees.

We will not charge The Standard Register Company for certain ancillary services, such as word processing and standard secretarial time. We will invoice you for the cost of other services incurred on your behalf. Please refer to the section on Costs and Ancillary Services in the Terms of Retention for additional information.

## Waiver of Prospective Conflicts on Unrelated Matters

We represent many other clients. It is possible that during or after the time we represent The Standard Register Company, other present or future clients will ask us to represent them in disputes or transactions with or involving The Standard Register Company (which includes any related persons or entities) as to legal matters not substantially related to our representation of The Standard Register Company. In such a situation, the Firm could be tempted to balance the interests between its clients rather than vigorously assert a single client's interest on an issue. We do not believe, however, that our simultaneous representation of you in the present matter, and our representation of another client in an unrelated matter adverse to you will compromise our ability to adequately represent you.

We wish to clarify our mutual understanding with The Standard Register Company as to the extent to which our present representation both will affect, and will not affect, our ability to represent other existing or future clients in other legal matters, whether or not The Standard Register Company (including related persons or entities) are adverse or otherwise involved in those matters. As a condition of our undertaking this matter, The Standard Register Company agrees that:

- we can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings (which includes bankruptcy or insolvency proceedings, including instances where The Standard Register Company is a creditor or equity holder in such a proceeding) ("Other Matters"), so long as the Other Matters are not substantially related to our work for The Standard Register Company on strategic matters including the potential acquisition of a company referred to as "Wilbur.", even if those other clients' interests are adverse to The Standard Register Company's interests in the Other Matters;

- we might obtain confidential information of interest to The Standard Register Company in these Other Matters that we cannot share with The Standard Register Company; and

# GIBSON, DUNN & CRUTCHER LLP

Kathryn A. Lamme, Esq.
The Standard Register Company
August 14, 2009
Page 3

- The Standard Register Company waives any conflict of interest that might arise from the Firm's engagement in the Other Matters, and will not seek to disqualify the Firm or any of the Firm's lawyers in, or assert a conflict with respect to, the Firm's engagement in the Other Matters.

If for any reason, The Standard Register Company's consent and waiver of potential conflicts is not effective in the circumstances, The Standard Register Company consents to our resignation from our representation of The Standard Register Company, and agrees to support a motion, if filed by the Firm, to withdraw from our representation of The Standard Register Company if resignation at that time is otherwise permissible under applicable professional rules. In that case, The Standard Register Company would need to engage, at The Standard Register Company's expense, separate counsel to represent The Standard Register Company's interests.

Of course, without The Standard Register Company's further prior written consent, we cannot and will not represent another client in a matter adverse to The Standard Register Company if we have obtained confidential information of a nonpublic nature from The Standard Register Company, as a result of our representation of The Standard Register Company, that, if known to the other client, could be used in the Other Matters by the other client to The Standard Register Company's material disadvantage unless we have imposed in advance of that subsequent engagement an ethical screen that assures the preservation of The Standard Register Company's confidences.

<u>Arbitration</u>

We appreciate the opportunity to serve as your attorneys and look forward to a productive and mutually rewarding relationship. If you become dissatisfied with our charges or services, we encourage you to bring that to our attention immediately. We believe that most problems of this nature can be resolved through good faith discussion. In the event that we cannot resolve a dispute through discussion, we believe that binding arbitration offers a more expeditious and less expensive alternative than court action.

By signing this engagement letter agreement, you agree to binding arbitration in New York City of any dispute, claim or controversy regarding our services as described in the attached Terms of Retention, including any dispute as to the fees for our services, which you might otherwise have the right to arbitrate under Part 137 of the Rules of the Chief Administrator of the Courts. You are also agreeing that The Standard Register Company is waiving its right to a jury or court trial, and is waiving any right The Standard Register Company might have to collect punitive damages. This waiver of punitive damages applies only to the maximum extent permitted by law. If you do not wish to agree to arbitration, you should advise us before signing this letter. If you have any questions or concerns regarding the advisability of arbitration, we encourage you to discuss them with us, independent counsel, or your other advisors.

# GIBSON, DUNN & CRUTCHER LLP

Kathryn A. Lamme, Esq.
The Standard Register Company
August 14, 2009
Page 4

Confirmation of Agreement

    You should review and familiarize yourself with the attached Terms of Retention, which are incorporated into this engagement letter agreement. If this letter and the Terms of Retention accurately reflect your understanding of our agreement, please acknowledge your approval and acceptance of these terms by signing and returning to me the enclosed copy of this letter. I would be pleased to answer any questions you might have.

    On behalf of Gibson, Dunn & Crutcher LLP, I look forward to a mutually rewarding relationship.

Very truly yours,

Barbara L. Becker
of GIBSON, DUNN & CRUTCHER LLP

Agreed to this 11 day of August, 2009.

The Standard Register Company

By: _____
Kathryn A. Lamme
Senior Vice President, General Counsel &
Secretary

BLB/ml

100711810_1.DOC

# GIBSON, DUNN & CRUTCHER LLP

**TERMS OF RETENTION**
OF
**GIBSON, DUNN & CRUTCHER LLP**

Except as modified in writing, the following provisions will apply to the relationship between Gibson, Dunn & Crutcher LLP (the "Firm" or "we") and the client ("you"), as identified in the accompanying letter agreement:

1.    <u>Professional Fees</u>.    The Firm will bill you for the services it provides based on a variety of factors, including:  the time expended; the complexity of the matter; time limitations imposed; the novelty and difficulty of the issues posed; the amount involved and the results obtained; and the experience, reputation, and ability of the attorney or attorneys performing services on your behalf. The billing rates of our attorneys and paralegals vary, depending generally upon the experience and capabilities of the attorney or paralegal involved, and we adjust these rates from time to time. Unless otherwise agreed in writing, we will charge you for their services at their assigned rates. Upon any adjustment in our assigned rates, we will charge you the adjusted rates. Other attorneys and paralegals may also perform services during the course of this engagement. Dennis Friedman's current hourly rate is $1,100 and Barbara Becker's is $990. Associate rates range from $295 to $675.

2.    <u>Costs and Ancillary Services</u>.    The Firm will invoice you for the cost of certain ancillary services incurred on your behalf. Generally, we will not charge you for certain services, such as word processing and regular secretarial time. Whenever practicable, discounts obtained from vendors will be passed on to you. Under certain circumstances, we may ask you to advance anticipated costs or to pay outside vendors directly for their services. The primary ancillary services and our specific policies regarding billing are set forth below. Other services may be rendered during the course of our engagement, and will also be billed to you. Our charges for these costs and ancillary services are subject to change from time to time.

2.1.    <u>Word Processing</u>.    Most of the Firm's offices have advanced word processing capabilities and our offices are linked by a network which facilitates efficiency and service to clients. The Firm does not charge for equipment usage or word processing time.

2.2.    <u>Secretarial Time</u>.    The Firm will not charge you for regular secretarial time. We bill for secretarial overtime services only if your specific demands require late night work or in other unusual circumstances (typically a large case or transaction with dedicated secretaries). The standard fee for overtime secretarial services is $40 per hour.

2.3.    <u>Duplicating/Copying</u>.    The Firm has a substantial investment in duplicating equipment which is located not only in our service centers but also at several locations on each floor to provide quick turn-around when needed. In-house copying is billed to the client at a flat rate of $.10 per page. If you instruct us to do so, we will use outside copying services to the extent possible. Outside duplicating services are charged to the client at the Firm's actual cost with no mark-up.

2.4.    <u>Telephone</u>.    The Firm will not charge you for local telephone service. Long distance calls are charged at a fixed rate per minute equal to the allocated actual cost as revised from time-to-time.

2.5.    <u>Telecopy</u>.    The Firm provides in-house FAX services at numerous locations for convenience and confidentiality in serving clients. There is no charge for incoming FAX documents. Charges for outgoing documents are strictly limited to the associated long distance telephone charges. There is not a per page charge.

# GIBSON, DUNN & CRUTCHER LLP

2.6.    Legal Research.    Computerized research (such as Lexis and Westlaw) is available at the attorney's desk or in a central library location. Certain vendors bill the Firm based on an annual flat rate. The Firm charges for on-line computer research time based on an allocation of the overall annual cost to provide and manage those services. The rates clients pay factor in the benefit of any discounts the Firm is able to negotiate with vendors of such services.

2.7.    Overnight And Local Deliveries.    We will charge you for overnight deliveries and local deliveries by outside messenger services at the Firm's actual cost. We will pass on negotiated discounts to you.

2.8.    Postage.    The Firm will not charge you for postage, except for large volume mailings, which are billed at the Firm's actual cost.

