# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE STANDARD REGISTER COMPANY, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>Jointly Administered<br><br>Obj. Deadline: April 6, 2015 at 4:00 p.m. (ET)<br>Hearing Date: April 13, 2015 at 10:00 a.m. (ET) |

### DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (I) EMPLOY AND RETAIN MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC TO PROVIDE INTERIM MANAGEMENT SERVICES PURSUANT TO 11 U.S.C. § 363, AND (II) DESIGNATE KEVIN CARMODY AS CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO THE PETITION DATE

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit A, (i) authorizing the Debtors to retain and employ McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") to provide interim management services, and (ii) designating Kevin Carmody ("Mr. Carmody") as Chief Restructuring Officer ("CRO") to the Debtors, *nunc pro tunc* to the Petition Date (defined below). In support of this Motion, the Debtors submit the *Declaration of Kevin Carmody in Support of Debtors' Motion for Order Authorizing the Debtors to (i) Employ and Retain McKinsey Recovery & Transformation Services U.S., LLC to Provide Interim Management Services Pursuant to 11 U.S.C. § 363 and (ii) Designate Kevin Carmody as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

(the "Carmody Declaration"), annexed hereto as Exhibit B, and incorporated herein as if set forth in full. In further support of this Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

2. On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the*

*Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No.2] (the "First Day Declaration").

## RELIEF REQUESTED

4. By this Motion, the Debtors seek to (i) employ and retain McKinsey RTS, pursuant to section 363 of the Bankruptcy Code, to provide interim management services and (ii) designate Mr. Carmody as CRO for the Debtors in these Chapter 11 Cases upon the terms and conditions contained in that certain engagement letter dated as of March 2, 2015, between McKinsey RTS and the Debtors (such engagement letter, as amended, together with all related documents, the "CRO Engagement Letter"), a copy of which is attached as Exhibit C hereto and incorporated by reference herein.

## MCKINSEY RTS'S QUALIFICATIONS

5. On February 27, 2015, Standard Register's Board of Directors (the "Board") appointed Mr. Carmody as Standard Register's CRO, effective as of March 2, 2015. Pursuant to his appointment, Mr. Carmody has become responsible for Standard Register's restructuring efforts and is required to report directly to the Board.

6. Mr. Carmody is highly qualified to serve as the Debtors' CRO during the pendency of these Chapter 11 Cases, with the support of the Retained Staff (as defined herein). Mr. Carmody is a Practice Leader in McKinsey RTS's practice in Chicago and the leader of its corporate restructuring service line. He has a proven track record of assisting distressed clients drive aggressive financial and operational transformations to maximize stakeholder value. Further, Mr. Carmody has deep experience successfully negotiating consensual out of court restructurings and also has experience navigating clients through the chapter 11 process. He has over fifteen years of restructuring advisory and crisis management experience, has served as an

executive in the C-suite of his client organizations and has testified as an expert witness in federal and state courts.

7.  McKinsey RTS is a global, full service restructuring advisory and crisis management firm that draws on unmatched industry and functional expertise to support companies through all aspects of recovery and transformation. Its members have extensive experience in improving the operational performance of financially troubled companies. McKinsey RTS is deeply experienced in providing chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and development and implementation of operational and/or financial improvement or turnaround plans. McKinsey RTS has been or is currently involved in numerous large and complex restructurings.

8.  Given McKinsey RTS's substantial experience, prior to the filing of these Chapter 11 Cases, the Debtors retained McKinsey RTS to provide consulting services pursuant to three prior engagement letters, dated as of January 14, 2015 (the "SR Engagement Letter"), pursuant to which Standard Register retained McKinsey RTS to provide consulting services; February 3, 2015 (the "GDC Engagement Letter," pursuant to which the Debtors' proposed counsel, Gibson, Dunn & Crutcher LLP ("Counsel") retained McKinsey RTS to provide consulting services to the Debtors; and the March 2, 2015 CRO Engagement Letter (which, together with the SR Engagement Letter and GDC Engagement Letter, the "Prepetition Engagement Letters"), pursuant to which Standard Register retained McKinsey RTS to provide Mr. Carmody to serve as CRO, along with certain other engagement staff . Under the Prepetition Engagement Letters, McKinsey RTS was retained principally for the purpose of assisting the Debtors' senior

management with the development of a strategic business plan and strategic considerations including cash forecasting, financial reporting and SG&A opportunities. Simultaneously, McKinsey RTS was tasked with contingency planning, including preparation for a chapter 11 filing, and/or a potential sale of the business.

