## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: April 6, 2015 at 4:00 p.m. (ET)** <br> **Hearing Date: April 13, 2015 at 10:00 a.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN DINSMORE & SHOHL LLP AS SPECIAL COUNSEL, PURSUANT TO 11 U.S.C. § 327(E), EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

The Standard Register Company ("Standard Register") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this application (the "Application") for entry of an order authorizing the Debtors' to employ and retain Dinsmore & Shohl LLP ("Dinsmore" or the "Firm") as special counsel and conflicts counsel, effective *nunc pro tunc* as of the Petition Date (as defined below), pursuant to sections 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").   In support of this Application, the Debtors rely on the *Declaration of Kim Martin Lewis in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Dinsmore & Shohl LLP as Special*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

*Counsel, Pursuant to 11 U.S.C. § 327(e), Effective Nunc Pro Tunc to the Petition Date* (the "Lewis Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein in full, and the Declaration of Gerard D. Sowar (the "Sowar Declaration"), a copy of which is attached hereto as Exhibit B and incorporated herein in full.   In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1408 and 1409.  The subject matter of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules to consent to the entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      The statutory basis for the relief requested herein is sections 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1.

## BACKGROUND

3.      On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4.      No trustee, examiner, or official committee of unsecured creditors has been appointed in these cases.

5.        Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration").

## RELIEF REQUESTED

6.        By this Application, the Debtors seek entry of an Order, substantially in the form attached hereto as Exhibit D, authorizing the Debtors to retain and employ Dinsmore as special counsel and, to the extent necessary and appropriate, conflicts counsel,[2] effective *nunc pro tunc* to the Petition Date.

7.        The Debtors seek to retain Dinsmore because of Dinsmore's expertise and knowledge in a number of legal fields as well as its extensive understanding and institutional knowledge of the Debtors' business and affairs.  Dinsmore is a national, full service law firm, with more than 575 legal professionals in 18 offices located across the United States.  Dinsmore has a long history with the Debtors and has represented the Debtors on a number of legal matters, including general corporate representation, intellectual property, employee benefits, real estate, privacy, employment, commercial and intellectual property litigation, and securities.  In light of Dinsmore's qualifications and history with the Debtors, the Debtors believe Dinsmore is well qualified and uniquely able to represent the Debtors as special counsel and conflicts counsel in these Chapter 11 Cases.

---

[2] Concurrently herewith, the Debtors filed an application to retain Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as their bankruptcy co-counsel.  Presently, neither the Debtors nor Dinsmore are currently aware of any conflicts of Gibson Dunn or Young Conaway that would require the retention of conflicts counsel.  However, out of an abundance of caution, and to ensure Dinsmore is able to represent the Debtors in all respects on matters in which Gibson Dunn may have a conflict, the Debtors seek the authority to retain Dinsmore as conflicts counsel through this Application.

## SCOPE OF EMPLOYMENT

8.     The Debtors will require Dinsmore to render a variety of legal services during the pendency of these Chapter 11 Cases and to assist the Debtors in addressing the myriad of issues that may arise.  The Debtors request the employment and retention of Dinsmore for professional services that Dinsmore will render to the Debtors which includes the following (the "Special Counsel Matters"):

- assist the Debtors on general corporate matters;

- assist on matters related to the Debtors' intellectual property and protection of intellectual property rights;

- assist the Debtors on various litigation matters;

- assist the Debtors on employee benefit matters;

- assist the Debtors in requests for information or document requests during bankruptcy proceeding;

- assist the Debtors in completing schedules of assets and liabilities and statement of financial affairs;

- assist the Debtors in preparing, reviewing and updating schedules to asset purchase agreement and/or loan documents;

- assist Debtors with day to day issues that may arise with respect to vendors, customers, and employees;

- assist the Debtors with compliance with federal and state securities laws;

- assist the Debtors and their bankruptcy co-counsel on additional matters wherein the use of Dinsmore will achieve better staffing and fee efficiencies; and

- represent the interests of the Debtors on matters in which the Debtors lead bankruptcy counsel has a conflict of interest.

## NO DUPLICATION OF SERVICES

9.      The Debtors have filed applications to retain Gibson Dunn and Young Conaway as their general bankruptcy co-counsel.    Because of their well-defined roles, Dinsmore's activities as special counsel with respect to the Special Counsel Matters will be complementary rather than duplicative of the services to be performed by Gibson Dunn, Young Conaway, and such other professionals as may be retained by the Debtors.    Moreover, at all stages of these Chapter 11 Cases, the Debtors will supervise their legal professionals to further ensure that there are no duplication of services provided by another firm.

