## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15- 10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 13, 2015 at 10:00 a.m. (ET)**<br>**Obj. Deadline: April 6, 2015 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LAZARD FRERES & CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

The Standard Register Company ("Standard Register") and its affiliated debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")

hereby submit this application (the "Application") for entry of an order, substantially in the form

annexed hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a) and 1107(b) of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016(b) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the

Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (i) authorizing the Debtors to retain and employ Lazard Frères &

Co. LLC ("Lazard Frères") and Lazard Middle Market LLC ("LMM" and together with Lazard

Frères, "Lazard") as investment banker to the Debtors, effective as of March 12, 2015, the date

the Debtors filed their chapter 11 petitions (the "Petition Date") and commenced these chapter 11

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

cases (the "Chapter 11 Cases") on the terms and conditions set forth herein and in that

engagement letter agreement by and between Lazard Frères and Standard Register dated

December 27, 2014 the ("Engagement Letter"), a copy of which is annexed hereto as Exhibit B,

and that certain indemnification letter, dated as of December 27, 2014, (the "Indemnification

Letter"), a copy of which is attached to the Engagement Letter as Addendum A,[2] and (ii) waiving

certain information requirements of Local Rule 2016-2.  In support of this Application, the

Debtors submit the *Declaration of Andrew Torgove in Support of Debtors' Application for Order*

*Authorizing the Retention and Employment of Lazard Frères & Co. LLC and Lazard Middle*

*Market LLC as Investment Banker to the Debtors, Nunc Pro Tunc to the Petition Date* (the

"Torgove Declaration") annexed hereto as Exhibit C.  In further support of this Application, the

Debtors respectfully represent:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Debtors

consent to the entry of a final order by the Court in connection with this Application to the extent

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and

legal predicates for the relief requested herein are sections 105(a), 327(a), 328(a) and 1107(b) of

---

[2]      Each capitalized term used, but not otherwise defined, herein shall have the meaning ascribed to such term in the Engagement Letter or the Indemnification Letter, as the case may be.

the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1, 2016-2 and 9013-1.

## BACKGROUND

2.      On the Petition Date, the Debtors commenced the Chapter 11 Cases under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these cases.

3.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration"), which was filed on the Petition Date.

## LAZARD'S QUALIFICATIONS

4.      Lazard Frères is the primary U.S. operating subsidiary of a preeminent international investment banking, financial advisory and asset management firm.  LMM is a wholly-owned subsidiary of Lazard Frères.  Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years.  Lazard has dedicated professionals who provide restructuring services to its clients.

5.      The Debtors chose Lazard to act as the Debtors' investment banker because Lazard and its professionals have extensive expertise and experience in providing investment banking services to financially distressed companies.  Lazard has (i) extensive knowledge of potential strategic and financial buyers interested in the Debtors' industry; (ii) substantial special

situation sell-side investment banking experience; and (iii) extensive restructuring experience. Numerous bankruptcy courts have also found Lazard well qualified and have approved applications by debtors and various other parties who have sought Lazard's guidance in connection with other complex bankruptcy cases, including, *inter alia*: *In re Dendreon Corporation*, No. 14-12515 (Bankr. D. Del. 2014); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. April 22, 2014); *In re Savient Pharm., Inc.,* Case No. 13-12680 (MFW) (Bankr. D. Del. Nov. 19, 2013); *In re Allen, Inc. and All Veg, LLC*, No. 13-73597 (BTB) (Bankr. W.D. Ark. Sept 27, 2013); *In re Exide Techs.,* Case No. 13-11482 (KJC) (Bankr. D. Del. July 11, 2013); *In re A123 Sys., Inc*., Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re Cagle's, Inc. et al.*, Case No. 11-80202 (Bankr. N.D. Ga. 2011); *In re Graceway Pharm., LLC*, Case No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011); *In re PTL Holdings LLC, et al.,* Case No. 11-12676 (Bankr. D. Del. 2011), *In re Bowe Systems, Inc., et al.,* Case No. 11-11187 (Bankr. D. Del. 2011); *In re Chem Rx Corporation, Inc., et al.,* Case No. 10-11567 (Bankr. D. Del. 2010), *In re American Safety Razor Company, LLC, et al.,* Case No. 10-12351 (Bankr. D. Del. 2010), *In re True Temper Sports, Inc., et al.,* Case No. 09-13446 (Bankr. D. Del. 2009), *In re Hayes Lemmerz International, Inc., et al.,* Case No. 09-11655 (Bankr. D. Del. 2009), *In re Smurfit-Stone Container Corp.,* Case No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009).

