# EXHIBIT B

# ENGAGEMENT LETTER

December 27, 2014

The Standard Register Company
600 Albany Street
Dayton, Ohio 45417

Attention:   Joseph P. Morgan Jr.
             President & Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and The Standard Register Company ("Standard Register") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein. As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions. By signing this Agreement, we hereby accept our appointment as your lead investment banker under the terms hereof.

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

The Standard Register Company

December 27, 2014
Page 2

(b) Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c) Assisting in the determination of a capital structure for the Company;

(d) Providing valuation analyses for the Company on a going concern basis;

(e) Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f) Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g) Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h) Advising and assisting the Company in evaluating any potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i) Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring;

(j) Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction[2];

(k) Attending meetings of Standard Register's Board of Directors and its committees with respect to matters on which we have been engaged hereunder;

(l) Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company ; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

The Standard Register Company

December 27, 2014
Page 3

    (m)    Providing the Company with other financial restructuring advice.

*Fees:*

2. As consideration for the services to be provided, the Company shall pay Lazard the following fees:

    (a)    An initial fee of $150,000 (the "Initial Fee") payable on execution of this Agreement and a monthly fee of $100,000 (the "Monthly Fee") payable on the last day of each month from January 31, 2015 until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

    (b)    In the event of a Restructuring which takes the form of only waivers or amendments to any of the Company's Existing Obligations (an "Amendment"), that provide for a waiver or revision of covenants through (i) September 30, 2015, a fee of $250,000, (ii) December 31, 2015, a fee of $500,000, or (iii) a period until at least October 1 but not later than December 30, 2015, an amount determined based on straight line interpolation between $250,000 and $500,000, in each case upon execution thereof (the "Amendment Fee") (it being agreed, however, that no Amendment Fee shall be payable with respect to an any Amendment or Amendments that relate solely to the Company's compliance with its covenants during the fourth calendar quarter of 2014). Fifty percent (50%) of any Amendment Fee paid shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee or Financing Fee payable.

    (c)    A fee, payable upon the consummation of any Restructuring other than an Amendment, equal to 1% of the aggregate principal amount of Existing Obligations involved in the Restructuring (the "Restructuring Fee").

    (d)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee.

           (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, including any minority joint venture, minority

The Standard Register Company

December 27, 2014
Page 4

  partnership, minority asset sale or similar minority transaction, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto. One-half of any fee paid under this Section 2(d)(ii) shall be credited (without duplication) against any fees subsequently payable under Section 2(c) or Section 2(d)(i).

  (iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e)  A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f)  For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c), (d) and (e) above.

(g)  In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any. If the Company so requests, Lazard shall provide reasonable documentation of such expenses

(h)  As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety;

(i)  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

  3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this

The Standard Register Company

December 27, 2014
Page 5

Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Amendment Fee, Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee and Financing Fee, are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4. Unless otherwise agreed in writing, no fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information in its possession or control regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that, to the knowledge of the Company, all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to use commercially reasonable efforts to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

The Standard Register Company

December 27, 2014
Page 6

8. Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of our engagement under this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire on the earlier of (x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) and (y) the date that is 12 months from the date hereof, and may be earlier terminated by Standard Register or us at any time without liability or continuing obligation to the Company or us, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by Standard Register (other than a termination by Standard Register where Lazard has acted with bad faith or gross negligence in connection with the performance of its role as contemplated herein) or any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Restructuring (including, for the avoidance of doubt, any Amendment), any Sale Transaction and any Financing publicly announced or with respect to which an agreement in principle has been reached during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. Lazard has been retained under this Agreement as an independent contractor to Standard Register, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Standard Register. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of Standard Register (in their capacities as such) is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of Standard Register (in their capacities as such) in evaluating the relevant Restructuring, Sale Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction or Financing. The Company agrees that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

The Standard Register Company

December 27, 2014
Page 7

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates (including Lazard Middle Market LLC) and may share with any such entity any information concerning the Company. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. Except as otherwise agreed by the Company, during the term of its engagement Lazard shall provide the services of Barry Ridings, Blake O'Dowd and Andrew Torgove in connection with this engagement, so long as they remain employed by and are able to provide services to Lazard. Lazard may use additional professionals as it deems appropriate in connection with this engagement.

