**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: <br><br> The Standard Register Company, *et al.*,[1] | Chapter 11 <br><br> Case No. 15-10541-BLS <br><br> (Jointly Administered) <br><br> <u>Proposed</u> Hearing: April 1, 2015 at 10:00 a.m. (ET) <br> <u>Proposed</u> Objection Deadline: At the Hearing |

**DECLARATION OF BECKI LITTMAN IN SUPPORT OF THE EMERGENCY MOTION OF VOLT CONSULTING GROUP, LTD. FOR THE ENTRY OF AN ORDER: (I) GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1), TO THE EXTENT REQUIRED, TO TERMINATE ITS CONTRACT WITH THE DEBTORS; OR, ALTERNATIVELY, (II) REQUIRING THE DEBTORS TO ASSUME OR REJECT THE CONTRACT UNDER 11 U.S.C. § 365(d)(2) AND PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

I, Becki Littman, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Program Manager of Volt Consulting Group, Ltd. ("<u>Volt</u>") for Standard Register Company ("<u>Standard</u>"). I submit this declaration in support of the *Emergency Motion of Volt Consulting Group, Ltd. for the Entry of an Order: (I) Granting Relief from the Automatic Stay Under 11 U.S.C. § 362(d)(1), to the extent required, to Terminate its Contract With The Debtors; Or, Alternatively, (II) Requiring The Debtors To Assume or Reject The Contract Under 11 U.S.C. § 365(d)(2) And Provide Adequate Assurances of Future Performance*. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

If called upon to testify, I could and would competently testify to the facts set forth herein from my own personal knowledge.

2.    Among other things, my job responsibilities include liaising with approximately thirty-five (35) vendor staffing companies (the "<u>Vendors</u>") who supply contract workers to Standard. Volt oversees the invoicing, billing, coordination, and payment of these Vendors for Standard. In exchange, Volt receives a management fee of 2.99% for light industrial/administrative contract workers, and 1.85% for information technology workers.

3.    I understand that, as of the petition date, Volt was owed approximately $2 million by Standard. With the exception of its management fee, Volt would have paid this money to the Vendors. As a result of Standard's non-payment of the pre-petition debt, Volt has been unable to pay the Vendors. However, regardless of whether Standard pays Volt, the Vendors are required by state law to pay their contract workers that were placed with Standard.

4.    One of Standard's largest facilities is located in Grove City, Ohio. On March 25, 2015 and yesterday, I received orders from Standard Register for approximately forty-five (45) contract workers for the Grove City facility. Volt has three (3) Vendors that generally supply workers for this location. However, two of those Vendors are owed approximately ninety-three thousand dollars ($93,000) and in excess of three-hundred thousand dollars ($300,000) respectively from before the petition date. Those Vendors have already paid their contract workers, and both are suffering liquidity problems due to Standard's failure to pay Volt. As a result, those Vendors were unwilling to supply any more workers to Standard as they are afraid Standard will not pay Volt. Only one Vendor was willing to provide workers for this particular order, and they were only prepared to provide six (6).

5. In addition, one of the Volt's Vendors has attempted to withdraw workers from Standard's location in Oklahoma City. Several others have indicated they are reluctant to allow workers to continue working for Standard as they lack confidence they will be paid for these workers' wages due to the pre-petition debt.

6. Volt is coming under intense pressure from the Vendors, who have been forced to pay the Debtors' contract workers, but have not themselves been paid. Many of the Vendors are small and medium sized businesses. As a result of the Debtors' failure to pay Volt, those Vendors are suffering severe liquidity crises. In addition, apart from Standard, Volt uses the same Vendors to supply contract workers to other clients.

7. Volt and the Vendors are also receiving mixed messages from the Debtors and their personnel. The Debtors are assuring Volt it is a vital part of their operations, but at the same time they have made no assurances Volt's contract will be assumed. In addition, the Debtors' procurement personal informed Volt that the Vendors should file claims with the bankruptcy court, which has compounded the Vendors' lack of confidence in the Debtors. I am trying to fulfill orders placed by the Debtors, but I am struggling to impart confidence to the Vendors due to the Debtors' lack of assurances concerning the assumption of the contract.

8. Volt is paid approximately $366,000 per week by Standard in the ordinary course of business. Standard incurs approximately $50,000 per day for payroll services, which is owed to Volt. After deduction of its management fee, Volt remits the balance to the Vendors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 27, 2015

*Becki Littman* (signature)
Becki Littman