**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: <br><br> The Standard Register Company, *et al.*,[1] | Chapter 11 <br> Case No. 15-10541-BLS <br> (Jointly Administered) <br> **Related to Docket No.: 124** |

**MOTION FOR ORDER EXPEDITING CONSIDERATION OF, AND SHORTENING THE NOTICE PERIOD APPLICABLE TO, THE EMERGENCY MOTION OF VOLT CONSULTING GROUP, LTD. FOR THE ENTRY OF AN ORDER: (I) GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1), TO THE EXTENT REQUIRED, TO TERMINATE ITS CONTRACT WITH THE DEBTORS; OR, ALTERNATIVELY, (II) REQUIRING THE DEBTORS TO ASSUME OR REJECT THE CONTRACT UNDER 11 U.S.C. § 365(d)(2) AND PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

Volt Consulting Group, Ltd. ("Volt") respectfully files this motion (the "Motion to Shorten") to expedite consideration of, and to shorten the notice period applicable to, the *Emergency Motion of Volt Consulting Group, Ltd. For The Entry of An Order: (I) Granting Relief From The Automatic Stay Under 11 U.S.C. § 362(D)(1), To The Extent Required, To Terminate Its Contract With The Debtors; or, Alternatively, (II) Requiring The Debtors To Assume Or Reject The Contract Under 11 U.S.C. § 365(d)(2) And Provide Adequate Assurance of Future Performance* (the "Underlying Motion") [D.I. 124]. In support of this Motion to Shorten, Volt respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this motion, pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

1

2.  The statutory predicates for the relief requested herein are sections 105(a) of title 11 of the United States Code (11 U.S.C. §§ 101 et seq. as amended, the "<u>Bankruptcy Code</u>"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9006-1(e) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

## BACKGROUND

3.  Volt manages thirty-five (35) staffing companies (the "<u>Vendors</u>") that supply contract workers to the Debtors. Volt oversees the invoicing, billing, coordination, and – most importantly – payment of these Vendors for the Debtors. In exchange, Volt receives a management fee. This fee is deducted from the wages the Debtor is supposed to pay Volt, which Volt remits to the Vendors.

4.  On the petition date, Volt was owed over $2 million by the Debtors. Except for its management fee, Volt would have paid this money to the Vendors who supplied the Debtors' contract workers. Regardless of whether Volt is paid by the Debtors, the Vendors are required by state law to pay the Debtors' contract workers. Thus, the Debtors' non-payment of Volt has had (and continues to have) a knock-on effect that filters down to the Vendors.

5.  Moreover, the Debtors' pre-petition defaults are preventing Volt from fulfilling the Debtors' post-petition orders because the Vendors are reluctant to provide workers due to their lack of confidence they will be paid by the Debtors. As set forth in the declaration of Becki Littman (the "<u>Littman Declaration</u>") [D.I. 124-2], incorporated herein by reference, as of March 26, 2015, Volt had forty-five (45) open orders from the Debtors. Volt was only able to fill six (6). In addition, several Vendors are threatening to withdraw contract workers already on assignment to the Debtors. Volt values its longstanding relationship with the Debtors and wants to continue doing business with them. However, the Debtors' pre-petition defaults, together with

their ongoing failure to provide any formal assurances concerning the assumption of Volt's contract, are hampering Volt's ability to perform under the Contract.

6.      The Debtors' motion to pay certain pre-petition wages (the "<u>Wage Motion</u>") [D.I. 14] seeks authorization to pay Volt an unspecified amount of the pre-petition debt at an unspecified time, and reserves to the Debtors discretion whether to pay anything at all. *See* Volt's limited objection to the Wage Motion (the "<u>Limited Objection</u>") [D.I. 107]. The inadequate and non-committal nature of the Wage Motion is making it impossible for Volt to give the Vendors the confidence they need to do business with the Debtors.

7.      According to the Debtors' own statements, Volt and the Vendors are critical to the Debtors' operations. As the Wage Motion states:

> [A]ny failure by the Debtors to pay the Employee Obligations[2]…would negatively impact the morale of the Workforce[3] at a critical time for the Debtors and their businesses when the Workforce is most needed. The Workforce is also critical to the Debtors' ability to maintain their operations consistent with past practices, which would be impossible without the continued efforts of the Workforce. The damage to the value of the Debtors' business and, hence, the costs to creditors as a whole, would be immediate and irreparable if the Employee Obligations were not met. *See* Wage Motion (D.I. 14), at ¶ 84.

