# EXHIBIT B

*[Markup of Bid Procedure Order and Bid Procedures]*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. ~~15- _____~~15-10541 (BLS) (Jointly Administered) |
| Debtors. | Re: Docket ~~Nos~~No. ~~_____~~23 |

**ORDER (I) ESTABLISHING SALE PROCEDURES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING BID PROTECTIONS; (III) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (IV) APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES, AND AGREEMENTS; (V) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; AND (VI) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an order (the "Order") (i) approving the proposed auction and bidding procedures (the "Sale Procedures"), which are attached as Exhibit A hereto, for the potential sale of substantially all of the Debtors' assets (the "Transferred Assets"); (ii) approving a break-up fee (the "Break-Up Fee") and expense reimbursement (the "Expense Reimbursement Amount" and, together with the Break-Up Fee, the "Bid Protections"); (iii) establishing procedures for the assumption and assignment of certain (the "Assumption and Assignment Procedures"); (iv) approving the form and manner of notice of all procedures, protections, schedules, and agreements; and (v) scheduling a hearing (the "Sale Hearing") to approve such sale (the "Sale Transaction"); and the Court having considered the

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, the Sale Procedures or the Stalking Horse APA.

Motion, and the arguments of counsel made, and the evidence adduced, at the hearing on the Motion (the "Sale Procedures Hearing"); and it appearing that the relief requested in the Motion, as modified herein, is in the best interests of the Debtors, their estates, their creditors, and all other interested parties; and upon the record of the Sale Procedures Hearing and the Chapter 11 Cases, and after due deliberation thereon, and good cause appearing therefore, it is hereby, FOUND, CONCLUDED AND DECLARED THAT:[3]

A.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, and 365.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004 and 6006, and 9014.

B.    The relief granted herein is in the best interests of the Debtors, their estates, and other parties in interest.

C.    The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Sale Procedures, (ii) approve the Bid Protections, (iii) approve the Assumption and Assignment Procedures, (iv(iii) approve the form and manner of notice of the Motion, the Auction, and the Sale Hearing, and (v(iv) set the date of the Auction and the Sale Hearing.

D.    Due, sufficient, and adequate notice of the Sale Procedures Hearing, the relief requested in the Motion, the relief granted herein, the Sale Procedures, the Assumption and Assignment Procedures, and the Auction has been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

E.    The Sale Procedures, substantially in the form attached hereto, and incorporated herein by reference as if fully set forth herein, are fair, reasonable, and appropriate; were

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

negotiated in good faith by the Debtors and the Stalking Horse Purchaser; and represent the best way to maximize the value of the Debtors' estates.

~~F.     The Debtors have demonstrated a compelling business justification for the payment of the Bid Protections under the circumstances set forth in the Stalking Horse APA. The Break Up Fee and the Expense Reimbursement Amount, to the extent payable under the Stalking Horse APA, (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) are of substantial benefit to the Debtors' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the Sale Transaction and the efforts that have been and will be expended by the Stalking Horse, (iv) have been negotiated by the parties and their respective advisors at arm's length and in good faith, and (v) are necessary to ensure that the Stalking Horse will continue to pursue the proposed Sale Transaction.  The Bid Protections are a material inducement for, and condition of, the Stalking Horse's entry into, the Stalking Horse APA.  The Stalking Horse is unwilling to commit to purchase the Transferred Assets under the terms of the Stalking Agreement unless the Stalking Horse Purchaser is assured payment of the Bid Protections in accordance with the Stalking Horse APA.~~

G.     The Assumption and Assignment Procedures are reasonable and appropriate.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is GRANTED, as set forth herein.

2.     The Sale Procedures, as attached hereto, are approved and incorporated into this Order by reference, as though fully set forth herein.  Accordingly, the failure to recite or reference any particular provision of the Sale Procedures shall not diminish the effectiveness of such provision, it being the intent of the Court that the Sale Procedures be authorized and approved in their entirety.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.

**The Bid Deadline**

3.     Except as expressly set forth herein or in the Sale Procedure, for a Bid to be a

Qualified Bid, the following parties must receive such Bid in writing **on or before** ~~June 1~~**[July 31]**, **2015 at 5:00 p.m. (prevailing Eastern Time)** ~~or such earlier date as may be agreed to by the Debtors~~ (the "Bid Deadline"): (a) counsel to the Debtors, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Robert A. Klyman, rklyman@gibsondunn.com) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com); (b) Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn: Andrew Torgove, andrew.torgove@lazard.com); (c) counsel to (i) the Prepetition Term Loan Agent and (ii) the Stalking Horse, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Kimberly DeBeers, kimberly.debeers@skadden.com and Ron Meisler, ron.meisler@skadden.com); and (d) counsel to the Committee, (i) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Sharon L. Levine, slevine@lowenstein.com and Wojciech F. Jung wjung@lowenstein.com) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward).

4.      Notwithstanding anything herein to the contrary, ~~(a)~~ the Stalking Horse is deemed a Qualified Bidder for all purposes ~~and (b) the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof (the "Second Lien Bidders") are deemed Qualified Bidders to the extent they elect to submit a bid at the Auction as provided in paragraph 25 hereof~~.  In the event there are no other Qualifying Bids, the Debtors shall accept the bid of the Stalking Horse.

**Notice of the Sale Transaction and the Sale Hearing**

5.      Within five (5) days after the entry of this Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtors (or their agents) shall serve the Motion, the Stalking Horse APA, this Order, and the Sale Procedures by first-class mail, postage prepaid upon (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Term Loan Agent; (c) counsel to the agents under the ABL Facility; (d) counsel to the agents under the Debtors' debtor-in-possession financing facility; (e) counsel to the

Committee; (g) all counterparties to the Transferred Contracts; (g) all entities with recorded claims, liens, interests, or encumbrances against the Debtors' right, title, and interest in the Transferred Assets and any other entities reasonably known to have asserted any such claim, liens, interests, or encumbrances; (h) all entities reasonably known to have expressed a bona fide interest in acquiring the Transferred Assets during the six (6) months preceding the date hereof; (i) the Internal Revenue Service; (k) the Office of the United States Attorney for the District of Delaware; and (j) all sales tax authorities of all states and the District of Columbia and all other taxing authorities or recording offices with a reasonably known interest in the relief requested in this Motion.

6.    On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid—, the Sale Notice upon all other known creditors of the Debtors.  The Debtors shall also post the Sale Notice and this Order on the website     of     the     Debtors'     claims     and     noticing     agent,     available     at http://cases.primeclerk.com/standardregister.

7.    The Debtors shall publish notice of the proposed Sale Transaction once in (a) the *Dayton Business Journal* and (b) the national edition of *The Wall Street Journal, The New York Times* or *USA Today*, as determined by the Debtors, in their sole discretion, and such local newspapers as the Debtors deem appropriate on the Mailing Date or as soon as practicable thereafter.  Such publication notice shall be sufficient and proper notice of the Sale Transaction to any other interested parties whose identities are unknown to the Debtors.

8.    Within one (1) day after the Auction or, if there are no Qualified Bids, the Bid Deadline, the Debtors shall file with this Court a notice of the that identifies the Successful Bidder and provides notice that, at the Sale Hearing, the Debtors will seek to assume and assign the Transferred Contracts to the Successful Bidder effective upon the occurrence of the Closing.

