IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------- x
: 
In re : Chapter 11
:
THE STANDARD REGISTER COMPANY, : Case No. 15-10541 (BLS)
et al., :
: (Jointly Administered)
:
Debtors. : **Re: Docket Nos. 15, 59, 104, and 202.**
---------------------------------- x

**REPLY OF SILVER POINT FINANCE, LLC TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS FOR ORDER (A) AUTHORIZING DEBTORS TO (I) PROVIDE ADEQUATE PROTECTION TO THE DEBTORS' SECURED LENDERS, (II) TO OBTAIN INTERIM POSTPETITION FINANCING ON A SUPERPRIORITY, SECURED AND PRIMING BASIS IN FAVOR OF SILVER POINT FINANCE, LLC, AS ADMINISTRATIVE AGENT FOR PROPOSED DIP TERM LENDERS, AND BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR PROPOSED DIP ABL LENDERS, AND (III) TO MODIFY THE AUTOMATIC STAY; AND (B) SCHEDULING, AND ESTABLISHING DEADLINES RELATING TO A FINAL HEARING AND ENTRY OF A FINAL ORDER ON POSTPETITION FINANCING**

Silver Point Finance, LLC ("**Silver Point**"), for itself and as agent for the prepetition First and Second Lien Term Lenders, hereby replies to the objection of the Official Committee of Unsecured Creditors (Docket No. 202) (the "**Objection**") to the *Motion of Debtors for Order (A) Authorizing Debtors to (I) Provide Adequate Protection to the Debtors' Secured Lenders, (II) to Obtain Interim Postpetition Financing on a Superpriority, Secured and Priming Basis in Favor of Silver Point Finance, LLC, as Administrative Agent for Proposed DIP Term Lenders, and Bank of America, N.A., as Administrative Agent for Proposed DIP ABL Lenders, and (III) to Modify the Automatic Stay; and (B) Scheduling, and Establishing Deadlines Relating*

*to a Final Hearing and Entry of a Final Order on Postpetition Financing* (Docket No. 15) (the "**DIP Motion**").[1] With respect to the Objection, Silver Point respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The arguments presented in the Objection filed by the Official Committee of Unsecured Creditors (the "**Committee**") rest on three contentions: (i) the bald-faced assertion that the Debtors do not need the DIP Term Loans, (ii) the argument that case milestones in the DIP financing and the existence of a DIP Budget are improper because Silver Point is an "insider" who forced the Debtors to seek chapter 11 protection for the "sole purpose of facilitating a short sale" to Silver Point, and (iii) the belief that the Secured Lenders should be denied their right to any adequate protection due to a purported equity cushion. Permeating each of these contentions are a slew of reckless allegations about the motives and conduct of the parties. These allegations are unsubstantiated and uninformed, and the ample and uncontroverted evidence shows that this DIP financing is the best and most favorable financing available to the Debtors. Indeed, the uncontroverted evidence also demonstrates that it was the Debtors that drove the process of pursuing debtor-in-possession financing, and that Silver Point agreed to support the Debtors and provide necessary liquidity in an effort to facilitate a soft landing into chapter 11 and pursue a value-maximizing sale process. For the reasons set forth below, the Committee's Objection to the DIP Financing is without merit.

2. First, as to the sizing of the DIP financing, and the DIP Term Loans in particular, the DIP financing provides the liquidity that the Debtors determined was necessary to operate in chapter 11, *see* Carmody Decl. ¶¶ 107, 115, and was agreed to after multiple rounds of good faith, arm's-length negotiations between the Debtors, the ABL DIP Agent, and Silver Point.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the DIP Motion.

The evidence shows that Silver Point stepped forward to provide DIP Term Loans to fill the Debtors' liquidity needs where no other lender agreed to do so.[2] Carmody Decl. ¶ 107; O'Flanagan Decl. ¶¶ 11–12. In contrast, the Committee's assertion that the DIP financing was somehow foisted on the Debtors to benefit Silver Point is simply specious. To the contrary, Silver Point examined critically the Debtors' estimation of its financing needs with the goal of *limiting* its DIP financing exposure to the minimum amount needed by the Debtors.

