# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 23 |

**ORDER (I) ESTABLISHING SALE PROCEDURES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING THE MAXIMUM REIMBURSEMENT AMOUNT; (III) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (IV) APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES, AND AGREEMENTS; (V) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; AND (VI) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an order (the "Order") (i) approving the proposed auction and bidding procedures (the "Sale Procedures"), which are attached as Exhibit A hereto, for the potential sale of substantially all of the Debtors' assets (the "Transferred Assets"); (ii) approving a break-up fee (the "Break-Up Fee") and an expense reimbursement (the "Expense Reimbursement Amount"); (iii) establishing procedures for the assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iv) approving the

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, the Sale Procedures, or the Stalking Horse APA.

01:16973348.1

form and manner of notice of all procedures, protections, schedules, and agreements; and (v) scheduling a hearing (the "Sale Hearing") to approve such sale (the "Sale Transaction"); and the Court having considered the Motion, and the arguments of counsel made, and the evidence adduced, at the hearing on the Motion (the "Sale Procedures Hearing"); and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other interested parties; and upon the record of the Sale Procedures Hearing and the Chapter 11 Cases, and after due deliberation thereon, and good cause appearing therefore, it is hereby,

## FOUND, CONCLUDED AND DECLARED THAT:[3]

A. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, and 365. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9014.

B. The relief granted herein is in the best interests of the Debtors, their estates, and other parties in interest.

C. The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Sale Procedures, (ii) approve the Expense Reimbursement Amount in the maximum aggregate amount of $1.5 million (such amount, the "Maximum Reimbursement Amount"), but, for the avoidance of doubt, not to approve the Break-Up Fee or the full amount of the Expense Reimbursement Amount requested in the Stalking Horse APA, (iii) approve the

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

01:16973348.1

Assumption and Assignment Procedures, (iv) approve the form and manner of notice of the Motion, the Auction, and the Sale Hearing, and (v) set the date of the Auction and the Sale Hearing.

D. Due, sufficient, and adequate notice of the Sale Procedures Hearing, the relief requested in the Motion, the relief granted herein, the Sale Procedures, the Assumption and Assignment Procedures, and the Auction has been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

E. The Sale Procedures, substantially in the form attached hereto, and incorporated herein by reference as if fully set forth herein, are fair, reasonable, and appropriate; were negotiated in good faith by the Debtors and the Stalking Horse; and represent the best way to maximize the value of the Debtors' estates.

F. The Debtors have demonstrated a reasonable business justification for the payment of the Maximum Reimbursement Amount under the circumstances set forth in the Stalking Horse APA. The Maximum Reimbursement Amount (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtors' estates, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale Transaction and the efforts that have been and will be expended by the Stalking Horse, and (iv) has been negotiated by the parties and their respective advisors at arm's length and in good faith. The Maximum Reimbursement Amount is a material inducement for, and condition of, the Stalking Horse's entry into the Stalking Horse APA.

G. The Assumption and Assignment Procedures are reasonable and appropriate.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED, as set forth herein.

2. The Sale Procedures, as attached hereto, are approved and incorporated into this Order by reference, as though fully set forth herein. Accordingly, the failure to recite or reference any particular provision of the Sale Procedures shall not diminish the effectiveness of such provision, it being the intent of the Court that the Sale Procedures be authorized and approved in their entirety. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.

### The Bid Deadline

3. Except as expressly set forth herein or in the Sale Procedures, for a Bid to be a Qualified Bid, the following parties must receive such Bid in writing **on or before June 11, 2015 at 5:00 p.m. (prevailing Eastern Time)** or such earlier date as may be agreed to by the Debtors (the "Bid Deadline"): (a) counsel to the Debtors, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Michael A. Rosenthal, mrosenthal@gibsondunn.com) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com); (b) Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn: Andrew Torgove, andrew.torgove@lazard.com); (c) counsel to (i) the Prepetition Term Loan Agent and (ii) the Stalking Horse, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Kimberly DeBeers, kimberly.debeers@skadden.com and Ron Meisler, ron.meisler@skadden.com); (d) counsel to Bank of America, N.A., as administrative and collateral agent for those financial institutions identified as lenders in that certain Amended

