## SALE PROCEDURES

Set forth below are the sale procedures (the "Sale Procedures") to be employed with respect to the potential sale (the "Sale") of substantially all of the assets (the "Transferred Assets") of The Standard Register Company and those affiliates that are debtors and debtors in possession (collectively, the "Debtors"), in jointly administered Case No.15-10541 (BLS) (the "Chapter 11 Cases") under title 11 of the United States Code (the "Bankruptcy Code") pending in the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to the Sale Procedures Order (as defined below), the Court has approved Standard Acquisition Holdings, LLC, formed by Silver Point Finance, LLC, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement (as defined below), as directed by the "Required Lenders" under the Prepetition First Lien Credit Agreement (as defined below), as the buyer and stalking horse bidder (the "Stalking Horse") for the Transferred Assets, as set forth more fully in that certain Asset Purchase Agreement among the Stalking Horse and the Debtors, dated as of March 12, 2015 (the "Stalking Horse APA").

On March 12, 2015, the Debtors filed a motion pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order (a) approving and authorizing (i) the Sale Procedures, (ii) certain Bid Protections (as defined below) for the Stalking Horse, and (iii) the form and manner of notice of the Sale Hearing (as defined below); (b) approving and authorizing (i) the Sale of the Transferred Assets free and clear of all liens, claims, and encumbrances, (ii) the Stalking Horse APA, (iii) the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting related relief (the "Sale Motion").[1]

On April 15, 2015, the Court entered an order (the "Sale Procedures Order") approving the Sale Procedures. The Sale Procedures Order set **June 17, 2015** as the date the Court will conduct the Sale Hearing. At the Sale Hearing, the Debtors will seek entry of an order (the "Sale Order") authorizing and approving the Sale of the Transferred Assets to the Successful Bidder and, if such Successful Bidder fails to consummate the Sale within sixty (60) days after entry of the Sale Order, to the Back-Up Bidder (as defined below), without further order of the Court.

In addition to sale of the Transferred Assets through a single transaction, the Debtors reserve the right to (a) seek approval of the Sale of the Transferred Assets through separate transactions that, either individually or in any combination, provide higher or otherwise better value than sale of the Transferred Assets through a single transaction, after consultation with (i) Silver Point Finance, LLC, as administrative agent (the "Prepetition Term Loan Agent") under that certain First Lien Credit Agreement, dated as of August 1, 2013 (the "Prepetition First Lien Credit Agreement" and the lenders thereunder, the "Prepetition First Lien Lenders"), and that certain Second Lien Credit Agreement, dated as of August 1, 2013 (the "Prepetition Second

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or, if not defined therein, in the Stalking Horse APA.

Lien Credit Agreement"),[2] (ii) Bank of America, N.A., as administrative and collateral agent for those financial institutions identified as lenders in that certain Amended and Restated Loan and Security Agreement dated August 1, 2013 (together with its successors in such capacity, assigns and designees, "Pre-Petition ABL Agent"), and as administrative and collateral agent for those financial institutions identified as lenders in that certain Post-Petition Loan and Security Agreement dated March 12, 2015 (together with its successors in such capacity, assigns and designees, "ABL DIP Agent"), and (iii) the statutorily appointed official committee of unsecured creditors (the "Committee" and, together with the Prepetition Term Loan Agent, the Pre-Petition ABL Agent, and the ABL DIP Agent, the "Consultation Parties"), and (b) to waive or modify some of the Sale Procedures to the extent such waiver or modification is in the best interests of the Debtors' estates as determined by the Debtors, in their discretion, but after consultation with the Consultation Parties.

## STALKING HORSE APA

On March 12, 2015, the Debtors entered into the Stalking Horse APA pursuant to which the Stalking Horse proposes to acquire all right, title and interest of the Debtors in, to or under substantially all Transferred Assets (including Intellectual Property) of the Debtors of every kind and description, wherever located, real, personal or mixed, tangible or intangible, to the extent owned, leased, licensed, used or held for use in or relating to the Business, as the same shall exist on the Closing Date (but, for the avoidance of doubt, excluding any Excluded Assets).

Pursuant to the Stalking Horse APA, the Stalking Horse will provide the Debtors with consideration for the Transferred Assets in the aggregate amount of the Purchase Price and the assumption of Assumed Liabilities. The Sale Procedures Order, pursuant to which the Court approved the Sale Procedures, entitles the Stalking Horse to an expense reimbursement under the terms of the Stalking Horse APA (the "Expense Reimbursement Amount") up to a maximum amount of $1.5 million (such cap, the "Reimbursement Cap"). The Expense Reimbursement Amount, as modified and limited by the Reimbursement Cap, is referred to herein as the "Maximum Reimbursement Amount." The Maximum Reimbursement Amount is intended to provide an incentive for and to compensate the Stalking Horse for entering into the Stalking Horse APA with knowledge of the risks that arise from its participation in the subsequent bidding process, and absent which the Stalking Horse would not have entered into the Stalking Horse APA. The Maximum Reimbursement Amount shall be payable on the terms and conditions set forth in the Stalking Horse APA and the Sale Procedures Order. The transaction contemplated by the Stalking Horse APA is subject to competitive bidding, as set forth herein, and approval by the Court pursuant to sections 363 and 365 of the Bankruptcy Code.

## BID DEADLINE

All offers, solicitations, or proposals (each, a "Bid") must be submitted in writing on or before June 11, 2015 (the "Bid Deadline"). To properly submit a Bid, a Qualified Bidder (as

---

[2] The Prepetition First Lien Credit Agreement and the Prepetition Second Lien Credit Agreement are collectively referred to herein as the "Prepetition Term Loan Credit Agreements" and the lenders thereunder the "Prepetition Term Loan Lenders."

defined below) must deliver written copies of its Bid to the following parties (collectively, the "Notice Parties") by the Bid Deadline: (a) proposed counsel to the Debtors, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Michael A. Rosenthal, mrosenthal@gibsondunn.com) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com); (b) Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn: Andrew Torgove, andrew.torgove@lazard.com); (c) counsel to (i) the Prepetition Term Loan Agent and (ii) the Stalking Horse, Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Kimberly DeBeers, kimberly.debeers@skadden.com and Ron Meisler, ron.meisler@skadden.com); (d) counsel to the Pre-Petition ABL Agent and ABL DIP Agent, (i) Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303 (Attn: C. Edward Dobbs, ced@phrd.com and James S. Rankin, Jr., jsr@phrd.com) and (ii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, collins@rlf.com); (e) counsel to the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas New York, NY 10020 (Attn: Sharon L. Levine, slevine@lowenstein.com, and Wojciech F. Jung, wjung@lowenstein.com); and (f) the Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Washington, D.C. 20005 (Attn: Courtney L. Morgan, morgan.courtney@pbgc.gov), but only if such Bid includes the assumption of any liabilities associated with the Pension Plan (as defined below). Unless determined otherwise by the Debtors, after consultation with the Consultation Parties, a Bid delivered after the Bid Deadline shall not constitute a Qualified Bid.

Notwithstanding anything herein to the contrary, if at least one Qualified Bid (other than the Bid submitted by the Stalking Horse documented in the Stalking Horse APA (such Bid, the "Stalking Horse Bid") is submitted by the Bid Deadline (or a Bid that is otherwise determined by the Debtors in accordance with these Sale Procedures to be a Qualified Bid), (i) the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof (the "Second Lien Bidders") may, without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; provided that any Bid submitted by the Second Lien Bidders at the Auction may include (but need not be limited to) a credit bid of all or a portion of the obligations under the Prepetition Second Lien Credit Agreement; and (ii) those financial institutions identified as lenders in that certain Amended and Restated Loan and Security Agreement dated August 1, 2013 (together with their respective successors, assigns and designees, the "Pre-Petition ABL Lenders"), or the Pre-Petition ABL Agent on behalf thereof, and/or those financial institutions identified as lenders in that certain Post-Petition Loan and Security Agreement dated March 12, 2015 (together with their respective successors, assigns and designees, the "ABL DIP Lenders," and together with the Pre-Petition ABL Agent, the Pre-Petition ABL Lenders and ABL DIP Agent, the "ABL Parties"), or ABL DIP Agent on behalf thereof, may, without having satisfied the requirements for a Qualified Bidder set forth below and without having submitted a Qualified Bid by the Bid Deadline, participate in, and submit a Bid at, the Auction; provided that any such Bid submitted by or on behalf of Pre-Petition ABL Lenders and/or ABL DIP Lenders at the Auction must include (but need not be limited to) a credit bid of all of the Obligations owing under (and as defined in) that certain Amended and Restated Loan and Security Agreement dated August 1, 2013, with respect to any such Bid by or on behalf of Pre-Petition ABL Lenders, and all of the Obligations owing

under (and as defined in) that certain Post-Petition Loan and Security Agreement dated March 12, 2015, with respect to any such Bid by or on behalf of ABL DIP Lenders; and <u>provided</u> further that the Pre-Petition ABL Lenders (and Pre-Petition ABL Agent on behalf thereof) and/or ABL DIP Lenders (and ABL DIP Agent on behalf thereof) must satisfy the conditions relating to the HSR Act (as defined below) described under the heading "Designation as Qualified Bidder" as a condition of submitting a Bid at the Auction. In the event the Second Lien Bidders or the ABL Parties elect to submit a Bid at the Auction as provided in this section, such Bid may be submitted for the first time at the Auction in the form of a marked copy of the Stalking Horse APA. Any such Bid must satisfy the requirements set forth under the heading "Bid Requirements" below, except that (i) in the case of the ABL Parties, the Good Faith Deposit (as defined below) accompanying such Bid, which shall be payable in cash, shall be equal to the deposit provided for in the Stalking Horse APA and may be tendered simultaneously with the submission of such Bid at the Auction, and (ii) the Second Lien Bidders shall be entitled to rely on the deposit posted by the Stalking Horse in accordance with the Stalking Horse APA and shall not be required to make any further Good Faith Deposit.

## PARTICIPANT REQUIREMENTS

To participate in the process detailed herein and to otherwise be considered for any purpose hereunder, each Bid and each bidder (a "<u>Bidder</u>") submitting a Bid must be determined by the Debtors to have satisfactorily provided the Debtors with each of the following (unless such requirement, other than the "Confidentiality Agreement" requirement set forth in paragraph (c) below, after consultation with the Consultation Parties, is waived by the Debtors) on or before the Bid Deadline (the "<u>Participant Requirements</u>"):

(a) <u>Identification of Bidder</u>. Identification of the Bidder and/or any of the Principals (as defined below), corporate officers or other representatives that are authorized to appear for and act on behalf of the Bidder with respect to the contemplated transaction.

(b) <u>Corporate Authority</u>. Written evidence of the Bidder's authority to enter into the contemplated transaction and submit a Bid as well as the Bidder's acknowledgement and acceptance of the terms set forth in the Sale Procedures. In the event that the Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction (an "<u>Acquisition Entity</u>"), then the Bidder must furnish written evidence, reasonably acceptable to the Debtors, of the approval of the contemplated transaction by the equity holder(s) or members of such Bidder (the "<u>Principals</u>").

(c) <u>Confidentiality Agreement</u>. An executed confidentiality agreement (the "<u>Confidentiality Agreement</u>") in form and substance acceptable to the Debtors and their counsel.

(d) <u>Proof of Financial Ability to Perform</u>. Written evidence, reasonably acceptable to the Debtors, that the Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance

of all obligations to be assumed in such contemplated transaction. Such information may include, among other things, the following:

(i) the Bidder's or, in the case of an Acquisition Entity, the Principals', current financial statements (audited if they exist);

(ii) contact names and numbers for verification of financing sources;

(iii) evidence of the Bidder's or Principals' internal resources and written evidence of a commitment for debt or equity funding that is needed to close the contemplated transaction; and

(iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the contemplated transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

## DESIGNATION AS QUALIFIED BIDDER

A "Qualified Bidder" is a Bidder that satisfies the Participant Requirements and that the Debtors determine (a) has submitted by the Bid Deadline a Bid that constitutes a bona fide offer that would result in a higher or otherwise better bid as compared to the Stalking Horse APA and (b) is able to consummate the Sale as proposed in the Purchase Agreement (as defined below) if selected as a Successful Bidder or a Back-Up Bidder.

As soon as practicable after the Debtors receive from a Bidder the information required under paragraphs (a) through (d) above related to Participant Requirements, the Debtors shall determine whether such Bidder is a Qualified Bidder and shall advise such Bidder of their determination. Notwithstanding anything herein to the contrary, (a) the Stalking Horse is deemed a Qualified Bidder for all purposes, (b) the Prepetition Second Lien Lenders (or any assignee(s) or designee(s) thereof) and the Prepetition Term Loan Agent on behalf thereof are deemed Qualified Bidders to the extent they elect to submit a Bid at the Auction as provided in the section above under the heading "Bid Deadline," and (c) the Pre-Petition ABL Lenders (and Pre-Petition ABL Agent on behalf thereof) and ABL DIP Lenders (and ABL DIP Agent on behalf thereof) are deemed Qualified Bidders to the extent they elect to submit a Bid at the Auction as provided in the section above under the heading "Bid Deadline."

Each Qualified Bidder must, at its sole cost and expense, make the initial filing required to be made under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") on or before June 11, 2015. Unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, any Qualified Bidder, including the Stalking Horse but not including the Second Lien Bidders, that fails to do so shall automatically cease to be a Qualified Bidder as of such date.

## ACCESS TO DUE DILIGENCE MATERIALS

The Debtors have designated Lazard, 600 Fifth Avenue, Suite 800, New York, NY 10020 (Attn: Andrew Torgove, andrew.torgove@lazard.com) to coordinate all reasonable requests for additional information and due diligence access from (a) Qualified Bidders and (b) potential Bidders who submit to the Debtors (i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors and (ii) reasonable evidence demonstrating such party's financial capability to consummate the Sale of the Transferred Assets. In addition, the Debtors reserve the right not to provide due diligence access to any potential Bidder that the Debtors, after consultation with the Consultation Parties, conclude in their reasonable business judgment is not likely to become a Qualified Bidder. The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Bidders in connection with the sale of the Transferred Assets. Due diligence information will be furnished to the Stalking Horse, Pre-Petition ABL Agent (for the benefit of and use by Pre-Petition ABL Lenders), ABL DIP Agent (for the benefit of and use by ABL DIP Lenders), and other Qualified Bidders through an electronic data room. Fees and expenses incurred by Qualified Bidders other than the Stalking Horse (including, for the avoidance of doubt, the Pre-Petition ABL Agent (for the benefit of and use by Pre-Petition ABL Lenders), and ABL DIP Agent (for the benefit of and use by ABL DIP Lenders)) in accessing and reviewing such due diligence information shall be borne by such parties. Furthermore, the Debtors shall not allow any party to perform any Phase II Environmental Site Assessment ("Phase II"), except after consultation with the Consultation Parties, and the costs of any such Phase II shall be borne solely by the party performing it. If the Debtors furnish any material information related to the Debtors not previously given to the Stalking Horse, then the Debtors shall place such information in the data room. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline. Notwithstanding anything herein to the contrary, until such time as a party has submitted a Qualified Bid and is deemed to be a Qualified Bidder, the Debtors, in consultation with the Consultation Parties, reserve the right to withhold information or restrict access to certain materials in any data room if providing such information or materials to such party would, in the Debtors' business judgment, after consultation with the Consultation Parties, put the Debtors at a competitive disadvantage. The Debtors reserve the right to provide such information on an "advisors' eyes only" basis.

## DUE DILIGENCE FROM BIDDERS

Each Bidder shall comply with all reasonable requests for information from the Debtors regarding such Bidder and its contemplated transaction. Failure by a Bidder to provide such information will be a basis for the Debtors to deem that Bidder not to be a Qualified Bidder and to prohibit that Bidder from participating in any Auction.

## BIDDING PROCESS

The Debtors shall: (a) determine whether a Bidder is a Qualified Bidder; (b) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions herein; (c) receive offers from Qualified Bidders; and (d) negotiate any offers made to purchase the Transferred Assets. Subject to the Sale Procedures Order, the Debtors shall have the right to adopt such other rules for the Sale Procedures (including rules that may depart from

those set forth herein), that, in the Debtors' reasonable discretion, after consultation with the Consultation Parties, will better promote the goals of the Sale Procedures. With respect to all material decisions that the Debtors have the power to make under these Sale Procedures, the Debtors will confer with the Consultation Parties.

## BID REQUIREMENTS

Except as set forth above under the headings "Bid Deadline" and "Designation as Qualified Bidder," to participate in the Auction (as defined below), a Qualified Bidder must submit a Bid by the Bid Deadline that the Debtors determine satisfies each of the following conditions (each such Bid, a "Qualified Bid"):

(a) <u>Written Submission of Purchase Agreement and Commitment to Close</u>. The Debtors shall file with the Court the Stalking Horse APA, which shall be used by each Qualified Bidder in submitting its respective Purchase Agreement along with the Marked Agreement (as defined below). Each Qualified Bid must be in writing and include: (i) a purchase agreement signed by the Qualified Bidder (the "<u>Purchase Agreement</u>"); (ii) a blackline reflecting the Qualified Bidder's proposed changes to the Stalking Horse APA (the "<u>Marked Agreement</u>"); and (iii) a written commitment demonstrating to the satisfaction of the Debtors that the Qualified Bidder will be able to close the transaction proposed in its Purchase Agreement on the terms and conditions set forth therein.

(b) <u>Identification of Contracts and Leases to be Assumed</u>. Each Qualified Bid must include a comprehensive list of the Debtors' executory contracts and unexpired leases (collectively, the "<u>Assumed Contracts</u>") that the applicable Qualified Bidder desires to assume, and a packet of information, including financial information, that will be provided to the non-Debtor counterparties to such Contracts and Leases sufficient to demonstrate adequate assurance of future performance.

(c) <u>Cure Amounts of Assumed Contracts</u>. Each Qualified Bid must include a Purchase Agreement that provides for the payment by the Qualified Bidder of all Cure Amounts (as defined below) associated with the Assumed Contracts.

(d) <u>Accrued Payments to Employees</u>. Each Qualified Bid must provide, as to each employee of the Debtors, for either (a) the hiring of such employee and the assumption of all obligations of the Debtors, other than those funded through the Budget (as provided in the interim order approving postpetition financing [Docket No. 59] and in such final order thereon, such budget, the "<u>DIP Budget</u>"), to such employee relating to postpetition, unpaid wages, salaries, commissions and other amounts, earned or accrued by or in respect of such employee, or (b) payment to the Debtors, in cash, for the amounts owed by the Debtors, other than those funded through the DIP Budget, to such employee relating to postpetition, unpaid wages, salaries, commissions and other amounts, earned or accrued by or in respect of such employee.

(e) <u>Irrevocable</u>. Each Qualified Bid must be irrevocable until the Debtors have designated a Qualified Bid as the Successful Bid (as defined below) and the Back-Up Bid (as defined below) (the "<u>Termination Date</u>"). The Back-Up Bid(s) will remain open until the earlier of (i) the Closing Date of the Sale with the Successful Bidder(s) or (ii) the sixtieth (60th) day after entry of the Sale Order; <u>provided</u>, <u>however</u>, that, if the Debtors deliver the Back-Up Notice during such 60-day period, the Back-Up Bidder shall have the obligations set forth in paragraph (i)(B) below.

(f) <u>Contingencies</u>. No Qualified Bid may be conditioned on obtaining financing, regulatory contingencies (other than on the condition that any applicable waiting period under the HSR Act be satisfied, which may occur subsequent to the Bid Deadline, provided that the Bidder makes the initial filing under the HSR Act by the Bid Deadline set forth above), any internal approval, or on the outcome or review of due diligence; <u>provided</u>, <u>however</u>, that the timing and likelihood of receiving regulatory approval will be a consideration in determining the highest and best Bid.

(g) <u>Not Burdensome</u>. The terms of the Sale under the Purchase Agreement must not be materially more burdensome or conditional than the terms of the Sale under the Stalking Horse APA.

(h) <u>Same or Better Terms</u>. Each Bid must be on terms that, in the Debtors' business judgment and after consulting with the Consultation Parties, are the same as or better than the terms of the Stalking Horse APA and shall satisfy the "Minimum Initial Overbid" requirements set forth in paragraph (m) below.

(i) <u>Closing</u>. The Purchase Agreement must provide that (A) (1) the Closing Date shall occur on or before August 16, 2015, unless otherwise agreed to by the Debtors, after consultation with the Consultation Parties, and (2) within one (1) business day after the Auction has concluded, the Qualified Bidder, if deemed the Successful Bidder, shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made, including, but not limited to, the applicable Purchase Agreement; and (B) if the Qualified Bidder is deemed the Back-Up Bidder, then (1) the Closing Date shall occur within five (5) business days after the Debtors provide written notice of their intent to close the Sale under the Purchase Agreement (the "<u>Back-Up Notice</u>") and (2) within one (1) business day after the Debtors send the Back-Up Notice, the Qualified Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Back-Up Bid was made, including, but not limited to, the applicable Purchase Agreement.

(j) <u>Financing Sources</u>. Each Qualified Bid must contain written evidence of a firm commitment for financing or other evidence of the financial wherewithal of such Qualified Bidder (with appropriate contact information for such financing sources), which the Debtors reasonably believe provides the Qualified Bidder

        with the ability to consummate the Sale and provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

  (k)    <u>No Fees Payable to Qualified Bidder</u>.  With the exception of the Qualified Bid submitted by the Stalking Horse, no Qualified Bid may request or otherwise entitle the Qualified Bidder to any break-up fee, expense reimbursement amount or similar type of payment.  Further, by submitting a Qualified Bid, a Qualified Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Sale Procedures.[3]

  (l)    <u>Good Faith Deposit</u>.  Each Qualified Bid other than the Stalking Horse Bid must be accompanied by a deposit (the "<u>Good Faith Deposit</u>") paid in cash or by certified check payable to the order of The Standard Register Company in the amount of $10 million (which shall be supplemented by the Supplemental Deposit in the amount of $5 million by each Successful Bidder and Back-Up Bidder (other than the Stalking Horse, the Second Lien Bidders, and the ABL Parties), as described under the heading "Acceptance of Successful Bid," no later than one (1) business day after the filing of the Notice of Successful and Back-Up Bidders, also as described under the heading "Acceptance of Successful Bid"), to be held in escrow until (i) in the case of a Qualified Bidder other than the Successful Bidder or the Back-Up Bidder, the Termination Date and (ii) in the case of the Back-Up Bidder, until the earlier of (A) the Closing Date of the Sale with the Successful Bidder(s) or (B) the sixtieth (60th) day after entry of the Sale Order (unless, during such 60-day period, the Debtors deliver the Back-Up Notice, in which case the Good Faith Deposit of the Back-Up Bidder shall be treated as described under the heading "Return of Good Faith Deposit" below).  The Stalking Horse APA governs the terms of the Good Faith Deposit that must accompany the Stalking Horse APA.  The Second Lien Bidders shall be entitled to rely on the deposit posted by the Stalking Horse in accordance with the Stalking Horse APA and shall not be required to make any further Good Faith Deposit or Supplemental Deposit.  The Good Faith Deposit accompanying the Bid of the Pre-Petition ABL Lenders (and Pre-Petition ABL Agent on behalf thereof) and/or ABL DIP Lenders (and ABL DIP Agent on behalf thereof) or the Second Lien Bidders shall be equal to the deposit provided for in the Stalking Horse APA and may be tendered simultaneously with the submission of such Bid at the Auction.

  (m)    <u>Minimum Initial Overbid</u>.  Any Qualified Bid must provide for a purchase price with respect to the Sale that is in an amount not less than the sum of (i) the amount of the Purchase Price and the assumption of Assumed Liabilities, as defined in the Stalking Horse APA, (ii) the Maximum Reimbursement Amount,

---

[3] Notwithstanding anything to the contrary in the Stalking Horse APA, a Qualified Bidder must remove any provisions relating to a break-up fee, expense reimbursement, or similar type of payment from any Purchase Agreement submitted with its Bid in order for such Bid to be deemed a Qualified Bid.

and (iii) the amount of the Minimum Bid Increment (as defined below) (collectively, the "Minimum Initial Overbid"), to be paid in cash or wire transfer on the Closing Date.

Without limiting the foregoing, any Qualified Bid must include cash consideration payable on the Closing Date in an aggregate amount sufficient to provide for, and earmarked for the purposes, of (x) Full Payment[4] of all of the Obligations under (and as defined in) the Pre-Petition ABL Loan Agreement and all of the Obligations under (and as defined in) the ABL DIP Loan Agreement, and (y) Full Payment of all of the Obligations under (and as defined in) the Prepetition First Lien Credit Agreement and all of the Obligations under (and as defined in) the Debtors' Super-Priority Priming Debtor In Possession Delayed Draw Term Loan Credit Agreement dated as of March 12, 2015; provided, however, that clause (x) above shall not apply to the Bid of the Pre-Petition ABL Lenders (and Prepetition ABL Agent on behalf thereof) and/or ABL DIP Lenders (and ABL DIP Agent on behalf thereof), and clause (y) above shall not apply to the Bid of the Stalking Horse and/or Second Lien Bidders.

(n) Purchase of Transferred Assets and Assumption of Liabilities. The Auction is intended to be an auction of all or substantially all of the Transferred Assets. Although a Qualified Bidder may submit a bid for less than substantially all of the Transferred Assets, no such bid shall be deemed a Qualified Bid unless (i) the consideration set forth in such bid or (ii) the consideration set forth in such bid plus the consideration set forth in any other bid(s) received by the Debtors for the balance of the Transferred Assets equals or exceeds the amount of the Minimum Initial Overbid.

(o) Disclosure. Each Qualified Bid must fully disclose the identity of each entity that will be bidding for the Transferred Assets or otherwise participating in connection with such Qualified Bid, the complete terms of any such participation, and any connections or agreements between such entity and the Debtors and their affiliates (as defined in section 101 of the Bankruptcy Code) and/or any officer, director, or direct or indirect equity security holder of any Debtor and any of its affiliates (as defined in Bankruptcy Code section 101).

(p) Pension Plan. Each Qualified Bid must state whether or not the Qualified Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with the Stanreco Retirement Plan, sponsored by The Standard Register Company (the "Pension Plan").

---

[4] For the purposes of these Sale Procedures, the term "Full Payment" means, as to the obligations described in this paragraph, full and final payment of such indebtedness in cash, the cash collateralization of any contingent obligations as and to the extent required by the applicable loan documents, termination of any commitments to lend under any of the applicable loan documents, and, in the case of the DIP obligations, termination of the relevant DIP facility.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Bidder shall be refunded its Good Faith Deposit within three (3) business days after such determination.

Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors, and the Bidder submitting that Bid will not be permitted to participate in the Auction (as defined below); provided, however, that if the Debtors receive a Bid that is not a Qualified Bid, the Debtors, after consultation with the Consultation Parties, may provide such Qualified Bidder with the opportunity to remedy any deficiencies, which remedy must be implemented no later than forty-eight (48) hours after the Bid Deadline.

## ADEQUATE ASSURANCE

No later than April 17, 2015 the Debtors shall file with the Court and serve on each party to a Assumed Contract a notice (the "Contract Notice") that shall (a) state the Cure Amounts that the Debtors believe are necessary to assume such Assumed Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"); (b) notify the non-Debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Transferred Assets at the conclusion of the Auction; (c) state the date of the Sale Hearing; and (d) state a deadline by which the non-Debtor party shall file an objection to the Cure Amount or to the assumption and assignment of the Assumed Contracts. The presence of a contract, lease, or agreement on the Contract Notice does not constitute an admission that such contract, lease, or agreement is an executory contract. The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to all contracts, leases, and agreements listed on the Contract Notice.

Any objection to the Cure Amount or to assumption and assignment, including with respect to adequate assurance of future performance (a "Contract Objection"), must be filed with the Court and served on (a) the Debtors' counsel (Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker, bbecker@gibsondunn.com and Michael A. Rosenthal, mrosenthal@gibsondunn.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19081 (Attn: Michael R. Nestor, mnestor@ycst.com)), (b) counsel to (i) Stalking Horse and (ii) the Prepetition Term Loan Agent (Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Ron Meisler, ron.meisler@skadden.com and Christopher M. Dressel, christopher.dressel@skadden.com)), (c) counsel to Pre-Petition ABL Agent and ABL DIP Agent, (i) Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303 (Attn: C. Edward Dobbs, ced@phrd.com and James S. Rankin, Jr., jsr@phrd.com) and (ii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, collins@rlf.com), and (d) counsel to the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas New York, NY 10020 (Attn: Sharon L. Levine, slevine@lowenstein.com, and Wojciech F. Jung, wjung@lowenstein.com), so as to be received on or before May 8, 2015 at 4:00 p.m. (prevailing Eastern Time). Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Assumed Contract believes is required (in all cases with appropriate documentation in support thereof). If no Contract Objection is timely received, the Cure Amount set forth in the Contract Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document as of the date of the Contract Notice. The Contract Notice shall also provide that a Contract Objection to any Cure Amount or to assumption and assignment will be heard at the

Sale Hearing or at a later hearing, as determined by the Debtors. If a Successful Bidder that is not the Stalking Horse prevails at the Auction, then the deadline to object to assumption and assignment (including on grounds of adequate assurance of future performance) shall be extended to the date of the Sale Hearing; provided, however, that the deadline to object to the Cure Amount shall not be extended.

Unless a non-Debtor party to any executory contract or unexpired lease, files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) forever barred from objecting to the Cure Amount and (b) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the schedule to the Cure Notice, against the Debtors, the Stalking Horse, or any Successful Bidder or any other assignee of the relevant contract or lease.

Unless a non-Debtor party to any Assumed Contract files a timely objection to the assumption and assignment of the contract to the Stalking Horse or other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Stalking Horse or other Successful Bidder and will be forever barred from objecting to such assumption and assignment on account of Cure Amount, lack of adequate assurance, or any other grounds.

Non-Debtor parties to the Assumed Contracts may request, in writing, a copy of the information that is provided to the Debtors by a Qualified Bidder in connection with the applicable Qualified Bid to demonstrate adequate assurance of future performance by such Qualified Bidder. Such requests may be directed to the Debtors via electronic mail to Michael A. Rosenthal, Esq. (mrosenthal@gibsondunn.com), Michael Nestor, Esq. (mnestor@ycst.com), and Andrew Torgove (andrew.torgove@lazard.com). Any such requests from non-Debtor parties to Assumed Contracts (collectively, the "Contract Notice Parties") received on or before June 11, 2015 that provide an electronic mail address where such information may be sent will receive such information via electronic mail on or before June 15, 2015. Any such requests received after June 11, 2015 will be sent to such Contract Notice Parties on or before the second business day after receipt of such request by the Debtors. Notwithstanding the forgoing, any requests for adequate assurance of future performance that require the provision of confidential and/or proprietary information of a Qualified Bidder will be provided to a Contract Notice Party to the applicable Assumed Contract, subject to execution by the non-Debtor counterparty of a confidentiality agreement, in a form acceptable to the Debtors and the applicable Qualified Bidder providing the requested information.

## CREDIT BIDDING

Qualified Bidders holding allowed secured claims against the Debtors may make one or more credit bids of some or all of their allowed secured claims. Without limiting the foregoing, (a) the Stalking Horse may (i) credit bid up to the full amount of the outstanding obligations under the Prepetition First Lien Credit Agreement, and in addition, (ii) credit bid, at each round of the Auction, the Maximum Reimbursement Amount, (b) the Second Lien Bidders may credit bid up to the full amount of the outstanding obligations under the Prepetition Second Lien Credit Agreement, (c) the Pre-Petition ABL Lenders (or the Pre-Petition ABL Agent on their behalf) must credit bid the full amount of the outstanding Obligations under (and as defined in) the Pre-

Petition ABL Loan Agreement, and (d) the ABL DIP Lenders (or the ABL DIP Agent on their behalf) must credit bid the full amount of the outstanding Obligations under (and as defined in) the ABL DIP Loan Agreement.[5]

Any and all Bids, other than those submitted by or on behalf of (i) the Stalking Horse, (ii) the Second Lien Bidders, (iii) Pre-Petition ABL Lenders and/or ABL DIP Lenders, and (iv) another Qualified Bidder holding allowed secured claims against the Debtors (but only to the extent of such allowed secured claims), shall be in cash unless otherwise provided in these Sale Procedures. Any and all credit bids submitted by a party other than the Stalking Horse shall include a cash component that is sufficient to pay the Maximum Reimbursement Amount.

## AUCTION

If no Qualified Bid other than the Qualified Bid submitted by the Stalking Horse is received by the Bid Deadline, then (a) the Auction will not be held, (b) the Stalking Horse will be deemed the Successful Bidder, (c) the Qualified Bid submitted by the Stalking Horse and evidenced by the Stalking Horse APA will be deemed the Successful Bid, and (d) at the Sale Hearing on **June 17, 2015 at 10:00 a.m.** (prevailing Eastern Time), the Debtors will seek approval of the Court for authority to consummate the proposed Sale of the Transferred Assets to the Stalking Horse as contemplated in the Stalking Horse APA.

Only if a Qualified Bid (other than the Qualified Bid submitted by the Stalking Horse) is received by the Bid Deadline shall the Debtors conduct an auction (the "Auction"). The Auction shall commence on **June 15, 2015 at 10:00 a.m.** (prevailing Eastern Time), at the offices of Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, or such other location designated by the Debtors.

The Debtors shall provide copies of the Initial Bid (as defined below) to (i) the Stalking Horse, (ii) all Qualified Bidders, (iii) counsel for Pre-Petition ABL Agent and ABL DIP Agent, and (iv) counsel to the Committee as soon as reasonably practicable after the Bid Deadline, but in any event no later than 48 hours after the Bid Deadline.

Prior to the commencement of the Auction, the Debtors shall determine (in their discretion, but after consultation with the Consultation Parties) which Qualified Bid represents the then-highest or otherwise best Bid (the "Initial Bid").

The determination of which Qualified Bid constitutes the Initial Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates, including, among other things, the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) the net economic effect

---

[5] Nothing herein is intended or shall be construed to amend, modify or otherwise alter the third-party challenge rights pursuant to paragraph 27 of the Interim DIP Order and paragraph 28 of the Final DIP Order.

of any changes from the Stalking Horse APA, if any, contemplated by the contemplated transaction documents (the "Contemplated Transaction Documents"); (h) the net after-tax consideration to be received by the Debtors' estates; (i) the proposed assumption of any liabilities associated with the Pension Plan, so long as all secured claims are paid in full in cash at closing; and (j) such other considerations the Debtors deem relevant in their reasonable discretion (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted according to the following procedures:

(1)     **Participation at the Auction**

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Except as set forth in the following paragraph, only the authorized representatives and respective counsel and advisors of each of the Qualified Bidders, the Debtors, the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, ABL Parties, and the Committee shall be permitted to attend the Auction.

Creditors (other than Qualified Bidders) may attend (but not participate in or at) the Auction provided that they provide the Debtors written notice of their intention to attend the Auction on or before the Bid Deadline. Such written notice must be sent to counsel to the Debtors at mrosenthal@gibsondunn.com, mnestor@ycst.com, and andrew.torgove@lazard.com.

Each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion regarding the Sale Procedures, the Auction or the proposed transaction.

(2)     **Terms of Overbids**

Qualified Bidders will be permitted to increase their Bids at each round of the Auction. Bidding shall begin with the Initial Bid and subsequently continue in minimum increments of at least five hundred thousand dollars ($500,000) (or such other amount that the Debtors determine appropriate to facilitate the Auction) (the "Minimum Bid Increment").

An "Overbid" is any Bid made at the Auction subsequent to the Debtors' announcement of the Initial Bid. All Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders and ABL Parties.

To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a)     *Minimum Overbid Increment*

Any Overbid after the Initial Bid shall be made in increments of at least the Minimum Bid Increment.

### *(b)    Remaining Terms are the Same as for Qualified Bids*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth herein. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher Qualified Bid as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid.

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors and the Consultation Parties) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

### *(c)    Consideration of Overbids*

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: (i) facilitate discussions between the Debtors and individual Qualified Bidders; (ii) allow individual Qualified Bidders to consider how they wish to proceed; (iii) consider and determine the current highest or otherwise best Overbid at any given time during the Auction; and (iv) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may require to demonstrate that they have sufficient internal resources or sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

### *(d)    Stalking Horse May Credit Bid the Maximum Reimbursement Amount*

The Maximum Reimbursement Amount will be taken into account in each round of bidding and added to the bid of the Stalking Horse. The Stalking Horse shall be permitted to credit bid the Maximum Reimbursement Amount pursuant to any Overbid in connection with each round of bidding in the Auction.

### (3)    Additional Procedures

The Debtors, in their reasonable discretion, and in consultation with the Consultation Parties, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures, the Sale Procedures Order or the Bankruptcy Code.

Each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous Bid at the Auction. Bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures.

The Debtors will, from time to time, in an open forum, advise Qualified Bidders and Consultation Parties participating in the Auction of the then-highest or otherwise best Bid(s).

### (4) Consent to Jurisdiction as Condition to Bid

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's Contemplated Transaction Documents, as applicable.

### (5) Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and no additional Bids may be considered following the closing of the Auction. The Debtors shall immediately review the final Overbid of each Qualified Bidder on the basis of financial and contractual terms and the factors relevant to the Sale, including the Bid Assessment Criteria and including those factors affecting the speed and certainty of consummating the proposed sale, and, in consultation with the Consultation Parties, will evaluate all options and determine which Qualified Bids are in the best interests of the Debtors, their estates, and their creditors and are the highest or otherwise best offer for the Transferred Assets (the "Successful Bid" and the entity submitting such Successful Bid, the "Successful Bidder") and the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid" and the entity submitting such Back-Up Bid, the "Back-Up Bidder"). The Debtors will notify the Qualified Bidders and Notice Parties of such determination within one business day following the closing of the Auction.

### (6) The Debtors Shall Preside Over the Auction

The Debtors and their professionals shall direct and preside over the Auction. The Debtors shall arrange for the actual bidding at the Auction to be transcribed, and the Auction shall be conducted openly, pursuant to the terms set forth herein.

## ACCEPTANCE OF SUCCESSFUL BID

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such Bid is declared the Successful Bid, (b) definitive documentation has been executed in respect thereof, and (c) the Court enters an order approving the Sale to the applicable Successful Bidder.

Within one (1) business day after the closing of the Auction, the Debtors shall file with the Court and serve upon all Qualified Bidders and entities that have requested notice in these Chapter 11 Cases a notice identifying the Successful Bidder(s) and the Back-Up Bidder(s) (such notice, the "Notice of Successful and Back-Up Bidders").

Within one (1) business day after the filing of the Notice of Successful and Back-Up Bidders, each Successful Bidder and Back-Up Bidder (except the Stalking Horse, the Second Lien Bidders, and the ABL Parties) shall provide a supplemental deposit in the amount of $5 million paid in cash or by certified check payable to the order of The Standard Register Company (the "Supplemental Deposit") to supplement each such Bidder's Good Faith Deposit and to be held subject to the same terms, as provided in the Sale Procedures, applicable to the Good Faith Deposit.

The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Bid. The Debtors will be deemed to have accepted a Qualified Bid only when such Bid has been approved by the Court.

The Debtors will present the results of the Auction to the Court at the Sale Hearing, at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted and the Successful Bid and the Back-Up Bid were selected in accordance with these Sale Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best Bid and is in the best interests of the Debtors and their creditors.

## "AS IS, WHERE IS"

The sale of the Transferred Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates except to the extent set forth in the Stalking Horse APA, as to the Stalking Horse, or the applicable Purchase Agreement, as to another Successful Bidder. The Stalking Horse and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Transferred Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Transferred Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Transferred Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Sale Procedures and (a) as to the Stalking Horse, the terms of the Sale of the Transferred Assets set forth in the Stalking Horse APA, or (b) as to another Successful Bidder, the terms of the Sale of the Transferred Assets set forth in the applicable Purchase Agreement.

## FREE AND CLEAR SALE

Except as otherwise provided in the Stalking Horse APA, the applicable Purchase Agreement of another Successful Bidder, or the Sale Order, all of the Debtors' right, title, and interest in and to the Transferred Assets thereunder shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Encumbrances") in accordance with Bankruptcy Code section 363, with such Encumbrances to attach to the net proceeds of the sale of the Transferred Assets.

## SALE HEARING

A hearing to approve the Sale of the Transferred Assets to the Successful Bidder shall be conducted by the Court on **June 17, 2015 at 10:00 a.m.** (prevailing Eastern Time) located at 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, DE 19801 (the "Sale Hearing"). Following the approval of the Sale of the Transferred Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale within sixty (60) days after the entry of the Sale Order (except where the sole cause of any delay of the Closing Date is

the result of a default by the Debtors), the Debtors, in consultation with the Consultation Parties, shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid and the Debtors shall be authorized, but not required, to consummate the sale with the Back-Up Bidder without further notice or orders of the Court. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing or notation on any applicable hearing agenda, provided that the Debtors first consult with the Consultation Parties.

## RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposit, as supplemented by the Supplemental Deposit, of a Successful Bidder shall be applied to the Purchase Price, as defined in the applicable Purchase Agreement. The Good Faith Deposit, as supplemented by the Supplemental Deposit, of the Back-Up Bidder shall be retained by the Debtors until the earlier of (a) the Closing Date of the Sale with the Successful Bidder(s) or (b) the sixtieth (60th) day after entry of the Sale Order and thereafter returned to the Back-Up Bidder (unless, during such 60-day period, the Debtors deliver the Back-Up Notice). The Good Faith Deposits of all other Qualified Bidders shall be held by the Debtors until the designation of the Successful Bidder and the Back-Up Bidder, and thereafter returned to the respective Qualified Bidders. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit, in addition to all other remedies provided for in the applicable Purchase Agreement.

Following the giving of the Back-Up Notice, the Good Faith Deposit and the Supplemental Deposit of the Back-Up Bidder shall be applied to the Purchase Price as defined in the applicable Purchase Agreement. If the Back-Up Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit and the Supplemental Deposit, in addition to all other remedies provided for in the applicable Purchase Agreement.

## MODIFICATIONS AND RESERVATIONS

The Debtors may, after consultation with the Consultation Parties, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of orders of the Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Sale Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates and their creditors.

At or before the Sale Hearing, the Debtors, upon consultation with the Consultation Parties, may impose such other terms and conditions as the Debtors may determine to be in the best interests of their estates, their creditors, and other parties in interest thereof that are not inconsistent with the Sale Procedures Order, the Sale Procedures, or the Bankruptcy Code.

The Sale Procedures may be materially modified only upon the express written consent of the Debtors (in consultation with the Consultation Parties) or by order of the Court.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Sale Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open, including any credit bid, if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential bidding or (b) otherwise contrary to the goal of maximizing value from the sale process for the Debtors' estates, their creditors, and all other parties in interest.

## RESERVATION OF RIGHTS OF THE DEBTORS

Subject to the Sale Procedures Order, the Debtors reserve the right as they may determine, in consultation with the Consultation Parties, to be in the best interests of their estates to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sale Procedures Order or the requirements of the Bankruptcy Code or any other orders entered by the Court, or (iii) contrary to the best interests of the Debtors and their estates or stakeholders, as applicable; (e) impose additional terms and conditions with respect to any or all Bidders other than the Stalking Horse; (f) adjourn the Auction and/or Sale Hearing in open court without further notice; (g) with the consent of the Stalking Horse, remove a portion of the Transferred Assets from the Auction; and (h) consider or accept Bids for less than all of the Transferred Assets, so long as the Bid or a combination of Bids, taken together as provided in these Sale Procedures, comply with the Minimum Initial Overbid and subsequent Overbid requirements.