# **EXHIBIT A**

## **REVISED ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 15** |

### FINAL ORDER (I) AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364; AND (III) PROVIDING ADEQUATE PROTECTION TO PREPETITION CREDIT PARTIES AND MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364

Upon the Motion (the "***Motion***") of The Standard Register Company, an Ohio corporation ("***SRC***"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, "***Debtors***") in these chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of Title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "***Bankruptcy Rules***"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "***Local Bankruptcy Rules***"), seeking, among other things, entry of a final order (a "***Final Order***"):

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

(1) authorizing Debtors to obtain postpetition financing, consisting of (x) a superpriority, secured, asset-based revolving credit facility in the principal amount of up to $125,000,000 (the "**_ABL DIP Facility_**") from Bank of America, N.A. ("**_BofA_**"), in its capacities as administrative and collateral agent (in such capacity, together with its successors in such capacity, "**_ABL DIP Agent_**") and as a lender, and certain other financial institutions (together with BofA and their respective successors and assigns, "**_ABL DIP Lenders_**"; and together with ABL DIP Agent, the "**_ABL DIP Credit Parties_**"), and (y) a superpriority, multiple-draw secured term loan facility in an aggregate principal amount of up to $30,000,000 (the "**_Term DIP Facility_**," and together with the ABL DIP facility, the "**_DIP Financing_**") from Silver Point Finance, LLC, in its capacities as administrative and collateral agent (in such capacity, together with its successors in such capacity, the "**_Term DIP Agent_**"; and together with the ABL DIP Agent, the "**_DIP Agents_**") and as a lender, and certain other lenders (together with Silver Point Finance, LLC and their respective successors and assigns, the "**_Term DIP Lenders_**"; and together with the Term DIP Agent, the "**_Term DIP Credit Parties_**");

(2) authorizing Debtors to execute and enter into, and to perform all such other and further acts as may be required in connection with, the DIP Loan Agreements (as defined below) in substantially the form annexed to the Motion (with such changes or amendments, if any, as were made prior to or as a result of the Interim Hearing or the Final Hearing or are otherwise authorized to be made as amendments to either of the DIP Loan Agreements in accordance with this Final Order) and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by DIP Credit Parties to give effect to the terms thereof (the DIP Loan Agreements, that certain ABL-TL DIP Intercreditor Agreement (the "**_ABL/Term DIP Intercreditor Agreement_**") and such other instruments,

security agreements, assignments, pledges, mortgages and other documents, as at any time amended, being collectively called the "***DIP Financing Documents***");

(3) authorizing Debtors to use proceeds of the DIP Financing solely as expressly permitted in the DIP Financing Documents and in accordance with the Interim Order (as defined below) and this Final Order;

(4) granting automatically perfected (i) priming security interests in and liens on all of the DIP Collateral (as defined below) and (ii) non-priming security interests in and liens with respect to Unencumbered Property (as defined below) upon which there are either pre-existing permitted senior liens or no pre-existing liens, to the DIP Agents for the benefit of the ABL DIP Credit Parties and Term DIP Credit Parties (collectively, the "***DIP Credit Parties***") to the extent provided herein, and granting superpriority administrative expense status to the DIP Obligations (as defined below), in each case on the terms and subject to the relative priorities set forth in the DIP Financing Documents;

(5) providing adequate protection to Pre-Petition Credit Parties (as defined below) to the extent of any diminution in value of their interests in the DIP Collateral (as defined below) and subject to the Carve-Out (as defined below);

(6) authorizing the Debtors to pay the principal, interest, fees, expenses, disbursements, and other amounts payable under the DIP Financing Documents as such amounts become due and payable;

(7) vacating and modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, this Final Order and the DIP Financing Documents;

3

(8) waiving the Debtors' ability to surcharge against collateral pursuant to Section 506(c) of the Bankruptcy Code; and

(9) granting the Debtors such other and further relief as is just and proper.

The Court having held an interim hearing (the "*Interim Hearing*") on March 13, 2015 and entered an interim order (the "*Interim Order*") that, among other things, (a) authorized the Debtors to (i) enter into the DIP Loan Agreements (defined below) with the DIP Lenders and to obtain DIP Loans and other DIP Credit Extensions on a senior secured, superpriority claim basis (subject only to certain permitted liens and claims as set forth in the Interim Order) and (ii) authorized the ABL DIP Agent to apply proceeds of ABL Priority Collateral towards the payment of the Pre-Petition ABL Debt; (b) granted the adequate protection described in the Interim Order; and (c) scheduled the final hearing (the "*Final Hearing*") to consider entry of this Final Order authorizing the balance of the borrowings under the DIP Financing Documents and granting the other relief sought in the Motion of a final basis, as set forth in the Motion and the DIP Financing Documents;

Due and appropriate notice of the final relief requested in the Motion, the Final Hearing, and the Interim Order having been served by the Debtors on (i) counsel for each Agent, (ii) the U.S. Trustee, (iii) the 30 largest unsecured creditors of each Debtor and the Committee (as defined below) promptly after the Committee was appointed, (iv) the Internal Revenue Service, (v) all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules, and (vi) all parties known by a Debtor to hold or assert a lien on any assets of a Debtor;

The Court having considered all objections, if any, to the Motion; and

Upon the record made (i) by the Motion and the exhibits attached thereto; (ii) in the *Declaration of Kevin Carmody in Support of Debtors' Chapter 11 Petitions and Requests for*

*First Day Relief* [Docket No. 2], the *Declaration of Dermott O'Flanagan in Support of the Financing Motion* [Docket No. 16], the *Declaration of Kevin Carmody in Support of Debtors' Sale Motion and Motion to Approve Postpetition Financing* [Docket No. 240], and the *Declaration of Andrew Torgove in Support of Debtors' Sale Motion and Postpetition Financing Motion* [Docket No. 246]; and (iii) at the Interim Hearing and the Final Hearing, and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND ADJUDGED, that**:[2]

1.      <u>Disposition</u>.  The Motion is hereby GRANTED on a final basis in accordance with the terms of this Final Order.  Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by consent at or before the Final Hearing, and all reservations of rights included therein, are hereby OVERRULED and DENIED.

2.      <u>Jurisdiction; Core Proceeding</u>.  This Court has jurisdiction over these Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Notice</u>.  Notice of the Motion (together with the annexed copies of the proposed DIP Loan Agreements and Budget (defined below) annexed thereto), the relief requested therein, the Interim Hearing, the Interim Order and the Final Hearing was served by the Debtors on (i) the Office of the United States Trustee (the "***U.S. Trustee***"), (ii) counsel for Pre-Petition ABL Agent, (iii) the Pre-Petition Term Agents, (iv) the 30 largest unsecured creditors of the Debtors, (v) the Internal Revenue Service, (vi) all parties who have filed requests for notices under Rule

---

[2]      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

2002 of the Bankruptcy Rules, (vii) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m), and (viii) all parties known by a Debtor to hold or assert a lien on any asset of a Debtor.  The notice given by the Debtors of the Motion, the Interim Hearing, the Interim Order and the Final Hearing is appropriate and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including, without limitation, Bankruptcy Rule 4001(b) and (c), and that no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

4.    _Petition Date_.  On March 12, 2015 (the "***Petition Date***"), each of Debtors filed with the Court its respective voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and each is continuing to manage its properties and to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed for any Debtor herein.

5.    _Committee Formation_.  On March 24, 2015, the U.S. Trustee appointed the official committee of unsecured creditors (the "***Committee***").

6.    _Debtors' Stipulations_.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in Paragraph 28 below), each Debtor admits, stipulates, acknowledges and agrees as follows:

A.    _Pre-Petition ABL Loan Documents_.  Pursuant to that certain Amended and Restated Loan and Security Agreement dated August 1, 2013 (as at any time amended or supplemented, the "***Pre-Petition ABL Loan Agreement***"), certain financial institutions in their capacity as lenders (collectively, "***Pre-Petition ABL Lenders***") and BofA in its capacity as administrative and collateral agent for Pre-Petition ABL Lenders (in such capacity, "***Pre-Petition ABL Agent,***" and together with BofA in its capacity as issuer of

letters of credit and the Pre-Petition ABL Lenders, "***Pre-Petition ABL Credit Parties***") established a revolving credit facility and issued letters of credit for SRC, SRI, SRT, iMed, WorkflowOne LLC, a Delaware limited liability company ("***WorkflowOne***"), and SRPR (collectively, whether in the capacity as borrower or guarantor, the "***Pre-Petition Obligors***"), in an aggregate principal amount up to $125,000,000. The Pre-Petition ABL Loan Agreement, together with any other agreement, note, instrument, guaranty, mortgage, fixture filing, deed of trust, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same may be amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "***Pre-Petition ABL Loan Documents***."

      B.     <u>Pre-Petition ABL Collateral</u>.  Pursuant to certain Security Documents (as defined in the Pre-Petition ABL Loan Agreement) executed by Pre-Petition Obligors in favor of Pre-Petition ABL Agent, each Pre-Petition Obligor granted to Pre-Petition ABL Agent, for the benefit of Pre-Petition ABL Credit Parties and to secure such Pre-Petition Obligor's obligations and indebtedness under the Pre-Petition ABL Loan Documents, (x) first-priority liens on and security interests in the ABL Priority Collateral (as defined in that certain Intercreditor Agreement, dated as of August 1, 2013, among Pre-Petition Obligors, Pre-Petition ABL Agent, and Pre-Petition Term Agents (as at any time amended, the "***Pre-Petition ABL/Term Lender Intercreditor Agreement***")) of the Pre-Petition Obligors (the "***ABL Priority Collateral***") and (y) second-priority liens on and security interests in the Term Loan Priority Collateral (as defined in the Pre-Petition ABL/Term Lender Intercreditor Agreement) of the Pre-Petition Obligors (the "***Term Loan Priority Collateral***"; and together with the ABL Priority Collateral, the "***Pre-***

*Petition Collateral*," and such liens and security interests, collectively, the "*ABL Security Interests*").

    C.    <u>Pre-Petition Term Loan Documents</u>.  Pursuant to that certain First Lien Credit Agreement dated as of August 1, 2013 (as at any time heretofore amended, modified, restated or supplemented, the "*Pre-Petition First Lien Term Loan Agreement*"), and that certain Second Lien Credit Agreement dated as of August 1, 2013 (as at any time heretofore  amended, modified, restated or supplemented, the "*Pre-Petition Second Lien Term Loan Agreement*," and together with the Pre-Petition First Lien Term Loan Agreement, the "*Pre-Petition Term Loan Agreements*"), certain institutions in their capacity as lenders under the First Lien Credit Agreement ("*First Lien Term Lenders*") and under the Second Lien Credit Agreement ("*Second Lien Term Lenders*"; and together with the First Lien Term Lenders, the "*Pre-Petition Term Lenders*") and Silver Point Finance, LLC, in its capacity as administrative and collateral agent for the First Lien Term Lenders (in such capacity, the "*First Lien Term Lender Agent*") and as administrative and collateral agent for the Second Lien Term Lenders ("*Second Lien Term Lender Agent*"; and together with the First Lien Term Lender Agent, the "*Pre-Petition Term Agents*"; and together with Pre-Petition Term Lenders, "*Pre-Petition Term Credit Parties*") made term loans to SRC and WorkflowOne, as borrowers under the Pre-Petition Term Loan Agreements, in an aggregate principal amount of approximately $210,313,153.26. Pursuant to each Subsidiary Guaranty (as defined in the Pre-Petition Term Loan Agreements), SRI, SRT, iMed and SRPR unconditionally and absolutely guaranteed payment of all obligations owing by SRC and WorkflowOne under the Pre-Petition Term Loan Agreements.

01:16976444.1

-8-

The Pre-Petition First Lien Term Loan Agreement, together with any other agreement, note, underline(instrument), guaranty, pledge and document executed at any time in connection therewith, in each case as the same may be amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "***Pre-Petition First Lien Term Loan Documents***."  The Pre-Petition Second Lien Term Loan Agreement, together with any other agreement, note, instrument, guaranty, pledge and document executed at any time in connection therewith, in each case as the same may be amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "***Pre-Petition Second Lien Term Loan Documents***," and together with the Pre-Petition First Lien Term Loan Documents, the "***Pre-Petition Term Loan Documents***."

    D.    <u>Pre-Petition Term Loan Collateral</u>.  Pursuant to certain Security Documents (as such term is defined in the Pre-Petition Term Loan Agreements) executed by Pre-Petition Obligors in favor of Pre-Petition Term Agents, each Pre-Petition Obligor granted to each Pre-Petition Term Agent, for itself and the Pre-Petition Term Lenders for which it serves as agent, and to secure Pre-Petition Obligors' obligations under the Pre-Petition Term Loan Documents, (x) second-priority security interests in and continuing liens upon the ABL Priority Collateral and (y) first-priority security interests in and continuing liens upon the Term Loan Priority Collateral (collectively, the "***Term Loan Security Interests***"; and together with the ABL Security Interests, the "***Pre-Petition Security Interests***").  The Pre-Petition Security Interests (i) are valid, binding, properly perfected, enforceable liens and security interests in the Pre-Petition Collateral, (ii) are not subject to avoidance, recovery, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-

bankruptcy law, and (iii) are subject and subordinate only to (a) the DIP Liens (as defined below) in the manner set forth herein, (b) the Carve-Out (as defined below) to which the DIP Liens and Pre-Petition Security Interests are subject, and (c) valid, perfected and unavoidable liens permitted under the Pre-Petition Loan Documents (as defined below) to the extent such permitted liens are senior to or *pari passu* with the liens of the Pre-Petition Term Agents and the Pre-Petition ABL Agent on the Pre-Petition Collateral.

      E.    <u>Pre-Petition ABL/Term Lender Intercreditor Agreement</u>.[3]  Pursuant to the Pre-Petition ABL/Term Lender Intercreditor Agreement, the parties thereto agreed, among other things, that (x) the security interests and liens of Pre-Petition ABL Agent upon the ABL Priority Collateral would be senior in all respects and prior to the security interests and liens of Pre-Petition Term Agents in such property and (y) the respective security interests and liens of Pre-Petition Term Agents upon the Term Loan Priority Collateral would be senior in all respects and prior to the security interests and liens of the Pre-Petition ABL Agent in such property.

      F.    <u>Pre-Petition ABL Debt and Pre-Petition Term Debt</u>.  As of the Petition Date, Pre-Petition Obligors, jointly and severally, were justly and lawfully indebted and liable (x) under the Pre-Petition ABL Loan Documents to Pre-Petition ABL Credit Parties for revolving credit loans in the approximate principal amount of $93,203,975 (the "***Pre-Petition ABL Loans***"), for fees, expenses, and other charges associated with depository accounts, credit cards and other banking products and services, and on a contingent basis in the approximate amount of $3,570,509 for  standby letters of credit

---

[3]      The relative priorities of the security interests and liens in favor of the First Lien Term Lender Agent and the Second Lien Term Lender Agent are as set forth in a certain Intercreditor Agreement dated as of August 1, 2013, among SRC and certain of its subsidiaries, and Pre-Petition Term Agents (as at any time amended, the "***Term Lender Intercreditor Agreement***").

(the "***Pre-Petition LCs***"; and together with the Pre-Petition ABL Loans, all other obligations of any Pre-Petition Obligor in respect of indemnities, guaranties and other payment assurances given by any Pre-Petition Obligor for the benefit of Pre-Petition ABL Credit Parties, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to any Pre-Petition Obligor in connection therewith, collectively, the "***Pre-Petition ABL Debt***"); and (y) under (i) the Pre-Petition First Lien Term Loan Documents to the First Lien Term Lenders and the First Lien Term Lender Agent for term loans in the approximate principal amount of $113,594,130.19 (*the* "***Pre-Petition First Lien Term Loans***") and (ii) the Pre-Petition Second Lien Term Loan Documents to the Second Lien Term Lenders and the Second Lien Term Lender Agent for term loans in the approximate principal amount of $96,719,023.07 (the "**Pre-Petition Second Lien Term Loans**"; and together with the Pre-Petition First Lien Term Loans, the "***Pre-Petition Term Loans***"; and together with all other obligations of any Pre-Petition Obligor in respect of indemnities, guaranties and other payment assurances given by any Pre-Petition Obligor for the benefit of Pre-Petition Term Credit Parties, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to any Pre-Petition Obligor in connection therewith, collectively, the "***Pre-Petition Term Debt***"). Each Debtor acknowledges and stipulates that the Pre-Petition ABL Debt and the Pre-Petition Term Debt (collectively, the "***Pre-Petition Debt***") are due and owing to Pre-Petition ABL Credit Parties and Pre-Petition Term Credit Parties (collectively, the "***Pre-Petition Credit Parties***") without any defense, offset, recoupment or counterclaim of any kind; the Pre-Petition Debt constitutes the legal, valid and binding

obligation of each Pre-Petition Obligor, enforceable in accordance with its terms; and none of the Pre-Petition Debt or any payments made to any Pre-Petition Credit Party or applied to the obligations owing under any Pre-Petition ABL Loan Documents or Pre-Petition Term Loan Documents (collectively, the "***Pre-Petition Loan Documents***") prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

      G.    <u>Cash Collateral</u>.    Subject to the Pre-Petition ABL/Term Lender Intercreditor Agreement, all or substantially all cash, securities or other property of Pre-Petition Obligors (and the proceeds thereof) as of the Petition Date, including, without limitation, all amounts on deposit or maintained by any Pre-Petition Obligor in any account with any Pre-Petition ABL Credit Party (each a "***Depository Institution***"), was subject to rights of setoff and valid, perfected, enforceable first-priority liens under the Pre-Petition ABL Loan Documents and applicable law, and is included in the Pre-Petition Collateral, and therefore the Pre-Petition Obligors' cash balances are cash collateral of the Pre-Petition Credit Parties within the meaning of Section 363(a) of the Bankruptcy Code. All such cash (including, without limitation, all proceeds of Pre-Petition Collateral) and all proceeds of property encumbered by liens and security interests granted under the Interim Order and this Final Order are referred to herein as "***Cash Collateral***."

      H.    <u>Releases</u>.  Subject to Paragraph 28 below, the Debtors  hereby absolutely and unconditionally forever waive, discharge and release each of the Pre-Petition Credit Parties  of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, actions, debts, accounts, causes of action (including, without limitation, causes of action

in the nature of "lender liability"), defenses, or setoff rights that it may have against any Pre-Petition Credit Party or any of its respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, officers, agents, employees, attorneys and affiliates and that arise out of or relate to any of the Pre-Petition Loan Documents or any acts, inaction, or transactions thereunder, whether disputed or undisputed, at law or in equity, including, without limitation, (i) any recharacterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law or municipal law and (ii) any right or basis to challenge or object to the amount, validity or enforceability of the applicable Pre-Petition Debt or any payments made on account of the applicable Pre-Petition Debt, or the validity, enforceability, priority or non-avoidability of the applicable Pre-Petition Security Interests securing the applicable Pre-Petition Debt.

I.       As of the Petition Date (i) the aggregate value of the ABL Priority Collateral exceeds the aggregate amount of the Pre-Petition ABL Debt and (ii) after accounting for the payment of the claims of the Pre-Petition ABL Lenders, the aggregate value of the remaining ABL Priority Collateral plus the Term Priority Collateral exceeds the aggregate amount of the Pre-Petition First Lien Term Loans.

J.       <u>Need for Financing</u>.  An immediate and ongoing need exists for Debtors to obtain the DIP Financing in order to permit, among other things, the orderly continuation of the operation of their businesses; to maintain business relationships with vendors, suppliers and customers; to pay payroll obligations and to satisfy other working capital and operational needs so as to maximize the value of their respective businesses and

assets as debtors in possession under Chapter 11 of the Bankruptcy Code. Debtors do not have sufficient available resources of working capital to operate their businesses in the ordinary course without post-petition financing.  Debtors' ability to maintain business relationships with vendors and customers, to pay employees, and otherwise to fund operations is essential to Debtors' viability and preservation of the going-concern value of their businesses pending a sale of their assets.

7. <u>Findings Regarding the DIP Financing</u>.

A. <u>Good Cause</u>.  Good cause has been shown for the entry of this Final Order and authorization for Debtors to obtain the full amount of the DIP Credit Extensions (defined below) pursuant to the DIP Loan Agreements (defined below).  Each Debtor's need for financing of the type afforded by the DIP Loan Agreements is immediate and critical.  Entry of this Final Order will preserve the assets of each Debtor's estate and their value and is in the best interests of Debtors, their creditors and their estates.  The terms of the proposed financing are fair and reasonable, reflect each Debtor's exercise of business judgment, and are supported by reasonably equivalent value and fair consideration.

B. <u>Proposed DIP Facilities</u>.  Debtors have requested (i) ABL DIP Lenders to establish the ABL DIP Facility pursuant to which Debtors may obtain loans from time to time ("***ABL DIP Loans***") and letters of credit in an aggregate amount of ABL DIP Loans and letters of credit outstanding not to exceed at any time the lesser of (x) $125,000,000, <u>minus</u> the amount of the Pre-Petition ABL Debt at such time and (y) the Borrowing Base (as defined in the ABL DIP Loan Agreement), and (ii) Term DIP Lenders (together with ABL DIP Lenders, the "***DIP Lenders***") to establish the Term DIP Facility (together with the ABL DIP Facility, the "***DIP Financing***") in favor of Debtors pursuant to which Debtors may obtain loans (the "***Term DIP***

*Loans*"; and together with the ABL DIP Loans, the "***DIP Loans***") in an aggregate principal amount not to exceed $30,000,000, with all DIP Loans and related obligations secured by, subject to the ABL/Term DIP Intercreditor Agreement (as defined below), all real and personal property of Debtors, wherever located and whether created, acquired or arising prior to, on or after the Petition Date.  DIP Lenders are willing to establish the DIP Facilities upon the terms and conditions set forth herein and in a certain Post-Petition Loan and Security Agreement to be entered into by Debtors and ABL DIP Credit Parties, substantially in the form attached to the Motion (together with all schedules, exhibits and annexes thereto, as amended by the First Amendment to Post-Petition Loan and Security Agreement dated April 10, 2015 (the "***ABL DIP First Amendment***"), and as at any time further amended, the "***ABL DIP Loan Agreement***"), and in a certain Super-Priority Priming Debtor In Possession Term Loan Credit Agreement and Security Agreement to be entered into by Debtors and Term DIP Credit Parties, substantially in the form attached to the Motion (together with all schedules, exhibits and annexes thereto, as amended by the First Amendment to Super-Priority Priming Debtor In Possession Delayed Draw Term Loan Credit Agreement dated April 10, 2015 (the "***Term DIP First Amendment***"), and as at any time amended, the "***Term DIP Loan Agreement***"; and together with the ABL DIP Loan Agreement, the "***DIP Loan Agreements***").

      C.    <u>No Credit Available on More Favorable Terms</u>.  Despite diligent efforts, Debtors have been unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Financing Documents and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under Sections 364(c)(1),  364(c)(2) and (c)(3) of the Bankruptcy Code without granting priming liens under Section 364(d)(1) of the

Bankruptcy Code and the Superpriority Claims (as defined in Paragraph 11(a) below) under the terms and conditions set forth in this Final Order and in the DIP Financing Documents.

D.    Budget.  Debtors have prepared and annexed to the Motion a budget (as at any time amended or supplemented with the written consent of each DIP Agent, the "*Budget*"), which sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby and which Debtors believe in good faith to be realistic and achievable. DIP Credit Parties are relying upon the Budget in entering into the DIP Loan Agreements and Pre-Petition Credit Parties are relying upon the Budget in consenting to the terms of this Final Order.  The Debtors shall provide an updated 13-week Budget every two (2) weeks covering the next 13-week period, which shall be subject to the approval requirements in the DIP Financing Documents, including a statement of the actual amounts of each line item for the preceding two (2) weeks together with a variance analysis from the previously delivered Budget.  All references restricting the use of loan proceeds to payment of amounts set forth in the Budget shall mean the most recent approved Budget, subject to the "Permitted Variances" as defined in the DIP Financing Documents; provided that notwithstanding anything to the contrary in the DIP Financing Documents, any Permitted Variance that is less than 7.5% shall be revised to be 7.5%.

E.    Certain Conditions to DIP Facility.  ABL DIP Lenders' willingness to make ABL DIP Loans and other extensions of credit pursuant to the ABL DIP Loan Agreement (collectively, the "*ABL DIP Credit Extensions*") and Term DIP Lenders' willingness to make Term DIP Loans pursuant to the Term DIP Loan Agreement (collectively, the "*Term DIP Credit Extensions*"; and together with the ABL DIP Credit Extensions, the "*DIP Credit Extensions*"), are conditioned upon, among other things, (i) Debtors obtaining Court approval of the DIP Loan Agreements and all obligations of Debtors and all rights and remedies of DIP Credit Parties

thereunder; (ii) Debtors' provision of adequate protection of Pre-Petition Credit Parties' interests in the Pre-Petition Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code; and (iii) each DIP Agent receiving, on behalf of its DIP Credit Parties and as security for the prompt payment of all DIP Credit Extensions made by its DIP Credit Parties, security interests in and liens upon, subject to the ABL/Term DIP Intercreditor Agreement (as defined below), all of each Debtor's pre-petition and post-petition real and personal property, including, without limitation, all of each Debtor's cash, accounts, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, intellectual property, real property and leasehold interests, contract rights, and books and records relating to any assets of such Debtor and all proceeds (including, without limitation, insurance proceeds) of the foregoing, whether such assets were in existence on the Petition Date or arose or were created or acquired thereafter and wherever located (all such real and personal property, including, without limitation, all Pre-Petition Collateral and the proceeds thereof, being collectively hereinafter referred to as the "***DIP Collateral***"), and that such security interests and liens have the priorities hereinafter set forth.  The DIP Collateral shall not include Avoidance Claims and Avoidance Proceeds, as defined in Paragraph 10(D).

      F.     <u>Finding of Good Faith</u>.  The DIP Financing has been negotiated in good faith and at arm's length between Debtors, on the one hand, and DIP Credit Parties, on the other.  All of the DIP Obligations (as defined below), including, without limitation, all DIP Credit Extensions made pursuant to the DIP Loan Agreements and all other liabilities and obligations of any Debtors under this Final Order or in respect of credit card debt, overdrafts and related liabilities arising from treasury, depository, credit card and cash management services, or in connection with any automated clearing house transfers of funds, owing to the DIP Credit Parties shall be

deemed to have been extended by DIP Credit Parties in "good faith," as such term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code.  The DIP Credit Parties shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

G.    Debtors' consummation of the DIP Facilities in accordance with the terms of this Final Order and the DIP Loan Agreements is in the best interests of each Debtor's estate and is consistent with each Debtor's exercise of its fiduciary duties.

8.    <u>Authorization of DIP Financing; Use of Proceeds</u>.

A.    The Debtors were by the Interim Order and hereby are authorized to enter into and to perform all obligations under the DIP Financing Documents, as amended.

B.    Debtors are hereby authorized to borrow money pursuant to the DIP Financing Documents, on the terms and subject to the conditions, lending formulae and sub-limits set forth in any DIP Financing Document and this Final Order, up to an aggregate principal amount outstanding at any time equal to (i) $125,000,000 in the case of ABL DIP Credit Extensions and (ii) $30,000,000 in the case of Term DIP Credit Extensions, in each case together with applicable interest, protective advances, expenses, fees and other charges payable in connection with such DIP Credit Extensions, and to incur any and all liabilities and obligations under the DIP Financing Documents and to pay all principal, interest, fees, expenses and other obligations provided for under the DIP Financing Documents (including any obligations, to the extent provided for in the DIP Financing Documents, to indemnify the DIP Agents or the DIP Lenders), <u>provided</u> <u>that</u> Debtors shall be entitled to receive Term DIP Loans under the Term DIP Financing only if and to the extent that Debtors certify that, as of the date of

such certification, they expect to have no further borrowing availability under the ABL DIP Facility to provide necessary working capital and only in accordance with the Budget and the DIP Financing Documents; and Debtors are hereby authorized to satisfy all conditions precedent and perform all obligations hereunder and under the DIP Financing Documents in accordance with the terms hereof and thereof; provided, further, that,  subject to all of the terms and conditions in the DIP Loan Agreement, Debtors may use DIP Loans and other DIP Credit Extensions (a) to pay (or in the case of contingent obligations, cash collateralize) amounts owed by any Debtor at any time to any DIP Lenders under any of the DIP Financing Documents, including, without limitation, costs, fees and expenses at any time due thereunder, (b) to make disbursements specified in the Budget and in amounts not to exceed the Permitted Variances provided in the DIP Loan Agreements, (c) to make adequate protection and other payments to Pre-Petition Credit Parties to the extent authorized or required herein, (d) for any other purposes specified in the Budget, (e) to pay other expenses that are required or authorized to be paid under any of the DIP Financing Documents, and (f) to pay the Carve-Out (as defined in and subject to Paragraph 19 below).  Each Debtor shall be jointly and severally liable for, and is hereby authorized to unconditionally guarantee (on a joint and several basis), the foregoing borrowings and extensions of credit and each other Debtor's other obligations and liabilities under the DIP Financing Documents, including, without limitation, costs, fees, and other expenses and amounts provided for in the DIP Financing Documents, in accordance with the terms of the DIP Financing Documents.

    C. In addition to the DIP Credit Extensions described above, Debtors are authorized to incur credit card debt, overdrafts and related liabilities arising from treasury, depository, credit card and cash management services, including any automated clearing house

fund transfers provided to or for the benefit of any Debtor by any ABL DIP Credit Party (or any of their respective affiliates), <u>provided</u> that nothing herein shall require any ABL DIP Credit Party to allow overdrafts to be incurred or to provide any such services or functions to any Debtor.

        D.     No DIP Credit Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Loans or other DIP Credit Extensions, and each DIP Credit Party may rely upon each Debtor's representations that the amount of DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Final Order, the DIP Financing Documents, and Bankruptcy Rule 4001(c)(2). As provided in the ABL DIP Loan Agreement, the Pre-Petition LCs shall be treated as having been issued under the ABL DIP Loan Agreement, shall constitute part of the ABL DIP Credit Extensions, shall be entitled to all of the benefits and security of the ABL DIP Financing Documents, the DIP Collateral and this Final Order.

        E.     Debtors may obtain and use the proceeds of ABL DIP Loans only for purposes specified in the ABL DIP Loan Agreement and proceeds of the Term DIP Loans only for purposes specified in the Term DIP Loan Agreement. Without limiting the generality of the foregoing sentence, no proceeds of any DIP Loan shall be used to (i) make any payment in settlement or satisfaction of any pre-petition claim (excluding the Pre-Petition Debt) or administrative claim (excluding the DIP Obligations (defined below)), unless in compliance with the Budget and permitted under the DIP Financing Documents, and with respect to the payment of any pre-petition claim not provided for under the DIP Financing Documents or any non-ordinary course administrative claim, separately approved by the Court upon notice to, and no objection from, the DIP Credit Parties and subject to compliance with the Budget; (ii) except as

expressly provided or permitted hereunder, to make any distributions not in compliance with the Budget, or as otherwise approved by the DIP Agents, including without limitation, to make any payment or distribution to any Non-Debtor affiliate, equity holder, or insider of any Debtor, provided that in no event shall any management, advisory, consulting or similar fees be paid to or for the benefit of any affiliate that is not a Debtor, equity holder or insider; or (iii) to make any payment otherwise prohibited by this Final Order.

9.      Execution, Delivery and Performance of DIP Financing Documents.  The DIP Financing Documents may be executed and delivered on behalf of each Debtor by any officer, director, or agent of such Debtor, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute the DIP Financing Documents for and on behalf of such Debtor; the DIP Credit Parties shall be authorized to rely upon any such person's execution and delivery any of the DIP Financing Documents as having done so with all requisite power and authority to do so; and the execution and delivery of any of the DIP Financing Documents, the ABL DIP First Amendment and other amendments thereto by any such person on behalf of such Debtor shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company, or other entity action (as applicable) of such Debtor. Upon execution and delivery thereof, each of the DIP Financing Documents shall constitute valid and binding obligations of each Debtor, enforceable against each Debtor in accordance with their terms for all purposes during its Chapter 11 Case, any subsequently converted case of such Debtor under Chapter 7 of the Bankruptcy Code (each, a "**Successor Case**"), and after the dismissal of its Chapter 11 Case.  Subject to Paragraph 28 with respect to the Roll-Up (as defined below), no obligation, payment, transfer or grant of security under the DIP Financing Documents or this Final Order shall be voidable, avoidable or recoverable under

the Bankruptcy Code or under any applicable nonbankruptcy law (including, without limitation, under Sections 502(d), 544, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim. In furtherance of the provisions of Paragraph 7 of this Final Order, each Debtor is authorized to do and perform all acts; to make, execute and deliver all instruments and documents (including, without limitation, security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements, amendments, waivers, consents, other modifications, and intellectual property filings); and to pay all fees, costs and expenses, in each case as may be necessary or, in the opinion of either DIP Agent, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below), or as may otherwise be required or contemplated by the DIP Financing Documents.

10.  <u>DIP Liens</u>.  As security for Debtors' payment and performance of all ABL DIP Credit Extensions and all Term DIP Credit Extensions, all interest, costs, expenses, fees and other charges at any time or times payable by any Debtor to any DIP Credit Party in connection with any DIP Credit Extensions or otherwise pursuant to any of the DIP Financing Documents, all reimbursement obligations and other indebtedness in respect of the Pre-Petition LCs, and all other indebtedness and obligations under any of the DIP Financing Documents (including, without limitation, liabilities of Debtors at any time or times associated with any ABL DIP Credit Party's provision after the Petition Date of Bank Products in accordance with (and as defined in) the ABL DIP Loan Agreement (to the extent any of the foregoing is owed to any of the ABL DIP Credit Parties, they are collectively called "***ABL DIP Obligations***"; to the extent

any of the foregoing is owed to any of the Term DIP Credit Parties, the "**Term DIP Obligations**"; and all of the foregoing are collectively called the "**DIP Obligations**"), each DIP Agent shall have, for itself and for the benefit of the DIP Credit Parties for which it serves, and is hereby granted, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens upon all of the DIP Collateral (collectively, the "**DIP Liens**") with the priorities set forth herein and in the ABL/Term DIP Intercreditor Agreement. Subject to the provisions of Paragraph 19 hereof and the ABL/Term DIP Intercreditor Agreement, the DIP Liens were by entry of the Interim Order and shall be:

A.     Unencumbered Property.  Pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, first-priority senior liens on, and security interests in, all DIP Collateral that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date (collectively, the "**Unencumbered Property**").     Proceeds realized from any collection, sale, lease or other disposition of Unencumbered Property, whether such collection or disposition is made by a Debtor or a DIP Agent, shall be shared by DIP Agents (for the benefit of their respective DIP Credit Parties) in accordance with the ABL/Term DIP Intercreditor Agreement, it being understood that Unencumbered Property (and the proceeds thereof) shall be remitted (i) to the Term DIP Agent to the extent such Unencumbered Property is of a type that would be Term Priority Collateral and (ii) to the ABL DIP Agent to the extent such Unencumbered Property is of a type that would be ABL Priority Collateral (the "**Allocation Mechanism**").

B.     Liens Junior to Certain Other Liens.  Pursuant to Section 364(c)(3) of the Bankruptcy Code, (i) in the case of ABL DIP Agent, valid, binding, continuing, enforceable, fully perfected security interests and liens upon the Term Loan Priority Collateral, which security

interests and liens shall be junior to (but only to) (x) security interests and liens in favor of the Pre-Petition Term Agents and the Term DIP Agent with respect to the Term Loan Priority Collateral, (y) the Term Adequate Protection Liens (as defined below), and (z) Pre-Petition Senior Liens,[4] but shall be senior to the security interests and liens in favor of Pre-Petition ABL Agent with respect to the Term Loan Priority Collateral and the ABL Adequate Protection Liens (as defined below) with respect to the Term Loan Priority Collateral; and (ii) in the case of Term DIP Agent, valid, binding, continuing, enforceable, fully perfected security interests and liens upon the ABL Priority Collateral, which security interests and liens shall be junior to (but only to) (x) security interests and liens in favor of the Pre-Petition ABL Agent and ABL DIP Agent with respect to the ABL Priority Collateral and (y) the ABL Adequate Protection Liens, and (z) Pre-Petition Senior Liens, but shall be senior to the security interests and liens in favor of the Pre-Petition Term Agents with respect to the ABL Priority Collateral and the Term Adequate Protection Liens with respect to the ABL Priority Collateral.

C.    <u>Priming DIP Liens</u>.    Pursuant to Section 364(d)(1) of the Bankruptcy Code, (i) in the case of ABL DIP Agent, valid, binding, continuing, enforceable, fully perfected security interests and liens upon the ABL Priority Collateral, which security interests and liens shall be prior and senior in all respects to (x) the security interests and liens in favor of Pre-Petition ABL Agent with respect to the ABL Priority Collateral, (y) the security interests and

---

[4]    For purposes of this Final Order, "Pre-Petition Senior Liens" means, with respect to any DIP Collateral in existence on the Petition Date and proceeds thereof, a security interest or lien (other than a Pre-Petition Security Interest) which was in existence on the Petition Date; was a duly perfected, valid and enforceable security interest or lien; is not subject to avoidance or subordination; and as of the Petition Date was, and at all times thereafter remains, senior in priority to the Pre-Petition Security Interests. Nothing herein shall constitute a finding or ruling by this Court that any such Pre-Petition Senior Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the DIP Credit Parties, the Pre-Petition Credit Parties or the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Pre-Petition Senior Lien.

liens in favor of Pre-Petition Term Agents with respect to the ABL Priority Collateral, and (z) the ABL Adequate Protection Liens with respect to the ABL Priority Collateral; and (ii) in the case of Term DIP Agent, valid, binding, continuing, enforceable, fully perfected security interests and liens upon the Term Loan Priority Collateral, which security interests and liens shall be prior and senior in all respects to (x) the security interests and liens in favor of Pre-Petition Term Agents with respect to the Term Loan Priority Collateral, (y) the security interests and liens in favor of Pre-Petition ABL Agent with respect to the Term Loan Priority Collateral, and (z) the Term Adequate Protection Liens with respect to the Term Loan Priority Collateral.

        D.      <u>No Liens on Avoidance Claims and Proceeds</u>.  The DIP Collateral shall not include security interests and liens upon any of Debtors' claims and causes of action pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (the "***Avoidance Claims***") and any proceeds or other property (the "***Avoidance Proceeds***") recovered in connection with the successful prosecution, settlement or collection of any Avoidance Claims.

        E.      <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens (as defined below), unless and to the extent that the Adequate Protection Liens are successfully challenged pursuant to Paragraph 28 below, shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of any Debtor or its estate under Section 551 of the Bankruptcy Code, (B) any lien or security interest of any lessor or landlord under agreement or applicable state law, (C) any liens or security interests granted by any Debtor to other persons or entities or otherwise arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of Debtors, or (D) any intercompany or affiliate liens or security interests of Debtors;

(ii) subordinated to or made *pari passu* with any other lien or security interest under Section 363 or 364 of the Bankruptcy Code or otherwise; or (iii) subject to Sections 510, 549 or 550 of the Bankruptcy Code.  In no event shall any person or entity who pays (or, through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations or the obligations and indebtedness of the Pre-Petition ABL Credit Parties or the Pre-Petition Term Credit Parties, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, any DIP Credit Party by the terms of any DIP Financing Documents or this Final Order unless such person or entity contemporaneously causes Full Payment (as defined below) of the Pre-Petition Debt owed to such DIP Credit Party to be made.

11.    Superpriority Claims.

A.    Scope of Superpriority Claims.  All DIP Obligations shall constitute joint and several allowed superpriority claims (the "***Superpriority Claims***") against each Debtor (without the need to file any proof of claim) pursuant to Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by any Debtor, and over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507, 546(c), 552(b) 726, 1113 or 1114 of the Bankruptcy Code. Such Superpriority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all pre-petition and post-petition property of Debtors and all proceeds thereof, including, without limitation, all

Avoidance Proceeds received or recovered in respect of any Avoidance Claims; <u>provided</u>, <u>however</u>, that the Superpriority Claims in favor of the Term DIP Credit Parties shall be subject to the Carve-Out (as defined below).

B.    <u>Sharing</u>.    If any distribution is made on account of the Superpriority Claims of any DIP Credit Party payable from or from the proceeds of any Unencumbered Property, all DIP Credit Parties shall be entitled to a share thereof based on the Allocation Mechanism.

12.    <u>Repayment</u>.

A.    <u>Repayment of Pre-Petition ABL Debt</u>.    Upon or at any time after entry of this Final Order, ABL DIP Lenders shall be authorized to fund under the ABL DIP Facility one or more ABL DIP Loans in an amount sufficient to pay, and to be used to cause Full Payment of, all outstanding Pre-Petition ABL Debt (the "**_Roll-Up_**"), and in such event, the Debtors are authorized to draw and shall be deemed to have drawn on the ABL DIP Facility in order to effectuate the Roll-Up and cause Full Payment of the Pre-Petition ABL Debt, <u>provided</u> that the Roll-Up shall be subject to any remedy that may be available against the Pre-Petition ABL Credit Parties in the event of a timely and successful challenge pursuant to Paragraph 28 of this Final Order.

B.    <u>Repayment of DIP Obligations</u>.    The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim.    Without limiting the generality of the foregoing, in no event shall any Debtor be authorized to offset or recoup any amounts owed, or allegedly owed, by any Pre-Petition Credit Party or any DIP Credit Party to any Debtor or any of its respective subsidiaries or affiliates against any of the DIP Obligations without the prior

written consent of each Pre-Petition Credit Party or DIP Credit Party that would be affected by any such offset or recoupment, and no such consent shall be implied from any action, inaction or acquiescence by any Pre-Petition Credit Party or DIP Credit Party.

      13.    Cash Collateral.

      A.    Dominion Account. Each Debtor shall cause all Cash Collateral to be promptly deposited in an account designated by ABL DIP Agent (the "**Dominion Account**"). Prior to the deposit of Cash Collateral to the Dominion Account, each Debtor shall be deemed to hold such proceeds in trust for the benefit of ABL DIP Credit Parties.  ABL DIP Agent shall be entitled to apply such Cash Collateral to the payment of the Pre-Petition ABL Debt or the ABL DIP Obligations as authorized by this Final Order and the ABL DIP Loan Agreement, and any Cash Collateral so applied shall have the effect of creating borrowing availability under, as and to the extent provided in, the ABL DIP Loan Agreement.

      B.    Use of Cash Collateral.  Prior to Full Payment[5] of the DIP Obligations, Debtors shall not be authorized to use any Cash Collateral other than to pay Pre-Petition ABL Debt and ABL DIP Obligations indefeasibly and in full and thereafter to pay Pre-Petition Term Debt and Term DIP Obligations. If the Cash Collateral derives from a sale of both ABL Priority Collateral and Term Loan Priority Collateral, the provisions of the Pre-Petition ABL/Term Lender Intercreditor Agreement and the ABL/Term DIP Intercreditor Agreement  respectively, shall apply regarding the allocation of such Cash Collateral; and, except as otherwise expressly

---

[5] As used herein, the term "Full Payment," as applied to any DIP Obligations, Pre-Petition ABL Debt, or Pre-Petition Term Debt, shall mean full and final payment of such indebtedness in cash, the cash collateralization of any contingent obligations as and to the extent required by the applicable loan documents, termination of any commitments to lend under any of the applicable loan documents, expiration of the Challenge Deadline (as defined below) without a challenge having been timely asserted (or, to the extent asserted, full and final payment except and to the extent of such amounts subject to a successful challenge), and, in the case of the DIP Obligations, termination of the relevant DIP Facility.

provided in the ABL/Term DIP Intercreditor Agreement, if a contract is entered into for the sale of assets of one or more Debtors comprising both ABL Priority Collateral and Term Loan Priority Collateral, Pre-Petition Credit Parties and DIP Credit Parties shall promptly initiate an allocation analysis and effort at an agreement in accordance with the Pre-Petition ABL/Term Lender Intercreditor Agreement and the ABL/Term DIP Intercreditor Agreement.

14.    <u>Adequate Protection of Pre-Petition ABL Agent</u>.  As adequate protection for any Collateral Diminution (as defined below) suffered by any Pre-Petition ABL Credit Party, Pre-Petition ABL Agent is entitled, pursuant to Sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral in an amount equal to the Collateral Diminution (the "***ABL Adequate Protection Claims***").  As used in this Final Order, "***Collateral Diminution***" shall mean an amount equal (and limited) to the aggregate diminution of the fair market value of any of the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date for any reason provided for in the Bankruptcy Code, including, without limitation, any such diminution resulting from the use of Cash Collateral, the priming of any Pre-Petition ABL Agent's or Pre-Petition Term Agents' security interests in and liens on the Pre-Petition Collateral by the DIP Liens pursuant to the DIP Financing Documents and this Final Order, the depreciation, sale, loss or use by any Debtor (or any other decline in value) of such Pre-Petition Collateral, the amount of any fees and expenses paid to retained professionals in these Chapter 11 Cases, in accordance with the Budget, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code.  Pre-Petition ABL Agent is hereby granted, subject to the rights of third parties preserved under Paragraph 28, the following for the benefit of Pre-Petition ABL Credit Parties:

A.      ABL Adequate Protection Liens.  Pre-Petition ABL Agent, for the benefit of Pre-Petition ABL Credit Parties, was by the Interim Order and is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by any Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) valid, perfected replacement security interests in and liens on all of the DIP Collateral (the "***ABL Adequate Protection Liens***").  The ABL Adequate Protection Liens on ABL Priority Collateral shall be junior and subordinate only to the ABL DIP Liens and any Pre-Petition Senior Liens, and in the case of Term Loan Priority Collateral, only to the Term DIP Liens, the Pre-Petition Term Liens, Pre-Petition Senior Liens, and the Term Adequate Protection Liens (as defined below).  The ABL Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of any estate pursuant to Section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any ABL Adequate Protection Liens.

B.      Priority of ABL Adequate Protection Claims.  The ABL Adequate Protection Claims, if any, will be allowed as superpriority administrative claims pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, which, subject to  the Superpriority Claims and any expense reimbursement obligations of the Debtors ("***Bid Protections***") approved by the Court under the Purchase Agreement dated March 12, 2015, among Silver Point Finance, LLC, SRC and other parties signatory thereto, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code.

C.    Application of Proceeds of Pre-Petition Accounts and Pre-Petition Inventory.  Until the Roll-Up of the Pre-Petition ABL Loans, all collections and proceeds of accounts receivable and other rights to payment from the proceeds of ABL Priority Collateral will be presumed to constitute and arise from ABL Priority Collateral under the Pre-Petition ABL/Term Loan Intercreditor Agreement existing on the Petition Date (the "***Pre-Petition Accounts***") or arise from the sale, lease or other disposition of inventory of such Pre-Petition Obligor existing on the Petition Date (the "***Pre-Petition Inventory***") or from such Pre-Petition Obligor's provision of services, including, without limitation, all payments by account obligors indebted to such Pre-Petition Obligor with respect to transactions entered into or concluded prior to the Petition Date, and may be applied to pay (or in the case of contingent obligations, to cash collateralize) or, despite any prior application, reapplied to pay, the Pre-Petition ABL Debt or the ABL DIP Obligations in such order of application as Pre-Petition ABL Agent and ABL DIP Agent shall elect, in their discretion, until Full Payment of the Pre-Petition ABL Debt and the ABL DIP Obligations.  Pre-Petition ABL Agent shall be entitled to assume that all deposits to the Dominion Account and all collections of accounts receivable received by a Pre-Petition Obligor after the Petition Date constitute proceeds of Pre-Petition Accounts or Pre-Petition Inventory, until such time as the Pre-Petition ABL Agent has received and applied to the Pre-Petition ABL Debt an amount equal to the aggregate balance of the Pre-Petition Accounts and Pre-Petition Inventory on the books and records of Pre-Petition Obligors as of the Petition Date.

D.    Fees and Expenses of Professionals for Pre-Petition ABL Credit Parties. As additional adequate protection, Debtors shall pay (i) the reasonable and documented professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, financial advisors, and auditors) payable to or incurred by any

Pre-Petition ABL Credit Party under and pursuant to the Pre-Petition ABL Loan Documents arising prior to the Petition Date, and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) payable to or incurred by any Pre-Petition ABL Credit Party under and pursuant to the Pre-Petition ABL Loan Documents arising on or subsequent to the Petition Date; provided, however, that (i) the aggregate amount of such fees and expenses payable to legal counsel for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties shall not exceed on any given date the total amount budgeted for "Bank of America Legal Counsel" on the "Standard Register Advisors: Fee Schedule" attached to the Budget in effect on the date hereof or as subsequently modified with the consent of each DIP Agent (the "*Advisor Fee Schedule*"), irrespective of any portion of such total amount budgeted for such legal counsel for Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties in the Advisor Fee Schedule for any given week or month, and (ii) the aggregate amount of such fees and expenses payable to the financial advisor for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties shall not exceed on any given date the total amount budgeted for "Bank of America Financial Advisor" on the Advisor Fee Schedule, irrespective of any portion of such total amount budgeted for such financial advisor for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties in the Advisor Fee Schedule for any given week or month.  Debtors shall pay within three (3) business days following the conclusion of the Review Period (defined below) the fees, expenses and disbursements set forth in this Paragraph 14(d) provided no written objection is received within ten (10) days after the receipt (the "*Review Period*") by counsel for Debtors, counsel for the Committee, counsel for the Term DIP Agent, and the United States Trustee ("*U.S. Trustee*") of invoices therefor (the "*Invoiced ABL Fees*") (subject in all

respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date, but if such objection is received as to any portion of such invoice (the "***Disputed Invoiced ABL Fees***"), the Debtors shall promptly pay within three (3) business days following the Review Period the portion of such invoice not subject to such objection, and the Bankruptcy Court shall decide any such objection unless otherwise resolved. If the objection to any portion of the Disputed Invoiced ABL Fees is sustained and not subject to any appeal then the amount of the reduction in fees which have already been paid will reduce the ABL DIP Loan balance.

E.    <u>Reservation of Rights</u>. Nothing herein shall be deemed to be a waiver by any Pre-Petition Credit Party of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for any Debtor or the conversion or dismissal of any of these Chapter 11 Cases, or to request any other relief in these cases; nor shall anything herein or in any of the ABL DIP Financing Documents constitute an admission by a Pre-Petition ABL Credit Party regarding the quantity, quality or value of any DIP Collateral securing the Pre-Petition ABL Debt or constitute a finding of adequate protection with respect to the interests of Pre-Petition ABL Agent in any DIP Collateral. Pre-Petition ABL Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the DIP Collateral, to the extent that the protection afforded by the Interim Order or this Final Order to Pre-Petition ABL Agent's interests in any DIP Collateral proves to be inadequate.

15.    <u>Adequate Protection of Pre-Petition Term Agents</u>. As adequate protection for any Collateral Diminution, each Pre-Petition Term Agent is entitled, pursuant to Sections 105, 361,

363 and 364 of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral, including any Cash Collateral, in an amount equal to the Collateral Diminution (which shall include the amount of any fees and expenses of retained professionals in these Chapter 11 Cases, paid in accordance with the Budget) (the "***Term Adequate Protection Claim***").  As adequate protection for the Term Adequate Protection Claim, if any, each Pre-Petition Term Agent is hereby granted, subject to the rights of third parties preserved under Paragraph 28, the following:

        A.    <u>Term Adequate Protection Liens</u>.  Each Pre-Petition Term Agent, for the benefit of its Pre-Petition Term Credit Parties, was by the Interim Order and is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by any Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) to secure the Term Adequate Protection Claims, valid, perfected replacement security interests in and liens on all of the DIP Collateral (the "***Term Adequate Protection Liens***").  The Term Adequate Protection Liens shall be junior and subordinate only to the Term DIP Liens, Pre-Petition Senior Liens, and the Carve-Out, and also, in the case of ABL Priority Collateral, to the ABL DIP Liens, Pre-Petition Senior Liens, the Pre-Petition ABL Liens and the ABL Adequate Protection Liens (as defined below). The Term Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of any estate pursuant to Section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Term Adequate Protection Liens.

        B.    <u>Priority of Term Adequate Protection Claims</u>.  The Term Adequate Protection Claims, if any, will be allowed as superpriority administrative claims as pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, which, subject to the Carve-Out, the Bid

Protections, and the Superpriority Claims, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (the "***Term Adequate Protection Claims***").

          C.    <u>Pre-Petition Term Agents Fees and Expenses</u>.  As additional adequate protection, Debtors shall pay in cash (i) the reasonable and documented professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, accountants, outside consultants,  financial advisors, and other professionals) payable to or incurred by any Pre-Petition Term Credit Party under and pursuant to the Pre-Petition Term Loan Documents arising prior to the Petition Date, (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of one primary counsel and one financial consultant) payable to or incurred by any Pre-Petition Term Credit Party under and pursuant to the Pre-Petition Term Loan Documents arising on or subsequent to the Petition Date and in compliance with the Budget, and (iii) current cash payments payable under the Pre-Petition First Lien Term Loan Agreement (including interest at the Base Rate, plus the First Lien Applicable Margin for Loans accruing interest at the Base Rate, plus a margin of 2% per annum, with such interest payable monthly) shall be made to the First Lien Term Lender Agent.  The payment of the fees, expenses and disbursements set forth in this Paragraph 15(c) shall be made no later than three (3) business days following the conclusion of the Review Period provided no written objection is received within the Review Period after the receipt by counsel for Debtors, counsel for the Committee, counsel for the ABL DIP Agent, and the U.S. Trustee of invoices thereof (the "***Invoiced Term Fees***") (subject in all respects to applicable privilege or work

product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; but if such objection is received to any portion of such invoice (the "***Disputed Invoiced Term Fees***"), the Debtors shall promptly pay within three (3) business days following the Review Period the portion of such invoice not subject to such objection, and the Bankruptcy Court shall decide any such objection unless otherwise resolved. If the objection to any portion of the Disputed Invoiced Term Fees is sustained and not subject to any appeal then the amount of the reduction in fees which have already been paid will be applied to reduce the Term DIP Loan balance.

D.     Reservation of Rights. Nothing herein shall be deemed to be a waiver by any Pre-Petition Credit Party of its right to request additional or further protection of its interests in any Pre-Petition Term Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for any Debtor or the conversion or dismissal of any of these Chapter 11 Cases, or to request any other relief in these cases; nor shall anything herein or in any of the Term DIP Financing Documents constitute an admission by a Pre-Petition Credit Party regarding the quantity, quality or value of any DIP Collateral securing the Pre-Petition Term Debt or constitute a finding of adequate protection with respect to the interests of Pre-Petition Term Agents in any DIP Collateral. Each Pre-Petition Credit Party shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the DIP Collateral, to the extent that the protection afforded by the Interim Order or this Final Order to Pre-Petition Credit Parties' interests in any DIP Collateral proves to be inadequate.

16.     Payments Free and Clear. Any and all payments or proceeds remitted (a) to a DIP Agent on behalf of any DIP Credit Party or (b) subject only to the potential challenges by third

parties as permitted by (but limited to) Paragraph 28 below, to either Pre-Petition ABL Agent or

Pre-Petition Term Agents on behalf of any Pre-Petition Credit Party, in each case with respect to

clauses (a) and (b) herein pursuant to the provisions of this Final Order or any subsequent order

of this Court, shall be received free and clear of any claim, charge, assessment or other liability,

including, without limitation, any such claim or charge arising out of or based on, directly or

indirectly, Section 506(c) or the "equities of the case" exception of 552(b) of the Bankruptcy

Code; provided, however, that with respect to proceeds realized from a sale of all or substantially

all of the DIP Collateral, after notice and a hearing, such proceeds may be used to satisfy any

allowed Section 506(c) surcharge claims (if any) but only after payment of all remaining

Superpriority Claims; provided further, that the parties reserve all rights and defenses as to

whether such proceeds may be used to satisfy any allowed Section 506(c) surcharge claims only

after payment of all ABL Adequate Protection Claims and Term Adequate Protection Claims.

17.    Fees and Expenses of Estate Professionals.    Subject to the Professional Fee

Budget and Paragraph 13.B above, for so long as no Event of Default (as defined below) has

occurred and is continuing, each Debtor is authorized to use DIP Loans to pay such

compensation and expense reimbursement (collectively, "***Professional Fees***") of professional

persons (including attorneys, financial advisors, accountants, investment bankers, appraisers, and

consultants) retained by any Debtor with Court approval (the "***Debtors Professionals***") or the

Committee with Court approval (the "***Committee Professionals***"; and together with the Debtors

Professionals, the "***Professionals***"), to the extent that such compensation and expense

reimbursement is allowed and approved by the Court (including through any interim

compensation procedures approved by the Court); provided, however, that, notwithstanding

anything herein or in any other order of this Court to the contrary, no proceeds of any DIP Loans

or any Cash Collateral shall be used to pay Professional Fees incurred for any Prohibited Purpose (as defined below).

18.    <u>Section 506(c) Claims</u>.   The Court denies to grant a waiver of any ability to surcharge against collateral pursuant to Section 506(c) of the Bankruptcy Code. Notwithstanding anything to the contrary in the DIP Financing Documents or the Interim Order, the right to impose costs or expenses of administration upon any DIP Credit Party, any Pre-Petition Credit Party or any of the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code shall be preserved.  The rights of all parties to seek such an imposition of costs or expenses pursuant to Section 506(c) of the Bankruptcy Code, or to object to such an imposition of costs or expenses pursuant to Section 506(c) of the Bankruptcy Code, shall be preserved, including any arguments related to whether any administrative expenses allowed pursuant to Section 506(c) of the Bankruptcy Code (if any) shall be payable first from any Avoidance Proceeds or other assets not subject to DIP Liens (if any).  Any surcharge pursuant to Section 506(c) of the Bankruptcy Code shall require approval by this Court after reasonable notice, which shall not be less than 21 days' notice (or such shorter period as the Court may order for good cause shown), and an opportunity to be heard.  No consent to surcharge under Section 506(c) shall be implied from any action, inaction or acquiescence by any DIP Credit Party or Pre-Petition Credit Party, and no DIP Credit Party or Pre-Petition Credit Party shall be deemed to consent to such surcharge by entry of this Final Order.  All parties reserve all rights and defenses as to (1) the relative priority of the Adequate Protection Claims set forth in Paragraphs 14(B) and 15(B), on the one hand, to any allowed Section 506(c) surcharge claims, on the other hand, (2) whether any administrative expenses, including those pursuant to Section 506(c) of the Bankruptcy Code (if any), shall be payable first from any Avoidance Proceeds or any other assets not subject to DIP Liens (if any),

and (3) whether any Superpriority Claim referenced in paragraph 11 herein shall be payable and from and have recourse against Avoidance Proceeds.

19.  <u>Carve-Out</u>.  Notwithstanding anything in this Final Order, any DIP Financing Documents, or any other order of this Court to the contrary, prior to Full Payment of the DIP Obligations,  the DIP Liens in favor of Term DIP Agent, the Superpriority Claims in favor of the Term DIP Credit Parties, the Term Loan Security Interests, the Adequate Protection Liens in favor of the Pre-Petition Term Agents, and the Adequate Protection Claims in favor of the Pre-Petition Term Credit Parties shall be subject and subordinate in all respects to the payment of the following Carve-Out.  As used in this Final Order, "***Carve-Out***" means the sum of (i) all unpaid fees required to be paid (a) to the Clerk of this Court and (b) to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c), (ii) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code not to exceed $25,000, and (iii)  in the event of an occurrence and during the continuance of an "Event of Default" as that term is defined in any of the DIP Financing Documents (an "***Event of Default***"), and delivery (which may be by email) of notice (the "***Carve-Out Trigger Notice***") to counsel to the Debtors and the Committee, the "***Case Professionals Carve-Out,***" comprising the sum of (A) all allowed unpaid fees, expenses, and disbursements (regardless of when such fees, expenses, and disbursements become allowed by order of the Court) incurred by the Debtors and any committee appointed under Section 1102(a)(1) of the Bankruptcy Code in the Chapter 11 Cases subsequent to receipt of the Carve-Out Trigger Notice, in an aggregate amount not to exceed $350,000 (the "***Carve-Out Cap***"), plus (B) all allowed and unpaid professional fees and disbursements (regardless of when such fees, expenses, and disbursements become allowed by order of the Court) incurred or accrued by the Debtors or the Committee prior to receipt of the

Carve-Out Trigger Notice, in an aggregate amount not exceeding such unpaid professional fees and disbursements reflected on the most recent professional fee budget delivered to and approved by the DIP Agents (the "***Professional Fee Budget***") prior to any Event of Default that is then continuing, such fees to be prorated for the current month through the date of the Carve-Out Trigger Notice, unless otherwise prorated pursuant to the Professional Fee Budget (to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each of the foregoing clauses (i)-(iii), to the extent allowed by the Court at any time, provided that, following receipt of the Carve-Out Trigger Notice, the Carve-Out shall at all times be subject to an aggregate cap of the lesser of (1) (w) $4,650,333, plus (y) any amounts projected by the Professional Fee Budget to have been paid prior to the date of the Carve-Out Trigger Notice but not paid, less (y) any amounts that have been paid but were not projected by the Professional Fee Budget to have been paid prior to the date of the Carve-Out Trigger Notice, less (z) outstanding retainers then held by Professionals (other than up to $1,650,000 in the aggregate for agreed to retainers, composed of up to $700,000 held by Gibson Dunn, up to $750,000 held by McKinsey, and up to $200,000 held by Dinsmore & Shohl) and (2) the cumulative amount of allowed fees, expenses, and disbursements incurred or accrued in compliance with the Professional Fee Budget prior to the delivery of a Carve-Out Trigger Notice (regardless of when such fees, expenses, and disbursements become allowed by order of the Court), less all amounts paid to such Professionals prior to the delivery of a Carve-Out Trigger Notice, less all retainers held by such Professionals as of the date of a Carve-Out Trigger Notice (the lesser of (1) and (2), the "***Aggregate Carve-Out Cap***"), which Aggregate Carve-Out Cap may be increased with the written consent of the DIP Agents and without further order of the Court, provided further, that nothing in this Final Order shall be construed to impair the ability of

any party to object to the fees, expenses, reimbursement or compensation of any Professional, whether or not in excess of the Aggregate Carve-Out Cap, or to impair the ability of any Professional to seek allowance of fees and costs in excess of the amounts of the Professional Fee Budget, provided that any such additional Professional Fees will not, without the written consent of the DIP Agents, be paid ahead of Full Payment of the DIP Obligations, the Pre-Petition ABL Debt or the Pre-Petition Term Debt from the collateral securing such debt, subject to Paragraph 18 above.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Financing Documents, until Full Payment of the DIP Obligations, the Carve-Out shall be senior to all liens and claims in favor of any Term DIP Credit Party securing the DIP Financing, the Superpriority Claims in favor of any Term DIP Credit Party, and the Term Adequate Protection Liens and  Term Adequate Protection Claims, it being understood and agreed that the Carve-Out shall be allocated 100% against and assessable solely from the Term Loan Priority Collateral and that no pre-petition or post-petition claims or liens in favor of any ABL DIP Credit Party or any Pre-Petition ABL Credit Party shall be subject to or otherwise affected by the Carve-Out.  The current Professional Fee Budget is attached hereto as <u>Exhibit 1</u>.[6]  In no event

---

[6]    The attached Professional Fee Budget shall control until and unless a subsequent Professional Fee Budget is submitted to and approved by the DIP Lenders.  The Professional Fee Budget may be updated from time to time based on mutual agreement of the DIP Agents and the Debtors, so long as the fees for any Professional are not reduced without the consent of that Professional and any mutually agreed revised Professional Fee Budget shall constitute the Professional Fee Budget for all purposes under this Final Order.  Notwithstanding anything to the contrary in this Final Order, the right of each Professional to seek payment pursuant to the Professional Fee Budget, including payments from, as applicable, the Carve-Out or the Wind-Down Amount (as defined in the Term DIP Loan Agreement), shall be limited to the projected cumulative amount of Allowed Professional Fees set forth in the Budget for such Professional through the end of the week in which the Carve-Out Trigger Notice or the Maturity Date of the DIP Term Loan occurs.  Absent further order of the Court, no Professional can be paid from the amounts budgeted under the Professional Fee Budget for Professional Fees budgeted for any other Professional.  The Court reserves the right to allocate all amounts provided for under the Professional Fee Budget between and among professionals for the Debtors and the Committee.  Nothing in this Final Order shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation of any Professional, whether or not in excess of the sum of the Professional Fees set forth in the Professional Fee Budgets, or the ability of any Professional to seek allowance of fees and costs in excess of the amounts in the Professional Fee Budget, provided that any such additional Professional Fees will not be paid ahead of Full Payment of the DIP Obligations, the Pre-Petition ABL Debt or the Pre-Petition Term Debt from the collateral securing such debt, subject to Paragraph 18
*(cont'd)*

shall the Carve-Out, or the funding of the DIP Loans to satisfy the Carve-Out, result in any reduction in the amount of the DIP Obligations, the Pre-Petition ABL Debt or the Pre-Petition Term Debt.

20.    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of the DIP Financing in any respect, including, without limitation, any DIP Credit Extensions, Cash Collateral, Letters of Credit or DIP Collateral, shall be used to pay any Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following (each a "**Prohibited Purpose**"): (a) objecting to or contesting the validity or enforceability of the Interim Order, this Final Order, or any DIP Obligations, Pre-Petition ABL Debt or Pre-Petition Term Debt, provided that the Committee may spend up to $75,000 (the "**Investigation Budget**") for the fees and expenses incurred in connection with the investigation of, but not the litigation, objection or any challenge to, any Pre-Petition Security Interest, Pre-Petition ABL Debt, Pre-Petition Term Debt, or Pre-Petition Loan Documents; (b) asserting or prosecuting any claim or cause of action against any DIP Lender, either DIP Agent, or any Pre-Petition Credit Party, other than to enforce the terms of a DIP Facility or this Final Order; (c) seeking to modify any of the rights granted under this Final Order to any DIP Lender or either DIP Agent or any Pre-Petition Credit Party; or (d) objecting to, contesting, delaying, preventing or interfering with in any way with the exercise of rights and remedies by any DIP Credit Party or Pre-Petition Credit Party with respect to any DIP

---

*(cont'd from previous page)*
above.  Each Professional shall be entitled to be paid all Professional Fees (whether awarded before or after the Carve-Out Trigger Notice), from the Carve-Out or the Wind-Down Amount, as applicable, or any unused retainer held by that Professional up to the cumulative amounts budgeted for that Professional in the Professional Fee Budgets for the period from the Petition Date through the Carve-Out Trigger Notice or Maturity Date, as applicable (with the current months budgeted fees being prorated to the date of the Carve-Out Trigger Notice or Maturity Date, as applicable), less any payments previously made to that Professional on an interim basis.

Collateral or Pre-Petition Collateral after the occurrence and during the continuance of an Event

of Default, provided that Debtors may contest or dispute whether an Event of Default has

occurred and shall be entitled to any notice provisions provided in this Final Order.

21.     Preservation of Rights Granted.

A.     Protection from Subsequent Financing Order.  It shall constitute an Event

of Default if there is entered in any of these Chapter 11 Cases or in any Successor Case any order

that authorizes the obtaining of credit or the incurrence of indebtedness by any Debtor (or any

trustee or examiner) that is (i) secured by a security interest, mortgage or collateral interest or

lien on all or any part of the DIP Collateral that is equal to or senior to the DIP Liens or (ii) entitled

to priority administrative status that is equal or senior to the Superpriority Claims granted to DIP

Credit Parties herein; provided, however, that nothing herein shall prevent the entry of an order

that specifically provides for, as a condition to the granting of the benefits of clauses (i) or (ii)

above, the Full Payment of all of the DIP Obligations, in the manner required by the DIP Loan

Agreements, from the proceeds of such credit or indebtedness, and the termination of any

funding commitments under the ABL DIP Facility.

B.     Rights Upon Dismissal, Conversion or Consolidation.   If any of the

Chapter 11 Cases are dismissed, converted or substantively consolidated with another case, then

neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of

any of the Chapter 11 Cases shall affect the rights or remedies of any DIP Credit Party under the

DIP Financing Documents or the rights or remedies of any DIP Credit Party or Pre-Petition

Credit Party under this Final Order, and all of the respective rights and remedies hereunder and

thereunder of each DIP Credit Party and each Pre-Petition Credit Party shall remain in full force

and effect as if such Chapter 11 Case had not been dismissed, converted, or substantively

consolidated. Unless and until Full Payment of all DIP Obligations and Adequate Protection

Claims has occurred, it shall constitute an Event of Default if any Debtor seeks, or if there is

entered, any order dismissing any of the Chapter 11 Cases. Notwithstanding the entry of any

order dismissing any of the Chapter 11 Cases, (i) the Superpriority Claims, the Adequate

Protection Claims, the DIP Liens and the Adequate Protection Liens shall (a) continue in full

force and effect and shall maintain their priorities as provided in this Final Order until Full

Payment of all DIP Obligations and all Adequate Protection Claims and (b) remain binding on

all parties in interest, (ii) the other rights granted by this Final Order shall not be affected,

including the rights granted by Paragraph 27 of this Final Order, and (iii) this Court shall retain

jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and

security interests referred to in this paragraph and otherwise in this Final Order.  None of the DIP

Obligations shall be discharged by the entry of any order confirming a plan of reorganization or

liquidation in any of these Chapter 11 Cases and, pursuant to Section 1141(d)(4) of the

Bankruptcy Code, each Debtor has waived such discharge as to any remaining DIP Obligations.

        C.     <u>Survival of Order</u>.  The provisions of this Final Order, and any actions

taken pursuant thereto, shall survive entry of and shall govern with respect to any conflict with

any order that may be entered confirming any plan of reorganization or liquidation in any of the

Chapter 11 Cases or any Successor Case.

        D.     <u>Credit Bid Rights</u>.  Without prejudice to any successful challenge brought

prior to the Challenge Deadline (defined below),  the DIP Lenders, the Pre-Petition Term Credit

Agreement Parties and the Pre-Petition ABL Credit Parties shall each have the right to credit bid

up to the full amount of the applicable outstanding DIP Obligations, Pre-Petition Term Debt (as

applicable) and Pre-Petition ABL Debt (as applicable), in each case including any accrued

interest, in any sale of the DIP Collateral (or any part thereof) or Pre-Petition Collateral (or any part thereof), as applicable, without the need for further Court order authorizing same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, subject in each case to the Pre-Petition ABL/Term Lender Intercreditor Agreement and the ABL/Term DIP Intercreditor Agreement.

E.    No Marshaling.  In no event shall any DIP Credit Party or Pre-Petition Credit Party be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral; and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of any Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

F.    No Requirement to File Claim for DIP Obligations.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims entitled to administrative expense treatment under Section 503(b) of the Bankruptcy Code, no DIP Credit Party shall be required to file any proof of claim with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Agreements and the other DIP Financing Documents applicable thereto without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Financing Documents or prejudice or otherwise adversely affect any DIP Credit Party's rights, remedies, powers or privileges under any of the DIP Financing Documents or this Final Order.

22.  <u>Automatic Perfection of Liens</u>.  The DIP Liens, and subject to the third party challenge rights in Paragraph 28, the ABL Adequate Protection Liens and the Term Adequate Protection Liens were upon entry of the Interim Order and are deemed valid, binding, enforceable and duly perfected.  Neither any Pre-Petition Credit Party nor any DIP Credit Party shall be required to file any UCC 1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including taking possession of any of the DIP Collateral) in order to validate the perfection of any DIP Liens, the ABL Adequate Protection Liens or the Term Adequate Protection Liens, but all of such filings and other actions are hereby authorized by the Court.  The DIP Agents shall be deemed to have "control" over all deposit accounts for all purposes of perfection under the Uniform Commercial Code.  If Pre-Petition ABL Agent, either Pre-Petition Term Agent or either DIP Agent shall, in its discretion, choose to file or record any such mortgages, deeds of trust, security deeds, notices of lien, or UCC-1 financing statements, or take any other action to evidence the perfection of any part of the DIP Liens, the ABL Adequate Protection Liens or the Term Adequate Protection Liens, each Debtor and its respective officers are authorized to execute any documents or instruments as Pre-Petition ABL Agent, either Pre-Petition Term Agent or either DIP Agent shall request.  Any Pre-Petition Credit Party or DIP Credit Party may, in its discretion, file a certified copy of this Final Order in any filing office in any jurisdiction in which any Debtor is organized or has or maintains any DIP Collateral or an office, and each filing office is authorized to accept such certified copy of this Final Order for filing and recording.  Any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more counterparties or requires the payment of any fees or obligations to any governmental entity, in order for a Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the

proceeds thereof is hereby found to be (and shall be deemed to be) inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting either DIP Agent a security interest in and lien on such interest, or the proceeds of any assignment and/or sale thereof by any Debtor, in accordance with the terms of the applicable DIP Financing Documents and this Final Order.

23.    <u>Reimbursement of Expenses</u>.  All reasonable costs and expenses incurred by a DIP Agent (or, to the extent provided by the applicable DIP Loan Agreements, any DIP Lender) in connection with (i) the negotiation and drafting of any DIP Financing Documents or any amendments thereto, (ii) the preservation, perfection, protection and enforcement of a DIP Agent's and any DIP Lender's rights hereunder or under any DIP Financing Documents, (iii) the collection of any DIP Obligations, or (iv) the monitoring of these Chapter 11 Cases, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, consultants, financial advisors, appraisers and other professionals incurred by a DIP Credit Party Agent in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the DIP Obligations owing to such DIP Credit Party and shall be paid by Debtors (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the applicable DIP Financing Documents and the Budget; provided, however, that (i) the aggregate amount of such fees and expenses payable to legal counsel for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties shall not exceed on any given date the total amount budgeted for "Bank of America Legal Counsel" on the Advisor Fee Schedule, irrespective of any portion of such total amount budgeted for such legal counsel for Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties in the Advisor Fee Schedule for any given week or month, and (ii) the

aggregate amount of such fees and expenses payable to the financial advisor for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties shall not exceed on any given date the total amount budgeted for "Bank of America Financial Advisor" on the Advisor Fee Schedule, irrespective of any portion of such total amount budgeted for such financial advisor for the Pre-Petition ABL Credit Parties and the ABL DIP Credit Parties in the Advisor Fee Schedule for any given week or month. The payment of the fees, expenses and disbursements set forth in this Paragraph 23 shall be made no later than three (3) business days following the conclusion of the Review Period, provided no written objection is received within the Review Period after the receipt by counsel for Debtors, counsel for the Committee, counsel to each DIP Agent, and the U.S. Trustee of invoices thereof (the "*Invoiced DIP Agent Fees*") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; but if such objection is received to any portion of such invoice (the "*Disputed Invoiced DIP Agent Fees*") the Debtors shall promptly pay within three (3) business days following the Review Period the portion of such invoice not subject to such objection, and the Bankruptcy Court shall decide any such objection unless otherwise resolved.

24.     Amendments to DIP Financing Documents.  Debtors and DIP Credit Parties are hereby authorized to implement, in accordance with the terms of the applicable DIP Financing Documents and without further order of the Court, any amendments to and modifications of any of such DIP Financing Documents on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of such DIP Financing Documents, (ii) copies of the amendment or modification must be served upon counsel for the Committee, the U.S. Trustee, and other interested parties specifically requesting such notice, and

(iii) notice of the amendment must be filed with the Court. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "material change" shall mean, without limitation, a change to a DIP Financing Document that operates to shorten a DIP Facility or the maturity of the DIP Obligations, to increase the aggregate amount of the commitments of DIP Lenders under such DIP Facility, to increase the rate of interest other than as currently provided in or contemplated by such DIP Financing Documents, to add specific Events of Default, or to enlarge the nature and extent of remedies available to a DIP Agent following the occurrence of an Event of Default.  Without limiting the generality of the foregoing, any (i) amendment of a DIP Loan Agreement to postpone or extend any date or deadline therein (including, without limitation, the expiration of the term of a DIP Facility) or (ii) any other change that does not materially and adversely affect the rights of the Debtors under the DIP Financing Documents shall not constitute a "material change" and may be effectuated by Debtors and the applicable DIP Credit Parties without the need for further approval of the Court.

25.    Events of Default; Remedies.

A.    Events of Default.  The occurrence of any "Event of Default" under (and as defined in) either of the DIP Loan Agreements, subject to the ABL/Term DIP Intercreditor Agreement, shall constitute an Event of Default under this Final Order.

B.    Default Remedies.  Upon the occurrence of an Event of Default and during the continuance thereof, (i) either DIP Agent may file with the Court and serve upon Debtors, counsel for Debtors, counsel for the Committee and the U.S. Trustee a written notice (a "*Default Notice*") describing the Events of Default that exist, in which event effective five (5) business days thereafter, DIP Credit Parties shall be fully authorized, in their sole discretion, to

terminate further DIP Credit Extensions under the DIP Facilities, demand payment of all DIP Obligations, and hold and apply any balances in any accounts of Debtors to the payment or cash collateralization of any of the DIP Obligations, subject to the ABL/Term DIP Intercreditor Agreement; and (ii) each Agent shall be deemed to have received complete relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code with respect to all of the Collateral, effective following the expiration of the Default Notice period and, unless otherwise ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under Section 362(a) of the Bankruptcy Code shall be to contest the occurrence and/or continuance of an Event of Default. Upon the effectiveness of any relief from the automatic stay granted or deemed to have been granted to Agents, each Agent may, subject to the ABL/Term DIP Intercreditor Agreement, Pre-Petition ABL/Term Lender Intercreditor Agreement and Term Lender Intercreditor Agreement, enforce its DIP Liens, the Pre-Petition Security Interests, and the Adequate Protection Liens with respect to the Collateral, take all other actions and exercise all other remedies under the DIP Financing Documents, the Pre-Petition Loan Documents and applicable law that may be necessary or deemed appropriate to collect any of its DIP Obligations and/or the Pre-Petition Debt, proceed against or realize upon all or any portion of the Collateral as if these Chapter 11 Cases or any Successor Case was not pending, and otherwise enforce any of the provisions of this Final Order.  Any Agent's delay or failure to exercise rights and remedies under the DIP Financing Documents or this Final Order shall not constitute a waiver of such Agent's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement.  In furtherance of Paragraph 19 above, the Term DIP Credit Parties shall provide for cash payment of any Carve-Out in an amount not to exceed the Aggregate Carve-Out

Cap from the proceeds of the Term Loan Priority Collateral before any sums are paid to the Term DIP Credit Parties from such proceeds.

        C.    <u>Rights Cumulative</u>.  The rights, remedies, powers and privileges conferred upon DIP Credit Parties pursuant to this Final Order shall be in addition to and cumulative with those contained in the applicable DIP Financing Documents.

        26.    <u>Loan Administration</u>.

        A.    <u>Continuation of Pre-Petition Procedures</u>.  Subject to the ABL/Term DIP Intercreditor Agreement, all pre-petition practices and procedures for the payment and collection of proceeds of the ABL Priority Collateral and the Term Loan Priority Collateral, the turnover of cash, and the delivery of property to the Pre-Petition ABL Agent and the Pre-Petition Term Agent, including any lockbox and/or blocked depository bank account arrangements are hereby approved and shall continue without interruption after the commencement of the Chapter 11 Cases.

        B.    <u>Inspection Rights</u>.  Representatives of each DIP Agent shall be authorized, with prior notice to Debtors, to visit the business premises of any Debtor and its subsidiaries to (i) inspect any Collateral, (ii) inspect and make copies of any books and records of any Debtor, and (iii) verify or obtain supporting details concerning the financial information to be provided by any Debtor hereunder or under any of the DIP Financing Documents, and Debtors shall facilitate the exercise of such inspection rights.

        C.    <u>DIP Agents' Right to Retain Professionals</u>.  Each DIP Agent shall be authorized to retain attorneys (including local counsel in the United States and Mexico and ERISA counsel), appraisers, consultants, auditors, field examiners, and financial advisors, at Debtors' expense, which attorneys, appraisers, consultants, auditors, field examiners, and

financial advisors shall be afforded reasonable access to the Collateral and each Debtor's business premises and records, during normal business hours, for purposes of monitoring the businesses of Debtors, verifying each Debtor's compliance with the terms of the DIP Financing Documents and this Final Order, and analyzing or appraising all or any part of the Collateral.

27.   <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the provisions of this Final Order and the DIP Financing Documents, thereby permitting each Agent to receive collections and proceeds of Collateral for application to the DIP Obligations, Pre-Petition ABL Debt or Pre-Petition Term Debt as and to the extent provided herein, to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens or Adequate Protection Liens, and to enforce the DIP Liens and Adequate Protection Liens as and to the extent authorized by this Final Order.

28.   <u>Effect of Stipulations on Third Parties; Deadline for Challenges</u>.

A.   Each Debtor's admissions, stipulations, agreements and releases contained in this Final Order, including, without limitation, those contained in Paragraph 6 of this Final Order, shall be binding upon such Debtor and any successor thereto (including, without limitation (but subject to the provisions of subparagraph E below), any Chapter 7 trustee or Chapter 11 trustee or examiner appointed or elected for such Debtor) under all circumstances and for all purposes.

B.   Each Debtor's admissions, stipulations, agreements and releases contained in this Final Order shall be binding upon all other parties in interest (including, without limitation, any committee appointed under Section 1102(a)(1) of the Bankruptcy Code) under all

circumstances and for all purposes unless (a) the Committee or another party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) having requisite standing has timely and properly filed an adversary proceeding or contested matter by no later than the Challenge Deadline (as defined below) (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Pre-Petition ABL Debt, Pre-Petition Term Debt, or any Pre-Petition Credit Party's Liens or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Pre-Petition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, and (b) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  As used herein, the term "*Challenge Deadline*" means the date that is the later of (i) in the case of a party in interest with requisite standing other than the Committee, May 27, 2015, (ii) in the case of the Committee, May 26, 2015 (and subject to the Investigation Budget), (iii) any such later date agreed to in writing by DIP Agents, in their sole discretion, and (iv) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, <u>provided</u> that, with respect to any specific party whose Challenge Deadline has been extended in accordance with clause (iv) above, such order is entered before the expiration of any applicable period as set forth in clauses (i) through (iv) of this sentence.

C.    If no such adversary proceeding or contested matter is timely and properly filed as of the applicable Challenge Deadline against a Pre-Petition Credit Party or the Court does not rule in favor of the plaintiff in any such proceeding, then in these Chapter 11 Cases and in any Successor Case, then each Debtor's admissions, stipulations, agreements and releases contained in this Final Order, including, without limitation, those contained in Paragraph 6

above, shall be binding on all parties in interest. If any such adversary proceeding or contested matter is properly filed as of such dates, each Debtor's admissions, stipulations, agreements and releases contained in this Final Order, including, without limitation, those contained in Paragraph 6 of this Final Order, shall nonetheless remain binding and preclusive on such party except to the extent that such admissions, stipulations, agreements and releases were expressly challenged in such adversary proceeding or contested matter and the plaintiff prevails on the merits. Nothing contained in this Final Order shall vest or confer any person or entity, including any committee appointed under Section 1102(a)(1) of the Bankruptcy Code, with standing or authority to pursue or commence any such adversary proceeding or contested matter.

D.    Notwithstanding anything else contained in this Final Order, if an adversary proceeding or contested matter is timely and properly filed as of the applicable Challenge Deadline against a Pre-Petition Credit Party, the entity prosecuting that timely adversary proceeding or motion can, if successful, challenge the adequate protection provided with respect to any lien avoided and payments made to any Pre-Petition Credit Party and all of the provisions regarding Adequate Protection Claims and Adequate Protection Liens in this Final Order are qualified by this reservation of the rights of third parties. If the Adequate Protection payments made exceed the amount of adequate protection to which any Pre-Petition Credit Party is entitled, that excess shall be applied to that Pre-Petition Credit Party's allowed secured claim.

E.    For the avoidance of doubt, any Chapter 7 trustee or Chapter 11 trustee appointed or elected prior to the Challenge Deadline, or during the pendency of any adversary proceeding or contested matter timely commenced by the Committee or any other party in interest pursuant to this Paragraph 28, shall be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the

acknowledgements, admissions, confirmations, stipulations and waivers of the Debtors in this Final Order. If the Chapter 11 Cases are converted to one or more cases under Chapter 7, the Trustee shall be permitted to continue prosecution of any pending adversary proceeding or contested matter theretofore timely commenced pursuant to this Paragraph 28 on behalf of the Debtors' estates.

29.   <u>Certain Debtors' Defaults</u>.  It shall constitute an Event of Default for any of the Debtors (or any subsequently appointed trustee) to seek, or if there is entered, any order authorizing the Debtors or their estates (i) to use Cash Collateral except to the extent expressly permitted in this Final Order; (ii) until Full Payment of all DIP Obligations, Pre-Petition ABL Debt and Pre-Petition Term Debt,   to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from a DIP Credit Party on the terms and conditions set forth herein; (iii) to challenge the application of any payments authorized by this Final Order pursuant Section 506(b) of the Bankruptcy Code or assert that the value of the ABL Priority Collateral is less than the amount of the Pre-Petition ABL Debt or that the value of the Term Loan Priority Collateral is less than the aggregate amount of the Pre-Petition First Lien Term Loans; (iv) to propose or support a plan of reorganization or liquidation that does not provide for the indefeasible payment in full and satisfaction of all Obligations under both the ABL DIP Facility and the Term DIP Facility on or before the effective date of such plan; (v) to challenge that any security interests, claims or liens arising on account of intercompany transactions are junior and subordinate to all DIP Obligations and Pre-Petition Security Interests; or (vi) to seek relief under the Bankruptcy Code, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of any DIP Credit Party or any Pre-

Petition Credit Party as provided in this Final Order or any of the DIP Financing Documents, as applicable, or a DIP Credit Party's exercise of such rights or remedies, in each case subject to the terms of the ABL/Term Intercreditor Agreement.

30.     <u>Intercreditor Agreements</u>.   The provisions of the Pre-Petition ABL/Term Lender Intercreditor Agreement, Term Lender Intercreditor Agreement, and ABL/Term DIP Intercreditor Agreement (as each may be amended by agreement of the parties thereto) shall continue in full force and effect during the pendency of the Chapter 11 Cases or any Successor Case, and all DIP Credit Parties shall be bound by the terms and provisions set forth in the Intercreditor Agreement to which they are a party except to the extent of any inconsistency with the provisions of this Final Order, in which event the provisions of this Final Order shall govern and control. All of the types and items of property that are included within the ABL Priority Collateral or Term Loan Priority Collateral (as those terms are defined in the ABL/Term DIP Intercreditor Agreement) and that are created, acquired or arise after the Petition Date shall constitute ABL Priority Collateral and Term Loan Priority Collateral, as applicable, for all purposes of the Pre-Petition ABL/Term Lender Intercreditor Agreement and this Final Order.

31.     <u>No Deemed Control</u>. In determining to make any DIP Credit Extension under a DIP Loan Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Final Order, any other order of this Court or the DIP Financing Documents, no DIP Credit Party and no Pre-Petition Credit Party shall solely by reason thereof be deemed to be in control of any Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, <u>et</u> <u>seq.</u>, as

amended, or any similar state or federal statute) with respect to the operation or management of such Debtor.

32. <u>Exculpation</u>.  Nothing in this Final Order, the DIP Financing Documents, or any other document related to the DIP Facilities shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Credit Party or any Pre-Petition Credit Party any liability for any claims arising from the pre-petition or post-petition activities of any Debtor in the operation of its business or in connection with its restructuring efforts.  So long as a DIP Credit Party or Pre-Petition Credit Party complies with its obligations under the applicable DIP Financing Documents and its obligations, if any, under this Final Order and applicable law (i) such DIP Credit Party or Pre-Petition Credit Party shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (C) any diminution in the value thereof, or (D) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person or entity; and (ii) all risk of loss, damage or destruction of the Collateral shall be borne by Debtors.

33. <u>Authorization to File Master Proof of Claim</u>.  The Pre-Petition ABL Agent and the Pre-Petition Term Agents shall not be required to file any proof of claim with respect to any of the Pre-Petition Debt, all of which shall be due and payable in accordance with the Pre-Petition Term Loan Agreements and the Pre-Petition ABL Loan Documents and the other financing documents applicable thereto without the necessity of filing any such proof of claim; and the failure to file any such proof of claim shall not affect the validity or enforceability of the Pre-Petition Term Loan Agreements or the Pre-Petition ABL Loan Documents or prejudice or otherwise adversely affect any Pre-Petition Term Credit Parties'  rights, remedies, powers or privileges under any of the Pre-Petition Term Loan Agreements, the Pre-Petition ABL Loan

Documents, or this Final Order. Notwithstanding the preceding sentence, if the Pre-Petition ABL Agent or the Pre-Petition Term Agents so elect, and in order to facilitate the processing of claims, to ease the burden upon the Court and interested parties and to reduce unnecessary expense to Debtors' estates that would be incurred by requiring each Pre-Petition Credit Party to file a separate proof claim in each Chapter 11 Case, Pre-Petition ABL Agent and each Pre-Petition Term Agent shall be authorized and empowered (but not required) to (i) file in each Chapter 11 Case a master proof of claim (a "***Master Proof of Claim***") on behalf of Pre-Petition ABL Lenders and Pre-Petition Term Lenders on account of their respective claims against Debtors, and (ii) collect and receive any monies or other property payable or distributable on account of any such claims and to share such payments or property with Pre-Petition Credit Parties and Pre-Petition Term Credit Parties in accordance with their respective Pre-Petition Loan Documents. Upon the filing of a Master Proof of Claim, each Pre-Petition Credit Party on whose behalf such Master Proof of Claim was filed shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claim against Debtors under the applicable Pre-Petition Loan Documents, and the claim of each Pre-Petition Credit Party (and each of its respective successors and assigns) named in such Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each Chapter 11 Case. Neither Pre-Petition ABL Agent nor either Pre-Petition Term Agent shall be required to amend a Master Proof of Claim filed by it to reflect a change in the holder of a claim set forth therein or a reallocation among such holders of the claims asserted therein and resulting from the transfer of all or any portion of such claims.  The provisions of this Paragraph 33 and each Master Proof Claim are intended solely for the purpose of administrative convenience and shall not affect any right of any Pre-Petition Credit Party (or its respective successors in interest) to vote separately

on any plan of reorganization or liquidation proposed in any of these Chapter 11 Cases. Neither Pre-Petition ABL Agent nor either Pre-Petition Term Agent shall be required to file with a Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by Debtors to any Pre-Petition Credit Party, which instruments, agreements or other documents will be provided upon written request to counsel for Pre-Petition ABL Agent or Pre-Petition Term Agents, as applicable.

34.      <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Final Order shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, DIP Credit Parties and Debtors and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed for the estate of any Debtor, any Chapter 7 trustee appointed or elected in a Successor Case, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor), and shall inure to the benefit of DIP Credit Parties and their respective successors and assigns. In no event shall any DIP Credit Party or Pre-Petition Credit Party have any obligation to make DIP Credit Extensions to, or permit the use of the Collateral (including Cash Collateral) by, any Chapter 7 trustee, Chapter 11 trustee or similar responsible person appointed or elected for the estate of any Debtor.

35.      <u>Insurance</u>.  To the extent Pre-Petition ABL Agent and/or either Pre-Petition Term Agent is listed as loss payee under any Debtor's insurance policies, ABL DIP Agent and/or Term DIP Agent shall also deemed to be the loss payee under such Debtor's insurance policies and, subject to the ABL/Term Intercreditor Agreement, shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies.

36.    <u>DIP Collateral Rights</u>.  Except as expressly permitted in this Final Order and the DIP Financing Documents, in the event that any person or entity holds a lien on or security interest in DIP Collateral that is junior or subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source, prior to payment in full and in cash and the complete satisfaction of all DIP Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the applicable DIP Lenders, and shall immediately turnover such proceeds to the DIP Lenders for application in accordance with this Final Order and the DIP Financing Documents.

37.    <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any DIP Loans under the respective DIP Financing Documents unless the conditions precedent to making such extensions of credit under the respective DIP Financing Documents have been satisfied in full or waived in accordance with such DIP Financing Documents.

38.    <u>No Impact on Certain Contracts or Transactions</u>.  No rights of any entity in connection with a contract or transaction of the kind listed in Sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

39.    <u>Effectiveness; Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or

effectiveness of this Final Order; and any stay of the effectiveness of this Final Order that might otherwise apply is hereby waived for cause shown.

40.     Inconsistencies.     To the extent that any provisions in the DIP Financing Documents or the Interim Order are expressly inconsistent with any of the provisions of this Final Order, the provisions of this Final Order shall govern and control.

41.     Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

42.     Retention of Jurisdiction.   The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any Chapter 11 plan for any Debtor notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

Dated: April __, 2015
        Wilmington, Delaware


_____
HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

**Professional Fee Budget**

## Professional Fee Budget

| Professional | March 2015 (post-petition) | April 2015 | May 2015 | June 2015 | July 2015 | August 2015 |
|---|---|---|---|---|---|---|
| Lazard | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| McKinsey | 600,000 | 750,000 | 750,000 | 600,000 | 450,000 | 100,000 |
| Gibson Dunn | 1,000,000 | 750,000 | 1,000,000 | 1,000,000 | 500,000 | 500,000 |
| Dinsmore | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| Young Conaway | 150,000 | 150,000 | 150,000 | 150,000 | 100,000 | 100,000 |
| Prime Clerk | 475,000 | 420,000 | 40,000 | 25,000 | 40,000 | 25,000 |
| Ordinary Course Professionals | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| UCC Legal | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | -- |
| UCC Financial | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | -- |