# EXHIBIT A

## REVISED FINAL ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 5, 56** |

**FINAL ORDER AUTHORIZING (A) CONTINUED USE OF CASH MANAGEMENT SYSTEM; (B) MAINTENANCE OF EXISTING BANK ACCOUNTS; (C) CONTINUED USE OF EXISTING BUSINESS FORMS; (D) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS IN THE ORDINARY COURSE OF BUSINESS AND GRANT OF ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS; AND (E) INTERIM WAIVER OF <u>SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS</u>**

Upon the *Debtors' Motion for Order Authorizing (a) Continued Use of Cash Management System; (b) Maintenance of Existing Bank Accounts; (c) Continued Use of Existing Business Forms; (d) Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Grant of Administrative Expense Status for Postpetition Intercompany Claims; and (e) Interim Waiver of Section 345(b) Deposit and Investment Requirements* (the "<u>Motion</u>")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

having found that venue of these cases and the Motion in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b); and the Court having found that notice of the Motion has been

given as set forth in the Motion and that such notice is adequate and no other or further notice

need be given; and the Court having determined that it may enter a final order consistent with

Article III of the United States Constitution; and upon consideration of the First Day Declaration;

and the Court having entered that certain *Interim Order Authorizing (A) Continued Use of Cash

Management System; (B) Maintenance of Existing Bank Accounts; (C) Continued Use of

Existing Business Forms; (D) Continued Performance of Intercompany Transactions in the

Ordinary Course of Business and Grant of Administrative Expense Status for Postpetition

Intercompany Claims; and (E) Interim Waiver of Section 345(b) Deposit and Investment

Requirements* [Docket No. 56]; and a hearing having been held to consider the relief requested in

the Motion; and upon the record of the hearing and all of the proceedings had before the Court;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates, their creditors and all other parties in interest; and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED THAT**:

1.     The Motion is GRANTED as set forth herein on a final basis.

2.     The Debtors are authorized, but not directed, to continue using the Cash

Management System as described in the Motion, subject to the limitations in this Final Order and

solely to the extent permitted under the terms of the DIP Facility.  The Debtors may transfer

funds into, out of, and through the Cash Management System, using ordinary transfer methods in

accordance with the Debtors' prepetition practices, consistent with the cash dominion or other

provisions of the DIP Facility.  Unless otherwise ordered by the Court, any change to the Cash

Management System shall require the prior written consent of all agents under the DIP Facility;

provided, however, that no Bank responding to any request for such a change shall be obligated

to confirm or verify that such consent has been obtained, no Bank shall be liable to any agent

under the DIP Facility in the event that Debtors fail to obtain such consent, and all Banks may

rely upon instructions from the Debtors with respect to any such change.  Without limiting the

generality of the foregoing, but subject to all of the terms and conditions of this Final Order, each

Debtor is authorized to (a) designate, maintain and continue to use, with the same account

numbers, all of its Bank Accounts and Credit Cards in existence on the Petition Date, including,

without limitation, those accounts identified on Exhibit C to the Motion, (b) treat each Bank

Account for all purposes as an account of a Debtor in its capacity as debtor in possession, and (c)

use, in their present form, all Business Forms, without reference to their status as debtors in

possession, except as otherwise provided in this Final Order.

       3.      Each Bank at which any Bank Account is maintained is authorized to continue to

service and administer such Bank Account as a depository account of a Debtor as debtor in

possession, without interruption and in the usual and ordinary course of business, and to receive,

process, honor and pay, in accordance with this Final Order, any or all checks, drafts, wires or

ACH Payments drawn on such Bank Account.

       4.      Each Bank is authorized to accept and rely upon, without further inquiry, all

representations from a Debtor as to which checks, drafts, wires or ACH Payments are dated prior

to, on or after the Petition Date and which checks are to be honored or dishonored, regardless of

whether or not such payment or honoring is or is not authorized by an order of the Court.  No

Bank shall incur, and each is hereby released from, any liability for relying upon a Debtor's instruction as to which checks, drafts, wires or ACH Payments should be honored or dishonored or for such Bank's inadvertence in honoring any check, draft, wire or ACH Payment at variance from a Debtor's instructions unless such inadvertence constituted gross negligence or willful misconduct on the part of such Bank. To the extent it has not already done so, each Debtor shall promptly provide a list of checks to each Bank for each Bank Account maintained at such Bank, specifying by check sequencing number, dollar amount and payee information those checks that are to be dishonored by such Bank, which checks may include those issued after the Petition Date as well as those issued prior to the Petition Date that are not to be honored or paid according to any order of the Court, and each Bank may honor all other checks.

5.      Except for those checks, drafts, wires or ACH Payments that are authorized or required to be honored under an order of the Court, no Debtor shall instruct or request any Bank to pay or honor any check, draft or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date.

6.      Notwithstanding anything to the contrary herein, no Bank shall be obligated to honor any check or other payment item drawn on a Bank Account at such Bank unless there are sufficient and collected funds in such Bank Account.

7.      The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreement that exists between them relating to any Bank Account, or other cash management service relating to the Cash Management System, except to the extent expressly prohibited by this Final Order, and the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges and remedies afforded them

under such agreements except to the extent expressly modified by the terms of this Final Order or the order approving the DIP Facility.

8.        Bank of America, N.A. ("BofA") shall be authorized to exercise rights of offset pursuant to the terms of any pre-petition agreement that exists between BofA and any Debtor with respect to any indebtedness owed by a Debtor to BofA that arises out of or relates to such Debtor's Cash Management System, regardless of whether such indebtedness was incurred or arose prior to or after the Petition Date, including, without limitation, (i) all fees and expenses (including, without limitation, analysis and overdraft fees or charges) related to the maintenance or administration of any Bank Account or lockbox or the processing of any ACH Transfer or wire transfer, (ii) all overdrafts in any Bank Account and any indebtedness arising from returned checks initially deposited in a Bank Account, (iii) all amounts payable or reimbursable to such Bank at any time in respect of ACH Transfers or wire transfers, and (iv) Credit Card balances or fees.

9.        For Banks located in the United States at which the Debtors hold accounts that are party to a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, to the extent the Debtors have not already done so, within fifteen (15) days of the date of entry of this Final Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers, and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case. For Banks that are not parties to a Uniform Depository Agreement, the Debtors shall direct such Banks to internally code the Debtors' bank accounts as "debtor-in-possession" accounts.

01:16790610.4

10.      For Banks located outside of the United States, the Debtors shall file with their monthly operating reports copies of the monthly statements issued by such Banks and shall report the bank balances of such accounts in U.S. dollars.

11.      For Banks located in the United States at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause such Banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of this Final Order.  The Debtors shall request that such banks code the Debtors' accounts as "debtor-in-possession accounts."

12.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided* that (a) the opening, closing, or use of any such bank account is not prohibited or restricted by the terms of the DIP Facility, and (b) the Debtors give notice of the closing of any Bank Accounts or the opening of any new bank accounts within fifteen (15) days thereafter to the Office of the U.S. Trustee for the District of Delaware, all agents under the DIP Facility, and any statutory committees appointed in the Chapter 11 Cases; *provided, further*, that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the Office of the U.S. Trustee for the District of Delaware, or at banks that are willing to immediately execute such an agreement.  The Debtors shall request that such banks code the Debtors' accounts as "debtor-in-possession" accounts.

13.      The Debtors are authorized to use their existing Business Forms; *provided*, that once the Debtors' existing check stock has been exhausted, the Debtors shall include, or direct

01:16790610.4

others to include, the designation "Debtor in Possession" and the corresponding bankruptcy case

number on all checks as soon as it is reasonably practicable to do so.

14.     The Debtors are authorized to continue performing Intercompany Transactions in

the ordinary course of business; *provided* that (a) such Intercompany Transactions shall be

conducted at arm's length and in good faith between the Debtors and (b) the Debtors shall

maintain accurate and detailed records of all transfers, including intercompany transfers, so that

all transactions, including Intercompany Transactions may be readily ascertained, traced,

recorded properly, and distinguished between prepetition and post-petition transactions.  The

Debtors shall provide and continue to provide to the Official Committee of Unsecured Creditors

(the "Committee") and each of the agents under the Debtors' debtor-in-possession financing

agreements a weekly report setting forth any transfers of cash between (a) any of Debtors The

Standard Register Company, Standard Register Technologies, Inc., Standard Register

International, Inc., iMedConsent, LLC, and Standard Register of Puerto Rico Inc.; and (b) any of

Debtors Standard Register Holding Company, Standard Register Mexico Holding Company,

Standard Register Holding, S. de R.L. de C.V., Standard Register de México, S. de R.L. de C.V.,

Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada

ULC.

15.     Pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, postpetition

Intercompany Claims resulting from such Intercompany Transactions shall be accorded

administrative priority and, subject to the DIP Budget and the order approving the DIP Facility,

the Debtors are authorized to honor and pay Intercompany Claims arising in connection with

Intercompany Transactions. The Debtors shall provide and continue to provide the Committee a

01:16790610.4

monthly report setting forth their transactions, including Intercompany Transactions, with their non-debtor subsidiaries and affiliates.

16.     The Committee's right to analyze and/or challenge any transaction between the Debtors and non-debtor subsidiaries and affiliates is expressly preserved.  For the avoidance of doubt, such transactions shall include Intercompany transactions as well as any claims related to or stemming from any such transaction.

17.     The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended until the date that is sixty (60) days after the date hereof, without prejudice to the Debtors' right to seek further waivers from the U.S. Trustee without further Order of this Court.

18.     Notwithstanding use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each debtor, regardless of which entity pays those disbursements.

19.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Final Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

21.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

Dated: _____, 2015
        Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:16790610.4