1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                         )  Case No. 15-10541 (BLS)
                                   )  Chapter 11
4   THE STANDARD REGISTER COMPANY, )
    INC., *et al.*,                )
5                                  )
                   Debtors.        )  Courtroom No. 1
6                                  )  824 Market Street
                                   )  Wilmington, Delaware 19801
7                                  )
                                   )  April 15, 2015
8                                  )  2:30 A.M.

9                      TRANSCRIPT OF HEARING
              BEFORE HONORABLE BRENDAN L. SHANNON
10                UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12

    For the Debtors:         Gibson, Dunn & Crutcher LLP
13                           By:  MICHAEL ROSENTHAL, ESQUIRE
                                  BRIAN LUTZ, ESQUIRE
14                                JEREMY GRAVES, EQUIRE
                                  SAMUEL NEWMAN
15                           333 South Grand Avenue
                             Los Angeles, California 90071
16

    For Silver Point:        Skadden Arps Slate Meagher & Flom
17                           By:  RON MEISLER, ESQUIRE
                             155 North Wacker Drive
18                           Chicago, Illinois 60606

19  ECRO:                    DANA MOORE

20  Transcription Service:   Reliable
                             1007 N. Orange Street
21                           Wilmington, Delaware 19801
                             Telephone:  (302) 654-8080
22                           E-Mail:  gmatthews@reliable-co.com

23
    Proceedings recorded by electronic sound recording:
24  transcript produced by transcription service.

25

```
 1   For the Committee:          Lowenstein Sandler
                                 By:  PAUL KIZEL, ESQUIRE
 2                               65 Livingston Avenue & 6 Becker
                                 Farm Road
 3                               Roseland, New Jersey 07068

 4   For Bank of America         Parker Hudson Rainer & Dobbs
     Wells Fargo:                By:  C. EDWARD DOBBS, ESQUIRE
 5                               1500 Marquis Two Tower
                                 285 Peachtree Center Avenue NE
 6                               Atlanta, Georgia 30303

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              INDEX

2                                                              Page

3     NOTICE OF AGENDA MATTERS:

For the Debtors, by Mr. Rosenthal                    5
4     For Creditors Committee, by Mr. Kizel               8
      For Silverpoint, by Mr. Meisler                     9
5     For Bank of America/Wells Fargo, by Mr. Dobbs       12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good afternoon, counsel, this is Judge

2   Shannon.  I understand from the operator that all necessary

3   parties are on the call.  This is a telephonic conference in

4   The Standard Register family of cases; case number 15-10541.

5   And my understanding is from a call from Debtors' counsel

6   that there are issues with respect to finalizing the terms of

7   the DIP financing order that were approved generally by the

8   Court on Monday.

9          I believe I have signed the sale order that did come

10  over previously and I've just gotten and printed off the I

11  guess latest version of the blackline DIP financing order,

12  but I will confess to the parties that I have not had an

13  opportunity to review it closely before getting on the phone

14  with you.  I'll hear first from counsel for the Debtor.

15         MR. ROSENTHAL:  Good afternoon, Your Honor, Michael

16  Rosenthal.

17         OPERATOR:  Pardon the interruption, Your Honor, this

18  is the CourtCall operator.  I was able to isolate the lines

19  that that was coming from.

20         THE COURT:  Okay, all right then, Mr. Nestor.

21         UNIDENTIFIED SPEAKER:  Mike Rosenthal I believe was

22  trying to get through from Gibson.  That might have been the

23  line -- let me [indiscernible] and see if he can try again.

24  I apologize for the delay.

25         THE COURT:  No that's just fine.  And, operator,

1  this is Judge Shannon.  If Mr. Rosenthal who probably just

2  got cut off if he tries to dial back in please permit him

3  back onto the call okay?

4          OPERATOR:  I will do so; thank you, Your Honor.

5          THE COURT:  Very good.  Actually, I'm going to take

6  advantage of this small delay.  I'm going to ask that the

7  parties remain on and I will go offline for just a minute or

8  to.  I have to deal with something in Chambers.  Thank you.

9      [Judge stepped out 2:33:12 - 2:38:08].

10          THE COURT:  This is Judge Shannon.  I do understand

11  from the operator now that all necessary parties are on the

12  call.  As I said this is in The Standard Register family of

13  cases; case number 15-10541.  And I understand we have

14  Debtors' counsel back on the line, is that correct, Mr.

15  Rosenthal?

16          MR. ROSENTHAL:  We do, Your Honor, thank you.  I'm

17  sorry we had trouble dialing in.

18          THE COURT:  Not a problem.

19          MR. ROSENTHAL:  Your Honor, thank you for giving us

20  a time.  We're all trying to do this a little bit on the

21  slide because there are drafts going back and forth.  We've

22  been in negotiations and discussions since the hearing on

23  Monday to come up with a sale procedures order and a DIP

24  order.  I understand we submitted and I think you signed the

25  sale procedures order earlier today.  We are close, but we're

1  not close there on the DIP order.  And I thought, we all

2  thought it would be helpful to get some, get you on the phone

3  and talk to you about some issues.

4        This is an overview, Your Honor.  I think the basic

5  issues that you will hear from us and from the Committee and

6  the lenders revolve around your decision that the DIP loan

7  would not include that the, would not include liens on

8  avoidance actions.  And that your order would not include a

9  waiver of 506(c) potential claims.

10        So we have a number of provisions in the order where

11  the Committee, where the lenders want to include a reference

12  to 506(c) including its priority relative to their priority,

13  super priority claims arising from the DIP.  And we have a

14  number of issues where the lenders, although they agree that

15  they don't have an avoidance, they don't have avoidance

16  actions, liens.  The issue is due the proceeds of avoidance

17  actions are they used, or should they be used first to pay

18  the lenders super priority claims or are they just simply

19  unencumbered assets.

20        And then finally, Your Honor, there is a provision

21  that talks again back on 506(c) there's a provision that

22  talks about whether payments to the lenders will be subject

23  to 506(c) claims or whether, in fact, those 506(c) claims and

24  the proceeds that result from those claims effectively are

25  subordinate to the lender super priority interest.  So if I

1  can go over page turn with you a little bit if you have the
2  document in front of you.
3         THE COURT:  I do have the what I think is the
4  version that you sent me or that was sent to Chambers just a
5  few minutes ago.  And this is a blackline.  The number in the
6  footer is, last numbers are 905.2.
7         MR. ROSENTHAL:  That's correct.
8         THE COURT:  Okay.
9         MR. ROSENTHAL:  Your Honor, the first significant
10 issue I think is on paragraph 16 which is on page 38.  You'll
11 see, this paragraph deals with what payments to the lenders
12 would be paid and whether they would be free and clear of and
13 how the lender would be free and clear and how the Section
14 506 surcharge claims fit in.
15        The last sentence is the one that's in question
16 where this paragraph basically says that the payments would
17 be free and clear of Section 506(c) claims.  And there's a
18 question about whether that's appropriate.  And then there's
19 a proviso about whether the proceeds received from a sale of
20 the collateral can't be used to pay 506(c) costs and expenses
21 of administration and whether that payment occurs before,
22 after, or contemporaneously with payment of all super
23 priority claims.
24        The Debtors' view of this, Your Honor, is that the,
25 we think the Court said there was no waiver of Section 506

1  claims.  And we believe that, therefore, the parties can make

2  those claims.  No such claim has been made.  If there is a

3  recovery on account of the 506(c) claim, that money comes

4  into the estate.  And in our view, Your Honor, at best

5  perhaps that money can be used to satisfy the super priority

6  claims of the DIP lenders.  But that it shouldn't be used to

7  pay any amounts with respect to prepetition debt.

8          The 506(c) is actually designed to surcharge the

9  prepetition collateral or efforts taken to preserve and

10 maintain that collateral.  And if you had to turn around and

11 take that surcharge funds and pay it on account of either

12 adequate protection or prepetition secured claims, the

13 surcharge would be illusory.

14         So in the 16 we have recognized those two concepts

15 that for the new money claims the DIP loan claims that any

16 proceeds from 506 recoveries could go to pay those DIP loan

17 claims.  But, otherwise, they would be available for the

18 estate and wouldn't be essentially be able to be used to pay

19 adequate protection claims or on account of prepetition

20 unsecured claims.

21         THE COURT:  Okay I think I understand.

22         MR. KIZEL:  Your Honor, this is Paul Kizel from

23 Lowenstein on behalf of the Committee.  We agree with the

24 Debtors' view on that point.  So that's the Committee's

25 position on that.

1       Although I just want to ask Mr. Rosenthal because we

2  had a comment on if we're doing the page turn.  We can get to

3  it later, but we had a comment on paragraph 11.  I just

4  wanted to make sure that we don't skip that one.

5       THE COURT:  All right we can circle back to that in

6  a moment, but I think we'll focus on paragraph 16.  Then I'll

7  hear from the lender right now.

8       MR. MEISLER:  Your Honor, Ron Meisler on behalf of

9  Silver Point Finance.  Your Honor, we think the law is clear

10 that a claim that is eligible for 506(c) status or for the

11 waiver to be granted under 506(c) is an administrative

12 expense claim.  And with respect to our DIP and with respect

13 to our adequate protection claims and with respect to the

14 ABL's DIP and adequate protection claims we were granted

15 super priority claim.

16       And super priority claims rank in priority.  They're

17 a higher priority than your ordinary administrative expense

18 claim.  And so our point is that with respect to proceeds of

19 collateral relative to our super priority claims whether

20 their DIP or adequate protection in the context of the

21 waterfall we rank first.  Now that's succinct from our

22 prepetition secured claims and we understand the interplay

23 between the prepetition secured claim and a claim that has

24 been granted 506(c) relief.  And we think that distinction in

25 our version is clear, but we think it turns the law on its

1  head to subordinate our super priority claims.

2         THE COURT:  Okay what I guess I'm trying to figure

3  out.  There's a lot of angels on the head of a pin here, and

4  I understand that everybody is trying to be careful and

5  anticipate whatever might happen.  But I think I can identify

6  one time that I've dealt with a 506(c) issue and it's

7  ultimately gone all the way through.  That doesn't minimize

8  the significance and I made the ruling I made with respect to

9  506(c).

10         I have to say that, again, we're doing this on the

11  fly.  I certainly haven't studied the issues in the context

12  nearly as much as you folks.  I struggle with the proposition

13  that the practical effect of a 506(c) preservation and then

14  an asserted surcharge would result in my order allowing that

15  surcharge with the direction that it then be paid directly

16  over to the lenders whose collateral was surcharged.

17         I would suggest there are two ways to dealing with

18  this.  With respect to the super priority as it relates to,

19  well I guess there are two ways of dealing with this.  I'm

20  certainly not going to make a finding that it can be used to

21  deal with adequate protection or other rights that you may

22  have relating to prepetition obligations.  If we're going to

23  deal with that issue I think we would deal with it when it

24  becomes a live issue because it certainly doesn't make a lot

25  of sense to me right now, but I don't necessarily want to

1  foreclose it because it's not the kind of thing I deal with

2  every day.

3        So one of two things will happen; if you want to

4  keep your powder dry on that issue and then I can make a

5  ruling in the event that I deal with a 506(c) request then

6  perhaps we can navigate the issue that way.  It seems to me,

7  again, as a matter of statutory, my read of how the statute

8  works and how 506(c) would work in this context I will just

9  tell you it makes it difficult for me to see a surcharge

10 yielding, you know then.  I understand the waterfall and I

11 understand the statutory distribution scheme, but I'm having

12 difficulty wrapping my head around this image that there's a

13 surcharge that's brought or requested, ordered by me and then

14 results in a distribution back over to a or the secured

15 creditor.

16       Again my preference would be on this that if there's

17 a way to deal with this that leaves this issue open that we

18 can cross the bridge where we come to it.  I'm certainly not

19 going to make a finding, I guess, today that those monies

20 could go in a particular direction.  So I don't know if

21 that's helpful to the parties, but I'm not certain that this

22 is a question that we need to dispositively answer today.

23       MR. ROSENTHAL:  And Your Honor; it's Michael.  You

24 just stated it was the adequate protection from the super

25 priority claims that come from the new money, the DIP loans.

1          THE COURT:  Right.  I do.

2          MR. ROSENTHAL:  We drafted it.  We're only covering

3   super priority claims from the DIP loans.

4          THE COURT:  And I guess and my point is to Mr.

5   Meisler and, again, I'm not, I'm glad that you got me on the

6   phone.  I certainly don't want this thing to get delayed, but

7   this is a complex issue for me to just shoot from the hip on.

8   But I guess I'll be candid with Mr. Meisler.  I'm struggling

9   with the idea that this would relate to adequate protection

10  obligations and the other rights and payment rights that

11  you've got relating to the prepetition obligations.

12          And so I'm giving you the best answer that I can.

13  Whether we leave that issue open or not I think you've got a

14  sense of how I feel about it.  But, you know, it does seem to

15  me the read that's been articulated by the Debtor makes more

16  sense to me in this context.  I guess I would leave it there.

17          MR. DOBBS:  Your Honor, this is Ed Dobbs.  I

18  represent Bank of America and Wells Fargo.  They're the ABL

19  lenders in this deal.  And I understand Your Honor's

20  direction.  And the one problem that we had is that as if

21  our, if payments that we are receiving on our revolving

22  credit facility that then dictate the size of availability

23  for future drawings are subject to being recaptured under

24  506(c) then we really can't ever know that we've settled the

25  borrowing base on any day.

1         And I'm wondering if counsel for the Debtor and I

2   hate to do this on the phone would, at least, be amenable to

3   a provision that makes clear that at least for the ABL lender

4   amounts that are receiving in the ordinary course for the ADL

5   revolver are not going to be subject to being disgorged.  We

6   would be then never able to finalize a borrowing base on any

7   given day.

8         MR. ROSENTHAL:  I treat the ADL which is a roll-up

9   as a DIP loan so I think I'm fine giving that assurance to

10  counsel for the ABL lenders that this is really more about,

11  you won't have a prepetition claim because it's all been

12  rolled into the post-petition loan and that's why we limited

13  this to the; you know you have your collateral package and

14  you have your super priority claims.  And the language of 16

15  as we presented it protects and prevents the surcharge

16  because it's the DIP loan.

17        MR. DOBBS:  Okay so it doesn't reach back in time,

18  Michael, during the interim period where we had an interim

19  order that made clear that this 506(c) did not affect

20  payments that were paying down the prepetition revolver as we

21  rolled over?

22        MR. ROSENTHAL:  No I'm only, we're only focusing, I

23  think, not on the DIP loans themselves, sort of the new money

24  loans.  And I think a roll-up is like it or not is a new

25  money loan as is the term loan.  And I think that's, Debtor

1   is fine with that.  It's just to the extent that their

2   prepetition, you know it's an adequate protection payment.

3   We had the same problem.  If I help preserve a million

4   dollars of collateral and it costs $50,000.00 it seems to me

5   you should only get whoever in that position should get $950

6   and the $50 should go to the person who helped preserve it

7   rather than it rolls right back to the same million dollar

8   lender.  I don't understand 506(c) in that context.

9          MR. DOBBS:  All right thank you.

10         MR. ROSENTHAL:  Your Honor, related to that we can

11  go to paragraph 18.  And I think we have, we and the lenders

12  have a different formulation to some extent of the rights

13  here.  But 16 is our attempt to do three things.  One

14  implement the Court's denial of the 506(c) waiver, that's the

15  first sentence.  Then we took a lot of language from the

16  lenders.  You'll see the blackline language.  That next long

17  couple of sentences is, and we're fine with it is language

18  from the lenders that as a -- that they're not consenting to

19  this.  They agree you have denied their waiver of 506(c) but

20  they're not consenting to it.  They don't want their silence

21  to be deemed to be consenting.  We were fine with that.

22         THE COURT:  I'm under no illusions that there's

23  consent.

24         MR. ROSENTHAL:  And then the last sentence, the last

25  couple of sentence are just reservation of rights.  And there

1  are all sorts of disputes about who gets paid first and

2  whether there are good valid 506(c) claims and everybody's

3  reserving their rights.  So we thought that the language

4  that's presented to you here adequately protects everybody's

5  rights.  And actually boots to another day, you know these

6  506(c)'s you said, frankly, may never come about.

7        THE COURT:  Who's got an issue with the language?

8        MR. MEISLER:  Your Honor, this is Ron Meisler on

9  behalf of Silver Point.  Your Honor, we're generally okay

10 with the language provided, but we think there are a couple

11 of things that are missing.  One is we would like it to be

12 clear that any attempt to surcharge pursuant to 506(c)

13 requires a [indiscernible] after reasonable notice which

14 shall not be less than 21 days' notice and an opportunity to

15 be heard.

16        We want that statement because we don't think that

17 any sort of 506(c) attempt requires emergency motion

18 practice.  So we want the parties to be clear and maybe one

19 party in particular that this is something that can be

20 thought about a head of time, can be properly briefed and

21 properly defended.

22        The second issue that we have is and one part of

23 this issue is a truism.  We want it to be clear that any cost

24 or expenses of the administration of the estate shall be

25 payable first from unencumbered assets.  And that includes in

1  particular any administrative expenses allowed pursuant to

2  506(c).  Now Mr. Rosenthal did put in a reservation of rights

3  with respect to that 506(c) point, so we're looking for it to

4  go a step further and actually make it clear on the point

5  that in both circumstances allowed admin expenses and, in

6  particular, in the context of a 506(c) grant of relief that

7  the folks have to first look to unencumbered assets.

8          MR. ROSENTHAL:  Your Honor, it's Michael again.  We

9  probably disagree with that so that's why we tried to boot

10 this issue.  The entire 506(c) concept is that it's a

11 surcharge on collateral.  It's not payable from unencumbered

12 assets.

13         THE COURT:  Hang on.  I guess, again I don't accept

14 the proposition that expenses of administration of the case

15 that are, that might be brought by way of 506(c) are -- I'm

16 trying to articulate this.  I don't agree with the

17 proposition that unencumbered assets effectively preclude a

18 506(c) award or surcharge.  I don't think 506(c) is

19 predicated upon an estate that doesn't have available cash

20 resources.  It's about whether or not the estate is expending

21 funds to preserve, protect, or dispose of secured property.

22         And so you know again it seems to me that this is

23 not -- so I'm not buying that part.  But I think I'd like a

24 response on the question about whether or not there's

25 emergency motion practice or the prospect of it or a fair and

1 | adequate notice provision.  I assume that's more of a
2 | Committee issue.

3 |      MR. KIZEL:  Your Honor, this is Paul Kizel for the
4 | Committee.  Your Honor, we don't have an issue putting in a
5 | reasonable notice provision.  You know, perhaps we can say
6 | you know on 21 days' notice except in, you know, exceptional
7 | circumstances subject to order of the Court.  Some compromise
8 | language like that.

9 |      THE COURT:  To me I think the parties; to me I think
10 | that that ought to make sense.  I mean my expectation as I
11 | said, again, I don't want to sound like a broken record on
12 | this, but we don't see a lot of 506(c) litigation.  I guess I
13 | could try to imagine a scenario where it would need to be on
14 | an emergency basis.  As a general proposition I don't
15 | disagree with Mr. Meisler that if we're going to go down this
16 | path which is a significant consideration by you know estate
17 | fiduciaries and stakeholders, I would generally presume that
18 | it would be on sufficient notice to present the issues.

19 |      So, you know, the concern I think that Mr. Meisler
20 | said about just not getting blindsided by an emergency motion
21 | I think that's a fair consideration.  And I think you can
22 | wordsmith it so that you'd have confidence of a period in 21
23 | days to me seems certainly sufficient. And then to the extent
24 | that there was anything else, parties would have to
25 | demonstrate it to the Court and we'd be able to go from

1  there.  But I mean I think that Mr. Meisler has made a fair

2  point in that respect.  Mr. Meisler?

3          MR. MEISLER:  Thank you, Your Honor.  On the motion

4  for [indiscernible] practice that is acceptable to us.

5          THE COURT:  Yeah I think -- yeah?

6          MR. MEISLER:  If I could just respond to the cost or

7  expense of administration of the estate, if I could unpack

8  that for a moment.  Cost or expenses of an administration is

9  [indiscernible] without a grant of 506(c) relief.  I think

10  there the law is clear that a creditor must look to

11  unencumbered assets.

12          THE COURT:  Right.  I think I probably --

13          MR. MEISLER:  With respect -- excellent.  Thank you.

14  With respect to the 506(c) relief what we are asking for and

15  Mr. Rosenthal has it in his reservation of rights and there I

16  think you take a different view.  Our view is and I'm saying

17  this for clarity not that unencumbered assets, the presence

18  of unencumbered assets precludes a party from moving under

19  506(c).  It simply requires the party to first seek to

20  collect from the claim against unencumbered assets.  And then

21  to the extent those unencumbered assets are exhausted then

22  you get to move to our collateral.

23          THE COURT:  Yeah hang on; two things.  I'm not

24  certain that I agree with that, but I think I agree with the

25  Debtor that I don't think we need to necessarily answer that

1  question today.  I think if you were going to present that

2  proposition to me it would probably be easier for me to get

3  my head around it in the context of a motion where you're

4  explaining it with case law.

5          I think we can preserve that argument.  I'm not sure

6  I buy it today, but I would certainly entertain it in the

7  context of a real motion.  I don't see this language as

8  precluding argument, so I don't know whether or not we need

9  to in this form of order prejudge that question.  Is that

10 fair?

11         MR. MEISLER:  Yes, Your Honor, that's fair.  Can we

12 have language in it that says any costs or expenses of

13 administration of this estate after the 506(c)

14 [indiscernible] must be payable first from unencumbered

15 assets?

16         THE COURT:  No.  No, I mean your point was that's

17 the law.  If it is then I don't need to order it.  If it's

18 not the law then I'm not going to order it. And I don't know

19 whether it is the law.  So I don't think that we need to

20 answer that question.  This is turning into an advisory

21 opinion in a whole bunch of different ways as to paragraph

22 18.

23         I do think that the idea -- look there's a part of

24 me that just says if we're going to hommel this much further

25 that I would, there's a part of me that just says the first

1   sentence of paragraph 18 is it.  I don't think that does what

2   everybody would like it to do, but I think it embodies my

3   ruling.  So, you know, again, I don't want to get into a

4   discussion about what the Debtor has to do on a go forward

5   basis or what might happen in the context of 506(c)

6   litigation.

7           I think the observation or the idea that everyone's

8   powder is and remains dry subject to the ruling that the

9   Court has denied a request for a waiver of 506(c).  You know

10  I think that that's sufficient.  But I don't accept that we

11  need to build into this order language about unencumbered

12  assets at this point.

13          UNDENTIFIED SPEAKER:  Your Honor, thank you, with

14  the reservation of rights that will be acceptable to us.  We

15  do for clarification we do actually want the rest of the

16  language that's in paragraph 18, in particular, about there's

17  no deemed consent so.

18          THE COURT:  Well that's fine.  So it sounds like

19  then the parties can add a little bit language about the

20  timing of any motion practice.  It sounds like there's

21  consensus on that.  And, otherwise, I think most of that

22  language then survives.

23          UNIDENTIFIED SPEAKER:  Right and then I think the

24  only other issues and I would ask Mr. Graves if he has any,

25  are the ones that we and the Committee we delete.  There were

1  some references to 506(c) and various provisions, paragraph

2  11 and others that we thought should not be there because

3  they undermine the ruling that you're not granting 506(c)

4  waiver.

5       For example in 11 it's again clarity over any and

6  all administrative expenses arising under 506(c).  I mean I

7  and there's another one I think.  Mr. Kizel, wasn't there

8  another one --

9       MR. MEISLER:  With respect to the 506(c) deletions I

10  believe it's also in paragraph 14(a) and (d).

11       MR. ROSENTHAL:  Yeah on page 31, right; 14(a) and

12  (b) on 31 are exactly what we talked about earlier in

13  connection with the adequate protection loan.

14       THE COURT:  Okay.  And I do think that we covered

15  that.  But is there a distinction between paragraph 11(a) and

16  14(a) and (b) as they relate to, one is adequate protection

17  and the other is super priority.

18       UNIDENTIFIED SPEAKER:  Yeah I think that it should

19  remain in 11 because of the session that we had because

20  that's on the DIP and come out of 14 based on our discussion

21  earlier in this call.

22       THE COURT:  Okay can I hear from anybody else with

23  their thoughts on that?

24       MR. KIZEL:  Yes this is Paul Kizel for the

25  Committee.  That's acceptable to us, but with respect to

1  paragraph 11(a) again which is on page 27 and then a carry

2  over onto page 28 we also have an issue.  This basically says

3  that the scope of this super priority claim to the extent

4  there is any would have access, that that claim would have

5  access to avoidance proceeds.

6        In the prior paragraph Your Honor ruled that there

7  will be no liens on avoidance proceeds.  And given that

8  there's no marshalling there is a provision in the file DIP

9  order that provides for no marshalling.  It's our view that

10 the super priority claim should not have access to avoidance

11 proceeds.  Perhaps a compromise there is to provide that the

12 lenders to the extent there is any super priority claim first

13 have to go after all other assets before they look to satisfy

14 that type of claim from avoidance proceeds.

15        THE COURT:  Mr. Meisler?

16        MR. MEISLER:  Yes, Your Honor.  This goes back to

17 the priority.  And we think that in the priority of claims

18 the super priority claims rank ahead of a lot of claims.  And

19 we don't see proceeds of avoidance actions being any

20 different.  So I would ask that this Court consider that

21 waterfall, to think about that language.

22        THE COURT:  I understand but that's not and I can.

23 I think I like your response to whether or not this

24 implicates a marshalling issue.

25        MR. MEISLER:  It would if we were forced to use

1  assets to satisfy our DIP claims from things other than

2  avoidance proceeds.  That would put us in a situation where

3  we are marshalling.

4       THE COURT:  And I think the Committee is asking

5  whether or not you are okay with that.

6       MR. MEISLER:  We are not okay with that.  I guess as

7  a fall back we I think as a practical matter at the time that

8  these avoidance proceeds become a live issue I am hopeful

9  that there won't be any DIP claims that remain.  I would be

10 willing as a fall back to take a reservation of rights on

11 this point and deal with it at a later point in time.

12      UNIDENTIFIED SPEAKER:  Your Honor, if there's a

13 complete reservation of rights on that issue as the same as

14 there was on the paragraph I think 28, paragraph 18 issue

15 that would be acceptable to us.

16      THE COURT:  I think that's the smarter way to go.

17 Because I dealt with this issue -- I'm not certain that I've

18 ever been asked to really rule on it.  And I've heard

19 criticism at times where a lender has asked for a lien on

20 avoidance actions and I'll tell you what I've done at least

21 in other cases.  But, again, I certainly haven't written on

22 it.  A lender has asked for a lien on avoidance actions.  The

23 Committee objected.  I think consistent typically with my

24 practice I have denied the lien on avoidance actions, but

25 nevertheless have permitted 507(b) super priority. But that

1  super priority is not I think analogous to having the lien on

2  avoidance actions themselves because of the limitations that

3  go with the 507(b) super priority in particular relating as

4  it is to a diminution and the value of the collateral.

5  So it's not unusual to have that request, but it

6  does in this case, at least, raise an issue that marshalling

7  might be an appropriate equitable protection.  But I think

8  Mr. Meisler's right.  I think the likelihood that I am more

9  likely to attend a world series game this year with the

10  Phillies then I am to see this particular issue coming to

11  fruition, I would recommend that the parties reserve their

12  rights.

13  MR. ROSENTHAL:  We're going to reserve.  Yeah I mean

14  I think as a practical matter is not going to happen because

15  we're going to pay this DIP off at the closing.  There's only

16  one additional point that I'm aware of and please other

17  people jump in.  Do we still, Mr. Kizel, do you still have

18  the issue about whether the challenge period is extended

19  merely by seeking an extension of the challenge period or

20  whether you actually need an order?  Go ahead?

21  MR. KIZEL:  Yes, Your Honor, this is Paul Kizel.  I

22  know Your Honor said at the hearing that you're not going to

23  extend the challenge period or which we understand and we're

24  not asking for that now or grant standing at this point and

25  we're not asking for that now either.  But I think it's a

1  fair request that we include language such as that if a

2  motion with a complaint is filed within the challenge

3  deadline period that that would be considered a properly

4  filed motion seeking standing to prosecute such objection and

5  that would satisfy the challenge period deadline.

6          Otherwise, we would be in a position of having to

7  file a motion on short notice to get standing and have that

8  heard before, I believe it's March, before May 26th.  I think

9  that's a fair way to approach it better.  If we file the

10  standing motion together with our draft complaint, again if

11  such a complaint is going to be filed, that that should

12  satisfy the requirement of filing within the challenge

13  deadline.

14          MR. MEISLER:  Your Honor, this is Ron Meisler.  I

15  vigorously object to that request.  They should be filing a

16  motion for standing if that's what they feel that they need

17  to be doing right now.  And we should be dealing with that

18  issue right now.  They do not, they should not gain this so

19  that they can wait until the 59th day and then file that and

20  then we're stuck dealing with their motion for standing for

21  30 days.  They know everything they need to know right now to

22  get that motion for standing on file.  It is not the same as

23  filing a complaint which is what the concept of this language

24  does and the standard language that they have to file an

25  adversary.

1    And so, Your Honor, this is a very important point

2  to Silver Point.  And we object to that request in its

3  entirety.  And, Your Honor, I do think that on the record on

4  Monday you separated between talking about extending the

5  challenge period and you separately talk about entertaining

6  your request for standing.  Those are two separate issues.

7  And, Your Honor, the language of that paragraph contemplates

8  that if they have a true problem and they need to extend the

9  challenge period it doesn't for cause their opportunity to

10  come before Your Honor and make a request to extend the

11  challenge period.

12    And if they can prove for cause for extending that

13  challenge period then so be it.  But today to allow them to

14  file a motion for standing which they can do tomorrow to me

15  that is highly objectionable and inappropriate.

16    UNIDENTIFIED SPEAKER:  Your Honor, we disagree with

17  this idea that we have everything that we need now to file a

18  standing motion because our understanding of filing a

19  standing motion would require us to have sufficient facts to

20  establish a claim that we can assert a complaint. The

21  Committee was formed on March 24th.  It's now April 15th, just

22  a little more than three weeks after the Committee was

23  formed.  So to say we could, anyone can file a standing

24  motion.  But we need to back up additional information before

25  we're in a position to determine whether or not that that

1  would be appropriate.

2         We're not looking to gain the system.  We're not

3  looking to delay.  As soon as we're in a position to make

4  that determination we'll do that.  But I know Your Honor had

5  indicated at the hearing that the Court was not inclined to

6  have emergency motions, you know, on the day of the auction.

7  We're not planning to do that.  But it seems like a fair

8  position that if we file a standing motion attaching a copy

9  of the complaint that that should be sufficient.

10        UNIDENTIFIED SPEAKER:  Your Honor, if I could just

11 rebut because I disagree with Mr. Kizel's recitation of the

12 law.  He does not need to know all the facts regarding his

13 challenge.  The Cybergenics case stands for the fact that the

14 Debtor is refusing to pursue the cause of action and

15 wrongfully so.  So to say that he needs to have all of his

16 facts together on the challenge --

17        THE COURT:  Well Cybergenics also speaks to a

18 colorable claim and Courts have said that's a 12(b)(6)

19 standard, right?

20        UNIDENTIFIED SPEAKER:  Your Honor, I think that that

21 is correct.

22        THE COURT:  So I mean -- hang on.  I'll be candid

23 with you.  I'm going to duck this issue.  I don't know what

24 you're going to put into this.  My point was, my comments

25 were along the lines of saying that I was not really looking.

1  I was looking to avoid emergency motion practice be it an

2  emergency motion for standing or an emergency motion to

3  extend the period.

4        But I'm not satisfied that I need to answer that

5  question today.  I will agree with Mr. Kizel that I have seen

6  many, many DIP financing orders that had what I believe were

7  consensual arrangements where as long as a motion was filed

8  or a complaint was filed or some step was taken then the

9  period was at a minimum tolled until the Court rules on it;

10 that sort of thing.  To me, again, that's a sensible

11 approach, but that is, in my experience, one based upon

12 consensus between the parties.

13        Here's what I'm going to ask.  So I'm not going to

14 give a trigger that says that it's automatically extended.  I

15 shared with you that while I seem to have a lot of emergency

16 motions I'm not a big fan of them.  But what I would propose

17 to do is I would ask that we have a status conference on this

18 issue at our next hearing.  Mr. Rosenthal, when is our next

19 hearing?

20        MR. ROSENTHAL:  It is -- Mr. Graves, when is our

21 next hearing?

22        UNIDENTIFIED SPEAKER:  I believe it's May 12th.

23        UNIDENTIFIED SPEAKER:  That sounds correct, Your

24 Honor.

25        THE COURT:  All right you know something here's what

1  I want.  I don't know that I want to wait until May 12th.  So

2  I want to make you an offer and this is to the Committee and

3  to Silver Point.  I would make myself available for either a

4  hearing on the 12th or you can add it to the matters that are

5  for the 12th.  Mr. Kizel, what is your current expiry period

6  or your deadline?

7        MR. KIZEL:  May 26th.

8        THE COURT:  Okay so the 12th is kind of tight.

9  That's 14 days before that if we were going to do motion

10  practice. We can do one of two things.  You can confer with

11  Mr. Meisler and decide whether or not you want to talk about

12  this on the 12th and we can talk about what's coming or if you

13  want to get on the phone with me before then then we can talk

14  about it.

15        I don't necessarily; I'm not prepared to answer this

16  question.  I'm certainly not prepared at this point over a

17  lender objection to simply find that you know the filing of a

18  motion is sufficient.  In a contested context I might be more

19  prepared to do so when there is more meat on the bones and

20  we're a little further along in the process.  But I'm not

21  prepared to simply answer that question today.  I want to be

22  clear that what I think the Committee has requested is

23  certainly not inconsistent with what I've seen in other

24  cases, but it's generally been predicated upon consent by the

25  effected lender who, otherwise, is entitled to a measure of

1  process with respect to motion practice or standing and for

2  any request for an extension of the challenge period.

3  So the short answer is I'm ducking that question.

4  However you want to memorialize that in the DIP order is up

5  to you.  But I will make myself available to discuss this

6  with you all on either the 12th or in advance of that if you

7  believe that you need my time.  And as I said if there are

8  issues with respect to discovery and mechanics for this or

9  for other matters as we've done today, my preference is you

10  get me on the phone.

11  MR. ROSENTHAL:  So we will -- Your Honor, it's

12  Michael Rosenthal.  We will not say anything and the

13  challenge period expires at a certain time.  And in the

14  meantime we'll put it on the agenda for the 12th as a status.

15  And if the parties decide that they need to come to the Court

16  before then they'll do so and then we'll figure out what to

17  do on the 12th.

18  THE COURT:  Okay that makes sense.

19  UNIDENTIFIED SPEAKER:  We would intend just to let

20  you know, we will turn these changes and I think we will get

21  out a, get out to you an order that we think reflects what

22  was discussed here.  And we'll try to do that soon, because

23  we need an order entered today if it's at all possible. But I

24  don't know how long you're going to be around.

25  THE COURT:  I am here today for about another hour

1  and I'm in all day tomorrow and Friday.  You're not looking

2  at a payroll or anything else that's going to be in peril if

3  it's not on the docket today, are you?

4        MR. ROSENTHAL:  I don't believe so; middle of the

5  week, no.

6        THE COURT:  All right well if you are, if you

7  discover that right after we get off the phone, give a call

8  to Chambers.  I certainly don't want anybody's paycheck to

9  bounce.  And hopefully we can deal with that.  All right but,

10  otherwise --

11        UNIDENTIFIED SPEAKER:  Your Honor, do they have cash

12  right now, do they have available cash, you're not intending

13  to pull their cash right?

14        UNIDENTIFIED SPEAKER:  That's not a question for

15  Silver Point.  That's more a question for Bank of America.

16        UNIDENTIFIED SPEAKER:  Yeah we're certainly not

17  intending not to lend.

18        THE COURT:  Okay yeah I think we're all on the same

19  page.  If the order gets over and I can get it on the docket

20  today, I will. I just ask the question because I think I do

21  all the time when I just want to make sure that there's not

22  going to be some kind of a hiccup.  So I'm going to assume

23  that I will either see the order or if it comes over in the

24  morning that the Debtors' operations will still be fine.  All

25  right.  I do appreciate everyone getting me on the phone

1   today. We stand adjourned.

2        (Court Adjourned)

3

4

5                              CERTIFICATE

6

7   I certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the above-

9   entitled matter.

10
    /s/Mary Zajaczkowski                    April 15, 2015
11  Mary Zajaczkowski, CET**D-531                  Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25