## Exhibit B

### Engagement Letter

**Engagement Letter**

As of March 24, 2015

**Official Committee of Unsecured Creditors of**
**The Standard Register Company**

Attention:     Courtney Morgan, Pension Benefit Guarantee Corporation
             Co-Chairman of the Committee

             Timothy V. Webb
             Co-Chairman of the Committee

Re: Advisory Services

This agreement (the "Agreement") confirms that Jefferies LLC ("Jefferies") has been engaged by the Official Committee of Unsecured Creditors (the "Committee"), appointed in the bankruptcy cases (the "Cases") of The Standard Register Company, a Delaware corporation, and its debtor affiliates and their respective estates (collectively, the "Company" or the "Debtors"), which are now pending in the United States Bankruptcy Court for Delaware (the "Bankruptcy Court") to act as set forth herein.

1.     Services.  During the term of this engagement, and as mutually agreed upon by Jefferies and the Committee and as appropriate, Jefferies, acting as the exclusive investment banker to the Committee, will perform the following investment banking and advisory services, among others, in connection with the Cases:

(a)     becoming familiar with, to the extent Jefferies deems appropriate, and analyze, the business, operations, properties, financial condition and prospects of the Debtors;

(b)     advising the Committee on the current state of the "restructuring market";

(c)     advising the Committee on any transaction or series of related transactions whereby, directly or indirectly, a portion of the equity securities of the Company or a portion of any of the Company's or its subsidiaries' businesses or assets are transferred to, disposed of, or combined with one or more persons, groups of persons, partnerships, corporations or any other entity (including, without limitation, one or more of the Company's creditors acquiring such businesses or assets through a credit bid), including without limitation via (i) a sale, acquisition, purchase or exchange of stock (including shares issuable upon conversion of any securities or debt convertible into stock) or options, (ii) the acquisition of all or any portion of the assets, properties or businesses of the Company or any of its subsidiaries by way of a direct or indirect acquisition, purchase, exchange, joint venture, partnership, other business combination or other means, including, without limitation, transactions under Section 363 of the Bankruptcy

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 2

Code (including, without limitation, one or more of the Company's creditors acquiring such businesses or assets through a credit bid), (iii) a lease or license of assets (with or without a purchase option), (iv) a joint venture or (v) a merger, reverse merger, consolidation, reorganization, scheme of arrangement, tender offer, exchange offer, leveraged buyout, recapitalization or any other such corporate transaction or business combination involving the Company (any of the foregoing, an "M&A Transaction");

(d)    assisting and advising the Committee in examining and analyzing any potential or proposed restructuring, reorganization, rescheduling, recapitalization, reduction, cancellation, elimination, retirement, refinancing, purchase, repurchase and/or a material modification or amendment of all or any material portion of the Company's debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, contract or tort obligations, joint venture interests and/or partnership interests), preferred stock, common stock and/or hybrid securities, however such result is achieved, including without limitation through (i) any chapter 11 plan confirmed in connection with the Cases and/or (ii) an exchange offer, a consent solicitation, a solicitation of waivers, acceptances or authorizations, covenant relief, the rescheduling of debt maturities, a change in interest rates, the settlement or forgiveness of debt, the conversion of debt into equity, other amendments to the terms, conditions or covenants of the Company's debt instruments, the issuance of new securities, the raising of new debt or equity capital and/or the sale or other transfer of equity, assets or other interests of the Company (any of the foregoing, a "Restructuring" and, together with an "M&A Transaction", a "Transaction"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring;

(e)    assisting and advising the Committee in evaluating and analyzing the proposed implementation of any Transaction, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction;

(f)    assisting and advising the Committee in evaluating potential financing transactions by the Debtors;

(g)    assisting and advising the Committee on tactics and strategies for negotiating with other stakeholders;

(h)    attending meetings of the Committee with respect to matters on which Jefferies has been engaged to advise the Committee hereunder;

(i)    providing testimony, as necessary and appropriate, with respect to matters on which Jefferies has been engaged to advise the Committee hereunder, in any proceeding before the Bankruptcy Court; and

(j)    rendering such other investment banking and financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert and investment banking and financial advisory support related to any threatened, expected, or initiated litigation.

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 3

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.    Cooperation.

(a)    The Committee shall furnish or use its best efforts to cause the Debtors to furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Debtors, which the Committee and/or the Debtors believe are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information"). In addition, the Committee shall use its best efforts to cause the Debtors to provide Jefferies full access, as requested, to the Debtors' officers, directors, employees and professional advisors. The Committee agrees to promptly advise Jefferies of all developments known to the Committee materially affecting the Committee, the Debtors, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Committee or the Debtors, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof.

(b)    The Committee further acknowledges that Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Debtors, the Committee or other parties to a Transaction) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Debtors or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Debtors or other party to a Transaction, as the case may be (and if such forecasts no longer reflect such estimates and judgments, then the Debtors will promptly inform, and provide updated forecasts to, Jefferies).

(c)    The Committee acknowledges that this assignment may lead to an outcome not anticipated in this Agreement. In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Committee agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.    Use of Name, Advice, etc.

(a)    No information or advice provided (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise

referred to without Jefferies' prior written consent. In addition, the Committee and the Debtors agree that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.

(b)      Jefferies' advice is solely for the confidential use and information of the Committee (solely in the members' capacity as members of the Committee), and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.      <u>Compensation</u>. The Debtors shall pay Jefferies each of the following:

(a)      <u>Monthly</u> Fee. A monthly fee (the "<u>Monthly Fee</u>") equal to $100,000 per month until the expiration or termination of the Engagement Letter. The first Monthly Fee will be prorated to cover the period of March 24, 2015 through March 31, 2015. Monthly Fees shall be due and paid in accordance with the rules and procedures governing these cases. Fifty percent of Monthly Fee payments actually paid to and retained by Jefferies in excess of $200,000 will be credited once against any Transaction Fee due to Jefferies.

(b)      <u>Transaction Fee.</u> Upon the consummation of any M&A Transaction, a fee (the "<u>M&A Transaction Fee</u>") equal to $750,000 plus 1% of the Transaction Value of such M&A Transaction in excess of $273,000,000. Upon the consummation of any Restructuring that is not an M&A Transaction, Jefferies shall be paid a fee (the "<u>Restructuring Fee</u>" and, together with any M&A Transaction Fee, a "<u>Transaction Fee</u>") equal to (A) $1,750,000 if the Committee either supports or does not file and prosecute any material objection to such Restructuring (or, if the Committee does file and prosecute any material objection to such Restructuring, such objection is either withdrawn, settled or otherwise consensually resolved) and (B) $750,000 if the Committee does prosecute any material objection to such Restructuring and such objection is not settled or withdrawn. Notwithstanding the foregoing, for any Transaction or series of Transactions that qualify as both an M&A Transaction and a Restructuring, Jefferies shall only be entitled to the higher of the M&A Transaction Fee and the Restructuring Fee.

(c)      "<u>Transaction Value</u>" shall mean (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid or payable in connection with an M&A Transaction, including, without limitation, (1) any dividends or distributions or any stock redemptions or repurchases outside the normal course of business, (2) amounts payable under retention or severance arrangements, consulting agreements, agreements not to compete or similar arrangements and other payments to any of the Company's directors, management or key employees entered into in connection with the M&A Transaction, (3) all amounts payable in relation to, or other value ascribed in the M&A Transaction (including the form of "rollover" options or warrants) in respect of, warrants, options or other convertible securities, (4) the full amount of any consideration placed in escrow or otherwise withheld to support the Company's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the M&A Transaction,

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 5

and the full amount of any payments in installments, (5) the full value of any contingent consideration to be paid in the future and (6) the net value of any current assets not sold by the Debtors; plus (B) all indebtedness for borrowed money, pension liabilities, guarantees, capitalized leases and other liabilities (whether consolidated, off-balance sheet or otherwise) and preferred stock directly or indirectly assumed, refinanced, retired or extinguished (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs) in connection with the M&A Transaction (including, in the case of the sale, exchange or purchase of equity securities, outstanding at the closing of the M&A Transaction) and the value of operating leases (calculated by multiplying the latest quarter annualized operating lease rental expense prior to closing by 8); the net value of any current assets (such as accounts receivable, inventory, cash and cash equivalents) retained by the Company that relate to the assets transferred in the M&A Transaction; plus (E) in the case of a joint venture or similar transaction (a "Joint Venture"), the aggregate value of the proceeds, assets and other consideration contributed or to be contributed to such Joint Venture by all parties to such Joint Venture in connection with the M&A Transaction (which shall be deemed to include up-front payments, milestone payments, research and development payments, licensing fees and royalties, installment amounts, future and contingent payments and other payments), including, without limitation, cash, notes, securities, intellectual property, licenses, marketing or distribution rights and other property and the amount of any liabilities assumed by such Joint Venture. Notwithstanding the foregoing to the contrary, if and to the extent that amounts of consideration set forth in subclauses 4 and 5 above in respect of which the M&A Transaction Fee is payable are received by the Company following the closing of an M&A Transaction, the corresponding M&A Transaction Fee amounts shall be due and payable as and when such underlying consideration is received by the Company.

For purposes of computing the M&A Transaction Fee, (x) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of announcement of the M&A Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Jefferies.

(d)    Expert Fee.  Should Jefferies produce an expert report or otherwise provide expert testimony, a fee (the "Expert Fee") of $350,000 which shall be creditable against any Transaction Fee due under Section 4(b)(A) above.  A separate expert fee shall be payable for each discrete matter in which testimony is provided.

(e)    The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.  The Committee further acknowledges that it believes Jefferies' general

restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Committee in connection with any Transaction and that the value to the Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.    Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefor (and if unpaid after 30 days from delivery of an invoice, shall thereafter carry interest from such delivery date, both before and after any judgment, at a rate equivalent to LIBOR plus 1% compounded quarterly until payment), for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, and the reasonable fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6.    Indemnification, etc.  As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.  Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7.    Termination.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by the Committee and Jefferies (subject to subsequent approval by the Bankruptcy Court), and will continue until the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has been substantially consummated or (B) Jefferies' services hereunder are terminated by either Jefferies or the Committee on five business days' written notice to the other.  Upon any termination of this Agreement, the Debtors shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies shall be entitled to the Transaction Fee set forth in Section 4 if, on or prior to 12 months from the effective date of termination of this Agreement, the Debtors consummate, or enter into an agreement which subsequently results in, a Transaction.  Any such Transaction Fee shall be payable upon the closing of any such Transaction.   Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-17, and Schedule A, which shall survive such termination.

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 7

8.      Exclusivity.  During the term of the Agreement, the Committee agrees that it will not engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies. The Committee will promptly inform Jefferies of any inquiry it may receive regarding a Transaction.  Notwithstanding the Debtors' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.      Bankruptcy Court Approval.  The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the Bankruptcy Court.  Such approval shall provide for the retention of Jefferies *nunc pro tunc* to March 24, 2015, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in Schedule A), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order.

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 8

10.    Disclaimer.

      (a)     The Committee acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities). The Committee also acknowledges that Jefferies Group LLC's ultimate parent, Leucadia National Corporation (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "Leucadia"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Leucadia maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies. Information that is held elsewhere within Leucadia, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of Leucadia has or will have any duty to disclose to the Committee or use for the Committee's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Leucadia may trade the securities of the Debtors, members of the Committee and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities. Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. Leucadia, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

      (b)     The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Debtors or the Committee. The Committee

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 9

acknowledges that Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. The Committee also acknowledges that it has consulted with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and Jefferies and its affiliates shall have not responsibility or liability with respect thereto. The Committee agrees that it is capable of evaluating the merits and risks of the transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of the transactions and such fees. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors and the Committee will be able to implement or consummate any Transaction, or any other transaction contemplated herein, or achieve any other result.

11.    Governing Law.    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

12.    Exclusive Jurisdiction.    Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this agreement to this Section 11 (any of the foregoing, a "Claim") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law. The Committee and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of forum non-conveniens. The Committee and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered to the addresses set forth or referred to in Section 14 hereof. The Debtors shall pay all of Jefferies' costs and expenses (including, without limitation, fees and expenses of counsel) in an enforcement proceeding if the court in such proceeding determines that Jefferies is entitled to recover amounts due hereunder. The Committee and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced.

13.    Payments.    All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Except as expressly set forth herein, n fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 10

14.    Announcements, etc.  The Committee agrees that Jefferies may, following the announcement of a Transaction, describe the Transaction (or prior to a consummation or announcement of a Transaction, Jefferies role as an advisor to the Committee) in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Debtors' name and logo in connection therewith.  The Committee agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in connection with the Transaction in form and substance satisfactory to Jefferies.

15.    Notices.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

16.    Miscellaneous  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party.  This Agreement is solely for the benefit of the Committee, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; provided that Jefferies may, in the performance of its services hereunder, procure the services of other members of Leucadia (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement.  If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof.  The Committee and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.  This Agreement has been reviewed by the signatories hereto and their counsel.  There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

17.    Patriot Act.  Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Debtors, the Committee, and the Committee's members in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Committee (subject to approval by the Bankruptcy Court), this Agreement shall constitute a binding agreement among Jefferies and the Committee as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By _____
    Name: Leon Szlezinger
    Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
THE STANDARD REGISTER COMPANY**

By _____
    Name:
    Title:   Co-Chairperson

By _____
    Name:
    Title:   Co-Chairperson

**Official Committee of Unsecured Creditors of The Standard Register Company**
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Committee (subject to approval by the Bankruptcy Court), this Agreement shall constitute a binding agreement among Jefferies and the Committee as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By _____
Name: Leon Szlezinger
Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE STANDARD REGISTER COMPANY**

By _____
Name:
Title:  Co-Chairperson

By _Timothy J. Webb_____
Name:
Title:  Co-Chairperson
4/17/15

Official Committee of Unsecured Creditors of The Standard Register Company
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Committee (subject to approval by the Bankruptcy Court), this Agreement shall constitute a binding agreement among Jefferies and the Committee as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By _____
      Name: Leon Szlezinger
      Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
THE STANDARD REGISTER COMPANY**

By     _JAM Butler_
      Name:  JACK BUTLER
      Title:  Co-Chairperson

By     _____
      Name:
      Title:  Co-Chairperson

SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Committee. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

The Debtors and the Committee agree that no Indemnified Person shall have any liability to the Debtors, the Committee or their resepective owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

The Debtors agree that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Debtors and their securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and their securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all costs and expenses (including, without limitation, fees and expenses of counsel) incurred by the Indemnified Persons (including all such costs and expenses incurred to enforce the terms of this Schedule A) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that, if any such reimbursement is for expenses relating to a Loss that is determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors), such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all out-of-pocket expenses (including, without limitation, fees and expenses of counsel) incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or

# SCHEDULE A

termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this <u>Schedule A</u>, the Debtors will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Debtors set forth in this <u>Schedule A</u>, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Jefferies; <u>provided</u>, <u>however</u>, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this <u>Schedule A</u> has been made, the Debtors' obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.