## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 12, 2015 at 10:00 a.m. (ET)**<br>**Obj. Deadline: May 5, 2015 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ORDER (I) AUTHORIZING THE PRIVATE SALE BY THE DEBTORS OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF

The Standard Register Company and its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this Motion (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure  (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the private sale (the "Sale") of certain real property located at 325 Busser Rd., York County, PA 17318 along with certain improvements and fixtures (collectively, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to SB Busser, LLC (or an affiliate thereof) (the "Purchaser") pursuant to the terms and conditions of

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

the Contract to Purchase and Sell Commercial Real Estate, dated as of March 4, 2015 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement"), by and between The Standard Register Company (the "Seller") and the Purchaser, a copy of which is attached as Exhibit 1 to the Proposed Order, (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief.  In support of the relief requested herein, the Debtors rely on the Declaration of John D. Behm, attached hereto as Exhibit B, and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

## BACKGROUND

### A.      General Background

2.      On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in

possession.  No trustee or examiner has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

3.    On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee")

4.    Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration"), which was filed on the Petition Date.

**B.    Description of the Property**

5.    The Property includes approximately 5.045 acres of land area, with a one-story light industrial facility and a two-story office building containing a total of approximately 67,000 square feet of building area.

6.    The Property was previously owned by Workflow Holdings, LLC, and the Debtors obtained the property in connection with their acquisition of Workflow Holdings, LLC, WorkflowOne, LLC, and their affiliates in 2013.  The Debtors have another facility located approximately five miles from the Property and have since consolidated their operations in the area into that facility.  Therefore, the Debtors no longer need the Property, and the Property has been vacant since mid-February 2015.

7.    The Property constitutes Term Loan Priority Collateral (as defined in the order authorizing postpetition financing [Docket No. 290] (the "DIP Financing Order")).  Pursuant to the DIP Financing Order, Silver Point Finance, LLC ("Silver Point"), as agent under the postpetition term loan financing agreement, holds a postpetition lien on the Property.  Dip

Financing Order ¶ 10.  The Debtors have also stipulated that Silver Point holds perfected

prepetition first-and second lien mortgages on the Property.  *Id.* ¶ 6(D).

**C.      The Debtors' Marketing Efforts for Sale**

8.      The Debtors, together with their professional advisors, have been marketing the

Property since well before the Petition Date.  In doing so, the Debtors entered into an agreement

with Jones Lang LaSalle, Inc. and Cresa Partners of Pennsylvania, Inc. t/a Cresa Philadelphia

(together, the "Broker") to market the Property beginning in October 2014.  Since that time, the

Property has been shown to at least two interested parties and listed through several widely-used

commercial real estate services, including, without limitation, Costar, and the Broker's internet

website.

9.      As a result of these efforts, which also included the preparation and targeted

circulation of detailed marketing brochures for the Property, solicitation campaign to area real

estate brokers, a marketing brochures for the Property, a solicitation campaign to area real estate

brokers, a marketing sign installed on the Property, and a notice provided to the York County

Economic Development Corporation, the Debtors received two qualified offers for the Property,

the highest of which was received from the Purchaser for a purchase price of $2,200,000 (the

"Purchase Price").  The other offer was for substantially less than the Purchase Price, contained a

financing contingency, and a contemplated longer closing period.  Recognizing that the Sale

would bring significant value to their business, the Debtors executed the Purchase Agreement

prior to the Petition Date.

4

D.    **Summary of Proposed Terms of the Sale**[2]

10.    Pursuant to the terms and conditions of the Purchase Agreement, and subject to this Court's approval, the Debtors propose to sell to the Purchaser the Property on an "as is, where is basis" free and clear of all liens, claims, encumbrances and other interests.  The material terms and conditions of the Purchase Agreement are as follows:

| | |
|---|---|
| Legal Description and Address Of Property<br><br>Purchase Agreement § 1 | The Purchaser agrees to buy and the Seller agrees to sell the following, which constitutes all of the acreage the  Seller owns at this address in York County, Pennsylvania:<br><br>(a) Real Estate.  Approximately 5.045 acres (including a building containing approximately 67,193 square feet) (the "Building") located at 325 Busser Rd., York County, PA 17318.<br><br>(b) Appurtenances.  All of the Seller's interest in and to all streets, alleys and other public or private ways adjacent to the real estate described in subsection (a) above, and appurtenant easements, right-of way and privileges belonging to and inuring to the benefit of the Parcels; and<br><br>(c) Improvements and Fixtures.  All improvements, fixtures and equipment located on the real estate except for the equipment specified in the Purchase Agreement, which will remain the property of the Seller and which will be removed from the Property by the Seller prior to the Closing Date (as defined below). |
| Purchase Price<br><br>Purchase Agreement § 2 | $2,200,000 |
| Escrow Money Deposit | Within three business days after March 4, 2015 (the "Effective Date"), the Purchaser shall deposit $50,000.00 (the "Earnest Money") with |

---

[2]    This summary of the Purchase Agreement is provided for the Court's convenience only.  To the extent this summary differs in any way from the terms and conditions of the Purchase Agreement, the actual terms of the Purchase Agreement shall control.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

01:17001426.1

| | |
|---|---|
| Purchase Agreement § 2 | Mercantile Title Agency, Inc., an Ohio corporation (the "Title Company") whose address is: 255 E. Fifth Street, Ste. 1900, Cincinnati, OH 45202.  The Title Company shall hold the Earnest Money in escrow in an interest bearing account at a financial institution approved by the Purchaser and the Seller. The account shall be opened under the Purchaser's taxpayer identification number and all interest which accrues on the Earnest Money shall be added to and become a part of the Earnest Money.  If the Purchaser terminates the Purchase Agreement as provided in Section 4 of the Purchase Agreement, then the Earnest Money shall be refunded to the Purchaser.  After the expiration of the Due Diligence Period (as defined below), the Earnest Money shall be non-refundable, and it shall be applied only as provided in Section 2 or Section 12 of the Purchase Agreement.  On the Closing Date, the Title Company shall deliver the Earnest Money Deposit and any accrued interest to the Seller, and the Purchaser shall pay the balance of the Purchase Price at the Closing by wire transfer of immediately available funds. |
| Purchaser's Conditions to Closing<br><br>Purchase Agreement § 3 | The "Due Diligence Period" shall begin on the Effective Date and expire on the sixtieth (60th) day after the Effective Date (the "Due Diligence Deadline"), during which time the  Purchaser may perform any investigation reasonably necessary to permit the Purchaser to evaluate the physical condition and legal aspects of the Property ("Due Diligence"). The Due Diligence may include, but shall not be limited to, the performance of environmental studies, verification of the permissibility of the Purchaser's intended use under applicable zoning regulations, verification of the availability of adequate utilities, and preliminary engineering and space planning to confirm the feasibility of the Property for the Purchaser's intended use. |
| Closing<br><br>Purchase Agreement § 5 | So long as the Purchaser is satisfied with the results of its Due Diligence, then the parties will close the purchase of the Property (the "Closing") at a mutually agreed time (the "Closing Date"), but in no case later than 30 days following the expiration of the Due Diligence Period, unless the Closing Date is extended under the provisions described in Section 4 of the Purchase Agreement.  The parties shall conduct the Closing through escrow, by delivering all funds and documents to the Title Company. |
| As Is, Where Is" Transaction<br><br>Purchase Agreement § 6 | The Seller will convey the Property in "AS IS, WHERE IS" condition at Closing, with all faults and without recourse to the Seller.  The Seller makes no covenant, representation or warranty, whether express or implied, which is not expressly set out in Section 7 of the Purchase Agreement, and the Seller specifically disclaims any and all representations and warranties with respect to the Property. |

| Real Estate Brokers[3]<br><br>Purchase Agreement § 11 | At the close of escrow, a brokerage fee equal to 4% of the Purchase Price shall be paid out of escrow to the Broker. |
|---|---|
| Relief from Bankruptcy Rule 6004(h)<br><br>Proposed Order | The Proposed Order provides that the provisions of Bankruptcy Rule 6004(h) shall be waived. |
| Sale Free and Clear<br><br>Proposed Order | The Proposed Order provides that the Property shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and interests of any kind or nature to the fullest extent permitted by section 363 of the Bankruptcy Code. |

## RELIEF REQUESTED

11.     By this Motion, the Debtors, pursuant to sections 105(a) and 363 of Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1, request the Court to enter an order (a) authorizing the Sale pursuant to the Purchase Agreement, (b) authorizing and approving the Purchase Agreement, and (c) granting related relief.

## BASIS FOR RELIEF REQUESTED

12.     For the reasons explained in detail below, the Debtors believe that the approval of a private sale of the Property to the Purchaser pursuant to the terms and conditions of the Purchase Agreement is not only appropriate but in the best interest of the Debtors, their estates, and creditors.  Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

---

[3]     Section 11 of the Purchase Agreement includes an indemnity provision whereby the Seller indemnifies the Purchaser against any and all claims, losses, costs, damages, liabilities, or expenses, including reasonable attorneys' fees, arising out of claims made by any other real estate salesperson, broker, consultant, or any other person or entity claiming entitlement to a commission by virtue of having represented the indemnifying party's interests with respect to this Contract or to the listing, marketing, and sale of the Property.  As set forth in paragraph 2 of the Proposed Order, such provision shall be deleted and shall have no force or effect as against any of the Debtors.

estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides: "The Court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that

"all sales not in the ordinary course of business may be by private sale or by public auction."

Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a private

sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> [T]he notice of a proposed use, sale or lease of property . . . shall include . . . the
> terms and conditions of any private sale and the deadline for filing objections.
> The notice of a proposed use, sale or lease of property, including real estate, is
> sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

13.     To approve the use, sale, or lease of property out of the ordinary course of

business, this Court must find some articulated business justification for the proposed action.

*See In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting

the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v.

Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. &

Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had

adopted a "sound business purpose" test in *Abbotts Dairies*).

14.     Generally, courts have applied four factors in determining whether a sale of a

debtor's assets should be approved: (a) whether a sound business reason exists for the proposed

transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction

has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice

is provided.  *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test);

*Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test

and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is

satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

15.     This fundamental analysis does not change if the proposed sale is private, rather than public.  *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)").  The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property."  *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the proposed private sale of the Property to the Purchaser meets all of these requirements and should be approved.

**A.     Proceeding by Private Sale Reflects an Exercise of the Debtors' Business Judgment**

16.     There is a sound business justification for the Debtors' preference to proceed with a private sale to the Purchaser, rather than conducting a public sale of the Property.  The Debtors submit that an order granting the relief requested herein is a matter within the sound discretion of the Court and would be consistent with the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  As a result of the Purchaser's interest in the Property, and its willingness to provide fair and reasonable consideration based on that interest, the Debtors believe that their estates and creditors would benefit from the approval of the Sale without the added time, energy, and expenses associated with a public auction.  Moreover, the Debtors' estates will benefit by closing the Sale as soon as possible in order to pay down a portion of their secured obligations and dispose of a property that is not generating any revenue.

01:17001426.1

17.    Indeed, if the Debtors were forced to conduct a public auction for the Property, the Debtors would not be guaranteed the commitment of the Purchaser to purchase the Property, much less at the price to be provided through the proposed private sale and related Purchase Agreement.  Or, if the Debtors were required to include the Property in the subsequent planned sale of substantially all of the Debtors' other assets, the Debtors likewise may receive less for the Property because the Property is not producing revenue, and a bidder would likely need to expend its own time and resources marketing and/or negotiating a sale of the Property at a price less than or equal to the Purchase Price.

18.    The Debtors believe that a private sale of the Property to the Purchaser under the terms and conditions of the Purchase Agreement is more likely to close in a timely and efficient manner than a public auction because, in the Debtors' informed business judgment, the agreement provides them with a strong indication that the Purchaser is motivated to close the contemplated transaction in such a manner.  Given the Purchaser's strong desire to close on an expedited basis so that it can obtain access to the Property as soon as practicable, the Debtors believe that the Sale—as opposed to a lengthy auction process or including the Property with the sale of the Debtors' other assets—represents the best opportunity to extract immediate and meaningful value from the Property in the amount of the Purchase Price.

**B.    The Purchase Price is Fair and Reasonable**

19.    The Debtors believe that the Purchase Price is a fair and reasonable price for the Property.  The Purchase Price under the Purchase Agreement was the result of extensive marketing and arm's length negotiations.  The Debtors have carefully considered and analyzed the Purchaser's offer as set forth in the Purchase Agreement and have concluded that a sale of the Property pursuant to the Purchase Agreement will result in obtaining maximum value for the Property and is in the best interests of their estates and creditors.  In consideration of the

01:17001426.1

foregoing, the Debtors believe that the Purchase Price provides fair and reasonable value for the Property.

## C.    The Sale is Proposed in Good Faith

20.    The Debtors submit that the Sale transaction contemplated herein and in the Purchase Agreement has been proposed in good faith, as the agreement was the product of good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other, and was negotiated with the active involvement of the Debtors' officers and professionals. The Debtors believe and submit that the Sale is not the product of collusion or bad faith.  Further, no evidence suggests that the Purchase Agreement is anything but the product of arm's length negotiations between the Debtors, the Purchaser and their respective professionals.

## D.    Adequate and Reasonable Notice of Sale Has Been Provided

21.    The Debtors intend to provide adequate notice of the proposed Sale to all parties in interest, as required by the applicable procedural rules.  *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).  The Debtors intend to send copies of this Motion and the Purchase Agreement to all parties that have expressed any interest, or the Debtors believe may have an interest, in purchasing the Property.  The notified parties will have the opportunity to submit other offers during the period prior to the objection deadline set forth herein.  Consistent with their fiduciary duties to their estates, the Debtors will consider any and all such offers.

01:17001426.1

**E.      The Sale Should be Free and Clear of Liens, Claims, and Interests**

22.      In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f).

23.      The Debtors believe that their prepetition and postpetition lenders will consent to the Sale pursuant to the terms set forth in the Purchase Agreement and as set forth herein. Furthermore, bankruptcy courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  Considering that any remaining objections to this Motion must be resolved by consent of the objecting party or the Court, the Debtors expect that they can satisfy at least the second and fifth subsections of section 363(f).

**F.      The Purchaser Should be Entitled to the Protections Afforded by 11 U.S.C. § 363(m)**

24.      The Debtors additionally request the Court to find that the Purchaser be entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection
> (b) . . . of this section of a sale . . . of property does not affect the validity of a
> sale . . . under such authorization to an entity that purchased . . . such property in
> good faith, whether or not such entity knew of the pendency of the appeal, unless
> such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

25.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the

order allowing the sale is reversed on appeal.  Although the Bankruptcy Code does not define

"good faith purchaser," the Third Circuit, construing section 363(m), has stated that "the phrase

encompasses one who purchases in 'good faith' and for 'value.'" *Abbotts Dairies*, 788 F.2d at

147.

26.     To constitute lack of good faith, a party's conduct in connection with the sale

must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee

or an attempt to take grossly unfair advantage of other bidders." *Id.*  (citing *In re Rock Indus.*

*Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *see also In re Bedford Springs Hotel, Inc.*, 99

B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J.

1995).  Due to the absence of a bright line test for good faith, the determination is based on the

facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale

proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock*

*Indus.*, 572 F.2d at 1198).

27.     As required by section 363(m) of the Bankruptcy Code, both the Debtors and the

Purchaser have acted in good faith in negotiating the Sale of the Property.  There is no evidence

of fraud or collusion in the terms of the Purchase Agreement.  To the contrary, as previously

discussed, the Sale will be the culmination of meaningful negotiations in which the parties were

ably represented by sophisticated advisors.  The Purchaser is not an insider of the Debtors as that

term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been

conducted on an arm's length, good faith basis.

28.     All known parties with an interest in the Property will receive notice of the Sale

and will be provided an opportunity to be heard.  The Debtors submit that such notice is adequate

for entry of the Proposed Order and satisfies the requisite notice provisions required under

section 363(b) of the Bankruptcy Code.  Under the circumstances, the Purchaser should be

afforded the benefits and protections that section 363(m) provides to a good faith purchaser.

## REQUEST FOR WAIVER OF STAY

29.     Bankruptcy Rule 6004(h) provides, in relevant part, that an "order authorizing the

use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order,

unless the court orders otherwise."  The Debtors request the order approving the Sale to be

effective immediately by providing that the ten-day stay period under Bankruptcy Rule 6004(h)

is waived.

30.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to

Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay

period, *Collier on Bankruptcy* suggests that the 14-day stay period should be eliminated to allow

a sale or other transaction to close immediately "where there has been no objection to the

procedure."  10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 6004.11 (16th

ed.).  Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled, and

the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

31.     Promptly closing the Sale is of critical importance to the Purchaser and to the Debtors' efforts to preserve and maximize the value of their estates through, among other things, reducing their secured debt obligations and disposing of a property that is a burden and not generating any revenue. To obtain maximum value for the Property, the Debtors must be able to proceed quickly and close the Sale to the Purchaser pursuant to the terms of the Purchase Agreement. Accordingly, the Debtors request the Court to waive the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

32.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) proposed counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (vii) all parties known to the Debtors that have expressed interest in the possible purchase of the Property; (viii) all parties known to the Debtors who have an interest in or rights to the Property; and (ix) all taxing authorities having jurisdiction over any of the Property. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:17001426.1

15

WHEREFORE, the Debtors respectfully request the Court to grant the relief requested

herein and such other and further relief as the Court may deem just and proper.

Dated: April 21, 2015
Wilmington, Delaware

       */s/ Andrew L. Magaziner*

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
mrosenthal@gibsondunn.com
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

01:17001426.1