## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| THE STANDARD REGISTER COMPANY, *et al.*[1] | : | Case No. 15-10541 (BLS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: 5/12/15 at 10:00 a.m.** |
| | : | **Objection Deadline: 5/4/15 at 4:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 107(B) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9018 AND LOCAL RULE 9018-1(b), AUTHORIZING THE DEBTORS TO FILE A SUMMARY OF THEIR KEY EMPLOYEE INCENTIVE PLAN, INCLUDING THE EXHIBITS ATTACHED THERETO, UNDER AND (II) DIRECTING PARTIES TO REDACT CONFIDENTIAL INFORMATION (D. I. 310)**

In support of his Objection to the Debtors' Motion for  Entry of an Order, Pursuant to

Section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1(b),

Authorizing the Debtors to File a Summary of Their Key Employee Incentive Plan, Including the

Exhibits Attached Thereto, Under Seal and Directing Parties to Redact Confidential Information

(the "Seal Motion"), Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S.

Trustee"), by undersigned counsel, avers as follows:

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to the Seal Motion, because the relief requested would

deny creditors, other parties in interest, and the general public, access to information that is

central to the Debtors' separately filed Motion for Entry of an Order, Pursuant to Sections 105,

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a).

363(b) and 503(c) of the Bankruptcy Code, (I) Approving the Debtors' Key Employee Incentive

Plan; (II) Authorizing the Debtors to Pay Incentive Bonuses to Certain Employees; and (III)

Granting Related Relief (the "KEIP Motion," D.I. 308), where that information is neither

confidential commercial information nor otherwise eligible for protection under Section107(b) of

the Bankruptcy Code.

2.      There is a strong presumption under U.S. law that the public has a right of access

of judicial records.  In bankruptcy proceedings, the only categories of information that may be

shielded from disclosure are "trade secret or other confidential research, development or

commercial information," information that is "scandalous or defamatory," information "made

confidential by statute or regulation," or information which could result in identity theft.  11

U.S.C. § 107(b), (c); Fed.R.Bankr.P. 9018.  The Debtors have failed to meet their burden to

establish that the information they seek to keep from their creditors and other parties in interest

falls within this narrow exception.

3.      The Debtors request authority to file under seal the entire Summary of their Key

Employee Incentive Plan ("KEIP") filed as Exhibit B to the KEIP Motion.[2]  They seek to avoid

public disclosure of the names, job titles, responsibilities, salaries, and target bonus of all of the

49 employees selected to receive incentive payments under the KEIP ("KEIP Participants").  The

Debtors also seek to avoid public disclosure of the financial performance goals that will entitle

KEIP Participants to receive incentive payments under the KEIP.

4.      The information the Debtors seek to avoid disclosing publicly is necessary for the

Debtors to meet their burden of proof to show that the payments contemplated by the KEIP are

[2] The Debtors have filed only a Summary of the KEIP, rather than the KEIP itself, despite a statement in footnote 3 of the KEIP Motion that "[t]he Summary is qualified in all respects by reference to the KEIP itself, which shall control."  Based on the footnote 3 statement, reliance on the Summary alone may not be appropriate.

incentive payments justified by the facts and circumstances of this case pursuant to Section

503(c)(3) of the Bankruptcy Code rather than a disguised retention payments governed, as to

insiders, by Section 503(c)(1) of the Code.  Thus, unless the hearing on the KEIP Motion is to be

conducted in secret, much of the information the Debtors seek to shield will have to be disclosed

at the hearing.

**JURISDICTION**

5.      This Court has jurisdiction to hear this Objection.

6.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the

administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S.

Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia*

*Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest

standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v.*

*Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S.

Trustee as a "watchdog").

7.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this

Objection.

**BACKGROUND**

8.      The Debtors commenced this case on March 12, 2015 (the "Petition Date") by

filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The U.S. Trustee

appointed an official committee of unsecured creditors on March 24, 2015.

9.      On April 19, 2015, the Debtors filed the KEIP Motion and the Seal Motion.

10.     The KEIP Motion publicly discloses only the following essential aspects of the

3

proposed KEIP:

(a)      49 senior level or executive employees of the Debtors, comprising less than 2% of the Debtors' workforce, have been identified as KEIP Participants.  Certain of the KEIP Participants are "likely" insiders.

(b)      The KEIP establishes a "Target Opportunity" of approximately $3,620,053, equally divided between an "ambitious" revenue goal and an "ambitious" EBITDARP[3] goal for fiscal year 2015.   A maximum of approximately $4,344,064 would be payable under the KEIP.

(c)      KEIP Participants will earn 80% of the Revenue Target Opportunity if applicable revenue is approximately 98% of the goal, up to a maximum of 120% of the Revenue Target Opportunity if applicable revenue is approximately 102% of the goal, with intermediate amounts interpolated on a straight line formula.  No payments will be made on account of the revenue goal if the 98% threshold is not met.

(d)      KEIP Participants will earn 80% of the EBITDARP Target Opportunity if applicable EBITDARP is approximately 95% of the goal, up to a maximum of 120% of the EBITDARP Target Opportunity if applicable EBITDARP is approximately 109% of the goal, again with intermediate amounts interpolated on a straight line formula. No payments will be made on account of the EBITDARP goal if the 95% threshold is not met.

11.      The Debtors do not disclose in the KEIP Motion, and seek by the Seal Motion to avoid public disclosure of the KEIP Participants' names, job titles, responsibilities, current

---

[3] Earnings before interest, taxes, depreciation, amortization, restructuring, and pension amortization and settlement.

salaries, and proposed incentive payment amounts, nor do they disclose the actual revenue and

EBITDARP goals that will entitle KEIP Participants to incentive payments.  Indeed, the Debtors

seek authority to file the entire KEIP Summary under seal, limiting public knowledge of the

KEIP's terms to the description in the KEIP Motion.  The public would be permitted to see only

a summary of the KEIP Summary, which is in turn a non-controlling description of the KEIP.

12.     The Debtors assert that the names, work positions, salaries and target bonus

amounts are confidential commercial information that must be protected from disclosure because

competitors could use such information to lure employees away from the Debtors by offering

more attractive employment.  The Debtors further assert that public disclosure of such

information may cause harm or distress to the KEIP Participants themselves or to non-

participating employees, thereby impairing employee morale.

13.     The Debtors assert that the financial performance goals (for revenue and

EBITDARP) described in the KEIP summary are confidential commercial information

embedded in their business plan, which is itself confidential commercial information, and that

disclosure would enable competitors to use to their own commercial advantage, negatively

affecting the ongoing sale process and undermining the Debtors' ability to maximize value.

## ARGUMENT

14.     The Supreme Court stated in *Nixon v. Warner Communications, Inc.*, 435 U.S.

589 (1978), that "[i]t is clear that the courts of this country recognize a general right to inspect

and copy public records and documents, including judicial records and documents."  *Id.* at 591;

*accord Pansy v. Borough of Stroudsburg*, 23 F. 3d 772, 780-81 (3d Cir. 1994) (recognizing "a

right of access to judicial proceedings and that judicial records," and that "this right of access is

'beyond dispute'").

15.     Section 107(a) of the Bankruptcy Code provides that all papers "filed in a case under this title . . . are public records and open to examination" by the public.  11 U.S.C. § 107(a).  "This policy of open inspection, codified generally in Section 107(a) of the Bankruptcy Code, evidences Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings."  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994); *accord In re Alterra Healthcare Corporation*, 353 B.R. 66, 71 (Bankr. D. Del. 2006)("[D]ocuments filed in bankruptcy cases have historically been open to the press and general public."); *In re Continental Airlines*, 150 B.R. 334, 341 (D. Del. 1993)(noting  ". . . the strong presumption in favor of public access to judicial records and papers. . . ."); *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).

16.     A limited exception to public disclosure may be invoked to protect "an entity with respect to a trade secret or confidential research, development or commercial information."  11 U.S.C. § 107(b)(1);[4] *accord* Fed.R.Bankr.P. 9018.  Specifically, Bankruptcy Rule 9018 provides in pertinent part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

Fed. R. Bankr. P. 9018.

---

[4]    Although not relevant in these cases, section 107 also permits a court, for cause, to protect an individual from disclosure of information that could result in identity theft or other unlawful injury.  11 U.S.C. § 107(c).

17.     The moving party bears the burden of showing that a request to place documents under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018 by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access." *Continental Airlines,* 150 B.R. at 340; *accord*, *Food Mgmt. Group*, 359 B.R. at 561; *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).  To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt. Group*, 359 B.R. at 561 (citing *Orion*, 21 F.3d at 27).

18.     In *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984), the Third Circuit Court of Appeals indicated that a party seeking to seal any part of a judicial record bears the burden of showing (1) that the material is the kind of information that courts will protect and (2) that disclosure will work a clearly defined and serious injury to the party seeking closure.); *Id.* at 1071-2; *accord In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir. 2001) (party seeking to seal must "clearly define[]" the "serious injury" that would ensue from public disclosure of the documents).  Before sealing the record, the court must be able to articulate the compelling countervailing interests to be protected, and make specific findings on the record concerning the effects of the disclosure.  *Publicker,* 733 F.2d at 1072.

19.     The Debtors argue that the information in the KEIP Summary that they seek to keep hidden from public view is confidential commercial information that could be used by competitors to the competitor's commercial advantage and the Debtors' competitive disadvantage, enabling competitors to lure away the Debtors' customers as well as employees. The Debtors also speculate that disclosure of information regarding the individual KEIP Participants might cause harm or distress to the KEIP Participants themselves or to non-participating employees, thereby impairing employee morale.

20.     The "confidential . . . commercial information" exception protects parties from the release of information which "would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  *Alterra,* 353 B.R. at 75 (*quoting Orion Pictures*, 21 F.3d at 27-28); *accord, In re Global Crossing Ltd.,* 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

21.     The U.S. Trustee understands that in limited circumstances, it is appropriate to protect confidential commercial, competitively sensitive, or proprietary information from unnecessary disclosure.  However, any such protection must not be so overarching as to prevent the public from understanding the details of what is, by common law and the Bankruptcy Code, an inherently public process.

22.     The Standard Register Company is a publicly traded company.  As such, it is required by applicable regulations to disclose the compensation of at least the principal executive officer and the next two most highly compensated executives, referred to collectively as "Named Executive Officers".[5]  In their most recently filed proxy statement (dated March 14, 2014), the Debtors disclosed not only the compensation of their NEOs, but also the components of such compensation and the revenue and EBITDARP targets underlying the incentive portion of their compensation.   The Debtors also disclose, in quarterly filed SEC Forms 10-Q, their revenue and other financial information for the quarter and for the year to date.

23.     Section 521(a) of the Bankruptcy Code requires each Debtor to file schedules of assets and liabilities and a Statement of Financial Affairs (SOFA).  SOFA Item 3b requires

---

[5] The Standard Register Company claims in its  Securities and Exchange Commission filings that it is a smaller reporting company.  If a public company is not a smaller reporting company, its NEOS comprise the principal executive officer, chief financial officer and next three most highly compensated executives.

disclosure of all payments or other transfers to any creditor within 90 days immediately

preceding commencement of the case unless the aggregate value of such transfers is less than

$6,225.  SOFA Item 3c requires disclosure of all payments to any insider of the debtor within

one year immediately preceding commencement of the case.   Thus, the Debtors are already

required to disclose all payments made to each KEIP Participant for at least the 90 days before

the Petition Date, and all payments made to each insider KEIP Participant within one year before

the Petition Date.

24.     Given the Debtors' existing disclosure obligations under the Bankruptcy Code as

well as under federal securities regulations, it is unclear how the KEIP Participants' names, titles,

current compensation, potential incentive payment amounts, and the financial performance

required to earn the incentive payments,  is confidential commercial information entitled to

protection under Section 107(b) as to each and every KEIP Participant.

25.     Certain of the information contained in the KEIP Summary may be of benefit to

the Debtors' competitors and might arguably them an unfair business advantage, such as the

ability to lure away customers; other information may arguably enable competitors to lure away

employees.   However, before the Court may protect such information from disclosure, the

Debtors must do more than posit that disclosure *might* harm them.  They must establish that

disclosure would "reasonably be expected to cause [them] commercial injury" by exposing

information so critical to the Debtors' operations that its disclosure "will unfairly benefit [the

Debtors'] competitors.'" *Alterra*, 353 B.R. at 75-76.

26.     Compensation of a debtor's employees, including bonus compensation, and

especially  including the criteria by which such bonus compensation will be determined, are

matters of great public concern.  This is all the more true when some of the employees who will

receive bonus payments are insiders.  All parties in interest, not merely those the Debtors admit

to the inner sanctum, are entitled to know of and be heard with respect to such matters.  To

maintain public confidence in the integrity of the bankruptcy system, the public must also have

access to such information.

27.    In the Seal Motion, the Debtors also express concern about the privacy of their

employees and the desire to avoid causing them "distress."   In *In re Foundation for New Era*

*Philanthropy*, 1995 WL 478841 (E.D. Pa. 1995) *New Era*, the Court examined a request to place

under seal the creditor lists required to be filed pursuant to FED.R.BANKR.P. 1007.  The debtor

claimed that it needed to keep its list of donors anonymous.  The court rejected the request,

stating:

> The provision [Section 107(b)] was not intended to save the debtor or its creditors
> from embarrassment, or to protect their privacy in light of countervailing
> statutory, constitutional and policy concerns...Full disclosure of bankruptcy
> records may help insure that the bankruptcy statute is applied effectively in this
> case...Thus, there are significant public concerns which favor full public access to
> all documents filed in this case.

1995 WL 478841 at 4-5.  Solicitude for the privacy of one's employees is not a reasonable basis

for withholding all information regarding the KEIP Participants, especially those who are

insiders or who hold senior executive positions.

28.    The Debtors claim that disclosure of the performance targets by which KEIP

incentive payments are determined would reveal the Debtors' confidential business plan.  As

noted above, the Debtors have previously reported incentive compensation targets for their

NEOs in filings with the SEC, setting forth both the performance targets and the incentive

payment amounts.  Parties in interest should be given enough information to compare currently-

proposed incentive compensation against pre-petition incentive compensation.  Without such

information and the ability to make such a comparison, it is difficult if not impossible to assess

whether the KEIP provides a *bona fide* incentive that is difficult to reach or is instead a disguised

retention plan.

29.    The financial performance metrics the Debtors seek to protect from public

disclosure are the backbone of the KEIP.  The Debtors have the burden of proof on the KEIP

Motion to establish that the bonus payments they characterize as incentive compensation  are not

retention plans governed by § 503(c)(1) of the Bankruptcy Code.  *See In re Hawker Beechcraft,*

*Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).   To show that a bonus plan is (a) not governed

by § 503(c)(1) as to insiders and (b) justified by the facts and circumstance of the case, the

Debtors must prove by a preponderance of the evidence that the bonuses are a part of a "pay for

value" plan that offers incentives based on performance rather than a "pay to stay" plan.  *In re*

*Global Home Prods. LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007); *accord In re Residential*

*Capital LLC,* 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).  Unless the hearing on the KEIP

Motion is to be held in a sealed courtroom, it is difficult to see how the Debtors can meet their

burden of proof on the KEIP.

30.      The U.S. Trustee leaves the Debtors to their burden of proof and reserves all discovery rights.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Seal Motion.  The United States Trustee further respectfully requests that if and to the extent the Court grants any protection from disclosure of information in the KEIP Motion or related exhibits, any order granting such protection expressly (i) provide the Office of the United States Trustee with full access to all redacted and sealed information consistent with Section 107(c)(3), and (ii) not limit the use of any redacted or sealed documents in connection with any party's obligation to refer criminal or ethical violations to appropriate authorities.


Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**


Dated: May 4, 2015          **BY:**   /s/ Mark S. Kenney
                                      Mark S. Kenney
                                      Trial Attorney
                                      Office of the United States Trustee
                                      J. Caleb Boggs Federal Building
                                      844 King Street, Suite 2207, Lockbox 35
                                      Wilmington, DE 19801
                                      (302) 573-6491
                                      (302) 573-6497 (Fax)