**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 15-10541-BLS |
| The Standard Register Company, et al.[1] | : | (Jointly Administered) |
| | : | **Hearing Date: June 17, 2015 at 10:00 a.m.** |
| Debtors. | : | **Objection Deadline: May 18, 2015 at 4:00 p.m.** |

**MOTION BY CARESOURCE MANAGEMENT GROUP CO.
FOR AN ORDER AUTHORIZING CARESOURCE MANAGEMENT GROUP CO. TO
FILE UNDER SEAL ITS MOTION FOR RELIEF FROM STAY TO PERMIT THE
SETOFF OF MUTUAL PRE-PETITION CLAIMS**

CareSource Management Group Co. ("CareSource") moves the Court for an Order, substantially in the form attached hereto as Exhibit A, pursuant to 11 U.S.C. § 107(b)(1) of Federal Rule of Bankruptcy Procedure 9018 and Local Bankruptcy Rule 9018-1 authorizing CareSource to file: (i) an un-redacted version of the CareSource Motion for Relief from Stay to Permit Setoff of Mutual Pre-Petition Claims (the "CareSource Motion") only under seal; and (ii) a redacted public version of the CareSource Motion on the docket.[2]

In support of this Motion, CareSource respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and pursuant to the Order of Reference entered in this District. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding, pursuant to 28 U.S.C.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning provided in the CareSource Motion.

1

§ 157(b)(2). The statutory predicate for the relief sought is § 107 of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules.

2. Pursuant to Local Rule 9013-1(h), CareSource consents to the entry of final orders by this Court if it is determined that the Court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

## BACKGROUND

3. The Debtor and related entities filed Chapter 11 cases on March 12, 2015 and these cases are being jointly administered. The Debtor is operating as a Debtor-in-Possession pursuant to the provisions of 11 U.S.C. § 1107.

4. The Debtor's pre-petition business activities included providing printing services and printed materials.

5. CareSource is a managed care company servicing the needs of health care consumers. CareSource is headquartered in Dayton, OH.

6. CareSource and the Debtor entered into a Master Services Agreement that was effective on July 22, 2014.

7. The Debtor agreed pursuant to the Master Services Agreement to provide certain printing services and printed products to CareSource upon terms and conditions contained in the Master Services Agreement, and amendments thereto.

8. CareSource and the Debtor executed a Delegated Services Agreement effective on January 14, 2015 (the "Delegated Services Agreement").

9. The Delegated Services Agreement contains certain information that is the same as or similar to information contained in the Master Services Agreement. However, the Delegated Services Agreement also contains additional information that is necessary for CareSource and the

Debtor to comply with applicable health care laws and regulations, including certain privacy requirements.

10. The Master Services Agreement and the Delegated Services Agreement are collectively referred to as the "Agreements".

11. Paragraph 6.3 of the Master Services Agreement provides in part as follows (in this paragraph the term "CONTRACTOR" refers to the Debtor):

> **6.3 Indemnification.** Contractor shall indemnify CARESOURCE against and hold CARESOURCE harmless from all liability and loss, and against all claims and action, including but not limited to court costs and attorneys' fees, as a result of third party claims based on or arising out of injury or death to persons, or damage or loss of property, caused by the negligent acts or willful misconduct of Contractor in connection with the performance of this Agreement.

12. On November 12-14, 2014, the Debtor produced misprinted materials for CareSource. These misprinted materials contained errors that have created issues and damages for CareSource and that could continue to create issues and damages (the "Printing Error Claims") against CareSource. Additionally, because the Debtor is obligated to indemnify CareSource from third party claims based on or arising out of damage or loss of property caused by the negligent acts of the Debtor, in connection with the performance of the Master Services Agreement, the Printing Error Claims could affect the Debtor. The Debtor has acknowledged the mistakes that resulted in the Printing Error Claims.

13. Also, pursuant to the terms of Exhibit A of the Master Services Agreement, the Debtor owes CareSource a percentage of the total amount invoiced by the Debtor to CareSource from the Effective Date of the Master Services Agreement through the date of the Debtor's Chapter 11 petition (the "Incentive Claim"). Based upon the formula in the Master Services Agreement, the amount of the Incentive Claim is approximately $150,000.00.

3

14.     The Printing Error Claims and the Incentive Claim are collectively referred to as the "CareSource Claims". The CareSource Claims arose pre-petition. The CareSource Claims and the Invoices (defined below) all arise pursuant to the same Agreements.

15.     The Debtor has invoiced CareSource in the amount of $1,062,628.79 for pre-petition services and product provided by Standard Register pursuant to the Agreements (the "Invoices"). The Invoices are unpaid by CareSource and are a pre-petition obligation of CareSource to the Debtor pursuant to the Agreements.

16.     As a result of the filing of the Chapter 11 case by the Debtor, CareSource has filed the CareSource Motion requesting the entry of an Order granting relief from stay so CareSource may setoff the CareSource Claims against the Invoices.

**RELIEF REQUESTED**

17.     This Motion requests the entry of an order granting the following relief:

A.     CareSource requests that the Court enter an order authorizing CareSource to file: (i) an un-redacted version of the CareSource Motion only under seal; and (ii) a redacted public version of the CareSource Motion on the docket.

B.     CareSource further requests that the Court approve the following procedures regarding the service of the CareSource Motion:

> i.     CareSource will provide un-redacted copies of the CareSource Motion to (a) the Debtor and its counsel, (b) the Official Committee of Unsecured Creditors and its counsel, (c) the U.S. Trustee, and (d) any additional party as ordered by the Court (together, the "Confidential Parties").
>
> ii.     The Court shall order that the Confidential Parties shall keep confidential all information contained in the CareSource Motion that is not disclosed in the public version of the Motion.

**BASIS FOR RELIEF REQUESTED**

18. Pursuant to 11 U.S.C. § 107(b), the Court may authorize CareSource to file the CareSource Motion under seal.

19. 11 U.S.C. § 107(b) provides as follows:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

20. Federal Rule of Bankruptcy Procedure 9018 provides in relevant part as follows:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code . . . .

21. Local Bankruptcy Rule 9018-1(b) provides in relevant part as follows:

> "[a]ny party who seeks to file documents under seal must file a motion to that effect."

22. CareSource requests that the Court authorize it to file the un-redacted version of the CareSource Motion under seal because the disclosure of the full details regarding the Printing Error Claims, and the exact nature of the claims resulting thereby, could cause damage to CareSource and/or could be used by competitors of CareSource in a way that is detrimental to CareSource. The information could also cause damage to the Debtor and the bankruptcy estate by increasing CareSource's indemnification claim. Further, the terms of the Master Services Agreement that were negotiated by CareSource and the Debtor for the calculation of the Incentive Claim are also confidential and commercial in nature. If these terms are disclosed they could be used to the

disadvantage of the Debtor, because the Debtor's pricing terms are important to its business and to the business of any purchaser of the Debtor's assets. Similarly, CareSource may in the future negotiate similar agreements with other suppliers of printed products and services. If the terms of the Incentive Claim calculations are disclosed to the public then CareSource may find itself in a negotiating disadvantage with a future vendor. If it were not for the Chapter 11 filing by the Debtor none of these details of the business dealings between CareSource and the Debtor would be public information. The Chapter 11 filing by the Debtor should not alter the privacy expectations of CareSource or the Debtor in relation to their contracts and business arrangements.

23. Courts have defined "commercial information" as "information which would result in 'an unfair advantage to competitors by providing them with information as to the commercial operations.'" *In re Alterra Healthcare Corp.* 353 B.R. 66, 75 (Bankr. D. Del. 2006) (citing *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 27-28 (2d Cir. 1994)). Commercial information does not need to rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. It need only be confidential and commercial in nature. *See Orion Pictures,* 21 F.3d at 28 (noting that an interested party has only to show that the information to be sealed is "confidential and commercial" in nature).

24. By way of further examples, courts have held that a license agreement authorizing the licensee to produce and sell videocassettes contained confidential commercial information (*see Orion Pictures,* 21 F.3d at 27-28). A list of investors in a debtor's oil and gas business is also confidential commercial information (*see Farmland Indus.*, 290 B.R. 364, 369-70 (Bankr. W.D. Mo. 2003). Similarly, a list of physicians who were placed in temporary places of employment by the debtor, which was a placement agency, was commercial in nature (*see In re Frontier Group, LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000).

25. The information regarding the Printing Error Claims is confidential commercial information. So is the information used to calculate the Incentive Claim. As the Court notes in *Alterra*, information about pricing and costs related to the debtor's assisted living business was commercial and sensitive. The same is true for the information regarding the Printing Error Claims and the Incentive Claim. The Printing Error Claims information should be protected because like the agreement and lists in *Orion Pictures*, *Farmland Industries*, and *Frontier*, CareSource's printed materials to customers are part of its commercial operation. This is sensitive commercial information that would give CareSource's competitors an unfair advantage and insight into CareSource's commercial operations.

26. Furthermore, the Printing Error Claims information should be kept confidential because it could expose CareSource to significant financial liability. CareSource's indemnity claim could increase if the Printing Error Claims are made public. The actual details of the Printing Error Claims are confidential between CareSource and the Debtor. Disclosure of the details of the Printing Error Claims would be detrimental to both CareSource and the Debtor.

27. The information regarding the Incentive Claim is equally confidential and commercial in nature. CareSource and the Debtor negotiated many pricing terms and other terms in the Master Services Agreement. These terms give insights into both the business of CareSource and the business of the Debtor. Both CareSource and the Debtor could be harmed if the details of the Master Services Agreement are made public. Competitors of CareSource could gather information about CareSource, its products, its policies and procedures and about its bargaining positions in contracts like the Master Services Agreement. All of this information was intended to be kept confidential when the Master Services Agreement was negotiated. Likewise, the terms of the Master Services could provide competitors of the Debtor with information about how it prices

7

certain services and/or negotiates contracts of this type. The disclosure of this kind of information could harm both the Debtor and any purchaser of the Debtor's assets.

28. So, the information regarding the Printing Error Claims and the Incentive Claim meets all relevant standards for protection as confidential and commercial.

29. Conversely, filing the details of the Printing Error Claims and the Incentive Claim under seal will not be detrimental to any creditor or party in interest in the Debtor's Chapter 11 case. Confidentiality Procedures can easily be stablished to provide the necessary details of the Printing Error Claims and the Incentive Claim to proper parties.

WHEREFORE, for the reasons set forth herein, CareSource respectfully requests that the Court to permit the filing of the CareSource Motion under seal as requested.

Dated:  May 4, 2015                                         CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE  19801
Telephone:  (302) 777-4200
Facsimile:  (302) 777-4224
Email:  csimon@crosslaw.com

-and-

David M. Whittaker, Esq. (0019307)
(*admitted pro hac vice*)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH  43215
Telephone:  (614) 227-2355
Facsimile:  (614) 227-2390
Email:  dwhittaker@bricker.com

*Attorneys for CareSource*