**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 15-10541-BLS |
| The Standard Register Company, et al.[1] | : (Jointly Administered) |
| | : **Hearing Date: June 17, 2015 at 10:00 a.m.** |
| Debtors. | : **Objection Deadline: May 18, 2015 at 4:00 p.m.** |

**MOTION BY CARESOURCE MANAGEMENT GROUP CO.
FOR AN ORDER PURSUANT TO 11 U.S.C. § 362(d)
GRANTING RELIEF FROM STAY TO PERMIT THE SETOFF
OF MUTUAL PRE-PETITION CLAIMS**

CareSource Management Group Co. ("CareSource") pursuant to 11 U.S.C. § 362(d), Federal Rule of Bankruptcy Procedure 4001, Local Bankruptcy Rule 4001-1 and 11 U.S.C. § 553, moves the Court to enter an Order substantially in the form attached as Exhibit D, granting the following relief: that the Court enter an Order granting CareSource relief from stay to setoff the mutual pre-petition claims of CareSource and Standard Register Co. (the "Debtor") and approving the procedures for setoff requested by CareSource.

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334 and pursuant to the Order of Reference entered in this District. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought are §§ 362 and 553 of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

1

3.  Pursuant to Local Rule 9013-1(h), CareSource consents to the entry of final orders by this Court if it is determined that the Court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

## BACKGROUND

4.  The Debtor and related entities filed Chapter 11 cases on March 12, 2015 and these cases are being jointly administered. The Debtor is operating as a Debtor-in-Possession pursuant to the provisions of 11 U.S.C. § 1107.

5.  The Debtor's pre-petition business activities included providing printing services and printed materials.

6.  CareSource is a managed care company servicing the needs of health care consumers. CareSource is headquartered in Dayton, OH.

7.  CareSource and the Debtor entered into a Master Services Agreement that was effective on July 22, 2014. CareSource and the Debtor executed Amendment No. 1 to the Master Services Agreement effective on October 15, 2014. CareSource and the Debtor executed Amendment No. 2 to the Master Services Agreement effective on December 30, 2014. Copies of the Master Services Agreement, Amendment No. 1 to the Master Services Agreement and Amendment No. 2 to the Master Services Agreement are attached collectively as Exhibit A and are incorporated by reference. These documents are collectively referred to as the "Master Services Agreement".

8.  As explained in more detail below, the Debtor agreed, pursuant to the Master Services Agreement, to provide certain printing services and printed products to CareSource upon terms and conditions contained in the Master Services Agreement.

9. CareSource and the Debtor executed a Delegated Services Agreement effective on January 14, 2015 (the "Delegated Services Agreement"). A copy of the Delegated Services Agreement is attached to this Motion as Exhibit B and is incorporated by reference.

10. The Delegated Services Agreement contains certain information that is the same as or similar to information contained in the Master Services Agreement. However, the Delegated Services Agreement also contains additional information that is necessary for CareSource and the Debtor to comply with applicable health care laws and regulations, including certain privacy requirements.

11. The Master Services Agreement and the Delegated Services Agreement are collectively referred to as the "Agreements".

12. Paragraph 6.3 of the Master Services Agreement provides as follows (in this paragraph the term "CONTRACTOR" refers to the Debtor):

> **6.3** **Indemnification.** Contractor shall indemnify CARESOURCE against and hold CARESOURCE harmless from all liability and loss, and against all claims and action, including but not limited to court costs and attorneys' fees, as a result of third party claims based on or arising out of injury or death to persons, or damage or loss of property, caused by the negligent acts or willful misconduct of Contractor in connection with the performance of this Agreement.

13. As set forth above, CareSource is a managed care company providing, among other services, health insurance coverage to its members. █████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

14. On November 12-14, 2014, the Debtor produced and mailed an ███████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████

15. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

16. Because the Debtor printed and mailed the █████████ ███████ as a result of the Debtor's negligence █████████ ████████████████ pursuant to Paragraph 6.3 of the Master Services Agreement, the Debtor must indemnify CareSource in the amount of ███████████████. CareSource also has the right to make other indemnification claims under Section 6.3 of the Master Services Agreement, as related to the November 12-14, 2014 ████████████████ ████████████████████████████████████████████████ ████████████████████ the "Printing Error Claims").

17. On or about February 5, 2015 CareSource sent to the Debtor a Correction Action Plan Notification (the "CAP") describing the error ████████████████████ ████████████████████████████████████████████████ ████████ The Debtor responded to the CAP and acknowledged that the █████████████ █████████████████████████ was the fault of the Debtor. A copy of the CAP containing the responses of the Debtor is attached as Exhibit C and is incorporated by reference.

18. Also, from the date of the Master Services Agreement through the date of the Debtor's petition, the Debtor invoiced CareSource for approximately ████████ of services and product provided by Debtor pursuant to the Agreements. Pursuant to the terms of █████ ████████████████████████████████████████████████ ████████████████████████ (the "Incentive Claim"). The Incentive Claim is calculated based upon the following formula:

| ███ | ███ | ██████ | ██ |
|---|---|---|---|
| ██████ | █ | ████████ | ████ |



19. The Printing Error Claims and the Incentive Claim are collectively referred to as the "CareSource Claims".

20. The CareSource Claims arose pre-petition. The CareSource Claims and the Invoices (defined below) all arise pursuant to the same Agreements.

21. The Debtor has invoiced CareSource in the amount of ▓▓▓▓▓▓ for pre-petition services and product provided by Standard Register pursuant to the Agreements (the "Invoices"). The Invoices are unpaid by CareSource and are a pre-petition obligation of CareSource to the Debtor pursuant to the Agreements.

22. The Agreements are executory contracts for purposes of 11 U.S.C. § 365.

23. As a result of the filing of the Chapter 11 case by the Debtor, CareSource is stayed from the setoff of the CareSource Claims against the Invoices under Ohio law or relevant bankruptcy law.

## RELIEF REQUESTED

24. This Motion requests the entry of an order granting the following relief:

   A. CareSource requests that the Court enter an order granting CareSource relief from stay to setoff the CareSource Claims against the Invoices, and

B.　　CareSource further requests that the Court enter an Order authorizing CareSource to setoff the ▇▇▇▇ Incentive Claim against the Invoices upon the entry of the Order granting this Motion, and

C.　　CareSource further requests that the Court enter an Order approving the following procedures for the setoff of the Printing Error Claims against the Invoices:

i. CareSource will deposit the sum of ▇▇▇▇ into a separate interest bearing account (the "Escrow Account") which will be maintained solely for the purpose of administering the setoff of the Printing Error Claims against this remaining amount owed on the Invoices. CareSource will provide evidence of the establishment of the Escrow Account to the Debtor, the US Trustee, the Creditor's Committee counsel and any other party ordered by the Court or who provides written request to CareSource to receive a copy of the evidence of the Escrow Account (the "Service Parties").

ii. On or before the twentieth (20th) day of the month after the establishment of the Escrow Account, CareSource will serve on the Service Parties a statement (the "Monthly Setoff Statement") identifying the proposed setoffs to be paid to CareSource from the Escrow Account. The Monthly Setoff Statement shall identify the basis for the proposed setoffs identified by category and the amount of each of the proposed setoffs. The Monthly SetOff Statement shall be filed with the Court as long as the Debtor's Chapter 11 case is pending.

iii. The Service Parties will have twenty one (21) days after service of the Monthly SetOff Statement to object to any proposed setoff (the "Objection Deadline"). Any Objection to a proposed setoff must be served upon CareSource, its counsel and the

other Service Parties on or before the Objection Deadline. Any Objection must be in writing and state the nature of the objection and the specific proposed setoff or setoffs that are in dispute. Objections will be filed with the Court as long as the Debtor's Chapter 11 case is pending. After the closing of the Debtor's Chapter 11 case, any disputes regarding proposed setoff will be decided by binding arbitration, with CareSource and the Debtor each selecting an arbitrator and those two arbitrators selecting a third arbitrator. The losing party on any dispute regarding the setoffs will pay the costs of the arbitration.

iv. At the expiration of the Objection Deadline, CareSource may pay from the Escrow Account the proposed setoffs to which no Objection has been served. If there is a timely Objection to a particular setoff, CareSource shall withhold payment of that portion of the proposed setoffs to which the Objection is directed and may pay the remainder of the proposed setoffs identified in the Monthly SetOff Statement.

v. Similarly, if the parties to an Objection are able to resolve their dispute, then CareSource shall serve on all of the Service Parties a notice indicating that the Objection is withdrawn and CareSource may pay that portion of the proposed setoffs which is no longer subject to an Objection. This Notice will be filed with the Court as long as the Debtor's Chapter 11 case is pending.

vi. All Objections that are not resolved by the parties shall be preserved and presented to the Court at the next scheduled status hearing in the Debtor's Chapter 11 case or at such other date as may be established by the Court.

vii. When the Escrow Account has a zero balance and further rights of setoff arise, the Debtor or its assignee will be wholly and directly responsible for paying such setoffs. Under Ohio law, the statute of limitations for breach of contract is eight years. Ohio Rev. Code § 2305.06. Thus, CareSource will pay to the Debtor or its assignee any funds that still remain in the Escrow Account on November 13, 2022, eight years after the breach of contract occurred, in full satisfaction of the Invoices.

## BASIS FOR RELIEF REQUESTED

25. CareSource is entitled to relief from the automatic stay authorizing CareSource to set off the CareSource Claims against the Invoices for the following reasons.

26. 11 U.S.C. § 553 provides in relevant part as follows:

**a)** Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
**(1)** the claim of such creditor against the debtor is disallowed;
**(2)** such claim was transferred, by an entity other than the debtor, to such creditor—
**(A)** after the commencement of the case; or
**(B)**
**(i)** after 90 days before the date of the filing of the petition; and
**(ii)** while the debtor was insolvent (except for a setoff of a kind described in section 362 (b)(6), 362 (b)(7), 362 (b)(17), 362 (b)(27), 555, 556, 559, 560, or 561); or
**(3)** the debt owed to the debtor by such creditor was incurred by such creditor—
**(A)** after 90 days before the date of the filing of the petition;
**(B)** while the debtor was insolvent; and
**(C)** for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362 (b)(6), 362 (b)(7), 362 (b)(17), 362 (b)(27), 555, 556, 559, 560, or 561).

27. 11 U.S.C. § 362(a) provides in relevant part as follows:

**a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of

the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of— . . .

    **(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
. . .

28.    11 U.S.C. § 362(d) provides as follows:

    **d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
    **(2)** with respect to a stay of an act against property under subsection (a) of this section, if—
        **(A)** the debtor does not have an equity in such property; and
        **(B)** such property is not necessary to an effective reorganization

29.    11 U.S.C. § 101(a)(5) provides as follows:

In this title the following definitions shall apply:
    **(5)** The term "claim" means –
    **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
    **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

30.    When the foregoing code sections are considered together and when relevant case law is reviewed, it is clear that CareSource is entitled to relief from stay to setoff the CareSource Claims against the Invoices.

31.    Setoff is a matter of state law, "but is preserved, with some restrictions, by section 553 of the Bankruptcy Code." *In re Telephone Warehouse, Inc.*, 259 B.R. 64, 68 (Bankr. D. Del. 2001). Section 553 of the Bankruptcy Code provides that "a creditor [may] offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this

title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

32. The Agreements are governed by Ohio law by both the express statements in the Agreements and by the fact that the performance occurred in Ohio.

33. Under Ohio law, a setoff "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction." *Witham v. S. Side Bldg. & Loan Assn. of Lima*, 133 Ohio St. 560, 561, 15 N.E.2d 149 (Ohio 1938). Setoff allows entities that owe mutual debts to each other to state the accounts between them, subtract one from the other and pay only the balance, thereby avoiding the "absurdity of making A pay B when B owes A." *Triangle Props. V. Homewood Corp.*, 2013-Ohio-3926, ¶ 56, 3 N.E.3d 241, 256 (Franklin Cty. Sep. 12, 2013). Setoff is a remedy that has long been recognized and enforced in the commercial world, as well as under each of the nation's bankruptcy acts. *Covington v. Univ. Hosp. of Cleveland*, 149 Ohio App.3d 479, 778 N.E.2d 54 (Franklin Cty. Sep 12, 2002). In a breach of contract claim, Ohio law permits setoff against invoices due under the same agreement. *Triangle Props.*, 2013-Ohio-3926 at ¶¶ 56-57.

34. For a creditor to be entitled to setoff rights in a bankruptcy case, the following factors must be present:

    A. The right of setoff must be authorized by relevant non-bankruptcy law, and

    B. The setoff must be of mutual pre-petition claims.

Both of these factors are present with respect to the CareSource Claims and the Invoices, for not only does Ohio law authorize setoff but the CareSource Claims and the Invoices are also mutual pre-petition obligations. The Printing Error Claims arose in the period between November 12 and

November 14, 2014 when the Debtor printed ███████████████████████████████████

███████████████████████████ Further, the Debtor has admitted its mistakes that are the basis of the Printing Error Claims. The fact that the Printing Error Claims are not yet liquidated[2] does not alter the fact that they are pre-petition claims. Similarly, the Incentive Claim is a pre-petition claim. The Master Services Agreement provides the basis for the calculation of the Incentive Claim. The Incentive Claim was earned during the period from the Effective Date of the Master Services Agreement until March 31, 2015. So, on the petition date, CareSource had earned all of the Incentive Claim accruing through March 12, 2015. Conversely, any portion of the Incentive Claim that was earned between March 12, 2015 and March 31, 2015 is a post-petition administrative claim of CareSource that must be credited by the Debtor in the ordinary course or that must be cured as a part of any assumption and assignment of the Master Services Agreement. The Incentive Claim is to be credited on May 1, 2015. But the credit date does not affect the pre-petition nature of the portion of the Incentive Claim that existed as of the petition date. The CareSource Claims and the Invoices all arise pursuant to the same Agreements. The CareSource Claims relate entirely to events that occurred pre-petition. The Invoices are solely for services performed by the Debtor pre-petition.

---

[2] It is clear that the Printing Error Claims are unliquidated, rather than contingent. An unliquidated claim is one where the event creating the liability has occurred but the amount of the claim cannot be currently determined by the application of rules of arithmetic or law. *In re Corson*, 2004 Bankr. LEXIS 2617, *11-12 (Bankr. E.D. Pa. June 25, 2004). Conversely, a contingent claim is one where the debtor will only have an obligation based upon the occurrence or happening of some future event. *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 281 B.R. 852, 859 (Bankr. D. Del. 2002). The Printing Error Claims arose due to the negligence and breach of contract of the Debtor in November 2014. So the Printing Error Claims do not hinge upon some future event. Rather the Printing Error Claims simply need to be liquidated when the full amount of the damages to CareSource can be calculated. Nonetheless, whether the Printing Error Claims are unliquidated or contingent is not relevant to the right of setoff. Both contingent and liquidated claims may be setoff. *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993); *In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012). *See also, Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin. Servs.)*, 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000) ("Under Sections 101(5) and 553 of the Bankruptcy Code, mutual debts/claims sought to be setoff may be contingent. . . . The contingency of a claim against the estate does not affect its status as a claim").

35. The CareSource Claims and the Invoices are mutual pre-petition claims. The Incentive Claim is liquidated, but the Printing Error Claims are not yet liquidated. However, despite the fact that the Printing Error Claims are not yet liquidated, the CareSource Claims in their entirety may be setoff against the Invoices.

36. The Court in *Telephone Warehouse* specifically stated that setoff of mutual pre-petition claims is appropriate even if one of the claims is contingent or unliquidated. *In re Telephone Warehouse, Inc.* 259 B.R. at 72.

37. In *Telephone Warehouse*, the debtors alleged that a creditor was not entitled to setoff because the creditor's debt arose post-petition. The creditor was supposed to pay the debtors a commission when cell phones were activated; however, if any cell phones were deactivated, the debtors were not to receive a commission. *Id.* The debtors argued that because they filed in May, and commissions were not to be paid until July (to ensure the phones stayed activated), the debt arose post-petition. Thus, the debtors argued that although the phones were activated pre-petition, the obligation to pay the commission (and therefore the mutuality of the debt) did not arise until post-petition. *Id.*

38. The Court in *Telephone Warehouse* disagreed with the debtors and concluded that the timing of the payment does not affect when the obligation arose. Instead, the Court found that the obligations were pre-petition, because "[t]he Bankruptcy Code defines a 'claim' to include a contingent and unliquidated right to payment; a 'claim' arises when the right to payment accrues, not when payment is due." *Id.* The Court went on to cite several cases that acknowledge that a contingent or unliquidated claim does not prevent a creditor from using setoff.

39. Other cases with similar results are: *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993) ("for setoff purposes, a debt arises when all transactions necessary for liability

occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed"); *In re Young,* 144 B.R. 45, 46-47 (Bankr. N.D. Tex. 1992) ("setoff is permitted when, at the time the bankruptcy petition is filed, the debt is absolutely owing but is not presently due, or when a definite liability has accrued but is not yet liquidated"); *In re Nickerson & Nickerson, Inc.,* 62 B.R 83, 85 (Bankr. D. Neb. 1986) ("The right of setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed"); *Traders Bank of Kansas City v. Stonisch (In re Isis Foods, Inc.),* 24 B.R. 75, 76 (Bankr. W.D. Mo. 1982) (where "there could be no question about existence of debt, and fact that it was 'absolutely owing,' albeit as yet unmatured, the bank's right of setoff must be regarded as manifestly present"). *In re Telephone Warehouse, Inc.* 259 B.R. at 72.

40. So, the Printing Error Claims and the Incentive Claim each qualify for setoff. Although the relevant cases do not seem to address this issue, CareSource acknowledges that it will have an obligation to account regarding the setoff, as the Printing Error Claims are liquidated and the setoff of same are completed. Because of this obligation, CareSource has proposed a fair mechanism for administering the setoff of the Printing Error Claims as the Printing Error Claims are liquidated. CareSource recognizes the appropriateness of providing procedural protections as the Printing Error Claims are liquidated and setoff and the process offered by CareSource creates those necessary procedural protections.

41. Because CareSource has demonstrated a right to setoff the CareSource Claims against the Invoices, CareSource is entitled to relief from the automatic stay of 11 U.S.C. § 362(a)(7) to permit the setoff to be completed. If a creditor establishes its right to setoff under applicable non-bankruptcy law and pursuant to 11 U.S.C. § 553 then cause exists to grant that

creditor relief from stay pursuant to 11 U.S.C. § 362(d) to enforce the setoff. See *In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012).

42. Accordingly, CareSource states that it has demonstrated the right to be granted all of the relief requested in the Motion.

Dated: May 4, 2015                                    CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
Email: csimon@crosslaw.com

-and-

David M. Whittaker, Esq. (0019307)
(*admitted pro hac vice*)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH 43215
Telephone: (614) 227-2355
Facsimile: (614) 227-2390
Email: dwhittaker@bricker.com

*Attorneys for CareSource*