# **EXHIBIT D**

Case 15-10541-BLS    Doc 390-5    Filed 05/04/15    Page 1 of 5

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 15-10541-BLS |
| The Standard Register Company, et al.[1] | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Re: Docket No. ___** |

## ORDER GRANTING
## CARESOURCE MANAGEMENT GROUP CO.
## RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d) TO PERMIT THE SETOFF
## OF MUTUAL PRE-PETITION CLAIMS

This matter came before the Court upon the motion by CareSource Management Group Co. ("CareSource") pursuant to 11 U.S.C. § 362(d), Federal Rule of Bankruptcy Procedure 4001, Local Bankruptcy Rule 4001-1 and 11 U.S.C. § 553, that the Court enter an Order granting CareSource relief from stay to set off the mutual pre-petition claims of CareSource and Standard Register Co. (the "Debtor") and approving the procedures for set off requested by CareSource (the "CareSource Motion").

The Court finds that it has jurisdiction over the CareSource Motion pursuant to 28 U.S.C. §§ 157 and 1334 and pursuant to the Order of Reference entered in this District and that venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409.

The Court further finds that this matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

The Court further finds that notice of the Caresource Motion was proper and sufficient.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

1

The Court further finds that the CareSource Motion has stated sufficient legal and factual bases for the Court to grant the CareSource Motion and that, therefore, cause exists to grant the CareSource Motion.

Accordingly, the Court Orders as follows:

1. The CareSource Motion is granted as provided in this Order.

2. CareSource is granted relief from stay to set off the CareSource Claims[2] against the Invoices, and

3. CareSource is further authorized to set off the $150,000.00 Incentive Claim against the Invoices upon the entry of this Order, and

4. The Court approves the following procedures for the setoff of the Printing Error Claims against the Invoices:

A. CareSource will deposit the sum of $912,628.79 into a separate interest bearing account (the "Escrow Account"), which will be maintained solely for the purpose of administering the setoff of the Printing Error Claims against the remaining amount owed on the Invoices. CareSource will provide evidence of the establishment of the Escrow Account to the Debtor, the US Trustee, the Creditor's Committee and any other party who provides written request to CareSource to receive a copy of the evidence of the Escrow Account (the "Service Parties").

B. On or before the twentieth (20th) day of each month after the establishment of the Escrow Account, CareSource will serve on the Service Parties a statement (the "Monthly SetOff Statement") identifying the proposed set offs to be paid to CareSource from the Escrow Account. The Monthly SetOff Statement shall

---

[2] Unless otherwise indicated all capitalized terms shall have the same meaning as in the CareSource Motion

2

identify the basis for the proposed setoffs identified by category and the amount of each of the proposed setoffs. The Monthly SetOff Statement shall be filed with the Court as long as the Debtor's Chapter 11 case is pending.

C. The Service Parties will have twenty one (21) days after service of the Monthly SetOff Statement to object (the "Objection") to any proposed set off (the "Objection Deadline"). Any Objection to a proposed setoff must be served upon CareSource, its counsel and the other Service Parties on or before the Objection Deadline. Any Objection must be in writing and state the nature of the objection and the specific proposed setoff or setoffs that are in dispute. Objections will be filed with the Court as long as the Debtor's Chapter 11 case is pending.

D. At the expiration of the Objection Deadline, CareSource may pay from the Escrow Account the proposed setoffs to which no Objection has been served. If there is a timely Objection to a particular setoff, CareSource shall withhold payment of that portion of the proposed setoffs to which the Objection is directed and may pay the remainder of the proposed setoffs identified in the Monthly Set Off Statement.

E. Similarly, if the parties to an Objection are able to resolve their dispute, then CareSource shall serve on all of the Service Parties a notice indicating that the Objection is withdrawn and CareSource may pay that portion of the proposed setoffs which is no longer subject to an Objection. This Notice will be filed with the Court as long as the Debtor's Chapter 11 case is pending.

F. All Objections that are not resolved by the parties, shall be preserved and presented to the Court at the next scheduled status hearing in the Debtor's Chapter

11 case or at such other date as may be established by the Court. After the closing of the Debtor's Chapter 11 case, any disputes regarding proposed setoff will be decided by binding arbitration with CareSource and the Debtor each selecting an arbitrator and those two arbitrators selecting a third arbitrator. The losing party on any dispute regarding the setoffs will pay the costs of the arbitration.

G. When the Escrow Account has a zero balance and further rights of setoff arise, the Debtor or its assignee will be wholly and directly responsible for paying such setoffs. Under Ohio law, the statute of limitations for breach of contract is eight years. Ohio Rev. Code § 2305.06. Thus, CareSource will pay to the Debtor or its assignee any funds that still remain in the Escrow Account on November 13, 2022, eight years after the breach of contract occurred, in full satisfaction of the Invoices.

Dated:_____, 2015

                                                                    The Honorable Brendan L. Shannon
                                                                    Chief United States Bankruptcy Judge