## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 314, 316, 317 & 318** |

## LIMITED OBJECTIONS OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AND COLLATERAL AGENT, TO RETENTION APPLICATIONS OF COMMITTEE AND RESERVATION OF RIGHTS

Bank of America, N.A., in its capacity as administrative and collateral agent under the Pre-Petition ABL Loan Agreement and as administrative and collateral agent under the ABL DIP Loan Agreement[2] (collectively, "ABL Agent"), submits this limited objection and reservation of rights to the applications filed by the Official Committee of Unsecured Creditors (the "Committee") to retain (i) Lowenstein Sandler LLP ("Lowenstein Sandler") as counsel (Docket No. 314); (ii) Polsinelli PC ("Polsinelli") as Delaware and conflicts counsel (Docket No. 316); (iii) Zolfo Cooper, LLC ("Zolfo Cooper") as financial and forensic advisor (Docket No. 317); and (iv) Jefferies LLC ("Jefferies") as investment banker (Docket No. 318) (collectively, the

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms used but not defined in this limited objection shall have the meanings ascribed to them in the Final Order (I) Authorizing Debtors in Possession to obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364; ( and (III) Providing Adequate Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 (Docket No. 290) (the "Final DIP Financing Order").

"Committee Applications," and the professionals sought to be retained through the Committee Applications, the "Committee Professionals").

In support of their limited objections and reservation of rights, ABL Agent respectfully shows the Court as follows:

## Introduction

ABL Agent does not object to the Committee's retention of the Committee Professionals. ABL Agent, however, objects to the application to retain Zolfo Cooper (the "Zolfo Cooper Application") on the limited ground that the Committee proposes for Zolfo Cooper's compensation to be pre-approved by the Court under Section 328(a) of the Bankruptcy Code, denying any party in interest (other than the U.S. Trustee) the opportunity to object to any fees and expenses sought by Zolfo Cooper, even though Zolfo Cooper will be billing time and compensated on an hourly fee basis.

ABL Agent objects to the application to retain Jefferies (the "Jefferies Application") on the limited grounds that the Committee proposes for Jefferies to receive a substantial fee upon a closing of a sale of the Debtors' assets without Jefferies having added any value to the sale process and that, as with the Zolfo Cooper Application, the Committee proposes for Jefferies' compensation to be pre-approved by the Court under Section 328(a) of the Bankruptcy Code, denying any party in interest (other than the U.S. Trustee) the opportunity to object to any fees and expenses sought by Jefferies.

Finally, with respect to each of the Committee Applications, ABL Agent, on its own behalf and on behalf of the Pre-Petition ABL Lenders and the ABL DIP Lenders, reserves its right to object to the approval and payment of any compensation sought by any Committee Professional.

3747317_1

## <u>Limited Objection to Zolfo Cooper Application</u>

1.      Under the terms of the Zolfo Cooper Application and the engagement letter dated March 24, 2015, between the Committee and Zolfo Cooper (a copy of which is attached to the Zolfo Cooper Application as <u>Schedule 3</u>), Zolfo Cooper will bill hourly, in six minute increments, for its services as a financial and forensic advisor to the Committee.

2.      The Committee proposes that Zolfo Cooper be compensated and reimbursed for its services pursuant to Section 328(a) of the Bankruptcy Code.

3.      As proposed by the Committee, only the United States Trustee will have the right "to respond or object to Zolfo Cooper's interim and final applications for compensation and reimbursement of expenses on all grounds including but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code."[3] (Zolfo Cooper Application ¶14, at 5).

4.      With Zolfo Cooper billing at hourly rates, ABL Agent has no way of knowing the amount of any compensation Zolfo Cooper ultimately may seek.

5.      At least as to all interested parties other than the United States Trustee, the Committee essentially requests that the Court pre-approve Zolfo Cooper's hourly compensation and expenses as reasonable under Section 328(a) without knowing the amounts of those hourly fees and expenses and without knowing what benefit Zolfo Cooper provided to the Debtors' estates through its services.

6.      Under the circumstances, any compensation or expenses sought by Zolfo Cooper should satisfy and be subject to challenge under Section 330. *See In re Uni-Marts, LLC*, 2010 WL 1347640, at *3, No. 08-11037 (MFW) (Bankr. D. Del. Mar. 31, 2010) ("These [section 330(a)(3)] standards are typically applied in considering whether compensation paid to a

---

[3] This right of the United States Trustee to object is recognized in the Zolfo Cooper Application but not in the proposed order accompanying the application.

RLF1 11932083v.1

professional on an hourly basis is reasonable"); *see also In re PJ Financing Co., LLC*, 2012 WL 5879728, at *4 & n.34, No. 11-10688 (BLS) (Bankr. D. Del. Nov. 20, 2012) ("These six [section 330(a)(3)] standards usually apply to professionals paid on an hourly basis.").

7.      ABL Agent requests that any order approving the Zolfo Cooper Application expressly (i) require Zolfo Cooper submit any monthly, interim or final fee applications in accordance with Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Court's Order establishing procedures for interim professional compensation [Docket No. 260] (the "Interim Compensation Order"), and any other Orders and procedures of the Court with respect to professional compensation and (ii) recognize the right of ABL Agent, on its own behalf and on behalf of the Pre-Petition ABL Lenders and the ABL DIP Lenders, to respond and object to any monthly, interim or final fee application submitted by or on behalf of Zolfo Cooper under Sections 330 and 331 of the Bankruptcy Code, including, without limitation, to object to any such application on reasonableness grounds.

## Limited Objection to Jefferies Application

8.      Under the terms of the Jefferies Application and the engagement letter dated as of March 24, 2015, between the Committee and Jefferies (a copy of which is attached to the Jefferies Application as Exhibit B), Jefferies will be paid a flat fee of $100,000 per month for its services as investment banker for the Committee. In addition, Jefferies would be paid a "M&A Transaction Fee" upon the closing of a "M&A Transaction" and a "Restructuring Fee" upon the closing of a "Restructuring."

9.      The "M&A Transaction Fee" is equal to $750,000 plus one percent (1%) of the "Transaction Value" of the "M&A Transaction" in excess of $275,000,000.[4] An M&A

---

[4] The Jefferies Application refers to a Transaction Value of $275,000,000, while the engagement letter refers to a Transaction Value of $273,000,000.

Transaction is defined in the Jefferies Application and the engagement letter to include basically any Section 363 sale of any assets of the Debtors.

10.    As proposed by the Committee, Jefferies would be entitled to the $750,000 M&A Transaction Fee regardless of the Transaction Value of the M&A Transaction, the portion of the Debtors' assets sold through the M&A Transaction, or whether Jefferies provided any value whatsoever to that transaction.  For example, the engagement letter entitles Jefferies to the full $750,000 fee if the proposed sale to Silver Point Finance, LLC ("Silver Point") as the stalking horse is closed without any other bids being submitted, even though the asset purchase agreement among the Debtors and Silver Point was entered into before Jefferies was even retained and without any involvement by Jefferies. If other bids for the Debtors' assets are submitted and an auction is held, Jefferies' fee would increase to $750,000 plus one percent (1%) of the Transaction Value in excess of $275,000,000, even though Jefferies may have had nothing to do with soliciting those bids.

11.    Under the engagement letter, for any "Restructuring," which is defined by the engagement letter to include any restructuring, reorganization, recapitalization or refinancing of all or any "material portion" of the Debtors' indebtedness or liabilities, Jefferies would be entitled to a fee equal to (i) $1,750,000 if the Committee either supports or does not file and prosecute any "material objection" to the proposed Restructuring (or files and then withdraws such objection) and (ii) $750,000 if the Committee files and prosecutes any "material objection" to the proposed Restructuring and this objection is not settled or withdrawn.[5]

12.    As with the Zolfo Cooper Application, the Committee proposes that Jefferies will be compensated and reimbursed for its services solely pursuant to Section 328(a) of the

---

[5] If a transaction or series of transactions qualify as both a M&A Transaction and a Restructuring, Jefferies would be entitled to the higher of the M&A Transaction Fee or the Restructuring Fee, but not both. (Jefferies Engagement Letter at ¶4(b)).

RLF1 11932083v.1

Bankruptcy Code. Only the United States Trustee is recognized as having "the right to object to Jefferies' requests for payment of fees and expenses based on the reasonableness standard in section 330 of the Bankruptcy Code." (Proposed Order ¶5, at 3).

13.    For Jefferies to be entitled to what is essentially a "success" fee for any transaction, whether a M&A Transaction or a Restructuring, for which Jefferies provided no value to the Debtors' estates is inappropriate. *See, e.g.*, *In re NewPage Corp.*, Case No. 11-12804 (KG) (Bankr. D. Del. Nov. 22, 2011) (order clarifying oral ruling denying guaranteed completion fee for committee financial advisor and indicating that retention would be approved if guaranteed completion fee was removed from terms of engagement).

14.    In any event, any Transaction Fee sought by Jefferies should be set forth in an application filed with the Court and served upon interested parties, and should be subject to review and challenge under Sections 330 of the Bankruptcy Code, the Bankruptcy Rules, the Interim Compensation Order, and any other Orders and procedures of the Court with respect to professional compensation. ABL Agent, on its own behalf and on behalf of the Pre-Petition ABL Lenders and the ABL DIP Lenders, should have the right to respond and object to any request by or on behalf of Jefferies for a M&A Transaction Fee or Restructuring Fee under Section 330 of the Bankruptcy Code, including, without limitation, to object to any such fee on reasonableness grounds.

### Reservation of Rights

15.    Through the Committee Applications, the Committee is seeking Court approval of fee schedules that at the very least may call for fees and expenses to be paid to Lowenstein Sandler, Polsinelli, Zolfo Cooper and Jefferies in excess of the amounts reflected in the Professional Fee Budget (as defined in the ABL DIP Loan Agreement) for the Committee

Professionals.[6]

16.     The Professional Fee Budget and any updates to it must be consented to by ABL DIP Agent. *See, e.g.*, Final DIP Financing Order ¶ 19; ABL DIP Loan Agreement §§ 9.1.4 & 9.1.17, Appendix A (definitions of "DIP Budget" and "Professional Fee Budget"). The failure of the Debtors to comply with the DIP Budget (including the Professional Fee Budget) is an event of default under the ABL DIP Loan Agreement. *See* ABL DIP Loan Agreement § 11.1.16.

17.     With respect to each of the Committee Applications and any fees or expenses sought by or on behalf of any Committee Professional, ABL Agent, for itself and on behalf of the Pre-Petition ABL Lenders and the ABL DIP Lenders, reserves all rights and remedies under the Pre-Petition ABL Loan Documents, the ABL DIP Loan Agreement, the Final DIP Financing Orders, any other Orders entered by this Court in these cases, and applicable law. Without limiting the generality of the foregoing, ABL Agent reserves the right  to object to (i) the payment of professional fees and expenses in excess of the aggregate amounts set forth in the Professional Fee Budget, (ii) the use of DIP Loans or Cash Collateral to pay professional fees and expenses incurred for any purpose prohibited under the Final DIP Financing Order or the ABL DIP Loan Agreement, (iii) any Section 506(c) application,[7] and (iv) any interim or final fee applications filed by any Committee Professional.

18.     ABL Agent requests that any Order entered approving a Committee Application include language to the effect that, with the Court's approval of such Committee Application, none of the DIP Credit Parties shall be deemed to have (i) waived any objection, or consented, to any change or modification to the Budget which the Debtors may propose or seek in order to pay

---

[6] The Court reserved the ability to "allocate amounts that are provided for under the DIP financing budget in order to ensure that the Committee is fairly compensated." Hearing Transcript at 85:7-9, *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015). The Court also declined to grant the Debtors' request for a Section 506(c) waiver in the Final DIP Financing Order. *Id.* at 102:7-8.

[7] ABL Agent's reservation of rights with respect to any Section 506(c) claims also is preserved in paragraph 18 of the Final DIP Financing Order.

any compensation or expenses to such professional or which otherwise might result from the Debtors paying such compensation or fees, (ii) consented to any use of the proceeds of any DIP Loans or Cash Collateral for any purpose prohibited under the DIP Financing Documents or the Final DIP Financing Order, or (iii) agreed to any payment of such compensation or expenses as a surcharge against, or other carve out from, their respective primary collateral.

## Conclusion

For all of the foregoing reasons, ABL Agent, for itself and on behalf of the Pre-Petition ABL Lenders and the ABL DIP Lenders, objects on limited grounds to the Zolfo Cooper Application and the Jefferies Application and reserves its rights as to each of the Committee Applications and any compensation or expenses sought by or on behalf of any Committee Professional.

ABL Agent requests that (i) any Order approving the Zolfo Cooper Application require Zolfo Cooper to submit applications for any fees and expenses sought in accordance with Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Interim Compensation Order, and any other Orders and procedures of the Court with respect to professional compensation and recognize the right of ABL Agent to respond and object to any such applications under Section 330, including to challenge the reasonableness of any fees and expenses sought, (ii) any Order approving the Jefferies Application require Jefferies to submit an application for allowance of any M&A Transaction Fee or Restructuring Fee and expenses sought in accordance with Section 330 of the Bankruptcy Code and recognize the right of ABL Agent to respond and object to any such application under Section 330, including to challenge the reasonableness of any such fees and expenses sought, and (iii) any Order approving a Committee Application reserve the rights of ABL Agent as set forth herein and grant to ABL

RLF1 11932083v.1

Agent such other and further relief as may be necessary or appropriate under the circumstances.


Dated:  May 5, 2015
       Wilmington, Delaware

Respectfully submitted,

/s/ Tyler D. Semmelman
Mark D. Collins (No. 2981)
Tyler D. Semmelman (No. 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
       semmelman@rlf.com

-and-

C. Edward Dobbs
James S. Rankin, Jr.
PARKER HUDSON RAINER
  & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, GA 30303
Telephone:  (404) 523-5300
Facsimile:  (404) 522-8409
Email:  edobbs@phrd.com
       jrankin@phrd.com

Counsel for Bank of America, N.A., as
  Pre-Petition ABL Agent and ABL DIP
Agent