## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| THE STANDARD REGISTER COMPANY, | : | Case No. 15-10541 (BLS) |
| *et al.*, | : |  |
|  | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | **Re: Docket Nos. 314, 316, 317, 318.** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF SILVER POINT FINANCE, LLC WITH RESPECT TO PROFESSIONAL RETENTION APPLICATIONS FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Silver Point Finance, LLC, as administrative agent under the Term DIP Loan Agreement,[1] the Prepetition First Lien Credit Agreement, and the Prepetition Second Lien Credit Agreement (in such capacities, the "**Agent**"), hereby submits this limited objection and reservation of rights (the "**Limited Objection and Reservation of Rights**") to the applications of the Official Committee of Unsecured Creditors (the "**Committee**") to retain (a) Lowenstein Sandler LLP as counsel (Docket No. 314); (b) Polsinelli PC as Delaware and conflicts counsel (Docket No. 316); (c) Zolfo Cooper, LLC as financial and forensic advisor (Docket No. 317); and (d) Jefferies LLC as investment banker (Docket No. 318) (together with the retention applications described in clauses (a) through (c) above, the "**Committee Retention**

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final Order (I) Authorizing Debtors in Possession to obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364; ( and (III) Providing Adequate Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 (Docket No. 290) (the "**Final DIP Financing Order**").

**Applications**" and the professionals sought to be retained thereby, the "**Committee**

**Professionals**"). In support thereof, the Agent respectfully represents as follows:

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

**I.      Limited Objection and Reservation of Rights Concerning the Payment of
         Committee Professional Fees in Excess of Budgeted Amounts**

1.      The Agent, while puzzled by the Committee's decision to retain two financial

advisors in a case of this size, will not interfere with the Committee's choice of advisors. But the

Agent's non-objection to the selection of the Committee Professionals does not signify the

Agent's consent to the payment of Committee Professionals beyond the amounts allocated in the

Professional Fee Budget. Because the Committee Retention Applications suggest that some or all

of the Committee Professionals are likely to incur professional fees and expenses well in excess

of such amounts, the Agent is compelled to submit this reservation of rights and explicit

objection to the payment of the Committee Professionals in any amount in excess of the

budgeted amount allocated to them.

2.      The Professional Fee Budget permits the Debtors to spend up to $100,000 per

month for the Committee's legal advisors and $100,000 per month for the Committee's financial

advisors. In addition, the Professional Fee Budget contains monthly allotments for the Debtors'

various professionals. The Professional Fee Budget and all updates thereto are subject to the

Agent's consent. *See, e.g.*, Final DIP Financing Order ¶ 19; Term DIP Loan Agreement § 1.1

(definition of "Budget"). The failure to comply with the applicable Budget (including the

Professional Fee Budget) is an event of default under the Term DIP Loan Agreement. *See* Term

DIP Loan Agreement § 8.1.11.

3.      The Term DIP Loan Agreement does not, by its terms, permit the Debtors or the Committee to reallocate fees among the various Debtor and Committee Professionals. In other words, the Professional Fee Budget is not a lump sum that the Debtors and the Committee can allocate as they please. Nonetheless, the Agent recognizes and respects the Court's reservation of the ability to "allocate amounts that are provided for under the DIP financing budget in order to ensure that the Committee is fairly compensated." Hr'g Tr. at 85:7-9, *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015). The Agent similarly acknowledges that the Court declined to grant the Debtors' request for a section 506(c) waiver in the Final DIP Financing Order. *Id.* at 102:7-8.

4.      While acknowledging these realities, the Agent reserves all of its rights and remedies under the DIP Financing Documents and the Pre-Petition Term Loan Documents. In particular, and without limiting any other rights and remedies, the Agent wishes to make clear that it is reserving its rights as to the following: *First*, the Agent does not consent to the payment of professional fees in excess of the aggregate amounts set forth in the Professional Fee Budget for each applicable period. Put differently, the Court's reallocation of allowed professional fees *among* the various Debtor and Committee Professionals would not affect the *aggregate* amount of professional fees permitted to be paid from with the proceeds of the DIP Loans, Cash Collateral, DIP Collateral, or Pre-Petition Collateral.[2] *Second*, the Agent does not consent to the

---

[2]    The Court has the inherent authority to allow professional fee claims in amounts exceeding the Professional Fee Budget and to allocate such allowed fees among the professionals as it deems appropriate. *See In re Channel Master Holdings, Inc.*, 309 B.R. 855, 858, 860 (Bankr. D. Del. 2004) (noting the court's "inherent power" to allow professional fees in excess of applicable carve-out cap and further observing that "[w]e granted the DIP Financing Motion and approved the budget but held that we had the authority to allocate budgeted fees among the [debtor and committee] professionals on a pro-rata basis"). Absent a successful section 506(c) application, however, professionals would not be entitled to recover allowed fees in excess of the budget ahead of the

*(cont'd)*

use of DIP Loans or Cash Collateral to pay professional fees incurred for a Prohibited Purpose. *Third*, while the Agent recognizes that no section 506(c) waiver has been granted, the Agent reserves all rights to oppose any section 506(c) application.[3] *Fourth*, the Agent reserves its rights to object to any interim or final fee applications filed by the Committee Professionals. To that end, the Agent submits that it should be afforded the right to object to the fees and expenses of all Committee Professionals on the grounds set forth in section 330 of the Bankruptcy Code, and the orders granting such applications should expressly preserve this right.[4]

5.    To ensure that the Agent's rights and remedies are adequately preserved, the Agent requests that the orders approving the Committee Retention Applications include a provision similar to the following:

> In not objecting to any monthly, interim or final fee application which may be submitted by [*name of professional*] or by the Committee on its behalf, none of the DIP Credit Parties (as such term is defined in the final order entered on April 16, 2015 (Docket No. 290))(the "Final DIP Financing Order"), approving debtor-in-possession financing for the Debtors) shall be deemed to have (i) waived any objection, or consented, to any change or modification to the Budget (as defined in the Final DIP Financing Order) which the Debtors may propose or seek in order to pay any compensation or expenses to [*name of professional*] or which otherwise might result from  the Debtors paying such compensation or fees or (ii)

_____

*(cont'd from previous page)*

Agent's pre- or postpetition secured claims. *See* 4 Alan N. Resnick & Henry J. Somer, *Collier on Bankruptcy* ¶ 507.02[4][a]-[b] (16th ed. 2015) (noting that section 506(c) is one of two statutory exceptions to the priority to secured claims over unsecured priority claims (the other being section 724(b), which is not germane in this context)).

[3]    In addition, the Agent's reservation of rights with respect to section 506(c) claims is expressly preserved in paragraph 18 of the Final DIP Financing Order.

[4]    Relatedly, the order approving the retention of the Committee's financial advisor should clarify that the financial advisor will file monthly, interim, and final fee applications pursuant to the terms of the Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (Docket No. 260). Because the financial advisor proposes to bill on an hourly basis, it is appropriate that it would file fee applications to the same extent as other estate and Committee professionals.

agreed to any payment of such compensation or expenses as a surcharge against,
or other carve out from, their respective primary collateral.

While the Agent believes that the preceding language would provide useful clarity, the Agent

emphasizes that it is not intended as a complete exposition of the Agent's rights and remedies, all

of which are reserved.

## II.    Limited Objection to the Proposed Compensation of the Committee's Investment Banker

6.    The proposed compensation of the Committee's investment banker is particularly

problematic. Not only has the Committee promised its investment banker far more compensation

than the budget permits,[5] it seeks to compensate its investment banker based on the result of the

sale process, even though primary responsibility for the sale process rests with the Debtors and

their investment banker. It is not appropriate to preapprove compensation for the Committee's

investment banker under section 328(a) without demonstrating that the Committee's investment

banker has or will contribute meaningfully to the sale process. *See In re Energy Partners Ltd.*,

409 B.R. 211, 230 (Bankr. S.D. Tex. 2009) (denying committees' request to retain investment

bankers under section 328(a) where the "record is insufficient to establish how the services to be

rendered by the [bankers] will provide a tangible, identifiable, and material benefit to the

estate"). Notably, the Committee proposes to pay its investment banker a $750,000 transaction

fee if the sale process realizes the estimated consideration provided by the stalking horse bid—a

transaction for which the Committee and the Committee Professionals plainly can claim no

---

[5]    In particular, the application for the Committee's proposed investment banker indicates that, in the event of a
sale transaction, the investment banker will earn a transaction fee of $750,000 for net consideration of at least
$275 million, plus 1% of each dollar of additional consideration.

responsibility. Put simply, the Committee cannot demonstrate that the proposed compensation for its investment banker is commensurate with the efforts likely to be made, or value likely to be conferred, by its investment banker.

7. The proposed restructuring fee, which the Committee's investment banker would earn upon consummation of any restructuring other than sale transaction, suffers from the same deficiency. As with the sale transaction fee, the Committee's investment banker could earn the restructuring fee without demonstrating any material contribution to the Debtors' restructuring. Indeed, the restructuring fee is largest if the Committee refrains from objecting to a non-sale restructuring; in other words, the Committee's investment banker could earn $1.75 million solely as a result of its *inaction*. If the Committee does object to a non-sale restructuring, the investment banker would earn $750,000, regardless of whether such objection is successful or whether the investment banker contributed to such objection. The investment banker could, apparently, earn $750,000 if the Committee asserts an unsuccessful confirmation objection that is purely legal in nature and requires no substantial input from the Committee's investment banker. Accordingly, the proposed compensation for the Committee's investment banker should not be approved.

WHEREFORE, the Agent respectfully requests (a) that the Committee Retention Applications be approved only subject to (i) the modifications requested herein and (ii) the Agent's reservation of all rights and remedies and (b) that the Court grant such other and further relief as may be just and proper.

DATED:      Wilmington, Delaware
May 5, 2015

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By:   */s/ Sarah E. Pierce*
      Sarah E. Pierce (I.D. No. 4648)
      One Rodney Square
      P.O. Box 636
      Wilmington, Delaware 19899-0636
      Telephone: (302) 651-3000
      Fax: (302) 651-3001

      - and -

      Ron E. Meisler
      Albert L. Hogan III
      Carl T. Tullson
      Christopher M. Dressel
      155 North Wacker Drive
      Chicago, Illinois 60606
      Telephone: (312) 407-0700
      Fax: (312) 407-041

      *Attorneys for Silver Point Finance, LLC*

7