# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 314, 316, 317 and 318** |

## DEBTORS' OMNIBUS OBJECTION TO COMMITTEE RETENTION APPLICATIONS

The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Objection to (i) the *Application of the Official Committee of Unsecured Creditors for an Order (I) Authorizing the Committee to Retain and Employ Jefferies LLC as its Investment Banker,* Nunc Pro Tunc *to March 24, 2015 and (II) Waiving Certain Requirements of Local Rule 2016-2* [Docket No. 318] (the "Jefferies Retention Application"), (ii) the *Application of the Official Committee of Unsecured Creditors of the Standard Register Company, et al. for Entry of an Order Authorizing the Employment and Retention of Zolfo Cooper, LLC as Financial and Forensic Advisors,* Nunc Pro Tunc *to March 24, 2015* [Docket No. 317] (the "Zolfo Cooper Retention Application"), (iii) the *Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Lowenstein Sandler LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of March 24, 2015* [Docket No. 314] (the "Lowenstein Retention Application"), and (iv) the *Application of the Official Committee of*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

*Unsecured Creditors for an Order under Bankruptcy Code Sections 328(a) and 1103(a) and Bankruptcy Rules 2014(a) and 2016(b) Approving the Employment and Retention of Polsinelli PC* Nunc Pro Tunc *to March 24, 2015, as Delaware Counsel and Conflicts Counsel to the Official Committee of Unsecured Creditors* [Docket No. 316] (the "Polsinelli Retention Application," and collectively with the Jefferies Retention Application, the Zolfo Cooper Retention Application, and the Lowenstein Retention Application, the "Committee Retention Applications"), each filed by the Official Committee of Unsecured Creditors (the "Committee"). In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Debtors have no quarrel with the Committee's right to retain advisors. The Debtors do, however, question whether two financial advisors are necessary under the circumstances of this case, and the fee arrangements that those advisors have requested. In addition, the Debtors face a simple budgetary reality: while the Debtors have more than ample liquidity under their approved DIP financing facilities (the "DIP Financing") to pay all postpetition vendors and suppliers in the ordinary course of business, the Debtors do not have budgetary authority under the approved DIP Financing to pay the Committee's professionals on the proposed terms.[2]

2. The Committee proposes to engage not one, but two financial advisors and to pay one of them, Jefferies, $100,000 per month (plus at least a $750,000 "success fee" if the Debtors simply close the transaction contemplated by the stalking horse Asset Purchase Agreement). Separate from the Debtors' issues with the propriety of engaging two financial advisors on the

---

[2] Postpetition vendors and suppliers should rest assured that the Debtors have the requisite authority and will satisfy all obligations owed to them in the ordinary course of business.

2

terms proposed, the DIP Financing budget authorizes the Debtors to pay only $100,000 per month for financial advisors to the Committee. That leaves no budgeted money to pay the other.

3.     For the reasons described above and discussed in more detail below, although the Debtors are mindful of the Committee's fiduciary obligations, the Debtors must object to the terms set forth in the Committee Retention Applications.

## BACKGROUND

A.    **General Background**

4.     On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

5.     The Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware. The Committee was appointed on March 24, 2015.

6.     Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases can be found in the *Declaration of Kevin Carmody In Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2].

7.     The Debtors have executed an agreement for the sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code (the "Stalking Horse APA"). On April 15, 2015, this Court entered an *Order (I) Establishing Sale Procedures Relating to the Sale of*

*Substantially All of the Debtors' Assets; (II) Approving the Maximum Reimbursement Amount; (III) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (V) Scheduling a Hearing to Consider the Proposed Sale; and (VI) Granting Certain Related Relief* [Docket No. 286] (the "Sale Procedures Order") whereby the Court approved an auction process for the sale of substantially all of the Debtors' assets (the "Sale").

**B.     The Committee's Proposed Retention of Professionals**

8.      In the Jefferies Retention Application, the Committee proposes to retain Jefferies LLC ("Jefferies") to perform investment banking services.  Under the proposed terms of retention, Jefferies will be paid $100,000 per month, plus a "success" fee of (a) at least $750,000 if the Debtors simply consummate the Stalking Horse APA that has already been executed, plus (b) an additional "success" fee of 1% of any additional consideration the Debtors receive for their assets.[3]  Jefferies is also seeking a broad indemnification from the Debtors' estates. Jefferies' proposed compensation is not tied to its level of work performed or any other tangible benefit to the estates.

9.      In the Zolfo Cooper Retention Application, the Committee proposes to retain Zolfo Cooper, LLC ("Zolfo Cooper") to perform financial and forensic advisory services.  Under the proposed terms of retention, Zolfo Cooper will be paid for its services on an hourly basis. Zolfo Cooper is also seeking a broad indemnification from the Debtors' estates.

---

[3] As set forth in the Jefferies Retention Application, the Committee proposes that monthly fee payments that exceed $200,000 will be applied to reduce the amount of any success fee due to Jefferies.  Jefferies may also be entitled to an even larger success fee if the Debtors consummate an alternative transaction.

10. In the Lowenstein Retention Application and the Polsinelli Retention Application, respectively, the Committee proposes to retain Lowenstein Sandler LLP and Polsinelli PC to provide legal services on an hourly basis.

### C. Under the Circumstances of the Debtors' Cases, the Estates Cannot Bear the Proposed Cost of the Committee Professionals

11. The principal rationale for the filing of the Debtors' chapter 11 cases was to consummate the Sale. While an auction process has been approved to seek a bidder willing to submit a proposal that tops the Stalking Horse APA (and the Debtors are hopeful that an active auction will ensue), it is uncertain that any bid will, given the amount of the Debtors' secured claims, generate sufficient funds for any, much less, significant distributions for unsecured creditors. Under these circumstances, the Committee's right to engage professionals should be constrained so as not to propagate litigation and unnecessary expense.

12. Separate, however, from the propriety of the Committee's requests from a representation perspective, the Debtors do not have sufficient funds to pay all of the professionals sought to be retained. Pursuant to this Court's *Final Order (I) Authorizing Debtors In Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. § 364; and (III) Providing Adequate Protection to Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [Docket No. 290] (the "<u>Final DIP Order</u>") the Debtors obtained access to $155 million in postpetition financing. The Debtors' access to funding is generally constrained by the Budget. *See* Final DIP Order ¶¶ 7.D., 8.B. However, with respect to the payment of professionals, the Debtors' access to funding is specifically constrained by the Professional Fee Budget. *See* Final DIP Order ¶ 17. The Professional Fee Budget only allows the Debtors to pay $100,000 per month for Committee legal

fees and $100,000 per month for Committee financial advisor fees. *See* Final DIP Order Exhibit 1. The Committee is proposing to pay $100,000 per month (plus a success fee of at least $750,000) to its investment banker and another $100,000 per month to Zolfo Cooper, its other financial advisor, and will almost certainly spend more than $100,000 per month in legal fees during the case.[4] As a result, under the proposed terms of retention, there will be a substantial amount of accrued but unpaid Committee professional fees at the time that the Debtors sell their assets in accordance with this Court's Sale Procedures Order.

13. In connection with the Sale, the Debtors will be entitled to receive a portion of the Sale proceeds (the "Wind Down Amount") to pay certain specified post-closing administrative expenses, including professional fee claims. *See* Stalking Horse APA §§ 1.1, 5.15.[5] The Wind Down Amount does not contemplate payment of any amounts owed to the Committee's professionals that exceed the amounts set forth in the Professional Fee Budget (*i.e.*, $100,000 per month for legal advisors and $100,000 per month for financial advisors).

## OBJECTION

### A. The Debtors Do Not Have Line-Item Authority Under Their DIP Facilities to Pay the Committee's Professionals on the Proposed Terms

14. As noted above, the Debtors do not have the line-item authority to pay the Committee's proposed professionals on the terms presented in the Committee Retention Applications.[6] In addition, the Wind Down Amount is not adequately sized to pay the resulting shortfall or the Jefferies success fee. As a result, there is a substantial risk that if the Committee

---

[4] Upon information and belief, the Committee's proposed counsel has already incurred more than $1 million in fees.

[5] A copy of the Stalking Horse APA is filed at Docket Number 23.

[6] It cannot be over-emphasized that this is a problem of line-item authority in the Budget, and not capacity. The Debtors can and will satisfy their postpetition obligations to vendors and suppliers.

Retention Applications are approved on the terms proposed, the Debtors will be incurring administrative expenses that they do not have the means to pay.

15.     The Debtors, as estate fiduciaries, cannot stand idly by and allow their estates to be saddled with expenses that they know will not be satisfied.  Neither should other estate professionals be forced to bear the risk of reallocation of amounts designated to them by the Professional Fee Budget.  Something has to give and, in the absence of any movement on the Professional Fee Budget, the Court should condition approval of the Committee Retention Applications on payment to the extent provided in the Professional Fee Budget and in any subsequent order entered by the Court entitling the Debtors or the Committee to surcharge the lenders' collateral under section 506(c) of the Bankruptcy Code.[7]

**B.     The Proposed Payments to Jefferies Are Not Sufficiently Tied to Performance**

16.     Under the proposed terms of retention, Jefferies is entitled to a success fee of at least $750,000 if the Debtors do no more than consummate the Stalking Horse APA.[8]  Although it is customary for investment bankers to be compensated through a transaction fee structure, the point of the structure is to incentivize the bankers to bring a deal to the table that maximizes value for the client.  Here, the Debtors have already executed the Stalking Horse APA.  Neither the Debtors nor the Committee needs an investment banker to bring that deal to the table.  Thus, Jefferies should not be entitled to a success fee unless the Debtors sell their assets through an auction process to a successful over-bidder.

---

[7]  In the Final DIP Order, the Court preserved the right of the Debtors and the Committee to pursue section 506(c) surcharge claims.  *See* Final DIP Order ¶ 18.

[8]  It is proposed that Jefferies will receive a $750,000 success fee on a transaction with a "Transaction Value" of $275 million plus 1% of the increase in "Transaction Value" above $275 million.  The definition of "Transaction Value" in Jefferies' Engagement Letter includes a whole host of things, such as "the net value of any current assets not sold by the Debtors" and the value of any liabilities "directly or indirectly assumed, refinanced, retired or extinguished . . . in connection with the M&A Transaction," among many others.  Jefferies Engagement letter p. 4-5 (emphasis added).  The Jefferies Retention Application does not indicate what Jefferies believes its total success fee will be if the Debtors consummate the Stalking Horse APA.

7

**C.     The Fees of the Committee's Professionals Should Be Subject to Review For Reasonableness Under Section 330 of the Bankruptcy Code**

17.     Section 328(a) of the Bankruptcy Code authorizes a court to approve the retention of professionals "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328. It goes on to provide that "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.* Section 330 of the Bankruptcy Code authorizes a bankruptcy court to award retained professionals "reasonable compensation for actual, necessary services" based on various factors, including the time spent and the rates charged.[9]

18.     The Lowenstein Retention Application and the Polsinelli Retention Application each make clear that Lowenstein's and Polsinelli's respective fees will be subject to review for reasonableness under section 330 of the Bankruptcy Code.

19.     However, Jefferies and Zolfo Cooper have not agreed that their fees will be subject to reasonableness review under section 330 of the Bankruptcy Code by parties in interest other than the United States Trustee.[10] This limitation reflects their apparent view that parties in

---

[9] Pursuant to section 330 of the Bankruptcy Code, "[i]n determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. §330(a)(3).

[10] They have each agreed that the United States Trustee may review their fees for reasonableness under section 330.

8

interest other than the United States Trustee should be restricted from later challenging their fees as being unreasonable, but should instead only be able to challenge their fees if their terms and conditions of employment "prove to have been improvident in light of developments not capable of being anticipated" on the date the Court decides the Committee Retention Applications. 11 U.S.C. § 328(a).

20.     As noted above, Jefferies has proposed a fee structure that would entitle it to at least $950,000 even if it does not spend any time working for the Committee, while Zolfo Cooper has proposed that it be retained on an hourly basis. Neither firm's retention under section 328(a) should preclude review of its actual work performed for reasonableness under section 330. Indeed, Courts in this district regularly provide that the fees of a Committee's financial advisors should be subject to review under section 330 of the Bankruptcy Code and this Court should similarly make clear that the fees of Jefferies and Zolfo Cooper are subject to reasonableness review under section 330 of the Bankruptcy code. *See, e.g.*, *In re Source Home Entm't, LLC*, Case No. 14-11553 (KG), Docket No. 219 (Bankr. D. Del. Aug. 19, 2014); *In re Universal Cooperatives, Inc.*, Case No. 14-11187 (MFW), Docket No. 217 (Bankr. D. Del. July 8, 2014); *In re Coldwater Creek Inc.*, Case No. 14-10867 (BLS), Docket No. 547 (Bankr. D. Del. June 10, 2014); *In re Allen Family Foods, Inc.*, Case No. 11-11764 (KJC), Docket No. 170 (Bankr. D. Del. July 13, 2011); *see also In re Stations Holding, Inc.*, Case No. 02-10882 (MFW), 2004 Bankr. LEXIS 1220, at *9 (Bankr. D. Del. 2004) (observing that although the advisor "and the Committee agreed to a flat fee for services provided, this arrangement does not prevent the Court from using an hourly rate to determine the reasonableness of that fee" and reducing a financial advisor's flat fee from $1 million to $104,300 based upon amount of hours that were billed and the reasonableness of the hourly rate).

WHEREFORE, the Debtors respectfully request that the Court condition approval of the Committee Retention Applications as provided herein, and grant such other and further relief as the Court may deem just and proper.

Dated:  May 5, 2015
       Wilmington, Delaware

/s/ Andrew L. Magaziner
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
mrosenthal@gibsondunn.com
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*