

# RoundTower Technologies

RoundTower Technologies Inc. | 4555 Lake Forest Drive | Suite 220 | Cincinnati, Ohio 45242  | f: 513.247.7509 | p: 1.888.679.0752

Stephen West
4555 Lake Forest Drive
Cincinnati, OH 45242
513-247-7900
Stephen.west@roundtower.com
April 24, 2015

Case No. 15-10541 (BLS)

To whom it may concern:

On April 21, 2015 RoundTower Technologies, Inc. (RoundTower) received three NOTICE OF (I) ENTRY INTO STALKING HORSE AGREEEMENT AND (II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS.

Each notice included a "cure pack" identified as <u>Standard SRF 2404 SVC CURE PACK ID 29742MML ID 1293879</u>, <u>Standard SRF 2404 SVC CURE PACK ID 29742MML ID 1293895</u>, and <u>Standard SRF 2404 SVC CURE PACK ID 29742MML ID 1293920</u> with a Potential Assignment Schedule. The Potential Assignment Schedule references services agreements, purchase orders, service contracts and statements of work but provides no detail as to which open and unpaid agreements the schedule pertains to.

RoundTower currently has 3 open invoices with The Standard Register Company (Standard Register):

| | |
|---|---|
| INV12108 | $14,850.00 |
| INV11327 | $6,298.52 |
| INV11471 | $255.60 |

Each of these invoices represent agreements entered into by Standard Register with RoundTower. Goods and services for each have been delivered by RoundTower and accepted by Standard Register. Proof of these agreements and amount owed are attached for review.

In light of the fact that RoundTower Technologies, Inc. delivered the agreed upon goods and services to The Standard Register Company, RoundTower objects to the proposed cure amount of $0 on each of the 3 cure packs. RoundTower formally requests that each invoice, as listed above, be paid in full.

Sincerely,

*[signature]*

Stephen West
President

www.RoundTower.com

© Copyright 2013 RoundTower Confidential & Intellectual Property

# Invoice

| Invoice # | INV11471 |
|---|---|
| Date | 10/28/2014 |
| Terms | Net 30 |
| Due Date | 11/27/2014 |
| PO # | 251186 |
| Sales Rep | Couch, Byron |



**RoundTower Technologies**
4555 Lake Forest Drive, Suite 220
Cincinnati OH 45242
513-247-7900

| Site Contact Information |
|---|
| mark.gillespie@standardregister.com |

| Bill To | Ship To |
|---|---|
| WorkFlow One<br>ATTN Accounts Payable 937-221-2522<br>PO Box 2245<br>Dayton OH 45417-2245 | WorkFlow One<br>ATTN Accounts Payable 937-221-2522<br>PO Box 2245<br>Dayton OH 45417-2245 |

### Component Breakdown

| | |
|---:|---:|
| Hardware | $ |
| Software | $ |
| Support/Maintenance | $ |
| Services | $8,520.00 |
| Training | $ |
| Freight | $ |

| Quantity | Item | Description |
|---|---|---|
| 1 | RTT Storage Consulting Services | RoundTower Custom Services for Storage Practice Consulting |

| | |
|---:|---:|
| Total | 8,520.00 |
| Amount Due | $255.60 |

 **WorkflowOne**

| P.O. Number must be on all Invoices, Packing Slips, & Correspondence. | Purchase Order |
|---|---|
| | 251186    Rev. 0 |

Billing Address: Attention Accounts Payable
WorkflowOne
P.O. Box 2245
Dayton, OH 45401-2245

**Vendor Name:**
ROUNDTOWER TECHNOLOGIES INC
4555 LAKE FOREST DRIVE
STE. 220
CINCINNATI, OH 45242

Correspondence and Acknowledgments: Attention Purchasing
WorkflowOne
600 Albany Street
Dayton, OH 45417-3405

| Date: | Payment Terms: | Purchasing Contact: | Phone No: |
|---|---|---|---|
| 06/05/2014 | 3% 30 DAYS NET 60 | Christopher Jauch | (937) 221-2522 |
| Freight: | FOB: | Carrier: | Fax No: |

| Line # | Quantity | Unit of Measure | Description | Required Delivery Date | Unit Price | Taxable |
|---|---|---|---|---|---|---|
| 1 | 1 | EA | RoundTower Technologies Storage Assesment Statement of Work (SOW) SHIP TO: 600 Albany Street Dayton, OH 45417-3405 DELIVER TO: Carrier, Erin Elizabeth (1) | 05/30/2014 | 8,520.00000 | Y |

WorkflowOne LLC

| | |
|---|---|
| Total: | 8,520.00 |
| Currency: | USD |

SUBJECT TO THE TERMS AND CONDITIONS ON ATTACHED DOCUMENT

Electronically signed by
Christopher Jauch

Page 1 of 1

## Terms and Conditions of Purchase Order ("Order")

1. **ACCEPTANCE AND TERMS AND CONDITIONS:** Seller accepts this Order and any amendments by signing the acceptance copy and returning it to Purchaser promptly. Even without such written acknowledgment, Seller's bid or partial performance under this Order will constitute acceptance of these terms and conditions. By acceptance of this Order Seller agrees to be bound by, and to comply with all the terms and conditions of this Order, which includes any supplements to it, and all specifications and other documents referred to in this Order. These terms and conditions apply to everything listed in this Order and constitute Purchaser's offer to Seller, which Purchaser may revoke at any time before Seller accepts it. This Order is not an acceptance by Purchaser of any offer to sell, any quotation, or any proposal. Reference in this Order to any such offer to sell, quotation, or proposal will not constitute a modification of any of these terms and conditions. Terms and conditions different from or in addition to these terms and conditions, whether contained in any acknowledgment of this Order, or with delivery of any goods or services under this Order, or otherwise, will not be binding on Purchaser, whether or not they would materially alter this Order, and Purchaser hereby rejects them. These terms and conditions may be modified only by a written document signed by duly authorized representatives of Purchaser and Seller.

2. **DEFAULT:** Time is of the essence of this Order. Purchaser may by written notice of default to Seller (a) terminate all or any part of this Order in any one of the following circumstances: (i) if Seller fails to perform within the time specified herein or any extensions agreed to by Purchaser in writing; or (ii) if Seller fails to perform any of the other provisions of this Order, or so fails to make progress as to endanger performance of this Order in accordance with its terms, and in the circumstances set out in clause (ii) does not cure such failure within a period of ten (10) days (or such longer period as Purchaser may authorize in writing) after receipt of notice from Purchaser specifying such failure; and (b) procure, on such terms as it will deem appropriate, goods or services similar to those so terminated. Seller will continue performance of this Order to the extent not terminated and will be liable to Purchaser for any excess costs for such similar goods or services. As an alternate remedy, and in lieu of termination for default, Purchaser, at its sole discretion, may elect to extend the delivery schedule and/or waive other deficiencies in Seller's performance, in which case an equitable reduction in the Order price will be negotiated. If Seller for any reason anticipates difficulty in complying with the required delivery date, or in meeting any of the other requirements of this Order, Seller will promptly notify Purchaser in writing. If Seller does not comply with Purchaser's delivery schedule, Purchaser may require delivery by fastest way and charges resulting from the premium transportation must be fully prepaid and absorbed by Seller. The rights and remedies of Purchaser provided in this Section 2 will not be exclusive and are in addition to any other rights and remedies provided by the Uniform Commercial Code, by law, at equity or under this Order.

3. **PRICE:** If no price is set forth on the front of the Order, the goods or services will be billed at the price last quoted or at the prevailing market price, whichever is lower, and, in any event, goods and services ordered under this Order will not be billed at a higher price than last quoted or charged without Purchaser's specific written authorization. Purchaser will be entitled at all times to set off any amount owed at any time by Seller or any of its affiliates to Purchaser or any of its affiliates against any amount payable at any time by Purchaser in connection with this Order. No extra charges of any kind will be allowed unless specifically agreed to in writing by the Purchaser. All applicable taxes arising out of transactions contemplated by the Order will be borne by Seller except as otherwise specified by the parties in writing.

4. **INSPECTION:** All goods and services will be subject to inspection and test by Purchaser and its customer at all times and places, including the period of manufacture and in any event prior to final acceptance. Final acceptance or rejection of the goods or services will be made as promptly as practical after delivery except as otherwise provided in this Order, but failure to inspect and accept or reject goods or services or failure to detect defects by inspection, will neither relieve Seller from responsibility for such goods or services as are not in accordance with this Order nor impose liabilities on Purchaser for them. Seller will provide and maintain an inspection and process control system acceptable to Purchaser and its customer covering the goods and services ordered. Records of all inspection work by Seller will be kept complete and available to Purchaser and its customer during the performance of this Order and for seven (7) years after Seller's completion of this Order. If any of the goods or services are found at any time to be defective in material or workmanship, or otherwise not in conformity with the requirements of this Order, including any applicable drawings and specifications, then Purchaser, in addition to such other rights and remedies it may have by contract or by law or equity, at its sole discretion may reject and return such goods at Seller's expense, require Seller to inspect the goods and remove nonconforming goods and/or require Seller to replace nonconforming goods or services with conforming goods or services. If Seller fails to make the necessary inspection, removal and replacement in a time and manner satisfactory to Purchaser, Purchaser may at its option inspect and sort the goods, Seller will pay any related costs.

5. **WARRANTIES.** Seller represents and warrants that all goods and services are free of any claim of any nature by any third person and that Seller will convey clear title to Purchaser. Seller represents and warrants that all services are performed in a manner acceptable in the industry and in accordance with generally accepted standards, are free from all defects, are fit for the particular purposes for which they are acquired and are provided in strict accordance with the specifications or other requirements (including performance specifications) approved or adopted by Purchaser. Seller represents and warrants that all goods sold will be of merchantable quality, free from all defects in design, workmanship and materials, and fit for the particular purposes for which they are purchased and that the goods and services are provided in strict accordance with the specifications, samples, drawings, designs or other requirements (including performance specifications) approved or adopted by Purchaser. Any attempt by Seller to limit, disclaim, or restrict these warranties or any remedies of Purchaser, by acknowledgment or otherwise, in accepting or performing this Order, will be null, void, and ineffective without Purchaser's written consent.

6. **PURCHASER'S PROPERTY:** Tangible or intangible property of any nature furnished to Seller by Purchaser or specifically paid for in whole or in part by Purchaser, and any replacements or attachments, are the property of Purchaser and, unless otherwise agreed in writing by Purchaser, will be used only by Seller solely to render services or provide goods to Purchaser. Each individual item of such property will be plainly marked or otherwise adequately identified by Seller as property of Purchaser, and will be safely stored separate from Seller's property. Seller will not substitute any property or take any action inconsistent with Purchaser's ownership of such property. While in Seller's custody or control such property will be held at Seller's risk, will be kept insured by Seller at its expense for its replacement cost with loss payable to Purchaser and will be subject to removal at Purchaser's written request, in which event Seller will prepare such property for shipment and redelivery to Purchaser in the same condition as originally received by Seller, reasonable wear and tear excepted, all at Seller's expense.

7. **CHANGES.** At all times Purchaser will have the right to make changes to this Order, including changes to drawings, designs, configurations, specifications, quantities, methods of shipment or packing and delivery schedules or locations of delivery. If any such changes cause an increase or decrease in the cost of or the time required for the performance of any work under this Order, an equitable adjustment will be made in the contract price or delivery schedule, or both, and this Order will be modified in writing accordingly. Nothing in this Section, including any disagreement with Purchaser as to any claimed adjustment, will excuse Seller from proceeding with this Order as changed. Any claim by the Seller for adjustment under this Section 7 must be in a detailed writing and delivered to Purchaser within five (5) days after the date Seller receives notification of change. Any change will be authorized only by a duly executed amendment to this Order. Information, such as technical information or guidance provided to Seller by representatives of Purchaser, will not be construed as a change within the meaning of this Section. If Seller considers that the conduct of any of Purchaser's employees has constituted a change under this Order, Seller will immediately notify Purchaser's Purchasing Department in writing as to the nature of the change and any proposed adjustment, which will then be subject to this Section 7.

8. **COMPLIANCE WITH LAWS:** Seller agrees to comply with the applicable provisions of all federal, state, or local laws or ordinances and all related lawful orders, rules and regulations. Seller will also comply with any provisions, representations or agreements, or contractual clauses required to be included or incorporated by reference of operation of law in any Order. Without limiting the foregoing: (a) Seller will comply with the Equal Opportunity Clause set forth in 41 CFR Chapter 60-1.4, the Affirmative Action Clause regarding Disabled Veterans and Veterans of the Vietnam Era, 41 CFR Chapter 60-250.4, the Affirmative Action Clause regarding Handicapped Workers 41 CFR Chapter 60-741.4 and any other provisions or contractual clauses required by the OFCCP. 41 CFR Chapter 60, as well as any Executive Orders as now or later issued, amended or codified. (b) Seller confirms that it is in compliance with the requirements for non-segregated facilities set forth in 41 CFR Chapter 60-1.8. (c) Seller represents that the goods to be furnished were or will be produced in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended, including Section 9.

9. **CONFIDENTIAL OR PROPRIETARY INFORMATION:** Notwithstanding any document marking to the contrary any knowledge or information which the Seller will have disclosed or may later disclose to Purchaser, and which in any way relates to the goods or services covered by this Order will not, unless otherwise specifically agreed to in writing by Purchaser, be deemed to be confidential or proprietary information, and will be acquired by Purchaser, free from all restrictions. Seller will keep confidential any technical, process, economic or other information derived from drawings, specifications and other data furnished by Purchaser in connection with this Order (in whatever form or format) and will not divulge, export, or use, directly or indirectly, such information for the benefit of any other party without obtaining Purchaser's prior written consent. Except as required for the efficient performance of this Order, Seller will not use such information or make copies or permit copies to be made of such drawings, specifications, or other data without the prior written consent of Purchaser. If any reproduction is made with prior consent, this notice will be reproduced. Upon completion or termination of this Order, Seller will promptly return to Purchaser all materials incorporating any such information and any copies, except for one record copy. Seller agrees that no acknowledgment or other information concerning this Order and the goods or services provided will be made public by Seller without the prior written agreement of Purchaser.

10. **WORK ON PURCHASER'S PREMISES; INDEMNITIES; INSURANCE.** If Seller's work under this Order requires Seller to be on the premises of Purchaser or one of its customers or at Purchaser's direction, Seller will take all necessary precautions to prevent any injury to persons or damage to property, including following any rules, procedures or other requirements of Purchaser. Seller agrees that it will indemnify and hold Purchaser, and its officers, directors, employees, agents and customers (collectively, the "Indemnitees") harmless from and against any and all damages, claims, losses, expenses, costs, obligations, and liabilities, including attorneys' fees ("Loss and Expenses"), suffered, directly or indirectly, by an Indemnitee by reason of, or arising out of, (i) any breach of any representation or warranty made by the Seller under to this Order, (ii) any failure by the Seller to perform or fulfill any of its covenants or agreements under this Order, (iii) any injury to persons or damage to property during the progress of the work referred to in this Section 10 which may result in any way from any act or omission of the Seller, its agents, employees or subcontractors, except to the extent that any such injury or damage is due solely and directly to Purchaser's or its customer's negligence, as the case may be, or (iv) any litigation, proceeding or claim by any third party relating in any way to the obligations of the Seller under this Order. Without limiting the generality of the foregoing indemnities, Seller hereby waives any immunity it may have as an employer or otherwise pursuant to any workers' compensation or other statute, law or regulation, whether Purchaser is seeking indemnity pursuant to this Order or in any other manner with respect to any claim. Seller will maintain Comprehensive General Liability (including Contractual Liability coverage insuring the liabilities assumed above), Automobile Liability and Employers' Liability insurance with limits as reasonably required by Purchaser, as well as appropriate Workers' Compensation insurance as will protect Seller from all claims under any applicable workers' compensation and occupational disease acts. At Purchaser's request, Seller will furnish to Purchaser a Certificate of Insurance completed by its insurance carrier(s) certifying that the required insurance coverage's are in effect, with waiver of subrogation, naming Purchaser as an additional insured and containing a covenant that such coverage and will not be canceled or materially changed until ten days after prior written notice has been delivered to the Purchaser.

11. **TERMINATION:** Purchaser may terminate all or any part of this Order for convenience at any time by written notice to Seller. Upon such termination, Purchaser's liability will be limited to reasonable termination charges mutually agreed by Seller and Purchaser, provided that Seller must specify any proposed charges in writing within fifteen (15) days after termination.

12. **INTELLECTUAL PROPERTY:** On being notified Seller will promptly investigate and defend, as its expense, any suit or proceeding in which Purchaser or any other Indemnitee are made defendants or claimed potential defendants for any alleged infringement, contributory infringement, inducement of infringement, or unauthorized or unlawful use of any patent, copyright, trademark, trade secret, mask work, proprietary data, or other information, or claim of right, title or interest by another party in any good or service (or related documentation), in any case resulting from the sale, use, lease or other disposition of any good or service under this Order ("Infringement"). Seller will pay and discharge all judgments or decrees rendered in any such suit or proceeding against any Indemnitee. Seller may settle any such suit or proceeding on terms and conditions of Seller's selection, provided they are not in conflict with the terms of this Order and Seller pays all settlement amounts. If Seller fails to promptly investigate, defend or settle, then Purchaser will, following notification to Seller, have the right from that time on to have sole control of the defense of such suit or proceeding and all negotiations for its settlement or compromise, and Seller will pay, as they become due, all costs, expenses, and reasonable attorneys' and experts' fees incurred by Purchaser in undertaking such actions and any judgements or decrees which may be rendered against or any settlements or compromises that may be entered into by Purchaser or any other Indemnitee relating to a claim indemnified against under this Order. Seller indemnifies and agrees to hold harmless Purchaser and all of the indemnified parties from all costs, expenses, liabilities, damages and attorneys' and experts' fees arising from any alleged or actual Infringement and will pay all judgments and other amounts payable or any settlement or compromise arising from all suits or proceedings involving Infringement. In addition, Seller will, at its own expense and at Purchaser's option, either procure for Purchaser the right to continue using the allegedly infringing item, replace it with a noninfringing equivalent or remove it and refund the purchase price and the transportation and installation costs thereof.

13. **MISCELLANEOUS** (a) **NON-ASSIGNMENT:** Assignment of this Order or any interest in it or any payment due or to become due under it, without the written consent of the Purchaser, will be void. An assignment will be deemed to include not only a transfer of this Order or such interest or payment to another party but also a change in control of Seller, whether by transfer of stock or assets, merger, consolidation, or otherwise.
(b) **TRANSPORTATION:** Unless otherwise specifically provided on the front of this Order, all freight is to be shipped FOB Destination, Freight Prepaid. Title transfer will take place at Purchaser's dock, and the responsibility for freight damaged merchandise will be assumed by Seller. No charges for unauthorized transportation will be allowed. Any unauthorized shipment, which will result in excess transportation charges, must be fully prepaid by the Seller. Seller will not declare any value on such materials that will incur additional fees unless pre-approved by Purchaser. Seller will release rail or truck shipments at the lowest released valuation permitted in the governing tariff or classification.
(c) **ANTICIPATION OF DELIVERY SCHEDULE:** Unless otherwise agreed in writing, Seller will not make material commitments or production arrangements in excess of the amount or in advance of the time necessary to meet Purchaser's delivery schedule. Goods shipped to Purchaser in advance of schedule may be returned to Seller at Seller's expense.
(d) **SELLER'S INVENTORY:** Purchaser will have no obligation to request quotations or place Orders with Seller, both of which will be in Purchaser's sole discretion. Purchaser acting in its sole discretion will determine the actual quantity of goods or services to be purchased. The quantity of goods or services, if any, specified in forecasts supplied by Purchaser from time to time, or otherwise, is an estimate only. Seller bears sole responsibility for managing Seller's raw material, work in process, and inventory, and Purchaser will have no liability with respect thereto (whether upon termination of this Order or otherwise) other than in connection with termination as provided in Section 11.
(e) **EDI.** If Seller is on Purchaser's EDI or EDI to FAX system, Seller acknowledges that the terms and conditions herein stated apply to each order placed pursuant to EDI or EDI to FAX, even though these terms and conditions are not separately transmitted with each order.
(f) **PUBLICITY:** Seller will not use Purchaser's name in publicity, advertising, or similar activity except in accordance with Purchaser's guidelines and with Purchaser's prior written consent. Seller will not disclose the existence of this Order or any of its respective terms to any third party without Purchaser's prior written consent.
(g) **DOCUMENTATION:** It is agreed that all technical documentation and other literature necessary for the proper use of the goods or services will be provided to Purchaser with the goods or services, unless otherwise directed by Purchaser, and its cost included in the price.
(h) **GOVERNING LAW** The Order, and all transactions relating to it, will be interpreted under and governed by the laws of the State of Ohio in the United States of America without regard to its conflict of law principles. Purchaser and Seller agree that the proper venue for all actions arising in connection herewith will be deemed exclusively proper in state court in Montgomery County, Ohio or in the federal court for the Southern District of Ohio and the parties agree to submit to such jurisdiction. Further, the United Nations Convention on the International Sale of Goods (1980) (as amended from time to time) will not apply to the Order or any related transactions.
(i) **SURVIVAL:** Seller's obligations under Sections 4, 5, 8, 9, 10, and 12 will survive any termination of this Order.
(j) **ENTIRE AGREEMENT:** This Order, with such documents as are expressly incorporated by reference, is intended by the parties as a final expression of their agreement with respect to such terms as are included in it, and is intended also as a complete and exclusive statement of the terms of their agreement. No course of prior dealings between the parties and no usage of the trade will be relevant to determine the meaning of this agreement even though the accepting or acquiescing party has knowledge of the nature of the performance and opportunity for objection.
(k) **WAIVER; MODIFICATION:** No claim or right arising out of a breach of this Order can be discharged in whole or in part by a waiver or renunciation of the claim or right unless supported by consideration and in a writing signed by the aggrieved party. The failure of Purchaser to enforce at any time or for any period of time any of the provisions hereof will not be construed to be a waiver of such provisions or of the right of Purchaser thereafter to enforce each and every such provision. This Order can be modified or rescinded only by a writing signed by both of the parties.

# Invoice

| Invoice # | INV11327 |
|---|---|
| Date | 9/29/2014 |
| Terms | Net 120 |
| Due Date | 1/9/2015 |
| PO # | 252213 |
| Sales Rep | Couch, Byron |



**RoundTower Technologies**
4555 Lake Forest Drive, Suite 220
Cincinnati OH 45242
513-247-7900

| Site Contact Information |
|---|
| steve.braswell@standardregister.com |

| Bill To |
|---|
| Standard Register
Chris Jauch  937.221.2522
600 Albany Stree
Dayton OH 45417 |

| Ship To |
|---|
| Standard Register
Steve Braswell - 937-221-1118
600 Albany Street
Dayton OH 45417 |

### Component Breakdown

| | |
|---|---|
| Hardware | $ |
| Software | $209,964.00 |
| Support/Maintenance | $ |
| Services | $ |
| Training | $ |
| Freight | $ |

| Quantity | Item | Description |
|---|---|---|
| 1 | Solution-Y2-Y3 | Year 2 and 3 of implemented solution |

Past due invoices will be subject to a 1.5% per month Late fee

| | |
|---|---|
| Subtotal | 209,964.00 |
| Tax (Sales Tax 7.25%) | 15,222.39 |
| Total | 225,186.39 |
| Amount Due | $6,298.92 |

*$218,887.47 Paid 2/12/2015*
*via check # 1096676*

*Amount Remaining: $6,298.92*



**NASUNI**

**Product and Services Quotation**
**Prepared for:**
Steve Braswell
Standard Register
600 Albany St
Dayton, OH

| | | Date: | 6/24/2014 |
|---|---|---|---|
| | | Quote #: | OPP3051 |
| | | Prepared by: | Byron Couch |
| | | Phone: | (513)-315-3917 |
| | | Email: | byron.couch@roundtower.com |

| NASUNI - End State Configuration - Centralized and Distributed NAS Replacement ||||||
|---|---|---|---|---|---|
| TB /Units | Product ID | Description | | Units | Price (USD) |
| 34 | N-STO-AL12 | Nasuni Global Storage Pool - Total Annual Service Cost Includes: Nasuni Management Console Software, UniFS File System, Mobile Data Access, Unlimited Snapshots, Data Deduplication and Encryption, Antivirus | | EA | $ 126,098 |
| 1 | N-VMF-AL12 | VM Filer - Annual License | | EA | $ 2,500 |
| 3 | NF200-6-R12 | Nasuni 200 Filer - 6 TB 1U Annual Rental | | EA | $ 9,566 |
| 2 | NF400-6-R12 | Nasuni 400 Filer - 6 TB 1U Annual Rental | | EA | $ 11,898 |
| 1 | NF440-22-R12 | Nasuni 440 Filer - 22 TB 2U Annual Rental | | EA | $ 17,174 |
| 1 | NAS-PS-IMP | PS Implementation (initial implementation) | | EA | $ - |
| | | | Solution - Year 1 | | $ 167,236 |
| | | | Solution - Year 2 & 3 | | $ 209,964 |
| | | | Total Solution | | $ 377,200 |

**Solution Narrative:**

Nasuni Global Storage Pool Includes:
- Nasuni Management Console Software
- UniFS File System, Mobile Data Access
- Unlimited Snapshots
- Data Deduplication
- Encryption
- Antivirus
- 34TB License

Filers:
- (3) Nasuni 200 Filer - 6 TB
- (2) Nasuni 400 Filer - 6 TB
- Nasuni 440 Filer - 22 TB

Terms Net 30                  $ 167,236
Terms Net 180 (Due 1/9/2015)  $ 209,964

Please Note:
1. Taxes and Shipping Not Included.
2. Pricing is valid for 30 days

Page 1 of 1

# Byron Couch

| | |
|---|---|
| **From:** | Braswell, Steven <Steven.Braswell@standardregister.com> |
| **Sent:** | Friday, June 27, 2014 3:49 PM |
| **To:** | Byron Couch |
| **Subject:** | Nasuni Order approval |

Byron,

Per our discussion, We have approved PO number 252213 against RoundTower Quote OPP3051 from 6/24. Please move forward with the order as the PO has been approved internally. As soon as I have the electronic of the quote I will forward it to you. Thank you for your assistance in getting this critical solution defined, vali� and finalized for Standard Register.

Thanks,

**STEVE BRASWELL**
**Enterprise Infrastructure Architect**
**Standard Register**
Office: 937-221-1118

# Invoice



**RoundTower Technologies**
4555 Lake Forest Drive, Suite 220
Cincinnati OH 45242
513-247-7900

| Invoice # | INV12108 |
|---|---|
| Date | 2/9/2015 |
| Terms | Net 30 |
| Due Date | 3/11/2015 |
| PO # | 37754 |
| Sales Rep | Couch, Byron |

| Site Contact Information |
|---|
| steve.braswell@standardregister.com |

| Bill To | Ship To |
|---|---|
| Standard Register<br>Chris Jauch  937.221.2522<br>600 Albany Stree<br>Dayton OH 45417 | Standard Register<br>Steve Braswell - 937-221-1118<br>600 Albany Street<br>Dayton OH 45417 |

### Component Breakdown

| | |
|---|---|
| Hardware | $ |
| Software | $ |
| Support/Maintenance | $ |
| Services | $14,850.00 |
| Training | $ |
| Freight | $ |

| Quantity | Item | Description |
|---|---|---|
| 1 | RTT Virtualization Consulting Services | RoundTower Custom Virtualization Services Consulting |

Past due invoices will be subject to a 1.5% per month Late fee

**Total** $14,850.00



**Standard Register**
ADVANCING YOUR REPUTATION

**Purchase Order**

600 ALBANY STREET
DAYTON OH 45417
937/221-1001

| Purchase Order | Date | Revision | Page |
|---|---|---|---|
| 0000010320 | 08/25/2014 | | 1 of 1 |
| Payment Terms | Freight Terms | | Ship Via |
| NET55DAYS | F.O.B. | | BEST WAY |
| Buyer: Gail Calhoun 937-221-1027 | | | |

**Vendor:** 0000037754

Roundtower Technologies
4555 Lake Forest Dr Ste 200
Cincinnati OH 45242
Fax: 513-247-7509

**Ship To:**

600 ALBANY STREET
DAYTON OH 45417

(937) 221-1001 Ext. 00001

**Send Invoice To:**

Accounts Payable
600 ALBANY STREET
DAYTON OH 45417

Tax Exempt?   N   Tax Exempt ID:

| Line | Description | Quantity | UOM | PO Price | Extended Amt | Due Date |
|---|---|---|---|---|---|---|
| 1 | SOW for Cloud Provider Selection Service | 1.00 | EA | 14,850.00 | 14,850.00 | 08/26/14 |

No changes to this order are authorized without an official amendment. All invoices related to this order must have the PO number printed directly on the invoice. Invoices without a proper SRC PO number will be returned to the supplier. Standard Register Terms and Conditions of Purchase apply to this order.

One Time Fixed Fee

Deliver to the attn: Steve Braswell

Total PO Amount   14,850.00

Unless otherwise noted above, Standard Register's standard terms and conditions of purchase apply to this order. If you do not have a copy of these please contact the buyer listed above.

Authorized Signature
*Gail Calhoun* (signature)

# Cloud Provider Selection Service
# Statement of Work
## Prepared For:
## Standard Register



Presented by:

**Byron Couch**
Senior Account Executive
**RoundTower Technologies, Inc.**
byron.couch@roundtower.com

**Dave Warren**
Principal Systems Engineer
**RoundTower Technologies, Inc.**
dave.warren@roundtower.com

Prepared by:
Dave Warren
Principal Systems Engineer
**RoundTower Technologies, Inc.**
dave.warren@roundtower.com



Standard Register | Cloud Provider Selection Service

## Contact Information

| Client Company | The Standard Register Company |
|---|---|
| Client's Contact | Steve Braswell |
| Client's Contact Phone | (937) 221-1118 |
| Client's Contact E-Mail | steven.braswell@standardregister.com |
| Customer Location | 600 Albany Street  Dayton, OH  45417 |
| Engagement Name | Cloud Provider Selection Service |
| NetSuite Opp.# | OPP3800 |
| Begin Date | TBD |
| End Date | TBD |

This Statement of Work ("SOW") is made as of August 22, 2014 ("Effective Date "), by and between The Standard Register Company ("SRC" or "Standard Register"), an Ohio corporation, with its principal place of business at 600 Albany Street, Dayton, Ohio  45417, and and RoundTower Technologies, Inc. ("RoundTower") with its principal place of business at 4555 Lake Forest Drive, Suite 220, Cincinnati, Ohio 45242, each individually referred to as a "Party" and collectively referred to as the "Parties" in connection with the Services Agreement dated June 23, 2014 ("Agreement"), between SRC and RoundTower.  SRC desires that RoundTower furnish Services (as defined below) and RoundTower desires to perform the Services for SRC.  The Parties agree as follows:

## Confidentiality Statement

This Statement of Work ("SOW") is intended as a response to a request by Standard Register for the Cloud Provider Selection Service at Standard Register located at 600 Albany Street, Dayton, OH  45417 as defined within this document.  The data in this proposal shall not be disclosed outside Standard Register's organization and shall not be duplicated, used or disclosed, in whole or in part, for any purposes other than to evaluate the proposal.

## SOW Change Management

Changes to this Statement of Work must be addressed through a supplement to this Statement of Work, and the investigation and implementation of changes may result in modifications to the original responsibilities, charges, services and other terms.

All requested changes to this document will be submitted to Julie Smith by email at Julie.Smith@roundtower.com.  Change control information will be maintained in this section of the document.

RoundTower Technologies, Inc.
Pg. 2/5

© Copyright 2014 RoundTower Confidential & Intellectual Property

| Date | Version | Description | Author | Reviewer |
|---|---|---|---|---|
| 08/05/2014 | 1.0 | Initial Draft | Dave Warren | |
| 08/07/2014 | 1.1 | PMO Review | | Julie Smith |

# Overview

Standard Register is looking for a cloud provider that meets their technical and security requirements while also providing flexibility to allow Standard Register to react quickly to business needs.

The provider must meet several security/compliance requirements including HIPPA, PII, PHI, FISMA, SOX and have this validated annually. The provider must also be able to provide traditional hosting services along with "cloud" services and include features like backup/recovery, disaster recovery with remote replication, server administration, et cetera.

# Scope

## Cloud Provider Selection Service

RoundTower provides Selection Services to help customers determine what vendors/providers best meet their defined business and technical requirements. For this engagement the Selection Service will help Standard Register select a cloud provider. The scope of the service will include:

- Documentation of the organizations detailed business and technical requirements
- Determine which providers best fit the high-level goals of this project and should be included in the selection process
- Provide requirements to each potential provider (RFI)
- Interview each provider to determine which providers meet the requirements and should be added to the "short list". Each provider will present their capabilities to the RoundTower team.
- Review proposals and score each provider
- Research each provider and cross-check references
- Schedule presentations for the "short list" providers to present their capabilities and proposals to Standard Register
- Document findings and present final recommendations Standard Register

# Deliverables

## Cloud Provider Selection Service

Using the data collected throughout the selection process, RoundTower will create the following deliverables:

- Cloud provider requirements
- Rating system explanation document
- Scores and comments for each provider
- Findings and formal recommendation

# Customer Responsibilities



© Copyright 2014 RoundTower Confidential & Intellectual Property

- Provide secure, remote, unattended access to Standard Register systems.
- Standard Register must maintain current support agreements with the product vendors for systems covered under this SOW
- Make appropriate system maintenance window(s) available for RoundTower as needed.
- Standard Register is responsible for purchasing and maintaining all license information required for work described in this document.

## Out of Scope

Any additions or changes to the Service scope must be mutually agreed upon by RoundTower and Standard Register in a separate RoundTower *Statement of Work* detailing the proposed changes, the impact of the proposed change on pricing and schedule, and other relevant terms.

## Schedule of Rates

| Milestone | Frequency | Cost (USD) |
|---|---|---|
| Cloud provider requirements | Invoiced Upon Acceptance | $3,712.50 |
| Rating system explanation document | Invoiced Upon Acceptance | $3,712.50 |
| Scores and comments for each provider | Invoiced Upon Acceptance | $3,712.50 |
| Findings and formal recommendation | Invoiced Upon Acceptance | $3,712.50 |
| **Total for RoundTower Selection Services** | | **$14,850** |

This offer and the pricing outlined herein are valid for a period of thirty (30) days from Friday, August 22, 2014 unless accepted in writing by both parties. Any reduction of statement, or adjustment to the scope of work under consideration, may result in applicable proposal revisions.

## Payment Terms

Invoicing for Selection Services will occur upon Standard Register Acceptance of RoundTower deliverables as listed above in the Schedule of Rates. Terms of payment are net 30 days from receipt of electronic invoice. Prices do not include any applicable taxes and will be invoiced at actual cost. Prices are conditioned upon timely payment and any undisputed past due balance will accrue interest at the monthly rate of one and one-half percent.

## Travel

RoundTower will be using resources local to Standard Register. No non-local travel expenses are anticipated unless Standard Register requests RoundTower to travel to a non-Dayton, Ohio location.



RoundTower Technologies, Inc.
Pg 4/5

© Copyright 2014 RoundTower Confidential & Intellectual Property

Standard Register | Cloud Provider Selection Service

If travel to a non-Dayton location is requested by Standard Register, Standard Register shall reimburse RoundTower for these reasonable, actual travel expenses. A request for reimbursement of each reasonable, actual expense will be supported with paid receipts. Payment is due from Standard Register upon receipt of invoice for travel expenses.

Any required additional air fare will be by the least expensive class service available for commercial air travel at the time of reservation. Reimbursement for meals shall be up to $75 per day. Reimbursement for lodging shall be the actual cost of lodging, plus tax. Rental Car costs including gas, taxes and related fees shall be reimbursed at the actual rate. Any other related expenses such as parking, tolls or public transportation will be reimbursed at the actual rate.

## Authorization

This Statement of Work dated <u>Friday, August 22, 2014</u> is the complete and exclusive agreement between RoundTower Technologies, Inc. and Standard Register with regard to its subject matter, and supersedes all prior oral or written proposals, representations and other communications between the parties with respect to the Services and shall prevail notwithstanding any different, conflicting or additional terms and conditions which may appear on any order or other document submitted by either Party.

All Parties hereby acknowledge that they have read and do understand this SOW and all attachments hereto, and agree to all terms and conditions stated herein.

IN WITNESS WHEREOF, the parties hereto each acting with proper authority have executed this Statement of Work.

**The Standard Register** Company                     **RoundTower Technologies, Inc.**

Robert M. Ginnan
_____                             _____
Full name                                              Full name

Executive Vice President, Treasurer and CFO
_____                             _____
Title                                                  Title

_[signature]_
_____                             _____
Signature                                              Signature

8/22/2014
_____                             _____
Date                                                   Date


Approved ML JB 8/22/2014 Legal

# RoundTower
# Technologies