IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE STANDARD REGISTER COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>Jointly Administered<br><br>Re: Docket Nos. 23 & 286 |

NOTICE OF (I) ENTRY INTO STALKING HORSE AGREEMENT
AND (II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. On March 12, 2015, The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed a motion [Docket No. 23] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking among other things, entry of an order: (a) approving and authorizing (i) bidding procedures in connection with the sale of substantially all of the Debtors' assets (collectively, the "Transferred Assets"); (ii) stalking horse bid protections; (iii) the form and manner of notice of the sale hearing (the "Sale Hearing"); and (iv) other related relief; and (b) authorizing and approving the sale of the Transferred Assets free and clear of all liens, claims, and encumbrances (except Permitted Encumbrances); (ii) approving the asset purchase agreement (the "Purchase Agreement") entered into by and between the Debtors, as sellers, and a group led by an affiliate of Silver Point Capital, L.P. (the "Stalking Horse") (or if the Stalking Horse is not the Successful Bidder, then a modified Purchase Agreement); (iii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts"); and (iv) related relief.[2]

2. On April 15, 2015, the Court entered an order [Docket No. 286] (the "Bidding Procedures Order") approving, among other things, procedures for the assumption and assignment of the Assumed Contracts (the "Assumption Procedures").

3. The Sale Hearing is currently scheduled to be held on **June 17, 2015 at 10:00 a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington DE 19801, before the Honorable Brendan L. Shannon, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing or notation on any applicable hearing agenda, provided that the Debtors first consult with the Consultation Parties.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

1

4.  The Debtors may seek to assume and assign the Assumed Contract(s) identified on Exhibit 1 attached hereto (the "Potential Assignment Schedule")[3] in connection with the sale of the Transferred Assets. The Potential Assignment Schedule identifies, among other things, the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default under each Assumed Contract (the "Cure Amount"). The Debtors reserve the right to delete items from, supplement and modify the Potential Assignment Schedule at any time, provided that to the extent that the Debtors add an Agreement to the Potential Assignment Schedule or modify the Cure Amount, you shall receive a separate notice and an opportunity to object to such addition or modification. **Please be advised that the inclusion of any Assumed Contract on the Potential Assignment Schedule attached hereto shall not be construed as an admission by the Debtors that such Assumed Contract is an executory contract or unexpired lease as such terms are used in section 365 of the Bankruptcy Code.**

5.  Objections, if any, to the proposed assumption and assignment of your Assumed Contract(s) must: (a) be in writing, (b) set forth the basis for the objection as well as any Cure Amount that you assert to be due (in all cases with appropriate documentation in support thereof), and (c) be filed with the Clerk of the Court, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801, and served on the following parties so as to be **actually received no later than 4:00 p.m. (prevailing Eastern Time) on May 8, 2015 (the "Objection Deadline")**: (i) co-counsel to the Debtors: Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Barbara Becker and Michael A. Rosenthal) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor); (ii) counsel the Stalking Horse and Prepetition Term Loan Agent: Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Chicago, IL 60606 (Attn: Ron Meisler and Christopher Dressel; (iii) counsel to the Pre-Petition ABL Agent and ABL DIP Agent: Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, Atlanta, Georgia 30303 (Attn: Edward Dobbs and James S. Rankin, Jr., and Richard Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins); and (iv) proposed counsel to the Official Committee of Unsecured Creditors: Lowenstein Sandler LLP, 1251 Avenue of the Americas New York, NY 10020 (Attn: Sharon L. Levine and Wojciech Jung). If any objections are received by the Objection Deadline, such objections will be heard at the Sale Hearing scheduled for **June 17, 2015 at 10:00 a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, DE 19801, before the Honorable Brendan L. Shannon, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware, or at a later hearing as determined by the Debtors.

6.  To the extent that you do not timely object as set forth above, you shall be (a) forever barred from objecting to the assumption and assignment of any of the Assumed Contracts identified on the attachment hereto, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance, (b) deemed to have consented to the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Assumed Contract(s), (c) bound to such corresponding Cure Amount, if any, (d) deemed to have agreed that the Stalking Horse has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code, (e) deemed to have agreed that all defaults under the applicable Assumed Contract(s) arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Stalking Horse or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Assumed Contract(s) shall remain in full force and effect for the benefit of the Stalking Horse and such entity in accordance with its terms, (f) deemed to have waived any right to terminate the applicable Assumed Contract(s) or designate an early termination date under the applicable Assumed Contract(s) as a result of any default that occurred and/or was continuing prior to the assignment date, and (g) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Assumed Contract(s).

---

[3] If you have multiple agreements with the Debtors, they may all be included on the Potential Assignment Schedule. Alternatively, you may receive separate notices relating to different agreements.

7. Any request for adequate assurance information regarding the Stalking Horse (a "Request for Adequate Assurance") must include an email address, postal address and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance, the Debtors, in consultation with the Stalking Horse, shall promptly provide you with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

8. Failure to timely file or raise any objection as set forth herein shall be deemed to constitute consent to the sale of the Transferred Assets to the Stalking Horse and other relief requested in the Sale Motion, and be a bar to any objection to the Sale Motion, the sale of the Transferred Assets, assumption and assignment of the applicable contracts and leases set forth on the attachment hereto, and acceptance of the Cure Amount, or the Debtors' consummation and performance of the terms of the asset purchase agreement entered into with the Stalking Horse, if authorized by the Court.

Dated: April 17, 2015
Wilmington, Delaware

/s/ Michael R. Nestor
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Robert A. Klyman (CA No. 142723)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
mrosenthal@gibsondunn.com
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

If you have questions about this Notice, you may call 855-842-4124, email standardregisterinfo@primeclerk.com or visit http://cases.primeclerk.com/standardregister.

Standard SRF 2404 SVC CURE PACK ID 2058 MML ID 1293165
Little, James W.
9101 Clancy Place
Charlotte NC 28227-3202

### Exhibit 1

Potential Assignment Schedule



| Little, James W. | Release | ~~$0.00~~ 5,000 |

## WAIVER AND RELEASE AGREEMENT

This Waiver and Release Agreement ("Agreement") is between The Standard Register Company ("Standard Register"), an Ohio corporation, and James Little ("Employee") of Charlotte, NC.

WHEREAS, Employee has been employed by Standard Register as Rotary Press Operator I and

WHEREAS, the parties wish to terminate the employment relationship under specified conditions.

THEREFORE, in consideration of the mutual promises and undertakings provided herein, Employee and Standard Register agree as follows:

1.  **Termination of Employment.** Employee's employment with Standard Register is terminated effective December 5, 2014.

2.  **Payments Absent This Agreement.** Employee understands and agrees that by virtue of this Agreement, he is receiving additional consideration, beyond that to which he would be entitled upon termination of employment in the absence of this Agreement. Specifically, in the absence of this Agreement, Employee's employment with Standard Register would be terminated effective December 5, 2014, and he would be entitled to receive:

    a.  Severance pay equal to one week of pay, as that is defined in The Standard Register Company Employee Severance Pay Plan ("Plan"), in the amount of $802.40

    b.  Accrued but unused vacation pay; $661.98 (33 hours).

1

both amounts are subject to payroll taxes and withholding.

    c. Vested benefits, if any, under Standard Register's employee benefit plans, as determined in accordance with the terms of such plans.

    d. Benefit continuation and conversion rights, if any, under Standard Register's benefit plans.

3. <u>Consideration for This Agreement</u>. Pursuant to the terms of the Plan, and in consideration of this Agreement, Standard Register is providing Employee with the following enhanced consideration in addition to those items described in paragraph 2 herein:

    a. Supplemental severance pay under the terms of Plan, in the gross amount of $12,838.40 (16 weeks), subject to payroll taxes and withholding, payable commencing eight (8) days following Standard Register's receipt of this Agreement properly executed by Employee, assuming Employee has not revoked his acceptance of the Agreement; provided, however, that in no event will this supplemental severance pay be payable before Employee's termination date. Supplemental severance pay shall be paid in bi-weekly installments on the same dates as Standard Register payroll.

4. <u>General Release</u>. In exchange for the additional benefit described in paragraph 3, which Standard Register will provide under this Agreement, Employee, on behalf of himself, his heirs and personal representatives, releases and discharges Standard Register from any and all claims and actions which occurred prior to the date Employee signs this Agreement, both

2

known and unknown, including, without limitation, those arising directly or indirectly from his employment and termination of employment with Standard Register. By releasing Standard Register, Employee understands and agrees he is releasing Standard Register and its subsidiaries, divisions and affiliates, their directors, officers, shareholders, agents, attorneys, employees and their respective successors, assigns, heirs and personal representatives.

5. <u>Claims Released.</u>  Employee understands and agrees that he is releasing, without limitation, all claims under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act, and all claims for severance pay, breach of contract, wrongful termination, defamation, intentional infliction of emotional distress, tort, personal injury, invasion of privacy, violation of public policy, negligence and/or any other common law, statutory or other claim whatsoever arising out of or relating to his employment with and/or separation from employment with Standard Register, and under all other laws and regulations, local, state and federal relating to employment discrimination and employment matters, but excluding the filing of an administrative charge of discrimination, any claims which he may have under state workers' compensation or unemployment laws, and/or any claims which by law he cannot waive..

6. <u>No Admission of Violation</u>.  The parties agree this Agreement does not constitute an admission by Standard Register that it has violated any law or regulation.

3

7. <u>Return of Property</u>. Employee represents that he has returned to Standard Register all proprietary information of all description, including, without limitation, legal documents, intellectual property, trade secrets, customer lists and price information belonging to Standard Register or relating to Standard Register's business which Employee had or has in his possession. Employee agrees that he will not disclose any such proprietary information to any person or entity. Employee also agrees to assist Standard Register in transition of Employee's former responsibilities to other Standard Register associates at Standard Register's reasonable request, as additional consideration for the enhanced separation benefits provided under this Agreement.

8. <u>Confidentiality</u>. Employee agrees to keep the terms of this Agreement confidential and agrees not to disclose any information concerning this Agreement to any person or entity unless required to do so by legal process, to secure enforcement of the Agreement, or to respond to inquiries from tax authorities.

9. <u>Acknowledgement</u>. In compliance with the Older Workers Benefit Protection Act, Employee understands, agrees, and acknowledges that:

   a. Standard Register advised him he should consult an attorney, at his own expense, before signing this Agreement;

   b. She/he was allowed at least forty-five (45) days in which to consider it;

   c. She/he has the right to revoke the Agreement within seven (7) days after he has signed it and that the Agreement will not be effective or

enforceable until the revocation period has passed. If Employee wishes to revoke this Agreement, she/he must deliver written notice of revocation to Standard Register's Senior Vice President, General Counsel & Secretary at 600 Albany Street, Dayton, Ohio 45408. For revocation to be effective, this notice must be received by Standard Register's Senior Vice President, General Counsel & Secretary no later than the seventh day after Employee signs this Agreement;

d. if she/he revokes the Agreement within seven (7) days after she/he has signed it, Standard Register's obligations under the Agreement are null and void and he will be provided only the benefits to which she/he would otherwise be entitled upon termination, as described in paragraph 2 herein;

e. She/he was given Exhibit A to this Agreement providing information regarding those to whom separation offers have been made, and those who have not received separation offers. Exhibit A is incorporated by reference into this Agreement.

10. <u>Waiver of Monetary Recovery</u>. Employee further waives his right to any monetary recovery should any federal, state or local administrative agency pursue any claims on his behalf arising out of or related to Employee's employment with and/or separation from employment with Standard Register.

11. <u>Waiver of Reinstatement</u>. Employee further waives, releases, and discharges Standard Register from any reinstatement rights which Employee has or

could have and Employee acknowledges that he has not suffered any on-the-job injury for which he has not already filed a claim.

12. <u>Governing Law and Venue</u>.  This Agreement is made under the laws of the State of Ohio and shall be interpreted under those laws.  The parties agree that jurisdiction over any action for breach of this Agreement shall be exclusively in the state or federal courts located in Montgomery County, Ohio.  If one or more parts of this Agreement are ruled unenforceable, the remainder shall be enforceable at the option of Standard Register.  This Agreement represents the full understanding of the parties with respect to Employee's termination of employment and is a complete and accurate integration of their agreement.  It can be modified only in writing signed by both parties.

13. <u>Entire Understanding</u>.  Employee further acknowledges and agrees that he has carefully read and fully understands all of the provisions of this Agreement and that he voluntarily enters into this Agreement by signing below.

14. <u>References</u>.  References to the male gender shall be deemed to include the female gender also.

6

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on ___Dec 8___ 2014.

Witness:

_____[signature]_____    _____James W Little_____
(Notary or 3rd Party Witness)    (EMPLOYEE)

## ACKNOWLEDGMENT

STATE OF __NORTH CAROLINA__
) SS: 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
COUNTY OF __MECKCENBURG__

On this __8TH__ day of __DEC__, 2014, before me, the undersigned Notary Public, personally appeared __JAMES WESLEY LITTLE__ known to me (or satisfactorily proven) to be the person who executed the foregoing Waiver and Release Agreement and, after being first duly sworn according to law, acknowledged to me that he read it, that he understood and understands its terms and effects, and that he voluntarily signed the same, intending to be legally bound.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____JOZSEF BELA ANTAL_____
Notary Public

> JOZSEF BELA ANTAL
> Notary Public
> Mecklenburg Co., North Carolina
> My Commission Expires Nov. 3, 2019

Witness:    THE STANDARD REGISTER COMPANY

_____    _____
(OE Business Partner)    (OE Business Partner)

7

**Standard Register**
600 Albany Street
Dayton, OH 45417

| Advice No | 1548353 |
|---|---|
| Date | 3/20/2015 |

PAY Four and 26/100 ************************************************************ $4.26

TO THE ORDER OF
JAMES W. LITTLE
9101 CLANCY PLACE
CHARLOTTE, NC 28227-3202

NON-NEGOTIABLE

THIS CHECK CONTAINS BLUE PANTOGRAPH & MICROPRINTING. BACK OF CHECK HAS A WATERMARK, HOLD AT AN ANGLE TO VIEW. VOID IF NOT PRESENT.

NON-NEGOTIABLE   NON-NEGOTIABLE   NON-NEGOTIABLE   NON-NEGOTIABLE

STATEMENT OF EARNINGS - DETACH ALONG THIS PERFORATION AND RETAIN FOR YOUR RECORDS

**Standard Register**
600 Albany Street
Dayton, OH 45417

JAMES W. LITTLE
9101 CLANCY PLACE
CHARLOTTE, NC 28227-3202

| | | | | | | |
|---|---|---|---|---|---|---|
| Emp No | 80467 | FIT | S 3 | Advice No | 1548353 |
| Location | NCCH04 | SIT res | S 2 | Advice Date | 3/20/2015 |
| Emp Class | D | SIT work | S 2 | Period End | 3/15/2015 |
| Cost Center | 305200 | | | Paygroup | BIWEEK |
| Channel | CORPSS | | | Job | MN6004 |
| Security | | | | Pay Rate | 20.0600 |

COMPANY MESSAGE

### EARNINGS

| Pay Type | Hours | Current | YTD |
|---|---|---|---|
| Misc. HSA Tax Reimbursement | | 4.26 | 4.26 |
| Severance | | | 8,024.00 |

### DEDUCTIONS

| Deduction | Current | YTD |
|---|---|---|

### TAXES

| Tax Code | Current | YTD |
|---|---|---|
| Federal Income Tax | | 702.40 |
| Employee Medicare | | 116.35 |
| Social Security Employee Tax | | 497.49 |
| NC State Income Tax | | 325.00 |

### EMPLOYEE ACCRUALS

### NET PAY DISTRIBUTION

| | | |
|---|---|---|
| XXXXXXX4323 | C | 4.26 |

| | GROSS | TAXES | DEDS | NET PAY | |
|---|---|---|---|---|---|
| CURRENT | 4.26 | 0.00 | 0.00 | 4.26 | |
| YTD | 8,028.26 | 1,641.24 | 0.00 | 6,387.02 | Total Net Pay 4.26 |