# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| | Chapter 11 |
| In re: | Case No.  15-10541 (BLS) |
| THE STANDARD REGISTER COMPANY, *et al*,[1] | (Jointly Administered) |
| Debtors. | Re: D.I. 314, 316, 317, 318 |
| | <u>Hearing Date</u>: May 12, 2015 at 10:00 a.m. (ET) |

## OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO RETENTION APPLICATIONS OF ITS SELECTED PROFESSIONALS

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases (the "<u>Cases</u>") of the above-captioned debtors-in-possession (collectively, the "<u>Debtors</u>") hereby submits this omnibus reply (the "<u>Reply</u>") to:

(a) *Limited Objections of Bank of America, N.A.,* ["<u>ABL Agent</u>"] *as Administrative and Collateral Agent, to Retention Applications of Committee and Reservation of Rights* (the "<u>ABL Agent Response</u>") [D.I. 396];

(b) *Limited Objection and Reservation of Rights of Silver Point Finance, LLC* [<u>Silver Point</u>," and together with the Debtors and ABL Agent, the "<u>Objectors</u>")] *With Respect to Professional Retention Applications Filed by the Official Committee of Unsecured Creditors* ("<u>Silver Point's Response</u>") [D.I. 397]; and

(c) *Debtors' Omnibus Objection to Committee Retention Applications* ("<u>Debtors' Response</u>", and together with the ABL Agent Response and the Silver Point Response, the "<u>Responses</u>") [D.I. 398].

In support of this Reply, the Committee respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

## PRELIMINARY STATEMENT

1.      First, it is important to highlight what the Objectors, through the Responses, do not seek, *to wit*, they do not object to the Committee's proposed retention of professionals.  <u>See</u> ABL Agent Response, pg. 2; Silver Point's Response, ¶1; Debtors' Response, ¶1.  Instead, each Response (i) stresses the budgetary constraints imposed on all professionals by Silver Point and the ABL Agent in connection with postposition financing, (ii) requests section 330 review of the fees earned and expenses incurred by the Committee's financial advisors and investment bankers, (iii) claim that Jefferies' transaction fee is not justified at the present time, and (iv) reserves the right of the Objectors to object to any fee application that may be filed.

2.      The facts are simple.  After a competitive selection process and discussion with respect to fees and scope of work, the Committee, in the exercise of its business judgment, has selected (a) Lowenstein Sandler LLP ("<u>Lowenstein</u>") as its legal counsel, (b) Polsinelli PC ("<u>Polsinelli</u>") as its local Delaware and conflicts counsel, (c) Jefferies LLC ("<u>Jefferies</u>") as its investment bankers, and (d) Zolfo Cooper, LLC ("<u>Zolfo</u>", and together with Lowenstein, Polsinelli and Jefferies, the "<u>Committee Advisors</u>") as its financial advisors, to advise the Committee in these fast-moving Cases.  The Committee retained these firms on competitive terms, which reflect the current market for services by firms of such caliber and account for the separate functions to be performed by each.  Since the filing of the retention Applications, moreover, Jefferies has agreed to significantly modify any transaction fee arising from any sale transaction.  Specifically, the Committee and Jefferies have agreed that no such transaction fee will be due if there are no overbids and, if there are overbids, then any transaction fee arising from any such sale will be limited to 2.5% of any overbid amounts.

3.      Through the Responses, Objectors attempt to marginalize the role of the Committee, the appointed fiduciary of all unsecured creditors in these Cases, by asking this Court to unduly restrict (through the imposition of fee limits) the Committee's access to professionals.  Objectors do so despite recognizing that the Court has already spoken on budgetary issues in connection with postposition financing hearings, where the Court held that fee issues will be addressed, if at all, later on in the case and all rights for relief were preserved. Objectors recognize that the Committee requires the services of professionals to fulfil its duties, including in connection with its scrutiny and analysis of highly questionable prepetition transactions, the Debtors' international operations, the scope and validity of asserted liens and security interests, postpetition financing, and the ongoing sale process.  Yet, at the same time, Objectors seek to bind Committee Advisors to budgets that were imposed by Silver Point and the ABL Lender themselves prior to the Committee's appointment and without input from Committee Advisors.  Simply put, Silver Point and the ABL Agent purposefully set low budgetary limits for case professionals to hamper their ability to challenge any relief, no matter how unreasonable, they may seek from the Court.

4.      The Objectors point to the current posture of the case and surmise that unsecured creditors are unlikely to obtain a recovery in these Cases, and imply that the role of Committee Advisors should be limited.  The Committee strongly disagrees with this suggestion, and believes its constituency may be entitled to substantial recoveries.  However, the Committee does not believe it is in any party's best interest to undertake a valuation dispute or a lien challenge at this time, and especially in connection with retention applications.  To ensure that the Committee can adequately participate in these proceedings and enforce its vital "watch dog"

role over the Debtors (a role, as further explained below, which secured lenders such as Silver

Point and the ABL Agent, typically do not serve), the Responses should be overruled.

5.      In sum, ample basis exists for the retention of Committee Advisors on the terms

set forth in the Applications, and with the Jefferies transaction fee modification described

above.[2]  The Court should overrule the Responses and approve the retentions.

## BACKGROUND

**General Background**

6.      On March 12, 2015 (the "Petition Date"), the Debtors commenced these Chapter

11 Cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  No trustee or examiner has been appointed in these Cases.  Accordingly,

the Debtors are operating their business and managing their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On March 24, 2015, the Office of the United States Trustee appointed the

Committee.  *See* D.I. 99.

8.      The Debtors operate on a large scale and internationally.  According to the

Debtors, they are one of the leading providers in the United States of communications services

and communications workflow, content and analytics solutions through multiple communication

channels, including print, electronic, and internet-based communications, to clients in the

healthcare, financial services, manufacturing, retail, and transportation industries.  *Declaration*

*Of Kevin Carmody In Support Of The Debtors' Chapter 11 Petitions And Requests For First Day*

---

[2] The Committee intends to file a revised form of the Jefferies retention order incorporating the fee modification described above prior to the hearing on the Applications.  The revised form of order will also incorporate certain comments received from the Office of the Unites States Trustee (the "UST") which the Committee anticipates will resolve any issues that the UST may have had with the Jefferies retention application.

*Relief*, ¶12.  The Debtors have a total of fifty-three (53) production and warehouse facilities in North America.  *Id*.

9.     The Debtors' operations are divided between two main business units: (i) healthcare, which accounts for almost one-third of the Debtors' revenues, and (ii) integrated communications (*f/k/a* business solutions), which accounts for the remainder of the Debtors' revenues.  *Id*.

10.     In addition to the Debtors' business assets, the Debtors' assets include approximately $150 million in net operating loss carryforwards (the "NOLs"), which are valuable and worth significant potential future income tax savings based on the Debtors' 35% federal corporate tax rate.  *Id*. at 39.

**Retention Applications**

11.     On April 20, 2015, each Committee Advisors filed a retention application with the Court:

- *Application of the Official Committee of Unsecured Creditors for an Order (I) Authorizing the Committee to Retain and Employ Jefferies LLC as its Investment Banker, Nunc Pro Tunc to March 24, 2015 and (II) Waiving Certain Requirements of Local Rule 2016-2* [D.I. No. 318] (the "Jefferies Application")

- *Application of the Official Committee of Unsecured Creditors of the Standard Register Company, et al. for Entry of an Order Authorizing the Employment and Retention of Zolfo Cooper, LLC as Financial and Forensic Advisors, Nunc Pro Tunc to March 24, 2015* [D.I. No. 317] (the "Zolfo Application")

- *Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Lowenstein Sandler LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of March 24, 2015* [D.I. No. 314] (the "Lowenstein Application")

- *Application of the Official Committee of Unsecured Creditors for an Order under Bankruptcy Code Sections 328(a) and 1103(a) and Bankruptcy Rules 2014(a) and 2016(b) Approving the Employment and Retention of Polsinelli PC Nunc Pro Tunc to March 24, 2015, as Delaware Counsel and Conflicts Counsel to the Official Committee of Unsecured Creditors* [D.I. No.. 316] (the "Polsinelli

<u>Application</u>," and collectively with the Jefferies Application, the Zolfo Application, and the Lowenstein Application, the "<u>Applications</u>")

12.    The Objectors filed their Responses on May 5, 2015. [D.I. Nos. 396, 397, and 398]

**Prepetition Capital Structure**

13.    On August 1, 2013, the Debtors closed on the purchase of WorkflowOne LLC and certain of its affiliates ("<u>WorkflowOne</u>").    In connection with their acquisition of WorkflowOne, certain of the Debtors assumed approximately $210 million of WorkflowOne's secured debt held by Silver Point and its affiliates, essentially quintupling the Debtors' secured indebtedness overnight and giving Silver Point a dominant 29.6% ownership interest in the Debtors.    The value received by the Debtors in exchange for assuming Silver Point's debt was substantially less than the amount of the assumed debt, rendering the transaction fraudulent under applicable law.

14.    As of the Petition Date, five of the Debtors were obligors under a first-lien prepetition term loan and a second-lien prepetition term loan (collectively, the "<u>Prepetition Term Loans</u>") with Silver Point Finance as agent and various lenders (collectively, the "<u>Prepetition Term Lenders</u>").

15.    The same five Debtors are also the obligors under a prepetition asset-backed revolving facility (the "<u>Prepetition ABL Facility</u>") provided by Bank of America, N.A. and Wells Fargo Bank, N.A. as lenders (collectively the "<u>Prepetition ABL Lenders</u>" and collectively with the Prepetition Term Lenders, the "<u>Prepetition Lenders</u>").

16.    Five of the Debtors are not parties (either as borrowers or guarantors) to the Prepetition Term Loans or the Prepetition ABL Facility: Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de

R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., Standard Register Technologies Canada ULC (collectively, the "Unencumbered Debtors").  Moreover, the Prepetition Lenders' security interests do not extend to, among other unencumbered assets, (a) the assets of the Unencumbered Debtors, (b) 35% of the Prepetition Obligor Debtors' ownership interests in their foreign subsidiaries, and (c) NOLs (the "Unencumbered Assets").

**The DIP Motion**

17.    On the Petition Date, the Debtors filed a motion (the "DIP Motion") seeking, among other things, access to postpetition financing on a secured basis. *See* D.I. 15.  The Committee filed an objection to certain aspects of the relief sought in the DIP Motion [D.I. 202].  Final relief was granted on April 16, 2015 (the "DIP Order") [D.I. No. 290].

18.    The DIP Order authorizes the Debtors to use postpetition financing subject to a budget (the "Budget"), including line items for professionals.  The Debtors concede that they have sufficient availability – in fact over $82 million in current availability – under the postpetition financing to meet postpetition obligations, but emphasize that restrictions on professional fees are not due to liquidity constraints, but due to line-item restrictions in the Budget[3] imposed by the lenders.

**The Sale Motion**

19.    On the Petition Date, the Debtors filed a motion seeking authority to sell substantially all of their assets (the "Sale Motion") [D.I. 23].  The Committee filed an objection to certain aspects of the relief sought in the Sale Motion [D.I. 200].  On April 15, 2015, the Court approved certain sale procedures which, among other things, established June 11, 2015 as the bid deadline and scheduled a sale hearing for June 17, 2015 [D.I. 286].

---

[3] See Debtors' Response, fn. 6 ("It cannot be over-emphasized that [the scope of professional fee expenditures] is a problem of line-item authority in the Budget, and not capacity.")

## REPLY

I.    **Retention of Committee Advisors is Necessary for the Committee to Acquit its Fiduciary Duties and is Warranted under the Circumstances**

20.    A committee is entitled to retain professionals and budgetary constraints that may be imposed on those professionals are not grounds to limit their retention.

21.    Bankruptcy Code section 1103(a) authorizes a creditors' committee to "select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a).  Moreover, the Committee may employ professional firms, such as the Committee Advisors, "on any reasonable terms and conditions of employment, including . . . on an hourly basis". 11 U.S.C. § 328(a).  Despite assertions from the Objectors that the Committee may not need an investment banker, the Court should defer to the Committee's prudent exercise of the powers afforded to official committees under the Bankruptcy Code to determine that it requires the assistance of an investment banker and that Jefferies is the appropriate firm to provide the necessary services. *See In re Caldor, Inc.*, 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996) ("Public policy favors permitting parties to retain professionals of their choice"); *In re Brennan*, 187 B.R. 135, 149-150 (Bankr. D.N.J.1995) (there is a presumption in favor of a party's right to exercise its discretion in choosing its professionals).

22.    Subject to the Court's approval, the Committee is entitled to retain the Committee Advisors and the Committee Advisors, also subject to the Court's approval, are entitled to receive reasonable compensation and reimbursement of out-of-pocket expenses from the Debtors' estates, with such amounts afforded administrative claim status under section 503 of the Bankruptcy Code. *See* 11 U.S.C. §§ 330, 503; *In re Lan Assoc. XI, LP*, 192 F.3d 109, 122 (3d Cir. 1999) (*citing* 11 U.S.C. §330); *In re First Merchants Acceptance Corp. v. Bradford & Co.*,

198 F.3d 394, 403 (3d Cir. 1999) ("Fees that are demonstrably incurred in the performance of the duties of the committee... are reimbursed"); *In re Worldwide Direct, Inc.*, 259 B.R. 56, 60 (Bankr. D. Del. 2001) (enumerating the duties under section 1103 as examples of services the committee may perform for which reimbursement is proper as necessary); *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861-62 (Bankr. D. Del. 2004) (committee analyzed sale and potential lien issues prior to turning over administration to chapter 7 trustee); *In re 14605, Inc.*, 2007 Bankr. Lexis 3147 (Bankr. D. Del. Sept. 19,2007) (Court found actions of committee in reviewing and objecting to bidding procedures, and protecting its constituency in doing so, were reasonably likely to benefit the estate even where no higher bids were received because actions were an attempt to maximize value to estate).

23.     The potential scope of fees and expenses is the Objectors' primary concern raised in the Responses.   Each Objector raises the likelihood that fees and expenses of all estate professionals, including the Committee's Advisors, may exceed the amounts set forth in the Budget (*i.e.*, $100,000 for Committee's legal advisors and $100,000 for Committee's financial advisors).   The Committee understands that virtually all professionals, on the Debtors' and the Committee's side, have thus far exceeded their budgeted line items.   But that should come as no surprise, especially to Silver Point and the ABL Agent.   The Budgeted amounts, for all professionals, are wholly unreasonable for these Cases.   The Committee's objection to the DIP Motion raised the issue.   The Court has already stated that it has the power to reallocate fees as may be appropriate. And, the DIP Order itself preserves the Debtors' and the Committee's ability to surcharge lender's collateral under section 506(c) of the Bankruptcy Code.   <u>See</u> DIP Order, ¶18.

24.     While the Committee recognizes that this Court may restrict the scope and/or the budget for professionals retained by statutorily appointed committees, such relief is very uncommon and Objectors must offer a factual basis for requesting such relief that consists of more than mere arguments and opinions.

25.     Pursuant to Third Circuit precedent, in order to impose a fee cap, a sufficient basis upon which a court can base findings of fact and conclusions of law is necessary and "arguments by counsel cannot provide factual support for a trial court's findings*." In re Fed. Mogul-Global, Inc.*, 348 F.3d 390, 406 (3d Cir. 2003).  No such factual basis has been provided here and indeed, no such basis exists.  Rather, the circumstances of these Cases – where the Debtors (at Silver Point's insistence) seek to quickly sell substantially all of their assets and have engaged in highly suspect prepetition transactions – buttress the Committee's position that the imposition of any up-front restrictions on Committee Advisors (either through a narrowed scope of services or a fee cap) is inappropriate and unnecessary at this time.

26.     Moreover, as noted by Judge Gross in approving an official committee's retention of its selected financial advisors over various objections, "there should be, in a bankruptcy case, a level playing field. And it's been tipped – certainly against the committee in its inability to retain the best financial advisors that it can and to have them satisfied that. . . they will be compensated for their work." *See* *In re NewPage Corporation, et al*., Case No. 11-12804, TRO Hr'g. Tr. 100:21-25, Dec. 13, 2011.  These same concerns exist here.  If the Committee cannot retain an investment banker (and specifically Jefferies, its selected investment banker) the playing field will be unduly tilted.

27.     As the Court is aware, among other things, the Committee is reviewing the relationships and transactions among the Debtors, WorkflowOne and Silver Point, as well as the

scope of Unencumbered Assets (as discussed more detail in the Committee's objections to the DIP Motion and Sale Motion, incorporated herein by reference).  In connection with these matters, the Committee has engaged in discovery with the Debtors, Silver Point and the ABL Agent.  Additional discovery may be required.[4]

28.     Enabling Silver Point and the ABL Agent, and by necessity the Debtors, to use the budget as a sword to preclude any involvement by the Committee in these Cases would be unduly prejudicial to the interests of unsecured creditors.  It would also be contrary to the provisions of the Bankruptcy Code and established case law.

29.     The Committee submits that the hearing on the retention applications is not the proper time to resolve disputes grounded in the Budget.  As set forth above, the Court has already spoken on the issue.  Silver Point itself recognizes this fact by making it clear in the Silver Point Response that "The Court has the inherent authority to allow professional fee claims in amounts exceeding the Professional Fee Budget and to allocate such allowed fees among the professionals as it deems appropriate." *See* Silver Point Response, fn. 2 (*citing In re Channel Master Holdings, Inc*., 309 B.R. 855, 858, 860 (Bankr. D. Del. 2004).  In addition, parties will have the opportunity to review monthly and interim fee applications and respond accordingly, as provided for in the order establishing procedures for interim compensation and reimbursement of expenses entered in these Cases on April 13, 2015 [D.I. 260].

30.     Although unnecessary, to alleviate Silver Point's and ABL Agent's concerns raised in their Responses, the Committee Advisors have agreed to add the following language to their respective retention orders to make clear that retentions will not prejudice anyone's rights with respect to payment-related matters:

---

[4] The parties have produced some, but by far not all, of the information requested by the Committee.

None of the DIP Credit Parties (as such term is defined in the final order entered on April 16, 2015 [Docket No. 290] (the "DIP Order") approving debtor-in-possession financing for the Debtors) shall, by entry of this Order, be deemed to have (i) waived any objection, or consented, to any change or modification to the Budget (as defined in the Final Order) which the Debtors may propose or seek in order to pay any compensation or expenses to [name of professional] or which otherwise might result from the Debtors paying such compensation or expenses or (ii) agreed to any payment of such compensation or expenses as a surcharge against, or other carve out from, their respective primary collateral.

31.     Virtually identical language appears in orders entered with respect to the Debtors' Court-retained professionals.  *See e.g.,* D.I. 255, ¶7; D.I. 256, ¶5; D.I. 257, ¶6; D.I. 258, ¶6.

## II.     Section 328(a) is the Appropriate Standard of Review of Financial Advisor Professional Fees

32.     The Objectors seek to renegotiate the compensation and the terms of retention of Zolfo and Jefferies.  In doing so, they attempt to substitute their business judgment for that of the Committee, and to revisit well-settled case law, and common practice in this Circuit, governing the application of section 328(a) review to applications for employment by financial advisors to official committees.  *See e.g., In re Appleseed's Intermediate Holdings, LLC*, Case No. 11-10160 (Feb.23, 2011 Hr'g Tr. at 101 (noting "it is certainly the practice of the Court to retain financial advisors under Section 328 as opposed to Section 330" in approving retention of financial advisor by debtor)).  But these proposed retentions by the Committee, pursuant to its business judgment, are manifestly reasonable, and in all events the Committee's business judgment should enjoy deference in this instance.  *See id*. (declining to impose court's business judgment in place of debtors that negotiated engagement letter).  Similarly, in *In re Champion Enterps., Inc.*, Case No. 09-14019 (Feb. 2, 2010 Hr'g Tr. at 49), the court approved retention of a financial advisor by an official committee, which included a deferred payment, under section 328(a), where the financial advisor would be required to work "in a very compressed time."  Here, as in *Champion Enterps.*, the Debtors are pursuing a prompt sale and lenders imposed May 26, 2015 as a

-12-

deadline to challenge the lenders' liens and claims.   Both necessitate that the Committee's advisors work under a compressed time frame.

33.     Section 328(a) explicitly provides for compensation of committee professionals retained under section 1103.   11 U.S.C. § 328(a) ("The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person . . . ." (emphasis added)).   Thus, the proposed employment by the Committee of Zolfo and Jefferies, as described in the Applications, is entirely consistent with section 328(a) and case law examining section 328(a).   *See, e.g., In re Federal Mogul- Global, Inc.*, 348 F.3d 390, 397 (3d Cir. 2003) (noting that the court may approve the payment of a committee's professional fees pursuant to section 328(a) on terms and conditions the court finds reasonable); *In re Dividend Dev. Corp.*, 145 B.R. 651, 655 (Bankr. C.D. Cal. 1992) (stating that section 328(a) "clearly anticipates that the court will make a determination as to the reasonableness of a fee arrangement at the beginning of a case.").

34.     Moreover, compensation under section 328(a) is customary for a committee's professionals and especially for investment banking firms with transaction and other flat fee arrangements (as show by the Court's approval of Lazard's fee structure in these Cases).[5]   Firms that provide financial advisory and investment banking services similar to those provided by Zolfo and Jefferies typically request, and typically obtain, court approval of section 328(a) review. *See, e.g., In re Exide Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. Oct. 6 & 8, 2013); *In re Los Angeles Dodgers, LLC*, Case No. 11-12010 (KG) (Bankr. D. Del. Oct. 12, 2011); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW) (Bankr. D. Del. Aug. 5, 2010); *In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 5, 2009); *In re Verasun*

---

[5] Attached hereto as <u>Exhibit A</u> is a list of more than 30 recent investment banker engagements involving comparable investment banking firms with flat fee arrangements approved under section 328(a) of the Bankruptcy Code.

*Energy Corp.*, Case No. 08-12606 (BLS) (Bankr. D. Del. Jan. 2, 2009); *In re WCI Communities, Inc.*, Case No. 08-11643 (KJC) (Bankr. D. Del. Nov. 6, 2008); *In re SemCrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. Sept. 16, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Apr. 14, 2008); *In re New Century TRS Holdings*, *Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. May 30, 2007).[6]

35.    Section 328(a), moreover, is especially appropriate and necessary for transaction and other flat fee arrangements.    The traditional lodestar method for calculating the reasonableness of a professional's fees under Bankruptcy Code § 330 is neither well suited nor appropriate for assessing the reasonableness of flat fee arrangements given that such fees are not billed on an hourly basis.    Flat fee arrangements, in particular, moreover, require some advance approval as provided by § 328(a).    Unlike hourly professionals, who can seek approval of their fees as they provide their services on a month-to-month basis (and decide whether to cease providing such services if their fees are disallowed), a professional with a transaction, contingency or other flat fee arrangement must essentially perform all of their services before seeking any payment of their respective fee.    Delaying any sort of reasonableness determination

---

[6] The single decision and four retention orders cited by the Debtors are all inapplicable.  In the one decision, *In re Stations Holdings Co.*, the Court considered an application to retain and investment banking firm contemporaneously with the firm's final fee application.  *See In re Stations Holding, Inc.*, Case No. 02-10882 (MFW), 2004 Bankr. LEXIS 1220, at *5 (Bankr. D. Del. 2004).  Given that the work was completed (unlike the case here), there was no opportunity to consider any sort of advance of approval under section 328(a) so the court considered the fee application for reasonableness in hindsight as is typically done under section 330 of the Bankruptcy Code.  *See id.* at *7-*10.  Similarly, three of the orders appear to actually approve engagements under section 328(a) but provide that such professionals shall seek compensation in accordance with section 330 (presumably, in other words, pursuant to fee applications, but not under any section 330 standard of review).  *See In re Coldwater Creek Inc.*, Case No. 14-10867 (BLS), Docket No. 547 (Bankr. D. Del. June 10, 2014); *In re Source Home Entertainment, LLC*, Case No. 14-11553 (KG), Docket No. 219 (Bankr. D. Del. Aug. 19, 2014); *In re Universal Cooperatives, Inc.*, Case No. 14-11187 (MFW), Docket No. 217 (Bankr. D. Del. July 8, 2014).  The fourth order, moreover, makes no mention of section 328(a) and is unclear whether the professional even sought section 328(a) approval.  *See In re Allen Family Foods, Inc.*, Case No. 11-11764 (KJC), Docket No. 170 (Bankr. D. Del. July 13, 2011).  Finally, none of the four orders involve investment banking firms comparable to Jefferies.

Notwithstanding advance approval under section 328(a), the Court can still award different compensation if such terms and conditions prove to have been improvident in light of developments that are not currently anticipated.  See 11 U.S.C. § 328(a).  In addition, as is customary in this and other districts, the § 328(a) approval is not binding on the Trustee who can review the terms in hindsight under section 330 of the Bankruptcy Code.

until after the professional has performed all of his or her services (especially in what is often an adversarial and/or litigious environment) places undue uncertainty and risk on the flat fee professional and thus warrants a determination of reasonableness in advance under § 328(a) of the Bankruptcy Code.[7]

36.    Notwithstanding this well-settled precedent, the Objectors object to the retention of Zolfo and Jefferies pursuant to section 328(a) of the Bankruptcy Code, and in particular, assert that Jefferies' proposed restructuring fee of $750,000, to be offset by monthly fees earned by Jefferies from and after its second month of service, are objectionable and should be modified or eliminated.  (See Debtors' Response ¶20; Silver Point Response ¶¶ 6-7; ABL Agent's Response ¶ 14.).   As noted further below, however, investment banking firms are customarily paid a combination of both monthly and transaction fees (as the Debtors acknowledge in their application to retain Lazard).  Jefferies, moreover, has materially altered its sale transaction fee so, in the words of the Debtors, Jefferies will only be entitled to such a fee if the Debtors "sell their assets through an auction process to a successful over-bidder."  See Debtors' Response, ¶ 16.

37.    The Objectors also contend that these fees are inappropriate in that there is no assurance, *ab initio*, that financial advisors will have roles sufficiently integral to the restructuring of the Debtors to merit such fees.

38.    But neither can such assurances be made by the numerous professionals (legal and financial) retained by Silver Point and the ABL Agent.  Yet the Debtors have irrevocably agreed, pursuant to the DIP Order, (at ¶¶ 14(D), 15(C)), to champion the request for fees of those firms.

---

[7] Notwithstanding advance approval under section 328(a), the Court can still award different compensation if such terms and conditions prove to have been improvident in light of developments that are not currently anticipated.  See 11 U.S.C. § 328(a).  In addition, as is customary in this and other districts, the § 328(a) approval is not binding on the Trustee who can review the terms in hindsight under section 330 of the Bankruptcy Code.

Given the scope of these conceded administrative expenditures, it strains credulity for the Objectors to protest the retention of financial advisory services by the Committee.

### III.    The Committee Requires Retention of Both Zolfo and Jefferies

39.    The Objectors impliedly assert that the Committee may not need to retain both Zolfo and Jefferies as its advisors.  Such thinking is misplaced.

40.    In order for the Committee to adequately protect the rights of its constituents in this fast tracked bankruptcy proceeding, it must retain Zolfo and Jefferies.  This Court need not conduct a valuation hearing at this time to determine the appropriateness of Zolfo's and Jefferies' retention applications, but rather should consider whether there will be a valuation battle, or other disputes on the horizon, that will require the Committee to have the benefit of the services to be provided by Zolfo and Jefferies.

41.    The Committee seeks to retain both Zolfo and Jefferies because of their complimentary expertise on account of their respective capacity.  The Committee selected Jefferies on account of its laudable investment banking services, and Zolfo on account of its extensive experience in providing extensive financial advisory services.  No party challenges their qualifications.  The Committee believes that asking either Zolfo or Jefferies to complete each other's tasks and services (as set forth in their respective Application) would be inefficient, and reduce the Committee's ability to quickly respond to the multi-faced operational and financial restructuring issues.

42.    The financial advisory services that Zolfo will provide to the Committee are separate and distinct from the investment banking series that Jefferies will provide.  Zolfo, in assisting the Committee in monitoring and assessing the efforts of the Debtors and their professional advisors to maximize the value of the estates and to achieve successful operations through the sale process and wind down, will assist in operational issues and provide the

Committee with guidance with respect to the Debtors' business operations, budgetary issues, customer relationships, and other matters set forth in Zolfo's Application. Jefferies, on the other hand, is assisting the Committee in analyzing financial and other information related to the DIP financing and sale process, interacting with the Debtors' investment bankers and other professionals as well as potential bidders, and considering, evaluating and negotiating any possible Chapter 11 plan. Jefferies' services will also be critical in informing the Committee with respect to theoretical range of values for the Debtors' assets on a going concern basis and the terms of any proposed sale. In addition, Jefferies may be required to prepare and analyze other valuations as deemed necessary to the Committee, including in relation to the WorkflowOne acquisition or a settlement leading to a plan of reorganization.

43.     Both Zolfo's and Jefferies' retention Applications make clear that, far from duplicating each other's work, Zolfo and Jefferies have coordinated and will continue coordinate the services they are providing to the Committee to ensure there is no unnecessary duplication.

44.     Committee's proposed retention of two financial professionals is far from novel. *See, e.g., In re Exide Technologies,* Case No. 13-11482 (KJC) (Bankr. D. Del. Oct. 6 & 8, 2013) (authorizing employment of Zolfo and Guggenheim Securities LLC);   ; *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Jan. 25 and Mar. 29, 2011) (authorizing employment of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan" ) and Mesirow Financial Consulting, LLC ("Mesirow")); *In re Neff Corp., et al.*, Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2010) (authorizing retention of Gleacher & Company Securities, Inc. and Mesirow); *In re Capmark Fin. Grp. Inc.*, Case No. 09-13684 (CSS) (Bankr. D. Del. Dec. 10, 2009) (authorizing retention of Houlihan and A&M); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. Sept. 10, 2009) (authorizing retention of FTI Consulting,

Inc. ("FTI") and Chanin Capital Partners); *In re General Growth Props.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 24, 2009 and Aug. 13, 2009) (authorizing retention of FTI and Houlihan); *In re AbitibiBowater, Inc.,* Case No. 09-11296 (KJC) (Bankr. D. Del. July 13, 2009) (authorizing employment of both FTI and Lazard Frères & Co. ("Lazard")); *In re Chemtura Corp.*, Case No. 09-11233 (REG) (Bankr. S.D.N.Y. Jun. 23 and 26, 2009) (authorizing retention of Houlihan and FTI); *In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS) (Bankr. D. Del. Apr. 13, 2009) (authorizing retention of Houlihan and FTI); *In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 4–5, 2009) (approving retention of Jefferies & Company, Inc. and Capstone Advisory Group, LLC); *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. Feb. 20, 2009 and Mar. 13, 2009) (approving employment of AlixPartners, LLP and Moelis); *In re SemCrude, LP*, Case No. 08-11525 (BLS) (Bankr. D. Del. Sept. 16, 2008 and Dec. 1, 2008) (approving employment Houlihan and Goldin Associates, LLC); *In re LandSource Communities Dev. LLC*, Case No. 08-11111 (KJC) (Bankr. D. Del. Aug. 27, 2008) (approving retention of Imperial Capital, LLC and XRoads Solutions Group, LLC); *In re Dana Corp.* Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. May 3 and 17, 2006) (authorizing retention of FTI and UBS Securities, LLC); *In re Calpine Corp.*, Case No. 05-60200 (BKL) (Bankr. S.D.N.Y. May 1–2, 2006) (authorizing retention of FTI and Lazard); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 6 and June 19, 2006) (authorizing retention of Mesirow and Jefferies).[8]

45.    In sum, ample justification exists for the Committee's proposed retention of Zolfo and Jefferies.

---

[8] The Committee respectfully requests that the Court take judicial notice of the retention orders and other relevant pleadings publically available on the dockets of these Cases regarding retention of financial advisory and investment banking firms. *See In re Peregrine Sys., Inc.*, 311 B.R. 679, 691–92 (D. Del. 2004) (taking judicial notice of bankruptcy court orders).

**IV.    The Jefferies' Fee and Expense Structure Should be Approved Under Section 328(a) of the Bankruptcy Code**

46.    Bankruptcy Code section 328(a) provides that a statutory creditors' committee may employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  In deciding whether to approve the retention of an investment banker under Bankruptcy Code section 328(a), the appropriate inquiry is "whether taken as a whole, the terms of the retention are fair and reasonable, and the retention is in the bests [sic] interest of the estate."  *In re Joan and David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y. 2000).

47.    Courts typically consider the following factors in evaluating whether to approve a professional's retention under section 328(a):  (i) whether the terms of an engagement agreement reflect normal business terms in the marketplace; (ii) whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arm's length negotiation; (iii) whether the retention, as proposed, is in the best interests of the estate; (iv) whether there is opposition to the retention and any retainer provisions; and (v) whether, given the size, circumstances and posture of the case, the amount of any retainer is itself reasonable.[9] These factors all favor approval of Jefferies' proposed compensation under section 328(a) of the Bankruptcy Code.

48.    First, the Jefferies fee and expense structure reflects normal business terms in the marketplace.  The Bankruptcy Code adheres to the concept that professional compensation in

---

[9] *See, e.g., In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003); *In re Joan & David Halpern*, 248 B.R. at 47.

bankruptcy matters should be the same as in non-bankruptcy engagements.[10]  As shown in each of the cases listed on Exhibit A, investment bankers are customarily compensated with both monthly and various transaction fees.  Indeed, the Debtors recognize that it is "customary for investment bankers to be compensated through a transaction fee structure…."  See Debtors' Response, ¶ 16.  With respect to transaction fees, moreover, the transaction fees are typically triggered by the consummation of any qualifying transaction (and without any sort of qualifying activity by the investment banker or the type of sale fee modification that Jefferies has agreed to here).  This is shown as well by the Lazard engagement letter in these Cases which entitles Lazard to potential sale, restructuring and/or amendment fees and, in each case, upon the mere consummation of any such transaction (and without any specific requirement that Lazard, for instance, was responsible for any restructuring or amendment).  This is the market for investment bankers and this is exactly how Jefferies seeks to be compensated in these Cases.[11]

49.    Second, the Committee and Jefferies are both sophisticated business entities with equal bargaining power who engaged in an arm's length negotiation.  The terms set forth in the Jefferies engagement letter were the subject of negotiations among Jefferies and the Committee with each party represented by counsel and, as noted above, have been further modified with respect to any sale transaction fee in response to the Response filed by the Debtors.

50.    Third, Jefferies' retention is in the best interests of the estate.  Specifically, the Committee's retention of Jefferies is necessary to enable the Committee to fulfill its statutory

---

[10] See In re UNR Indus., Inc., 986 F.2d 207, 209 (7th Cir. 1993) ("Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases").

[11] The concern suggested in certain of the Responses that Jefferies could earn a fee for doing nothing is without merit.  As an initial matter, Jefferies is advising and working with the Committee (as well as the Debtors) in connection with the sale process and will certainly be critical in the Committee's ability to negotiate and/or confirm any sort of Chapter 11 plan in these cases.  In addition, as is customary, the UST has the right to review any and all of Jefferies' fees under section 330 of the Bankruptcy Code and would be able to object to any fee arising from a transaction with respect to which Jefferies had no involvement

duties in these Cases.  Further, at this point, the Committee has been working with Jefferies for almost two months.  Denying its retention now will severely hamper the Committee's ability to address material issues arising in these Cases in a proper and timely manner, all to the detriment of general unsecured claimholders.

51.     Fourth, although there are objections contained in the Response, the objections are all limited objections.  As noted above, none of them dispute the Committee's selection and retention of Jefferies.  Nor do the Debtors dispute that the Jefferies' fee structure is consistent with the fee structure used by other investment banking firms.  The primary objection is that the estates cannot afford to pay these necessary committee professionals (although it can pay the professionals of the Debtors and applicable lender parties).  That objection, however, ignores the Committee's need for the services of such professionals, including specifically Jefferies, in order to fulfill its statutory duties.

52.     Finally, the Committee submits that the proposed fee arrangement is reasonable given the size, circumstances and posture of the case.  While the Debtors' sale process is underway, significant works remains in these Cases for the Committee including analyzing potential bids, interacting with bidders, analyzing asset values and assisting Committee counsel in its investigation of liens and claims asserted by the Debtors' lenders, as well as in the analysis of claims of the Debtors' estates.  The negotiation and confirmation of any plan, moreover, may involve complex financial and related litigation matters in which the Committee may require the services and expertise of Jefferies.  The Committee is already utilizing Jefferies' services in connection with its review and analysis of the WorkflowOne transaction and other matters.  Both the Committee and Jefferies, moreover, believe that the amount of the proposed monthly

and transaction fees are reasonable given the fees of comparable investment banking firms in other Chapter 11 cases.[12]

53.    For all of the foregoing reasons, the Committee respectfully submits that the proposed fee structure is reasonable and should be approved pursuant to section 328(a) of the Bankruptcy Code.  This is especially true, moreover, given the very significant modification made to any sale transaction fee as described above.

<u>**CONCLUSION**</u>

**WHEREFORE**, based upon the foregoing, the Committee respectfully requests that the Court overrule the Responses and enter the modified form of retention orders set forth as <u>Exhibits B through D</u> hereto approving the proposed retentions.

*[ signature page follows ]*

---

[12] A significant factor in determining the "reasonableness" of professional compensation is whether such compensation is in line with the cost of comparable services in the marketplace.  *See In re XO Commc'ns., Inc.*, 323 B.R. 330, 343 (Bankr. S.D.N.Y. 2005) (using "a 'market-driven' approach in which the cost of comparable services is a significant factor in determining reasonableness of fees."); *In re UDC Homes, Inc.*, 203 B.R. 218, 222-23 (Bankr. D. Del. 1996) (approving a success fee after finding such fee was consistent with fees charged in other cases and advisors commonly charged such fees in cases outside of bankruptcy).

Dated: May 8, 2015                    Respectfully Submitted,

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
65 Livingston Avenue
Roseland, NJ  07068
Telephone:  (973-597-2500)
Facsimile:  (973) 597-2400

 *-and -*

Gerald C. Bender, Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 262-6700
Facsimile:  (212) 262-7402

*Proposed Counsel to the Committee*


*-and-*


**POLSINELLI PC**

/s/ *Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Telephone:  (302) 252-0920
Facsimile:  (302) 252-0921
cward@polsinelli.com
jedelson@polsinelli.com

*Proposed Delaware Counsel to the Committee*