## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Standard Register Company, *et. al.,*[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: May 8, 2015 at 4:00 p.m.**<br>**Hearing Date: June 17, 2015 at 10:00 a.m.**<br>**Related Docket Nos. 23, 286, 307, 356** |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CISCO SYSTEMS CAPITAL CORPORATION TO THE DEBTORS' MOTION FOR AN ORDER, *INTER ALIA*, (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE [ECF 23]

Cisco Systems Capital Corporation ("**Cisco Capital**")[2] hereby objects (the "**Limited Objection**") to the assumption and assignment of any executory contracts and unexpired leases to which Cisco Capital is a counterparty (collectively, the "**Cisco Contracts**")[3] pursuant to the Sale Motion[4] filed by The Standard Register Company (the "**Standard Register**") and its

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms defined in this Limited Objection shall have the meaning ascribed to them herein and, to the extent not defined in this pleading, such terms shall have the meaning ascribed to them in the Aziz Declaration (as hereinafter identified) filed concurrently herewith.

[3] The term "Cisco Contracts" means all executory contracts and unexpired leases to which Cisco Capital and any of the Debtors are counterparties including, but not limited to, the Cisco Lease, any Cisco Agreement and any Cisco Excluded Contracts subject to the *Reservation Of Rights* asserted hereinafter.

[4] *See The Debtors' Motion For (I) An Order (A) Establishing Sale Procedures Relating To The Sale Of Substantially All Of The Debtors' Assets; (B) Approving Bid Protections; (C) Establishing Procedures Relating To The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, Including Notice Of Proposed Cure Amounts; (D) Approving Form And Manner Of Notice Of All Procedures, Protections, Schedules, And Agreements; (E) Scheduling A Hearing To Consider The Proposed Sale; And (F) Granting Certain Related*

affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), unless the order (the "**Assumption Order**") approving the assumption and assignment of any executory contract and unexpired lease to which Cisco Capital is a counterpary protects its interests as set forth hereinafter.  The Limited Objection <u>does not object to approval of the sale of the Transferred Assets</u> or any other relief related to such sale as may be requested by the Sale Motion.

The Limited Objection is based on the matters set forth herein, the *Declaration Of Abdul Aziz In Support Of The Limited Objection And Reservation Of Rights Of To The Debtors' Motion For An Order, Inter Alia, (A) Approving The Sale Of Substantially All Of The Debtors' Assets And (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale [ECF 62]* (the "**Aziz Declaration**") filed in support hereof, the files and the records in this case, and such other and further evidence as may be submitted at or before the trial on this matter.

Cisco Capital respectfully requests that the Court take judicial notice of the pleadings filed in this case and the facts set forth in any of the Court's orders, findings of fact and/or conclusions of law pursuant to Rule 201 of the Federal Rules of Evidence (as incorporated by Rule 9017 of the Federal Rules of Bankruptcy Procedure).

## RELIEF SOUGHT BY DEBTORS' SALE MOTION

The Debtors filed their Sale Motion seeking, *inter alia*, entry of (A) an order approving the assumption and assignment procedures with respect to executory contracts and unexpired leases designated by the Successful Bidder (the "**Assumed Contracts**"), and (B) the Sale Order (i) authorizing and approving the sale of the Transferred Assets, free and clear of liens, encumbrances and interests (except for Permitted Encumbrances) and (ii) authorizing and

---

*Relief; And (II) An Order (A) Approving The Sale Of Substantially All Of The Debtors' Assets And (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale* [ECF 23].

approving the assumption and assignment of the Assumed Contracts designated by the Successful Bidder.

Thereafter, the Debtors filed their *First Amended Cure Notice* [ECF 356][5] that, among other things, identifies certain executory contracts and unexpired leases, to which it asserts "Cisco Systems," "Cisco Systems Capital" and "Cisco Systems Capital Corporation" are non-debtor counterparties, and that may be assumed and assigned after the Sale. That notice also asserts that there is only a monetary default of $1,522.99 that must be paid as a pre-condition of the assumption of the identified contracts.

Pursuant to the Sale Motion, if the Assumed Contracts to which Cisco Capital is a counterparty (as identified in the *First Amended Cure Notice*) are assumed and assigned after the Sale, only $1,522.99 would be paid to Cisco Capital to cure the Debtors' monetary default under these contracts.

## RELIEF REQUESTED BY CISCO CAPITAL

The Limited Objection does not object to approval of the sale of the Transferred Assets or any other relief related to such sale as may be requested by the Sale Motion. Nonetheless, if the Court determines to approve the assumption of the CSCC Lease, any Cisco Agreement,[6] any Excluded Cisco Contract,[7] and/or any other Assumed Contract to which Cisco Capital is a counterparty, and the subsequent assignment of any such contract(s) by the Debtors, Cisco Capital respectfully submits that the Assumption Order expressly should reflect the following provisions that protect Cisco Capital's interests:

---

[5] *See First Amended Notice Of (I) Entry Into Stalking Horse Agreement And (II) Potential Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale Of Substantially All Of The Debtors' Assets* [ECF 356].

[6] The term "Cisco Agreement" and "Cisco Agreements" means all written contracts and leases, other documents related to its contracts and leases (including, without limitation, schedules, certificates of acceptance, and financing statements), and amendments to any of these documents. *See* Aziz Declaration at ¶5.

[7] The term "Cisco Excluded Contract" and "Cisco Excluded Contracts" means any and all executory contracts or unexpired leases to which Cisco Capital is a counterparty and which is not the CSCC Lease (individually, a "Excluded Cisco Contract" and, collectively, the "Excluded Cisco Contracts"). The Cisco Excluded Contracts are subject to the *Reservation Of Rights* asserted hereinafter.

(A)    identification of the CSCC Lease[8] as the only executory contract and unexpired lease whose assumption and assignment is authorized and approved;

(B)    the requirement that, with respect to the CSCC Lease and/or any other Cisco Agreement or Excluded Cisco Contract that are assumed and assigned, all monies due and owing pursuant to such contracts and leases, but which are unpaid as of the Assumption Date, shall be paid in full on the Assumption Date (or as soon as practicable thereafter), including without limitation (1) the **$16,405.07** that became due and owing on May 1, 2015 pursuant to the CSCC Lease, (2) the **$16,405.07** that will be due and owing on June 1, 2015 pursuant to the CSCC Lease, (3) any other monies that come due and owing under the CSCC Lease prior to the Assumption Date but which remain unpaid as of the Assumption Date, and (4) any other monies that come due and owing under any other Cisco Agreement or Excluded Cisco Contract but which are unpaid as of the Assumption Date;[9]

(C)    the entry of a finding by the Court that the Debtor has submitted competent evidence providing adequate assurance that the Successful Bidder or its designee (the "**Ultimate Assignee**") of the CSCC Lease (and any other Cisco Agreements or Excluded Cisco Contract that may be assumed and assigned) has the ability, *inter alia*, to pay the aggregate remaining obligations owed pursuant to CSCC Lease in the aggregate amount of not less than **$300,163.29** (which will be due and owing from July 1, 2015 through the Maturity Date of the CSCC Lease), and all other amounts that will be due and owing after the effective date any other contracts or leases that are assumed and assigned;[10]

---

[8]  *See* Aziz Declaration at ¶7 for a detailed description of the CSCC Lease.

[9]  *See Cure Amount Summary (As Of May 6, 2015)*), attached as <u>Exhibit "D"</u> to the Aziz Declaration at ¶17

[10]  According to Cisco Capital's records pertaining to the CSCC Lease, $300,163.29 that will be due and owing pursuant to the CSCC Lease, from and after June 1, 2015 through the Maturity Date of the CSCC Lease.  *See* Aziz Declaration at ¶17.    Additional amounts may be due and owing if any Cisco Excluded Contracts are assumed and assigned and CSCC specifically reserves all rights to require the Debtors to submit evidence showing the ability of the Ultimate Assignee to perform all obligations due and owing pursuant to each Cisco Contract after the Assumption Date.

(D)      an acknowledgement or grant of the Reservation of Rights as it pertains to the Excluded Cisco Contracts as set forth hereinafter; and,

(E)      a grant of such other and further relief as is necessary to protect the all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses of Cisco Capital in this matter.

## BACKGROUND

1.      On or about June 3, 2008, Cisco Capital and the Debtor entered into that certain *Master Agreement To Lease Equipment No. 6670* ("**MLA 6670**"), as amended and supplemented from time to time by Schedule 001-000, Schedule 002-000, Schedule 003-000, Schedule 004-000, Schedule 005-000, Schedule 006-000, Schedule 007-000, Schedule 008-000, Schedule 009-000, Schedule 010-000, Schedule 011-000, and Schedule 012-000 (collectively, the "**Schedules**" and, with MLA 6670, the "**CSCC Lease**").  Pursuant to the CSCC Lease, Cisco Capital leased certain personal property and equipment to the Debtors and the Debtor granted security interests in certain personal property subject to the CSCC Lease (collectively, the "**CSCC Collateral**") as security for performance of its obligations under the CSCC Lease.   [True and accurate copies of MLA 6670 and the Schedules are attached as Exhibit "A" to the Aziz Declaration at ¶7, and such documents are incorporated by reference herein as if fully set forth.]

2.      On July 31, 2008, Cisco Capital recorded *UCC-1 Financing Statement No. OH00128601421* (the "**Cisco UCC**") with the Ohio Secretary of State as a precautionary filing perfecting such security interest.   [A true and accurate copy of the Cisco UCC is attached as Exhibit "B" to the Aziz Declaration at ¶8, and such document is incorporated by reference herein as if fully set forth.]

BANKRUPTCY CASE

3.      On March 12, 2015 (the "**Petition Date**"), the Debtors filed their respective

voluntary petitions in the Court seeking relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and, continually since that date, the Debtors have operated as debtors-in-possession with respect to their bankruptcy, and pursuant to the *Order Directing Joint Administration of Related Chapter 11 Cases For Procedural Purposes Only* [ECF No. 46], the cases are being jointly administered by the Court under *The Standard Register Company* (Case No. 15-10541) case.  *See* Aziz Declaration at ¶9.

4.       On March 12, 2015, the Debtors filed their Sales Motion seeking, among other relief, entry of (a) the Sale Procedures Order (i) authorizing and approving certain proposed Sale Procedures in connection with the proposed sale of substantially all of the Debtors' Transferred Assets, certain proposed assumption and assignment procedures in connection with the Sale, and Sale Notice procedures, (ii) scheduling a Sale Hearing to consider final approval of the Sale, and (b) the Sale Order (i) authorizing and approving the sale of the Transferred Assets, free and clear of all liens, claims and encumbrances (except Permitted Encumbrances), (ii) approving the Purchase Agreement entered into by and between the Debtors and a group led by an affiliate of Silver Point Capital, L.P. (the "**Stalking Horse**") and (iii) authorizing the assumption and assignment of the Assumed Contracts to the Successful Bidder.  *See* Aziz Declaration at ¶10.

5.       On April 15, 2015, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, procedures for the assumption and assignment of the Assumed Contracts (the "**Assumption Procedures**").  *See* Aziz Declaration at ¶11.

6.       On April 27, 2015, the Debtors filed and served their *First Amended Cure Notice* that, among other things, identified the following executory contracts and unexpired lease as Assumed Contracts that potentially may be assumed and assigned in conjunction with the Sale:

| Contract Counterparty | Description Of Agreement | Proposed Cure Amount |
| --- | --- | --- |
| Cisco Systems | Service Agreement | $0.00 |
| Cisco Systems Capital | Trade Customs Agreement | $0.00 |
| Cisco Systems Capital | Master Agreement | $0.00 |
| Cisco Systems Capital Corporation | Master Agreement | $1,522.99 |

[A true and accurate copy of the specific pages on Exhibit "1" to the *First Amended Cure Notice* identifying the above-identified agreements is attached as Exhibit "C" to the Aziz Declaration at ¶12, and is incorporated by reference herein as if fully set forth.]

7.      The Assumed Contracts in the *First Amended Cure Notice* to which Cisco Capital is identified as the counterparty do not match Cisco Capital's records of the Cisco Agreements to which the Debtors are counterparties. *See* Aziz Declaration at ¶13. However, Cisco Capital has concluded that the "Master Agreement" listed on the *First Amended Cure Notice* refers to the CSCC Lease (although the Proposed Cure Amount listed is incorrect). *Id.* Likewise, it has not identified any Cisco Agreements that appear to match either the "Service Agreement" or the "Trade Customs Agreement" listed on the *First Amended Cure Notice*. *Id.*

8.      Under the Sale Motion the Assumed Contracts will be designated for assumption and assignment only after the Sale Hearing – that is, on or after June 17, 2015. *See* Aziz Declaration at ¶16.

MONETARY DEFAULT UNDER THE CSCC LEASE

9.      The CSCC Lease provides, in pertinent part, that, the Debtors' failure to pay any amounts due pursuant to the CSCC Lease constitutes an "Event of Default." *See* Aziz Declaration at ¶14 *citing* MLA 6670 at §4.1(a)**.** The CSCC Lease also provides that, upon such an Event of Default, Cisco Capital is entitled to: (a) enforce performance by judicial action, (b) terminate the CSCC Lease, take possession of any or all of the Equipment and require the Debtors to assemble the Equipment and deliver it to Cisco Capital; (c) recover

any and all direct damages (including all accrued and unpaid Rent and other amounts owing, a Casualty Value or such amounts as are provided under the California Commercial Code); and (d) sell or re-lease any or all of the Equipment, through public or private sale or lease transactions , and apply the proceeds to the Debtors' obligations.  The Debtors also are liable for any resulting deficiency and for all costs and expenses (including reasonable attorneys ' fees) incurred by Cisco Capital in retaking possession of, and removing, storing, repairing, refurbishing and selling or leasing such Equipment and enforcing any obligations of the Debtors pursuant to the CSCC Lease.  *See* Aziz Declaration at ¶14 *citing* MLA 6670 at ¶4.2. Also, because the Schedules are "FMV Leases", if the Equipment is not returned CSCC is entitled to recover damages and sell or re-lease any or all of the Equipment and apply the proceeds thereof to the Debtors' obligations under the CSCC Lease, or otherwise seek recovery in accordance with applicable provisions of the Code.  *See* Aziz Declaration at ¶15.

10.     Cisco Capital contends that, pursuant to the CSCC Lease, the amount of **$16,405.07** became due and owing on May 1, 2015 and that such amount remains unpaid as of this date.  [*See Cure Amount Summary (As Of May 6, 2015)*), attached as <u>Exhibit "D"</u> to the Aziz Declaration at ¶17.]  Cisco Capital also contends that, pursuant to the CSCC Lease, on June 1, 2015, the Debtor will become obligated pursuant to the CSCC Lease to pay an additional $16,405.07.  [*Id.*]  Accordingly, in the event the monthly payments due on May 1, 2015 and June 1, 2015 are not paid prior to the prospective Assumption Date (*i.e.*, on or after June 17, 2015), the aggregate Cure Amount due and owing will be **$32,810.14**.  [*Id.*]

11.     Further, commencing on July 1, 2015 and on the first day of each month thereafter through the Maturity Date of the CSCC Lease, an aggregate amount of $**300,163.29**, will come due and owing.  [*See Cure Amount Summary (As Of May 6, 2015)*), attached as <u>Exhibit "D"</u> to the Aziz Declaration at ¶17.]

## GROUNDS FOR THE RELIEF REQUESTED

### All Defaults As Of The Assumption Date Must Be Cured

12.     Pursuant to 11 U.S.C. §365(b)(1) of the Bankruptcy Code, in the event that a debtor has defaulted on an executory contract or unexpired lease, the debtor is prohibited from assuming the contract unless <u>all monetary defaults existing as of the effective date of such assumption – both pre-bankruptcy and post-petition – must be cured</u> (or provide adequate assurance of prompt cure of such amount).  *See, Stoltz v. Brattleboro Housing Authority,* 315 F.3d 80, 94 (2nd Cir. 2002).   These conditions "protec[t] the creditor's pecuniary interests before requiring a creditor to continue a contractual relationship with a debtor." *Id.*

13.     Moreover, adequate assurance of a prompt cure of a monetary default can be shown only by "a firm commitment to make all payments and at least a reasonably demonstrable capability to do so." *See, In re Embers 86th Street, Inc.,* 184 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1995) (citing *In re R.H. Neil, Inc.,* 58 B.R. 969 (Bankr. S.D.N.Y. 1986)); *Accord,* 2 William L. Norton, Jr. & William L. Norton III, NORTON BANKRUPTCY LAW AND PRACTICE § 46:29 (3rd ed. 2008) (emphasis in original) ("Adequate assurance requires a firm commitment by the trustee or debtor-in-possession to make all payments or, at a minimum, to demonstrate a reasonable ability to do so."

14.     In the case before this Court, it appears that the effective date for the assumption of the CSCC Lease will be June 17, 2015 or later.   Here, as of this date, the Debtors have not paid the **$16,405.07** that became due and owing on May 1, 2015.  Further, there is no indication that the Debtor will pay the **additional $16,405.07** that will be due and owing on June 1, 2015.   Accordingly, in the event the monthly payments due on May 1, 2015 and June 1, 2015 are not paid prior to the prospective Assumption Date (*i.e.*, on or after June 17, 2015), the aggregate Cure Amount due and owing that the Debtors will have to pay

will be **$32,810.14**.  [*See* Aziz Declaration at ¶17.]

### The Court Must Find That There Is Adequate Assurance Of Future Performance By A Prospective Assignee Before An Assumed Contract May Be Assigned

15.     Under section 365(b)(1)(C), assumption and assignment of an executory contract is improper unless a debtor or its assignee demonstrates adequate assurance of future performance.  *See, e.g., In re Metromedia Fiber Network, Inc.,* 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (denying proposed assumption where debtor failed to provide adequate assurance of future performance).  *Cf.  In re Embers 86th Street, Inc., supra*; 2 William L. Norton, Jr. & William L. Norton III, NORTON BANKRUPTCY LAW AND PRACTICE § 46:29, *supra.*

16.     Accordingly, Cisco Capital submits that if the Cure Amount of $32,810.14 is paid by the Debtors as a condition of assumption and assignment of the CSCC Lease, the Ultimate Assignee will be liable for paying the aggregate amount of **$300,163.29** (which will be due and owing from July 1, 2015 through the Maturity Date of the CSCC Lease).  *See* Aziz Declaration at ¶17.]

### RESERVATION OF RIGHTS

17.     Although Cisco Capital consents to assumption of the CSCC Lease if the Court enters an order providing all of the relief requested herein, Cisco Capital hereby expressly reserves (the "**Reservation of Rights**") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any and all executory contracts or unexpired leases to which Cisco Capital is a counterparty and which is not the CSCC Lease (individually, a "Excluded Cisco Contract" and, collectively, the "Excluded Cisco Contracts") including, without limitation, (a) the right to object to the assumption and/or assignment by the Debtor of any Excluded Cisco Contract, (b) the right to payment of all monetary defaults that exist with respect

to each such contract and/or (c) the right to have the assignment of any such contract specifically conditioned on the Court finding, based on competent evidence, that the Successful Bidder and/or the Ultimate Assignee is capable of performing all terms and conditions of the Excluded Cisco Contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

WHEREFORE, if the Court determines to approve assumption of the CSCC Lease, any Assumed Contract to which Cisco Capital is a counterparty and/or any Excluded Cisco Contract, and the subsequent assignment of such contract(s) by the Debtors, Cisco Capital submits that the Assumption Order expressly should include the following provisions that protect Cisco Capital's interests:

(A)    identification of the CSCC Lease as the only executory contract and unexpired lease whose assumption and assignment is authorized and approved;

(B)    the requirement that, with respect to the CSCC Lease and/or any other Cisco Agreement or Excluded Cisco Contract that are assumed and assigned, all monies due and owing pursuant to such contracts and leases, but which are unpaid as of the Assumption Date, shall be paid in full on the Assumption Date (or as soon as practicable thereafter), including without limitation (1) the **$16,405.07** that became due and owing on May 1, 2015 pursuant to the CSCC Lease, (2) the **$16,405.07** that will be due and owing on June 1, 2015 pursuant to the CSCC Lease, (3) any other monies that come due and owing under the CSCC Lease prior to the Assumption Date but which remain unpaid as of the Assumption Date, and (4) any other monies that come due and owing under any other Cisco Agreement or Excluded Cisco Contract but which are unpaid as of the Assumption Date;

(C)    the entry of a finding by the Court that the Debtor has submitted competent evidence providing adequate assurance that the Ultimate Assignee of the CSCC Lease (and any other Cisco Agreements or Excluded Cisco Contracts that may be assumed and assigned) has

the ability, *inter alia*, to pay the aggregate remaining obligations owed pursuant to CSCC Lease in the aggregate amount of not less than **$300,163.29** (which will be due and owing from July 1, 2015 through the Maturity Date of the CSCC Lease), and all other amounts that will be due and owing after the effective date any other Cisco Agreements or Excluded Cisco Contracts that are assumed and assigned;

(D)     an acknowledgement or grant of the Reservation of Rights as set forth herein; and,

(E)     a grant of such other and further relief as is necessary to protect the all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses of Cisco Capital in this matter.

Dated:  May 8, 2015

Respectfully submitted,
ASHBY & GEDDES, P.A.

*/s/ Ricardo Palacio*
Ricardo Palacio (#3765)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
E-mail: rpalacio@ashby-geddes.com

-and-

BIALSON, BERGEN & SCHWAB,
A Professional Corporation
Thomas M. Gaa, Esq.
2600 El Camino Real, Suite 300
Palo Alto, CA 94306
Telephone: (650) 857-9500
Fax: (650) 494-2738
E-mail: Tgaa@bbslaw.com

*Attorneys for Creditor*
*Cisco Systems Capital Corporation*