## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY et. al.,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | Related Docket No. 453 |

**DECLARATION OF ABDUL AZIZ IN SUPPORT OF THE LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CISCO SYSTEMS CAPITAL CORPORATION TO THE DEBTORS' MOTION FOR AN ORDER, *INTER ALIA*, (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE**

I, Abdul Aziz, declare as follows:

1. I am a Manager of Global Workouts for Cisco Systems Capital Corporation (hereinafter "**Cisco Capital**"). I am authorized to make this declaration on behalf of Cisco Capital, I have personal knowledge of the facts stated in this declaration and, if sworn as a witness, I could testify competently thereto.

2. Cisco Capital is a wholly-owned subsidiary of Cisco Systems, Inc., and, among other activities, it leases equipment to third parties and provides financing programs to customers and channel partners of Cisco Systems, Inc.

3. This declaration is filed in support of *the Limited Objection And Reservation*

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a).

*Of Rights Of Cisco Systems Capital Corporation To The Debtors' Motion For An Order, Inter Alia, (A) Approving The Sale Of Substantially All Of The Debtors' Assets And (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale* (the "**Limited Objection**") filed by Cisco Capital with respect to the possible assumption and assignment of certain executory contracts and unexpired leases to which Cisco is a counterparty (referred to hereinafter as the "Cisco Contracts")[2] by The Standard Register Company (the "**Standard Register**") and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

## MAINTENANCE OF BUSINESS RECORDS

4.  In my official capacity, I have personal knowledge of the method by which Cisco Capital maintains records of its transactions with its customers, including accounts receivables. As a regular part of its business, Cisco Capital maintains permanent records of all its transactions in a computerized accounting system. All amounts due and owing to Cisco Capital by a party (individually, a "**Customer**" and, collectively, "**Customers**") pursuant to these transactions including, but not limited to, payments related to services rendered or equipment subject to a lease or other agreement, taxes, interest, fees and other charges (individually, an "**Obligation**" and, collectively, the "**Obligations**"), are entered in this accounting system at, or near, the time such Obligations are incurred. All payments made by a Customer with respect to Obligations, and all other credits and debits related to such Obligations, are entered in the accounting system at, or near, the time they are received and/or incurred. Each such entry is made in the regular course of business by employees of Cisco Capital who actually process these payments, receipts, credits and debits. If necessary, Cisco Capital can print hard copies of all entries.

---

[2] Capitalized terms used in this Declaration, but which are not defined herein, shall have the meanings ascribed to them in the Limited Objection filed concurrently herewith.

5.  I also have personal knowledge of the manner by which Cisco Capital maintains records of its written contracts and leases, other documents related to its contracts and leases (including, without limitation, schedules, certificates of acceptance, and financing statements), and amendments to any of these documents (individually, a "**Cisco Agreement**" and, collectively, the "**Cisco Agreements**") with its Customers. As a regular part of its business, Cisco Capital maintains permanent records of all documents related to the Cisco Agreements and these records are compiled at the time, or near the time, that the document and/or information was received, or the events or transactions actually occurred.

## IDENTIFICATION OF CISCO CAPITAL LEASES

6.  I have personally reviewed Cisco Capital's records relating to the Debtor, the Obligations and the Cisco Agreements, and I am personally familiar with Debtor's account with Cisco Capital.

7.  Based upon my review of the records of Cisco Capital, I attest that on or about June 3, 2008, Cisco Capital and the Debtor entered into that certain *Master Agreement To Lease Equipment No. 6670* ("**MLA 6670**"), as amended and supplemented from time to time by Schedule 001-000, Schedule 002-000, Schedule 003-000, Schedule 004-000, Schedule 005-000, Schedule 006-000, Schedule 007-000, Schedule 008-000, Schedule 009-000, Schedule 010-000, Schedule 011-000, and Schedule 012-000 (collectively, the "**Schedules**" and, with MLA 6670, the "**CSCC Lease**"). Pursuant to the CSCC Lease, Cisco Capital leased certain personal property and equipment to the Debtors and the Debtor granted security interests in certain personal property subject to the CSCC Lease (collectively, the "**CSCC Collateral**") as security for performance of its obligations under the CSCC Lease. A true and accurate copies of MLA 6670 and the Schedules are attached hereto as Exhibit "A" and such documents are incorporated by reference herein as if fully set forth.

8.  Based upon my review of the records of Cisco Capital, I attest that on July 31, 2008, Cisco Capital recorded *UCC-1 Financing Statement No. OH00128601421* (the "**Cisco**

UCC") with the Ohio Secretary of State as a precautionary filing perfecting such security interest. A true and accurate copy of the Cisco UCC is attached hereto as Exhibit "B" and such document is incorporated by reference herein as if fully set forth.

## BANKRUPTCY CASE

9. Based upon information and belief, I am informed that, on March 12, 2015 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions in the Court seeking relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and, continually since that date, the Debtors have operated as debtors-in-possession with respect to their bankruptcy, and pursuant to the *Order Directing Joint Administration of Related Chapter 11 Cases For Procedural Purposes Only* [ECF No. 46], the cases are being jointly administered by the Court under *The Standard Register Company* (Case No. 15-10541) case.

10. Based on information and belief, I am informed that, on March 12, 2015, the Debtors filed their Sales Motion seeking, among other relief, entry of (a) an the Sale Procedures Order (i) authorizing and approving certain proposed Sale Procedures in connection with the proposed Sale of substantially all of the Debtors' Transferred Assets, certain proposed assumption and assignment procedures in connection with the Sale, and Sale Notice procedures, (ii) scheduling a Sale Hearing to consider final approval of the Sale, and (b) the Sale Order (i) authorizing and approving the sale of the Transferred Assets, free and clear of all liens, claims and encumbrances (except Permitted Encumbrances), (ii) approving the Purchase Agreement entered into by and between the Debtors and a group led by an affiliate of Silver Point Capital, L.P. (the "**Stalking Horse**") and (iii) authorizing the assumption and assignment of the Assumed Contracts.[3]

---

[3] See *The Debtors' Motion For (I) An Order (A) Establishing Sale Procedures Relating To The Sale Of Substantially All Of The Debtors' Assets; (B) Approving Bid Protections; (C) Establishing Procedures Relating To The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, Including Notice Of Proposed Cure Amounts; (D) Approving Form And Manner Of Notice Of All Procedures, Protections, Schedules, And Agreements; (E) Scheduling A Hearing To Consider The Proposed Sale; And (F) Granting Certain Related*

11. On April 15, 2015, the Court entered an order [ECF 286] (the "**Bidding Procedures Order**") approving, among other things, procedures for the assumption and assignment of the Assumed Contracts (the "**Assumption Procedures**").

12. On April 27, 2015, the Debtors filed and served their *First Amended Cure Notice* [ECF 356][4] that, among other things, identified the following executory contracts and unexpired lease as Assumed Contracts that potentially may be assumed and assigned in conjunction with the Sale:

| Contract Counterparty | Description Of Agreement | Proposed Cure Amount |
|---|---|---|
| Cisco Systems | Service Agreement | $0.00 |
| Cisco Systems Capital | Trade Customs Agreement | $0.00 |
| Cisco Systems Capital | Master Agreement | $0.00 |
| Cisco Systems Capital Corporation | Master Agreement | $1,522.99 |

A true and accurate copy of the specific pages on Exhibit "1" to the First Amended Cure Notice identifying the above-identified agreements to which Cisco Capital is a counterparty is attached hereto as Exhibit "C" and incorporated by reference herein as if fully set forth.

13. The description of the Assumed Contracts in the *First Amended Cure Notice* that to which Cisco Capital is identified as the counterparty does not match Cisco Capital's records of the Cisco Agreements. However, based upon my review of the records pertaining to the Cisco Agreements, I think that the "Master Agreement" listed on the *First Amended Cure Notice* refers to the CSCC Lease (although the Proposed Cure Amount listed is incorrect). In contrast, I have not identified any Cisco Agreements that appear to match

---

*Relief; And (II) An Order (A) Approving The Sale Of Substantially All Of The Debtors' Assets And (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale* [ECF 23].

[4] See *First Amended Notice Of (I) Entry Into Stalking Horse Agreement And (II) Potential Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale Of Substantially All Of The Debtors' Assets* [ECF 356].

either the "Service Agreement" or the "Trade Customs Agreement" listed on the *First Amended Cure Notice*.

## MONETARY DEFAULT UNDER THE CSCC LEASE

14. The CSCC Lease provides that, in the event the lessee fails to pay any amounts due as set forth in the CSCC Lease, such failure to pay constitutes an "Event of Default." *See* MLA 6670 at §4.1(a). The CSCC Lease also provides that, upon such an event of default, Cisco Capital is entitled to "a) proceed, by appropriate court action, to enforce performance by Lessee of the applicable covenants of any or all of the Leases; (b) terminate any or all Leases by notice to Lessee and take possession of any or all of the Equipment and, for such purpose , enter upon any premises where the Equipment is located with notice or process of law and free from all claims by Lessee or any other person, or require Lessee to assemble the Equipment and deliver it to Lessor …; (c) in addition to any indemnification under this Agreement, recover any and all direct damages , including all accrued and unpaid Rent and other amounts owing under any Lease , and (i) for any Lease that is an FMV Lease, the Equipment for which has not been returned to Lessor in the condition required hereunder, an amount equal to the Casualty Value thereof [as set for in ¶9 of each Schedule]; or . . . such amounts as are provided for the lessee breach of a personal property lease under the Uniform Commercial Code of the [California as specified in Section 5.11 of MLA 6670] (the "Code . . . and (d) sell or re-lease any or all of the Equipment , through public or private sale or lease transactions , and apply the proceeds thereof to Lessee's obligations under such Leases or otherwise seek recovery in accordance with applicable provisions of the Code. Lessee shall remain liable for any resulting deficiency and Lessor may retain any surplus it may realize in connection with an FMV Lease. . . Lessee shall pay all costs and expenses (including reasonable attorneys ' fees) incurred by Lessor in retaking possession of, and removing, storing, repairing, refurbishing and selling or leasing such Equipment and enforcing any obligations of Lessee pursuant to any Lease." *See* MLA

6670 at ¶4.2.

15. Based on my review of the CSCC Lease, I am informed and thereupon state that all of the Schedules are "FMV Leases" and, accordingly, in the event the Equipment is not returned to CSCC, it is entitled (a) to an amount equal to the Casualty Value thereof or such amounts as are provided for the lessee breach of a personal property lease under the California Uniform Commercial Code and (b) sell or re-lease any or all of the Equipment and apply the proceeds thereof to the Debtors' obligations under the CSCC Lease or otherwise seek recovery in accordance with applicable provisions of the Code.

16. Based on information and belief, I am informed and thereupon state that the proposed assumption and assignment of the Assumed Contracts will not be approved prior to June 17, 2015 (that is, at the Sale Hearing).

17. Based on my review of the Debtor's account, I attest that (a) as of May 1, 2015, the amount of **$16,405.07** was due pursuant to the CSCC Lease and such amount remains unpaid as of this date. *See Cure Amount Summary (As Of May 6, 2015))*, attached hereto as Exhibit "D" and incorporated by reference herein as if fully set forth. Additionally, on June 1, 2015, the Debtor will become obligated pursuant to the CSCC Lease to pay $16,405.07. *Id.* Exhibit D. Accordingly, in the event these monthly payments are not paid prior to the prospective assumption of the CSCC Leases on or after June 17, 2015, the aggregate Cure Amount due and owing will be **$32,810.14**. *Id.* Further, commencing on July 1, 2015 and on the first day of each month thereafter through the Maturity Date of the CSCC Lease, an aggregate amount of **$300,163.29**, will come due and owing. *Id.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 7th day of May, 2015 at Reno, Nevada.

_____
Abdul Aziz