IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE STANDARD REGISTER COMPANY, et al., | ) Case No. 15-10541 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Hearing Date: June 17, 2015 at 10:00 AM |
| | ) Objection Date: May 8, 2015 |
| | ) |
| | ) Related Docket Nos. 32, 286 & 307 |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING (1) DEBTORS' MOTION FOR AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (2) NOTICE OF (I) ENTRY INTO STALKING HORSE AGREEMENT AND (II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

Oracle America, Inc., successor in interest to both Oracle USA, Inc., and Oracle Corporation (collectively, "Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 case, submits this Limited Objection and Reservation of Rights (the "Rights Reservation") regarding (1) the Debtors' Motion for an Order (A) Approving the Sale of Substantially all of the Debtors' Assets and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With the Sale ("Sale Motion"); and (2) Notice of (I) Entry Into Stalking Horse Agreement and (II) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With the Sale of Substantially All of the Debtors' Assets ("Cure Notice"), filed by The Standard Register Company., et al. ("Debtors").

I. **INTRODUCTION**

1. By the Sale Motion and Cure Notice, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the

Debtors and Oracle. Oracle objects to the proposed assumption and assignment, for several reasons.

2. First, the targeted Oracle agreements are, or pertain to, licenses of intellectual property that are not assignable absent Oracle's consent, pursuant to both the underlying license agreements and applicable law. The contemplated Asset Purchase Agreement ("APA") between the Debtors and Standard Acquisition Holdings LLC ("Standard Acquisition ") appears to seek authority for the Debtors to transfer Oracle's licenses to the purchaser, without Oracle's consent or the corresponding obligations imposed by Oracle's license agreements. In addition, through the Sale Motion, the Debtors request a judicial determination that anti-assignment provisions in contracts to be assumed and assigned are unenforceable and void. Oracle objects to these sweeping determinations being made regarding its agreements with the Debtors, and does not consent to assignment of its agreements at this time.

3. Second, the Cure Notice does not adequately describe the contracts the Debtors seek to assume and assign, making it impossible for Oracle to accurately assess whether the agreements at issue are assignable. Based on the limited information provided by the Cure Notice, Oracle is unable to determine the accuracy of the Debtors' proposed cure amount.

4. Third, the Sale Motion does not provide Oracle with sufficient information to determine whether the purchaser/assignee is capable of performing under the terms of the contracts the Debtors seek to assume and assign, or to ascertain whether the assignee is an Oracle competitor.

5. Finally, the Sale Motion suggests that the Debtors and the ultimate assignee may contemplate unauthorized shared use of the Oracle licenses through the "Transition Services" proposed by the APA.

6. Accordingly, Oracle requests that the Court deny the Sale Motion to the extent it seeks authority for the Debtors to assume and assign any Oracle agreements.

## II. FACTUAL BACKGROUND

7. The above captioned case was filed on March 12, 2015 and an order directing joint administration was entered on March 13, 2015. The Debtors filed the Sale Motion on March 12, 2015.

8. On April 17, 2015, the Debtors filed and served the Cure Notice on contract counter-parties whose contracts <u>may</u> be assumed and assigned pursuant to the Sale Motion. Exhibit "1" to the Cure Notice lists twelve agreements between the Debtors and Oracle, with corresponding proposed cure amounts, as follows:

| Contract Counterparty | Description of Agreement | Proposed Cure Amount ($) |
|---|---|---|
| Oracle America, Inc. | Purchase Agreement | $0.00 |
| Oracle America, Inc. | Standard Register Purchase Order | $0.00 |
| Oracle America, Inc. | Standard Register Purchase Order #263924 | $0.00 |
| Oracle America, Inc. | Purchase Order #247957 | $0.00 |
| Oracle America, Inc. | Maintenance/Service Contract | $0.00 |
| Oracle America, Inc. | Maintenance/Service Contract | $0.00 |
| Oracle America, Inc. | Oracle Cloud Service Agreement | $8,651.73 |
| Oracle Corporation | Software License and Services Agreement | $0.00 |
| Oracle Corporation | Software License and Services Agreement | $0.00 |
| Oracle Corporation | Oracle License and Services Agreement | $0.00 |
| Oracle Corporation | Oracle Ordering Document; Oracle Licensing and Services Agreement | $0.00 |
| Oracle USA, Inc. | License Verification Form | $0.00 |

Each of the agreements listed above is referred to herein as an "Oracle Agreement" and collectively as the "Oracle Agreements."

### III. ARGUMENT

#### A. The Debtors May Not Assume And Assign The Oracle Agreements Absent Oracle's Consent Because They Pertain To One Or More Licenses Of Intellectual Property.

9. Section 365(c)(1) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

10. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *See, In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 48-49 (Bankr. D. Del 1999) *(citing In re: West Elec., Inc.)* 852 F. 2d 79 (3d Cir. 1988)*; In re ANC Rental Corporation, Inc.*, 277 B.R. 226, 235 (Bankr. D. Del. 2002); *In re Golden Books Family Entertainment, Inc.,* 269 B.R. 311, 316 (Bankr. D. Del. 2001)); *see also In re Trump Entm't Resorts, Inc.*, 2015 Bankr. LEXIS 523 (Bankr. D. Del. Feb. 20, 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable.").

11. The Oracle Agreements referenced by the Cure Notice are, or pertain to, non-exclusive licenses of patented software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign the Oracle Agreements without Oracle's consent.

12. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment.

13. Two provisions of the APA and Sale Motion appear to directly conflict with Oracle's rights. First, the APA purports to transfer Oracle's licenses without its consent and

4

potentially without the associated license agreements. "Intellectual Property" is defined by the APA to include, "rights in computer programs (whether in source code, object code, or other form) and software systems, algorithms, databases, compilations and data, technology supporting the foregoing, and all documentation, including user manuals and training materials, related to any of the foregoing …." The broad scope of "Intellectual Property" for purposes of the APA appears to encompass the Oracle Agreements.

14.     Further, section 5.13 of the APA provides as follows:

> <u>Intellectual Property License</u>. To the extent that Sellers own or license any Intellectual Property that is used or held for use in the Business and that is not a Transferred Asset, Sellers hereby grant to Buyers, effective as of the Closing, a non-exclusive, royalty-free, fully paid-up, perpetual, irrevocable, worldwide, sublicensable license to use and otherwise exploit such Intellectual Property. The foregoing license shall be freely assignable and transferable by Buyers.  APA § 5.13.

15.     To the extent Section 5.13 of the APA purports to authorize the Debtors to transfer Oracle licenses to the purchaser without Oracle's consent and without the corresponding obligations imposed by the relevant Oracle license agreements, it is counter to the license agreements and federal patent law, and applicable law.

16.     In addition, the Sale Motion requests a blanket determination by the Court that any anti-assignment provision in contracts to be assumed and assigned is unenforceable and void.  The request is framed by the Debtors as follows:

> To facilitate the assumption and assignment [of] the Assumed Contracts in connection with the Sale, the Debtors request that the Sale Order provide that any anti-assignment provisions in the Assumed Contracts shall not restrict, limit or otherwise prohibit the assumption and assignment of the Assumed Contracts as provided for herein, and any such provisions are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.  Sale Motion ¶ 90.

17.     Oracle objects to this proposed finding as to the Oracle Agreements because, as discussed above, the Oracle Agreements involve the licensing of non-

5


exclusive, patented software, which are non-assignable in the absence of Oracle's consent. Because Bankruptcy Code section 365 expressly preserves Oracle's right to consent to any assignment of its license agreements, the Debtors may not unilaterally nullify the anti-assignment provisions of the Oracle Agreements.

> **B.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.**

18.    The contract descriptions provided in the Cure Notice are inadequate for Oracle to ensure that it is evaluating the same agreements the Debtors seek to assume and assign. For example, the Debtors are parties to active support contracts and license agreements with Oracle that do not appear to be identified in the Cure Notice.

19.    In addition, Oracle and the Debtors may be parties to expired support contracts associated with the license agreements the Debtors seek to assume and assign.

20.    Under appropriate circumstances, Oracle may consent to a partial assignment of only the active support contracts and underlying license agreement, with a corresponding termination of the unsupported licenses.

21.    However, it is impermissible for the Debtors to attempt to segregate the underlying Oracle license agreement from the corresponding support and any payment agreements for purposes of assumption and assignment, if that is the Debtors' intention. *See In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

22.    Oracle requests that with respect to each contract the Debtors seek to assume and assign, the Debtors provide (a) a specific contract name; (b) a contract identification number; (c) whether the targeted contracts pertain to support or support renewals; and (d) the governing license agreement for each contract.

23. This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, whether they are in default and, if so, what the appropriate cure amount is, and whether Oracle may accept performance from an entity other than the Debtors.

24. Oracle reserves its right to be heard on this issue after the contracts the Debtors seek to assume and assign are identified with greater specificity.

**C.    The Debtors Have Not Provided The Correct Cure Amount.**

25. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

26. As discussed above, the Debtors have failed to describe the Oracle Agreements they seek to assume and assign with sufficient particularity for Oracle to identify the universe of agreements at issue, and thereby confirm the corresponding cure amount.

27. Therefore, Oracle reserves its right to be heard further regarding the cure amount after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

**D.    The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.**

28. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). Here, the ultimate assignee's identity is uncertain. While Standard Acquisition is the proposed purchaser, a different entity may emerge as the successful bidder. The sale is subject to an auction scheduled to be held on June 15, 2015, after objections to both the Sale

Motion and Cure Notice are due.[1] As a result, Oracle cannot evaluate either the eventual purchaser's acceptability as an assignee, or whether the prerequisites of 11 U.S.C. § 365(b) will be met.

29.     To satisfy 11 U.S.C. § 365(b), Oracle requests that the Debtors provide the following information about Standard Acquisition, or any other successful purchaser: (a) financial bona fides; (b) confirmation that the assignee is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity **all** of the Oracle executory contracts to be assigned, and, if appropriate, (ii) enter into an Oracle Master License Agreement.

30.     Absent these assurances, Oracle cannot determine the assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform the terms of the Oracle Agreements.

31.     Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C) and the Sale Motion must be denied to the extent it seeks to assume and assign the Oracle Agreements.

**E.     Simultaneous Use Of The Oracle Agreements By The Debtors and Assignee Is Not Authorized.**

32.     The Sale Motion contemplates certain Transitional Services between the Debtors and the ultimate assignee, described in Section 5.20 of the APA, pursuant to a post-closing transitional services agreement.

33.     Shared access and use exceeds the scope of the permitted uses under the Oracle Agreements, and constitutes an unauthorized splitting of the respective licenses.

---

[1] Oracle is aware that the deadline to object to adequate assurance is June 16, 2015; to avoid multiple, duplicative filings, Oracle incorporates here its objection to adequate assurance and reserves its right to be heard on this issue.

34. Therefore, to the extent that any transitional use contemplated by the Debtors and the assignee implicates the Oracle Agreements, Oracle objects to any purported grant of authorization to the Debtors and the ultimate assignee to simultaneous use of Oracle's licenses.

35. Oracle reserves its right to be heard on the transitional use contemplated by the Debtors until after Oracle has had an opportunity to evaluate the proposed transitional services agreement.

### III. CONCLUSION

36. For the reasons set forth above, Oracle respectfully requests that the Court deny the Sale Motion to the extent it seeks to assume and assign any of the Oracle Agreements. Oracle reserves its right to be heard on all issues set forth herein.

Dated: May 8, 2015
Wilmington, Delaware

Respectfully submitted,

**MARGOLIS EDELSTEIN**

/s/ James E. Huggett
James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**MAGNOZZI & KYE, LLP**
23 Green Street, Suite 302
Huntington, New York 11743
Telephone: (631) 923-2858

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
**BUCHALTER NEMER P.C.**
55 Second Street, Suite 1700
San Francisco, California 94105
Telephone: (415) 227-0900

Deborah Miller, Esq.
Michael Czulada, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California  94065
Telephone:    (650) 506-5200

*Attorneys for Oracle America, Inc.*