IN THE UNITED STATES BANKRUPT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| THE STANDARD REGISTER | § | |
| COMPANY, *et al.*, | § | Case No. 15-10541 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered  . |
| | § | |
| | § | **Re: Docket Nos. 23 & 286** |

### XEROX CORPORATION'S OBJECTION TO CURE AMOUNTS AND ASSUMPTION AND ASSIGNMENT OF XEROX CONTRACTS AND LEASES

Xerox Corporation ("**Xerox**"), objects to the cure amounts ascribed by the Debtors to certain alleged executory contracts and unexpired leases to which Xerox is a counterparty, and to the assumption and assignment of such contracts and leases. In support of this objection, Xerox states as follows:[1]

### BACKGROUND

1.  Xerox and the Debtors have an extensive business relationship. Among other things, Xerox sells and leases reproduction and ancillary equipment to the Debtors. Xerox also provides operational and maintenance services to the Debtors regarding that reproduction equipment.

2.  Certain of the contractual transactions between Xerox and the Debtors are governed by a *Negotiated Agreement* between Xerox and Debtor The Standard Register

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as defined in the Sale Motion [Docket No. 23].

Company, dated June 27, 2003 and deemed effective as of April 1, 2003 (as amended from time to time, the "**Amended Negotiated Agreement**").[2]

3. In conjunction with the Bidding Procedures Order [Docket No. 286], entered on April 15, 2015, Xerox has been served with thirteen separate notices, each containing a "Potential Assignment Schedule" purporting to identify one or more executory contracts or leases to which Xerox is the counterparty and a proposed cure claim amount corresponding to each of those contracts or leases. A schedule summarizing each contract or lease identified by the Debtors and the proposed cure claim amount is attached hereto as Exhibit "A."

4. Based on the notices issued to Xerox, the Debtors contend that there are only two (2) executory contracts or leases which would require the payment of a cure claim, described as follows:

  a. Managed Services Agreement: $903,640.37; and

  b. Xerox iGen4 Press Customer Expectations Agreement: $102,264.36.

5. Since being alerted to the issuance of these notices, Xerox has worked diligently to reconcile the debt reflected in its books and records, to align that debt with the Debtors' numerous accounts, and to determine the amount of pre-petition debt associated with each particular executory contract or lease.

6. Xerox's efforts to complete this process have been frustrated by various factors, including the significant number of distinct business dealings and contracts between the parties, the expedited nature of the cure claim determination process, the difficulty in identifying contracts based on the Debtors' summary description of those instruments, and the delay to

---

[2] The Amended Negotiated Agreement includes, but may not be limited to, the following amendments to the original instrument:
- Amendment to Agreement dated April 19, 2005;
- Amendment to Agreement dated May 12, 2006;
- Amendment to Agreement dated May 16, 2007; and
- Amendment to Agreement dated April 6, 2011.

initiating the reconciliation process resulting from the issuance of the cure notices to various Xerox offices in distinct locals. As a result of those and other factors, Xerox has not completed its reconciliation process, but continues its efforts to do so.

7. In conjunction with those efforts, Xerox has reached the following preliminary conclusions with respect to the proposed cure claims:

    a. The Debtors have at least on one occasion misidentified the actual contract between them and Xerox, but rather identified a statement ancillary to that agreement.

    b. The Debtors have failed to identify the Amended Negotiated Agreement, which governs the general terms and conditions of particular contracts between the parties.

8. Also, on information and belief, the Debtors have failed to account for debts owed Xerox arising under executory contracts and leases in the total sum of $2,190.875.36, including approximately $342,730.35 attributable to special pre-petition invoices that have yet to be issued as a result of the filing of these bankruptcy cases on March 12, 2015.

9. 11 U.S.C. § 365(b)(1) states, in pertinent part:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

10. A cure under Section 365 requires that all unpaid amounts due under the agreement have been paid. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

11. As these bankruptcy cases proceed and Xerox continues to provide post-petition services to the Debtors' estates, additional amounts become due to Xerox under its contracts and leases with the Debtors. Any additional post-petition amounts due at the time of assumption and assignment of any Xerox contract or lease must also be paid to Xerox in order to cure the existing default.

12. Accordingly, Xerox objects to the proposed assumption and assignment of any and all executory contracts and leases for the following reasons:

   a. The cure amounts listed by the Debtors in their Potential Assignment Schedules are incorrect.

   b. The alleged executory contracts and unexpired leases identified by the Debtors in connection with this matter are inaccurate or incomplete.

   c. To the extent that the assumption and assignment of any contract or lease includes a license for software, to the extent that Xerox does not specifically consent to same.

   d. To the extent that the cure amount to be paid does not include any debt arising post-petition.

13. Xerox reserves all rights to amend or supplement this objection for cause.

Accordingly, for the foregoing reasons, Xerox objects to the Debtors' assumption and assignment of the executory contracts and leases to which Xerox is a counterparty and requests that this Court grant Xerox any and all other relief to which Xerox may be entitled.

Dated: May 8, 2015  
       Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
Tel: (302) 658-1100
Fax: (302) 658-1300
jmcmahon@ciardilaw.com

-and-

Mark H. Ralston, Esq.
FISHMANJACKSON
700 Three Galleria Tower
13155 Noel Road, L.B. 13
Dallas, Texas 75240
Tel: 972.419.5500
Fax: 972.419.5501
mralston@fishmanjackson.com

## CERTIFICATE OF SERVICE

I, Mark H. Ralston, hereby certify that on the 8th day of May, 2015, I caused a copy of the forgoing instrument to be served via email on the parties required to be served under the Bidding Procedures Order via email.

/s/ Mark H. Ralston
Mark H. Ralston