**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 17, 2015 at 10 a.m. (ET)<br>Obj. Deadline (only to additional provisions described herein): June 10, 2015 at 4 p.m. (ET) |

**SUPPLEMENT TO DEBTORS' MOTION FOR (I) AN ORDER (A) ESTABLISHING SALE PROCEDURES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS; (C) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES, PROTECTIONS, SCHEDULES, AND AGREEMENTS; (E) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; AND (F) GRANTING CERTAIN RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE**

The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Supplement (this "Supplement"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

01:17142840.1

"Local Rules"), to the *Debtors' Motion for (i) an Order (a) Establishing Sale Procedures Relating to the Sale of Substantially all of the Debtors' Assets; (b) Approving Bid Protections; (c) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (d) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (e) Scheduling a Hearing to Consider the Proposed Sale; and (f) Granting Certain Related Relief; and (ii) an Order (a) Approving the Sale of Substantially All of the Debtors' Assets and (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale* [Docket No. 23] (the "Sale Motion").[2]  Pursuant to this Supplement and the Sale Motion, the Debtors seek to establish additional assumption and assignment procedures following the sale of substantially all of the Debtors' assets (the "Sale") and seek entry of a revised order approving the Sale, substantially in the form annexed hereto as Exhibit A (the "Revised Proposed Order").[3]  A blacklined copy of the Revised Proposed Order, compared against the original proposed order annexed to the Sale Motion (the "Original Sale Order") is annexed hereto as Exhibit B.  In support of this Supplement, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

[3] The Revised Proposed Order does not include other revisions previously agreed to by the Debtors.  The final proposed order approving the Sale will be cumulative of all changes agreed to previously and hereafter.  The Debtors expressly reserve the right to make additional revisions to the Revised Proposed Order in connection with negotiations various creditors, contract counterparties, and other potential buyers.

the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f) the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

## BACKGROUND

**A.     General Background**

3. On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession. No trustee or examiner has been appointed in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On March 24, 2015, the Office of the United States Trustee for the District of Delaware appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, the events leading up to the commencement of these

01:17142840.1

3

Chapter 11 Cases, and the sale process is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration") and the *Declaration of Andrew Torgove in Support of the Sale Motion* [Docket No. 25] (the "Torgove Declaration"), which were filed on the Petition Date.

**B.    The Sale Motion and Sale Procedures Order**

6.    On March 11, 2015, the Debtors entered into the Asset Purchase Agreement (the "Stalking Horse APA") with a group led by an affiliate of Silver Point Capital, L.P., as the buyer and stalking horse bidder (the "Stalking Horse").

7.    On March 12, 2015 the Debtors filed the Sale Motion which sought approval of the Debtors' entry into the Stalking Horse APA and the procedures for soliciting higher and better bids through entry of an *Order (i) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (ii) Approving the Maximum Reimbursement Amount; (iii) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (iv) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (v) Scheduling a Hearing to Consider the Proposed Sale; and (vi) Granting Certain Related Relief* (the "Sale Procedures Order") and the Original Sale Order.

8.    The Stalking Horse APA and the Original Sale Order contemplated the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Transferred Contracts") in connection with approval of the Sale.

9.    The Sale Motion sought, among other things, to implement certain procedures governing the assumption and assignment of executory contracts and leases (the "Current Assumption and Assignment Procedures").

10. On April 15, 2015, the Court entered the Sale Procedures Order. A hearing on the Sale is currently scheduled for June 17, 2015 (the "Sale Hearing").

**C.    Additional Assumption and Assignment Procedures**

11. The Stalking Horse APA, the Current Assumption and Assignment Procedures, and the Original Sale Order contemplated the assumption and assignment of the Transferred Contracts in connection with the Sale would take place at closing. However, given the large number of potential Transferred Contracts (collectively, the "Potential Contracts"), the Debtors believe all parties will be best served if the Stalking Horse (or another buyer in the event the Stalking Horse is not the successful bidder) has additional time to evaluate the Potential Contracts prior to deciding whether such Potential Contracts should be assumed and assigned.

12. In connection with this additional review period, the Debtors propose the following procedures in connection with the assumption and assignment of any Potential Contract (the "Additional Assumption and Assignment Procedures"):

    a. The buyer shall deliver a schedule of Potential Contracts (the "Potential Contracts Schedule") prior to the closing of the Sale (such date, the "Closing Date"). Within two (2) business days of delivery of the Potential Contracts Schedule, the buyer shall deliver notice to each Potential Contract counterparty of its Potential Contract being identified on the Potential Contracts Schedule. For a period of ninety (90) days after the Closing Date (the "Asset Review Period"), the Debtors shall not reject or otherwise terminate any Potential Contracts on the Potential Contracts Schedule, except as set forth below.

    b. The buyer shall be obligated to timely pay any and all amounts arising or otherwise due under any Potential Contract, and to timely perform any obligations of the Debtors under any Potential Contract, that relate to the period between the Closing Date and the date such Potential Contract is either assumed as a Post-Closing Transferred Contract or is rejected by the Debtors after becoming a Removed Contract (defined below), except to the extent such post-Closing Date amounts due are arising out of an intentional breach, willful misconduct or gross negligence by the Debtors with respect to such Removed Contract prior to such rejection ("Potential Contract Administrative Claims").

c. The Potential Contracts Schedule may be updated by the buyer at any time after delivery, until the expiration of the Asset Review Period, to remove any Potential Contracts (each such removed contract, a "<u>Removed Contract</u>").

d. Until the expiration of the Asset Review Period, the buyer shall have the right, upon notice to the Debtors, to designate as a Transferred Contract any Potential Contract that is not a Removed Contract (each such designated contract, a "<u>Post-Closing Transferred Contract</u>").

e. Upon designation as a Post-Closing Transferred Contract, the buyer shall pay, with respect to each Post-Closing Transferred Contract, (i) any applicable Cure Amount, (ii) and any other amounts due and unpaid arising during the period from the Petition Date to the Closing Date, and (iii) any Potential Contract Administrative Claim.

f. Any Potential Contract that has not been designated by the buyer as a Transferred Contract shall be deemed a Removed Contract on the expiration of the Asset Review Period.

g. Any Potential Contract shall be deemed rejected on the expiration of five (5) business days following the date such Potential Contract is designated as a Removed Contract (or otherwise becomes a Removed Contract upon the expiration of the Asset Review Period) and written notice thereof is delivered personally, by facsimile, via e-mail transmission, by next-day service or courier to the applicable counterparty, or if delivered by registered or certified mail, upon confirmed receipt of such notice by the applicable counterparty.

h. Each Potential Contract shall be deemed assumed and assigned to the buyer on the expiration of five (5) business days following the date such Potential Contract is designated as a Post-Closing Transferred Contract and written notice thereof is delivered personally, by facsimile, via e-mail transmission, by next-day service or courier to the applicable counterparty, or if delivered by registered or certified mail, upon confirmed receipt of such notice by the applicable counterparty.

i. After receiving the Potential Contracts Schedule, the Debtors shall file a schedule of all executory contracts and unexpired leases that the Debtors have not yet determined whether to assume or reject (the "<u>Un-rejected Contracts Schedule</u>"). Each executory contract and unexpired lease (i) not identified on the Un-rejected Contracts Schedule, (ii) not identified on the Potential Contracts Schedule, (iii) that is not the subject of a motion to assume or reject that has been filed and served prior to the filing of the Un-rejected Contracts Schedule (the "<u>Initial Contract Rejection Date</u>"), or (iv) that has not already been assumed by the

01:17142840.1

6

Debtors, shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the Initial Contract Rejection Date.

j.  Any Potential Contract Administrative Claims and/or rejection damages claim related to a Potential Contract that is deemed rejected as provided herein shall be asserted no later than 21 days after the delivery of notice that the Potential Contract is a Removed Contract. Any other claims arising from the rejection of an executory contract or unexpired lease shall be filed in accordance with the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 449].

## RELIEF REQUESTED

13.    By this Supplement, the Debtors request approval of the Additional Assumption and Assignment Procedures as set forth in the Revised Proposed Sale Order.

## BASIS FOR RELIEF REQUESTED

**A.    The Debtors' Sound Business Judgment Supports the Implementation of the Additional Assumption and Assignment Procedures**

14.    Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor in possession to assume, subject to the court's approval, executory contracts or unexpired leases of the debtor. Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

15.    The standard applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB* v. *Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113); *see also In re Exide Techs.*, 340 B.R.

222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard."). To determine if the business judgment standard is met, the court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009). "This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate." *Id.* (citations omitted).

16. In this case, the Debtors have determined, in an exercise of their sound business judgment, that their estates will be best served through the implementation of the Additional Assumption and Assignment Procedures. The Additional Assumption and Assignment Procedures will encourage competitive bidding, as buyers can take comfort that they will have additional time to reject any burdensome contracts that they have not been able to fully diligence as of the date of the auction. Additionally, the Additional Assumption and Assignment Procedures may actually increase the likelihood that more contracts will be assumed. With the benefit of additional time following the Closing Date, a buyer will be able to better understand the value of each Potential Contract and may be better positioned to justify paying cure claims of a larger number of Potential Contracts. To the extent more Potential Contracts are assumed and assigned to a buyer, the Debtors' estates will, of course, benefit through a reduction in overall rejection claims.

17. Moreover, providing the Stalking Horse (or another buyer in the event the Stalking Horse is not the successful bidder) with additional time to review and evaluate the Potential Contracts will facilitate a smoother Sale process after the Closing Date. For example, the Additional Assumption and Assignment Procedures will allow the Debtors to avoid the

unnecessary expense of separately filing one or more motions to assume and assign (or to reject) Potential Contracts.

18.     Contract assumption and assignment procedures similar to these are routinely approved by courts. *See, e.g.*, *In re OSH 1 Liquidating Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. Oct. 22, 2013) [Docket No. 670] (authorizing transfer of designation rights and lease assumption and assignment procedures); *In re Weingarten Nostat, Inc*., 396 F.3d 737 (6th Cir. 2005) (dismissing appeal of bankruptcy court order approving transfer of debtor's lease designation rights to most of its real property and retail leases); *In re Ames Department Stores, Inc*., 287 B.R. 112 (Bankr. S.D.N.Y 2002) (holding that transfer of lease designation rights is permissible and noting at least 15 instances where the sale of lease designation rights had been approved).

**B.    The Additional Assumption and Assignment Procedures Do Not Adversely Affect Contract Counterparties' Substantive Rights**

19.     The Additional Assumption and Assignment Procedures will not adversely affect any contract counterparty's substantive rights under the Current Assumption and Assignment Procedures. The Court will still determine, in connection with the Sale Hearing and through a final Sale order, (a) the extent to which any Potential Contract can be assumed and assigned and (b) the required amount that a buyer must pay to cure any existing default.

20.     The Additional Assumption and Assignment Procedures will <u>not</u> affect whether a Potential Contract may be assumed, the amount of a cure claim, or the requirement for a buyer to provide adequate assurance of future performance. The Additional Assumption and Assignment Procedures are simply a timing mechanism extending the decision whether to assume and assign Potential Contracts. Moreover, during the Asset Review Period, the buyer will be obligated to satisfy ongoing obligations in the ordinary course of business. Hence, the Additional

Assumption and Assignment Procedures provide additional flexibility to a buyer and the Debtors while protecting the substantive rights of each Potential Contract counterparty.

21. Accordingly, the Debtors request that the Court approve the Additional Assumption and Assignment Procedures.

## WAIVER OF ANY APPLICABLE STAY

22. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the [debtor] to assign an executory contract or unexpired . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." *Id.* at 6006(d). The Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d), respectively, in connection with the Sale. As described above and in the First Day Declaration and the Torgove Declaration, time is of the essence with respect to the Sale, as the Debtors lack sufficient funding to operate their businesses on a prolonged basis. In order to effectuate the Debtors' contemplated chapter 11 strategy, as set forth in more detail in the First Day Declaration and the Torgove Declaration, waiver of Bankruptcy Rules 6004(h) and 6006(d) are necessary and appropriate under the circumstances. The Debtors therefore request that the Sale Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## NOTICE

23. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit

01:17142840.1

Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' debtor-in-possession financing facilities; (vi) counterparties to executory contracts and unexpired leases; and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request the Court to grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 27, 2015
Wilmington, Delaware

*/s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*