## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 17, 2015 at 10 a.m. (ET)<br>Obj. Deadline: June 10, 2015 at 4 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES TO (A) SETTLE AND  SATISFY CLAIMS AGAINST CRITICAL VENDORS, (B) EFFECTUATE SETOFF AGREEMENTS WITH CREDITORS, AND (C) ESTABLISH PROCEDURES TO SETTLE AND SATISFY CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE

The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 107(b), 362(d)(1), 503(b)(9), 553, and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure  (the "Bankruptcy Rules"), authorizing the Debtors to (a) establish procedures to settle and satisfy claims against their Critical Vendors,[2] (b) establish procedures for effectuating setoff agreements with creditors that hold outstanding payables owed

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] As used herein, the term "Critical Vendors" shall have the meaning ascribed to such term in this Court's *Final Order Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Shippers and Freight Carriers* [Docket No. 262] (the "Final Critical Vendors Order").

to the Debtors, and (c) establish procedures to settle and satisfy claims asserted against the

Debtors pursuant to section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims").  In support

of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware dated February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f) the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief requested herein are sections 105(a), 107(b),

362(d)(1), 503(b)(9), 553, and 558 of the Bankruptcy Code, and Bankruptcy Rule 9019(b).

## BACKGROUND

**A.       General Background**

3.       On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in

possession.  No trustee or examiner has been appointed in these chapter 11 cases (collectively,

the "Chapter 11 Cases").

4.       The Chapter 11 Cases have been consolidated for procedural purposes only and

are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On

March 24, 2015, the Office of the United States Trustee for the District of Delaware appointed

the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code

(the "Committee").

5.      Information regarding the Debtors' history and business operations, capital

structure and primary secured indebtedness, and the events leading up to the commencement of

these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the*

*Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2], which was filed

on the Petition Date.

**B.      Claims Against Critical Vendors**

6.      On the Petition Date, the Debtors filed a motion seeking, among other things,

authorization (in their discretion) to make cash payments to the Critical Vendors.  *See Debtors'*

*Motion for Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Claims*

*of Critical Vendors, Shippers and Freight Carriers* [Docket No. 9] (the "Critical Vendors

Motion").  The Court approved the Critical Vendors Motion on an interim basis upon entry of its

*Interim Order Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors,*

*Shippers and Freight Carriers* [Docket No. 50] and on a final basis pursuant to the Final Critical

Vendors Order.

7.      As set forth in the Final Critical Vendors Order, the Debtors have the authority to

make aggregate cash payments to their Critical Vendors in the amount of $20 million.  However,

the Final Critical Vendors Order does not address the Debtors' authority to utilize all state law

defenses to settle claims they have against their Critical Vendors under section 558 of the

Bankruptcy Code.  In instances where the Debtors hold claims against their Critical Vendors, the

Debtors believe that it is in the estates' best interest to settle such claims in connection with

negotiating Critical Vendor payments.  The Debtors believe this would benefit the estates

because the Debtors would be able to satisfy some or all of certain Critical Vendors' claims via non-cash consideration.

8.      Accordingly, the Debtors hereby request authority to settle claims against Critical Vendors in accordance with the procedures proposed below.

**C.      Setoff Claims**

9.      There are a number of parties that, prior to the Petition Date, were both vendors to, and customers of, the Debtors.  Additionally, as part of many vendor or customer agreements, payments may be owed by and to the Debtors, on the one hand, and the vendor or customer counterparty, on the other hand, on account of rebates, credits, or similar provisions.  As such, many of these parties have both outstanding prepetition payables and receivables with the Debtors and have contacted the Debtors regarding their willingness to effectuate a consensual setoff for such amounts.  In some instances, the Debtors are owed significantly more than they owe to the applicable counterparty as of the Petition Date, but the counterparty has refused to pay the net amount absent resolution of all setoff issues.  While the Debtors are willing to stipulate to such relief with parties holding a valid right of setoff, the Debtors submit that Court approval of any such arrangement may be necessary to the extent the automatic stay under section 362 of the Bankruptcy Code prevents such an arrangement.

**D.      503(b)(9) Claims**

10.      In the ordinary course of their businesses, the Debtors purchase a variety goods in connection with printing, production, and other services provided to customers.  As of the Petition Date, the Debtors were in possession of certain goods that had been delivered prior to the Petition Date by various vendors and suppliers, but for which the Debtors had not yet made payment.  Section 503(b)(9) of the Bankruptcy Code provides for administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a

case . . . in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

11.      Given the volume of goods received by the Debtors during the 20-day period prior to the Petition Date, the treatment and satisfaction of 503(b)(9) Claims is an important issue in these Chapter 11 Cases. The Asset Purchase Agreement dated March 12, 2015 (as may be amended or supplemented from time to time, the "Stalking Horse APA"), which contemplates the sale of substantially all of the Debtors assets (the "Sale"), specifically provides that the buyer will assume liability for the 503(b)(9) Claims, subject to certain limits on overall assumed liabilities. It is necessary, therefore, that the Debtors establish procedures to settle and pay 503(b)(9) Claims after the Sale.

## RELIEF REQUESTED

12.      By this Motion, the Debtors, pursuant to sections 105(a), 107(b), 362(d)(1), 503(b)(9), 553, and 558 of the Bankruptcy Code and Bankruptcy Rule 9019(b), request entry of an order authorizing the Debtors to (a) establish procedures to settle and satisfy claims against Critical Vendors, (b) establish procedures for effectuating setoff agreements with creditors that hold outstanding payables owed to the Debtors, and (c) establish procedures to settle and satisfy the 503(b)(9) Claims. The Debtors further request that such order be effective and enforceable immediately upon entry.

**A.      The Critical Vendor Claims Procedures**

13.      To efficiently and expeditiously resolve the Debtors' claims against the Critical Vendors, the Debtors propose to settle such claims in accordance with the following procedures (such procedures, the "Critical Vendor Claims Procedures"):

   a.   Without further order of the Court or notice to or approval of any other party, the Debtors may enter into a compromise and settlement of any claims, which the

Debtors hold against a Critical Vendor, that have an estimated value of less than $250,000.

b.  In those instances where the Debtors hold claims against a Critical Vendor that have an estimated value between $250,000 and $1,000,000, the Debtors shall submit the proposed settlement, which may be submitted electronically, to (a) counsel for the Committee, Lowenstein Sandler LLP (Attn: Sharon L. Levine) and Polsinelli PC (Attn: Christopher A. Ward) and (b) counsel to the agents for the Debtors' postpetition financing facilities, Skadden, Arps, Slate, Meager & Flom LLP (Attn: Ron E. Meisler) and Parker, Hudson, Rainer & Dobbs LLP (Attn: C. Edward Dobbs and James S. Rankin, Jr.) (collectively, the "Notice Parties") together with (i) the name of the Critical Vendor party to the settlement; (ii) a summary of the Debtors' claims against the Critical Vendor, including a statement of the settlement amount; (iii) an explanation why the settlement of such claim is favorable to the Debtors and their estates; and (iv) a copy of any proposed settlement agreement (collectively, the "Critical Vendor Claim Settlement Summary").  The Notice Parties shall be required to submit, in writing (which writing may be delivered electronically), any objections to a proposed settlement reflected in a Critical Vendor Claim Settlement Summary to counsel for the Debtors, Gibson, Dunn & Crutcher LLP (Attn: Michael A. Rosenthal and Jeremy L. Graves), and Young Conaway Stargatt & Taylor LLP (Attn: Michael R. Nestor and Andrew L. Magaziner) (together, the "Debtors' Counsel") on or before five (5) days after service of such Critical Vendor Claim Settlement Summary.  In the event that any Notice Party timely objects to the settlement set forth in the Critical Vendor Claim Settlement Summary, the Debtors may not agree to the settlement without first (i) seeking to renegotiate the proposed settlement and submitting a revised Critical Vendor Claim Settlement Summary to the objecting Notice Party in connection therewith or (ii) filing a motion with the Court seeking approval of the proposed settlement.  If no objection is raised by any Notice Party to the proposed settlement within the time period set forth above, the Debtors shall be deemed, without further order of the Court, to be authorized by the Court to enter into an agreement to settle the claim at issue on terms no less favorable than those provided in the Critical Vendor Claim Settlement Summary previously submitted to the Notice Parties.[3]

---

[3]  For the avoidance of doubt, the Debtors reserve the right to also make cash payments to the Critical Vendor in accordance with the terms and procedures of the Final Critical Vendors Order.

     c.   The Debtors intend to seek separate Court approval, under Bankruptcy Rule 9019, for any compromise or settlement of a claim against a Critical Vendor in those instances where the estimated value of the claims is greater than $1,000,000.

14.     In connection with the settlement of all or a portion of each claim against a Critical Vendor, the Debtors will condition any payment of such claim upon a Critical Vendor's agreement to provide goods and services to the Debtors postpetition on terms acceptable to the Debtors in accordance with the Final Critical Vendors Order.

15.     The Debtors believe that it would be efficient and cost effective for all interested parties if they are authorized to settle claims against Critical Vendors under the terms and conditions outlined herein.  Indeed, granting such authority will spare the Debtors and their estates the unnecessary expense and delay (and possible interruption in the flow of essential goods and services) that would otherwise be associated with resolving such claims.

**B.**     **The Setoff Agreement Procedures**

16.     As discussed above, the Debtors also seek authority to enter into setoff agreements with certain other creditors, whereby the Debtors will have the ability to set off amounts owed to the Debtors against amounts due to such creditors (the "Setoff Agreements"). The Debtors seek approval of the following procedures (the "Setoff Agreement Procedures"):

     a.   Without further order of the Court or notice to or approval of any other party, the Debtors may enter into a Setoff Agreement with respect to a claim against a creditor that has a value of up to $100,000.

     b.   For Setoff Agreements that relate to claims against creditors that have a value greater than $100,000 but less than $1,000,000, the Debtors shall submit the proposed Setoff Agreement to the Notice Parties.  The Notice Parties shall be required to submit in writing (which writing may be delivered electronically) any objections to a proposed Setoff Agreement to the Debtors' Counsel on or before five (5) days after service of such Setoff Agreement Summary.  In the event that any Notice Party timely objects to the Setoff Agreement, the Debtors may not enter into such Setoff Agreement without (i) seeking to renegotiate the proposed Setoff Agreement and submitting a revised Setoff Agreement to the objecting

Notice Party in connection therewith or (ii) filing a motion with the Court seeking approval of the proposed Setoff Agreement. If no objection is raised by any Notice Party to the proposed Setoff Agreement within the time period outlined above, the Debtors shall be deemed, without further order of the Court, to be authorized to enter into the proposed Setoff Agreement on terms no less favorable than those provided in the Setoff Agreement previously submitted to the Notice Parties.

c.  The Debtors intend to seek separate Court approval, under Bankruptcy Rule 9019, for any Setoff Agreement with respect to a claim against a creditor that has a value greater than $1,000,000.

## C.      The 503(b)(9) Claims Settlement Procedures

17.   To efficiently resolve 503(b)(9) Claims following the Sale hearing, the Debtors propose to settle and pay such claims ("503(b)(9) Settlement Agreements") in accordance with the following procedures (the "503(b)(9) Procedures" and together with the Critical Vendor Claims Procedures and Setoff Agreement Procedures, the "Procedures"):

a.  During the period from the entry of the order approving the Sale (the "Sale Order) through the closing of the Sale, the Debtors may enter into 503(b)(9) Settlement Agreements in accordance with the Final Critical Vendors Order.

b.  From and after the closing of the Sale, the Debtors shall be authorized to enter into 503(b)(9) Settlement Agreements, without further order of Court, except that settlements involving 503(b)(9) Settlement Agreements in excess of $250,000 shall be subject to the consent of the successful buyer under the Sale (the "Buyer") or further order of the Court. The procedure for obtaining Buyer consent shall be as follows: the Debtors shall provide the Buyer with notice (which notice may be delivered electronically) of a proposed 503(b)(9) Settlement Agreement in excess of $250,000, and the Buyer shall be required to submit in writing (which writing may be delivered electronically) any objections to such 503(b)(9) Settlement Agreement on or before five (5) days after receipt of such notice. In the event that the Buyer timely objects to the 503(b)(9) Settlement Agreement, the Debtors may (i) renegotiate the proposed 503(b)(9) Settlement Agreement and submit the revised 503(b)(9) Settlement Agreement to the Buyer for approval or (ii) file a motion with the Court seeking approval of the proposed 503(b)(9) Settlement Agreement. If no objection is raised by the Buyer to the proposed 503(b)(9) Settlement Agreement within the time period outlined above, the Debtors shall be deemed, without further order of the Court, to be authorized

to enter into the proposed 503(b)(9) Settlement Agreement on terms no less favorable than those provided in the 503(b)(9) Settlement Agreement previously submitted to the Buyer.

c.    The Sale Order shall provide for the payment by the Buyer of any amounts due under a post-closing 503(b)(9) Settlement Agreement, as and to the extent provided in the final Asset Purchase Agreement with such Buyer.

**D.    Proposed Notice of Settlements**

18.    As the Procedures contemplate that the Debtors may resolve claims against Critical Vendors, effectuate Setoff Agreements, or effectuate 503(b)(9) Settlement Agreements below certain dollar thresholds without further notice, the Debtors propose to prepare monthly reports (the "Monthly Reports") summarizing any such agreements.  The Monthly Reports will set forth, as applicable, (i) the name of the applicable Critical Vendor or counterparty to the Setoff Agreement or 503(b)(9) Settlement Agreement; (ii) the estimated value of the claim against the Critical Vendor and the amounts for which such claim has been settled; and (iii) a summary of any Setoff Agreement or 503(b)(9) Settlement Agreement, including disclosure of the receivables and payables which are the subject of the Setoff Agreement or amounts paid under a 503(b)(9) Settlement Agreement.  The Debtors will serve copies of each Monthly Report on the Notice Parties and the U.S. Trustee.  The Debtors will also serve copies of each Monthly Report relating to 503(b)(9) Settlement Agreements on the Buyer.

## BASIS FOR RELIEF REQUESTED

**A.    The Critical Vendor Claims Procedures Should be Approved Because Decisions to Settle Claims Are an Exercise of the Debtors' Sound Business Judgment and the Debtors Require the Goods and Services Provided by the Critical Vendors**

19.    The Court has the authority to grant the relief requested herein pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code.

20.     Bankruptcy Rule 9019(b) provides that the Court may authorize the Debtors to settle certain classes of controversies without requiring separate notice and a hearing with respect to each separate controversy.  The decision to approve a particular settlement lies "within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements if they are "in the best interest of debtor's estate." *Law Debenture Trust Co. of N.Y. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95-96 (D. Del. 2006) (citing *Martin v. Myers (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996)).  In determining whether to approve a proposed settlement, "[t]he court need not decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness." *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010) (collecting cases); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983).  Further, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."

21.     Providing the Debtors with the authority to efficiently and expeditiously settle the claims against Critical Vendors pursuant to the Procedures will reduce the Debtors' cash outlay in connection with Critical Vendor payments and ensure the Debtors' continued receipt of necessary goods and services.  Similar settlement procedures have been approved in other chapter 11 cases, including in this District.  *See In re ADI Liquidation, Inc.*, No. 2015 Bankr. LEXIS 1611, at *17 (Bankr D. Del. May 5, 2015) (approving procedures for settlement of section 503(b)(9) claims); *In re NE Opco, Inc.*, No. 13-11483 (CSS) (Bankr. D. Del. Aug. 23,

2013) [Docket No. 263] (same); *In re AES Eastern Energy, L.P.*, No. 11-14138 (KJC) (Bankr. D. Del. Feb. 15, 2012) [Docket No. 196] (same); *In re Nortek Holdings, Inc.*, No. 09-13611 (KJC) (Bankr. D. Del. Nov. 19, 2009) [Docket No. 128] (approving procedures for settlement of prepetition claims); *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. June 23, 2009) [Docket No. 706] (approving procedures for settlement of prepetition and postpetition claims); *In re General Growth Props., Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 1, 2009) [Docket No. 960] (approving procedures for settlement of prepetition mechanics' lien claims).

22.    Further, the Debtors should be authorized to provide non-cash consideration to their Critical Vendors for the same reasons articulated in the Critical Vendors Motion as a basis for providing cash consideration to Critical Vendors.  The ability to reduce the Debtors' potential cash outlay on account of Critical Vendor claims while simultaneously maintaining the supply of goods and services essential to the functioning of the Debtors' businesses is beneficial to the Debtors, their estates, and other parties in interest.

**B.    The Setoff Agreement Procedures Should be Approved**

   **(i)    The Setoff Agreement Procedures Are Appropriate and Are an Exercise of the Debtors' Sound Business Judgment**

23.    The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A."  *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotations and citation omitted).  The Bankruptcy Code does not create an independent right of setoff in bankruptcy; rather, it preserves setoff rights otherwise in existence under non-bankruptcy law. *See Strumpf*, 516 U.S. at 18 ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."); *In re Bennett Funding Grp.*, 146 F.3d 136, 139

01:17143052.1

11

(2d Cir. 1998) ("Section 553 . . . does not create a right of setoff, but rather preserves whether a right exists under applicable non-bankruptcy law."); *In re Sentinel Prod. Corp. Inc.*, 192 B.R. 41, 45 (N.D.N.Y. 1996) (section 553 "preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law").

24.     Section 558 of the Bankruptcy Code preserves any and all defenses that were available to the Debtors prior to the Petition Date. *See In re PSA, Inc.*, 277 B.R. 51, 53 (Bankr. D. Del. 2002); *see also In re 1701 Commerce, LLC*, 2014 WL 4657314, at *13 (Bankr. N.D. Tex. Sept. 17, 2014) (finding that section 558 provides the debtor with both affirmative and negative defenses, including the debtor's right to setoff prepetition claims against administrative claims). This includes the Debtors' right to set off amounts owed to them against administrative expense claims asserted against the estates. *See In re PSA Inc.*, 277 B.R. at 54.

25.     Section 558 does not include the restrictive language and exceptions found in section 553(a); thus, a debtor may setoff prepetition claims against postpetition obligations it owes as long as there are valid, mutual debts between the same two parties. *See In re Prince Sports, Inc.*, 2013 WL 6906717, at *2 (Bankr. D. Del. Dec. 11, 2013). Therefore, for purposes of setoff under section 558, "the estate need not establish that the debts to be set off are both pre-petition." *In re Women First Healthcare, Inc.*, 345 B.R. 131, 134 (Bankr. D. Del. 2006). *See also In re Papercraft*, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) ("[B]ecause § 558 preserves to the [d]ebtor the defenses it would have had prepetition, the court must examine the transaction as though the bankruptcy had not been filed. Doing so eliminates the prepetition/postpetition distinction and, in essence, obliterates the requirement that the mutual debts must both be prepetition obligations in a § 558 context."); *In re ADI Liquidation, Inc.*, No. 14-12092 (KJC) (Bankr D. Del. May 5, 2015) [Docket No. 2052 at 8] ("In contrast [to a debtor's right under

§ 558], a creditor's setoff rights are preserved in bankruptcy through Bankruptcy Code § 553, but § 553 restricts the exercise of a creditor's rights so that prepetition setoff rights can be applied only to prepetition debts and obligations.").

26.     The Debtors believe that entering into the Setoff Agreements is in the best interest of their estates and all parties in interest, and the Debtors further submit that cause exists to modify the automatic stay, to the extent necessary, to authorize entry into the Setoff Agreements pursuant to the Setoff Agreement Procedures in accordance with applicable state law.

**(ii)     The Debtors Should be Authorized to Set Off Against Administrative and Section 503(b)(9) Claims First, in Their Discretion**

27.     Courts routinely hold that a debtor may set off its prepetition claims against a creditor's section 503(b)(9) claims.  *See, e.g.*, *In re ADI Liquidation, Inc.*, No. 14-12092 (KJC) (Bankr D. Del. May 20, 2015) [Docket No. 2098] (authorizing debtors to set off prepetition credits against creditors' 503(b)(9) claims); *In re Circuit City Stores, Inc*., 2009 WL 4755253, at *4-5 (Bankr. E.D. Va. Dec. 3, 2009) (same).  Courts have also authorized debtors to set off their prepetition claims against administrative expense claims.  *See, e.g.*, *In re ADI Liquidation, Inc.*, No. 14-12092 (KJC) (Bankr D. Del. May 20, 2015) [Docket No. 2098]; *In re Prince Sports*, 2013 WL 6906717, at *3 (authorizing debtor to apply prepetition refund owed from landlord against postpetition administrative rent owed to landlord).

28.     "Nothing in the code suggests that a [c]laimant's right to setoff under [section] 553 should trump a debtor's right to setoff under [setoff] 558."  *In re Circuit City*, 2009 WL 4755253, at *4.  While a creditor's ultimate recovery may be adversely affected by allowing a debtor to set off its prepetition claims or credits against a creditor's secured or administrative priority claims, that fact is not relevant.  "The [c]laimant gets the benefit of the extinguishment

of the debt it owes to the Debtors dollar for dollar," and the estate benefits through an increase in

distributable assets. *Id.*

29.    Recoupment is an equitable defensive claim that involves "the setting up of a

demand *arising from the same transaction* as the plaintiffs claim or cause of action, strictly for

the purpose of abatement or reduction of such claim." *Univ. Med. Ctr. v. Sullivan (In re Univ.*

*Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992) (emphasis in original).  As in the context of

setoff, Bankruptcy Code section 558 preserves the Debtors' right to recoup claims asserted

against the Debtors' estates, including administrative expense claims. *See Prince Sports*, 2013

WL 6906717, at *2 (noting that debtors sought to setoff or recoup against administrative expense

claim under section 558, and finding the prerequisites for recoupment satisfied).

30.    Accordingly, the Court should authorize the Debtors to exercise their setoff and/or

recoupment rights, in their discretion, first to reduce dollar-for-dollar any administrative or

503(b)(9) Claims owed to a creditor.

**C.    The 503(b)(9) Procedures Are Also Appropriate and Are an Exercise of the Debtors'**
**Sound Business Judgment**

31.    As discussed above, Bankruptcy Rule 9019 provides that a court may authorize

the Debtors settle certain claims and controversies without requiring separate notice and a

hearing with respect to each separate controversy.  Authorizing the Debtors to settle and pay

503(b)(9) Claims pursuant to the 503(b)(9) Procedures will enable the Debtors to limit potential

liabilities, increase potential recoveries to other creditors, and assist the Debtors in successfully

formulating a chapter 11 plan.  Similar settlement procedures have been approved in other

chapter 11 cases. *See, e.g.*, *In re NE Opco, Inc.*, No. 13-11483 (CSS) (Bankr. D. Del. Aug. 23,

2013) [Docket No. 263] (authorizing settlement and payment procedures of section 503(b)(9)

01:17143052.1

14

claims); *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. June 23, 2009) [Docket No.

706] (approving procedures for settlement of prepetition and postpetition claims).

32.     Additionally, courts may, in their discretion, permit payment of claims arising

under section 503(b)(9) prior to the completion of a chapter 11 case. *See In re Global Home*

*Prods, LLC*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (citing *In re Garden*

*Ridge Corp*., 323 B.R. 136 (Bankr. D. Del. 2005)) (noting that "when a claimant timely files

a request for payment of an administrative expense under § 503(a), the timing of the payment

of that administrative expense claim is left to the discretion of the Court."); *see also In re*

*NE Opco, Inc.*, No. 13-11483 (CSS) (Bankr. D. Del. Aug. 23, 2013) [Docket No. 263]

(authorizing settlement and payment procedures of section 503(b)(9) claims prior to

confirmation of chapter 11 plan).  In determining whether to exercise their discretion to allow

early payment, courts often consider the following three factors:  (a) prejudice to the debtors,

(b) hardship to the claimant, and (c) potential detriment to other creditors.  *In re Global Home*

*Prods*., 2006 WL 3791955, at *4.

33.     Here, providing the Debtors with authority to settle and pay certain 503(b)(9)

Claims pursuant to the 503(b)(9) Procedures is beneficial to the Debtors and their estates.  Under

the Stalking Horse APA (or any other Sale agreement the Debtors anticipate would be approved

by the Court) the buyer will provide the Debtors with sufficient liquidity to fund early payment

of the limited category of administrative expenses, thus, reducing overall administrative

expenses to the Debtors' estates.

34.     Moreover, the ability to settle 503(b)(9) Claims early may enable the Debtors to

obtain a discount on the face value of claims that would otherwise need to be paid in full upon

the effective date of a confirmed chapter 11 plan pursuant to section 1129(a)(9)(A) of the

Bankruptcy Code.  At the same time, claimants with valid 503(b)(9) Claims will benefit by receiving early payment on account of such claims.

35.     Accordingly, the Court should approve the 503(b)(9) Procedures.

**D.     The Debtors Are Not Assuming a Duty to Settle Claims**

36.     Entry of an order granting the relief requested herein will not in any manner obligate the Debtors to settle or discuss the settlement of any claim, including, but not limited to claims against Critical Vendors and 503(b)(9) Claims.  Nor will the aforementioned relief require the Debtors to settle any claims for amounts in excess of the amounts that the Debtors, in their sole discretion, believe to be reasonable and appropriate.  In addition, the granting of such relief will not preclude the Debtors from settling any other claims against their estates upon further application to the Court.  Finally, nothing herein shall authorize a creditor to effectuate a setoff without the Debtors' consent pursuant to the procedures set forth herein.

## RESERVATION OF RIGHTS

37.     Nothing contained herein is intended or will be construed as: (i) an admission as to the validity of any claims of Critical Vendors or right of setoff against the Debtors or their respective estates; (ii) a waiver of the Debtors' right to dispute any claims asserted against the Debtors or their respective estates; or (iii) an admission regarding the actual amounts owed pursuant to any claim asserted against the Debtors or their respective estates.  The Debtors, on behalf of themselves and their respective estates, expressly reserve their right to contest any claim under bankruptcy law and applicable non-bankruptcy law.

## WAIVER OF ANY APPLICABLE STAY

38.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above,

the relief that the Debtors seek herein is necessary for the Debtors to administer claims in an

efficient and expeditious manner, and the Debtors' estates will benefit if they can immediately

begin resolving claims as described above.  Accordingly, the Debtors respectfully request that

the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it

applies.

## NOTICE

39.     Notice of this Motion has been provided to (i) the Office of the United States

Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel for Silver Point

Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit

Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its

capacity as administrative agent under the Debtors' Amended and Restated Loan and Security

Agreement; (v) counsel to the agents under the Debtors' debtor-in-possession financing

facilities; and (vi) all parties that have filed a notice of appearance and request for service of

papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein,

the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

01:17143052.1

WHEREFORE, the Debtors respectfully request the Court to grant the relief requested

herein and such other and further relief as the Court may deem just and proper.

Dated: May 27, 2015
Wilmington, Delaware

    */s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
mrosenthal@gibsondunn.com
rklyman@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

01:17143052.1