# EXHIBIT B

12/22/2014 3:59:42 PM
Amalia Rodriguez-Mendoza
District Clerk
Travis County
D-1-GN-14-005362

CAUSE NO. D-1-GN-1-4-005362

| | | |
|---|---|---|
| CHAOTIC MOON, LLC, <br> PLAINTIFF, | § § § § | IN THE DISTRICT COURT |
| vs. | § § | |
| THE STANDARD REGISTER COMPANY, <br> DEFENDANT. | § § § § | TRAVIS COUNTY, TEXAS <br> 126TH _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff Chaotic Moon, LLC files this Original Petition complaining of The Standard Register Company as follows:

#### I. DISCOVERY CONTROL PLAN

1. Pursuant to Rule 190, Texas Rules of Civil Procedure, Plaintiff alleges that discovery is intended to be conducted under Level 3.

#### II. PARTIES

2. Plaintiff Chaotic Moon, LLC ("Chaotic Moon") is a Delaware limited liability company duly authorized to conduct business in the State of Texas.

3. Defendant The Standard Register Company ("SRC") is an Ohio corporation and may be served with citation by serving its registered agent, CT Corporation Systems, Inc. at its registered address, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

#### III. JURISDICTION AND VENUE

4. This Court has *in personam* jurisdiction over Defendant because Defendant engaged in business in Texas specifically relating to the agreements at issue. Further, the negotiation of the agreements at issue occurred, in large part, in Texas. A substantial portion of the services to be performed in the agreements at issue were to be performed in Texas.

5. The Court has subject matter jurisdiction because the damages sought are of an amount within the jurisdictional limits of the Court.

6. Pursuant to Texas Rule of Civil Procedure 47(c), at this early stage in the litigation, Plaintiff affirmatively pleads that it seeks monetary relief over $200,000 but not more than $1,000,000.

7. Venue of this cause is proper in Travis County, Texas because a substantial part of the transactions and occurrences made the basis hereof occurred in Travis County.

## IV. FACTUAL BACKGROUND

8. In March of 2014, Chaotic Moon and SRC entered into that certain Master Services Agreement (the "MSA"), whereby Chaotic Moon agreed to provide professional services and related work to SRC in connection with the development of a custom software application that would enable SRC's customers to order items directly from SRC's warehouse. The terms of each phase of this project were to be governed by subsequently negotiated statements of work ("SOW") which were to be deemed incorporated into the MSA.

9. Chaotic Moon and SRC entered into a Statement of Work dated April 15, 2014 ("SOW #1") whereby Chaotic Moon was to conduct a preliminary requirements analysis, and develop an overview, timeline, and budget for the development project in exchange for $50,000. Chaotic Moon completed this phase of the project and received the $50,000 payment from SRC.

10. Thereafter, Chaotic Moon and SRC entered into a second Statement of Work dated April 22, 2015 ("SOW #2") whereby Chaotic Moon would complete the second, "discovery and definition" phase of the development project. Pursuant to SOW #2, SRC was to pay Chaotic Moon $170,000 in two installments: (1) $85,000 upon execution of SOW #2, and (2) $85,000 upon acceptance of the related work. Under SOW #2, SRC agreed, among other

things, to provide a single stakeholder for questions, decisions, and approvals and to respond to Chaotic Moon's questions within two business days. SRC paid the initial $85,000 installment, and Chaotic Moon proceeded to move ahead with the project.

11. As Chaotic Moon's work for phase two neared completion, SRC and Chaotic Moon negotiated a third Statement of Work ("SOW #3") which was to govern Chaotic Moon's development of the software application system. Under SOW #3, the development period was to last six months, from July 1 to December 31, 2014. SRC was to pay Chaotic Moon a development fee, not to exceed $2,330,000, payable as follows: (1) $388,400 upon execution of SOW #3, (2) additional milestone payments totaling $1,941,600 per a schedule to be agreed upon by the parties, and (3) reimbursement for reasonable, actual travel and living expenses incurred in connection with the project. SOW #3 was eventually executed on or about June 17, 2014, after Chaotic Moon completed its work under SOW #2, but prior to having received the final $85,000 payment under SOW #2. SRC paid Chaotic Moon the $388,400 initial payment owed under SOW #3.

12. Despite the fact that discord within SRC related to the project frustrated Chaotic Moon's efforts to perform, Chaotic Moon continued to meet its obligations under SOW #3. Although SOW #3 (like SOW #2) required SRC to cooperate with Chaotic Moon to accomplish the project, by mid-August 2013, SRC ultimately refused to commit to a final scope or project plan and failed to provide a single contact for questions, decisions and approvals, as expressly required under SOW #3. SRC's breaches of its contractual obligations rendered it impossible for Chaotic Moon to fully perform as contemplated under SOW #3. In September of 2014, SRC terminated the MSA and then refused to pay Chaotic Moon: (1) the final $85,000 payment owed

3

under SOW #2, and (2) over $750,000 owed for the materials, services and expenses that Chaotic Moon performed and incurred under SOW #3.

## V. CAUSES OF ACTION

### A. BREACH OF CONTRACT

13. SRC's conduct as described in detail above constitutes breaches of the MSA, as supplemented by SOW #2 and SOW #3. These breaches have resulted in damages to Chaotic Moon in excess of the jurisdictional limits of this Court for which Chaotic Moon sues herein.

### B. QUANTUM MERUIT

14. Chaotic Moon alternatively seeks to recover the reasonable value of the materials and services that Chaotic Moon provided to SRC to the extent not encompassed by the parties' express contract.

### C. ATTORNEYS' FEES

15. Chaotic Moon is entitled to and seeks an award for its reasonable costs and attorneys' fees incurred herein pursuant to the prevailing party provision in the MSA, including conditional awards in the event of appeal.

## VI. REQUEST FOR DISCLOSURE

16. Pursuant to the provisions of TEX. R. CIV. P. 194, SRC is requested to disclose, within fifty (50) days of service of this request, the information and material described in TEX. R. CIV. P. 194.2 (a) – (l).

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Chaotic Moon respectfully requests that SRC be cited to appear and answer herein, and that on final trial hereof, Chaotic Moon have and recover judgment against SRC:

a. awarding Chaotic Moon's damages as a result of SRC's breach of contract;

b. alternatively, awarding Chaotic Moon judgment for the reasonable value of Chaotic Moon's materials and services as requested herein;

c. awarding Chaotic Moon its reasonable costs and attorneys' fees, including conditional awards in the event of appeal;

d. awarding Chaotic Moon pre and post-judgment interest;

d. awarding Chaotic Moon its costs of court; and

e. awarding Chaotic Moon such other and further relief, at law or in equity, to which may show itself to be justly entitled.

Respectfully submitted,

FRITZ, BYRNE, HEAD & HARRISON, PLLC
98 San Jacinto Boulevard, Suite 2000
Austin, Texas 78701
Telephone: (512) 476-2020
Telecopy: (512) 477-5267

By: /s/ Daniel H. Byrne
Daniel H. Byrne
Texas Bar No. 0356560
dbyrne@fbhh.com
Lessie Gilstrap Fitzpatrick
Texas Bar No. 24012630
lfitzpatrick@fbhh.com

ATTORNEYS FOR PLAINTIFF