# EXHIBIT A

# SOURCING AND PRICING AGREEMENT

This is an Agreement ("Agreement") between ISG Acquisition Corp. with its principal place of business at Miami Valley Research Park, One Reynolds Way, Kettering, Ohio 45430 ("ISG") and The Reynolds and Reynolds Company, 115 South Ludlow Street, Dayton, Ohio 45402 ("Reynolds") dated the 4th day of August, 2000 ("Effective Date"). This Agreement includes all exhibits ("Exhibits") and any addenda which have been signed by authorized representatives of both parties. "Seller" means both ISG and Reynolds and "Buyer" means both ISG and Reynolds, depending upon which party is providing Products (as defined below).

The parties agree as follows:

1. **PRODUCTS SUPPLIED AND MANAGED.** The products ("Products") to be supplied under this Agreement are described in the Products and Services Exhibit ("Products and Services Exhibit") then in effect. Products may be added to or deleted from the Products and Services Exhibit by a written document signed by authorized representatives of ISG and Reynolds. Also, for Products provided by ISG to Reynolds in the United States ("U.S. Products"), the ISG Sourcing Program ("Program") will assist Reynolds in the acquisition, shipment, ordering, use and storage of Products (the "Services").

2. **DUTIES OF SELLER**

   Seller will:

   A. provide services to Reynolds in accordance with the Program as specified in the Products and Services Exhibit (for U.S. Products only);

   B. assign a suitable number of Seller's representatives to oversee the provision of Products and Services; and

   C. manufacture or otherwise supply Products ordered by Buyer's signed or confirmed electronically transmitted purchase orders or Low Stock Notices ("LSNs") the acceptance of which has been confirmed by Seller.

3. **DUTIES OF BUYER**

   Buyer will:

   A. supply appropriate data to Seller for the provision of Products or Services;

   B. designate an employee to serve as forms administrator who shall: i) assist in the coordination of the relationship between the parties and ii) authorize the creation, modification, manufacture, and distribution of Products;

   C. permit Seller's representatives commercially reasonable access to Buyer's facilities and to Buyer's representatives who are responsible for provision of Products or Services; and

   D. pay, when due, all invoices for Products and services ordered by Buyer and provided by Seller.

4. **STORAGE AND DISTRIBUTION.** All U.S. Products will be stored for Reynolds in an ISG or ISG-designated distribution center ("Distribution Center"). When requisitioned, Products will be delivered to Reynolds' locations according to the Distribution Schedule in the Products and Services Exhibit.

5. **ORDERS AND QUANTITIES**

   A. Seller will manufacture or provide the quantity of each Product mutually agreed upon.

   B. Before manufacture or supply, Buyer shall approve in writing (purchase order or LSN) or by suitable electronic confirmation the order quantity for each Product.

   C. In case of a conflict between the terms of any Buyer-supplied document and this Agreement, the terms of this Agreement shall take precedence.

   D. Agreement on Product freight charges shall be shown in the Products and Services Exhibit.

6. **INITIAL INVENTORY TRANSFERS AND REYNOLDS-SUPPLIED INVENTORY.** At Reynolds' option, ISG will move Reynolds' existing inventory of printed forms to an ISG Distribution Center for inclusion in the Program. In addition, ISG will accept delivery (freight prepaid) of Reynolds' supplied inventory for storage at an ISG Distribution Center for inclusion in the Program.

7. **OBSOLETE INVENTORY.** If Reynolds declares any Product in the Program to be obsolete, ISG shall destroy such Product and invoice Reynolds for the charges related to such destruction.

8. **INVOICING, PAYMENT, TAXES**

   A. For U.S. products in the Program, ISG shall invoice Reynolds according to the Invoicing and Payment Terms in the Products and Services Exhibit.

   B. Buyer shall make payment for all invoices within the time limits contained in the Product and Services Exhibit; however, in the event of a dispute as to the propriety of the amount invoiced, Buyer shall pay all undisputed amounts, but shall be entitled to withhold payment of any amount in dispute (and shall not be obligated to pay interest on the amount so withheld) and shall notify Seller within ten (10) business days from receipt of any disputed invoice of the disputed amount and the reasons each such charge is disputed by Buyer. Seller shall provide to Buyer, or shall cause its subsidiaries to so provide, records relating to the disputed amount so as to enable the parties to resolve the dispute. The parties shall use reasonable efforts to resolve any such dispute promptly.

   C. Buyer will reimburse Seller for all sales taxes paid by Seller for Products and services provided to Buyer. If Buyer is exempt from sales tax, Buyer shall deliver to Seller the appropriate exemption certificate(s).

9. **TITLE.** Title to all Products passes to Reynolds when the Products arrive at the ISG Distribution Center (for Products under the Program) and upon shipment by Seller (for all other Products).

10. **RISK OF LOSS.** Reynolds assumes risk of loss for all Products when they arrive at the ISG Distribution Center for Products provided under the Program and F.O.B. Seller's dock for all other Products. ISG shall procure insurance on behalf of Reynolds, the cost of which shall be included in the pricing as stated in the Products and Services Exhibit for Products provided under the Program. ISG shall be designated as loss payee and all insurance proceeds shall be paid to ISG as compensation for replacing such damaged or destroyed Products under the Program.

11. **WARRANTY; ACCEPTANCE; DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY**

    A. Seller warrants that all Products manufactured or provided by Seller shall be free from defects in material and workmanship and that printed forms shall meet any mutually agreed to specifications. If Products do not conform to this limited warranty, Seller's sole obligation and Buyer's sole remedy will be the substitution of conforming Products.

    B. EXCEPT AS STATED IN PARAGRAPH 13A, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR WARRANTY AGAINST INFRINGEMENT. IN ADDITION, SELLER MAKES NO WARRANTY AS TO THE LEGAL SUFFICIENCY OF PRINTED FORMS.

    C. IN NO EVENT SHALL SELLER BE LIABLE TO BUYER OR TO ANY THIRD PARTY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, EVEN IF SELLER IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL SELLER BE LIABLE FOR ACTUAL DAMAGES OR LOSSES IN EXCESS OF THE FULL AMOUNT PAID BY BUYER TO SELLER FOR THE PRODUCTION ORDER FOR THAT PARTICULAR PRODUCT.

12. **TERM AND TERMINATION OF AGREEMENT**

    A. This Agreement is in effect from the Effective Date until it is terminated according to this Paragraph 14. The Initial term ("Initial Term") begins on the Effective Date and continues for the length of any Initial Term stated in the Products and Services Exhibit. During the Initial Term, ISG will be the exclusive provider to Reynolds of the Products and Services listed in the Products and Services Exhibit. After the Initial Term, the Agreement shall automatically renew for twelve month periods ("Renewal Term"). Either party may terminate as a Buyer or as a Seller under this Agreement, effective on the expiration of the Initial Term or any Renewal Term, without cause and without any surcharge, by giving the other party at least ninety (90) days prior written notice.

    B. If either party defaults on any of its material obligations under this Agreement, the non-defaulting party must give the other written notice specifying the default and stating its intention to terminate if the default is not cured. If the defaulting party has failed to begin good faith efforts to cure the default within thirty (30) days after such notice, the other party may immediately terminate this Agreement.

    C. Under the Program, payment arrangement at termination of contract for final shipment is due prior to Product being shipped.

13. **NOTICES.** All notices to ISG shall be sent to: ISG Acquisition Corp., Miami Valley Research Park, One Reynolds Way, Kettering, Ohio 45430, Attention: Legal Department. All notices to Reynolds shall be sent to: 115 South Ludlow Street, Dayton, Ohio 45402, Attention: Legal Department. All notices shall be deemed given when received via certified or registered mail postage prepaid or a receipted delivery service.

14. **MISCELLANEOUS**

    A. If any dispute occurs between the parties arising out of or related to this Agreement, it shall be decided according to the laws of the State of Ohio, where applicable.

    B. This Agreement will work to the benefit of and be binding upon the parties, their successors and assigns; provided, however, that Buyer may not assign this Agreement without the express written consent of Seller, which consent will not be unreasonably withheld.

C. Buyer may not terminate this Agreement or cancel the provision of any Products or service during the Initial Term.

D. Each party acknowledges that it has read this Agreement and agrees to be bound by its terms. This is the complete and exclusive agreement and understanding between the parties concerning the subject matter of this Agreement which supersedes all prior understandings, negotiations and proposals, oral or written. No modification, amendment, waiver, consent or discharge in connection with this Agreement will be binding unless it is in writing and signed by the party against whom enforcement is sought.

E. If any provision of this Agreement should, for any reason, be held invalid or unenforceable under the laws of any State or of the United States, the remainder of the Agreement shall not be affected. Instead, this Agreement shall be construed as if such invalid provision was not part of the Agreement.

F. Seller will not be deemed to be in default of or to have breached any provision of this Agreement because of any delay, failure in performance or interruption of service, resulting directly or indirectly from acts of God, acts of civil or military authorities, civil disturbances, wars, strikes or other labor disputes, fires, interruptions of transportation, laws, regulations, acts or orders of any government or agency, other catastrophes, inability to obtain material or any other occurrence beyond Seller's reasonable control.

G. Artwork and composition, unless provided by Buyer, shall remain the property of Seller.

H. Seller reserves the right to publish and promote information on all service offerings either previously utilized, currently supporting, or available to Seller.

I. During the term of this Agreement, Seller may issue press releases regarding the relationship between ISG and Reynolds, use Buyer's name in Seller lists and describe the formation of this Agreement or the existence of the relationship between the parties for purposes related to the investment community and in documents designed generally for internal use.

J. In case of any conflict between the Exhibits and the body of this Agreement, the terms of the Exhibits will control.

Signed and accepted as of the Effective Date by the authorized representatives of the parties:

ACCEPTED:

ISG ACQUISITION CORP.

By: _____

Joseph E. Lipscomb
Print Name

Vice President
Print Title

THE REYNOLDS AND REYNOLDS COMPANY

By: _____

Dale L. Medford
Print Name

Corporate Vice President Finance
Print Title

# SOURCING AND PRICING AGREEMENT
# PRODUCTS AND SERVICES EXHIBIT

1. **TERM**

   Length of Initial Term is five (5) years for Reynolds' purchases from ISG, except for the Newark, Ohio Production, for which the Initial Term is only one (1) year.

2. **PRODUCTS**

   The Products to be supplied and included in the Program shall be all printed materials including the following:

   <u>PRODUCTS – ISG PRODUCTS FOR REYNOLDS</u>

   *Production for five (5) year Period*

   Orangeville plant in Canada: Production of business forms, continuous, snap sets and cut sheet

   Celina, Ohio: Production of Wilmer-related Products, special process and envelopes

   Tulare warehouse in Tulare, California: Pick-pack distribution services – Order entry and computer services are provided by Reynolds through Reynolds' Avalon system.

   *Production for one (1) year Period (unless a shorter Period is mutually agreed-to by the parties)*

   Newark, Ohio: Production of High color printed rolls both process and nonprocess printing. Primarily for the CMS division of Reynolds.

   *Production that may be terminated by Reynolds with thirty (30) days written notice*

   Philadelphia: Pick-pack distribution services using ISG systems

   Columbus warehouse in Columbus, Ohio: Pick-pack distribution services using ISG systems (notwithstanding anything herein to the contrary, there is no Initial Term for these Products):
   Auto-Nations – regular pick-pack distribution services
   Chase – flow racked pick-pack distribution services
   Production of Manuals on the Didgital Imaging equipment

   <u>PRODUCTS – REYNOLDS PRODUCTS FOR ISG</u>

   Celina, Ohio: Production of wide-bodied financial statements, specialty Wilmer forms and imprints – At fully burdened facility cost divided by .85; however, gross profit (as described in Section 3 below) will not be included in the prices for these Products until after ISG vacates its use of the Celina, Ohio facility under the Transition Services Agreement among Reynolds, ISG and the other party thereto dated as of the date hereof.

3. **PRICING OF PRODUCTION AND SERVICES**

Products ISG produces for Reynolds: Pricing for products manufactured under this Agreement in the United States is to be priced at fully burdened facility or plant cost[1] divided by .85 to yield a 15% gross profit (or X .1765).

Pricing for products manufactured under this Agreement in Canada, is to be priced at fully burdened facility or plant cost divided by .88 to yield a 12% gross profit (or X .1364).

Pricing for Services is as follows:

<u>Production for five (5) year Period</u>

Tulare warehouse in Tulare, California:

| Per Requisition | Price to Reynolds $3.55 |
| Per Line | Price to Reynolds $1.29 |
| Per Carton, per Month | Price to Reynolds $.23 |

<u>Production that may be terminated by Reynolds with thirty (30) days written notice</u>

Columbus warehouse in Columbus, Ohio:

•Auto-Nations
| Per Requisition | Cost $6.10 | Price to Reynolds $7.18 |
| Per Line | Cost $3.06 | Price to Reynolds $3.60 |
| Per Carton, per Month | Cost $.39 | Price to Reynolds $.46 |

•Chase
| Per Requisition | Cost $3.27 | Price to Reynolds $3.85 |
| Per Line | Cost $1.60 | Price to Reynolds $1.88 |
| Per Carton, per Month | Cost $.21 | Price to Reynolds and Reynolds $.25 |

Production of Manuals on the Digital Imaging equipment – See attached Docutech price list

•Philadelphia
| Per Requisition | Cost $6.10 | Price to Reynolds $7.18 |
| Per Line | Cost $2.25 | Price to Reynolds $2.62 |
| Per Carton, per Month | Cost $.39 | Price to Reynolds $.46 |

## PRODUCTS – REYNOLDS PRODUCTS FOR ISG

Celina, Ohio: Production of business forms, continuous, snap sets and flat forms principally using specialized equipment - At fully burdened facility cost divided by .85

## ESCALATION

Prices may be increased once per year on the anniversary of the Agreement. At any increase, the compound cumulative price increase from the start of the Agreement may not exceed the compound cumulative increase of the costs. The calculation is based on two components:

---

[1] Plant cost is defined as follows: fully burdened costs including material, variable production cost (direct labor and variable overhead costs), fixed overhead costs (includes rent, production supervision, depreciation, repairs, etc.), variable distribution costs (cost of freight to ship product to customer), distribution costs (plant shipping) and plant manufacturing G&A (plant management, order entry, customer service, plant inventory control, plant HR functions, etc).

1. Paper – to be net of all rebates and discounts
2. Non-paper – increase are not to exceed the CPI increase

A thirty (30) day written notice shall be provided for all price increases.

Audit – Either party may have an independent auditor review all calculations once per year to verify they are correct.

4. INVOICING AND PAYMENT TERMS

   **MONTHLY BILLING** means that Buyer receives invoice(s) once per month as of a billing cut off date. Such invoice(s) covers all Products shipped to the Buyer and all services and charges billable through the billing cut-off date.

   Monthly Billing invoices are due and payable within thirty (30) days of the date of invoices.

Signed and accepted as of the Effective Date by the authorized representatives of the parties.

ACCEPTED:

| ISG ACQUISITION CORP. | THE REYNOLDS AND REYNOLDS COMPANY |
|---|---|
| By: _____ | By: _____ |
| Print Name / Date | Print Name / Date |
| Print Title | Print Title |

06/20/05  15:39 FAX 19374858490          EXECUTIVE ADMIN                    ☒001

## FIRST AMENDMENT TO SOURCING AND PRICING AGREEMENT

THIS FIRST AMENDMENT TO SOURCING AND PRICING AGREEMENT ("this Amendment"] is being made and entered into as of August 3, 2005 (the "Amendment Effective Date"), by and between THE RELIZON COMPANY (formerly known as ISG Acquisition Corp.), a Delaware corporation ("Relizon"), and THE REYNOLDS AND REYNOLDS COMPANY, an Ohio corporation ("Reynolds"), under the following circumstances:

    A. Relizon and Reynolds are the parties to a certain Sourcing and Pricing Agreement dated the 4th day of August, 2000 (the "Agreement"). All capitalized terms used but not otherwise defined in this Amendment have the same respective meanings in this Amendment as are ascribed to such terms in the Agreement.

    B. The parties desire and intend hereby to amend the Agreement as set forth hereinafter, upon the terms and conditions set forth hereinafter.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants set forth hereinafter, the parties, intending to be legally bound, hereby agree as follows:

    1. <u>Amendment of the Agreement</u>. The Agreement is amended as follows;

        (a) All references in the Agreement to the defined term "ISG" are changed to "Relizon".

        (b) The length of the Initial Term with respect to, and only with respect to, the Tulare warehouse is extended from five (5) years to seven (7) years.

        (c) In Section 3 of the Products and Services Exhibit to the Agreement, the pricing regarding the Tulare warehouse is changed as follows: (i) from $3.55 to $3.41 per requisition; (ii) from $1.29 to $1.25 per line; and (iii) from $.23 to $.21 per carton, per month. Relizon may also charge Reynolds, with respect to the Tulare warehouse, the "Special Charges" shown on the attachment hereto. Furthermore, Relizon may, upon not less than sixty (60) days prior written notice to Reynolds, and then only upon Relizon's furnishing Reynolds with appropriate supporting documentation, assess Reynolds an ongoing incremental monthly $.02 per carton storage charge for all non-commercial (i.e., not customer-owned) Reynolds inventory that is stored at the Tulare warehouse and remains inactive for at least 12 months. None of the pricing or other charges set forth in

this paragraph may be increased during the Initial Term, except, however, that Relizon reserves the right to pass through to Reynolds any increases in the aforementioned "Special Charges" imposed by Relizon's third-party providers.

(d) Other than as specifically set forth in Section 1(c) of this Amendment with respect to the Tulare warehouse, none of the pricing set forth in Section 3 of the Products and Services Exhibit to the Agreement is in effect any longer, and all such pricing will hereafter be as mutually agreed upon by the parties.

(e) In the penultimate line of Section 12.A of the Agreement, "ninety (90)" is changed to "one hundred twenty (120)".

(f) If either party terminates the Agreement with respect to the Tulare warehouse pursuant to the last sentence of Section 12.A of the Agreement, then Reynolds may extend the effective date of termination for up to six (6) months to allow Reynolds to transition its business elsewhere.

(g) While the Agreement remains in effect with respect to the Tulare warehouse, Relizon may not directly solicit the business of, or directly sell any products to, any automotive retailers located in the States of Arizona, California, Colorado, Nevada, Oregon or Washington and, with respect to indirect sales, Relizon will not engage in any marketing campaigns or promotions that are designed specifically to target automotive retailers located in such States.

(h) Both during and after the Initial Term and any Renewal Term under the Agreement, and with respect to information provided or developed during the course of performance of Services or providing Products, including but not limited to customer names and contact information and Product and Service pricing and purchase volumes, each party will use reasonable efforts, but in any event no less efforts than it uses to protect its own information of a similar nature, to safeguard such information and will use such information solely for purposes of performing its obligations under the Agreement, as mended by this Amendment.

(i) Relizon's notice address in Section 13 of the Agreement is changed to 220 East Monument Avenue, Dayton, Ohio 45402; and Reynolds' notice address in Section 13 of the Agreement is changed to One Reynolds Way, Kettering, Ohio 45430.

2. Affirmation. The Agreement, as amended by this Amendment, is affirmed in all respects.

3. Integration; Modification. This Amendment contains the entire understanding between the parties with respect to its subject matter; and this Amendment may not be amended,

canceled or superseded, nor will any provision of this Amendment be deemed wived, except by a written instrument executed by each of the parties to be charged.

4. <u>Binding Effect</u>. This Amendment will be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

5. <u>Counterparts; Faxed Signatures</u>. This instrument may be executed in counterparts, each of which will be deemed an original, but all of which, when taken together, will constitute one and the same Amendment. A faxed signature on this instrument will have the same legal force and effect as though it were the original of such signature.

IN WITNESS WHEREOF, the parties have executed this instrument to become effective as of the Amendment Effective Date.

THE RELIZON COMPANY

By *[signature: Timothy J. Keenan]*
Name:
Title:

THE REYNOLDS AND REYNOLDS COMPANY

By
Name:
Title:

*Relizon - 070803*

## SECOND AMENDMENT TO SOURCING AND PRICING AGREEMENT

THIS SECOND AMENDMENT TO SOURCING AND PRICING AGREEMENT ("this Amendment") is being made and entered into as of August 3, 2007 (the "Amendment Effective Date"), by and between THE RELIZON COMPANY (a WorkflowOne company), a Delaware corporation ("WorkflowOne"), and THE REYNOLDS AND REYNOLDS COMPANY, an Ohio corporation ("Reynolds"), under the following circumstances:

    A. WorkflowOne and Reynolds are the parties to a certain Sourcing and Pricing Agreement dated the 4th day of August, 2000, as amended by a certain First Amendment to Sourcing and Pricing Agreement dated August 3, 2005 (the said Sourcing and Pricing Agreement, as amended by the said First Amendment to Sourcing and Pricing Agreement, being hereinafter referred to as the "Agreement"). All capitalized terms used but not otherwise defined in this Amendment have the same respective meanings in this Amendment as are ascribed to such terms in the Agreement.

    B. The parties desire and intend hereby to amend the Agreement as set forth hereinafter, upon the terms and conditions set forth hereinafter.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants set forth hereinafter, the parties, intending to be legally bound, hereby agree as follows:

1. <u>Amendment of the Agreement</u>. The Agreement is amended as follows:

    (a) All references in the Agreement to the defined term "Relizon" are changed to "WorkflowOne".

    (b) All references in the Agreement to "Tulare" are changed to "Visalia".

    (c) The length of the Initial Term with respect to, and only with respect to, the Visalia warehouse is extended from seven (7) years to twelve (12) years.

    (d) In Section 12.A of the Agreement, the last sentence shall be revised to the following with respect to, and only with respect to, the Visalia warehouse:

In years nine (9) through the end of the Initial Term, either party may terminate this Agreement, without cause and without any surcharge or other penalty, upon at least six (6) months prior written notice to the other party.

    (e) In Section 3 of the Products and Services Exhibit to the Agreement, the pricing regarding the Visalia warehouse is changed as follows:

    (i) from $3.41 to $3.478 per requisition;
    (ii) from $1.25 to $1.275 per line; and
    (iii) from $.21 to $.2142 per carton, per month.
    (iv) WorkflowOne may also charge Reynolds, with respect to the Visalia warehouse, the "Special Charges" shown on Attachment A attached hereto.

    (f) Other than as specifically set forth in Section 1(e) of this Amendment with respect to the Visalia warehouse, none of the pricing set forth in Section 3 of the Products and Services Exhibit to the Agreement is in effect any longer.

    (g) In Section 3 of the Products and Services Exhibit to the Agreement, the escalation regarding the Visalia warehouse is changed as follows:

Prices will increase to the rates as outlined in Section 1(e) above as of the Amendment Effective Date. These prices will be held firm for a period of three (3) years. Thereafter, WorkflowOne may increase pricing based on the Bureau of Labor Statistics Producer Price Index; Sub-category: "General Warehousing and Storage". The price increase will be a cumulative change in this index for the previous three years (2007-2009). A sample of this index is attached hereto as Attachment B.

    2. <u>Affirmation</u>. The Agreement, as amended by this Amendment, is affirmed in all respects.

    3. <u>Integration; Modification</u>. This Amendment contains the entire understanding between the parties with respect to its subject matter; and this Amendment may not be amended, canceled or superseded, nor will any provision of this Amendment be deemed waived, except by a written instrument executed by each of the parties to be charged.

    4. <u>Binding Effect</u>. This Amendment will be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

5. <u>Counterparts; Faxed Signatures</u>. This instrument may be executed in counterparts, each of which will be deemed an original, but all of which, when taken together, will constitute one and the same Amendment. A faxed signature on this instrument will have the same legal force and effect as though it were the original of such signature.

IN WITNESS WHEREOF, the parties have executed this instrument to become effective as of the Amendment Effective Date.

**Approved as to Form**

*[signature] MB 11/16/07*

**Legal Department**

THE RELIZON COMPANY

By _[signature] 11/20/07_
Name: _Jerome Doubler_
Title: _CFO_

THE REYNOLDS AND REYNOLDS COMPANY

By _[signature]_
Name: _Jerry Kirwan_
Title: _SVP Reynolds + Reynolds_

Attachment A

# REYNOLDS & REYNOLDS
## PRICING AND BILLING STRUCTURE

| STANDARD SERVICE FEE COMPONENT (UNIT) | PRICE/UNIT |
|---|---|
| CARTON CHARGE / STORAGE CHARGE (PER CARTON) (# LOC X 20 CARTONS) | $0.2142 |
| REQUISITION CHARGE (PER REQ) | $3.478 |
| LINE CHARGE (PER LINE) | $1.275 |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| LAW CENTRAL SPECIAL CARTON CHARGES (PER CARTON) | $1.00 |
| RETURN / RESTOCKING CHARGE - PKG GOODS (PER RETURN) | $10.00 |
| RETURNS / RESTOCKING CHARGE - COMML STORAGE (PER RETURN) | $10.00 |
| SPECIAL HANDLING REQUESTS (PER REQUEST) | $25.00 |
| FREIGHT BILLING (PER MANUAL BILLING) | $5.00 |
| AVALON PACK LIST (PER REQUISITION) | $0.02 |
| NEOPOST SHIPPING LABEL (PER CARTON) | $0.03 |
| FLYER INSERTION (X2) (2 TOUCHES PER INSERT) | $0.05 |

Attachment B

## Producer Price Index - General warehousing and Storage

**12 Months Percent Change**

Series Id: PCU4931104931101
Industry: General warehousing and storage
Product: General warehousing and storage
Base Date: 9306



| Year | Annual |
|---|---|
| 1997 | -0.4 |
| 1998 | 1.2 |
| 1999 | 1.6 |
| 2000 | 0.6 |
| 2001 | 0.6 |
| 2002 | 1.2 |
| 2003 | 1.7 |
| 2004 | 0.5 |
| 2005 | 0.7 |
| 2006 | 2.3 |

## THIRD AMENDMENT TO SOURCING AND PRICING AGREEMENT

THIS THIRD AMENDMENT TO SOURCING AND PRICING AGREEMENT ("this Amendment") is being made and entered into as of August 3, 2012 (the "Amendment Effective Date"), by and between WORKFLOWONE LLC, as assignee from The Relizon Company, a Delaware limited liability company ("WorkflowOne"), and THE REYNOLDS AND REYNOLDS COMPANY, an Ohio corporation ("Reynolds"), under the following circumstances:

> A. WorkflowOne and Reynolds are the parties to a certain Sourcing and Pricing Agreement dated the 4th day of August, 2000, as amended by a certain First Amendment to Sourcing and Pricing Agreement dated August 3, 2005, and by a certain Second Amendment to Sourcing and Pricing Agreement dated August 3, 2007 (the said Sourcing and Pricing Agreement, as amended by the said First and Second Amendments to the Sourcing and Pricing Agreement, hereinafter referred to as the "Agreement"). All capitalized terms used but not otherwise defined in this Amendment have the same respective meanings in this Amendment as are ascribed to such terms in the Agreement.
>
> B. The parties desire and intend hereby to amend the Agreement as set forth hereinafter, upon the terms and conditions set forth hereinafter.

NOW, THEREFORE, inconsideration of the premises and of the mutual covenants set forth hereinafter, the parties, intending to be legally bound, herby agree as follows:

1. <u>Amendment of the Agreement</u>. The Agreement is amended as follows:

    (a) All references in the Agreement to "Visalia" are changed to "Ontario".

    (b) The length of the Initial Term with respect to, and only with respect to, the Ontario warehouse is extended from twelve (12) years to seventeen (17) years.

    (c) In Section 3 of the Products and Services Exhibit to the Agreement, the escalation regarding the Ontario warehouse is changed as follows:

Prices shall remain fixed for a period of five (5) years (years 13 through 17 of the Initial Term). Thereafter, WorkflowOne may change pricing once annually based on the bureau of Labor Statistics Producer Price Index; Sub-category: "General Warehousing and Storage". Any price increase shall be limited to the change in this index for the year prior to the price change. A sample of this index is attached hereto as Attachment A (previously Attachment B of the Second Amendment to the Agreement).

    (d) In Section 12 of the Agreement, add paragraph D as follows:

Reynolds may terminate the Agreement at any time, without cause and without surcharge, by providing at least thirty (30) days prior written notice in the event of (i) regulatory changes (e.g. State, Federal, etc.) that negatively impact Reynolds business associated with the warehousing and distribution services provided by the Ontario, CA, warehouse, or (ii) WorkflowOne's insolvency or filing of bankruptcy.

(e) Add Section 15 to the Agreement as follows:

RESPECT FOR EMPLOYEES. Each party acknowledges and agrees that the other party's personnel have been acquired and trained by their employer at considerable expense. Throughout the term and for a period of one (1) year following the expiration or termination of this Agreement, neither party shall knowingly solicit for employment or employ any employee of the other party until the expiration of one (1) year following such employee's termination of employment with a party. This provision in no way limits an employee's right to respond to an open posting for positions available within the other party, and such party's right to hire said employee without penalty as a result of the posting; however, in the event that a Reynolds Integrated Document Solutions ("IDS") forms division employee responds to any such position posting from WorkflowOne, prior to positively responding to said IDS employee's inquiry, WorkflowOne must first notify IDS and receive written permission to pursue said employee from an authorized representative of IDS. Such permission, at the sole discretion of IDS, shall not be unreasonably withheld. If either party fails to abide by the restrictions contained herein, then the violating party agrees to pay to the affected party a placement fee of one hundred fifty percent (150%) of the former employee's total gross earnings during the employee's last twelve (12) months of employment by the other party, which shall be paid within ten (10) days of validation by the parties.

2. <u>Affirmation</u>. The Agreement, as amended by this Amendment, is affirmed in all respects.

3. <u>Integration; Modification</u>. This Amendment contains the entire understanding between the parties with respect to its subject matter; and this Amendment may not be amended, cancelled or superseded, nor will any provision of this Amendment be deemed waived, except by a written instrument executed by each of the parties to be charged.

4. <u>Binding Effect</u>. This Amendment will be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

5. <u>Counterparts; Faxed Signatures</u>. This instrument may be executed in counterparts, each of which will be deemed an original, but all of which, when taken together, will constitute one and the same Amendment. A faxed signature on this instrument will have the same legal force and effect as though it were the original of such signature.

IN WITNESS WHEREOF, the parties have executed this instrument to become effective as of the Amendment Effective Date.

| WORKFLOWONE LLC | THE REYNOLDS AND REYNOLDS COMPANY |
|---|---|
| By: _[signature]_ 7/11/12 | By: _[signature]_ |
| Name: THOMAS J KOEHL | Name: JERRY KIRWAN |
| Title: VICE-PRESIDENT + CFO | Title: SVP Reynolds + Reynolds |

[Stamp: WORKFLOWONE APPROVED AS TO FORM LEGAL DEPT. DB/SY 7-11-12]

Attachment A

## Producer Price Index - General warehousing and Storage

**12 Months Percent Change**

Series Id: PCU4931104931101
Industry: General warehousing and storage
Product: General warehousing and storage
Base Date: 9306



| Year | Annual |
|------|--------|
| 1997 | -0.4 |
| 1998 | 1.2 |
| 1999 | 1.6 |
| 2000 | 0.6 |
| 2001 | 0.6 |
| 2002 | 1.2 |
| 2003 | 1.7 |
| 2004 | 0.5 |
| 2005 | 0.7 |
| 2006 | 2.3 |