UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| The Standard Register Company, *et al.*,[1] | ) Case No. 15-10541-BLS |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Related Docket No. 23** |
| | ) **Hearing: June 17, 2015, at 10:00 a.m. (ET)** |

**LIMITED OBJECTION
AND RESERVATION OF RIGHTS OF INTERNATIONAL PAPER CORPORATION
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) APPROVING
ASSET PURCHASE AGREEMENT AND (C) GRANTING RELATED RELIEF**

International Paper Corporation ("IP"), a creditor in the above-captioned jointly administered bankruptcy cases, by and through its undersigned counsel, files this Limited Objection and Reservation of Rights ("Objection") to the relief requested in Motion filed by the above-captioned debtors (the "Debtors") to authorize the sale of substantially all of the Debtors' assets, in order to preserve its secured claim and setoff rights that IP has with respect to certain trade credits owed by IP to the Debtors, which cannot be sold free and clear of liens, claims and encumbrances, absent the Debtors remitting payment to IP in full to release its setoff and recoupment claims. In support of this Objection, IP avers as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

7806426/

## BACKGROUND

1. Prior to March 12, 2015 (the "Petition Date"), IP sold goods to – and separately bought goods from - the Debtors. In connection with goods sold by IP to the Debtors, the Debtors would receive certain rebates depending upon the amount of goods purchased.

2. On the Petition Date, the Debtors and certain of their affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code.

3. On the Petition Date, the Debtors filed a Motion for (I) an Order (A) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Approving Bid Protections; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (E) Scheduling a Hearing to Consider the Proposed Sale; and (F) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale [Docket No. 23] (the "Sale Motion").

4. By the Sale Motion, the Debtors intend to sell substantially all of their assets free and clear of liens, claims, and encumbrances, including rights of setoff. *See* Sale Motion at 14, 26–27; D.I. 276 at 1–2, ¶ 2. Specifically, by the Sale Motion and the Stalking Horse APA, the Debtors seek to sell the Transferred Assets (as defined in section 2.1 of the Stalking Horse APA), which includes all accounts receivable, notes receivable and other receivables due to the Debtors (section 2.1 (d) of the Stalking Horse APA) and all credits, prepaid expenses, security deposits,

other deposits, refunds, prepaid assets or charges, rebates, setoffs, and loss carryforwards of the Debtors (section 2.1 (q) of the Stalking Horse APA).

5. In sections 3.4(b) and 5.12 of the Stalking Horse APA, the Debtors acknowledge and agree that the sale shall "free and clear of all obligations, Liabilities and Encumbrances (other than Lease Encumbrances) to the fullest extent permitted by Section 363 of the Bankruptcy Code." The terms "Liabilities" and "Encumbrances" are broadly defined.[2]

6. The proposed order to approve the sale, contains the following provisions:

> The Buyers would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated hereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances and the Assumed Liabilities), including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if the Buyers would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances, and the Assumed Liabilities). The Buyers will not consummate the transactions contemplated by the Stalking Horse APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Buyers, their affiliates, their present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability.

Proposed Order, ¶ T.

---

[2] "Liability" means any debt, loss, claim, damage, demand, fine, judgment, penalty, liability or obligation (whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due). Stalking Horse APA at 7. "Encumbrance" means any charge, claim, mortgage, lien, encumbrance, option, pledge, security interest or other restriction of any kind. *Id.* at 4.

7806426/

3

Pursuant to 11 U.S.C. § 363(b), the sale of the Transferred Assets to the Buyers free and clear of all obligations and Encumbrances (except Permitted Encumbrances and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

Proposed Order, ¶ 4.

7. On April 15, 2015, the Court entered an Order (I) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (II) Approving the Maximum Reimbursement Amount; (III) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (V) Scheduling a Hearing to Consider the Proposed Sale; and (VI) Granting Certain Related Relief [Docket No. 286].

8. On or about May 15, 2015, IP filed a proof of claim in the Debtor's bankruptcy case. By the proof of claim, IP asserts a proof of claim in the amount of $116,481.56 (the "Claim Amount") which is comprised of (i) $114,995.83 for goods sold and delivered to Standard Register Company during the twenty (20) days immediately prior to the Petition Date and (ii) $1,485.73 unearned discounts taken by the Debtors.[3] Upon information and belief, IP was obligated to the Debtors in an amount equal to or greater than the Claim Amount based upon rebates to which the Debtors were entitled and for goods sold and delivered by the Debtors to IP prior to the Petition Date, subject to proof by the Debtors of claims against IP.

---

[3] If the Debtors do not have a claim against IP in at least the Claim Amount, IP is entitled to a priority claim of $114,995.83 pursuant to Section 503(b)(9) of the Bankruptcy Code.

7806426/

## BASIS FOR LIMITED OBJECTION SOUGHT

9. IP objects to the Sale Motion to the extent that it attempts to impair or affect, in any manner, IP's rights of setoff and recoupment. Further, IP objects to the sale free and clear of IP's secured claim without providing adequate protection to IP.

## BASIS FOR DENIAL OF RELIEF

10. "In general, the right of setoff allows parties who owe mutual debts to each other to assert the amounts owed on these debts, subtract one from the other, and then pay only the balance." *In re Johnson*, 215 B.R. 381, 385 (N.D. Ill. 1997) (citations omitted). "Recoupment 'allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim'" *Kosadnar v. Metropolitan Life Ins. Co. (In re Kosadnar)*, 157 F.3d 1011 (5th Cir. 1998).

11. Section 506 of the Bankruptcy Code provides, in relevant part, as follows:

(a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, **or that is subject to setoff under section 553 of this title**, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

12. The Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor . . . against a claim of such creditor against the debtor." 11 U.S.C. § 553. IP has not yet set off the amounts that IP owes the Debtors against amounts the Debtors owe IP. Accordingly, IP has a secured claim against the Debtors.

7806426/

5

13. Section 365(e) of the Bankruptcy Code prohibits the Debtors from selling their assets free and clear of IP's security interest absent satisfying IP's secured claim, providing adequate protection to IP on account of IP's security interest, or IP's giving consent to the sale free and clear of its interests. IP does not consent to the elimination of its secured setoff claim without receipt of payment in full or the Debtors providing to IP adequate protection.

14. Further, the Debtors cannot sell free and clear of IP's recoupment rights, which IP expressly reserves and preserves. See, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252 (3d Cir. 2000) (holding that assets cannot be sold free and clear of defenses, including recoupment).

### Reservation of Rights

15. IP reserves the right (a) to amend, supplement, or otherwise modify this Limited Objection as necessary or proper; (b) to raise such other and further objections to the Proposed Sale Order or any sale of any of the Debtors' assets.

WHEREFORE, IP respectfully requests that the Court (i) sustain IP's Limited Objection; (ii) deny the Sale Motion to the extent that it attempts to impair or affect, in any manner, IP's rights to setoff and recoupment as it would violate Sections 363, 506, and 553 of the Bankruptcy

7806426/

Code; and (iii) grant to IP such other and further relief as is just and proper.

Dated:   June 1, 2015                    MORRIS JAMES LLP

                                         /s/ Jeffrey R. Waxman
                                         _____
                                         Jeffrey R. Waxman (Bar No. 4159)
                                         Eric J. Monzo (Bar No. 5214)
                                         500 Delaware Avenue, Suite 1500
                                         Wilmington, Delaware 19801-1494
                                         Telephone: (302) 888-6800

                                         Counsel for International Paper Corporation

7806426/