**EXHIBIT C**

Mortgage for York County, Pennsylvania Property

(Copy attached)

Prepared by and Record and Return to:
Winston & Strawn LLP
101 California Street, 39th Floor
San Francisco, California 94111
Attention: Loren Kessler Higgins, Esq.

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
36000LI0001B000000    MANCH TP
 YCGIS REGISTRY 08/13/2013 BY JV
```

325 Busser Road
Manchester Township
York, PA
Parcel # 36-000-LI-0001-B0-00000

File# 130425PHI

WORKFLOWONE LLC,

Mortgagor,

to

BANK OF AMERICA, N.A.,

as Administrative Agent,
Mortgagee

---

THIRD LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

---

Dated as of August 1, 2013

This instrument affects certain real and personal property
located in York County,
Commonwealth of Pennsylvania.

SF:359320.2

BOASRC 001346

TABLE OF CONTENTS

Page

ARTICLE I  COVENANTS AND AGREEMENTS OF THE MORTGAGOR..............................4

    SECTION 1.1.    Payment of Obligations..........................................................4

    SECTION 1.2.    Title to Collateral, etc ..........................................................5

    SECTION 1.3.    Title Insurance. ...................................................................5

    SECTION 1.4.    Recordation .........................................................................5

    SECTION 1.5.    Payment of Impositions, etc.................................................6

    SECTION 1.6.    Leases..................................................................................6

    SECTION 1.7.    Compliance with Instruments ..............................................6

    SECTION 1.8.    Alterations, Additions, etc ...................................................6

    SECTION 1.9.    Acquired Property Subject to Lien .......................................6

    SECTION 1.10.   Assignment of Rents, Proceeds, etc......................................7

    SECTION 1.11.   No Claims Against the Mortgagee.........................................7

    SECTION 1.12.   No Transfer of the Property .................................................8

    SECTION 1.13.   Security Agreement .............................................................8

    SECTION 1.14.   Representations and Warranties............................................9

    SECTION 1.15.   Mortgagor's Covenants........................................................9

ARTICLE II  INSURANCE .............................................................................................9

    SECTION 2.1.    Application of Proceeds and Awards....................................9

ARTICLE III  EVENTS OF DEFAULT; REMEDIES, ETC. ...........................................9

    SECTION 3.1.    Events of Default; Acceleration............................................9

    SECTION 3.2.    Legal Proceedings; Foreclosure ...........................................9

    SECTION 3.3.    [Intentionally Omitted/POWER OF SALE PROVISION, IF
                    APPLICABLE]. ..................................................................10

    SECTION 3.4.    Uniform Commercial Code Remedies.................................10

    SECTION 3.5.    Mortgagee Authorized to Execute Deeds, etc......................10

    SECTION 3.6.    Purchase of Collateral by Mortgagee...................................10

    SECTION 3.7.    Receipt a Sufficient Discharge to Purchaser........................11

    SECTION 3.8.    Waiver of Appraisement, Valuation, etc..............................11

    SECTION 3.9.    Sale a Bar Against Mortgagor.............................................11

    SECTION 3.10.   Obligations To Become Due on Sale...................................11

BOASRC 001347

SECTION 3.11.    Application of Proceeds of Sale and Other Moneys ............................ 11

SECTION 3.12.    Appointment of Receiver ................................................................. 12

SECTION 3.13.    Possession, Management and Income ............................................... 12

SECTION 3.14.    Right of Mortgagee to Perform Mortgagor's Covenants, etc ............. 12

SECTION 3.15.    Subrogation ..................................................................................... 12

SECTION 3.16.    Remedies, etc., Cumulative ............................................................. 13

SECTION 3.17.    Provisions Subject to Applicable Law ............................................... 13

SECTION 3.18.    No Waiver, etc ................................................................................ 13

SECTION 3.19.    Compromise of Actions, etc ............................................................ 14

ARTICLE IV  DEFINITIONS ................................................................................... 14

SECTION 4.1.    Use of Defined Terms ..................................................................... 14

SECTION 4.2.    Credit Agreement Definitions ........................................................... 14

ARTICLE V  MISCELLANEOUS .............................................................................. 14

SECTION 5.1.    Further Assurances; Financing Statements. ........................................ 14

SECTION 5.2.    Additional Security ......................................................................... 15

SECTION 5.3.    Release; Partial Release, etc. ............................................................ 15

SECTION 5.4.    Notices, etc..................................................................................... 15

SECTION 5.5.    Waivers, Amendments, etc ............................................................... 15

SECTION 5.6.    Cross-References ............................................................................. 16

SECTION 5.7.    Headings ........................................................................................ 16

SECTION 5.8.    Currency......................................................................................... 16

SECTION 5.9.    Governing Law ............................................................................... 16

SECTION 5.10.    Successors and Assigns, etc ............................................................. 16

SECTION 5.11.    Waiver of Jury Trial; Submission to Jurisdiction. .............................. 16

SECTION 5.12.    Severability .................................................................................... 17

SECTION 5.13.    Loan Document............................................................................... 17

SECTION 5.14.    Usury Savings Clause ...................................................................... 17

SECTION 5.15.    State Specific Provisions.................................................................. 17

SECTION 5.16.    Intercreditor Agreements ................................................................ 18

EXECUTION PAGE

Schedule 1 - Legal Description of the Land

Schedule 2 - Permitted Encumbrances

Schedule 3 – Leases

SF:359320.2

BOASRC 001348

## THIRD LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIRD LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING, dated as of August 1, 2013 (this "Mortgage"), made by each of WORKFLOWONE LLC, a Delaware limited liability company (the "Mortgagor"), having an address at 220 East Monument Avenue, Dayton, OH 45402, to BANK OF AMERICA, N.A., having an address at 300 Galleria Parkway, Suite 800, Atlanta, Georgia 30339, as the Administrative Agent under the Credit Agreement referred to below (together with its successors and assigns from time to time acting as Administrative Agent under such Credit Agreement, the "Mortgagee").

### WITNESSETH THAT:

WHEREAS, the Mortgagor is on the date of delivery hereof the owner of fee title to the parcel of land described in Schedule 1 hereto (the "Land") and of the Improvements (such term and other capitalized terms used in this Mortgage having the respective meanings specified or referred to in Article IV);

WHEREAS, pursuant to the terms, conditions and provisions of the Amended and Restated Loan and Security Agreement, dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among the Mortgagor and the other Persons party thereto as "Borrowers" (collectively, "Borrowers"), the various financial institutions and other Persons from time to time parties thereto as "Lenders" (the "Lenders"), and the Mortgagee, as Administrative Agent for the Lenders, pursuant to which the Lenders have made and may in the future make, revolving loans and advances and other financial accommodations, to the Borrowers in the aggregate principal amount of One Hundred Twenty Five Million Dollars ($125,000,000.00) (collectively, the "Loans"), upon the terms and subject to the conditions set forth in the Credit Agreement, and all as more fully described in the Credit Agreement;

WHEREAS, this Mortgage is being given by Mortgagee to secure (a) the payment of the Loans and all other monetary obligations of Borrowers arising under the Credit Agreement, this Mortgage and the other Loan Documents and (b) the performance of all other terms, covenants, conditions, provisions, agreements and liabilities contained in the Credit Agreement, this Mortgage and the other Loan Documents (the foregoing, collectively, the "Obligations");

WHEREAS, in confirmation and furtherance of the foregoing, this Mortgage also secures the payment of all Future Advances, as defined herein, which form a part of the Obligations; and

WHEREAS, the Mortgagor has duly authorized the execution, delivery and performance of this Mortgage.

### GRANT:

NOW, THEREFORE, for and in consideration of the premises, and of the mutual covenants herein contained, and in order to induce the Lenders to make the Loans and other

SF:359320.2

financial accommodations available to Borrowers under the Credit Agreement, and in order to secure the full, timely and proper payment and performance of and compliance with each and every one of the Loans and the other Obligations, the Mortgagor hereby irrevocably grants, bargains, sells, mortgages, warrants, aliens, demises, releases, hypothecates, pledges, assigns, transfers and conveys to the Mortgagee and its successors and assigns, forever, all of the Mortgagor's right, title and interest in and to the following (the "Collateral"):

      (a)   Real Estate. All of the Land and estates therein now owned or hereafter acquired by the Mortgagor for use or development with the Land or any portion thereof, together with all and singular the tenements, rights, easements, hereditaments, rights of way, privileges, liberties, appendages and appurtenances now or hereafter belonging or in any way pertaining to the Land and such estates therein (including, without limitation, all rights relating to storm and sanitary sewer, water, gas, electric, railway and telephone services); all development rights, air rights, riparian rights, water, water rights, water stock, all rights in, to and with respect to any and all oil, gas, coal, minerals and other substances of any kind or character underlying or relating to the Land and such estates therein and any interest therein; all estate, claim, demand, right, title or interest of the Mortgagor in and to any street, road, highway or alley, vacated or other, adjoining the Land or any part thereof and such estates therein; all strips and gores belonging, adjacent or pertaining to the Land or such estates; and any after-acquired title to any of the foregoing (herein collectively referred to as the "Real Estate");

      (b)   Improvements. All buildings, structures and other improvements and any additions and alterations thereto or replacements thereof, now or hereafter built, constructed or located upon the Real Estate; and, to the extent that any of the following items of property constitutes fixtures under applicable laws, all of the Mortgagor's right, title and interest in and to all furnishings, fixtures, fittings, appliances, apparatus, equipment, machinery, building and construction materials and other articles of every kind and nature whatsoever and all replacements thereof, now or hereafter affixed or attached to, placed upon or used in any way in connection with the complete and comfortable use, enjoyment, occupation, operation, development and/or maintenance of the Real Estate or such buildings, structures and other. improvements, including, but not limited to, partitions, furnaces, boilers, oil burners, radiators and piping, plumbing and bathroom fixtures, refrigeration, heating, ventilating, air conditioning and sprinkler systems, other fire prevention and extinguishing apparatus and materials, vacuum cleaning systems, gas and electric fixtures, incinerators, compactors, elevators, engines, motors, generators and all other articles of property which are considered fixtures under applicable law (such buildings, structures and other improvements and such other property are herein collectively referred to as the "Improvements"; the Real Estate and the Improvements are herein collectively referred to as the "Property");

      (c)   Goods. All of the Mortgagor's right, title and interest in and to building materials, goods, construction materials, appliances (including, without limitation, stoves, ranges, ovens, disposals, refrigerators, water fountains and coolers, fans, heaters, dishwashers, clothes washers and dryers, water heaters, hood and fan combinations, kitchen equipment, laundry equipment, kitchen cabinets and other similar equipment), stocks, beds, mattresses, bedding an linens, supplies, blinds, window shades, drapes,

SF:359320.2

BOASRC 001350

carpets, floor coverings, manufacturing equipment and machinery, office equipment, growing plants and shrubberies, control devices, equipment (including window cleaning, building cleaning, swimming pool, recreational, monitoring, garbage, pest control and other equipment), motor vehicles, tools, furnishings, furniture, lighting, non-structural additions to the Real Estate and Improvements and all other tangible property of any kind or character, together with all replacements thereof, now or hereafter located on or in or used or useful in connection with the complete and comfortable use, enjoyment, occupation, operation, development and/or maintenance of the Property, regardless of whether or not located on or in the Property or located elsewhere for purposes of storage, fabrication or otherwise (herein collectively referred to as the "Goods");

(d)     Intangibles. All of the Mortgagor's right, title and interest in and to goodwill, trademarks, trade names, option rights, purchase contracts, real and personal property tax refunds, books and records and general intangibles of the Mortgagor relating to the Property and all accounts, contract rights, instruments, chattel paper and other rights of the Mortgagor for the payment of money for property sold or lent, for services rendered, for money lent, or for advances or deposits made, and any other intangible property of the Mortgagor relating to the Property (herein collectively referred to as the "Intangibles");

(e)     Leases. All rights of the Mortgagor in, to and under all leases, licenses, occupancy agreements, concessions and other arrangements, oral or written, now existing or hereafter entered into, whereby any Person agrees to pay money or any other consideration for the use, possession or occupancy of, or any estate in, the Property or any portion thereof or interest therein (herein collectively referred to as the "Leases"), and the right, subject to applicable law, upon the occurrence of any Event of Default hereunder, to receive and collect the Rents (as hereinafter defined) paid or payable thereunder;

(f)     Plans. All rights of the Mortgagor in and to all plans and specifications, designs, drawings and other information, materials and matters heretofore or hereafter prepared relating to the Improvements or any construction on the Real Estate (herein collectively referred to as the "Plans");

(g)     Permits. All rights of the Mortgagor, to the extent assignable, in, to and under all permits, franchises, licenses, approvals and other authorizations respecting the use, occupation and operation of the Property and every part thereof and respecting any business or other activity conducted on or from the Property, and any product or proceed thereof or therefrom, including, without limitation, all building permits, certificates of occupancy and other licenses, permits and approvals issued by governmental authorities having jurisdiction (herein collectively referred to as the "Permits");

(h)     Contracts. All right, title and interest of the Mortgagor in and to all agreements, contracts, certificates, instruments, warranties, appraisals, engineering, environmental, soils, insurance and other reports and studies, books, records, correspondence, files and advertising materials, and other documents, now or hereafter obtained or entered into, as the case may be, pertaining to the construction, use,

3

BOASRC 001351

occupancy, possession, operation, management, leasing, maintenance and/or ownership of the Property and all right, title and interest of the Mortgagor therein (herein collectively referred to as the "Contracts");

(i)     Leases of Furniture, Furnishings and Equipment. All right, title and interest of the Mortgagor as lessee in, to and under any leases of furniture, furnishings, equipment and any other Goods now or hereafter installed in or at any time used in connection with the Property;

(j)     Rents. All rents, issues, profits, royalties, avails, income and other benefits derived or owned, directly or indirectly, by the Mortgagor from the Property, including, without limitation, all rents and other consideration payable by tenants, claims against guarantors, and any cash or other securities deposited to secure performance by tenants, under the Leases (herein collectively referred to as "Rents");

(k)     Proceeds. All proceeds of the conversion, voluntary or involuntary of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards (herein collectively referred to as "Proceeds"); and

(l)     Other Property. All other property and rights of the Mortgagor of every kind and character relating to the Property, and all proceeds and products of any of the foregoing;

AND, without limiting any of the other provisions of this Mortgage, the Mortgagor expressly grants to the Mortgagee, as secured party, a security interest in all of those portions of the Collateral which are or may be subject to the Uniform Commercial Code provisions applicable to secured transactions in the Commonwealth of Pennsylvania (the "State");

TO HAVE AND TO HOLD the Collateral unto the Mortgagee, its successors and assigns, forever, subject to and in accordance with the terms and conditions hereof and of the Loan Documents.

PROVIDED, HOWEVER, that if all sums due or to become due under the Loan Documents shall have been paid at the time and in the manner stipulated therein and all other indebtedness secured hereby shall have been paid and all other covenants contained in the Loan Documents shall have been performed, then, in such case, this Mortgage shall be satisfied and the estate, right, title and interest of Mortgagee in the Collateral shall cease, and Mortgagee shall release this Mortgage and the lien hereof by proper instrument.

FURTHER to secure the full, timely and proper payment and performance of the Obligations, the Mortgagor hereby covenants and agrees with and warrants to the Mortgagee as follows:

## ARTICLE I

## COVENANTS AND AGREEMENTS OF THE MORTGAGOR

SECTION 1.1.    Payment of Obligations. The Mortgagor agrees that:

4

SF:359320.2

BOASRC 001352

SECTION 1.1.1    it will duly and punctually pay and perform or cause to be paid and performed each of the Obligations at the time and in accordance with the terms of the Loan Documents (subject to any notice, grace and cure periods in the Loan Documents), and

SECTION 1.1.2    when and as due and payable from time to time in accordance with the terms hereof or of any other Loan Documents, pay and perform, or cause to be paid and performed, all other Obligations (subject to any notice, grace and cure periods in the Loan Documents).

SECTION 1.2.   Title to Collateral, etc.  The Mortgagor represents and warrants to and covenants with the Mortgagee that:

SECTION 1.2.1    as of the date hereof and at all times hereafter while this Mortgage is outstanding (subject to the terms of the Loan Documents), the Mortgagor has and shall have good and marketable title in fee simple absolute to the Property, subject in each case only to this Mortgage, the liens expressly permitted pursuant to the terms of the Credit Agreement or the other Loan Documents and the encumbrances set forth in Schedule 2 hereto (collectively, the "Permitted Encumbrances"); and

SECTION 1.2.2    the Mortgagor, at its expense, will warrant and defend to the Mortgagee and any purchaser under the power of sale herein or at any foreclosure sale such title to the Collateral and the first mortgage lien and first priority perfected security interest of this Mortgage thereon and therein against all claims and demands and will maintain, preserve and protect such lien and security interest and will keep this Mortgage a valid, direct first mortgage lien of record on and a first priority perfected security interest in the Collateral, subject only to the Permitted Encumbrances and any Liens permitted under the Credit Agreement.

SECTION 1.3.   Title Insurance.

SECTION 1.3.1    Title Insurance Policy.  Concurrently with the execution and delivery of this Mortgage, the Mortgagor, at its expense, has obtained and delivered to the Mortgagee a loan policy or policies of title insurance in an amount, and in form and substance, reasonably satisfactory to the Mortgagee naming the Mortgagee as the insured, insuring the title to and the first mortgage lien of this Mortgage on the Property (subject to the Permitted Encumbrances), with endorsements reasonably requested by the Mortgagee and in accordance with the Credit Agreement. The Mortgagor has duly paid in full all premiums and other charges due in connection with the issuance of such policy or policies of title insurance.

SECTION 1.3.2    Title Insurance Proceeds.  All proceeds received by and payable to the Mortgagee for any loss under the loan policy or policies of title insurance delivered to the Mortgagee pursuant to Section 1.3.1, or under any policy or policies of title insurance delivered to the Mortgagee in substitution therefor or replacement thereof, shall be the property of the Mortgagee and shall be applied by the Mortgagee in accordance with the provisions of Section 2.1.

SECTION 1.4.   Recordation.  The Mortgagor, at its expense, will at all times cause this Mortgage and any instruments amendatory hereof or supplemental hereto (and any appropriate financing statements or other instruments and continuations thereof), and each other instrument

5

BOASRC 001353

delivered in connection with the Credit Agreement or any other Loan Document and intended thereunder to be recorded, registered and filed, to be kept recorded, registered and filed, in such manner and in such places, and will pay all such recording, registration, filing fees, taxes and other charges, and will comply with all such statutes and regulations as may be required by law in order to establish, preserve, perfect and protect the lien and security interest of this Mortgage as a valid, direct first mortgage lien and first priority perfected security interest in the Collateral, subject only to the Permitted Encumbrances. The Mortgagor will pay or cause to be paid, all taxes (including interest and penalties) at any time payable in connection with the filing and recording of this Mortgage and any and all supplements and amendments hereto.

SECTION 1.5.  Payment of Impositions, etc.  The Mortgagor will pay or cause to be paid all taxes, assessments and governmental charges which may become a lien on the Property or which are assessed against or imposed upon the Property (collectively, the "Impositions") in accordance with the Credit Agreement provided that Mortgagor may contest the same in good faith.

SECTION 1.6.  Leases.  Except as provided in Schedule 3, the Mortgagor represents and warrants to the Mortgagee that, as of the date hereof, there are no written or oral leases or other agreements of any kind or nature relating to the occupancy of any portion of the Property by any Person other than the Mortgagor.

SECTION 1.7.  Compliance with Instruments.  The Mortgagor at its expense will promptly comply in all material respects with all rights of way or use, privileges, franchises, servitudes, licenses, easements, tenements, hereditaments and appurtenances forming a part of the Property and all instruments creating or evidencing the same, in each case, to the extent compliance therewith is required of the Mortgagor under the terms thereof, provided that the Mortgagor may contest the same in good faith.

SECTION 1.8.  Alterations, Additions, etc.  So long as no Event of Default shall be continuing, the Mortgagor shall have the right at any time and from time to time to make or cause to be made reasonable alterations of and additions to the Property or any part thereof, provided that any alteration or addition: (a) shall not materially reduce the fair market value thereof below its value immediately before such alteration or addition, or materially impair the usefulness of the Property; (b) is effected with due diligence, in a good and workmanlike manner and in compliance with all material laws and material applicable insurance policies; and (c) is promptly and fully paid for, or caused to be paid for, by the Mortgagor.

SECTION 1.9.  Acquired Property Subject to Lien.  All property acquired by the Mortgagor with respect to the Property while this Mortgage continues in effect and provided or required by this Mortgage to be or become subject to the lien and security interest hereof, whether such property is acquired by exchange, purchase, construction or otherwise, shall forthwith become subject to the lien and security interest of this Mortgage without further action on the part of the Mortgagor or the Mortgagee. The Mortgagor, at its expense, will execute and deliver to the Mortgagee (and will record and file as provided in Section 1.4) an instrument supplemental to this Mortgage reasonably satisfactory in substance and form to the Mortgagee, whenever such an instrument is necessary under applicable law to subject to the lien and security

6

BOASRC 001354

interest of this Mortgage all right, title and interest of the Mortgagor in and to all property provided or required by this Mortgage to be subject to the lien and security interest hereof.

SECTION 1.10. <u>Assignment of Rents, Proceeds, etc.</u>  Subject to the terms of the Credit Agreement, the assignment, grant and conveyance of the Leases, Rents, Proceeds and other rents, income, proceeds and benefits of the Collateral contained in the Granting Clause of this Mortgage shall constitute an absolute, present and irrevocable assignment, grant and conveyance, provided, however, that permission is hereby given to the Mortgagor, so long as no Event of Default is continuing hereunder, to collect, receive and apply such Rents, Proceeds and other rents, income, proceeds and benefits as they become due and payable, but not in advance thereof, and in accordance with all of the other terms, conditions and provisions hereof, of the Loan Documents, and of the Leases, contracts, agreements and other instruments with respect to which such payments are made or such other benefits are conferred. During the continuation of an Event of Default and until such Event of Default is cured to Mortgagee's reasonable satisfaction, such permission shall terminate immediately and automatically, without notice to the Mortgagor or any other Person except as required by law. Such assignment shall be fully effective without any further action on the part of the Mortgagor or the Mortgagee and the Mortgagee shall be entitled, at its option, during the continuation of an Event of Default hereunder, to collect, receive and apply all Rents, Proceeds and all other rents, income, proceeds and benefits from the Collateral, including all right, title and interest of the Mortgagor in any escrowed sums or deposits or any portion thereof or interest therein, whether or not the Mortgagee takes possession of the Collateral or any part thereof. The Mortgagor further grants to the Mortgagee the right, at the Mortgagee's option, during the continuation of an Event of Default hereunder, to:

(a)    enter upon and take possession of the Property for the purpose of collecting Rents, Proceeds and said rents, income, proceeds and other benefits;

(b)    dispossess by the customary summary proceedings any tenant, purchaser or other Person defaulting in the payment of any amount when and as due and payable, or in the performance of any other obligation, under any Lease, contract or other instrument to which said Rents, Proceeds or other rents, income, proceeds or benefits relate;

(c)    let or convey the Collateral or any portion thereof or any interest therein; and

(d)    apply Rents, Proceeds and such rents, income, proceeds and other benefits, after the payment of all necessary fees, charges and expenses, on account of the Obligations in accordance with <u>Section 3.11.</u>

SECTION 1.11. <u>No Claims Against the Mortgagee.</u>  Nothing contained in this Mortgage shall constitute any consent or request by the Mortgagee, express or implied, for the performance of any labor or the furnishing of any materials or other property in respect of the Property or any part thereof, or be construed to permit the making of any claim against the Mortgagee in respect of labor or services or the furnishing of any materials or other property or any claim that any lien based on the performance of such labor or the furnishing of any such materials or other property is prior to the lien and security interest of this Mortgage.  All contractors, subcontractors, vendors

7

BOASRC 001355

and other persons dealing with the Property, or with any persons interested therein, are hereby required to take notice of the provisions of this Section.

SECTION 1.12. <u>No Transfer of the Property.</u>  Except as permitted by the Credit Agreement or the other Loan Documents, the Mortgagor shall not, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the sole and absolute discretion of the Mortgagee, (i) sell, convey, assign or otherwise transfer the Property or any portion of the Mortgagor's interest therein or (ii) further encumber the Property or permit the Property to become encumbered by any lien, claim, security interest or other indebtedness of any kind or nature other than the Permitted Encumbrances, or as may outstanding or secure the obligations under that certain First Lien Credit Agreement and that certain Second Lien Credit Agreement, each dated the date hereof.

SECTION 1.13. <u>Security Agreement.</u>  With respect to the items of personal property and fixtures referred to and described in the Granting Clause of this Mortgage and included as part of the Collateral, this Mortgage is hereby made and declared to be a security agreement encumbering each and every item of personal property and fixtures now or hereafter owned by Mortgagor and included herein as a part of the Collateral, in compliance with the provisions of the Uniform Commercial Code as enacted in the State. In this respect, Mortgagor, as "Debtor", expressly grants to Mortgagee, as "Secured Party", a security interest in and to all of the property now or hereafter owned by Mortgagor which constitutes the personal property and fixtures hereinabove referred to and described in this Mortgage as "Collateral", including all extensions, accessions, additions, improvements, betterments, renewals, replacements and substitutions thereof or thereto, and all proceeds from the sale or other disposition thereof. Mortgagor agrees that Mortgagee may file this Mortgage, or a reproduction thereof, in the real estate records or other appropriate index, as, and this Mortgage shall be deemed to be, a financing statement filed as a fixture filing in accordance with Article 9 of the Uniform Commercial Code. Any reproduction of this Mortgage or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Mortgagor agrees to execute and deliver to Mortgagee, upon Mortgagee's request, any other security agreement and financing statements, as well as extensions, renewals, and amendments thereof, and reproductions of this Mortgage, as Mortgagee may reasonably require, in such form as Mortgagee may require to perfect a security interest with respect to said items. Mortgagor shall pay all reasonable costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may reasonably require. Except as permitted by the Credit Agreement, without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in the above-described personal property and fixtures, including any replacements and additions thereto. Upon the occurrence and during the continuance of an Event of Default under this Mortgage, the Mortgagee shall have and shall be entitled to exercise any and all of the rights and remedies (i) as prescribed in this Mortgage, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory provisions now or hereafter enacted and specified in said Uniform Commercial Code, all at Mortgagee's sole election. Mortgagor and Mortgagee agree that the filing of any financing statements in the records normally having to do with personal property shall not in any way affect the agreement of Mortgagor and Mortgagee that everything located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of, the Collateral, which is

8

SF:359320.2

described or reflected as a fixture in this Mortgage, is, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be, regarded as part of the Real Estate conveyed hereby. Mortgagor warrants that Mortgagor's name, identity and address are as set forth herein. The mailing address of the Mortgagee from which information may be obtained concerning the security interest created herein is also set forth herein. This information hereof is provided in order that this Mortgage shall comply with the requirements of the Uniform Commercial Code as enacted in the Commonwealth of Pennsylvania for instruments to be filed as financing statements. In accordance with the Uniform Commercial Code, this Mortgage shall remain effective as a fixture filing until this Mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the Collateral.

SECTION 1.14. <u>Representations and Warranties.</u> In order to induce the Mortgagee to enter into this Mortgage, the Credit Agreement and the other Loan Documents, the Mortgagor agrees that all of the representations and warranties relating to the Collateral and Mortgagor set forth in the Credit Agreement are incorporated into this Mortgage by reference as if fully set forth herein.

SECTION 1.15. <u>Mortgagor's Covenants.</u> In order to induce the Mortgagee to enter into this Mortgage, the Credit Agreement and the other Loan Documents, the Mortgagor agrees that all of the covenants relating to the Collateral and Mortgagor set forth in the Credit Agreement are incorporated into this Mortgage by reference as if fully set forth herein.

ARTICLE II

INSURANCE

SECTION 2.1.   Application of Proceeds and Awards.   Subject to the terms of the Credit Agreement, the Mortgagee shall be entitled to receive any proceeds of insurance as provided in the Credit Agreement, and the Mortgagee shall apply all amounts recovered under any insurance policy required to be maintained by the Mortgagor and all awards received by it on account of any taking in accordance with the Credit Agreement.

ARTICLE III

EVENTS OF DEFAULT; REMEDIES, ETC.

SECTION 3.1.   Events of Default; Acceleration.  If an "Event of Default" (pursuant to and as defined in the Credit Agreement, and subject to applicable notice, grace and cure periods in the Loan Documents) shall have occurred and be continuing, then and in any such event the Mortgagee may at any time thereafter (unless all Events of Default shall theretofore have been remedied and all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and expenses incurred by or on behalf of the Mortgagee, shall have been paid in full by the Mortgagor) declare, by written notice to the Mortgagor, the Loans and all other Obligations to be due and payable immediately or on a date specified in such notice (provided that, upon the occurrence of any Event of Default described in Section 11.1.10 of the Credit Agreement, the Loans and all other Obligations shall automatically become due and payable), and on such date the same shall be and become due and payable, together with interest accrued

9

SF:359320.2

Inst. # 2013046021 - Page 13 of 31

thereon, without further presentment, demand, protest or notice, all of which the Mortgagor hereby waives. Subject to the terms of the Credit Agreement, the Mortgagor will pay on demand all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred by or on behalf of the Mortgagee in enforcing this Mortgage, or any other Loan Document, or occasioned by any Event of Default.

SECTION 3.2.    Legal Proceedings; Foreclosure.  If an Event of Default shall have occurred and be continuing, the Mortgagee at any time may, at its election, proceed at law or in equity or otherwise to enforce the payment and performance of the Obligations in accordance with the terms hereof and thereof and to foreclose the lien of this Mortgage as against all or any part of the Collateral and to have the same sold under the judgment or decree of a court of competent jurisdiction. The Mortgagee shall be entitled to recover in such proceedings all reasonable costs incident thereto, including reasonable attorneys' fees and expenses in such amounts as may be fixed by the court.

SECTION 3.3.    [Intentionally Omitted].

SECTION 3.4.    Uniform Commercial Code Remedies.  If an Event of Default shall be continuing, the Mortgagee may exercise from time to time and at any time any rights and remedies available to it under applicable law upon default in the payment of indebtedness, including, without limitation, any right or remedy available to it as a secured party under the Uniform Commercial Code of the State. The Mortgagor shall, promptly upon request by the Mortgagee, assemble the Collateral, or any portion thereof generally described in such request, and make it available to the Mortgagee at such place or places designated by the Mortgagee and reasonably convenient to the Mortgagee or the Mortgagor. If the Mortgagee elects to proceed under the Uniform Commercial Code of the State to dispose of portions of the Collateral, the Mortgagee, at its option, may give the Mortgagor notice of the time and place of any public sale of any such property, or of the date after which any private sale or other disposition thereof is to be made, by sending notice by registered or certified first class mail, postage prepaid, to the Mortgagor at least ten (10) days before the time of the sale or other disposition. If any notice of any proposed sale, assignment or transfer by the Mortgagee of any portion of the Collateral or any interest therein is required by law, the Mortgagor conclusively agrees that ten (10) days notice to the Mortgagor of the date, time and place (and, in the case of a private sale, the terms) thereof is reasonable.

SECTION 3.5.    Mortgagee Authorized to Execute Deeds, etc.  The Mortgagor irrevocably appoints the Mortgagee (which appointment is coupled with an interest) the true and lawful attorney of the Mortgagor, in its name and stead and on its behalf, solely for the purpose of effectuating any sale, assignment, transfer or delivery for the enforcement hereof, whether pursuant to power of sale, foreclosure or otherwise, to, during the continuance of any Event of Default, execute and deliver all such deeds, bills of sale, assignments, releases and other instruments as may be designated in any such request.

SECTION 3.6.    Purchase of Collateral by Mortgagee.  The Mortgagee may be a purchaser of the Collateral or of any part thereof or of any interest therein at any sale thereof, whether pursuant to power of sale, foreclosure or otherwise, and the Mortgagee may apply upon the purchase price thereof the indebtedness secured hereby owing to the Mortgagee. Such

10

BOASRC 001358

purchaser shall, upon any such purchase, acquire good title to the properties so purchased, free of the security interest and lien of this Mortgage and free of all rights of redemption in the Mortgagor.

SECTION 3.7.  Receipt a Sufficient Discharge to Purchaser.  Upon any sale of the Collateral or any part thereof or any interest therein, whether pursuant to power of sale, foreclosure or otherwise, the receipt of the Mortgagee or the officer making the sale under judicial proceedings shall be a sufficient discharge to the purchaser for the purchase money, and such purchaser shall not be obliged to see to the application thereof.

SECTION 3.8.  Waiver of Appraisement, Valuation, etc.  The Mortgagor hereby waives, to the fullest extent it may lawfully do so, the benefit of all appraisement, valuation, stay, extension and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale of the Collateral or any part thereof or any interest therein.

SECTION 3.9.  Sale a Bar Against Mortgagor.  Any sale of the Collateral or any part thereof or any interest therein under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise, shall forever be a bar against the Mortgagor.

SECTION 3.10.  Obligations To Become Due on Sale.  Upon any sale of the Collateral or any portion thereof or interest therein by virtue of the exercise of any remedy by the Mortgagee under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise in accordance with this Mortgage or by virtue of any other remedy available at law or in equity or by statute or otherwise, at the option of the Mortgagee, any sums or monies due and payable pursuant to the Credit Agreement, the Loan Documents and in connection with the Loans and/or the Obligations shall, if not previously declared due and payable, immediately become due and payable, together with interest accrued thereon, and all other indebtedness which this Mortgage by its terms secures.

SECTION 3.11.  Application of Proceeds of Sale and Other Moneys.  Subject to the terms of the Credit Agreement, the proceeds of any sale of the Collateral or any part thereof or any interest therein under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise, and all other moneys at any time held by the Mortgagee as part of the Collateral, shall be applied in such order of priority as the Mortgagee shall determine in its sole and absolute discretion including, without limitation, as follows:

(a)      first, to the payment of the reasonable costs and expenses of such sale (including, without limitation, the cost of evidence of title and the costs and expenses, if any, of taking possession of, retaining custody over, repairing, managing, operating, maintaining and preserving the Collateral or any part thereof prior to such sale), all reasonable costs and expenses incurred by the Mortgagee or any other Person in obtaining or collecting any insurance proceeds, condemnation awards or other amounts received by the Mortgagee, all reasonable costs and expenses of any receiver of the Collateral or any part thereof, and any Impositions or other charges or expenses prior to the security interest or lien of this Mortgage, which the Mortgagee may consider it necessary or desirable to pay;

11

BOASRC 001359

(b)     second, to the payment of any Obligation (other than those set forth in Section 3.11(c) below);

(c)     third, to the payment of all amounts of principal of and interest at the time due and payable under the Credit Agreement at the time outstanding (whether due by reason of maturity or by reason of any prepayment requirement or by declaration or acceleration or otherwise), including interest at the rate provided for in the Credit Agreement on any overdue principal and (to the extent permitted under applicable law) on any overdue interest; and, in case such moneys shall be insufficient to pay in full such principal and interest, then, first, to the payment of all amounts of interest at the time due and payable and, second, to the payment of all amounts of principal at the time due and payable under the Credit Agreement; and

(d)     fourth, the balance, if any, held by the Mortgagee after payment in full of all amounts referred to in subdivisions Sections 3.11(a), (b) and (c) above, shall, unless a court of competent jurisdiction may otherwise direct by final order not subject to appeal, be paid to or upon the direction of the Mortgagor.

SECTION 3.12. Appointment of Receiver. If an Event of Default shall have occurred and be continuing, the Mortgagee shall, as a matter of right, without notice, and without regard to the adequacy of any security for the indebtedness secured hereby or the solvency of the Mortgagor, be entitled to the appointment of a receiver for all or any part of the Collateral, whether such receivership be incidental to a proposed sale of the Collateral or otherwise, and the Mortgagor hereby consents to the appointment of such a receiver and will not oppose any such appointment.

SECTION 3.13. Possession, Management and Income. If an Event of Default shall have occurred and be continuing, in addition to, and not in limitation of, the rights and remedies provided in Section 1.13, the Mortgagee, upon ten (10) days notice to the Mortgagor, may enter upon and take possession of the Collateral or any part thereof by force, summary proceeding, ejectment or otherwise and may remove the Mortgagor and all other Persons and any and all property therefrom and may hold, operate, maintain, repair, preserve and manage the same and receive all earnings, income, Rents, issues and Proceeds accruing with respect thereto or any part thereof. The Mortgagee shall be under no liability for or by reason of any such taking of possession, entry, removal or holding, operation or management, except that any amounts so received by the Mortgagee shall be applied to pay all costs and expenses of so entering upon, taking possession of, holding, operating, maintaining, repairing, preserving and managing the Collateral or any part thereof, and any Impositions or other charges prior to the lien and security interest of this Mortgage which the Mortgagee may consider it necessary or desirable to pay, and any balance of such amounts shall be applied as provided in Section 3.11.

SECTION 3.14. Right of Mortgagee to Perform Mortgagor's Covenants, etc. If the Mortgagor shall fail to make any payment or perform any act required to be made or performed hereunder, and such failure continues beyond the expiration of any applicable notice, grace and cure periods, the Mortgagee, upon ten days' notice to the Mortgagor (provided that no such notice shall be required in the event of an emergency that would result in bodily harm or a material adverse effect to the Collateral) and without waiving or releasing any obligation or

12

BOASRC 001360

Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of the Mortgagor, and may enter upon the Collateral for such purpose and take all such action thereon as, in the Mortgagee's reasonable opinion, may be necessary or appropriate therefor. No such entry and no such action shall be deemed an eviction of any lessee of the Property or any part thereof. All sums so paid by the Mortgagee and all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the rate provided for in the Credit Agreement from the date of payment or incurring, shall constitute additional indebtedness under the Credit Agreement secured by this Mortgage and shall be paid by the Mortgagor to the Mortgagee on demand.

SECTION 3.15. Subrogation. To the extent that the Mortgagee, on or after the date hereof, pursuant to this Mortgage, pays any sum due under any provision of any law or any instrument creating any lien prior or superior to the lien of this Mortgage, or the Mortgagor or any other Person pays any such sum with the proceeds of the loan evidenced by the Credit Agreement, the Mortgagee shall have and be entitled to a lien on the Collateral equal in priority to the lien discharged, and the Mortgagee shall be subrogated to, and receive and enjoy all rights and liens possessed, held or enjoyed by, the holder of such lien, which shall remain in existence and benefit the Mortgagee in securing the Obligations.

SECTION 3.16. Remedies, etc., Cumulative. Each right, power and remedy of the Mortgagee provided for in this Mortgage, the Credit Agreement or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Mortgage, the Credit Agreement or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by the Mortgagee of any one or more of the rights, powers or remedies provided for in this Mortgage, the Credit Agreement, or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Mortgagee of any or all such other rights, powers or remedies.

SECTION 3.17. Provisions Subject to Applicable Law. Notwithstanding anything to the contrary contained in this Mortgage, all rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of such term shall not be affected thereby.

SECTION 3.18. No Waiver, etc. No failure by the Mortgagee to insist upon the strict performance of any term hereof or of the Credit Agreement, or of any other Loan Document, or to exercise any right, power or remedy consequent upon a breach hereof or thereof, shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this Mortgage, which shall continue in full force and effect with respect to any other then existing or subsequent breach. By accepting payment or performance of any amount or other Obligations secured hereby before or after its due date, the Mortgagee shall not be deemed to

13

BOASRC 001361

have waived its right either to require prompt payment or performance when due of all other amounts and Obligations payable hereunder or to declare a default for failure to effect such prompt payment.

SECTION 3.19. <u>Compromise of Actions, etc.</u> Any action, suit or proceeding brought by the Mortgagee pursuant to any of the terms of this Mortgage, the Credit Agreement, any other Loan Document, or otherwise, and any claim made by the Mortgagee hereunder or thereunder, may be compromised, withdrawn or otherwise dealt with by the Mortgagee without any notice to or approval of the Mortgagor.

## ARTICLE IV

## DEFINITIONS

SECTION 4.1.   <u>Use of Defined Terms.</u>  Terms for which meanings are provided in this Mortgage shall, unless otherwise defined or the context otherwise requires, have such meanings when used in any certificate and any opinion, notice or other communication delivered from time to time in connection with this Mortgage or pursuant hereto.

SECTION 4.2.   <u>Credit Agreement Definitions.</u>  Unless otherwise defined herein or the context otherwise requires, terms used in this Mortgage, including its preamble and recitals, have the meanings provided in the Credit Agreement.

## ARTICLE V

## MISCELLANEOUS

SECTION 5.1.   Further Assurances; Financing Statements.

SECTION 5.1.1    <u>Further Assurances.</u> The Mortgagor, at its expense, will execute, acknowledge and deliver all such instruments and take all such other action as the Mortgagee from time to time may reasonably request, provided that such instruments or such actions do not, other than to a de minimis extent, (i) increase the liability or obligations of the Mortgagor or (ii) decrease the rights of the Mortgagor, in each case, beyond those which are contemplated in this Mortgage:

(a)   to better subject to the lien and security interest of this Mortgage all or any portion of the Collateral,

(b)   to perfect, publish notice or protect the validity of the lien and security interest of this Mortgage,

(c)   to preserve and defend the title to the Collateral and the rights of the Mortgagee therein against the claims of all Persons as long as this Mortgage shall remain undischarged (subject to the Permitted Encumbrances),

14

BOASRC 001362

(d)    to better subject to the lien and security interest of this Mortgage or to maintain or preserve the lien and security interest of this Mortgage with respect to any replacement or substitution for any Collateral or any other after-acquired property, or

(e)    in order to further effectuate the purposes of this Mortgage and to carry out the terms hereof and to better assure and confirm to the Mortgagee its rights, powers and remedies hereunder.

SECTION 5.1.2    Financing Statements. Notwithstanding any other provision of this Mortgage, the Mortgagor hereby agrees that, without notice to or the consent of the Mortgagor, the Mortgagee may file with the appropriate public officials such financing statements, continuation statements, amendments and similar documents as are or may become necessary to perfect, preserve or protect the security interest granted by this Mortgage.

SECTION 5.2.    Additional Security. Without notice to or consent of the Mortgagor, and without impairment of the security interest and lien of and rights created by this Mortgage, the Mortgagee and the Lenders may accept from the Mortgagor or any other Person additional security for the Obligations. Neither the giving of this Mortgage nor the acceptance of any such additional security shall prevent the Mortgagee from resorting, first, to such additional security, or, first, to the security created by this Mortgage, or concurrently to both, in any case without affecting the Mortgagee's lien and rights under this Mortgage.

SECTION 5.3.    Release; Partial Release, etc.

SECTION 5.3.1    Release. If the Loans and all other amounts owing pursuant to the Credit Agreement and the other Loan Documents shall be repaid in full in accordance with the terms thereof, and if the Mortgagor shall pay, in full, the principal of and premium, if any, and interest on the Obligations in accordance with the terms thereof and hereof and all other sums payable hereunder by the Mortgagor and shall comply with all the terms, conditions and requirements hereof and of the Obligations, then on such date, the Mortgagee shall, upon the request of the Mortgagor and at the Mortgagor's sole cost and expense, execute and deliver such instruments, in form and substance reasonably satisfactory to the Mortgagee, as may be necessary to release this Mortgage.

SECTION 5.3.2    Partial Release, etc. The Mortgagee may, at any time and from time to time, without liability therefor, with prior written notice to the Mortgagor, release or reconvey any part of the Collateral, consent to the making of any map or plat of the Property, join in granting any easement thereon or join in any extension agreement or agreement subordinating the lien of this Mortgage, or enter into any other agreement in connection with the Collateral.

SECTION 5.4.    Notices, etc. All notices and other communications provided to any of the parties hereto shall be in writing and addressed, delivered or transmitted to such party as set forth in the Credit Agreement.

SECTION 5.5.    Waivers, Amendments, etc. The provisions of this Mortgage may be amended, discharged or terminated and the observance or performance of any provision of this

15

SF:359320.2

Mortgage may be waived, either generally or in a particular instance and either retroactively or prospectively, only by an instrument in writing executed by the Mortgagor and the Mortgagee.

SECTION 5.6.   Cross-References.   References in this Mortgage and in each instrument executed pursuant hereto to any Section or Article are, unless otherwise specified, to such Section or Article of this Mortgage or such instrument, as the case may be, and references in any Section, Article or definition to any clause are, unless otherwise specified, to such clause of such Section, Article or definition.

SECTION 5.7.   Headings.   The various headings of this Mortgage and of each instrument executed pursuant hereto are inserted for convenience only and shall not affect the meaning or interpretation of this Mortgage or such instrument or any provisions hereof or thereof.

SECTION 5.8.   Currency.   Unless otherwise expressly stated, all references to any currency or money, or any dollar amount, or amounts denominated in "Dollars" herein will be deemed to refer to the lawful currency of the United States.

SECTION 5.9.   Governing Law.   THIS MORTGAGE SHALL BE DEEMED TO BE A CONTRACT MADE UNDER AND GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA.

SECTION 5.10.  Successors and Assigns, etc.   This Mortgage shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

SECTION 5.11.  Waiver of Jury Trial; Submission to Jurisdiction.

(a)    EACH OF THE MORTGAGOR AND THE MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE CREDIT AGREEMENT, ANY LOAN DOCUMENT OR ANY OTHER RELATED INSTRUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF THE MORTGAGOR OR THE MORTGAGEE. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE AND THE LENDERS TO ENTER INTO THE TRANSACTIONS PROVIDED FOR IN THE CREDIT AGREEMENT AND TO AGREE TO THE EXCHANGE OF LOANS.

(b)    FOR THE PURPOSE OF ANY ACTION OR PROCEEDING INVOLVING THIS MORTGAGE, THE CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT, THE MORTGAGOR HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ALL FEDERAL AND STATE COURTS LOCATED IN THE STATE AND CONSENTS THAT IT MAY BE SERVED WITH ANY PROCESS OR PAPER BY REGISTERED MAIL OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE IN ACCORDANCE WITH APPLICABLE LAW, PROVIDED A REASONABLE TIME FOR APPEARANCE IS ALLOWED. THE MORTGAGOR EXPRESSLY WAIVES, TO

16

BOASRC 001364

THE EXTENT IT MAY LAWFULLY DO SO, ANY OBJECTION, CLAIM OR DEFENSE WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF THIS MORTGAGE, THE CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER IRREVOCABLY WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO ANY SUCH CLAIM, SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER THE PERSON OF THE MORTGAGOR. NOTHING CONTAINED HEREIN WILL BE DEEMED TO PRECLUDE THE MORTGAGEE FROM BRINGING AN ACTION AGAINST THE MORTGAGOR IN ANY OTHER JURISDICTION.

SECTION 5.12. Severability. Any provision of this Mortgage, the Credit Agreement or any other Loan Document which is prohibited or unenforceable in any jurisdiction shall as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Mortgage, the Credit Agreement or such Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 5.13. Loan Document. This Mortgage is a Loan Document executed pursuant to the Credit Agreement and, unless otherwise expressly indicated herein, shall be construed, administered and applied in accordance with the terms and provisions thereof.

SECTION 5.14. Usury Savings Clause. It is the intention of the Mortgagor and the Mortgagee to conform strictly to the usury laws governing the Loan Documents, and any interest payable under the Loan Documents shall be subject to reduction to the amount not in excess of the maximum non- usurious amount allowed under such laws, as construed by the courts having jurisdiction over such matters. In the event the maturity of the Obligations is accelerated by reason of any provision of the Loan Documents, or by reason of an election by the Mortgagee resulting from an Event of Default, then interest may never include more than the maximum amount permitted by law, computed from the dates of each advance of loan proceeds under the Credit Agreement until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically or, if theretofore paid, at the option of the Mortgagee, shall be rebated to the Mortgagor, or shall be credited on the principal amount of the Obligations or, if all principal has been repaid, then the excess shall be rebated to the Mortgagor. If any interest is canceled, credited against principal or rebated to the Mortgagor in accordance with the foregoing sentence and, if thereafter the interest payable hereunder is less than the maximum amount permitted by applicable law, the rate hereunder shall automatically be increased to the maximum extent possible to permit repayment to the Mortgagee and the Lenders as soon as possible of any interest in excess of the maximum amount permitted by law which was earlier canceled, credited against principal or rebated to the Mortgagor pursuant to the provisions of the foregoing sentence.

SECTION 5.15. State Specific Provisions

17

BOASRC 001365

(a)  <u>Obligations Survive Judgment.</u> The Obligations and the rights and remedies of the Mortgagee hereunder and under the Credit Agreement and other Loan Documents shall continue after and survive the entry of judgment for foreclosure of this Mortgage; it being the intention of the parties hereto that such rights, remedies and obligations, including but not limited to the obligations of Mortgagor to perform any covenants contained in this Mortgage (including, without limitation, the Mortgagor's covenants in Article I of this Mortgage) and to reimburse Mortgagee for any payments made or costs or expenses incurred by Mortgagee pursuant to Section 3.14 of this Mortgage, shall not merge into or be extinguished by any such judgment but shall continue until all Obligations have been paid in full.

(b)  <u>Confession of Judgment in Ejectment.</u> AT ANY TIME AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT, WITHOUT FURTHER NOTICE, REGARDLESS OF WHETHER MORTGAGEE HAS ASSERTED ANY OTHER RIGHT OR EXERCISED ANY OTHER REMEDY UNDER THIS MORTGAGE OR ANY OF THE OTHER LOAN DOCUMENTS, MORTGAGOR HEREBY EMPOWERS ANY ATTORNEY LICENSED IN THE COMMONWEALTH OF PENNSYLVANIA TO APPEAR FOR MORTGAGOR IN AN ACTION FOR CONFESSED JUDGMENT IN EJECTMENT AND CONFESS JUDGMENT IN EJECTMENT AGAINST MORTGAGOR FOR THE RECOVERY BY MORTGAGEE OF POSSESSION OF ALL OR ANY PART OF THE MORTGAGED PROPERTY, FOR WHICH THIS MORTGAGE SHALL BE SUFFICIENT WARRANT. IF FOR ANY REASON AFTER SUCH JUDGMENT SHALL HAVE BEEN ENTERED THE SAME SHALL BE OPENED, TERMINATED, SATISFIED, VACATED OR STRICKEN AND THE POSSESSION OF THE PROPERTY REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE (ACTING AT THE WRITTEN DIRECTION OF REQUIRED LENDERS) SHALL HAVE THE RIGHT UPON ANY SUBSEQUENT EVENT OF DEFAULT TO BRING ONE OR MORE ADDITIONAL ACTIONS FOR CONFESSED JUDGMENT IN EJECTMENT TO RECOVER POSSESSION OF ALL OR ANY PART OF THE MORTGAGED PROPERTY AND ANY ATTORNEY LICENSED IN THE COMMONWEALTH OF PENNSYLVANIA IS HEREBY EMPOWERED BY MORTGAGOR TO APPEAR FOR MORTGAGOR IN ANY SUCH ACTION AND TO CONFESS ONE OR MORE ADDITIONAL JUDGMENTS IN EJECTMENT IN FAVOR OF MORTGAGEE AND AGAINST MORTGAGOR FOR POSSESSION OF THE MORTGAGED PROPERTY.

(c)  This is not a purchase money mortgage.

SECTION 5.16. <u>Exculpation.</u>  There shall be no recourse hereunder to any constituent entity or individual or any member, shareholder, principal, affiliate or partner of Mortgagor, direct or indirect, no any director, officer, employee, agent or representative of any of them.

SECTION 5.17. <u>Intercreditor Agreements.</u>  In the event of any conflict, inconsistency, or ambiguity between the terms of this Mortgage and the terms of that certain intercreditor agreement, dated as of the date hereof, among the Mortgagor, Silver Point Finance, LLC, as First Lien Term Loan Agent, Silver Point Finance, LLC, as Second Lien Term Loan Agent, and

18

BOASRC 001366

Mortgagee (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), the terms of the Intercreditor Agreement shall govern and control.

SECTION 5.18. Future Advances; Revolving Credit Advances. At all times, regardless of whether proceeds of the Loans have been or shall be disbursed by the Lenders or their respective successors or assigns, to and for the benefit of Borrowers, or their respective successors or assigns, this Mortgage also secures the payment of and includes all amounts owing with respect to all (i) future and further advances, re-advances, revolving credit advances and re-borrowings of the Loans (including letters of credit) (ii) future loan disbursements and other advances (including letters of credit) made by the Lenders under the Credit Agreement, this Mortgage or any other Loan Document, and (iii) all other sums from time to time owing to the Lenders and the other Secured Parties by Borrowers under the Credit Agreement, this Mortgage or any other Loan Document (collectively, "Future Advances"). Future Advances, whether obligatory or discretionary, shall be deemed obligatory for purposes of this Mortgage, attach upon execution and delivery and have the same priority from the time of recording of this Mortgage as if they were made or issued on the date of the execution of this Mortgage, and bear interest at the same rate(s) as specified in the Credit Agreement unless such interest rate(s) shall be modified by subsequent agreement, which interest rate(s) may be variable. The parties hereby acknowledge and intend that all advances, including Future Advances whenever hereafter made, shall be secured by this Mortgage. Notwithstanding the foregoing, while the total amount of Obligations secured by this Mortgage may decrease or increase from time to time, the maximum principal amount secured at any one time shall not exceed $125,000,000 and any interest and fees thereon. Nothing in this Section or in any other provision of this Mortgage shall be deemed an obligation on the part of Mortgagee and/or any other Lenders to make any Future Advances other than in accordance with the terms and provisions of the Credit Agreement.

SECTION 5.19. Maintenance of Encumbrance Amount. If at any time this Mortgage shall secure less than all of the principal amount of the Obligations, it is expressly agreed that any repayments of the principal amount of the Obligations shall not reduce the amount of the encumbrance of this Mortgage until the encumbrance amount shall equal the principal amount of the Obligations outstanding.

*(Signatures appear on the following page.)*

19

SF:359320.2

BOASRC 001367

In witness whereof, the undersigned, by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this instrument as of the day and year fist above written.

WORKFLOWONE LLC,
a Delaware limited liability company

By:    The Standard Register Company,
       as its sole member

By: _____
       Robert M. Ginnan, Vice President,
       Treasurer and Chief Financial Officer

[PENNSYLVANIA MORTGAGE – THIRD LIEN MORTGAGE – SIGNATURE PAGE]

STATE OF OHIO                    )
                                 ) SS:
COUNTY OF MONTGOMERY             )

On this 1st day of August, 2013, before me, the undersigned officer, personally appeared Robert M. Ginnan, Vice President, Treasurer and Chief Financial Officer of The Standard Register Company, the Sole Member of WORKFLOWONE LLC, a Delaware limited liability company (the "**Company**"), known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, who acknowledged that he executed the foregoing instrument for and on behalf of the Company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Teresa L. Myers*
_____
Notary Public

TERESA L. MYERS, Notary Public
In and for the State of Ohio
My Commission Expires April 20, 2016

[PENNSYLVANIA MORTGAGE – THIRD LIEN MORTGAGE – ACKNOWLEDGMENT PAGE]

BOASRC 001369

SCHEDULE 1

## Legal Description of the Land

ALL THAT CERTAIN tract of land situated in Manchester Township, York County, Pennsylvania, being more fully bounded and described as follows to wit:

BEGINNING at a point formed by the intersection of the East line of Connelly Road, a one hundred (100) foot wide road, and the North line of Busser Road, a one hundred (100) foot wide road; and running thence along the East side of Connelly Road North five (05) degrees thirty-five (35) minutes (00) seconds West, a distance of four hundred twenty-five and no one-hundredths (425.00) feet to a point; running thence through Lot No. 12, North eighty-four (84) degrees twenty-five (25) minutes zero (00) seconds East; a distance of five hundred thirty-five and eighty-eight one-hundredths (535.88) feet to a point at lands now or formerly of Standard Concrete Products Co.; running thence along said last mentioned lands South four (04) degrees sixteen (16) minutes zero (00) seconds East, a distance of four hundred and twenty-one one-hundredths (400.21) feet to a point on the North side of Busser Road; and running thence along the North side of Busser Road South eighty-four (84) degrees twenty-five (25) minutes (00) seconds West a distance of two hundred forty-one and sixty-nine one-hundredths (241.69) feet to a point; and running thence along same South five (05) degrees thirty-five (35) minutes zero (00) seconds East twenty-five (25.00) feet to a point; and running thence along same South eighty-four (84) degrees twenty-five (25) minutes zero (00) seconds West two hundred eighty-five and no one-hundredths (285.00) feet to a point on the East side of Connelly Road and the place of BEGINNING. Containing 5.0422 Acres.

Being the same premises which The Reynolds and Reynolds Company, an Ohio corporation, successor in interest by merger with Duplex Products Inc., a Delaware corporation by Deed dated 8/4/2000 and recorded 12/8/2000 in York County in Record Book 1419  Page 1326 conveyed unto  ISG Acquisition Corp., a Delaware corporation, in fee.

AND Whereas by Amendment to its Articles of Incorporation ISG Acquisition Corp., a Delaware corporation, changed its name to The Relizon Company, a Delaware corporation.

BEING THE SAME PREMISES DESCRIBED AS FOLLOWS:

ALL that certain tract of land with improvements erected thereon, situate in Manchester Township, York County, Pennsylvania, as shown on an ALTA/ACSM Land Title Survey of Tax Parcel 36-L-I-1B prepared by Hartman and Associates, Inc., Camp Hill, PA dated 8/30/2000, being more fully bounded limited and described as follows, to- wit:

BEGINNING at a concrete monument (found) at the Northeast right of way intersection of Connelly and Busser Roads, both one hundred foot wide right of ways; thence along the Eastern right of way line of Connelly Road, North 5 (05) degrees thirty-five (35) minutes zero (0) seconds West, a distance of four hundred twenty-five and no one-hundredths feet (425.00) too a point; running thence through Lot No. 12, North eighty-four (84) degrees twenty-five (25) minutes zero (00) seconds East, a distance of five hundred thirty-five and eighty-eight one hundredths (535.88) feet to a point at lands now or late of Codorus Stone and Supply Co., Inc., thence along said lands South four (04) degrees sixteen (16) minutes zero (00) seconds East, a distance of four hundred and twenty-one one-hundredths (400.21) feet to a rebar (set) at lands now or late of York County Industrial Development Corporation on the Northern right of way line of Busser Road, extended; thence along said land and right of way being seventy-five feet North of, and parallel to the centerline of Busser Road South eighty-four (84) degrees twenty-five (25) minutes zero (00) seconds West, a distance of two hundred forty-one and sixty-nine one hundredths (241.69) feet to a rebar (set); thence continuing along the Northern right of way line of Busser Road, South five (05) degrees thirty-five (35) minutes zero (00) seconds East, a distance of Twenty-five (25.00) feet to a rebar (set); thence along the same being fifty feet (50) North of, and parallel to, the centerline of Busser Road, South eighty-four (84) degrees twenty-five (25) minutes zero (00) seconds West two hundred eighty-five and no one-hundredths

SF:359320.2

Inst. # 2013046021 - Page 26 of 31

(285.00) feet to a concrete monument (found) at the Northeast right of way intersection of Connelly and Busser Roads, the place of beginning.

TAX PARCEL NO. 36000LI0001B00000.

Being the same premises which The Reynolds and Reynolds Company, an Ohio corporation, successor in interest by merger with Duplex Products Inc., a Delaware corporation by Deed dated 8/4/2000 and recorded 12/8/2000 in York County in Record Book 1419  Page 1326 conveyed unto ISG Acquisition Corp., a Delaware corporation, in fee.

AND Whereas by Amendment to its Articles of Incorporation ISG Acquisition Corp., a Delaware corporation, changed its name to The Relizon Company, a Delaware corporation.

3

SF:359320.2

SCHEDULE 2

Permitted Encumbrances

1. Coal and coal bed methane gas and mining rights and all rights incident to the extraction or development of coal or coal bed methane gas heretofore conveyed, excepted and reserved by instruments of records; the right of surface, lateral or subjacent support; or any surface subsidence.

   NOTICE: "THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND."

2. Rights granted to Metropolitan Edison Company dba GPU Energy as in Record Book 1345, page 8440.

3. Rights granted to Metropolitan Edison Company as in Record Book T, Volume 54 page 543 and Record Book X, Volume 69 page 216.

4. Rights granted to York Telephone and Telegraph Company as in Record Book C, Volume 55 page 128.

5. Rights granted to Edison Light and Power Company as in Record Book F, Volume 30 page 623 and Record Book B, Volume 33 page 425.

6. Coal, oil, natural gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

7. All taxes, assessments and other charges not yet due and payable.

8. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting title that would be disclosed by an accurate and complete land survey.

9. UCC Financing Statement from Workflowone LLC, a Delaware limited liability company, to The Bank of New York Mellon, as Administrative Agent, filed March 16, 2011 in the Recorder of Deeds Office as Record Book 2119, Page 6695, as amended and assigned to Silver Point Finance, LLC, as Administrative Agent, by a UCC Financing Statement Amendment filed contemporaneously herewith.

10. UCC Financing Statement from Workflowone LLC, a Delaware corporation, to Silver Point Finance, LLC, as Administrative Agent, filed March 16, 2011 in the Recorder of Deeds Office as Record Book 2119, Page 6706, as amended and assigned to Silver Point Finance, LLC, as Administrative Agent, by a UCC Financing Statement Amendment filed contemporaneously herewith.

SF:359320.2

11.    First Lien Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of August 1, 2013, made by Workflowone LLC, a Delaware limited liability company, as Mortgagor, to Silver Point Finance, LLC, as Administrative Agent, as Mortgagee, recorded prior to the recordation of this Mortgage.

12.    Second Lien Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of August 1, 2013, made by Workflowone LLC, a Delaware corporation, as Mortgagor, to Silver Point Finance, LLC, as Administrative Agent, recorded prior to the recordation of this Mortgage.

5

SF:359320.2

BOASRC 001373

SCHEDULE 3

Leases

None.

SF:359320.2

BOASRC 001374

Inst. # 2013046021 - Page 30 of 31

## CERTIFICATE OF RESIDENCE

The undersigned does hereby certify that the precise address of Mortgagee is:

Bank of America, N.A., as Administrative Agent
300 Galleria Parkway, Suite 800
Atlanta, Georgia  30339

Bank of America, N.A., as Administrative Agent

By: _____
Name: _____
Title: _____

SF:359320.2

Inst. # 2013046021 - Page 31 of 31



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2013046021
Recorded On 8/13/2013 At 1:36:33 PM
\* **Instrument Type - MORTGAGE**
Invoice Number - 1060853
\* Grantor - WORKFLOWONE LLC
\* Grantee - BANK OF AMERICA N A
User - BGD
\* **Customer - SIMPLIFILE LC E-RECORDING**

Book - 2245   Starting Page - 8710
\* Total Pages - 31

\* Received By:

PARCEL IDENTIFICATION NUMBER
36000LI0001B000000
Total Parcels: 1

\* <u>FEES</u>

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $65.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $115.50 |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## <u>PLEASE DO NOT DETACH</u>
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**Book: 2245** **Page: 8740**