**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                               :   Chapter 11
                                        :
THE STANDARD REGISTER COMPANY,          :   Case No. 15-10541 (BLS)
et al.,                                 :
                                        :   (Jointly Administered)
                                        :
        Debtors.                        :   Re: Docket No. 529
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**OBJECTION AND RESERVATION OF RIGHTS OF SILVER POINT FINANCE, LLC WITH RESPECT TO FIRST MONTHLY APPLICATION OF LOWENSTEIN SANDLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM MARCH 24, 2015 THROUGH MARCH 31, 2015**

Silver Point Finance, LLC, as administrative agent under the Term DIP Loan Agreement,[1] the Prepetition First Lien Credit Agreement, and the Prepetition Second Lien Credit Agreement (in such capacities, the "**Agent**"), hereby submits this objection and reservation of rights (the "**Objection and Reservation of Rights**") to the First Monthly Application of Lowenstein Sandler LLP ("**Lowenstein Sandler**") as Counsel to the Official Committee of Unsecured Creditors (the "**Committee**") for Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from March 24, 2015 through March 31,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final Order (I) Authorizing Debtors in Possession to obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364; ( and (III) Providing Adequate Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 (Docket No. 290) (the "**Final DIP Financing Order**").

2015 (Docket No. 529) (the "**First Monthly Fee Application**"). In support thereof, the Agent respectfully represents as follows:

## OBJECTION AND RESERVATION OF RIGHTS

1.      The approximately $215,000 in professional fees and expenses incurred by Lowenstein Sandler for just one week of work in March not only exceeds the amount allocated in the Professional Fee Budget but is incommensurate with the value conferred to the Debtors' estates. While the Bankruptcy Code authorizes reasonable compensation for creditors' committees' counsel, it does not embody a laissez-faire approach to the payment of committee legal fees. Such fees are constrained by the reasonableness standard of section 330, and the burden is on the applicant to justify the amount of fees sought. *See Zolfo, Cooper & Co., v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1994) (citing *In re Metro Transp. Co.*, 107 B.R. 50, 53 (Bankr. E.D. Pa. 1989)). The Agent respectfully submits that the First Monthly Fee Application requests fees far beyond what Lowenstein Sandler can justify under this standard.

2.      Approximately two-thirds of Lowenstein Sandler's requested fees and two-thirds of its recorded hours relate to the DIP financing and sale process. During the last week of March, Lowenstein Sandler recorded 246 hours for these matters. *See* First Monthly Fee Application at 3. By comparison, the Debtors' primary counsel, Gibson Dunn & Crutcher LLP ("**Gibson Dunn**"), billed 170.6 hours to these matters for the entire 19-day period covered by its March fee

application.[2] In other words, Lowenstein Sandler recorded approximately 45% more time to these matters than Gibson Dunn despite working less than half as many days.[3]

3.  Lowenstein Sandler's outsized fee request is a product of the Committee's highly litigious approach to these cases. Lowenstein Sandler's activities in March included propounding voluminous document requests on the Agent, the Debtors, and the Pre-Petition ABL Agent and ABL DIP Agent. This was followed, in early April, by depositions of five Debtor representatives and one Agent representative, culminating in the Committee's kitchen-sink objections to the sale procedures and DIP motion. The First Monthly Fee Application reflects substantial preparations for these depositions and objections. The First Monthly Fee Application actually understates the costs imposed on the estate and other stakeholders from the Committee's litigation strategy, insofar as it captures only the *direct* fees and costs incurred by Lowenstein Sandler. The true economic cost of Lowenstein Sandler's activities also includes the costs borne by the Debtors and other stakeholders in responding to this litigation. By way of illustration, the Agent produced at least 35,572 pages of discovery materials to the Committee in response to the Committee's March discovery requests, while also devoting time to preparing and defending the deposition of one of its employees.

---

[2]  *See* First Monthly Fee Application of Gibson, Dunn & Crutcher LLP as General Bankruptcy and Restructuring Co-Counsel for Debtors-and-Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period from March 12, 2015 Through and Including March 31, 2015 at 5, *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 24, 2015) (Docket No. 347).

[3]  Lowenstein Sandler and Gibson Dunn appear to categories their services in slightly different ways. For example, Gibson Dunn recorded 169.8 hours during this fee period to its "litigation" category, and Lowenstein Sandler recorded 38.1 hours to "investigation of prepetition lenders." Assuming that such hours related directly or indirectly to the DIP financing and sale procedures, Lowenstein Sandler recorded 83% as many hours to DIP financing and sale procedure matters as Gibson Dunn—again, despite working less than half as many days. Thus, even viewed in the light most favorable to Lowenstein Sandler, its fees for these matters are, in the Agent's judgment, unreasonably high.

4.  Fortunately for Lowenstein Sandler, professionals pursuing fees under section 330 are not judged solely on their success or failure. *See In re APW Enclosure Sys.*, No 06-11378, 2007 WL 3112414, at *3 (Bankr. D. Del. Oct. 23, 2007). But courts do "conduct an objective inquiry based upon what services a reasonable professional would have performed in the same circumstances." *In re Channel Master Holdings, Inc.*, 309 B.R. 855-861-62 (Bankr. D. Del. 2004). In that regard, professionals must weigh the costs and benefits of their contemplated services before proceeding. *See APW*, 2007 WL 3112414, at *3 (quoting *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998)).

5.  The First Monthly Fee Application does not demonstrate compliance with these standards. Lowenstein Sandler's efforts to justify its fees consist of a formulaic recitation of the section 330 standards and a bald assertion that it has satisfied those standards. *See* First Monthly Fee Application ¶ 18. The Agent submits that, given the amount of fees incurred (particularly relating to the DIP financing and sale process), a more substantive showing is required. Indeed, Lowenstein Sandler makes no effort whatsoever to show that it conducted a reasonable cost–benefit analysis before proceeding with its extensive discovery and litigation efforts, or that a reasonable professional in these circumstances would have acted similarly. There is no evidence, for instance, that Lowenstein Sandler considered whether it could have pursued the same ends through more focused discovery[4] or even consensual information sharing. More significantly, Lowenstein Sandler did not, and still has not, articulated any constructive alternatives to the

---

[4] Indeed, a number of the Committee's discovery requests bore no relationship to the sale procedures or DIP financing. The Committee's March 26, 2015 request for "[a]ll documents Concerning any of the Silver Point Entities' acquisition of debt of any of the Workflow Debtors prior to September 29, 2010"—that is, before the WorkflowOne bankruptcy in 2010 and well before the WorfkflowOne/Standard Register transaction— epitomizes the Committee's refusal to confine its discovery requests within reasonable bounds.

current sale process and DIP financing. Put simply, Lowenstein Sandler cannot claim to have conferred value on the estate by opposing the Debtors' restructuring strategy without advocating any meaningful, value-enhancing alternatives.

6.  In sum, Lowenstein Sandler's fee request falls well short of the section 330 standards. Even without the Professional Fee Budget approved by the DIP Agents as a point of reference, Lowenstein Sandler's fees should be reduced to comport with the reasonable value of actual and necessary services that counsel for an official creditors' committee should have provided in this type of case.[5] Alternatively, Lowenstein Sandler's application should be denied on an interim basis, and its request for this fee period should be considered in connection with the final fee hearing, when the outcome of these cases is clear and the Court will have greater context to evaluate Lowenstein Sandler's application. *Cf. APW*, 2007 WL 3112414, at *4 (recognizing that the success of the debtor's reorganization bears on the reasonableness of a professional's fee request).

---

[5] Nothing herein should be construed to waive or modify the Agent's rights under the Final DIP Financing Order or the DIP Financing Documents, including the Budget and the Professional Fee Budget; to consent to the payment of any professional fees in excess of the applicable amount set forth in the Professional Fee Budget; or to consent to the imposition of any costs or expenses of administration upon any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. All such rights are expressly reserved.

WHEREFORE, the Agent respectfully requests that the Court deny Lowenstein Sandler's First Monthly Fee Application to the extent set forth herein.

DATED:   Wilmington, Delaware
         June 3, 2015

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ Sarah E. Pierce
    Sarah E. Pierce (I.D. No. 4648)
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware 19899-0636
    Telephone: (302) 651-3000
    Fax: (302) 651-3001

    - and -

    Ron E. Meisler
    Albert L. Hogan III
    Carl T. Tullson
    Christopher M. Dressel
    155 North Wacker Drive
    Chicago, Illinois 60606
    Telephone: (312) 407-0700
    Fax: (312) 407-041

    *Attorneys for Silver Point Finance, LLC*