**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| The Standard Register Company, et al.,[1] ) | Case No. 15-10541-BLS |
| ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Related Docket Nos. 23 and 286 |
| ) | Hearing: June 17, 2015, at 10:00 a.m. (ET) |

**GEORGIA-PACIFIC CONSUMER PRODUCTS LP'S LIMITED OBJECTION TO DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL ITS ASSETS**

Georgia-Pacific Consumer Products LP ("*Georgia-Pacific*") files this limited objection[2] to the motion by The Standard Register Company (the "*Debtor*") to sell substantially all its assets [Docket No. 23] (the "*Sale Motion*") and respectfully states as follows:

## I. INTRODUCTION

1. Georgia-Pacific objects to the Sale Motion insofar as the Debtor seeks to sell to the Stalking Horse[3] or another Successful Bidder the paper products Georgia-Pacific has supplied and continues to supply to the Debtor on consignment (the "*Consigned Products*"). Per the terms of the Sale and Purchase Agreement, dated April 1, 2013 (as amended, the "*Purchase Agreement*"),[4] Georgia-Pacific maintains full legal and beneficial title to the Consigned Products

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register or Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC.

[2] The Debtor extended Georgia-Pacific's objection deadline until 4:00 p.m. ET today.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] A copy of the Purchase Agreement is available upon written request. Because the Purchase Agreement contains confidential and proprietary information, any such request may be subject to execution of an appropriate confidentiality and nondisclosure agreement.

until the Debtor withdraws them from consignment, at which time a sale is recognized and the Debtor is invoiced. The Purchase Agreement is presently listed on the Debtor's schedule of contracts potentially to be assumed, and if the Purchase Agreement is assumed, this objection may be mooted as the Stalking Horse or Successful Bidder must assume the Purchase Agreement *cum onere*. *See* Docket No. 515 at 44. But if the Debtor rejects the Purchase Agreement, it cannot sell the Consigned Products because such products are not property of its estate under section 541 of the Bankruptcy Code.

2. Georgia-Pacific also objects to the Sale Motion to the extent the Debtor seeks to sell free and clear of Georgia-Pacific's setoff or recoupment rights; the Debtor has already stipulated and agreed to Georgia-Pacific's setoff rights. Georgia-Pacific therefore files this limited objection to protect its ownership interests in the Consigned Products and its setoff or recoupment rights.

## II.  BRIEF FACTUAL BACKGROUND

### A.  General Background

3. On March 12, 2015 (the "***Petition Date***"), the Debtor and certain of its affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code. As evidenced by the Sale Motion, the Debtor presently intends to sell substantially all its assets under section 363 of the Bankruptcy Code. Docket No. 23.

4. In 2012, Georgia-Pacific began supplying Consigned Products to the Debtor's predecessor, Workflow One LLC.[5] After Workflow One LLC and the Debtor merged in the third quarter of 2014, the Purchase Agreement was assigned by Workflow One LLC to the

---

[5] Georgia-Pacific also sells certain paper products to the Debtor, which products are not Consigned Products.

- 2 -

Debtor per a Notice of Assignment of Contracts with Workflow One LLC to The Standard Register Company, dated July 2, 2014.

5. Under the Purchase Agreement, the Consigned Products are shipped to certain of the Debtor's facilities (the "***Consignment Facilities***")[6] located throughout the United States.

6. The Purchase Agreement provides that Georgia-Pacific shall maintain full legal and beneficial title to the Consigned Products until the Debtor withdraws the Consigned Products from consignment, at which time a sale is recognized and the Debtor is invoiced. Specifically, the Purchase Agreement provides:

> The [Consigned Products] shall remain the property of [Georgia-Pacific] until [they are] withdrawn by [Debtor]. So long as [Georgia-Pacific] retains title to [Consigned Products], [Debtor] shall take all appropriate or necessary steps to protect and maintain [Georgia-Pacific's] title, to keep [Consigned Products] separate and apart from similar stock owned by persons other than [Georgia-Pacific], and to conspicuously mark and identify [Consigned Products] as [Georgia-Pacific's].
>
> Full legal and beneficial ownership and title to the [Consigned Products] shall remain with [Georgia-Pacific] and not merely a retained security interest, notwithstanding the provisions of Article 2-401 of the Uniform Commercial Code. Further, the [Consigned Products] shall not be deemed to be held by [Debtor] "on sale or return," notwithstanding the provisions of Article 2-326 of the Uniform Commercial Code. . . .
>
> Upon the request of [Georgia-Pacific] and at [Georgia-Pacific's] sole cost and expense, [Debtor] shall assist [Georgia-Pacific] in filing the appropriate UCC Financing Statement Forms UCC- 1 and any amendments or other documents as may be reasonably necessary to evidence and protect [Georgia-Pacific's] title to the Consigned Products. The filing of a UCC Financing or Continuation Statement pursuant to this Agreement shall provide notice of address and location of [Consigned Products] of [Georgia-Pacific] at [Debtor's] Consignment Facilities. The filing shall be considered additional evidence of the ownership by [Georgia-Pacific] of the [Consigned Products]. [Debtor] shall maintain the

---

[6] The Consignment Facilities are located in: (i) Grove City, Ohio (ii) Coldwater, Ohio; (iii) Goshen, Indiana; (iv) Livermore, California; (v) Fayetteville, Arkansas; (vi) Murfreesboro, Tennessee; (vii) Shelbyville, Indiana; (viii) West Sacramento, California; and (ix) York, Pennsylvania.

> [Consigned Products] free from any security interest, mortgage, pledge, lien or other encumbrance (except those attributable to [Georgia-Pacific]), shall not permit the use of the [Consigned Products] as collateral or security for any debt or other liability of [Debtor]. [Debtor] shall defend [Georgia-Pacific's] title to the [Consigned Products] against the claims of [Debtor's] creditors and notify [Georgia-Pacific] promptly of any claim made or asserted against any of the [Consigned Products]. [Debtor] shall indemnify and save harmless [Georgia-Pacific] and its officers, directors and employees from and against all losses, damages and expenses arising out of the existence of any lien in the [Consigned Products] other than liens in favor of [Georgia-Pacific].

Purchase Agreement § 5(b)(i)–(ii).

7. Georgia-Pacific also filed a UCC-1 financing statement to perfect its interests in the Consigned Products and to signify its ownership interests therein.[7]

### B.  The Sale Motion & Proposed Assumption of the Purchase Agreement

8. In the Sale Motion and the Stalking Horse APA, the Debtor seeks to sell the Transferred Assets (as defined in section 2.1 of the Stalking Horse APA), which includes Inventory (as defined in section 2.1(f) of the Stalking Horse APA), to the Stalking Horse or another Successful Bidder. Given the breadth of these terms, the Debtor thus purports to sell the Consigned Products.

9. The Debtor represents and warrants to the Stalking Horse in section 3.4(a) of the Stalking Horse APA that:

> Except as would not be expected to materially impact the Business, each Seller, as applicable, has indefeasible title to, and owns and possesses all material rights and interests in, including the right to use, each of the Transferred Assets. . . .

10. And in sections 3.4(b) and 5.12 of the Stalking Horse APA, the Debtor acknowledges and agrees that the sale to the Stalking Horse shall be "free and clear of all obligations, Liabilities and Encumbrances (other than Lease Encumbrances) to the fullest extent

---

[7] See Georgia-Pacific UCC-1 at http://www2.sos.state.oh.us/reports/rwservlet?imgu&Din=201503600459

permitted by Section 363 of the Bankruptcy Code." The terms "Liabilities" and "Encumbrances" are broadly defined.[8] The Stalking Horse APA further reveals that the Debtor seeks to sell its accounts receivable, notes receivable, and other receivables, as well as its rebates and setoffs, free and clear. Stalking Horse APA §§ 2.1(d), (q).

11.  On April 15, 2015, the Court entered an order approving sale procedures and establishing certain procedures relating to the assumption and assignment of executory contracts. Docket No. 286. The Debtor then notified Georgia-Pacific that it intends to assume and assign the Purchase Agreement in connection with the Sale Motion and Stalking Horse APA, after curing such amounts and permitting Georgia-Pacific to exercise its setoff rights. *Compare* Docket No. 515 at 44 *with* Docket No. 442, Agenda Item 2.

12.  But if the Debtor does not assume the Purchase Agreement in connection with the Sale Motion and Stalking Horse APA, the Debtor purports to sell Georgia-Pacific's assets—the Consigned Products and its setoff claims—free and clear of Georgia-Pacific's right, title, and interest to such assets. *Compare* Stalking Horse APA § 2.1 *with* §§ 3.4(b) and 5.12.

13.  Moreover, after Georgia-Pacific filed a motion for relief from the automatic stay to exercise its setoff or recoupment rights, the Debtor acknowledged and agreed to Georgia-Pacific's setoff or recoupment amount and, incidentally, its cure amount. *Compare* Docket No. 198 *with* Docket No. 442 ("The Debtors and Georgia-Pacific have reached an agreement

---

[8] "Liability" means any debt, loss, claim, damage, demand, fine, judgment, penalty, liability or obligation (whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due). Stalking Horse APA at 7. "Encumbrance" means any charge, claim, mortgage, lien, encumbrance, option, pledge, security interest or other restriction of any kind. *Id.* at 4.

regarding Georgia-Pacific's cure amount."). The Sale Motion purports to sell free and clear of the same rights the Debtor has already acknowledged. *See* Stalking Horse APA §§ 2.1(d), (q).

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### A.   The Consigned Products Are Not Property of the Estate

14.   The Consigned Products are not property of the Debtor's estate, and the Debtor has failed to carry its heavy burden to prove otherwise. "A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate." *In re Whitehall Jewelers Holdings, Inc.*, No. 08–11261 (KG), 2008 WL 2951974, at *4 (Bankr. D. Del. July 28, 2008); *accord Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) ("[T]he property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'"); *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir.2005) (even before one gets to Section 363(f), Section 363(b) requires that the estate demonstrate that the property it proposes to sell is "property of the estate."); *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) (holding that section 363(f) does not permit a trustee to sell the property of a non-debtor spouse because such property was not "property of the estate"); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) (finding it necessary to determine whether an asset is property of the estate in order to decide whether the trustee is entitled to sell the asset pursuant to section 363(f)).

15.   In *In re Whitehall Jewelers, Inc.*, this Court dealt with whether a chapter 11 debtor could sell consignment goods free and clear of the interests of consignment creditors. 2008 WL 2951974. The Court refused to approve the sale without first ruling on whether the

consigned goods delivered to Whitehall were property of Whitehall's bankruptcy estate under section 541 of the Bankruptcy Code. *Id.* at *4. That required Whitehall to first commence separate lawsuits against each of the 124 consignment creditors to determine ownership of the consigned goods. *Id.* at * 6 (holding that "the Court cannot determine whether the Consigned Goods are property of the estate through a contested matter, such as a sale motion under Section 363."). In holding that the debtor's burden of proof is "a heavy one" when it seeks a pre-confirmation sale of all or substantially all of its assets, the Court reasoned that it was premature to analyze the scope of section 363(f)—as suggested by the Whitehall debtors—because the Court had to first determine whether the consigned goods were even property of the Whitehall debtors' estates. *Id.* at 5–6. The Court thus denied the debtors' sale motion, stating that "the [d]ebtors' effort to utilize Section 363(f)(4) is simply too far beyond the Court's range of permissible movement." *Id.* at *7.

16. *Whitehall Jewelers, Inc.* is not alone. The Bankruptcy Court for the District of Connecticut has also held that a trustee cannot sell inventory under Sections 363(b) or 363(f) "prior to successful avoidance of the [c]onsigners' interest in the [i]nventory." *In re Interiors of Yesterday, LLC*, 2007 WL 419646, at *7 (Bankr. D. Conn. Feb. 2, 2007). The court in *Interiors* also rejected the trustee's argument that a sale was permissible under section 363(f)(4) because the consignors' interest in the inventory was subject to *bona fide* dispute, holding that "a Section 363(f)(4) sale cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate.'" *Id.* (quoting *In re Claywell*, 341 B.R. 396, 398 (Bankr. D. Conn. 2006)).

17. Here, the Debtor has neither carried its heavy burden to prove that the Consigned Products are property of its estate, nor can it do so through a contested matter. *Whitehall*

*Jewelers, Inc.*, 2008 WL 2951974, at *6-7. Even if the Debtor commenced an adversary proceeding, the Consigned Products are property of Georgia-Pacific, not property of the Debtor's estate. Section 5 of the Purchase Agreement clarifies this consignment relationship, and Georgia-Pacific filed a UCC-1 to perfect its interest in the Consigned Products. This Court should therefore deny the Sale Motion to the extent the Debtor seeks to sell the Consigned Products to the Stalking Horse or another Successful Bidder.

### B. The Debtor Cannot Sell Free and Clear of Georgia-Pacific's Setoff or Recoupment Rights and Georgia-Pacific Demands Adequate Protection under Section 363(e) of the Bankruptcy Code

18. Although the Debtor has unequivocally acknowledged Georgia-Pacific's setoff rights, *see* Docket No. 442, the Debtor nonetheless purports to sell its receivables and rebates to the Stalking Horse free and clear of them. *Compare* Stalking Horse APA § 2.1 *with* §§ 3.4(b) and 5.12. The Debtor cannot do so under section 363(f) of the Bankruptcy Code.[9] Section 506(a)(1) of the Bankruptcy Code states that Georgia-Pacific's right of setoff is a secured claim. 11 U.S.C. § 506(a)(1). And in the Sale Motion, the Debtor has made no showing that it can sell free and clear of Georgia-Pacific's setoff or recoupments rights under section 363(f) of the Bankruptcy Code. *See* Sale Motion at 28. The Debtor has therefore failed to carry its burden.

19. Moreover, Georgia-Pacific demands adequate protection under section 363(e) of the Bankruptcy Code, and specifically, Georgia-Pacific demands that the sale of the receivables and rebates be made *subject to* Georgia-Pacific's setoff or recoupment rights. Under sections

---

[9] Nor can the Debtor, under binding Third Circuit precedent, sell its receivables and entitlements to rebates free and clear of Georgia-Pacific's defense, which includes the right of recoupment. *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3d Cir. 2000) (holding that assets cannot be sold free and clear of defenses, including recoupment). For the avoidance of doubt, Georgia-Pacific has preserved and continues to reserve all its rights to contend that the amounts it owes the Debtor are subject to recoupment because they arise out of the same transactions and occurrences (namely, transactions under the Purchase Agreement).

361 and 363(e) of the Bankruptcy Code, the Debtor cannot convey the receivables and rebates "free and clear" of Georgia-Pacific's secured claim without providing adequate protection to Georgia-Pacific. Section 363(e) of the Bankruptcy Code provides that: ". . . on request of an entity that has an interest in property . . . proposed to be used, sold or leased . . . the court . . . *shall prohibit* or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added). The Debtor has the burden to prove such adequate protection. *See id.* § 363(p). Bankruptcy Code section 361 provides "[w]hen adequate protection is required under section . . . 363 . . . such adequate protection may be provided by . . . (1) requiring the trustee to make a cash payment . . . to such entity . . . (2) providing to such entity an additional or replacement lien . . . or (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361. "Adequate protection" is defined in this context to mean "the realization . . . of the indubitable equivalent" of Georgia-Pacific's rights and defenses purportedly being stripped. 11 U.S.C. § 361(3). No adequate protection under section 363(e) for Georgia-Pacific could possibly be the "indubitable equivalent" of Georgia-Pacific's setoff or recoupment rights, other than selling the receivables and rebates *subject to* those rights. Any order approving the Sale Motion should be so modified.

### IV.    CONCLUSION

WHEREFORE, Georgia-Pacific respectfully requests that the Court (i) sustain its limited objection and deny the Sale Motion to the extent the Debtor seeks to sell the Consigned Products to the Stalking Horse or another Successful Bidder or to the extent the Debtor seeks to sell free

and clear of Georgia-Pacific's setoff or recoupments rights and (iii) grant Georgia-Pacific such further relief as is just and proper.

June 4, 2015

MORRIS JAMES LLP

/s/ JWC

Jeffrey R. Waxman (Bar No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801-1494
Telephone:  (302) 888-6800
Email: jwaxman@morrisjames.com

-and-

David A. Wender (GA Bar No. 748117)
Jonathan T. Edwards (GA Bar No. 134100)
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  404-881-7000

*Attorneys for Georgia-Pacific Consumer Products LP*