# EXHIBIT A-1

## Amendment Letter

## Amendment No. 1
## to
## Engagement Agreement

This Amendment No. 1 to Engagement Agreement (the "Amendment") is entered into effective as of April 9, 2015 (the "Effective Date") by and between The Standard Register Company (together with its controlled subsidiaries and any entity formed or used for the purposes set forth in the Engagement Agreement, the "Company") and Lazard Frères & Co. LLC ("Lazard").

The Company and Lazard are parties to a letter agreement dated December 27, 2014 (the "Engagement Agreement"), pursuant to which the Company retained Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing on the terms and conditions set forth therein (capitalized terms used herein and not otherwise defined have the meanings assigned to them in the Engagement Agreement). The Company and Lazard wish to amend the terms of the Engagement Agreement as set forth below.

Accordingly, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Lazard agree as follows:

1. **Amendments to Section 2 of the Engagement Agreement.**

    A.   The sentence "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable." is hereby deleted in its entirety and replaced with the following sentence: "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement through August 31, 2015 and one-hundred percent (100%) of all Monthly Fees paid in respect of any months thereafter shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable."

    B.   The phrase "equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee" at the end of Section 2(d)(i) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "equal to the fee calculated as set forth in Schedule I hereto".

    C.   The phrase "1% of the aggregate principal amount of Existing Obligations involved in the Restructuring" at the end of Section 2(c) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "$3,500,000, less the credit for Monthly Fees as described in Section 2(a) of the Agreement".

    D.   The language in each of the following Sections is hereby deleted in its entirety and replaced with, "[Reserved]": 2(b) and 2(d)(ii).

D. The phrase "or Minority Sale Transaction Fee" in Section 2(d)(iii) is hereby deleted in its entirety.

E. The following sentence is added to the end of 2(e): "Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises."

F. The language in 2(f) is hereby deleted in its entirety and replaced with the following: "Lazard shall not be paid more than one fee for its services, except with respect to a Restructuring Fee and Financing Fee, which, in the context of a Restructuring, may both be payable. For the avoidance of doubt, if Lazard earns a Sale Transaction Fee, it will not be entitled to any other fee."

2. **Amendment to Section 10 of the Engagement Agreement.**

A. The phrase "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment)" is hereby deleted and replaced with the following: "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) or a Sale Transaction involving all or substantially all of the assets of the Company, whichever occurs first,".

B. The number "12" in 10(y) is hereby deleted and replaced with the number "18".

C. The phrase "(a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be," is hereby deleted and replaced with the following: "following any termination or expiration of our engagement we shall remain entitled to any fees not yet paid but earned and accrued pursuant to Section 2 on or prior to such termination or expiration date, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration date, as the case may be."

3. **Amendment to Schedule I to the Engagement Agreement.**

Schedule I is hereby deleted from the Engagement Agreement and replaced with the following:

"Fees for Sale Transactions

The Sale Transaction Fee shall be calculated as follows:

- if no auction has been conducted and the stalking horse bid is consummated, the Sale Transaction Fee shall be a flat fee of $2.25 million less the credit for Monthly Fees as described in Section 2(a) of the Agreement; and

- if an auction has been conducted, the Sale Transaction Fee shall be equal to the sum of: (x) $2.75 million plus (y) with respect to Aggregate Consideration in excess of $275 million, an amount equal to 3.0% of Aggregate Consideration (if any), less (2) the credit for Monthly Fees as described in Section 2(a) of the Agreement; provided, that the sum

of (A) the Sale Transaction Fee, (B) the Initial Fee and (C) the portion of any Monthly Fees that are not credited pursuant to Section 2(a) of the Agreement shall not be greater than 1.5% of Aggregate Consideration (the sum of (A), (B), and (C), collectively, the "Aggregate Compensation Cap"). For the avoidance of doubt, the aggregate compensation due, owing, paid, and payable by the Company to Lazard with respect to a Sale Transaction shall never exceed the Aggregate Compensation Cap. Notwithstanding anything to the contrary herein, to the extent there is no competitive bidding at auction and the stalking horse bid is selected as the successful bidder without any material change to the purchase price, then the Sale Transaction Fee shall be the same as if no auction had been conducted.

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, and including any amounts credit bid by a buyer plus (y) all indebtedness for borrowed money or other liabilities assumed or repaid by the third party buyer. For the avoidance of doubt, in the case of a Sale Transaction that involves a credit bid, Aggregate Consideration shall not include any principal and accrued interested on preexisting indebtedness to the buyer that is not part of its credit bid. Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Company or relevant Company entity, as applicable, in connection with such Sale Transaction, and the fair market value of Company assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Company or its or their respective security holders after the date of this Agreement. Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Company or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration provided, to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests) in their capacity as employees (rather than in their capacity as holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed, assumed directly or indirectly by the third party buyer. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction."

4.  **Amendment to Schedule II to the Engagement Agreement.**

Schedule II is hereby deleted from the Engagement Agreement and replaced with the following:

## SCHEDULE II

Fees for Financing

The following table outlines the Financing Fees related to any financing. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing. Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises. Notwithstanding the foregoing, Lazard shall not be entitled to any Financing Fee in connection with any Financing conducted during the chapter 11 cases (other than an exit financing) unless, in connection with such Financing, all obligations under the DIP ABL facility, DIP term loan facility, and prepetition first lien term loan facility are paid in full in cash upon the closing of such Financing.

| Funds Raised | Fee % |
|---|---|
| ABL | 0.75% |
| Senior Secured Debt (other than ABL) | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

5.  **Miscellaneous.** Except as expressly set forth above, the Engagement Agreement and the Indemnification Letter shall continue in full force and effect in accordance with its terms. Unless the context otherwise requires, any other document or agreement that refers to the Engagement Agreement shall be deemed to refer to the Engagement Agreement after giving effect to this Amendment (and any other amendments to the Engagement Agreement made from time to time pursuant to its terms). This Amendment may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Copies of this Amendment with facsimile or electronic signatures and copies of this Amendment (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Amendment.

*[Signature page follows.]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

THE STANDARD REGISTER COMPANY, on behalf of itself and its controlled subsidiaries

By: *Gerard D. Sowar*
Name: GERARD D. SOWAR
Title: EVP, GENERAL COUNSEL & SECRETARY

LAZARD FRERES & CO. LLC

By: *[signature]*
Name: ANDREW TORGOVE
Title: Managing Director