## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 15-10541 (BLS) |
| THE STANDARD REGISTER COMPANY, *et al.,* | : | |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | **Sale Hearing: June 17, 2015, at 10:00 AM** |
| | : | **Sale Objection Due:  June 1, 2015, at 4:00 PM** |
| | : | |
| | : | **Related Docket Nos. 23, 286, 461, 515 and 559** |

## OBJECTION BY THE UNITED STATES TO MOTION FOR SALE

The United States, through undersigned counsel, objects to the assumption and assignment of its contracts pursuant to the  Debtors' Motion for (I) an Order (A) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Approving Bid Protections; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (E) Scheduling a Hearing to Consider the Proposed Sale; and (F) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale ("Sale Motion") [DE 23].  In support of its objection, the United States avers as follows:

1

1. On March 12, 2015, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. [DE 1].

2. On April 15, 2015, the Court entered the Sale Procedures Order with respect to the Sale Motion which set a June 17, 2015, sale hearing and set out procedures for the assumption and assignment of certain contracts. [DE 286]. Pursuant to this Order, notices were sent out making objections to the assumption and assignment of certain contracts due May 28, 2015, and June 3, 2015, respectively, including the federal contracts identified herein. The United States is filing this objection after the objection deadline because the undersigned counsel first became aware of the Debtors' purported assumption and assignment of certain federal contracts this morning. This objection is based on the limited information that was gathered by the undersigned counsel today.

3. On May 8, 2015, the Debtors filed the Second Amended Notice of (I) Entry into Stalking Horse Agreement and (II) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale of Substantially All of the Debtors' Assets ("Second Notice"). [461] The Second Notice listed a Naval Medical Logistics Command Software Integration agreement ("Navy Contract") as well as agreements with the U.S. Department of Commerce and the U.S. Postal Service ("USPS") but omitted contract numbers, addresses and points of contact for the listed federal agreements. On May 14, 2015, the Debtors filed the Third Amended Notice ("Third Notice") listing the same agreements and the same information. Pursuant to the Second and Third Notices (collectively, "Notices"), the Debtors seek to potentially assume and assign the Navy Contract and other federal agreements.

4. Upon information and belief, the Debtors also have or have had contracts with the United States Veterans Administration and the United States Army.

5. The only contract the undersigned has been able to verify thus far is the Navy Contract. The United States believes that the Navy contract is contract # GS-35F-0161U-N62645-13-F-0049 and has a total value estimated at $5,667,664.00.

6. The Notices set a zero cure amount for all of the federal agreements except one contract with the USPS which is listed as having a cure of $1,701.28. The United States is still in the process of reviewing its records and it objects to the setting of cure amounts for the federal agreements because it has not had sufficient time to complete its records review.

7. Attached to the Sale Motion is a proposed order authorizing the sale of substantially all of the Debtors' assets ("Sale Order"). The Sale Order contains provisions which are extremely prejudicial to the rights of the United States and contravene Section 363(f) of the Bankruptcy Code. This is evidenced in Paragraphs 23 and 24 of the Sale Order:

> 23. The Transferred Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyers in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Transferred Contracts after such assignment to and assumption by the Buyers.

> 24. Upon the Debtors' assignment of the Transferred Contracts under the provisions of this Order, no default shall exist under any Transferred Contract and no counterparty to any such Transferred Contract shall be permitted to declare or enforce a default by the Debtor or the Buyers thereunder or otherwise take action against the Buyers as a result of any of the Debtors' financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract. Any provision in an Transferred Contract that prohibits or conditions the assignment or sublease of such Transferred Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or

3

modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Transferred Contract to the Buyers. The failure of the Debtors or the Buyers to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyers' rights to enforce every term and condition of the Transferred Contract.

Under 11 U.S.C. § 363(c)(1) the Debtors "may not assume or assign any executory contract or unexpired lease of the debtor…if applicable law excuses such a party, other than the debtor, to such a contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession." Moreover, the Anti-Assignment Act, 41 U.S.C. § 6305, provides:

The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

In addition to the Anti-Assignment Act, regulations which govern the Navy Contract, and probably all of the other federal agreements, are set forth in the Federal Acquisition Regulation ("FAR") codified at Title 48, Chapter 1 of the United States Code of Federal Regulations. The FAR governs the acquisition process by which the federal government contracts to acquire goods and services and it regulates the activities of government personnel in carrying out this process. In the context of transferring federal contracts, FAR 42.1204 provides in relevant part:

### 42.1204 Applicability of Novation Agreements.

(a) 41 U.S.C. 6305 prohibits transfer of Government contracts from the contractor to a third party. The Government may, when in its interest, recognize a third party as the successor in interest to a Government contract when the third party's interest in the contract arises out of the transfer of-

4

(1) All the contractor's assets; or

(2) The entire portion of the assets involved in performing the contract. (See 14.404-2(l) for the effect of novation agreements after bid opening but before award.) Examples of such transactions include, but are not limited to-

 (i) Sale of these assets with a provision for assuming liabilities;

(ii) Transfer of these assets incident to a merger or corporate consolidation; and

(iii) Incorporation of a proprietorship or partnership, or formation of a partnership.

(b) A novation agreement is unnecessary when there is a change in the ownership of a contractor as a result of a stock purchase, with no legal change in the contracting party, and when that contracting party remains in control of the assets and is the party performing the contract. However, whether there is a purchase of assets or a stock purchase, there may be issues related to the change in ownership that appropriately should be addressed in a formal agreement between the contractor and the Government (see 42.1203(e)).

(c) When it is in the Government's interest not to concur in the transfer of a contract from one company to another company, the original contractor remains under contractual obligation to the Government, and the contract may be terminated for reasons of default, should the original contractor not perform.

(d) When considering whether to recognize a third party as a successor in interest to Government contracts, the responsible contracting officer shall identify and evaluate any significant organizational conflicts of interest in accordance with subpart 9.5. If the responsible contracting officer determines that a conflict of interest cannot be resolved, but that it is in the best interest of the Government to approve the novation request, a request for a waiver may be submitted in accordance with the procedures at 9.503.

(e) When a contractor asks the Government to recognize a successor in interest, the contractor shall submit to the responsible contracting officer three signed copies of the proposed novation agreement and one copy each, as applicable, of the following:

(1) The document describing the proposed transaction, e.g., purchase/sale agreement or memorandum of understanding.

(2) A list of all affected contracts between the transferor and the Government, as of the date of sale or transfer of assets, showing for each, as of that date, the-

(i) Contract number and type;

(ii) Name and address of the contracting office;

(iii) Total dollar value, as amended; and

(iv) Approximate remaining unpaid balance.

(3) Evidence of the transferee's capability to perform.

(4) Any other relevant information requested by the responsible contracting officer.

(f) Except as provided in paragraph (g) of this section, the contractor shall submit to the responsible contracting officer one copy of each of the following documents, as applicable, as the documents become available:

(1) An authenticated copy of the instrument effecting the transfer of assets; e.g., bill of sale, certificate of merger, contract, deed, agreement, or court decree.

(2) A certified copy of each resolution of the corporate parties' boards of directors authorizing the transfer of assets.

(3) A certified copy of the minutes of each corporate party's stockholder meeting necessary to approve the transfer of assets.

(4) An authenticated copy of the transferee's certificate and articles of incorporation, if a corporation was formed for the purpose of receiving the assets involved in performing the Government contracts.

(5) The opinion of legal counsel for the transferor and transferee stating that the transfer was properly effected under applicable law and the effective date of transfer.

(6) Balance sheets of the transferor and transferee as of the dates immediately before and after the transfer of assets, audited by independent accountants.

(7) Evidence that any security clearance requirements have been met.

(8) The consent of sureties on all contracts listed under paragraph (e)(2) of this section if bonds are required, or a statement from the transferor that none are required.

(g) If the Government has acquired the documents during its participation in the pre-merger or pre-acquisition review process, or the Government's interests are adequately protected with an alternative formulation of the information, the responsible contracting officer may modify the list of documents to be submitted by the contractor.

(h) When recognizing a successor in interest to a Government contract is consistent with the Government's interest, the responsible contracting officer shall execute a novation agreement with the transferor and the transferee. It shall ordinarily provide in part that-

 (1) The transferee assumes all the transferor's obligations under the contract;

(2) The transferor waives all rights under the contract against the Government;

(3) The transferor guarantees performance of the contract by the transferee (a satisfactory performance bond may be accepted instead of the guarantee); and

(4) Nothing in the agreement shall relieve the transferor or transferee from compliance with any Federal law.

(i) The responsible contracting officer shall use the following format for agreements when the transferor and transferee are corporations and all the transferor's assets are transferred. This format may be adapted to fit specific cases and may be used as a guide in preparing similar agreements for other situations.

Novation Agreement

The ABC Corporation (Transferor), a corporation duly organized and existing under the laws of _____ [insert State] with its principal office in _____ [insert city]; the XYZ Corporation (Transferee), [if appropriate add "formerly known as the EFG Corporation"] a corporation duly organized and existing under the laws of _____ [insert State] with its principal office in _____ [insert city]; and the United States of America (Government) enter into this Agreement as of _____ [insert the date transfer of assets became effective under applicable State law].

(a) The parties agree to the following facts:

(1) The Government, represented by various Contracting Officers of the _____ [insert name(s) of agency(ies)], has entered into certain contracts with the Transferor, namely: _____ [insert contract or purchase order identifications]; [or delete "namely" and insert "as shown in the attached list marked 'Exhibit A' and incorporated in this Agreement by reference."]. The term "the contracts," as used in this Agreement, means the above contracts and purchase orders and all other contracts and purchase orders, including all modifications, made between the Government and the Transferor before the effective date of this Agreement (whether or not performance and payment have been completed and releases executed if the Government or the Transferor has any remaining rights, duties, or obligations under these contracts and purchase orders). Included in the term "the contracts" are also all modifications made under the terms and conditions of these contracts and purchase orders between the Government and the Transferee, on or after the effective date of this Agreement.

(2) As of _____, 20___, the Transferor has transferred to the Transferee all the assets of the Transferor by virtue of a _____ [insert term descriptive of the legal transaction involved] between the Transferor and the Transferee.

(3) The Transferee has acquired all the assets of the Transferor by virtue of the above transfer.

(4) The Transferee has assumed all obligations and liabilities of the Transferor under the contracts by virtue of the above transfer.

(5) The Transferee is in a position to fully perform all obligations that may exist under the contracts.

(6) It is consistent with the Government's interest to recognize the Transferee as the successor party to the contracts.

(7) Evidence of the above transfer has been filed with the Government. [When a change of name is also involved; e.g., a prior or concurrent change of the Transferee's name, an appropriate statement shall be inserted (see example in paragraph (8) of this Agreement)].

(8) A certificate dated _____, 20___, signed by the Secretary of State of _____ [insert State], to the effect that the corporate name of EFG Corporation was changed to XYZ Corporation on _____, 20__, has been filed with the Government.

(b) In consideration of these facts, the parties agree that by this Agreement-

(1) The Transferor confirms the transfer to the Transferee, and waives any claims and rights against the Government that it now has or may have in the future in connection with the contracts.

(2) The Transferee agrees to be bound by and to perform each contract in accordance with the conditions contained in the contracts. The Transferee also assumes all obligations and liabilities of, and all claims against, the Transferor under the contracts as if the Transferee were the original party to the contracts.

(3) The Transferee ratifies all previous actions taken by the Transferor with respect to the contracts, with the same force and effect as if the action had been taken by the Transferee.

(4) The Government recognizes the Transferee as the Transferor's successor in interest in and to the contracts. The Transferee by this Agreement becomes entitled to all rights, titles, and interests of the Transferor in and to the contracts as if the Transferee were the original party to the contracts. Following the effective date of this Agreement, the term "Contractor," as used in the contracts, shall refer to the Transferee.

(5) Except as expressly provided in this Agreement, nothing in it shall be construed as a waiver of any rights of the Government against the Transferor.

8

(6) All payments and reimbursements previously made by the Government to the Transferor, and all other previous actions taken by the Government under the contracts, shall be considered to have discharged those parts of the Government's obligations under the contracts. All payments and reimbursements made by the Government after the date of this Agreement in the name of or to the Transferor shall have the same force and effect as if made to the Transferee, and shall constitute a complete discharge of the Government's obligations under the contracts, to the extent of the amounts paid or reimbursed.

(7) The Transferor and the Transferee agree that the Government is not obligated to pay or reimburse either of them for, or otherwise give effect to, any costs, taxes, or other expenses, or any related increases, directly or indirectly arising out of or resulting from the transfer or this Agreement, other than those that the Government in the absence of this transfer or Agreement would have been obligated to pay or reimburse under the terms of the contracts.

(8) The Transferor guarantees payment of all liabilities and the performance of all obligations that the Transferee-

(i) Assumes under this Agreement; or

(ii) May undertake in the future should these contracts be modified under their terms and conditions. The Transferor waives notice of, and consents to, any such future modifications.

(9) The contracts shall remain in full force and effect, except as modified by this Agreement. Each party has executed this Agreement as of the day and year first above written.

United States of America,

By _____

Title _____

ABC Corporation,

By _____

Title _____

[Corporate Seal]

XYZ Corporation,

By _____

Title _____

[Corporate Seal]

Certificate

I, _____, certify that I am the Secretary of ABC Corporation, that _____, who signed this Agreement for this corporation, was then _____ of this corporation; and that this Agreement was duly signed for and on behalf of this corporation by authority of its governing body and within the scope of its corporate powers. Witness my hand and the seal of this corporation this day of _____ 20 ___.

By _____

[Corporate Seal]

Certificate

I, _____, certify that I am the Secretary of XYZ Corporation, that _____, who signed this Agreement for this corporation, was then _____ of this corporation; and that this Agreement was duly signed for and on behalf of this corporation by authority of its governing body and within the scope of its corporate powers. Witness my hand and the seal of this corporation this day of _____ 20 ___.

By _____

[Corporate Seal]

The Third Circuit has confirmed that under the Anti-Assignment Act, debtors may not assign or assume any executory contract with the United States without first obtaining its consent. *In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988).  It is imperative to preserve the Government's ability to determine with whom to contract.  This is especially important in a situation such as this where the Navy Contract is a sole source contract with the Debtors.  Section 363 of the Bankruptcy Code, upon which the Debtors' sale process primarily relied, does not preempt non-bankruptcy law in this regard.  Accordingly, the United States objects to the assumption and assignment of its contracts unless and until the Debtors and the Purchaser obtain

10

the appropriate written federal consents and comply with all applicable non-bankruptcy law.

8. The United States objects to the proposed relief granted in paragraph 46 of the Sale Order. That paragraph provides that the Sale Order shall be effective and enforceable immediately upon entry and its provisions will be self-executing. The Sale Order further provides that notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, the Sale Order will not be stayed for the fourteen day provided for in such rules. By including these provisions in the Sale Order, the Debtors are attempting to circumvent the appeal rights of the United States. Pursuant to Rules 6004(h), 6006(d) and 7062 of the Federal Rules of Bankruptcy Procedure, unless otherwise ordered by the Court, there is an automatic fourteen day stay imposed from the date of the entry of the order. Under the Debtors' proposed scheme, if the United States is unable to immediately obtain a hearing before the appropriate Court to seek a stay, its appeal may be contended to be moot. Particularly in light of the fact that the appellants in this case would be a government agencies, with a chain of command to be consulted, this unilateral ability of the Debtors and the purchaser to truncate the stay period would be unfair and prejudicial to the United States.

9. The United States also objects to paragraph 47 of the Sale Order which provides that the Bankruptcy Court shall have exclusive jurisdiction over any disputes relating to the sale. While "the bankruptcy court plainly [may retain] jurisdiction to interpret and enforce its own prior orders," *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009), it may not divest other courts of their concurrent jurisdiction to interpret bankruptcy court orders. Rather, if the United States, post-sale, asserts police and regulatory rights and liabilities in a non-bankruptcy court of competent jurisdiction, that court may hear and determine all issues raised in the action, including whether the

defendant can rely on the sale order as an affirmative defense.  Adjudication of such a defense is a

proceeding over which the bankruptcy court, as a unit of the district court, has "original *but not*

*exclusive jurisdiction.*"  28 U.S.C. § 1334(b) (emphasis added).  *See In re Skyline Woods Country*

*Club*, 636 F.3d 467 (8th Cir. 2011); *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002).

      **WHEREFORE**, the United States requests that the Court deny the relief set forth in the

Sale Motion with respect to the Navy Contract and any other federal agreements and grant such

other and further relief as is necessary and just.

                                       CHARLES M. OBERLY, III
                                       United States Attorney


                          By: */s/ Ellen W. Slights*
                              Ellen W. Slights
                              Assistant United States Attorney
                              Delaware State Bar No. 2782
                              1007 Orange Street, Suite 700
                              P.O. Box 2046
                              Wilmington, DE 19899-2046

Dated:  June 10, 2015

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE STANDARD REGISTER COMPANY, *et al.*, | : | Case No. 15-10541 (BLS) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : | **Sale Hearing: June 17, 2015, at 10:00 AM** |
|  | : | **Sale Objection Due:  June 1, 2015, at 4:00 PM** |
|  | : |  |
|  | : | **Related Docket Nos. 23, 286, 461, 515 and 559** |

### AFFIDAVIT OF SERVICE

I HEREBY CERTIFY that a copy of this OBJECTION BY THE UNITED STATES TO MOTION FOR SALE was served on the following in the manner indicated below at the following address:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn: Barbara Becker & Robert A. Klyman
bbecker@gibsondunn.com & rklyman@gibsondunn.com
(via E-mail)

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19081
Attn: Michael R. Nestor
mnestor@ycst.com
(via E-mail)

Skadden Arps Slate Meagher & Flom LLP
155 N. Wacker Drive
Chicago, IL 60606
Attn: Ron Meisler & Christopher M. Dressel
ron.meisler@skadden.com & Christopher.dressel@skadden.com
(via E-mail)

/s/ _Marissa Ballasy_
Marissa Ballasy

June 10, 2015