**EXHIBIT C**

*ADI* Decision (May 5, 2015)

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| **ADI LIQUIDATION, INC.,** | : |
| (f/k/a/AWI Delaware, Inc.).,[1] | : |
| | : Case No. 14-12092 (KJC) |
| Debtors | : |
| | : Re: D.I. 1821 |
| | : |

## MEMORANDUM[2]

Before the Court is the Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order (I) Authorizing the Debtors to Offset Trade Credits, Vendor Overpayments, and/or Other Amounts Owed to the Debtors First Against the Administrative or Secured Portion of Creditors' Claims; and (II) Disallowing Claims for Post-Petition Interest in Connection with Claims Asserted Under 11 U.S.C. §503(b)(9) (D.I. 1821) (the "Joint Motion"). Creditors filed more than 18 objections and responses to the Joint Motion.[3] For the reasons stated herein, the Joint Motion will be granted.

---

[1] The Debtors are as follows: ADI Liquidation, Inc. (f/k/a AWI Delaware, Inc.); AW Liquidation, Inc. (f/k/a Associated Wholesalers, Inc.); NK Liquidation, Inc. (f/k/a Nell's Inc.); Co-Op Agency Inc.; AL Liquidation, Inc. (f/k/a Associated Logistics, Inc.); WR Liquidation, Inc. (f/k/a White Rose, Inc.); RT Liquidation Corp. (f/k/a Rose Trucking Corp.); WRSC Liquidation Corp. (f/k/a WR Service Corp.); WRSC II Liquidation Corp. (f/k/a WR Service II Corp.); WRSC V Liquidation Corp. (f/k/a WR Service V Corp.); and White Rose Puerto Rico, LLC.

[2] This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

[3] Objections and responses to the Joint Motion were filed by (i) The Berks Packing Co., Inc. (D.I. 1910); (ii) Georgia-Pacific Consumer Products, LP (D.I. 1918); (iii) The *Ad Hoc* Committee of Section 503(b)(9) Creditors (D.I. 1921); (iv) Kellogg Company (D.I.s 1922, 2013); (v) The Dannon Company, Inc. (D.I. 1923); (vi) New World Pasta and Riviana Foods (D.I. 1925); (vii) Kimberly-Clark Global Sales, LLC (D.I. 1926); (viii) Kraft Food Group, Inc. and Churny Company, Inc. (D.I. 1927); (ix) Turkey Hill, L.P. (D.I. 1929); (x)
(continued . . .)

## Background

On September 9, 2014, the Debtors filed voluntary chapter 11 bankruptcy petitions (the "Petition Date"). At that time, the Debtors were a cooperative food distributor that provided distribution and retail services to member retailers. The Debtors serviced 800 supermarkets, specialty stores, convenience stores and superettes with grocery, meat, produce, dairy, frozen foods and general merchandise/health and beauty care products.

On September 17, 2014, the Office of the United States Trustee appointed seven of the Debtors' largest unsecured creditors to serve as members of the Official Committee of Unsecured Creditors (the "Committee").

On October 29, 2014, following a competitive auction, this Court entered an order (the "Sale Order") approving the sale (the "Sale") of substantially all of the Debtors' assets to C&S Wholesale Grocers, Inc. ("C&S"). The Sale closed on November 14, 2014 (the "Closing Date"). Pursuant to the Sale Order, the Debtors sold the "Acquired Assets" to the purchaser free and clear of all liens, claims, encumbrances and interests, including "[a]ll offsets, setoffs, right of recovery, claims of any type or kind, or any legal or equitable theory . . . other than Recoupment Rights that any party could assert against the Debtor or their estates." Sale Order, at ¶50. The Sale Order further provides that the Sale of the Acquired Assets is not free and clear of recoupment or any other affirmative defenses that any party has or may have against the Debtors or their estates. Sale Order, at ¶49.

---

Church & Dwight Co., Inc. (D.I. 1930); (xi) Pepsi-Cola Advertising and Marketing, Inc.Frito-Lay North America, Inc. and affiliates (D.I. 1931); (xii) Lactalis Retail Dairy, Inc. and Lactalis Deli, Inc. (D.I. 1932); (xiii) Rich Products Corporation (D.I. 1935); (xiv) Hain Capital Investors, LLC (D.I. 1937); (xv) ConAgra Foods, Inc. (D.I. 1938); (xvi) Seviroli Foods (D.I. 1939); (xvii) Western Family Foods, Inc. (D.I. 1944); and (xviii) Conopco, Inc. (D.I. 2021) (together, the "Objections").

Beginning in November 2014 and continuing thereafter, creditors filed more than 25 motions[4] for the allowance and payment of §503(b)(9) administrative claims (the "§503(b)(9) Claims").[5] On February 9, 2015, the Debtors filed an emergency motion (D.I. 1580) to adjourn upcoming hearings on the §503(b)(9) Claims and, after negotiations with the claimants, the Debtor submitted proposed procedures to the Court to address the reconciliation of the §503(b)(9) Claims. On February 20, 2015, this Court entered an Order (D.I. 1781) approving procedures for the §503(b)(9) Claims, including procedures governing factual reconciliation of the §503(b)(9) Claims, a briefing schedule for certain legal issues common to the §503(b)(9) Claims, and procedures for allowance and payment of the §503(b)(9) Claims (the "Procedures").

The Debtors and the Committee filed the Joint Motion pursuant to the Procedures. A number of creditors filed Objections to the Joint Motion.[6] C&S filed a "Reservation of Rights and Response" to the Joint Motion (D.I. 1755) that, among other things, seeks to preserve its rights to "Overpayments," as that term is used in the Joint Motion, since C&S contends that "Overpayments" includes amounts that were transferred through the Sale.

A hearing to consider the Joint Motion was held on April 30, 2015.

---

[4] At a hearing on April 30, 2015, Debtors' counsel reported that there were 32 motions filed on behalf of 120 creditors asserting §503(b)(9) claims excess of $15.7 million, and creditors filed proofs of claim asserting §503(b)(9) claims totaling $37.7 million. (Tr. 4/30/2015 at 16:11-17.)

[5] Section 503(b)(9) provides:
(b) After notice and a hearing, there shall be allowed administrative expenses . . . including - -
. . . .
(9)   the value of any goods received by the debtor within 20 days before the date of commencement of the case under this title in which the goods have been sold to the debtor in the ordinary course of such debtors' business.

[6] *See* n.3, *supra*.

3

## Discussion

In the ordinary course of conducting its food distribution and retail business, a number of claimants delivered goods and services that were received by the Debtors within the 20 days prior to the Petition Date. The amounts that the Debtors allegedly owe the claimants for those deliveries form the basis of the §503(b)(9) Claims. However the Debtors assert that, also in the ordinary course of conducting their business, they earned certain credits and refunds, including (i) overpayments that the Debtors made to vendors on COD prior to the Closing Date for products that were not received for periods prior to the Closing Date (the "Vendor Overpayments"), (ii) various promotions, volume discounts, advertising and warehousing allowances, rebates or similar refunds under their vendor supply agreements or separate agreements or arrangements with the vendors (the "Trade Credits"), and (iii) any other amounts owed to the Debtors (the "Other Amounts," and together with the Vendor Overpayments and Trade Credits, the "Credits"). The Debtors assert that they, in their discretion, may decide how to apply the Credits to offset various claims (including §503(b)(9) Claims) against the bankruptcy estate.

In the Joint Motion, the Debtors and the Committee (the "Movants") ask this Court to determine two threshold legal issues that apply to all of the §503(b)(9) Claims generally: (i) whether the Debtors, at their election, can use any setoff or recoupment rights that they hold to reduce the amount of an allowed secured claim, administrative claim (including a §503(b)(9) Claim) or general unsecured claim, and (ii) whether holders of §503(b)(9) Claims are entitled to payment of post-petition interest on their claims.

4

1. <u>General objections to the Joint Motion</u>

Some of the objectors question the Debtors' ability to seek a determination of the legal issues identified above without providing specific information about the amount of Credits that the Debtors want to apply to each individual claimant's claims. The objectors argue that granting the relief requested by the Debtors impacts the claimants' due process rights to be heard on the reconciliation of their individual claims.

Other objectors argue that the relief requested in the Joint Motion is premature because this Court has not yet determined the dispute between the Debtors and C&S regarding ownership of the Credits. The objectors argue that granting the Joint Motion may result in forcing some §503(b)(9) claimants to pay the Credits twice: once as an offset to claims against the Debtors, and once as an offset to claims against C&S.

At the hearing, Debtors' counsel addressed some of these issues by articulating that the relief sought in the Joint Motion was not intended to affect the following:

- The Movants are *not* asking the Court to determine the dispute between the Debtors and C&S regarding ownership of the Credits. Instead, ownership issues will be resolved by agreement between the Debtors and C&S or by a Court Order in a separate adversary proceeding. Furthermore, the Movants are *not* asking the Court to enter an order that would force creditors to pay twice on same Credits. (Tr. 4/30/2015 at 31:12 - 32:5; 44:10 - 45:10).

5

- The Movants are not asking the Court to enter an order permitting the Debtors to offset or recoup Credits that weren't earned; any defense of a claimant to the Debtors' assertion of a setoff or recoupment right will be preserved (Tr. 4/30/2015 at 32:5 - 32:11.)

It is clear that the Joint Motion does not seek a determination regarding the amount of an individual §503(b)(9) Claim or the amount of any claim of the Debtors for setoff or recoupment. As noted by the Court in *Circuit City*:

> Due process requires that parties be given notice and an opportunity to be heard before an ultimate judicial determination is made. As the Fourth Circuit Court has recognized, due process is not a "technical conception of inflexible procedures . . . it is rather a delicate process of adjustment and of balancing of interests in which it is recognized that what is unfair in one situation may be fair in another."

*In re Circuit City Stores, Inc.*, 2009 WL 4755253, *2 (Bankr. E.D. Va. Dec. 3, 2009) quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1014 (4th Cir. 1986). The parties received sufficient notice and opportunity to be heard on the Joint Motion's request for determination of threshold legal issues common to all of the §503(b)(9) Claims. Moreover, each claimant will have an opportunity to obtain a factual determination of the allowed amount of its §503(b)(9) Claims, as well as the amount and validity of the Debtors' asserted setoff and recoupment claims, pursuant to the Procedures. Accordingly, the relief sought in the Joint Motion does not infringe upon any claimants' due process rights.

2. <u>Application of the Debtors' setoff and recoupment rights</u>

The core of the objections dispute the Debtors' freedom to set off or recoup the Credits against the §503(b)(9) Claims. Most of the objectors generally assert that it is inequitable to allow the Debtors to first offset administrative claims before set off against general unsecured claims. The objectors also argue that allowing the Debtors to offset §503(b)(9) Claims:

6

(i) undermines the legislative history of §503(b)(9); (ii) infringes on the creditors' rights of setoff; (iii) allows the Debtors to use §558 as a sword, instead of a shield; (iv) is inconsistent with case law that permits tax claimants to set off general unsecured claims prior to administrative claims; (v) violates §1129(a)(9)(A); (vi) denies the creditors their right to adequate protection; and (vii) fails to recognize that the Debtors' set off rights are limited by contractual provisions and prior course of dealings.

In response, the Debtors argue that no case law or Bankruptcy Code provision supports the objectors' position that their preferred application of the Credits to general unsecured claims, rather than administrative claims, should trump the Debtors' choice. I agree with the Debtors and the Committee that applicable case law, the Bankruptcy Code, and equitable considerations support the position that the Debtors may apply their setoff or recoupment rights, at their discretion, against secured claims, administrative claims (including the §503(b)(9) Claims), or general unsecured claims.

Bankruptcy Code §558 provides that:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. §558. A debtor's right to effectuate setoffs, as it exists under state law, is one of the personal defenses preserved by §558. *Circuit City,* 2009 WL 4755253 at *3. "[B]ecause §558 preserves to the Debtor the defenses it would have had prepetition, the court must examine the transaction as though the bankruptcy had not been filed." *In re PSA, Inc.,* 277 B.R. 51, 53 (Bankr. D.Del. 2002) quoting *In re Papercraft Corp.,* 127 B.R. 346, 350 (Bankr. W.D.Pa. 1991). Therefore, the prepetition/postpetition distinction is not relevant under §558. *PSA,* 277 B.R. at

7

54. Accordingly, this Court and other courts have concluded that a debtor may exercise its setoff rights that arose prepetition against post-petition claims. *In re Prince Sports, Inc.*, 2013 WL 6906717, *2 (Bankr. D.Del. Dec. 11, 2013); *Circuit City*, 2009 WL 4755253 at *3 - *4; *PSA*, 277 B.R. at 54.

In contrast, a creditor's setoff rights are preserved in bankruptcy through Bankruptcy Code §553, but §553 restricts the exercise of a creditor's rights so that prepetition setoff rights can be applied only to prepetition debts and obligations. *Prince Sports*, 2013 WL 6906717 at *2 citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984). The Bankruptcy Code does not treat a debtor's and creditor's right to setoff equally. Allowing the Debtors to offset postpetition claims, while restricting a creditor's setoff rights, is consistent with the plain language of the Code and furthers the goals and objectives of the Code.

> The Court, in evaluating setoff, should favor an application that is most likely to result in equal distributions to the Debtors' creditors as a whole. *See In re Colonial Realty Co.*, 229 B.R. 567, 575 (Bankr. D.Conn. 1999) (holding that the right to setoff is not absolute and must be balanced against the debtor's duty to maximize assets of the bankruptcy estate and equitable treatment of other creditors.)

*Circuit City*, 2009 WL 4755253 at *4. There is no persuasive reason to conclude that the claimants' setoff rights should trump the Debtors' setoff rights. Instead, the differences underlying §558 and §553 lead to the opposite conclusion. The claimants' arguments to the contrary are without merit.

The objectors also argue that allowing a debtor to offset §503(b)(9) Claims strips the value of those claims, ignores legislative intent and provides a disincentive for trade vendors to continue to supply an entity that is struggling financially. The objectors also argue that setting off §503(b)(9) Claims violates §1129(a)(9)(A), which requires full payment of allowed administrative expense claims on a plan's effective date, unless the claimant agrees to different

8

treatment. Although these arguments reinforce the Code's recognition that §503(b)(9) Claims deserve priority payment over general unsecured claims, they do not provide a basis for stripping a debtor's defenses in determining the *allowed amount* of a §503(b)(9) Claim. As discussed above, §558 specifically preserves a debtor's defenses without regard to prepetition and postpetition distinctions. The allowed amount of a §503(b)(9) Claim will be determined pursuant to the Procedures before the claimant can assert a right to priority payment. These arguments against allowing the Debtors to set off §503(b)(9) Claims are rejected.

The objectors point to two tax cases in which bankruptcy courts permitted the IRS to set off tax refunds against general unsecured claims before setting off against priority claims. *See In re Lybrand*, 338 B.R. 402, 407 (Bankr. W.D.Ark. 2006) (recognizing that 26 U.S.C. § 6402(a) gives the IRS discretion to apply a refund to 'any liability' of the taxpayer); *In re Lawson, Inc.*, 187 B.R. 6, 8 (Bankr. D.Idaho 1995) (deciding that the IRS was permitted to set off mutual, prepetition debts under §553, and further recognizing that non-bankruptcy law provides the IRS with the right to offset *any* tax liability, and the balancing of the equities supported the IRS's preferred set off under the facts of that case). The objectors do not assert any non-bankruptcy or equitable basis that would allow them to direct how the Credits are applied, and I perceive no reason why these cases involving application of a separate, distinct statute should apply here.

The objectors further argue that, because Bankruptcy Code §506 characterizes setoff claims as secured claims, the Debtors must provide adequate protection to the extent the Debtors' setoff rights reduce the creditor's setoff rights. To the extent that adequate protection would be appropriate (and I have reservations about whether adequate protection is available under these facts), I agree with the *Circuit City* Court:

> Permitting the Debtor to offset prepetition Receivables against the Claimants' postpetition Administrative Expenses does not in any way

9

> destroy a Claimant's security interest by virtue of § 553 and §506. Satisfying creditor claims by extinguishing debt that a creditor otherwise owes to the Debtor does not erode the value of the claims alleged by the creditor. The Claimant gets the benefit of the extinguishment of the debt it owes to the Debtors dollar for dollar. Therefore, the Claimants are not harmed by the Debtors' exercise of the Debtors' § 558 setoff rights. Rather, the Claimants are complaining that they are not receiving the windfall that they were perhaps hoping to receive to the detriment of creditors as a whole.

*Circuit City*, 2009 WL 4755253 at *4.

The objectors also argue that the Debtors' setoff rights are limited by contract provisions or prior course of dealings between the parties. Therefore, they argue, the Court cannot acknowledge any discretion to permit offset of secured or administrative claims, generally, since the particular facts applicable to each claim may restrict the Debtors' ability to apply their setoff rights to particular debts. In response, the Debtors rely on *Prince Sports*, in which I wrote that "[s]etoff and recoupment are not dependent on the parties' contract; rather they are equitable remedies available independent of any contractual remedy." *Prince Sports*, 2013 WL 6906717 at *2.

In *Prince Sports*, the parties' contract provided that the debtor/tenant could apply a credit based on an overpayment of taxes or operating expenses to the next due installment of rent. *Id.* at *2. By the time the parties determined the amount of the debtor's credit, the debtor had rejected the lease and there was no further rent installment due, rendering it impossible to apply the credit as contemplated by the lease between the parties. The debtor then sought to apply the credit to postpetition rent claims, rather than the unsecured rejection damage claim. I held that §558 preserves all of the debtor's defenses, and I determined that the contract in *Prince Sports* did not affect the debtor's equitable remedies.

10

For the matter currently before me, I conclude that there is a presumption that the claimants' prior course of dealing, industry standards and contract do not operate as a waiver of the Debtors' equitable remedies. However, if a claimant believes that its course of dealing or contractual language provide a good faith basis for arguing that the Debtors have waived their equitable remedies, then the claimant shall have the right to a hearing on the merits of their claim to rebut the presumption.

For the reasons set forth above, I conclude that the Bankruptcy Code, case law and policies underlying the Bankruptcy Code support acknowledging the Debtors' discretion to apply the Credits against secured claims, administrative claims (including §503(b)(9) Claims) or general unsecured claims (to the extent it is determined later, by agreement, or by a Final Order of this Court or a court of competent jurisdiction, that the Debtors own the Credits).

3.  Post-petition Interest

Some holders of §503(b)(9) Claims have asserted a right to payment of interest on their claims, especially since the issues surrounding the ownership and application of the Credits is preventing them from receiving prompt payment of their §503(b)(9) Claims. The Bankruptcy Code contains no provision for the pre-confirmation recovery of interest on §503(b)(9) Claims in a chapter 11 case. The claimants have not provided any basis for the allowance of post-petition interest pursuant to §506(b) or otherwise under the circumstances of this case. Accordingly, the request for payment of interest on unpaid §503(b)(9) Claims will be denied.

## Conclusion

For the reasons set forth above, the Joint Motion will be granted. At the conclusion of the April 30, 2015 hearing, counsel for the Committee asked that, upon this Court's ruling on the Joint Motion, the parties be first given an opportunity to fashion an appropriate order. The accompanying order so provides.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED: May 5, 2015