## **EXHIBIT D**

**Second Lien Mortgage**

Type: Mortgages
Kind: MORTGAGE
Recorded: 10/7/2013 10:24:06 AM
Fee Amt: $308.00  Page 1 of 37
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2013-00070949

THE STANDARD REGISTER COMPANY,

Mortgagor,

to

SILVER POINT FINANCE, LLC,

as Administrative Agent,
Mortgagee

OPEN-END SECOND LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

Dated as of ~~September~~ October _7, 2013

This instrument affects certain real and personal property
located in Montgomery County,
State of Ohio.

Record and return to:

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attention: Brian S. Lichter, Esq.

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

OPEN-END SECOND LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

OPEN-END SECOND LIEN MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING, dated as of September 7, 2013 (this "Mortgage"), made by each of THE STANDARD REGISTER COMPANY, an Ohio corporation (the "Mortgagor"), having an address at 600 Albany Street, Dayton, OH 45417, to SILVER POINT FINANCE, LLC, having an address at 2 Greenwich Plaza, Greenwich, CT 06830, as the Administrative Agent under the Credit Agreement referred to below (together with its successors and assigns from time to time acting as Administrative Agent under such Credit Agreement, the "Mortgagee").

WITNESSETH THAT:

WHEREAS, the Mortgagor is on the date of delivery hereof the owner of fee title to the parcel of land described in Schedule 1 hereto (the "Land") and of the Improvements (such term and other capitalized terms used in this Mortgage having the respective meanings specified or referred to in Article IV);

WHEREAS, pursuant to the terms, conditions and provisions of the Second Lien Credit Agreement, dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among the Mortgagor, the various financial institutions and other Persons from time to time parties thereto (the "Lenders"), and the Mortgagee, as Administrative Agent for the Lenders, the Lenders have agreed to the Term Loan Amendment and Assumption and to hold such Loans in the maximum original principal amount of Ninety-Six Million Two Hundred Forty-Six Thousand Seven Hundred Forty and 38/100 Dollars ($96,246,740.38); and

WHEREAS, the Mortgagor has duly authorized the execution, delivery and performance of this Mortgage.

GRANT:

NOW, THEREFORE, for and in consideration of the premises, and of the mutual covenants herein contained, and in order to induce the Lenders to agree to the Term Loan Amendment and Assumption pursuant to the Credit Agreement, and in order to secure the full, timely and proper payment and performance of and compliance with each and every one of the Loans and the other Obligations, the Mortgagor hereby irrevocably grants, bargains, sells, mortgages, warrants, aliens, demises, releases, hypothecates, pledges, assigns, transfers and

2
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

conveys to the Mortgagee and its successors and assigns, forever, all of the Mortgagor's right, title and interest in and to the following (the "Collateral"):

(a)    Real Estate. All of the Land and estates therein now owned or hereafter acquired by the Mortgagor for use or development with the Land or any portion thereof, together with all and singular the tenements, rights, easements, hereditaments, rights of way, privileges, liberties, appendages and appurtenances now or hereafter belonging or in any way pertaining to the Land and such estates therein (including, without limitation, all rights relating to storm and sanitary sewer, water, gas, electric, railway and telephone services); all development rights, air rights, riparian rights, water, water rights, water stock, all rights in, to and with respect to any and all oil, gas, coal, minerals and other substances of any kind or character underlying or relating to the Land and such estates therein and any interest therein; all estate, claim, demand, right, title or interest of the Mortgagor in and to any street, road, highway or alley, vacated or other, adjoining the Land or any part thereof and such estates therein; all strips and gores belonging, adjacent or pertaining to the Land or such estates; and any after-acquired title to any of the foregoing (herein collectively referred to as the "Real Estate");

(b)    Improvements. All buildings, structures and other improvements and any additions and alterations thereto or replacements thereof, now or hereafter built, constructed or located upon the Real Estate; and, to the extent that any of the following items of property constitutes fixtures under applicable laws, all of the Mortgagor's right, title and interest in and to all furnishings, fixtures, fittings, appliances, apparatus, equipment, machinery, building and construction materials and other articles of every kind and nature whatsoever and all replacements thereof, now or hereafter affixed or attached to, placed upon or used in any way in connection with the complete and comfortable use, enjoyment, occupation, operation, development and/or maintenance of the Real Estate or such buildings, structures and other. improvements, including, but not limited to, partitions, furnaces, boilers, oil burners, radiators and piping, plumbing and bathroom fixtures, refrigeration, heating, ventilating, air conditioning and sprinkler systems, other fire prevention and extinguishing apparatus and materials, vacuum cleaning systems, gas and electric fixtures, incinerators, compactors, elevators, engines, motors, generators and all other articles of property which are considered fixtures under applicable law (such buildings, structures and other improvements and such other property are herein collectively referred to as the "Improvements"; the Real Estate and the Improvements are herein collectively referred to as the "Property");

(c)    Goods. All of the Mortgagor's right, title and interest in and to building materials, goods, construction materials, appliances (including, without limitation, stoves, ranges, ovens, disposals, refrigerators, water fountains and coolers, fans, heaters,

3

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

dishwashers, clothes washers and dryers, water heaters, hood and fan combinations, kitchen equipment, laundry equipment, kitchen cabinets and other similar equipment), stocks, beds, mattresses, bedding an linens, supplies, blinds, window shades, drapes, carpets, floor coverings, manufacturing equipment and machinery, office equipment, growing plants and shrubberies, control devices, equipment (including window cleaning, building cleaning, swimming pool, recreational, monitoring, garbage, pest control and other equipment), motor vehicles, tools, furnishings, furniture, lighting, non-structural additions to the Real Estate and Improvements and all other tangible property of any kind or character, together with all replacements thereof, now or hereafter located on or in or used or useful in connection with the complete and comfortable use, enjoyment, occupation, operation, development and/or maintenance of the Property, regardless of whether or not located on or in the Property or located elsewhere for purposes of storage, fabrication or otherwise (herein collectively referred to as the "Goods");

(d)    Intangibles. All of the Mortgagor's right, title and interest in and to goodwill, trademarks, trade names, option rights, purchase contracts, real and personal property tax refunds, books and records and general intangibles of the Mortgagor relating to the Property and all accounts, contract rights, instruments, chattel paper and other rights of the Mortgagor for the payment of money for property sold or lent, for services rendered, for money lent, or for advances or deposits made, and any other intangible property of the Mortgagor relating to the Property (herein collectively referred to as the "Intangibles");

(e)    Leases. All rights of the Mortgagor in, to and under all leases, licenses, occupancy agreements, concessions and other arrangements, oral or written, now existing or hereafter entered into, whereby any Person agrees to pay money or any other consideration for the use, possession or occupancy of, or any estate in, the Property or any portion thereof or interest therein (herein collectively referred to as the "Leases"), and the right, subject to applicable law, upon the occurrence of any Event of Default hereunder, to receive and collect the Rents (as hereinafter defined) paid or payable thereunder;

(f)    Plans. All rights of the Mortgagor in and to all plans and specifications, designs, drawings and other information, materials and matters heretofore or hereafter prepared relating to the Improvements or any construction on the Real Estate (herein collectively referred to as the "Plans");

(g)    Permits. All rights of the Mortgagor, to the extent assignable, in, to and under all permits, franchises, licenses, approvals and other authorizations respecting the use, occupation and operation of the Property and every part thereof and respecting any business or other activity conducted on or from the Property, and any product or proceed

4

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

thereof or therefrom, including, without limitation, all building permits, certificates of occupancy and other licenses, permits and approvals issued by governmental authorities having jurisdiction (herein collectively referred to as the "Permits");

(h)    Contracts. All right, title and interest of the Mortgagor in and to all agreements, contracts, certificates, instruments, warranties, appraisals, engineering, environmental, soils, insurance and other reports and studies, books, records, correspondence, files and advertising materials, and other documents, now or hereafter obtained or entered into, as the case may be, pertaining to the construction, use, occupancy, possession, operation, management, leasing, maintenance and/or ownership of the Property and all right, title and interest of the Mortgagor therein (herein collectively referred to as the "Contracts");

(i)    Leases of Furniture, Furnishings and Equipment. All right, title and interest of the Mortgagor as lessee in, to and under any leases of furniture, furnishings, equipment and any other Goods now or hereafter installed in or at any time used in connection with the Property;

(j)    Rents. All rents, issues, profits, royalties, avails, income and other benefits derived or owned, directly or indirectly, by the Mortgagor from the Property, including, without limitation, all rents and other consideration payable by tenants, claims against guarantors, and any cash or other securities deposited to secure performance by tenants, under the Leases (herein collectively referred to as "Rents");

(k)    Proceeds. All proceeds of the conversion, voluntary or involuntary of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards (herein collectively referred to as "Proceeds"); and

(l)    Other Property. All other property and rights of the Mortgagor of every kind and character relating to the Property, and all proceeds and products of any of the foregoing;

AND, without limiting any of the other provisions of this Mortgage, the Mortgagor expressly grants to the Mortgagee, as secured party, a security interest in all of those portions of the Collateral which are or may be subject to the Uniform Commercial Code provisions applicable to secured transactions in the State of Ohio (the "State");

TO HAVE AND TO HOLD the Collateral unto the Mortgagee, its successors and assigns, forever, subject to and in accordance with the terms and conditions hereof and of the Loan Documents.

5

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

PROVIDED, HOWEVER, that if all sums due or to become due under the Loan Documents shall have been paid at the time and in the manner stipulated therein and all other indebtedness secured hereby shall have been paid and all other covenants contained in the Loan Documents shall have been performed, then, in such case, this Mortgage shall be satisfied and the estate, right, title and interest of Mortgagee in the Collateral shall cease, and Mortgagee shall release this Mortgage and the lien hereof by proper instrument.

FURTHER to secure the full, timely and proper payment and performance of the Obligations, the Mortgagor hereby covenants and agrees with and warrants to the Mortgagee as follows:

ARTICLE I

COVENANTS AND AGREEMENTS OF THE MORTGAGOR

SECTION 1.1.   Payment of Obligations.   The Mortgagor agrees that:

SECTION 1.1.1   it will duly and punctually pay and perform or cause to be paid and performed each of the Obligations at the time and in accordance with the terms of the Loan Documents (subject to any notice, grace and cure periods in the Loan Documents), and

SECTION 1.1.2   when as and due and payable from time to time in accordance with the terms hereof or of any other Loan Documents, pay and perform, or cause to be paid and performed, all other Obligations (subject to any notice, grace and cure periods in the Loan Documents).

SECTION 1.2.   Title to Collateral, etc.   The Mortgagor represents and warrants to and covenants with the Mortgagee that:

SECTION 1.2.1   as of the date hereof and at all times hereafter while this Mortgage is outstanding (subject to the terms of the Loan Documents), the Mortgagor has and shall have good and marketable title in fee simple absolute to the Property, subject in each case only to this Mortgage, the liens expressly permitted pursuant to the terms of the Credit Agreement or the other Loan Documents and the encumbrances set forth in Schedule 2 hereto (collectively, the "Permitted Encumbrances"); and

SECTION 1.2.2   the Mortgagor, at its expense, will warrant and defend to the Mortgagee and any purchaser under the power of sale herein or at any foreclosure sale such title to the Collateral and the first mortgage lien and first priority perfected security interest of this Mortgage thereon and therein against all claims and demands and will maintain, preserve and protect such lien and security interest and will keep this Mortgage a valid, direct first mortgage

6
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

lien of record on and a first priority perfected security interest in the Collateral, subject only to the Permitted Encumbrances and any Liens permitted under the Credit Agreement.

SECTION 1.3.  Title Insurance.

SECTION 1.3.1  Title Insurance Policy.  Concurrently with the execution and delivery of this Mortgage, the Mortgagor, at its expense, has obtained and delivered to the Mortgagee a loan policy or policies of title insurance in an amount, and in form and substance, reasonably satisfactory to the Mortgagee naming the Mortgagee as the insured, insuring the title to and the first mortgage lien of this Mortgage on the Property, with endorsements reasonably requested by the Mortgagee and in accordance with the Credit Agreement. The Mortgagor has duly paid in full all premiums and other charges due in connection with the issuance of such policy or policies of title insurance.

SECTION 1.3.2  Title Insurance Proceeds.  All proceeds received by and payable to the Mortgagee for any loss under the loan policy or policies of title insurance delivered to the Mortgagee pursuant to Section 1.3.1, or under any policy or policies of title insurance delivered to the Mortgagee in substitution therefor or replacement thereof, shall be the property of the Mortgagee and shall be applied by the Mortgagee in accordance with the provisions of Section 2.1.

SECTION 1.4.  Recordation.  The Mortgagor, at its expense, will at all times cause this Mortgage and any instruments amendatory hereof or supplemental hereto (and any appropriate financing statements or other instruments and continuations thereof), and each other instrument delivered in connection with the Credit Agreement or any other Loan Document and intended thereunder to be recorded, registered and filed, to be kept recorded, registered and filed, in such manner and in such places, and will pay all such recording, registration, filing fees, taxes and other charges, and will comply with all such statutes and regulations as may be required by law in order to establish, preserve, perfect and protect the lien and security interest of this Mortgage as a valid, direct first mortgage lien and first priority perfected security interest in the Collateral, subject only to the Permitted Encumbrances. The Mortgagor will pay or cause to be paid, all taxes (including interest and penalties) at any time payable in connection with the filing and recording of this Mortgage and any and all supplements and amendments hereto.

SECTION 1.5.  Payment of Impositions, etc.  The Mortgagor will pay or cause to be paid all taxes, assessments and governmental charges which may become a lien on the Property or which are assessed against or imposed upon the Property (collectively, the "Impositions") in accordance with Section 4.6(b) of the Credit Agreement provided that Mortgagor may contest the same in good faith.

2491125

SECTION 1.6.  <u>Leases.</u> Except as provided in <u>Schedule 3</u>, the Mortgagor represents and warrants to the Mortgagee that, as of the date hereof, there are no written or oral leases or other agreements of any kind or nature relating to the occupancy of any portion of the Property by any Person other than the Mortgagor.

SECTION 1.7.  <u>Compliance with Instruments.</u> The Mortgagor at its expense will promptly comply in all material respects with all rights of way or use, privileges, franchises, servitudes, licenses, easements, tenements, hereditaments and appurtenances forming a part of the Property and all instruments creating or evidencing the same, in each case, to the extent compliance therewith is required of the Mortgagor under the terms thereof, provided that the Mortgagor may contest the same in good faith.

SECTION 1.8.  <u>Alterations, Additions, etc.</u> So long as no Event of Default shall be continuing, the Mortgagor shall have the right at any time and from time to time to make or cause to be made reasonable alterations of and additions to the Property or any part thereof, provided that any alteration or addition: (a) shall not materially reduce the fair market value thereof below its value immediately before such alteration or addition, or materially impair the usefulness of the Property; (b) is effected with due diligence, in a good and workmanlike manner and in compliance with all material laws and material applicable insurance policies; and (c) is promptly and fully paid for, or caused to be paid for, by the Mortgagor.

SECTION 1.9.  <u>Acquired Property Subject to Lien.</u> All property acquired by the Mortgagor with respect to the Property while this Mortgage continues in effect and provided or required by this Mortgage to be or become subject to the lien and security interest hereof, whether such property is acquired by exchange, purchase, construction or otherwise, shall forthwith become subject to the lien and security interest of this Mortgage without further action on the part of the Mortgagor or the Mortgagee. The Mortgagor, at its expense, will execute and deliver to the Mortgagee (and will record and file as provided in <u>Section 1.4</u>) an instrument supplemental to this Mortgage reasonably satisfactory in substance and form to the Mortgagee, whenever such an instrument is necessary under applicable law to subject to the lien and security interest of this Mortgage all right, title and interest of the Mortgagor in and to all property provided or required by this Mortgage to be subject to the lien and security interest hereof.

SECTION 1.10.  <u>Assignment of Rents, Proceeds, etc.</u> Subject to the terms of the Credit Agreement, the assignment, grant and conveyance of the Leases, Rents, Proceeds and other rents, income, proceeds and benefits of the Collateral contained in the Granting Clause of this Mortgage shall constitute an absolute, present and irrevocable assignment, grant and conveyance, provided, however, that permission is hereby given to the Mortgagor, so long as no Event of Default is continuing hereunder, to collect, receive and apply such Rents, Proceeds and other rents, income, proceeds and benefits as they become due and payable, but not in advance thereof, and in accordance with all of the other terms, conditions and provisions hereof, of the Loan

8

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

Documents, and of the Leases, contracts, agreements and other instruments with respect to which such payments are made or such other benefits are conferred. During the continuation of an Event of Default and until such Event of Default is cured to Mortgagee's reasonable satisfaction, such permission shall terminate immediately and automatically, without notice to the Mortgagor or any other Person except as required by law. Such assignment shall be fully effective without any further action on the part of the Mortgagor or the Mortgagee and the Mortgagee shall be entitled, at its option, during the continuation of an Event of Default hereunder, to collect, receive and apply all Rents, Proceeds and all other rents, income, proceeds and benefits from the Collateral, including all right, title and interest of the Mortgagor in any escrowed sums or deposits or any portion thereof or interest therein, whether or not the Mortgagee takes possession of the Collateral or any part thereof. The Mortgagor further grants to the Mortgagee the right, at the Mortgagee's option, during the continuation of an Event of Default hereunder, to:

> (a)     enter upon and take possession of the Property for the purpose of collecting Rents, Proceeds and said rents, income, proceeds and other benefits;

> (b)     dispossess by the customary summary proceedings any tenant, purchaser or other Person defaulting in the payment of any amount when and as due and payable, or in the performance of any other obligation, under any Lease, contract or other instrument to which said Rents, Proceeds or other rents, income, proceeds or benefits relate;

> (c)     let or convey the Collateral or any portion thereof or any interest therein; and

> (d)     apply Rents, Proceeds and such rents, income, proceeds and other benefits, after the payment of all necessary fees, charges and expenses, on account of the Obligations in accordance with Section 3.11.

SECTION 1.11. No Claims Against the Mortgagee. Nothing contained in this Mortgage shall constitute any consent or request by the Mortgagee, express or implied, for the performance of any labor or the furnishing of any materials or other property in respect of the Property or any part thereof, or be construed to permit the making of any claim against the Mortgagee in respect of labor or services or the furnishing of any materials or other property or any claim that any lien based on the performance of such labor or the furnishing of any such materials or other property is prior to the lien and security interest of this Mortgage. All contractors, subcontractors, vendors and other persons dealing with the Property, or with any persons interested therein, are hereby required to take notice of the provisions of this Section.

SECTION 1.12. No Transfer of the Property. Except as permitted by the Credit Agreement or the other Loan Documents, the Mortgagor shall not, without the prior written consent of the Mortgagee, which consent may be granted or withheld in the sole and absolute

9

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

discretion of the Mortgagee, (i) sell, convey, assign or otherwise transfer the Property or any portion of the Mortgagor's interest therein or (ii) further encumber the Property or permit the Property to become encumbered by any lien, claim, security interest or other indebtedness of any kind or nature other than the Permitted Encumbrances, that certain First Lien Credit Agreement, and that certain ABL Credit Agreement, each dated the date hereof.

SECTION 1.13. <u>Security Agreement.</u> With respect to the items of personal property and fixtures referred to and described in the Granting Clause of this Mortgage and included as part of the Collateral, this Mortgage is hereby made and declared to be a security agreement encumbering each and every item of personal property and fixtures now or hereafter owned by Mortgagor and included herein as a part of the Collateral, in compliance with the provisions of the Uniform Commercial Code as enacted in the State. In this respect, Mortgagor, as "Debtor", expressly grants to Mortgagee, as "Secured Party", a security interest in and to all of the property now or hereafter owned by Mortgagor which constitutes the personal property and fixtures hereinabove referred to and described in this Mortgage as "Collateral", including all extensions, accessions, additions, improvements, betterments, renewals, replacements and substitutions thereof or thereto, and all proceeds from the sale or other disposition thereof. Mortgagor agrees that Mortgagee may file this Mortgage, or a reproduction thereof, in the real estate records or other appropriate index, as, and this Mortgage shall be deemed to be, a financing statement filed as a fixture filing in accordance with Ohio Revised Code §1309.502. Any reproduction of this Mortgage or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Mortgagor agrees to execute and deliver to Mortgagee, upon Mortgagee's request, any other security agreement and financing statements, as well as extensions, renewals, and amendments thereof, and reproductions of this Mortgage, as Mortgagee may reasonably require, in such form as Mortgagee may require to perfect a security interest with respect to said items. Mortgagor shall pay all reasonable costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may reasonably require. Except as permitted by the Credit Agreement, without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in the above-described personal property and fixtures, including any replacements and additions thereto. Upon the occurrence and during the continuance of an Event of Default under this Mortgage, the Mortgagee shall have and shall be entitled to exercise any and all of the rights and remedies (i) as prescribed in this Mortgage, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory provisions now or hereafter enacted and specified in said Uniform Commercial Code, all at Mortgagee's sole election. Mortgagor and Mortgagee agree that the filing of any financing statements in the records normally having to do with personal property shall not in any way affect the agreement of Mortgagor and Mortgagee that everything located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of, the Collateral, which is

10

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

described or reflected as a fixture in this Mortgage, is, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be, regarded as part of the Real Estate conveyed hereby. Mortgagor warrants that Mortgagor's name, identity and address are as set forth herein. The mailing address of the Mortgagee from which information may be obtained concerning the security interest created herein is also set forth herein. This information hereof is provided in order that this Mortgage shall comply with the requirements of the Uniform Commercial Code as enacted in the State for instruments to be filed as financing statements. In accordance with Ohio Revised Code §1309.515, this Mortgage shall remain effective as a fixture filing until this Mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the Collateral.

SECTION 1.14. Representations and Warranties. In order to induce the Mortgagee to enter into this Mortgage, the Credit Agreement and the other Loan Documents, the Mortgagor agrees that all of the representations and warranties relating to the Collateral and Mortgagor set forth in the Credit Agreement are incorporated into this Mortgage by reference as if fully set forth herein.

SECTION 1.15. Mortgagor's Covenants. In order to induce the Mortgagee to enter into this Mortgage, the Credit Agreement and the other Loan Documents, the Mortgagor agrees that all of the covenants relating to the Collateral and Mortgagor set forth in the Credit Agreement are incorporated into this Mortgage by reference as if fully set forth herein.

ARTICLE II

INSURANCE

SECTION 2.1. Application of Proceeds and Awards. Subject to the terms of the Credit Agreement, the Mortgagee shall be entitled to receive any proceeds of insurance as provided in the Credit Agreement, and the Mortgagee shall apply all amounts recovered under any insurance policy required to be maintained by the Mortgagor and all awards received by it on account of any taking in accordance with the Credit Agreement.

ARTICLE III

EVENTS OF DEFAULT; REMEDIES, ETC.

SECTION 3.1. Events of Default; Acceleration. If an "Event of Default" (pursuant to and as defined in the Credit Agreement, and subject to applicable notice, grace and cure periods in the Loan Documents) shall have occurred and be continuing, then and in any such event the Mortgagee may at any time thereafter (unless all Events of Default shall theretofore have been remedied and all reasonable costs and expenses, including, without limitation, reasonable

11

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

attorneys' fees and expenses incurred by or on behalf of the Mortgagee, shall have been paid in full by the Mortgagor) declare, by written notice to the Mortgagor, the Loans and all other Obligations to be due and payable immediately or on a date specified in such notice (provided that, upon the occurrence of any Event of Default described in Section 8.1.7 of the Credit Agreement, the Loans and all other Obligations shall automatically become due and payable), and on such date the same shall be and become due and payable, together with interest accrued thereon, without further presentment, demand, protest or notice, all of which the Mortgagor hereby waives. Subject to the terms of the Credit Agreement, the Mortgagor will pay on demand all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred by or on behalf of the Mortgagee in enforcing this Mortgage, or any other Loan Document, or occasioned by any Event of Default.

SECTION 3.2.    Legal Proceedings; Foreclosure.  If an Event of Default shall have occurred and be continuing, the Mortgagee at any time may, at its election, proceed at law or in equity or otherwise to enforce the payment and performance of the Obligations in accordance with the terms hereof and thereof and to foreclose the lien of this Mortgage as against all or any part of the Collateral and to have the same sold under the judgment or decree of a court of competent jurisdiction. The Mortgagee shall be entitled to recover in such proceedings all reasonable costs incident thereto, including reasonable attorneys' fees and expenses in such amounts as may be fixed by the court.

SECTION 3.3.    [Intentionally Omitted]

SECTION 3.4.    Uniform Commercial Code Remedies.  If an Event of Default shall be continuing, the Mortgagee may exercise from time to time and at any time any rights and remedies available to it under applicable law upon default in the payment of indebtedness, including, without limitation, any right or remedy available to it as a secured party under the Uniform Commercial Code of the State. The Mortgagor shall, promptly upon request by the Mortgagee, assemble the Collateral, or any portion thereof generally described in such request, and make it available to the Mortgagee at such place or places designated by the Mortgagee and reasonably convenient to the Mortgagee or the Mortgagor. If the Mortgagee elects to proceed under the Uniform Commercial Code of the State to dispose of portions of the Collateral, the Mortgagee, at its option, may give the Mortgagor notice of the time and place of any public sale of any such property, or of the date after which any private sale or other disposition thereof is to be made, by sending notice by registered or certified first class mail, postage prepaid, to the Mortgagor at least ten (10) days before the time of the sale or other disposition. If any notice of any proposed sale, assignment or transfer by the Mortgagee of any portion of the Collateral or any interest therein is required by law, the Mortgagor conclusively agrees that ten (10) days notice to the Mortgagor of the date, time and place (and, in the case of a private sale, the terms) thereof is reasonable.

2491125

SECTION 3.5.  Mortgagee Authorized to Execute Deeds, etc.  The Mortgagor irrevocably appoints the Mortgagee (which appointment is coupled with an interest) the true and lawful attorney of the Mortgagor, in its name and stead and on its behalf, solely for the purpose of effectuating any sale, assignment, transfer or delivery for the enforcement hereof, whether pursuant to power of sale, foreclosure or otherwise, to, during the continuance of any Event of Default, execute and deliver all such deeds, bills of sale, assignments, releases and other instruments as may be designated in any such request.

SECTION 3.6.  Purchase of Collateral by Mortgagee.  The Mortgagee may be a purchaser of the Collateral or of any part thereof or of any interest therein at any sale thereof, whether pursuant to power of sale, foreclosure or otherwise, and the Mortgagee may apply upon the purchase price thereof the indebtedness secured hereby owing to the Mortgagee. Such purchaser shall, upon any such purchase, acquire good title to the properties so purchased, free of the security interest and lien of this Mortgage and free of all rights of redemption in the Mortgagor.

SECTION 3.7.  Receipt a Sufficient Discharge to Purchaser.  Upon any sale of the Collateral or any part thereof or any interest therein, whether pursuant to power of sale, foreclosure or otherwise, the receipt of the Mortgagee or the officer making the sale under judicial proceedings shall be a sufficient discharge to the purchaser for the purchase money, and such purchaser shall not be obliged to see to the application thereof.

SECTION 3.8.  Waiver of Appraisement, Valuation, etc.  The Mortgagor hereby waives, to the fullest extent it may lawfully do so, the benefit of all appraisement, valuation, stay, extension and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale of the Collateral or any part thereof or any interest therein.

SECTION 3.9.  Sale a Bar Against Mortgagor.  Any sale of the Collateral or any part thereof or any interest therein under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise, shall forever be a bar against the Mortgagor.

SECTION 3.10.  Obligations To Become Due on Sale.  Upon any sale of the Collateral or any portion thereof or interest therein by virtue of the exercise of any remedy by the Mortgagee under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise in accordance with this Mortgage or by virtue of any other remedy available at law or in equity or by statute or otherwise, at the option of the Mortgagee, any sums or monies due and payable pursuant to the Credit Agreement, the Loan Documents and in connection with the Loans and/or the Obligations shall, if not previously declared due and payable, immediately become due and payable, together with interest accrued thereon, and all other indebtedness which this Mortgage by its terms secures.

13

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

SECTION 3.11. Application of Proceeds of Sale and Other Moneys. Subject to the terms of the Credit Agreement, the proceeds of any sale of the Collateral or any part thereof or any interest therein under or by virtue of this Mortgage, whether pursuant to power of sale, foreclosure or otherwise, and all other moneys at any time held by the Mortgagee as part of the Collateral, shall be applied in such order of priority as the Mortgagee shall determine in its sole and absolute discretion including, without limitation, as follows:

(a)    first, to the payment of the reasonable costs and expenses of such sale (including, without limitation, the cost of evidence of title and the costs and expenses, if any, of taking possession of, retaining custody over, repairing, managing, operating, maintaining and preserving the Collateral or any part thereof prior to such sale), all reasonable costs and expenses incurred by the Mortgagee or any other Person in obtaining or collecting any insurance proceeds, condemnation awards or other amounts received by the Mortgagee, all reasonable costs and expenses of any receiver of the Collateral or any part thereof, and any Impositions or other charges or expenses prior to the security interest or lien of this Mortgage, which the Mortgagee may consider it necessary or desirable to pay;

(b)    second, to the payment of any Obligation (other than those set forth in Section 3.11(c) below);

(c)    third, to the payment of all amounts of principal of and interest at the time due and payable under the Credit Agreement at the time outstanding (whether due by reason of maturity or by reason of any prepayment requirement or by declaration or acceleration or otherwise), including interest at the rate provided for in the Credit Agreement on any overdue principal and (to the extent permitted under applicable law) on any overdue interest; and, in case such moneys shall be insufficient to pay in full such principal and interest, then, first, to the payment of all amounts of interest at the time due and payable and, second, to the payment of all amounts of principal at the time due and payable under the Credit Agreement; and

(d)    fourth, the balance, if any, held by the Mortgagee after payment in full of all amounts referred to in subdivisions Sections 3.11(a), (b) and (c) above, shall, unless a court of competent jurisdiction may otherwise direct by final order not subject to appeal, be paid to or upon the direction of the Mortgagor.

SECTION 3.12. Appointment of Receiver. If an Event of Default shall have occurred and be continuing, the Mortgagee shall, as a matter of right, without notice, and without regard to the adequacy of any security for the indebtedness secured hereby or the solvency of the Mortgagor, be entitled to the appointment of a receiver for all or any part of the Collateral, whether such receivership be incidental to a proposed sale of the Collateral or otherwise, and the

14
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

Mortgagor hereby consents to the appointment of such a receiver and will not oppose any such appointment.

SECTION 3.13. Possession, Management and Income. If an Event of Default shall have occurred and be continuing, in addition to, and not in limitation of, the rights and remedies provided in Section 1.13, the Mortgagee, upon ten (10) days notice to the Mortgagor, may enter upon and take possession of the Collateral or any part thereof by force, summary proceeding, ejectment or otherwise and may remove the Mortgagor and all other Persons and any and all property therefrom and may hold, operate, maintain, repair, preserve and manage the same and receive all earnings, income, Rents, issues and Proceeds accruing with respect thereto or any part thereof. The Mortgagee shall be under no liability for or by reason of any such taking of possession, entry, removal or holding, operation or management, except that any amounts so received by the Mortgagee shall be applied to pay all costs and expenses of so entering upon, taking possession of, holding, operating, maintaining, repairing, preserving and managing the Collateral or any part thereof, and any Impositions or other charges prior to the lien and security interest of this Mortgage which the Mortgagee may consider it necessary or desirable to pay, and any balance of such amounts shall be applied as provided in Section 3.11.

SECTION 3.14. Right of Mortgagee to Perform Mortgagor's Covenants, etc. If the Mortgagor shall fail to make any payment or perform any act required to be made or performed hereunder, and such failure continues beyond the expiration of any applicable notice, grace and cure periods, the Mortgagee, upon ten days' notice to the Mortgagor (provided that no such notice shall be required in the event of an emergency that would result in bodily harm or a material adverse effect to the Collateral) and without waiving or releasing any obligation or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of the Mortgagor, and may enter upon the Collateral for such purpose and take all such action thereon as, in the Mortgagee's reasonable opinion, may be necessary or appropriate therefor. No such entry and no such action shall be deemed an eviction of any lessee of the Property or any part thereof. All sums so paid by the Mortgagee and all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the rate provided for in the Credit Agreement from the date of payment or incurring, shall constitute additional indebtedness under the Credit Agreement secured by this Mortgage and shall be paid by the Mortgagor to the Mortgagee on demand.

SECTION 3.15. Subrogation. To the extent that the Mortgagee, on or after the date hereof, pursuant to this Mortgage, pays any sum due under any provision of any law or any instrument creating any lien prior or superior to the lien of this Mortgage, or the Mortgagor or any other Person pays any such sum with the proceeds of the loan evidenced by the Credit Agreement, the Mortgagee shall have and be entitled to a lien on the Collateral equal in priority

15

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

to the lien discharged, and the Mortgagee shall be subrogated to, and receive and enjoy all rights and liens possessed, held or enjoyed by, the holder of such lien, which shall remain in existence and benefit the Mortgagee in securing the Obligations.

SECTION 3.16. Remedies, etc., Cumulative. Each right, power and remedy of the Mortgagee provided for in this Mortgage, the Credit Agreement or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power or remedy provided for in this Mortgage, the Credit Agreement or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by the Mortgagee of any one or more of the rights, powers or remedies provided for in this Mortgage, the Credit Agreement, or any other Loan Document, or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Mortgagee of any or all such other rights, powers or remedies.

SECTION 3.17. Provisions Subject to Applicable Law. Notwithstanding anything to the contrary contained in this Mortgage, all rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of such term shall not be affected thereby.

SECTION 3.18. No Waiver, etc. No failure by the Mortgagee to insist upon the strict performance of any term hereof or of the Credit Agreement, or of any other Loan Document, or to exercise any right, power or remedy consequent upon a breach hereof or thereof, shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this Mortgage, which shall continue in full force and effect with respect to any other then existing or subsequent breach. By accepting payment or performance of any amount or other Obligations secured hereby before or after its due date, the Mortgagee shall not be deemed to have waived its right either to require prompt payment or performance when due of all other amounts and Obligations payable hereunder or to declare a default for failure to effect such prompt payment.

SECTION 3.19. Compromise of Actions, etc. Any action, suit or proceeding brought by the Mortgagee pursuant to any of the terms of this Mortgage, the Credit Agreement, any other Loan Document, or otherwise, and any claim made by the Mortgagee hereunder or thereunder, may be compromised, withdrawn or otherwise dealt with by the Mortgagee without any notice to or approval of the Mortgagor.

16<br>Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

ARTICLE IV

DEFINITIONS

SECTION 4.1.  Use of Defined Terms.  Terms for which meanings are provided in this Mortgage shall, unless otherwise defined or the context otherwise requires, have such meanings when used in any certificate and any opinion, notice or other communication delivered from time to time in connection with this Mortgage or pursuant hereto.

SECTION 4.2.  Credit Agreement Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Mortgage, including its preamble and recitals, have the meanings provided in the Credit Agreement.

ARTICLE V

MISCELLANEOUS

SECTION 5.1.  Further Assurances; Financing Statements.

SECTION 5.1.1  Further Assurances.  The Mortgagor, at its expense, will execute, acknowledge and deliver all such instruments and take all such other action as the Mortgagee from time to time may reasonably request, provided that such instruments or such actions do not, other than to a de minimis extent, (i) increase the liability or obligations of the Mortgagor or (ii) decrease the rights of the Mortgagor, in each case, beyond those which are contemplated in this Mortgage:

(a)    to better subject to the lien and security interest of this Mortgage all or any portion of the Collateral,

(b)    to perfect, publish notice or protect the validity of the lien and security interest of this Mortgage,

(c)    to preserve and defend the title to the Collateral and the rights of the Mortgagee therein against the claims of all Persons as long as this Mortgage shall remain undischarged (subject to the Permitted Encumbrances),

(d)    to better subject to the lien and security interest of this Mortgage or to maintain or preserve the lien and security interest of this Mortgage with respect to any replacement or substitution for any Collateral or any other after-acquired property, or

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

(e)    in order to further effectuate the purposes of this Mortgage and to carry out the terms hereof and to better assure and confirm to the Mortgagee its rights, powers and remedies hereunder.

SECTION 5.1.2    Financing Statements.  Notwithstanding any other provision of this Mortgage, the Mortgagor hereby agrees that, without notice to or the consent of the Mortgagor, the Mortgagee may file with the appropriate public officials such financing statements, continuation statements, amendments and similar documents as are or may become necessary to perfect, preserve or protect the security interest granted by this Mortgage.

SECTION 5.2.    Additional Security.  Without notice to or consent of the Mortgagor, and without impairment of the security interest and lien of and rights created by this Mortgage, the Mortgagee and the Lenders may accept from the Mortgagor or any other Person additional security for the Obligations. Neither the giving of this Mortgage nor the acceptance of any such additional security shall prevent the Mortgagee from resorting, first, to such additional security, or, first, to the security created by this Mortgage, or concurrently to both, in any case without affecting the Mortgagee's lien and rights under this Mortgage.

SECTION 5.3.    Release; Partial Release, etc.

SECTION 5.3.1    Release.  If the Loans and all other amounts owing pursuant to the Credit Agreement and the other Loan Documents shall be repaid in full in accordance with the terms thereof, and if the Mortgagor shall pay, in full, the principal of and premium, if any, and interest on the Obligations in accordance with the terms thereof and hereof and all other sums payable hereunder by the Mortgagor and shall comply with all the terms, conditions and requirements hereof and of the Obligations, then on such date, the Mortgagee shall, upon the request of the Mortgagor and at the Mortgagor's sole cost and expense, execute and deliver such instruments, in form and substance reasonably satisfactory to the Mortgagee, as may be necessary to release this Mortgage.

SECTION 5.3.2    Partial Release, etc.  The Mortgagee may, at any time and from time to time, without liability therefor, with prior written notice to the Mortgagor, release or reconvey any part of the Collateral, consent to the making of any map or plat of the Property, join in granting any easement thereon or join in any extension agreement or agreement subordinating the lien of this Mortgage, or enter into any other agreement in connection with the Collateral.

SECTION 5.4.    Notices, etc.  All notices and other communications provided to any of the parties hereto shall be in writing and addressed, delivered or transmitted to such party as set forth in the Credit Agreement.

18

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

SECTION 5.5.   Waivers, Amendments, etc.   The provisions of this Mortgage may be amended, discharged or terminated and the observance or performance of any provision of this Mortgage may be waived, either generally or in a particular instance and either retroactively or prospectively, only by an instrument in writing executed by the Mortgagor and the Mortgagee.

SECTION 5.6.   Cross-References.   References in this Mortgage and in each instrument executed pursuant hereto to any Section or Article are, unless otherwise specified, to such Section or Article of this Mortgage or such instrument, as the case may be, and references in any Section, Article or definition to any clause are, unless otherwise specified, to such clause of such Section, Article or definition.

SECTION 5.7.   Headings.   The various headings of this Mortgage and of each instrument executed pursuant hereto are inserted for convenience only and shall not affect the meaning or interpretation of this Mortgage or such instrument or any provisions hereof or thereof.

SECTION 5.8.   Currency.   Unless otherwise expressly stated, all references to any currency or money, or any dollar amount, or amounts denominated in "Dollars" herein will be deemed to refer to the lawful currency of the United States.

SECTION 5.9.   Governing Law.   THIS MORTGAGE SHALL BE DEEMED TO BE A CONTRACT MADE UNDER AND GOVERNED BY THE LAWS OF THE STATE OF OHIO.

SECTION 5.10.   Successors and Assigns, etc.   This Mortgage shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

SECTION 5.11.   Waiver of Jury Trial; Submission to Jurisdiction.

(a)       EACH OF THE MORTGAGOR AND THE MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE CREDIT AGREEMENT, ANY LOAN DOCUMENT OR ANY OTHER RELATED INSTRUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF THE MORTGAGOR OR THE MORTGAGEE. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE AND THE LENDERS TO ENTER INTO THE TRANSACTIONS PROVIDED FOR IN THE CREDIT AGREEMENT AND TO AGREE TO THE EXCHANGE OF LOANS.

19
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

(b)   FOR THE PURPOSE OF ANY ACTION OR PROCEEDING INVOLVING THIS MORTGAGE, THE CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT, THE MORTGAGOR HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ALL FEDERAL AND STATE COURTS LOCATED IN THE STATE AND CONSENTS THAT IT MAY BE SERVED WITH ANY PROCESS OR PAPER BY REGISTERED MAIL OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE IN ACCORDANCE WITH APPLICABLE LAW, PROVIDED A REASONABLE TIME FOR APPEARANCE IS ALLOWED. THE MORTGAGOR EXPRESSLY WAIVES, TO THE EXTENT IT MAY LAWFULLY DO SO, ANY OBJECTION, CLAIM OR DEFENSE WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF THIS MORTGAGE, THE CREDIT AGREEMENT OR ANY OTHER LOAN DOCUMENT IN ANY SUCH COURT, IRREVOCABLY WAIVES ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER IRREVOCABLY WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO ANY SUCH CLAIM, SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER THE PERSON OF THE MORTGAGOR. NOTHING CONTAINED HEREIN WILL BE DEEMED TO PRECLUDE THE MORTGAGEE FROM BRINGING AN ACTION AGAINST THE MORTGAGOR IN ANY OTHER JURISDICTION.

SECTION 5.12. Severability.  Any provision of this Mortgage, the Credit Agreement or any other Loan Document which is prohibited or unenforceable in any jurisdiction shall as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Mortgage, the Credit Agreement or such Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 5.13. Loan Document.  This Mortgage is a Loan Document executed pursuant to the Credit Agreement and, unless otherwise expressly indicated herein, shall be construed, administered and applied in accordance with the terms and provisions thereof.

SECTION 5.14. Usury Savings Clause.  It is the intention of the Mortgagor and the Mortgagee to conform strictly to the usury laws governing the Loan Documents, and any interest payable under the Loan Documents shall be subject to reduction to the amount not in excess of the maximum non- usurious amount allowed under such laws, as construed by the courts having jurisdiction over such matters. In the event the maturity of the Obligations is accelerated by reason of any provision of the Loan Documents, or by reason of an election by the Mortgagee

20

Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

resulting from an Event of Default, then interest may never include more than the maximum amount permitted by law, computed from the dates of each advance of loan proceeds under the Credit Agreement until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically or, if theretofore paid, at the option of the Mortgagee, shall be rebated to the Mortgagor, or shall be credited on the principal amount of the Obligations or, if all principal has been repaid, then the excess shall be rebated to the Mortgagor. If any interest is canceled, credited against principal or rebated to the Mortgagor in accordance with the foregoing sentence and, if thereafter the interest payable hereunder is less than the maximum amount permitted by applicable law, the rate hereunder shall automatically be increased to the maximum extent possible to permit repayment to the Mortgagee and the Lenders as soon as possible of any interest in excess of the maximum amount permitted by law which was earlier canceled, credited against principal or rebated to the Mortgagor pursuant to the provisions of the foregoing sentence.

SECTION 5.15. State Specific Provisions.

SECTION 5.15.1   Maximum Principal Amount.   This Mortgage shall secure the payment of any additional amounts advanced, from time to time, by Mortgagee to Mortgagor under the Note or other Loan Documents stating that such advances are secured hereby ("Future Advances"). The maximum amount of unpaid loan indebtedness secured hereby shall be Ninety-Six Million Two Hundred Forty-Six Thousand Seven Hundred Forty and 38/100 Dollars ($96,246,740.38) exclusive of interest thereon, unpaid balances of advances made with respect to the Property for the payment of taxes, assessments, insurance premiums, costs incurred for the protection of the Property and other costs which the Mortgage is authorized by this Mortgage or any other Loan Document to pay on Mortgagor's behalf, all of which shall be secured by this Mortgage.

SECTION 5.15.2   Priority of Mortgage Lien.   Mortgagee is authorized to do all matters permitted and sanctioned by Ohio Revised Code §1311.14, as now existing or hereafter amended.

SECTION 5.15.3   Exculpation.

(a)      The parties hereto agree that the Mortgagee shall be afforded all of the rights, privileges, protections, indemnities and immunities afforded to the Administrative Agent under the Credit Agreement in connection with its execution of this Mortgage and the performance of its duties hereunder.

(b)      There shall be no recourse hereunder to any constituent entity or individual or any member, shareholder, principal, affiliate or partner of Mortgagor, direct or indirect, no any director, officer, employee, agent or representative of any of them.

21
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

SECTION 5.16. <u>Intercreditor Agreements</u>.  In the event of any conflict, inconsistency, or ambiguity between the terms of this Mortgage and the terms of (a) the intercreditor agreement, dated as of the date hereof, among the Mortgagor, and the Mortgagee, as First Lien Agent, and Silver Point Finance, LLC, as Second Lien Agent (as amended, restated, supplemented or otherwise modified from time to time, the "<u>First/Second Lien Intercreditor Agreement</u>"), and (b) the intercreditor agreement, dated as of the date hereof, among the Mortgagor, and the Mortgagee, as First Lien Agent, and Silver Point Finance, LLC, as Second Lien Agent, and Bank of America, N.A., in its capacity as agent under the ABL Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "<u>ABL/Term Loan Intercreditor Agreement</u>", and, with the First/Second Lien Intercreditor Agreement, the "<u>Intercreditor Agreements</u>"), the terms of the Intercreditor Agreements shall govern and control.

*(Signatures appear on the following page.)*

22
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

In witness whereof, the undersigned, by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this instrument as of the day and year first above written.

THE STANDARD REGISTER COMPANY

By: _____
Robert M. Ginnan, Vice President,
Treasurer and Chief Financial Officer

STATE OF OHIO                )
                             ) ss
COUNTY OF MONTGOMERY         )

Before me, a Notary Public in and for said state, personally appeared Robert M. Ginnan, the Vice President, Treasurer and Chief Financial Officer of The Standard Register Company, who acknowledged that he did execute the foregoing instrument for and on behalf of said corporation.

IN WITNESS WHEREOF, I have hereunder subscribed my name and affixed my notarial seal on this 28th day of August, 2013.

*Teresa L. Myers*
My commission expires 4/20/16

TERESA L. MYERS, Notary Public
...Prepared by: ...for the State of Ohio...ichter, Esq., Fried, Frank, Harris, Shriver & Jacobson
...New York...New York 10004.

23
Montgomery County, Ohio -- Second Lien Credit Agreement

2491125

SCHEDULE 1

Parcel No. 1:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being all that part of lot no. 1 on the plat of the Executors of John Hiser, Sr. a part of Section 4, Town 1, Range 6 East, etc., recorded in Deed Book P. 2, Page 589 of the records of said county, lying east of the right of way of the C.C.C. & St. L. Railroad, running through said lot and more particularly described as follows:

Beginning at a stone at the southeast corner of said lot no. 1;

thence northwardly along the east line of said lot, 660.3 feet to the northeast corner of said lot no. 1; said corner being in the centerline of Albany Street;

thence westwardly along the north line of said lot being the centerline of Albany Street, 66.05 feet to the east line of a 50 foot right of way of the C.C.C. & St. L. Railroad;

thence southwardly along the east line of said right of way 678.6 feet to a point in the south line of said lot no. 1;

thence eastwardly along the south line of said lot no 1, 217.9 feet to the place of beginning.

Together with a 10 foot alley lying East of and adjacent to the above tract vacated on January 24, 1923 by City of Dayton Ordinance 11755.

Together with a 16.5 feet alley lying south of and adjacent to the above tract vacated on March 12, 1952 by City of Dayton Ordinance 17332.

Parcel No. R72-99-6-5

Parcel No. 2:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being 33-1/2 feet in width taken by parallel lines off the North side of lot number 6142 of the revised and consecutive numbers of lots on the plat of the City of Dayton, excepting that part of said lot conveyed by Robert P. Brown to The Cincinnati and Springfield Roadway Company by deed dated October 19, 1871 and recorded in Volume 106 Page 295, Montgomery County, Deed Records.

Parcel No. R72-100-9-14

Parcel No. 3:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being 13-1/2 feet taken by parallel lines off of the South side of lot number 6142 and 20 feet taken by parallel lines off of the north side of lot number 6143 of the revised and consecutive numbers of lots on the plat of the City of Dayton, Ohio.

Parcel Nos. R71-100-9-15 & R71-100-9-16

Parcel No. 4

Situate in the City of Dayton, County of Montgomery, State of Ohio and being 27 feet taken by parallel lines off of the South side of lot number 6143 of the revised and consecutive numbers of lots on the plat of the City of Dayton.

Parcel No. R72-100-9-17

Parcel No. 5

Situate in the City of Dayton, County of Montgomery, State of Ohio and being lots numbered 8878, 8879, 8880 and 8895 all of the revised and consecutive numbers of lots on the said City of Dayton Ohio.

Together with a 16.5 foot alley lying South of lot 8895 and north of lots 8878, 8879 and 8880 between Campbell Street (now vacated) and the east line of the alley west of Campbell Street vacated on November 4, 1942 by City of Dayton Ordinance 15718.

Together with the east half of a 10 foot alley lying west of and adjacent to the west line of lot 8895, part lots 6142 and 6143 and East of an adjacent to the east line of Part lot 7218 from the north line of lot 8880 extended, vacated on November 4, 1942 by City of Dayton Ordinance 15718.

Together with 50 foot Campbell Street from the South line of the U.S. 35-I.R. 75 expressway to the north line of 50 feet Albany Street vacated on March 14, 1984 by City of Dayton Ordinance 26963.

Parcel No. R72-100-9-19 to 29

Parcel No. 6:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being a part of lot numbered 7218 of the revised and consecutive numbers of lots on the plat of said city of Dayton, Ohio described as follows:

Beginning at a point at the southeast corner of said lot at the intersection of the north line of Albany Street and the west line of the alley east of said lot 7218;

thence westwardly on the north line of Albany Street and the South line of said lot No. 7218, 52.34 feet more or less to the east line of the right of way of the Big Four Railway;

thence northeastwardly along the east line of the right of way of said railway 333 feet more or less to a point at the intersection of the east line of said right of way and the west line of said alley east of said lot no. 7218;

thence southwardly along the east of said lot 7218, 327.35 feet more or less to the place of beginning.

Also the following described real estate:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being a strip of ground 10 feet

wide (a vacated alley) lying between the west line of lot numbered 8880 and the east line of lot 7218, extending northwardly from the north line of Albany Street to the North line of said lot 8880 extended westwardly, vacated on April 29, 1936 by City of Dayton Ordinance 14915.

Together with the west half of a 10 foot alley lying west of and adjacent to the west line of lot 8895, part lots 6142 and 6143 and East of an adjacent to the east line of Part lot 7218 from the north line of lot 8880 extended, vacated on November 4, 1942 by City of Dayton Ordinance 15718.

Parcel No. R72-99-11-14

Parcel 7:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being lots numbered 6151 to 6159 inclusive and also lots 8881, 8882 and 8883 of the revised and consecutive numbers of lots on the plat of the City of Dayton, Ohio.

Together with a 16.5 feet alley lying South of lots 8881 to 8883 inclusive and north of lot 6151 vacated on April 29, 1936 by City of Dayton Ordinance 14915.

Parcel No. R72-102-1-11 thru 19
         R72-102-1, 2, 3

Parcel No. 8:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being in Section 4, Town 1, Range 6 East and being a strip of ground lying adjacent to lot 6159 bounded and described as follows:

Beginning at the Southeast corner of lot number 6159;

thence in a westwardly direction 146 feet to a point;

thence southwardly along the west line of lot 6159 projected for a distance of 40.14 feet to a point;

thence eastwardly parallel to the south line of lot number 6159 for a distance of 146 feet to a point;

thence northwardly along a line of the east line of lot number 6159 projected for a distance of 40.14 feet to the place of beginning, containing 6,860 square feet more or less

Parcel No. R72-102-1-20

Parcel No. 9:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being lots numbered 6160 to 6168 inclusive and lots 8884 to 8888 inclusive of the revised and consecutive numbers of lots on the plat of the City of Dayton, Ohio.

Excepting therefrom the following described property:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being part of lot numbered 8887 and 8888 of the revised and consecutive numbers of lots on the plat of the City of Dayton, Ohio and being part of those tracts of land conveyed by deed to Standard Register Company as record in Deed Book 1821 Page 606 and Deed Book 1806 Page 468 (all references to deeds, microfiche, plats, surveys, etc. refer to the records of the Montgomery County Ohio Recorders office unless noted otherwise) said tract of land being more particularly bounded and described as follows:

Beginning at a 5/8" iron pin (set) at the northeast corner of said City of Dayton lot number 8887 said corner being in the south right of way line of Albany Street and the westerly limited access right of way line of Interstate Route 75 as established by Common Pleas Court No. 126190;

thence along said westerly right of way line South 15° 56' 28" for 79.88 feet to a 5/8" iron pin set;

thence on a new division line North 21° 16' 39" West for 82.50 feet to a 5/8" iron pin (set) in the south right of way line of said Albany Street;

thence along the south right of way line of said Albany Street, South 89° 29' 45" East for 8.00 feet to the point of beginning, containing 306 square feet more or less.

together with a 16.5 feet alley lying South of lots 8884 to 8888 and north of lot 6168 vacated on July 2, 1998 by Common Pleas Court 98-34 Montgomery County, Ohio records in Deed Microfiche 98-695 B11.

Parcel No. R72-102-1-23, 25 to 50, 52 to 54, 67
        R72-102-1-4 to 9 & 57

Parcel No. 10:

Situate in the City of Dayton, County of Montgomery, State of Ohio and located in Section 4, Town 1, Range 6 East and being part of an unplatted area in said Section 4, south of and adjacent to said lot 6160 and further described as follows:

Beginning on the east line of Campbell Street at the southwest corner of said lot 6160 said point being also the southwest corner of land conveyed to The Standard Register Company by deed recorded at Book 1483 Page 9 in the deed records of Montgomery County, Ohio;

thence in an easterly direction with the south line of said lot 6160 and said Standard Register Company land for 140.00 feet to the southeast corner of said Standard Register Company land;

thence in a northerly direction with the east line of said Standard Register Company land and its northward extension for 40.5 feet to a point 58.3 feet south of the south line of lot 6162 of the consecutive numbers of lots on the revised plat of the said City of Dayton, said point being the southwest corner of land conveyed to The Standard Register Company by deed recorded in Book 1568 Page 592 in the Deed Records of Montgomery County, Ohio;

thence in an easterly direction parallel with and 58.5 feet measured southwardly from the south line of said lot 6162 and along the south line of said last mentioned Standard Register Company land for 92.5 feet to the west line of land conveyed to the City of Dayton as recorded in Book 332 Page 461 in the Deed Records of Montgomery County, Ohio;

thence in a southerly direction with the west line of said City of Dayton land for 64.00 feet;

thence in a southwesterly direction for 99.00 feet to a point 34.00 feet south of the south line of said lot 6160 and 134.00 feet east of the east line of said Campbell Street;

thence in a westerly direction for 96.00 feet to a point on the east line of land conveyed to the City of Dayton as recorded in Book 308 Page 31 in the Deed Records of Montgomery County, Ohio, said point being located 0.57 of a foot north of the southeast corner of said last mentioned City of Dayton land;

thence in a northerly direction with the east line of last mentioned City of Dayton land for 13.00 feet to the northeast corner of said last mentioned City of Dayton land;

thence in a westerly direction with the north line of said last mentioned City of Dayton land for 38.00 feet to the northwest corner of last mentioned City of Dayton land and the east line of said Campbell Street;

thence in a northerly direction with the east line of said Campbell Street for 25.88 feet to the point of beginning, containing 11,059 square feet more or less, subject to all legal highways and easements of record, Excepting that part of lot 6160 included in above description.

Parcel No. R72-102-1-21, 22 & 51

Parcel No. 11:

Situate in the City of Dayton, County of Montgomery, State of Ohio and in Section 4, Town 1, Range 6 East conveyed to The Dayton Syrup Refining Company by Carl Diehl and wife by deed dated June 11, 1884 and recorded in Deed Book 135 Page 521 of the Montgomery County records and described by metes and bounds as follows:

Beginning at a stone at the northeast corner of lot 2 in a subdivison of part of lands of John Hiser, deceased as made by his executors and recorded in Book P2 Page 589 Montgomery County, Ohio records and running thence southwardly along the east line of lot 2 being the centerline of a 2 pole street south 4-1/2° east 78.045 feet;

thence westwardly parallel to the north line of said lot number 2, south 86° west 301.45 feet to the norhtwest corner thereof

thence eastwardly along the north line of said lot 301.45 feet to the place of beginning, containing one half acre after deducting 0.04 of an acre, which has been heretofore sold to Henry Staley by Carl Diehl by Deed 119 Page 99 of the deed records of Montgomery County, Ohio for road purposes, said parcel being 16-1/2 feet wide and 110 feet in length taken out of the northwest corner of said lot number 2.

Excepting those portions of this tract described as parts of Parcels 1, 12 and 13.

Parcel No.

Parcel 12:

Situate in the City of Dayton, County of Montgomery, State of Ohio and know as parts of Section 4, Town 2, Range 6 east, separately bounded and described as follows:

Commencing at a point of intersection of the north line of Homestead Avenue (50 feet wide) with the west line of Campbell Street (50 feet wide) said point being the southeast corner of lot 20986 of the revised and consecutive numbers of lots on the plat of said City of Dayton, Ohio;

thence with the northline of Homestead Avneue, North 89° 39' 48" west for 390.16 feet to a point in the southeast line of Consolidated Rail Corporation land, said point being in the southeast right of way line of a spur track in the Dayton Syrup Refining Company, said point also being the true point of beginning of this parcel;

thence continuing with the north line of said Homestead Avenue, north 89° 39' 48" west for 24.96 feet to a point in the northwest right of way of said spur track;

thence northeastwardly along said right of way line, concentrie and parallel with and distant 5 feeet northwestwardly from the centerline of said spur track the following 4 courses and distances:

1) on a curve to the right with a radius of 489.00 feet for 165.17 feet to a point of tangency, chord to said curve bears north 52° 39' 36" east for 164.42 feet;
2) north 62° 08' 33" east for 44.03 feet to a point of curvature;
3) on a curve to the right with a radius of 377.00 feet for 185.62 feet to a point of tangency, chord in said curve bears north 76° 14' 52" east for 183.75 feet;
4) south 89° 39' 00" east for 33.94 feet to a point in the west line of said Campbell Street, said point being also the southeast corner of land conveyed to the Standard Register Comapny by deed recorded in Deed Book 754 Page 240 in the deed records of Montgomery County, Ohio;

thence with the west line of said Campbell Street extended southwardly south 0° 14' 40" west for 18.00 feet to the point in the southeast right of way line of said spur track;

thence southwestwardly along said right of way line concentrie and parallel with and distant 9 feet southeasterly from the centerline fo said spur track the following four courses and distances:

1) north 89° 39' 00" west for 33.97 feet to a point of curvature;
2) on a curve to the left with a radius of 359.00 feet for 176.76 feet, chord to said curve bears south 76°14' 52" west for 174.98 feet;
3) south 62° 08' 33" west for 44.03 feet to a point of curvature
4) on a curve to the left with a radius of 481.00 feet for 142.24 feet, chord to said curve bears south 53° 40' 16" west for 141.72 feet to the point of beginning, containing 0.171 of an acre more or less.

Parcel No.

Parcel 13:

Situate in the City of Dayton, County of Montgomery, State of Ohio and lying in Section 4, Town 1, Range 6 Eat and being part of an 0.58 acre tract conveyed to The Ohmer Fare Register Company as described in Deed Book 460 Page 143, Montgomery County Records and also part of a strip of ground 39.0 feet in width taken by parallel lines off the West side of lot umber 2 of the Hiser Plat as recorded in Plat Book 4, Page 52 Montgomery County Records conveyed to The Ohmer Fare

Register company and recorded in Deed Book 460 Page 143, Montgomery County records and bounded and described as follows:

Beginning at the northwest corner of said lot number 2 on the said Hiser Plat;

thence south 2° east along the west line of said lot 2 and with the Ohmer Fare Register Company's east line for a distance of 16.5 feet to a corner;

thence north 87° 45' east with the north line of the Ohmer Fare Register Company's land for a distance of 39.0 feet to a corner;

thence south 2° east with the east line of the Ohmer Fare Registered Company's land for a distance of 22.0 feet to a point in the north line of the right of way lof the C.C.P. and St. L. Railway Company's spur track;

thence southwestwardly with the northwest line of said right of way parallel to and 9 feet measured at right angles from the centerline thereof, for a distance of 224.8 feet to the point of intersection of the said northwest right of way line and the north line of Homestead Avenue;

thence south 87° 35' west with the north line of Homestead Avenue for a distance of 33 feet to a point in the east line of of the right of way of the main tract of C.C.C. and St. L. Railway, said point being also in the west line of the Ohmer Fare Register Company's land;

thence north 10° 30' east with the east line of said right of way of the main tract of the C.C.C. & St. L. Railway and with the west line of the Ohmer Fare Register Company's land for a distance of 169.9 feet to the northwest corner of the said Ohmer Fare Register Company's land;

thence north 87° 45' east with the north line of the Ohmer Fare Register Company's land for a distance of 140.5 feet to the place of beginning, containing 0.42 acres more or less, subject to all easements, rights of way and conditions of record.

Excepting a 16.5 feet alley lying along the north line of and adjacent to the above tract vacated on March 12, 1952 by City of Dayton Ordinance 17332.

Parcel 14:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being lots numbered 20986 through 20992, inclusive of the consecutive numbers of lots on the revised plat of said city.

Parcel 15:

Situate in the City of Dayton County of Montgomery, State of Ohio and being a part of Section 4, Town 1, Range 6 East bounded and described as follows:

Beginning at an iron pin in the north line of Homestead Avenue, said beginning oint being at the southwest corner of lot 20992 of the revised and consecutive numbers of lots on the plat of said city, said beginning point being a distance of 298.75 feet westwardly from the centerline of Campbell Street;

thence westwardly with the north line of Homestead Avenue for a distance of 115.9 feet to an iron pin, said iron pin being at the point of intersection of the north line of Homestead Avenue and the southeast line of the 18.00 foot wide, 9.0 feet on each side of the centerline thereof, railroad siding known as "Syrup Track" as conveyed to C.C.C. & Ind. Ry.Company recorded in Deed Book 144 Page 464;

thence northeastwardly with the southeast line of said 18.0 foot siding and 9.0 feet distant from the centerline of the track thereof, on a curve to the right for a distance of 145.1 feet to an iron pin in the west line of said lot 20992;

thence southwardly with the said west line of lot 20992 for a distance of 86.2 feet to the place of beginning, containing 0.24 acres more or less together with the rights of others in said railroad siding, according to a survey by Arthur E. Buer, C.E. dated December 27, 1947, but subject to all legal highways.

Parcel 16:

Situate in the City of Dayton, County of Montgomery, State of Ohio and being part of Section 4, Town 1, Range 6 East and described as follows;

Beginning at the point of intersection of the east line of Campbell Street with the north line of the first alley (16.00 feet wide) north of Homestead Avenue (said alley known as Concord Street) said point being North 00° 28' 00" east and 148.00 feet from the intersection of the north line of Homestead Avenue with the east lien of said Campbell Street;

thence with the east line of said Campbell Street, north 000° 28' 00" east for 16.00 feet to a point;

thence south 89° 39' 00" east for 3.34 feet to a point;

thence north 000° 14' 40" east for 0.70 feet to a point;

thence north 88° 20' 20" east for 96.04 feet to a point;

thence north 84° 52' 48" east for 99.13 feet to a point in the southern extension of the west line of vacated Galloway Street; thence with the west line of said vacated Galloway Street south 00° 14' 40" west for 31.52 feet to a point in the north line of the first alley north of Homestead Avenue (said alley known as Concord Street);

thence with the north line of said first alley north of Homestead, north 89° 39' 60 west for 198.00 feet to the point of beginning, containing 0.107 acres more or less.

(2013-1092B.PFD/2013-1092B/25)

The Standard Register Company
Dayton, Montgomery County, OH
Second Lien Mortgage

## SCHEDULE 2

### Permitted Exceptions

1.  Coal, oil, natural gas, or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

2   Any lease, grant, exception or reservation of minerals or mineral rights together with any rights appurtenant thereto.

3.  All taxes, assessments and other charges not yet due and payable.

4.  Any inaccuracy in the specific quantity of acreage contained on any survey, if any, or contained within the legal description of the Property.

5.  Rights, if any, for the following in, over and to any vacated portion of alleys vacated by City of Dayton Ordinance No. 17332, Ordinance No. 11755, Ordinance No. 15718, Ordinance No. 26963, Ordinance No. 14915 and Deed Microfiche No. 98 695 B11 out of Common Pleas Court Case No. 98-34:

    (a)   Right of ingress and egress in favor of abutting and adjoining landowners, and/or

    (b)   Rights of any public utilities or facilities installed prior to vacation, together with the right of ingress and egress to repair, maintain, replace and remove said utilities or facilities.

6.  Covenants as contained in Deed Volume 2300, Page 414.

7.  Limited access as contained in Deed Volume 2409, Page 106.

8.  Easement to The State of Ohio as fully set forth at Deed Volume No. 2247, Page 223 and 2191, Page 228.

9.  Right of Way to the Dayton Power and Light Company as fully set forth at Deed Volume 2263, Page 228.

10.  Appropriation by State of Ohio as fully set forth at Deed Volume 2283, Page 94.

11.  Open-End First Lien Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated contemporaneously, made by The Standard Register Company, an Ohio corporation, as Mortgagor, to Silver Point Finance, LLC, as Administrative Agent, as Mortgagee, recorded prior to the recordation of this Mortgage.

12.    UCC Financing Statement from The Standard Register Company, an Ohio corporation, to Silver Point Finance, LLC, as Administrative Agent, filed contemporaneously herewith.

13.    Oil and gas leases, pipeline agreements or any other instruments related to the production or sale of oil and gas.

14.    Easements and Reservations as fully set forth at Deed Microfiche 78-502-A01.

15.    Covenants as fully set forth at Deed Microfiche 87-224-C06.

16.    Right of Way to the Dayton Power and Light Company as fully set forth at Deed Volume 2028, Page 602.

17.    Encroachment of a building located in part on Parcels 1 and 7 of the Property into the right of way for Albany Street as shown on a survey made by Haley Dusa Engineering & Surveying Group, LLC, dated 9-10-13.

18.    Encroachment of a parking lot located in part on the west side of Parcels 10 and 16 of the Property into the right of way for Campbell Street as shown on a survey made by Haley Dusa Engineering & Surveying Group, LLC, dated 9-10-13.

19.    Encroachment of a parking lot located in part of the east side of Parcels 10 and 16 of the Property into the right of way for Interstate 75 as shown on a survey made by Haley Dusa Engineering & Surveying Group, LLC, dated 9-10-13.

348401v2

SCHEDULE 3

NONE

## TABLE OF CONTENTS

Page

ARTICLE I  COVENANTS AND AGREEMENTS OF THE MORTGAGOR ...........................6
    SECTION 1.1.    Payment of Obligations..............................................6
    SECTION 1.2.    Title to Collateral, etc ..............................................6
    SECTION 1.3.    Title Insurance. ......................................................7
    SECTION 1.4.    Recordation ...........................................................7
    SECTION 1.5.    Payment of Impositions, etc..........................................7
    SECTION 1.6.    Leases.................................................................8
    SECTION 1.7.    Compliance with Instruments .........................................8
    SECTION 1.8.    Alterations, Additions, etc ...........................................8
    SECTION 1.9.    Acquired Property Subject to Lien ...................................8
    SECTION 1.10.    Assignment of Rents, Proceeds, etc...................................8
    SECTION 1.11.    No Claims Against the Mortgagee.....................................9
    SECTION 1.12.    No Transfer of the Property .........................................9
    SECTION 1.13.    Security Agreement .................................................10
    SECTION 1.14.    Representations and Warranties......................................11
    SECTION 1.15.    Mortgagor's Covenants..............................................11
ARTICLE II  INSURANCE .......................................................11
    SECTION 2.1.    Application of Proceeds and Awards..................................11
ARTICLE III  EVENTS OF DEFAULT; REMEDIES, ETC. ...........................11
    SECTION 3.1.    Events of Default; Acceleration......................................11
    SECTION 3.2.    Legal Proceedings; Foreclosure......................................11
    SECTION 3.3.    [Intentionally Omitted/POWER OF SALE PROVISION, IF APPLICABLE]. ......................................................12
    SECTION 3.4.    Uniform Commercial Code Remedies................................12
    SECTION 3.5.    Mortgagee Authorized to Execute Deeds, etc.........................13
    SECTION 3.6.    Purchase of Collateral by Mortgagee.................................13

2491125

SECTION 3.7.    Receipt a Sufficient Discharge to Purchaser ........................................ 13
SECTION 3.8.    Waiver of Appraisement, Valuation, etc. ............................................ 13
SECTION 3.9.    Sale a Bar Against Mortgagor ........................................................... 13
SECTION 3.10.   Obligations To Become Due on Sale ................................................... 13
SECTION 3.11.   Application of Proceeds of Sale and Other Moneys ........................... 14
SECTION 3.12.   Appointment of Receiver ................................................................... 14
SECTION 3.13.   Possession, Management and Income ................................................. 15
SECTION 3.14.   Right of Mortgagee to Perform Mortgagor's Covenants, etc ............. 15
SECTION 3.15.   Subrogation ....................................................................................... 15
SECTION 3.16.   Remedies, etc., Cumulative ............................................................... 16
SECTION 3.17.   Provisions Subject to Applicable Law ................................................ 16
SECTION 3.18.   No Waiver, etc ................................................................................... 16
SECTION 3.19.   Compromise of Actions, etc .............................................................. 16
ARTICLE IV  DEFINITIONS ..................................................................................... 17
SECTION 4.1.    Use of Defined Terms ........................................................................ 17
SECTION 4.2.    Credit Agreement Definitions ............................................................ 17
ARTICLE V  MISCELLANEOUS ................................................................................ 17
SECTION 5.1.    Further Assurances; Financing Statements ......................................... 17
SECTION 5.2.    Additional Security ............................................................................ 18
SECTION 5.3.    Release; Partial Release, etc. ............................................................. 18
SECTION 5.4.    Notices, etc. ....................................................................................... 18
SECTION 5.5.    Waivers, Amendments, etc ................................................................. 19
SECTION 5.6.    Cross-References ................................................................................ 19
SECTION 5.7.    Headings ............................................................................................ 19
SECTION 5.8.    Currency ............................................................................................ 19
SECTION 5.9.    Governing Law ................................................................................... 19
SECTION 5.10.   Successors and Assigns, etc ............................................................... 19
SECTION 5.11.   Waiver of Jury Trial; Submission to Jurisdiction. .............................. 19

2491125

SECTION 5.12.   Severability ...................................................................................20

SECTION 5.13.   Loan Document....................................................................................20

SECTION 5.14.   Usury Savings Clause ........................................................................20

SECTION 5.15.   State Specific Provisions....................................................................21

SECTION 5.16.   Intercreditor Agreements ..................................................................21

EXECUTION PAGE

Schedule 1 - Legal Description of the Land

Schedule 2 - Permitted Encumbrances

Schedule 3 – Leases

RETURN TO:
FIDELITY LAWYERS TITLE AGENCY LLC
100 E. THIRD ST. #400
DAYTON, OH 45402

2491125

THE STATE OF OHIO
MONTGOMERY COUNTY $\left.\right\}$ ss.

     I, WILLIS E. BLACKSHEAR, RECORDER, within and for the County and State aforesaid, do hereby certify that the foregoing is a true and correct copy of the ___*OPEN-END SECOND LIEN*___ ___*MORTGAGE*___ recorded at ___*MORT-2013-00070949*___.
     Witness my hand and seal of said office this ___*5th*___ day of ___*JUNE*___, A. D., 20 _*15*_ .

WILLIS E. BLACKSHEAR, RECORDER
Montgomery County, Ohio

Raised Imprint Seal of the
Montgomery County Recorder

By _____,
                                       Deputy Recorder