**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 23 & 580 |

**RESPONSE OF BANK OF AMERICA, N.A. TO**
**COMMITTEE'S OBJECTION TO PROPOSED SALE AND**
**LIMITED OBJECTION TO DEBTORS' SALE MOTION**

Bank of America, N.A., in its capacity as administrative and collateral agent for the ABL DIP Lenders (in such capacity, the "ABL Agent"),[2] responds to the Objection of the Official Committee of Unsecured Creditors to the Proposed Sale of Substantially All of the Debtors' Assets (the "Committee Objection") [Docket No. 580] filed on June 1, 2015, by the Official Committee of Unsecured Creditors (the "Committee"). In the Committee Objection, the Committee contends, among other things, that all sale proceeds should be escrowed and not distributed to any secured creditor until all claims in respect of which the Committee is granted

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).

[2] Capitalized terms used but not defined in this response and limited objection shall have the meanings ascribed to them in the Final Order (I) Authorizing Debtors in Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364; and (III) Providing Adequate Protection to Prepetition Credit Parties and Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 entered on April 16, 2015 (Docket No. 290) (the "Final DIP Financing Order").

standing to pursue have been resolved and that approval of any sale should be conditioned upon payment of all administrative expenses and a "meaningful distribution" to unsecured creditors.[3]

As demonstrated below, there is no basis for escrowing any sale proceeds otherwise payable to the ABL DIP Credit Parties on account of the ABL DIP Obligations, because, as the holders of oversecured, superpriority, unassailable claims against the Debtors, and as provided in the Final DIP Financing Order and the ABL DIP Loan Agreement, the ABL DIP Credit Parties are entitled to Full Payment in cash of the ABL DIP Obligations at the closing of any Proposed Sale approved by the Court.[4] ABL Agent, on behalf of the ABL DIP Credit Parties, objects, on this limited basis, to Court approval of any Proposed Sale that does not provide for cash proceeds in an amount sufficient for Full Payment of the ABL DIP Obligations and for the actual payment of such amount at closing to the ABL DIP Credit Parties.

In response to the Committee Objection and in support of its limited objection, ABL Agent respectfully shows the Court as follows:

---

[3] In the Committee Objection, the Committee objects to the proposed sale of substantially all of the Debtors' assets (the "Proposed Sale") on a number of other grounds. ABL Agent believes that the Proposed Sale is based upon the sound business judgment of the Debtors and is in the best interests of the Debtors' estates. For these reasons, ABL Agent, on behalf of ABL DIP Lenders, opposes the Committee's other objections to the Proposed Sale. In not addressing each of the Committee's objections in this response, ABL Agent is not waiving any ground for opposing the Committee's objections to the Proposed Sale and expressly reserves the right to assert at the sale hearing any argument in support of the Proposed Sale and in opposition to any objections the Committee or any other party asserts to Court approval of the Proposed Sale.

[4] No response to the Committee Objection is being made by the Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Lenders, because all of the Pre-Petition ABL Debt has been paid through the Roll-Up. As authorized by the Final DIP Financing Order, the Roll-Up was completed, as a result of which the Pre-Petition ABL Debt was paid in full (except for certain contingent obligations). (Final DIP Financing Order ¶ 12.A., at 27). The Challenge Deadline has expired, and no claim has been asserted with respect to the Roll-Up, the Pre-Petition ABL Credit Parties, the Pre-Petition ABL Debt, or the ABL Security Interests. As a result, the Roll-Up cannot be challenged, and each Debtor's admissions, stipulations, agreements and releases contained in the Final DIP Financing Order are now binding upon the Debtors, the Committee and all parties in interest "under all circumstances and for all purposes." (Final DIP Financing Order ¶ 28, at 52-53). No objection or challenge can be made to the amount, validity, perfection, enforceability, priority or extent of the Pre-Petition ABL Debt or any ABL Security Interest, and no defenses, claims, causes of action, counterclaims or offsets can be asserted against any Pre-Petition ABL Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors.

**Response to Committee Objection**

1. In the Committee Objection, the Committee contends that "[p]roceeds of the Proposed Sale should not be distributed to any secured lender prior to final resolution of any filed lien challenge" (Committee Objection at 36), and that "in order to preserve the Committee's lien challenge rights, the Court should direct that the proceeds of sale be escrowed pending resolution of the Complaint."[5] (Committee Objection at ¶ 103, at 37).

2. ABL Agent, on behalf of the ABL DIP Credit Parties, objects to the relief requested by the Committee because this relief vis-à-vis the ABL DIP Credit Parties is inappropriate in light of the following:

- The ABL DIP Credit Parties were granted security interests in and liens upon all pre-petition and post-petition assets of the Debtors, which include the assets to be sold pursuant to the Proposed Sale, and these security interests and liens of the ABL DIP Credit Parties are valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests and liens. (Final DIP Financing Order ¶ 10, at 22-26);

- All of the ABL DIP Obligations constitute superpriority claims under Section 364(c)(1) of the Bankruptcy Code, with priority in right of payment over (i) all other obligations, liabilities and indebtedness of each Debtor, (ii) any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and (iii) any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507, 546(c), 552(b) 726, 1113 or 1114 of the Bankruptcy Code. (Final DIP Financing Order at ¶ 11.A., at 26-27);

- The ABL DIP Loan Agreement requires that all proceeds received from any sale of any ABL Priority Collateral be applied to payment of the ABL DIP Obligations, and the failure to do so constitutes an event of default under the ABL DIP Loan Agreement, entitling the ABL DIP Credit Parties, after notice to the Debtors and any applicable opportunity to cure, to exercise their lien enforcement rights. (ABL DIP Loan Agreement §§ 4.3.1, 11.1 & 11.2).

---

[5] It is not entirely clear from the Committee Objection whether the Committee is referring to the ABL DIP Credit Parties in requesting this relief. The heading of the Committee's argument refers to "any Secured Lender," but the Committee's discussion of this requested relief refers only to "Silver Point." (Committee Objection ¶ 99, at 36). In addition, the Committee filed the Committee Objection before the Court at the June 8 hearing denied the Committee's request for derivative standing with respect to all of the claims the Committee sought to assert against the Pre-Petition ABL Credit Parties in the draft complaint submitted with the Committee Standing Motion.

- The Commitment Termination Date under (and as defined by) the ABL DIP Loan Agreement occurs upon the effective date of any sale of all or substantially all of the DIP Collateral, and, on such date, any commitment of the ABL DIP Lenders to make loans or other extensions of credit to the Debtors terminates, the ABL DIP Obligations must be paid in full, and, if the ABL DIP Obligations are not then paid in full, the ABL DIP Credit Parties may exercise their lien enforcement rights. (ABL DIP Loan Agreement §§ 1.1.5, 11.1 & 11.2).

- The Final DIP Financing Order prohibits the Debtors from using Cash Collateral for any purpose other than to pay the ABL DIP Obligations in full. (Final DIP Financing Order ¶ 13.B., at 28).

- With respect to Purchase Price for the Transferred Assets, as such terms are defined in the Asset Purchase Agreement dated as of March 12, 2015 among the Debtors and Standard Acquisition Holdings, LLC (the "Stalking Horse"), Section 2.7(a) of that Agreement provides that the aggregate consideration paid at closing for the Transferred Assets shall include cash consideration in an amount sufficient to result in Full Payment of the ABL DIP Obligations. Section 2.9(c)(ii) of that Agreement further provides that at closing the Stalking Horse shall deliver to the person designated in a payoff letter the amount required for Full Payment of the ABL DIP Obligations.

- The sale procedures approved by the Court require that, for any bid to be deemed a "Qualified Bid," that bid must provide for cash consideration payable at closing in an aggregate amount sufficient to provide for, and earmarked for the purpose of, Full Payment of all of the ABL DIP Obligations. (Sale Procedures at 10).

- The ABL DIP Credit Parties are substantially oversecured.[6]

- If proceeds received from any sale of any ABL Priority Collateral are not applied to payment of the ABL DIP Obligations, or if the ABL DIP Obligations are not paid in full on the Commitment Termination Date, such an event of default will entitle the ABL DIP Credit Parties to charge the default rate of interest under the ABL DIP Loan Agreement, thus further increasing the amount of the ABL DIP Obligations and further depleting the Debtors' estates. (ABL DIP Loan Agreement § 2.1.5).

3. In addition, there is no reason to withhold any sale proceeds otherwise payable to ABL DIP Credit Parties on account of the ABL DIP Obligations for the purpose of the Carve-Out, as the Carve-Out is to be solely allocated against and assessable from the Term Loan

---

[6] The borrowing base certificate dated June 8, 2015, submitted by the Debtors in accordance with the ABL DIP Loan Agreement reflects gross accounts receivable in the amount of approximately $128,810.000 and gross inventory in the amount of approximately $60,763,000. On the same day, the principal balance of the ABL DIP Obligations was approximately $66,652,000 (including the contingent obligations under the letter of credit).

Priority Collateral, and no claims or liens in favor of any ABL DIP Credit Party are subject to or otherwise affected by the Carve-Out. (Final DIP Financing Order ¶ 19, at 41).

4. The Committee also contends that the sale proceeds will not be sufficient to pay administrative expenses and asserts that "[a]ny sale should be conditioned upon the satisfaction of all administrative expenses and a meaningful distribution to unsecured creditors." (Committee Objection at ¶ 72, at 25).

5. The Committee's wish to provide a "meaningful distribution" to unsecured creditors is not a basis for contravening the terms of the Final DIP Financing Order and the ABL DIP Loan Agreement. The ABL DIP Credit Parties object to Court approval of any Proposed Sale the cash proceeds of which are not sufficient to provide for Full Payment of the ABL DIP Obligations and are not paid at closing to the ABL DIP Credit Parties for that purpose. For the reasons set for above, the ABL DIP Credit Parties are entitled to Full Payment in cash of the ABL DIP Obligations at closing.

**Limited Objection to Sale Motion**

6. The ABL DIP Credit Parties agree with the conclusion of the Debtors that an organized and orderly sale of substantially all of the Debtors' assets is the best way to maximize value in light of the financial realities facing the Debtors.

7. The proceeds of the Proposed Sale constitute ABL DIP Collateral and, with respect to accounts, inventory and certain other items, constitute ABL DIP Priority Collateral. The value of the ABL DIP Priority Collateral substantially exceeds the balance of the ABL DIP Obligations.

8.   The consent of the ABL DIP Credit Parties is required under Section 363(f)(2) of the Bankruptcy Code in order to sell the DIP Collateral free and clear of the ABL DIP Credit Parties' liens and security interests.

9.   In recognition of their liens and security interests, and given the undisputed facts set forth in Paragraph 2 above, the ABL DIP Credit Parties should receive at closing of any Court-approved Proposed Sale cash proceeds in an amount sufficient for Full Payment of the ABL DIP Obligations.

10.  The ABL DIP Credit Parties object to Court approval of any Proposed Sale the terms of which do not provide for (i) payment of all costs incurred in connection with the closing of the Proposed Sale which are payable by the Debtors or their estates and (ii) payment to the ABL DIP Credit Parties at closing of cash proceeds in an amount sufficient for Full Payment of the ABL DIP Obligations.

### Reservation of Rights

11.  Due to the fluid nature of the sale process, there may be other objections to or arguments made against Court approval of the Proposed Sale by the Committee or other parties in interest, or other issues may arise with respect to the Proposed Sale. These other objections, arguments and issues may cause the ABL DIP Credit Parties to object or decline to consent to the relief requested in the Sale Motion. The ABL DIP Credit Parties have not waived, and hereby reserve, all of their claims, rights, remedies and objections to the Sale Motion and any Proposed Sale.

WHEREFORE, ABL Agent respectfully requests that the Court (i) grant the Sale Motion and approve the Proposed Sale only after sustaining and resolving the objections of the ABL DIP Credit Parties as set forth in this response and limited objection and (ii) grant to the ABL DIP

Credit Parties such other and further relief as may be necessary or appropriate under the circumstances.

Dated: June 16, 2015
       Wilmington, Delaware

Respectfully submitted,

*/s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Tyler D. Semmelman (No. 5386)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
       semmelman@rlf.com

-and-

C. Edward Dobbs
James S. Rankin, Jr.
PARKER HUDSON RAINER
 & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, GA 30303
Telephone:  (404) 523-5300
Facsimile:  (404) 522-8409
Email:  edobbs@phrd.com
       jrankin@phrd.com

*Counsel for Bank of America, N.A., as*
 *ABL DIP Agent*