# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 23, 559, 667 & 696 |

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (together with the Supplement, the "Motion")[2] dated

March 12, 2015 of the above-captioned debtors and debtors-in-possession (the "Debtors") for,

among other things, entry of an order (the "Order") (i) approving the sale of substantially all of

the Debtors' assets (the "Sale Transaction") free and clear of all claims,[3] liabilities, interests,

encumbrances, liens, financing statements, mortgages, mechanics' liens, lis pendens, and all

other documents or agreements evidencing interests in and/or claims against such assets

(collectively, the "Encumbrances"), except to the extent set forth in the Asset Purchase

Agreement (the "APA") pursuant to sections 105, 363, and 365 of title 11 of the United States

---

[1] The Debtors and the last four digits of their respective U.S. federal taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC (n/a). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the APA (as defined herein), as applicable.

[3] For purposes of this Order, the term "claim" shall have the meaning ascribed to such term in Bankruptcy Code section 101(5).

Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 6004, and

6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) authorizing

the assumption and assignment of certain executory contracts and unexpired leases (the

"Transferred Contracts"), including the potential Transferred Contracts (collectively, the

"Potential Contracts") identified by the Debtors and more fully described in the APA dated as of

June 19, 2015 (as amended from time to time and attached hereto as Exhibit A), by and between

the Debtors (collectively, the "Sellers"), on the one hand, and Taylor Corporation ("US Buyer")

and/or its designees,[4] on the other hand, for the purchase of the Transferred Assets[5] and the

assumption of the Assumed Liabilities (as defined in the APA), and (iii) granting certain related

relief; and the Supplement thereto dated May 27, 2015 (the "Supplement"); and the Court having

held a hearing on June 17, 2015 (the "Sale Hearing") to approve the Sale Transaction; and the

Court having reviewed and considered (a) the Motion, (b) the declarations filed by the Debtors

and the Buyers in support of the Motion, (c) the objections to the Motion, (d) all responses to any

objections and replies in further support of the Motion, and (e) the arguments of counsel made,

and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates and creditors, and

other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Cases; and

---

[4]   The US Buyer may form, or ensure that its affiliates or owners form, (a) one or more entities established under the laws of Mexico (each a "Mexico Buyer" and, collectively, the "Mexico Buyers") and (b) certain designees, including, "Designated Buyers", all of which shall become parties to the APA. The US Buyers, the Mexico Buyers, and their designees, including without limitation, any Designated Buyers, are collectively referred to herein as the "Buyers".

[5]   The Transferred Assets consist of substantially all of the assets of the Sellers other than the Excluded Assets referenced in Section 2.2 of the APA.

after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[6]

A.    **Jurisdiction and Venue.** The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates.** The statutory predicates for the relief sought in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

C.    **Petition Date.** On March 12, 2015 (the "Petition Date"), The Standard Register Company ("Standard Register") and 10 of its subsidiaries each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

D.    **Entry of Sale Procedures Order.** On April 15, 2015, this Court entered an order [Docket No. 286] (the "Sale Procedures Order") (A) approving bidding and auction procedures (the "Sale Procedures"), (B) approving expense reimbursement provisions, (C) authorizing the Assumption and Assignment Procedures, including notice of proposed Cure Claims, (D) approving the form and manner of notice of all procedures, protections, schedules, and agreements, and (E) scheduling the Sale Hearing.

E.    **Compliance with Sale Procedures Order.** As demonstrated by (i) the First Day Declaration [Docket No. 2], (ii) the *Declaration of Andrew Torgove in Support of the Sale Motion*, filed on March 12, 2015 [Docket No. 25], (iii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iv) the representations of counsel made on the

---

[6]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052. The findings of fact and conclusions of law set forth in this Order shall and shall be deemed to apply to Standard Acquisition Holdings, LLC as the Back-Up Bidder in the event that the Sale Transactions are consummated with the Back-Up Bidder.

record at the Sale Hearing, the Debtors have marketed the Transferred Assets and conducted the sale process in compliance with the Sale Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner. The Debtors and their professionals have actively marketed the Transferred Assets and conducted the sale process in compliance with the Sale Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers. The Buyers, the Prepetition Term Loan Lenders, the Prepetition Term Loan Agents (as defined below), and the Pre-Petition ABL Credit Parties (as defined below) acted in compliance with the terms of the Sale Procedures. In accordance with the Sale Procedures, the Debtors determined that the bid submitted by the Buyers and memorialized by the APA is the Successful Bid (as defined in the Sale Procedures).

F.    **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale Transaction, the Assumption and Assignment Procedures (including the objection deadline with respect to any proposed Cure Claim) and the assumption and assignment of the Transferred Contracts and the Cure Claims has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and in compliance with the Sale Procedures Order, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale Transaction, or the assumption and assignment of the Transferred Contracts or the Cure Claims is or shall be required. With respect to individuals and entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice (as defined in the Motion) in (i) the *New York Times* on April 20, 2015, (ii) the *Dayton Business Journal* on April 24, 2015, and (iii)

the *Dayton Business Journal Morning Edition email newsletter* in five (5) consecutive daily

issues dated April 20, 2015 through April 24, 2015, was sufficient and reasonably calculated

under the circumstances to reach such individuals and entities.

G.      **Corporate Authority**.  Each Debtor (i) has full corporate power and authority to

execute the APA and all other documents contemplated thereby, and the Sale of the Transferred

Assets by the Debtors has been duly and validly authorized by all necessary corporate action of

each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate

the transactions contemplated by the APA, (iii) has taken all corporate action and formalities

necessary to authorize and approve the APA and the consummation by the Debtors of the

transactions contemplated thereby, including, without limitation, as required by their respective

organizational documents, and (iv) no governmental, regulatory or other consents or approvals,

other than those expressly provided for in the APA, are required for the Debtors to enter into the

APA and consummate the Sale Transaction.

H.      **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard

with respect to the Motion and the relief requested therein has been afforded to all interested

persons and entities, including:  (i) the Office of the United States Trustee; (ii) counsel for the

Buyers; (iii) counsel for the official committee of unsecured creditors (the "Committee")

appointed in these Chapter 11 Cases; (iv) all entities known to have expressed an interest in a

transaction with respect to the Transferred Assets during the past six months; (v) all entities

known to have asserted any Encumbrances on the Transferred Assets; (vi) all federal, state, local,

and foreign regulatory or taxing authorities or recording offices that have a reasonably known

interest in the relief requested by the Motion; (vii) all parties to the Transferred Contracts and

Potential Contracts; (viii) the United States Attorney's office; (ix) the Securities and Exchange

01:17284062.1

5

Commission; (x) the Internal Revenue Service; (xi) the Prepetition Lenders; and (xii) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases.

      I.     **Sale in Best Interest**. Consummation of the sale of the Transferred Assets at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

      J.     **Business Justification**. Sound business reasons exist for the Sale Transaction. Entry into the APA, and the consummation of the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Transferred Contracts, constitutes each Debtor's exercise of sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale Transaction. Such business reasons include, but are not limited to, the following: (i) the Sale Transaction is the only viable alternative to liquidation; (ii) the APA constitutes the highest and best offer for the Transferred Assets; (iii) the APA and the closing thereon will present the best opportunity to realize the value of the Transferred Assets on a going concern basis and avoid decline and devaluation of the Transferred Assets; (iv) unless the Sale Transaction and all of the other transactions contemplated by the APA are concluded expeditiously, as provided for in the Motion and pursuant to the APA, recoveries to creditors may be diminished; and (v) any plan likely would not have yielded as favorable an economic result.

      K.     The terms and conditions of the APA, including, without limitation, the consideration to be realized by the Debtors, are fair and reasonable. Approval of the Motion, the APA, and the transactions contemplated thereby, including, without limitation, the Sale

01:17284062.1

6

Transaction and the assumption and assignment of the Transferred Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

L.     **Arms-Length Sale.** The APA was negotiated, proposed, and entered into by the Debtors and the Buyers without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Buyers have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyers have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The Buyers are not "insiders" of the Debtors as defined in Bankruptcy Code section 101(31).

M.     **Good Faith Purchaser.** The Buyers are good faith purchasers for value and, as such, are entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law. Specifically, (i) the Buyers recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Buyers complied in all respects with the provisions in the Sale Procedures Order; (iii) all payments to be made by the Buyers in connection with the Sale Transaction have been disclosed; (iv) no common identity of directors, or officers exists among the Buyers and the Debtors; (v) the negotiation and execution of the APA was at arm's-length and in good faith, and at all times each of the Buyers and the Debtors were represented by competent counsel of their choosing; (vi) the Buyers did not in any way induce or cause the chapter 11 filing of the Debtors; and (vii) the Buyers have not acted in a collusive manner with any person. The Buyers will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the APA.

N.    **DIP Facilities**.  On April 16, 2105, the Court entered a *Final Order*

*(I) Authorizing Debtors in Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C.*

*§§ 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Postpetition Lenders*

*Pursuant to 11 U.S.C. § 364; and (III) Providing Adequate Protection to Prepetition Credit*

*Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364*

[Docket No. 290] (the "DIP Order") approving, on a final basis, the Debtors' entry into (i) that

certain Post-Petition Loan and Security Agreement dated as of March 12, 2015 (as at any time

amended, the "ABL DIP Loan Agreement"), by and among the Debtors, the lenders party thereto

(the "ABL DIP Lenders") and Bank of America, N.A., as administrative and collateral agent (the

"ABL DIP Agent"), and Bank of America, N.A., as issuing bank (the "Issuing Bank") in respect

of certain letters of credit (collectively, as at any time amended, the "Letters of Credit"), and

(ii) that certain Super-Priority Priming Debtor in Possession Delayed Draw Term Loan Credit

Agreement dated as of March 12, 2015 among Standard Register, as the borrower, the subsidiary

guarantors from time to time parties thereto, various financial institution and other persons from

time to time party thereto, as lenders, and Silver Point Finance, LLC, as administrative agent and

collateral agent (collectively, the "DIP Credit Agreements").

O.    **Prepetition Term Loan Lenders' Secured Claims.**  As of the Petition Date, the

Debtors owed the following amounts under its prepetition term loan credit agreements:

(i)    Approximately $113,594,130.19 in principal, plus accrued interest,
pursuant to that certain First Lien Credit Agreement (the "Prepetition First
Lien Credit Agreement") dated as of August 1, 2013 among Standard
Register, as borrower, the other Debtors, as guarantors, various financial
institutions and other persons from time to time party thereto, as lenders
(the "Prepetition First Lien Lenders"), and Silver Point Finance, LLC, as
administrative agent (in its capacity as such, the "Prepetition First Lien
Agent"); and

(ii)   Approximately $96,719,023.07 in principal, plus accrued interest, pursuant to that certain Second Lien Credit Agreement (the "Prepetition Second Lien Credit Agreement" and, together with the Prepetition First Lien Credit Agreement, the "Prepetition Credit Agreements") dated as of August 1, 2013 among Standard Register, as borrower, the other Debtors, as guarantors, various financial institutions and other persons from time to time party thereto, as lenders (the "Prepetition Second Lien Lenders" and, together with the Prepetition First Lien Lenders, the "Prepetition Term Loan Lenders"), and Silver Point Finance, LLC, as administrative agent (in its capacity as such, the "Prepetition Second Lien Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Term Loan Agents").

Certain of the Debtors are also parties to that certain Amended and Restated Loan and Security Agreement dated as of August 1, 2013 (the "Prepetition ABL Loan Agreement") among such Debtors, as borrowers, the financial institutions party thereto from time to time, as lenders (the "Prepetition ABL Lenders"), and Bank of America, N.A., as administrative and collateral agent (the "Prepetition ABL Agent"). The relative rights and priorities of the Prepetition Term Loan Lenders, on the one hand, and the Prepetition ABL Lenders, on the other, are set forth in that certain Intercreditor Agreement dated as of August 1, 2013 (the "ABL Term Intercreditor") among certain of the Debtors, the Prepetition ABL Agent, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent.

P.     The Prepetition First Lien Lenders hold an allowed secured claim in the aggregate amount of not less than $113,594,130.19, plus accrued interest, which claim, in light of the Settlement Agreement (as defined below) approved by this Order, is not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the DIP Order (the "Allowed First Lien Claim"), and pursuant to the Sale Procedures and the DIP Order were authorized to credit bid any or all of such Allowed First Lien Claim at the Auction. The Prepetition Second Lien Lenders hold an allowed secured claim in the aggregate amount of not

less than $96,719,023.07, plus accrued interest (the "Allowed Second Lien Claim"), which claim, in light of the Settlement Agreement (as defined below) approved by this Order, is not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and pursuant to the Sale Procedures and the DIP Order were authorized to credit bid any or all of such Allowed Second Lien Claim at the Auction.

Q.      **Free and Clear.**  The Debtors may sell the Transferred Assets free and clear of all obligations and Encumbrances (other than Permitted Encumbrances[7] and the Assumed Liabilities) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code section 363(f)(l)–(5) has been satisfied.  Those holders of Encumbrances who did not object or withdrew objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests and/or claims, if any, attach to the cash proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert an interest or Encumbrance with the same priority, validity, force, and effect as they attached to such property immediately before the Closing Date.

---

[7]     As used herein, "Permitted Encumbrance" means, (a) as to any Lease, any Encumbrance affecting solely the interest of the landlord thereunder and not the interest of the tenant thereunder, which does not materially impair the value or use of such Lease, (b) other exceptions, restrictions, easements, imperfections of title, charges, rights-of-way and encumbrances that do not materially interfere with the use or value of the Transferred Assets that are Owned Real Property subject to such encumbrances, and (c) any lien on the Transferred Assets securing ad valorem property tax obligations, to the extent such lien is senior to the liens securing the Allowed First Lien Claim and Allowed Second Lien claim pursuant to applicable non-bankruptcy law.

R.    The transfer of the Transferred Assets to the Buyers will be a legal, valid, and effective transfer of the Transferred Assets, and in the case of the Transferred Assets, will vest the Buyers with all right, title, and interest to such assets free and clear of any and all Encumbrances, including without limitation, any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Buyers' interest in the Transferred Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date or to transaction contemplated by the APA that occurs on the Closing Date, other than Transfer Taxes that are Assumed Liabilities.

S.    The Buyers would not have entered into the APA and would not consummate the transactions contemplated hereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances and the Assumed Liabilities), including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if the

01:17284062.1

11

Buyers would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances and the Assumed Liabilities). The Buyers will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, unless this Court expressly orders that none of the Buyers, their affiliates, their present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability.

T.      Not transferring the Transferred Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances) including, without limitation, rights or claims based on any taxes, successor, or transferee liability, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

U.      Without limiting the generality of the foregoing, none of the Buyers, their affiliates, their respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, or otherwise, directly or indirectly, any liens,

claims, encumbrances, and other interests relating to any federal, state, local, or foreign income

tax liabilities, that the Debtors incur in connection with the consummation of the transactions

contemplated by the APA, including, without limitation, the Sale Transaction and the assumption

and assignment of the Transferred Contracts, other than taxes that are Assumed Liabilities under

Section 2.3(a)(i) and Section 2.3(a)(viii) of the APA.

V.    **Assumption of Executory Contracts and Unexpired Leases**.  Without in any

way limiting any lease or contract counterparty's rights under section 365 of the Bankruptcy

Code, the (i) transfer of the Transferred Assets to the Buyers and (ii) assignment to the Buyers of

the Transferred Contracts, will not subject the Buyers to any liability whatsoever prior to the

Closing Date (defined below) or by reason of such transfer under the laws of the United States,

any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part,

directly or indirectly, on any theory of law or equity, including, without limitation, any theory of

equitable law, including, without limitation, any theory of antitrust, successor or transferee

liability.  The Debtors have demonstrated that it is an exercise of their sound business judgment

to assume and assign the Transferred Contracts to the Buyers in connection with the

consummation of the Sale Transaction, and the assumption and assignment of the Transferred

Contracts is the best interests of the Debtors, their estates, and their creditors.  The Transferred

Contracts being assigned to the Buyers are an integral part of the Transferred Assets being

purchased by the Buyers and, accordingly, such assumption and assignment of Transferred

Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair

discrimination.

W.    **Cure/Adequate Assurance**.  The Buyers have (i) cured, or have provided

adequate assurance of cure, upon or following Closing, of any default existing prior to the date of

Closing under any of the Transferred Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts set forth on Exhibit B hereto (except with respect to amounts related to agreements subject to an objection that has been adjourned), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of Closing under any of the Transferred Contracts within the meaning of 11 U.S.C. § 365(b)(1)(B). The Buyers have provided or will provide adequate assurance of future performance of and under the Potential Contracts within the meaning of 11 U.S.C. § 365(b)(1)(C). Pursuant to 11 U.S.C. § 365(f), the Transferred Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyers notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

X.   **Prompt Consummation.** The sale of the Transferred Assets must be approved and consummated promptly in order to preserve the value of the Transferred Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Sellers and the Buyers intend to close the Sale Transaction as soon as reasonably practicable.

Y.   The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, prior to, and outside of, a chapter 11 plan of reorganization. The Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. In addition, consummation of the Sale Transaction will prevent the continuing accrual of interest and fees to the Debtors' postpetition lenders.

01:17284062.1

14

Z.      **No Fraudulent Transfer**. The APA was not entered into for the purpose of

hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the

United States, any state, territory, possession, or the District of Columbia. The Buyers is not a

mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or

their respective estates and there is no continuity between the Buyers and the Debtors. The Sale

Transaction does not amount to a consolidation, merger or de facto merger of the Buyers and any

of the Debtors.

AA.      **Consideration**. The consideration provided by the Buyers for the Transferred

Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the

Transferred Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be

provided by any other practical available alternative, and (iv) constitutes reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States,

any state, territory, possession, or the District of Columbia (including, without limitation, the

Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act, as in effect in

any jurisdiction of the United States).

BB.      **Buyers Are Not Insiders and No Successor Liability**. The Buyers are not

"insiders" or "affiliates" of the Debtors, as those terms are defined in the Bankruptcy Code, and

there has been no common identity of incorporators or directors existing between the Buyers and

the Debtors. The transfer of the Transferred Assets and the assumption of the Assumed

Liabilities (including any individual elements of the Sale Transaction) to the Buyers, except as

otherwise set forth in the APA, does not, and will not, subject the Buyers to any liability

whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the

Sale Transaction or by reason of such transfer under the laws of the United States, any state,

territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the APA, the Buyers are not purchasing all of the Debtors' assets in that, among other things, the Buyers are not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyers are not holding themselves out to the public as a continuation of the Debtors. The Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyers and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Buyers and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyers. The Buyers are not a mere continuation of the Debtors or the Debtors' estates, and the Buyers do not constitute successors to the Debtors or the Debtors' estates.

CC.    **Legal, Valid Transfer**. The transfer of the Transferred Assets to the Buyers will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Buyers with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), as set forth in the APA. The Transferred Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estate within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owners of the Transferred Assets.

DD.    The terms of the APA, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects.

EE.    **Settlement Agreement**. Resolution of any potential disputes, including those set forth in the Committee's objections to the Sale Transactions and those other disputes between and among any or all of the Debtors, their estates, the Committee, First Lien Term Lender Agent

(as defined in the DIP Order), the Second Lien Term Lender Agent (as defined in the DIP Order) and various related parties pursuant to and on the terms set forth in that certain Settlement Agreement Among The Standard Register Company and its Affiliated Debtors and Debtors in Possession, Silver Point Finance, LLC, in its own Capacityand in its Capacity and as Administrative Agent under the Term DIP Credit Agreement, the First Lien Term Loan Facility, and Second Lien Term Loan Facility, and the Duly Appointed Official Committee of Unsecured Creditors of the Debtors dated as of June 19, 2015 (the "Settlement Agreement"), attached as Exhibit 1 to the *Notice of Filing of Settlement Agreement* [Docket No. 696], is a reasonable exercise of the Debtors' and the Committee's business judgment and is in the best interests of the Debtors, their estates, their creditors, the Committee, and all parties in interest.

FF.     **Not a *Sub Rosa* Plan**. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a plan of reorganization or liquidation for the Debtors.

GG.     **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

It is therefore ORDERED, ADJUDGED, AND DECREED THAT:

**GENERAL PROVISIONS**

1.     The Motion is GRANTED and APPROVED, as set forth herein.

2.     All objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

01:17284062.1

17

3.      The objections of Chaotic Moon, LLC, International Paper Company ("IPC"), Liberty Mutual Insurance Company, Salesforce.com, Inc., and Cisco Systems Capital Corporation have been resolved as reflected on the record at the Sale Hearing.

**APPROVAL OF THE SALE OF THE TRANSFERRED ASSETS**

4.      The APA, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

5.      Pursuant to 11 U.S.C. § 363(b), the sale of the Transferred Assets to the Buyers free and clear of all obligations and Encumbrances (except Permitted Encumbrances and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**SALE AND TRANSFER OF TRANSFERRED ASSETS**

6.      Pursuant to 11 U.S.C. § 363(b), the Debtors are hereby authorized and directed to sell the Transferred Assets to the Buyers and consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, the APA, and to transfer and assign all right, title, and interest (including common law rights) to all property, licenses, and rights to be conveyed to the Buyers in accordance with and subject to the terms and conditions of the APA, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate, and implement, the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, including, without limitation, the related documents, exhibits, and schedules, and to take all further actions as may be reasonably requested by the Buyers for the purposes of assigning, transferring, granting, conveying, and conferring to the Buyers or reducing to possession, the Transferred Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA.

7.    Pursuant to 11 U.S.C. § 363(b) and 363(f), the Transferred Assets shall be transferred to the Buyers upon the Closing Date free and clear of all obligations and Encumbrances (except for Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever, including without limitation, rights or claims based on any taxes or successor or transferee liability, including, without limitation, pension obligations or other obligations or Encumbrances arising under ERISA, all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal, state, or foreign tax laws or doctrines of successor or transferee liability, with all such Encumbrances to attach to the cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect which they now have as against the Transferred Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8.    Following the Closing, the Debtors and/or the Buyers are authorized to execute and file a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, and Encumbrances in the Transferred Assets of any kind or nature whatsoever.  On the Closing Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Transferred Assets and/or a bill (or bills) of sale transferring good and marketable title in such Transferred Assets to the Buyers.  On the Closing Date, this Order also shall be construed as, and constitute for any and all purposes, a complete and general

01:17284062.1

assignment of all right, title, and interest of the Debtors and each bankruptcy estate to the Buyers in the Transferred Contracts. Each and every federal, state, local, and foreign governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

9.      Except as otherwise provided in orders of this Court, all entities who are presently, or on the Closing Date may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of the Transferred Assets to the Buyers on the Closing Date.

10.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Transferred Assets to the Buyers in accordance with the APA and this Order; *provided, however*, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order, or from enforcing its rights under section 365 of the Bankruptcy Code.

11.      This Order (a) shall be effective as a determination that, upon the Closing of the Sale Transaction, all interests, claims, and Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Transferred Assets prior to the Closing of the Sale Transaction have been unconditionally released, discharged, and terminated (other than any Permitted Encumbrances or Assumed Liabilities) as to the Transferred Assets, and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local, and foreign officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Transferred

Assets.

12.    Except as expressly permitted by the APA or this Order, all persons and entities,

including, but not limited to, all debt holders, equity security holders, governmental, tax, and

regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other

creditors, holding Encumbrances or other interests of any kind or nature whatsoever, including,

without limitation, rights or claims based on any taxes or successor or transferee liability, against

or in a Debtor or the Transferred Assets (whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out

of, in connection with, or in any way relating to, the Debtors, the Transferred Assets or the

operation of the Transferred Assets before the Closing Date, or the transactions contemplated by

the APA, including, without limitation, the Sale Transaction and the assumption and assignment

of the Transferred Contracts, are forever barred, estopped, and permanently enjoined from

asserting against the Buyers, their successors and assigns, their respective property and the

Transferred Assets, such persons' or entities' Encumbrances or other interests of any kind or

nature whatsoever, including, without limitation, rights or claims based on any taxes or successor

or transferee liability.

13.    On the Closing Date, each of the Debtors' creditors is authorized and directed to

execute such documents and take all other actions as may be necessary to release its

Encumbrances on the Transferred Assets, if any, as such Encumbrances may have been recorded

or otherwise exist.

01:17284062.1

21

14.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Transferred Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts.

15.    Subject to the terms and conditions of this Order, the transfer of the Transferred Assets to the Buyers pursuant to the APA constitutes a legal, valid, and effective transfer of the Transferred Assets, and shall vest the Buyers with all right, title, and interest of the Debtors in and to the Transferred Assets free and clear of all Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances and the Assumed Liabilities).

16.    Notwithstanding anything contained herein, nothing in this Order or in the APA shall be deemed to constitute a release, impairment, modification, or a transfer of any assets free and clear of the defenses, recoupment rights, or setoff rights of Morgan Adhesives Company, LLC d/b/a MACtac, The Reynolds and Reynolds Company, IPC, Leedsworld, Inc., Bullet Line, LLC, Timeplanner Calendars, Inc., Georgia-Pacific Consumer Products LP ("Georgia-Pacific"), RR Donnelly, Veritiv Corporation, The Flesh Company, Memorial Hermann Health System, or CareSource Management Group Co. ("CareSource") or to prevent the foregoing parties from asserting or exercising such defenses or rights, however characterized against any party; nor shall anything herein preclude the Buyers from asserting or exercising any defenses, recoupment rights, or setoff rights that constitute Transferred Assets with respect to any claim that is an Assumed Liability pursuant to Sections 2.3(a)(iii) or 2.3(a)(iv) of the APA, including, for the avoidance of doubt, with respect to claims asserted by any of the parties identified in this paragraph.

01:17284062.1

17. The Debtors shall not, and are not hereby authorized to, sell or transfer any goods that Georgia-Pacific has supplied to the Debtors on consignment and which remain in consignment as of the Closing Date (such goods, the "Georgia-Pacific Consigned Products") pursuant to that certain Sale and Purchase Agreement dated April 1, 2013 (as amended, the "Purchase Agreement"), by and between the Debtors and Georgia-Pacific, absent agreement between the parties or a further determination by the Court. For the avoidance of doubt, pending a decision regarding the assumption, assumption and assignment, or rejection of the Purchase Agreement, the Debtors or the Buyers, as applicable, are authorized to perform under the Purchase Agreement with respect to the Georgia-Pacific Consigned Products and shall perform all related obligations in accordance with the terms thereof.

18. The Debtors shall not and are not hereby authorized to sell or transfer any goods that are the property of Hewlett Packard Company and its related entities (collectively, "HP"), if any, which are in the Debtors' possession pursuant to that certain Amended and Restated Services Agreement, CW 217006, Dated April 3, 2009, between Standard Register Company, as supplier, and Hewlett Packard Company, as customer, as amended, modified and supplemented from time to time including by the most recent Amendment No. 13, dated March 1, 2015 (the "HP Services Agreement"). In the ordinary course of business, the Debtors hold property of HP at its various facilities and HP has asserted that such property is property of HP and not of the Debtors or the Buyer, as the case may be. Pending a decision regarding the assumption, assumption and assignment or rejection of the HP Services Agreement, the Debtors or the Buyer, as the case may be, are authorized to continue performing under the HP Services Agreement and shall perform all related obligations in accordance with the terms thereof. The assumption, assumption and assignment or rejection of the HP Services Agreement shall not, in any way,

impact or otherwise effect the ownership of HP's goods that are presently in the Debtors' or the Buyer's possession, as the case may be. The transfer of possession of HP's goods may occur pursuant only to assumption or assumption and assignment of the HP Services Agreement.

19.    Notwithstanding the above, the Transferred Assets shall not include the following property which is property of CDK Global, LLC f/k/a ADP Dealer Services, Inc. ("CDK"): (i) the Confidential Information as that term is defined in the Non-Disclosure Agreement made as of August 26, 2005 entered into between Standard Register and CDK, which Confidential Information remains governed by and subject to the Non-Disclosure Agreement, and (ii) any confidential and proprietary information, including, without limitation, the "automobile and truck dealership clients to whom ADP [CDK] and SR [Standard Register] sold Products," and all other proprietary and confidential information regarding such clients such as client specific information like forms designs, artwork, product purchase history (such clients and related information, "SAA Information" and together with Confidential Information, "CDK CI")) supplied to Standard Register by CDK pursuant to, under or related to the April 25, 2000 Strategic Alliance Agreement ("SAA") entered into between Standard Register and CDK, including all amendments to the SAA Agreement. No later than the Closing Date, Standard Register shall return to CDK all CDK CI including, without limitation, all copies, reproductions, disclosures, summaries and distributions of CDK CI, and shall expunge from the Debtors' records all CDK CI. If any CDK CI inadvertently is tendered or comes into the possession of the Buyers, the Buyers shall maintain it as confidential, immediately return the same to CDK, and make no record or use of it in any manner. For clarity, nothing in this provision is intended to expand the scope of the CDK CI provided under the Non-Disclosure Agreement or SAA.

NO SUCCESSOR LIABILITY

20.     The Buyers are not "successors" to the Debtors or their estates by reason of any

theory of law or equity, and the Buyers shall not assume, or be deemed to assume, or in any way

be responsible for any liability or obligation of any of the Debtors and/or their estates, other than

the Assumed Liabilities, with respect to the Transferred Assets or otherwise, including, but not

limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or

basis of liability.  Except to the extent the Buyers assume Assumed Liabilities and the Buyers are

ultimately permitted to assume the Transferred Contracts pursuant to the APA, neither the

purchase of the Transferred Assets by the Buyers nor the fact that the Buyers are using any of the

Transferred Assets previously operated by the Debtors will cause the Buyers to be deemed

successors in any respect to the Debtors' businesses or incur any liability derived therefrom

within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor,

employment, environmental, or other law, rule or regulation (including, without limitation, filing

requirements under any such laws, rules or regulations), or under any products liability law or

doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

21.     The Buyers have given substantial consideration under the APA, which

consideration shall constitute valid and valuable consideration for the releases of any potential

claims of successor liability of the Buyers and which shall be deemed to have been given in

favor of the Buyers by all holders of Encumbrances (except for Permitted Encumbrances and the

Assumed Liabilities) in or against the Debtors or the Transferred Assets.  Upon consummation of

the Sale Transaction, the  Buyers shall not be deemed to (a) be the successor to the Debtors,

(b) have, de facto or otherwise, merged with or into the Debtors, or (c) be a mere continuation,

alter ego, or substantial continuation of the Debtors.

22.     Except to the extent the Buyers otherwise specifically agreed in the APA or this Order, the Buyers shall not have any liability, responsibility, or obligation for any claims, liabilities, or other obligations of the Debtors or their estates, including without limitation, any claims, liabilities, or other obligations related to the Transferred Assets prior to Closing Date. Under no circumstances shall the Buyers be deemed successors of or to the Debtors for any Encumbrances (except for Permitted Encumbrances and the Assumed Liabilities) against, in, or to the Debtors or the Transferred Assets.  For the purposes of paragraphs 20 through 22 of this Order, all references to the Buyers shall include their affiliates, subsidiaries, and shareholders.

**GOOD FAITH**

23.     The transactions contemplated by the APA are undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not affect the validity of the sale of the Transferred Assets to the Buyers.  The Buyers are purchasers in good faith of the Transferred Assets and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

24.     As good faith purchasers of the Transferred Assets, the Buyers have not entered into an agreement with any other potential bidders at the Auction, and have not colluded with any other bidders, potential bidders, or any other parties interested in the Transferred Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyers, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

**ASSUMPTION AND ASSIGNMENT OF TRANSFERRED CONTRACTS**

25.     Pursuant to 11 U.S.C. § 105(a) and 365, and subject to and conditioned upon the closing of the Sale Transaction, the Debtors' assumption and assignment to the Buyers, and the

01:17284062.1

26

Buyers' assumption on the terms set forth in the APA, of the Transferred Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied. The Buyers shall pay all Cure Claims related to the Transferred Contracts.

26.    The Debtors are hereby authorized and directed in accordance with 11 U.S.C. § 105(a), 363, and 365, to (a) assume and assign to the Buyers, effective upon the Closing Date of the Sale Transaction, or such later date as applicable, the Transferred Contracts free and clear of all Encumbrances of any kind or nature whatsoever (except for Permitted Encumbrances) and (b) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to the Buyers.

27.    The Buyers shall deliver a schedule of Potential Contracts (the "Potential Contracts Schedule") prior to the Closing Date. Within two (2) Business Days of delivery of the Potential Contracts Schedule, the Buyers shall deliver notice to each Potential Contract counterparty of its Potential Contract being identified on the Potential Contracts Schedule. For a period of ninety (90) days after the Closing Date (the "Asset Review Period"), the Debtors shall not reject or otherwise terminate any Potential Contracts on the Potential Contracts Schedule, except as set forth herein.

28.    The Sellers shall provide to Standard Acquisition Holdings, LLC, notice and, if applicable, copies, of (i) any notice or schedule referred to in the last sentence of Section 2.1 of the APA relating to the designation of any Transferred Asset as an Excluded Asset; (ii) prior to the Closing Date, the rejection of any Contract; (iii) the Potential Contracts Schedule referred to in Section 2.13 of the APA, and any updates thereto by Buyers, including the designation of any Potential Contract as a Post-Closing Transferred Contract or the removal of any Potential

Contract and (iv) the Potential Asset Schedule referred to in Section 2.14 of the APA, and any updates thereto by Buyers, including the designation of any Potential Asset as a Post-Closing Transferred Asset or Excluded Asset. Sellers shall provide the items listed in clause (i), the Potential Contracts Schedule, and the Potential Asset Schedule within one (1) Business Day that such notices or schedules are provided to Sellers; other notices and/or copies may be delivered by the Sellers to Standard Acquisition Holdings, LLC as promptly as reasonably practicable..

29.     The Buyers shall be obligated to timely pay any and all amounts arising or otherwise due under any Potential Contract, and to timely perform any obligations of the Debtors under any Potential Contract, that relate to the period between the Closing Date and the date such Potential Contract is either assumed as a Post-Closing Transferred Contract or is rejected by the Debtors after becoming a Removed Contract (defined below), except to the extent such post-Closing Date amounts due are arising out of an intentional breach, willful misconduct or gross negligence by the Debtors with respect to such Removed Contract prior to such rejection ("Potential Contract Administrative Claims").

30.     The Potential Contracts Schedule may be updated by the Buyers at any time after delivery, until the expiration of the Asset Review Period, to remove any Potential Contracts (each such removed contract, a "Removed Contract").

31.     Until the expiration of the Asset Review Period, the Buyers shall have the right, upon notice to the Debtors, to designate as a Transferred Contract any Potential Contract that is not a Removed Contract (each such designated contract, a "Post-Closing Transferred Contract").

32.     Upon designation as a Post-Closing Transferred Contract, the Buyers shall pay, with respect to each Post-Closing Transferred Contract, (i) any applicable Cure Claim, (ii) and

any other amounts due and unpaid arising during the period from the Petition Date to the Closing

Date, and (iii) any Potential Contract Administrative Claim.

33.    Any Potential Contract that has not been designated by the Buyers as a

Transferred Contract shall be deemed a Removed Contract on the expiration of the Asset Review

Period.

34.    Any executory contract or unexpired lease, including all Potential Contracts, shall

be deemed rejected on the expiration of five (5) Business Days following the date such Potential

Contract is designated as a Removed Contract (or otherwise becomes a Removed Contract upon

the expiration of the Asset Review Period) and written notice thereof is (a) delivered personally,

by facsimile, via e-mail transmission, by next-day service or courier to the applicable

counterparty, or if delivered by registered or certified mail, upon confirmed receipt of such

notice by the applicable counterparty and (b) filed on the docket of the Chapter 11 Cases;

*provided however*, if any Potential Contract by and between the Debtors and Healthcare

Purchasing Alliance, LLC ("HPA") is designated or otherwise becomes a Removed Contract,

such HPA contract shall be deemed rejected on the expiration of 21 days from delivery of written

notice thereof to HPA.

35.    Each Potential Contract shall be deemed assumed and assigned to the Buyers on

the expiration of five (5) Business Days following the date such Potential Contract is designated

as a Post-Closing Transferred Contract and written notice thereof is (a) delivered personally, by

facsimile, via e-mail transmission, by next-day service or courier to the applicable counterparty,

or if delivered by registered or certified mail, upon confirmed receipt of such notice by the

applicable counterparty and (b) filed on the docket of the Chapter 11 Cases.

36.     After receiving the Potential Contracts Schedule, the Debtors shall file a schedule

of all executory contracts and unexpired leases that (a) are not Transferred Contracts, (b) are not

on the Potential Contracts Schedule, and (c) the Debtors wish to preserve the right to assume or

reject at a later date (the "Debtors' Reserved Contracts Schedule").  Each executory contract and

unexpired lease that is (a) not a Transferred Contract, (b) not listed on the Debtors' Reserved

Contracts Schedule, (c) not listed on the Potential Contracts Schedule, or (d) not the subject of a

motion to assume or reject that has already been ruled upon or that is pending on the Closing

Date, shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the

Closing Date, or such other date as the Court may order.

37.     Any Potential Contract Administrative Claims and/or rejection damages claim

related to a Potential Contract that is deemed rejected as provided herein shall be asserted no

later than thirty (30) days after the delivery of notice that the Potential Contract is a Removed

Contract.  Any other claims arising from the rejection of an executory contract or unexpired lease

shall be filed in accordance with the *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local*

*Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim*

*(Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the*

*Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* [Docket No. 449].

The Transferred Contracts, including each Potential Contract designated as a Post-Closing

Transferred Contract, shall be transferred to, and remain in full force and effect for the benefit of,

the Buyers in accordance with their respective terms, notwithstanding any provision in any such

Transferred Contract (including those of the type described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and,

01:17284062.1

pursuant to 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Transferred Contracts after such assignment to and assumption by the Buyers.

38.    Upon the Debtors' assumption and assignment of the Transferred Contracts under the provisions of this Order, no default shall exist under any Transferred Contract and no counterparty to any such Transferred Contract shall be permitted to declare or enforce a default by the Debtors or the Buyers thereunder or otherwise take action against the Buyers as a result of any of the Debtors' financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract. Any provision in an Transferred Contract that prohibits or conditions the assignment or sublease of such Transferred Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Transferred Contract to the Buyers. The failure of the Debtors or the Buyers to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyers' rights to enforce every term and condition of the Transferred Contract.

39.    All defaults or other obligations of the Debtors under the Transferred Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or upon designation as a Post-Closing Transferred Contract, as applicable, or as soon thereafter as reasonably practicable. Until the Closing Date, the Debtors

shall timely perform all obligations under unexpired leases, in accordance with section 365(d)(3) of the Bankruptcy Code.

40.    Each non-Debtor party to a Transferred Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Buyers, or the property of any of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Transferred Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts.  Any party that may have had the right to consent to the assumption and assignment of a Transferred Contract or Potential Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Transferred Contract or Potential Contract.

41.    To the extent a counterparty to a Transferred Contract or Potential Contract failed to timely object to a proposed Cure Claim, such Cure Claim shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Claim at any time, and such Cure Claim, when paid, shall completely cure and remedy any breach or default with respect to such Transferred Contract.

42.    To the extent any Contract of The New York and Presbyterian Hospital  ("NYPH") is designated as a Transferred Contract, the Buyers shall be responsible for paying, when due, any rebate obligations accrued, but not due as of the Closing Date, under such

Contract, subject, for the avoidance of doubt, to the contract rights of the Buyers under such Contract.

43.    Notwithstanding any other provision of this Order, the Motion, or the Supplement, no agreement between Oracle America, Inc. ("Oracle") and the Debtors, or right to use Oracle licensed software and/or support, shall be assumed and assigned by the Debtors except pursuant to assignment documentation that is satisfactory to Oracle and is executed by Oracle, the Debtors and the Buyer(s) (the "Assignment Agreement"), and payment of the appropriate Cure Claims.  The Assignment Agreement (or other documentation agreed to among the parties) will set forth the term, if any, for which transitional use by the Debtors is authorized.

44.    Notwithstanding any provision to the contrary in the Motion, this Order, and any implementing Sale documents, the Debtors and the Buyers shall comply with applicable non-bankruptcy law in connection with the assumption and assignment of any contracts, leases, or agreements with the Naval Medical Logistics Command, the United States Army Engineering and Support Center, the United States Army Expeditionary Contracting Command, the United States Department of Commerce, the United States Postal Service, and the United States Department of Veterans Affairs (collectively, "Federal Contracts").  Moreover, without limiting the foregoing, nothing shall (a) be interpreted to set cure amounts or to require the federal government to novate or otherwise consent to the transfer of any Federal Contracts; (b) affect the federal government's rights to offset or recoup any amounts due under, or relating to, any Federal Contracts; or (c) divest any tribunal of any jurisdiction it may have to adjudicate any issues arising out of or with respect to matters involving the Federal Contracts.

45.    Notwithstanding the relief granted herein, upon informally resolving the cure objection filed by Xerox Corporation ("Xerox") or obtaining a determination by the Court with

respect thereto, the Debtors may assume and assign any unexpired lease(s) by and between the

Debtors and Xerox only to the extent (a) the Buyers treat such lease(s) as operating or "true"

leases, consistent with the nominal characterization of such agreements, or (b) the Buyers obtain

a further determination from the Court that such agreements shall be characterized otherwise, or

(c) the Buyers and Xerox reach an agreement with respect thereto. For the avoidance of doubt,

"Transferred Assets," as defined herein, shall include all Xerox-manufactured equipment which

is indisputably owned by the Debtors as agreed upon by Xerox. All parties' rights are reserved

with respect to Xerox's pending cure objection, the identification of final Contracts by and

between the Debtors and Xerox, and the potential assumption and assignment of applicable

software licenses embedded in Xerox equipment leased by the Debtors as of the date hereof.

CONTRACT OBJECTIONS

46.     The responses and objections listed in Exhibit C hereto have been withdrawn,

waived, settled, or resolved as set forth herein, or overruled and denied, except to the extent

specified in the last column of Exhibit C (such remaining responses and objections, collectively,

the "Contract Objections"). The Contract Objections are adjourned for later consideration by the

Court in accordance with paragraph 47 hereof.

47.     The Debtors, after consultation with the Committee and the Buyers, may

consensually resolve the Contract Objections at any time after entry of this Order without any

further order of this Court. Within five (5) Business Days after a Contract Objection has been

consensually resolved, the Debtors shall file a notice with the Court identifying the extent to

which such Contract Objection has been consensually resolved, the Contracts or Leases for

which such Contract Objection has been consensually resolved, and any agreed-upon Cure

Claims for such contracts or leases (each, a "Supplemental Cure Notice"). Upon the Debtors

filing any Supplemental Cure Notice concerning the consensual resolution of a Contract

01:17284062.1

Objection, the contracts or leases listed therein shall automatically become subject to the terms and conditions of this Order in all respects, including, without limitation, with respect to any agreed-upon Cure Claims, and may become Transferred Contracts in accordance with the APA and this Order, without further order of the Court. If the Debtors are unable to consensually resolve any Contract Objection prior to the hearing on July15, 2015, then such Contract Objection shall be adjudicated by the Court on July 15, 2015, unless the Debtors adjourn such Contract Objection to a later date.

**ADDITIONAL PROVISIONS**

48.     Standard Acquisition Holdings, LLC shall be and hereby is designated the Back-Up Bidder.

49.     The Settlement Agreement is APPROVED and the terms set forth herein incorporated by reference as if fully set forth herein. The creation of the GUC Trust (as defined in the Settlement Agreement) is authorized and approved.

50.     The consideration provided by the Buyers for the Transferred Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

51.     On the Closing Date, the Debtors and the Buyer are authorized to take such actions as may be necessary to obtain a release of any and all Encumbrances (other than Permitted Encumbrances and the Assumed Liabilities) on the Transferred Assets. This Order (a) shall be effective as a determination that, on the Closing Date, all Encumbrances of any kind or nature whatsoever existing as to the Transferred Assets prior to the Closing Date have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; and (b) to the greatest extent permitted by applicable law, shall be binding

upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local, and foreign officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Assets.  The Buyers and the Debtors shall take such further steps and execute such further documents, assignments, instruments, and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Transferred Assets.  All entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests, and encumbrances against the Transferred Assets (other than any Permitted Encumbrances or Assumed Liabilities) from their records, official and otherwise.

52.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances or interests in any of the Transferred Assets (other than any Permitted Encumbrances or Assumed Liabilities) does not deliver to the Debtors or the Buyers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances and other interests that the person or entity has or may assert with respect to any of the Transferred Assets, the Debtors and/or the Buyers are hereby authorized to execute and file such statements,

instruments, releases, and other documents on behalf of such persons or entity with respect to any of the Transferred Assets.

53.     The Debtors will cooperate with the Buyers and the Buyers will cooperate with the Debtors, in each case to ensure that the transaction contemplated in the APA is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the APA.

54.     The Buyers shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Transferred Assets other than for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Buyers shall not be liable for any claims against the Debtors or any of their predecessors or affiliates other than the Assumed Liabilities, and the Buyers shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors, the Transferred Assets, or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date, other than taxes that are Assumed Liabilities under Section 2.3(a)(i) and Section 2.3(a)(viii) of the APA.

55.     Under no circumstances shall the Buyers be deemed successors to the Debtors for any Encumbrance against or in the Debtors or the Transferred Assets of any kind or nature whatsoever.  The sale, transfer, assignment, and delivery of the Transferred Assets and the Transferred Contracts shall not be subject to any Encumbrance, and Encumbrances of any kind

01:17284062.1

or nature whatsoever (except the Permitted Encumbrances) shall remain with, and continue to be obligations of, the Debtors. All persons holding Encumbrances against, on, or in the Debtors or the Transferred Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances of any kind or nature whatsoever (except Permitted Encumbrances) against the Buyers, its officers, directors, shareholders and professionals, their property, their successors and assigns, or the Transferred Assets with respect to any Encumbrance of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Transferred Assets. Following the Closing Date (or date of assumption and assignment of a Transferred Contract, as applicable), no holder of an Encumbrance in the Debtors shall interfere with the Buyers' title to or use and enjoyment of the Transferred Assets and the Transferred Contracts based on or related to such Encumbrance, or any actions that the Debtors may take in their Chapter 11 Cases.

56.     On the Closing Date, the Debtors shall pay, or shall cause to be paid, to ABL DIP Agent, to the extent necessary to cause Full Payment under (and as defined in) the ABL DIP Loan Agreement, all "Obligations" (as defined in the ABL DIP Loan Agreement) owed by the Debtors from the proceeds of the Sale Transaction, and the Commitment Termination Date under (and as defined in) the ABL DIP Loan Agreement shall be deemed to have occurred. The Challenge Deadline[8] with respect to the Pre-Petition ABL Credit Parties, the Pre-Petition ABL Loan Documents and the ABL Security Interests has expired, and therefore, without limiting the effect of the DIP Order, (i) each Debtor's admissions, stipulations, agreements and releases contained in the DIP Order are binding upon each Debtor, the Committee and all other parties in

---

[8]     Capitalized terms used in this paragraph, to the extent not otherwise defined in this Order, shall have the meanings ascribed to such terms in the DIP Order.

interest under all circumstances and for all purposes, (ii) the Roll-Up is final and is not subject to challenge or reversal, in whole or in part, and (iii) no payment or collateral proceeds at any time received by, or lien or security interest at any time granted to, any Pre-Petition ABL Credit Party, ABL DIP Credit Party or Issuing Bank shall be subject to challenge, disgorgement, or reversal for any reason, and each such party is and shall be entitled to retain all such payments and proceeds forever. From and after the Closing Date, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code or anything to the contrary in this Order or the DIP Order, Issuing Bank may send notices and otherwise administer the Letters of Credit and cash collateral held by Issuing Bank to secure the Letter of Credit Outstandings (as defined in the ABL DIP Loan Agreement) in the ordinary course and in accordance with applicable non-bankruptcy law, as if these Chapter 11 Cases were not pending. In its capacity as depository bank for the Debtors, Bank of America, N.A., shall continue to have the rights and privileges set forth in the cash management order [Docket No. 305] previously entered by the Court.

57.     On the Closing Date, the Debtors shall pay, or shall cause to be paid, from the proceeds of the Sale Transaction (i) to the Term DIP Agent, an amount sufficient for Full Payment (as defined in the DIP Order) of the Term DIP Obligations; (ii) to the First Lien Term Lender Agent,[9] an amount sufficient for Full Payment (as defined in the DIP Order) of the "Obligations" under the Pre-Petition First Lien Term Loan Agreement (as defined thereunder); (iii) to the First Lien Term Lender Agent or the Back-Up Bidder (as sub-agent to the First Lien Term Lender Agent), as directed by the First Lien Term Lender Agent, $1.5 million to satisfy the Maximum Reimbursement Amount (as defined in the Sale Procedures Order); (iv) to the Second Lien Term Lender Agent, $16.27 million less $5 million; and (v) to the GUC Trust, $5 million.

---

[9]    Capitalized terms used in this paragraph, to the extent not otherwise defined in this Order, shall have the meanings ascribed to such terms in the DIP Order.

On the Closing Date, and subject to the terms of the Settlement Agreement in all respects,
without limiting the effect of the DIP Order, (x) each Debtor's admissions, stipulations,
agreements and releases contained in the DIP Order are binding upon each Debtor, the
Committee and all other parties in interest under all circumstances and for all purposes and (y)
no payment or collateral proceeds at any time received by, or lien or security interest at any time
granted to, any Pre-Petition Term Credit parties or Term DIP Credit Party shall be subject to
challenge, disgorgement, or reversal for any reason, and each such party is and shall be entitled
to retain all such payments and proceeds forever.

58.     On the Closing Date, the Wind-Down Amount shall be paid to the Debtors.
Consistent with the terms of the APA, on and after the Closing Date, the Debtors shall hold the
Wind-Down Amount in trust for the benefit of persons entitled to be paid costs covered by the
Wind-Down Amount.

59.     The terms and provisions of the APA shall not be subject to rejection, and the
APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the
Debtors and their respective affiliates, successors, assigns, estates, and creditors; the Buyers and
their respective affiliates, successors, and assigns; and any affected third parties including, but
not limited to, all persons asserting Encumbrances on the Transferred Assets to be sold to the
Buyers pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s)
under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions
likewise shall be binding.

60.     The failure specifically to include any particular provisions of the APA in this
Order shall not diminish or impair the effectiveness of such provision, it being the intent of the
Court that the APA be authorized and approved in its entirety.

61.    The APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

62.    Nothing set forth herein shall limit or in any way abridge CareSource from seeking or obtaining relief from the automatic stay under section 362(d) of the Bankruptcy Code to seek setoff.

63.    From time to time, upon the request of the Committee (or other estate representative or successor thereto) (collectively "Estate Representative"), the Buyers shall cooperate with the Estate Representative in providing access to documents that constitute Transferred Assets that the Estate Representative may reasonably request in connection with the Estate Representative's investigation or prosecution of any potential claims of the Debtors' estates or in connection with the Estate Representative's efforts to investigate and reconcile claims asserted against the Debtors' estates. The terms of such access shall be set forth in the Transition Services Agreement. The Buyers and the Sellers shall negotiate terms providing post-Closing access to the Estate Representative (in that capacity) in the Transition Services Agreement, with disputes over the terms of that access to be resolved by the Court. The Buyers shall not destroy any documents/records that constitute Transferred Assets absent prior notice to the Estate Representative in accordance with the terms of the Transition Services Agreement.

64.    Nothing contained in any plan of reorganization or liquidation confirmed in these Chapter 11 Cases or any order of this Court confirming such plans or in any other order in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11 Cases to

a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate, the provisions of the APA or the terms of this Order. The provisions of this Order and the APA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Order and the APA shall continue in these Chapter 11 Cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors and their estates and the Buyers and their respective successors and permitted assigns, including any trustee, responsible officer, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

65.     The provisions of this Order are nonseverable and mutually dependent.

66.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted, without further order of the court, to the extent necessary (a) to allow the Buyers to give the Debtors any notice provided for in the APA, and (b) to allow the Buyers to take any and all actions permitted by the APA.

67.     There are no brokers involved in consummating the Sale Transaction and no brokers' commissions are due.

68.     Compliance with Laws relating to bulk sales and transfers is not necessary or appropriate under the circumstances.

69.     The Debtors and each other person having duties or responsibilities under the APA or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the APA, to issue, execute, deliver, file, and

01:17284062.1

42

record, as appropriate, the APA and any related agreements, and to take any action contemplated by the APA or this Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the APA and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the APA and this Order and the transactions contemplated thereby and hereby.

70.     Nothing in the APA or this Sale Order is intended to limit or in any way impair the indemnification and exculpation rights of the Prepetition First Lien Agent, the Prepetition Second Lien Agent, the Prepetition ABL Agent, or the agents under the DIP Credit Agreements.

71.     Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the Closing Date.  Nothing in this Order or the APA authorizes the transfer or assignment of any environmental permit or license in a manner conflicting with applicable environmental law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under environmental law to interpret this Order or to adjudicate any defense asserted under this Order.

72.     Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the

01:17284062.1

fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal being foreclosed as moot.

73.     Except as otherwise specifically ordered herein, this Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Transferred Assets to the Buyers free and clear of Encumbrances (other than Permitted Encumbrances), or compel the performance of other obligations owed by the Buyers or the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyers against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Transferred Assets or Transferred Contracts, or (iii) any Encumbrances asserted on or in the Debtors or the Transferred Assets, of any kind or nature whatsoever.

74.     To the extent that any provision of the APA conflicts with or is in any way inconsistent with any provision of this Order, this Order shall govern and control.

Dated: __June 19__, 2015
        Wilmington, Delaware

_____
BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE