# **EXHIBIT B**

**Severance Plan**



# Standard Register
# Employee Severance Pay Plan

Summary Plan Description

April 1, 2012

# The Standard Register Company
# Summary Plan Description
# Employee Severance Pay Plan

1. **PERSONNEL POLICY STATEMENT** - Except as otherwise indicated herein, the Company will pay severance pay to eligible employees whose jobs are permanently eliminated as a result of automation, corporate reorganization, downsizing, outsourcing, sale of part of the Company's business and the like, in the Company's sole opinion. Severance pay generally will not be paid in the event of layoffs due to general economic conditions or in situations where the Company has arranged for the affected employee to be offered continued employment which, in the Company's sole opinion, has reasonably similar job content, and benefits, and substantially similar rate of pay, and location as the job being eliminated.

2. **ELIGIBILITY** - All full-time, regular employees with at least six (6) months service are eligible employees under the Plan, except sales representatives and except employees covered by a collective bargaining agreement, unless such collective bargaining agreement provides for their coverage under this Plan. Eligible employees do not have any vested right to severance pay under the Plan and the Company reserves the right in its sole discretion to amend or terminate the Plan at any time, retroactively or otherwise, either by resolution of its Board of Directors or in writing signed by the Chief Executive of the Company.

3. **CONDITIONS OF ELIGIBILITY** - Except as otherwise indicated herein, the Company will pay severance pay to eligible employees whose jobs are permanently eliminated as a result of automation, corporate reorganization, downsizing, outsourcing, sale of part of the Company's business and the like.

4. **CONDITIONS OF INELIGIBILITY** - An otherwise eligible employee shall not be eligible for severance pay under the Plan if:

    a.  an eligible employee ceases to be an eligible employee as defined in the Plan;

    b.  the eligible employee's employment with the Company terminates by reason of death or discharge for good reason;

    c.  the eligible employee's employment with the Company terminates through retirement, resignation, or job abandonment;

    d.  the eligible employee is eligible to receive disability benefits from the Company, and is not released to return to work within six months of commencing disability leave;

    e.  employment with the Company is involuntarily terminated after the eligible employee refuses a position to continue employment in a job which, in the Company's sole opinion, has substantially similar rate of pay and location, and reasonably similar job content and benefits as the job from which the affected employee is being terminated;

    f. the eligible employee leaves employment with the Company prior to the date authorized by the Company;

    g.   the termination is due to general economic conditions;

    h.   the eligible employee's employment with the Company is terminated under the terms of any form of group reorganization/restructuring or incentive benefit plan or program sponsored by the Company; or

    i.   The Plan is terminated.

5. **BASE SEVERANCE PAY** - Each regular full-time eligible employee who is eligible for severance pay under the Plan shall be entitled to receive as base severance pay one (1) week of pay.

    For purposes of the Plan, a "week of pay" for a regular full-time employee shall be determined by using his/her regular base rate of pay on his/her date of termination of employment with the Company. Field management rate of pay shall also include a weekly average override using the previous twelve (12) month period. Rate of pay does not include bonus, overtime, shift premium, or commission.

6. **SUPPLEMENTAL SEVERANCE PAY** - In addition to the base severance pay which an eligible employee is entitled to receive under the Plan, in exchange for providing the Company with a valid Waiver and Release Agreement in a form acceptable to the Company, each regular full-time eligible employee who is eligible for severance pay under the Plan is eligible to receive as supplemental severance pay the weeks of pay determined by the eligible employee's complete and consecutive years of service in accordance with the following table:

| Complete Years of Service | Weeks of Pay |
|---|---|
| 6 months but less than 5 years | 2 |
| 5 but less than 6 | 5 |
| 6 but less than 7 | 6 |
| 7 but less than 8 | 7 |
| 8 but less than 9 | 8 |
| 9 but less than 10 | 9 |
| 10 but less than 11 | 10 |
| 11 but less than 12 | 11 |
| 12 but less than 13 | 12 |
| 13 but less than 14 | 13 |
| 14 but less than 15 | 14 |
| 15 but less than 16 | 15 |
| 16 and above | 16 |

An eligible employee's "years of service" for purposes of the Plan shall be determined from the eligible employee's most recent date of hire in accordance with the Company's personnel records.

The Chief Executive of the Company, or his designee, acting in his sole discretion may, in writing, enhance the amount of supplemental severance pay which an eligible employee is eligible to receive over the amount of supplemental severance pay described above and/or make available a form of supplemental severance benefit.

The consideration for the voluntary Waiver and Release Agreement shall be the supplemental severance pay (and, if applicable, any enhancement thereto and/or any supplemental severance benefit) which the eligible employee would otherwise not be eligible to receive.

7. **WAIVER AND RELEASE AGREEMENT** - In order to receive the supplemental severance pay (and, if applicable, any enhancement to supplemental severance pay and/or any supplemental severance benefit) available under the Plan, an eligible employee must submit a signed Waiver and Release Agreement form to the Plan Administrator on or within twenty-one (21) days of his/her date of termination of employment. In some circumstances, as determined by the Company, the eligible employee may have forty-five (45) days within which to submit the signed Waiver and Release Agreement. The Company may revise the form of Waiver and Release Agreement in its sole and absolute discretion at any time. An eligible employee may revoke his/her signed Waiver and Release Agreement within seven (7) days of his/her signing the Waiver and Release Agreement.

   Any such revocation must be made in writing and must be received by the Plan Administrator within such seven (7) day period. An eligible employee who timely revokes his/her Waiver and Release Agreement shall not be eligible to receive any supplemental severance pay (and, if applicable any enhancement thereto and/or any supplemental severance benefit) under the Plan. An eligible employee who timely submits a signed Waiver and Release Agreement form and who does not exercise his/her right of revocation shall be eligible to receive supplemental severance pay (and, if applicable, any enhancement to supplemental severance pay and/or any supplemental severance benefit) under the Plan

   Eligible employees shall be advised to contact their personal attorney to review the Waiver and Release Agreement form if they so desire, at their own expense.

*Consult Legal Department in the event of more than one termination arising out of the same cause.

.

8. **PAYMENT OF SEVERANCE PAY AND BENEFITS** - Severance pay generally will be paid in accordance with the Company's regular payroll payment schedule following the eligible employee's date of termination of employment, however, any supplemental severance pay (and, if applicable, any supplemental severance benefit) which becomes payable will be paid only after the seven (7) day revocation period for a signed Waiver and Release Agreement has passed. The Company reserves the right in its sole discretion to pay severance pay in a lump sum. Otherwise, severance pay shall be paid in installments. All legally required taxes and any sums owing to the Company shall be deducted from Plan severance pay payments. In the event that an eligible employee who is receiving payment of severance pay under the Plan is re-employed by the Company, the payment of severance pay (and, if applicable, any supplemental severance benefit) under the Plan shall cease as of the date his/her re-employment begins. Also, if an eligible employee has received his/her severance pay in one lump sum and is re-employed by an Company during a period of time during which he/she would have been receiving severance pay if paid to him/her in installments, he/she shall be required to repay to the Company that portion of the lump sum payment attributable to the period of time from the date his/her re-employment begins to the date he/she would have received his/her last installment payment of severance pay.

9. **PLAN ADMINISTRATION** - The Company's Corporate Vice President Organizational Effectiveness shall serve as the "Plan Administrator" of the Plan and the "named fiduciary" within the meaning of such terms as defined in ERISA. The Plan Administrator shall have the discretionary authority to determine eligibility for Plan benefits and to construe the terms of the Plan, including the making of factual determinations. The decisions of the Plan Administrator shall be final and conclusive with respect to all questions concerning the administration of the Plan. The Plan Administrator may delegate to other persons responsibilities for performing certain of the duties of the Plan Administrator under the terms of the Plan and may seek such expert advice as the Plan Administrator deems reasonably necessary with respect to the Plan. The Plan Administrator shall be entitled to rely upon the information and advice furnished by such delegates and experts, unless actually knowing such information and advice to be inaccurate or unlawful.

    The Plan Administrator shall establish and maintain a reasonable claims procedure, including a procedure for appeal of denied claims. In no event shall an eligible employee or any other person be entitled to challenge a decision of the Plan Administrator in court or in any other administrative proceeding unless and until the claim and appeals procedures established under the Plan have been complied with and exhausted.

    In the event of a group termination, as determined in the sole discretion of the Plan Administrator, the Plan Administrator shall furnish affected eligible employees with such additional information as may be required by law.

10. **PROCEDURE FOR MAKING AND APPEALING CLAIMS FOR PLAN BENEFITS** - It is not necessary that an eligible employee apply for benefits under the Plan. However, if an eligible employee wishes to file a claim for benefits, such claim must be in writing and filed with the Plan Administrator. Within sixty (60) days after receiving a claim, the Plan Administrator will:

    a. either accept or deny the claim completely or partially; and

    b. notify the claimant of acceptance or denial of the claim.

    If the claim is completely or partially denied, the Plan Administrator will furnish a written notice to the Claimant containing the following information:

    a) specific reasons for the denial;

    b) specific references to the Plan provisions on which any denial is based;

    c) a description of any additional material or information that must be provided by the claimant in order to support the claim; and

    d) an explanation of the Plan's appeal procedures.

    A claimant may appeal the denial of his/her claim and have the Plan Administrator reconsider the decision. The claimant or the claimant's authorized representative has the right to:

    a. request an appeal by written request to the Plan Administrator not later than sixty (60) days after receipt of notice from the Plan Administrator denying his claim;

    b. review pertinent Plan documents; and

    c. submit issues and comments regarding the claim in writing to the Plan Administrator

    The Plan Administrator will make a decision with respect to such an appeal within thirty (30) days after receiving the written request for such appeal. The claimant will be advised of the Plan Administrator's decision on the appeal in writing. The notice will set forth the specific reasons for the decision and make specific reference to Plan provisions upon which the decision on the appeal is based.

    In no event shall a claimant or any other person be entitled to challenge a decision of the Plan Administrator in court or in any other administrative proceeding unless and until the claim and appeal procedures described above have been complied with and exhausted.

11. **NO ASSIGNMENT** - Severance pay (and, if applicable, any supplemental severance benefit) payable under the Plan shall not be subject to anticipation, alienation, pledge, sale, transfer, assignment, garnishment, attachment, execution, encumbrance, levy, lien, or charge, and any attempt to cause such severance pay (and, if applicable, any supplemental severance benefit) to be so subjected shall not be recognized, except to the extent required by law.

12. **CONFIDENTIAL INFORMATION** - Eligible employees may have access to trade secrets and other confidential and proprietary information (hereinafter "Confidential Information") with regard to the business of the Company. Recognizing that the disclosure or improper use of such Confidential Information will cause serious and irreparable injury to the Company, eligible employees with such access acknowledge that (i) they will not at any time, directly or indirectly, disclose Confidential Information to any third party or otherwise use such Confidential Information for their own benefit or the benefit of others; (ii) payment of severance pay (and, if applicable, any supplemental severance benefit) under the Plan shall cease if an eligible employee discloses or improperly uses such Confidential Information; and (iii) retention of severance pay (and, if applicable, any supplemental severance benefit) under the Plan is conditioned upon the eligible employee not disclosing or improperly using such Confidential Information.

13. **RECOVERY OF PAYMENTS MADE BY MISTAKE** - An eligible employee shall be required to return to the Company any severance pay payment (and, if applicable, any supplemental severance benefit), or portion thereof, made by a mistake of fact or law.

14. **REPRESENTATIONS CONTRARY TO THE PLAN** - No employee, officer, or director of the Company has the authority to alter, vary, or modify the terms of the Plan except by means of an authorized written amendment to the Plan. No verbal or written representations contrary to the terms of the Plan and its written amendments shall be binding upon the Plan, the Plan Administrator, and the Company.

15. **NO EMPLOYMENT RIGHTS** - The Plan shall not confer employment rights upon any person. No person shall be entitled, by virtue of the Plan, to remain in the employ of the Company and nothing in the Plan shall restrict the right of the Company to terminate the employment of any eligible employee or other person at any time.

16. **PLAN FUNDING** - No eligible employee shall acquire by reason of the Plan any right in or title to any assets, funds, or property of the Company. Any severance pay benefits which become payable under the Plan are unfunded obligations of the Company and shall be paid from the general assets of the Company. No employee, officer, director or agent of the company or any other Company guarantees in any manner the payment of Plan severance pay (and, if applicable, any supplemental severance benefit).

17. **APPLICABLE LAW** - The Plan shall be governed and construed in accordance with ERISA and in the event that any reference shall be made to State law, the internal laws of the State of Ohio shall apply.

18. **SEVERABILITY** - If any provision of the Plan is found, held or deemed by a court of competent jurisdiction to be void, unlawful or unenforceable under any applicable statute or other controlling law, the remainder of the Plan shall continue in full force and effect.

19. **PLAN YEAR** - The ERISA plan year of the Plan shall be the twelve month period commencing on January 1 of each year.

20. **MANDATED PAYMENTS** - The severance pay and, if applicable, any supplemental severance benefit, available under the Plan are the maximum made available by the Company in the event of qualifying involuntary termination of employment. To the extent that

    a federal, state or local law may mandate an Company to make a payment to an eligible employee because of involuntary termination of employment or in accordance with a plant closing law, the severance pay and, if applicable, any supplemental severance benefit, available under the Plan shall be reduced by the amount of such mandated payment.

21. **MISCELLANEOUS PROVISIONS** - All Company property (i.e., keys, credit cards, documents and records, identification cards, equipment, car/mobile telephones, parking stickers, etc.) must be returned by an eligible employee as of his/her date of termination of employment with the Company in order for such eligible employee to commence receiving severance pay (and, if applicable, any supplemental severance benefit) under the Plan.

    All pay and other benefits (except Plan severance pay and, if applicable, any supplemental severance benefit) payable to an eligible employee as of his/her date of termination of employment with the Company according to the established policies, plans, and procedures of the Company shall be paid in accordance with the terms of those established policies, plans and procedures. In addition, any benefit continuation or conversion rights which an eligible employee has of his/her date of termination of employment with the Company according to the established policies, plans and procedures of the Company shall be made available to him/her.

22. **YOUR RIGHTS UNDER ERISA** - As an eligible employee under the Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that eligible employees under the Plan shall be entitled to:

    a. Examine without charge at the Plan Administrator's office (and at other specified locations) all Plan documents and copies of all Plan documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports and Plan descriptions.

    b. Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

    c. Receive a copy of the Plan's annual financial report. The Plan Administrator may be required by law to furnish each eligible employee with a copy of the summary annual report.

In addition to creating rights for eligible employees. ERISA imposes duties upon the people who are responsible for the operation of the Plan:

a. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other eligible employees.

b. No one, including the Company or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

c. If your claim for a Plan benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan Administrator review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan Administrator and you do not receive them within thirty (30) days, you may file suit in federal court. In such a case, the court may require the Plan Administrator to provide the materials and to pay you up to $100 per day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for instance, if it finds your claim to be frivolous.

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest area office of the U.S. Labor-Management Services Administration, Department of Labor.

23. **PLAN MODIFICATION, AMENDMENT, AND TERMINATION -** The Company may modify or amend this Plan from time to time, or may terminate the Plan at any time in its sole discretion. Any such modification, amendment, or termination shall be by action of the Company's President, Chief Executive Officer, or Vice President of Organizational Effectiveness, and shall be communicated as required by applicable law.

## 24. GENERAL INFORMATION

| | | |
|---|---|---|
| a. | Name of Plan: | The Standard Register Company Employee Severance Pay Plan |
| b. | Plan Number: | 523 |
| c. | Plan Sponsor: | The Standard Register Company<br>600 Albany Street<br>Dayton, Ohio 45417 |
| d. | Company Identification No. | 31-0455440 |
| e.. | Plan Administrator: | VP Organizational Effectiveness<br>The Standard Register Company<br>600 Albany Street<br>Dayton, Ohio 45408<br>937/221-1000 |
| f. | Agent for Service:<br>of Legal Process: | Corporate Secretary<br>The Standard Register Company<br>600 Albany Street<br>Dayton, Ohio 45417 |