## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*, | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| THE STANDARD REGISTER COMPANY, | Adv. Pro. No. 15-_____ (BLS) |
| Plaintiff, | |
| vs. | |
| CRAIG H. STOCKMAL; LYNN D. SMITH; FOCUSED IMPRESSIONS, INC.; AND FOCUSED IMPRESSIONS TECHNOLOGY LLC, | |
| Defendants. | |

### ADVERSARY COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The Standard Register Company ("Standard Register," the "Company," or "Plaintiff"), the above-captioned debtor in possession and Plaintiff, by and through its undersigned counsel brings this action against Craig H. Stockmal ("Stockmal"), Lynn D. Smith ("Smith"), Focused Impressions, Inc. ("FI Corp."), and Focused Impressions Technology LLC ("FIT" and together with FI Corp., "Focused Impressions," and also together with Stockmal, Smith, and FI Corp., "Defendants"), alleges as follows:

### INTRODUCTION

1.        This suit arises out of a deliberate scheme by Stockmal and Smith, former trusted salespeople of Standard Register, to usurp the trade secrets, confidential and proprietary information, and customer contacts they obtained while employed by the Company to divert some of the Company's most valuable customer relationships to their new company, Focused

Impressions.  Through their scheme, Stockmal and Smith have flouted the trust they built up

over decades as Standard Register employees, and fled with Standard Register's most sensitive

trade secrets, and confidential and proprietary information.  Stockmal and Smith are now leading

Focused Impressions, having secretly served as its founders, officers, executives, and operatives

while still employees at Standard Register, and using this misappropriated information to attempt

to steal key Standard Register customers.  These actions constitute theft of trade secret, and

confidential and proprietary information, and directly violate Standard Register's employee

policies and non-competition and non-disclosure agreements binding on Stockmal and Smith.

They also constitute acts to obtain possession of or exercise control over property of the Standard

Register estate, in violation of section 362 of the Bankruptcy Code.  Without this Court's relief,

the unmistakable harm to Standard Register's business and estate will continue, as Stockmal and

Smith are given additional time to further implement their scheme to steal key Standard Register

customers.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b).

3.      The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) because,

among other reasons, the proceeding seeks an order to turn over property of the estate.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## THE PARTIES

5.      Plaintiff Standard Register is an Ohio corporation with its principal place of

business at 600 Albany Street, Dayton, Ohio 45417.

6.      Defendant Stockmal is an individual who, upon information and belief, resides in

Massachusetts and is a citizen of that state.

01:17320124.1

7.     Defendant Smith is an individual who, upon information and belief, resides in Massachusetts and is a citizen of that state.

8.     Defendant FI Corp. is a corporation organized under the laws of Massachusetts, with its principal place of business in Boston, Massachusetts.  Stockmal is the Registered Agent for Focused Impressions, and serves as its President, Treasurer, Secretary, and Director.

9.     Defendant FIT is a limited liability corporation organized under the laws of Massachusetts, with its principal place of business in Boston, Massachusetts.  Stockmal and Smith serve as FIT's corporate officers and directors.

## BACKGROUND

**A.     Standard Register and Its Business**

10.     Standard Register provides leading communications and marketing services and products to customers throughout the country.  Standard Register offers services across mediums, including print, electronic, online, and customer-facing technology.  These include marketing kits and branded materials, information management solutions, document management, printing services, and technology platforms for customers in a wide range of industries.

11.     The strength of Standard Register's relationships with its customers is a key driver of Standard Register's business, and the sales force is integral to the creation and maintenance of these customer relationships.

**B.     Stockmal and Smith's History at Standard Register**

12.     Stockmal was employed by Standard Register or its predecessors since 1983 until his abrupt resignation approximately 10 days ago.  Similarly, Smith was employed by Standard Register or its predecessors since 1989.  Both Stockmal and Smith were based in Standard Register's Boston office.

01:17320124.1

13.     Prior to this resignation, Stockmal was one of Standard Register's lead and most highly compensated salesmen; in this role, he was responsible, among other things, for some of Standard Register's most important customer accounts, including one particular key customer (the "Key Customer").[1]  Smith was also a strategic account executive.  Stockmal and Smith worked closely with one another, with Smith often serving as Stockmal's second-in-command.

14.     As a result of their sales roles, Stockmal and Smith worked with Standard Register's print and technology products, and gained a practical and deep understanding of how Standard Register's products entered the marketplace.

15.     Over the past several decades, Stockmal and Smith became key employees who were trusted in confidence to maintain and develop key client relationships with some of Standard Register's most important customers.

16.     Through their roles, Stockmal and Smith developed deep relationships with Standard Register's customers, often interacting with the Key Customer daily.  Therefore, Stockmal and Smith learned significant details about the preferences of these customers, and understood what made Standard Register's products and services attractive to those customers.

17.     Based in Standard Register's Boston office, Stockmal and Smith's customers were primarily concentrated in the Northeast (including the Key Customer).  However, Stockmal and Smith worked with a customer base that was nationwide, and included a significant client in the Northwest.

18.     Stockmal and Smith served as the primary contact for the Key Customer, which had a decades-long relationship with Standard Register.  Stockmal and Smith established

---

[1]    For confidentiality reasons, the name of the Key Customer has not been included in this Complaint, however, Standard Register will provide such information to the Court, the U.S. Trustee and the Official Committee of Unsecured Creditors *in camera*.

influential relationships with key personnel at Key Customer, and gained important insights into its business.

19.     Through their work for Standard Register, Stockmal and Smith were privy to trade secret, confidential, and proprietary information regarding Standard Register's relationships with Key Customer and many other important customers.  This included the intricacies of Standard Register's product pricing terms and structure, customer lists, customers' contractual terms, customer preferences, vendor and supply costs, special methods and processes involved in product design production, market opportunities, and sales strategies, among other trade secret, confidential, and proprietary information that is the property of Standard Register. This trade secret, confidential, and proprietary information was developed by Standard Register's substantial efforts, and significant dedication of time and resources.

20.     In particular, Stockmal and Smith worked intimately in the creation and deployment of certain aspects of SMARTworks, a software tool that enables Standard Register's employees and customers to manage their marketing and content distribution activities across online, offline, and on-product initiatives.  It has become a leading technology platform offered by Standard Register, used by more than 100,000 people and processing over 10,000 orders per day.  This product is heavily relied upon by some of the customers serviced by Stockmal and Smith while they were employed at Standard Register, including Key Customer.  As a result of their employment by Standard Register, Stockmal and Smith gained knowledge of the tactical and strategic ways to use the platform, its pricing and contracts, and its growing roster of capabilities.

01:17320124.1

C.    **The Importance of Standard Register's Customer Relationships & Confidential Information**

21.    The foundations for the success of Standard Register's business are the established and ongoing relationships with its largest and most important customers.  Standard Register does business in a highly competitive industry, and the strength of the relationships with its customers enables Standard Register to compete in this environment.  Standard Register relies on its salespeople to nurture and manage these relationships effectively and in the best interests of the business.

22.    In recognition of the importance of these customer relationships, Standard Register places a high value on its trade secrets, confidential, and proprietary information, and has a number of policies in place in order to maintain the confidentiality of this information.

23.    Standard Register's Code of Ethics is a primary vehicle by which Standard Register protects its valuable confidential information.  *See* Ex. C.

24.    The Code of Ethics is binding on all Standard Register employees, and is a well-known condition of employment by Standard Register.  Stockmal and Smith were trained in the Code of Ethics annually and understood they must comply with it as recently as August 6, 2014 and August 12, 2014, respectively.

25.    Pursuant to the Code of Ethics, "any information of the Company's which would be used by outside persons to their advantage and/or to the Company's detriment should be considered confidential.  Distribution of confidential information in any manner is prohibited, including verbal, written and electronic such as in e-mails, Internet chat rooms, and blogs."

26.    In addition, pursuant to the Code of Ethics, "[e]ach associates duty of loyalty to the Company includes the obligation to further the Company's interests at every opportunity."

27.    Standard Register also protects its trade secrets, confidential, and proprietary information by taking necessary and appropriate measures.  For example, Standard Register restricts access to such information to only those employees with a need to know and preventing access to all employees who do not require access to such information.

**D.    Stockmal and Smith's Agreements Not to Compete with Standard Register**

28.    As part of their employment with Uarco Incorporated ("Uarco"), Stockmal and Smith each signed a Salesman's Agreement (the "Salesman's Agreements").  *See* Exs. A, B. Uarco was acquired by Standard Register in February 1998, and Stockmal and Smith continued their employment with Standard Register thereafter.

29.    Through the Salesman's Agreements, Stockmal and Smith acknowledged that they would acquire confidential information and trade secrets during the course of their employment, and agreed to certain reasonable and necessary terms for the protection of Standard Register's goodwill and business interests:

> In the course of his employment and because of the nature of his responsibilities and the training provided by Company, Salesman [Stockmal and Smith] will acquire valuable and confidential skills and information and trade secrets with respect to Company's successful business operations, including, by way of illustration, Company's existing and contemplated products, business and financial methods and practices, plans, pricing, selling techniques, and special methods and processes involved in designing, assembling, and selling business forms, lists of Company's customers and prospective customers, methods of obtaining customers, credit and financial data of Company's suppliers and present and prospective customers, and particular business requirements of Company's present and prospective customers.  In addition, Salesman will develop on behalf of Company a personal acquaintance with Company's customers and prospective customers, which acquaintance may constitute Company's only contact with such customers.  **As a consequence thereof Salesman will occupy a position of trust and confidence with respect to Company's affairs and its products.  In view of the foregoing, and in consideration of the remuneration to be paid to Salesman, Salesman agrees that it is reasonable and necessary for the protection of the goodwill and business of Company that Salesman make the covenants contained in paragraphs 8 and 9 regarding conduct of Salesman during and subsequent to his employment by Company, and that Company will suffer irreparable injury if Salesman engages in conduct prohibited**

> **thereby.** Salesman represents that his experience and/or abilities are such that observance of the aforementioned covenants will not cause Salesman any undue hardship nor will it unreasonably interfere with Salesman's ability to earn a livelihood.

Exs. A, B, ¶ 7 (emphasis supplied).

30.　Pursuant to paragraph 8 of the Salesman's Agreements, Stockmal and Smith also covenanted not to disclose or use, while in the employ of Standard Register or at any time thereafter,  trade secrets, confidential, or proprietary information obtained during the course of their employment:

> Salesman agrees that while in the employ of Company or at any time thereafter he will not, without the express written consent of Company, directly or indirectly communicate or divulge to or use for the benefit of himself or any other person, firm, association or corporation, any of Company's trade secrets or other confidential information, including, by way of illustration, the matters contained in paragraph 7, which trade secrets and confidential information were communicated to or otherwise learned of or acquired by Salesman in the course of his employment with Company, except that Salesman may disclose such matters to the extent that disclosure is required (a) in the course of his employment with Company or (b) by a court or other governmental agency of competent jurisdiction.  Salesman will not use such trade secrets or confidential information in any way or in any capacity other than as an employee of Company and to further its interests.

Exs. A, B, ¶ 8.

31.　Similarly, in paragraph 5 of the Salesman's Agreements, Stockmal and Smith agreed that all materials in their possession is the sole property of Standard Register, and also agreed to promptly return all company property upon their termination or at the request of Standard Register:

> All tangible materials (whether originals or duplicates and including, but not in any way as a limitation, sample equipment, price lists, quotation guides, outstanding quotations, books, records, manuals, sales literature, training materials, calling or business cards, customer record cards, customer files, correspondence, documents, contracts, orders, messages, memoranda, notes, circulars, agreements, bulletins, invoices and receipts) in the possession or control of Salesman which in any way relate or pertain to Company's business, whether

> furnished to Salesman by Company or prepared, compiled, or acquired by
> Salesman while employed by Company, shall be the sole property of Company.
> Salesman agrees that he will at any time upon request of Company, and in any
> event promptly on termination of his employment, transfer all such materials to
> Company.

Exs. A, B, ¶ 5.

32.    In paragraph 9 of the Salesman's Agreement, Stockmal and Smith expressly

agreed not to contact or solicit certain actual or potential customers of Standard Register for a

period of two years after their employment was terminated:

> For a period of two years following the termination of his employment for any
> reason whatsoever (or if this period shall be unenforceable by law, then for such
> period as shall be enforceable), Salesman agrees that he will not contact, with a
> view toward selling any product competitive with any product sold or proposed to
> be sold by Company at the time of the termination of Salesman's employment, or
> sell any such product to, any person, firm, association or corporation:
>
>> (a) to which Salesman sold any product of Company during the year
>> preceding the termination of Salesman's employment,
>> (b) which Salesman solicited, contacted, or otherwise dealt with on
>> behalf of Company during the year preceding termination of Salesman's
>> employment.
>> (c) which is known by Salesman to have been a customer of Company
>> during the year preceding termination of Salesman's employment and
>> which is located either within the geographical territory served by any
>> District Office of Company to which Salesman was assigned during such
>> year or within the same metropolitan area as any customer named in the
>> Confidential Customer List in effect hereunder as of the date of
>> termination of Salesman's employment.
>
> Salesman agrees that he will not directly or indirectly make any such contact or
> sale either for the benefit of himself or for the benefit of any other person, firm,
> association or corporation, and further that he will not in any manner assist any
> person, firm, association or corporation to make any such contact or sale.

Exs. A, B, ¶ 9.

33.    Finally, in paragraph 10(a) of the Salesman's Agreement, Stockmal and Smith

agreed that Standard Register is entitled to injunctive relief in the event Stockmal or Smith

breach any of these terms:

> In the event Salesman breaches paragraph 8 or 9, Company shall be entitled to injunctions, both preliminary and final, enjoining and restraining such breach or threatened or intended breach, and Salesman hereby consents to the issuance thereof forthwith in any court of competent jurisdiction.

Exs. A, B ¶ 10(a).

34.    The terms of the Salesman's Agreements are reasonable and necessary to protect Standard Register's legitimate interests.

35.    Agreements similar to the Salesman's Agreements are entered into by a majority of Standard Register's key salespersons and employees, and are common throughout the industry.

**E.    Stockmal and Smith Lay the Foundation For Their Improper Acts And Abruptly Resign From Standard Register**

36.    FI Corp. was incorporated by Stockmal in Massachusetts on January 1, 2008.  FIT was organized by Stockmal in Massachusetts on February 3, 2014.

37.    Upon information and belief, Stockmal and Smith planned their exit from Standard Register well in advance of their actual resignation dates, and perfected their scheme to use the knowledge, insight, and trade secrets they obtained from Standard Register in their future pursuits of Standard Register's existing clients.

38.    Without any warning, Smith resigned from Standard Register on Friday, April 3, 2015, effective immediately.  Shortly after announcing her resignation, she left Standard Register's Boston offices for the final time.

39.    When asked by Standard Register management whether Stockmal knew why Smith resigned or whether she had already secured future employment, Stockmal stated that she had left to work for a Standard Register customer.  Stockmal did not disclose that, in fact, Smith would begin working for Stockmal's company shortly thereafter, not some Standard Register customer.

01:17320124.1

40.     Prior to her resignation, Smith surreptitiously deleted a significant portion of the contents of her Standard Register e-mail communications.

41.     In violation of the Salesman's Agreements, subsequent to Smith's resignation from Standard Register, Stockmal emailed to Smith's personal email account trade secret, confidential, and proprietary information regarding the orders of Key Customer.  Upon information and belief, Stockmal also maintained communications with Smith regarding internal developments with the Standard Register clients they had previously serviced together.

42.     Both prior to and after his resignation, Stockmal worked to undermine the integrity of Standard Register's ongoing business relationships with certain of its customers, including the Key Customer, by, among other things, attempting to portray Standard Register's management in a poor light in communications with Key Customer.

43.     Immediately prior to his resignation, Stockmal also took steps to compile sensitive internal information and work product regarding the services offered to Standard Register's customers.

44.     Like Smith, Stockmal resigned from Standard Register without warning or explanation, effective immediately, on Friday, June 19, 2015.

45.     Stockmal also surreptitiously deleted a significant portion of the contents of his Standard Register e-mail communications prior to his resignation.  Upon information and belief, Stockmal and Smith retained key digital files and/or hard copy materials containing Standard Register's trade secrets, confidential, and proprietary information.

01:17320124.1

**F.      Stockmal and Smith's Misappropriation of Confidential Information and Improper Solicitation of Standard Register's Customers**

46.      Since his abrupt exit from Standard Register, Stockmal has begun publicly serving as the Chief Executive Officer of Focused Impressions.  Smith serves as the Chief Operating Officer.

47.      Upon information and belief, Stockmal and Smith began operating Focused Impressions using Standard Register resources, and while being compensated by Standard Register.

48.      Prior to Stockmal's departure, Focused Impressions maintained a website detailing its services and products and listing Smith as the company's Chief Operating Officer. Once Stockmal resigned from Standard Register, he was quickly added to Focused Impression's website as the Chief Executive Officer.  The website touts Stockmal and Smith's years of experience at Standard Register and intimate knowledge of the industry and products offered.

49.      Upon information and belief, email addresses for both Stockmal and Smith associated with Focused Impressions' website domain have been active for over a year.

50.      Upon information and belief, Stockmal and Smith have caused, or intend to, cause Focused Impressions to offer to Standard Register's customers, including the Key Customer, products and services that are substantially similar to those offered by Standard Register.  All of these activities violate the Salesman's Agreements.

51.      Upon information and belief, Focused Impressions is offering a technology platform, FocusPoint, which provides marketing and content management capabilities significantly similar to those offered by Standard Register's SMARTworks.

52.      In particular, upon information and belief, Stockmal and Smith have recently solicited business directly from Key Customer.

01:17320124.1

53.     Unless enjoined, Defendants' actions will cause irreparable harm.  The risk of Defendants' activities to Standard Register's business and long-term prospects are irreparable. Indeed, upon information and belief, it is inevitable that Stockmal and Smith are using and intend to continue to use Standard Register's trade secret, confidential, and proprietary information at Focused Impressions, and in particular in their pursuit of Standard Register's current customers, including the Key Customer, in direct violation of the Standard Register Code of Ethics and the express terms of the Salesman's Agreements.

54.     The Defendants have already and intend in the future to target Standard Register's best and longest-standing customers, including the Key Customer, using the information and insight Stockmal and Smith obtained through the course of their employment at Standard Register.  The loss of any customer, and particularly the Key Customer, will adversely impact Standard Register's business, and could lead to the erosion of customer and vendor confidence going forward (thereby threatening the goodwill that Standard Register has built up over the years) and threaten the potential sale to Taylor Corporation.

55.     Prompt action is necessary to prevent further damage to Standard Register and its estate.  Injunctive relief to enjoin Defendants from engaging in any activity designed to compete with Standard Register, to solicit its customers, or otherwise to disclose its confidential and proprietary information is the only reasonable means to prevent further irreparable harm to Standard Register and the value of Standard Register's estate.

## COUNT I
### (BREACH OF CONTRACT)
### (Against Stockmal And Smith)

56.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

01:17320124.1

57.    Stockmal and Smith knowingly and voluntarily agreed to enter into the Salesman's Agreements and Code of Ethics with Standard Register and to abide by its terms.

58.    The Salesman's Agreements, and the Code of Ethics, are valid and enforceable contracts.

59.    The restrictions in the Salesman's Agreements and Code of Ethics are reasonable, do not impose an undue burden on Stockmal or Smith, and are not injurious to the public.

60.    Upon information and belief, Stockmal and Smith have retained, used, misappropriated, and/or disclosed Standard Register's trade secret, confidential, and proprietary information in violation of the terms of the Salesman's Agreements and Code of Ethics.  Upon information and belief, Stockmal and Smith have also solicited business from Standard Register customers in violation of the terms of the Salesman's Agreements.

61.    Standard Register has suffered, and will continue to suffer, irreparable harm and injury as a result of Stockmal and Smith's breach of the Salesman's Agreements and Code of Ethics, including, but not limited to, financial injury; lost business opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

62.    Standard Register has no adequate remedy at law.  Such conduct will continue to cause irreparable harm unless restrained by the Court.

## COUNT II
### (MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF OHIO UNIFORM TRADE SECRETS ACT, OHIO REV. CODE § 1333.61 et seq.)
### (Against Defendants)

63.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

64.    Standard Register developed its trade secrets, including but not limited to, product pricing terms and structure, customer lists, customers' contractual terms, customer preferences,

01:17320124.1

vendor and supply costs, special methods and processes involved in product design production, market opportunities, and sales strategies, with substantial effort.  This information constitutes trade secrets because it has independent economic value and is subject to Standard Register's reasonable efforts to maintain their secrecy.

65.    Standard Register's trade secrets are of substantial value and benefit to its business, and provide it with a competitive advantage.

66.    Standard Register has taken substantial steps to protect its trade secrets from disclosure outside of its business, and amongst its own employees when not absolutely necessary.

67.    Upon information and belief, Defendants offer products and services substantially similar to those offered by Standard Register.  Stockmal and Smith, acting individually and/or as an agent of Focused Impressions, without authority and through improper means, will inevitably misappropriate, misuse, and disclose Standard Register's trade secrets and its confidential and proprietary information.

68.    The misappropriation of trade secrets by Defendants has and/or will cause substantial damage to Standard Register including, but not limited to, financial injury; lost business opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

69.    Standard Register has no adequate remedy at law.  Such conduct will continue to cause irreparable harm unless restrained by the Court.

01:17320124.1

## COUNT III
## (TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIP)
### (Against Defendants)

70.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

71.     As a result of their employment with Standard Register, Stockmal and Smith have direct knowledge of Standard Register's customer relationships, future strategies, and existing products and services.

72.     Stockmal and Smith's actions, acting individually and/or as an agent of Focused Impressions, have, and will continue to, intentionally interfere with Standard Register's existing and potential customer relationships, as well as relationships with its vendors, by inducing or otherwise causing Standard Register's existing and potential customers not to consummate or continue business relationships with Standard Register.

73.     Defendants had no justification for these actions, which caused Standard Register to suffer damages for which Defendants are liable, including, but not limited to, financial injury; lost business opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

74.     Standard Register has no adequate remedy at law.  Such conduct will continue to cause irreparable harm unless restrained by the Court.

## COUNT IV
## (BREACH OF DUTY OF LOYALTY)
### (Against Stockmal And Smith)

75.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

01:17320124.1

76.    During their times of employment with Standard Register or its predecessors, Stockmal and Smith were trusted and highly compensated employees of Standard Register and owed a duty of loyalty to Standard Register to act in the best interests of Standard Register.

77.    Stockmal and Smith knowingly, intentionally, and purposefully developed Focused Impressions so that it would compete with Standard Register and lure its customers away, and improperly used and/or disclosed Standard Register's trade secret, confidential, and proprietary information, up to the date of their resignations and thereafter.

78.    Stockmal and Smith's actions violated their duties of loyalty to Standard Register. These actions permeated their service as employees at Standard Register.

79.    As a result, Stockmal and Smith were faithless servants, and must disgorge their ill-gotten gains, and Standard Register is entitled to recover all sums paid to Stockmal and Smith as compensation during the period that they were disloyal.

<u>**COUNT V**</u>
**(CIVIL CONSPIRACY)**
**(Against Defendants)**

80.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

81.    Defendants maliciously acted in concert and pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means, with the purpose of competing against Standard Register and misappropriating Standard Register's trade secrets, confidential, and proprietary information, to the detriment of Standard Register.

82.    Defendants committed acts in furtherance of the conspiracy, including, but not limited to, breach of contract, tortious interference with contractual and business relationships,

misappropriation of trade secrets, and breach of the duty of loyalty, without a reasonable or lawful excuse.  All Defendants were willful participants in this joint activity.

83.     As a direct and proximate result of these unlawful acts, Standard Register has suffered damages as a result of Defendants' actions.

### COUNT VI
### (VIOLATION OF AUTOMATIC STAY, 11 U.S.C. § 362(a)(3))
### (Against Defendants)

84.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

85.     Standard Register's trade secrets, confidential, and proprietary information, which were misappropriated and disclosed by Defendants, constitute property of Standard Register's estate pursuant to section 541 of the Bankruptcy Code

86.     Defendants violated the automatic stay in effect pursuant to section 362 of the Bankruptcy Code through their actions in obtaining and maintaining possession of, exercising control over, and using and benefitting from the trade secrets, confidential, and proprietary information that is the property of Standard Register's estates.

### COUNT VII
### (TURNOVER OF PROPERTY OF THE ESTATE, 11 U.S.C. § 542)
### (Against Defendants)

87.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

88.     Standard Register's trade secrets, confidential, and proprietary information, which were misappropriated and disclosed by Defendants constitute property of Standard Register's estate pursuant to section 541 of the Bankruptcy Code.  The trade secrets, confidential, and proprietary information are of substantial value, benefit and use to Standard Register.

01:17320124.1

89.     Defendants each have possession, custody, and/or control of the trade secrets, confidential, and proprietary information.

90.     Accordingly, Defendants must deliver to the plaintiff an account for the trade secrets, and confidential and proprietary information, or the value of the trade secrets, confidential, and proprietary information pursuant to section 542(a) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in its favor and an order:

A.  Declaring that the Salesman's Agreements are valid and enforceable, and that Stockmal and Smith must abide by all of the terms.

B.  Declaring that Stockmal and Smith's unauthorized conduct violates Standard Register's rights under the Salesman's Agreements.

C.  Declaring that the Code of Ethics is valid and enforceable, and that Stockmal and Smith must abide by all of the terms.

D.  Declaring that Stockmal and Smith's unauthorized conduct violates Standard Register's rights under the Code of Ethics.

E.  Enjoining Defendants from using and/or disclosing, directly or indirectly, Standard Register's trade secrets; using and/or disclosing, directly or indirectly, Standard Register's confidential and proprietary information; contacting any actual or potential customer of Standard Register's, including without limitation the Key Customer, until June 19, 2017; and tortiously interfering with Standard Register's ongoing contractual or business relationships.

F.  Declaring that Stockmal and Smith were faithless servants in violation of their duty of loyalty prior to their resignations from Standard Register.

01:17320124.1

19

G. Declaring that Defendants have willfully violated the automatic stay in effect pursuant to 11 U.S.C. § 362.

H. Enjoining Defendants from violating the automatic stay in effect pursuant to 11 U.S.C. § 362.

I. Compelling Defendants to turn over Standard Register's trade secrets, confidential, and proprietary information, and any other property of Standard Register's estate taken by any means by Stockmal or Smith, or received by any means by Focused Impressions, and to certify their compliance with the Court's order.

J. Awarding actual and punitive damages, including attorneys' fees, to Standard Register for such violations arising from the foregoing acts of breach of contract, misappropriation of trade secrets, breach of duty of loyalty, tortious interference with contractual or business relationships, and violation of the automatic stay, plus interest as appropriate.

K. Granting such other and further relief, as provided for by contract, statute and law, or as this Court deems just or proper.

01:17320124.1

Dated: June 29, 2015
Wilmington, Delaware

    */s/ Michael R. Nestor*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
Kyle J. Kolb (NY No. 5014121)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com
kkolb@gibsondunn.com

*Counsel to Plaintiff The Standard Register Company*

01:17320124.1