## Exhibit B



## Salesman's Agreement

This Agreement is entered into this **23** day of **October**, 19**89** between Uarco Incorporated, hereinafter called "Company," and **Lynn Diane Crippen** hereinafter called "Salesman."

WHEREAS, Company is currently engaged in the manufacture and sale of business forms, and as a result of successful business operations and a significant investment of time and capital it has developed substantial goodwill and earning capacity, and

WHEREAS, Company provides training for its sales representatives in the technique and business of selling generally, and particularly in the technique and business of selling Company's products, and

WHEREAS, Company desires to employ or continue to employ Salesman as a sales representative with respect to Company's products, and

WHEREAS, Salesman desires to accept or continue employment as a sales representative with respect to Company's products upon the terms and conditions herein contained,

NOW THEREFORE, in consideration of the premises, and of the compensation to be paid to and training of Salesman, and the other considerations to be received by Salesman and Company pursuant hereto, Salesman and Company agree as follows:

1. Company hereby employs Salesman as a sales representative and Salesman hereby accepts such employment on the terms and conditions herein contained.

2. Salesman's sole compensation for his services performed hereunder shall be the remuneration paid to Salesman by Company in accordance with compensation schedules and rates from time to time determined by Company.

3. Salesman shall promote the sale of such of the products of Company as may from time to time be specified by Company to the customers contained in the Confidential Customer List (Form CA 1263). Company may from time to time revise the Confidential Customer List, and each revised Confidential Customer List shall, when received by Salesman, supersede its predecessor as a part of this Agreement and be subject to the terms and conditions hereof.

4. Salesman agrees to devote his entire working time to the promotion of company's business and welfare and to use his best efforts to promote the sale of company's products. During the term of his employment with company, salesman will not accept employment or engage in any manner, directly or indirectly, in any other business *(including the purchase or sale other than for the company of any products, whether new or used, of the type offered for sale by the company).* Salesman shall perform such duties and responsibilities incidental to his employment as may from time to time be requested by company, and shall faithfully observe company's policies and procedures contained in company's Salesman's Procedure Manual or otherwise be made known to salesman.

5. All tangible materials (whether originals or duplicates and including, but not in any way as a limitation, sample equipment, price lists, quotation guides, outstanding quotations, books, records, manuals, sales literature, training materials, calling or business cards, customer record cards, customer files, correspondence, documents, contracts, orders, messages, memoranda, notes, circulars, agreements, bulletins, invoices and receipts) in the possession or control of Salesman which in any way relate or pertain to Company's business, whether furnished to Salesman by Company or prepared, compiled, or acquired by Salesman while employed by Company, shall be the sole property of Company. Salesman agrees that he will at any time upon request of Company, and in any event promptly on termination of his employment, transfer all such materials to Company. Company shall be under no obligation to pay to Salesman any sums of money then due Salesman or becoming due thereafter until Salesman has complied with the provisions of this paragraph.

6. Salesman agrees immediately to disclose and assign to Company all his right, title and interest in and to any inventions or patents relating to processes or products of Company that he may conceive or acquire during his employment with Company and for a period of one year thereafter, and to comply with all of Company's reasonable instructions and to sign all documents relative to said inventions or patents reasonably requested by Company for the purpose of vesting, confirming or securing Company's title thereto.

7. In the course of his employment and because of the nature of his responsibilities and the training provided by Company, Salesman will acquire valuable and confidential skills and information and trade secrets with respect to Company's successful business operations, including, by way of illustration, Company's existing and contemplated products, business and financial methods and practices, plans, pricing, selling techniques, and special methods and processes involved in designing, assembling, and selling business forms, lists of Company's customers and prospective customers, methods of obtaining customers, credit and financial data of Company's suppliers and present and prospective customers, and particular business requirements of Company's present and prospective customers. In addition, Salesman will develop on behalf of Company a personal acquaintance with Company's customers and prospective customers, which acquaintance may constitute Company's only contact with such customers. As a consequence thereof Salesman will occupy a position of trust and confidence with respect to Company's affairs and its products. In view of the foregoing, and in consideration of the remuneration to be paid to Salesman, Salesman agrees that it is reasonable and necessary for the protection of the goodwill and business of Company that Salesman make the covenants contained in paragraphs 8 and 9 regarding conduct of Salesman during and subsequent to his employment by Company, and that Company will suffer irreparable injury if Salesman engages in conduct prohibited thereby. Salesman represents that his experience and/or abilities are such that observance of the aforementioned covenants will not cause Salesman any undue hardship nor will it unreasonably interfere with Salesman's ability to earn a livelihood.

The covenants contained in paragraphs 8 and 9 shall each be construed as a separate agreement independent of any other provisions of this Agreement, and the existence of any claim or cause of action of Salesman against Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Company of any of said covenants.

8. Salesman agrees that while in the employ of Company or at any time thereafter he will not, without the express written consent of Company, directly or indirectly communicate or divulge to or use for the benefit of himself or any other person, firm, association or corporation, any of Company's trade secrets or other confidential information, including, by way of illustration, the matters contained in paragraph 7, which trade secrets and confidential information were communicated to or otherwise learned of or acquired by Salesman in the course of his employment with Company, except that Salesman may disclose such matters to the extent that disclosure is required (a) in the course of his employment with Company or (b) by a court or other governmental agency of competent jurisdiction. Salesman will not use such trade secrets or confidential information in any way or in any capacity other than as an employee of Company and to further its interests.

9. For a period of two years following the termination of his employment for any reason whatsoever (or if this period shall be unenforceable by law, then for such period as shall be enforceable), Salesman agrees that he will not contact, with a view toward selling any product competitive with any product sold or proposed to be sold by Company at the time of the termination of Salesman's employment, or sell any such product to, any person, firm, association or corporation:

   (a) to which Salesman sold any product of Company during the year preceding the termination of Salesman's employment,
   (b) which Salesman solicited, contacted, or otherwise dealt with on behalf of Company during the year preceding termination of Salesman's employment.
   (c) which is known by Salesman to have been a customer of Company during the year preceding termination of Salesman's employment and which is located either within the geographical territory served by any District Office of Company to which Salesman was assigned during such year or within the same metropolitan area as any customer named in the Confidential Customer List in effect hereunder as of the date of termination of Salesman's employment.

Salesman agrees that he will not directly or indirectly make any such contact or sale either for the benefit of himself or for the benefit of any other person, firm, associattion or corporation, and further that he will not in any manner assist any person, firm, association or corporation to make any such contact or sale."

10. In the event of a breach or threatened or intended breach of this Agreement by Salesman, Company shall be entitled, in addition to remedies otherwise available to Company at law, or in equity or by statute, to the following particular forms of relief:

   (a) In the event Salesman breaches paragraph 8 or 9, Company shall be entitled to injunctions, both preliminary and final, enjoining and restraining such breach or threatened or intended breach, and Salesman hereby consents to the issuance thereof forthwith in any court of competent jurisdiction.
   (b) Company and Salesman agree that in the event Salesman breaches paragraph 8 or 9, ascertainment of Company's damages would be difficult if not impossible, and therefore Salesman agrees to pay to Company as liquidated damages and not as a penalty (i) 30% of the aggregate sales price of any sale of a competitive product directly or indirectly consummated as a result of such a breach, or (ii) the sum of $500.00 for any breach not resulting in the sale of a competitive product.

In the event Company shall enforce any part of this Agreement through legal proceedings, Salesman agrees to pay to Company any costs and attorney's fees reasonably incurred by Company in connection therewith.

11. Salesman shall not have any power or authority to accept any order or to enter into any contract, undertaking or agreement for or on behalf of Company or to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of Company or to bind Company in any manner whatsoever. Salesman's authority to represent Company shall be confined to the solicitation of orders and all orders taken or received by Salesman shall be subject to acceptance by Company at one of Company's manufacturing plants, warehouses or at such other office or offices of Company as may from time to time be designated by Company in writing for such acceptance. Such orders shall be forwarded by Salesman to such plant, warehouse or office, for acceptance or rejection, at Company's election.

12. This Agreement, including the attached Confidential Customer List or revisions thereof, represents the complete agreement between Company and Salesman and supersedes all prior agreements or understandings, written or oral. This Agreement may not be modified or terminated orally, and, except for the provisions of paragraph 13, no modification, termination or attempted waiver of any of the provisions hereof shall be binding on either party unless in writing and signed by both Salesman and Company. Salesman's compensation may be increased or decreased or his capacity temporarily changed at any time by Company without in any way affecting any of the terms and conditions of this Agreement, which in all respects shall remain in full force and effect.

13. Salesman may terminate his employment with Company at any time, orally or in writing, in which event he shall not be entitled to any severance pay. Company may, at its election, treat any oral or written notice of future termination submitted by Salesman as a termination by Salesman effective upon receipt of such notice by Company, without incurring any liability to Salesman for severance pay by reason thereof.

Company may terminate Salesman's employment with Company at any time by giving him written notice of such termination, except that after Salesman shall have been in the continuous employment of Company for at least six (6) months (whether pursuant to this Agreement or any predecessor agreement or arrangement), such written notice of termination shall be given not less than the period of time prior to such termination specified below, or in lieu of such written notice, Company, at its election, may pay severance pay to Salesman equivalent to his base salary for the prescribed notice period, as follows:

| Length of Service | Written Notice or Base Salary in Lieu of Written Notice |
| --- | --- |
| Under six months | None |
| Six months to three years | One week |
| Three years to five years | Two weeks |
| Five years to ten years | Three weeks |
| Over ten years | Four weeks |

Salesman shall not be entitled to any termination notice or severance pay if he retires or if he is discharged for cause (including such acts as embezzlement, theft, dishonesty, drunkenness, fighting, insubordination, deliberate violation of Company policy, misuse or diversion of Company funds, or breach of this Agreement).

Except for agreements and covenants herein specifically provided to be performed or remain in force following termination of employment, and except for payment of compensation owed to Salesman for services performed prior to termination, neither party hereto shall, after termination of employment, be under any further obligation to the other. Without limiting the generality of the foregoing, Salesman shall remain obligated to Company with respect to Salesman's agreements and covenants contained in paragraphs 5, 8 and 9, and Company's rights and Salesman's consent under paragraph 10 shall survive such termination of employment.

14. Each of the agreements and covenants contained in this Agreement shall be enforceable independently of every other agreement and covenant in this Agreement and the invalidity or nonenforceability of any agreement or covenant shall not invalidate or render nonenforceable any other agreement or covenant contained herein. The failure of either Company or Salesman to require the performance of any provision of this Agreement shall in no way affect the respective rights of Company or Salesman to enforce the same nor shall the waiver by Company or Salesman of any breach of any provision be construed to be a waiver of any succeeding breach or as a waiver or modification of such provision.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in the City of _Woburn_, State of _Massachusetts_, as of the day and the year first above written.

Uarco Incorporated
By _Alan D. Pulito_
District Sales Manager

_[signature]_
Salesman

2085-SP5 SA (4/85)