IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | Hearing Date: August 18, 2015 at 10:00 a.m. (ET)<br>Objection Deadline: July 22, 2015 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND THE SOLICITATION AND ACCEPTANCE THEREOF

The Standard Register Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof. In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

## BACKGROUND

3.  On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4.  On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5.  Additional information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No.2].

6.  On March 12, 2015, the Debtors filed the *Debtors' Motion for (I) an Order (A) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets;*

*(B) Approving Bid Protections; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (E) Scheduling a Hearing to Consider the Proposed Sale; and (F) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale* [Docket No. 23] (the "Initial Sale Motion"), and on May 27, 2015, the Debtors filed a supplement to the Initial Sale Motion [Docket No. 559].

7. On April 15, 2015, the Court entered an order [Docket No. 286] (the "Sale Procedures Order") approving, among other things, Sale Procedures (as defined in the Sale Procedures Order) and scheduling an auction (the "Auction") to be held on June 15, 2015.

8. Following the Auction, the bid submitted by Taylor Corporation ("Taylor") was selected as the highest and best offer for substantially all of the Debtors' assets. On June 17, 2015, the Debtors presented Taylor's bid to the Court and, in conjunction therewith, broadly summarized a global resolution (the "Settlement") contemplated by and among the Debtors, the Committee, and Silver Point Finance, LLC ("Silver Point" and together with the Debtors and the Committee, the "Settlement Parties"), in connection with the sale of substantially all of the Debtors' assets (the "Sale") and certain litigation brought against Silver Point and its affiliates.

9. On June 19, 2015, the Committee filed the *Settlement Agreement Among Debtors, Silver Point Finance, LLC & Official Committee of Unsecured Creditors* [Docket No. 696] (the "Settlement Agreement"),[2] which memorialized the agreement reached among the Settlement

---

[2] Capitalized terms used but not otherwise defined in this paragraph shall have the meaning ascribed to such terms in the Settlement Agreement.

01:17298035.3

Parties. Pursuant to the Settlement Agreement, the Committee agreed, among other things, to release all claims and causes of action against the Released Parties, including the Silver Point Entities, to withdraw with prejudice its objections to the Sale, and to affirmatively support the Sale. In exchange, the Second Lien Lenders agreed to provide certain consideration, including, among other things, a $5 million cash payment that will be designated for distribution solely to holders of allowed general unsecured claims against the Debtors.

10. Upon the filing of the Settlement Agreement and the submission of a revised form of Sale order under certification of counsel, the Court entered that certain *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief* [Docket No. 698] (the "Sale Order") approving the Sale to Taylor.

11. At this time, the Debtors are taking necessary steps to close the Sale in the near term, and, subsequent thereto, wind down their estates. Following the closing, the Debtors intend to pursue a chapter 11 plan of liquidation to efficiently and expeditiously conclude these proceedings. Prior to filing this Motion, the Debtors' undersigned counsel discussed the requested extension proposed herein with the Committee's advisors, and the Committee did not raise an objection to the relief requested.

### RELIEF REQUESTED

12. By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order extending the periods within which only the Debtors may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days. Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below, and together,

01:17298035.3

4

the "Exclusive Periods") will expire on July 10, 2015, and September 8, 2015, respectively.[3] The Debtors seek to extend the Plan Period and Solicitation Period through and including October 8, 2015, and December 7, 2015, respectively, without prejudice to the Debtors' right to seek further extensions of both periods, as may be appropriate under the circumstances. This is the Debtors' first request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

13.  Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that, if a debtor has not filed a plan that has been accepted by each class of claims or interests that is impaired under the plan before 180 days after commencement of a chapter 11 case (the "Solicitation Period"), any party in interest may file a competing plan. 11 U.S.C. § 1121(c)(3).

## SECTION 1121(D) OF THE BANKRUPTCY CODE PERMITS THE COURT TO EXTEND THE EXCLUSIVE PERIODS FOR "CAUSE"

14.  The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties. To this end, where the Exclusive Periods prove to be an unrealistic timeframe for filing and soliciting acceptances of a meaningful chapter 11 plan that would garner support from parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for "cause." 11 U.S.C. § 1121(d). Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible

---

[3] By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested herein.

01:17298035.3

5

standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

15. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. *See In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

16. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[4] *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

01:17298035.3

(i)   The size and complexity of the debtor's case;

(ii)  The necessity of sufficient time to negotiate and prepare adequate information;

(iii) The existence of good-faith progress towards reorganization;

(iv)  Whether the debtor is paying its debts as they become due;

(v)   Whether the debtor has made progress negotiating with creditors;

(vi)  The length of time a case has been pending;

(vii) Whether the debtor is seeking an extension to pressure creditors; and

(viii) Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend its exclusive period based upon certain of the above-quoted factors).

17. As set forth herein, the facts and circumstances of these Chapter 11 Cases justify extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to confirm a viable plan of liquidation.

## CAUSE EXISTS FOR AN EXTENSION OF THE EXCLUSIVE PERIODS IN THESE CHAPTER 11 CASES

18. Since the Petition Date, the Debtors have focused their efforts and resources on, among other things, stabilizing their businesses, ensuring a smooth transition into chapter 11, complying with the myriad reporting requirements imposed on a chapter 11 debtor, and working successfully to obtain approval of the Sale. To that end, the Debtors and their professionals have devoted significant time and resources to, among other things, (i) coordinating tasks associated with the Sale, including the negotiation of underlying documents and other instruments

01:17298035.3

7

submitted my multiple bidders and actively participating in the necessary diligence attendant thereto; (ii) resolving a significant number of sale objections and contract counterparty inquiries in connection with the Sale; (iii) dealing with significant litigation issues related to Silver Point; (iv) finalizing and filing the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules and Statements</u>"), which necessarily required a significant expenditure of time and effort on the part of the Debtors' management and certain of their personnel and professional advisors; and (v) ensuring that the estates continue to be competently and efficiently managed during the pendency of these Chapter 11 Cases.

19. At the same time, the Debtors and their advisors have been dealing with administrative issues attendant to these Chapter 11 Cases, including, but not limited to, (i) obtaining Court approval for multiple bar dates and implementing notice services in relation thereto; (ii) responding to various creditor inquiries; (iii) retaining multiple professionals; (iv) evaluating and resolving requests for additional adequate assurance of future payment from certain utility providers; (v) obtaining approval of a key employee incentive plan; and (vi) preparing initial and subsequent monthly operating reports. These demands on the Debtors during last four months have occupied significant time and resources, and required substantial attention from the Debtors' respective retained professionals. Under these circumstances, the Debtors submit that the requested extensions are both appropriate and necessary to afford the Debtors with sufficient time to adequately prepare a viable plan of liquidation and related disclosure statement.

A.  **The Size, Complexity, and Duration of the Chapter 11 Cases**

20. Only four months into these proceedings, the Debtors have devoted substantial resources to, among other things, pursuing the Sale and addressing critical case management issues. With respect to the Sale, in particular, the Debtors have directed substantially all of their

01:17298035.3

8

energy and resources towards maintaining ongoing operations and business relationships while simultaneously developing interest in their assets. Now that the Sale Order has been entered, and closing is contemplated in the near term, the Debtors believe that it is in the best interests of all parties to allow the Debtors sufficient additional time to formulate a practical and effective chapter 11 plan. Accordingly, the Debtors submit that the complexity and relatively short duration of these Chapter 11 Cases warrant the extension of the Exclusive Periods.

**B.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

21.    Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on smoothly transitioning into chapter 11 and the pursuit, and ultimate resolution of, the Sale. Working towards that goal, the Debtors prepared and prosecuted numerous motions for first and second day relief, and prepared and filed their Schedules and Statements and required operating reports. The Debtors and their professionals have focused most of their time and resources on the Sale and related issues, and the Debtors believe that it is reasonable to request additional time to negotiate and finalize a plan of liquidation given the recent entry of the Sale Order and the time, resources and effort that was required to memorialize the Settlement Agreement. Accordingly, the Debtors submit that a brief extension of time is appropriate under the circumstances.

**C.    Good Faith Progress Made in These Chapter 11 Cases**

22.    As detailed above, the Debtors have made significant and material progress in these Chapter 11 Cases. Most importantly, the Debtors worked closely with their professionals to evaluate all potential strategic and financial buyers in connection with the Sale, held a robust Auction, and obtained Court approval of the Sale. Moreover, the Sale will result in designated proceeds for the Debtors' general unsecured creditors, thereby making a plan more feasible.

Accordingly, the Debtors submit that they have made good faith progress in these Chapter 11 Cases, which weighs in favor of extending the Exclusive Periods.

**D.    The Debtors Are Paying Their Debts as They Come Due**

23.    As the Debtors continue to make timely payment on their undisputed post-petition obligations, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors. As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

**E.    The Debtors Are Not Seeking an Extension to Pressure Creditors**

24.    The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The Debtors have worked diligently over the past few months to maximize the value of their estates, and require the extension sought by this Motion to bring these Chapter 11 Cases to an orderly and efficient conclusion. The Debtors are not seeking an extension to pressure the creditors or other parties-in-interest. Indeed, the Debtors have regularly consulted with their post-petition secured lender, the Committee's professionals, and various creditors throughout these proceedings, regularly apprising them of the Debtors' operational progress, the Sale, and other material events as they have unfolded. Moreover, going forward, the Debtors intend to work cooperatively with the Committee's professionals towards developing a plan of liquidation. As such, the Debtors are not seeking the relief requested herein to pressure creditors.

**F.    Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter 11 Cases**

25.    Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date. In effect, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would be free to propose a chapter 11 plan for the Debtors. Such a ruling would foster a chaotic

01:17298035.3

environment with no central focus and cause substantial, if not irreparable, harm to the Debtors' efforts to preserve and maximize the value of their estates.

26. Based on the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including October 8, 2015, and December 7, 2015, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## NOTICE

27. Notice of this Motion has been provided to (i) the UST; (ii) counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Amended and Restated Loan and Security Agreement; (v) counsel to the agents under the Debtors' debtor-in-possession financing facility; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) extending the Plan Period through and including October 8, 2015, (ii) extending the Solicitation Period through and including December 7, 2015, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: July 8, 2015
Wilmington, Delaware

/s/ Andrew L. Magaziner
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

01:17298035.3