# EXHIBIT A

## Engagement Letter

December 27, 2014

The Standard Register Company
600 Albany Street
Dayton, Ohio 45417

Attention:      Joseph P. Morgan Jr.
                President & Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and The Standard Register Company ("Standard Register") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein.    As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions. By signing this Agreement, we hereby accept our appointment as your lead investment banker under the terms hereof.

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

The Standard Register Company

December 27, 2014
Page 2

(b)     Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Company;

(d)     Providing valuation analyses for the Company on a going concern basis;

(e)     Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h)     Advising and assisting the Company in evaluating any potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring;

(j)     Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction[2];

(k)     Attending meetings of Standard Register's Board of Directors and its committees with respect to matters on which we have been engaged hereunder;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company ; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

The Standard Register Company

December 27, 2014
Page 3

(m)    Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for the services to be provided, the Company shall pay Lazard the
following fees:

(a)    An initial fee of $150,000 (the "Initial Fee") payable on execution of this
Agreement and a monthly fee of $100,000 (the "Monthly Fee") payable on
the last day of each month from January 31, 2015 until the earlier of the
completion of the Restructuring or the termination of Lazard's
engagement pursuant to Section 10. Fifty percent (50%) of all Monthly
Fees paid in respect of any months following the third month of this
engagement shall be credited (without duplication) against any
Restructuring Fee or Sale Transaction Fee payable (but not any Minority
Sale Transaction Fee or Financing Fee); provided, in each case, that, in the
event of a Chapter 11 filing, such credit shall only apply to the extent that
such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)    In the event of a Restructuring which takes the form of only waivers or
amendments to any of the Company's Existing Obligations (an
"Amendment"), that provide for a waiver or revision of covenants through
(i) September 30, 2015, a fee of $250,000, (ii) December 31, 2015, a fee
of $500,000, or (iii) a period until at least October 1 but not later than
December 30, 2015, an amount determined based on straight line
interpolation between $250,000 and $500,000, in each case upon
execution thereof (the "Amendment Fee") (it being agreed, however, that
no Amendment Fee shall be payable with respect to an any Amendment or
Amendments that relate solely to the Company's compliance with its
covenants during the fourth calendar quarter of 2014). Fifty percent (50%)
of any Amendment Fee paid shall be credited (without duplication) against
any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction
Fee or Financing Fee payable.

(c)    A fee, payable upon the consummation of any Restructuring other than an
Amendment, equal to 1% of the aggregate principal amount of Existing
Obligations involved in the Restructuring (the "Restructuring Fee").

(d)    (i) If, whether in connection with the consummation of a Restructuring or
otherwise, the Company consummates a Sale Transaction incorporating all
or a majority of the assets or all or a majority or controlling interest in the
equity securities of the Company, Lazard shall be paid a fee (the "Sale
Transaction Fee") equal to the greater of (A) the fee calculated based on
the Aggregate Consideration as set forth in Schedule I hereto or (B) the
Restructuring Fee.

(ii) If, whether in connection with the consummation of a Restructuring or
otherwise, the Company consummates any Sale Transaction not covered
by clause (i) above, including any minority joint venture, minority

The Standard Register Company

partnership, minority asset sale or similar minority transaction, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto. One-half of any fee paid under this Section 2(d)(ii) shall be credited (without duplication) against any fees subsequently payable under Section 2(c) or Section 2(d)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e) A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f) For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c), (d) and (e) above.

(g) In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any. If the Company so requests, Lazard shall provide reasonable documentation of such expenses

(h) As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety;

(i) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

_Retention in Chapter 11 Proceedings:_

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this

The Standard Register Company

December 27, 2014
Page 5

Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Amendment Fee, Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee and Financing Fee, are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

_Other:_

4.  Unless otherwise agreed in writing, no fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information in its possession or control regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that, to the knowledge of the Company, all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to use commercially reasonable efforts to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6.  In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7.  It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

The Standard Register Company

December 27, 2014
Page 6

8. Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of our engagement under this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire on the earlier of (x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) and (y) the date that is 12 months from the date hereof, and may be earlier terminated by Standard Register or us at any time without liability or continuing obligation to the Company or us, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by Standard Register (other than a termination by Standard Register where Lazard has acted with bad faith or gross negligence in connection with the performance of its role as contemplated herein) or any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Restructuring (including, for the avoidance of doubt, any Amendment), any Sale Transaction and any Financing publicly announced or with respect to which an agreement in principle has been reached during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. Lazard has been retained under this Agreement as an independent contractor to Standard Register, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Standard Register. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of Standard Register (in their capacities as such) is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of Standard Register (in their capacities as such) in evaluating the relevant Restructuring, Sale Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction or Financing. The Company agrees that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

The Standard Register Company

December 27, 2014
Page 7

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates (including Lazard Middle Market LLC) and may share with any such entity any information concerning the Company. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. Except as otherwise agreed by the Company, during the term of its engagement Lazard shall provide the services of Barry Ridings, Blake O'Dowd and Andrew Torgove in connection with this engagement, so long as they remain employed by and are able to provide services to Lazard. Lazard may use additional professionals as it deems appropriate in connection with this engagement.

14. Lazard agrees that it will, and it will direct any entity so employed to, treat any non-public information about the Company that is provided by or on behalf of the Company in connection with Lazard's engagement hereunder (which may include information regarding the existence or terms of any transaction, this engagement or our work hereunder) (collectively, the "Confidential Information") as confidential and not to disclose such Confidential Information to any third party except (a) as contemplated in connection with Lazard's engagement hereunder, (b) as otherwise authorized by or on behalf of the Company or (c) as required by subpoena or other legal or regulatory process. Lazard and any such entity may also disclose Confidential Information to its or their respective directors, officers, employees, representatives and other agents, in each case who need to know such information in connection with Lazard's engagement hereunder and who are subject to an obligation of confidentiality with respect thereto (any of such persons to whom Confidential Information is disclosed, "Agents"). Lazard agrees that, unless otherwise authorized by or on behalf of the Company, it will not, and it will direct such other entities and any Agents not to, use any Confidential Information for any purpose other than pursuant to Lazard's engagement hereunder. In the event Lazard or any of its Agents are requested or required pursuant to a subpoena or other legal or regulatory process to disclose any Confidential Information, Lazard shall, to the extent permissible by law, rule and regulation and any relevant legal or regulatory body and otherwise practical under the circumstances, (i) promptly notify the Company (provided that no notice shall be required in connection with disclosures to regulatory authorities in connection with a regulatory review of Lazard, any such other entity or any Agents that is not specifically related to the Company), (ii) consult with the Company as to the advisability of taking steps to resist or narrow the scope of the disclosure contemplated thereby, and (iii) cooperate with the Company as reasonably requested in any efforts the Company may make to obtain an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information. The term Confidential Information does not include information that (1) is published or otherwise becomes available to the public other than as a result of a disclosure by Lazard or its Agents in violation of this Section 14; (2) was in the possession of Lazard at the time of its disclosure by or on behalf of the Company; (3) is acquired from a third party that is not, to Lazard's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (4) is developed without reference to the Confidential Information. This Section 14 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of two years and shall then terminate.

15. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under

The Standard Register Company

December 27, 2014
Page 8

the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By:

Blake O'Dowd
Managing Director

By:

Andrew Torgove
Managing Director

Accepted and Agreed to as of the date first written above.

THE STANDARD REGISTER COMPANY, on behalf of itself
and its controlled subsidiaries

By:

Joseph P. Morgan Jr.
President & Chief Executive Officer

## SCHEDULE I

Fees for Sale Transactions

The following table outlines the Sale Transaction fee schedule. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding incremental fee. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration ($ in millions) | Incremental Fee % |
|---|---|
| $0  - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by the third party.    Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Company or relevant Company entity, as applicable, in connection with such Sale Transaction, and the fair market value of Company assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Company or its or their respective security holders after the date of this Agreement.  Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Company or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration

provided, to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests) in their capacity as employees (rather than in their capacity as holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

# EXHIBIT A-1

## Amendment Letter

Amendment No. 1
to
Engagement Agreement


This Amendment No. 1 to Engagement Agreement (the "Amendment") is entered into effective as of April 9, 2015 (the "Effective Date") by and between The Standard Register Company (together with its controlled subsidiaries and any entity formed or used for the purposes set forth in the Engagement Agreement, the "Company") and Lazard Frères & Co. LLC ("Lazard").

The Company and Lazard are parties to a letter agreement dated December 27, 2014 (the "Engagement Agreement"), pursuant to which the Company retained Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing on the terms and conditions set forth therein (capitalized terms used herein and not otherwise defined have the meanings assigned to them in the Engagement Agreement). The Company and Lazard wish to amend the terms of the Engagement Agreement as set forth below.

Accordingly, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Lazard agree as follows:

1.    **Amendments to Section 2 of the Engagement Agreement.**

A.    The sentence "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable." is hereby deleted in its entirety and replaced with the following sentence: "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement through August 31, 2015 and one-hundred percent (100%) of all Monthly Fees paid in respect of any months thereafter shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable."

B.    The phrase "equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee" at the end of Section 2(d)(i) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "equal to the fee calculated as set forth in Schedule I hereto".

C.    The phrase "1% of the aggregate principal amount of Existing Obligations involved in the Restructuring" at the end of Section 2(c) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "$3,500,000, less the credit for Monthly Fees as described in Section 2(a) of the Agreement".

D.    The language in each of the following Sections is hereby deleted in its entirety and replaced with, "[Reserved]": 2(b) and 2(d)(ii).

       D.     The phrase "or Minority Sale Transaction Fee" in Section 2(d)(iii) is hereby deleted in its entirety.

       E.     The following sentence is added to the end of 2(e): "Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises."

       F.     The language in 2(f) is hereby deleted in its entirety and replaced with the following: "Lazard shall not be paid more than one fee for its services, except with respect to a Restructuring Fee and Financing Fee, which, in the context of a Restructuring, may both be payable. For the avoidance of doubt, if Lazard earns a Sale Transaction Fee, it will not be entitled to any other fee."

    2.    <u>Amendment to Section 10 of the Engagement Agreement.</u>

       A.     The phrase "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment)" is hereby deleted and replaced with the following: "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) or a Sale Transaction involving all or substantially all of the assets of the Company, whichever occurs first,".

       B.     The number "12" in 10(y) is hereby deleted and replaced with the number "18".

       C.     The phrase "(a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be," is hereby deleted and replaced with the following: "following any termination or expiration of our engagement we shall remain entitled to any fees not yet paid but earned and accrued pursuant to Section 2 on or prior to such termination or expiration date, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration date, as the case may be."

    3.    <u>Amendment to Schedule I to the Engagement Agreement.</u>

     Schedule I is hereby deleted from the Engagement Agreement and replaced with the following:

<u>"Fees for Sale Transactions</u>

The Sale Transaction Fee shall be calculated as follows:

- if no auction has been conducted and the stalking horse bid is consummated, the Sale Transaction Fee shall be a flat fee of $2.25 million less the credit for Monthly Fees as described in Section 2(a) of the Agreement; and

- if an auction has been conducted, the Sale Transaction Fee shall be equal to the sum of: (x) $2.75 million plus (y) with respect to Aggregate Consideration in excess of $275 million, an amount equal to 3.0% of Aggregate Consideration (if any), less (2) the credit for Monthly Fees as described in Section 2(a) of the Agreement; provided, that the sum

# EXHIBIT B

## Retention Order

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15- 10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 89** |

### ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LAZARD FRERES & CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

Upon the application (the "Application")[2] of Standard Register and its affiliated debtors and debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to retain and employ Lazard Frères & Co. LLC ("Lazard Frères") and Lazard Middle Market LLC ("LMM" and together with Lazard Frères, "Lazard") as investment banker for the Debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; the Court having reviewed the Application and the Torgove Declaration; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Each capitalized term used, but not otherwise defined herein, shall have the meaning ascribed to such term in the Application.

(b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) Lazard does not hold or represent any interest adverse to the Debtors' estates, (d) Lazard is a "disinterested person" as contemplated under sections 327 and 328 of the Bankruptcy Code and (e) employment of Lazard is necessary and in the best interests of the Debtors' estates, creditors, and other parties in interest; the Court finding that notice of the Application given by the Debtors was sufficient under the circumstances; and the Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and the Court being fully advised on the premises and having determined that the legal and factual bases set forth in the Application, the Torgove Declaration and at the Hearing establish just cause for the relief herein granted, and after due deliberation and cause appearing therefor, it is HEREBY ORDERED that:

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage, effective as of the Petition Date, upon the terms and for the purposes set forth in the Engagement Letter and the Indemnification Letter, as modified herein, Lazard as investment banker for the Debtors in the above-captioned Chapter 11 Cases *nunc pro tunc* to the Petition Date.

3.      Lazard is hereby authorized to perform the services enumerated in the Engagement Letter.

4.      Lazard shall be compensated for such services and reimbursed for any related expenses in accordance with section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court, including, without limitation, any financing orders or orders approving any Sale Transactions.

5.    None of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law.

6.    Lazard's compensation shall be subject to the standard of review provided in Bankruptcy Code section 328(a) and not subject to any other standard of review under Bankruptcy Code section 330; provided, however, that the United States Trustee shall be permitted to review Lazard's fees pursuant to the reasonableness standards set forth in section 330 of the Bankruptcy Code.

7.    The Debtors are authorized to pay Lazard the Monthly Fees as provided in the Engagement Letter, without further application to this Court; provided however, that all fees are subject to Court approval at a final fee hearing.  Lazard's right to payment of all fees resulting from a Sale Transaction, or to any Restructuring Fee or a Financing Fee, is subject to further entry of an Order of this Court approving Lazard's final fee application.

8.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Lazard and its professionals: (a) shall be excused from keeping time in one-tenth of an hour increments in connection with the services to be rendered postpetition pursuant to the Engagement Letter, and shall instead submit time records for services rendered postpetition in half-hour time increments and (b) shall not be required to provide or conform to any schedule of hourly rates.

9.    The provisions set forth in the Indemnification Letter are approved, subject, during the pendency of these Chapter 11 Cases, to the following modifications:

    a)    subject to the provisions of subparagraphs (b) and (d) below, the Debtors are authorized to indemnify and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons in accordance with the

Indemnification Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

b)   notwithstanding any provisions of the Indemnification Letter to the contrary, the Debtors shall have no obligation to indemnify Lazard or provide contribution or reimbursement to Lazard (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Lazard's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Lazard's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Lazard should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order;

c)   if during the pendency of these Chapter 11 Cases the indemnification is held unenforceable by reason of the exclusions set forth in subparagraph (b) above and Lazard makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the proviso set forth in the second sentence of the contribution provisions in the Indemnification Letter shall not apply; and

d)   if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Lazard believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter and the Indemnification Letter (as modified by this Order), including without limitation the advancement of defense costs, Lazard must file an application therefore in this Court, and the Debtors may not pay any such amounts to Lazard before the entry of an order by this Court approving such payment.   This subparagraph (d) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by Lazard, and is not a provision limiting the duration of the Debtors' obligation to indemnify Lazard.

10.     During the pendency of these Chapter 11 Cases, the second sentence of paragraph 11 of the Engagement Letter shall have no force or effect.

11.     For the avoidance of doubt, except for legal fees incurred solely in connection with Lazard's professional retention and compensation applications in connection with these Chapter 11 Cases, any legal fees for which Lazard seeks indemnification, contribution or reimbursement will be subject to paragraph 9(d) of this Order.

12.     Notwithstanding any provision of the Engagement Letter to the contrary, during the pendency of these Chapter 11 Cases, to the extent that this Court has jurisdiction over any matters arising out of or related to the Engagement Letter, such matter shall be heard in this Court.

13.     Lazard's engagement under the Engagement Letter shall terminate at the closing of any sale of substantially all the Debtors' assets.

14.     The Debtors are authorized, empowered and directed to take such actions as may be necessary and appropriate to implement the terms of this Order.

15.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any Chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under Chapter 7.

16.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules are satisfied by the contents of the Application.

17.    During the pendency of these Chapter 11 Cases, this Court shall retain jurisdiction with respect to all matters related to the interpretation or implementation of this Order.

Dated: April 13, 2015
       Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

4.    **Amendment to Schedule II to the Engagement Agreement.**

Schedule II is hereby deleted from the Engagement Agreement and replaced with the following:

## SCHEDULE II

### Fees for Financing

The following table outlines the Financing Fees related to any financing. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing. Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises. Notwithstanding the foregoing, Lazard shall not be entitled to any Financing Fee in connection with any Financing conducted during the chapter 11 cases (other than an exit financing) unless, in connection with such Financing, all obligations under the DIP ABL facility, DIP term loan facility, and prepetition first lien term loan facility are paid in full in cash upon the closing of such Financing.

| Funds Raised | Fee % |
|---|---|
| ABL | 0.75% |
| Senior Secured Debt (other than ABL) | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

5.    **Miscellaneous.** Except as expressly set forth above, the Engagement Agreement and the Indemnification Letter shall continue in full force and effect in accordance with its terms. Unless the context otherwise requires, any other document or agreement that refers to the Engagement Agreement shall be deemed to refer to the Engagement Agreement after giving effect to this Amendment (and any other amendments to the Engagement Agreement made from time to time pursuant to its terms). This Amendment may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Copies of this Amendment with facsimile or electronic signatures and copies of this Amendment (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Amendment.

*[Signature page follows.]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

THE STANDARD REGISTER COMPANY, on behalf of itself and its controlled subsidiaries

By: _Gerald D Sowar_

Name: GERALD D. SOWAR

Title: EVP, GENERAL COUNSEL & SECRETARY

LAZARD FRERES & CO. LLC

By: _____

Name: ANDREW TORGAE

Title: Managing Director

# EXHIBIT C

## Newly Identified Potential Parties in Interest

Ace American Insurance Company
ADP Dealer Services, Inc.
AmeriPride
Ample Industries, Inc.
Appleton Papers Inc.
Applied Mechanical Systems, Inc.
Appvion, Inc.
Bazley, Michael
Buck Consultants, LLC
Bullet Line, LLC
Bumgarner, Chad
CareSource Management Group
CDK Global, LLC
Cigna
Colorado Timberline
Commonwealth of Pennsylvania
Concur Technologies, Inc.
Customgraphix Printing Corp.
DG3 North America, Inc.
Ennis Inc.
Forms Manufacturer, Inc.
Insight Global
International Paper Company

Iron Mountain Management, LLC
IWAG Group III
JON-DA Printing Company Inc.
Kirkwood Direct
KP Select, LLC
Leedsworld, Inc.
Little, James W.
Mack International
MAX International Converters, Inc.
MedAssets Performance Management
Solutions, Inc.
Memorial Hermann Health System
Microsoft Corporation
Microsoft Licensing GP
Multnomah County
National Carton and Coating Company
Oracle America, Inc.
Packaging Corporation of America
Print Management Corporation
Print-O-Tape, Inc.
Pro-Type Printing, Inc.
Raymond of New Jersey, LLC

# EXHIBIT C-1

## Newly Identified Potential Parties in Interest

Concur Technologies, Inc.
Microsoft Corporation
Microsoft Licensing GP

# EXHIBIT D

## Details of Hours Expended

**Standard Register**
**Lazard Freres & Co. LLC / Lazard Middle Market LLC**
**June 1, 2015 through June 30, 2015**

## Summary of Services Rendered by Project

| Project # | Project Description | June |
|:---:|---|:---:|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 146.0 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 18.5 |
| 3 | Preparation and/or Review of Court Filings | 3.0 |
| 4 | Court Testimony/Deposition and Preparation | 19.5 |
| 5 | Valuation Analysis | 0.0 |
| 6 | Capital Structure Review and Analysis | 0.0 |
| 7 | Merger & Acquisition Activity | 147.5 |
| 8 | Financing Including DIP and Exit Financing | 0.0 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 8.0 |
| 10 | Fee Application, Engagement | 7.5 |
| 11 | Employee Retention Program | 0.0 |
| 12 | Travel | 20.0 |
| **TOTAL** | | **370.0** |

## Summary of Services Rendered by Professional

| Professional | June |
|---|:---:|
| Andrew Torgove, Managing Director | 131.5 |
| Dermott O'Flanagan, Director | 139.0 |
| Nick Verhein, Analyst | 99.5 |
| **TOTAL** | **370.0** |

### Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/1/15 | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7 |
| | Multiple calls with Debtor professionals | 2.5 | 1 |
| | Review of Asset Purchase Agreement provisions | 1.5 | 7 |
| 6/2/15 | Multiple calls with Debtor professionals and management team | 3.5 | 7 |
| | Review of potential amendment to Asset Purchase Agreement | 1.0 | 7 |
| | Calls with Silver Point | 0.5 | 7 |
| | Calls with potential buyers | 2.0 | 7 |
| 6/3/15 | Call with Debtor professionals re: estimated purchase price | 0.5 | 1 |
| | Multiple calls / emails / review of APA with Gibson and Silver Point | 5.0 | 7 |
| | Calls with potential buyers | 0.5 | 7 |
| 6/4/15 | Multiple calls / emails / review of APA with Gibson and Silver Point | 3.5 | 7 |
| | Calls with management and McKinsey | 1.0 | 1 |
| | Review of post petition liabilities and estimated purchase price | 1.5 | 7 |
| | Calls with UCC and potential buyers | 2.0 | 7 |
| 6/5/15 | Update calls with Board and professionals | 2.0 | 1 |
| | Call with potential buyers on asset purchase agreement | 1.5 | 7 |
| | Call with McKinsey on claims estimates | 0.5 | 1 |
| 6/6/15 | Multiple calls on estimated purchase price | 1.0 | 1 |
| 6/7/15 | Internal discussion on estimated purchase price | 1.0 | 1 |
| 6/8/15 | Travel to / from Delaware | 6.0 | 12 |
| | Standing motion hearing | 4.0 | 4 |
| | Meeting with potential bidder | 2.5 | 7 |
| | Discussions with Silver Point | 2.0 | 1 |
| 6/9/15 | Multiple calls / emails with Gibson, McKinsey and SilverPoint on sale process, APA and amendment | 5.0 | 1 |
| | Update call with UCC professionals | 1.0 | 7 |
| 6/10/15 | Calls with buyers and Gibson on APA | 5.0 | 7 |
| | Call with employees and professionals re: employee benefits | 1.0 | 1 |
| 6/11/15 | Multiple calls with Debtor professionals and review of APA | 6.0 | 1 |
| 6/12/15 | Call with Board of Directors | 1.5 | 1 |
| | Multiple calls with Debtor professionals and bidders on APA issues | 5.0 | 1 |
| | Calls / emails with DIP Lenders and UCC | 1.5 | 1 |
| | Review of Wind Down budget and auction model | 0.5 | 2 |
| 6/13/15 | Internal calls and calls / emails with Gibson Dunn | 2.5 | 1 |
| 6/14/15 | Internal calls and calls / emails with Gibson Dunn | 3.0 | 1 |
| 6/15/15 | Auction | 15.0 | 7 |
| 6/16/15 | Board calls | 2.0 | 1 |
| | Discussions with Taylor and Silver Point | 5.0 | 7 |
| | Update calls with Gibson Dunn | 3.0 | 1 |
| | Review sale declaration | 0.5 | 4 |
| 6/17/15 | Travel to/from Delaware | 3.5 | 12 |
| | Attend sale hearing | 2.5 | 4 |
| | Negotiation of settlement between UCC and SilverPoint | 9.0 | 1 |
| 6/18/15 | Calls with Committee, Silverpoint and debtor professionals | 5.0 | 1 |
| | Review of closing documents | 1.5 | 7 |
| 6/19/15 | Calls with Committee, Debtor professionals | 2.0 | 1 |
| 6/23/15 | Calls with Taylor advisors re: transition | 1.0 | 1 |

## Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|---|---|---|---|
| 6/26/15 | Board call | 1.0 | 1 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9 |
| | **Total** | **131.5** | |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/1/15 | Preparation of April fee application | 3.0 | 10 |
| | Calls / emails with potential buyers | 1.0 | 7 |
| | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7 |
| | Multiple calls with Debtor professionals | 2.0 | 1 |
| | Calls with management team | 1.0 | 9 |
| 6/2/15 | Multiple calls with Debtor professionals and management team | 1.5 | 7 |
| | Review of potential amendment to Asset Purchase Agreement | 1.0 | 7 |
| | Calls with Debtor professionals on APA | 2.0 | 1 |
| | Preparation of fee application | 1.5 | 10 |
| 6/3/15 | Call with Debtor professionals re: estimated purchase price | 0.5 | 1 |
| | Calls with Debtor professionals and Silver Point on asset purchase agreement | 3.0 | 7 |
| | Review of asset purchase agreements | 1.5 | 7 |
| | Calls with potential buyers | 0.5 | 7 |
| 6/4/15 | Calls with Debtor professionals and Silver Point on asset purchase agreement | 1.5 | 7 |
| | Calls with management and Debtor advisors re: various issues | 1.0 | 1 |
| | Review of post petition liabilities and estimated purchase price | 1.5 | 7 |
| | Calls with potential buyers | 1.0 | 7 |
| | Call with UCC re sale process | 0.5 | 1 |
| | Discussion / Review of draft asset purchase agreements | 1.0 | 7 |
| 6/5/15 | Update call with Board | 1.0 | 1 |
| | Call with management on communications plan | 1.0 | 9 |
| | Call with potential buyers on asset purchase agreement | 1.5 | 7 |
| | Follow up calls with board and professionals | 1.0 | 1 |
| | Draft presentation on estimated purchase price | 0.5 | 7 |
| | Calls with Debtor professionals on claims estimates | 0.5 | 1 |
| 6/6/15 | Calls with Debtor professionals and internal team on estimated purchase price | 1.0 | 1 |
| | Draft presentation on estimated purchase price | 1.0 | 9 |
| 6/7/15 | Conference call on estimated purchase price | 1.0 | 1 |
| | Distributed presentation re: bid | 0.5 | 7 |
| 6/8/15 | Travel to Delaware | 1.5 | 12 |
| | Court hearing | 4.0 | 4 |
| | Meeting with potential bidder re: asset purchase agreement | 2.5 | 7 |
| | Discussions with Silver Point re: court decision | 1.0 | 1 |
| | Travel back from Delaware | 1.5 | 12 |
| 6/9/15 | Calls with Debtor professionals re: sale process, APA and amendment | 2.0 | 1 |
| | Call with potential buyer on DIP | 1.0 | 7 |
| | Call with Silver Point re: APA and sale procedures | 2.5 | 1 |
| | Call with potential buyers on legal diligence | 0.5 | 7 |
| | Update call with UCC professionals | 1.0 | 7 |
| 6/10/15 | Call with employees and professionals re: employee benefits | 1.0 | 1 |
| | Multiple calls with Debtor professionals re: APA | 3.0 | 7 |
| | Multiple calls with potential buyers re: asset purchase agreement | 1.5 | 7 |
| | Discussion of post sale communications plan | 1.0 | 1 |
| 6/11/15 | Multiple calls with Debtor professionals re: APA | 4.0 | 1 |
| | Review of asset purchase agreements | 2.5 | 7 |
| | Prepare presentation comparing bids | 2.0 | 7 |
| 6/12/15 | Multiple calls with Debtor professionals re: APA | 2.5 | 1 |
| | Call with Board of Directors | 1.5 | 1 |
| | Multiple calls with bidder re: key issues in APA | 2.0 | 7 |
| | Prepare analysis of wind down budget | 1.0 | 2 |
| | Calls with DIP Lenders and UCC | 1.5 | 1 |
| 6/13/15 | Internal calls and calls with Debtor professionals | 2.5 | 1 |
| 6/14/15 | Internal calls and calls with Debtor professionals | 3.0 | 1 |
| | Prepare and review bid model | 1.5 | 7 |

### Dermott O'Flanagan - Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/15/15 | Attend auction | 15.0 | 7 |
| 6/16/15 | Board calls | 2.0 | 1 |
| | Negotiation with buyers | 3.0 | 7 |
| | Calls with Debtor professionals | 3.5 | 1 |
| | Prepare and review sale declaration | 1.5 | 4 |
| 6/17/15 | Travel to/from Delaware | 3.0 | 12 |
| | Attend sale hearing | 2.5 | 4 |
| | Meetings / calls on settlement, updates with Board etc. | 9.0 | 1 |
| 6/18/15 | Prepare monthly fee application | 3.0 | 10 |
| | Calls / emails on settlement, asset purchase agreements | 3.0 | 1 |
| | Review of closing documents | 1.5 | 7 |
| 6/19/15 | Review of Back Up Bidder Asset Purchase Agreement changes | 0.5 | 7 |
| | Calls with all professionals re: final documents | 2.0 | 1 |
| | Calls with management team | 0.5 | 1 |
| 6/22/15 | Calls with management re: marketing materials | 0.5 | 1 |
| 6/23/15 | Calls with Taylor re: data room / contracts | 1.0 | 7 |
| | Calls with Taylor advisors re: transition | 1.0 | 1 |
| 6/24/15 | Calls / emails with Debtor professionals re: closing conditions | 0.5 | 1 |
| 6/26/15 | Board call | 1.0 | 1 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9 |
| **Total** | | **139.0** | |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|---|---|---|---|
| 6/1/15 | Calls / emails with potential buyers | 1.0 | 7.0 |
| | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7.0 |
| | Multiple calls with Debtor professionals | 2.0 | 1.0 |
| | Calls with management team | 1.0 | 9.0 |
| | Responding to diligence requests | 3.0 | 2.0 |
| 6/2/15 | Responding to diligence requests | 1.0 | 2.0 |
| | Diligence with lenders and appraisers | 2.0 | 1.0 |
| | Calls with internal team | 1.0 | 2.0 |
| 6/3/15 | Responding to diligence requests | 2.0 | 2.0 |
| | Calls with internal team | 1.0 | 2.0 |
| | Calls / emails with Debtor and Stalking Horse professionals | 3.0 | 7.0 |
| 6/4/15 | Responding to diligence requests | 2.0 | 2.0 |
| | Calls with management team | 1.0 | 9.0 |
| | Call with UCC advisors on sale process update | 1.0 | 1.0 |
| 6/5/15 | Call with Board of Directors | 0.5 | 1.0 |
| | Responding to diligence requests | 1.0 | 2.0 |
| | Calls with potential buyers | 2.0 | 2.0 |
| 6/8/15 | Travel | 1.5 | 12.0 |
| | Motion for Standing | 2.0 | 4.0 |
| | Internal meetings in Delaware | 3.0 | 3.0 |
| | Meetings with potential buyers | 1.0 | 2.0 |
| 6/9/15 | Call with potential buyer | 2.0 | 2.0 |
| | Call with legal | 3.0 | 1.0 |
| | Internal call | 2.0 | 7.0 |
| 6/10/15 | Call with employees and professionals re: employee benefits | 1.0 | 1.0 |
| | Multiple calls with Debtor professionals re: APA | 3.0 | 7.0 |
| | Multiple calls with potential buyers re: asset purchase agreement | 1.5 | 7.0 |
| | Discussion of post sale communications plan | 1.0 | 1.0 |
| 6/11/15 | Multiple calls with Debtor professionals re: APA | 4.0 | 7.0 |
| 6/12/15 | Multiple calls with Debtor professionals re: APA | 2.5 | 1.0 |
| | Call with Board of Directors | 1.5 | 1.0 |
| | Multiple calls with bidder re: key issues in APA | 2.0 | 7.0 |
| | Prepare analysis of wind down budget | 1.0 | 2.0 |
| | Calls with DIP Lenders and UCC | 1.5 | 1.0 |
| 6/15/15 | Auction | 12.0 | 7.0 |
| 6/16/15 | Board calls | 2.0 | 1.0 |
| | Negotiation with buyers | 3.0 | 7.0 |
| | Calls with Debtor professionals | 3.5 | 1.0 |
| 6/17/15 | Travel to/from Delaware | 3.0 | 12.0 |
| | Attend sale hearing | 2.5 | 4.0 |
| | Meetings / calls on settlement, updates with Board etc. | 4.0 | 1.0 |
| 6/18/15 | Review of closing documents | 1.5 | 7.0 |
| 6/19/15 | Review of Back Up Bidder Asset Purchase Agreement changes | 0.5 | 7.0 |
| | Calls with all professionals re: final documents | 2.0 | 1.0 |
| | Calls with management team | 0.5 | 1.0 |
| 6/22/15 | Calls with management re: marketing materials | 0.5 | 1.0 |
| 6/23/15 | Calls with Taylor re: data room / contracts | 1.0 | 7.0 |
| | Calls with Taylor advisors re: transition | 1.0 | 1.0 |
| 6/24/15 | Calls / emails with Debtor professionals re: closing conditions | 0.5 | 1.0 |

**Nick Verhein - Analyst**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 6/25/15 | Board call | 1.0 | 1.0 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9.0 |
| | **Total** | **99.5** | |

# EXHIBIT E

## Fee Calculation &
## Details of Expenses

**Standard Register Co.**
**Monthly Statement**
**Lazard Frères & Co.  LLC**

**June 1, 2015 - June 30, 2015**

### Fee Calculation

| Item | Amount Incurred |
|------|----------------|
| Monthly Fees: June 1, 2015 - June 3, 2015 | $100,000.00 [1] |
| **TOTAL** | **$100,000.00** |

### Summary of Out-of-Pocket Expenses [2]

| Item | Amount Incurred |
|------|----------------|
| Employee Meals | $255.84 |
| Legal Expenses [3] | 450.00 |
| Legal Fees [3] | 55,398.50 |
| **TOTAL** | **$56,104.34** |

---

[1] *Lazard's retention was approved pursuant to the terms set forth in the Engagement Letter dated December 27, 2014, (the "Engagement Letter") as amended by Amendment No. 1 to the Engagement Letter (the "Amendment Letter").*

[2] *Additional expense detail will be furnished upon request.*

[3] *Legal representation of Lazard.  See detailed invoices attached.*

Standard_Expense Details_Jun 15.xls

Expense Detail

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

ALL EXPENSES

### NYC05762 - Standard Register Co.

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE | STATUS |
|---|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 | |
| **Employee Meals** | | | | |
| | 23-Jun-2015 | Verbein-Eatery 05/19/2015 -NY / SEAMLESSWEB PROFESSIONAL | 25.96 | |
| | 23-Jun-2015 | Verbein-Texas Rotisserie & Grill (1st Ave) 05/14/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.04 | |
| | 24-Jun-2015 | Verbein-Angelo Bellini 06/05/2015 -NY / SEAMLESSWEB PROFESSIONAL | 25.99 | |
| | 24-Jun-2015 | Verbein-Imperial Garden 06/04/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.13 | |
| | 24-Jun-2015 | Verbein-Texas Rotisserie & Grill (1st Ave) 06/01/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.17 | |
| | 24-Jun-2015 | Verbein-Corner Grocers 05/28/2015 -NY / SEAMLESSWEB PROFESSIONAL | 2.25 | |
| | 24-Jun-2015 | Verbein-Dafni Greek Taverna 05/27/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.25 | |
| | 24-Jun-2015 | Verbein-Maya Blue 05/26/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.25 | |
| | 24-Jun-2015 | OFlanagan-Tacos Grand Central (43rd St) 05/26/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.25 | |
| | 25-Jun-2015 | Verbein-dinner 04/25/2015 / Cash | 11.43 | R |
| | 25-Jun-2015 | Verbein-early lunch 04/25/2015 / Cash | 7.00 | R |
| | 30-Jun-2015 | Verbein -Texas Rotisserie & Grill (1st Ave) 06/10/2015 -NY / SEAMLESSWEB PROFESSIONAL | 26.12 | R |
| | | Subtotal: | 255.84 | |
| **Legal Expenses** | | | | |
| | 24-Jun-2015 | CLIENT / MATTER #200011657-0008 / DENTONS US LLP | 450.00 | R |
| | | Subtotal: | 450.00 | |
| **Legal Fees** | | | | |
| | 22-Jun-2015 | CLIENT / MATTER #200011657-0008 / DENTONS US LLP | 13,289.00 | R |
| | 24-Jun-2015 | CLIENT / MATTER #200011657-0008 / DENTONS US LLP | 42,109.50 | R |
| | | Subtotal: | 55,398.50 | |
| | | **CLOSING BALANCE as of 30-Jun-2015** | **56,104.34** | |

**DENTONS**

Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020-1089

Salans FMC SNR Denton
dentons.com

LAZARD MIDDLE MARKET LLC
R. KIRKLAND COZINE
225 SOUTH SIXTH STREET, 46TH STREET
MINNEAPOLIS, MN 55402

April 9, 2015

**Invoice No. 1637718**

Client/Matter:  20001657-0008

Standard Register

---

For Professional Services Rendered through March 31, 2015:

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 03/27/15 | A. Ruegger | 1.80 | 1,494.00 | (LMM/Standard Register)  Review document request and deposition notice from UCC (.6); communications with J. Hein, K. Cozine and D. O'Flannagan and Gibson Dunn regarding responses to same (1.2). |
| 03/28/15 | A. Ruegger | 0.30 | 249.00 | (LMM/Standard Register)  Communications with Gibson Dunn and client regarding coordination of document production. |
| 03/29/15 | A. Ruegger | 1.80 | 1,494.00 | Communications with client (D. O'Flanagan) and Gibson Dunn regarding coordination of document searches and production (1.5); teleconference with client (A. Torgove and D. O'Flanagan) and multiple Gibson Dunn lawyers regarding coordinated document productions (.3). |
| 03/30/15 | A. Ruegger | 5.80 | 4,814.00 | Communications with Gibson Dunn regarding noon call with Lowenstein (.2); teleconference with Lowenstein and Gibson Dunn regarding open discovery issues (.5); communications with Gibson Dunn regarding coordinating document reviews and production (1.8); review documents from client files for potential production (3.0); communications with client regarding email search process (.3). |
| 03/31/15 | G. Singleton | 0.50 | 175.00 | Communicate with A. Ruegger regarding incoming client and data and processing specifications for attorney review (0.10); review search terms to assist in culling down the data set for attorney review (0.20); communicate with ediscovery processing vendor regarding data processing specifications (0.20). |

2

Standard Register

April 9, 2015

Matter: 20001657-0008
Invoice No.: 1637718

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 03/31/15 | A. Ruegger | 6.10 | 5,063.00 | Communication with Gibson Dunn and client regarding deposition and preparation scheduling (.6); communications with Gibson Dunn regarding document searches and production (1.2); review additional documents client forwarded for production (.6); review Committee document request and deposition notice to Lazard (.6); draft objections to 03/30 and 03/31 subpoenas (2.5); review draft stipulation and protective order (.2); communications with G. Singleton regarding loading and screening emails (.4). |

| | | | | |
|------|-----------|-------|--------|-----------|
| Total Hours | | 16.30 | | |
| Fee Amount | | | | $13,289.00 |
| | Fee Total | | $ | 13,289.00 |
| | Invoice Total | | $ | 13,289.00 |

**DENTONS**

Dentons US LLP
1221 Avenue of the Americas
New York, New York· 10020-1089

Salans FMC SNR Denton
dentons.com

LAZARD MIDDLE MARKET LLC
R. KIRKLAND COZINE
80 South Eighth Street
Suite 2700
MINNEAPOLIS, MN 55402
USA

May 19, 2015

**Invoice No. 1649407**

Client/Matter:  20001657-0008

Standard Register

For Professional Services Rendered through April 30, 2015:

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 04/01/15 | J. Copeland | 0.30 | 171.00 | Meeting with A. Ruegger, O. Pinkas, and P. Gunther concerning document review. |
| 04/01/15 | G. Singleton | 2.20 | 770.00 | Communicate with A. Ruegger regarding processing specifications for incoming client data (0.20); draft processing specifications for vendor review (0.30); correspondence with ediscovery processing vendor confirming data specifications (0.30); build and set-up Concordance and IPRO databases (0.50); upload data into the review databases (0.60); review data for accuracy and completeness prior to attorney review (0.30). |
| 04/01/15 | O. Pinkas | 0.70 | 556.50 | Reviewed subpoena and document requests (.5); and conference with A. Ruegger re: document review (.2). |
| 04/01/15 | A. Ruegger | 6.20 | 5,146.00 | Communications with client and G. Singleton (Litigation Support) regarding delivery of email disks (.3); teleconference with A. Torgove and D. O'Flanagan regarding responses to document requests and 04/08 deposition (1.0); revise objection to subpoenas and forward draft to Gibson Dunn (.8); review Torgove and O'Flanagan declarations (1.5); coordinating review by Dentons team of emails (1.1), including background meeting (.3); review as-filed debtor objection to committee document request (.4); communications with Gibson Dunn regarding timing of objections and productions (.4); further review of background materials (.4). |
| 04/01/15 | P. Gunther | 0.50 | 385.00 | Confer w/ A. Ruegger re subpoena review |
| 04/02/15 | G. Singleton | 0.40 | 140.00 | Communicate with A. Ruegger regarding document review workflow within the review database (0.10); update review database and assist with database management as per the request of A. Ruegger (0.30). |

Standard Register

May 19, 2015

Matter: 20001657-0008
Invoice No.: 1649407

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 04/02/15 | J. Copeland | 0.70 | 399.00 | Review document request (.3); review documents in connection with bankruptcy litigation (.4). |
| 04/02/15 | A. Ruegger | 2.60 | 2,158.00 | Review summary of PBGC objection to sales procedure motion (.2); communications with G. Singleton and review team regarding additional review tags (.2); draft cover letter with objections and oversee service (.5); communication with client regarding status of document production and deposition preparation (.2); communications with Gibson Dunn and client regarding background for email review (.6); review working group list for email review (.2); continued review of client files for potential production (.7). |
| 04/02/15 | O. Pinkas | 3.80 | 3,021.00 | Document review. |
| 04/03/15 | A. Ruegger | 0.80 | 664.00 | Communications with Gibson Dunn regarding status and procedure for client email searches/production (.5); communications with Gibson Dunn and A. Torgove regarding deposition scheduling and preparation for same (.3). |
| 04/03/15 | J. Copeland | 4.10 | 2,337.00 | Review documents in connection with DIP financing and sale motion (1.8). Review document request (.5); begin document review in connection with DIP financing and asset sales (1.8). |
| 04/03/15 | P. Gunther | 6.00 | 4,620.00 | Review DIP motion, asset sale motion and first day declaration for document review background (.8); review documents for responsiveness to subpoena and code (5.2) |
| 04/04/15 | J. Copeland | 3.60 | 2,052.00 | Review documents in connection with DIP financing and sale motion litigation. |
| 04/05/15 | A. Ruegger | 0.40 | 332.00 | Communications with Gibson Dunn regarding document productions and A. Torgove preparation (.4). |
| 04/05/15 | J. Copeland | 1.70 | 969.00 | Review documents in connection with DIP and Sale Motion litigation. |
| 04/06/15 | P. Gunther | 0.20 | 154.00 | Confer w/ A. Ruegger regarding document review |

3

Standard Register

May 19, 2015

Matter: 20001657-0008
Invoice No.: 1649407

| <u>Date</u> | <u>Timekeeper</u> | <u>Hours</u> | <u>Amount</u> | <u>Narrative</u> |
|---|---|---|---|---|
| 04/06/15 | G. Singleton | 2.30 | 805.00 | Communicate with A. Ruegger regarding data management in preparation for production to opposing counsel (0.30); assist in culling and isolating subsets of data for production to opposing counsel (0.40); draft production processing specifications for processing vendor (0.30); build and set-up Concordance and IPRO databases (0.40); upload data into the production databases and review data for accuracy and completeness prior to production to opposing counsel (0.70), prepare production volumes and transmit to opposing counsel (0.20). |
| 04/06/15 | A. Ruegger | 7.40 | 6,142.00 | Review subpoenas in preparation for document review (.2); review documents tagged for production by review team, including reference to subpoenas and working group list (3.9); pull and forward to Gibson Dunn documents for Torgove preparation (.9); communications with review team regarding certain tagging decisions (.4); communications with G. Singleton (Dentons Litigation Support) regarding processing database for production (1.1); communications with Gibson Dunn regarding production and Torgove deposition issues (.6); communications with Lowenstein regarding production issues (.3). |
| 04/07/15 | A. Ruegger | 6.00 | 4,980.00 | Attend A. Torgove deposition prep session at Gibson Dunn offices (3.3); consultation with A. Torgove regarding 04/08 deposition (.3); review Committee's objections to DIP motion and sales procedure motion (1.9); teleconference with client regarding status (.3); teleconference with Gibson Dunn and A. Torgove regarding deposition issues (.2). |
| 04/08/15 | A. Ruegger | 3.90 | 3,237.00 | Attend A. Torgove deposition (3.2); brief K. Cozine on deposition and 04/13 hearing scenarios (.3); review public reports regarding PBGC objection to sales procedure motion (.1); communication with client regarding coordinating regarding hearing (.3). |
| 04/09/15 | A. Ruegger | 1.30 | 1,079.00 | Review and edit draft Torgove declaration (.6); communications with client regarding same (.7). |

Standard Register

May 19, 2015

Matter: 20001657-0008
Invoice No.: 1649407

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 04/10/15 | A. Ruegger | 0.50 | 415.00 | Review final Torgove and Carmody declarations. |
| 04/13/15 | A. Ruegger | 0.20 | 166.00 | Review supplemental Torgove declaration and order approving Lazard and Lazard Middle Market engagement. |
| 04/21/15 | A. Ruegger | 0.70 | 581.00 | Review public reports of and direct retrieval of motion to approve KEIP (.2); review KEIP motion papers (.5). |
| 04/22/15 | A. Ruegger | 0.50 | 415.00 | Review final order approving DIP. |
| 04/27/15 | A. Ruegger | 0.50 | 415.00 | Review Debtors' motions to set bar date, approve KEIP, sell certain property, and notices regarding sale process and stalking horse agreement. |

| | | | | |
|------|-----------|-------|--------|-----------|
| Total Hours | | 57.50 | | |
| Fee Amount | | | | $42,109.50 |

## DISBURSEMENT DETAIL

| Date | Description | Amount |
|------|-------------|--------|
| 4/30/2015 | Outside Professional Services - - EQUIVALENT DATA (FORMERLY THE MEDLEH GROUP) Tech time | 450.00 |
| | SUBTOTAL | 450.00 |
| Total Disbursements | | $450.00 |

| | | |
|---|---|---|
| Fee Total | $ | 42,109.50 |
| Disbursement Total | $ | 450.00 |
| Invoice Total | $ | 42,559.50 |