## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | Hearing Date:  August 18, 2015 at 10:00 a.m. (ET)<br>Obj. Deadline:  August 11, 2015 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 1113(c)
AUTHORIZING REJECTION OF (I) THAT CERTAIN AGREEMENT BY AND
BETWEEN THE GRAPHIC COMMUNICATIONS CONFERENCE/INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, LOCAL NO. 197-M AND THE STANDARD
REGISTER COMPANY, DATED AS OF FEBRUARY 2, 2015, AND (II) THAT
CERTAIN AGREEMENT BY AND BETWEEN THE GRAPHIC COMMUNICATIONS
UNION LOCAL NO. 594S, SUBORDINATE TO THE GRAPHIC COMMUNICATIONS
CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS
DISTRICT COUNCIL, 9 AND THE STANDARD REGISTER COMPANY,
DATED AS OF MAY 1, 2014, _NUNC PRO TUNC_ TO JULY 31, 2015**

The Standard Register Company ("Standard Register") and its affiliated debtors and

debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the

"Debtors"), hereby move the Court (this "Motion") for entry of an order (the "Proposed Order"),

a copy of which is attached hereto as Exhibit 1, pursuant to section 1113(c) of title 11 of the

United States Code (as amended from time to time, the "Bankruptcy Code"), authorizing the

rejection of (i) that certain Agreement (the "Local 197 Contract") by and between the Graphic

Communications Conference / International Brotherhood of Teamsters, Local No. 197-M (the

"Fayetteville Union") and Standard Register, dated as of February 2, 2015, and (ii) that certain

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

Agreement (together with the Local 197 Contract, the "Union Contracts") by and between the

Graphic Communications Union Local No. 594S, subordinate to the Graphic Communications

Conference of the International Brotherhood of Teamsters District Council, 9 (together with the

Fayetteville Union, the "Unions") and Standard Register, dated as of May 1, 2014, *nunc pro tunc*

to July 31, 2015.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware* dated February 29, 2012.  This matter is a core proceeding pursuant to 28

U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 365 and 1113

of the Bankruptcy Code.

## BACKGROUND

**A.      General Background**

3.      On March 12, 2015, each of the Debtors commenced a voluntary case under

chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of

Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the

Debtors are continuing to manage their financial affairs as debtors in possession.  No request for

a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11

Cases").

4.      On March 24, 2015, the Office of the United States Trustee for the District of

Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to

section 1102 of the Bankruptcy Code (the "Committee").

5.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2].

**B.      The Sale and the Need to Terminate the Union Contracts**

6.      The Debtors engaged Lazard Middle Market LLC ("Lazard") in December 2014 to provide investment banking services including exploring restructuring, financing and M&A alternatives.  Thereafter, the Debtors, with Lazard's assistance, explored a range of strategic and financial alternatives to address covenant defaults and a projected liquidity shortfall.  The Debtors worked to evaluate various in-court and out-of-court alternatives.  Ultimately, the Debtors, with the assistance of Lazard, determined that a sale of substantially all of the Debtors' assets as a going concern would maximize the value available to the Debtors' creditors.  After consulting with their professionals, the Debtors ultimately decided to proceed with a sale of substantially all of their assets to Silver Point Capital, L.P. (the "Stalking Horse"), subject to higher and better offers.

7.      Following an extensive marketing period, a robust auction, and exhaustive negotiations with the Committee and other interested parties, the Debtors obtained entry of an order on June 19, 2015 [Docket No. 698] (the "Sale Order") authorizing the sale (the "Sale") of substantially all of the Debtors' assets and business operations to the Taylor Corporation ("Taylor"), which had submitted a higher and better offer than the Stalking Horse during the auction.  On July 31, 2015 (the "Closing Date"), the Debtors and Taylor consummated the Sale memorialized in that certain Asset Purchase Agreement by and between Taylor and the Debtors, dated June 19, 2015 (the "Taylor APA"), which had been approved by the Sale Order.  Now that

3

the Sale has closed, the Debtors are no longer conducting business operations and have only one remaining employee.  Furthermore, the Debtors understand that Taylor has made employment offers to nearly all of the Union members that were previously employed by the Debtors.

8.    Given that the Debtors (a) are no longer operating and (b) no longer employ any Union members, the Union Contracts with the Debtors no longer serve any purpose because they do not guarantee employment; instead, they merely govern the terms and conditions of employment for the Debtors' employees, if any, that are members of the Unions.  Thus, in the sound exercise of their business judgment, the Debtors request authority to formally reject the Union Contracts, to the extent such rejection is necessary.  As a result of the Sale, the Debtors do not—and will not in the future—employ Union members covered by the Union Contracts or have the means (or need) to honor obligations, if any, arising under the Union Contracts.

9.    The Debtors believe that, pursuant to the Sale Order, the Union Contracts were rejected as of the Closing Date.  Nonetheless, out of an abundance of caution, the Debtors followed the guidelines for rejecting a collective bargaining agreement, consistent with the terms set forth in section 1113 of the Bankruptcy Code, and implemented the procedures contemplated thereby.  Accordingly, prior to filing this Motion, the Debtors made a proposal to the Unions with regarding the proposed rejection of the Union Contracts.  *See* Exhibits 2 and 3.  Thereafter, the Unions' authorized representative requested certain information from the Debtors, which the Debtors have provided, and the parties  initiated  constructive discussions regarding the termination of the Union Contracts.  The Debtors remain willing to continue these discussions with the Unions and their authorized representatives at any time prior to the hearing on this Motion.  In addition, upon information and belief, Taylor has begun negotiating directly with the Unions regarding the post-Sale employment of Union members and the terms thereof.

4

**RELIEF REQUESTED**

10.     By this Motion, the Debtors seek entry of an order, pursuant to sections 365(a)

and 1113(c) of the Bankruptcy Code, authorizing the rejection of the Union Contracts effective

as of the Closing Date, July 31, 2015.

**BASIS FOR RELIEF REQUESTED**

**A.  The Union Contracts Are of No Further Force or Effect**

11.     The Union Contracts govern the terms and conditions of employment for the

Unions' members while employed by the Debtors.  As noted above, the Unions' members are no

longer employed by the Debtors, and nearly all of them were offered employment by Taylor in

connection with the Sale.  Since the Union Contracts, therefore, no longer govern an ongoing

employment relationship between the Debtors and the Unions' members, the Union Contracts

are without any further force or effect notwithstanding that such agreements have not technically

expired by their respective terms.

**B.  The Debtors Have Satisfied the Requirements of Section 1113 of the Bankruptcy Code**

12.     Section 1113 of the Bankruptcy Code outlines the procedures that must be

followed when a debtor rejects a collective bargaining agreement.  It provides, in relevant part:

> The court shall approve an application for rejection of a collective bargaining
> agreement only if the court finds that-
>
> (1)     the trustee has, prior to the hearing, made a proposal that fulfills the
> requirements of subsection (b)(1);
>
> (2)     the authorized representative of the employees has refused to accept such
> proposal without good cause; and
>
> (3)     the balance of the equities clearly favors rejection of such agreement.

11 U.S.C. § 1113(c).  Section 1113(b)(1) of the Bankruptcy Code, provides, in turn, that:

Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee . . . shall-

(A)     make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equally; and

(B)     provide . . . the representative of the employees with such relevant information as is necessary to evaluate the proposal.

11 U.S.C. § 1113(b)(1).  Finally, section 1113(d) requires that the hearing on the motion be scheduled "to be held not later than fourteen days after the date of the filing" of this Motion.  11 U.S.C. § 1113(d); *see also In re Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 137 (3d Cir. 1997) (section 1113 outlines the procedure necessary for a debtor to reject collective bargaining agreements); *New York Typographical Union No. 6 v. Maxwell Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 981 F.2d 85, 89 (2d Cir. 1992); *United Food and Commercial Workers Union, Local 211 v. Family Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. 884, 891 (8th Cir. B.A.P. 2001).

13.     Section 1113 contains provisions that force unions to face changed circumstances that occur when a company becomes insolvent, while at the same time ensuring that debtors do not use the chapter 11 process as an expedient "medicine to rid themselves of corporate indigestion."  *Maxwell Newspapers*, 981 F.2d at 89 (citing *Century Brass Prods., Inc. v. Int'l Union (In re Century Brass Prods., Inc.)*, 795 F.2d 265, 272 (2d Cir. 1986)).

14.     When a debtor demonstrates compliance with the provisions of section 1113, a court is authorized to approve rejection of the collective bargaining agreement at issue.  *See e.g.*, *Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of America*, 791 F.2d 1074 (3d Cir. 1986); *New York Typographical Union No. 6 v. Royal Composing Room, Inc. (In re Royal*

*Composing Room, Inc.)*, 848 F.2d 345, 347 (2d Cir. 1988), *cert. denied*, 489 U.S. 1078 (1989);

*Truck Drivers Local 807 v. Carey Transp. Inc.*, 816 F.2d 82, 92 (2d Cir. 1987).

15.     Courts have found that section 1113 authorizes the rejection of collective

bargaining agreements in cases, such as these, where a Chapter 11 debtor has, or is in the process

of, liquidating its assets. *See In re Chicago Construction Specialties, Inc.*, 510 B.R. 205, 224

(Bankr. N.D. Ill. 2014); *United Food and Commercial Workers Union, Local 211 v. Family*

*Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. at 893. In liquidating cases, some of the

factors that courts traditionally consider are satisfied by the liquidation itself, while other factors

are afforded a more lenient standard given the context. *See In re Chicago Construction*

*Specialties, Inc.*, 510 B.R. at 216-17.

16.     The Debtors have complied with the requirements of section 1113 of the

Bankruptcy Code by sending a proposal to the Unions on July 17, 2015. As demonstrated by the

letters attached hereto as <u>Exhibits 2</u> and <u>3</u>, respectively, the Debtors requested that the Unions

consent to rejection of the Union Contracts given the then-pending Sale and the contemplated

termination of the Debtors' business operations. Upon receiving the proposal, the Unions'

authorized representative requested certain information to better evaluate the proposal, and the

Debtors, in turn, provided such information on July 29, 2015. As of the date hereof, the proposal

remains subject to ongoing negotiations.

17.     The Debtors submit that there is no good cause for the Unions to object to the

rejection of the Union Contracts. Upon information and belief, nearly all of the affected

employees were offered similar positions by Taylor, and the Unions will have the opportunity to

bargain with Taylor regarding the terms and conditions of their constituents' employment going

forward. In these circumstances, where the Debtors no longer have any business operations and

the affected employees are employed by a third party operating the Debtors' former business, the balance of the equities favors rejection of the Union Contracts. To the extent that the affected employees have any claims resulting from their employment with the Debtors or the rejection of the Union Contracts, those claims will be treated on par with claims of other similarly-situated creditors.

18.     The Debtors have very limited unencumbered assets and are working efficiently and expeditiously to wind down their estates. In light thereof, the Union Contracts must be rejected to facilitate the wind-down and to give effect to the Sale. There is simply no alternative outcome. Indeed, "[c]ourts have determined that, in the context of a liquidating chapter 11 debtor, the requirement that the modifications be 'necessary to permit reorganization of the debtor' means 'necessary to accommodate confirmation of a chapter 11 plan.'" *In re Family Snacks, Inc.*, 257 B.R. at 897; *In re Horizon Natural Resources, Co.*, 316 B.R. 268, 271 (Bankr. E.D. Ky. 2004). Absent rejection of the Union Contracts, the Debtors will have difficulty formulating a plan that satisfies sections 1129(a)(7) (best interest of creditors) and 1129(a)(9)(A) (payment in full of administrative claims) of the Bankruptcy Code because assumption of the Union Contracts may require cash payment of approximately $1.5 million in severance costs to employees that did not actually lose their jobs (they have been employed by Taylor).[2] The vast majority of these severance claims will be prepetition general unsecured claims if the Union Contracts are rejected. Accordingly, the Debtors submit that rejection of the Union Contracts at this juncture in the Chapter 11 Cases is ministerial in nature and should be approved at the

---

[2]      The Debtors do not believe that in these circumstances the applicable employees are entitled to severance in accordance with the terms of the Union Contracts. Pursuant to the Union Contracts, severance is only payable to those employees "who become[] permanently unemployed" as a result of the termination in question. As noted herein, the vast majority of the Union members did not "become[] permanently unemployed" as a result of their termination from the Debtors; rather, they were almost immediately re-employed by Taylor. Upon information and belief, the Unions disagree with the Debtors' position.

omnibus hearing scheduled for August 18, 2015—*i.e.*, "not later than fourteen days after the date of the filing" of this Motion.  *Cf.* 11 U.S.C. § 1113(d).

**C.  The Union Contracts Should Be Rejected Effective As of the Closing Date**

19.    Pursuant to the procedures outlined in the Sale Order, all of the Debtors' executory contracts that are not (i) Transferred Contracts (ii) Potential Contracts, or (iii) placed on the Debtors' Reserved Contracts Schedule (each as defined in the Sale Order) were rejected effective as of the Closing Date.  *See* Sale Order ¶ 36.  The Union Contracts are executory contracts and have not and will not be designated as Transferred Contracts or Potential Contracts, and were not placed on the Debtors' Reserved Contracts Schedule.  As a result, the Union Contracts were arguably rejected by the Debtors as of July 31, 2015, because the Unions did not object to the entry of the Sale Order and its procedures.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (bankruptcy court order granting relief without debtor having satisfied statutory requirements is "enforceable and binding" on party that "failed to object or timely appeal").

20.    Notwithstanding the terms of the Sale Order, the Debtors provided notice to the Unions' authorized representative(s) on July 17, 2015, and thereby advised the appropriate parties that the Debtors intended to file a motion to reject the Union Contracts as of July 31, 2015.  In these circumstances, the Debtors submit that it is appropriate to authorize rejection as of the Closing Date, July 31, 2015.

<u>**NOTICE**</u>

21.    Notice of this Motion will be provided to (i) the UST; (ii) counsel to Silver Point Capital, LLC; (iii) counsel to Bank of America, N.A.; (iv) counsel to the Committee; (v) the Unions' authorized representatives and their counsel, if known, and (vi) all parties that, as of the

filing of the Motion, have requested notice in these Chapter 11 Cases pursuant to Rule 2002 of

the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein,

the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order,

substantially in the form annexed hereto as Exhibit 1, granting the relief requested herein and

such other and further relief as is just and proper.

Dated:    August 4, 2015
          Wilmington, Delaware                  YOUNG CONAWAY STARGATT
                                                & TAYLOR, LLP

                                                /s/ Andrew L. Magaziner
                                                Michael R. Nestor (No. 3526)
                                                Kara Hammond Coyle (No. 4410)
                                                Maris J. Kandestin (No. 5294)
                                                Andrew L. Magaziner (No. 5426)
                                                Rodney Square
                                                1000 North King Street
                                                Wilmington, Delaware  19801
                                                Telephone: (302) 571-6600
                                                Facsimile: (302) 571-1253

                                                -and-

                                                Michael A. Rosenthal (NY No. 4697561)
                                                Samuel A. Newman (CA No. 217042)
                                                Jeremy L. Graves (CO No. 45522)
                                                Matthew Bouslog (CA No. 280978)
                                                GIBSON, DUNN & CRUTCHER LLP
                                                200 Park Avenue
                                                New York, New York 10166-0193
                                                Telephone: (212) 351-4000
                                                Facsimile: (212) 351-4035
                                                mrosenthal@gibsondunn.com
                                                snewman@gibsondunn.com
                                                jgraves@gibsondunn.com
                                                mbouslog@gibsondunn.com

                                                Counsel for Debtors and Debtors in Possession