# EXHIBIT A

## Engagement Letter

December 27, 2014

The Standard Register Company
600 Albany Street
Dayton, Ohio 45417

Attention:    Joseph P. Morgan Jr.
              President & Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and The Standard Register Company ("Standard Register") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein.    As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions. By signing this Agreement, we hereby accept our appointment as your lead investment banker under the terms hereof.

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

The Standard Register Company

(b)     Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Company;

(d)     Providing valuation analyses for the Company on a going concern basis;

(e)     Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h)     Advising and assisting the Company in evaluating any potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i)     Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring;

(j)     Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction[2];

(k)     Attending meetings of Standard Register's Board of Directors and its committees with respect to matters on which we have been engaged hereunder;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company ; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

The Standard Register Company

December 27, 2014
Page 3

     (m)    Providing the Company with other financial restructuring advice.

*Fees:*

    2.  As consideration for the services to be provided, the Company shall pay Lazard the following fees:

     (a)    An initial fee of $150,000 (the "Initial Fee") payable on execution of this Agreement and a monthly fee of $100,000 (the "Monthly Fee") payable on the last day of each month from January 31, 2015 until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

     (b)    In the event of a Restructuring which takes the form of only waivers or amendments to any of the Company's Existing Obligations (an "Amendment"), that provide for a waiver or revision of covenants through (i) September 30, 2015, a fee of $250,000, (ii) December 31, 2015, a fee of $500,000, or (iii) a period until at least October 1 but not later than December 30, 2015, an amount determined based on straight line interpolation between $250,000 and $500,000, in each case upon execution thereof (the "Amendment Fee") (it being agreed, however, that no Amendment Fee shall be payable with respect to an any Amendment or Amendments that relate solely to the Company's compliance with its covenants during the fourth calendar quarter of 2014). Fifty percent (50%) of any Amendment Fee paid shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee or Financing Fee payable.

     (c)    A fee, payable upon the consummation of any Restructuring other than an Amendment, equal to 1% of the aggregate principal amount of Existing Obligations involved in the Restructuring (the "Restructuring Fee").

     (d)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee.

             (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, including any minority joint venture, minority

The Standard Register Company

December 27, 2014
Page 4

partnership, minority asset sale or similar minority transaction, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto. One-half of any fee paid under this Section 2(d)(ii) shall be credited (without duplication) against any fees subsequently payable under Section 2(c) or Section 2(d)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e)     A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f)     For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c), (d) and (e) above.

(g)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any. If the Company so requests, Lazard shall provide reasonable documentation of such expenses

(h)     As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety;

(i)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3.  In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this

The Standard Register Company

December 27, 2014<br>
Page 5

Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Amendment Fee, Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee and Financing Fee, are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4. Unless otherwise agreed in writing, no fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information in its possession or control regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that, to the knowledge of the Company, all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to use commercially reasonable efforts to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

The Standard Register Company

December 27, 2014
Page 6

8.  Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of our engagement under this Agreement.

9.  In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire on the earlier of (x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) and (y) the date that is 12 months from the date hereof, and may be earlier terminated by Standard Register or us at any time without liability or continuing obligation to the Company or us, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by Standard Register (other than a termination by Standard Register where Lazard has acted with bad faith or gross negligence in connection with the performance of its role as contemplated herein) or any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Restructuring (including, for the avoidance of doubt, any Amendment), any Sale Transaction and any Financing publicly announced or with respect to which an agreement in principle has been reached during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. Lazard has been retained under this Agreement as an independent contractor to Standard Register, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Standard Register. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of Standard Register (in their capacities as such) is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of Standard Register (in their capacities as such) in evaluating the relevant Restructuring, Sale Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction or Financing. The Company agrees that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

The Standard Register Company

December 27, 2014
Page 7

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates (including Lazard Middle Market LLC) and may share with any such entity any information concerning the Company. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. Except as otherwise agreed by the Company, during the term of its engagement Lazard shall provide the services of Barry Ridings, Blake O'Dowd and Andrew Torgove in connection with this engagement, so long as they remain employed by and are able to provide services to Lazard. Lazard may use additional professionals as it deems appropriate in connection with this engagement.

14. Lazard agrees that it will, and it will direct any entity so employed to, treat any non-public information about the Company that is provided by or on behalf of the Company in connection with Lazard's engagement hereunder (which may include information regarding the existence or terms of any transaction, this engagement or our work hereunder) (collectively, the "Confidential Information") as confidential and not to disclose such Confidential Information to any third party except (a) as contemplated in connection with Lazard's engagement hereunder, (b) as otherwise authorized by or on behalf of the Company or (c) as required by subpoena or other legal or regulatory process. Lazard and any such entity may also disclose Confidential Information to its or their respective directors, officers, employees, representatives and other agents, in each case who need to know such information in connection with Lazard's engagement hereunder and who are subject to an obligation of confidentiality with respect thereto (any of such persons to whom Confidential Information is disclosed, "Agents"). Lazard agrees that, unless otherwise authorized by or on behalf of the Company, it will not, and it will direct such other entities and any Agents not to, use any Confidential Information for any purpose other than pursuant to Lazard's engagement hereunder. In the event Lazard or any of its Agents are requested or required pursuant to a subpoena or other legal or regulatory process to disclose any Confidential Information, Lazard shall, to the extent permissible by law, rule and regulation and any relevant legal or regulatory body and otherwise practical under the circumstances, (i) promptly notify the Company (provided that no notice shall be required in connection with disclosures to regulatory authorities in connection with a regulatory review of Lazard, any such other entity or any Agents that is not specifically related to the Company), (ii) consult with the Company as to the advisability of taking steps to resist or narrow the scope of the disclosure contemplated thereby, and (iii) cooperate with the Company as reasonably requested in any efforts the Company may make to obtain an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information. The term Confidential Information does not include information that (1) is published or otherwise becomes available to the public other than as a result of a disclosure by Lazard or its Agents in violation of this Section 14; (2) was in the possession of Lazard at the time of its disclosure by or on behalf of the Company; (3) is acquired from a third party that is not, to Lazard's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (4) is developed without reference to the Confidential Information. This Section 14 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of two years and shall then terminate.

15. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under

The Standard Register Company

December 27, 2014
Page 8

the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersedes any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO, LLC

By:
Blake O'Dowd
Managing Director

By:
Andrew Torgove
Managing Director

Accepted and Agreed to as of the date first written above.

THE STANDARD REGISTER COMPANY, on behalf of itself and its controlled subsidiaries

By:
Joseph P. Morgan Jr.
President & Chief Executive Officer

9

## SCHEDULE I

Fees for Sale Transactions

The following table outlines the Sale Transaction fee schedule. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding incremental fee. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration<br>($ in millions) | Incremental Fee % |
| --- | --- |
| $0 - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by the third party. Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Company or relevant Company entity, as applicable, in connection with such Sale Transaction, and the fair market value of Company assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Company or its or their respective security holders after the date of this Agreement. Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Company or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration

provided, to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests) in their capacity as employees (rather than in their capacity as holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments.   For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock.  Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by the third party.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
| --- | --- |
| Senior Secured Debt | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

# EXHIBIT A-1

# Amendment Letter

Amendment No. 1
to
Engagement Agreement


This Amendment No. 1 to Engagement Agreement (the "Amendment") is entered into effective as of April 9, 2015 (the "Effective Date") by and between The Standard Register Company (together with its controlled subsidiaries and any entity formed or used for the purposes set forth in the Engagement Agreement, the "Company") and Lazard Frères & Co. LLC ("Lazard").

The Company and Lazard are parties to a letter agreement dated December 27, 2014 (the "Engagement Agreement"), pursuant to which the Company retained Lazard as its lead investment banker to provide Standard Register with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing on the terms and conditions set forth therein (capitalized terms used herein and not otherwise defined have the meanings assigned to them in the Engagement Agreement). The Company and Lazard wish to amend the terms of the Engagement Agreement as set forth below.

Accordingly, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Lazard agree as follows:

1.   **Amendments to Section 2 of the Engagement Agreement.**

A.   The sentence "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Minority Sale Transaction Fee or Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable." is hereby deleted in its entirety and replaced with the following sentence: "Fifty percent (50%) of all Monthly Fees paid in respect of any months following the third month of this engagement through August 31, 2015 and one-hundred percent (100%) of all Monthly Fees paid in respect of any months thereafter shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable (but not any Financing Fee); provided, in each case, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable."

B.   The phrase "equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee" at the end of Section 2(d)(i) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "equal to the fee calculated as set forth in Schedule I hereto".

C.   The phrase "1% of the aggregate principal amount of Existing Obligations involved in the Restructuring" at the end of Section 2(c) of the Engagement Agreement is hereby deleted and replaced with the following phrase: "$3,500,000, less the credit for Monthly Fees as described in Section 2(a) of the Agreement".

D.   The language in each of the following Sections is hereby deleted in its entirety and replaced with, "[Reserved]": 2(b) and 2(d)(ii).

D.      The phrase "or Minority Sale Transaction Fee" in Section 2(d)(iii) is hereby deleted in its entirety.

E.      The following sentence is added to the end of 2(e): "Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises."

F.      The language in 2(f) is hereby deleted in its entirety and replaced with the following: "Lazard shall not be paid more than one fee for its services, except with respect to a Restructuring Fee and Financing Fee, which, in the context of a Restructuring, may both be payable. For the avoidance of doubt, if Lazard earns a Sale Transaction Fee, it will not be entitled to any other fee."

2.      **Amendment to Section 10 of the Engagement Agreement.**

A.      The phrase "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment)" is hereby deleted and replaced with the following: "(x) the consummation of a Restructuring involving substantially all of the Existing Obligations (other than an Amendment) or a Sale Transaction involving all or substantially all of the assets of the Company, whichever occurs first,".

B.      The number "12" in 10(y) is hereby deleted and replaced with the number "18".

C.      The phrase "(a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be," is hereby deleted and replaced with the following: "following any termination or expiration of our engagement we shall remain entitled to any fees not yet paid but earned and accrued pursuant to Section 2 on or prior to such termination or expiration date, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration date, as the case may be."

3.      **Amendment to Schedule I to the Engagement Agreement.**

Schedule I is hereby deleted from the Engagement Agreement and replaced with the following:

"Fees for Sale Transactions

The Sale Transaction Fee shall be calculated as follows:

- if no auction has been conducted and the stalking horse bid is consummated, the Sale Transaction Fee shall be a flat fee of $2.25 million less the credit for Monthly Fees as described in Section 2(a) of the Agreement; and

- if an auction has been conducted, the Sale Transaction Fee shall be equal to the sum of: (x) $2.75 million plus (y) with respect to Aggregate Consideration in excess of $275 million, an amount equal to 3.0% of Aggregate Consideration (if any), less (2) the credit for Monthly Fees as described in Section 2(a) of the Agreement; provided, that the sum

of (A) the Sale Transaction Fee, (B) the Initial Fee and (C) the portion of any Monthly Fees that are not credited pursuant to Section 2(a) of the Agreement shall not be greater than 1.5% of Aggregate Consideration (the sum of (A), (B), and (C), collectively, the "Aggregate Compensation Cap"). For the avoidance of doubt, the aggregate compensation due, owing, paid, and payable by the Company to Lazard with respect to a Sale Transaction shall never exceed the Aggregate Compensation Cap. Notwithstanding anything to the contrary herein, to the extent there is no competitive bidding at auction and the stalking horse bid is selected as the successful bidder without any material change to the purchase price, then the Sale Transaction Fee shall be the same as if no auction had been conducted.

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, and including any amounts credit bid by a buyer plus (y) all indebtedness for borrowed money or other liabilities assumed or repaid by the third party buyer. For the avoidance of doubt, in the case of a Sale Transaction that involves a credit bid, Aggregate Consideration shall not include any principal and accrued interested on preexisting indebtedness to the buyer that is not part of its credit bid. Aggregate Consideration shall also include the aggregate amount of any special dividends or other distributions declared by the Company or relevant Company entity, as applicable, in connection with such Sale Transaction, and the fair market value of Company assets (including accounts receivable and real property) that are retained after closing or transferred to affiliates of the Company or its or their respective security holders after the date of this Agreement. Aggregate Consideration shall be reduced by (x) in the case of a merger or sale of equity securities, the amount of cash or cash equivalents set forth on the closing date balance sheet of the Company or (y) in the case of a sale of assets, the amount of cash or cash equivalents transferred to the buyer. Aggregate Consideration shall exclude any extraordinary payments made, or other consideration provided, to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests) in their capacity as employees (rather than in their capacity as holders of equity interests), including but not limited to transaction-related bonuses (including "stay" bonuses) or similar payments. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed, assumed directly or indirectly by the third party buyer. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction."

4.     **Amendment to Schedule II to the Engagement Agreement.**

Schedule II is hereby deleted from the Engagement Agreement and replaced with the following:

## SCHEDULE II

### Fees for Financing

The following table outlines the Financing Fees related to any financing. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing. Notwithstanding anything herein to the contrary, no Financing Fee will be due and payable on account of any capital raise provided by the Company's existing lenders, including, without limitation, any debtor in possession or exit financing or any backstop commitment (including fulfillment thereof) for debt or equity raises. Notwithstanding the foregoing, Lazard shall not be entitled to any Financing Fee in connection with any Financing conducted during the chapter 11 cases (other than an exit financing) unless, in connection with such Financing, all obligations under the DIP ABL facility, DIP term loan facility, and prepetition first lien term loan facility are paid in full in cash upon the closing of such Financing.

| Funds Raised | Fee % |
|---|---|
| ABL | 0.75% |
| Senior Secured Debt (other than ABL) | 1.50% |
| Senior Debt | 2.00% |
| Subordinated Debt | 3.00% |
| Convertible Debt | 3.50% |
| Convertible Preferred Stock | 3.50% |
| Common Stock | 4.00% |

5.     **Miscellaneous.**  Except as expressly set forth above, the Engagement Agreement and the Indemnification Letter shall continue in full force and effect in accordance with its terms.  Unless the context otherwise requires, any other document or agreement that refers to the Engagement Agreement shall be deemed to refer to the Engagement Agreement after giving effect to this Amendment (and any other amendments to the Engagement Agreement made from time to time pursuant to its terms).  This Amendment may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Copies of this Amendment with facsimile or electronic signatures and copies of this Amendment (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Amendment.

*[Signature page follows.]*

The Standard Register Amendment No. 1
Page 4 of 4

1023389.02B-CHISR02A - MSW

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the Effective Date.

THE STANDARD REGISTER COMPANY, on behalf of itself and its controlled subsidiaries

By: _____

Name: GERALD D. SOWAR

Title: EVP, GENERAL COUNSEL & SECRETARY

LAZARD FRERES & CO. LLC

By: _____

Name: ANDREW TORGOVE

Title: Managing Director

# EXHIBIT B

# Retention Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE STANDARD REGISTER COMPANY, *et al.*,[1] | Case No. 15- 10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 89** |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LAZARD
FRERES & CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT
BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE AND (II)
WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2**

Upon the application (the "Application")[2] of Standard Register and its affiliated debtors

and debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors") for entry of an order (this "Order") authorizing the Debtors to retain and employ

Lazard Frères & Co. LLC ("Lazard Frères") and Lazard Middle Market LLC ("LMM" and

together with Lazard Frères, "Lazard") as investment banker for the Debtors, pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code; the Court having reviewed the Application

and the Torgove Declaration; the Court finding that: (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference*

*from the United States District Court for the District of Delaware dated as of February 29, 2012,*

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: The
Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register
Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard
Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register
Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard
Register Servicios, S. de R.L. de C.V. (43K5); and Standard Register Technologies Canada ULC (0001).  The
headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]  Each capitalized term used, but not otherwise defined herein, shall have the meaning ascribed to such term in
the Application.

916407.04-CHISR01A - MSW

(b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) Lazard does not hold or represent any interest adverse to the Debtors' estates, (d) Lazard is a "disinterested person" as contemplated under sections 327 and 328 of the Bankruptcy Code and (e) employment of Lazard is necessary and in the best interests of the Debtors' estates, creditors, and other parties in interest; the Court finding that notice of the Application given by the Debtors was sufficient under the circumstances; and the Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and the Court being fully advised on the premises and having determined that the legal and factual bases set forth in the Application, the Torgove Declaration and at the Hearing establish just cause for the relief herein granted, and after due deliberation and cause appearing therefor, it is HEREBY ORDERED that:

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage, effective as of the Petition Date, upon the terms and for the purposes set forth in the Engagement Letter and the Indemnification Letter, as modified herein, Lazard as investment banker for the Debtors in the above-captioned Chapter 11 Cases *nunc pro tunc* to the Petition Date.

3.      Lazard is hereby authorized to perform the services enumerated in the Engagement Letter.

4.      Lazard shall be compensated for such services and reimbursed for any related expenses in accordance with section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court, including, without limitation, any financing orders or orders approving any Sale Transactions.

5.    None of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law.

6.    Lazard's compensation shall be subject to the standard of review provided in Bankruptcy Code section 328(a) and not subject to any other standard of review under Bankruptcy Code section 330; provided, however, that the United States Trustee shall be permitted to review Lazard's fees pursuant to the reasonableness standards set forth in section 330 of the Bankruptcy Code.

7.    The Debtors are authorized to pay Lazard the Monthly Fees as provided in the Engagement Letter, without further application to this Court; provided however, that all fees are subject to Court approval at a final fee hearing.  Lazard's right to payment of all fees resulting from a Sale Transaction, or to any Restructuring Fee or a Financing Fee, is subject to further entry of an Order of this Court approving Lazard's final fee application.

8.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Lazard and its professionals: (a) shall be excused from keeping time in one-tenth of an hour increments in connection with the services to be rendered postpetition pursuant to the Engagement Letter, and shall instead submit time records for services rendered postpetition in half-hour time increments and (b) shall not be required to provide or conform to any schedule of hourly rates.

9.    The provisions set forth in the Indemnification Letter are approved, subject, during the pendency of these Chapter 11 Cases, to the following modifications:

> a)    subject to the provisions of subparagraphs (b) and (d) below, the Debtors are authorized to indemnify and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons in accordance with the

Indemnification Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

b)   notwithstanding any provisions of the Indemnification Letter to the contrary, the Debtors shall have no obligation to indemnify Lazard or provide contribution or reimbursement to Lazard (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Lazard's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Lazard's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Lazard should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order;

c)   if during the pendency of these Chapter 11 Cases the indemnification is held unenforceable by reason of the exclusions set forth in subparagraph (b) above and Lazard makes a claim for the payment of any amounts by the Debtors on account of the Debtors' contribution obligations, then the proviso set forth in the second sentence of the contribution provisions in the Indemnification Letter shall not apply; and

d)   if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Lazard believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter and the Indemnification Letter (as modified by this Order), including without limitation the advancement of defense costs, Lazard must file an application therefore in this Court, and the Debtors may not pay any such amounts to Lazard before the entry of an order by this Court approving such payment.  This subparagraph (d) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by Lazard, and is not a provision limiting the duration of the Debtors' obligation to indemnify Lazard.

10.     During the pendency of these Chapter 11 Cases, the second sentence of paragraph 11 of the Engagement Letter shall have no force or effect.

11.     For the avoidance of doubt, except for legal fees incurred solely in connection with Lazard's professional retention and compensation applications in connection with these Chapter 11 Cases, any legal fees for which Lazard seeks indemnification, contribution or reimbursement will be subject to paragraph 9(d) of this Order.

12.     Notwithstanding any provision of the Engagement Letter to the contrary, during the pendency of these Chapter 11 Cases, to the extent that this Court has jurisdiction over any matters arising out of or related to the Engagement Letter, such matter shall be heard in this Court.

13.     Lazard's engagement under the Engagement Letter shall terminate at the closing of any sale of substantially all the Debtors' assets.

14.     The Debtors are authorized, empowered and directed to take such actions as may be necessary and appropriate to implement the terms of this Order.

15.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any Chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under Chapter 7.

16.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules are satisfied by the contents of the Application.

17.     During the pendency of these Chapter 11 Cases, this Court shall retain jurisdiction

with respect to all matters related to the interpretation or implementation of this Order.


Dated: April 13, 2015
       Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## Details of Hours Expended

# Monthly Compensation Period

**Standard Register**
**Lazard Freres & Co. LLC / Lazard Middle Market LLC**

### Summary of Services Rendered by Project

| Project # | Project Description | July |
|:---:|---|:---:|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 24.0 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 1.0 |
| 3 | Preparation and/or Review of Court Filings | 0.0 |
| 4 | Court Testimony/Deposition and Preparation | 0.0 |
| 5 | Valuation Analysis | 0.0 |
| 6 | Capital Structure Review and Analysis | 0.0 |
| 7 | Merger & Acquisition Activity | 26.0 |
| 8 | Financing Including DIP and Exit Financing | 0.0 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 0.0 |
| 10 | Fee Application, Engagement | 0.0 |
| 11 | Employee Retention Program | 0.0 |
| 12 | Travel | 0.0 |
| **TOTAL** | | **51.0** |

### Summary of Services Rendered by Professional

| Professional | July |
|---|:---:|
| Andrew Torgove, Managing Director | 34.0 |
| Dermott O'Flanagan, Director | 16.0 |
| Nick Verhein, Analyst | 1.0 |
| **TOTAL** | **51.0** |

**Andrew Torgove - Managing Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 7/1/15 | Call with advisors | 2.0 | 1 |
| 7/8/15 | Meeting with Taylor in Minneapolis | 8.0 | 7 |
| 7/9/15 | Meeting with Taylor in Minneapolis | 10.0 | 7 |
| 7/10/15 | Board call | 1.0 | 1 |
| 7/21/15 | Call with Taylor on customer liabilities | 2.0 | 7 |
| 7/24/15 | Board call | 1.0 | 1 |
| 7/28/15 | Board call | 1.0 | 1 |
| 7/29/15 | Call with Debtors professionals | 1.5 | 1 |
| 7/30/15 | Meetings with advisors and Taylor re: closing | 6.5 | 1 |
| 7/31/15 | Board call | 1.0 | 1 |
| **Total** | | **34.0** | |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 7/1/15 | Call with advisors | 2.0 | 7 |
| 7/2/15 | Call with management and professionals on closing timeline etc. | 1.5 | 1 |
| 7/10/15 | Board call | 1.0 | 7 |
| 7/14/15 | Calls / emails with Debtors professionals | 1.0 | 1 |
| 7/21/15 | Call with Taylor on customer liabilities | 2.0 | 7 |
| 7/22/15 | Calls with debtor professionals | 1.0 | 1 |
| 7/27/15 | Calls with McKinsey on closing items | 1.5 | 1 |
| 7/28/15 | Board call | 1.0 | 7 |
| 7/31/15 | Meetings with advisors and Taylor re: closing | 5.0 | 1 |
| **Total** | | **16.0** | |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 7/7/15 | Call with finance team | 1.0 | 2.0 |
| | **Total** | **1.0** | |

# Final Compensation Period

**Standard Register**
**Lazard Freres & Co. LLC / Lazard Middle Market LLC**

## Summary of Services Rendered by Project

| Project # | Project Description | March | April | May | June | July | Total |
|---|---|---|---|---|---|---|---|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 48.5 | 57.5 | 94.5 | 146.0 | 24.0 | 370.5 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 10.5 | 18.0 | 58.5 | 18.5 | 1.0 | 106.5 |
| 3 | Preparation and/or Review of Court Filings | 5.0 | 0.0 | 1.0 | 3.0 | 0.0 | 9.0 |
| 4 | Court Testimony/Deposition and Preparation | 31.5 | 64.0 | 2.5 | 19.5 | 0.0 | 117.5 |
| 5 | Valuation Analysis | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 6 | Capital Structure Review and Analysis | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 7 | Merger & Acquisition Activity | 206.0 | 236.0 | 125.5 | 147.5 | 26.0 | 741.0 |
| 8 | Financing Including DIP and Exit Financing | 10.0 | 5.5 | 6.0 | 0.0 | 0.0 | 21.5 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 0.0 | 9.5 | 19.5 | 8.0 | 0.0 | 37.0 |
| 10 | Fee Application, Engagement | 8.0 | 2.5 | 1.0 | 7.5 | 0.0 | 19.0 |
| 11 | Employee Retention Program | 0.0 | 1.5 | 0.0 | 0.0 | 0.0 | 1.5 |
| 12 | Travel | 61.0 | 40.5 | 17.5 | 20.0 | 0.0 | 139.0 |
| | **TOTAL** | **380.5** | **435.0** | **326.0** | **370.0** | **51.0** | **1,562.5** |

## Summary of Services Rendered by Professional

| Professional | March | April | May | June | July | Total |
|---|---|---|---|---|---|---|
| Andrew Torgove, Managing Director | 79.0 | 103.0 | 92.5 | 131.5 | 34.0 | 440.0 |
| Dermott O'Flanagan, Director | 149.5 | 156.0 | 125.5 | 139.0 | 16.0 | 586.0 |
| Nick Verhein, Analyst | 152.0 | 176.0 | 108.0 | 99.5 | 1.0 | 536.5 |
| **TOTAL** | **380.5** | **435.0** | **326.0** | **370.0** | **51.0** | **1,562.5** |

**Andrew Torgove - Managing Director**

| Date | Description of Work | Hours | Category |
|---|---|---|---|
| 3/12/15 | Calls / emails with Debtor professionals re: filing | 0.5 | 1 |
| | Travel to court hearings | 4.0 | 12 |
| | Meeting with Debtor professionals | 1.0 | 1 |
| | Internal discussions / emails re: marketing materials | 0.5 | 7 |
| 3/13/15 | Prepare for and attend First Day Hearings | 3.5 | 4 |
| | Travel back from court hearings | 3.0 | 12 |
| 3/14/15 | Emails with Debtor professionals re: sale process and diligence | 1.0 | 7 |
| | Calls / emails with potential buyer | 0.5 | 7 |
| | Review of DIP Budget | 0.5 | 8 |
| 3/15/15 | Discussion with industry bankers re: potential buyers | 2.5 | 7 |
| | Review of retention application | 1.0 | 10 |
| 3/16/15 | Discussion with potential buyers | 0.5 | 7 |
| | Multiple calls / emails with Debtor professionals | 1.0 | 1 |
| | Calls with management team | 0.5 | 1 |
| | Calls with Silver Point | 0.5 | 1 |
| | Discussion with team on sale process | 1.0 | 7 |
| 3/17/15 | Call with Debtors Strategy Committee | 1.0 | 1 |
| | Calls with management | 1.0 | 1 |
| | Review of retention application / conflicts | 0.5 | 10 |
| | Review of wind down budget | 0.5 | 8 |
| | Internal coordination on buyer solicitation | 0.5 | 7 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/18/15 | Calls with management | 0.5 | 1 |
| | Multiple calls / emails with Debtor professionals | 1.0 | 1 |
| | Internal coordination on buyer solicitation | 0.5 | 7 |
| | Discussions with potential buyers | 0.5 | 7 |
| 3/19/15 | Review changes to retention application | 1.5 | 10 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/20/15 | Board Meeting | 1.5 | 1 |
| | Multiple calls / emails with Debtor professionals | 1.0 | 1 |
| | Calls with management re: business performance | 0.5 | 2 |
| | Calls with DIP Lenders | 1.0 | 1 |
| | Discussion with team on sale process | 1.0 | 7 |
| 3/21/15 | Internal coordination re: presentation on business operations | 1.0 | 3 |
| 3/23/15 | Update call with Debtor professionals | 0.5 | 1 |
| | Calls with potential buyers | 2.5 | 7 |
| | Discussion on status of NDAs | 1.0 | 7 |
| | Review marketing materials | 1.5 | 7 |
| 3/24/15 | Call with strategy committee and Debtor professionals | 1.0 | 1 |
| | Calls with Debtor professionals | 0.5 | 1 |
| | Call with DIP Lenders | 1.0 | 7 |
| | Calls / emails with potential buyers | 1.5 | 7 |
| 3/25/15 | Calls with Debtor professionals on APA / sale motion | 1.5 | 1 |
| | Calls with management | 0.5 | 1 |
| | Calls with potential buyers | 1.0 | 7 |

## Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 3/26/15 | Call with UCC advisors | 1.0 | 1 |
| | Calls re: diligence process with counsel | 1.5 | 7 |
| | Internal discussions re: diligence process | 1.5 | 7 |
| | Calls / emails with advisors on proposed changes to Wind Down and DIP | 1.5 | 8 |
| 3/27/15 | Board Meeting | 1.0 | 1 |
| | Multiple calls w/ Debtor professionals | 2.0 | 4 |
| | Calls on Second Day hearings / objections | 1.0 | 4 |
| | Calls with CRO re: various issues | 1.5 | 1 |
| 3/28/15 | Call with Debtor professionals on litigation | 1.5 | 4 |
| | Internal discussions re: discovery request and process | 1.0 | 4 |
| 3/29/15 | Discussions with Debtor professionals on document discovery | 2.0 | 4 |
| | Call with Silver Point advisors | 0.5 | 1 |
| 3/30/15 | Internal discussions re: sale process | 1.0 | 7 |
| | Calls with potential buyers | 0.5 | 1 |
| | Emails with CRO on various issues | 1.0 | 1 |
| 3/31/15 | Travel to Dayton | 4.0 | 12 |
| | Meeting with potential buyer | 4.0 | 7 |
| | Travel back from Dayton | 3.0 | 12 |
| **Total** | | **79.0** | |

## Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 4/1/15 | Call with Debtors Strategy Committee | 1.0 | 1 |
| | Calls / emails re: depositions | 1.5 | 4 |
| | Review of emails for production | 2.0 | 4 |
| | Internal discussion of document production | 1.0 | 4 |
| | Final review of investor materials | 0.5 | 7 |
| 4/2/15 | Call with UCC advisors on sale process update | 0.5 | 1 |
| | Call with Debtor professionals re: MIP and case administration | 1.0 | 1 |
| | Meeting with Debtor professionals | 1.0 | 1 |
| | Discussions with potential buyer advisors | 1.0 | 7 |
| 4/3/15 | Call with Board of Directors | 0.5 | 1 |
| | Emails / calls re: retention | 0.5 | 10 |
| | Calls / emails re: NDAs with counsel | 1.0 | 7 |
| | Review of ducuments for production | 2.0 | 4 |
| 4/4/15 | Call with Debtor professionals re: DIP and other items | 1.5 | 8 |
| | Call with counsel re: depositions | 2.5 | 4 |
| | Call with potential buyers' professionals | 1.5 | 7 |
| 4/6/15 | Calls / emails re: NDAs | 1.5 | 7 |
| | Call with UCC advisors on sale process update | 0.5 | 1 |
| | Deposition prep | 4.0 | 4 |
| 4/7/15 | Deposition prep | 3.5 | 4 |
| | Calls / emails re: NDAs | 1.0 | 7 |
| | Calls / emails with potential buyer re: diligence | 1.0 | 7 |
| 4/8/15 | Deposition | 4.0 | 4 |
| | Internal discussion of DIP objection | 0.5 | 8 |
| | Review deposition transcript | 0.5 | 4 |
| 4/9/15 | Call with UCC advisors on sale process update | 0.5 | 1 |
| 4/10/15 | Board call | 1.0 | 1 |
| | Review of buyer contact log | 1.0 | 7 |
| | Calls with potential buyers | 1.5 | 7 |
| 4/12/15 | Travel to Delaware | 4.0 | 12 |
| | Meeting with Debtors advisors to prep for court testimony | 2.0 | 4 |
| | Prep for court testimony | 2.5 | 4 |
| 4/13/15 | Prepare for testimony | 3.0 | 4 |
| | Attend court hearings | 6.0 | 4 |
| | Travel back from Delaware | 4.0 | 12 |
| 4/14/15 | Update call with ABL DIP Lenders and counsel | 1.0 | 1 |
| | Multiple calls with Debtor professionals | 1.5 | 1 |
| 4/15/15 | Multiple calls with Debtor professionals | 1.5 | 1 |
| | Calls with potential buyers | 0.5 | 7 |
| 4/16/15 | Calls re: sale procedures | 1.0 | 7 |
| | Calls re: NDA markups | 0.5 | 7 |
| 4/17/15 | Board Call | 1.5 | 1 |
| | Calls with potential buyers re: diligence and NDAs | 1.0 | 7 |
| | Internal discussions with team on buyer progress | 0.5 | 7 |

### Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 4/20/15 | Call with counsel / buyer re: enviromental | 1.0 | 7 |
| | Discussion of KEIP motion with counsel | 0.5 | 11 |
| | Multiple calls with Debtor professionals | 1.5 | 1 |
| 4/22/15 | Travel to Dayton | 3.0 | 12 |
| | Meeting with UCC advisors | 4.0 | 1 |
| | Review of DIP | 0.5 | 8 |
| 4/23/15 | Call with Strategic Committee | 0.5 | 1 |
| | Travel back from Dayton | 4.0 | 12 |
| 4/24/15 | Calls with potential buyers | 1.0 | 7 |
| | Review of estimated purchase price | 1.0 | 7 |
| | Calls / emails with Debtor professionals | 1.5 | 1 |
| 4/27/15 | Conference call with Debtor professionals re: claims | 1.0 | 1 |
| | Calls re: analysis of estimated purchase price | 1.0 | 7 |
| 4/28/15 | Calls with potential buyers re process | 1.0 | 7 |
| | Review of diligence information | 1.5 | 7 |
| 4/29/15 | Calls with potential buyers re diligence | 1.0 | 7 |
| | Call with Debtor professionals re: claims | 1.5 | 1 |
| | Calls with buyers on diligence items | 4.5 | 7 |
| 4/30/15 | Emails / calls with Debtor professionals | 1.5 | 1 |
| | Calls with potential buyers re: process | 1.0 | 7 |
| | Update call with UCC | 0.5 | 1 |
| **Total** | | **103.0** | |

**Andrew Torgove - Managing Director**

| Date | Description of Work | Hours | Category |
|------|-------------------|-------|----------|
| 5/1/15 | Weekly Board of Directors call | 1.0 | 1 |
| | Discussions with advisors | 1.5 | 1 |
| 5/3/15 | Status call with Lazard team | 0.5 | 1 |
| 5/4/15 | Travel to Dayton | 4.5 | 12 |
| | Meetings with management team and McKinsey | 6.0 | 7 |
| | Calls / meetings with Gibson Dunn | 2.0 | 1 |
| 5/5/15 | Meetings with potential buyers | 5.0 | 7 |
| | Travel back from Dayton | 5.0 | 12 |
| | Prepare for and attend call with Silver Point and advisors | 3.5 | 1 |
| 5/6/15 | Review presentation on projected Estimated Consideration | 1.0 | 9 |
| 5/7/15 | Calls with finance team and McKinsey | 1.0 | 9 |
| | Discussions of DIP with potential buyers and impact on purchase price | 1.5 | 8 |
| | Update call with UCC | 1.0 | 1 |
| 5/8/15 | Weekly Board of Directors call | 1.0 | 1 |
| | Emails / calls with Gibson Dunn and McKinsey and internal team | 1.0 | 1 |
| 5/9/15 | Emails / calls with Gibson Dunn and McKinsey and internal team | 0.5 | 1 |
| 5/10/15 | Review changes to stalking horse APA and Wind Down with Gibson Dunn and internal team | 2.0 | 7 |
| 5/11/15 | Emails / calls with Gibson Dunn and McKinsey and internal team | 2.0 | 1 |
| | Review internal presentation on Purchase Price and Wind Down budget | 1.0 | 9 |
| 5/12/15 | All hands calls / emails on purchase price and APA | 1.5 | 1 |
| | Emails / calls with Gibson Dunn and McKinsey and internal team | 1.5 | 1 |
| | Discussions with stalking horse advisors | 0.5 | 7 |
| | Update call with UCC | 0.5 | 1 |
| 5/13/15 | Discussions with Silver Point re: APA and price | 1.5 | 1 |
| | Discussions of projected assumed liabilities with internal team | 1.0 | 1 |
| 5/14/15 | Call with Debtor professionals re: APA amendment | 1.0 | 1 |
| | Status update call with McKinsey, Gibson and internal team | 0.5 | 1 |
| | Discussions with interested parties | 0.5 | 7 |
| 5/15/15 | Review of Stalking Horse amendment to APA | 2.0 | 7 |
| | Discussions with interested parties | 1.5 | 7 |
| | Internal status updates with team | 0.5 | 1 |
| 5/17/15 | Emails / calls with McKinsey on DIP and estimated claims | 2.0 | 1 |
| | Review of presentation on Estimated Consideration | 1.0 | 1 |
| 5/18/15 | Call with McKinsey and Gibson Dunn on APA | 1.0 | 1 |
| | Review / discussion of presentation on Estimated Consideration with internal team | 1.5 | 7 |
| 5/19/15 | Discussion of Estimated Consideration calculation | 0.5 | 7 |
| | Calls / emails with McKinsey | 1.5 | 1 |
| 5/20/15 | Calls / emails with McKinsey and Gibson | 1.0 | 1 |
| | Calls with potential buyers | 2.5 | 7 |
| | Review Estimated Consideration | 0.5 | 7 |

**Andrew Torgove - Managing Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| | Review of standing motion | 1.5 | 4 |
| 5/21/15 | Calls with potential buyers re Estimated Consideration | 3.0 | 7 |
| | Update call with Jefferies | 0.5 | 1 |
| | Calls with Silver Point | 1.5 | 7 |
| | Review of Asset Purchase Agreement | 1.0 | 7 |
| 5/22/15 | Prepare for and attend Board call | 1.5 | 1 |
| | Review DIP model with potential buyers | 1.0 | 8 |
| | Internal status update | 0.5 | 1 |
| 5/26/15 | Calls / emails with Gibson and McKinsey on APA | 1.0 | 7 |
| | Call with Skadden / SP on on APA amendment | 3.0 | 7 |
| | Calls with management re: various issues | 1.0 | 1 |
| 5/27/15 | Discussion of 503(b)(9) claims wit hMcKinsey | 1.0 | 9 |
| | Discussions with potential buyers on diligence, purhcase price etc. | 1.0 | 7 |
| | Calls / emails with McKinsey | 0.5 | 7 |
| 5/28/15 | Calls with Gibson and McKinsey | 1.0 | 1 |
| | Calls with potential buyers | 1.5 | 7 |
| 5/29/15 | Calls with Gibson and management on HSR filing | 1.0 | 1 |
| | Call with UCC | 0.5 | 1 |
| | Calls with Silver Point and Skadden | 1.5 | 1 |
| | Prepare for and attend Board of Directors call | 1.0 | 1 |
| 5/30/15 | Calls with professionals | 2.5 | 1 |
| | Internal call re: various updates | 0.5 | 1 |
| | **Total** | **92.5** | |

## Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/1/15 | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7 |
| | Multiple calls with Debtor professionals | 2.5 | 1 |
| | Review of Asset Purchase Agreement provisions | 1.5 | 7 |
| 6/2/15 | Multiple calls with Debtor professionals and management team | 3.5 | 7 |
| | Review of potential amendment to Asset Purchase Agreement | 1.0 | 7 |
| | Calls with Silver Point | 0.5 | 7 |
| | Calls with potential buyers | 2.0 | 7 |
| 6/3/15 | Call with Debtor professionals re: estimated purchase price | 0.5 | 1 |
| | Multiple calls / emails / review of APA with Gibson and Silver Point | 5.0 | 7 |
| | Calls with potential buyers | 0.5 | 7 |
| 6/4/15 | Multiple calls / emails / review of APA with Gibson and Silver Point | 3.5 | 7 |
| | Calls with management and McKinsey | 1.0 | 1 |
| | Review of post petition liabilities and estimated purchase price | 1.5 | 7 |
| | Calls with UCC and potential buyers | 2.0 | 7 |
| 6/5/15 | Update calls with Board and professionals | 2.0 | 1 |
| | Call with potential buyers on asset purchase agreement | 1.5 | 7 |
| | Call with McKinsey on claims estimates | 0.5 | 1 |
| 6/6/15 | Multiple calls on estimated purchase price | 1.0 | 1 |
| 6/7/15 | Internal discussion on estimated purchase price | 1.0 | 1 |
| 6/8/15 | Travel to / from Delaware | 6.0 | 12 |
| | Standing motion hearing | 4.0 | 4 |
| | Meeting with potential bidder | 2.5 | 7 |
| | Discussions with Silver Point | 2.0 | 1 |
| 6/9/15 | Multiple calls / emails with Gibson, McKinsey and SilverPoint on sale process, APA and amendment | 5.0 | 1 |
| | Update call with UCC professionals | 1.0 | 7 |
| 6/10/15 | Calls with buyers and Gibson on APA | 5.0 | 7 |
| | Call with employees and professionals re: employee benefits | 1.0 | 1 |
| 6/11/15 | Multiple calls with Debtor professionals and review of APA | 6.0 | 1 |
| 6/12/15 | Call with Board of Directors | 1.5 | 1 |
| | Multiple calls with Debtor professionals and bidders on APA issues | 5.0 | 1 |
| | Calls / emails with DIP Lenders and UCC | 1.5 | 1 |
| | Review of Wind Down budget and auction model | 0.5 | 2 |
| 6/13/15 | Internal calls and calls / emails with Gibson Dunn | 2.5 | 1 |
| 6/14/15 | Internal calls and calls / emails with Gibson Dunn | 3.0 | 1 |
| 6/15/15 | Auction | 15.0 | 7 |
| 6/16/15 | Board calls | 2.0 | 1 |
| | Discussions with Taylor and Silver Point | 5.0 | 7 |
| | Update calls with Gibson Dunn | 3.0 | 1 |
| | Review sale declaration | 0.5 | 4 |
| 6/17/15 | Travel to/from Delaware | 3.5 | 12 |
| | Attend sale hearing | 2.5 | 4 |

### Andrew Torgove - Managing Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| | Negotiation of settlement between UCC and SilverPoint | 9.0 | 1 |
| 6/18/15 | Calls with Committee, Silverpoint and debtor professionals | 5.0 | 1 |
| | Review of closing documents | 1.5 | 7 |
| 6/19/15 | Calls with Committee, Debtor professionals | 2.0 | 1 |
| 6/23/15 | Calls with Taylor advisors re: transition | 1.0 | 1 |
| 6/26/15 | Board call | 1.0 | 1 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9 |
| **Total** | | **131.5** | |

**Andrew Torgove - Managing Director**

| Date | Description of Work | Hours | Category |
|------|--------------------|------:|:--------:|
| 7/1/15 | Call with advisors | 2.0 | 1 |
| 7/8/15 | Meeting with Taylor in Minneapolis | 8.0 | 7 |
| 7/9/15 | Meeting with Taylor in Minneapolis | 10.0 | 7 |
| 7/10/15 | Board call | 1.0 | 1 |
| 7/21/15 | Call with Taylor on customer liabilities | 2.0 | 7 |
| 7/24/15 | Board call | 1.0 | 1 |
| 7/28/15 | Board call | 1.0 | 1 |
| 7/29/15 | Call with Debtors professionals | 1.5 | 1 |
| 7/30/15 | Meetings with advisors and Taylor re: closing | 6.5 | 1 |
| 7/31/15 | Board call | 1.0 | 1 |
| **Total** | | **34.0** | |

### Dermott O'Flanagan - Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 3/12/15 | Calls / emails with Debtor professionals re: filing | 0.5 | 1 |
| | Review of First Day Motions / Declarations | 1.5 | 4 |
| | Travel to court hearings | 1.5 | 12 |
| | Meeting with Debtor professionals | 1.0 | 1 |
| | Discussions with potential buyer advisors | 1.0 | 7 |
| | Internal discussions / emails re: marketing materials | 0.5 | 7 |
| 3/13/15 | Prepare for and attend First Day Hearings | 4.5 | 4 |
| | Calls / emails with advisors to potential buyers | 1.0 | 7 |
| | Travel back from court hearings | 1.5 | 12 |
| 3/14/15 | Emails with Debtor professionals re: sale process and diligence | 1.0 | 7 |
| | Draft / Review marketing materials | 5.5 | 7 |
| | Review of retention application | 1.0 | 10 |
| 3/15/15 | Discussion with industry bankers re: potential buyers | 1.5 | 7 |
| | Draft / Finalize Teaser and buyer contact list | 3.0 | 7 |
| | Draft / Review marketing materials | 4.0 | 7 |
| 3/16/15 | Draft / Review marketing materials | 2.5 | 7 |
| | Review of retention application | 1.0 | 10 |
| | Scheduling of diligence meetings | 1.5 | 7 |
| 3/17/15 | Management of buyer process | 2.0 | 7 |
| | Discussions with buyer advisors | 1.0 | 7 |
| | Prepare for and call with Debtors Strategy Committee | 1.0 | 1 |
| | Calls with management | 1.0 | 1 |
| | Call re: executory contracts | 1.5 | 2 |
| | Review of retention application / conflicts | 0.5 | 10 |
| | Internal coordination on buyer solicitation | 1.0 | 7 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/18/15 | Calls with management | 0.5 | 1 |
| | Review of retention application / conflicts | 0.5 | 10 |
| | Diligence coordination with buyers | 2.0 | 7 |
| | Draft / Review marketing materials | 2.5 | 7 |
| | Calls with potential buyers | 2.5 | 7 |
| | Internal coordination on buyer solicitation | 0.5 | 7 |
| 3/19/15 | Travel to Dayton for buyer diligence | 2.5 | 12 |
| | Management of data room, meetings with management team, prepare for diligence | 6.0 | 1 |
| | Review changes to retention application | 1.0 | 10 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/20/15 | Board Meeting | 1.5 | 1 |
| | On-site diligence with potential buyer | 5.0 | 7 |
| | Buyer calls and distribution of teaser | 2.5 | 7 |
| | Travel back from Dayton | 6.0 | 12 |
| 3/21/15 | Draft presentation for committee formation meeting | 2.0 | 3 |
| 3/22/15 | Discussion re: retention application | 2.0 | 3 |
| | Draft / Review marketing materials | 1.5 | 7 |
| 3/23/15 | Update call with Debtor professionals | 0.5 | 1 |
| | Calls / emails with potential buyers distributing teaser etc. | 3.5 | 7 |
| | Finalize retention application | 1.0 | 10 |
| | Management of data room and diligence process | 1.5 | 7 |
| | Draft / Review marketing materials | 1.0 | 7 |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 3/24/15 | Travel to Dayton | 3.5 | 12 |
| | Update call with strategy committee and Debtor professionals | 1.0 | 1 |
| | Call with DIP Lenders | 1.0 | 7 |
| | Draft / Review marketing materials | 2.0 | 7 |
| | Calls / emails with potential buyers re: diligence, NDAs and process | 3.5 | 7 |
| 3/25/15 | Emails / Calls with advisors on APA schedules and objections to sale motion | 1.0 | 1 |
| | Calls with management | 1.0 | 1 |
| | Calls / emails with advisors on proposed changes to Wind Down and DIP | 0.5 | 8 |
| | Calls / emails with potential buyers re: diligence, NDAs and process | 1.5 | 7 |
| 3/26/15 | Travel to Company | 2.5 | 12 |
| | Calls / emails with advisors on proposed changes to Wind Down and DIP | 0.5 | 8 |
| | Call with UCC advisors | 1.0 | 1 |
| | Calls / emails with potential buyers | 3.5 | 7 |
| | Calls re: diligence process with counsel | 0.5 | 7 |
| | Meetings / emails with management on diligence process | 2.0 | 7 |
| | Review of discovery request from UCC | 1.0 | 4 |
| 3/27/15 | Board Meeting | 1.0 | 1 |
| | Multiple calls w/ Debtor professionals re: discovery request | 2.0 | 4 |
| | Review of marketing materials | 2.0 | 7 |
| | Calls / emails with potential buyers | 1.5 | 7 |
| | Call re: prep for Second Day hearing | 0.5 | 4 |
| | Travel back from Company | 2.5 | 12 |
| 3/28/15 | Call with Debtor professionals re: discovery request | 1.0 | 4 |
| | Production of documents requested in discovery | 3.5 | 4 |
| | Internal discussions re: discovery request and process | 0.5 | 4 |
| 3/29/15 | Multiple calls / emails with Debtor professionals re: discovery request | 1.5 | 4 |
| | Call with Silver Point advisors | 0.5 | 1 |
| | Production of documents requested in discovery | 1.5 | 4 |
| 3/30/15 | Travel to Company | 2.5 | 12 |
| | Calls / emails with potential buyers re: diligence, NDAs and process | 4.5 | 7 |
| | Meetings with management re: diligence process / requests | 2.0 | 7 |
| 3/31/15 | Meeting with potential buyer | 4.0 | 7 |
| | Travel back from Company | 2.5 | 12 |
| **Total** | | **143.5** | |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 4/1/15 | Call with Debtors Strategy Committee | 1.0 | 1 |
| | Calls / emails re: depositions | 1.5 | 4 |
| | Calls / emails with potential buyers re: diligence, NDAs and process | 3.0 | 7 |
| | Review of preliminary draft business plan | 1.0 | 9 |
| | Production of documents requested in discovery | 1.0 | 4 |
| | Final review and distribution of investor materials | 1.5 | 7 |
| 4/2/15 | Call with UCC advisors on sale process update | 1.0 | 1 |
| | Call with Debtor professionals re: MIP and case administration | 1.0 | 1 |
| | Calls / diligence with potential buyers | 3.5 | 7 |
| | Meeting with Debtor professionals | 1.0 | 1 |
| | Discussions with potential buyer advisors | 1.0 | 7 |
| | Internal discussions / emails re: marketing materials | 0.5 | 7 |
| 4/3/15 | Call with Board of Directors | 0.5 | 1 |
| | Emails / calls re: retention | 1.0 | 10 |
| | Calls / emails re: diligence with potential buyers / Company | 2.0 | 7 |
| | Calls / emails re: NDAs with counsel | 0.5 | 7 |
| | Production of documents requested in discovery | 1.0 | 4 |
| 4/4/15 | Call with Debtor professionals re: DIP and other items | 1.5 | 8 |
| | Call with potential buyer | 0.5 | 7 |
| | Call with counsel re: depositions | 1.5 | 4 |
| 4/5/15 | Calls / Emails with potential buyer re: diligence | 1.0 | 7 |
| 4/6/15 | Calls / emails with potential buyer re: diligence | 1.5 | 7 |
| | Calls / emails re: NDAs | 1.5 | 7 |
| | Call with UCC advisors on sale process update | 0.5 | 1 |
| | Research / prep for Torgove deposition | 2.5 | 4 |
| | Calls / emails re: diligence with potential buyers / Company | 2.0 | 7 |
| 4/7/15 | Travel to Dayton for Buyer diligence | 2.5 | 12 |
| | Meetings with Buyer advisors | 4.0 | 7 |
| | Call re: deposition prep with Torgove | 1.0 | 4 |
| | Calls / emails re: NDAs | 1.0 | 7 |
| | Calls / emails with potential buyer re: diligence | 3.5 | 7 |
| 4/8/15 | Internal coordination on due diligence | 1.0 | 7 |
| | Calls / emails / meetings re: diligence requests | 2.0 | 7 |
| | Calls with potential buyers | 1.0 | 7 |
| | Review DIP objections | 1.0 | 8 |
| | Review Torgove deposition | 1.5 | 4 |
| | Calls / emails re: NDAs | 1.0 | 7 |
| | Calls / emails re: sale procedures | 0.5 | 1 |
| 4/9/15 | Meeting with potential buyer | 2.0 | 7 |
| | Travel back from Dayton | 2.5 | 12 |
| | Calls / emails with potential buyers | 1.5 | 7 |
| | Calls / emails / meetings re: diligence requests | 1.5 | 7 |
| | Call and internal discussion on retention | 0.5 | 10 |
| 4/10/15 | Board call | 1.0 | 1 |
| | Calls re: diligence | 4.0 | 7 |
| | Calls / emails with potential buyers | 1.0 | 7 |
| | Calls / emails / meetings re: diligence requests | 1.5 | 7 |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 4/12/15 | Travel to Delaware | 2.0 | 12 |
| | Calls / emails to potential buyers | 1.0 | 7 |
| | Meeting with Debtors advisors to prep for court testimony | 4.0 | 4 |
| | Research / prep for court testimony | 1.5 | 4 |
| 4/13/15 | Prepare for court hearings | 2.0 | 4 |
| | Attend court hearings | 6.0 | 4 |
| | Call with potential buyer re: diligence | 1.5 | 7 |
| | Travel back from Delaware | 2.0 | 12 |
| 4/14/15 | Update call with ABL DIP Lenders and counsel | 1.0 | 1 |
| | Travel for meeting with potential buyer | 3.5 | 12 |
| | Calls / emails with potential buyers | 1.0 | 7 |
| 4/15/15 | Meeting with potential buyer | 5.0 | 7 |
| | Travel back from meetings | 3.0 | 12 |
| | Calls / emails with potential buyers re: process | 1.5 | 7 |
| | Calls / emails re: diligence | 1.0 | 7 |
| 4/16/15 | Review of long term business plan | 1.5 | 9 |
| | Calls / emails re: sale procedures | 1.0 | 7 |
| | Calls / emails / meetings re: diligence requests | 2.0 | 7 |
| | Calls / emails re: NDA markups | 0.5 | 7 |
| 4/17/15 | Update call with board | 1.5 | 1 |
| | Calls with potential buyers re: diligence and NDAs | 1.0 | 7 |
| | Review of diligence information for buyers | 1.5 | 7 |
| | Coordination of diligence visits | 1.0 | 7 |
| 4/20/15 | Call with counsel / buyer re: enviromental | 1.0 | 7 |
| | Review of KEIP motion | 1.0 | 11 |
| | Calls with potential buyers | 1.0 | 7 |
| | Call with Debtor professionals | 0.5 | 1 |
| | Review of executory contract schedule with potential buyers | 1.5 | 7 |
| 4/21/15 | Calls / emails with buyers re: diligence | 1.5 | 7 |
| 4/22/15 | Calls / emails with buyers re: diligence | 1.5 | 7 |
| | Review of business plan with Debtor advisors | 1.5 | 9 |
| 4/23/15 | Call with Strategic Committee | 0.5 | 1 |
| | Calls / emails with buyers on diligence request lists | 1.5 | 7 |
| | Coordination of diligence requests with management | 1.0 | 7 |
| | Review of DIP | 0.5 | 8 |
| 4/24/15 | Conference call Debtor professionals | 1.0 | 1 |
| | Calls / emails re: buyer NDAs | 0.5 | 7 |
| | Calls re: business plan | 1.0 | 9 |
| | Calls with potential buyers re: process and diligence | 2.0 | 7 |
| | Review of diligence requests | 0.5 | 7 |
| | Discussions with potential buyers re: contract review process | 1.5 | 7 |
| | Analysis re: estimated purchase price | 1.0 | 7 |
| | Preparation of fee application | 0.5 | 10 |
| 4/27/15 | Conference call with Debtor professionals re: claims | 1.0 | 1 |
| | Calls with potential buyers on contract review process | 1.0 | 7 |
| | Review of diligence information | 1.5 | 7 |
| | Calls re: analysis of estimated purchase price | 0.5 | 7 |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 4/28/15 | Calls with potential buyers re process | 1.0 | 7 |
| | Review of diligence information | 1.5 | 7 |
| 4/29/15 | Calls with potential buyers re diligence | 1.0 | 7 |
| | Call with Debtor professionals re: claims | 1.5 | 1 |
| | Calls with buyers on diligence items | 4.5 | 7 |
| 4/30/15 | Update call with UCC | 0.5 | 1 |
| | Call with Debtor professionals | 1.0 | 1 |
| | Calls with management on business update | 1.0 | 1 |
| | Calls with potential buyers re: process | 1.0 | 7 |
| | Calls / emails with potential buyers re: business plan | 1.5 | 7 |
| | Calls / emails with potential buyers re: contract review process | 0.5 | 7 |
| **Total** | | **156.0** | |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 5/1/15 | Board Call | 1.0 | 1 |
| | Call with potential buyers | 2.0 | 7 |
| | Diligence calls on business plan | 1.0 | 9 |
| | Coordination of buyer diligence items | 1.0 | 7 |
| 5/3/15 | Multiple calls / emails with internal team re business diligence | 1.5 | 1 |
| 5/4/15 | Travel to Dayton | 3.0 | 12 |
| | Diligence calls / meetings with management team | 6.0 | 7 |
| | Calls / meetings with Debtor advisors | 1.5 | 1 |
| 5/5/15 | Meetings with potential buyers | 5.0 | 7 |
| | Travel back from Dayton | 3.0 | 12 |
| | Calls with Silver Point | 1.0 | 1 |
| 5/6/15 | Calls with Debtor professionals and buyers re: environmental | 1.0 | 7 |
| | Discussions with potential buyers | 1.5 | 7 |
| | Review of cure schedule / distribution to potential buyers | 1.0 | 3 |
| | Analysis of projected purchase price | 1.0 | 9 |
| 5/7/15 | Calls with management team re: projected liabilities | 1.0 | 9 |
| | Discussions with potential buyers re: DIP | 1.5 | 8 |
| | Calls with potential buyers re: diligence | 2.0 | 7 |
| | Update call with UCC | 1.0 | 1 |
| 5/8/15 | Board call | 1.0 | 1 |
| | Call with Debtor professionals on open issues | 1.0 | 1 |
| | Discussions with potential buyers on diligence requests | 2.5 | 7 |
| | Review of updated DIP Budget | 0.5 | 4 |
| 5/9/15 | Emails with Debtors advisors re: various issues | 0.5 | 1 |
| 5/10/15 | Review of proposed changes to stalking horse APA | 1.0 | 7 |
| 5/11/15 | Diligence discussions with potential buyers | 1.5 | 7 |
| | Multiple calls / emails with professionals | 2.0 | 1 |
| | Call with Debtor professionals to discuss APA changes and wind down budget | 1.5 | 1 |
| | Draft presentation on Purchase Price and Wind Down budget | 1.5 | 9 |
| | Review / distribution of cure schedule to potential buyers | 0.5 | 7 |
| 5/12/15 | Call with stalking horse on purchase price and APA amendment | 1.5 | 1 |
| | Diligence with prospective buyers | 3.0 | 7 |
| | Internal discussions / emails with Debtor professionals | 1.5 | 1 |
| | Review of potential employee liabilities to be assumed | 1.5 | 7 |
| | Discussions with stalking horse advisors re: business diligence | 1.0 | 7 |
| | Update call with UCC | 0.5 | 1 |
| 5/13/15 | Diligence for potential buyers | 2.0 | 7 |
| | Discussions with stalking horse re: APA and price | 1.5 | 1 |
| | Discussions re: assumed liabilities | 1.0 | 1 |
| | Call with stalking horse on business diligence | 1.0 | 7 |
| 5/14/15 | Diligence with potential buyer | 2.0 | 7 |
| | Call with Debtor professionals re: APA amendment | 1.0 | 1 |
| | Status update call with Debtor professionals | 0.5 | 1 |
| | Discussions with potential buyers | 1.0 | 7 |
| | Preparation of monthly fee application | 1.0 | 10 |

## Dermott O'Flanagan - Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 5/15/15 | Diligence with potential buyer | 1.5 | 7 |
| | Calls with potential buyers | 1.5 | 7 |
| | Review of potential amendment to APA | 1.0 | 7 |
| | Discussions with management on open diligence | 1.0 | 7 |
| 5/17/15 | Internal review and discussion of Estimated Consideration | 1.5 | 1 |
| | Discussions / emails with Debtors professionals on DIP and claims | 1.0 | 1 |
| 5/18/15 | Calls with management team re: diligence matters | 1.0 | 7 |
| | Review of DIP Budget and professional fees w/ advisors | 0.5 | 8 |
| | Call with Debtor professionals re: APA amendment | 1.0 | 1 |
| | Review of projected liabilities to be assumed | 1.5 | 9 |
| 5/19/15 | Review of standing motion | 0.5 | 4 |
| | Calls with management team re: diligence matters | 1.5 | 7 |
| | Prepare / revise presentation on Estimated Consideration | 2.0 | 7 |
| | Calls / emails with Debtor professionals | 1.0 | 1 |
| 5/20/15 | Call with Debtor professionals re: various issues | 1.0 | 1 |
| | Calls with potential buyers | 2.5 | 7 |
| | Finalize presentation on Estimated Consideration | 1.0 | 7 |
| | Diligence for potential buyers | 1.5 | 7 |
| 5/21/15 | Calls with potential buyers re Estimated Consideration | 2.0 | 7 |
| | Call with Silver Point re: APA | 0.5 | 7 |
| | Prepare / Review wind down budget | 1.5 | 9 |
| | Update call with Jefferies | 0.5 | 1 |
| | Call with stalking horse advisors re: diligence | 1.0 | 1 |
| | Review of revised Asset Purchase Agreement | 2.0 | 7 |
| 5/22/15 | Board call | 1.0 | 1 |
| | Review DIP model with potential buyers | 1.5 | 8 |
| | Discussions with potential buyers re: diligence | 1.0 | 7 |
| | Discussions with management re: diligence | 1.0 | 1 |
| 5/26/15 | Review of DIP model for Estimated Consideration | 0.5 | 7 |
| | Calls / emails with Debtor professionals on Asset Purchase Agreement amendment | 1.0 | 7 |
| | Call with Stalking Horse professionals on Asset Purchase Agreement amendment | 2.5 | 7 |
| | Discussions with potential buyers re: diligence | 1.5 | 7 |
| | Discussions with management re: diligence | 0.5 | 1 |
| 5/27/15 | Discussion of 503(b)(9) claims | 0.5 | 9 |
| | Calls with management re: leases, unions, other diligence | 1.5 | 9 |
| | Discussions with potential buyers on diligence, purchase price etc. | 1.5 | 7 |
| 5/28/15 | Call with potential buyer re: union contracts | 1.0 | 7 |
| | Calls with Debtor professionals re: various issues | 1.0 | 1 |
| | Call re: benefits | 0.5 | 7 |
| | Diligence calls with management | 2.0 | 7 |
| | Calls with potential buyers re: interest level | 1.0 | 7 |
| 5/29/15 | Calls with Debtor professionals re: HSR | 1.0 | 1 |
| | Call with UCC | 0.5 | 1 |
| | Call with Silver Point | 1.0 | 1 |
| | Calls with potential buyers | 1.0 | 7 |
| | Call with Board of Directors | 1.0 | 1 |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 5/30/15 | Internal call re: various updates | 0.5 | 1 |
| | Call re: APA amendment | 0.5 | 1 |
| 5/31/15 | Review of APA Amendment | 0.5 | 7 |
| | Call with potential buyer | 0.5 | 7 |
| | **Total** | **125.5** | |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/1/15 | Preparation of April fee application | 3.0 | 10 |
| | Calls / emails with potential buyers | 1.0 | 7 |
| | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7 |
| | Multiple calls with Debtor professionals | 2.0 | 1 |
| | Calls with management team | 1.0 | 9 |
| 6/2/15 | Multiple calls with Debtor professionals and management team | 1.5 | 7 |
| | Review of potential amendment to Asset Purchase Agreement | 1.0 | 7 |
| | Calls with Debtor professionals on APA | 2.0 | 1 |
| | Preparation of fee application | 1.5 | 10 |
| 6/3/15 | Call with Debtor professionals re: estimated purchase price | 0.5 | 1 |
| | Calls with Debtor professionals and Silver Point on asset purchase agreement | 3.0 | 7 |
| | Review of asset purchase agreements | 1.5 | 7 |
| | Calls with potential buyers | 0.5 | 7 |
| 6/4/15 | Calls with Debtor professionals and Silver Point on asset purchase agreement | 1.5 | 7 |
| | Calls with management and Debtor advisors re: various issues | 1.0 | 1 |
| | Review of post petition liabilities and estimated purchase price | 1.5 | 7 |
| | Calls with potential buyers | 1.0 | 7 |
| | Call with UCC re sale process | 0.5 | 1 |
| | Discussion / Review of draft asset purchase agreements | 1.0 | 7 |
| 6/5/15 | Update call with Board | 1.0 | 1 |
| | Call with management on communications plan | 1.0 | 9 |
| | Call with potential buyers on asset purchase agreement | 1.5 | 7 |
| | Follow up calls with board and professionals | 1.0 | 1 |
| | Draft presentation on estimated purchase price | 0.5 | 7 |
| | Calls with Debtor professionals on claims estimates | 0.5 | 1 |
| 6/6/15 | Calls with Debtor professionals and internal team on estimated purchase price | 1.0 | 1 |
| | Draft presentation on estimated purchase price | 1.0 | 9 |
| 6/7/15 | Conference call on estimated purchase price | 1.0 | 1 |
| | Distributed presentation re: bid | 0.5 | 7 |
| 6/8/15 | Travel to Delaware | 1.5 | 12 |
| | Court hearing | 4.0 | 4 |
| | Meeting with potential bidder re: asset purchase agreement | 2.5 | 7 |
| | Discussions with Silver Point re: court decision | 1.0 | 1 |
| | Travel back from Delaware | 1.5 | 12 |
| 6/9/15 | Calls with Debtor professionals re: sale process, APA and amendment | 2.0 | 1 |
| | Call with potential buyer on DIP | 1.0 | 7 |
| | Call with Silver Point re: APA and sale procedures | 2.5 | 1 |
| | Call with potential buyers on legal diligence | 0.5 | 7 |
| | Update call with UCC professionals | 1.0 | 7 |
| 6/10/15 | Call with employees and professionals re: employee benefits | 1.0 | 1 |
| | Multiple calls with Debtor professionals re: APA | 3.0 | 7 |
| | Multiple calls with potential buyers re: asset purchase agreement | 1.5 | 7 |
| | Discussion of post sale communications plan | 1.0 | 1 |
| 6/11/15 | Multiple calls with Debtor professionals re: APA | 4.0 | 1 |
| | Review of asset purchase agreements | 2.5 | 7 |
| | Prepare presentation comparing bids | 2.0 | 7 |

**Dermott O'Flanagan - Director**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/12/15 | Multiple calls with Debtor professionals re: APA | 2.5 | 1 |
| | Call with Board of Directors | 1.5 | 1 |
| | Multiple calls with bidder re: key issues in APA | 2.0 | 7 |
| | Prepare analysis of wind down budget | 1.0 | 2 |
| | Calls with DIP Lenders and UCC | 1.5 | 1 |
| 6/13/15 | Internal calls and calls with Debtor professionals | 2.5 | 1 |
| 6/14/15 | Internal calls and calls with Debtor professionals | 3.0 | 1 |
| | Prepare and review bid model | 1.5 | 7 |
| 6/15/15 | Attend auction | 15.0 | 7 |
| 6/16/15 | Board calls | 2.0 | 1 |
| | Negotiation with buyers | 3.0 | 7 |
| | Calls with Debtor professionals | 3.5 | 1 |
| | Prepare and review sale declaration | 1.5 | 4 |
| 6/17/15 | Travel to/from Delaware | 3.0 | 12 |
| | Attend sale hearing | 2.5 | 4 |
| | Meetings / calls on settlement, updates with Board etc. | 9.0 | 1 |
| 6/18/15 | Prepare monthly fee application | 3.0 | 10 |
| | Calls / emails on settlement, asset purchase agreements | 3.0 | 1 |
| | Review of closing documents | 1.5 | 7 |
| 6/19/15 | Review of Back Up Bidder Asset Purchase Agreement changes | 0.5 | 7 |
| | Calls with all professionals re: final documents | 2.0 | 1 |
| | Calls with management team | 0.5 | 1 |
| 6/22/15 | Calls with management re: marketing materials | 0.5 | 1 |
| 6/23/15 | Calls with Taylor re: data room / contracts | 1.0 | 7 |
| | Calls with Taylor advisors re: transition | 1.0 | 1 |
| 6/24/15 | Calls / emails with Debtor professionals re: closing conditions | 0.5 | 1 |
| 6/26/15 | Board call | 1.0 | 1 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9 |
| **Total** | | **139.0** | |

### Dermott O'Flanagan - Director

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 7/1/15 | Call with advisors | 2.0 | 7 |
| 7/2/15 | Call with management and professionals on closing timeline etc. | 1.5 | 1 |
| 7/10/15 | Board call | 1.0 | 7 |
| 7/14/15 | Calls / emails with Debtors professionals | 1.0 | 1 |
| 7/21/15 | Call with Taylor on customer liabilities | 2.0 | 7 |
| 7/22/15 | Calls with debtor professionals | 1.0 | 1 |
| 7/27/15 | Calls with McKinsey on closing items | 1.5 | 1 |
| 7/28/15 | Board call | 1.0 | 7 |
| 7/31/15 | Meetings with advisors and Taylor re: closing | 5.0 | 1 |
| **Total** | | **16.0** | |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 3/13/15 | Preparing marketing materials | 2.0 | 7 |
| | Constructing financial model | 2.0 | 2 |
| | Attend First Day Hearings | 3.0 | 4 |
| | Travel back from First Day Hearings | 1.5 | 12 |
| 3/14/15 | Drafting marketing materials | 4.0 | 7 |
| | Constructing financial model | 3.0 | 2 |
| 3/15/15 | Drafting marketing materials | 6.0 | 7 |
| | Constructing financial model | 2.0 | 2 |
| 3/16/15 | Organize documents for buyer interface | 12.0 | 7 |
| 3/17/15 | Drafting Marketing Materials | 3.0 | 7 |
| | Organize documents for buyer interface | 7.0 | 7 |
| | Calls with management | 1.0 | 1 |
| | Call re: executory contracts | 1.5 | 2 |
| | Internal coordination on buyer solicitation | 1.0 | 7 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/18/15 | Drafting marketing materials and developing financial analysis | 12.0 | 7 |
| | Calls with management | 0.5 | 1 |
| | Diligence coordination with buyers | 2.0 | 7 |
| | Internal coordination on buyer solicitation | 0.5 | 7 |
| 3/19/15 | Travel | 2.5 | 12 |
| | On-site with company | 6.5 | 1 |
| | Calls re: wind down budget and DIP | 1.0 | 8 |
| 3/20/15 | Board Meeting | 1.5 | 1 |
| | On-site diligence with potential buyer | 5.0 | 7 |
| | Travel back from Dayton | 6.0 | 12 |
| 3/21/15 | Drafting marketing materials | 3.0 | 7 |
| 3/22/15 | Drafting marketing materials | 3.0 | 7 |
| 3/23/15 | Drafting marketing materials | 5.0 | 7 |
| | Update call with Debtor professionals | 0.5 | 1 |
| | Management of data room | 2.0 | 7 |
| 3/24/15 | Drafting marketing materials | 5.0 | 7 |
| | Travel | 3.0 | 12 |
| 3/25/15 | Drafting marketing materials | 5.0 | 7 |
| | Calls with management | 1.0 | 1 |
| | Calls / emails with advisors on proposed changes to Wind Down and DIP | 0.5 | 8 |
| | Calls / emails with potential buyers re: diligence, NDAs and process | 1.5 | 7 |
| 3/26/15 | Drafting marketing materials | 5.0 | 7 |
| | Management of onsite diligence with the Company | 2.0 | 7 |
| 3/27/15 | Drafting marketing materials | 5.0 | 7 |
| | Travel | 3.0 | 12 |
| 3/29/15 | Coordinating meetings and discussions | 2.0 | 7 |

**Nick Verhein - Analyst**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 3/30/15 | Travel | 3.0 | 12 |
| | Drafting marketing materials | 5.0 | 7 |
| | Meetings with management re: diligence process / requests | 2.0 | 7 |
| 3/31/15 | Drafting marketing materials | 5.0 | 7 |
| | Travel | 3.0 | 12 |
| **Total** | | **152.0** | |

## Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 4/1/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 2.0 | 7 |
| | Review of preliminary draft business plan | 1.0 | 9 |
| | Final review and distribution of investor materials | 1.5 | 7 |
| 4/2/15 | Call with UCC advisors on sale process update | 1.0 | 1 |
| | Call with Debtor professionals re: MIP and case administration | 1.0 | 1 |
| | Meeting with Debtor professionals | 1.0 | 1 |
| | Discussions with potential buyer advisors | 1.0 | 7 |
| | Internal discussions / emails re: marketing materials | 0.5 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| 4/3/15 | Coordinating meetings and discussions | 3.5 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Call with Board of Directors | 0.5 | 1 |
| 4/4/15 | Coordinating meetings and discussions | 3.0 | 7 |
| | Responding to Diligence Requests | 3.0 | 7 |
| | Constructing financial model | 3.0 | 2 |
| 4/5/15 | Coordinating meetings and discussions | 3.0 | 7 |
| | Responding to Diligence Requests | 3.5 | 7 |
| 4/6/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Constructing financial model | 3.0 | 2 |
| 4/7/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Constructing financial model | 4.0 | 2 |
| | Call re: deposition prep with Torgove | 1.0 | 4 |
| 4/8/15 | Coordinating meetings and discussions | 1.5 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Deposition of Andy Torgove | 5.0 | 4 |
| | Internal coordination on due diligence | 1.0 | 7 |
| 4/9/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Calls / emails with potential buyers | 1.5 | 7 |
| 4/10/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 4.0 | 7 |
| | Board call | 1.0 | 1 |
| 4/12/15 | Coordinating meetings and discussions | 4.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| 4/13/15 | Coordinating meetings and discussions | 3.5 | 7 |
| | Travel to and from Delaware | 4.0 | 12 |
| | Call with potential buyer | 1.5 | 7 |
| 4/14/15 | Coordinating meetings and discussions | 3.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Construct financial model | 5.0 | 2 |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 4/15/15 | Coordinating meetings and discussions | 2.5 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Financial Discussion with consultants | 2.0 | 2 |
| | Technology Discussion with consultants | 1.0 | 1 |
| 4/16/15 | Coordinating meetings and discussions | 3.5 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Follow up questions with potential buyer | 1.0 | 7 |
| | Technology Discussion with professionals | 1.0 | 7 |
| 4/17/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Calls with potential buyers re: diligence and NDAs | 1.0 | 7 |
| | Review of diligence information for buyers | 1.5 | 7 |
| 4/18/15 | Coordinating meetings and discussions | 1.0 | 7 |
| 4/19/15 | Responding to Diligence Requests | 2.0 | 7 |
| 4/20/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 2.5 | 7 |
| | Technology Discussion with consultants | 1.0 | 7 |
| | Finance Discussion with consultants | 1.0 | 2 |
| | Calls with potential buyers re: diligence and NDAs | 0.5 | 7 |
| 4/21/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Travel | 3.0 | 12 |
| 4/22/15 | Meeting with management to discuss the business | 3.0 | 1 |
| | Review of business plan with Debtor advisors | 1.5 | 9 |
| 4/23/15 | Meeting with management to discuss the business | 2.0 | 1 |
| | Travel | 3.0 | 12 |
| | Responding to Diligence Requests | 2.5 | 7 |
| 4/24/15 | Conference call Debtor professionals | 1.0 | 1 |
| | Calls re: business plan | 1.0 | 9 |
| | Calls with potential buyers re: process and diligence | 2.0 | 7 |
| | Review of diligence requests | 0.5 | 7 |
| | Discussions with potential buyers re: contract review process | 1.5 | 7 |
| | Analysis re: estimated purchase price | 1.0 | 7 |
| 4/25/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 1.0 | 7 |
| 4/27/15 | Responding to Diligence Requests | 2.0 | 7 |
| | HR Discussion with consultants | 1.0 | 1 |
| | Healthcare Discussion with consultants | 1.0 | 1 |
| 4/28/15 | Responding to Diligence Requests | 3.0 | 7 |
| | Internal call with finance team | 1.0 | 9 |
| | Diligence call with potential buyer | 1.5 | 1 |
| 4/29/15 | Responding to Diligence Requests | 2.0 | 7 |
| | Security Discussion with consultants | 1.0 | 1 |
| | Finance call with potential buyer | 2.0 | 1 |

**Nick Verhein - Analyst**

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 4/30/15 | Responding to Diligence Requests | 2.0 | 7 |
| | Coordinating meetings and discussions | 2.0 | 7 |
| | **Total** | **176.0** | |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 5/1/15 | Coordinating meetings and discussions | 5.0 | 7 |
| | Responding to Diligence Requests | 1.5 | 2 |
| 5/3/15 | Coordinating meetings and discussions | 2.0 | 7 |
| 5/4/15 | Tavel | 2.0 | 12 |
| | On site Diligence | 5.0 | 2 |
| 5/5/15 | On site Diligence | 5.0 | 7 |
| | Travel | 2.0 | 2 |
| 5/6/15 | Responding to Diligence Requests | 2.0 | 2 |
| | Diligence call re: Product Marking and Labels Support Team | 1.0 | 9 |
| 5/7/15 | Responding to Diligence Requests | 3.5 | 2 |
| | Diligence Call re: Tax Discussion | 0.5 | 9 |
| | Discussion with stalking horse bidder | 0.5 | 9 |
| | Diligence call re: IT Items - Budget related file | 0.5 | 9 |
| 5/8/15 | Responding to Diligence Requests | 2.0 | 2 |
| | Leadership Discussion with mgmt | 2.0 | 7 |
| | Diligence call with stalking horse bidder | 0.5 | 9 |
| 5/11/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | Diligence call re: Smartworks Clinical Enterprise | 2.0 | 9 |
| 5/12/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | Internal discussion with Debtor | 0.5 | 2 |
| | Discussion re: Healthcare Technology Topography | 1.0 | 9 |
| 5/13/15 | Coordinating meetings and discussions | 2.0 | 7 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | Call with Stalking horse and legal | 1.0 | 1 |
| | Discussion re: Pricing Tools | 1.0 | 2 |
| | Call with Stalking horse bidder | 1.0 | 1 |
| 5/14/15 | Coordinating meetings and discussions | 1.5 | 7 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | Calls with management and professionals | 1.0 | 1 |
| 5/15/15 | Coordinating meetings and discussions | 1.0 | 7 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | Call with professionals and potential buyers | 1.0 | 2 |
| | Discussion re: BPM/Integration Follow-up | 1.0 | 2 |
| 5/16/15 | Organizing and compiling diligence requests | 1.0 | 2 |
| 5/18/15 | Finance Call with Lender | 1.0 | 1 |
| | Responding to Diligence Requests | 2.0 | 2 |
| 5/19/15 | Follow up discussion with consultants | 1.0 | 1 |
| | Internal call with finance team at the Company | 1.0 | 1 |
| | Responding to Diligence Requests | 3.0 | 2 |
| 5/20/15 | Discussion of service offering | 1.0 | 1 |
| | Responding to Diligence Requests | 3.0 | 2 |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 5/21/15 | Follow up discussion with consultants | 1.0 | 1 |
| | Responding to Diligence Requests | 4.0 | 2 |
| 5/21/15 | Follow up discussion with consultants | 1.0 | 1 |
| | Responding to Diligence Requests | 4.0 | 2 |
| | Update Call with UCC | 0.5 | 1 |
| 5/22/15 | Internal call with Finance team | 1.0 | 1 |
| | Responding to Diligence Requests | 3.0 | 2 |
| 5/26/15 | Call with Legal teams | 2.0 | 1 |
| | Responding to Diligence Requests | 3.0 | 2 |
| 5/27/15 | Call with Legal teams | 2.0 | 1 |
| | Responding to Diligence Requests | 3.0 | 2 |
| 5/28/15 | Finanace call with potential lenders | 1.0 | 1 |
| | Diligence call with potential lenders | 2.5 | 1 |
| | Discussion re: Data Centers | 1.0 | 1 |
| | Responding to Diligence Requests | 1.0 | 2 |
| 5/29/15 | Finanace call with potential lenders | 1.0 | 1 |
| | Responding to Diligence Requests | 2.0 | 2 |
| | **Total** | **108.0** | |

**Nick Verhein - Analyst**

| Date | Description of Work | Hours | Category |
|------|--------------------|-------|----------|
| 6/1/15 | Calls / emails with potential buyers | 1.0 | 7.0 |
| | Calls / emails with Debtor and Stalking Horse professionals | 2.0 | 7.0 |
| | Multiple calls with Debtor professionals | 2.0 | 1.0 |
| | Calls with management team | 1.0 | 9.0 |
| | Responding to diligence requests | 3.0 | 2.0 |
| 6/2/15 | Responding to diligence requests | 1.0 | 2.0 |
| | Diligence with lenders and appraisers | 2.0 | 1.0 |
| | Calls with internal team | 1.0 | 2.0 |
| 6/3/15 | Responding to diligence requests | 2.0 | 2.0 |
| | Calls with internal team | 1.0 | 2.0 |
| | Calls / emails with Debtor and Stalking Horse professionals | 3.0 | 7.0 |
| 6/4/15 | Responding to diligence requests | 2.0 | 2.0 |
| | Calls with management team | 1.0 | 9.0 |
| | Call with UCC advisors on sale process update | 1.0 | 1.0 |
| 6/5/15 | Call with Board of Directors | 0.5 | 1.0 |
| | Responding to diligence requests | 1.0 | 2.0 |
| | Calls with potential buyers | 2.0 | 2.0 |
| 6/8/15 | Travel | 1.5 | 12.0 |
| | Motion for Standing | 2.0 | 4.0 |
| | Internal meetings in Delaware | 3.0 | 3.0 |
| | Meetings with potential buyers | 1.0 | 2.0 |
| 6/9/15 | Call with potential buyer | 2.0 | 2.0 |
| | Call with legal | 3.0 | 1.0 |
| | Internal call | 2.0 | 7.0 |
| 6/10/15 | Call with employees and professionals re: employee benefits | 1.0 | 1.0 |
| | Multiple calls with Debtor professionals re: APA | 3.0 | 7.0 |
| | Multiple calls with potential buyers re: asset purchase agreement | 1.5 | 7.0 |
| | Discussion of post sale communications plan | 1.0 | 1.0 |
| 6/11/15 | Multiple calls with Debtor professionals re: APA | 4.0 | 7.0 |
| 6/12/15 | Multiple calls with Debtor professionals re: APA | 2.5 | 1.0 |
| | Call with Board of Directors | 1.5 | 1.0 |
| | Multiple calls with bidder re: key issues in APA | 2.0 | 7.0 |
| | Prepare analysis of wind down budget | 1.0 | 2.0 |
| | Calls with DIP Lenders and UCC | 1.5 | 1.0 |
| 6/15/15 | Auction | 12.0 | 7.0 |
| 6/16/15 | Board calls | 2.0 | 1.0 |
| | Negotiation with buyers | 3.0 | 7.0 |
| | Calls with Debtor professionals | 3.5 | 1.0 |
| 6/17/15 | Travel to/from Delaware | 3.0 | 12.0 |
| | Attend sale hearing | 2.5 | 4.0 |
| | Meetings / calls on settlement, updates with Board etc. | 4.0 | 1.0 |
| 6/18/15 | Review of closing documents | 1.5 | 7.0 |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 6/19/15 | Review of Back Up Bidder Asset Purchase Agreement changes | 0.5 | 7.0 |
| | Calls with all professionals re: final documents | 2.0 | 1.0 |
| | Calls with management team | 0.5 | 1.0 |
| 6/22/15 | Calls with management re: marketing materials | 0.5 | 1.0 |
| 6/23/15 | Calls with Taylor re: data room / contracts | 1.0 | 7.0 |
| | Calls with Taylor advisors re: transition | 1.0 | 1.0 |
| 6/24/15 | Calls / emails with Debtor professionals re: closing conditions | 0.5 | 1.0 |
| 6/25/15 | Board call | 1.0 | 1.0 |
| | Calls / Analysis of Aggregate Cap and Aggregate Consideration | 1.0 | 9.0 |
| **Total** | | **99.5** | |

### Nick Verhein - Analyst

| Date | Description of Work | Hours | Category |
|------|---------------------|-------|----------|
| 7/7/15 | Call with finance team | 1.0 | 2.0 |
| | Total | **1.0** | |

# EXHIBIT D

## Fee Calculation
## & Details of Expenses

**Standard Register Co.**
**Monthly Statement**
**Lazard Frères & Co.  LLC**

**July 1, 2015 - July 31, 2015**

**Fee Calculation**

| Item | Amount Incurred |
|------|----------------:|
| Monthly Fees: July 1, 2015 - July 31, 2015 | $100,000.00 [1] |
| Sale Transaction Fee | 3,500,000.00 [2] |
| **TOTAL** | **$3,600,000.00** |

**Summary of Out-of-Pocket Expenses** [3]

| Item | Amount Incurred |
|------|----------------:|
| Car Services and Taxis | $672.18 |
| Employee Meals | 147.72 |
| Legal Fees [4] | 415.00 |
| Meals-Meetings/Travel | 97.24 |
| Telephone/Telex/Fax-Usage | 113.12 |
| Travel | 1,104.00 |
| **TOTAL** | **$2,549.26** |

[1] *Lazard's retention was approved pursuant to the terms set forth in the Engagement Letter dated December 27, 2014, (the "Engagement Letter") as amended by Amendment No. 1 to the Engagement Letter (the "Amendment Letter").*

[2] *See attached Exhibit D for a detailed fee calculation.*

[3] *Additional expense detail will be furnished upon request.*

[4] *Legal representation of Lazard.  See detailed invoices attached.*

# LAZARD

**DEAL OPEN ITEMS BY CATEGORY**

ALL EXPENSES

**NYC05762 - Standard Register Co.**

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 |
| **Car Services and Taxis** | | | |
| | 09-Jul-2015 | Torgove–DIAL CAR - Home to LGA airport 05/20/2015 / AMEX | 289.71 |
| | 09-Jul-2015 | Verhein-DIAL CAR – LGA airport to home 05/20/2015 / AMEX | 93.24 |
| | 09-Jul-2015 | Verhein-UBER –Late night LMM office to home 05/15/2015 / AMEX | 27.19 |
| | 09-Jul-2015 | Verhein-NYC TAXI - Weekend LMM office to home 05/31/2015 / AMEX | 24.35 |
| | 09-Jul-2015 | Verhein-NYC TAXI - Late night LMM office to home 05/29/2015 / AMEX | 21.96 |
| | 09-Jul-2015 | Verhein-NYC TAXI – Taxi while traveling in Philly 05/19/2015 / AMEX | 18.35 |
| | 09-Jul-2015 | Verhein-UBER - Late night LMM office to home 06/11/2015 / AMEX | 17.90 |
| | 09-Jul-2015 | Verhein-RMT MANA - Weekend LMM office to home 06/06/2015 / AMEX | 17.16 |
| | 09-Jul-2015 | Verhein-NYC TAXI - Late night LMM office to home 05/19/2015 / AMEX | 15.36 |
| | 09-Jul-2015 | Verhein-NYC TAXI -Late night LMM office to home 06/10/2015 / AMEX | 14.15 |
| | 09-Jul-2015 | Verhein-NYC TAXI -Late night LMM office to home 06/05/2015 / AMEX | 13.55 |
| | 09-Jul-2015 | Verhein-NYC TAXI - Late night LMM office to home 06/09/2015 / AMEX | 13.55 |
| | 09-Jul-2015 | Verhein-NYC TAXI -Late night LMM office to home 05/21/2015 / AMEX | 13.55 |
| | 09-Jul-2015 | Verhein-UBER –Weekend home to LMM office 06/06/2015 / AMEX | 12.97 |
| | 09-Jul-2015 | Verhein-TAXI – Late night LMM office to home 06/01/2015 / AMEX | 12.96 |
| | 09-Jul-2015 | Verhein-NYC TAXI - Late night LMM office to home 05/27/2015 / AMEX | 12.95 |
| | 09-Jul-2015 | Verhein-NYC TAXI -Late night LMM office to home 05/27/2015 / AMEX | 12.95 |
| | 09-Jul-2015 | Verhein-MICHAEL ADJO - Late night LMM office to home 06/02/2015 / AMEX | 12.36 |
| | 09-Jul-2015 | Verhein-NYC TAXI – Weekend LMM office to home 05/30/2015 / AMEX | 11.75 |
| | 09-Jul-2015 | Verhein-NYC TAXI – Weekend LMM office to home 05/16/2015 / AMEX | 9.86 |
| | 09-Jul-2015 | Verhein-QUEENS MEDAL – Home to NY Penn Station 06/08/2015 / AMEX | 6.36 |
| | | Subtotal: | 672.18 |
| **Employee Meals** | | | |
| | 09-Jul-2015 | Verhein-CHIPOTLE 0769 0094  NEW YORK 05/21/2015 / AMEX | 23.08 |
| | 09-Jul-2015 | Verhein-DUANE READE #14127 0 NEW YORK 05/20/2015 / AMEX | 22.05 |
| | 09-Jul-2015 | Verhein-DOLPHIN GOURMET DE 5 NEW YORK 06/11/2015 / AMEX | 18.00 |
| | 09-Jul-2015 | Verhein-DOS TOROS TAQUERIA  NEW YORK 06/06/2015 / AMEX | 15.75 |
| | 09-Jul-2015 | Verhein-ROAST KITCHEN 045944 NEW YORK 05/31/2015 / AMEX | 14.97 |
| | 09-Jul-2015 | Verhein-ROAST KITCHEN 045944 NEW YORK 05/17/2015 / AMEX | 14.21 |
| | 09-Jul-2015 | Verhein-DON PEPI DELI        NEW YORK 06/08/2015 / AMEX | 7.00 |
| | 13-Jul-2015 | OFlanagan-FRESH & CO         NEW YORK 06/02/2015 / AMEX | 19.16 |
| | 13-Jul-2015 | OFlanagan-FRESH & CO         NEW YORK 06/04/2015 / AMEX | 13.50 |
| | | Subtotal: | 147.72 |

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

Currency: USD - US Dollar

NYC05762 - Standard Register Co.

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | | BALANCE |
|---|---|---|---|---|
| **Legal Fees** | | | | |
| | 20-Jul-2015 | CLIENT/MATTER #20001657-0008 / DENTONS US LLP | | 249.00 |
| | 20-Jul-2015 | CLIENT/MATTER #20001657-0008 / DENTONS US LLP | | 166.00 |
| | | | Subtotal: | 415.00 |
| **Meals-Meetings/Travel** | | | | |
| | 09-Jul-2015 | Verhein-THE DINER 8819000148 NEW YORK 06/08/2015 / AMEX | | 32.39 |
| | 13-Jul-2015 | OFlanagan-TANDOORI CHEF 0396  MAPLEWOOD 06/09/2015 / AMEX | | 25.00 |
| | 13-Jul-2015 | OFlanagan-STONY'S 8843006721l  SOUTH ORA 06/08/2015 / AMEX | | 17.90 |
| | 13-Jul-2015 | OFlanagan-AMTRAK ACELA CAFE  Q WASHINGTO 06/08/2015 / AMEX | | 16.50 |
| | 13-Jul-2015 | OFlanagan-METRO PARK CAFE #123 ISELIN 06/08/2015 / AMEX | | 5.45 |
| | | | Subtotal: | 97.24 |
| **Telephone/Telex/Fax-Usage/Re** | | | | |
| | 13-Jul-2015 | MAY 2015 CONFERENCE CALLS / INTERCALL | | 113.12 |
| | | | Subtotal: | 113.12 |
| **Travel** | | | | |
| | 09-Jul-2015 | Torgove-AMTRAK NYP-WIL 06/08/2015 / AMEX | | 179.00 |
| | 09-Jul-2015 | Verhein-AMTRAK NYP-WIL WASHINGTO 06/08/2015 / AMEX | | 179.00 |
| | 09-Jul-2015 | Verhein-AMTRAK WIL-NYP WASHINGTO 06/08/2015 / AMEX | | 179.00 |
| | 09-Jul-2015 | Torgove-AMTRAK WIL-NYP 06/08/2015 / AMEX | | 179.00 |
| | 13-Jul-2015 | OFlanagan-AMTRAK   NWK-WIL 06/08/2015 / AMEX | | 179.00 |
| | 13-Jul-2015 | OFlanagan-AMTRAK  WIL-NWK 06/08/2015 / AMEX | | 179.00 |
| | 13-Jul-2015 | OFlanagan-AMERICAN EXPRESS TICKET FEE 04/14/2015 / AMEX | | 30.00 |
| | | | Subtotal: | 1,104.00 |

**CLOSING BALANCE as of  03-Aug-2015**     **2,549.26**

# EXHIBIT D

## Fee Calculation & Details of Expenses

| | |
|---|---:|
| **Base Sale Transaction Fee (A)** | **$2,750,000** |
| | |
| Aggregate Consideration (X) | $308,210,000 |
| Incentive Fee Hurdle (Y) | 275,000,000 |
| Consideration Above Incentive Fee Hurdle ( X - Y ) | $33,210,000 |
| Incentive Rate | 3.0% |
| **Incentive Fee (B)** | **$996,300** |
| | |
| **Sale Transaction Fee (A) + (B)** | **$3,746,300** |
| Less Monthly Credits | (200,000) |
| **Sale Transaction Fee**[1] | **$3,546,300** |

(1) $3.5MM of Lazard's Sale Transaction Fee is payable out of the proceeds of the Debtors Wind-Down Budget.  To the extent additional Aggregate Consideration is realized through the assumption by the Buyer of additional liabilities during the 90 days following Closing, the Sale Transaction Fee payable on account of such additional Aggregate Consideration will be paid by Taylor Corporation to Lazard.

# Supporting Schedule for Aggregate Consideration

Calculation of Aggregate Consideration
($ in 000s)

| | |
|---|---:|
| DIP Obligations | $73,746 |
| First Lien Term Loan Facility | 113,666 |
| Maximum Reimbursement Amount | 1,500 |
| Wind Down | 15,076 |
| Additional Cash Component | 500 |
| Additional Cash Component | 15,770 |
| **Purchase Price** | **$220,258** |
| | |
| **Plus: Assumed Liabilities** | |
| Post Petition Accounts Payable | $46,339 |
| 503(b)9 Claims | 12,000 |
| Key Employee Incentive Plan | 2,254 |
| Accrued and Unpaid Wages | 9,308 |
| Sales and Use Taxes | 3,983 |
| Customer Program Liabilities | 10,468 |
| **Total Assumed Liabilities** | **$84,352** |
| | |
| **Plus: Excluded Assets** | |
| Rabbi Trust | $3,600 |
| | |
| **Aggregate Consideration** | **$308,210** |



Dentons US LLP
1221 Avenue of the Americas
New York, New York  10020-1089

Salans FMC SNR Denton
dentons.com

LAZARD MIDDLE MARKET LLC
R. KIRKLAND COZINE
80 South Eighth Street
Suite 2700
MINNEAPOLIS, MN 55402
USA

June 12, 2015

**Invoice No. 1653045**

Client/Matter:  20001657-0008

Standard Register

For Professional Services Rendered through May 31, 2015:

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 05/27/15 | A. Ruegger | 0.20 | 166.00 | Review public reports of Committee motion to challenge WorkflowOne acquisition. |
| Total Hours | | 0.20 | | |
| Fee Amount | | | | $166.00 |

Fee Total               $         166.00

Invoice Total           $_____166.00



Dentons US LLP
1221 Avenue of the Americas
New York, New York  10020-1089

Salans FMC SNR Denton
McKenna Long
dentons.com

LAZARD MIDDLE MARKET LLC
R. KIRKLAND COZINE
80 South Eighth Street
Suite 2700
MINNEAPOLIS, MN 55402
USA

July 13, 2015

**Invoice No. 1661031**

Client/Matter:  20001657-0008

Standard Register

---

For Professional Services Rendered through June 30, 2015:

| Date | Timekeeper | Hours | Amount | Narrative |
|------|-----------|-------|--------|-----------|
| 06/03/15 | A. Ruegger | 0.20 | 166.00 | Review public report of committee attack on WorkflowOne transaction. |
| 06/08/15 | A. Ruegger | 0.10 | 83.00 | Review Committee objection to asset sale and 6/8 hearing agenda. |
| Total Hours | | 0.30 | | |
| Fee Amount | | | | $249.00 |

|  |  |  |  |
|--|--|--|--|
| | Fee Total | $ | 249.00 |
| | Invoice Total | $ | 249.00 |

2

**Standard Register Co.**
**Final Fee Application**
**Lazard Frères & Co.  LLC**

**March 12, 2015 - July 31, 2015**

### Fee Calculation

| Item | Amount Incurred |
| --- | --- |
| Monthly Fees: April 1, 2015 - April 30, 2015 | $100,000.00 [1] |
| Monthly Fees: May 1, 2015 - May 31, 2015 | 100,000.00 |
| Monthly Fees: June 1, 2015 - June 3, 2015 | 100,000.00 |
| Monthly Fees: July 1, 2015 - July 31, 2015 | 100,000.00 |
| Sale Transaction Fee | 3,500,000.00 |
| **TOTAL** | **$3,900,000.00** |

### Summary of Out-of-Pocket Expenses [2]

| Item | Amount Incurred |
| --- | --- |
| Car Services and Taxis | $12,640.54 |
| Courier/Shipping | 32.81 |
| Electronic Information Service | 70.76 |
| Employee Meals | 2,334.31 |
| Legal Expenses | 450.00 |
| Legal Fees | 55,813.50 |
| Meals-Meetings/Travel | 2,402.55 |
| Printing Costs - External | 484.99 |
| Telephone/Telex/Fax-Usage | 387.93 |
| Temporary Wages | 111.18 |
| Travel | 46,752.65 |
| **TOTAL** | **$121,481.22** |

[1] *Lazard's retention was approved pursuant to the terms set forth in the Engagement Letter dated December 27, 2014, (the "Engagement Letter") as amended by Amendment No. 1 to the Engagement Letter (the "Amendment Letter").*

[2] *Additional expense detail will be furnished upon request.*