# **EXHIBIT B**

**Amendment**

EXECUTION VERSION

RUNOUT ADMINISTRATIVE SERVICES AGREEMENT AMENDMENT WITH THE
STANDARD REGISTER COMPANY

This is an Amendment (the "Amendment") effective as of July 31, 2015 (the "Effective Date") by and between The Standard Register Company (the "Debtor") and Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem") (Debtor and Anthem, the "Parties") to the Administrative Services Agreement as of January 1, 2015 between the Parties (together, with any schedules, amendments or attachments thereto, the "Agreement"). This Amendment shall supplement and amend the Agreement. If there are any inconsistencies between the terms of the Agreement and this Amendment, the terms of this Amendment shall control. All capitalized terms not otherwise defined herein shall have the meaning so ascribed in the Agreement.

Debtor and Anthem agree that, except as set forth herein and in accordance with Articles 7, 19d., 27f. of the Agreement as amended herein, the Agreement shall terminate as of July 31, 2015, and the Claims Runout Services shall start on and after August 1, 2015 through and including the Claim Runout Period as defined below.

On or before Friday, August 7, 2015, Debtor shall pay Anthem via wire payment for any amounts not previously paid by Debtor on account of Claims paid on or before July 31, 2015 by Anthem under the Agreement (the "Pre-Runout Debt").

So as to facilitate the performance of Claims Runout Services, Debtor and Anthem further agree as follows: On or before August 4, 2015, Debtor shall make a prepayment via wire transfer to Anthem in the amount of $500,000 ("Initial Prepayment") for all Claims that are received for services provided to a Member for dates of service of up to and including July 31, 2015 ("IBNR"). Anthem may, but is not required to, in its sole discretion, apply the Initial Prepayment, in whole or in part, to pay Claims related to IBNR; the applicable claims runout administrative services fee equal to 6% of Claims processed and paid by Anthem as detailed in Section 6 of Schedule A of Amendment Four to the Agreement (the "Claims Runout Administrative Services Fee") (the paid Claims and applicable Claims Runout Services Fee together, the "Anthem Paid Amounts"); and/or the Anthem Paid Member Flexible Spending Account Amounts as defined below. Beginning on or after Monday, August 10, 2015, and continuing on a weekly basis, Anthem shall notify Debtor via electronic mail (the "Notification") of the aggregate amount (the "Weekly Total") of the Anthem Paid Amounts paid by Anthem during the preceding week, and, no later than one (1) business day after receipt of such Notification, Debtor shall promptly wire Anthem in the amount of the Weekly Total (each, a "Weekly Payment", and together the "Weekly Payments"). Anthem shall apply the Weekly Payments to the Anthem Paid Amounts.

Anthem shall notify the Debtor when the funds being held by Anthem from the Initial Prepayment and the Weekly Payments together have decreased to an amount which Anthem deems insufficient to continue to administer the Plan (the "Insufficient Funds Notice"). Debtor shall then have one (1) business day from receipt of the Insufficient Funds Notice to advise Anthem in writing of its intent to make (or not make) a subsequent payment based upon the currently pending Claims, its estimate of the anticipated remaining Claims and the funds

EXECUTION VERSION

available at that time (an "IBNR Subsequent Payment" and collectively with the IBNR Initial Prepayment and the Weekly Payments, the "IBNR Payments") and shall have five (5) business days from the date of the Insufficient Funds Notice (the "Insufficient Funds Notice Period") to make an IBNR Subsequent Payment. During the Insufficient Funds Notice Period, Anthem may, in its sole discretion, cease or suspend payments of Claims, and Debtor may, in its sole discretion, direct Anthem to cease or suspend payments of Claims.

The Claims Runout Period as defined in the Agreement is amended as follows: Anthem shall continue to pay Claims until the earliest of:

> (1) the date on which Anthem deems the IBNR Payments insufficient and the five (5) day Notice Period has expired, without the receipt of sufficient IBNR Subsequent Payments to reimburse Anthem for the Anthem Paid Amounts;
>
> (2) the date on which the application by Anthem of the IBNR Payments results in the IBNR Payments being fully depleted; or
>
> (3) July 31, 2016 (the earliest of the three, the "Claims Runout Period").

At the end of the Claims Runout Period, Anthem shall pay no further Claims on behalf of the Debtor.

The Parties agree that flexible spending account claim run out will continue as follows: Conditioned upon access to the Debtor's account, Anthem will process flexible spending account claims from Members that were incurred on or before July 31, 2015 and are submitted for reimbursement up to September 30, 2015 (an "Anthem Paid Member Flexible Spending Account Claim" and collectively, the "Anthem Paid Member Flexible Spending Account Claims"). Debtor agrees to reimburse Anthem for the Anthem Paid Member Flexible Spending Account Claims submitted during this time period, through the current demand debit process under the Agreement. Debtor agrees to pay Anthem $4.90 per month per Member with a balance in their flexible spending account (the "Flexible Spending Account Fee") (the Anthem Paid Member Flexible Spending Account Claims and the Flexible Spending Account Fee together, the "Anthem Paid Member Flexible Spending Account Amounts").

At the end of the Claims Runout Period, Anthem shall provide the Debtor with a reconciliation showing the application of the IBNR Payments to the Anthem Paid Amounts and/or to the Anthem Paid Member Flexible Spending Account Amounts (the "Reconciliation"). If the Reconciliation shows any remaining funds from the IBNR Payments after Anthem has been fully reimbursed for the Anthem Paid Amounts and the Anthem Paid Member Flexible Spending Account Amounts (the "IBNR Overpayment"), then the IBNR Overpayment shall be refunded to the Debtor as soon as administratively possible and paid in accordance with the written instructions to be provided by the Debtor to Anthem at that time. If the Reconciliation shows that the IBNR Payments were insufficient to fully reimburse Anthem for the Anthem Paid Amounts and the Anthem Paid Member Flexible Spending Account Amounts (the "IBNR Underpayment"), then the IBNR Underpayment shall be refunded to Anthem as soon as administratively possible and in accordance with the written instructions to be provided by

EXECUTION VERSION

Anthem to Debtor as follows:  1) first, the Debtor shall pay Anthem the IBNR Underpayment from the amounts funded by the purchaser in the Wind Down Budget for the payment of Claims (the "Claims Account"); and 2) to the extent that the funds in the Claims Account are insufficient to fully reimburse Anthem on account of the IBNR Underpayment, Anthem shall hold an allowed, administrative claim for any unpaid balance of the IBNR Underpayment (the "Allowed Administrative Claim").

The Parties acknowledge and agree that Article 3c. of the Agreement is amended as follows: Neither the Debtor nor Anthem shall have the responsibility to provide any notice under COBRA or any other applicable law governing the continuation of health care coverage.

The only obligations of Debtor to Anthem shall be the following:  1) funding of IBNR Payments as set forth in this Amendment; 2) paying the Claims Runout Administrative Services Fee to Anthem; 3) paying any applicable Flexible Spending Account Fee; 4) paying the IBNR Underpayment, if any, to Anthem; and 5) complying with the obligations that survive termination as set forth in Article 27f. of the Agreement.  The only obligations of Anthem shall be the following:  1) providing Claims Runout Services as set forth in this Amendment; 2) processing any applicable Member Flexible Spending Account Claim; 3) paying the IBNR Overpayment, if any, to Debtor; and 4) complying with the obligations that survive termination as set forth in Article 27f. of the Agreement.  Anthem shall have no obligation to process or pay any Claims, or forward Claims to Debtor, beyond the Claims Runout Period or in excess of the aggregate amount of the IBNR Payments.  For clarity's sake, the Parties further acknowledge and agree that the separate business associate agreement between the Parties continues to govern this Amendment.

Any notice required or permitted by this Amendment shall be electronically delivered to Debtor with confirmation via telephone at the below addresses:

Debtor
Lawrence Taschenberger
Via Email: Lawrence.Taschenberger@standardregister.com
Phone: 937-221-1994

Anthem
Christopher Stoll
Via Email:  Christopher.Stoll@anthem.com
            with cc: to Joseph.Klein@anthem.com; tscobb@vorys.com
Phone:  513-445-0232

Either the Debtor or Anthem may change the individual or department to whom notice shall be provided under this Amendment by indicating such via electronic means with confirmation via telephone to the other party; provided, however, that the means of notice shall remain electronic with confirmation via telephone.

EXECUTION VERSION

As soon as administratively practicable following the Effective Date, the Debtor shall file a motion in the proceedings in *In re The Standard Register Company*, Case No. 15-10541, Bankr. Del., seeking the assumption of the Agreement as Amended.

In Witness Whereof, this Amendment made as of the Effective Date.

THE STANDARD REGISTER COMPANY

By: *[signature]*

Name: Kevin Carmody

Title: President & CEO

COMMUNITY INSURANCE COMPANY D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD

*[signature]*

By: John Hogan

Title: RVP Underwriting II

July 31, 2015