**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | Hearing Date: September 21, 2015 at 10:00 a.m. (ET)<br>Objection Deadline: September 4, 2015 at 4:00 p.m. (ET) |

**DEBTORS' FIRST (1ST) OMNIBUS (SUBSTANTIVE) OBJECTION
TO CLAIMS (DROP-SHIP ADMINISTRATIVE PRIORITY CLAIMS) PURSUANT TO
SECTION 502 OF THE BANKRUPTCY CODE,
<u>BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1</u>**

> **PARTIES THAT HAVE CLAIMS WITH ALLEGED ADMINISTRATIVE PRIORITY PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE MAY HAVE LEGAL RIGHTS THAT WILL BE IMPACTED BY THIS OBJECTION WHETHER OR NOT THEIR DISPUTED CLAIMS ARE IDENTIFIED ON EXHIBIT A TO THE PROPOSED ORDER**

> *TO ALL CLAIMANTS WHO HAVE ASSERTED CLAIMS WITH ALLEGED ADMINISTRATIVE PRIORITY PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE:*
>
> *\*YOUR SUBSTANTIVE RIGHTS MAY BE AFFECTED BY THE OBJECTION AND ANY FURTHER OBJECTION THAT MAY BE FILED IN THESE CHAPTER 11 CASES*
>
> *\*\*THE RELIEF SOUGHT IN THE OBJECTION IS WITHOUT PREJUDICE TO THE RIGHTS OF THE DEBTORS AND THEIR ESTATES TO PURSUE FURTHER OBJECTIONS AGAINST THE RECLASSIFIED CLAIMS AND ALL OTHER CLAIMS FILED WITH ALLEGED ADMINISTRATIVE PRIORITY PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

SRC Liquidation Company and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") hereby file this objection (this "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to each of the claims (collectively, the "Disputed Drop-Ship Claims") filed against the Debtors and their estates that are listed on Exhibit A to the proposed form of order (the "Proposed Order") attached hereto as Exhibit 2, and request the entry of the Proposed Order reclassifying the Disputed Drop-Ship Claims, as indicated in further detail below and on Exhibit A to the Proposed Order. In support of this Objection, the Debtors rely on the Declaration of Kevin M. Carmody (the "Carmody Declaration"), a copy of which is attached hereto as Exhibit 1. In further support of this Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Section 503(b)(9) of the Bankruptcy Code affords administrative expense priority to claims related to "goods <u>received by the **debtor**</u> within 20 days before the commencement of a case . . . ." (emphasis added).

2. Many of the Debtors' vendors supply goods directly to the Debtors' customers. Certain of those vendors have asserted claims under section 503(b)(9) of the Bankruptcy Code notwithstanding that the Debtors, themselves, never received the goods in question. The plain language of the statute does not extend to goods delivered to anyone other than the debtor—including the Debtors' customers. For that reason, every case the Debtors could locate that has considered the issue has held that such drop shipments do not qualify applicable vendors for

administrative expenses status under section 503(b)(9) of the Bankruptcy Code. This Court should follow suit.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1.

## BACKGROUND

**A.    General Background**

5. On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession. No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

6. On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

7. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration").

**B.    Debtors' Schedules**

8. On May 11, 2015, each of the Debtors filed their Schedules of Assets and Liabilities [Docket Nos. 475, 477, 479, 481, 483, 485, 487, 489, 491, 493, and 495].

**C.    Proofs of Claim, 503(b)(9) Bar Date, and Notice of Objection**

9. On March 13, 2015, the Court entered an order [Docket No. 54] appointing Prime Clerk LLC ("Prime Clerk") as claims and noticing agent in these Chapter 11 Cases. Among other things, Prime Clerk is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain official claims registers for each of the Debtors.

10. On May 8, 2015, the Court entered an order [Docket No. 451] (the "Bar Date Order") providing that, *inter alia*, all persons or entities (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit) that hold, or seek to assert, a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date, no matter how remote, contingent, or unliquidated, that is alleged to be entitled to priority under section 503(b)(9) of the

4

Bankruptcy Code must properly file a proof of claim on or before June 9, 2015 (the "503(b)(9) Bar Date").

11. Notice of this Objection will be provided to all parties that have asserted 503(b)(9) claims as of the date hereof.

**D.    The Debtors' Subcontractors and Drop-Ship Claims**

12. As set forth in the First Day Declaration, prior to the Petition Date, approximately 40% of the Debtors' revenue was generated from external sourcing. In order to provide one integrated and complete service to their customers, the Debtors act as a broker or middleman on behalf of some of their most significant and critical customers. The following is used herein simply as an example:

> Customer A contracts with the Debtors to have generated, printed, and delivered 100 of Customer A's catalogs. The Debtors then contract with Subcontractor B to generate, print, and deliver the 100 Customer A catalogs directly to Customer A.

13. Many of the Debtors' subcontractors have asserted that their claims against the Debtors for delivering product directly to the Debtors' customers in the manner described above (the "Drop-Ship Claims") are entitled to priority under section 503(b)(9) of the Bankruptcy Code. For example, Claim Number 634 asserts as the basis for the claim only the following: "Subcontracted printing ordered, produced and shipped directly to Standard Register customers." Claim 634 asserts that the amount of the claim entitled to priority under section 503(b)(9) is $183,107.57.

**RELIEF REQUESTED**

14. By this Objection, the Debtors request that the Court enter the Proposed Order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-

1, reclassifying the Disputed Drop-Ship Claims as general unsecured claims, as indicated in further detail below and on Exhibit A to the Proposed Order.

15. In accordance with Local Rule 3007-1(e)(i)(E), the Debtors believe that this Objection complies in all material respects with Local Rule 3007-1.

## OBJECTION

16. Section 503(b)(9) of the Bankruptcy Code provides for the allowance, as an administrative expense, of a claim equal to the value of any goods sold to the Debtors in the ordinary course of the Debtors' businesses and received by the Debtors within 20 days before the Petition Date:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including –
>
> > (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

17. Under the plain language of the statute, the goods must have been "received by the **debtor** . . . ." *Id.* (emphasis added). The Drop-Ship Claims each relate to goods that were delivered to a party other than the Debtors—generally the Debtors' customers.

A.  **Case Law Supports Reclassification of the Drop-Ship Claims**

18. In every case the Debtors could locate where a court has considered the issue, the court has enforced the statute as written and has held that claims arising from drop-shipments do not qualify for administrative priority under section 503(b)(9). *See In re World Imps.*, 516 B.R. 296, 300 (Bankr. E.D. Pa. 2014) ("As the goods delivered under drop-shipment arrangements were not "received" by the Debtor for purposes of § 503(b)(9), the . . . drop-shipments are not entitled to administrative priority."); *In re Momenta, Inc.*, 455 B.R. 353, 361 (Bankr. D.N.H.

2011), *aff'd sub nom Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, 2012 U.S. Dist. LEXIS 122615 (D.N.H. 2012) (same); *In re Plastech Engineered Prods.*, 2008 Bankr. LEXIS 3130, at *11-12 (Bankr. E.D. Mich. Oct. 7, 2008) ("§ 503(b)(9) does require that a debtor receive the *goods,* and not just the *value* of such goods.") (emphasis in original); *see also In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 136 (Bankr. D. Del. 2009) (agreeing with the *Plastech* court's conclusion that the "'contention that § 503(b)(9) requires only that a debtor receive *value* and not actually receive *goods* is strained and ignores the plain meaning of the language used in the statute'").

19. The result reached in these cases is sound for at least four independent reasons.

**1.    The Plain Meaning of the Word "Received" Supports the Holdings**

20. The term "received" is not defined in the Bankruptcy Code. "In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).[2]  "Receive" ordinarily means "[t]o take or acquire. . .; get." Am. Heritage Coll. Dictionary 3d ed. 1997. The Debtors didn't "get" the goods that were drop-shipped; their customers "got" them. Applying the plain meaning of the words in the statute, the Debtors did not "receive" the goods related to the Drop-Ship Claims.

**2.    Case Law Interpreting the Word "Received" in Section 546(c) of the Bankruptcy Code Supports the Holdings**

21. In some of the drop-ship cases, Courts have also looked to case law interpreting section 546(c) of the Bankruptcy Code under the theory that sections 503(b)(9) and 546(c) are corollary provisions that should be interpreted in concert. *See, e.g.*, *Momenta*, 2012 U.S. Dist. LEXIS 122615, at *11 ("it appears that Congress intended that the term, as used in Section 503(b)(9), should be construed consistently with the reclamation section of the Code, Section

---

[2] "The phrase 'received by the debtor' is not a term of art nor is it a defined phrase in the Bankruptcy Code." *Momenta*, 455 B.R. at 357.

7

546(c)"). Courts construing section 546(c) have held that the term "received" in section 546(c) "is the equivalent of 'receipt' in the UCC." *Momenta*, 455 B.R. at 358-59 (citing *In re Circuit City Stores, Inc.*, 432 B.R. 225, 228 (Bankr. E.D. Va. 2010); *In re Pridgen*, 2008 Bankr. LEXIS 1274, 2008 WL 1836950, at *4 (Bankr. E.D.N.C. Apr. 22, 2008); *In re R.F. Cunningham & Co.*, 2006 Bankr. LEXIS 3650, 2006 WL 3791329, at *2 (Bankr. E.D.N.Y. Dec. 21, 2006)). "'[R]eceipt of goods'" under UCC Section 2-103(1)(c) means "'taking physical possession of them.'" *Id*. (quoting UCC § 2-103(1)(c)).[3]

22.     In the drop-ship scenario, the debtor never takes "physical possession" of the goods and, therefore, the debtor does not "receive" the goods within the meaning of section 503(b)(9).

### 3.    There is No Evidence that Congress Intended to Extend Administrative Expense Priority to Claims Arising From Drop-Shipped Goods

23.     "Priorities in bankruptcy, such as the administrative expenses listed in Section 503(b) . . . stand as discrete exceptions to the general equality principle. As such, they must be strictly construed and be 'clearly authorized by Congress.'" *Momenta*, 2012 U.S. Dist. LEXIS 122615, at *11 (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006)). "[T]here is no clear indication, as there must be, that Congress intended to create a new and potentially very large class of priority sellers, a class that would likely distort if not completely undermine the Code's general equity principles governing asset distribution. *Id.* at *16-17. Thus, the Drop-Ship Claims should not be afforded administrative priority.

---

[3]     The *Momenta* bankruptcy court noted its belief that "physical possession" can include the three forms of constructive possession outlined in UCC § 2-705(2)(b)-(d). These are: "(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or (d) negotiation to the buyer of any negotiable document of title covering the goods." UCC § 2-705. However, as the *Momenta* bankruptcy court held, a drop-ship transaction does not involve any of these three forms of constructive possession. *Id.* at 361 ("The record in this case fails to establish, or even suggest, any physical or constructive possession by the Debtor in reference to any of the Drop Shipment transactions.").

### 4. Public Policy Supports the Holdings

24. The policy in favor of the result reached in the cases identified above was articulated by the *Momenta* district court as follows:

> "[A] narrow reading of Section 503(b)(9), that reserves its remedy for would-be reclamation sellers, would likely enhance prospects for successful reorganization, while respecting creditor equality principles. Because the debtor must set aside cash to pay priority administrative expenses, the larger the class of creditors entitled to 503(b)(9) relief, the larger the potential cash reserve needed, and the less likely a debtor will successfully reorganize. That is not an insignificant consideration."

*Id.* at *17-18. The Debtors submit that the *Momenta* court was correct, and the policy considerations recited counsel against affording administrative priority to the Drop-Ship Claims.

### B. The Drop-Ship Claims Should Be Reclassified

25. Here, it is undisputed that the Debtors did not receive the goods that gave rise to the Drop-Ship Claims. Instead, those goods were received by an entity or individual other than the Debtors. Accordingly, section 503(b)(9), on its face and as interpreted by courts that have considered the issue, does not apply to the resulting claims.

### RESERVATION OF RIGHTS

26. The Debtors reserve the right to adjourn the hearing on any Disputed Drop-Ship Claim, and in the event that the Debtors do so, the Debtors will state the same in the agenda for the hearing on that Disputed Drop-Ship Claim, which agenda will be served on the claimant.

27. The Debtors and their estates reserve any and all rights to amend, supplement or otherwise modify this Objection, the Proposed Order, or Exhibit A thereto, and to file additional objections to any and all claims filed in these Chapter 11 Cases, including, without limitation, any and all of the Disputed Drop-Ship Claims. The Debtors and their estates also reserve any and all rights, claims and defenses with respect to any and all of the Disputed Drop-Ship Claims, and nothing included in or omitted from this Objection, the Proposed Order, or Exhibit A thereto

is intended or shall be deemed to impair, prejudice, waive or otherwise affect any rights, claims, or defenses of the Debtors and their estates with respect to the Disputed Drop-Ship Claims.

## NOTICE

28. Notice of this Objection has been provided to the following parties: (i) the UST; (ii) counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' First Lien Credit Agreement and Second Lien Credit Agreement; (iv) counsel to the agents under the Debtors' debtor-in-possession financing facilities; (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (vi) claimants whose Disputed Drop-Ship Claims are subject to this Objection; and (vii) all parties that, as of the date hereof, have filed a claim with alleged priority pursuant to section 503(b)(9) of the Bankruptcy Code. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated: August 21, 2015
Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*