## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 21, 2015 at 10:00 a.m. (ET)** |
| | **Obj. Deadline: September 10, 2015 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (I) EMPLOY AND RETAIN WILLIAMSMARSTON LLC TO PROVIDE INTERIM MANAGEMENT SERVICES PURSUANT TO 11 U.S.C. § 363, AND (II) DESIGNATE LANDEN C. WILLIAMS AS REPLACEMENT CHIEF RESTRUCTURING OFFICER AND TREASURER *NUNC PRO TUNC* TO AUGUST 26, 2015

SRC Liquidation Company and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (the "Motion") for entry of an order, substantially in the form annexed hereto as Exhibit A, (i) authorizing the Debtors to retain and employ WilliamsMarston LLC ("WilliamsMarston") to provide interim management services, and (ii) designating Landen C. Williams ("Mr. Williams") as replacement Chief Restructuring Officer ("CRO") and Treasurer to the Debtors, *nunc pro tunc* to August 26, 2015. In support of this Motion, the Debtors submit the *Declaration of Landen C. Williams in Support of Debtors' Motion for Order Authorizing the Debtors to (i) Employ and Retain WilliamsMarston LLC to Provide Interim Management Services Pursuant to 11 U.S.C. § 363 and (ii) Designate Landen C. Williams as Replacement Chief Restructuring Officer and*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

*Treasurer* Nunc Pro Tunc *to August 26, 2015* (the "<u>Williams Declaration</u>"), annexed hereto as <u>Exhibit B</u>, and incorporated herein as if set forth in full.  In further support of this Motion, the Debtors respectfully represent:

<u>**JURISDICTION AND VENUE**</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

<u>**BACKGROUND**</u>

2.      On March 12, 2015 (the "<u>Petition Date</u>"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>") with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the

commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No.2].

4.     On April 13, 2015, the Court entered that certain *Order Authorizing the Debtors to (I) Employ and Retain McKinsey Recovery & Transformation Services U.S., LLC to Provide Interim Management Services Pursuant to 11 U.S.C. § 363, and (II) Designate Kevin Carmody as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date* [Docket No. 257] (the "McKinsey Retention Order").  Pursuant to the McKinsey Retention Order, McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey") was retained by the Debtors to provide interim management services during the pendency of these Chapter 11 Cases, and Mr. Kevin Carmody ("Mr. Carmody") was designated as the Debtors' Chief Restructuring Officer.

5.     Since the Petition Date, Mr. Carmody and McKinsey have played a pivotal role in guiding the Debtors to the successful consummation of a going-concern sale (the "Sale"), pursuant to which the Debtors sold substantially all of their assets to Taylor Corporation. *See* Docket No. 698.  The Sale closed on July 31, 2015.  *See* Docket No. 889.

6.     At this time, the Debtors no longer have any employees and, together with the other key constituencies in these proceedings, including the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee"), are evaluating various options to efficiently and expeditiously wind down the Debtors' affairs and maximize value for all interested parties through a contemplated plan of liquidation.  In furtherance thereof, the Debtors' Board of Directors (the "Board"), in the exercise of its sound business judgment and after consultation with the Debtors' advisors, has determined that it is prudent at this time to reduce the estates' administrative expense claim exposure by (i) accepting the resignation of Mr. Carmody as the Debtors' Chief Restructuring Officer, effective as of August 26, 2015, and

(ii) appointing Mr. Williams as replacement chief restructuring officer (the "Replacement CRO") and Treasurer to oversee the wind down of the Debtors' business operations, the prosecution of a liquidating chapter 11 plan, and the conclusion of these Chapter 11 Cases. The Debtors have consulted with the Committee regarding the proposed course of action described herein.

7.    Mr. Williams is an experienced restructuring professional, has the skill set required to accomplish the foregoing tasks, and is willing to perform these tasks at rates significantly less than those of Mr. Carmody.  To ensure continuity in the turnover of his responsibilities to Mr. Williams, Mr. Carmody will remain the Debtors' President and Chief Executive Officer during the pendency of these proceedings.  Subject to Court approval of this Motion, the resignation of Mr. Carmody as Chief Restructuring Officer and the appointment of Mr. Williams as Replacement CRO and Treasurer of the Debtors shall be effective *nunc pro tunc* August 26, 2015.

8.    Consistent with the transition to Mr. Williams, the other McKinsey employees who have performed services on the Debtors' behalf pursuant to the McKinsey Retention Order will, upon entry of an order approving this Motion, cease their compensated work on behalf of the Debtors, and such work will be taken over by employees of WilliamsMarston who are prepared to perform such work at rates significantly less than those of McKinsey.  McKinsey began the process of transitioning their advisory services to WilliamsMarston before this Motion was filed, and will continue to work cooperatively with WilliamsMarston to ensure a smooth transition.  It is anticipated that, between the filing of this Motion and entry of an order approving the relief requested herein, the services performed by McKinsey will be very limited in scope and will not duplicate the services provided by WilliamsMarston.  For the avoidance of doubt, upon entry of an order approving this Motion,

McKinsey's engagement will be terminated, and Mr. Carmody will be the only McKinsey employee providing services to, or being compensated by, the Debtors.  Mr. Carmody anticipates that he will be required to expend approximately 15-20 hours in September 2015 assisting Mr. Williams and the WilliamMarston team with the administration of the Debtors' estates, and thereafter his involvement will be required on an even more limited basis.

## RELIEF REQUESTED

9.    By this Motion, the Debtors seek to (i) employ and retain WilliamsMarston, pursuant to section 363 of the Bankruptcy Code, to provide interim management services during the ongoing wind down of the Debtors' business affairs, and (ii) designate Mr. Williams as Replacement CRO and Treasurer for the Debtors in these Chapter 11 Cases upon the terms and conditions contained in that certain engagement letter dated as of August 26, 2015, between WilliamsMarston and the Debtors (such engagement letter, as amended from time-to-time and together with all related documents, the "Engagement Letter"), a copy of which is attached as Exhibit C hereto and incorporated by reference herein.

## WILLIAMSMARSTON'S QUALIFICATIONS

10.    On August 26, 2015, the Board appointed Mr. Williams as the Debtors' Replacement CRO and Treasurer, effective as of August 26, 2015.  Pursuant to his appointment, Mr. Williams became responsible for, among other things, leading the wind down of the Debtors' affairs, and is required to report directly to the Board.

11.    Mr. Williams is highly qualified to serve as the Debtors' Replacement CRO and Treasurer during the pendency of these Chapter 11 Cases, with the support of the WM Staff (as defined herein).  Mr. Williams the co-founder and partner of WilliamsMarston, and has a proven track record of assisting distressed companies in numerous restructurings, both in and out of court.

12.     WilliamsMarston is comprised of accounting professionals with significant and varied operational and technical accounting experience.  The firm's service offerings include forensic accounting, consulting and interim management, and Mr. Williams himself has served in various capacities in the chapter 11 context.  During his time as a Managing Director in the Financial Restructuring practice of FTI Consulting, Inc., and a Manager in the Business Restructuring Services practice of PricewaterhouseCoopers LLP, Mr. Williams advised both debtors and creditors regarding the design and implementation of corporate restructuring strategies both in and out of court.  Past clients include, but are not limited to, Stone & Webster, MCI Worldcom, Reliant Resources, Dynegy, Maxim Cranes, and Dow Chemical.  Mr. Williams has almost twenty years of relevant management consulting experience and, in that capacity, has previously served as an interim corporate controller of two publicly traded companies and advised many other clients on financial modeling, liquidity and cash management, wind-down initiatives, claims reconciliation and financial reporting.

13.     Given Mr. Williams' extensive chapter 11 experience and the services provided by WilliamsMarston, the Debtors retained WilliamsMarston to provide Mr. Williams to serve as Replacement CRO and Treasurer, along with certain other engagement staff, pursuant to the Engagement Letter.    Under the Engagement Letter, WilliamsMarston was retained principally for the purpose of maintaining a short-term cash flow forecasting process, pursuing wind-down initiatives, participating in the claims reconciliation process, and assisting counsel in conjunction therewith.

14.     As a result of the diligence conducted by WilliamsMarston at the outset of its engagement, and extensive discussions between Mr. Williams and Mr. Carmody, and the input from the Board's strategic committee members, WilliamsMarston is familiar with the

Debtors, the events that have transpired during these Chapter 11 Cases, and the Debtors'
historical business operations, financial affairs, debt structure, employee groups and related
matters.   Consequently, the Debtors believe that Mr. Williams and WilliamsMartston have
developed significant relevant experience and expertise regarding the Debtors and the
circumstances of these Chapter 11 Cases, and have the skills, qualifications and expertise
necessary to continue to assist the Debtors with their wind down efforts in an efficient and cost-
effective manner.

### SCOPE OF SERVICES

15.     As provided in the Engagement Letter, WilliamsMarston has agreed that
Mr. Williams will serve as the Debtors' Replacement CRO and Treasurer and report directly to
the Board.   Working collaboratively with the Board and the Debtors' other restructuring
professionals, Mr. Williams will assist the Debtors in evaluating and implementing strategic and
tactical options throughout the wind down process.

16.     In addition, WilliamsMarston has agreed to provide certain additional
personnel to assist Mr. Williams and the Debtors in their wind down efforts (collectively, the
"WM Staff").   The initial list of WM Staff, their rates and other information is summarized in the
section below regarding professional compensation.[2]

17.     The Debtors anticipate that during these Chapter 11 Cases, in addition to
the ordinary course duties of a chief restructuring officer that typically arise post-sale in a

---

[2]     The WM Staff is subject to change based on the needs of these Chapter 11 Cases.

liquidation context, Mr. Williams and the WM Staff will perform a broad range of services, including, without limitation, the following:[3]

(a)   Maintaining a short-term cash flow forecasting process and implementing cash management strategies to maintain the wind-down budget;

(b)   Supporting the Debtors' counsel with the execution of strategies and initiatives to wind-down the Debtors' estates;

(c)   Participating in stakeholder discussions, negotiations and diligence meetings along with the Debtors' counsel;

(d)   Participating in claims processing, estimation, analysis and reporting to support the pursuit of a plan of liquidation; and

(e)   Assisting with all such other liquidation matters and wind-down activities as may be requested by the Debtors' counsel.

18.    The Debtors and WilliamsMarston intend that all of the services that WilliamsMarston will provide to the Debtors will be: (a) appropriately directed by the Debtors so as to avoid duplicative efforts among the other professionals retained in these Chapter 11 Cases, and (b) performed in accordance with applicable standards of the profession.

19.    The Engagement Letter contains standard indemnification language with respect to WilliamsMarston's services including, without limitation, an agreement by the Debtors to indemnify WilliamsMarston and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons, from and against any and all losses, claims, penalties, damages or liabilities (or actions in respect thereof), joint or several, caused by, relating to, based upon or arising out of (directly or indirectly) the engagement of WilliamsMarston that is the subject of the Engagement Letter. Accordingly, as part of this

---

[3]   The description of the services to be rendered pursuant to the Engagement Letter herein is a summary. To the extent that this Motion and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

Motion, the Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter and discussed immediately below.

20.     Notwithstanding anything to the contrary in the Engagement Letter and consistent with the protocol established by the Office of the United States Trustee (the "U.S. Trustee") with respect to the retention of critical management services (the "Protocol"), WilliamsMarston agreed that those WilliamsMarston employees serving as officers of the Debtors, including Mr. Williams as Replacement CRO and Treasurer, will be entitled to receive whatever indemnities are made available during the term of the engagement to other non-WilliamsMarston affiliated officers of the Debtors, whether under the by-laws, certificates of incorporation, applicable corporate laws or contractual agreements of general applicability to officers of the Debtors.  In addition, the Replacement CRO and Treasurer, and any WM Staff will be entitled to the benefit of the most favorable indemnification, reimbursement, contribution and insurance provisions provided by the Debtors and their affiliates in the Debtors' charter, by-laws or other organizational documents, by contract or otherwise.

21.     The Debtors believe that the indemnity provisions are a reasonable term and condition of WilliamsMarston's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and WilliamsMarston at arm's length and in good faith.  WilliamsMarston and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to WilliamsMarston, including McKinsey at the outset of these Chapter 11 Cases, and for comparable engagements both in and out of court.  The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of WilliamsMarston's proposed retention, are reasonable and in the best interest of

the Debtors, their estates and creditors in light of the fact that the Debtors require WilliamsMarston's services to wind down these Chapter 11 Cases in an efficient and cost-effective manner.

### PROFESSIONAL COMPENSATION

22.    WilliamsMarston's decision to advise and assist the Debtors in connection with the wind down of these Chapter 11 Cases is conditioned upon its ability to be retained in accordance with WilliamsMarston's customary terms and conditions of employment, including the compensation arrangement set forth in the Engagement Letter (the "Fee and Expense Structure") and summarized below.

23.    The standard hourly rates, subject to periodic adjustments, as set forth in the Engagement Letter, charged by professionals anticipated to be assigned to assist in the wind down of these Chapter 11 Cases are as follows:

| Engagement Staff | Description | Hourly Rate |
| --- | --- | --- |
| Landen C. Williams | Chief Restructuring Officer | $350 |
| Jonathan T. Marston | Partner | $350 |
| Joseph Furnari | Managing Director | $300 |
| Paul Poirier | Director | $275 |
| Meg Macumber | Manager | $250 |
| Euan Milne | Consultant | $225 |
| Lynette Tsai | Consultant | $225 |

24.    To the extent additional WilliamsMarston personnel provide services to the Debtors during the pendency of these Chapter 11 Cases, WilliamsMarston's fees will be

based on the hours spent by such personnel at WilliamsMarston's applicable hourly rates,[4] which

are as follows:

| Title of Professional | Hourly Rate |
| --- | --- |
| Partner | $350 |
| Managing Director | $300 |
| Director | $275 |
| Manager | $250 |
| Consultant | $225 |

     25.     By comparison, McKinsey personnel who have provided services to the

Debtors since the Petition Date have the following hourly rates:

| Title of Professional | Hourly Rate |
| --- | --- |
| Partner | $875-$1,050 |
| Executive Vice President | $810-$875 |
| Senior Vice President | $675-$810 |
| Vice President | $525-$675 |
| Senior Associate | $435-$525 |
| Associate | $375-$435 |
| Analyst | $250-$350 |
| Paraprofessional | $200-$225 |

     26.     In addition to any fees payable to WilliamsMarston, the Debtors shall

promptly reimburse WilliamsMarston for all reasonable and necessary out-of-pocket expenses

incurred in connection with the engagement such as, but not limited to, travel, lodging, case

administrators, and working meals following WilliamsMarston's standard expense reporting.

     27.     Consistent with the scope of services to be provided by WilliamsMarston

under the Engagement Letter, the Debtors and WilliamsMarston negotiated and agreed upon the

---

[4]    WilliamsMarston's rates are subject to periodic adjustment.  WilliamsMarston will inform the Debtors and the U.S. Trustee to the extent any such adjustments occur during the pendency of these Chapter 11 Cases.

Fee and Expense Structure described above.  The Debtors believe that the Fee and Expense Structure is reasonable, designed to fairly compensate WilliamsMarston for the work performed by Mr. Williams and the WM Staff, and consistent with WilliamsMarston's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, in connection with the rendering of similar services to be provided by WilliamsMarston to the Debtors.  The Fee and Expense Structure is also market-based and consistent with, and typical of, arrangements entered into by other comparable advisory firms rendering similar services for clients such as the Debtors under like circumstances.

28.    WilliamsMarston will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by WilliamsMarston for fees and expenses.

29.    Because WilliamsMarston is not being employed as a professional under section 327 of the Bankruptcy Code, WilliamsMarston requests that it not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, WilliamsMarston will file reports of compensation earned and expenses incurred and paid on a quarterly basis (each a "Quarterly Report," and collectively, the "Quarterly Reports") with the Court and provide notice to (i) the U.S. Trustee, (ii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' prepetition second lien term loan agreement ("Silver Point Counsel"), (iii) counsel to Bank of America, N.A. as administrative and collateral agent under the Debtors' postpetition ABL credit agreement ("Bank of America Counsel"), and (iv) counsel to the Committee (collectively with the U.S. Trustee, Silver Point Counsel, and Bank of America

Counsel, the "Notice Parties").  Such reports will (a) summarize the services provided to the Debtors, (b) summarize the compensation earned by each of the WilliamsMarston personnel, (c) identify the staff employee provided, and (d) itemize the expenses incurred.  Notice for the Quarterly Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  All compensation will be subject to review by the Court in the event an objection is filed.  For the avoidance of doubt, Mr. Williams and the WM Staff are not, and shall not, be required to comply with Local Rule 2016-2.

30.    Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter with the first Quarterly Report, covering the period from the August 1, 2015 through October 31, 2015, due on or before November 20, 2015.  This procedure shall continue for any subsequent Quarterly Reports.  In the event that a party in interest objects to a Quarterly Report, WilliamsMarston's fees and expenses shall be subject to review by this Court.

31.    In addition, WilliamsMarston will file with the Court and provide the Notice Parties a report on staffing, reporting the number of hours worked by category (the "Staffing Report") by the 20th of each month for the previous month, with the first report, covering the August 2015 stub period, being due on September 20, 2015. These Staffing Reports will include the names and tasks filled by the Replacement CRO and all WM Staff involved in this matter.  Notice for the Staffing Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  The Staffing Report (and WilliamsMarston's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

32.    WilliamsMarston received an initial retainer of $100,000 (the "Retainer") on August 27, 2015 from the Debtors.  Pursuant to the Engagement Letter, WilliamsMarston will

apply its Retainer to all amounts invoiced to date, upon receipt of which the Debtors have agreed

to replenish such Retainer.  WilliamsMarston did not receive any fees from the Debtors prior to

the commencement of these Chapter 11 Cases.

33.    As contemplated by the Engagement Letter, the Retainer will be held as

security for postpetition services and expenses incurred in connection with, and during the

pendency of, these Chapter 11 Cases.

34.    General security retainers such as the Retainer are appropriate in these

cases for several reasons.  *See In re Insilco Tech., Inc.,* 291 B.R. 628, 634 (Bankr. D. Del. 2003)

(Carey, J.) ("Factors to be considered, include . . . whether terms of an engagement agreement

reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the

professionals, i.e., whether the parties involved are sophisticated business entities with equal

bargaining power who engaged in an arms-length negotiation[] [and] . . . whether the retention,

as proposed, is in the best interests of the estate[] . . ."); *see also In re CTC Commc'ns Group,*

*Inc.,* Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43, May 22, 2003 ("I

agree and adopt wholeheartedly Judge Carey's decision in the Insilco case.").

35.    First, these types of retainer agreements reflect normal business terms in

the marketplace.  *See In re Insilco Tech., Inc.,* 291 B.R. at 634 ("[I]t is not disputed that the

taking of [security] retainers is a practice now common in the market place.").  Second, both

WilliamsMarston and the Debtors are sophisticated business entities that have negotiated the

Engagement Letter and the Retainer at arm's length.  Third, WilliamsMarston's retention is in

the best interests of the Debtors' estates because the Engagement Letter and the Retainer allow

the Debtors to engage WilliamsMarston to provide services that McKinsey would otherwise have

provided at significantly higher cost to the estates.  Thus, under the standards articulated in *In re*

*Insilco Tech., Inc.,* and adopted *In re CTC Commc'ns Group, Inc.,* the facts and circumstances of these cases support the approval of the security retainer.

## WILLIAMSMARSTON'S CONNECTIONS WITH
## THE DEBTORS AND PARTIES IN INTEREST

36.     The Debtors do not believe that WilliamsMarston is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code.  However, WilliamsMarston has provided information with respect to its connections with the Debtors, their creditors or their related parties, as more specifically described herein and in the Williams Declaration.

37.     To the best of the Debtors' knowledge, and as disclosed herein and in the Williams Declaration, (i) WilliamsMarston is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and holds no interest adverse to the Debtors and their estates for the matters for which WilliamsMarston is to be employed; and (ii) WilliamsMarston has no connection to the Debtors, their creditors, or their related parties herein except as may be disclosed in the Williams Declaration.  Moreover, the retention and employment of WilliamsMarston is necessary and in the best interests of the Debtors, their estates, creditors and equity interest holders.

38.     The Debtors do not believe that the services described in the Williams Declaration thereto present a conflict of interest under the circumstances of these Chapter 11 Cases or diminish WilliamsMarston's ability to serve the Debtors effectively in these Chapter 11 Cases.

39.     WilliamsMarston will periodically review its files during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that WilliamsMarston discovers any new relevant facts or relationships

01:17543265.6

bearing on the matters described herein during the period of WilliamsMarston's retention, WilliamsMarston will use reasonable efforts to promptly file a supplemental declaration.

40.     As stated above, the Debtors do not believe that WilliamsMarston holds or represents any interest adverse to the Debtors' estates, and they believe that WilliamsMarston is a "disinterested person" under the Bankruptcy Code.  Accordingly, the Debtors submit that the retention of WilliamsMarston is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

### BASIS FOR RELIEF REQUESTED

41.     The Debtors submit that the retention of a chief restructuring officer and other additional personnel is proper under section 363 of the Bankruptcy Code and, indeed, has been previously approved by the Court upon entry of the McKinsey Retention Order.[5]  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code provides that transactions not in the ordinary course of business must be approved by court order.  Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate Motions

---

[5]     Additionally, the appointment of Mr. Williams as Treasurer is necessary because, under Ohio law, SRC Liquidation Company is required to have a president, secretary and treasurer.  See ORC § 1701.64.

brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

42.     The retention of WilliamsMarston and its professionals is a sound exercise of the Debtors' business judgment given the current posture of these Chapter 11 Cases, the benefits that Mr. Williams and WilliamsMarston will provide to the estates, and reduced cost of such services vis-à-vis those provided by McKinsey and Mr. Carmody, respectively.  Mr. Williams has significant experience providing accounting and controller services for distressed companies in similar liquidating contexts, and his background and expertise will allow WilliamsMarston to serve the Debtors' and the estates' needs in a cost-effective fashion.  The Debtors believe that the Replacement CRO and Treasurer, in conjunction with the other WilliamsMarston professionals, will provide services that benefit the Debtors' estates and creditors in an efficient and value-maximizing manner.  In light of the foregoing, the Debtors believe that the retention of WilliamsMarston and its professionals is appropriate and in the best interests of the Debtors and their estates and creditors.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(H)

43.     The Debtors respectfully request a waiver of the fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this Motion.

## NOTICE

44.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel for

Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' Second Lien Credit Agreement; (iv) counsel for Bank of America, N.A., in its capacity as administrative agent under the Debtors' Post-Petition Loan and Security Agreement; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.    In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

45.    WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) approving the employment and retention of WilliamsMarston to provide interim management services to the Debtors; (b) appointing Landen C. Williams as Replacement CRO and Treasurer and authorizing the Debtors to utilize the WM Staff; and (c) granting such other and further relief as the Court deems appropriate.

01:17543265.6

Dated:    August 27, 2015
          Wilmington, Delaware          */s/ Elizabeth S. Justison*
                                        Michael R. Nestor (No. 3526)
                                        Kara Hammond Coyle (No. 4410)
                                        Andrew L. Magaziner (No. 5426)
                                        Elizabeth S. Justison (No. 5911)
                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone:  (302) 571-6600
                                        Facsimile:  (302) 571-1253
                                        mnestor@ycst.com
                                        kcoyle@ycst.com
                                        amagaziner@ycst.com
                                        ejustison@ycst.com

                                        -and-

                                        Michael A. Rosenthal (NY No. 4697561)
                                        Jeremy L. Graves (CO No. 45522)
                                        Matthew G. Bouslog (CA No. 280978)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, New York 10166-0193
                                        Telephone:  (212) 351-4000
                                        Facsimile:  (212) 351-4035
                                        mrosenthal@gibsondunn.com
                                        jgraves@gibsondunn.com
                                        mbouslog@gibsondunn.com

                                        *Counsel to the Debtors and*
                                        *Debtors in Possession*