**EXHIBIT C**

**ENGAGEMENT LETTER**

01:17543265.6



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

August 26, 2015

Kevin Carmody
President & Chief Executive Officer
The Standard Register Company
600 Albany Street
Dayton, OH 45417-3405

Dear Mr. Carmody:

This letter (the "Agreement") confirms the terms of the engagement of WilliamsMarston LLC ("WilliamsMarston", "WM", "we", or "our") by The Standard Register Company (the "Company", "you," or "your") to provide assistance in an interim management capacity (the "Engagement").

**Scope of Services**

WilliamsMarston LLC will provide Landen Williams to serve as the Company's Chief Restructuring Officer and Treasurer (the "CRO and Treasurer"), reporting directly to the Company's Board of Directors ("board"). WilliamsMarston LLC will also provide additional resources as needed to assist in the performance of the CRO and Treasurer's duties. These duties include, but are not limited to, the following:

- Maintaining a short-term cash flow forecasting process and cash management strategies in order to maintain the wind-down budget;
- Supporting the Company's counsel with the execution of strategies and initiatives to wind-down the Company's estate;
- Participating in stakeholder discussions, negotiations and diligence meetings along with the Company's counsel;
- Participating in claims processing, estimation, analysis and reporting to support the filing of a Plan of Reorganization;
- Assist with all such other restructuring matters and wind-down activities as may be requested by the Company's counsel

The Company agrees that neither WilliamsMarston nor WM personnel: (i) shall have any obligation or responsibility to provide accounting, audit, legal or regulatory services, or to otherwise advise with respect to the tax consequences of any proposed transaction directly or indirectly related to the Services hereunder; and (ii) are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of CPAs ("AICPA"), the Securities and Exchange Commission ("SEC") or other state or national professional or regulatory body.



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

Notwithstanding anything to the contrary contained herein, neither WM nor the CRO and Treasurer shall be required to perform any tasks, actions, or functions, and shall not be required to assume any roles, assignments, or capacities, that (in any such case) could give rise to fiduciary status (within the meaning of Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to either WM, the CRO and Treasurer, or any other Indemnified Party (as defined below) in respect of any employee benefit plan subject to Title I of ERISA ("Plan").  Without limiting the generality of the immediately preceding sentence and for the avoidance of doubt, neither WM nor the CRO and Treasurer shall be required to make any discretionary decision in respect of the management or control over any of the assets of any Plan or the administration or interpretation of any Plan, the selection of any service providers for any Plan, review or exercise any discretion in respect of any claims relating to any Plan, appointing or removing any fiduciaries of any Plan or to resolve any questions regarding the foregoing

**Fees and Expenses**

WM professional fees for services rendered will be billed based on the hours incurred at the applicable rates for our professionals assigned to this engagement. Our hourly billing rates for this project are presented below.

|                   | Applicable Rates |
|-------------------|------------------|
| Partner           | $ 350            |
| Managing Director | $ 300            |
| Director          | $ 275            |
| Manager           | $ 250            |
| Consultant        | $ 225            |

To commence work on this engagement, we require a retainer in the amount of $100,000. All invoiced amounts will be applied against the retainer. WilliamsMarston will issue periodic statements for replenishing the retainer. These statements, which are due upon receipt by the Company, will be issued with sufficient frequency that a retainer balance will always be maintained. The retainer shall remain in place until this agreement is concluded or terminated. Upon conclusion, the retainer balance shall be applied against any outstanding amounts due with the remainder, if any, to be returned to the Company once all payment obligations due under this agreement are satisfied.

**Confidentiality**

"Confidential Information" means non-public information marked "confidential" or "proprietary" or that otherwise should be understood by a reasonable person to be confidential in nature, provided by the disclosing party or on its behalf to the recipient under the terms of this engagement letter. All terms of this



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

engagement letter, including but not limited to fee and expense structure of WM, are considered Confidential Information. Confidential Information does not include any information which (i) is rightfully known to the recipient prior to its disclosure; (ii) is released to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by recipient without use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this agreement or may be lawfully obtained by a party from a non-party. Each party will protect the confidentiality of Confidential Information that it receives from the other party using the same degree of care which it uses to protect its own Confidential Information and will not use or disclose any Confidential Information for any purpose other than to perform its obligations this agreement, or as required by applicable law, statute, rule, regulation or professional standard without the other party's prior consent. If disclosure is required by law, statute, rule, or regulation (including any subpoena or other similar form of process), or by professional standards, the party to which the request for disclosure is made shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the other party with prior prompt written notice thereof and, if practicable under the circumstances, allow the other party to seek a restraining order or other appropriate relief. Prior to using any third party service providers, WM will insure that any such third party service providers has agreed in writing to conditions of confidentiality with respect to Company Confidential Information to the same or similar extent as WM has agreed to in this engagement letter.

**Indemnification**

The Company and its affiliates hereby agree (i) to indemnify, hold harmless and defend WilliamsMarston LLC, and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons (collectively, the "Indemnified Parties" and each individually, an "Indemnified Party"), to the fullest extent lawful, from and against any and all losses, claims, penalties, damages or liabilities (or actions in respect thereof), joint or several, caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Company and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by all Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)); and (ii) to reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel and the costs of WM's professional time) as and when they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (whether or not such Indemnified Party is a formal party to any such action, suit, dispute, inquiry, investigation or proceeding), caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Company and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by

Case 15-10541-BLS    Doc 982-4    Filed 08/27/15    Page 5 of 10



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)), and in enforcing this Agreement. However, the Company and its affiliates shall not be liable under the foregoing indemnity and reimbursement provisions for any loss, claim, damage, penalty or liability which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted primarily and directly from the willful misconduct or gross negligence of such Indemnified Party toward the Company and its affiliates, but pending any such judicial determination, the Company and its affiliates shall continue to be obligated on, and shall continue to perform, its indemnification and reimbursement obligations.

If for any reason the foregoing indemnification or reimbursement is held by a court of competent jurisdiction to be unavailable to any Indemnified Party or insufficient fully to indemnify or reimburse any such Indemnified Party or to hold it harmless in respect of any losses, claims, damages, penalties, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Company and its affiliates shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, penalties, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company and its affiliates, on the one hand, and WilliamsMarston, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company and its affiliates shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company and its affiliates, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, *as* well as any other relevant equitable considerations. The Company, its affiliates and WilliamsMarston agree that it would not be just and equitable if contribution pursuant to this section were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above in this section. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of Fees (but not expenses) actually received by WilliamsMarston from the Company and its affiliates pursuant to this Agreement.

The Company and its affiliates shall not, without the prior written consent of WilliamsMarston which shall not be unreasonably delayed or withheld, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification, reimbursement of expenses or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto).

The Company and its affiliates agree that neither WilliamsMarston nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company, its affiliates or any person or entity asserting claims on behalf of or in right of the Company and its affiliates caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Company and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)), except for losses, claims, damages, penalties or liabilities incurred by the Company and its affiliates which are finally judicially determined by a court of competent jurisdiction on the merits to have resulted primarily and directly from the willful misconduct or gross negligence of WilliamsMarston or any other Indemnified Party. In no event, however, shall WilliamsMarston's or any other Indemnified Party's liability to the Company or its respective affiliates, successors, or any person claiming on behalf of or in right of the Company, including Company's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors, exceed, when taken together with all losses for which WilliamsMarston or such other Indemnified Party is liable in connection with this Agreement or the Engagement, the amount of Fees actually received by WilliamsMarston in connection with the Engagement.

The indemnity, reimbursement, and other obligations and agreements of the Company and its affiliates set forth herein: (i) shall apply to any Services provided by WilliamsMarston in connection with the Engagement and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company and its affiliates may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company, its affiliates or any Indemnified Party, or any other person or entity, (iv) shall survive the completion of the Services described in, and any expiration or termination of the relationship established by, this Agreement and (v) shall be binding on any successor or assign of the Company and its affiliates. In no event shall any Indemnified Party be responsible for any loss profits or special, punitive, exemplary, indirect or consequential damages.

In addition to the indemnification, reimbursement, contribution and insurance provisions set forth herein, the CRO and Treasurer, and any WM personnel acting as officers, will be entitled to the benefit of the most favorable indemnification, reimbursement, contribution and insurance provisions provided by the Company and its affiliates to any of the directors and officers (or persons holding similar positions) in the Company's charter, by-laws or other organizational documents, by contract or otherwise.

**Use of Name and Deliverables**

In connection with the Engagement, WM may furnish the Company with information, advice, reports, analyses, presentations or other such materials (the "Deliverables"). The Company understands and agrees that any such Deliverables are furnished or presented solely for the Company's internal use and benefit (limited to management and the Board, the Company's financial advisors and legal counsel) and may not be furnished or conveyed in whole or in part to any person or entity other than as described herein without WilliamsMarston's prior written consent or as

5



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

required by law. The Company may furnish and convey Deliverables to its management, directors, lenders and other stakeholders (and to their respective financial advisors or legal counsel), in each case only if such persons (i) need to know the information set forth, or embodied in, such Deliverables and (ii) are informed of the confidential nature of the Deliverables; provided, however, that Deliverables branded "WilliamsMarston" may not be furnished, conveyed or presented to any person or entity other than management and the Board, the Company's financial advisors and legal counsel unless (A) Company has received WilliamsMarston's written consent to furnish or convey such information; and (B) such third parties are informed of the confidential nature of the information and, prior to Company's disclosure, each such third party to whom it seeks to disclose such information executes and delivers to WilliamsMarston a letter agreement in a form reasonably acceptable to WilliamsMarston. The Company further agrees that, without WilliamsMarston's prior written consent, it shall not refer to WilliamsMarston or attribute any information to WilliamsMarston in any document or communication external, or reasonably likely to be disseminated externally, to the Company for any purpose, including in press releases and web sites. The Company also agrees that it shall not, and shall not permit its advisors to, refer to WilliamsMarston or attribute any information to WilliamsMarston, either generically or by name, without WilliamsMarston's prior written approval except as required by law. WilliamsMarston shall not issue any press release which references this Agreement or Company without Company's prior written consent. Finally, the Company acknowledges that: (i) the Deliverables are not intended to, and will not, constitute a report, opinion, valuation or appraisal by WilliamsMarston or the Engagement Staff for purposes of the U.S. securities laws; (ii) the Deliverables were, and will be, prepared at the Company's request and the scope, level of specificity and sufficiency of the Deliverables for a particular purpose has been and will be determined on the basis of instructions and information provided to the Engagement Staff by the Company and publicly-available information, in each case with respect to which WilliamsMarston and the Engagement Staff do not assume responsibility for the accuracy or completeness thereof; and (iii) the Deliverables may contain forward looking statements, which statements are not guarantees of future performance and involve certain risks and uncertainties which are difficult to predict, such that actual future results and trends may differ materially from what is described in forward looking statements due to a variety of factors.

**Insurance**

The Company agrees to ensure that the CRO and Treasurer and any WM personnel who are acting as officers (the "Insured Staff") are covered under the Company's existing directors and officers liability insurance (the "D&O Policy") to the maximum extent of the coverage provided to those of the Company's personnel in similar positions of which such policy limit shall be in an amount acceptable to and agreed by WilliamsMarston.

Coverage under the D&O policy shall be conferred upon the Insured Staff as a condition to WilliamsMarston accepting the Engagement. The Company shall provide true, correct and complete copies of the D&O Policy, and all documentation and other communications regarding the Policy (including any



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

renewal or cancellation thereof) to WilliamsMarston, as well as a copy of the Board of Directors' resolutions of the Company appointing and insuring the Insured Staff.

The Company hereby represents and warrants that the D&O Policy is in full force and effect and that no event has occurred that constitutes or, with the passage of time or notice would constitute, an event of default thereunder or that would otherwise give the Insurers any right to cancel the D&O Policy or refuse to pay any claims thereunder. The Company shall not prejudice the rights of the Insured Staff to any payments which may become due to the Insured Staff under the D&O Policy or under any successor or replacement policy.

The Company shall be solely responsible for the payment of premium and any deductible under the D&O policy and shall give immediate written notice to WilliamsMarston of any actual, threatened or proposed cancellation, non-renewal or any material change in coverage, scope or limit of the D&O Policy. The Company shall maintain coverage throughout the period during which claims can be made against the Insured Staff. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the Insured Staff's rights hereunder. The effecting of the insurance set out herein shall not in any way limit, alter, or affect the liability and obligations of the Company under this Agreement.

**Other Matters**

The Parties intend that an independent contractor relationship will be created by this Agreement. As an independent contractor, WilliamsMarston will have the complete and exclusive control of the management and operation of its business, including the hiring and paying the wages and other compensation of all its employees and agents, and the paying of all bills, expenses and other charges incurred or payable with respect to the operation of its business. For the avoidance of doubt, WilliamsMarston will not be entitled to receive from the Company (on behalf of the CRO and Treasurer) any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits. WilliamsMarston will be responsible for all employment, withholding, income and other taxes incurred by WilliamsMarston in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between WilliamsMarston and the Company, or its Board of Directors.

Either party may terminate this engagement letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination. Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

Our employees are our most valuable assets. During the term of this engagement letter and for two years thereafter, you shall not directly or indirectly solicit or hire as an employee, consultant or otherwise any WilliamsMarston personnel and consultants who have had direct involvement with the services under this engagement letter. Should you violate this provision, you agree to pay WM an amount equal to 40% of such person's first annual compensation with the Company. This amount is intended to compensate WM for general business interruption as well as the cost to identify, attract, hire and train a replacement employee.

This Agreement constitutes the entire agreement between the parties, and there are no prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter that are not fully expressed herein or therein. This agreement and the Proposals shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles and shall inure to the benefit of and be binding on the successors and assigns of the Company and WilliamsMarston. The following Sections shall survive the completion or any termination of the Services: Confidentiality, Use of Name and Deliverables, Indemnification, Insurance, Non-Solicitation of Employees, Other Matters and any other provision which by law or by its nature should survive. Neither party may assign its rights or obligations under this agreement to any person or entity without the written consent of the other party, not to be unreasonably withheld, provided, however, that either party may assign its rights and obligations under this agreement to its affiliates upon reasonable written notice to the other party but without the written consent of the other party. Assignment shall not relieve either party of their obligations hereunder.

*[Remainder of Page Intentionally Left Blank]*



WilliamsMarston LLC
800 Boylston Street
16th Floor
Boston, MA 02199

**Confirmation**

If the terms of this engagement letter are acceptable to you, please indicate your acceptance and authorization for WM to proceed with the related work by signing this letter in the appropriate space and returning a copy to me. We look forward to working with you. If we can provide any additional information or respond to any questions you may have, please feel free to contact me at (617) 306 0951.

Best Regards,

*[signature]*

Landen C. Williams
Partner
WilliamsMarston LLC

Accepted by The Standard Register Company:

By: _____*[signature]*_____         Date:  August 26, 2015

Title:  President and CEO