**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 21, 2015 at 10:00 a.m. (ET)**<br>**Obj. Deadline: September 14, 2015 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION TO ESTABLISH PROCEDURES
TO TRANSFER, ABANDON, OR SELL DE MINIMIS ASSETS**

SRC Liquidation Company and its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this Motion (this "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 363, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6004 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), establishing procedures to transfer, abandon, or sell certain *de minimis* assets. In support of the relief requested herein, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

01:17626412.1

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363 and 554 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6007, and Local Rule 6004-1.

**BACKGROUND**

**A.     General Background**

2. On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession. No trustee or examiner has been appointed in these chapter 11 cases (collectively, the "Chapter 11 Cases").

3. On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

4. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of

01:17626412.1

these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2], which was filed on the Petition Date.

**B.     The Sale and Wind-Down**

5.     On June 19, 2015, the Court entered an order [Docket No. 698] (the "Sale Order") authorizing the sale of substantially all of the Debtors' assets (the "Taylor Sale") pursuant to the Asset Purchase Agreement, dated June 19, 2015 (the "APA"),[2] between the Debtors and Taylor Corporation ("Taylor").  The Taylor Sale closed on July 31, 2015.

6.     Under the APA, Taylor is permitted to designate any Transferred Asset as an Excluded Asset up to 90 days following the closing of the Taylor Sale.  *See* APA §§ 2.2(i), 2.14.

7.     The settlement agreement among the Debtors, Silver Point Finance, LLC ("Silver Point"), and the Committee [Docket No. 696] (the "Settlement Agreement"), executed by the parties and approved by the Court concurrently with approval of the APA, provides that certain assets of the Debtors which are not Transferred Assets and might otherwise be Excluded Assets will, in fact, be free and clear of the liens of Silver Point (such assets, the "Free and Clear Assets").  The Free and Clear Assets are (a) the Wind-Down Amount funded under the APA, including the portion used to fund the GUC Trust Seed Funding Amount (as defined in the Settlement Agreement); (b) the Debtors' interest in certain life insurance policies and in the trusts that hold them; (c) all causes of action under chapter 5 of the Bankruptcy Code that are Excluded Assets under the APA; and (d) the Debtors' pending claims against parties other than the Released Parties (as defined in the Settlement Agreement) and the Debtors' interests in the related director and officer insurance policies and proceeds.  The Settlement Agreement further

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the APA.

01:17626412.1

3

provides that, with the exception of the Free and Clear Assets, all other assets of the Debtors that are Excluded Assets and not Transferred Assets "constitute collateral securing the DIP Obligations, the obligations under the Term Loan Facilities, and/or adequate protection replacement liens granted with respect to the Term Loan Facilities." Settlement Agreement at 6. Accordingly, the parties agreed that except for the Free and Clear Assets, "the lenders under the Term Loan Facilities (or the First Lien Agent and/or Second Lien Agent on their behalf) shall be entitled to the proceeds of any Excluded Assets or, at their sole election, to recover title to and possession of any Excluded Assets." *Id.* at 6; *see also* Sale Order ¶ 49.

8. The Debtors' believe that the aggregate value of the Excluded Assets that are subject to the liens of the Second Lien Lenders (as defined in the Settlement Agreement) is far less than the outstanding principal amount still owed to the Second Lien Lenders.[3] Thus, from the perspective of the Debtors, these Excluded Assets, which include real and personal property, have little or no value to the Debtors' estates (collectively, the "De Minimis Assets"). Common sense suggests that this is particularly true with respect to those Potential Assets and Potential Contracts (each as defined in the APA) designated as Excluded Assets by Taylor post-closing. Under the APA, Taylor has the right to designate any Potential Asset or Potential Contract as a Transferred Asset without having to pay a dime in additional consideration. Thus, if Taylor decides not to make such designation, the most likely explanation is that Taylor believes that the value of those assets is nominal or, perhaps because of carrying costs, negative.

---

[3] After the payment against the Second Lien Debt in connection with the Taylor Sale, the outstanding principal balance under the Second Lien Term Loan Facility is approximately $88 million. By contrast, the Excluded Assets subject to the lien of the Second Lien Lenders is estimated by the Debtors to have a nominal value.

01:17626412.1

4

**RELIEF REQUESTED**

9.      By this Motion, the Debtors request entry of an order authorizing the Debtors, without the need for any further approval from the Court, to (a) transfer De Minimis Assets to Silver Point, (b) abandon De Minimis Assets, or (c) sell De Minimis Assets free and clear of liens and encumbrances in accordance with the following procedures (the "Abandonment and Sale Procedures"):

a. Upon receiving notice that an asset is designated an Excluded Asset, the Debtors shall provide Silver Point with notice of an opportunity to take title to and possession of such De Minimis Asset (each notice, a "De Minimis Asset Notice"). The Debtors shall serve the De Minimis Asset Notice by electronic mail on the following parties: (i) the UST, (ii) counsel to the Committee, and (iii) counsel to Silver Point (collectively, the "Notice Parties").

b. If Silver Point notifies the Debtors within two (2) business days that it elects to take title to and possession of such De Minimis Asset, then the Debtors shall file a notice identifying the De Minimis Asset transferred to Silver Point (each notice, a "Transfer Notice"). The Debtors shall serve a copy of the Transfer Notice by electronic mail on the Notice Parties. Immediately upon filing and serving the Transfer Notice on the Notice Parties, the identified De Minimis Asset shall be deemed transferred to Silver Point, and Silver Point shall be vested with title to and the right to possess such De Minimis Asset, and the Debtors shall have no further obligations associated with such De Minimis Asset.

c. If Silver Point fails to notify the Debtors of its election to take title to and possession of any De Minimis Asset within two (2) business days of receiving a De Minimis Asset Notice, the Debtors shall be authorized, in their sole discretion, to abandon, sell, or otherwise dispose of such De Minimis Asset.

d. If the Debtors elect to abandon a De Minimis Asset, they shall file a notice identifying the De Minimis Asset to be abandoned (each notice, an "Abandonment Notice"). The Debtors shall serve a copy of the Abandonment Notice by electronic mail on the Notice Parties, any party that has asserted an interest in the De Minimis Asset, and those parties

        entitled to notice in these Chapter 11 Cases under Bankruptcy Rule 2002. Immediately upon filing and serving the Abandonment Notice on the Notice Parties, the identified De Minimis Asset shall be deemed abandoned.

e.    If the Debtors elect to sell a De Minimis Asset (a "<u>Proposed Sale</u>"), they shall file a notice identifying the De Minimis Asset proposed to be sold (each notice, a "<u>Sale Notice</u>").  The Debtors shall serve a copy of the Sale Notice by electronic mail on the Notice Parties, any party that is known to have asserted an interest in the De Minimis Asset, and those parties entitled to notice in these Chapter 11 Cases under Bankruptcy Rule 2002. The Sale Notice, to the extent that the Debtors have such information, shall also include (i) the location of the De Minimis Asset; (ii) the economic terms of the Proposed Sale; and (iii) the identity of any non-debtor party to the Proposed Sale, along with a specification of whether that party is an "affiliate" or "insider" of the Debtors as those terms are defined under section 101 of the Bankruptcy Code.

f.    Parties receiving the Sale Notice shall have five (5) business days after the Sale Notice is filed and served to object to a Proposed Sale by filing such objection with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, Delaware 19801 and serving such objection by overnight or hand delivery and electronic mail on the Notice Parties and counsel to the Debtors (the "<u>Sale Objection Deadline</u>").  In the absence of an objection on or before the Sale Objection Deadline, or upon the consent of the Notice Parties, the Debtors may consummate the Proposed Sale without further notice or hearing and such Proposed Sale shall be deemed fully authorized by the Court.

g.    If an objection to a Proposed Sale is timely filed and served by the Sale Objection Deadline, the Debtors shall not proceed with the Proposed Sale unless (i) the objection is withdrawn or otherwise resolved or (ii) the Court overrules such objection at the next regularly scheduled omnibus hearing that is at least five (5) business days after service of the objection upon counsel to the Debtors, or at the next omnibus hearing that is agreed to by the objecting party and the Debtors.

h.    Any party that acquires a De Minimis Asset sold or abandoned by the Debtors pursuant to these procedures shall acquire such De Minimis Asset on an "as is, where is" basis without any representations or warranties

> from the Debtors as to the quality or fitness of such De Minimis Asset for either its intended use or any other purposes, and such parties shall take title to such De Minimis Asset free and clear of liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and other interests to attach to the proceeds of the sale or abandonment of the De Minimis Asset, if any, and the Debtors shall remit any such proceeds to Silver Point in accordance with the terms of the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

**A.    Basis for Establishment of the Abandonment and Sale Procedures**

10.    Pursuant to the Sale Order and the Settlement Agreement, Silver Point (on behalf of the lenders under the Second Lien Term Loan Facility) is entitled to the proceeds of any Excluded Assets or may recover title to and possession of any Excluded Assets.  *See* Sale Order ¶ 49; Settlement Agreement at 6.  Hence, the transfer of De Minimis Assets to Silver Point has already been approved by the Court, and the Debtors submit that the Abandonment and Sale Procedures establish an appropriate mechanism to effectuate the transfer of any De Minimis Assets to Silver Point.

11.    Additionally, section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Pursuant to the Sale Order, the Debtors have already received approval to sell the De Minimis Assets; however, Taylor has either already decided, or at some point will decide, not to take the De Minimis Assets.  The Debtors submit that Taylor's unwillingness to keep the De Minimis Assets (despite having already paid for them and having the right to keep them for no additional consideration) is evidence that the De Minimis Assets are of inconsequential value and benefit to the Debtors' estates.

12. Moreover, the Debtors have no use for the De Minimis Assets following the Taylor Sale. Retention of the De Minimis Assets by the Debtors will result in the unnecessary accrual of additional obligations by the Debtors' estates, such as the costs of storage, insurance and disposition, which the Debtors' estates cannot support. Given the Debtors' limited wind-down budget, the continued accrual of administrative expenses threatens the Debtors' ability to successfully consummate a chapter 11 plan. Thus, the Debtors may determine that abandonment of the De Minimis Assets is in the best interests of the Debtors' estates and creditors. As such, the Debtors submit that abandonment of any De Minimis Assets through the Abandonment and Sale Procedures is an exercise of the Debtors' sound business judgment and therefore should be authorized and approved by the Court.

13. In the event that the Debtors elect to sell any De Minimis Assets pursuant to the Abandonment and Sale Procedures, the Debtors submit that a sale should be authorized pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> [T]he notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

01:17626412.1

8

Fed. R. Bankr. P. 2002(c)(1).

14. To approve the use, sale, or lease of property out of the ordinary course of business, the Court must find some articulated business justification for the proposed action. *See In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*).

15. Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See In re Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *In re Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *In re Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

16. This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g.*, *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct

01:17626412.1

public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992).

17. As set forth more fully above, there is ample business justification for authorizing the sale of De Minimis Assets pursuant to the Abandonment and Sale Procedures. The Debtors are striving to minimize administrative expenses as they work toward confirming a chapter 11 plan of liquidation. To avoid the accrual of administrative expenses associated with maintaining any De Minimis Assets, it is in the best interest of the Debtors' estates to dispose of such assets as quickly and efficiently as possible. Moreover, because the Debtors will likely not receive any sale proceeds from the De Minimis Assets, the Debtors and their estates have an especially strong interest in minimizing disposition costs. The Debtors submit that the Abandonment and Sale Procedures will, to the extent the Debtors elect to do so, enable the Debtors to sell De Minimis Assets at a fair and reasonable price and in good faith. Additionally, the Debtors submit that the Abandonment and Sale Procedures satisfy the notice requirements of Bankruptcy Rule 2002. The Debtors further represent that no insider will gain an unfair advantage from any sale of De Minimis Asset pursuant to the Abandonment and Sale Procedures.

18. Therefore, the Debtors request that the Court authorize the sale of De Minimis Assets pursuant to the Abandonment and Sale Procedures.

**B.    Any Sale of the De Minimis Assets Should be Approved Under 11 U.S.C. § 363(f)**

19. In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a

01:17626412.1

bona fide dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f).

20. As explained above, Silver Point is entitled to the proceeds of any De Minimis Asset, or it may recover title to and possession of any De Minimis Asset.  If Silver Point does not elect to recover title to and possession of a De Minimis Asset in response to a De Minimis Asset Notice, the Debtors submit that Silver Point should be deemed to have consented to a sale of the any such De Minimis Asset.  Thus, the Debtors believe that at least the second subsection of section 363(f) is satisfied.

## REQUEST FOR WAIVER OF STAY

21. Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise.  The Debtors submit that the order approving the Abandonment and Sales Procedures, and any sale consummated pursuant to those procedures, be effective immediately.  As explained above, it is in the best interests of the Debtors' estates to consummate any sale transactions as quickly and efficiently as possible, thereby minimizing ongoing maintenance or other related administrative expenses.  Moreover, the often difficult task of securing a buyer will be facilitated by the Debtors' ability to quickly consummate a sale transaction.  Accordingly, the Debtors submit that the fourteen-day stay set forth in Bankruptcy Rule 6004(h) should be waived in connection with all sales of De Minimis Assets pursuant to the Abandonment and Sale Procedures.

## **NOTICE**

22. Notice of this Motion has been provided to (a) the UST; (b) counsel to the Committee; (c) counsel to Silver Point, in its capacity as administrative and collateral agent for certain secured lenders; and (d) all entities that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice of this Motion is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein, and such other and further relief as it deems just and proper.

Dated:  August 31, 2015
Wilmington, Delaware

　　　　　　　　　　　　　　　　　　 /s/ Andrew L. Magaziner
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*