UNITED STATES BANKRUPTCY COURT
IN THE DISTRICT OF DELAWARE

-----------------------------------------------------------

In re:

STANDARD REGISTER COMPANY, *et al.*,          CHAPTER 11

Debtors.          CASE NO. 15-10541 (BLS)

(Jointly Administered)

-----------------------------------------------------------

**Hearing Date: September 21, 2015 10 AM (ET)**
**Objection Deadline: September 4, 2015**

FILED

'15 SEP -4 AM 9:59

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

## RESPONSE TO OBJECTION DEBTORS' FIRST (1ST) OMNIBUS (SUBSTANTIVE) TO CLAIMS (DROP-SHIP ADMINISTRATIVE PRIORITY CLAIMS)

The Envelope Printery, by and through its attorney, objects and responds to the entry of the Proposed Order Sustaining Debtors' First (1st) Omnibus (Substantive) Objection to Claims (Drop-Ship Administrative Priority Claims ("Drop Ship Order") as it applies to The Envelope Printery. In support of this Response, The Envelope Printery relies on the Declaration of Roger Vogel, Chief Financial Officer of The Envelope Printery.

### PRELIMINARY STATEMENT

1.      The Envelope Printery has supplied envelopes and related goods to Debtors pursuant to a Preferred Subcontractor Agreement dated December 10, 2003 ("Agreement") and an Addendum to Preferred Subcontractor Agreement dated April 1, 2014.

2.      The Envelope Printery originally filed an administrative claim pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $321,460.57 for goods delivered to the Debtors within 20 days prior to Debtors' bankruptcy filing.

3.      Debtors and The Envelope Printery disagree on two points: A) the amount of goods received by Debtors within the 20 day period prior to the commencement of this case ("20

day period") and B) whether the amount of goods received by Debtors' designees within the 20

day period should be included in The Envelope Printery's 503(b)(9) claim.

4.    As a result of Debtors objection to The Envelope Printery's claim, The Envelope

Printery has double checked its claim, reexamined orders, invoices, computer records and

shipping documentation relating to this claim.

5.    Assembling this information was a complex project involving:  A) hundreds of

man hours; B) more than 300 orders; C) examining several different manufacturing and billing

computer systems; and D) contacting several shipping carriers selected by Debtors and Debtors'

designees and asking them to provide shipping information.

6.    The Envelope Printery was unable to verify whether all orders listed on the

attachment to Roger Vogel's Declaration (Exhibit 1) were in fact received by Debtor within the

20 day period.  The Envelope Printery anticipates that it will complete this process prior to the

hearing date for this matter and will amend this Response and Declaration if necessary.

7.    As of the date of filing this Response, The Envelope Printery has determined that

Debtors received goods actually or constructively in the amount of $310,339.56 during the 20

day period – a reduction in its original claim amount of $11,121.01.  The reduction is due to a

few duplicate entries and inclusion of orders that were received by Debtors or its designees prior

to or after the 20 day period.

8.    Of that total amount, goods totaling $212,544.35 were physically received by

Debtors' within the 20 day period.  These orders were shipped directly to Debtors' facilities

using a shipping carrier selected by Debtors.  See Declaration of Roger Vogel attached hereto as

Exhibit 1.

9.      Goods totaling $97,795.21 were received by Debtors' designees – and constructively received by Debtors - within the 20 day period. These orders were shipped directly to Debtors' designees using a carrier selected by the designees. See Declaration of Roger Vogel attached hereto as Exhibit 1.

10.     All of the goods included in the claim were delivered by The Envelope Printery to a shipping carrier selected by Debtors or its designees to locations specified by Debtors or its designees.

11.     Delivery of the goods to Debtors' or Debtors designees' designated carriers completed The Envelope Printery's obligation to perform under the Agreement and Addendum.

12.     Delivery of the goods to Debtors' or Debtors designees' designated carriers constituted "delivery" of the goods under the Uniform Commercial Code § 2-503.[1]

## RESPONSE TO OBJECTION

### A.      Goods Totaling $212,544.35 Were Physically "Received" by Debtors

Goods in the amount of $212,544.35 – not $186,812.82 as claimed by Debtors – were physically received by Debtors within the 20 days period. See Declaration of Roger Vogel attached hereto as Exhibit 1. These goods were delivered to Debtors' selected shipping carrier and physically received by Debtors within the 20 day period.

As such, there should be no dispute between the parties with respect to The Envelope Printery's 503(b)(9) claim for this amount - $212,544.35.

The remainder of this Reply addresses the remaining $97,795.21 of The Envelope Printery's administrative claim – goods shipped directly to third parties designated by Debtors.

---

[1] UCC § 2-503 provides that tender of delivery can be "determined by the agreement" of the parties. The Envelope Printery's delivery of the goods to Debtors' and Debtors' designees selected carriers complied with the provisions of UCC § 2-503.

**B.      Goods Shipped to Debtors' Designees Were "Constructively Received" By Debtors**

Debtors cite several drop shipment cases interpreting the word "receipt" in section

503(b)(9).  While these cases hold that, under the facts of each case, the goods were not

"received" by the debtor within the 20 time period, they do **not** stand for the proposition that

actual, physical receipt of the goods by the debtor is required for a valid 503(b)(9) claim.

The Court in *In re Momenta, Inc.,* 455 B.R. 353 (Bankr. D.N.H. 2011), *aff'd sub nom*

*Ningbo Chenglu Paper Prods.Manufacturing Co.v. Momenta, Inc.,* U.S. Distr. Lexis 122615

(Distr. N.H 2012) explicitly recognized a valid 503(b)(9) claim exists where goods are physically

received **or** "constructively received" by the debtor:

> The same interpretation must apply to § 503(b)(9) because it is related
> to, and a part of the remedies provided under the provisions of § 546(c).
> A seller must be entitled to an administrative expense claim where a
> debtor receives goods, by either physical possession **or constructive
> possession as specified in UCC § 2-705(2)**, within 20 days of the
> commencement of the bankruptcy case.  **Consequently, a seller may
> have an administrative claim in a drop shipment situation, so long
> as the debtor at some point had constructive possession of the goods.**
> Page 12 (emphasis added).

The drafters of the UCC made it clear in Official Comment 2 to UCC Section 2-705 that

"constructive receipt" of goods in a drop shipment situation occurs when goods are received by

the buyer's designee:

> 'Receipt by the buyer' includes received by the buyer's designated
> representative, the sub-purchaser, when the shipment is made direct
> to him and the buyer himself never receives the goods.

Thus, the *Momenta* court found that "receipt" under 503(b)(9) can be actual or

constructive and is determined by looking to the test specified in UCC Section 2-705.  The

drafters of UCC Section 2-705 made it clear "constructive receipt" occurs in drop shipments

where the goods are received by the buyer's designee.  That is precisely what occurred in this

case. Debtors' designees received $97,795.21 worth of goods within the 20 day period. Accordingly, the amount of goods shipped to Debtors' designees – along with the amount of goods received at Debtors' facilities – represent a valid section 503(b)(9) claim.

**C.      The Payment Obligation Acknowledges Receipt**

Debtors' seek to reclassify a portion of The Envelope Printery's claim from priority status under 503(b)(9) to an unsecured claim because a portion of goods delivered in the 20 day period were not physically "received" by Debtors. But if the goods were not "received", why is the amount for such goods listed in Debtor's Petition as a liability of Debtor? Why is there any obligation on Debtors' behalf to pay for goods not "received"? And if Debtors are successful, why would the amount be reclassified as an unsecured claim instead of denied outright?

The simple truth is The Envelope Printery completed its obligations to perform by delivering the goods to Debtors consistent with the Agreement and Addendum and exactly as Debtors specified. Such goods were constructively received by Debtors when they were delivered to Debtors' designees. Without "receipt" by Debtors' designees, there would be no obligation owed by Debtors to The Envelope Printery to pay for such goods. The Debtors Petition and its requested reclassification to an unsecured claim implicitly recognize the goods were "received". To adopt Debtors' position, would lead to the ludicrous result that Debtors have no obligation to pay The Envelope Printery for such goods because they were delivered – at Debtors' request – to Debtors' designees rather than Debtors themselves. Debtors' recognition of its obligation to pay for such goods acknowledges the goods were "received."

**D.      Public Policy Supports The Validity of Administrative Claims**

Public policy in this instance is self-evident. It is reflected in legislation – section 503(b)(9) - adopted by Congress. That is, sellers who deliver goods to debtors within 20 days of

the commencement of the debtors' bankruptcy should have a priority claim for such goods. There is nothing in section 503 that suggests that bankruptcy courts should disfavor such claims.

Public policy also favors seeing that commercial agreements are fulfilled as specified. The Envelope Printery created and shipped these goods as specified in the Agreement and Addendum. The relief Debtors seek would effectively penalize The Envelope Printery because it complied with the Agreement/Addendum.

This is not a case where a successful reorganization is doubtful. Here, a potential buyer of Debtors' assets has already been identified. Certainly, Debtors' ability to successfully reorganize will not turn on whether The Envelope Printery's 503(b)(9) claim is allowed.

WHEREFORE, The Envelope Printery respectfully requests this Court to deny the Debtors' reclassification of its 503(b)(9) claim and accept such claim in the amount of $310,339.56.

## NOTICE

Notice of this Response has been provided to Debtors Counsel.

Respectfully submitted,

Daniel V. Iannotti, Attorney for The Envelope Printery

Date:  September 3, 2015

/s/ Daniel V. Iannotti
Daniel V. Iannotti (MI P30167)
1475 Club Drive
Bloomfield Hills, MI  48302
313-433-6420
Dan@TheGeneralCounsel.com

6