# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: September 15, 2015 at 10:00 a.m. (ET) |
| | Objection Deadline: September 4, 2015 at 4:00 p.m. (ET) |

### LIMITED OBJECTION/RESPONSE OF PARTY-IN-INTEREST, TLF GRAPHICS, TO DEBTORS' FIRST (1ST) OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS (DROP-SHIP ADMINISTRATIVE PRIORITY CLAIMS) PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1

TLF Graphics Inc. ("TLF Graphics"), by and through its undersigned counsel, hereby files this Limited Objection/Response (the "Response") to Debtors' First (1st) Omnibus (Substantive) Objection to Claims (Drop-Ship Administrative Priority Claims) Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 (the "Claim Objection") and respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

2. The venue of the bankruptcy case and this motion are properly before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates stated by the Debtors for relief sought by the Claim Objection is section 502 of the Bankruptcy Code, Rule 3007 of the Bankruptcy Rules and Rule 3007-1 of the Local Rules.

## BACKGROUND

4. On March 12, 2015 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

5. Prior to the Petition Date, certain of the Debtors utilized services provided by TLF Graphics by subcontracting with TLF Graphics to produce printed materials ordered by the Debtors' customers.

6. For more than 12 years, TLF Graphics and the Debtors operated under the terms of a subcontract agreement by which the Debtors would present purchase orders to TLF Graphics whereby the Debtors purchased goods from TLF Graphics for the Debtors customers and arranged for the delivery of those goods to the Debtors' customers (the "Subcontract Agreement"). A copy of the Subcontract Agreement dated March 5, 2003 between The Standard Register Company and TLF Graphics is attached hereto as Exhibit "A". The Subcontract Agreement specifically provides that the goods "shall be **purchased** from time to time by Standard Register from [TLF Graphics] pursuant to and in accordance with the terms and conditions contained in purchase orders previously or hereafter issued by Standard Register to [TLF Graphics] or subcontract agreements previously or hereafter entered into between Standard Register and [TLF Graphics]." See Ex. A, ¶ B.

2

7. Additionally, the Subcontract Agreement provided that "[e]ach Purchase Order shall hereinafter be referred to as a 'Subcontract'". Id. at ¶ C.

8. Within the 20 days prior to the Petition Date, in accordance with the customary business practices, TLF Graphics provided goods to the Debtors valued at $139,449.49 ("TLF Graphics' Administrative Expenses"); consistent with the business practices and in accordance with the terms of the Subcontract Agreement and Subcontracts, the goods were shipped directly to the Debtors' customers.

9. TLF Graphics timely and properly filed a proof of claim form setting out its request for payment of TLF Graphics' Administrative Expenses (the "503(b)(9) Claim"). A copy of the 503(b)(9) Claim is attached hereto as Exhibit "B".

10. TLF Graphics used the form to request payment of TLF Graphics' Administrative Expenses, rather than filing an application for allowance of said claim, because the procedure established by order of the Court on May 8, 2015 at Doc No. 449 (the "Bar Date Order") specifically provided for the fuse of a proof of claim form. See Bar Date Order, ¶ 18.

11. The Claim Objection seeks to modify certain claims asserting priority under section 503(b)(9) of the Code on the grounds that the goods were not actually received by the Debtor but instead were shipped directly to the Debtors' customers and received within the 20 days prior to the Petition Date and thus the plain language of section 503(b)(9) is not met.

12. While TLF Graphics' claim is not included in the Claim Objection, it's 503(b)(9) Claim asserts a priority claim based on the same facts and circumstances as the subject of the Claim Objection and therefore, believes that it is important for the Court to have a complete description of the relevant facts as it applies to other creditors asserting administrative expenses under section 503(b)(9).

13. TLF Graphics reserves all rights to amend this Response, submit further evidentiary support, and revise its arguments to the extent its 503(b)(9) Claim is the subject of an objection in the future.

14. TLF Graphics believes that the Claim Objection should be overruled for several reasons including but not limited to: (a) the Claim Objection is procedurally improper because section 502 applies only to claims filed under section 501 of the Bankruptcy Code; (b) assuming *arguendo* that the Claim Objection is properly asserted, the operations of the Debtors' businesses and the need for the Debtors' customers to receive goods timely, together with the Subcontract Agreement leads to the inescapable conclusion that the 503(b)(9) Claim should be properly allowed in these cases; (c) to the extent the 503(b)(9) Claim is not provided administrative priority, a constructive trust should be imposed on any funds paid over to Debtors' customers in connection with the goods delivered by TLF Graphics to avoid the Debtors from being unjustly enriched.

## ARGUMENT

**A.    Section 502 Is Not Available to Reclassify 503(b)(9) Claims**

15. Section 503(b)(9) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed, administrative expenses . . .
> (9) The value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. §503(b)(9)

16. Section 502 of the Bankruptcy Code provides:

> (a) A claim or interest, proof of which is **filed under section 501** of this title, is deemed allowed, unless a party in interest . . . objects.
>
> (b) Except as provided in  . . . if such objection to a claim is made . . . the court . . . shall determine the amount of such claim. . . .

4

11 U.S.C. §502(a) and (b) (emphasis added).

17.     In this case, the 503(b)(9) Claim was not a claim filed under section 501 of the Bankruptcy Code. As such, section 502 is not available to consider the allowance, disallowance or reclassification of claims asserted under section 503 of the Bankruptcy Code.

18.     This position that section 502 is limited to claims filed only under section 501, and is not available to consider 503(b)(9) claims has been upheld by multiple courts in a variety of jurisdictions. See ASM Capital LP v. Ames Dep't. Stores, Inc. (In re Ames Dep't Stores, Inc.), 582 F.3d 422, 427-32 (2d Cir. 2009); In re TI Acquisition, LLC, 410 B.R. 742, 749-750 (Bankr. N.D. Ga. 2009) (citing several cases holding 502(d) does not apply to the allowance of administrative expenses); In re Plastech Engineered Prods, Inc., 394 B.R. 147, 149 (Bankr. E.D. Mich. 2008) (holding that "§502(d) may not be used to disallow a §503(b)(9) administrative expense"); Beasley Forest Products, Inc. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.), 297 B.R. 326, 328-31 (Bankr. S.D. Ga. 2003).

19.     In particular, the Second Circuit has held that 503(b) administrative expense claims are not subject to the provisions of §§ 501 and 502, which apply to the allowance of claims generally. See ASM Capital LP v. Ames Dep't. Stores, Inc. (In re Ames Dep't Stores, Inc.), 582 F.3d 422, 427-32 (2d Cir. 2009) ("[we] hold that § 502(d) does not apply to administrative expenses under § 503(b)"); Beasley Forest Products, Inc. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.), 297 BR 326, 328-31 (Bankr. S.D. Ga. 2003).

20.     Indeed the Second Circuit has noted that:

> The structure and context of § 502(d) suggests that Congress intended it to differentiate between claims and administrative expenses, and not to apply to the latter. Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under § 503.

5

Id. at 429.

21.     Given that section 502 is not available for the relief sought herein, the Claim Objection must be overruled.

### B.     Equities Mandate That The 503(b)(9) Claim Be Allowed

22.     Assuming *arguendo* that the Debtors may seek reclassification of the 503(b)(9) Claims under section 502, the Claim Objection must still be denied based on the equities and intention of section 503(b)(9).

23.     As a court of equity, Bankruptcy Courts should avoid unfair and inequitable results where the clear facts support the conclusion that the parties intended for the goods to be supplied to the Debtors' customers on behalf of the Debtors. Pepper v. Litton, 308 U.S. 295, (1939) (bankruptcy courts are "courts of equity, their proceedings inherently proceedings in equity").

24.     While it is recognized that application of the plain language of a statute is a critical component of bankruptcy law, where the intention of the parties, and business practicalities support a finding that lends itself to giving full credit to the actual intent of the statute, such reasoning should be exercised.

25.     In this case, TLF Graphics and the Debtors entered into the Subcontract Agreement whereby TLF Graphics was to provide goods to the Debtors and/or the Debtors' customers as if such goods were being delivered to the customers directly from the Debtors.

26.     Indeed, each purchase order submitted by the Debtors to TLF Graphics contains the following documentation:

> (a) an invoice stating that the goods were sold to one of the Debtors and shipped to one or more of the Debtors' customers (a copy of a redacted Invoice is attached as Exhibit "C");

6

 (b) one or more packing slips/bills of lading stating that the goods were being delivered from one of the Debtors (a copy of a redacted Invoice is attached as Exhibit "D");

 (c) a purchase order containing specific order information including specifications for the goods being shipped, and shipping instructions;[2] and

 (d) a detailed list of Supplier's Responsibilities that sets out general shipping instructions including that the supplier "MUST use Standard Register's Bill of Lading Numbers, shipping labels must have Standard Register printed on them. Supplier's Company name should not show on ANY shipping documents or cartons."[3]

 27. As stated in the Subcontract Agreement, it was Standard Register's intention to purchase the goods from TLF Graphics and for it to appear to the customer that the goods were being delivered from Standard Register, and not TLF Graphics or any other subcontractor; and that the goods be delivered on a timely basis. See Subcontractor Agreement, ¶ B (Standard Register is purchaser), and ¶ 1.2 ("Time is of the essence").

 28. The requirement for timely compliance with delivery deadlines of the customers' orders prevented the goods from being shipped to the Debtors and then from the Debtors to the customers.

 29. Thus, the fact that the goods were not received by the Debtors should not preclude allowing the 503(b)(9) Claim as an administrative expense where the intention of the statute is to encourage parties to continue to conduct business event where a bankruptcy filing is imminent which in turn provides continued value to the debtor on the eve of a filing.

---

[2] The document contains a notation that it "contains confidential and proprietary information" accordingly, it is not being produced herewith. TLF Graphics will provide a copy for *in camera* inspection if directed. A copy of a purchase order containing similar information such as the shipping specifications has been filed by a similarly situated creditor at Doc. No. 1101, pp. 5-8.

[3] The document contains a notation that it "contains confidential and proprietary information" accordingly, it is not being produced herewith. TLF Graphics will provide a copy for *in camera* inspection if directed. A copy of a purchase order containing similar information has been filed by a similarly situated creditor at Doc. No. 1101, p. 9.

30. It has been stated that section 503(b)(9) was added to the Bankruptcy Code by BAPCPA to afford "protection to sellers of goods on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of whether the technical requirements for reclamation were met. *While no legislative history exists, one can only surmise that these amendments reflect Congress' intent to better insure that ordinary course of business sellers of goods received by the debtor in the twenty days before the petition date gain priority in payment over most other creditors*." In re TI Acquisition, LLC, 410 B.R. 742, 746 (Bankr. N.D. Ga. 2009) (emphasis added).

31. Given the long-standing contractual and business relationship between the Debtors and TLF Graphics, particularly the subcontract arrangement that provides for specific shipping instructions that make it appear that the goods are being delivered by the Debtors, there should be at a minimum, a determination that the goods were constructively received by the Debtors.

32. The Debtors should not be permitted to benefit from a contractual relationship that provides for the actual purchase of goods by the Debtors and the appearance that the goods were shipped by the Debtors without complying with the attendant obligations that arise from the contract, including those obligations set out at section 503(b)(9). By continuing to provide goods to the Debtors and shipments to the customers, TLF Graphics provided value to the Debtors on the eve of its bankruptcy for which it should receive a benefit which is the intention of section 503(b)(9).

33. Further, the business operations and nature of the goods supplied to the customers by TLF Graphics on behalf of the Debtors were typically important to the respective customer's businesses and were needed on a fairly expedited basis. Indeed, the majority of the purchase

orders completed by TLF Graphics contained a request that the goods be received within approximately two weeks; certain orders were requested to be filled by the next day or within a week. These delivery specifications are common in the industry.

34. Throughout the term of the contract, the customers' needs would not have been met if TLF Graphics were required to ship goods to the Debtors and the Debtors turned around to ship the goods to the customers. This would also be a highly inefficient and a costly manner of conducting business.

35. It is submitted that the purpose and intent of section 503(b)(9) should be impressed on the transactions that the Debtors engaged in with the subcontractor claimants. The subcontractors' claims, such as TLF Graphics' 503(b)(9) Claim should be afforded administrative priority under section 503(b)(9) as it is consistent with the purpose and intent of the statute of insuring that ordinary course of business vendors of goods received by the debtor in the twenty days before the petition date are afforded priority over certain other creditors.

36. Failure to recognize the priority of the transactions would be highly inequitable an inconsistent with the overall bankruptcy goals of advancing equity.

    **C.    The Debtors Were Unjustly Enriched by Customers' Payments; A Constructive Trust Must Be Imposed On Customer Payments**

37. To the extent the Debtors received payments from the customers for the goods that comprise TLF Graphics' 503(b)(9) Claim, and the 503(b)(9) Claim is not deemed to be an administrative expense, Debtors will have been unjustly enriched and a constructive trust should be imposed directing the turnover of the funds to TLF Graphics.[4]

38. In Ohio, "unjust enrichment occurs when a party 'has and retains money or benefits which in justice and equity belong to another." Strahler v. Vessels, 2012 WL 402113, at

---

[4] The Subcontract Agreement "Choice of Law" provision dictates that Ohio law applies.

\* 3 (4th Dist. Ohio Ct. App. Sept. 7, 2012) (citing <u>Hummel v. Hummel</u>, 133 Ohio St. 520, 14 N.E.2d 923 (1938)).

39. "To prevail on a claim of unjust enrichment, the plaintiff must demonstrate: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" <u>Id.</u> (citations omitted).

40. Here, to the extent the Debtors received and retained funds representing payment for the goods TLF Graphics delivered on behalf of the Debtors to its customers. TLF Graphics provided a benefit to the Debtors by delivering goods to the Debtors' customers and in turn the customers paid the Debtors for the goods. The Debtors were likely aware of the receipt of payments and the retention of the funds by the Debtors. The retention of the funds without paying them over to TLF Graphics unjustly benefitted the Debtors at the expense of TLF Graphics.

41. In this situation, equity dictates that a constructive trust be imposed as to the funds.

42. In Ohio, it has been held that "A constructive trust arises by operation of law against one who through any form of unconscionable conducts holds legal title to property where equity and good conscience demands that he should not hold such title." <u>Dixon v. Smith</u>, 119 Ohio App.3d 308, 319, 695 N.E.2d 284 (1997).

43. A trust is deemed to arise "'against one who, by fraud, actual or constructive, by duress, or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and right to property which he ought not, in equity and good conscience, hold and enjoy.'" <u>Ferguson</u>

v. Owens, 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (1984) (quoting 76 Am. Jur.2d, Trusts, Section 221, at 446 (1975)).

44. "The basis of a constructive trust is the unjust enrichment that would result if the person having title to the property were permitted to retain it." Hill v. Hill, 2002 WL 243294, at * 3 (10th Dist. Ct. App. Ohio Feb. 21, 2002) (citations omitted).

45. To the extent the Debtors were unjustly enriched by the receipt and retention of funds paid by the Debtors customers for goods provided by TLF Graphics, those funds were wrongfully retained. Given the wrongful nature of the Debtors' conduct, a constructive trust should be imposed in the retained funds and thereafter paid over to TLF Graphics.

46. In sum, the Claim Objection is improperly before the Court and is not the proper device by which to challenge any requests for administrative expenses asserted under section 503 of the Bankruptcy Code because section 502 is limited to claims filed under section 501.

47. Assuming *arguendo* that the Claim Objection is allowed to proceed notwithstanding the procedural defect, equity mandates that TLF Graphics' 503(b)(9) Claim be allowed as an administrative expense of the Debtors' estates. Indeed the Debtors' and their customers' business operations require a rapid turnover of goods which do not allow for alternate shipping arrangements. TLF Graphics should not be deprived of an administrative expense claim simply because it complied with the business terms of the Debtors and its customers.

48. Even if the drop-ship claims are reclassified, the Debtors were unjustly enriched to the extent they received payment for goods delivered to customers by TLF Graphics and did not make a corresponding payment to TLF Graphics. A constructive trust should be imposed for the funds received that were not paid over to TLF Graphics.

WHEREFORE, TLF Graphics respectfully requests that this Court enter an order: (i) overruling the Claim Objection; (ii) deeming TLF Graphics' 503(b)(9) Claim an allowed administrative expense of the estate; or in the alternative, (iii) imposing a constructive trust on any funds received by the Debtors for goods delivered by TLF Graphics, and directing turnover of same; and (iv) granting such other relief as is just and proper, including but not limited to any relief under 11 U.S.C. § 105.

Dated: September 4, 2015

        FERRY JOSEPH, P.A.

        /s/ Jason Powell
        Jason Powell, Esquire (No. 3768)
        824 Market Street, Suite 1000
        P. O. Box 1351
        Wilmington, DE 19899
        (302) 575-1555

        Local Counsel for TLF Graphics Inc.

        - and -

        HARRIS BEACH PLLC
        Lee E. Woodard, Esq.
        Kelly C. Griffith, Esq.
        333 West Washington St.
        Suite 200
        Syracuse, New York 13202
        (315) 423-7100

        Counsel for TLF Graphics Inc.