## IN THE UNITED STATES BANKRUPT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SRC LIQUIDATION COMPANY, *et al.*, | § | Case No. 15-10541 (BLS) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re: Docket No. 990** |
| | § | |
| | § | **Obj. Deadline: September 14 2015** |
| | § | **Hrg Date: September 21, 2015 at 10:00 a.m. (ET)** |

## XEROX CORPORATION'S LIMITED OBJECTION TO DEBTORS' MOTION TO ESTABLISH PROCEDURES TO TRANSFER, ABANDON, OR SELL DE MINIMIS ASSETS

Xerox Corporation ("**Xerox**") objects in part to the *Debtors' Motion to Establish Procedures to Transfer, Abandon, or Sell De Minimis Assets* [D.I. 990] (the "**De Minimis Assets Motion**"), under which the Debtors seek approval of procedures regarding the proposed transfer of Excluded Assets of alleged de minimis value.[1]

### BACKGROUND

1.     Xerox and the Debtors had an extensive business relationship. Among other things, Xerox has leased digital reproduction and ancillary equipment to the Debtors.[2] Xerox also provided the Debtors with operational and maintenance services for the Xerox equipment.

2.     The various lease and rental agreements between Xerox and the Debtors include (a) a certain Fixed Option Price Lease dated August 23, 2011 (the "**2011 FOPL**"), under which Xerox leases eight "iGen" digital printing presses to Debtor SRC Liquidation Company, f/k/a

---

[1]  All capitalized terms not otherwise defined herein shall have the same meaning as defined in the De Minimis Assets Motion.

[2]  A schedule describing the equipment that Xerox has sold, leased or rented to the Debtors, describing the nature of the conveyance, is attached hereto as Exhibit "A" (the "**Equipment Schedule**"). The Equipment Schedule is illustrative and may not include all items of equipment sold, leased or rented by Xerox. Accordingly, Xerox reserves all rights to amend the Equipment Schedule accordingly.

The Standard Register Company ("**SRC**"), and (b) a certain Fixed Option Price Lease dated October 21, 2013 (the "**2013 FOPL**"), under which Xerox leases one "iGen" digital printing press to SRC.

3.      Xerox contends that it owns title to the equipment that it has provided the Debtors under the parties' various lease and rental agreements, including the iGen presses conveyed under the 2011 FOPL and the 2013 FOPL. Additionally, and in the alternative, Xerox holds properly perfected, first lien security interests in various items of the equipment leased by Xerox to the Debtors, including the iGen presses.

4.      Taylor has not yet designated whether any of the executory contracts and leases between the Debtors and Xerox are to be assumed by the Debtors and assigned to Taylor.

5.      As set forth in the De Minimis Assets Motion, the Debtors seek authority to transfer assets that Taylor is permitted to designate as Excluded Assets, and which the Debtors contend would be of nominal value, in one of two ways: (i) to Silver Point free and clear of any liens, claims and encumbrances; and (ii) if Silver Point declines to accept the asset, then after notice to certain notice parties and to any party claiming an interest in the asset, by either sale or abandonment "as is where is."

## OBJECTION

6.      Xerox objects to the relief requested to the extent that it would allow for the conveyance of any Excluded Asset in which Xerox holds title. Xerox further objects to the relief requested to the extent that it would allow for the conveyance of any Excluded Asset in which Xerox holds a security interest to Silver Point free and clear of Xerox's security interest unless Xerox is provided with adequate protection of that interest.

## DISCUSSION[3]

---

[3] All statutory references, unless otherwise indicated, shall be to the Bankruptcy Code, Title 11, United States Code.

7.      A debtor-in-possession may not sell property which it does now own (except with respect to the interests of a co-owner where the debtor holds an undivided interest), and a sale under section 363(f) cannot cut off or estop the ownership rights and claims of any other person in the property to be sold.  As stated by the Third Circuit, "[b]ankruptcy law simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters. Inc.*, 960 F.2d 366, 372 (3d Cir. 1992) (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962)).  "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." *Universal Bonding Ins. Co.*, 960 F.2d at 371 (quoting *In the Matter of Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir. 1985)).  As held by this Court, "[i]mplicit within the statutory grant of authority to sell property under section 363, however, is the requirement that the estate actually have an interest in the property to be sold." *Gorka v. Joseph (In re Atlantic Gulf Comm. Corp.)*, 326 B.R. 294, 298 (Bankr. D. Del. 2005).

8.      Thus, "[a] bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property." *In re Claywell*, 341 B.R. 396, 398 (Bankr. D. Conn. 2006) (quoting *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 608-09 (9th Cir. 2004)).  *Accord Tambay v. Dickman (In the Matter of Simicich)*, 71 B.R. 48, 50 (Bankr. M.D. Fla. 1987) (holding that person with ownership interests in property sold by the trustee could not be divested of his ownership under section 363(b) or (f)).  Finally, it goes without saying that a bankruptcy court may not, pursuant to section 363(f) or any other section of the Bankruptcy Code, order the sale of estate property free and clear of a defense of any party concerning that property.  *See Folger Adam Security Inc. v. Dematteis/MacGregor JV*, 209 F.3d 252, 262 (3d Cir. 2000).

9.      Similarly, under section 363(e), Xerox is entitled to adequate protection of any security interest that it has in property conveyed by the Debtors. The proposed procedures, however, would permit Xerox's security interests in equipment to be stripped without the provision of any replacement lien or other protection and without Xerox having the right or ability to contest the adequacy of any protection to be provided.

10.     Any transfer by the Debtors of any equipment in which Xerox holds title, absent Xerox's consent, is simply improper.  Additionally, any transfer by the Debtors of equipment in which Xerox holds a security interest would be improper to the extent that the conveyance would be free of that security interest without some form of adequate protection and the right of Xerox to contest the adequacy of any protection to be provided.

11.     To avoid any potential prejudice to Xerox, at a minimum Xerox must be afforded due notice of any efforts by the Debtors to convey equipment that is subject to any Xerox lease or rental agreement and the opportunity to object to any intended conveyance under the proposed De Minimus Asset procedures.

Accordingly, for the forgoing reasons, Xerox objects to De Minimus Asset Motion and requests that the relief requested be denied and that Xerox be granted any and all other relief to which it may be entitled.


Dated: September 14, 2015          CIARDI CIARDI & ASTIN
        Wilmington, Delaware

                                    _____
                                    Daniel K. Astin (No. 4068)
                                    John D. McLaughlin, Jr. (No. 4123)
                                    Joseph J. McMahon, Jr. (No. 4819)
                                    1204 N. King Street
                                    Wilmington, Delaware 19801
                                    Tel: (302) 384-9545
                                    Fax: (302) 658-1300
                                    jmclaughlin@ciardilaw.com

-and-

Mark H. Ralston, Esq.
FISHMANJACKSON
700 Three Galleria Tower
13155 Noel Road, L.B. 13
Dallas, Texas 75240
Tel:  972.419.5500
Fax: 972.419.5501
mralston@fishmanjackson.com

*Counsel to Xerox Corp.*