# EXHIBIT 2

# LIQUIDATION ANALYSIS

## SRC Liquidation Company et al.
## Liquidation Analysis[1]

Pursuant to section 1129(a)(7) of the Bankruptcy Code (the "Best Interests Test"), each holder of an Impaired Claim or Equity Interest must either: (i) accept the Plan; or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting Holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

In determining whether the Best Interests Test has been met, the first step is to determine the projected recovery that each Class of Creditors would receive in a hypothetical liquidation of the assets of the Debtors in a chapter 7 proceeding. That amount is then compared to the projected recovery that each Class of Creditors is expected to receive under the Plan.

The Debtors, with the assistance of their restructuring advisors, prepared this hypothetical liquidation analysis (the "Liquidation Analysis") in connection with the Disclosure Statement. The Liquidation Analysis indicates the estimated amounts available to make distributions to Holders of, among other Creditors, Second Lien Secured Claims and General Unsecured Claims as part of a hypothetical chapter 7 liquidation, as an alternative to the Plan. This Liquidation Analysis does not compare alternative recoveries to (a) Holders of Other Secured Claims and Priority Claims, as they are deemed to vote to accept the Plan, and (b) Holders of Subordinated Claims or Equity Interests, as they are not receiving any recoveries in any event. The Liquidation Analysis is based upon the assumptions discussed herein and in the Disclosure Statement.

The Liquidation Analysis has been prepared to reflect the hypothetical situation that the Chapter 11 Cases convert to chapter 7 cases on or about December 1, 2015 (the "Liquidation Date") with a chapter 7 trustee (the "Chapter 7 Trustee") appointed by the Bankruptcy Court. It also assumes that the Effective Date would occur on the Liquidation Date. The Debtors believe that the Plan provides for the liquidation of the Debtors in a manner that is more time and cost effective than liquidation under chapter 7 of the Bankruptcy Code. The Debtors believe that a conversion to chapter 7 would likely result in a delay of distributions to Creditors and a reduction in recoveries compared to those available under the Plan. The Debtors believe that a Chapter 7 Trustee would require time and effort to become familiar with their books, records, systems, and assets. The institutional knowledge of the Debtors' officers and advisors and the advisors to the Committee is integral to resolving outstanding issues. Accordingly, the Debtors believe the value of property to be received under the Plan by each Holder of an Allowed Second Lien Secured Claim and General Unsecured Claim would be equal to or greater than the value such Holders would receive in a liquidation under chapter 7 of the Bankruptcy Code. To arrive at that conclusion, the Debtors estimated and compared the likely returns under the Plan and under chapter 7.

The determination of the hypothetical chapter 7 liquidation to wind down the Debtors' estates is an uncertain process involving the use of estimates and assumptions that, although considered

---

[1] Unless separately defined herein, all capitalized terms have the meanings ascribed to them in the *Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* (the "Plan") or the *Disclosure Statement for Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* (the "Disclosure Statement").

reasonable by the Debtors and their advisors, are inherently subject to significant uncertainties and contingencies beyond the control of the Debtors. ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS UNDER THE PLAN OR A CHAPTER 7 LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT APPROXIMATE THE ASSUMPTION REPRESENTED HEREIN. ACTUAL RESULTS COULD VARY MATERIALLY.

*Amounts in $1,000's* **UNAUDITED**

## Liquidation Analysis for Second Lien Secured Claims

|  |  | **Chapter 11** | **Chapter 7** |
|---|---|---|---|
| Sources of Funds: |  |  |  |
|  | Payment from Taylor[1] | $11,270,000 | $11,270,000 |
|  | Excluded Assets that are not Free and Clear Assets | Unknown[2] | Unknown |
|  | Subtotal: | Unknown | Unknown |
| Uses of Funds: |  |  |  |
|  | Administrative Expenses | $Unknown[3] | $Unknown |
|  | Subtotal: | $11,270,000 | $11,270,000 |
| Amount Available for Distribution to Holders of Second Lien Secured Claims: |  | $11,270,000 | $11,270,000[4] |

---

[1] This amount has already been paid.

[2] It is not yet known which of the Debtors' Assets will constitute Excluded Assets that are not Free and Clear Assets.

[3] For the Plan scenario, this category includes the fees payable to the Secured Creditor Trustee or otherwise in connection with the Secured Creditor Trust Agreement. It is assumed that the Holders of Second Lien Secured Claims would incur at least as much in fees and expenses if the Excluded Assets that are not Free and Clear Assets were abandoned by a Chapter 7 Trustee to the Holders of Second Lien Secured Claims.

[4] It is anticipated that if the Chapter 11 Cases are converted to chapter 7, distributions to Holders of Allowed Second Lien Secured Claims would be delayed.

3

Amounts in $1,000's                                                                                       **UNAUDITED**

**Liquidation Analysis for General Unsecured Claims**

|  |  | Chapter 11 | Chapter 7 |
|---|---|---|---|
| Sources of Funds:[1] |  |  |  |
|  | Cash[2] | $4,797 | $4,797 |
|  | GUC Trust Seed Funding Amount | $600 | $600 |
|  | Avoidance Actions[3] | Unknown | Unknown |
|  | Subtotal: | $5,397 | $5,397 |
| Uses of Funds: |  |  |  |
|  | Administrative Expenses[4] | $(450)[5] | $(450)[6] |
|  | Professional Fee Claims[7] | $(1,230) | $(1,230) |
|  | Statutory Fees | $(84) | $(97) |
|  | Chapter 7 Trustee Fees | $ -- | $(364)[8] |
|  | Priority Claims | $(2,475) | $(2,475) |
|  | Subtotal: | $(4,239) | $(4,616) |
| Amount Available for Distribution to Holders of General Unsecured Claims: |  | $1,158 | $961[9] |

---

[1] As the obligation of Taylor to pay the Taylor Payment Receivable and the Claims that will be paid by Taylor's satisfaction of the Taylor Payment Receivable exactly offset each other in each of the chapter 11 and chapter 7 scenarios, both the Sources of Funds and the Uses of Funds set forth herein ignore these items.

[2] All amounts set forth herein are as of the Liquidation Date and include retainers yet to be applied by certain Professionals.

[3] The ultimate recovery on the Avoidance Actions is subject to a number of factors that are outside the control of the Debtors and, therefore, it is difficult, if not impossible, to estimate with any degree of certainty the ultimate outcome of any of the Avoidance Actions. However, it is assumed that a Chapter 7 Trustee would take the same steps to prosecute the Avoidance Actions as contemplated under the Plan. Therefore, the inability to predict the outcome of the Avoidance Actions or other litigation, and hence the projected recovery, is the same in a liquidation of the Debtors under chapter 7 as compared to the terms of the Plan.

[4] Amount excludes Professional Fee Claims.

[5] For the Plan scenario, this category includes the fees payable to the GUC Trustee or otherwise in connection with the GUC Trust Agreement. It is assumed that the Chapter 7 Trustee would incur at least the same amount of fees and costs.

[6] Administrative expenses are anticipated to be higher in chapter 7 as a consequence of the inefficiencies of the Chapter 7 Trustee's learning curve with respect to the Debtors' assets and obligations.

[7] Amount includes holdbacks for certain Professionals.

[8] Chapter 7 Trustee fees are calculated as set forth in the fee schedule included in section 326 of the Bankruptcy Code. The estimated amount of such fees is based on total disbursements by the Chapter 7 Trustee of approximately $5.4 million. This amount also includes an estimate for the Chapter 7 Trustee's professional fees. These amounts are not incurred under the Plan.

[9] It is anticipated that if the Chapter 11 Cases are converted to chapter 7, distributions to Holders of Allowed General Unsecured Claims would be delayed.