# **EXHIBIT 3**

# **ANALYSIS OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

01:17698694.1

**ANALYSIS OF CERTAIN U.S. FEDERAL
INCOME TAX CONSEQUENCES OF THE PLAN**

The following discussion summarizes certain United States ("U.S.") federal income tax consequences of the Plan to certain Holders of Claims. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury regulations promulgated thereunder (the "Regulations"), judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the U.S. federal income tax consequences discussed below. The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. This summary does not generally address state, local, or non-U.S. tax consequences of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through Entities). Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim.

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN MAY BE UNCERTAIN DUE TO THE LACK OF DIRECTLY APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED WITH RESPECT THERETO. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.

1. **U.S. FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTORS**

    1.1 **Sale of the Debtors' Assets.** The Taylor Sale and any other sales of the Debtors' Assets (each, a "Sale" and collectively, the "Sales") in the Chapter 11 Cases are taxable transactions. Thus, the Debtors must recognize any gain or loss realized on the Sales. To determine the amount of gain or loss realized on any Sale, the total consideration (net of selling expenses) received in such Sale must be allocated among the Assets sold in accordance with their relative fair market values. The gain or loss realized with respect to each Asset is then determined separately by subtracting the selling Debtors' tax basis in such Asset from the

amount of consideration received for such Asset.  The Debtors expect that the amount of consideration received with respect to the Assets will generally not exceed the Debtors' tax basis in the Assets, resulting in an overall loss for U.S. federal income tax purposes. To the extent that the Debtors recognize a net gain from the Sale, such gain may be offset either by (i) net operating losses ("NOLs") that accrue during the taxable year of the Sale, (ii) the Debtors' existing NOLs from prior taxable years, or (iii) capital loss carryforwards from prior years.  The Debtors' ability to use certain losses (including loss carryforwards) to offset taxable gains and income may be subject to certain limitations under the consolidated return rules and section 382 of the Tax Code.  Accordingly, the amount of gain or loss arising from the Sales may be subject to adjustment in subsequent years in the event contingent payments are made in connection with any Sale.  At the time of the Taylor Sale and any other Sale consummated prior to the Effective Date, the Debtors did not expect to recognize an overall net gain from the Sales and had significant NOLs available to offset any unexpected gain from the Sales.

**1.2    Cancellation of Indebtedness and Reduction of Tax Attributes.** As a result of the consummation of the Plan, certain indebtedness of the Debtors will be deemed to be discharged for U.S. federal income tax purposes.  Generally, gross income includes the amount of any such cancellation of indebtedness ("COD") income.  The amount of the COD income generally equals the amount by which the indebtedness discharged (reduced by any unamortized discount) exceeds any consideration given in exchange therefor, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD income (such as where the payment of the cancelled debt would have given rise to a tax deduction).  Because the Debtors are in a chapter 11 bankruptcy proceeding, however, the Debtors will not be required to recognize COD income.  Instead, the Debtors will be required to reduce certain tax attributes to the extent of unrecognized COD income.  The order and manner prescribed for the reduction of the Debtors' tax attributes is set forth in section 108(b)(2) of the Tax Code.  The tax attributes of the Debtors subject to reduction include NOLs, NOL carryforwards, capital losses and loss carryovers, certain tax credits, and, subject to certain limitations, the income tax basis of Debtors' property (including stock of subsidiaries).  The Sales have already occurred, and the Debtors anticipate that the Distribution of a majority of the proceeds and any remaining Assets to the Holders of Claims and the Trusts will occur before the end of the Debtors' current taxable year.  Furthermore, SRC Liquidation Company will convert to a limited liability company under the Plan, resulting in a deemed liquidation of SRC Liquidation Company.  Accordingly, there will be little or no tax attributes to reduce, because, pursuant to section 108(b)(4) of the Tax Code, attribute reduction is made after there is a determination of the tax imposed for the year of the discharge of indebtedness, at a time when SRC Liquidation Company will be deemed to have liquidated.

**2.    U.S. FEDERAL INCOME TAXATION OF THE TRUSTS**

**2.1    Classification of the Trusts.** Many of the Debtors' Assets will be transferred to the Trusts to be established pursuant to the Plan.  The Debtors intend that (i) each of the Trusts qualify as a "liquidating trust," as defined in Regulation section 301.7701-4(d), and (ii) each of the Trusts be treated as a "grantor trust" with the relevant beneficiaries of each Trust (collectively, the "Trust Beneficiaries") treated as the grantors of the respective Trust.

The following discussion assumes that each of the Trusts will be characterized as a grantor trust for U.S. federal income tax purposes.  The Debtors do not intend to request any

2

advance ruling from the IRS regarding the tax characterization of the Trusts as liquidating trusts. Additionally, no opinion of counsel has been requested concerning the tax status of the Trusts as grantor trusts. As a result, there can be no assurance that the IRS will treat the Trusts as grantor trusts. If the IRS were to successfully challenge such classification, the U.S. federal income tax consequences to the Trusts, the Trust Beneficiaries, and the Debtors could be materially different than is discussed herein (including the potential for an Entity level tax on any income of the Trusts and adverse tax effects to the Trust Beneficiaries).

**2.2** **General Tax Reporting by the Trusts and Trust Beneficiaries.** The Plan requires all parties (including the Debtors, the Trustees, and the Trust Beneficiaries) to treat the transfer of Assets by the Debtors to the Trusts, for U.S. federal income tax purposes, as a transfer of such Assets directly to the Trust Beneficiaries, followed by the transfer of such Assets by the Trust Beneficiaries to the Trusts. The Plan also requires the Debtors, the Trustees, and the Trust Beneficiaries to treat the Trusts as grantor trusts of which the Trust Beneficiaries are the owners and grantors. As a consequence, the Trust Beneficiaries (and any subsequent transferees of beneficial interests in the Trusts) will be treated for U.S. federal income tax purposes as the direct owners of a specified undivided interest in the Assets of the respective Trusts (which Assets will have a tax basis equal to their fair market value on the date transferred to each of the Trusts).

The U.S. federal income tax reporting obligation of a Trust Beneficiary is not dependent upon the Trusts distributing any Cash or other proceeds. The Plan provides that the Trusts will allocate items of income, gain, loss, expense, and other tax items to the Trust Beneficiaries in accordance with their relative beneficial interest in the respective Trusts. Therefore, a Trust Beneficiary may incur an income tax liability with respect to its allocable share of the income of the Trusts whether or not the Trust has made any concurrent Distribution of Cash or other Assets to the Trust Beneficiary.

The Plan requires the Trustees to file tax returns for the Trusts as a "grantor trust" pursuant to Regulation section 1.671-4(a). The Trusts are expected to send each Trust Beneficiary a separate statement setting forth the Trust Beneficiary's share of items of income, gain, loss, deduction, and credit, and such Trust Beneficiary will be responsible for any reporting requirements with respect to the allocated amounts and the payment of any taxes that result from such allocations.

TRUST BENEFICIARIES ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE APPROPRIATE U.S. FEDERAL INCOME TAX REPORTING OF ALLOCATIONS FROM THE TRUSTS.

**3.** **U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS**

**3.1** **In General.** The U.S. federal income tax consequences of the Plan to a Holder of a Claim will depend upon several factors, including, but not limited to (i) whether the Holder's Claim (or a portion thereof) constitutes a Claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Claim; (iv) whether the Holder is a resident of the U.S. for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); (v) whether the Holder reports income on an accrual or cash basis method; (vi) whether the Holder has taken a bad debt

deduction or worthless security deduction with respect to the Holder's Claim; and (vii) whether the Holder received Distributions under the Plan in more than one taxable year.

Generally, a Holder of a Claim will recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for the Holder's Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under the Plan in respect of a Holder's Claim, including, in the case of the Trust Beneficiaries, the fair market value of each Trust Beneficiary's proportionate share of the Assets transferred to the Trusts on the behalf of and for the benefit of such Holder (in each case, to the extent that such cash or other property is not allocable to any portion of the Claim representing accrued but unpaid interest (see discussion below)). The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefore. The holding period of a Trust Beneficiary in its proportionate share of the Assets held by the Trusts will begin on the day following the deemed Distribution of Assets to the Holder.

The character of any recognized gain or loss (*i.e.*, as ordinary income or as short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of the Claim's acquisition, the Holder's holding period of the Claim, and the extent to which the Holder of the Claim previously claimed a deduction for the worthlessness of all or a portion of the Claim. If the Claim is a capital Asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year. Long-term capital gains of non-corporate taxpayers are subject to reduced rates of taxation. The deductibility of capital losses is subject to limitations.

HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS AND RECOGNITION OF GAIN OR LOSS, FOR U.S. FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.

**3.2** **Allocation of Consideration to Accrued Interest.** A portion of the consideration received by a Holder of a Claim in satisfaction of that Claim pursuant to the Plan may be allocated to the portion of such Claim (if any) that represents accrued but unpaid interest. If any portion of the Distribution is required to be allocated to accrued interest, such portion would be taxable to the Holder as interest income, except to the extent the Holder has previously reported such interest as income. A Holder will generally recognize a loss to the extent that any accrued interest was previously included in the Holder's gross income and is not paid in full.

Pursuant to the Plan, all Distributions in respect of any Claim will be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then, to the extent the consideration exceeds such amount, to any portion of such Claim representing accrued but unpaid interest. However, there is no assurance that the IRS will respect such allocation for U.S. federal income tax purposes.

In the event that a portion of the consideration received by a Holder of a Claim represents accrued but unpaid interest, only the balance of the Distribution would be considered received by the Holder in respect of the principal amount of the Claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the Holder with respect to the

4

Claim.  If any such loss were a capital loss, it would not offset any amount of the Distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the Distribution is treated as interest, Holders may be required to provide certain tax information in order to avoid the withholding of taxes.

**3.3** **Market Discount.**  A Holder that acquires a debt instrument at a market discount generally is required to treat any gain realized on the disposition of the instrument as ordinary income to the extent of accrued market discount not previously included in gross income by the Holder.

**3.4** **Information Reporting and Backup Withholding.**  The Debtors and the Trustees, as well as their respective paying agents, may be obligated to furnish information to the IRS regarding the consideration paid to Holders (other than certain corporations and other exempt Holders of Claims) pursuant to the Plan.

A Holder of an Allowed Claim may be subject to backup withholding with respect to any "reportable" payments received pursuant to the Plan unless such Holder (i) falls within certain exempt categories and, when required, demonstrates its eligibility for such exemption or (ii) provides a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding, and otherwise complies with the applicable requirements of the backup withholding rules.  A Holder who does not provide a correct taxpayer identification number may be subject to penalties imposed by the IRS.  Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup holding rules by timely filing the appropriate claim for refund with the IRS.

**4.**     **RESERVATION OF RIGHTS**

The foregoing discussion is subject to change (possibly substantially) based on subsequent changes to the Plan or subsequent events.  The Debtors and their advisors reserve the right to modify, revise, or supplement this discussion and other tax related sections of the Plan and Disclosure Statement in accordance with the terms of the Plan and the Bankruptcy Code.

**THE FOREGOING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE.  ACCORDINGLY, EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN AND THE APPLICATION OF FEDERAL, STATE, LOCAL, AND FOREIGN TAX LAWS.  NEITHER THE DEBTORS NOR THEIR PROFESSIONALS SHALL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.**