## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 15-10541-BLS |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | : | (Jointly Administered) |
| | : | |
| | : | **Objection Deadline: TO BE DETERMINED** |
| Debtors. | : | **Hearing Date: TO BE DETERMINED** |

### MOTION BY CARESOURCE MANAGEMENT GROUP CO. FOR AN ORDER AUTHORIZING CARESOURCE MANAGEMENT GROUP CO. TO FILE UNDER SEAL ITS MOTION FOR RELIEF FROM THE SALE ORDER, TO COMPEL ASSUMPTION OR REJECTION OF CERTAIN UNEXPIRED EXECUTORY CONTRACTS, AND FOR RELATED RELIEF

CareSource Management Group Co. ("CareSource") moves the Court for an Order, pursuant to 11 U.S.C. § 107(b)(1) of Federal Rule of Bankruptcy Procedure 9018 and Local Bankruptcy Rule 9018-1 authorizing CareSource to file: (i) an un-redacted version of the CareSource Motion for Relief from Sale Order, to Compel Assumption or Rejection of Certain Unexpired Executory Contracts, and for Related Relief (the "Motion to Compel") only under seal; and (ii) a redacted public version of the Motion to Compel on the docket.[2]

In support of this Motion, CareSource respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning provided in the CareSource Motion.

2.      The statutory predicates for the relief sought herein are sections 105(a) of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

<h3 style="text-align:center">BACKGROUND[3]</h3>

4.      CareSource finds itself in an untenable predicament where it is a party to an agreement (as described more fully in the Motion to Compel) with the Debtors, in which the Debtors manage and source CareSource printed communications.  This agreement is now administered by the purchaser of the Debtors' assets.  The Debtors and purchaser continue to breach this agreement for reasons that are set forth in detail in the Motion to Compel.  The Debtors have sold their assets to Taylor Corporation ("Taylor") and declared that their contracts with CareSource are potential contracts to be assumed or rejected by Taylor.  The print services CareSource contracted with the Debtors to perform in this agreement are critical to CareSource's business, because federal and state regulations require that CareSource send accurate and timely print communications to its members.  Failure to do so can result in regulators assessing a variety of sanctions, such as fines ranging from $5,000 to $30,000 per violation and up to and including

[3] CareSource incorporates by reference the facts and background contained in the Motion to Compel.

termination of CareSource as a Medicaid managed care plan.  Accordingly, the Debtors' and purchaser's duty to accurately and timely perform under this agreement is paramount and material to CareSource.  The Debtors' and now Taylor's breaches are irreparably harming CareSource, and the status quo will only exacerbate this situation.

5.       Recently, the Debtors informed CareSource on multiple occasions that Taylor intends to reject the Debtors' agreement with CareSource.  Yet, as of the filing of this motion, Taylor has not rejected the agreement, and apparently will not do so until the deadline established by the sale order [Docket No. 698] (the "Sale Order").  This situation, in which there are ongoing breaches of an agreement so critical to CareSource's business and in which Taylor has already made an unofficial decision to reject the agreements but refuses to file that decision with this Court prior to the deadline established by the Sale Order, is untenable to CareSource. CareSource has a full calendar of upcoming member communications that must be printed and mailed, as required by regulators.  Given this and the history of Debtors' and Taylor's breaches and ongoing quality issues under the agreements, the risk of substantial and catastrophic regulatory sanctions as a result of Debtors' and Taylor's underperformance under the agreements is simply too great for CareSource.  To ensure it can meet its regulatory requirements, CareSource needs to be able to immediately contract with a more reliable print vendor, as it will take CareSource time to convert all of its printed communications to another vendor. CareSource therefore seeks to compel either an end to its relationship with the Debtors, or an Order from the Court compelling the purchaser to assume the Debtors' agreements with CareSource and cure all defaults thereunder.

6.       Further, given Taylor's statements to the Debtors that it intends to reject the CareSource agreements, but intends to wait until the absolute last day possible to reject,

CareSource has been unable to retain a new vendor to provide its printing services and materials. With continuing uncertainty of whether the agreements will be rejected and being forced to wait until November for Taylor to announce its decision, CareSource may not be able to retain and convert to a new print vendor in time to be able to timely print its member mailings to meet deadlines established by regulators.

7.      If the Motion to Compel is not heard soon, CareSource will be irreparably harmed and risk of such harm increases with each passing day.

## RELIEF REQUESTED

8.       This Motion requests the entry of an order granting the following relief:

A.      CareSource requests that the Court enter an order authorizing CareSource to file: (i) an un-redacted version of the Motion to Compel only under seal; and (ii) a redacted public version of the Motion to Compel on the docket.

B.      CareSource further requests that the Court approve the following procedures regarding the service of the Motion to Compel:

> i.      CareSource will provide un-redacted copies of the CareSource Motion to (a) the Debtors and its counsel, (b) Taylor and its counsel, (c) the Official Committee of Unsecured Creditors and its counsel, (d) the U.S. Trustee, and (e) any additional party as ordered by the Court (together, the "Confidential Parties").

> ii.      The Court shall order that the Confidential Parties shall keep confidential all information contained in the CareSource Motion that is not disclosed in the public version of the Motion.

## BASIS FOR RELIEF REQUESTED

9.      Pursuant to 11 U.S.C. § 107(b), the Court may authorize CareSource to file the Motion to Compel under seal.

10.      11 U.S.C. § 107(b) provides as follows:

On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –

(1)    protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2)    protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11.    Federal Rule of Bankruptcy Procedure 9018 provides in relevant part as follows:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code . . .

12.    Local Bankruptcy Rule 9018-1(b) provides in relevant part as follows:

"[a]ny party who seeks to file documents under seal must file a motion to that effect."

13.    CareSource requests that the Court authorize it to file the un-redacted version of the Motion to Compel under seal because it discloses full details regarding the Debtors' agreement with CareSource, and additionally details of breaches of confidential, proprietary terms of the Debtors' agreement with CareSource.    The terms could cause damage to CareSource and/or the Debtors (and now Taylor), and could be used by competitors of the Debtors and Taylor in a way that is detrimental to them.   The information could also cause damage to the Debtors and the bankruptcy estate by increasing CareSource's indemnification claim arising from printing error claims and the Debtors' conduct concerning those errors. Further, the terms of the Master Services Agreement that were negotiated by CareSource and the Debtor for the calculation of a guaranteed savings claim are also confidential and commercial in nature.  If this term is disclosed, the term could be used to the disadvantage of the Debtors and the purchaser of the Debtors' assets.  Similarly, CareSource may in the future negotiate similar

5

agreements with other suppliers of printed products and services. If the terms of these calculations are disclosed to the public then CareSource may find itself in a negotiating disadvantage with a future vendor. If it were not for the Chapter 11 filing by the Debtors, none of these details of the business dealings between CareSource and the Debtors would be public information. The Chapter 11 filing by the Debtors should not alter the privacy expectations of CareSource or the Debtors in relation to their contracts and business arrangements.

14.     Courts have defined "commercial information" as "information which would result in 'an unfair advantage to competitors by providing them with information as to the commercial operations.'" *In re Alterra Healthcare Corp.* 353 B.R. 66, 75 (Bankr. D. Del. 2006) (citing *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 27-28 (2d Cir. 1994)). Commercial information does not need to rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. It need only be confidential and commercial in nature. *See Orion Pictures,* 21 F.3d at 28 (noting that an interested party has only to show that the information to be sealed is "confidential and commercial" in nature).

15.     By way of further examples, courts have held that a license agreement authorizing the licensee to produce and sell videocassettes contained confidential commercial information (*see Orion Pictures,* 21 F.3d at 27-28). A list of investors in a debtor's oil and gas business is also confidential commercial information (*see Farmland Indus.*, 290 B.R. 364, 369-70 (Bankr. W.D. Mo. 2003). Similarly, a list of physicians who were placed in temporary places of employment by the debtor, which was a placement agency, was commercial in nature (*see In re Frontier Group, LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000).

16.     Details on the Debtors' breaches should be kept confidential because it could expose CareSource to significant financial liability.  The actual details of these claims are confidential between CareSource and the Debtors.  Disclosure of the details of the printing error claims would be detrimental to both CareSource and the Debtor, because CareSource's indemnity claim could increase if the printing errors described in the Motion to Compel are made public.

17.     The information regarding the guaranteed savings claim is equally confidential and commercial in nature.  CareSource and the Debtors negotiated many pricing terms and other terms in the Master Services Agreement.  These terms give insights into both the business of CareSource and the business of the Debtor.  Both CareSource and the Debtors could be harmed if the details of the Master Services Agreement are made public.  Competitors of CareSource could gather information about CareSource, its products, its policies and procedures and about its bargaining positions in contracts like the Master Services Agreement.  All of this information was intended to be kept confidential when the Master Services Agreement was negotiated.  Likewise, the terms of the Master Services could provide competitors of the Debtor with information about how it prices certain services and/or negotiates contracts of this type.  The disclosure of this kind of information could harm both the Debtor and any purchaser of the Debtor's assets.

18.     The information contained in the Motion to Compel meets all relevant standards for protection as confidential and commercial.

19.     Conversely, filing the Motion to Compel will not be detrimental to any creditor or party in interest in the Debtors' chapter 11 case.  The Debtors' assets have been sold.  The

Motion to Compel seeks relief that will only affect Taylor, and Taylor will be provided an unredacted copy of the Motion to Compel.

WHEREFORE, for the reasons set forth herein, CareSource respectfully requests that the Court to permit the filing of the CareSource Motion to Compel under seal as requested.

Dated:  September 21, 2015                    CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, DE  19801
Telephone:  (302) 777-4200
Facsimile:  (302) 777-4224
Email:  csimon@crosslaw.com
            kmann@crosslaw.com

-and-

David M. Whittaker, Esq. (0019307)
(*admitted pro hac vice*)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH  43215
Telephone:  (614) 227-2355
Facsimile:  (614) 227-2390
Email:  dwhittaker@bricker.com

*Attorneys for CareSource*