**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | **Docket Ref. Nos. 964, 1010, 1011, 1016-1019, 1030 & 1136** |

**OMNIBUS REPLY IN SUPPORT OF DEBTORS'**
**FIRST (1ST) OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS**
**(DROP-SHIP ADMINISTRATIVE PRIORITY CLAIMS)**

SRC Liquidation Company and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") hereby file this reply in support of the *Debtors' First (1st) Omnibus (Substantive) Objection to Claims (Drop-Ship Administrative Priority Claims) Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* [Docket No. 964] (the "Objection")[2] and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. Each and every court that has considered the issue has ruled that drop-ship claims do not qualify for administrative expense status under section 503(b)(9) of the Bankruptcy Code. Although respondents selectively quote portions of the applicable opinions and other sources, the holdings of the relevant cases belie the expansive conclusions respondents would have this Court draw. The holdings of those cases are correct and should be followed.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

## THE RESPONSES

2. Mindful that the relief requested in the Objection might impact the substantive rights of parties not directly subject to the Objection, the Debtors served the Objection on all parties that have asserted claims under section 503(b)(9) of the Bankruptcy Code and invited responses from all parties in interest. The Debtors received the following responses:

| Responses by Vendors Subject to the Objection | | |
|---|---|---|
| **Vendor** | **Docket Number** | **Reference Herein** |
| The Envelope Printery, Inc. | 1136 | "Envelope Printery Response" |
| Harmony Press, Inc. | 1030 | "Harmony Press Response" |
| **Responses by Vendors Not Subject to the Objection** | | |
| **Vendor** | **Docket Number** | **Reference Herein** |
| Yankee Schooner Industries | 1010 | None[3] |
| Quick Tech Graphics | 1011 | "Quick Tech Response" |
| Wholesale Printing Co. | 1017 | "Wholesale Response" |
| Design Type, Inc. | 1018 | "Design Type Response" |
| TLF Graphics, Inc. | 1019 | "TLF Graphics Response" |

## REPLY

**A. Drop-Ship Claimants Do Not Have Reclamation Claims Outside of Bankruptcy Under the Uniform Commercial Code and Should Not Have Administrative Expense Claims In Bankruptcy**

3. Sections 2-702 and 2-705 of the Uniform Commercial Code (the "U.C.C.") work together to provide sellers of goods with reclamation rights under non-bankruptcy law. Section 2-705 allows the seller to stop shipment of goods in transit until such time as they are received by the buyer, and section 2-702 allows the seller to reclaim goods from the buyer for a limited time after they are received by the buyer. "These rights, therefore, [are] complementary; the

---

[3] Yankee Schooner's response simply indicated that Yankee Schooner did not drop-ship any goods, but instead delivered goods directly to the Debtors. Although the Debtors reserve their rights with respect to Yankee Schooner's claims, Yankee Schooner's response does not have any bearing on the Objection.

2

right to stop goods applies while they are in the possession of the carrier, the right of reclamation applies once the goods have been received." *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225 n.11 (3d Cir. 1984). However, these provisions are subject to an important limitation. To wit: "The seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article." U.C.C. § 2-702(3).

4. Because the application of these two sections of the U.C.C. depends heavily on when goods are received by a buyer, and because sections 546(c) and 503(b)(9) of the Bankruptcy Code operate to preserve reclamation rights in bankruptcy, courts have looked to sections 2-702 and 2-705 of the U.C.C. for guidance in determining the meaning of the phrase "received by the debtor" in sections 546(c) and 503(b)(9) of the Bankruptcy Code. *See, e.g.*, *Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, 2012 U.S. Dist. LEXIS 122615, at *11 (D.N.H. 2012); *In re Momenta, Inc.*, 455 B.R. 353, 358-59 (Bankr. D.N.H. 2011); *In re Circuit City Stores, Inc.*, 432 B.R. 225, 228 (Bankr. E.D. Va. 2010).

5. The U.C.C. defines receipt of goods as "taking physical possession of them," "unless the context clearly requires otherwise." U.C.C. § 2-103. Section 2-705 of the U.C.C. specifies the four situations in which a buyer "receives" goods such that the stoppage provisions of section 2-705 no longer apply and the reclamation provisions of section 2-702 come into force: "(a) receipt of the goods by the buyer; or (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or (d) negotiation to the buyer of any negotiable document of title covering the goods." U.C.C. § 2-705(2).

*(i)     Constructive Receipt Does Not Occur in the Drop-Ship Scenario*

6.      Courts have termed the situations outlined in subsections (b) through (d) of U.C.C. § 2-705(2) "constructive receipt" situations and have held that a buyer receives goods for purposes of both section 2-705 and section 2-702 when one of these constructive receipt situations is present. *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225-26 n.13 (3d Cir. 1984). However, they have limited "constructive receipt" to the three situations specifically delineated in U.C.C. § 2-705(2)(b)-(d)—each of which involves physical control of the goods in question through an agent. *See, e.g.*, *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225-26 n.13 (3d Cir. 1984) (holding that the buyer did not constructively receive goods where the alleged constructive receipt in question did "not fit under any of the constructive receipt provisions contained in 2-705").

7.      The drop-ship scenario does not fit within any of the constructive receipt situations specified in U.C.C. § 2-705(b)-(d); that is, the drop-ship scenario does not involve an "(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or (d) negotiation to the buyer of any negotiable document of title covering the goods." U.C.C. § 2-705(2). As a result, no court has held that a debtor-buyer constructively receives goods within the meaning of U.C.C. sections 2-702 and 2-705, or by extension sections 546(c) and 503(b)(9) of the Bankruptcy Code, in the drop-ship scenario. In fact, each of the cases quoted by the respondents in support of the notion that "constructive receipt" occurs in the drop-ship scenario actually held that drop shipments <u>do not</u> give rise to such constructive receipt by the buyer. *See In re Momenta, Inc.*, 455 B.R. 353, 361 (Bankr. D.N.H. 2011) ("The record in this case fails to establish, or even suggest, any physical or

constructive possession by the Debtor in reference to any of the Drop Shipment transactions. Accordingly, Ningbo has no administrative claim under § 503(b)(9) for any amounts due for the Drop Shipments."); *In re World Imps.*, 516 B.R. 296, 300 (Bankr. E.D. Pa. 2014) ("As the goods delivered under drop-shipment arrangements were not 'received' by the Debtor for purposes of § 503(b)(9), the Sunrise and Weisheng drop-shipments are not entitled to administrative priority."). *Cf.* Harmony Press Resp. at 3; Envelope Printery Resp. at 3-4.

>   *(ii)    Actual Receipt for Purposes of Reclamation Does Not Occur in the Drop-Ship Scenario*

8.      The Envelope Printery relies on a quote from the comments to section 2-705(2)(a) of the U.C.C. to support its argument that a buyer-debtor "receives" goods in the drop-ship scenario. The comment is as follows:

> 'Receipt by the buyer' [in section 2-705(2)(a)] includes receipt by the buyer's designated representative, the sub-purchaser, when shipment is made direct to him and the buyer himself never receives the goods. It is entirely proper under this Article that the seller, by making such direct shipment to the sub-purchaser, be regarded as acquiescing in the latter's purchase and as thus barred from stoppage of the goods as against him.

U.C.C. § 2-705 cmt. 2.

9.      Properly understood, this quote undermines, rather than supports, a claim for priority for the Drop-Ship Claims. Notably, the comment appears in section 2-705, which is the section that deals with stoppage of goods in transit, and not reclamation rights. A drop-ship seller has no reclamation rights when the goods are received by the buyer's designee because a "seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course or other good faith purchaser . . . ." U.C.C. § 2-702(3). The comment to section 2-705(2)(a) clarifies that a drop-ship seller likewise has no stop shipment claim either against the buyer's designee because "by making [a] direct shipment to the sub-purchaser," the seller should be "regarded as

5

acquiescing" in the sale to the recipient and should therefore be "barred from stoppage of the goods as against him." U.C.C. § 2-705 cmt. 2.

10.     This comment does not evince a break with the U.C.C.'s general rule that receipt of goods means "taking physical possession of them."  U.C.C. § 2-103.  Instead, the comment should be regarded as clarifying that in the context of section 2-705 only, "receipt of goods" should be interpreted in a manner that <u>limits</u> the reclamation/stop shipment rights of the seller due to the seller's acquiescence in the form of the transaction.

11.     But The Envelope Printery urges the Court to turn this comment on its head to expand the reclamation rights of drop-ship sellers in bankruptcy beyond the rights they would have outside of bankruptcy.  This is not proper.  *See, e.g.*, *Allegiance Healthcare Corp. v. Primary Health Sys. (In re Primary Health Sys.)*, 258 B.R. 111, 117 (Bankr. D. Del. 2001) ("Permitting such a creditor (whose claim outside of bankruptcy is nothing more than a general unsecured claim) to elevate its claim to administrative or secured status in bankruptcy would give it a windfall."); *see also Butner v. United States,* 440 U.S. 48, 54-55 (1979) ("Property interests are defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Dana Corp.*, 367 B.R. 409, 418 (Bankr. S.D.N.Y. 2007) ("[I]t is contrary to the purpose of the Bankruptcy Code to enhance the rights of one set of creditors at the expense of other creditors simply because a bankruptcy petition has been filed.").

**B.     Valid Drop-Ship Claims Will Be Allowed As General Unsecured Claims**

12.     The Envelope Printery argues that if the Court adopts the Debtors' position, this "would lead to the ludicrous result that Debtors have no obligation to pay The Envelope Printery

for such goods because they were delivered—at Debtors' request—to Debtors' designees rather than Debtors themselves." Envelope Printery Resp. at 5. The Envelope Printery's position is predicated on a straw man. Moreover, the Envelope Printery misconstrues the Debtors' argument by interpreting it to be that the goods in question were not received by anyone (as opposed to the Debtors' actual argument that the goods in question were not received "by the Debtors," as the statute requires). Attacking the straw man, The Envelope Printery asks: "Why is there any obligation on Debtors' behalf to pay for goods not 'received'? And if Debtors are successful, why would the amount be reclassified as an unsecured claim instead of denied outright?" Envelope Printery Resp. at 4.

13.     But, of course, the Debtors are not arguing that the goods in question went unreceived or that they are not liable for payment in consideration for them. And, this would not be a valid argument under the U.C.C. either. The Debtors readily acknowledge that the goods were received by their customers and that, as a result, the Debtors are liable to pay valid Drop-Ship Claims as general unsecured claims. The Debtors are merely arguing that in order for such claims to be entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code, the goods in question must comply with the statutory requirement that they have been actually received "by the Debtors," and not the Debtors' designee. Actual receipt of goods is not a prerequisite to liability generally, but it is a statutorily-required prerequisite to section 503(b)(9) administrative expense priority claims.

C.     **Claims of Unjust Enrichment / Constructive Trust Must Be Rejected**

14.     TLF Graphics (which is not directly subject to the Objection) argues that if the Drop-Ship Claims are not entitled to administrative expense priority, the "Debtors will have been unjustly enriched and a constructive trust should be imposed directing the turnover of the funds to TLF Graphics." TLF Graphics Resp. at 9. TLF Graphics' "unjust enrichment" argument is a

7

red herring.  TLF Graphics, like the other drop-ship vendors, provided goods and services on credit.  TLF Graphics does not have an "unjust enrichment" claim that entitles it to a constructive trust with respect to the Debtors' assets; and neither do the hundreds of other vendors that provided goods and services on credit.  *See, e.g.*, *Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors)*, 550 F.3d 240, 244 (2d Cir. 2008) ("[I]t [is] important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the 'equities of bankruptcy are not the equities of the common law.' . . . [A debtor in possession] 'marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns.' . . . While the estate may be enriched by the retention of funds due to others under a contract, the estate is not unjustly enriched in this context.") (quoting *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217-18 (2d Cir. 2004)) (emphasis added); *see also In re First Cent. Fin. Corp.*, 377 F.3d at 218 (a debtor in possession "does not hold property under such circumstances that in equity and good conscience he ought not to retain it") (citations omitted); *In re Taggart*, 2013 Bankr. LEXIS 421, at *15 (Bankr. D.N.J. Jan. 31, 2013) ("[I]f loss of money were enough to justify the imposition of a constructive trust then all creditors in a bankruptcy case could demand one.").  TLF Graphics has an unsecured debt claim for repayment of the amount owed by the Debtors; nothing more or less.

15. Even if TLF Graphics could establish a claim for unjust enrichment (which it cannot), it cannot establish a valid constructive trust with respect to any of the Debtors' limited remaining assets.  "In general, 'to establish rights as a trust recipient, a claimant must make two showings: (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled.'" *City of Farrell v. Sharon Steel Corp.*, 41 F.3d

92, 95 (3d Cir. 1994) (quoting *Goldberg v. New Jersey Lawyers' Fund*, 932 F.2d 273, 280 (3d Cir. 1991); *see also In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1063 (3d Cir. 1993) ("beneficiaries of trust funds bear the burden of identifying and tracing their trust property"). Here, the alleged trust funds (*i.e.*, funds received from the Debtors' customers) were deposited into the Debtors' general operating account. From there, they were swept to pay down the Debtors' revolving credit facility. All subsequently re-borrowed funds under the revolving credit facility were repaid from the proceeds of the sale to Taylor. Simply put, TLF Graphics cannot identify and trace the alleged constructive trust funds, as the law requires. *Cf. Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 139 (Bankr. D. Del. 2010) (holding that claimants established the existence of a trust but had no right to recover specific funds from the estate because they "failed to meet their burden of tracing those funds").

16. To the contrary, the Debtors can expressly trace all of their cash to sources <u>other than</u> the customers that received goods from TLF Graphics. In connection with the Taylor sale, the Debtors transferred their operating accounts to Taylor and opened new operating accounts at a different bank. There are only two sources of funds deposited into the Debtors' new operating accounts: (1) the Wind-Down Amount received from Taylor that the Debtors are obligated to re-pay to Taylor to the extent not used, and (2) the proceeds from life insurance policies that were sold after the closing of the Taylor sale. For myriad reasons, any claims of unjust enrichment and/or constructive trust must be rejected.[4]

---

[4] TLF Graphics' constructive trust argument is also procedurally improper because it has been raised outside the confines of an adversary proceeding. *See* Fed. R. Bankr. P. 7001; *see also Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 437-40 (5th Cir. 1994) (reversing bankruptcy court's order imposing constructive trust in part because debtor did not receive all procedural protections guaranteed by adversary proceeding rules); *Vanco Trading v. Monheit (In re K Chem. Corp.)*, 188 B.R. 89, 98 (Bankr. D. Conn. 1995) ("An action to recognize and apply a constructive trust is a proceeding to 'recover money or property', to 'determine the validity, priority, or extent of an interest in property' and/or to

**D.     The Debtors' Objection Is Procedurally Proper**

17.     TLF Graphics, which is not subject to the Objection, argues that the Objection is procedurally improper because it cites section 502 of the Bankruptcy Code as one basis for the Objection. According to TLF Graphics, "section 502 is not available to consider the allowance, disallowance or reclassification of claims asserted under section 503 of the Bankruptcy Code." TLF Graphics Resp. at 5.  As a threshold matter, TLF Graphics' argument is not ripe and should be disregarded because none of the parties actually subject to the Objection raised this issue and therefore apparently do not share TLF Graphics' concern that the Debtors' Objection is procedurally improper.  And for good reason, because the Debtors' Objection is procedurally proper.

18.     Each of the Drop-Ship Claims subject to the Objection (and TLF Graphics' claim) was properly asserted as a claim filed under section 501 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores, Inc.*, 426 B.R. 560, 576 (Bankr. E.D. Va. 2010) ("§ 503(b)(9) Claimants must file proofs of claim under § 501(a) and request administrative expenses status under § 503(a) in order to be allowed their § 503(b)(9) Claims.") (emphasis added). Specifically, they were asserted on "Proof of Claim" forms that are used to assert claims under section 501 of the Bankruptcy Code. In addition, the Debtors are asking the Court to re-classify the Drop-Ship Claims as general unsecured claims pursuant to section 502 of the Bankruptcy Code. Accordingly, the Debtors believe it was both appropriate and necessary to reference section 502—which governs objections to claims, such as the Drop-Ship Claims, that are filed under section 501—as one procedural basis for the Objection.

---

'obtain…equitable relief', and must therefore be prosecuted as an adversary proceeding, with its attendant procedural formalities and safeguards as afforded by Part VII of the Federal Rules of Bankruptcy Procedure.").

19. But the Debtors do not exclusively rely on section 502 as the procedural basis for their objection; they also rely on Bankruptcy Rule 3007 and Local Rule 3007-1. These Rules provide the procedural mechanics for objecting to claims. Since "Section 503(b)(9) claims, unlike most other administrative expenses, are prepetition claims that can be calculated as of the petition date . . . there is no practical reason why the procedures laid out in Bankruptcy Rules 3002 and 3003 should not apply to § 503(b)(9) claims." *In re Circuit City Stores, Inc.*, 426 B.R. 560, 577 (Bankr. E.D. Va. 2010). By extension, the Debtors believe that Bankruptcy Rule 3007 and Local Rule 3007-1 are the correct procedural mechanisms through which to object to claims arising under section 503(b)(9) of the Bankruptcy Code.

20. Substantively, there is no doubt that the Debtors' Objection is based on the plain language of section 503(b)(9) of the Bankruptcy Code. In fact, section 503 is cited more than 20 times in the 11-page Objection. The cases cited by TLF Graphics which hold that the substantive provisions of section 502(d) do not apply to section 503(b)(9) claims are irrelevant—the Debtors are not asserting in the Objection that section 502(d) or any other provision of section 502 substantively operates to limit the Drop-Ship Claims in any way. Thus, the Debtors are at a loss to discern TLF Graphics' real issue. Nonetheless, when and if the Debtors object to TLF Graphics' section 503(b)(9) claim, they will add additional references to section 503 to address TLF Graphics' concerns.

**E.    The Public Policy Debate Highlights the Need to Interpret the Statute As Written**

21. The public policy arguments in favor of the Debtors' position are set out in the Objection—namely, that section 503(b)(9) should only apply to sellers that would have reclamation rights outside of bankruptcy because expanding section 503(b)(9) would make chapter 11 reorganizations more difficult generally and would violate the *Butner* principle that bankruptcy generally does not alter non-bankruptcy law.

22. Several drop-ship vendors have raised countervailing policy concerns. Most of these boil down to an argument that the applicable vendor "ought" to be paid because it provided goods in good faith. *See, e.g.*, Quick Tech Response; Design Type Response; Wholesale Response. Others articulate the position that the purpose of section 503(b)(9) is to encourage vendors to provide goods to financially-distressed buyers and that it doesn't make sense for those vendors to receive an administrative expense claim if they deliver the goods directly to the debtor, but to be left with a general unsecured claim if they deliver the goods to someone else at the debtor's direction. *See, e.g.*, TLF Graphics Resp. at 7-9. The *Momenta* bankruptcy court dealt with that argument as follows: "The difference between the two situations may seem unnecessarily technical, but it is the scheme adopted by BAPCPA. A seller in the [drop-ship scenario] is no worse off than it would have been outside of bankruptcy because once the goods are delivered to a third party good faith purchaser, the seller would no longer have a right to reclaim and would become an unsecured creditor." *In re Momenta, Inc.*, 455 B.R. 353, 361 (Bankr. D.N.H. 2011).

23. Although the Debtors believe that their policy arguments are more compelling, the very existence of the policy debate highlights the need to interpret the statute as written. All of the policy arguments advanced by the drop-ship vendors could just as easily be advanced by service providers. But, Congress did not give service providers administrative expense claims for services rendered in the 20 days prior to bankruptcy—only providers of goods get such preferential treatment. One might quibble with this result, but Congress makes policy; not litigants or courts.[5] For this reason, the Supreme Court teaches that ties go to the unsecured

---

[5] Notably, even the recently-released report of the ABI Commission to Study the Reform of Chapter 11 concludes that the Bankruptcy Code, as currently drafted, does not provide for treatment of drop-ship claims as 503(b)(9) claims. American Bankruptcy Institute Commission to Study the Reform of Chapter 11, *Final Report and Recommendations*, 169-73 (2014). Arguing that these claims should fall within the

12

claim category runner:  "preferential treatment of a class of creditors is in order only when clearly authorized by Congress."  *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006).  Congress did not "clearly authorize" administrative expense priority for drop ship vendors.

*Remainder of page intentionally left blank*

---

purview of section 503(b)(9), it suggests that "[s]ection 503(b)(9) should be <u>amended</u> . . . to permit creditors providing goods on a drop shipment basis to assert appropriate claims . . . ."  *Id.* at 169 (emphasis added).

WHEREFORE, for the reasons set forth herein and in the Objection, the Debtors respectfully request that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated: October 6, 2015
       Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and
Debtors in Possession*