**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SRC LIQUIDATION COMPANY, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>Jointly Administered<br><br>**Hearing Date:  November 19, 2015 at 9:30 a.m. (ET)**<br>**Objection Deadline:  October 21, 2015 at 4:00 p.m. (ET)** |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT
TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE
EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND
THE SOLICITATION AND ACCEPTANCE THEREOF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this Motion (this "Motion"), out of an abundance of caution, for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), further extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof.  In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

01:17809034.3

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

**BACKGROUND**

3. On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4. On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5. Additional information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No.2].

6. On March 12, 2015, the Debtors filed the *Debtors' Motion for (I) an Order (A) Establishing Sale Procedures Relating to the Sale of Substantially All of the Debtors' Assets;*

*(B) Approving Bid Protections; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (D) Approving Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements; (E) Scheduling a Hearing to Consider the Proposed Sale; and (F) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale* [Docket No. 23] (the "Initial Sale Motion"), and on May 27, 2015, the Debtors filed a supplement to the Initial Sale Motion [Docket No. 559].

7. On April 15, 2015, the Court entered an order [Docket No. 286] (the "Sale Procedures Order") approving, among other things, Sale Procedures (as defined in the Sale Procedures Order) and scheduling an auction (the "Auction") to be held on June 15, 2015.

8. Following the Auction, the bid submitted by Taylor Corporation ("Taylor") was selected as the highest and best offer for substantially all of the Debtors' assets. On June 17, 2015, the Debtors presented Taylor's bid to the Court and, in conjunction therewith, broadly summarized a global resolution (the "Settlement") contemplated by and among the Debtors, the Committee, and Silver Point Finance, LLC ("Silver Point" and together with the Debtors and the Committee, the "Settlement Parties"), in connection with the sale of substantially all of the Debtors' assets (the "Sale") and certain litigation brought against Silver Point and its affiliates.

9. On June 19, 2015, the Committee filed the *Settlement Agreement Among Debtors, Silver Point Finance, LLC & Official Committee of Unsecured Creditors* [Docket No. 696] (the "Settlement Agreement"),[2] which memorialized the agreement reached among the Settlement

---

[2] Capitalized terms used but not otherwise defined in this paragraph shall have the meaning ascribed to such terms in the Settlement Agreement.

01:17809034.3

3

Parties.  Pursuant to the Settlement Agreement, the Committee agreed, among other things, to release all claims and causes of action against the Released Parties, including the Silver Point Entities, to withdraw with prejudice its objections to the Sale, and to affirmatively support the Sale.  In exchange, the Second Lien Lenders agreed to provide certain consideration, including, among other things, a $5 million cash payment to be designated for distribution solely to holders of allowed general unsecured claims against the Debtors.

10. Upon the filing of the Settlement Agreement, the Court entered that certain *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief* [Docket No. 698] (the "Sale Order") approving the Sale to Taylor.  The Sale successfully closed and operations were transitioned to Taylor on July 31, 2015.

11. On September 18, 2015, the Debtors filed the *Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates* [Docket No. 1062] (the "Plan"), and on September 21, 2015, the Court entered that certain *Order (I) Scheduling Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan, (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan and (III) Approving Related Matters* [Docket No. 1073], approving, among other things, certain solicitation procedures for the Plan and scheduling a combined hearing (the "Combined Hearing") for November 19, 2015, on the adequacy of the Debtors' disclosure statement (the "Disclosure Statement") and confirmation of the Plan.  On September 22, 2015, the Debtors filed the *First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates* [Docket No. 1086] (the "Amended Plan") and corresponding conformed Disclosure Statement [Docket No. 1087].

**RELIEF REQUESTED**

12. Out of an abundance of caution, by this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order further extending the periods within which the Debtors, only, may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days. Although the Amended Plan has been filed and the Debtors will seek its confirmation at the Combined Hearing, the Debtors seek the extension requested herein to preserve their exclusivity in the event that the Amended Plan is not confirmed and unexpected issues or objections arise in connection therewith. Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below, and together, the "Exclusive Periods") will expire on October 8, 2015, and December 7, 2015, respectively.[3] The Debtors seek to extend the Plan Period and Solicitation Period through and including January 6, 2016, and March 7, 2016, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances. This is the Debtors' second request for an extension of the Exclusive Periods.

**BASIS FOR RELIEF REQUESTED**

13. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that, if a debtor has not filed a plan that has been accepted by each class of claims or interests that is impaired under the plan before 180 days after commencement of a chapter 11 case (the "Solicitation Period"), any party in interest may file a competing plan. 11 U.S.C. § 1121(c)(3).

---

[3] By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested herein.

01:17809034.3

5

## SECTION 1121(D) OF THE BANKRUPTCY CODE PERMITS THE COURT TO EXTEND THE EXCLUSIVE PERIODS FOR "CAUSE"

14. The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties. To this end, where the Exclusive Periods prove to be an unrealistic timeframe for filing and soliciting acceptances of a meaningful chapter 11 plan that would garner support from parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for "cause." 11 U.S.C. § 1121(d). Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

15. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. *See In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

01:17809034.3

16. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[4] *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

    (i)      The size and complexity of the debtor's case;

    (ii)     The necessity of sufficient time to negotiate and prepare adequate information;

    (iii)    The existence of good-faith progress towards reorganization;

    (iv)    Whether the debtor is paying its debts as they become due;

    (v)     Whether the debtor has made progress negotiating with creditors;

    (vi)    The length of time a case has been pending;

    (vii)   Whether the debtor is seeking an extension to pressure creditors; and

    (viii)  Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend its exclusive period based upon certain of the above-quoted factors).

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

01:17809034.3

17.     As set forth herein, the facts and circumstances of these Chapter 11 Cases justify extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to confirm the Amended Plan or make necessary changes to such plan, as needed.

## CAUSE EXISTS FOR AN EXTENSION OF THE EXCLUSIVE PERIODS IN THESE CHAPTER 11 CASES

18.     Since the Petition Date, the Debtors' management and professional advisors have devoted a significant amount of time and effort towards a number of critical matters in these Chapter 11 Cases.  Specifically, both prior and subsequent to the Petition Date, the Debtors and their advisors devoted a substantial amount of time, energy, and resources towards marketing substantially all of the Debtors' assets and maximizing value through a going concern sale.  As a result of these efforts, the Debtors gained Court approval for the Sale of substantially all of the Debtors' assets to Taylor.  The Sale successfully closed and operations were transitioned to Taylor on July 31, 2015.

19.     In addition, the Debtors have, among other things, (i) conducted extensive due diligence in connection with the claims reconciliation process and filed five claims objections; (ii) negotiated and resolved previously-unresolved cure disputes; (iii) engaged in negotiations with applicable union representatives and taken steps to terminate the Debtors' various collective bargaining agreements; (iv) participated in extensive litigation with ex-employees to protect the best interests of the Debtors and their estates; (v) complied with their various reporting requirements in these Chapter 11 Cases; (vi) formulated and filed the Amended Plan, in cooperation with the Committee, (vii) obtained Court approval of the solicitation procedures; and (viii) developed a streamlined process to wind down the Debtors' remaining affairs in an expeditious and efficient manner during the pendency of these Chapter 11 Cases.  Moreover, the

Debtors continue to work closely with Taylor to ensure that they meet their obligations under the Sale's underlying asset purchase agreement.

**A.      The Size, Complexity, and Duration of the Chapter 11 Cases**

20.     Only seven months into these proceedings, the Debtors have devoted substantial resources to, among other things, addressing critical case management issues while simultaneously conducting the Sale process, transitioning operations to Taylor, and formulating and filing the amended Plan.  Given the complex nature of the Debtors' businesses, the limited number of employees remaining with the Debtors, and the pending solicitation of the Amended Plan, the Debtors submit that the complexity and relatively short duration of these Chapter 11 Cases warrant the extension of the Exclusive Periods, especially given the progress made to date with respect to the Amended Plan and the Disclosure Statement and the impending Combined Hearing.

**B.      The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

21.     Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on smoothly transitioning into chapter 11 and the pursuit, and ultimate resolution of, the Sale.  Working towards that goal, the Debtors prepared and prosecuted numerous motions for first and second day relief, and prepared and filed their Schedules and Statements and required operating reports.  The Debtors and their professionals have focused most of their time and resources on the Sale and related issues.  As the proceeds from the Sale and other recoveries constitute a material source of distributions under the Amended Plan, the Debtors believe that it is reasonable to request additional time to seek confirmation of the Amended Plan without the threat of a competing plan looming in the event the Amended Plan is not confirmed.

01:17809034.3

### C.     Good Faith Progress Made in These Chapter 11 Cases

22.    As detailed above, the Debtors have made significant and material progress in these Chapter 11 Cases, including with respect to the Amended Plan and the Disclosure Statement. In particular, the Debtors worked closely with their professionals to evaluate all potential strategic and financial buyers in connection with the Sale, held a robust Auction, and obtained Court approval of the Sale. As a result of the Sale, certain proceeds are available for distribution to the Debtors' general unsecured creditors, thereby making the Amended Plan feasible. Accordingly, the Debtors submit that they have made good faith progress in these Chapter 11 Cases, which weighs in favor of extending the Exclusive Periods to allow the scheduled Combined Hearing to go forward without interruption.

### D.     The Debtors Are Paying Their Debts as They Come Due

23.    As the Debtors continue to make timely payment on their undisputed post-petition obligations, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors. As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### E.     The Debtors Are Not Seeking an Extension to Pressure Creditors

24.    The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods, and only seek the relief requested herein out of an abundance of caution. The Debtors have worked diligently over the past seven months to maximize the value of their estates, and require the extension sought by this Motion to bring these Chapter 11 Cases to an orderly and efficient conclusion. The Debtors are not seeking an extension to pressure the creditors or other parties-in-interest. Indeed, the Debtors have regularly consulted with their post-petition secured lender, the Committee's professionals, and various creditors throughout these proceedings, regularly apprising them of appropriate updates in connection with the Sale and otherwise.

01:17809034.3

10

Moreover, the Debtors worked cooperatively with the Committee's professionals to develop the Amended Plan and Disclosure Statement.  As such, the Debtors are not seeking the relief requested herein to pressure creditors.

**F.     Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter 11 Cases**

25.     Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date.  In effect, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would arguably be free to propose a chapter 11 plan for the Debtors while the Amended Plan is being solicited and the Combined Hearing is scheduled to go forward in the near future.  Such a ruling would foster a chaotic environment with no central focus and cause substantial, if not irreparable, harm to the Debtors' efforts to preserve and maximize the value of their estates.

26.     Based on the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.  Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including January 6, 2016, and March 7, 2016, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## **NOTICE**

27.     Notice of this Motion has been provided to (i) the UST; (ii) counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent and collateral agent for certain secured lenders; and (iv) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) extending the Plan Period through and including January 6, 2016, (ii) extending the Solicitation Period through and including March 7, 2016, and (iii) granting such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: | October 7, 2015 |
| | Wilmington, Delaware |

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Samuel A. Newman (CA No. 217042)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
snewman@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

01:17809034.3