**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | Hearing Date: November 19, 2015 at 9:30 a.m. (ET)<br>Obj. Deadline: November 3, 2015 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO CLAIM OF PENNSYLVANIA DEPARTMENT
OF REVENUE (CLAIM NO. 2491) PURSUANT TO SECTIONS 502 AND 505 OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007**

SRC Liquidation Company and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") hereby file this objection (this "Objection"), pursuant to sections 502 and 505 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to Claim No. 2491 filed by the Pennsylvania Department of Revenue (the "Claim"), a copy of which is attached hereto as Exhibit A, against SRC Liquidation Company, and request the entry of the proposed form of order (the "Proposed Order") attached hereto as Exhibit C modifying and reducing the Claim as set forth below. In support of this Objection, the Debtors rely on the Declaration of Landen C. Williams (the "Williams Declaration"), a copy of which is attached hereto as Exhibit B. In further support of this Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502 and 505 of the Bankruptcy Code and Bankruptcy Rule 3007.

**BACKGROUND**

**A.    General Background**

3.      On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4.      On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the *Declaration of Kevin M. Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2].

**B.     The Claim**

6.      On April 16, 2015, the Pennsylvania Department of Revenue ("Pennsylvania") filed a claim asserting $25,000.00 (Claim No. 559) in sales and use tax liability. On June 30, 2015, Pennsylvania filed an amended claim in the amount of $1,000,000.00 (Claim No. 2020).

7.      On September 29, 2015, Pennsylvania filed the Claim, amending Claim No. 2020, in the amount of $289,267.54, consisting of $275,492.90 as a priority claim under section 507(a)(8) of the Bankruptcy Code and $13,774.64 as a general unsecured claim.

8.      The Claim was calculated through an audit (the "Audit") by a Pennsylvania auditor (the "Auditor") by (i) sampling sales and purchase activities of one month in each of 2012, 2013 and 2014; (ii) creating a list of certain sales for which Pennsylvania tax was not charged or purchases where Pennsylvania tax was not paid and for which the Auditor believed tax should have been charged or paid (each item, an "Exception"; and the list, the "Exceptions List," a copy of which is attached to the Williams Declaration as Exhibit 1); (iii) determining the Pennsylvania tax allegedly owing on each of the Exceptions; and (iv) extrapolating the liability for the three months' worth of Exceptions to come up with an estimated amount due for all of

2012 through 2014 (the "Audit Period"). Using this extrapolated data (and not actual data), the Auditor calculated $275,492.90 in taxes plus $13,774.64 in penalties due in the Audit Period.

9. In connection with the Audit, the Debtors provided detail of sales and purchases for each of the three sample months which included nearly 20,000 line items of activity for each month in an excel spreadsheet. The Debtors were asked to support each line item for which tax was not charged or paid—*i.e.*, about 8,000 line items of activity in each sample month. The Debtors provided voluminous amount of documentation regarding these nearly 24,000 line items of activity, but the Audit was closed in less than six months, with incomplete analysis and missing documentation.

10. As explained below, the Auditor committed multiple errors, and upon correcting for these errors, the Debtors believe that $1,920,134.25 in invoices should be removed from the Exceptions List and, accordingly, according to the Debtors' books and records, the Debtors only owe $82,800.12 in additional taxes plus $4,140.00 in penalties.

## RELIEF REQUESTED

11. By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 505(a) of the Bankruptcy Code and Bankruptcy Rule 3007, modifying and reducing the Claim to a priority claim under section 507(a)(8) of the Bankruptcy Code in the amount of $82,800.12 plus a general unsecured claim in the amount of $4,140.00.

## OBJECTION

12. Pennsylvania imposes a tax on certain sales and purchases within the state of Pennsylvania pursuant to 72 Pa. Cons. Stat. § 7202 and 61 Pa. Code §§ 32 *et seq*. Section 505(a)(1) of the Bankruptcy Code provides that a bankruptcy court may decide "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not

previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

13. The Third Circuit has "consistently interpreted [section] 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims." *In re Custom Distrib. Servs. Inc.*, 224 F.3d 235, 239-40 (3d Cir. 2000); *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 924 (3d Cir. 1990) ("[S]ection 505 was intended to clarify the bankruptcy court's jurisdiction over tax claims. . . ."). "Though the statute does not specify that this authority extends to determinations of state tax claims, 'courts have interpreted the statute to cover them.'" *In re Indianapolis Downs, LLC*, 462 B.R. 104, 111 (Bankr. D. Del. 2011) (citing *In re Stoecker*, 179 F.3d 546, 549 (7th Cir. 1999)). "Congress gave bankruptcy courts this broad power under [section] 505 to promote prompt and centralized estate administration; that is, to avoid making the estate 'litigate the tax or assessment in several state jurisdictions.'" *Id.* (citing *In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 575 (Bankr. D. Del. 2005)).

14. In this case, the Audit was closed prematurely and without agreement, and Pennsylvania did not adequately review and analyze the non-taxable nature of numerous line items included in the sales and purchase samples. This premature closing of the Audit resulted in an assessment that significantly overstates the Debtors' liability for the Audit Period.

**A.    Sales**

15. There are several categories of sales that the Debtors submit are not taxable and should be removed from the Exceptions List and the extrapolated tax assessment calculation, and the Claim should be reduced accordingly.

### 1. Software Support Agreements

16.     The Debtors respectfully request that all sales invoices related to Software Support Agreements (the "SSAs") should be removed from the Exceptions List.[2] A blank copy of an SSA is attached as Exhibit 2 to the Williams Declaration. Phone support was the only service provided through the SSAs. No property was provided to the customer nor was there any labor provided on customer sites as part of the SSAs. All phone support was provided from the Debtors' corporate offices in Dayton, Ohio. Therefore, all invoices related to the SSAs, totaling $41,906.09, should be removed from the Exceptions List.

### 2. Design Services

17.     The Debtors provided certain design services (the "Design Services") for some of its customers and invoiced for the services as "Design on Demand." The Debtors' employees developed and/or updated customer specific and customized form designs, which were provided to and could be used by customers for their own printing or to procure printing from suppliers, including the Debtors. A sample invoice for Design Services is attached to the Williams Declaration as Exhibit 3. Only a limited number of services are taxable in Pennsylvania as specified in 72 Pa. Cons. Stat. § 7202. While imprinting or printing of tangible personal property is a specified taxable service, design services are not.

18.     Thus, the Debtors submit that the Design Services totaling $9,630.73 are non-taxable and should be removed from the Exceptions List, and the Claim should be reduced accordingly.[3]

---

[2]     *See* Exhibit 1-A, items 1-10.

[3]     *See* Exhibit 1-A, items 11-143.

01:17869470.1

### 3. Invoice Stored Sales

19. Some customers requested that the Debtors produce or procure a large quantity of business forms, store the forms in one of the Debtors' warehouses, and at a later date ship a specified quantity to specific locations identified by the customer. The Debtors invoiced the customer for its charges for the forms when the forms were shipped to the warehouse but did not charge tax at that time as the ultimate destination of the forms was unknown. This original purchase of business forms by the customer, called "invoice stored," was not taxed.

20. Sales tax on the purchased forms was appropriately charged to the customer at the destination location when the forms were shipped from the warehouse to the final destination. The Auditor properly exempted most "invoiced stored" customer invoices; however, one invoice, in the amount $2,132.50, was improperly included on the Exceptions List and should be removed.[4]

### 4. Exempt Sales with Exemption Certificates

21. Many of the Debtors' customers resold the Debtors' products to their end customers. These customer "retailers" provided the Debtors with a resellers' exemption certificate, and the Debtors relied on the certificates to not assess sales tax. The Debtors' customers frequently requested that the Debtors drop ship goods directly to the retailers' end customer locations, which included locations in Pennsylvania.

22. The Auditor improperly assessed Pennsylvania sales tax on various transactions based on the "ship to" customer (retailer's customer) rather than the "sold to" customer (retailer) of the Debtors. The "sold to" customer or retailer is responsible for charging sales tax to its

---

[4] *See* Exhibit 1-A, item 513.

01:17869470.1

customer when it resells the product to its customers, even if the Debtors drop-shipped the product directly to the third party.

23. Because the Debtors received proper Pennsylvania sales tax exemption certificates for the "sold to" customers, no Pennsylvania tax should be assessed on these transactions. *See* 61 Pa. Code § 32.2(b) ("A seller or lessor who accepts in good faith an exemption certificate which discloses a proper basis for exemption upon its face is relieved of liability for collection or payment of tax upon transactions covered by the certificate.").

24. SRC Liquidation customers also claimed exemption from taxation under a manufacturing exemption (when the product being sold becomes part of a manufactured product), or as a tax exempt organization. Exemption certificates for the following relevant customers are attached as <u>Exhibit 4</u> to the Williams Declaration.[5]

25. Therefore, sales totaling $55,039.08 to these exempt customers in the sample months are non-taxable and should be removed from the Exceptions List, and the Claim should be reduced accordingly.[6]

**B.    Purchases**

26. The Auditor assessed use tax on numerous purchases and expenses in the sample three months that the Debtors submit are not taxable and should be removed from the Exceptions List and the extrapolated tax assessment calculation, and the Claim should be reduced accordingly.

---

[5] Due to the confidential nature of the Debtors' customers, the customer names have been redacted. Complete, unredacted copies will be provided to the Court, the U.S. Trustee, and Pennsylvania upon request.

[6] *See* Exhibit 1-A, items 144-512.

01:17869470.1

### 1. Utility Charges

27.     The Auditor reviewed a sample of utility invoices in the three months selected. The Auditor erroneously included the following invoices on the Exceptions List:[7]

- Compass Energy.  Compass Energy sold natural gas to the Debtors' plant in York, Pennsylvania.  Compass Energy properly charged Pennsylvania sales tax on the supply of the natural gas as indicated on the invoices, and the Debtors paid it.

- Columbia Gas.  Columbia Gas delivered the natural gas purchased from Compass Energy to the York plant via its pipeline distribution network.  The delivery services provided by Columbia Gas as a distributor are not subject to tax under 72 Pa. Cons. Stat. § 7202 when billed by a distributor, independent of the vendor that supplies the natural gas.

- Met-Ed.  Met-Ed was the electricity provider to the York plant.  Met-Ed charged Pennsylvania sales tax on the invoices, and the Debtors paid it.

- Public Service Electric & Gas, and First Energy Solutions Corp.  Both were utility providers to one of the Debtors' facilities located in New Jersey, not in Pennsylvania.  The facility is located near Philadelphia and is referenced internally as the Philadelphia Stanfast Center; therefore, the Auditor must have assumed that the facility was located in Pennsylvania.

28.     The above-referenced utility charges are either non-taxable, or the taxes were properly paid.  These items, which are included in the sample three months, total $899,038.97 and should be removed from the Exceptions List.

### 2. Purchases for New Jersey Plant

29.     Items not used in Pennsylvania were improperly included in the original data provided to the Auditor.  When the information was compiled for the three-month sample, purchases by the Philadelphia Stanfast Center, which were used in at that site, were incorrectly included.  As explained above, the facility is actually located in New Jersey; therefore, no purchases of the Philadelphia Stanfast Center should have been provided to the Auditor as

---

[7]  *See* Exhibit 1-B, items 1-151.

01:17869470.1

9

Pennsylvania transactions, and no Pennsylvania taxes should be assessed. These purchases total $88,182.31 and should be removed from the Exceptions List.[8]

### 3. Production Purchases

30. The Auditor improperly included numerous purchases on the Exceptions List for the York plant as taxable that were used in production and should therefore be exempt. Pursuant to 61 Pa. Code § 32.32(a)(2), purchases for manufacturing or processing of tangible personal property are exempt from Pennsylvania sales and use tax when used directly in manufacturing or processing operations. Purchases of $243,135.20 on the Exceptions List were for raw materials or product that were either incorporated into finished products for resale by the Debtors or were production supplies used by the Debtors directly in the production process.[9] These purchases should therefore be removed from the Exceptions List.

### 4. Capital Purchases

31. The Auditor also included 48 purchases of capital equipment totaling $581,669.37 on the Exceptions List. The Debtors submit that these purchases, with the exception of two items totaling $600.00, are not taxable for the following reasons and should be removed from the Exceptions List:

- Eleven invoices totaling $422,480.62 were for real estate improvements and are not subject to use tax.[10] The payments were to contractors who paid Pennsylvania sales tax on the material components of the improvements. Therefore, the payments to the contractors are non-taxable services pursuant to 72 Pa. Cons. Stat. § 7202.

- Five invoices totaling $100,723.60 were for capital purchases of production equipment used directly in the production process and are non-taxable under 61 Pa. Code § 32.32(a)(2).[11]

---

[8] See Exhibit 1-C, items 1-117.

[9] See Exhibit 1-C, items 118-385.

[10] See Exhibit 1-D, items 1-11.

[11] See Exhibit 1-D, items 12-16.

- Twenty invoices totaling $13,958.47 were for the purchase of computers that the Debtors first used in Ohio.[12] The Debtors' employees installed software on the computers and set up systems prior to the computers being sent to locations in Pennsylvania. Ohio sales tax was paid on those invoices.

- Four invoices are for equipment that was first used in Maryland.[13] Those invoices total $27,056.68 and sales tax was charged and paid to Maryland.

- Pennsylvania sales tax was paid on four invoices totaling $14,750.00.[14]

- Pennsylvania use tax was accrued and paid on one invoice totaling $1,500.00.[15]

- One invoice was for a non-taxable service in the amount of $600.00.[16]

32. Adding the items above, the total capital purchases on the Exceptions List that should be removed equal $581,069.37.

## RESERVATION OF RIGHTS

33. The Debtors expressly reserve the right to amend, modify, or supplement this Objection. The Debtors also expressly reserve the right to commence additional proceedings with respect to the Claim.

## NOTICE

34. The Debtors have provided notice of this Objection to (i) the UST; (ii) counsel to the Committee; (iii) counsel for Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' Second Lien Credit Agreement; (iv) counsel to the agents under the Debtors' debtor-in-possession financing facilities; (v) Pennsylvania; and (d) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In

---

[12] See Exhibit 1-D, items 17-36.
[13] See Exhibit 1-D, items 37-40.
[14] See Exhibit 1-D, items 41-44.
[15] See Exhibit 1-D, item 45.
[16] See Exhibit 1-D, item 46.

light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit C, sustaining this Objection in all respects and granting such other and further relief as the Court may deem just and proper.

Dated:  October 20, 2015
       Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*