```
1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2

3  IN RE:                       )  Case No. 15-10541 (BLS)
                                )  Chapter 11
4  SRC LIQUIDATION COMPANY, et al.,)
                                )
5               Debtors.        )  Courtroom No. 1
                                )  824 Market Street
6                               )  Wilmington, Delaware 19801
                                )
7                               )  October 15, 2015
                                )  10:00 A.M.
8
                         TRANSCRIPT OF HEARING
9              BEFORE HONORABLE BRENDAN L. SHANNON
                  UNITED STATES BANKRUPTCY JUDGE
10
   APPEARANCES:
11

12 For the Debtors:         Gibson Dunn & Crutcher LLP
                            By:  JEREMY GRAVES, ESQUIRE
13                               MATTHEW BOUSLOG, ESQUIRE
                            200 Park Avenue
14                          New York, New York 10166

15 TELEPHONIC APPEARANCE:

16 For TLF Graphics Inc.:   Harris Beach PLLC
                            By:  KELLY GRIFFITH, ESQUIRE
17                          333 West Washington St., Suite 200
                            Syracuse, New York 13202
18
   ECRO:                    DANA MOORE
19
   Transcription Service:   Reliable
20                          1007 N. Orange Street
                            Wilmington, Delaware 19801
21                          Telephone:  (302) 654-8080
                            E-Mail:  gmatthews@reliable-co.com
22

23 Proceedings recorded by electronic sound recording:
   transcript produced by transcription service.
24

25
```

1                                INDEX

2                                                        <u>Page</u>

3  <u>NOTICE OF AGENDA MATTERS</u>:

For the Debtors, by Mr. Graves                    3,10
4  For TLF Graphics, by Ms. Griffith                    8
For the Debtors, by Mr. Bouslog                     13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       THE CLERK:  Please rise.

2       THE COURT:  Please be seated.  I appreciate

3 everyone's patience with juggling the hearing.

4       MR. GRAVES:  Good morning, Your Honor, for the

5 record Jeremy Graves of Gibson Dunn on behalf of the Debtors.

6 We do thank you for fitting us in.  We know you have a busy

7 calendar, so we will do our best to be as brief as possible.

8 With me in the Courtroom today is Landin Williams who is the

9 Debtors' chief restructuring officer, and I have also got

10 Matt Bouslog of Gibson Dunn and Mr. Magaziner of Young

11 Conaway.

12       This is an omnibus hearing in the Standard Register,

13 now SRC Liquidation Company case.  So I would like to begin

14 with a brief status update on the case, then we will get to

15 the agenda items.  At the last omnibus hearing, as you will

16 recall, the Court did enter the Debtors' solicitation

17 procedures motion for the procedures moving towards a

18 combined hearing on the disclosure statement and plan.  The

19 Debtors did complete the mailing of solicitation package as

20 required by the order and the early voting results have been

21 positive, although the voting deadline is not until November

22 2nd, so we continue to wait for the votes to come in.

23       Following that hearing, the Court also entered the

24 Debtors' proposed sale and abandonment procedures order

25 related to *de minimis* assets that the Debtors are getting

1    back from Taylor.  I am happy to report that Silver Point has

2    actually consented to either the sale or abandonment of all

3    the assets we have gotten back so far.  The process is

4    working well.  We have abandoned all of the assets that we

5    intend to abandon and we are going to sell the one asset that

6    we intend to sell, which is a parcel real property located in

7    Terre Haute, Indiana.  Hopefully, that sale will close this

8    week.

9            THE COURT:  Okay.

10           MR. GRAVES:  So, in short, the Debtors have

11   continued taking all the steps necessary to move forward

12   towards the combined hearing on November 19th and the items on

13   today's docket reflect the continuation of those efforts.

14           So that brings me to the first matter before Your

15   Honor, which is agenda item number 3.  Agenda item number 3

16   is the Debtors' objection to the 503(b)(9) claims that were

17   filed by certain drop ship vendors.  I would like to start

18   with a couple of procedural points before moving to the

19   merits.  We mentioned this potential objection to Your Honor

20   a few months ago and you asked us to consider the fact that

21   the relief requested in this motion, although only impacting

22   a few Claimants, may impact the rights of others not directly

23   subject to the objection, simply because they may be

24   similarly situated.  We heard Your Honor.  So what we did was

25   we waited until after the bar date to file the objection and

1   then we served the objection on all parties that filed

2   503(b)(9) claims of any type, whether we knew or did not know

3   that they had drop ship type claims.  We, obviously, invited

4   all parties in interest to file a response.

5           We think the process worked.  Of the five parties

6   that were directly subject to the objection, we received two

7   formal responses, but we also received five responses from

8   parties not directly subject to the objection, but who felt

9   similarly situated.  We would, obviously, invite the Court to

10  consider the substance of the response filed by those parties

11  in addition to the ones filed by the folks directly affected

12  by the motion.

13          One other small housekeeping matter, Business Card

14  Services, Inc., who is subject to the objection, informally

15  reached out to us and said they didn't intend to prosecute a

16  response or objection to our papers on the merits of the drop

17  ship, but they did say that there is around $13,500.00 worth

18  of goods that they think were directly delivered to the

19  Debtors.  We are in the process of doing the reconciliation

20  on those claims amounts, so we have agreed to language in the

21  order that reserves the factual issue.  Hopefully, it won't

22  be an issue and we will be able to work that out. I will have

23  a blackline at the end of this presentation that has that

24  carve-out.

25          That does bring me to the substance of the argument.

1   As Your Honor is aware, Section 503(b)(9) provides Claimants

2   with an administrative expense claim equal to the value of

3   the goods delivered to the Debtors within 20 days of the

4   bankruptcy filing.  Many of the Debtors' vendors drop shipped

5   goods, all be it at the Debtors' request, directly to the

6   Debtors' customers.  So the Debtors' position is fairly

7   straight forward here.  We think the phrase received by the

8   Debtors, as it is used in Section 503(b)(9) means just that,

9   the goods in question must have actually been delivered to

10  the Debtors.

11          We have done a fair amount of legal research on this

12  issue and we think we have located every case that has

13  addressed the issue and in each of those cases, the Courts

14  have ruled that the phrase received by the Debtors does not

15  include goods delivered in the drop ship situation.  So we

16  think that those cases are rightly decided and should be

17  filed by the Court for the reasons that we have set forth in

18  our papers.

19          I want to address just one of the arguments in my

20  opening that have been raised by some of the objectors

21  because it may be relevant.  These Claimants argue that the

22  phrase received by the Debtor should be interpreted by

23  looking to the uniform commercial code.  Now, I think when we

24  are looking at the uniform commercial code, it's important to

25  keep in mind that the concept receipt of goods is a defined

1  term under the uniform commercial code and it's defined as

2  actual physical possession unless the context clearly

3  requires otherwise.

4          So the two operative provisions are Sections 2702

5  and 2705 of the UCC.  2705 gives the seller the right to stop

6  shipment of goods that are still in the possession of a

7  common carrier.  Once those goods are delivered to the buyer,

8  then 2702 gives the seller the reclamation right to reclaim

9  those goods from the buyer.  Because there is a toggle

10 between 2705 and 2702, which turns when did the buyer get the

11 goods, 2705 outlines the four situations, specifically in

12 which a buyer receives goods within the meaning of the

13 uniform commercial code.  Those are receipt of goods by the

14 buyer, that one is obvious, acknowledgement to the buyer by

15 any Baylee of the goods, except a carrier that the Baylee

16 holds the goods for the buyer, acknowledge to the buyer by a

17 carrier by reshipment or as a warehouse, or negotiation to

18 the buyer of any negotiable instrument of title covering the

19 goods.

20         None of these provisions really, clearly applies to

21 the drop ship situation, leaving it a bit unclear as to when

22 does the right to stop shipment end with respect to drop ship

23 goods.  So the comments to the UCC clarify.  They say once

24 the drop shipment goods arrive with the end customer, the

25 right to stop shipment of those goods ceases under 2705.  The

1 seller has no right of reclamation as the end customer in

2 that situation because the customer is a good faith person

3 purchaser for value, which is a valid defense to a

4 reclamation claim under the uniform commercial code.

5        So under the UCC scheme, the drop ship seller has,

6 under non-Bankruptcy Law, an unsecured claim; that's all they

7 have.  We think that the same result should obtain, with the

8 context of a bankruptcy, applying the Butner principal that a

9 drop ship seller should have a general unsecured claim in a

10 bankruptcy case.  That is all I have for the initial

11 presentation.  I will answer any questions you have or turn

12 it over.

13        THE COURT:  I'll hear from the objectors.

14        MR. GRAVES:  I think they may be appearing

15 telephonically, Your Honor.

16        THE COURT:  We have at least one in the room, but I

17 will hear from anybody that wishes to be heard in response to

18 the Debtors' objection.

19        MS. GRIFFITH:  Good morning, Your Honor.

20        THE COURT:  Yes.

21        MS. GRIFFITH:  Kelly Griffith of Harris Beach for

22 TLF Graphics who is a creditor and administrative expense

23 Claimant.  We believe based on the goods that were delivered,

24 certainly at the request of the Debtor and, I think my

25 client, TLF Graphics, had a very long standing relationship

1  with the Debtor and I think the distinguishing factor here

2  from the other cases is the business that operated by the

3  Debtor and the need for the goods to have been shipped to the

4  customer, really on an expedited basis.  So the timeliness

5  that was necessary to get the goods that were prepared by my

6  client and other similarly situated clients, but, you know, I

7  am speaking simply for mine, but the goods, you know, that

8  were prepared and generated by my client that went to the end

9  customer were needed, generally, on a very quick turnaround.

10        The business practicalities are such that it really

11  didn't make any sense for the goods to be delivered to the

12  Debtor and then the Debtor turnaround and ship them to the

13  customer.  I think that that relationship and the materials

14  that are provided by the Debtor to my client, with respect to

15  the purchase orders, really supports the proposition that

16  these should be deemed administrative expense claims.

17        The shipments and packing slip very, very clearly

18  say, and these were provided to my client by the Debtor when

19  the purchase order was submitted.  They specifically say they

20  are coming from Standard Register and, you know, whatever the

21  particular [indiscernible] of Standard Register.  So the

22  customer believed that these goods were actually coming from

23  the Debtor.  I think that that is a very critical distinction

24  from the other drop ship cases that the Debtors site.

25        I think that it would be really unfair given the

1  business realities for my client to not be given an

2  administrative expense claim when they clearly knew the

3  operating Debtor was having financial difficulties, the

4  payments were delayed near the petition date.  The

5  communications from the Debtor were not nearly as normal.

6  They use to have almost daily communications and then they

7  dropped off as they neared the petition date.  I think that,

8  you know, they clearly lived up to the intent of what Section

9  503(b)(9) was enacted for.

10        THE COURT:  Okay.  Very good.

11        MS. GRIFFITH:  Thanks.

12        THE COURT:  Other respondents/objectors.  Okay.  Mr.

13  Graves.

14        MR. GRAVES:  Just a very brief rebuttal, Your Honor.

15  The Debtors actually do not dispute the business purpose as a

16  reason for the arrangement, but we don't believe that that

17  changes the result that actual physical possession of the

18  goods is required by Section 503(b)(9) and, in fact, if we

19  are going to look at the uniform commercial code.

20        THE COURT:  Your position is that it is consistent

21  with that applying Section 503(b)(9) and incorporating

22  Article 2 into it because 503(b)(9) talks about received

23  goods, yields the result that you have identified, which is

24  that under the UCC this would not be construed to be receipt

25  of goods by the company in a non-bankruptcy context, do I

1  understand your argument?

2        MR. GRAVES:  That is correct.  That is one of our

3  arguments.  We also rely on a plain language argument, but

4  that is our UCC based argument.  Just picking up on that

5  point, in the UCC, in the drop ship arrangement, the comment

6  to 2705, which talks about drop ship, does say that the

7  reason that the seller has no right as against the end

8  customers, that these sellers should be "regarded as

9  acquiescing in the form of the transaction" and we believe

10  that is exactly what happened here.

11        THE COURT:  Does anyone else wish to be heard?  Very

12  well.  Here is what we are going to do.  I am going to

13  sustain the Debtors' objection and I will overrule the

14  responses to the objection.  I want to be clear, I am

15  certainly sympathetic to the positon of the creditors that

16  have provided and delivered goods at the direction of the

17  Debtor in the way that they did, but I think case law teaches

18  as a threshold matter that administrative priorities are to

19  be strictly and carefully construed by Bankruptcy Courts and

20  that it is incumbent upon a Claimant to clearly demonstrate

21  their entitlement.  Every creditor, every Claimant under

22  503(b)(9), whether they fit within the category or not,

23  everybody that makes that claim has, in fact, provided value

24  to the Debtor.

25        As a nature of the Debtors' insolvency, bankruptcy

1  and default has suffered a loss thereby, but only,

2  essentially, a limited subsection of creditors that can

3  satisfy, strictly, the requirements of Section 503(b)(9) are

4  entitled to that priority.  In this instance, I believe that

5  it is appropriate to incorporate into the 503(b)(9) analysis

6  Article 2 considerations given that we talk about receipt of

7  goods.  Many, many Courts have dealt with this issue and the

8  parties have identified many of these for me.

9          As I look at the case law, again, I express a

10 measure of sympathy for the frustration that the creditors

11 are articulating, but as a practical matter it does not seem

12 to me that within the terms of the uniform commercial code

13 that these goods have been "received by the Debtor."  So

14 while it may be a business relationship developed of long

15 practice and, frankly, for the benefit and at the direction

16 of the Debtor, nevertheless, the circumstances of that

17 business relationship and the way the product was moved from

18 one party to another is such that it takes it outside of the

19 scope of Section 503(b)(9).

20         So the Debtors' objection will be sustained.  I have

21 also looked at the arguments with respect to constructive

22 trust and unjust enrichment, and based upon my ruling I am

23 not satisfied that there is any basis, any sufficient legal

24 basis for imposition of a constructive trust or for an award

25 based on theories of unjust enrichment.  Again, it is

1  unfortunate that the Claimants are left with a general

2  unsecured claim in this case, which will not be paid in full.

3  I expect, but nevertheless that is the necessary outcome of

4  the Bankruptcy Laws, and the Debtors' proposed plan and the

5  circumstances of their bankruptcy case.  And that does not

6  yield a situation of unjust enrichment.  Mr. Graves, do you

7  have a form of order?

8          MR. GRAVES:  Yes, Y our Honor, I have a blackline

9  and clean.

10          THE COURT:  Very well.  Mr. Graves, other matters.

11          MR. GRAVES:  Mr. Bouslog is going to handle the

12  other two matters.

13          THE COURT:  All right.

14          MR. BOUSLOG:  Good morning, Your Honor, Matt Bouslog

15  from Gibson Dunn on behalf of the Debtors.  Just briefly here

16  we have got the fourth omnibus claim objection and a fifth

17  omnibus claim objection which are matters 4 and 5 on the

18  agenda.  With respect to the fourth omnibus claim objection,

19  we did receive several comments.  We don't believe that there

20  are any outstanding objections with respect to that order and

21  we have a copy here for you, along with a blackline.

22          THE COURT:  Very good.  I'd ask if anyone at this

23  point wishes to be heard with respect to the Debtors' fourth

24  omnibus objection to claims.  Very well, I have had an

25  opportunity to review the objection, the underlying claims as

1  well as the Debtors' submissions in connection there with.  I

2  am satisfied the Debtors have carried their burden with

3  respect to the relief requested and based upon the record

4  before me, the objection will be sustained and the order will

5  issue.

6         MR. BOUSLOG:  Thank you, Your Honor.  With respect

7  to the fifth omnibus claim objection we, again, received a

8  couple of responses.  We believe Ms. Ileji's concern is

9  resolved.  Mr. Wilde, we spoke to him and we are not entirely

10 sure whether or not he still had an open question.  We didn't

11 not receive a formal response from him or his attorney, but

12 so far as we can tell, we believe that they may consent to

13 the fifth omnibus claim objection.

14        THE COURT:  Very good.  I'd ask if anyone wishes to

15 be heard in connection with the Debtors' request for entry of

16 an order on their fifth omnibus claim objection.

17        MR. BOUSLOG:  We have a clean, no changes.

18        THE COURT:  Very good.  Okay.  Based upon the record

19 before me, I am satisfied that the Debtors have carried their

20 burden with respect to the relief requested in the fifth

21 omnibus objection to claims and that order will issue.

22        MR. BOUSLOG:  Thank you, Your Honor, I don't believe

23 there is anything else.

24        THE COURT:  All right, I have signed that order.  We

25 will have this on the docket today.  Any other matters before

1    the Court?  Very well, we will stand in recess.  Again, I

2    would express my appreciation to everybody for your

3    flexibility.  I apologize for juggling you.  Stand in recess.

4       (Court Adjourned).

14                            CERTIFICATE

15   I certify that the foregoing is a correct transcript from the

16   electronic sound recording of the proceedings in the above-

17   entitled matter.

18
     /s/Mary Zajaczkowski                    October 21, 2015
19   Mary Zajaczkowski, CET**D-531                 Date