**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SRC LIQUIDATION COMPANY, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>Jointly Administered<br><br>**Hearing Date: November 19, 2015 at 9:30 a.m. (ET)**<br>**Objection Deadline: November 12, 2015 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING THE WIND-DOWN SETTLEMENT**

SRC Liquidation Company and its above-captioned affiliated debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") hereby submit this motion (this "Motion"), for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving that certain Standard Register Terms of Wind-Down Settlement (the "Wind-Down Settlement"), a copy of which is attached as Exhibit 1 to the Proposed Order. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A. General Background

3. On March 12, 2015, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession. No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4. On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of

these Chapter 11 Cases, can be found in *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2].

6. On July 31, 2015, the Debtors consummated the sale of substantially all of their assets (the "Sale") to Taylor Corporation ("Taylor"). *See* Docket No. 889. Pursuant to the Sale agreement (the "APA"), Taylor provided the Debtors with approximately $15 million (the "Wind-Down Amount") to enable the Debtors to pay certain sale-related fees and expenses, insurance costs, certain benefits and employee-related expenses, professional fees and expenses, and other administrative expenses.

7. On September 22, 2015, the Debtors filed the *First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No. 1086] (the "Plan"). The Court has scheduled a confirmation hearing for November 19, 2015.

**B. The Committee Settlement and Wind-Down Settlement**

8. In connection with the Sale, the Debtors, the Committee, and Silver Point Finance, LLC ("Silver Point") entered into a settlement agreement [Docket No. 696] (the "Committee Settlement"). Pursuant to the Committee Settlement, Silver Point and its affiliates agreed to, among other things, release all right, title, interest, or claim in certain assets that would remain with the Debtors, including the Wind-Down Amount. The Committee Settlement also provides that "the Wind-Down Amount includes $1,850,000 on account of professional fees and expenses of the professional advisors to the DIP Agents (as defined in the DIP Financing Order), the First Lien Agent, the Second Lien Agent, and the Pre-Petition ABL Agent (as defined in the DIP Financing Order) . . . ." Committee Settlement at 6.

9. Silver Point has asserted that it is entitled to the entire $1.85 million referenced in the Committee Settlement regardless of the actual amount of professional fees incurred pre- or post-Sale. *See Silver Point Finance, LLC's Limited Objection to (a) Debtors' Motion to*

*Establish Procedures to Transfer, Abandon, or Sell De Minimis Assets and (b) Debtors' Motion For Entry of an Order Authorizing the Debtors to (i) Amend Insurance Agreement and (ii) Assume Insurance Agreement as Amended* [Docket No. 1047] (the "Abandonment Objection") at 3-7. Silver Point has also asserted that it is entitled to any repayments from Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem") on account of the $500,000 prepayment remitted to Anthem from the Wind-Down Amount, or any other advancements made to Anthem by the Debtors. Abandonment Objection at 11-12. The Debtors dispute Silver Point's position with respect to both issues. *See Debtors' Reply to Silver Point Finance, LLC's Limited Objection to (a) Debtors' Motion to Establish Procedures to Transfer, Abandon, or Sell De Minimis Assets and (b) Debtors' Motion For Entry of an Order Authorizing the Debtors to (i) Amend Insurance Agreement and (ii) Assume Insurance Agreement as Amended* [Docket No. 1051] at 2-4; 9-11. Silver Point has threatened to reject the Debtors' Plan if an agreement is not reached on the points raised above and, given the relative size of Silver Point's claims, it has the ability to unilaterally ensure that the Plan does not obtain the requisite votes.

10. Over the last several months, the Debtors, Silver Point, and Taylor (collectively, the "Parties") have conducted good faith negotiations with respect to Silver Point's claim to the Wind-Down Amount and other issues related to the wind-down of the Debtors' estates. As a result of these negotiations, the Parties reached an agreement, the terms of which are embodied in the Wind-Down Settlement.

11. Pursuant to the Wind-Down Settlement, the Debtors have agreed, among other things, to pay $750,000 from the Wind-Down Amount to Silver Point (the "Settlement Payment"), and Taylor has agreed, among other things, to relinquish any beneficial or

reversionary interest or other claim to the Wind-Down Amount, including the Settlement Payment. In exchange, Silver Point has agreed, among other things, to (i) release its claim to any further portion of, or further distribution from, the Wind-Down Amount, including any return of funds from Anthem, and (ii) support the Plan.

## RELIEF REQUESTED

12. By this Motion, the Debtors request that the Court enter the Proposed Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Wind-Down Settlement.

## BASIS FOR RELIEF REQUESTED

### A. The Applicable Legal Standard

13. Bankruptcy Rule 9019, which governs the approval of compromises and settlements by a debtor, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Further, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. The analysis of any proposed settlement starts with the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. *Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95–96 (D. Del. 2006). In addition, a court must:

> assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in

> collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id.* at 96 (quoting *Martin*, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable, and in the best interest of a debtor's estate. *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

15. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). A court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible, rather "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)).

16. In the Debtors' business judgment, the resolution embodied in the Wind-Down Settlement is reasonable and in the best interest of the Debtors, their estates and creditors, and other parties in interest in the Chapter 11 Cases. The Wind-Down Settlement provides for a fair and practical resolution of the disputes with Silver Point, which, if litigated, would significantly dilute the Debtors' limited resources and consume their professionals' time, thereby threatening the Debtors' ability to confirm the Plan. The Wind-Down Settlement is the product of significant discussions and negotiations between the Parties, culminating in a settlement that falls

well within the range of reasonable litigation outcomes. In addition, as discussed below, each of the applicable *Martin* factors weighs heavily in favor of approving the Wind-Down Settlement.[2]

**B. The Probability of Success in Litigation**

17. Had the Parties failed to reach the consensual resolution provided for in the Wind-Down Settlement, at a minimum, the Debtors would have been forced to litigate the issues raised by Silver Point, risking loss of the entire $1.85 million from the Wind-Down Amount plus any future refund from Anthem, and incurring additional professional fees by the Debtors' professionals. Additionally, Silver Point had threatened to oppose the Plan, putting the Debtors' ability to confirm such Plan at risk. By contrast, the terms of the Wind-Down Settlement provide certainty that the Debtors' liability for Silver Point's professional fees is fixed at $750,000, that the Debtors can use the remaining Wind-Down Amount free of any claims by Silver Point or Taylor, and that Silver Point will support the Plan, making confirmation of the Plan much more likely. In light of the foregoing, the Debtors submit that the first *Martin* factor weighs significantly in favor of approving the Wind-Down Settlement.

**C. The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending It**

18. A litigated resolution of the issues addressed by the Wind-Down Settlement would potentially be complex and might delay or outright derail confirmation of the Plan. Such litigation, along with the related uncertainty with respect to the Plan, would be at a significant expense to the Debtors' estates, creditors, and other parties in interest in these Chapter 11 Cases, both in terms of the cost of the litigation itself, and in terms of the cost of a potential delay in winding up the Chapter 11 Cases. By resolving the various issues addressed in the Wind-Down Settlement, the Debtors are moving these Chapter 11 Cases towards confirmation and

---

[2] The second *Martin* factor is not applicable in this case.

consummation of the Plan. Accordingly, the third *Martin* factor also weighs in favor of approving the Wind-Down Settlement.

**D. The Paramount Interest of Creditors**

19. Here, the paramount interest of creditors (and other parties in interest in the Chapter 11 Cases) will undoubtedly be best served by approving the Debtors' entry into the Wind-Down Settlement, thereby resolving the outstanding disputes with Silver Point, avoiding potentially costly and time-consuming litigation, and improving the Plan's likelihood of being confirmed. Therefore, the Court's approval of the Wind-Down Settlement is in the best interests of the Debtors, their estates, their creditors, and other parties in interest in these Chapter 11 Cases. Accordingly, the fourth *Martin* factor weighs in favor of approving the Wind-Down Settlement.

20. Thus, as shown above, the applicable *Martin* factors weigh in favor of approving the Wind-Down Settlement, and the Debtors respectfully submit that the Court should therefore approve the Wind-Down Settlement.

**REQUEST FOR WAIVER OF STAY**

21. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek herein is necessary for the Debtors to confirm and implement the Plan, and the Debtors' estates will benefit if they can implement the Plan without delay. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

**NOTICE**

22. The Debtors have provided notice of this Motion to (i) the UST; (ii) counsel to the Committee; (iii) counsel for Silver Point, in its capacity as administrative agent under the Debtors' Second Lien Credit Agreement; (iv) counsel to Taylor; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated: October 29, 2015
Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Maris J. Kandestin (No. 5294)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
kcoyle@ycst.com
mkandestin@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (NY No. 4697561)
Jeremy L. Graves (CO No. 45522)
Matthew G. Bouslog (CA No. 280978)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsondunn.com
jgraves@gibsondunn.com
mbouslog@gibsondunn.com

*Counsel to the Debtors and*
*Debtors in Possession*