## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | ) Case No. 15-10541 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |

| | |
|---|---|
| CARESOURCE | ) |
| | ) |
| -and- | ) |
| | ) |
| CARESOURCE MANAGEMENT GROUP CO., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. Proc. No. _____ |
| | ) |
| SRC LIQUIDATION COMPANY, | ) |
| SR LIQUIDATION HOLDING COMPANY, | ) |
| SR LIQUIDATION TECHNOLOGIES, INC., | ) |
| SR LIQUIDATION INTERNATIONAL, INC., | ) |
| iMLIQUIDATION, LLC, SR LIQUIDATION | ) |
| OF PUERTO RICO INC., SR LIQUIDATION | ) |
| MEXICO HOLDING COMPANY, STANDARD | ) |
| REGISTER HOLDING, S. DE R.L. DE C.V., | ) |
| STANDARD REGISTER DE MÉXICO, S. DE | ) |
| R.L. DE C.V., STANDARD REGISTER | ) |
| SERVICIOS, S. DE R.L. DE C.V., SR | ) |
| LIQUIDATION TECHNOLOGIES | ) |
| CANADA ULC, | ) |
| | ) |
| -and- | ) |
| | ) |
| SILVER POINT FINANCE, LLC, as Agent and | ) |
| Collateral Agent, SPCP GROUP, LLC, | ) |
| SPCP GROUP III, LLC, | ) |
| DLJ INVESTMENT PARTNERS, L.P., | ) |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

DLJ INVESTMENT PARTNERS II, L.P.,    )
DLJ IP II HOLDINGS, L.P.,    )
SPCP GROUP III LLC, SPF CDO I, LTD.,    )
SP WORKFLOW HOLDINGS, INC.,    )
SILVER POINT CAPITAL FUND, L.P.,    )
    )
-and-    )
    )
BANK OF AMERICA, N.A., as agent and Lender,  )
and WELLS FARGO BANK, N.A., as Lender,    )
    )
      Defendants.    )
_____)

## COMPLAINT FOR DECLARATORY AND RELATED RELIEF

CareSource and CareSource Management Group Co. (collectively "CareSource"), by and through undersigned counsel, hereby avers as follows:

### The Parties

1.     CareSource and CareSource Management Group Co. are each  an Ohio corporation with the principle place of business for each being located in Dayton, Ohio.

2.     SRC Liquidation Company, SR Liquidation Holding Company, SR Liquidation Technologies, Inc., SR Liquidation International, Inc., iMLiquidation, LLC, SR Liquidation of Puerto Rico Inc., SR Liquidation Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de México, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and SR Liquidation Technologies Canada ULC are each debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 case.  The Debtors' cases have been administratively consolidated.

3.     Silver Point Finance LLC is the administrative agent and collateral agent for certain credit facilities with the Debtors.  On information and belief, Silver Point Finance LLC is agent for post-petition lenders SPCP Group, LLC and SPCP Group III, LLC in the Debtors' chapter 11

2

bankruptcy case, pursuant to an Order entered by the United States Bankruptcy Court for the District of Delaware on April 16, 2015. Silver Point Finance LLC is also the administrative agent for the lenders DLJ Investment Partners, L.P., DLJ Investment Partners II, L.P., DLJ IP II Holdings, L.P., SPCP Group III LLC, SPCP Group, LLC, SPF CDO I, LTD., SP Workflow Holdings, Inc., Silver Point Capital Fund, L.P. (collectively, the "Second Lien Lenders") under a certain Second Lien Credit Agreement with the Debtors, dated as of August 1, 2013.

4.     Bank of America, N.A. ("Bank of America") is a national banking association that is chartered in North Carolina. Bank of America, N.A. is agent and lender, together with Wells Fargo Bank, N.A. ("Wells Fargo"), as lender providing a credit facility to the Debtors prior to the Debtors' bankruptcy filing. Together with the Second Lien Lenders, Bank of America and Wells Fargo are post-petition lenders in the Debtors' chapter 11 bankruptcy case, pursuant to an Order entered by the United States Bankruptcy Court for the District of Delaware on April 16, 2015.

## Jurisdiction and Venue

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

## Background and Relevant Facts

6.     On March 12, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

7.     The Debtors' pre-petition business activities included providing printing services and printed materials.

8.     CareSource, headquartered in Dayton, Ohio, is a managed care company servicing the needs of its more than 1.4 million health care members. CareSource regularly and frequently

uses printed materials to communicate with its members regarding their health care policies, benefits, coverage, and cost of health insurance coverage.  If CareSource fails to timely or accurately communicate with its members, this can lead to potential liability.

9.      To meet its printing needs, CareSource entered into a Master Services Agreement with the Debtors, effective on July 22, 2014 (the "Effective Date").  CareSource and the Debtors executed Amendment No. 1 to the Master Services Agreement effective on October 15, 2014. CareSource and the Debtors executed Amendment No. 2 to the Master Services Agreement effective on December 30, 2014.  These documents are collectively referred to as the "Master Services Agreement".

10.     CareSource and the Debtors executed a Delegated Services Agreement effective on January 14, 2015 (the "Delegated Services Agreement").  The Delegated Services Agreement contains certain information that is the same as or similar to information contained in the Master Services Agreement. However, the Delegated Services Agreement also contains additional information that is necessary for CareSource and the Debtors to comply with applicable health care laws and regulations, including certain privacy requirements.

11.     CareSource and the Debtors also executed a Business Associate Agreement (the "BAA").

12.     The Master Services Agreement, the Delegated Services Agreement, and the BAA are collectively referred to herein as the "Contracts".  Given the sensitive nature of the printing work done by the Debtors, Section 2.4 of the Master Services Agreement and Section 2.5 of the Delegated Services Agreement required the Debtors to purchase insurance to protect CareSource from liability arising from the Debtors' printing errors (the "Insurance Policies").

13.     The Debtors failed to perform in accordance with the Contracts in many ways (the "Performance Defaults").  The Performance Defaults are well documented in detail by sealed pleadings filed by CareSource in the Debtors' chapter 11 case.  In sum, the Debtors made errors in certain printed materials, exposing CareSource to possible liability.  CareSource timely filed a proof of claim for damages arising from the Performance Defaults.

14.     On April 16, 2015, the Court entered the Final Order (A) Authorizing Debtors In Possession To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 362, 363 And 364, (II) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to 11 U.S.C. §§ 364 [sic]; And Providing Adequate Protection To Prepetition Credit Parties And Modifying Automatic Stay Pursuant To 11 U.S.C. §§ 361, 362, 363, And 364 (the "Final DIP Order").  The Final DIP Order authorized the Debtors to borrow on a secured, super-priority, asset-based revolving credit facility up to $125,000,000 from Bank of America and Wells Fargo (the "ABL Facility"), and to borrow on a super-priority, multi-draw secured term loan facility up to $30,000,000 from Silver Point (the "Silver Point Facility").

15.     On June 19, 2015, the Court entered the Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief [Docket No. 698] (the "Sale Order"), authorizing the Debtors to sell substantially all of their assets to Taylor Corporation ("Taylor") pursuant to that certain Asset Purchase Agreement entered into by and between the Debtors and Taylor dated as of June 19, 2015 (the "APA").

16.     The sale to Taylor, pursuant to the provisions of the APA, closed on July 31, 2015 (the "Closing Date").  *See* Docket No. 889.

17.     On September 24, 2015, the Debtors served their *Fourth Notice Regarding Designation as Removed Contract and Rejection Thereof* [D.I. No. 1097] (the "Rejection Notice"), formally rejecting the Contracts.

18.     Pursuant to the requirements in the Contracts to do so, the Debtors had the Insurance Policies to cover claims, such as those arising because of the Performance Defaults. Both before and after the Petition Date, and prior to the Rejection Notice, the Debtors repeatedly stated to CareSource that proceeds from the Insurance Policies would cover claims of CareSource for the Performance Defaults. The Debtors even provided CareSource with a copy of the Insurance Policies, and stated numerous times that CareSource would have access to proceeds from the Insurance Policies to the extent the Performance Defaults resulted in civil liability and damages for CareSource. The Plan now states precisely the opposite.

19.     The Debtors' sale to Taylor and subsequent events left CareSource, Taylor, and the Debtors in an unusual posture with respect to the Contracts and the inter-party claims arising from the Contracts. First, by the APA, the Debtors transferred to Taylor accounts receivable purportedly owed by CareSource to the Debtors, which are subject to defenses, counterclaims and setoff rights by CareSource for claims arising from the Performance Defaults. Those rights were expressly preserved by the Sale Order. The APA, however, did not transfer to Taylor the Debtors' insurance policies, the proceeds from which cover the claims of CareSource for the Performance Defaults. Instead, the APA expressly retained the insurance policies for the Debtors.

20.     Additionally, the Debtors apparently no longer believe that CareSource is entitled to pursue claims against the Debtors' liability insurance policies or to obtain proceeds from the Insurance Policies. Following the Rejection Notice, the Debtors did an about-face and informed

CareSource **for the first time** that the Insurance Policies and all proceeds from the Insurance Policies belonged to their secured creditors, are subject to liens of their secured lenders, and that the Insurance Policies would be transferred under the Plan to a trust benefitting the Debtors' secured creditors.

23.     On September 22, 2015, the Debtors filed their First Amended Plan of Liquidation (the "Plan").  Section 2.3.4 of the Plan provides, among other things, that, on the Effective Date of the Plan, "all Assets of the Debtors not otherwise transferred either to the GUC Trust or the Secured Creditor Trust shall vest in Liquidating SRC free and clear of all Claims, Equity Interests, liens, charges or other encumbrances…."  (Plan § 2.3.4).  The Plan further provides that "on the Effective Date, the Debtors shall transfer all their right, title, and interest in and to all of the Secured Creditor Trust Assets not already transferred to the Secured Creditor Trust pursuant to the Wind-Down Settlement, if any.  In accordance with section 1141 of the Bankruptcy Code, all Secured Creditor Trust Assets shall automatically vest in the Secured Creditor Trust free and clear of all Claims and Liens, other than Permitted Claims and Liens under the Second Lien Term Loan Facility[2] and the Claims and Liens of the Second Lien Agent[3], Holders of Class III Claims[4] and Bank of America, N.A."  (Plan § 2.3.7).  The Plan defines "Secured Creditor Trust Assets" as "all of the Debtors' Assets other than (i) the Rabbi Trust Proceeds, (ii) the Wind-Down Amount, (iii) the Wind-Down Funds proceeds thereof, (vi) the D&O Insurance and the D&O Policies, (vii) the Taylor Utility Deposits, (viii) those GUC Trust Assets transferred to the GUC Trust in connection with closing of the Taylor Sale in accordance with the Committee Settlement, (ix) the obligation

---

[2] The Plan defines the "Second Lien Term Loan Facility" as "the credit facility pursuant to that certain Second Lien Credit Agreement dated as of August 1, 2013 by and among The Standard Register Company, Workflow One, LLC, the subsidiary guarantors party thereto, the lenders party thereto, and Silver Point Finance, LLC, as amended, restated, supplemented, or modified from time to time.
[3] The Plan defines the "Second Lien Agent" as "Silver Point Finance, LLC, or its successor, in its capacity as agent under the Second Lien Term Loan Facility."
[4] Class III Claims are described in the Plan as the "Second Lien Secured Claim."

of Taylor to pay the Taylor Payment Receivable, and (x) the obligation of the GU Trust to repay the GUC Trust Seed Funding Amount."

24.     CareSource has filed an objection to the Plan.  In its objection, CareSource submits that the Debtors have no rights to the proceeds of Insurance Policies, and that the proceeds from the Insurance Policies are not property of the estate.  CareSource further submits that the Plan cannot purport to transfer any interest in proceeds from the Insurance Policies free and clear of liens, claims or encumbrances, nor are proceeds encumbered by claims and liens of any secured creditor.  Further, the Debtors have always maintained that proceeds from the Insurance Policies cover claims of CareSource, and are now estopped from reversing their position.

**Count I**
**Declaratory Judgment**

25.     CareSource hereby incorporates by reference the averments contained in the foregoing paragraphs for all purposes as though fully set forth in this paragraph.

26.     Based on the actions and assertions by the Debtors in the Plan, the assertions by the Debtors prior to filing the Plan, and the averments by CareSource herein, an actual case or controversy exists regarding the claims, rights and interests of CareSource and Defendants regarding the Insurance Policies.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9), CareSource seeks a declaration:

a.     That proceeds from the Insurance Policies are not property of the Debtors' estate under 11 U.S.C. § 541;

b.     That proceeds from the Insurance Policies are not subject to claims, liens and encumbrances of the Defendants, and that Defendants' claims in proceeds from the Insurance Policies are not valid;

c.      That the Defendants, nor any holder of a secured claim against the Debtors, do not have any rights in such proceeds;

d.      Alternatively, that Defendants' claims, liens and encumbrances, if any, in proceeds from the Insurance Policies are subordinate to CareSource's claims arising from the Performance Defaults.

## Count II
## Rights under Final DIP Financing Order and Plan

27.     CareSource hereby incorporates by reference the averments contained in the foregoing paragraphs for all purposes as though fully set forth in this paragraph.

28.     The Final DIP Financing Order provides for findings, admissions, stipulations and releases.

29.     To the extent any of the findings, admissions, stipulations and releases contained in the Final DIP Financing Order or the Plan are contrary to or inconsistent with the claims, rights and declarations asserted and requested herein by CareSource, CareSource seeks a declaration that such admissions, stipulations and releases are not binding on CareSource to the extent they are inconsistent with or contrary to any relief granted by the Court hereunder.

30.     To the extent the Court determines that the rights, claims or interests of CareSource as set forth herein are superior to or have priority over the security interests and liens of the Secured Lenders, CareSource seeks a declaration that CareSource is entitled to seek further relief or remedies from the Court as is necessary to insure the adequate protection of their claims, rights and interests as determined by the Court hereunder, whether under the terms of the Final DIP Financing Order or the Plan, or any applicable provision of the United States Bankruptcy Code and the rules of equity.

WHEREFORE, CareSource respectfully requests that the Court enter a judgment in their favor against Defendants as follows:

a.  That proceeds from the Insurance Policies are not property of the Debtors' estate under 11 U.S.C. § 541;

b.  That proceeds from the Insurance Policies are not subject to claims, liens and encumbrances of the Defendants, and that Defendants' claims in proceeds from the Insurance Policies are not valid;

c.  That neither the Defendants, nor any holder of a secured claim against the Debtors, have any rights in such proceeds;

d.  Alternatively, that Defendants' claims, liens and encumbrances, if any, in proceeds from the Insurance Policies are subordinate to CareSource's claims arising from the Performance Defaults.

e.  That the relief granted hereunder by the Court supersedes and prevails, to the extent it is inconsistent or contrary to the findings, admissions, stipulations and releases contained in the Final DIP Financing Order or the Plan, and that CareSource is entitled to seek further relief or remedies to ensure adequate protection for its rights, claims and interests as determined by the Court as requested hereinabove; and

f.  Such other and further relief, at law or in equity, to which CareSource may show itself justly entitled.

Dated:  October 30, 2015
            Wilmington, Delaware

CROSS & SIMON, LLC


*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, DE  19801
Telephone:  (302) 777-4200
Facsimile:  (302) 777-4224
Email:  csimon@crosslaw.com
            kmann@crosslaw.com

            -and-

David M. Whittaker, Esq. (0019307)
(*admitted pro hac vice*)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH  43215
Telephone:  (614) 227-2355
Facsimile:  (614) 227-2390
Email:  dwhittaker@bricker.com

*Attorneys for CareSource and CareSource
Management Group Co.*