2.9.    File Storage.    The Firm will not charge you for file storage except in extraordinary circumstances and only after consultation with you and your agreement. The Firm may, at its own discretion, choose to store files electronically rather than hardcopy.

2.10.    Office Supplies.    We will not charge you for routine quantities of office supplies. You may incur a charge, equal to the Firm's actual cost, for substantial and unusual orders of office supplies required for a particular matter.

2.11.    Travel and Subsistence.    Our attorneys are instructed to incur transportation, lodging, meal and other travel costs at reasonable rates. The Firm instructs its attorneys to comply with the policies of individual clients regarding airline usage and to obtain the lowest fare available consistent with those policies. We will bill you for all travel costs at the Firm's actual cost, including passing along the direct discount offered by airline carriers. From time to time additional travel benefits from certain carriers based on volume are received by the Firm; all such benefits are generally retained by the Firm.

2.12.    Employee Transportation.    Under certain circumstances, the Firm provides transportation for its employees, especially when public transportation is not available or safe. In those situations where the Firm provides transportation to or from the office for an employee as part of that particular employee's regular schedule, such costs will not be billed to you. In those situations where employees are working overtime for you because of the time demands of a particular matter, the actual transportation costs may be billed at the discretion of the billing attorney.

2.13.    Meetings/Meals (Other Than Travel Related).    When a client or third party is present and the meeting is for the benefit of the client, the client may be billed for actual meal-related costs at the discretion of the billing attorney. Meals or beverages ordered where the client or a third party is not present will not be billed to the client, even if the meeting is for the client's benefit.

2.14.    Storage Fees.    The Firm charges a small monthly fee for storing images (tiff files) of discovery documents which are typically linked to databases. The cost is $.003/file for the first 500,000 files and $.001/file thereafter.

2.15.    Other Costs and Third Party Vendors.    Other costs that we incur for your benefit (such as expert witness fees; filing fees; etc.) will be billed at the Firm's actual cost. In addition, the services provided to you may involve services provided by third parties outside the Firm. You will be required to pay for these outside services directly, or to reimburse us if we make payment for these services on your behalf. When there are substantial expenditures involving outside vendors or substantial out of pocket expenditures, we will require either that you pay those sums to us before we expend them or that you directly contract with and pay the outside vendor. You agree that you will indemnify the Firm for any claim made against the Firm from an outside vendor for services rendered in connection with the Firm's representation of you.

# GIBSON, DUNN & CRUTCHER LLP

3.    **Estimates Not Binding.**   It is often impractical to determine in advance the amount of effort that will be needed to complete all the necessary work on a matter or the total amount of fees and costs which may be incurred.  Obviously, any estimates or budgets may need to be adjusted upwards or downwards as changes occur.  Moreover, these estimates and budgets are not intended to be binding, are subject to unforeseen circumstances; and by their nature are inexact.

4.    **Billing and Payment.**   Fees and expenses will generally be billed monthly and are payable upon presentation, but in no event to exceed 30 days from presentation of our statement.  We expect prompt payment, and our experience indicates that prompt billing and prompt payment enhances the working relationship.  We reserve the right to postpone or defer providing additional services or to discontinue our representation, to the extent legally permissible, if billed amounts are not paid when due.  We also reserve the right to charge a late fee of 1% per month on all sums that are not paid within 30 days of presentation of our statement.  You also agree that you will promptly review our statements and raise any questions regarding the amounts and items billed within 30 days of presentation.  If you object to only a portion of the charges on a statement, then you agree to pay the remainder of the charges, which will not constitute a waiver of your objection.

5.    **Advance Payments.**   The Firm may have required an advance payment before working on this matter.  Unless otherwise agreed, all advance payments shall be deemed to be advances for attorneys' fees and shall not constitute advances for costs and expenses.  Where permitted, the Firm will maintain such advance fee payments in a general account.  The amount of this advance payment does not represent our estimate of the total charges which may be incurred, but is only a partial advance payment.  Of course, the amount of work which we are called upon to perform may subsequently exceed our prior expectations.  The Firm reserves its right, as a condition to the provision of further services, to require an advance payment, if none has previously been provided, and/or an increase in any advance payment.  Any charge for services or expenditures not covered by the advance payment is due and payable directly by you upon receipt of each monthly statement.  At the conclusion of our representation, any portion of any advance payment which has not been used up by services rendered or payment to third parties made or incurred will be refunded to you.

With respect to litigation matters, such matters may proceed to trial or hearing.  Preparing for and conducting the trial or hearing is often time consuming and expensive.  Thus, if the matter appears headed for trial, we may require an additional advance payment prior to our commencement of preparation for the trial or hearing.  The amount of the advance payment will be determined once the trial or hearing appears inevitable and as soon as possible prior to the date the matter is set for trial or hearing, based upon an estimate of the magnitude of service and expenditures included.  If you fail to provide this additional advance payment within 15 days after it is requested by us, you agree that we have the right to discontinue our representation to the extent legally permissible.

6.    **Termination of Representation.**

6.1.    **Termination By You.**   You have the right to terminate our services at any time.  If you decide to terminate our services, you agree to give us prompt written notice of such termination.  Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf prior to the date of such termination or which are reasonably necessary thereafter.  If we are attorneys of record in any proceeding, you agree to execute and return to us a Substitution of Attorney promptly upon receipt from us.

6.2.    **Termination By Us.**   We also have the right to withdraw from this representation if, among other things, you fail to honor the terms of our engagement letter and these Terms of Retention, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, and we determine that we are permitted to withdraw our representation.  If we elect to withdraw, you will take all steps necessary to free us of any obligation to

# GIBSON, DUNN & CRUTCHER LLP

perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf.

      6.3.   <u>Date of Termination</u>.   Our representation of you will be considered terminated at the earlier of (a) your termination of our representation, (b) our withdrawal from our representation of you or (c) the substantial completion of our work for you. In the event there has been no work performed by our attorneys on your behalf for a period of six consecutive months, we agree that our attorney-client relationship will have been terminated.

      6.4   <u>Duties Upon Termination</u>.   Upon termination of our involvement in a particular matter for which we were engaged, we will have no further duty to inform you of future developments or changes in law which may be relevant to such matter. Further, unless you and the Firm agree in writing to the contrary, we will have no obligation to monitor renewal or notice duties or similar deadlines which may arise from the matters for which we had been engaged. If your matter involves obtaining a judgment and such judgment is obtained, we will only be responsible for those post-judgment services (such as recording abstracts, filing judgment liens, and calendaring renewals of judgments) as are expressly agreed to by you and the Firm in writing, and for which you will be obliged to pay.

    7.   <u>Arbitration</u>.

      7.1.   <u>ARBITRATION OF ALL DISPUTES, CLAIMS OR CONTROVERSIES</u>.  PART 137 OF THE RULES OF THE CHIEF ADMINISTRATOR OF THE COURTS GIVES YOU THE RIGHT, IN CERTAIN CIRCUMSTANCES, TO SUBMIT A DISPUTE ABOUT THE FEES FOR OUR SERVICES TO ARBITRATION. A COPY OF THE WRITTEN INSTRUCTIONS AND PROCEDURES FOR PART 137 IS ATTACHED. BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE: 1) THAT YOU HAVE READ THESE WRITTEN INSTRUCTIONS AND PROCEDURES, 2) THAT YOU HAVE BEEN ADVISED OF YOUR RIGHT TO USE THE FEE ARBITRATION PROCEDURES OF PART 137, AND 3) THAT YOU ARE NOT REQUIRED TO AGREE TO ARBITRATE ANY FEE DISPUTE IN AN ARBITRAL FORUM OUTSIDE PART 137. NOTWITHSTANDING WHATEVER RIGHTS YOU MAY HAVE UNDER PART 137, BY SIGNING THIS AGREEMENT, YOU HEREBY AGREE TO RESOLVE ALL FEE DISPUTES BY ARBITRATION BEFORE AN ARBITRAL FORUM OUTSIDE PART 137. YOU THEREBY AGREE TO WAIVE YOUR RIGHTS WITH REGARD TO ARBITRATION PURSUANT TO PART 137, WHICH INCLUDES THE RIGHT TO REJECT THE ARBITRATOR(S) AWARD BY COMMENCING AN ACTION ON THE MERITS IN A COURT OF LAW.

    AS A MATERIAL PART OF OUR AGREEMENT, YOU AND THE FIRM AGREE THAT ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OUR RELATIONSHIP, OR THE SERVICES PERFORMED OR ANY OTHER MATTER OR THING, SHALL BE DETERMINED EXCLUSIVELY BY CONFIDENTIAL, FINAL AND BINDING ARBITRATION AS FOLLOWS:

      (A)   THE MATTERS SUBMITTED TO ARBITRATION SHALL BE HEARD AND DETERMINED BY A SINGLE ARBITRATOR IN THE PRINCIPAL CITY OF THE FEDERAL JURISDICTION IN WHICH THIS AGREEMENT IS ENTERED INTO, IN ACCORDANCE WITH THE THEN EXISTING RULES FOR COMMERCIAL ARBITRATION OF THE JUDICIAL ARBITRATION AND MEDIATION SERVICES ("JAMS").

      (B)   ANY PARTY TO THE ARBITRATION MAY REQUEST JAMS TO IDENTIFY PANELS OF RETIRED OR FORMER JURISTS QUALIFIED AND ABLE TO SIT AS ARBITRATORS OF THE MATTERS SUBMITTED FOR ARBITRATION, AND THE ARBITRATOR DETERMINING THE SUBMITTED MATTERS SHALL BE SELECTED FROM SUCH PANELS PURSUANT TO JAMS RULES.

# GIBSON, DUNN & CRUTCHER LLP

(C)      DISPUTES, CLAIMS AND CONTROVERSIES SUBJECT TO FINAL AND BINDING ARBITRATION UNDER THIS AGREEMENT INCLUDE, WITHOUT LIMITATION, ALL THOSE THAT OTHERWISE COULD BE TRIED IN COURT TO A JUDGE OR JURY IN THE ABSENCE OF THIS AGREEMENT.  SUCH DISPUTES, CLAIMS AND CONTROVERSIES INCLUDE, WITHOUT LIMITATION, CLAIMS FOR PROFESSIONAL MALPRACTICE, DISPUTES OVER OUR FEES AND EXPENSES, ANY DISPUTES OVER THE QUALITY OF SERVICES WHICH WE RENDER, ANY CLAIMS RELATING TO OR ARISING OUT OF YOUR OR OUR PERFORMANCE UNDER THIS AGREEMENT, AND ANY OTHER CLAIMS ARISING OUT OF ANY ALLEGED ACT OR OMISSION BY YOU OR US.

(D)      EXCEPT AS OTHERWISE DETERMINED BY THE ARBITRATOR, THE FEES OF THE ARBITRATION INITIALLY WILL BE PAID EQUALLY BY BOTH THE FIRM AND YOU.  HOWEVER, THE ARBITRATOR SHALL HAVE THE RIGHT TO ORDER EITHER PARTY TO PAY ALL FEES AND COSTS AS PART OF THE AWARD.

(E)      BY AGREEING TO SUBMIT ALL DISPUTES, CLAIMS AND CONTROVERSIES TO BINDING ARBITRATION, YOU AND THE FIRM EXPRESSLY WAIVE ANY RIGHTS TO HAVE SUCH MATTERS HEARD OR TRIED IN COURT BEFORE A JUDGE OR JURY OR IN ANOTHER TRIBUNAL.  YOU AND THE FIRM FURTHER AGREE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, TO WAIVE ANY RIGHT YOU OR THE FIRM MAY HAVE TO PUNITIVE DAMAGES.

(F)      THE ARBITRATOR SHALL BE AUTHORIZED TO DETERMINE ALL ISSUES IN ARBITRATION AS IF THE ARBITRATOR WERE SITTING AS A JUDGE WITHOUT A JURY, AND THE ARBITRATOR SHALL RENDER A WRITTEN REASONED AWARD WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW SUFFICIENT TO SUPPORT SUCH JUDICIAL REVIEW AS IS PROVIDED BY APPLICABLE STATUTES GOVERNING ARBITRATIONS.

(G)      ANY ARBITRATION AWARD SHALL BE FINAL, BINDING AND CONCLUSIVE UPON THE PARTIES, SUBJECT ONLY TO JUDICIAL REVIEW PROVIDED BY STATUTES GOVERNING ARBITRATIONS, AND A JUDGMENT RENDERED ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF.

7.2.      <u>WAIVER OF RIGHT TO JURY OR COURT TRIAL</u>.    YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT YOU AND THE FIRM ARE WAIVING ANY RIGHT TO A JURY OR COURT TRIAL, AND YOU ARE WAIVING YOUR RIGHT TO ARBITRATE FEE DISPUTES UNDER PART 137 OF THE RULES OF THE CHIEF ADMINISTRATOR OF THE COURTS (22 N.Y.C.R.R.).

7.3      <u>WAIVER OF RIGHT TO RECEIVE PUNITIVE DAMAGES</u>.    YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, YOU AND THE FIRM ARE WAIVING, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT YOU OR THE FIRM HAVE TO AN AWARD OF PUNITIVE DAMAGES.

7.4      <u>OTHER ARBITRATION SERVICE PROVIDERS</u>.    NOTHING HEREIN SHALL LIMIT THE RIGHT OF THE PARTIES TO STIPULATE AND AGREE TO CONDUCT THE ARBITRATION BEFORE AND PURSUANT TO THE THEN EXISTING RULES OF ANY OTHER AGREED-UPON ARBITRATION SERVICES PROVIDER.

8.      <u>Identity of the Client</u>.    The Firm's client for purposes of this engagement is only the person(s), entity or entities identified in the accompanying letter agreement.  Unless expressly agreed, we are not undertaking the representation of any related or affiliated person or entity, nor any family member,

# GIBSON, DUNN & CRUTCHER LLP

parent corporation or entity, subsidiary, or affiliated corporation or entity, nor any of your or their officers, directors, agents, partners or employees.

9.    Conflicts of Interest.    To assist in avoiding representation of parties with conflicts of interest, we maintain a computerized conflict of interest index.  The Firm will not represent any party with an interest that may be adverse to that of a person or entity included in the index without an examination to determine whether a conflict of interest would actually be created.  To allow us to conduct a conflicts check, you represent that you have identified for us all persons and entities that are or may become involved in this matter, including all persons and entities that are affiliated with you and the other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals).  You also agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in this matter.

10.    Consent to Electronic Communications.    In order to maximize our efficiency, we intend to use state of the art communication devices to the fullest extent possible (e.g., e-mail, document transfer by computer, cellular telephones, facsimile transfers and such other devices which may develop in the future).  The use of such devices under current technology may place your confidences and privileges at risk.  However, we believe the efficiencies involved in the use of these devices outweighs the risk of accidental disclosure.  By agreeing to these terms you consent to the use of these electronic communication devices.

11.    Related Proceedings and Activities.    If any claim is brought against the Firm or any of its personnel based on your negligence or misconduct, if we are asked to testify as a result of our representation of you, or if we must defend the confidentiality of your communications in any proceeding, you agree to pay us for any resulting costs, including for our time, calculated at the hourly rate for the particular individuals involved, even if our representation of you has ended.

12.    Limitations on Liability.

12.1.    General Limitation on Liability.    You agree that the Firm shall not have any liability to you in connection with our representation of you except for liability for losses, claims, damages, liabilities or expenses incurred by you that result from our professional malpractice, gross negligence or willful misconduct.

12.2.    Registered Limited Liability Partnership.    Gibson, Dunn & Crutcher LLP is a California registered limited liability partnership.  As a result, with certain possible limited exceptions, none of which may be applicable, the partners of the Firm are not liable or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the Firm or another partner in the Firm, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the Firm, by reason of being a partner or acting in the conduct of the business or activities of the Firm.

12.3.    Additional Rights.    The provisions of this Section 12 are in addition to any rights that we may have at common law or otherwise, including but not limited to any right of contribution.

12.4.    Indemnification.    You agree to indemnify and hold harmless the Firm and each current, former and future partner, associate and employee of the Firm, to the full extent permitted by law, from and against all claims, actions, liabilities or damages related to or arising out of our representation of you and you will reimburse us for all expenses as they are incurred by us in connection with investigating, preparing to defend or defending against such claims or actions (including attorneys' fees, experts' fees, disbursements and compensation for the time expended by attorneys of the Firm in connection with any such action or claim, calculated at the hourly rate for the particular individuals involved), whether or not in connection with pending or threatened litigation in which we are a party or potential party; provided, however, that you will not be responsible for any claims, actions, liabilities, damages, losses or expenses

6

# GIBSON, DUNN & CRUTCHER LLP

which are finally judicially determined to have resulted from our professional malpractice, gross negligence or willful misconduct.

      13.    No Guarantee of Outcome.   We do not and cannot guarantee the outcome in any matter. Our comments about the outcome of your matter are expressions of opinion only.

      14.    Document Retention and Destruction.   In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or others (collectively, "materials"). Once the particular matter to which those materials relate has been concluded, we will make arrangements either to return the documents to you, retain them in our storage facilities or to dispose of the materials. In the absence of any other arrangements made with you, the Firm's records retention policy provides that upon the expiration of seven years after a matter has been closed, all materials in the file may be destroyed or discarded without notice to you. Accordingly, if there are any documents or other materials you wish to have retrieved from your file at the conclusion of a matter, it will be necessary for you to advise us of that request to insure that they are not destroyed.

      The Firm's files pertaining to the matter will not be delivered to you. You agree that the Firm's files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records, as well as internal lawyer's work product (such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports and mental impressions prepared by us for our internal use). You agree that the Firm's files remain our property and for various reasons, including the minimization of unnecessary storage expenses, or for no reason, we may destroy or otherwise dispose of the Firm's files within a reasonable time after the conclusion of the matter.

      15.    Application to Subsequent Matters.   The agreement reflected in these Terms of Retention, and in the accompanying letter, applies to our present representation of you and to any subsequent matters which we agree to undertake on your behalf, unless we agree in writing to some different arrangement.

      You also agree to pay the Firm on the same basis as set forth above, the Firm's fees, charges and expenses incurred in responding to subpoenas, in testifying (and preparing testimony) by deposition or otherwise, and otherwise responding with respect to claims or demands relating to or arriving out of the matters in which we have represented or are representing you, whether or nor related to our services and whether or not we are then representing you.

      16.    Entire Agreement.   These Terms of Retention and the accompanying letter agreement supersede all other prior and contemporaneous written and oral agreements and understandings between us and contain the entire agreement between the parties. This agreement may be modified only by subsequent written agreement of the parties. You acknowledge that no promises have been made to you other than those stated in this agreement.

      17.    Partial Invalidity.   If any provision or portion of this agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect.

      18.    Applicable Law.   This agreement shall be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of New York.

      19.    Compliance With Section 307 of the Rules of the Securities and Exchange Commission. The Firm has adopted policies relating to compliance with the rules adopted pursuant to the Sarbanes-Oxley Act, and will provide a copy of these policies to you upon request.

## GIBSON, DUNN & CRUTCHER LLP

20.    Severability.    If any section or portion of these terms are determined by any court or arbitrator to be illegal or invalid, the validity of the remaining terms shall not be affected therein and said illegal or invalid term shall be deemed not to be a part of this Agreement.

# GIBSON, DUNN & CRUTCHER LLP

UCS 137-3 (5/02)

## STANDARD WRITTEN INSTRUCTIONS AND PROCEDURES

## TO CLIENTS FOR THE RESOLUTION OF FEE DISPUTES PURSUANT

## TO PART 137 OF THE RULES OF THE CHIEF ADMINISTRATOR

Part 137 of the Rules of the Chief Administrator of the Courts provides a procedure for the arbitration (and in some cases mediation) of fee disputes between attorneys and clients in civil matters. Your attorney can provide you with a copy of Part 137 upon request or you can download a copy at http://www.nycourts.gov/admin/feedispute . Fee disputes may involve both fees that you have already paid to your attorney and fees that your attorney claims are owed by you. If you elect to resolve your dispute by arbitration, your attorney is required to participate. Furthermore, the arbitration will be final and binding on both your attorney and you, unless either of you seeks a trial *de novo* within 30 days, which means either of you reject the arbitrator's decision by commencing an action on the merits of the fee dispute in a court of law within 30 days after the arbitrator's decision has been mailed. Fees disputes which may not be resolved under this procedure are described in Part 137.1 of the Rules of Chief Administrator of the Courts: representation in criminal matters; amounts in dispute involving a sum of less than $1000 or more than $50,000 unless the parties consent; and claims involving substantial legal questions, including professional malpractice or misconduct. Please consult Part 137.1 for additional exclusions.

Your attorney may not bring an action in court to obtain payment of a fee unless he or she first has provided written notice to you of your right to elect to resolve the dispute by arbitration under Part 137. If your attorney provides you with this notice, he or she must provide you with a copy of the written instructions and procedures of the approved local bar association-sponsored

1

# GIBSON, DUNN & CRUTCHER LLP

fee dispute resolution program ("Local Program") having jurisdiction over your dispute. Your attorney must also provide you with the "Request for Fee Arbitration" form and advise that you must file the Request for Fee Arbitration with the local program within 30 days of the receipt of the notice. If you do not file the Request within those 30 days, you will not be permitted to compel your attorney to resolve the dispute by arbitration, and your attorney will be free to bring a lawsuit in court to seek to obtain payment of the fee.

In order to elect to resolve a fee dispute by arbitration, you must file the attached "Request for Fee Arbitration" with the approved local program. An updated list of local programs is available at http://www.nycourts.gov/admin/feedispute or by calling 877-FEES 137 (877- 333-7137).

Filing of the Request for Fee Arbitration must be made with the appropriate local program for the county in which the majority of legal services were performed. Once you file the Request for Fee Arbitration, the local program will mail a copy of the request to your attorney, who must provide a response within 15 days of the mailing. You will receive at least 15 days notice in writing of the time and place of the hearing and of the identity of the arbitrator(s). The arbitrator(s) decision will be issued no later than 30 days after the date of the hearing. You may represent yourself at the hearing, or you may appear with an attorney if you wish.

Some local programs may offer mediation services in addition to arbitration. Mediation is a process by which those who have a fee dispute meet with the assistance of a trained mediator to clarify issues and explore options for a mutually acceptable resolution. Mediation provides the opportunity for your attorney and you to discuss your concerns without relinquishing control over the outcome and of achieving a result satisfactory to both of you. Participation in mediation is voluntary for your attorney and you, and it does not waive any of your rights to arbitration

2

# GIBSON, DUNN & CRUTCHER LLP

under these rules. If you wish to attempt to resolve your dispute through mediation, you may

indicate your wish on the Request for Fee Arbitration form.

More information, including an updated list of local programs, is available at:
http://www.nycourts.gov/admin/feedispute or by calling (877) FEES 137.

## EXHIBIT 2

## LIST OF GIBSON DUNN PROFESSIONALS

| Timekeeper | Position | 2015 Rate |
|---|---|---|
| Barbara Becker | Partner | $1,225.00 |
| Robert A. Klyman | Partner | 1,170.00 |
| Jeffrey Krause | Partner | 1,065.00 |
| Aaron Adams | Partner | 1,045.00 |
| Michael Collins | Partner | 995.00 |
| Samuel A. Newman | Partner | 860.00 |
| Benjamin Rippeon | Partner | 860.00 |
| Gillian McPhee | Of Counsel | 820.00 |
| Saee Muzumdar | Associate | 815.00 |
| Jason Mehar | Associate | 805.00 |
| Kathryn Kelly | Associate | 795.00 |
| Amy Noblett | Associate | 795.00 |
| Jeremy Graves | Associate | 775.00 |
| Stewart Ross | Associate | 770.00 |
| Genevieve Weiner | Associate | 740.00 |
| Sabina Jacobs | Associate | 675.00 |
| Matthew Bouslog | Associate | 625.00 |
| Emily Speak | Associate | 505.00 |
| Duke Amponsah | Paralegal | 395.00 |

## EXHIBIT 3

### LIST OF INTERESTED PARTIES

(attached)

## LIST OF INTERESTED PARTIES[1]

**A.  Debtors and their non-debtor subsidiaries**
1.  The Standard Register Company
2.  Standard Register Technologies, Inc.
3.  iMedConsent, LLC
4.  Standard Register Technologies Canada ULC
5.  Standard Register Mexico Holding Company
6.  Standard Register Holding Company
7.  Standard Register International, Inc.
8.  Standard Register of Puerto Rico Inc.
9.  Standard Register Holding, S. de R.L. de C.V.
10.  Standard Register Servicios, S. de R.L. de C.V.
11.  Standard Register de Mexico, S. de C.V.
12.  WorkflowOne, LLC

**B.  Debtors' officers and directors**
1.  Joseph P. Morgan, Jr.
2.  Robert M. Ginnan ("Bob")
3.  John G. King
4.  Greg J. Greve
5.  Joseph L. Klenke
6.  Jeffrey L. Moder ("Jeff")
7.  Amy L. Reilly
8.  Gerard D. Sowar ("Gerry")
9.  Diana Tullio
10.  Terry Williams
11.  F. David Clarke, III
12.  Roy W. Begley ("Robin")
13.  Anthony J. DiNello
14.  Frederic F. Brace ("Jake")
15.  R. Eric McCarthey
16.  Robert A. Peiser
17.  John J. Schiff, Jr.
18.  John Q. Sherman, II
19.  William P. Lee
20.  David P. Bailis
21.  Julie D. Klapstein
22.  Joanne Cummins
23.  Williams Lee

**C.  Major business affiliations of the debtors' officers and directors and related persons**
1.  Clarke-Hook Corporation
2.  Anixter International Inc.
3.  The Shelty-Viking Capital Group LLC
4.  Vistage International
5.  Crestlight Venture Productions
6.  Ginzinga Naturals, LLC
7.  USA Truck, Inc.

8.  Primary Energy Recycling Company Corp.
9.  Cincinnati Financial Corporation
10.  The Cincinnati Insurance Company
11.  Fifth Third Bancorp
12.  The Fifth Third Bank
13.  Cincinnati Bengals, Inc.
14.  John J. and Thomas R. Schiff & Co., Inc.
15.  A. Rifkin Company
16.  Silver Point Capital, L.P.
17.  Granite Broadcasting, Inc.
18.  Nautic Global Group, Inc.
19.  Novasep Holdings, S.A.S.
20.  Annies, Inc.

**D.  Debtors' secured creditors**
1.  Silver Point Capital
2.  Silver Point Capital, L.P.
3.  Silver Point Finance, LLC
4.  Silver Point Capital Fund, L.P.
5.  SPCP Group, LLC
6.  SPF CDO I, LTD
7.  SPCP Group III LLC
8.  Credit Suisse AG, Cayman Island Branch
9.  Credit Suisse Loan Funding LLC
10.  Sargas CLO II Ltd.
11.  WG Horizons CLO I
12.  West Gate Horizons Advisors LLC
13.  DLJ Investment Partners, L.P.
14.  DLJ Investment Partners II, L.P.
15.  DLJIP II Holdings, L.P.
16.  Credit Suisse
17.  Bank of America, N.A.
18.  Wells Fargo
19.  Canon Solutions America, Inc.
20.  Cisco Systems Corporation
21.  Crown Credit Company
22.  Dell Financial Services LP
23.  E. I. Dupont De Nemours And Company
24.  Fujifilm
25.  Fujifilm North America Corporation
26.  Harold M. Pitman Company
27.  Hewlett-Packard Financial Services Company
28.  Northstar Recycling Company, Inc.
29.  Northstar Recycling Group, Inc.
30.  Oce Financial Services, Inc.
31.  Oce North America, Inc.
32.  Software Professionals, Inc.
33.  Tilt-Lock Inc.
34.  Xerox Corporation

---

[1]  Classification of parties into separate groups is not intended to waive any rights of the Debtors regarding the existence, type or amount of any claim and/or interest of the parties listed.

01:16842640.1

Exhibit 3-1

35.  CIT Technologies Corporation d/b/a CIT Systems Leasing
36.  CIT Finance LLC
37.  Georgia-Pacific Consumer Products LP
38.  Raymond Leasing Corporation
39.  Dainippon Screen Graphics (USA), LLC
40.  SmartWorks.com, Inc.

**E. Debtors' 50 largest unsecured creditors on a consolidated basis as identified in their chapter 11 petitions**

1.  The Pension Benefit Guaranty Corporation
2.  Timothy Webb
3.  Georgia Pacific Corp
4.  Gary Becker
5.  Salesforce Com Inc.
6.  Michael Spaul
7.  Volt Consulting
8.  Mark Platt
9.  Craig Stockmal
10.  Peter Redding
11.  Washington State Department of Ecology
12.  Westborough (The Realty Associates Fund IX, c/o Lincoln Property Company)
13.  Avery Dennison
14.  Joseph Custer
15.  Purchase Power
16.  Bank Of America
17.  Carolinas Shared Services (subgroup within Premier GPO)
18.  Business Card Service
19.  Appvion Inc
20.  John Harden
21.  Dennis  Rediker
22.  Tenet (subgroup within MedAssets GPO comprised of about 45 hospitals)
23.  HP Enterprise Services LLC
24.  Kathryn Lamme
25.  GLS Graphic Label Solutions
26.  Earth Color
27.  Precision Dynamics Corp
28.  Craig Brown
29.  Rajendra Mehta
30.  Virginia Rafferty
31.  Jack Marshall
32.  Unisource Worldwide Inc
33.  Michael Wolk
34.  Flexcon Company Inc.
35.  Edward Keiper
36.  Xpedx LLC
37.  Lithia Springs
38.  Novation GPO
39.  Robert Assini
40.  Sanmar Corp.
41.  Partners Healthcare
42.  Nevs Ink Inc
43.  Source Technologies Inc
44.  Domtar Paper Co LLC
45.  Cass Information Systems
46.  Dayton Mailing Services
47.  Bruce Moses
48.  Catholic Contracting Group (CCG)
49.  Independent Printing Co Inc.
50.  Nissan Total

**F. Debtor's landlords**

1.  ColFin Cobalt Industrial Reit II
2.  ProLogis Trust
3.  Liberty Property Trust
4.  Windmill 1
5.  Double Nickel
6.  The Realty Associates Fund IX
7.  Lincoln Property Company
8.  Ninth 209, LLC
9.  Sandusky Investments LTD
10.  BRE/COS 1 LLC
11.  Alan D Palmer
12.  Brookwood Four Points Investor
13.  First National Bank Alaska
14.  Rita Blumenfeld
15.  MCI CIF LLC
16.  Naifco Realty
17.  Owen Properties
18.  Pacific Realty Associates,
19.  ProLogis
20.  GCCFC 2005-GG5 1255 Terminus I
21.  21 Parker Drive, LLC
22.  Twenty Park Plaza, LLC
23.  American Heart Association
24.  The Arbor, LLC
25.  PS Business Parks
26.  Robert J. DiLeonardo
27.  West Willows Amherst Portfolio
28.  Burt Jordan Realtors
29.  Sublease - Czarnowski Display
30.  Tel-Bingham Associates
31.  CRP-2 Holdings, AA, LP
32.  HART NJ8A-I LLC
33.  100-200 CCC, Inc
34.  TAK Realty and Investment, LLC
35.  LSOP 3 MD 2, LLC
36.  Fairview Plaza JLC LLC
37.  One Telcom, LLC
38.  FSBT, Inc
39.  Peachtree II and III,
40.  BWC Exchangepoint LLC
41.  588 Associates, LP
42.  1040 Ave. of the Americas LLC
43.  Flexible Office Solutions, LLC
44.  Harris Bank
45.  ML-AI 125 Wacker LLC
46.  Inversiones Chevere, S.E.
47.  Stonegate Partners I, LLC
48.  Commodore Drive, LP

49. The Paragon, LP
50. Trotter Holdings LLC dba
51. A&B Properties Inc, 822 Bishop
52. Exeter 700 Patrol, LLC
53. Trafalgar Investments LLC
54. Duetsche Bank Mexico SA
55. MPC Holdings, LLC
56. Paragano Holdings, LLC
57. 55 Broadway Associates, LLC
58. Chipman Miles
59. TR Crownpointe Corp.
60. Carlsen Investment, LLC
61. Valley Freeway Corporate Park,
62. CIR III-1 Reit
63. BRE/Industrial Portfolio Holdings LLC
64. Kyrene 919280, LLC
65. Pattillo Foundation
66. CRA-CAR, LLC
67. Hillcrest Real Estate Development Co LLC
68. Blue Water Road LLC
69. C.K. Enterprises of Watseka, I
70. Princetons Properties Inc
71. Westboro Two LLC
72. American Asset Corporation
73. Block Hawley Commercial Real Estate Services
74. BMO Harris Bank N.A.
75. Bridlewood Executive Suites
76. Bruns Building and Development
77. CAM, Inc.
78. Carruth Capital LLC
79. CBRE, Inc.
80. Colliers International
81. Colliers International Asset
82. Core Partners
83. Cushman & Wakefield of NJ Inc.
84. D.L. Saunders Real Estate
85. Double Nickel
86. G&E Real Estate Management Services Inc
87. Harbor Group Management Company
88. Hill Properties
89. Jones Lang LaSalle America
90. Juno Commercial Real Estate, I
91. Larken Associates
92. Lincoln Property Company
93. Mackenzie Mgmt Company
94. Mallard Creek Investors LLC
95. Meridian Business Park
96. Metro Office Park
97. Newmark Grubb Knight Frank
98. Newmark Grubb Memphis
99. Northwest Building LLC
100. Oliver and Company, Inc.
101. Patillo Industrial Real Estate

102. Property Management Associates of WNY Inc
103. Shekley
104. Solon Gershman Inc.
105. Swanson Holdings LLC
106. The Charter Group
107. Transwestern Commercial Service
108. Westside Investment Partners
109. Wilson Property Services, Inc.

**G. Largest vendors and subcontracting vendors**
1. Adair Printing Technologies
2. Adecco Employment Services
3. Appvion Inc.
4. Avery Dennison
5. Bay State Envelope
6. Bestforms Inc.
7. Business Card Service Inc.
8. Business Stationery
9. Cass
10. Cenveo
11. Customgraphix
12. Data Card Corp.
13. Domtar Paper Co. LLC
14. Ennis Business Forms Inc
15. Enterprise Group/A Division of Domtar Paper Co. LLC
16. Fasson
17. FCL Graphics Inc.
18. Flesh Company
19. Flexcon Company
20. Georgia Pacific Corp.
21. Glatfelter
22. GLS Graphic Label Solutions
23. Hewlett-Packard
24. HM Graphics Inc.
25. International Paper
26. JDS Graphics Inc.
27. Kirkwood Printing
28. Multi Packaging Solutions
29. Nationwide Envelope Specialists Inc.
30. Nevs Ink Inc.
31. Novation LLC
32. PJ Printers
33. Precision Dynamics Corp.
34. Raff Printing Inc.
35. Rollsource
36. Seebridge Media LLC
37. Total Printing Services LLC
38. Unisource Worldwide Inc.
39. Volt Consulting
40. Wright Enterprises Holding Co.
41. Xerox Corp.
42. XGS.IT
43. Xpedx

**H. Largest freight vendors/providers**
1. Dayton Freight Lines Inc.

2.      Dynamex Operations East
3.      Fedex Corp.
4.      Fedex Freight East Inc.
5.      J B Hunt Transport Inc.
6.      Old Dominion Freight Line Inc.
7.      Rush Transportation & Logis
8.      United Parcel (Package)
9.      UPS Supply Chain Solutions Inc.
10.     Velocity Express

I.   **Other "significant" vendors as identified by Debtors**
1.      Adobe
2.      Corepoint
3.      FIS
4.      IBM
5.      Instream
6.      L&H Signs
7.      Salar
8.      Salar OEM
9.      Smart-ER
10.     Viridian
11.     Zafesoft

J.   **Parties relating to significant litigation involving the Debtors**
1.      3M CO
2.      A. Schulman Inc
3.      A.E. Fickert and Sons Inc.
4.      A.E. Fickert, Inc.
5.      Abbott Laboratories
6.      ABCO Construction
7.      Abex Corp
8.      Acon Inc.
9.      Acoustical Systems Inc.
10.     Affinity Express, Inc.
11.     AK Steel Corporation
12.     Alcatel Lucent Usa, Inc.
13.     Alliance Machine Co
14.     American Axle And Manufacturing
15.     American Business Forms
16.     American Honda Motor Co
17.     American Optical Corp
18.     American Solutions for Business
19.     American Standard Inc
20.     Ameron International Corp
21.     Anchor Danly LLC
22.     Anchor Glass Container Corp
23.     Anheuser Busch LLC
24.     AO Smith Corp
25.     Aqua-Chem, Inc.
26.     Ardagh Glass Inc
27.     Armco
28.     Armstrong Pumps Inc
29.     Arvinmetiro, Inc.
30.     Astenjohnson Inc
31.     AT&T Corp
32.     Aurora Pump Co

33.     Avery Dennison Corp
34.     Avocet Enterprises Inc
35.     Bacou Dalloz
36.     Barry Controls
37.     Basf Corp
38.     Beazer East
39.     Bechtel Inc
40.     Bf Goodrich Co
41.     Bingham Pumps
42.     Blaylock Trucking and Waste Removal
43.     Bondstrand
44.     Borg Warner Morse Tec Inc
45.     Borg-Warner Corp.
46.     Bradford Soap International, Inc.
47.     Bridgestone Americas Tire Operations LLC
48.     Bridgestone Firestone Inc.
49.     Bridgestone/Firestone America's Holding, Inc.
50.     Britisher Htg And Cooling
51.     Brush Wellman Int'l Inc
52.     Burns International Services Corp
53.     Butt Construction Co Inc
54.     Butt Construction Co LLC
55.     BW/IP International Inc
56.     Byron Jackson Pump Division
57.     Carborundum Co
58.     Cargill, Inc.
59.     Carrier Corp
60.     Catalystic
61.     CBS Corp
62.     Certain-Teed Corp
63.     Chaotic Moon LLC
64.     Chass Brass And Copper Co LLC
65.     Chemineer, Inc.
66.     Chicago Bridge And Iron Co
67.     Chicago Gasket Co
68.     Cintas Corporation
69.     City of Dayton, Ohio
70.     CL Zimmerman Co
71.     Clark Asbestos Hi Statutory Agent, Inc.
72.     Clark Industrial Insulation Co
73.     Clark-Reliance Corp
74.     Cleaver Brooks
75.     Coca-Cola Refreshments USA, Inc.
76.     Conagra Grocery Products Company
77.     Container Services Inc.
78.     Continental Fibre Drum, Inc.
79.     Continental Teves
80.     Conwed Corp
81.     Cooper Industries Inc
82.     Copes Vulcan Inc
83.     Core Furnace Systems Corp
84.     Cox Media Group Ohio Inc.
85.     Crane Co
86.     Crown Cork & Seal USA Inc

01:16842640.1

Exhibit 3-4

87.  CSR, Inc
88.  CSR, Ltd
89.  Cutler Hammer, Inc.
90.  Dana Companies LLC
91.  Daniel International Corp
92.  DAP Inc.
93.  DAP Products, Inc.
94.  Day International Inc.
95.  Dayton Board of Education
96.  Dayton Daily News
97.  Dayton Industrial Drum, Inc.
98.  Dayton Journal Herald
99.  Dayton Power and Light Company
100. Dayton Rubber Company
101. Dayton Tire and Rubber Company
102. Deborah Gelinas
103. Despatch Industries Inc
104. Devcon Corp
105. Domtar Industries LLC
106. Dow Chemical Co
107. Dravo Corp
108. Durco
109. Duriron Corporation
110. Duro Dyne Corp
111. Eagle Technologies Group
112. Eaton Corp
113. Ecodyne Limited
114. Edward Valve Co
115. Eli Lilly And Co
116. Emerson Electric Co
117. Essex Wire Corp
118. Ferro Engineering
119. Fickert Devco Inc.
120. Flowserve Corporation
121. Flowserve US Inc
122. Fluor Corp
123. Fluor Enterprises Inc
124. Ford Motor Co
125. Formosa Plastics Corp USA
126. Foster Wheeler Corp
127. Franklin Iron & Metal Corp.
128. Fruehauf Corp
129. Fruehauf Trailer Corp
130. Gardner Denver Inc
131. General Electric Co
132. General Refractories Co
133. General Refuse Service Inc.
134. Georgia Pacific Consumer Operations LLC
135. Georgia Pacific Corporation
136. Georgia-Pacific LLC
137. GlaxoSmithKline LLC
138. GMZ INC
139. Goodrich Corp
140. Goodyear Tire And Rubber Co
141. Goulds Pumps Ipg Inc
142. Greif Inc
143. Grinnell LLC
144. Guide Corp
145. H.K. Ferguson
146. Hamilton Sundstrand Corp
147. Hanson Systems LLC
148. Harris Corporation
149. Harris Seybold Co.
150. Health Conservation Inc
151. Hercules Inc
152. Hewitt Soap Works, Inc.
153. Hobart Corporation
154. Homasote Co
155. Honeywell Inc
156. Honeywell International Inc
157. Huffy Corp
158. IDEX Corp
159. Illinois Tool Works Inc
160. IMO Industries Inc
161. Indiana Department of Environmental Management
162. Inductotherm Corp
163. Inductotherm Group Co
164. Industrial Holding Corp
165. Industrial Waste Disposal Co. Inc.
166. Ingersoll Rand Co
167. International Business Machine Corp
168. International Comfort Products Corp
169. ITT Corp
170. J.E. Lonergan
171. Jaxcine Guzon
172. JH France Refractories Co
173. JM AC
174. JM Manufacturing Co Inc
175. John Crane Inc
176. Kaiser Gypsum Co Inc
177. KC Wall Products, Inc
178. KCG INC
179. Kelsey-Hayes Company
180. Kimberly-Clark Corporation
181. Kunkle Valve
182. L.M. Berry and Company LLC
183. La Mirada Products Co., Inc.
184. Lau Industries Inc
185. Lennox Industries Inc
186. Lindberg
187. LPL Licensing, L.L.C.
188. Lucent Technologies, Inc.
189. Lynden Keala
190. Marley Cooling Tower
191. Materion Brush Inc
192. McCall Corp.
193. MCI Telecommunications
194. Meadwestvaco Corp
195. Merck Sharp And Dohme Corp
196. Metropolitan Life Insurance

197. Milliken And Co
198. Monsanto Company
199. Monsanto Research Company
200. Morrison Knudsen Corp
201. Mount Vernon Mills Inc
202. National Can Corp
203. National Oilwell Varco Inc
204. NCR Corporation
205. Newell Rubbermaid Inc
206. Newmark LLC
207. Nooter Corp
208. Norma Duttera
209. Occidental Chemical Corp
210. Oglebay Norton
211. Ohio Bell Telephone Company
212. P-Americas, LLC
213. Panelab
214. Pasco Sanitary Landfill Industrial Waste Group
215. Peerless Heater Co
216. Peerless Industries Inc
217. Peerless Pump Co Inc
218. Peerless Transportation Company
219. Pepsi Cola General Bottlers of Ohio, Inc.
220. Pfizer Inc
221. Pharmacia Corp
222. Pharmacia LLC
223. Phoenix Licensing, L.L.C.
224. Plastics Engineering Co
225. Pneumo Abex Llc
226. PPG Industries, Inc.
227. Process Equipment Co Of Tipp City
228. Quigley Inc
229. R J Reynolds Tobacco Company
230. Raytheon Engineering & Constructors
231. Rebecca Goodwin
232. Relizon Company
233. Resco Holdings LLC
234. Reunion Industries Inc
235. Rew Materials, Inc
236. Rexam Beverage Can Co
237. Reynolds and Reynolds Company
238. Rheem Manufacturing Co
239. Richard Goodwin
240. Ric-Will, Inc.
241. Riley Power Inc
242. Riley Stocker Corp
243. Rockwell Manufacturing Co
244. Rogers Corp
245. Rohm And Haas Co
246. Ross Laboratories
247. Rucco Equipment And Magnum Products
248. Rust Engineering Co
249. Rust International Inc
250. Ruud Heating Cooling And Water Heating
251. Saint Gobain Abrasives Inc
252. Sanford Duttera
253. SCA Services of Ohio Inc.
254. Securitas Security Services Usa Inc
255. Sharon Brown-Henry
256. Sherwin-Williams Company
257. Skipprint LLC
258. Special Electric Co Inc
259. Special Materials, Inc
260. Special Shipping Inc.
261. Spence Engineering Co Inc
262. Spirax Sarco Inc
263. Sprint Corporation
264. Sprint Spectrum L.P.
265. Spx Cooling Technologies Inc
266. State of Ohio
267. Stearns-Rogers Corp
268. Sulzer Pumps Us Inc
269. Sun Chemical Corp
270. Sunoco, Inc.
271. Superior Boiler Works Inc.
272. Superior Essex Inc
273. Tecumseh Products Co
274. Tenneco Automotive Operatinc Co, Inc
275. Tenova Core
276. The Duriron Co Inc
277. The Gorman Rupp Co
278. The Kroger Co
279. The Mead Corp
280. The Procter And Gamble Co
281. The William Powell Co
282. Thiem
283. Total Petrochemicals And Refining USA Inc
284. Toyota Motor Sales USA Inc
285. TPI Corp Succ To Fostoria Industries Inc
286. Trane US Inc
287. Treco Constructions Service
288. TRW Automotive Us LLC
289. Tyco Flow Control
290. Tyco International US Inc
291. Tyco Valves & Controls
292. Union Carbide Corp
293. Union City Body Co
294. United Engineers & Constructor
295. United States Department of Defense
296. United States Department of Energy
297. United States of America
298. United States Steel Corpora
299. Universal Refaractories
300. University of Dayton
301. URS Corp
302. URS Energy & Construction Inc
303. Utilimaster Corp
304. Valley Asphalt Corporation
305. Van Dyne-Crotty, Inc.

306. Ventfabrics, Inc.
307. Verizon New York Inc
308. Verizon North LLC
309. Viacom
310. Warren Pumps LLC
311. Warren Pumps, Inc.
312. Warren Rupp Inc
313. Washington Department of Ecology
314. Washington Group International Inc
315. Waste Management of Ohio, Inc.
316. Welco Manufacturing Co
317. Weldun International Ltd
318. Westinghouse Electric Corp
319. Weyerhaeuser Co
320. Willamette Industries Inc
321. Willson Safety Products
322. Wood Conversion Co
323. Workflow Solutions, LLC
324. York International Corp
325. Zurn Industries Inc
326. Zurn Industries LLC

**K. Debtors' equity holders (greater than 5%)**
1. Roy W. Begley, Jr.
2. Gary P. Kreider
3. William C. Martin
4. Raging Capital Management, LLC
5. Raging Capital Master Fund, Ltd.
6. Charles Francis Sherman
7. James L. Sherman
8. James Louis Sherman
9. John Q. Sherman
10. William Patrick Sherman
11. Patricia Lucille Sherman Begley
12. Mary Catherine Sherman Newshawg
13. Helen Louise Sherman Tormey
14. Silver Point Capital L.P.
15. The Fifth Third Bank

**L. Debtor's largest customers**
1. Automatic Data Processing, Inc.
2. Bank of America Corp.
3. Citibank
4. Liberty Mutual Insurance
5. Quest Diagnostics Inc.
6. SR DE Mexico-National
7. TD Bank
8. Verizon

**M. Insurance companies**
1. AIG
2. Allianz SE
3. Allied World
4. Beazley
5. Chartis
6. Chubb
7. CNA Financial Corp.
8. Columbia Casualty Company
9. Continental Casualty

10. Federal Insurance Company
11. Fireman's Fund Ins.
12. FM Global
13. Illinois National Ins Co
14. Liberty Mutual
15. National Fire Insurance of Hartford
16. National Union Fire Insurance Company of Pittsburgh
17. Navigators
18. Safety National
19. Travelers
20. Vigilante Insurance
21. Wright National Flood Insurance Company
22. XL
23. Zurich

**N. Utility providers**
1. Accessline Communications
2. Alaska Communications Systems
3. Ameren Illinois
4. Ameren Missouri
5. Ameren UE
6. American Electric Power Co.
7. AT&T
8. Atmos Energy
9. Austell Gas System
10. Austell Natural Gas System
11. Avaya Financial Services
12. Blair Telephone Company
13. Brandenburg Telephone Co.
14. Century Link
15. Century Telephone
16. Charter Business
17. Chesapeake Utility Corp.
18. Cincinnati Bell
19. City of Brenham Utility
20. City of Darlington
21. City of Fayetteville
22. City of Livermore
23. City of Mesquite
24. City of Ontario
25. City of Orange California
26. City of Salisbury
27. City of Tampa Utilities
28. City of Toccoa
29. Cleco Power LLC
30. Columbia Gas of Massachusetts
31. Columbia Gas of Ohio
32. Columbia Gas of Pennsylvania
33. Comcast
34. Comed
35. Compass Energy Gas Services LLC
36. Connecticut Light & Power
37. Connecticut Water Co. Crwc
38. Connecticut Water Company
39. Consolidated Communications

01:16842640.1

Exhibit 3-7

40.   Constellation Newenergy Inc.
41.   Cox Communications Inc.
42.   Dayton Power & Light Co.
43.   Delmarva Power
44.   Direct Energy Business
45.   Dominion East Ohio
46.   DPL Energy Resources Inc.
47.   DPLER
48.   Duke Energy
49.   Duke Energy Progress
50.   Duke Energy-Charlotte
51.   Duke Energy-Louisville
52.   Fairpoint Communications
53.   Frontier
54.   Frontier Communications
55.   Frontier Telephone
56.   Gas Co.
57.   GCI Communications Corp.
58.   Georgia Power Co.
59.   Gexa Energy LP
60.   Goshen Water & Sewer
61.   Granite Telecommunications
62.   Greystone Power Corp.
63.   Hardin County Water Dist. 1
64.   Hawaiian Electric Co.
65.   Hawaiian Telecom
66.   Hillsborough County Water Dept.
67.   Hudson Energy Services Texas
68.   Indiana American Water Co.
69.   Intercall
70.   Jeffersonville Sewer Department
71.   Kentucky Utility Co.
72.   Laclede Gas Company
73.   Level 3 Communications
74.   Louisville Gas & Electric Co.
75.   Manchester Township
76.   MCI Worldcom
77.   Met Ed
78.   Minnesota Energy Resources
79.   Murfreesboro Electric Dept.
80.   Murfreesboro Water And Sewer
81.   National Fuel Gas Distribution
      Corporation
82.   National Grid
83.   Nicor Gas
84.   Nipsco
85.   North State Communications
86.   NSTAR
87.   OG & E
88.   Oklahoma Natural Gas Co.
89.   Pacific Gas & Electric Co.
90.   PG & E
91.   Piedmont Natural Gas
92.   Puerto Rico Telephone
93.   Puget Sound Energy
94.   Puget Sound Power & Light Co.

95.   Questar Gas Company
96.   Qwest
97.   River Ridge Development Authority
98.   Road Runner
99.   Rocky Mtn Power-Utah
100.  Salt Lake City Corp
101.  Shelbyville Public Utilities
102.  Sourcegas Arkansas Inc.
103.  Southern California Edison
104.  Springettsbury Township Sewer
105.  Sprint
106.  Tampa Electric
107.  TDS Metrocom
108.  Teco Tampa Electric Co.
109.  Time Warner Cable
110.  Toccoa Natural Gas
111.  Town of Tolland
112.  TW Telecom
113.  TXU Energy
114.  Union Power Cooperative
115.  United Communications
116.  United Telephone Company
117.  VCOM Solutions
118.  Vectren
119.  Vectren Energy Delivery
120.  Verizon
121.  Verizon Wireless
122.  Village of Coldwater
123.  Village of Howard
124.  Walton EMC Natural Gas
125.  Windstream
126.  Xcel Energy
127.  Yankee Gas Services
128.  York Water Co.

**O.  Ordinary course professionals**
1.    Stephen J. Axtell, Esq.
2.    Beiser Greer & Landis, LLP
3.    David Berry, Esq.
4.    Gregory J. Boulbol,  Esq.,
5.    Kevin Braig, Esq.
6.    Brightline CPAs And Associates
7.    Brixey & Meyer
8.    Robert M. Cavalier, Esq.
9.    Harvey J. Cohen, Esq.
10.   Davis Wright Tremaine LLP
11.   Deloitte & Touche LLP
12.   Deloitte Tax LLC
13.   Doherty, Wallace, Pillsbury and Murphy,
      P.C.
14.   Ernst & Young LLP
15.   Michael Ewing, Esq.
16.   Faruki, Ireland & Cox P.L.L.
17.   Douglas M. Foley, Esq.
18.   Frost Brown Todd LLC
19.   Funkunaga Malayoshi Hershey & Ching
20.   Bruce Garrison

Exhibit 3-8

21. Roshell Grigsby
22. Steve Haughey, Esq.
23. James H. Hershey, Esq.
24. Scott J. Heyman, Esq.
25. Barry D. Horne, Esq.
26. Jeff Ireland, Esq.
27. Scott Kamins, Esq.
28. Kaufman & Canoles
29. David C. Korte, Esq.
30. Thomas H. Lee, Esq.
31. Javier Lizardi, Esq.
32. Lucas and Cavalier, LLC
33. Mark Malloy, Esq.
34. John L. McCarthey, Esq.
35. Jennifer McCave, Esq.
36. McConnell Valdes LLC
37. McGladrey LLP
38. McGuireWoods
39. McInnes Cooper
40. McManis Faulkner
41. James McManis, Esq.
42. Meissner Tierney Fisher & Nichols
43. Jeffrey A. Mullins, Esq.
44. Ronald D Niesley
45. Offit Kurman
46. Ogier
47. Mark J. Payne, Esq.
48. Charles Russell
49. Rutan & Tucker LLP
50. Ryan Smith & Carbine Ltd.
51. L. Scott Seymour, Esq.
52. Shumacher, Loop & Kendrick, LLP
53. Sidley Austin LLP
54. Taft Stettinius & Hollister
55. Thompson Hine
56. Thomson Reuters
57. David J. Ubaldi, Esq.
58. Coolidge Wall
59. Von Wobeser
60. Mark F. Werle
61. David P. Williamson, Esq.
62. Marc Yates

**P.  Chapter 11 case professionals for Debtors**
1. Dinsmore & Shohl LLP
2. Gibson Dunn & Crutcher LLP
3. Lazard Freres & Co. LLC
4. Lazard Middle Market, LLC
5. McKinsey Recovery & Transformation Services U.S., LLC
6. Palisades Pension Financial Advisory
7. Prime Clerk
8. Young Conaway Stargatt & Taylor LLP

**Q.  Counsel and other advisors retained by other significant parties**
1. Skadden, Arps, Slate, Meagher & Flom LLP

2. Parker Hudson Rainer & Dobbs LLP

**R.  United States Bankruptcy Judges in the District of Delaware**
1. Kevin J. Carey
2. Kevin Gross
3. Brendan L. Shannon
4. Laurie Selber Silverstein
5. Christopher S. Sontchi
6. Mary F. Walrath

**S.  United States Trustee for the District of Delaware, or any person employed by the Office of the United States Trustee for the District of Delaware**
1. Lauren Attix
2. David Buchbinder
3. Shakima L. Dortch
4. Timothy J. Fox, Jr.
5. Diane Giordano
6. Christine Green
7. Benjamin Hackman
8. Jeffrey Heck
9. Mark Kenney
10. Jane Leamy
11. Tony Murray
12. James R. O'Malley
13. Michael Panacio
14. Tiiara Patton
15. Juliet Sarkessian
16. Richard Schepacarter
17. T. Patrick Tinker
18. Ramona Vinson
19. Michael West
20. Dion Wynn

**T.  Potential §363 Purchasers**
[Confidential]

**U.  Reclamation claimants**
1. DG3 Group America, Inc.

**V.  Other significant parties in interest -**
1. John Q. Sherman Trust
2. William C. Sherman Trust
3. William C. Sherman Inter Vivos Trust

Exhibit 3-9

**EXHIBIT 4**

**DISCLOSURE OF REPRESENTATION**

## <u>DISCLOSURE OF REPRESENTATION</u>

Set forth below are the Interested Parties (other than the Debtors) whom Gibson Dunn currently represents or has represented within the past three years in matters unrelated to the matters on which Gibson Dunn is proposed to be retained:[2]

1. 3M
2. Adobe Systems Inc.
3. AIG
4. Allianz
5. American Honda Motor Company
6. American Standard
7. Anheuser-Busch, Inc.
8. AT&T, Inc.
9. Atmos Energy Corp
10. Avaya
11. Bank of America
12. CBS Corp.
13. CenturyLink, Inc.
14. Chartis Insurance Company
15. Cisco Systems, Inc.
16. Citibank
17. Comcast Corporation
18. Cox Communications, Inc.
19. Crane Co.
20. Credit Suisse
21. Crown Cork & Seal Co.
22. Cushman & Wakefield, Inc.
23. Deloitte & Touche
24. Dow Chemical Company
25. Duke Energy Corporation
26. E.J. DuPont de Nemours  Company
27. Eaton Corporation
28. Eli Lilly and Company
29. Ernst & Young LLP
30. Flowerserve Corporation
31. Fluor Corporation
32. Ford Motor Company
33. Frontier Communications
34. FUJIFILM Corporation
35. Gardner Denver, Inc.
36. General Electric Company
37. Georgia-Pacific LLC
38. GlaxcoSmithKline
39. Goodrich Corporation
40. Greif, Inc.
41. Hawaiian Electric Company, Inc.
42. Hawaiian Telecom Services Company, Inc.
43. Hewlett-Packard Company
44. Honeywell, Inc.
45. IBM Corporation
46. International Paper Company
47. Kimberly-Clark Corporation
48. Kroger Company
49. Lazard Freres & Co.
50. Liberty Mutual Insurance Company
51. Lincoln Property Company
52. MCI, Inc.
53. MeadWestvaco
54. Metropolitan Life Insurance company
55. National Grid USA
56. National Oilwell Varco (fka Ameron)
57. NCR Corp
58. Newell Rubbermaid
59. Nissan Total
60. Novation LLC
61. Occidental Chemical Corporation
62. Pfizer
63. PG&E Corporation
64. Quest Diagnostics Incorporated
65. Raytheon Company
66. Rohm and Haas
67. Rutan & Tucker LLP
68. Salesforce.com Inc.
69. Sargas CLO II Ltd.
70. Securitas Security Systems USA, Inc.
71. Silver Point Capital, LP
72. Sprint Nextel Corporation
73. Superior Essex, Inc.
74. Taft Stettinius & Hollister LLP
75. Tenet
76. Thomson Reuters
77. Time Warner Cable, Inc.
78. Toyota Motor Sales U.S.A., Inc.
79. Travelers Companies, Inc.
80. TRW Automotive
81. TXU Energy
82. Tyco International Ltd.
83. Unisource Worldwide, Inc.
84. United Parcel Service, Inc.
85. Verizon
86. Viacom
87. Wells Fargo Bank
88. Xerox Corporation
89. Zurich US
90. [Confidential/Potential Purchaser]
91. [Confidential/Potential Purchaser]
92. [Confidential/Potential Purchaser]

01:16842640.1    [2]    In some instances Gibson Dunn's representation may be of an affiliated or otherwise related entity as identified in Gibson Dunn's master client database.

Exhibit 4