9.  As a result of the prepetition work performed on behalf of the Debtors, Mr. Carmody and McKinsey RTS are familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures and related matters. Since McKinsey RTS's initial engagement pursuant to the Prepetition Engagement Letters, Mr. Carmody and McKinsey RTS have worked closely with the Debtors' management and other professionals with numerous tasks related to Standard Register's business plan and restructuring considerations in preparation for a sale and bankruptcy process. In addition, Mr. Carmody and McKinsey RTS supported management in preparing supporting presentation materials and facilitated discussions with significant stakeholders. Consequently, the Debtors believe that Mr. Carmody and McKinsey RTS have developed significant relevant experience and expertise regarding the Debtors and the circumstances of these Chapter 11 Cases, and have the skills, qualifications and expertise necessary to continue to assist the Debtors with their restructuring efforts in an efficient and cost-effective manner.

## SCOPE OF SERVICES

10.  As provided in the CRO Engagement Letter, McKinsey RTS has agreed that Mr. Carmody will serve as the Debtors' CRO and report directly to the Debtors' Board. Working collaboratively with the Debtors' senior management team and board of directors, as well as the Debtors' other restructuring professionals, Mr. Carmody will assist the Debtors in evaluating and implementing strategic and tactical options throughout the restructuring process.

11. In addition, McKinsey RTS has agreed to provide certain additional personnel to assist Mr. Carmody and the Debtors in their restructuring efforts (collectively, the "<u>Retained Staff</u>"). The initial list of Retained Staff, their rates and other information is set forth in the CRO Engagement Letter and summarized in the section below regarding professional compensation.[2]

12. The Debtors anticipate that during these Chapter 11 Cases, in addition to the ordinary course duties of a CRO, Mr. Carmody and the Retained Staff will perform a broad range of services, including, without limitation, the following:[3]

    (a) Developing a strategic business plan with the Company's CFO and other key functional leaders that can be used to facilitate discussions with the Debtors' lenders and certain other stakeholders;

    (b) Developing a short-term cash flow forecasting process and implementing cash management strategies;

    (c) Establishing a weekly financial reporting package that provides additional transparency into the Debtors' near term cash position, including a forecast to actual variance analysis;

    (d) Supporting Counsel with the development of various strategic and restructuring alternatives;

    (e) Providing strategic advice to support the overall restructuring process;

    (f) Participating in stakeholder discussions, negotiations and diligence meetings along with the Debtors' Counsel and the Debtors' financial advisor;

    (g) Evaluating certain near term operational cost reduction and value enhancement opportunities (e.g., SG&A and procurement);

    (h) Working with Counsel on supporting data in order for Counsel to prepare first day motions, the petitions for relief and other documents and evidence needed to implement the Debtors' Chapter 11 Cases;

---

[2] The Retained Staff is subject to change based on the needs of these Chapter 11 Cases.

[3] The description of the services to be rendered pursuant to the CRO Engagement Letter herein is a summary. To the extent that this Motion and the terms of the CRO Engagement Letter are inconsistent, the terms of the CRO Engagement Letter shall control.

01:16842000.1

6

      (i)      Providing testimony and other litigation support as requested by Counsel in connection with matters upon which McKinsey RTS is providing services; and

      (j)      Assisting with all such other restructuring matters as may be requested by Counsel that fall within McKinsey RTS's expertise and that are mutually agreed upon between the Debtors and McKinsey RTS.

13.    The Debtors and McKinsey RTS intend that all of the services that McKinsey RTS will provide to the Debtors will be: (a) appropriately directed by the Debtors so as to avoid duplicative efforts among the other professionals retained in these cases, and (b) performed in accordance with applicable standards of the profession.

14.    The CRO Engagement Letter contains standard indemnification language with respect to McKinsey RTS's services including, without limitation, an agreement by the Debtors to indemnify McKinsey RTS, its affiliates and each of their members, managers, principals, directors, officers, employees and agents from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of McKinsey RTS that is the subject of the CRO Engagement Letter.  Accordingly, as part of this Motion, the Debtors request that this Court approve the indemnification provisions as set forth in the CRO Engagement Letter and discussed immediately below.

15.    Notwithstanding anything to the contrary in the CRO Engagement Letter and consistent with the protocol established by the Office of the United States Trustee (the "U.S. Trustee") with respect to the retention of critical management services (the "Protocol"), McKinsey RTS agreed that those McKinsey RTS employees serving as officers of the Debtors, including Mr. Carmody as CRO, will be entitled to receive whatever indemnities are made available during the term of the engagement to other non-McKinsey RTS affiliated officers of the Debtors, whether under the by-laws, certificates of incorporation, applicable corporate laws or contractual agreements of general applicability to officers of the Debtors.  In addition, the

CRO and any Retained Staff will be entitled to the benefit of the most favorable indemnification, reimbursement, contribution and insurance provisions provided by the Debtors and their affiliates in the Debtors' charter, by-laws or other organizational documents, by contract or otherwise.

16.     The Debtors believe that the indemnity provisions are a reasonable term and condition of McKinsey RTS's engagement and were, along with all terms of the CRO Engagement Letter, negotiated by the Debtors and McKinsey RTS at arm's length and in good faith.  McKinsey RTS and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to McKinsey RTS and for comparable engagements, both in and out of court.  The Debtors respectfully submit that the indemnification provisions contained in the CRO Engagement Letter, viewed in conjunction with the other terms of McKinsey RTS's proposed retention, are reasonable and in the best interest of the Debtors, their estates and creditors in light of the fact that the Debtors require McKinsey RTS's services to prosecute these Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

17.     McKinsey RTS's decision to advise and assist the Debtors in connection with the Chapter 11 Cases is conditioned upon its ability to be retained in accordance with McKinsey RTS's customary terms and conditions of employment, including the compensation arrangement set forth in the CRO Engagement Letter (the "Fee and Expense Structure") and summarized below.

18.     The standard hourly rates, subject to periodic adjustments, as set forth in the CRO Engagement Letter, charged by professionals anticipated to be assigned to these Chapter 11 Cases are as follows:

| Engagement Staff | Description | Hourly Rate |
|---|---|---|
| Kevin Carmody | Chief Restructuring Officer | $950 |
| Mark Hojnacki | Restructuring Executive | $775 |
| Layth Ashoo | Planning and Operations | $640 |
| Sam Jacobs | Planning and Operations | $435 |
| Leviathan Winn | Cash Management | $435 |
| Akanksha Midha | Due Diligence | $390 |
| Ted Lichtenberger | Business Planning & Due Diligence | $385 |

19. To the extent additional McKinsey RTS personnel provide services to the Debtors during the pendency of these cases, McKinsey RTS's fees will be based on the hours spent by such personnel at McKinsey RTS's applicable hourly rates,[4] which are as follows:

| Title of Professional | Hourly Rate |
|---|---|
| Practice Leader | $875-$1,050 |
| Executive Vice President | $810-$875 |
| Senior Vice President | $675-$810 |
| Vice President | $525-$675 |
| Senior Associate | $435-$525 |
| Associate | $375-$435 |
| Analyst | $250-$350 |
| Paraprofessional | $200-$225 |

20. In addition to any fees payable to McKinsey RTS, the Debtors shall promptly reimburse McKinsey RTS for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement such as, but not limited to, travel, lodging, case administrators, and working meals following McKinsey RTS's standard expense reporting. As McKinsey RTS

---

[4] McKinsey RTS's rates are subject to periodic adjustment. McKinsey RTS will inform the Debtors and the U.S. Trustee to the extent any such adjustments occur during the pendency of these Chapter 11 Cases.

01:16842000.1

9

clients frequently request that McKinsey RTS personnel travel to their offices and work there for extended periods of time, McKinsey RTS developed its own official reimbursement policy with respect to its professionals' documentation of expenses (the "RTS Reimbursement Policy"). More specifically, McKinsey RTS professionals serving the Debtors will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for lodging. For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement when exact amounts are submitted in lieu of a receipt. Therefore, the Debtors request that McKinsey RTS be authorized to maintain detailed documentation of its professionals' actual and necessary costs and expenses in accordance with the RTS Reimbursement Policy.

21. Consistent with the scope of services to be provided by McKinsey RTS under the CRO Engagement Letter, the Debtors and McKinsey RTS negotiated and agreed upon the Fee and Expense Structure described above. The Debtors believe that the Fee and Expense Structure is reasonable, designed to fairly compensate McKinsey RTS for the work performed by Mr. Carmody and the Retained Staff, and consistent with McKinsey RTS's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, in connection with the rendering of similar services to be provided by McKinsey RTS to the Debtors. The Fee and Expense Structure is also market-based and consistent with, and typical of, arrangements entered into by other comparable advisory firms rendering similar services for clients such as the Debtors under like circumstances.

22. McKinsey RTS will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by McKinsey RTS for fees and expenses.

23. In the instant cases, the Debtors and McKinsey RTS have agreed that no success fee is being sought in connection with this engagement at this time, but the parties may discuss and agree upon a success fee in the future, at which point the Debtors will seek authority from this Court to amend the CRO Engagement Letter. The Debtors submit that payment of any success fee shall be subject to approval of this Court on a reasonableness standard set forth under section 330 of the Bankruptcy Code.

24. Because McKinsey RTS is not being employed as a professional under section 327 of the Bankruptcy Code, McKinsey RTS requests that it not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, McKinsey RTS will file reports of compensation earned and expenses incurred and paid on a quarterly basis (each a "Quarterly Report," and collectively, the "Quarterly Reports") with the Court and provide notice to (i) the Office of the United States Trustee for the District of Delaware ("U.S. Trustee"), (ii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under (a) the Pre-Petition Term Loan Agreements and (b) the DIP Term Loan Agreement ("Silver Point Counsel"),[5] and (iii) counsel to any statutorily appointed committee (the "Committee" and, with the U.S. Trustee and Silver Point Counsel, the "Notice Parties"). Such reports will (a) summarize the services provided to the Debtors, (b) summarize the compensation earned by each of the McKinsey RTS personnel, (c) identify the staff employee provided, and (d) itemize the expenses incurred.

---

[5] As such terms are defined in the *Debtor's Motion for Order (A) Authorizing Debtors to (i) Provide Adequate Protection to the Debtors' Secured Lenders, (ii) To Obtain Interim Postpetition Financing on a Superprioity Secured and Priming Basis in Favor of Silver Point Finance, LLC, as Administrative Agent for Proposed DIP Term Lenders, and (iii) to Modify the Automatic Stay; and (B) Scheduling and Establishing Deadlines Relating to a Final Hearing and Entry of a Final Order on Post-Petition Financing* (the "DIP Motion"). [Docket No. 15].

01:16842000.1

Notice for the Quarterly Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest. All compensation will be subject to review by the Court in the event an objection is filed. For the avoidance of doubt, Mr. Carmody and the Retained Staff are not, and shall not, be required to comply with Local Rule 2016-2.

25.   Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter with the first Quarterly Report, covering the period from the Petition Date through May 31, 2015, due on or before June 30, 2015. This procedure shall continue for any subsequent Quarterly Reports. In the event that a party in interest objects to a Quarterly Report, McKinsey RTS's fees and expenses shall be subject to review by this Court.

26.   In addition, McKinsey RTS will file with the Court and provide the Notice Parties a report on staffing, reporting the number of hours worked by category (the "Staffing Report") by the 20th of each month for the previous month, with the first report, covering the March 2015 stub period, being due on April 20, 2015. These Staffing Reports will include the names and tasks filled by the CRO and all Retained Staff involved in this matter. Notice for the Staffing Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest. The Staffing Report (and McKinsey RTS's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

27.   McKinsey RTS received an initial retainer of $275,000 (the "Initial Retainer") on January 20, 2015 from the Debtors. Pursuant to the Prepetition Engagement Letters, McKinsey RTS has applied its Initial Retainer to prepetition fees incurred. During the 90 days prior to the commencement of these Chapter 11 Cases, including the Initial Retainer and the Second Retainer (as defined below), the Debtors paid McKinsey RTS a total of $2,227,299.53 (inclusive of

reimbursable expenses) incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities as follows:

| Invoice Date | Payment Date | Billing Period (ending on the last day of the calendar week, as applicable) | Payment Amount |
|---|---|---|---|
| 1/16/15 | 1/20/15 | Initial Retainer | $ 275,000.00 |
| 2/4/15 | 2/19/15 | 1/14/15 to 1/31/15 | 223,531.25 |
| 2/9/15 | 2/12/15 | Second Retainer | 475,000.00 |
| 3/3/15 | 3/6/15 | 2/2/15 to 2/27/15 | 905,202.38 |
| 3/9/15 | 3/10/15 | 3/1/15 to 3/10/15 | 299,972.90 |
| 3/11/15 | 3/11/15 | 3/11/15 | 48,593.00 |
| **TOTAL WITHOUT RETAINERS** | | | $1,477,299.53 |
| **GRAND TOTAL** | | | $2,227,299.53 |

28.     The Initial Retainer has been applied to outstanding balances existing as of the Petition Date. A balance of $275,000 remains on the Initial Retainer. In addition to the Initial Retainer, McKinsey RTS also received a $475,000 retainer (the "Second Retainer" and together with the Initial Retainer, the "Retainers") on February 12, 2015. A balance of $475,000 remains on the Second Retainer. As contemplated by the CRO Engagement Letter, the Retainers are being held as security for postpetition services and expenses incurred in connection with, and during the pendency of, these Chapter 11 Cases.[6]

29.     General security retainers such as the Retainers are appropriate in these cases for several reasons. *See In re Insilco Tech., Inc.,* 291 B.R. 628, 634 (Bankr. D. Del. 2003) (Carey, J.) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect

---

[6] The Aggregate Carve-Out Cap (as such term is defined in the DIP Motion) will be net of the Retainers.

normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation[] [and] . . . whether the retention, as proposed, is in the best interests of the estate[] . . ."); *see also In re CTC Commc'ns Group, Inc.,* Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43, May 22, 2003 ("I agree and adopt wholeheartedly Judge Carey's decision in the Insilco case.").

30. First, these types of retainer agreements reflect normal business terms in the marketplace. *See In re Insilco Tech., Inc.,* 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both McKinsey RTS and the Debtors are sophisticated business entities that have negotiated the Prepetition Engagement Letters and the Retainers at arm's length. Third, McKinsey RTS's retention is in the best interests of the Debtors' estates because the Prepetition Engagement Letters and the Retainers allow the Debtors to maintain the pre-petition relationship established with McKinsey RTS. Thus, under the standards articulated in *In re Insilco Tech., Inc.,* and adopted *In re CTC Commc'ns Group, Inc.,* the facts and circumstances of these cases support the approval of the security retainer.

### MCKINSEY RTS'S CONNECTIONS WITH THE DEBTORS AND PARTIES IN INTEREST

31. The Debtors do not believe that McKinsey RTS is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. However, McKinsey RTS has provided information with respect to its connections with the Debtors, their creditors or their related parties, as more specifically described herein and in the Carmody Declaration.

32. To the best of the Debtors' knowledge, and as disclosed herein and in the Carmody Declaration, (i) McKinsey RTS is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, and holds no interest adverse to the Debtors and their estates for the matters for which McKinsey RTS is to be employed; and (ii) McKinsey RTS has no connection to the Debtors, their creditors, or their related parties herein except as may be disclosed in the Carmody Declaration.  Moreover, the retention and employment of McKinsey RTS is necessary and in the best interests of the Debtors, their estates, creditors and equity interest holders.

33. McKinsey RTS has disclosed to the Debtors that McKinsey RTS and its affiliates have in the past served, currently serves, and will likely serve in the future, certain of the Debtors' creditors, affiliates of the Debtors' creditors, professionals and other parties in interest in matters unrelated to the Debtors or these Chapter 11 Cases, and has provided related information in the Carmody Declaration.

34. The Debtors do not believe that the services described in the Carmody Declaration thereto present a conflict of interest under the circumstances of these Chapter 11 Cases or diminish McKinsey RTS's ability to serve the Debtors effectively in these Chapter 11 Cases.

35. McKinsey RTS will periodically review its files during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that McKinsey RTS discovers any new relevant facts or relationships bearing on the matters described herein during the period of McKinsey RTS's retention, McKinsey RTS will use reasonable efforts to promptly file a supplemental declaration.

36. As stated above, the Debtors do not believe that McKinsey RTS holds or represents any interest adverse to the Debtors' estates, and they believe that McKinsey RTS is a "disinterested person" under the Bankruptcy Code.  Accordingly, the Debtors submit that the

retention of McKinsey RTS is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## BASIS FOR RELIEF REQUESTED

37. The Debtors submit that the retention of a chief restructuring officer and other additional personnel is proper under section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code provides that transactions not in the ordinary course of business must be approved by court order. Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate Motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

38. The retention of McKinsey RTS and its professionals is a sound exercise of the Debtors' business judgment. Mr. Carmody has extensive experience as a senior officer and advisor for many distressed companies. The Debtors believe that the CRO, in conjunction with

the other McKinsey RTS professionals, will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of McKinsey RTS and its professionals is appropriate and in the best interests of the Debtors and their estates and creditors.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(H)

39. The Debtors respectfully request a waiver of the fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this Motion.

## NOTICE

40. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors or proposed counsel to any official committee of unsecured creditors appointed, as applicable; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

01:16842000.1

17

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, (a) approving the employment and retention of McKinsey RTS to provide interim management services to the Debtors; (b) appointing Kevin Carmody as CRO and authorizing the Debtors to utilize the Retained Staff; and (c) granting such other and further relief as the Court deems appropriate.

Dated: March 23, 2015
       Wilmington, Delaware

      */s/ Maris J. Kandestin*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and Debtors in Possession*