## PROFESSIONAL COMPENSATION

10.      Dinsmore has advised the Debtors that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges, costs and expenses incurred in these Chapter 11 Cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable orders of this Court.[3]

11.      For professional services, Dinsmore's fees are based upon the standard hourly rates of professionals and paraprofessionals.    Presently, the Firm's current hourly rates range from $265 to $850 for partners, $160 to $625 for of counsel, $160 to $385 for associates, and $115 to $240 for paralegals.    The hourly rates charged by Dinsmore are consistent with the rates charged by Dinsmore in other complex, corporate securities and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.    The Firm's hourly rates are set at a level designed to fairly compensate the firm for the work of its attorneys and paralegals.    Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time.    It is Dinsmore's policy to charge its clients in all

---

[3]  Dinsmore's statement pursuant to Bankruptcy Rule 2016 is attached hereto as Exhibit C.

areas of practice for all other expenses incurred in connection with a client's case.  The expenses charged to clients include, among other things, photocopying (10 cents per copy), witness fees, travel expenses (limited to coach class travel), filing and recording fees, postage, express mail and messenger charges, computerized legal research charges and other computer services, and expenses for "working meals."  The Firm will charge the Debtors for these expenses in a manner and at a rate consistent with charges made generally to its other clients.  Dinsmore believes that it is equitable to charge these expenses to the particular client rather than increasing the hourly rates and spreading the expenses among other clients.

12.    The Debtors and Dinsmore intend to develop a prospective budget and staffing plan in a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures.  However, given the nature of bankruptcy proceedings, and the challenges in accurately forecasting the necessity of certain services, such a budget will merely be an estimate and the Debtors will perform those services necessary to best represent the interests of the Debtors throughout these proceedings.

## NO ADVERSE INTEREST

13.    To the best of the Debtors' knowledge, and except as disclosed in the Lewis Affidavit, Dinsmore has not represented the Debtors' creditors, equity security holders, or any other parties in interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee, in any matter relating to the Debtors or their estates.[4]

14.    Dinsmore has advised the Debtors with respect to a variety of matters, including general corporate representation, intellectual property, employee benefits, real estate, privacy,

---

[4] Dinsmore is continuing its full conflicts review of all parties in interest in these proceedings, and will supplement and update the Lewis Affidavit as necessary.

6

employment, commercial and intellectual property litigation, and securities.  During that time, except as described below, Dinsmore has charged the Debtors at rates consistent with the firms current hourly rates, adjusted solely with respect to an annual increase on January 1, 2015. Due to the scope of work performed by Dinsmore, and the longstanding relationship between the Debtors and Dinsmore, Dinsmore agreed to a cap on professional fees relating to certain patent applications and patentability opinions and did provide the Debtors a discount of 5%, which could increase up to 12.5% based on the total value of work performed by Dinsmore and the time between invoice and payment date.[5]

15.     As detailed in the Lewis Declaration, Dinsmore received payments over the prior 12 months of $1,527,618.50, including $663,907.59 since the funding in advance on January 20, 2015.  A portion of the advance funding (the "Retainer") has been applied to prepetition fees and expenses.  A portion of the remaining Retainer will be applied to any outstanding balances existing as of the Petition Date and against authorized post-petition fees and expenses until the balance remaining in the Retainer equals $200,000.[6]  The remainder will constitute a general retainer as security for post-petition services and expenses.

16.     As set forth in the Lewis Declaration, Dinsmore has a current balance of approximately $370,868 on its fee advances.  Dinsmore will apply any unpaid prepetition fees and expenses against the Retainer and thereafter, will apply post-petition fees and expenses against the Retainer until the amount of the Retainer equals $200,000.  The Debtors propose that the remaining $200,000 of the Retainer paid to Dinsmore and not expended for prepetition or

---

[5]   Under the terms of a discount proposal from January 1, 2013, the discount expired at the end of 2014.  While Dinsmore did not provide the discount beginning with 2015 bills, the Firm has agreed to maintain the discount and will credit the amounts not discounted retroactively, with the discounted amounts added to the amount held in Retainer.  Dinsmore will provide any updates reflecting the amounts collected and held retainer with the Firm's first application for interim compensation.

[6]   Dinsmore has not yet completed its final reconciliation of prepetition fees and expenses applied against the Retainer.  Details regarding such final reconciliation will be included in the Firm's first application for interim compensation.

post-petition services and disbursements be treated as a general security retainer to be held by Dinsmore throughout these chapter 11 cases until Dinsmore's fees and expenses are awarded by final order of this Court and payable to Dinsmore.[7]

17.    In this district, general security retainers are normal business practice. *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) (stating with regard to debtor's counsel holding security retainers that "the practice in this district has been engaged in since at least the early 1990s"). Additionally, the Debtors believe that approval of an general security retainer in these chapter 11 cases satisfies the five part test articulated by this Court in *Insilco*. First, the proposed terms of Dinsmore's engagement reflect normal business terms in the marketplace. Second, both Dinsmore and the Debtors are sophisticated business entities that have negotiated the Retainer as part of an arm's length agreement. Third, it is in the best interest of the Debtors' estates to provide Dinsmore a general security retainer because it ensures that the Debtors have immediate and uninterrupted access to highly skilled and experienced counsel to address the issues with which Dinsmore is retained. Fourth, the Debtors are not aware of any creditor opposition to approval of the remainder of the Retainer as a general security retainer. Finally, in light of the size, scope, and posture of these Chapter 11 Cases, the Debtors believe that the approval of the remainder of the Retainer as a general security retainer provides Dinsmore with an appropriate level of risk minimization in connection with the payment of its prospective fees and costs in these Chapter 11 Cases and allows them to focus their efforts on

---

[7] The impact of Dinsmore's retention of the remaining $200,000 of the Retainer on the Professional Fee Budget and the Aggregate Carve-Out Cap (each as defined in the *Interim Order (I) Authorizing Debtors In Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. § 364; (III) Providing Adequate Protection to Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Bankruptcy Rule 4001-2* [Docket No. 59] (the "DIP Order")) will be determined prior to the hearing on this Application. All rights of Silver Point Finance, LLC are reserved with respect to this determination.

providing the best possible advice without concern over payment of fees, which is in the best interest of the Debtors and all parties in interest.

18.      The Debtors desire to retain Dinsmore under the retainer arrangement set forth in the Lewis Declaration because of the extensive legal services that may be required and the fact that the nature and extent of such services are not known at this time.  To the best of Debtors' knowledge, Dinsmore does not hold or represent any interest adverse to the Debtors' estates, Dinsmore is a "disinterested person" as that phrase is defined in Section 101(14) of the Bankruptcy Code, and Dinsmore's employment is necessary and in the best interests of the Debtors and the Debtors' estates.

19.      Pursuant to Bankruptcy Rule 2016(b), Dinsmore has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Dinsmore or (b) any compensation another person or party has received or may receive.

20.      After adjustments following a final reconciliation of prepetition fees and expenses, Dinsmore will retain the remainder of the Advance Payment Balance as security for post-petition services and expenses, to be applied to any fees, charges and disbursements which remain unpaid at the end of these reorganization cases.

**BASIS FOR RELIEF**

21.      The Debtors seek approval of the retention and employment of Dinsmore pursuant to sections 327(e) of the Bankruptcy Code.  Section 327(e) of the Bankruptcy Code, in turn, provides that a debtor, subject to bankruptcy court approval,

> may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the

> debtor or the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

22.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> Specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed by the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

23.    The Debtors retention of Dinsmore is in the best interests of the Debtors' estates and satisfies all of the standards for retention under section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014(a).  The Debtors have selected Dinsmore as special counsel and conflicts counsel to advise and represent the Debtors in connection with the Special Counsel Matters due to their knowledge of the Debtors' business and affairs.  By retaining Dinsmore, the Debtors will be able to maximize efficiency by properly staffing legal matters in a manner that properly balances the expertise required to handle a legal matter and the institutional knowledge of the Debtors' business and affairs.  The Debtors therefore believe that the retention of Dinsmore to advise and represent the Debtors in connection with the Special Counsel Matters is in the best interests of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases.

## NOTICE

24.    The Debtors will provide notice of this Application to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A, in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit D, (i) authorizing the Debtors to employ and retain Dinsmore as special counsel for the Debtors, pursuant to section 327(e) of the Bankruptcy Code, *nunc pro tunc* as of the Petition Date; and (ii) granting such further relief as is just and proper.

Dated:    March 23 2015
            Dayton, Ohio

Respectfully submitted,

THE STANDARD REGISTER COMPANY

Gerard D. Sowar
Executive Vice President, General Counsel and
Secretary of The Standard Register Company