6.     Lazard is familiar with the Debtors' businesses and financial affairs and is well qualified to provide the services required by the Debtors.  Prior to the Petition Date, the Debtors engaged Lazard to provide advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization, and to prepare for the potential commencement of these cases.  In providing prepetition services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management

and other professionals and have become well-acquainted with the Debtors' businesses, capital structure and related matters.  Accordingly, Lazard has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  Should the Court approve the Debtors' retention of Lazard as investment banker, Lazard will continue, without interruption, to perform the services for the Debtors as described herein.

7.      Specifically, in its capacity as the Debtors' pre-petition investment banker, Lazard has developed knowledge of the Debtors' financial and business operations and worked with the Debtors on numerous matters, including, among others:

> (a)      advising and meeting with management, the Board of Directors and their committees with respect to various financial matters;
>
> (b)      assisting the Debtors and their consultants and counsel in evaluating the Debtors' businesses, assets and operations; and
>
> (c)      assisting the Debtors in communicating with the holders of the Debtors' various bank and bond issues with respect to various matters.

The Debtors, accordingly, believe that Lazard is well qualified to perform these services and represent the Debtors' interests in these Chapter 11 Cases.

## TERMS OF RETENTION AND EMPLOYMENT

### A.      Scope of Services

8.      The parties have entered into the Engagement Letter, which governs the relationship between Lazard and the Debtors.  The terms and conditions of the Engagement Letter were heavily negotiated, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in this engagement.  Pursuant to the terms of the

Engagement Letter, Lazard will perform such of the following investment banking services as the Debtors may reasonably request, including:

(a)  Reviewing and analyzing the Debtors' business, operations and financial projections;

(b)  Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

(c)  Assisting in the determination of a capital structure for the Debtors;

(d)  Providing valuation analyses for the Debtors' on a going concern basis;

(e)  Advising the Debtors on tactics and strategies for negotiating with the Debtors' stakeholders;

(f)  Rendering financial advice to the Debtors and participating in meetings or negotiations with the Debtors' stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)  Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h)  Advising and assisting the Debtors in evaluating any potential Financing transaction by the Debtors, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

(i)  Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring;

(j)  Assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of any Sale Transaction;

(k)  Attending meetings of Standard Register's board of directors and its committees with respect to matters on which Lazard has been engaged to advise;

(l)     Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise in any proceeding before the Bankruptcy Court; and

(m)     Providing the Debtors with other financial restructuring advice.

9.      The summary of the terms of the Engagement Letter contained herein is solely for the convenience of the Court and parties in interest.  That summary of, and any references to, the Engagement Letter or the Indemnification Letter contained herein are qualified by the express terms of the Engagement Letter and Indemnification Letter and, in the event of any inconsistency, the terms of the Engagement Letter and the Indemnification Letter shall control.

**B.      Necessity and No Duplication**

10.      The Debtors engaged Lazard as their investment banker to assist in connection with any Restructuring, Financing or Sale Transaction pursuant to the terms and conditions of the Engagement Letter.  The Debtors submit that a successful Sale Transaction is the best way to maximize the value of the Debtors' estates and that the assistance of Lazard is necessary to a successful Sale Transaction.  (A Sale Transaction is defined in the Engagement Letter as any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Debtors are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Debtors or possessing a majority of the then outstanding voting power of the Debtors (except as may occur with current stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Debtors or

(d) the formation of a joint venture or partnership with the Debtors or direct investment in the

Debtors for the purpose of effecting a transfer of an interest in the Debtors to a third party.)

11.    As discussed above, the Debtors believe that it is necessary for them to employ an

experienced investment banker to provide the foregoing services.  The Debtors will utilize

Lazard's services to complement, and not duplicate, the services to be rendered by any other

professional retained in these cases.  Specifically, Lazard will carry out a unique function and

will use reasonable efforts to coordinate with the Debtors and other professionals retained in

these Chapter 11 Cases to avoid unnecessary duplication of services.

**C.    Compensation**

12.    As set forth with greater specificity in the Engagement Letter, the Debtors and

Lazard have agreed to the following terms of compensation:

> (a)    An initial fee of $150,000 (the "Initial Fee") paid on execution of the Engagement Letter and a monthly fee of $100,000 (the "Monthly Fee(s)"), payable on the last day of each month from January 31, 2015 until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to the Engagement Letter. Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of Lazard's engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

> (b)    In the event of a Restructuring which takes the form of only waivers or amendments to any of the Company's Existing Obligations (an "Amendment"), that provide for a waiver or revision of covenants through (i) September 30, 2015, a fee of $250,000, (ii) December 31, 2015, a fee of $500,000, or (iii) a period until at least October 1 but not later than December 30, 2015, an amount determined based on straight line interpolation between $250,000 and $500,000, in each case upon execution thereof (the "Amendment

Fee") (it being agreed, however, that no Amendment Fee shall be payable with respect to any Amendment or Amendments that relate solely to the Debtors' compliance with their covenants during the fourth calendar quarter of 2014). Fifty percent (50%) of any Amendment Fee paid shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee or Financing Fee payable.

(c)     A fee payable upon the consummation of any Restructuring other than an Amendment, equal to 1% of the aggregate principal amount of Existing Obligations involved in the Restructuring (the "Restructuring Fee").

(d)     (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration[3] as set

---

[3]     The Engagement Letter provides that the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Debtors or relevant Debtor entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by the third party. Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Debtors or relevant Debtor entity, as applicable, in connection with such Sale Transaction, and the fair market value of Debtor assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Debtors or its or their respective security holders after the date of the Engagement Letter. Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Debtors or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration provided, to management executives and/or other employees of the Debtors (regardless of whether they are holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Debtors or relevant Debtor entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Debtors or relevant Debtor entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed

forth in Schedule I of the Engagement Letter or (B) the Restructuring Fee.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate any Sale Transaction not covered by clause (d)(i) above, including any minority joint venture, minority partnership, minority assets sale or similar minority transaction, the Debtors shall pay Lazard a fee (the "<u>Minority Sale Transaction Fee</u>") based on Aggregate Consideration calculated as set forth in Schedule I of the Engagement Letter.  One-half of any fee aid under this Section (d)(ii) shall be credited (without duplication) against any fees subsequently payable under Section (c) or (d)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e)     A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II to the Engagement Letter (the "<u>Financing Fee</u>").  One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f)     For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (c), (d) and (e) above

(g)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all: (A) reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any.  If the Debtors so request, Lazard shall provide reasonable documentation of such expenses.

---

assumed, cancelled, exchanged or forgiven directly or indirectly by the third party.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of Lazard's fee relating thereto shall be calculated by Lazard in good faith and paid to Lazard upon consummation of the Sale Transaction.

(h)    As part of the compensation payable to Lazard, the Debtors agree to the indemnification, contribution and related provisions contained in the Indemnification Letter.

(i)    All amounts referenced in the Engagement Letter reflect United States currency and shall be paid promptly in cash after such amounts accrue.

13.    The Debtors believe that the compensation structure described in the Engagement Letter is reasonable and comparable to those generally charged by investment banking and financial advisory firms of similar stature to Lazard for comparable engagements, both in and out of court.

14.    The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Lazard in connection with this engagement may vary and the Debtors and Lazard have taken this into account in setting the above fees.

15.    In addition, given the numerous issues that Lazard may be required to address in performance of the services in this engagement, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagements of this nature in an out-of-court context, the Debtors believe that the fee arrangements set forth in the Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

16.    In the two-month period prior to the Petition Date, Lazard received payment from the Debtors of an aggregate of $200,000 in fees for services rendered and also received reimbursement of a total of $9,695.51 in expenses incurred in connection with performing its engagement.

**D.    Record Keeping and Applications for Compensation**

17.    It is not the general practice of financial advisory and investment banking firms, including Lazard, to keep detailed time records similar to those customarily kept by attorneys

01:16841403.1

and required by Local Rule 2016-2(d).  Because Lazard does not ordinarily maintain

contemporaneous time records in tenth-hour (.10) increments or provide or conform to a

schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), Lazard should be

excused from compliance with such information requirements set forth in Local Rule 2016-2(d)

and from compliance with an interim compensation order with respect to Lazard's professional

fees only.  Notwithstanding that Lazard does not charge for its services on an hourly basis,

Lazard will nonetheless maintain time records in half-hour (0.50) increments, not decimal hours,

setting forth, in a summary format, a description of the services rendered and the professionals

rendering such services on behalf of the Debtors.

18.    Lazard will also maintain records in support of any costs and expenses incurred in

connection with its services.  Lazard's applications for compensation and expenses will be paid

by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule

2016-2(e) and any procedures established by the Court, pursuant to an interim compensation

order or otherwise.

**E.     Indemnification**

19.    The Engagement Letter and the Indemnification Letter provide that the Debtors

will indemnify and hold harmless various Indemnified Persons from and against certain losses

arising out of Lazard's engagement by the Debtors in connection with these Chapter 11 Cases,

other than those found by a court of competent jurisdiction in a judgment which has become final

in that it is no longer subject to appeal or review to have resulted from the Indemnified Person's

bad faith or gross negligence (such indemnification obligations, together with the other

provisions of the Indemnification Letter, as modified by the proposed order attached hereto, the

"Indemnification Provisions").  The Debtors submit that the Indemnification Provisions are

standard in the specialized financial advisory industry and that the provision of such is fair and

reasonable considering Lazard's qualifications and the expectations of other special financial advisors in connection with an engagement of this scope and size.  In addition, the proposed order attached hereto modifies the Indemnification Provisions to conform to the practice in this jurisdiction.

## LAZARD'S DISINTERESTEDNESS

20.     To the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Torgove Declaration: (a) Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors, their creditors, or their shareholders for the matters for which Lazard is to be employed; and (b) Lazard has no connection to the Debtors, their creditors, their shareholders, or related parties herein except as disclosed in the Torgove Declaration.

21.     Furthermore, to the best of the Debtors' knowledge, information, and belief that is based entirely and in reliance upon the Torgove Declaration, none of Lazard's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors or equity security holders in these Chapter 11 Cases.  As such, the Debtors believe that Lazard is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained.

## RELIEF REQUESTED

22.     By this Application, the Debtors seek the entry of an order, pursuant to sections 105(a), 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, (i) authorizing the retention and employment of Lazard as investment banker to the Debtors, *nunc pro tunc* to the Petition Date, (ii) approving the terms and

conditions contained in the Engagement Letter, and (iii) waiving certain time-keeping requirements of Local Rule 2016-2.

## BASIS FOR RELIEF REQUESTED

23.     Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons as defined in section 101(14) of the Bankruptcy Code, to assist the debtor in possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a). Section 328 of the Bankruptcy Code further provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

24.     Bankruptcy Rule 2014 sets forth the requirements for retention applications and provides that such applications must include:

> specific facts showing the necessity for the employment, the name of the [company] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [company's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

25.     By this Application, the Debtors request that the Court approve the employment and compensation arrangements described in the Engagement Letter and the Indemnification Provisions pursuant to section 328(a) of the Bankruptcy Code.  The employment arrangements contained in the Engagement Letter are beneficial to the Debtors' estates and the compensation

arrangements provide certainty and proper inducement for Lazard to act expeditiously and prudently with respect to the matters for which it will be employed.

26.     The Debtors further request approval of the employment of Lazard *nunc pro tunc* to the Petition Date.  Such relief is warranted by the circumstances presented by these Chapter 11 Cases.  The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986).  The complexity and speed that have characterized these Chapter 11 Cases have necessitated that the Debtors, Lazard and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

## NOTICE

27.     The Debtors will provide notice of this Application to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' proposed debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:16841403.1

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (i) authorizing the Debtors to employ and retain Lazard as investment banker to the Debtors, *nunc pro tunc* to the Petition Date and (ii) waiving certain information requirements of Local Rule 2016-2.

Dated:    March 23, 2015                    Respectfully submitted,
          Wilmington, Delaware             The Standard Register Company, *et al.*

                                            _____
                                            Kevin Carmody, Chief Restructuring Officer