14. Lazard agrees that it will, and it will direct any entity so employed to, treat any non-public information about the Company that is provided by or on behalf of the Company in connection with Lazard's engagement hereunder (which may include information regarding the existence or terms of any transaction, this engagement or our work hereunder) (collectively, the "Confidential Information") as confidential and not to disclose such Confidential Information to any third party except (a) as contemplated in connection with Lazard's engagement hereunder, (b) as otherwise authorized by or on behalf of the Company or (c) as required by subpoena or other legal or regulatory process. Lazard and any such entity may also disclose Confidential Information to its or their respective directors, officers, employees, representatives and other agents, in each case who need to know such information in connection with Lazard's engagement hereunder and who are subject to an obligation of confidentiality with respect thereto (any of such persons to whom Confidential Information is disclosed, "Agents"). Lazard agrees that, unless otherwise authorized by or on behalf of the Company, it will not, and it will direct such other entities and any Agents not to, use any Confidential Information for any purpose other than pursuant to Lazard's engagement hereunder. In the event Lazard or any of its Agents are requested or required pursuant to a subpoena or other legal or regulatory process to disclose any Confidential Information, Lazard shall, to the extent permissible by law, rule and regulation and any relevant legal or regulatory body and otherwise practical under the circumstances, (i) promptly notify the Company (provided that no notice shall be required in connection with disclosures to regulatory authorities in connection with a regulatory review of Lazard, any such other entity or any Agents that is not specifically related to the Company), (ii) consult with the Company as to the advisability of taking steps to resist or narrow the scope of the disclosure contemplated thereby, and (iii) cooperate with the Company as reasonably requested in any efforts the Company may make to obtain an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information. The term Confidential Information does not include information that (1) is published or otherwise becomes available to the public other than as a result of a disclosure by Lazard or its Agents in violation of this Section 14; (2) was in the possession of Lazard at the time of its disclosure by or on behalf of the Company; (3) is acquired from a third party that is not, to Lazard's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (4) is developed without reference to the Confidential Information. This Section 14 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of two years and shall then terminate.

15. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under

The Standard Register Company

December 27, 2014
Page 8

the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO, LLC

By: _____
Blake O'Dowd
Managing Director

By: _____
Andrew Torgove
Managing Director

Accepted and Agreed to as of the date first written above.

THE STANDARD REGISTER COMPANY, on behalf of itself
and its controlled subsidiaries

By: _____
Joseph P. Morgan Jr.
President & Chief Executive Officer

9

## SCHEDULE I

Fees for Sale Transactions

The following table outlines the Sale Transaction fee schedule. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding incremental fee. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration ($ in millions) | Incremental Fee % |
|---|---|
| $0 - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by the third party. Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Company or relevant Company entity, as applicable, in connection with such Sale Transaction, and the fair market value of Company assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Company or its or their respective security holders after the date of this Agreement. Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Company or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration

provided, to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests) in their capacity as employees (rather than in their capacity as holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

# **ADDENDUM A**

# **INDEMNIFICATION LETTER**

01:16841403.1

The Standard Register Company<br>
Indemnification Letter<br>
December 27, 2014<br>
Page 1

December 27, 2014

The Standard Register Company
600 Albany Street
Dayton, Ohio 45417

Attention:   Joseph P. Morgan Jr.
                President & Chief Executive Officer

Gentlemen:

      In connection with our engagement to advise and assist The Standard Register Company and its controlled subsidiaries (collectively, "you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable and documented out-of-pocket legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith; provided, that the Indemnified Person shall promptly refund any expenses reimbursed or advanced hereunder to the extent that they are attributable to any loss, claim, damage, liability or expense that has been found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence. If multiple claims are brought against

any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become

The Standard Register Company<br>
Indemnification Letter<br>
December 27, 2014<br>
Page 3

unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in

The Standard Register Company<br>
Indemnification Letter<br>
December 27, 2014<br>
Page 4

connection with this agreement or our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO, LLC

By _[signature]_
Blake O'Dowd
Managing Director

By _[signature]_
Andrew Torgove
Managing Director

AGREED TO AND ACCEPTED
as of the date first
above written:

THE STANDARD REGISTER COMPANY, on behalf of itself
and its controlled subsidiaries

By _[signature]_