8.      In other words, by the Debtors' own admission, Volt is anything but an ordinary creditor. *See also*, Wage Motion (D.I. 14), at ¶ 7 ("the Contract Workers fill critical and immediate business needs of the Debtors[.]"); *id.*, at ¶ 14 ("The Contract Workers are skilled persons who provide the same types of services as the Debtors' regular Employees[.]"); *id.*, at ¶ 15 ("[t]he Debtors would be irreparably harmed without the services of the Contract Workers

---

[2] In the Wage Motion, "Employee Obligations" are defined to include "Compensation Obligations." *See*, D.I. 14, ¶ 74. In turn, "Compensation Obligations" include "Contract Worker Obligations." *See*, D.I. 14, ¶ 15.

[3] The term "Workforce" is defined in the Wage Motion to include contract workers. *See*, D.I. 14, at ¶ 5.


because such parties play a critical role in the Debtors' day-to-day operations[.]"); *id.*, at ¶ 76 ("The Debtors' success is based in large part on the Workforce."); *id.*, at ¶ 77 (the loss of the Workforce "would disable the Debtors' business operations.").

9. The Debtors have been assuring Volt's personnel that Volt is critical to their operations and will be a part of their future. However, Volt's treatment to date is difficult to reconcile with those assurances. Meanwhile, Volt is coming under intense daily pressure from the Vendors, who have been forced to pay the Debtors' contract workers but have not been paid themselves. Many of the Vendors are small and medium sized businesses. As a result, they are suffering severe liquidity crises and may face bankruptcy themselves. And under state law the Vendors' principals may face personal liability for the wages of the Debtors' contract workers. In addition, apart from Standard, Volt uses the same Vendors to supply contract workers to other clients. As such, the current situation is also threatening Volt's valuable relationships with the Vendors, who are essential to its business.

10. In sum, as set forth in the Littman Declaration [D.I. 124-2], Volt is coming under pressure on all sides from both the Debtors and the Vendors, and is unable to fulfill the Debtors' orders due to the Vendors' lack of confidence they will be paid. Meanwhile, this friction is damaging Volt's valuable business relationships with the Vendors and putting Volt in the impossible position of being unable to perform its contract with the Debtors.

11. After April 1st, the next omnibus hearing date in these cases is scheduled for April 13, 2015 [D.I. 68]. The current state of affairs simply cannot be endured for another two weeks. Moreover, without relief from the Court or a resolution with the Debtors, waiting until April 13th could work significant harm to the Debtors' estates, as they acknowledge in the Wage Motion.

12. Volt is sympathetic to the challenges faced by the Debtors and the importance of "breathing room," especially early on. However, although this is large chapter 11 case, it has

involved surprisingly little litigation.  The deadline for objecting to the Debtors' "first day" motions was March 25, 2015.  *See*, Notices of Hearing [D.I. 61, 62].  Including Volt's Limited Objection to the Wage Motion, a total of just four (4) objections and one (1) joinder were filed.[4]

13.     According to the docket, the Debtors are represented by at least nine (9) attorneys and two (2) law firms.  Clearly, they are not so overwhelmed as to be unable to decide whether to assume or reject Volt's Contract.  Indeed, given the emphatic language used by the Debtors in the Wage Motion, it is difficult to see why they have not sought to assume the Contract sooner.  In any event, the Debtors cannot plausibly assert that they cannot afford to address this situation now.  To the contrary, they cannot afford *not* to address it now.

## RELIEF REQUESTED

14.     By this Motion to Shorten, Volt seeks the entry of an order expediting consideration of, and shortening the notice period applicable to, the Underlying Motion.  Specifically, Volt respectfully requests that the Court hear the Underlying Motion at the next omnibus hearing on **April 1, 2015, at 10:00 a.m.**  Volt also requests that any objections to the Underlying Motion be presented at the hearing.

## BASIS FOR RELIEF REQUESTED

15.     Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion…order the period reduced."  In addition, Local Rule 9006-1(e) provides that a motion to shorten notice may be filed "specifying the

---

[4] *See*, D.I. 100 (objection of certain utility companies to motion prohibiting discontinuance of service and approving adequate protection payments), 103 (joinder to objection of utility companies), 104 (limited objection to motion for DIP financing), 106 (objection to motion to establish bidding procedures), and 107 (limited objection of Volt to the Wage Motion.).

exigencies justifying shortened notice." For the above reasons, it is respectfully submitted that exigent circumstances exist to hear the Underlying Motion on shortened notice.

WHEREFORE, Volt respectfully requests that this Court enter an Order substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion to Shorten.

Dated: Wilmington, Delaware
March 27, 2014

Respectfully submitted,

*/s/ Peter M. Sweeney*
Peter M. Sweeney (DE # 3671)
BLAKELEY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 415-9908
Email: psweeney@blakeleyllp.com

– and –

David M. Mannion
BLAKELEY LLP
54 W. 40th Street
New York, NY 10018
Telephone: (917) 472-9587
Email: dmannion@blakeleyllp.com

*Attorneys for Volt Consulting Group, Ltd.*