9.    The Debtors' proposed notices of (a) this Motion, (b) the proposed Sale Transaction, (c) the assumption and assignment of, and Cure Amounts for, the executory contract and unexpired leases to be assumed and assigned to the Successful Bidder, (d) the Stalking Horse

APA, (e) the Successful Bidder, and (f) the Sale Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

10.    If no Qualified Bids are received by the Bid Deadline, the Sale Hearing to approve the sale of the Transferred Assets to the Stalking Horse shall be held on [~~June 4~~**August 3**], 2015 at [_]. **(prevailing Eastern Time).**

11.    If there is an Auction, the Sale Hearing to approve the sale of the Transferred Assets to the Successful Bidder shall be held on [~~June 12~~**August 11**], 2015 at [___]          p.m. **(prevailing Eastern Time).**

<u>12.</u>    Objections, if any, to the sale of the Transferred Assets to the Stalking Horse ~~must be filed and served on counsel for the Debtors by [May 21], 2015 at 4:00 p.m. (prevailing Eastern Time).~~<u>, the to the selection of the Successful Bidder, or the conduct of the Auction must be filed and served on counsel for the Debtors and the Committee no later than two (2) days prior to the Sale Hearing.</u>

~~13.Objections, if any, to the selection of the Successful Bidder (if not the Stalking Horse Purchaser) or to the conduct of the Auction must be filed and served on counsel for the Debtors by [June 10,] 2015 at 4:00 p.m. (prevailing Eastern Time).~~

**The Auction**

<u>13.</u>    ~~14.~~The Auction shall take place on ~~June 8~~<u>[August 7]</u>, 2015 at 10:00 a.m. **(prevailing Eastern Time)** at the offices of counsel for the Debtors, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, or such other place and time as the Debtors shall notify all Qualified Bidders, the Stalking Horse Purchaser and its counsel, the Prepetition Term Loan Agent, and the Committee.

<u>14.</u>    ~~15.~~Only the Debtors, the Prepetition Term Loan Agent, the Committee<u> and members thereof</u>, the Stalking Horse, and any other Qualified Bidder, in each case, along with their representatives and counsel, shall attend the Auction (such attendance to be in person). Notwithstanding the foregoing, creditors may observe, but not participate in, the Auction,

provided that they provide the Debtors written notice of their intention to attend the Auction on or before the ~~Bid Deadline~~<u>Auction</u>.  Such written notice must be sent to counsel to the Debtors at rklyman@gibsondunn.com,   mnestor@ycst.com,   ~~and   to~~ <u>counsel   to   the   Committee   at</u> <u>slevine@lowenstein.com, wjung@lowenstein.com, and</u> the financial advisor to the Debtors at andrew.torgove@lazard.com.

    <u>15.</u>      ~~16.~~The Stalking Horse and the other Qualified Bidders will be entitled to make any Bids at the Auction.  ~~Notwithstanding anything herein to the contrary, if at least one Qualified Bid (other than a Bid submitted by the Stalking Horse) is submitted by the Bid Deadline, the Second Lien Bidders may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; provided that any Bid submitted by the Second Lien Bidders at the Auction must include (but need not be limited to) a credit bid of all or a portion of the obligations under the Prepetition Second Lien Credit Agreement.~~

    <u>16.</u>      ~~17.~~The Debtors and their professionals~~,~~<u>, in consultation with the Committee and its professionals,</u> shall direct and preside over the Auction, and the Auction shall be transcribed. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Sale Procedures, and (c) has consented to the core jurisdiction of the Bankruptcy Court.

<b><u>Assumption and Assignment Procedures</u></b>

    <u>17.</u>      ~~18.~~No later than 14 days after entry of this Order, the Debtors shall file with the Court and serve on each party to a Transferred Contract~~,~~<u>,</u> a Contract Notice that shall (a) state the cure amounts that the Debtors believe are necessary to assume such Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amount</u>"); (b) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchase of the Transferred Assets at the conclusion of the Auction; (c) state the date of the Sale Hearing; and (d) state a deadline by which the non-Debtor party shall file an objection to the Cure Amount or to the assumption and assignment of the Transferred Contracts.  The presence of a contract,

lease, or agreement on the Contract Notice does not constitute an admission that such contract, lease, or agreement is an executory contract.  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to all contracts, leases, and agreements listed on the Contract Notice.

18.   19. Any objection to either the Cure Amount or to the assumption and assignment, including with respect to adequate assurance of future performance (a "Contract Objection") must be filed with the Court and served on (a) the Debtors' counsel (Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Robert A. Klyman, rklyman@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com)), and (b) counsel to (i) Stalking Horse and (ii) the Prepetition Term Loan Agent (Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn:   Ron   Meisler,   ron.meisler@skadden.com   and   Christopher   M.   Dressel, christopher.dressel@skadden.com)) and (c) counsel to the Official Committee of Unsecured Creditors of the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn:   Sharon   L.   Levine   slevine@lowenstein.com   and   Wojciech   F.   Jung wjung@lowenstein.com), and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward), **so as to be received on or before [~~May 8~~July 7], 2015 at 4:00 p.m. (prevailing Eastern Time)**. Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Transferred Contract believes is required (in all cases with appropriate documentation in support thereof).  If no Cure Objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Transferred Contract or other document as of the date of the Cure Notice.  The Cure Notice shall also provide that Contract Objection to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.  If a Successful Bidder that is not the Stalking Horse Purchaser prevails at the Auction, then the deadline to object to assumption and assignment (including on

grounds of adequate assurance of future performance) shall be extended to the date of the Sale Hearing; provided, however, that the deadline to object to the Cure Amount shall not be extended.

19.    20. Unless a non-Debtor party to any executory contract or unexpired lease, files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) forever barred from objecting to the Cure Amount and (b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the schedule to the Cure Notice, against the Debtors, the Stalking Horse, or any Successful Bidder or any other assignee of the relevant contract.

20.    21. Unless a non-Debtor party to any Transferred Contract files a timely objection to the assumption and assignment of the contract to the Stalking Horse or other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Stalking Horse or other Successful Bidder and will be forever barred from objecting to such assumption and assignment on account of Cure Amount, lack of adequate assurance, or any other grounds.

**The Stalking Horse APA**

21.    22. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

22.    23. Pursuant to sections 105, 363, 503, and 507 of the Bankruptcy Code, The Debtors are authorized to enter into the Stalking Horse Agreement, as modified, provided that the Debtors are hereby not authorized to pay the Break-Up Fee and the or Expense Reimbursement Amount pursuant to the terms and conditions set forth in the Stalking Horse APA and the Sale Procedures. Specifically, the Break-Up Fee and Expense Reimbursement Amount shall be paid to the Stalking Horse Bidder pursuant to sections 8.2 and 8.3 of the Stalking Horse APA.

24.    Upon entry of this Order, the Break-Up Fee and Expense Reimbursement Amount

~~(if earned pursuant to the Stalking Horse APA) shall, until paid in full as set forth in the Stalking Horse APA, be entitled to superpriority administrative expense status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, senior to all other general administrative expense claims and superpriority administrative expense claims granted such status pursuant to sections 503(b)(1) and 507(a)(2), but junior in all respects to the Debtors' debtor in possession credit facilities. The Debtors' obligation to pay the Break Up Fee and Expense Reimbursement Amount pursuant to the terms of the Stalking Horse APA shall survive termination of the Stalking Horse APA.~~

**Related Relief**

23.     The failure of the Committee to object to a bid put forth by the DIP Lenders[4], the ABL Lenders, the First Lien Term Lenders or the Second Lien Term Lenders (collectively, the "Lenders") or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Official Committee of Unsecured Creditors to challenge the nature, extent, validity, priority, perfection or amount of the Lenders' alleged liens, security interests and claims or (b) release the Lenders from any causes of action which can be brought by or on behalf of the Debtors' estates.

24.     ~~25.~~This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

25.     ~~26.~~This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Order that relate to bid protections shall inure to the benefit of the Stalking Horse and its affiliates, successors, and assigns.

~~27.     Notwithstanding anything in this Order or the Sale Procedures to the contrary, if at least one Qualified Bid (other than the Stalking Horse Bid) is submitted by the Bid Deadline,~~

---

[4] As each term is defined in the DIP Motion. Docket No. 15.

~~the Second Lien Bidders may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a bid at, the Auction; provided that any bid submitted by the Second Lien Bidders after the Bid Deadline must include (but need not be limited to) a credit bid of all or a portion of the obligations under the Prepetition Second Lien Credit Agreement.~~

~~28.    In the event the Stalking Horse is not the Successful Bidder, the Stalking Horse shall have standing to object to the sale of the Transferred Assets or any portion thereof (including the conduct of the Auction and interpretation of these Sale Procedures) at the Sale Hearing.~~

26.    ~~29.~~Notwithstanding Bankruptcy Rules 6004(h), 6006(d), or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

27.    ~~30.~~This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including any matter, claim or dispute arising from or relating to the ~~Expense Reimbursement Amount, the Break Up Fee, the~~ Stalking Horse APA~~,~~ and the Sale Procedures.

Dated:_____, 2015
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT**

## SALE PROCEDURES

Set forth below are the sale procedures (the "Sale Procedures") to be employed with respect to the potential sale (the "Sale") of substantially all of the assets (the "Transferred Assets") of The Standard Register Company and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), in jointly administered Case No.15-[_____] No.15-10541 (BLS) (under the "Chapter 11 Cases") under title 11 of the United States Code (the "Bankruptcy Code") pending in the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to the Sale Procedures Order (defined below), the Court has approved Standard Acquisition Holdings, LLC, formed by Silver Point Finance, LLC, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement (defined below), as directed by the "Required Lenders" under the Prepetition First Lien Credit Agreement (defined below), as the buyer and stalking horse bidder (the "Stalking Horse"), as the buyer and stalking horse bidder for the Transferred Assets, as set forth more fully in that certain Asset Purchase Agreement among the Stalking Horse and the Debtors, dated as of March 11, 2015 (the "Stalking Horse APA").

On March 1112, 2015, the Debtors filed a motion pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order (a) approving and authorizing (i) the Sale Procedures, (ii) certain Bid Protections (defined below) for the Stalking Horse, and (iii) the form and manner of notice of the Sale Hearing (defined below); (b) approving and authorizing (i) the Sale of the Transferred Assets free and clear of all liens, claims, and encumbrances, (ii) the Stalking Horse APA, (iii) the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting related relief (the "Sale Motion").[45]

On _____, 2015, the Court entered an order (the "Sale Procedures Order") approving the Sale Procedures. The Sale Procedures Order set _____, 2015 as the date the Court will conduct the Sale Hearing. At the Sale Hearing, the Debtors will seek entry of an order (the "Sale Order") authorizing and approving the Sale of the Transferred Assets to the Successful Bidder and, if such Successful Bidder fails to consummate the Sale within sixty (60) days after entry of the Sale Order, to the Back-Up Bidder (defined below), without further order of the Court.

The Debtors reserve the right to (a) seek approval of the Sale of the Transferred Assets through a single transaction or through separate transactions in the event that the combination of such Sales is determined by the Debtors, in their discretion, but after consultation with (i) Silver Point Finance, LLC, as administrative agent (the "Prepetition Term Loan Agent") under that certain First Lien Credit Agreement, dated as of August 1, 2013 (the "Prepetition First Lien Credit Agreement" and the lenders thereunder, the "Prepetition First Lien Lenders"), and that certain Second Lien Credit Agreement, dated as of August 1, 2013 (the "Prepetition Second

---

[45] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or, if not defined therein, in the Stalking Horse APA.

Lien Credit Agreement"),[56] and (ii) the statutorily appointed official committee of unsecured creditors~~, if one is appointed~~ (the "Committee" and, together with the Prepetition Term Loan Agent, the "Consultation Parties") and (b) waive or modify some of the Sale Procedures to the extent such waiver or modification is in the best interests of the Debtors' estates as determined by the Debtors, in their discretion, but after consultation with the Consultation Parties and consent of the Committee.

## STALKING HORSE APA

On March 11, 2015, the Debtors entered into the Stalking Horse APA pursuant to which the Stalking Horse proposes to acquire all right, title and interest of the Debtors in, to or under substantially all Transferred Assets (including Intellectual Property) of the Debtors of every kind and description, wherever located, real, personal or mixed, tangible or intangible, to the extent owned, leased, licensed, used or held for use in or relating to the Business, as the same shall exist on the Closing Date (but, for the avoidance of doubt, excluding any Excluded Assets).

Pursuant to the Stalking Horse APA, the Stalking Horse will provide the Debtors with consideration for the Transferred Assets, as defined in the Stalking Horse APA, for consideration in the aggregate amount of the Purchase Price and the assumption of Assumed Liabilities.   The ~~Sale Procedures Order, pursuant to which the Court approved the Sale Procedures, entitles the~~ Stalking Horse ~~to~~ APA contemplates payment to the Stalking Horse a break-up fee (the "Break-Up Fee") and an expense reimbursement (the "Expense Reimbursement Amount" and, together with the Break-Up Fee, the "Bid Protections") under the terms of the Stalking Horse APA.~~  The Bid Protections are intended to provide an incentive for and to compensate the Stalking Horse for entering into the Stalking Horse APA with knowledge of the risks that arise from its participating in the subsequent bidding process, and absent which the Stalking Horse would not have entered into the Stalking Horse APA.  The Bid Protections shall~~; provided however, the Debtors are not authorized to pay the Bid Protections absent further order of the Court.  The Bid Protections may be payable on the terms and conditions set ~~forth in the Stalking Horse APA and the Sale Procedures Order~~by subsequent order of the Court.   The transaction contemplated by the Stalking Horse APA is subject to competitive bidding, as set forth herein, and approval by the Court pursuant to sections 363 and 365 of the Bankruptcy Code.

## BID DEADLINE

All offers, solicitations, or proposals (each, a "Bid") must be submitted in writing on or before [~~June 1~~July 31], 2015 (the "Bid Deadline").  To properly submit a Bid, a Qualified Bidder (defined below) must deliver written copies of its Bid to the following parties (collectively, the "Notice Parties") by the Bid Deadline:  (a) proposed counsel to the Debtors, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn:  Barbara Becker, bbecker@gibsondunn.com and Robert A. Klyman, rklyman@gibsondunn.com) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn:

---

[56]   The Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement are collectively referred to herein as the "Prepetition Term Loan Credit Agreements" and the lenders thereunder the "Prepetition Term Loan Lenders."

Michael R. Nestor, mnestor@ycst.com); (b) Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn: Andrew Torgove, andrew.torgove@lazard.com); (c) counsel to (i) the Prepetition Term Loan Agent and (ii) the Stalking Horse, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Kimberly DeBeers, kimberly.debeers@skadden.com and Ron Meisler, ron.meisler@skadden.com); and (d) counsel to the Committee (i) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Sharon L. Levine slevine@lowenstein.com and Wojciech F. Jung wjung@lowenstein.com) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward). Unless determined otherwise by the Debtors, after consultation with the Consultation Parties and consent of the Committee, a Bid delivered after the Bid Deadline shall not constitute a Qualified Bid.

~~Notwithstanding anything herein to the contrary, if at least one Qualified Bid (other than a Bid submitted by the Stalking Horse (such Bid, the "Stalking Horse Bid") is submitted by the Bid Deadline, the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof (the "Second Lien Bidders") may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; provided that any Bid submitted by the Second Lien Bidders at the Auction must include (but need not be limited to) a credit bid of all or a portion of the obligations under the Prepetition Second Lien Credit Agreement.~~

## PARTICIPANT REQUIREMENTS

To participate in the process detailed herein and to otherwise be considered for any purpose hereunder, each Bid and each bidder (a "Bidder") submitting a Bid must be determined by the Debtors and the Committee to have satisfactorily provided the Debtors with each of the following (unless such requirement, other than the "Confidentiality Agreement" requirement set forth in clause (c) below, is waived by the Debtors and the Committee, in their ~~sole~~ discretion) on or before the Bid Deadline (the "Participant Requirements"):

(a)    Identification of Bidder. Identification of the Bidder and/or any of the Principals (defined below), corporate officers or other representatives that are authorized to appear for and act on behalf of the Bidder with respect to the contemplated transaction.

(b)    Corporate Authority. Written evidence of the Bidder's authority to enter into the contemplated transaction and submit a Bid as well as the Bidder's acknowledgement and acceptance of the terms set forth in the Sale Procedures. In the event that the Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction (an "Acquisition Entity"), then the Bidder must furnish written evidence, reasonably acceptable to the Debtors and the Committee, of the approval of the contemplated transaction by the equity holder(s) or members of such Bidder (the "Principals").

(c)    Confidentiality Agreement. An executed confidentiality agreement (the "Confidentiality Agreement") in form and substance acceptable to the Debtors, the Committee, and their counsel.

(d)     <u>Proof of Financial Ability to Perform</u>.  Written evidence, reasonably acceptable to the Debtors and the Committee, that the Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance of all obligations to be assumed in such contemplated transaction. Such information may include, among other things, the following:

(i)     the Bidder's or, in the case of an Acquisition Entity, the Principals', current financial statements (audited if they exist);

(ii)    contact names and numbers for verification of financing sources;

(iii)   evidence of the Bidder's or Principals' internal resources and written evidence of a commitment for debt or equity funding that is needed to close the contemplated transaction; and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors and the Committee demonstrating that such Bidder has the ability to close the contemplated transaction; <u>provided</u>, <u>however</u>, that the Debtors and the Committee shall determine, in their reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

**DESIGNATION AS QUALIFIED BIDDER**

A "<u>Qualified Bidder</u>" is a Bidder that satisfies the Participant Requirements and that the Debtors and the Committee determine (a) has submitted by the Bid Deadline a Bid that constitutes a bona fide offer that would result in greater value than the value that the Debtors would receive under the Stalking Horse APA and (b) is determined by the Debtors and the Committee to be able to consummate the Sale as proposed in the Purchase Agreement (defined below) if selected as a Successful Bidder or a Back-Up Bidder.

As soon as practicable after the Debtors receive from a Bidder the information required under paragraphs (a) through (d) above related to Participant Requirements, the Debtors , with consent of the Committee, shall determine whether such Bidder is a Qualified Bidder and shall advise such Bidder of their determination. Notwithstanding anything herein to the contrary, ~~(a)~~ the Stalking Horse is deemed a Qualified Bidder for all purposes ~~and (b) the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof are deemed Qualified Bidders to the extent they elect to submit a Bid at the Auction as provided in the section above under the heading "Bid Deadline."~~.

Each Qualified Bidder ~~must~~should, at its sole cost and expense, make all filings required to be made under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "<u>HSR Act</u>") ~~on or before [June 1], 2015~~as soon as practicable.~~Unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, any Qualified Bidder, other than the Stalking Horse and the Second Lien Bidders, that fails to do so shall automatically cease to be a Qualified Bidder as of such date.~~

## ACCESS TO DUE DILIGENCE MATERIALS

The Debtors have designated Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn:  Andrew Torgove, andrew.torgove@lazard.com) to coordinate all reasonable requests for additional information and due diligence access from (a) Qualified Bidders and (b) potential Bidders who submit to the Debtors (i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors and the Committee and (ii) reasonable evidence demonstrating such party's financial capability to consummate the Sale of the Transferred Assets.  In addition, the Debtors reserve the right not to provide due diligence access to any Bidder that the Debtors conclude ~~in their reasonable business judgment~~, with the consent of the Committee, is not likely to become a Qualified Bidder.  The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Transferred Assets. Due diligence information will be furnished to the Stalking Horse and other Qualified Bidders through an electronic data room.  If the Debtors furnish any material information related to the Debtors not previously given to the Stalking Horse, then the Debtors shall place such information in the data room.  The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline.  Notwithstanding anything herein to the contrary, the Debtors, with the consent of the Committee, reserve the right to withhold information or restrict access to certain materials in any data room if providing such information or materials to a Qualified Bidder would, in the Debtors' business judgment, put the Debtors at a competitive disadvantage.

## DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for information from the Debtors regarding such Bidder and its contemplated transaction.  Failure by a Bidder to provide such information will be a basis for the Debtors, with the consent of the Committee, to deem that Bidder not to be a Qualified Bidder and to prohibit that Bidder from participating in any Auction.

## BIDDING PROCESS

The Debtors, after consultation with and the consent of the Committee, shall: ~~(a)~~ determine whether a Bidder is a Qualified Bidder; ~~(b.~~  The Debtors shall: (a) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions herein; (~~c~~b) receive offers from Qualified Bidders, which shall be shall be shared promptly with the Committee; and (~~d~~c) negotiate any offers made to purchase the Transferred Assets.  Subject to the Sale Procedures Order, the Debtors shall have the right to adopt such other rules for the Sale Procedures (including rules that may depart from those set forth herein), that, in the Debtors' reasonable discretion, after consultation with the Consultation Parties and consent of the Committee, will better promote the goals of the Sale Procedures.  With respect to all material decisions that the Debtors have the power to make under these Sale Procedures, the Debtors will confer with the Consultation Parties and obtain consent of the Committee.

**BID REQUIREMENTS**

Except as set forth above under the headings "Bid Deadline" and "Designation as Qualified Bidder," to participate in the Auction (defined below), a Qualified Bidder must submit a Bid by the Bid Deadline that the Debtors~~,~~ after consultation with and consent of the Committee, determine satisfies each of the following conditions (each such Bid, a "Qualified Bid"):

(a)   Written Submission of Purchase Agreement and Commitment to Close~~.~~  The Debtors shall file with the Court the Stalking Horse APA, which shall be used by each Qualified Bidder in submitting its respective Purchase Agreement along with the Marked Agreement (defined below).  Each Qualified Bid must be in writing and include: (i) a purchase agreement signed by the Qualified Bidder (the "Purchase Agreement"); (ii) a blackline reflecting the Qualified Bidder's proposed changes to the Stalking Horse APA (the "Marked Agreement"); and (iii) a written commitment demonstrating that the Qualified Bidder will be able to close the transaction proposed in its Purchase Agreement on the terms and conditions set forth therein.

(b)   Identification of Contracts and Leases to be Assumed.  Each Qualified Bid must include a comprehensive list of the Debtors' executory contracts and unexpired leases (collectively, the "Assumed Contracts") that the applicable Qualified Bidder desires to assume, and a packet of information, including financial information, that will be provided to the nondebtor counterparties to such Contracts and Leases sufficient to demonstrate adequate assurance of future performance.

(c)   Cure Amounts of Assumed Contracts.  Each Qualified Bid must include a Purchase Agreement that provides for the payment by the Qualified Bidder of all Cure Amounts (defined below) associated with the Assumed Contracts as part of the Qualified Bid.

(d)   Irrevocable.  Each Qualified Bid must be irrevocable until the Debtors and the Committee have designated a Qualified Bid as the Successful Bid (defined below) and the Back- Up Bid (defined below) (the "Termination Date").  The Back-Up Bid(s) will remain open until the earlier of (i) the Closing Date of the Sale with the Successful Bidder(s) or (ii) the sixtieth (60th) day after entry of the Sale Order; provided, however, that, if the Debtors deliver the Back-Up Notice during such 60-day period, the Back-Up Bidder shall have the obligations set forth in paragraph (h)(B) below.

(e)   Contingencies.  No Qualified Bid may be conditioned on obtaining financing, regulatory contingencies (other than on the condition that any applicable waiting period under the HSR Act be satisfied, which may occur subsequent to the Bid Deadline ~~provided that the Bidder makes all necessary filings under the HSR Act by the deadline set forth above),~~ any internal approval, or on the outcome or review of due diligence; provided, however, that the timing and likelihood of

receiving regulatory approval will be a consideration in determining the highest and best Bid.

(f)    Not Burdensome.  The terms of the Sale under the Purchase Agreement must not be materially more burdensome or conditional than the terms of the Sale under the Stalking Horse APA.

(g)    Same or Better Terms.  Each Bid must be on terms that, in the Debtors' business judgment and after consulting with the Consultation Parties and consent of the Committee, are the same as or better than the terms of the Stalking Horse APA and shall satisfy the "Minimum Bid" requirements set forth in clause (l) below.

(h)    Closing.  The Purchase Agreement must provide that (A) (1) the Closing Date shall occur on or before [August October 11], 2015, unless otherwise agreed to by the Debtors, after consultation with the Consultation Parties and consent of the Committee, and (2) within one (1) business day after the Auction has concluded, the Qualified Bidder, if deemed the Successful Bidder, shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made, including, but not limited to, the applicable Purchase Agreement; and (B) if the Qualified Bidder is deemed the Back-Up Bidder, then (1) the Closing Date shall occur within five (5) business days after the Debtors provide written notice of their intent to close the Sale under the Purchase Agreement (the "Back-Up Notice") and (2) within one (1) business day after the Debtors send the Back-Up Notice, the Qualified Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Back-Up Bid was made, including, but not limited to, the applicable Purchase Agreement.

(i)    Financing Sources.  Each Qualified Bid must contain written evidence of a firm commitment for financing or other evidence of the financial wherewithal of such Qualified Bidder (with appropriate contact information for such financing sources), which the Debtors, after consultation with the Committee, reasonably believe provides the Qualified Bidder with the ability to consummate the Sale and provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

(j)    No Fees Payable to Qualified Bidder.  With the exception of the Qualified Bid submitted by the Stalking Horse, no Qualified Bid may request or otherwise entitle the Qualified Bidder to any break-up fee, expense reimbursement amount or similar type of payment.  Further, by submitting a Qualified Bid, a Qualified Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Sale Procedures.[67]

---

[67]    The Stalking Horse APA provides for the Break-Up Fee and the Expense Reimbursement.  The Bid Protections have not been approved by the Court.  As noted herein,

(k)     Good Faith Deposit.  Each Qualified Bid other than the Stalking Horse Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of The Standard Register Company in the amount of not less than ten five percent (105%) of the amount of the stated purchase price in the Qualified Bid, to be held in escrow until (i) in the case of a Qualified Bidder other than the Successful Bidder or the Back-Up Bidder, the Termination Date and (ii) in the case of the Back-Up Bidder, until the earlier of (A) the Closing Date of the Sale with the Successful Bidder(s) or (B) the [sixtieth (60th)] day after entry of the Sale Order (unless, during such 60-day period, the Debtors deliver the Back-Up Notice, in which case the Good Faith Deposit of the Back-Up Bidder shall be treated as described under the heading "Return of Good Faith Deposit" below).  The Stalking Horse APA governs the terms of the Good Faith Deposit that must accompany the Stalking Horse APA.

(l)     Minimum Initial Overbid.  Any Qualified Bid must provide for a purchase price with respect to the Sale that is in an amount not less than the sum of (i) the amount of the Purchase Price and the assumption of Assumed Liabilities, as defined in the Stalking Horse APA, (ii) the amount of the Break-Up Fee, (iii) the amount of the Expense Reimbursement Amount, and (iv and (ii) the amount of the Minimum Bid Increment (as defined below) (collectively, the "Minimum Initial Overbid"), to be paid in cash or wire transfer on the Closing Date.

(m)     Purchase of Transferred Assets and Assumption of Liabilities.  Each Qualified Bid must provide for (i) the purchase of all or substantially all of the Transferred Assets, as defined in the Stalking Horse APA and ., (ii) the payment or assumption of all or substantially all of the Assumed Liabilities, as defined in the Stalking Horse APA, or (iii) such other transaction with the Debtors with the Consent of the Committee determine to be best for the estates.

(n)     Disclosure.  Each Qualified Bid must fully disclose the identity of each entity that will be bidding for the Transferred Assets or otherwise participating in connection with such Qualified Bid, the complete terms of any such participation, and any connections or agreements between such entity and the Debtors and their affiliates (as defined in section 101 of the Bankruptcy Code) and/or any officer, director, or direct or indirect equity security holder of the Debtors and their affiliates (as defined in Bankruptcy Code section 101).

If any Bid is determined by the Debtors , after consultation with and consent of the Committee, not to be a Qualified Bid, the Bidder shall be refunded its Good Faith Deposit within three (3) business days after such determination.

---

such Bid Protections shall only be available, to the extent approved by the Court, to the Stalking Horse. A Qualified Bidder should therefore remove any provisions relating to a break-up fee, expense reimbursement or similar type of payment from any Purchase Agreement submitted with its Bid.

Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors, and the Bidder submitting that Bid will not be permitted to participate in the Auction (as defined below); provided, however, that if the Debtors receive a Bid that is not a Qualified Bid, the Debtors, after consultation with the Consultation Parties and consent of the Committee, may provide such Qualified Bidder with the opportunity to remedy any deficiencies.

## ADEQUATE ASSURANCE

No later than 14 fourteen (14) days after entry of the Sale Procedures Order, the Debtors shall file with the Court and serve on each party to a Assumed Contract a Contract Notice that shall (a) state the Cure Amounts that the Debtors believe are necessary to assume such Assumed Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"); (b) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchase of the Transferred Assets at the conclusion of the Auction; (c) state the date of the Sale Hearing; and (d) state a deadline by which the non-Debtor party shall file an objection to the Cure Amount or to the assumption and assignment of the Assumed Contracts. The presence of a contract, lease, or agreement on the Contract Notice does not constitute an admission that such contract, lease, or agreement is an executory contract. The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to all contracts, leases, and agreements listed on the Contract Notice.

Any objection to the Cure Amount or to assumption and assignment, including with respect to adequate assurance of future performance (a "Contract Objection") must be filed with the Court and served on (a) the Debtors' counsel (Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Robert A. Klyman, rklyman@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com)), and (b) counsel to (i) Stalking Horse and (ii) the Prepetition Term Loan Agent (Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Ron Meisler, ron.meisler@skadden.com and Christopher M. Dressel, christopher.dressel@skadden.com)) and (c) counsel to the Committee (i) Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Sharon L. Levine slevine@lowenstein.com and Wojciech F. Jung wjung@lowenstein.com) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward), so as to be received on or before [May 8July 7], 2015 at 4:00 p.m. (prevailing Eastern Time). Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Assumed Contract believes is required (in all cases with appropriate documentation in support thereof). If no Cure Objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document as of the date of the Cure Notice. The Cure Notice shall also provide that Contract Objection to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors. If a Successful Bidder that is not the Stalking Horse Purchaser prevails at the Auction, then the deadline to object to assumption and assignment (including on grounds of adequate assurance of future performance) shall be extended to the date of the Sale Hearing; provided, however, that the deadline to object to the Cure Amount shall not be extended.

Unless a non-Debtor party to any executory contract or unexpired lease, files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) forever barred from objecting to the Cure Amount and (b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the schedule to the Cure Notice, against the Debtors, the Stalking Horse, or any Successful Bidder or any other assignee of the relevant contract.

Unless a non-Debtor party to any Assumed Contract files a timely objection to the assumption and assignment of the contract to the Stalking Horse or other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Stalking Horse or other Successful Bidder and will be forever barred from objecting to such assumption and assignment on account of Cure Amount, lack of adequate assurance, or any other grounds.

Nondebtor parties to the Assumed Contracts may request, in writing, a copy of the information that is provided to the Debtors by a Qualified Bidder in connection with the applicable Qualified Bid that include the Qualified Bidder's intent to assume any such Assumed Contracts in its Qualified Bid to demonstrate adequate assurance of future performance by such Qualified Bidder.  Such requests may be directed to the Debtors via electronic mail to Robert Klyman, Esq. (rklyman@gibsondunn.com), Michael Nestor, Esq. (mnestor@ycst.com), and Andrew Torgove (andrew.torgove@lazard.com).  Any such requests from nondebtor parties to Assumed Contracts (collectively, the "Contract Notice Parties") received on or before May 21[July 20], 2015 that provide an electronic mail address where such information may be sent will receive such information via electronic mail on or before May 23[July 22], 2015.  Any such requests received after May 21[July 20], 2015 will be sent to such Contract Notice Parties on or before the second business day after receipt of such request by the Debtors. Notwithstanding the forgoing, any requests for adequate assurance of future performance that require the provision of confidential and/or proprietary information of a Qualified Bidder will be provided to a Contract Notice Party to the applicable Assumed Contract, subject to execution by the nondebtor counterparty of a confidentiality agreement, in a form acceptable to the Debtors and the applicable Qualified Bidder providing the requested information.

**CREDIT BIDDING**

Qualified Bidders holding allowed secured claims against the Debtors may make one or more credit bids of some or all of their allowed secured claims.  Without limiting the forgoing, (a) the Stalking Horse may (i) credit bid up to the full amount of the outstanding obligations under the Prepetition First Lien Credit Agreement, and in addition, (ii) credit bid, at each round of the Auction, the full amount of the Break-Up Fee and the Expense Reimbursement Amount, and (b) the Second Lien Bidders may credit bid up to the full amount of the outstanding obligations under the Prepetition Second Lien Credit Agreement.

Any and all Bids, other than those submitted by or on behalf of (i) the Stalking Horse, (ii) the Second Lien Bidders, and (iii) another Qualified Bidder holding allowed secured claims against the Debtors (but only to the extent of such allowed secured claims),  shall be in cash unless otherwise provided in these Sale Procedures. Any and all credit bids submitted by a

~~party other than the Stalking Horse shall include a cash component that is sufficient to pay the amount of the Bid Protections.~~

## AUCTION

If no Qualified Bid other than the Qualified Bid submitted by the Stalking Horse is received by the Bid Deadline, then (a) the Auction will not be held, (b) the Stalking Horse will be deemed the Successful Bidder, (c) the Qualified Bid submitted by the Stalking Horse will be deemed the Successful Bid, and (d) at the Sale Hearing on _____, 2015 at ___:__.m. (prevailing Eastern Time), the Debtors will seek approval of the Court for authority to consummate the proposed Sale of the Transferred Assets to the Stalking Horse as contemplated in the Stalking Horse APA.

Only if a Qualified Bid (other than the Qualified Bid submitted by the Stalking Horse) is received by the Bid Deadline shall the Debtors conduct an auction (the "Auction"). The Auction shall commence on ~~June 8~~[August 7], 2015 at 10:00 a.m. (prevailing Eastern Time), at the offices of Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, or such other location designated by the Debtors.

The Debtors shall provide copies of the Initial Bid (defined below) to (i) the Stalking Horse, (ii) all Qualified Bidders, ~~and~~ (iii) counsel for Bank of America, N.A., in its capacity as administrative agent for the lenders under that certain Amended and Restated Loan and Security Agreement dated as of August 1, 2013, and (iv) counsel to the Committee as soon as reasonably practicable after the Bid Deadline, but in any event not later than ~~48~~12 hours after the Bid Deadline.

Prior to the commencement of the Auction, the Debtors shall determine (in their discretion, but after consultation with the Consultation Parties and consent of the Committee) which Qualified Bid represents the then-highest or otherwise best Bid (the "Initial Bid").

The determination of which Qualified Bid constitutes the Initial Bid shall take into account any factors the Debtors~~,~~, after consultation with the Committee, reasonably deem relevant to the value of the Qualified Bid to the estates, including, among other things, the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing, including due to the requirements of the HSR Act; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) the net economic effect of any changes from the Stalking Horse APA, if any, contemplated by the contemplated transaction documents (the "Contemplated Transaction Documents"); (h) the net after-tax consideration to be received by the Debtors' estates; and (i) such other considerations the Debtors and the Committee deem relevant in their reasonable discretion (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted according to the following procedures:

### (1)    Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  Except as set forth in the following paragraph, only the authorized representatives and respective counsel and advisors of each of the Qualified Bidders, the Debtors, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders, and the Committee (including members thereof) shall be permitted to attend the Auction.

Creditors may attend (but not participate in or at) the Auction provided that they provide the Debtors written notice of their intention to attend the Auction on or before the ~~Bid Deadline~~Auction.  Such written notice must be sent to counsel to the Debtors at rklyman@gibsondunn.com, mnestor@ycst.com, and andrew.torgove@lazard.com.

Each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion regarding the Sale Procedures, the Auction or the proposed transaction.

### (2)    Terms of Overbids

Qualified Bidders will be permitted to increase their Bids at each round of the Auction. Bidding shall begin with the Initial Bid and subsequently continue in minimum increments of at least ~~five~~ two hundred ~~fifty~~ thousand dollars ($~~500,000~~250,000) (or such other amount that the Debtors and the Committee determine appropriate to facilitate the Auction) (the "Minimum Bid Increment").

An "Overbid" is any Bid made at the Auction subsequent to the Debtors' announcement of the Initial Bid.  All Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.

To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

### (a)    *Minimum Overbid Increment*

Any Overbid after the Initial Bid shall be made in increments of at least the Minimum Bid Increment.

### (b)    *Remaining Terms are the Same as for Qualified Bids*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth herein.  Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid.

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement

reasonably acceptable to the Debtors and the Consultation Parties demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

### (c)   *Consideration of Overbids*

The Debtors, after consultation with and consent of the Committee, reserve the right in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: (i) facilitate discussions between the Debtors and individual Qualified Bidders; (ii) allow individual Qualified Bidders to consider how they wish to proceed; (iii) consider and determine the current highest or otherwise best Overbid at any given time during the Auction; and (iv) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may require to demonstrate that they have sufficient internal resources or sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

### (d)   *Stalking Horse Bidder May Credit Bid the Amount of the Bid Protections*

The Bid Protections will be taken into account in each round of bidding and added to the bid of the Stalking Horse Bidder.  The Stalking Horse Bidder shall be permitted to credit bid the full amount of the Bid Protections pursuant to any Overbid in connection with each round of bidding in the Auction.

### (3)   **Additional Procedures**

The Debtors, in their reasonable discretion, and in consultation with the Consultation Parties, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures, the Sale Procedures Order or the Bankruptcy Code.

Each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous Bid at the Auction.  Bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures.

The Debtors will, from time to time, in an open forum, advise Qualified Bidders participating in the Auction of the then-highest or otherwise best Bid(s).

### (4)   **Consent to Jurisdiction as Condition to Bid**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

### (5)    Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed and no additional Bids may be considered following the closing of the Auction.  The Debtors, in consultation with the Committee, shall immediately review the final Overbid of each Qualified Bidder on the basis of financial and contractual terms and the factors relevant to the Sale, including those factors affecting the speed and certainty of consummating the proposed sale, and, with the Consent of the Committee, identify the highest or otherwise best offer for the Transferred Assets (the "Successful Bid" and the entity submitting such Successful Bid, the "Successful Bidder") and the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid" and the entity submitting such Back-Up Bid, the "Back-Up Bidder").  The Debtors will notify the Qualified Bidders and Notice Parties of such determination within one (1) business day following the closing of the Auction.

### (6)    The Debtors Shall Preside Over the Auction

The Debtors and their professionals shall direct and preside over the Auction. The Debtors shall arrange for the actual bidding at the Auction to be transcribed, and the Auction shall be conducted openly, pursuant to the terms set forth herein.

The Debtors, in consultation with the Consultation Parties, will evaluate all options and determine which Qualified Bid is in the best interests of the Debtors, their estates, and their creditors.

### ACCEPTANCE OF SUCCESSFUL BID

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such Bid is declared the Successful Bid at the Auction, (b) definitive documentation has been executed in respect thereof, and (c) the Court enters an order approving the Sale to the applicable Successful Bidder.

Within one (1) business day after the closing of the Auction, the Debtors shall file with the Court and serve upon all Qualified Bidders and entities that have requested notice in these Chapter 11 Cases a notice identifying the Successful Bidder(s) and the Back-Up Bidder(s).

The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Bid.  The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court.

The Debtors will present the results of the Auction to the Court at the Sale Hearing, at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted and the Successful Bid and the Back- Up Bid were selected in accordance with these Sale Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Sale, contemplated by the Successful Bid will provide the highest or otherwise best Bid and is in the best interests of the Debtors and their creditors.

The Debtors may seek the Sale of the Transferred Assets through a single transaction or through separate transactions under separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtors, in their discretion, but after consultation with the Consultation Parties and with consent of the Committee, to constitute the highest or otherwise best Bid for the Transferred Assets.

**"AS IS, WHERE IS"**

The sale of the Transferred Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates except to the extent set forth in the Stalking Horse APA, as to the Stalking Horse, or the applicable Purchase Agreement, as to another Successful Bidder. The Stalking Horse and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Transferred Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Transferred Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Transferred Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Sale Procedures and (a) as to the Stalking Horse, the terms of the Sale of the Transferred Assets set forth in the Stalking Horse APA, or (b) as to another Successful Bidder, the terms of the Sale of the Transferred Assets set forth in the applicable Purchase Agreement.

**FREE AND CLEAR SALE**

Except as otherwise provided in the Stalking Horse APA, the applicable Purchase Agreement of another Successful Bidder, or the Sale Order, all of the Debtors' right, title, and interest in and to the Transferred Assets thereunder shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Encumbrances") in accordance with Bankruptcy Code section 363, with such Encumbrances to attach to the net proceeds of the sale of the Transferred Assets.

**SALE HEARING**

A hearing to approve the Sale of the Transferred Assets to the Successful Bidder shall be conducted by the Court on _____, 2015 at ___:__.m. (prevailing Eastern Time) located at 824 North Market Street, __th Floor, Courtroom No. ____, Wilmington, DE 19801 (the "Sale Hearing"). Following the approval of the Sale of the Transferred Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale within sixty (60) days after the entry of the Sale Order (except where the sole cause of any delay of the Closing Date is the result of a default by the Debtors), the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid and the Debtors shall be authorized, but not required, to consummate the sale with the Back-Up Bidder without further notice or orders of the Court. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the

Sale Hearing or notation on any applicable hearing agenda, provided that the Debtors first consult with the Consultation Parties.

## RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposit of a Successful Bidder shall be applied to the Purchase Price, as defined in the applicable Purchase Agreement. The Good Faith Deposit of the Back-Up Bidder shall be retained by the Debtors until the earlier of (a) the Closing Date of the Sale with the Successful Bidder(s) or (b) the sixtieth (60th) day after entry of the Sale Order and thereafter returned to the Back-Up Bidder (unless, during such 60-day period, the Debtors deliver the Back-Up Notice). The Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors until the designation of the Successful Bidder and the Back-Up Bidder, and thereafter returned to the respective Qualified Bidders. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to all other remedies provided for in the applicable Purchase Agreement.

Following the giving of the Back-Up Notice, the Good Faith Deposit of the Back-Up Bidder shall be applied to the Purchase Price as defined in the applicable Purchase Agreement. If the Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to all other remedies provided for in the applicable Purchase Agreement.

## MODIFICATIONS AND RESERVATIONS

The Debtors may, after consultation with the Consultation Parties and consent of the Committee, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of orders of the Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Sale Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates and their creditors.

At or before the Sale Hearing and subject to prior consent of the Committee, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of their estates, their creditors, and other parties in interest thereof that are not inconsistent with the Sale Procedures Order, the Sale Procedures, or the Bankruptcy Code.

The Sale Procedures may be materially modified only upon the express written consent of the Debtors (in consultation with the Consultation Parties and consent of the Committee) or by order of the Court.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Sale Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open, including any credit bid, if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential

bidding or (b) otherwise contrary to the goal of maximizing value from the sale process for the Debtors' estates, their creditors, and all other parties in interest.

## RESERVATION OF RIGHTS OF THE DEBTORS

Subject to the Sale Procedures Order and these Sale Procedures, the Debtors reserve the right as they may determine to be in the best interests of their estates to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sale Procedures Order or the requirements of the Bankruptcy Code or any other orders entered by the Court, or (iii) contrary to the best interests of the Debtors and their estates or stakeholders, as applicable; (e) impose additional terms and conditions with respect to any or all Bidders other than the Stalking Horse; (f) adjourn the Auction and/or Sale Hearing in open court without further notice; (g) with the consent of the Stalking Horse, remove a portion of the Transferred Assets from the Auction; and (h) consider or accept Bids for less than all of the Transferred Assets, so long as the Bids comply with the Overbid requirements.

**Exhibit C**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[7][8] | Case No. 15-10541 (BLS) (Jointly Administered) |
| Debtors. | Re: Docket No. 23 |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION AND SALE HEARING

**PLESE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 12, 2015, The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") their motion (the "Motion")[2] for entry of an order (the "Bidding Procedures Order"), (a)(i) scheduling a hearing on approval of the proposed sale of all or substantially all of the Debtors' assets (the "Sale"), free and clear of all liens, claims and encumbrances (except for Permitted Encumbrances), pursuant to that certain asset purchase agreement (the "Purchase Agreement") entered into by and between the Debtors, as sellers, and a group led by an affiliate of Silver Point Capital, L.P. (the "Stalking Horse") (or if the Stalking Horse is not the Successful Bidder, then a modified Purchase Agreement (the "Marked Agreement")), and the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") to the Stalking Horse (or if the Stalking Horse is not the Successful Bidder, then to the Successful Bidder); (ii) authorizing and approving certain proposed bidding procedures (collectively, the "Bidding Procedures") in connection with the Sale, certain proposed assumption and assignment procedures (collectively, the "Assumption and Assignment Procedures") for the Assumed Contracts, the Break-Up Fee, the Expense Reimbursement Amount, and the form and manner of notice thereof; and (iii) granting related relief; and (b) an order (the "Sale Order"), (i) authorizing and approving the Purchase Agreement (or if the Stalking Horse is not the Successful Bidder, then a Marked Agreement); (ii) authorizing and approving the Sale, free and clear of all liens, claims and encumbrances (except Permitted Encumbrances); (iii) authorizing and approving the assumption and assignment of the Assumed Contracts to the Stalking Horse (or if the Stalking Horse is not the Successful Bidder, then to the Successful Bidder); and (iv) granting related relief.

2.      On _____, 2015, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___].  Pursuant to the Bidding Procedures Order, in the event that ~~the Debtors timely receive~~ one or more Qualified Bids for the Transferred Assets are timely received, other than the Stalking Horse's Qualified Bid, the Auction shall be held at the offices of co-counsel to the Debtors, Gibson, Dunn &



[7][8] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

Crutcher LLP, 200 Park Avenue, New York, NY 10166, on ~~June 8~~[August 7], 2015, beginning at 10:00 a.m. (ET).  Only the Stalking Horse and all Qualified Bidders with Qualified Bids, as determined in accordance with the Bidding Procedures, shall be entitled to make any subsequent bids at the Auction.  A Qualified Bidder, other than the Stalking Horse and the Second Lien Bidders with respect to any credit bid for all or a portion of the obligations under the Prepetition Second Lien Credit Agreement, that desires to make a bid shall deliver a written or electronic copy of its bid to the parties identified in the Bidding Procedures so as to be received on or before _____, 2015 at 4:00 p.m. (ET) (the "Bid Deadline") and otherwise comply with the Bidding Procedures.  **FAILURE TO ABIDE BY THE BIDDING PROCEDURES MAY RESULT IN A BID FOR THE TRANSFERRED ASSETS TO NOT BE CONSIDERED.** Unless determined ~~otherwise~~ by the Debtors, after consultation with the Consultation Parties, a Bid delivered after the Bid Deadline shall not constitute a Qualified Bid.  Any party interested in bidding on the Transferred Assets should contact Lazard Middle Market LLC, 600 Fifth Avenue, Suite 800, New York, New York 10020, Attn: Andrew Torgove.

3.      If no timely Qualified Bids other than the Stalking Horse's Qualified Bid are submitted on or before the Bid Deadline, the Debtors, after consultation with the Consultation Parties (as defined in the Bidding Procedures) ~~and counsel to the Official Committee of Unsecured Creditors(the "Committee")~~, shall not hold an Auction and shall request at the Sale Hearing that the Bankruptcy Court approve the Purchase Agreement, and the transactions contemplated thereunder, and/or the sale of the Transferred Assets.

4. The Successful Bid (or if no Qualified Bid other than that of the Stalking Horse is received, then the Purchase Agreement) will be subject to Bankruptcy Court approval. The hearing (the "Sale Hearing") to approve the Sale to the Successful Bidder (or if no Qualified Bid other than that of the Stalking Horse is received, then to the Stalking Horse), free and clear of all liens, claims and encumbrances (except for Permitted Encumbrances) or to approve the sale of the Transferred Assets, shall take place on _____, 2015 at __.m. (ET), before the Honorable _____, United States Bankruptcy Judge, 824 North Market Street, ___th Floor, Courtroom No. ____, Wilmington, DE 19801. The Debtors may, in their sole discretion and after consultation with the Consultation Parties, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Transferred Assets, without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties, in the event that the Successful Bidder does not close the Sale. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing or notation on any applicable hearing agenda, provided that the Debtors first consult with the Consultation Parties.

**5. Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, ~~on or before~~ no later than 4:00 p.m. (ET) ~~on _____, 2015~~ two (2) days prior to the Sale Hearing (the "Sale Objection Deadline"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon (i) co-counsel to the Debtors: Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Robert Klyman, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor, Esq.); (ii) co-counsel to the ~~Official Committee of Unsecured Creditors: _____ (Attn: _____, Esq.~~ Committee: Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068 (Attn: Sharon L. Levine slevine@lowenstein.com and Wojciech F. Jung wjung@lowenstein.com) and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward); and (iii) counsel the Stalking Horse: Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Kimberly DeBeers, Ron**

**Meisler). If a Sale Objection is not filed and served in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and the Bankruptcy Court may enter the Sale Order without further notice to such party.**

6.      Copies of the Motion, the Bidding Procedures, the Bidding Procedures Order, and the Purchase Agreement may be obtained by parties in interest free of charge on PrimeClerk's dedicated webpage related to these chapter 11 cases (cases.primeclerk.com/standardregister). Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

Dated:  _____, 2015
            Wilmington, Delaware

/s/
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com
*Counsel to the Debtors and Debtors in Possession*