3.    Second, the DIP Loan Agreements contain events of default if certain case milestones are not satisfied, including entry of an order by June 19, 2015, approving the Debtors' motion to sell substantially all of their assets, as well as the achievement of certain interim milestones. This is entirely appropriate, as the time spent in bankruptcy should be that required to run a value-maximizing sale process, but no more. The milestones here are reasonably tailored to achieve that result. The Committee's Objection to the milestones, as well as the Challenge Deadline and Investigation Budget, must be seen for what it is: a ham-fisted attempt to prolong these chapter 11 cases—and to demand that the DIP Lenders fund such efforts by the Committee—without any basis in law or fact.

4.    Third, as a matter of right, the Secured Lenders are entitled to adequate protection for the Debtors' use of the Pre-Petition Collateral. The protections that the Debtors seek to provide to the Secured Lenders are simply what the Bankruptcy Code requires, and courts routinely grant, to secured creditors whose collateral may be used or diminished during a chapter 11 proceeding.

---

[2] Indeed, while the Committee makes numerous unsubstantiated and uninformed allegations regarding the need to investigate Silver Point's relationship with the Debtors, it is worth noting that no party has challenged the DIP Motion's request for a good faith finding under section 364(e) of the Bankruptcy Code.

5. Indeed, the Committee's remarkable assertion that the Secured Lenders are not entitled to *any* of the adequate protection set forth in the proposed final DIP order, challenged by the Committee solely on the basis that the Secured Lenders purportedly enjoy an equity cushion of $100 million. Obj. ¶ 40. Even assuming that the Committee's appraised-value-of-ABL-Priority-Collateral argument were correct as a factual matter, the Committee appears to suggest that the Debtors disregard the consensual adequate protection package negotiated in connection with the DIP financing and instead pursue a nonconsensual priming fight, offering the holders of approximately $214 million in prepetition secured term loan debt no adequate protection other than their existing prepetition junior liens in ABL Priority Collateral. Such an approach would have been unacceptable to the Secured Lenders. Moreover, adequate protection is particularly appropriate where, as here, ABL Priority Collateral composing the purported equity cushion consists primarily of inventory that is regularly sold and constantly turning over. This reality, conveniently ignored by the Committee, makes the adequate protection replacement liens granted in the DIP Collateral (including the ABL Priority Collateral) and the other adequate protection provided to each Pre-Petition Term Agent, not only appropriate but necessary. *See, e.g.*, 11 U.S.C. §§ 361, 364(d)(1). Finally, on its face, the Committee's supposed equity cushion is calculated by subtracting $200 million in ABL Priority Collateral (an amount unsupported by any record evidence) from the $96.3 million of Prepetition ABL Debt outstanding as of the Petition Date. Obj. ¶ 40. But as the Committee's Objection recites, as of the Petition Date, there were also approximately $214 million in secured term loans outstanding. Obj. ¶ 5. The Committee has adduced no evidence supporting the notion that the Secured Lenders are oversecured.

6. To level set: the Term Adequate Protection Claims and Term Adequate Protection Liens provided for as adequate protection in the proposed final order (and the interim

4

financing order entered by this Court on March 13, 2015) are for "adequate protection of its interests in the Pre-Petition Collateral, including any Cash Collateral, in an amount equal to the Collateral Diminution." Interim Order ¶ 14.[3]  The proposed adequate protection package for the Secured Lenders is reasonable and appropriate because of the risk to the value of the Pre-Petition Collateral.

7. The Committee also suggests that because *the Committee* claims that Silver Point is an "insider" of the Debtors, or *the Committee* may wish to attack in the future the validity of the prepetition Term Lenders' liens, Silver Point somehow (a) should not be afforded adequate protection, (b) may not establish milestones and covenants in connection with the extension of a $30 million new money DIP term loan, and (c) should not be granted a finding in the final DIP order permitting Silver Point, subject to the Challenge Deadline, to credit bid the full amount of the DIP Obligations and Pre-Petition Term Debt (as applicable).  As set forth more fully in Silver Point's reply to the Committee's sale procedures objection, the Committee's attempt to bolster its arguments by alleging that Silver Point is a statutory or non-statutory insider of the Debtors is devoid of factual or legal support.  Similarly, the Committee's hyperbolic assertions concerning the validity of Silver Point's liens are, for now, nothing more than that.[4] If such threats and bluster could serve as the basis to deny the DIP Motion, then the Bankruptcy Code's protections would be rendered meaningless for secured creditors, as any unproven allegation could trump their statutory protections.

---

[3] Ironically, if the Committee were correct as to the existence of a large equity cushion, this would mean that the Secured Lenders are substantially *oversecured* and would entitle the Second Lien Term Lender Agent to current cash payments under the Pre-Petition Second Lien Term Agreement.  11 U.S.C. § 506(b) (postpetition interest to secured creditor is allowed "[t]o the extent that an allowed secured claim is secured by property the value of which," after recovery of expense, "is greater than the amount of such claim").

[4] And, they will ultimately turn out to be nothing more, either.

8. Finally, the proposed final DIP order contains the following customary and appropriate provisions, each of which the Committee finds objectionable:

- A 60-day Challenge Deadline for the Committee to investigate and commence an action against the Secured Lenders or their respective liens and claims, the expiration of which makes the Debtors' stipulations binding on the Committee and all other parties in interest;
- A $25,000 Investigation Budget for the Committee to investigate the Secured Lenders' liens and claims (which Investigation Budget is for investigation only and not to be used to prosecute any causes of action against the Pre-Petition Agents or the Secured Lenders or to avoid or object to such liens and claims);
- A Carve-Out, allocated 100% against and assessable solely from the Term Loan Priority Collateral;
- A waiver of the right to surcharge a secured lender's collateral under section 506(c) and the "equities of the case" exception of section 552(b) of the Bankruptcy Code;
- A finding that no DIP Credit Party or Pre-Petition Credit Party shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral;
- A finding that, subject to a challenge brought by the Challenge Deadline, the DIP Lenders, the Pre-Petition Term Credit Agreement Parties and the Pre-Petition ABL Credit Parties shall each have the right to credit bid up to the full amount of the applicable outstanding DIP Obligations, Pre-Petition Term Debt, and Pre-Petition ABL Debt (as applicable); and
- A collateral package to new money DIP lenders that includes liens on previously unencumbered property in accordance with section 364(c)(2) of the Bankruptcy Code.

Although creditors' committees routinely raise a similar litany of issues in chapter 11 cases, each of these provisions has a solid foundation in the Bankruptcy Code, Local Rules, case law and customary practice in this and other Courts.

**REPLY TO OBJECTION**

9. The Committee's use of colorful adjectives to articulate its various theories should not be mistaken for legal or evidentiary support for their positions. On that front, the silence is deafening. The Committee's Objection should be overruled in its entirety. As

demonstrated below, the terms and conditions of the proposed final DIP order to which the Committee objects are justified and should be approved.

A. **The Milestones Are Appropriate**

10. The Committee alleges that certain DIP milestones are inappropriate. Specifically, the Committee complains that the sale-related DIP milestones force an "unreasonably aggressive" sale process. Obj. ¶ 32. The Committee also believes that milestones relating to delivery of an operational restructuring plan create a potential default "tripwire." In point of fact, the sale-related milestones are reasonable and the uncontroverted evidence demonstrates that the Debtors possess ample time to run a robust sale process. Contrary to the Committee's unsupported assertions, including milestones in the Final DIP Order does not evidence an ulterior purpose. Rather, the milestones are designed to minimize the stay in bankruptcy, consistent with the Bankruptcy Code's goals. *See Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 137 (3d Cir. 1982) ("[t]o realize the goals of Chapter 11, a reorganization must be accomplished quickly and efficiently."); *Nassau Smelting & Ref. Works v. Brightwood Bronze Foundry Co.*, 265 U.S. 269, 272 (1924) ("[t]he bankrupt is impelled by vital interests, not only to make the offer promptly, but to expedite confirmation.").

11. Moreover, neither the Bankruptcy Code nor any case law prohibits a secured creditor from conditioning a debtor's financing on the achievement of milestones relating to the sale of assets. In fact, such sale and plan milestones are commonplace in chapter 11 cases in this and other jurisdictions. *See, e.g.*, *In re Nirvanix, Inc. (f/k/a Streamload, Inc.)*, No. 13-12595 (BLS) (Bankr. D. Del. Oct. 23, 2013) (approving DIP facility requiring approval of a sale transaction within 48 days of the petition date); *In re Synagro Techs., Inc.*, No. 13-11041 (BLS) (Bankr. D. Del. May 28, 2013) (approving DIP facility requiring approval of a sale transaction within 75 days of the petition date); *In re Deel, LLC (f/k/a Magic Brands, LLC)*, No.

7

10-11310 (BLS) (Bankr. D. Del. May 17, 2010) (approving DIP facility requiring approval of a sale transaction within 72 days of the petition date); (*In re Dayton Superior Corp.*, No. 09-11351 (BLS) (Bankr. D. Del. June 5, 2009) (approving DIP facility requiring plan confirmation or a sale transaction to occur within 155 days of the petition date); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (MFW) (Bankr. D. Del. June 15, 2009) (same, with 100-day period); *In re Indalex Holdings Fin. Inc.*, No. 09-10982 (PJW) (Bankr. D. Del. May 1, 2009) (same).

B.  **The DIP Financing Covenants and the DIP Budget Are Appropriate**

12.  The Committee's objections to the covenants contained in the proposed Final Order offer nothing beyond speculation. The Committee has provided no evidence that the covenants are problematic, nor has it presented any legal basis for denying them. It is the existing Secured Lenders who were asked to provide continuing financing to a company that is a proven credit risk. In such circumstances, it is a prudent practice for them to bargain for financial covenants and a DIP budget in order to protect their investment.

C.  **Adequate Protection Is Required For Use, Sale or Lease of Collateral**

13.  The Committee alleges that the adequate protection package provided to the prepetition Term Lenders is too broad. The Committee's Objection also contains unsupported allegations that Silver Point may be an insider and that certain liens of the prepetition Term Lenders may be unperfected. But such allegations provide no basis to deny the Term Lenders adequate protection as required under the Bankruptcy Code and the Fifth Amendment of the United States Constitution. *See LNC Invs., Inc. v. First Fid. Bank*, 247 B.R. 38, 44 (S.D.N.Y. 2000) (citing *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940)).

14.  As noted in *In re Born*, 10 B.R. 43 (Bankr. S.D. Tex. 1981), where secured "claims are not subject to summary disposition, it does no violence to the concept of the Bankruptcy Code to require the debtor to furnish adequate protection until those complex issues

raised by him are finally laid to rest. On the contrary, such an approach furthers the statutory schemes of [sections] 361 and 362 of the Bankruptcy Code by protecting the rights of the secured creditor while complex reorganization issues are concluded." *Id.* at 46-47 (finding it appropriate to continue to provide secured creditor adequate protection while the debtor litigated its claims against the secured party). Similarly, courts in this district have routinely provided adequate protection of lienholders' interests while official committees are afforded opportunities to investigate their liens. *See In re Sharper Image Corp.*, No. 08-10322 (KG), (Bankr. D. Del. Mar. 7, 2008) (granting adequate protection in the form of replacement liens and providing reservation of rights to official committee of unsecured creditors, among others, to challenge the validity, extent, perfection or priority of the mortgage, security interests and liens of prepetition secured parties in and to prepetition collateral); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 22, 2008) (permitting official committee of unsecured creditors to investigate and challenge perfection of prepetition lenders' security interests within specified time period); *In re Inphonic, Inc.*, No. 07-11666 (KG) (Bankr. D. Del. Nov. 9, 2007) (same); *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (Bankr. D. Del. Sept. 4, 2007) (same).

15. The Committee's argument that an equity cushion alone constitutes adequate protection similarly misses the mark. To the extent the Committee seeks to litigate the extent of any equity cushion, solely for the purpose of determining the appropriateness of adequate protection, the Committee would merely seek to replace one form of litigation with another without regard to the interests of their constituents and all parties in interest. *See Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 703 (E.D.N.C. 2009) (overruling bankruptcy court finding that a secured creditor being primed pursuant to section 364(d)(1) was adequately protected by an equity cushion in the collateral).

16. Moreover, a common form of adequate protection to an oversecured creditor—and one provided for in the Bankruptcy Code—is cash payments equal to the contract interest rate. 11 U.S.C. § 361; *see also In re New World Pasta Co.*, No. 04-02817 (MDF), 2004 WL 5651052, *12 (Bankr. M.D. Pa. July 9, 2004); *N.Y. Life Ins. Co. v. Revco D.S., Inc.* (In re Revco D.S., Inc.), 901 F.2d 1359, 1365 (6th Cir. 1990). If it were in fact the case that the second lien prepetition Term Lenders were oversecured (which they are not), they would be entitled to cash payments equal to the contract interest rate. As it stands, a secured creditor is entitled to "the same level of protection it would have had" if there had not been use of its collateral. *In re Swedeland Dev. Grp.*, 16 F.3d 552, 564 (3d Cir. 1994).

17. Notwithstanding these authorities, the Committee seeks to achieve the benefits of a successful challenge to the Term Lenders' liens and claims, without having asserted that challenge in a procedurally appropriate manner, without making any evidentiary case and without a ruling of this Court in its favor. Such threats of claims simply do not form a basis to deny a secured lender adequate protection.

18. The Committee's objection that the DIP financing improperly expands the scope of the Secured Lenders' collateral lacks any support whatsoever and should be overruled. The Bankruptcy Code does not contain any prohibition on granting an adequate protection lien in previously unencumbered property. Providing a secured creditor with a lien on unencumbered property is not an impermissible extension of that creditor's collateral package. *See, e.g.*, *MBank Dallas, N.A. v. O'Connor* (In re O'Connor), 808 F.2d 1393, 1397 (10th Cir. 1987) (affirming bankruptcy court's finding that an additional lien on certain unencumbered property was proper form of adequate protection); *In re Antell*, 155 B.R. 921, 926 (Bankr. E.D. Pa. 1992) (stating that adequate protection may be provided in a variety of ways, including by a lien on unencumbered property). It is well settled that section 361 of the Bankruptcy Code provides a debtor with a

non-exhaustive list of forms of adequate protection it may provide to a secured creditor, including cash payments to the secured creditor, additional or replacement liens, and any relief that will result in the realization of the "indubitable equivalent" of such creditor's interest in the property. 11 U.S.C. § 361(3). Providing a secured creditor with an adequate protection lien on previously unencumbered property is not an impermissible expansion of the Secured Lenders' collateral package.

D.     **The Challenge Deadline Satisfies the Local Rules and Should be Approved**

19.    The Committee objects to the Challenge Deadline being too short in duration and too burdensome on the Committee. But the Challenge Deadline is fully contemplated by the Local Rules, and should be approved here.

20.    Local Rule 4001-2(a)(i) requires the Debtors to indicate whether the DIP financing contains, and cite the location of:

> Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters.

Local Rule 4001-2(a)(i)(B). The Challenge Deadline contemplated in the final DIP order satisfies Local Rule 4001-2(a)(i)(B) and is appropriate here, particularly in light of the sale-related DIP milestones. *See also In re FCX, Inc.*, 54 B.R. 833, 842 (Bankr. E.D.N.C. 1985) (reasoning that such time limitations are appropriate because the secured creditor financing the debtor's operations is entitled to know if there are challenges and whether it must defend claims).

21.    In addition, to expedite the Committee's investigation, Silver Point agreed to accept service of a subpoena without requiring motion practice, and has already provided

many (if not all) of the documents the Committee needs for its investigation, further supporting the appropriateness of the Challenge Deadline.

E.     **The Investigation Budget Is Sufficient**

22.     The Committee also objects to the $25,000 Investigation Budget, which limits the amount of the DIP loans may be used to fund an investigation, and proposes that there be no limit. Obj. ¶ 59. This proposal is contrary to the vast majority of precedent in this jurisdiction. A secured creditor is not required to give a creditors' committee a blank check to investigate causes of action against the creditor. In this case, the Pre-Petition Credit Parties have agreed to fund the Committee's investigation of their liens and claims. This arrangement is entirely consistent with the Bankruptcy Code.

F.     **Waivers Under Sections 506(c) And 552(b) Are Warranted**

23.     The Committee's objection to the waiver of the Debtor's rights under section 506(c) of the Bankruptcy Code should be overruled. Such waivers are standard with respect to postpetition financings between sophisticated parties, particularly where, as here, the DIP Lenders are funding the Debtors' postpetition expenses.

24.     Pursuant to the DIP Budget, the Debtors are paying postpetition expenses on a current basis. Moreover, a Carve-Out exists that, contrary to the Committee's assertion, is anything but "deceptive" or "illusory." *Cf.* Obj. ¶ 43. The Carve-Out comes ahead of the DIP Liens in favor of the Term DIP Agent, the Superpriority Claims in favor of the Term DIP Credit Parties, the Term Loan Security Interests, the Adequate Protection Liens in favor of the Pre-Petition Term Agents, and the Adequate Protection Claims in favor of the Pre-Petition Term

Credit Parties.[5] Accordingly, the DIP Lenders should not also be subject to surcharge under section 506(c) of the Bankruptcy Code.[6]

25. Cut from the template of committee objections, the Committee also argues that a waiver of section 552(b)'s "equities of the case" doctrine with respect to the Pre-Petition Credit Parties is inappropriate. The uncontroverted record evidence demonstrates that the Debtors need the financing provided by the DIP Loans. In order to obtain the consent of the Secured Lenders, and thereby avoid a costly and distracting fight over priming, the Debtors agreed to a waiver of the "equities of the case" doctrine. Tellingly, the Committee has failed to suggest how the "equities of the case" exception applies (i.e., how waiving the "equities of the case" exception would prejudice the Debtors). The Secured Lenders have requested such a waiver to ensure that their security interests extend to proceeds and property acquired by the estates after the commencement of these cases as provided under section 552(b) of the Bankruptcy Code, without being subject to litigation seeking to terminate otherwise valid security interests.

26. Furthermore, this and other courts have approved waivers of the "equities of the case" exception to section 552(b) in other instances, reinforcing that there is nothing improper about such a waiver. *See, e.g.*, *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Nov. 12, 2009); *In re Pac. Energy*

---

[5] The Carve-Out is allocated 100% against and assessable solely from the Term Loan Priority Collateral because the ABL DIP Agent would otherwise reserve for the amount of the Carve-Out, thereby reducing the availability under the ABL DIP Facility.

[6] Indeed, "[t]he general rule is that post-petition administrative expenses and the general costs of reorganization ordinarily may not be charged to or against secured collateral. Rather, such expenses are normally chargeable only against the unburdened assets of the estate, 11 U.S.C. § 503, thus preserving for secured creditors the collateral securing the debtor's obligations." *In re Visual Indus., Inc.*, 57 F.3d 321, 324 (3d Cir. 1995) (citation omitted). Here, there are no unencumbered assets.

*Res. Ltd.*, No. 09-10785 (KJC) (Bankr. D. Del. June 4, 2009); *In re Linens Holding Co.*, No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008).

G.  **Prohibition On Marshaling Is Appropriate**

27.  The Committee has argued that this Court should not approve a limitation on marshaling. The Committee has no basis to object to this provision, as "unsecured creditors cannot invoke the equitable doctrine of marshaling," *In re Advanced Maktg. Servs., Inc.*, 360 B.R. 421, 427 (Bankr. D. Del. 2007), because it is basically a protection for junior *secured* creditors.  Moreover, there is nothing unreasonable about granting such a waiver, which again is customary. Courts in this District have granted such relief in other cases. *See, e.g.*, *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013); *In re Xerium Techs., Inc.*, No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Nov. 12, 2009); *In re Linens Holding Co.*, No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008).

H.  **The Credit Bidding Finding Is Customary And Does Not Prejudice The Committee**

28.  The Committee also makes the odd argument that the DIP Lenders and the Secured Lenders should not be able to credit bid in connection with a sale under section 363 of the Bankruptcy Code. This, however, is simply a recognition of the lenders' rights under section 363(k) of the Bankruptcy Code, as reaffirmed by the U.S. Supreme Court. *See* 11 U.S.C. § 363(k) ("At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property."); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 (2012). Furthermore, the Committee has not adduced any evidence supporting its assertion that allowing lenders to provide value by relinquishing valid claims would somehow prejudice the Debtors.

I.  **Granting the DIP Lenders Liens On Previously Unencumbered Assets and Avoidance Actions Is Appropriate**

29.     The Committee also takes issue with the collateral package provided to the DIP Lenders. Specifically, the Committee asserts, without citation to any authority, that the DIP Lenders "must not be granted any liens on or claims recoverable from the proceeds of the Debtors' unencumbered assets." Obj. ¶ 31. But as a representative of unsecured creditors, neither the Committee nor its constituents are entitled to any adequate protection, nor are they entitled to restrict the Debtors' ability to grant unencumbered property as collateral in exchange for the infusion of new capital. *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003). Moreover, the Bankruptcy Code explicitly authorizes debtors to obtain credit "secured by a lien on property of the estate that is not otherwise subject to a lien" when unsecured credit is unavailable to it. *See* 11 U.S.C. § 364(c)(2); *see also* Carmody Decl. ¶ 107. Courts routinely grant such liens in DIP orders. *See In re Gen. Growth Props., Inc.*, 412 B.R. 122, 130-31 (Bankr. S.D.N.Y. 2009) (granting a postpetition lien to the DIP lender on unencumbered assets of the estate pursuant to section 364(c)(2) without controversy); *In re U.S. Mineral Prods. Co.*, No. 01-2471 (JKF) 2005 WL 5887218, at *5 (Bankr. D. Del. Nov. 29, 2005) (same). Accordingly, it is indisputable that a lender providing new money to a debtor on a postpetition basis is entitled to receive liens on unencumbered assets of the estate. Nothing in the Committee's Objection changes this result.

30.     The Committee also contends that the proposed liens on avoidance actions are improper because, according to the Committee, avoidance actions "are not property of the Debtors' estates." Obj. ¶ 37. This allegation, made without citation to authority, is incorrect. *See* 11 U.S.C. § 550(a) (avoidance action recoveries are "for the benefit of the estate"); *SIPC v. Bernard L. Madoff Inv. Sec., LLC,* 460 B.R. 106, 114 (Bankr. S.D.N.Y. 2011) ("[p]roperty of the

estate therefore includes any cause of action the debtor had on the petition date; as well as avoidance actions created on the petition date."); *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002) (property of the estate includes all kinds of property, including causes of action).

31.     Here, the DIP Lenders have agreed to provide the Debtors with new money DIP Loans which entails risk on their part. A lien on avoidance actions protects the DIP Lenders and should naturally should go to a "new money provider." Further, because avoidance actions do in fact constitute property of the estate, which the Debtors are authorized to use in their business judgment, it is appropriate and reasonable to provide the DIP Lenders with a lien against the same as protection for providing DIP financing that provides substantial value to the Debtors' estates.

WHEREFORE, Silver Point respectfully requests that the Court enter an order granting the relief requested in the DIP Motion, overruling the Objection and all other objections thereto, and granting such other and further relief as may be just and proper.

DATED:    Wilmington, Delaware
April 10, 2015

          SKADDEN, ARPS, SLATE, MEAGHER
            & FLOM LLP

By:    */s/ Sarah E. Pierce*
   Sarah E. Pierce (I.D. No. 4648)
   One Rodney Square
   P.O. Box 636
   Wilmington, Delaware 19899-0636
   Telephone: (302) 651-3000
   Fax: (302) 651-3001

   - and -

   Ron E. Meisler
   Albert L. Hogan III (*pro hac vice pending*)
   Christopher M. Dressel
   Carl T. Tullson
   155 North Wacker Drive
   Chicago, Illinois 60606
   Telephone: (312) 407-0700
   Fax: (312) 407-0411

*Attorneys for Silver Point Finance, LLC and Standard Acquisition Holdings, LLC*