01:16973348.1

and Restated Loan and Security Agreement dated August 1, 2013 (together with its successors in such capacity, assigns and designees, the "Pre-Petition ABL Agent"), and to Bank of America, N.A., as administrative and collateral agent for those financial institutions identified as lenders in that certain Post-Petition Loan and Security Agreement dated March 12, 2015 (together with its successors in such capacity, assigns and designees, the "ABL DIP Agent"), (i) Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303 (Attn: C. Edward Dobbs, ced@phrd.com and James S. Rankin, Jr., jsr@phrd.com) and (ii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, collins@rlf.com); (e) counsel to the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas New York, NY 10020 (Attn: Sharon L. Levine, slevine@lowenstein.com, and Wojciech F. Jung, wjung@lowenstein.com); and (f) the Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Washington, D.C. 20005 (Attn: Courtney L. Morgan, morgan.courtney@pbgc.gov), but only if such Bid includes the assumption of any liabilities associated with the Stanreco Retirement Plan sponsored by The Standard Register Company.

    4.    Notwithstanding anything herein to the contrary, (a) the Stalking Horse is deemed a Qualified Bidder for all purposes, (b) the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof (the "Second Lien Bidders") are deemed Qualified Bidders to the extent they elect to submit a bid at the Auction as provided in paragraph 15 hereof, and (c) those financial institutions identified as lenders in that certain Amended and Restated Loan and Security Agreement dated August 1, 2013 (together with their respective successors, assigns and designees, the "Pre-Petition ABL Lenders") and/or those financial institutions identified as lenders in that certain Post-Petition

Loan and Security Agreement dated March 12, 2015 (together with their respective successors, assigns and designees, the "ABL DIP Lenders," and together with Pre-Petition ABL Agent, Pre-Petition ABL Lenders and ABL DIP Agent, the "ABL Parties") are deemed Qualified Bidders to the extent that any of them elect to submit a bid at the Auction as provided in paragraph 15 hereof. In the event there are no other Qualified Bids, the Debtors shall accept the bid of the Stalking Horse.

### Notice of the Sale Transaction and the Sale Hearing

5. Within five (5) days after the entry of this Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtors (or their agents) shall serve the Motion, the Stalking Horse APA, this Order, and the Sale Procedures by first-class mail, postage prepaid upon (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Term Loan Agent; (c) counsel to the Pre-Petition ABL Agent; (d) counsel to the agents under the Debtors' debtor-in-possession financing facility; (e) counsel to the Committee; (g) all counterparties to the Assumed Contracts; (g) all entities with recorded claims, liens, interests, or encumbrances against the Debtors' right, title, and interest in the Transferred Assets and any other entities reasonably known to have asserted any such claim, liens, interests, or encumbrances; (h) all entities reasonably known to have expressed a bona fide interest in acquiring the Transferred Assets during the six (6) months preceding the date hereof; (i) the Internal Revenue Service; (k) the Office of the United States Attorney for the District of Delaware; and (j) all sales tax authorities of all states and the District of Columbia and all other taxing authorities or recording offices with a reasonably known interest in the relief requested in this Motion.

01:16973348.1

6. On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid the Sale Notice upon all other known creditors of the Debtors. The Debtors shall also post the Sale Notice and this Order on the website of the Debtors' claims and noticing agent, available at http://cases.primeclerk.com/standardregister.

7. The Debtors shall publish notice of the proposed Sale Transaction once in (a) the Dayton Business Journal and (b) the national edition of *The New York Times* or *USA Today*, as determined by the Debtors, in their sole discretion, and such local newspapers as the Debtors deem appropriate on the Mailing Date or as soon as practicable thereafter. Such publication notice shall be sufficient and proper notice of the Sale Transaction to any other interested parties whose identities are unknown to the Debtors.

8. Within one (1) day after the Auction (or if there are no other Qualified Bids, on the Bid Deadline), the Debtors shall file with this Court a notice that identifies the Successful Bidder(s) and the Back-Up Bidder(s) (in the case of an Auction) and provides notice that, at the Sale Hearing, the Debtors will seek to assume and assign the Assumed Contracts to the Successful Bidder effective upon the occurrence of the Closing.

9. The Debtors' proposed notices of (a) the Motion, (b) the proposed Sale Transaction, (c) the assumption and assignment of, and Cure Amounts for, the executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder, (d) the Stalking Horse APA, (e) the Successful Bidder, and (f) the Sale Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

01:16973348.1

10. The Sale Hearing to approve the sale of the Transferred Assets to the Successful Bidder shall be held on **June 17, 2015 at 10:00 a.m. (prevailing Eastern Time).**

11. Objections, if any, to the sale of the Transferred Assets to the Stalking Horse must be filed and served on counsel for the Debtors by **June 1, 2015 at 4:00 p.m. (prevailing Eastern Time).**

12. Objections, if any, to the selection of the Successful Bidder (if not the Stalking Horse) or to the conduct of the Auction must be filed and served on counsel for the Debtors by **June 16, 2015 at 4:00 p.m. (prevailing Eastern Time).**

### The Auction

13. The Auction shall take place on **June 15, 2015 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, or such other place and time as the Debtors shall notify all Qualified Bidders, the Stalking Horse and its counsel, the Prepetition Term Loan Agent, counsel for Pre-Petition ABL Agent and ABL DIP Agent, and the Committee.

14. Only the Debtors, the Prepetition Term Loan Agent, the Committee, the Stalking Horse, ABL Parties, and any other Qualified Bidder, in each case, along with their representatives and counsel, shall be entitled to attend and participate in the Auction (such attendance to be in person). Notwithstanding the foregoing, creditors may attend, but not participate in, the Auction, provided that they provide the Debtors written notice of their intention to attend the Auction on or before the Bid Deadline. Such written notice must be sent to the Debtors' counsel, Gibson, Dunn & Crutcher LLP (Attn: Michael A. Rosenthal, mrosenthal@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP (Attn: Michael R.

Nestor, mnestor@ycst.com), and to the Debtors' financial advisor, Lazard (Attn: Andrew Torgove, andrew.torgove@lazard.com).

15. The Stalking Horse and the other Qualified Bidders will be entitled to make any Bids at the Auction. Notwithstanding anything herein to the contrary, if at least one Qualified Bid (other than a Bid submitted by the Stalking Horse documented in the Stalking Horse APA) is submitted by the Bid Deadline (or a Bid that is otherwise determined by the Debtors in accordance with the Sale Procedures to be a Qualified Bid), (i) the Second Lien Bidders may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; <u>provided</u> that any Bid submitted by the Second Lien Bidders at the Auction must include (but need not be limited to) a credit bid of all or a portion of the obligations under the Prepetition Second Lien Credit Agreement and (ii) the Pre-Petition ABL Lenders (or the Pre-Petition ABL Agent on behalf thereof) and/or the ABL DIP Lenders (or the ABL DIP Agent on behalf thereof) may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; <u>provided</u> that any such Bid submitted by or on behalf of the Pre-Petition ABL Lenders and/or the ABL DIP Lenders at the Auction must include (but need not be limited to) a credit bid of all of the Obligations owing under (and as defined in) that certain Amended and Restated Loan and Security Agreement dated August 1, 2013, with respect to any such Bid by the Pre-Petition ABL Lenders, and all of the Obligations owing under (and as defined in) that certain Post-Petition Loan and Security Agreement dated March 12, 2015, with respect to any such Bid by the ABL DIP Lenders; and <u>provided further</u> that (i) the Stalking Horse and (ii) the Pre-Petition ABL Lenders (and the Pre-Petition ABL Agent on behalf thereof) and/or the ABL DIP Lenders (and the ABL DIP Agent on behalf thereof) must satisfy the conditions relating to the HSR Act (as defined in the Sale Procedures)

described in the Sale Procedures under the heading "Designation as Qualified Bidder" as a condition of submitting a Bid at the Auction. In the event the Second Lien Bidders or the ABL Parties elect to submit a Bid at the Auction as provided in this paragraph, such Bid may be submitted for the first time at the Auction in the form of a marked copy of the Stalking Horse APA. Any such Bid must satisfy the requirements set forth under the heading "Bid Requirements" in the Sale Procedures, except that (i) the Good Faith Deposit (as defined in the Sale Procedures) accompanying such Bid, which shall be payable in cash, shall be equal to the deposit provided for in the Stalking Horse APA and may be tendered simultaneously with the submission of such Bid at the Auction, and (ii) the Second Lien Bidders shall be entitled to rely on the deposit posted by the Stalking Horse in accordance with the Stalking Horse APA and shall not be required to make any further Good Faith Deposit. Within one (1) business day after the filing of the Notice of Successful and Back-Up Bidders, each Successful Bidder and Back-Up Bidder (except the Stalking Horse, the Second Lien Bidders, and the ABL Parties) shall provide the Supplemental Deposit to supplement each such Bidder's Good Faith Deposit and to be held subject to the same terms applicable to the Good Faith Deposit.

16. The Debtors and their professionals shall direct and preside over the Auction, and the Auction shall be transcribed. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Sale Procedures, and (c) has consented to the core jurisdiction of the Bankruptcy Court.

### Assumption and Assignment Procedures

17. No later than April 17, 2015 the Debtors shall file with the Court and serve on each party to a Assumed Contract a notice (the "Contract Notice") that shall (a) state the

01:16973348.1

cure amounts that the Debtors believe are necessary to assume such Assumed Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"); (b) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Transferred Assets at the conclusion of the Auction; (c) state the date of the Sale Hearing; and (d) state a deadline by which the non-Debtor party shall file an objection to the Cure Amount or to the assumption and assignment of the Assumed Contracts. The presence of a contract, lease, or agreement on the Contract Notice does not constitute an admission that such contract, lease, or agreement is an executory contract. The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to all contracts, leases, and agreements listed on the Contract Notice.

18.    Any objection to the Cure Amount or to assumption and assignment, including with respect to adequate assurance of future performance (a "Contract Objection"), must be filed with the Court and served on (a) the Debtors' counsel (Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Michael A. Rosenthal, mrosenthal@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com)), (b) counsel to (i) Stalking Horse and (ii) the Prepetition Term Loan Agent (Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Ron Meisler, ron.meisler@skadden.com and Christopher M. Dressel, christopher.dressel@skadden.com)), (c) counsel for Pre-Petition ABL Agent and ABL DIP Agent ((i) Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303 (Attn: C. Edward Dobbs, ced@phrd.com and James S. Rankin, Jr., jsr@phrd.com) and (ii) Richards Layton & Finger, One Rodney Square, 920 North

King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, collins@rlf.com)), and (d) counsel to the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas New York, NY 10020 (Attn: Sharon L. Levine, slevine@lowenstein.com, and Wojciech Jung, wjung@lowenstein.com), **so as to be received on or before May 8, 2015 at 4:00 p.m. (prevailing Eastern Time)**. Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Assumed Contract believes is required (in all cases with appropriate documentation in support thereof). If no Contract Objection is timely received, the Cure Amount set forth in the Contract Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document as of the date of the Contract Notice. The Contract Notice shall also provide that a Contract Objection to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors. If a Successful Bidder that is not the Stalking Horse prevails at the Auction, then the deadline to object to assumption and assignment (including on grounds of adequate assurance of future performance) shall be extended to the date of the Sale Hearing; <u>provided, however,</u> that the deadline to object to the Cure Amount shall not be extended.

    19. Unless a non-Debtor party to any executory contract or unexpired lease files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) forever barred from objecting to the Cure Amount and (b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the schedule to the Contract Notice, against the Debtors, the Stalking Horse, or any Successful Bidder or any other assignee of the relevant contract or lease.

20. Unless a non-Debtor party to any Assumed Contract files a timely objection to the assumption and assignment of the contract to the Stalking Horse or other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Stalking Horse or other Successful Bidder and will be forever barred from objecting to such assumption and assignment on account of Cure Amount, lack of adequate assurance, or any other grounds.

### The Stalking Horse APA

21. Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

22. Pursuant to sections 105, 363, 503, and 507 of the Bankruptcy Code, the Debtors are hereby authorized to pay the Maximum Reimbursement Amount pursuant to the terms and conditions set forth in the Stalking Horse APA, as modified and provided by this Order. Specifically, the Maximum Reimbursement Amount shall be paid to the Stalking Horse Bidder pursuant to sections 8.2 and 8.3 of the Stalking Horse APA and this Order. Notwithstanding anything to the contrary in the Stalking Horse APA, the Maximum Reimbursement Amount shall not exceed $1.5 million. For the avoidance of doubt, the Court does not approve the Break-Up Fee or the full amount of the Expense Reimbursement Amount requested in the Stalking Horse APA.

23. Upon entry of this Order, the Maximum Reimbursement Amount (if earned pursuant to the Stalking Horse APA) shall, until paid in full as set forth in the Stalking Horse APA, be entitled to superpriority administrative expense status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, senior to all other general administrative

01:16973348.1

expense claims and superpriority administrative expense claims granted such status pursuant to sections 503(b)(1) and 507(a)(2), but junior in all respects to the Debtors' debtor-in-possession credit facilities. The Debtors' obligation to pay the Maximum Reimbursement Amount pursuant to the terms of the Stalking Horse APA, as modified and provided by this Order, shall survive termination of the Stalking Horse APA.

### Related Relief

24. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

25. This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Order that relate to Maximum Reimbursement Amount shall inure to the benefit of the Stalking Horse and its affiliates, successors, and assigns.

26. Each of the Prepetition First Lien Lenders, the Second Lien Lenders, the Pre-Petition ABL Lenders, and the lenders providing postpetition financing, pursuant to the interim order approving postpetition financing [Docket No. 59] (the "Interim DIP Order") and under such final order thereon (the "Final DIP Order"), shall have standing to object to the sale of the Transferred Assets or any portion thereof (including the conduct of the Auction and interpretation of the Sale Procedures) at the Sale Hearing.

27. Nothing in this Order or in the Sale Procedures is intended or shall be construed to amend, modify or otherwise alter the third-party challenge rights pursuant to paragraph 27 of the Interim DIP Order and paragraph 28 of the Final DIP Order.

28. Nothing in this Order or in the Sale Procedures is intended or shall be construed to amend, modify or otherwise alter the obligations, rights and remedies of each of the

01:16973348.1

parties to (i) that certain Intercreditor Agreement dated as of August 1, 2013, among the Pre-Petition ABL Agent, the Term Loan Agents (as defined therein), and certain of the Debtors (as at any time amended, modified, restated or supplemented, the "<u>Pre-Petition ABL/Term Intercreditor Agreement</u>"); (ii) that certain Intercreditor Agreement dated as of August 1, 2013, among the Term Administrative Agents (as defined therein), and the other parties thereto (as the same may be amended, supplemented, or otherwise modified, renewed or replaced from time to time, the "<u>Pre-Petition Term Intercreditor Agreement</u>"); and (iii) that certain ABL/TL DIP Intercreditor Agreement dated as of March 12, 2015, among the ABL DIP Agent, the Term DIP Agent (as defined therein), and the Debtors (as at any time amended, modified, restated or supplemented, the "<u>DIP Intercreditor Agreement</u>," and together with the Pre-Petition ABL/Term Intercreditor Agreement and the Pre-Petition Term Intercreditor Agreement, the "<u>Intercreditor Agreements</u>"). Each of the parties to the Intercreditor Agreements expressly reserves all such rights and remedies.

29. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

30. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including any matter, claim or dispute arising from or relating to the Maximum Reimbursement Amount, the Stalking Horse APA, and the Sale Procedures.

Dated: April 15, 2015
Wilmington, Delaware

_____
BRENDAN LINEHAN SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE