**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | ) Case No. 15-10541 (BLS) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) **Response deadline: 11/2/15 at 5:00 pm** |
| | ) **Hearing: 11/19/15 at 9:30 am** |
| | ) **D.I. 1086** |

**OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION**
**TO THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR SRC**
**LIQUIDATION COMPANY AND ITS AFFILIATES (D.I. 1086)**

The Pension Benefit Guaranty Corporation ("PBGC"), one of the largest unsecured creditors in the above-mentioned bankruptcy proceeding, hereby objects to the First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (D.I. 1086) ("Liquidating Plan") filed by the Debtors on September 22, 2015.[2]

The Liquidating Plan cannot be confirmed because it fails to satisfy Section 1129(a)(1), (3) of the Bankruptcy Code ("Code") by providing to the Debtors a discharge in violation of Section 1141(d)(3) of the Code, and by releasing non-debtor third parties from liability in violation of Section 524(e) of the Code.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de Mexico, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5) and SR Liquidation Technologies Canada ULC (0001).  The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Liquidating Plan.

Creditors voting to reject or accept the Liquidating Plan cannot opt out of the provisions that provide the Debtors a discharge and release non-debtor third-parties from liability – i.e., Sections 7.2, 7.3, and 7.5 of the Liquidating Plan – making any such release non-consensual. Liquidating, corporate debtors are not entitled to a discharge, and this Court has found non-consensual, non-debtor third party releases impermissible when they are not necessary for a reorganization and there are no extraordinary circumstances to warrant them.  Accordingly, the Liquidating Plan cannot be confirmed.

## I.    BACKGROUND

### A.    PBGC and ERISA

1.    PBGC is the federal government agency that administers and enforces the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. §§ 1301-1461 (2012, Supp. I 2013). The program guarantees a secure, predictable retirement for approximately 41 million American workers.[3]

2.    When a pension plan covered by Title IV terminates without sufficient assets to pay promised benefits, PBGC typically becomes the statutory trustee of the plan and pays pension benefits up to the limits established by Title IV.  *See* 29 U.S.C. §§ 1321, 1322, and 1361.

3.    As statutory trustee of a terminated pension plan, PBGC has the power to take any action authorized by the plan and to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan.  *See* 29 U.S.C. § 1342(d).  PBGC therefore has authority to investigate and prosecute any fiduciary or party-in-interest that has participated in or committed a fiduciary breach or prohibited transaction with respect to the pension plan.  *See* 29 U.S.C.

---

[3]   PBGC 2014 annual report at p.1, http://www.pbgc.gov/documents/2014-annual-report.pdf#page=5.

§§ 1002(14), (21), 1104, 1106, 1109.  Individual fiduciaries and parties-in-interest are personally

liable for any losses to the pension plan resulting from each fiduciary breach and/or prohibited

transaction.  *See* 29 U.S.C. §§ 1106, 1109.

4.      It may take years for PBGC to complete the process of taking over a terminated

pension plan – especially a plan with 8,500 participants.  PBGC's taking over a plan includes,

among other things, (i) collecting, reviewing, and analyzing all pension plan documents and

employee records; (ii) calculating each participant's pension benefit pursuant to the pension

plan's terms and to ERISA's statutory limits; and (iii) paying to participants their pension

benefits.  Accordingly, ERISA provides PBGC three to six years after the date of trusteeship to

bring a civil action against a fiduciary or party-in-interest.  *See* 29 U.S.C. § 1303(e)(6).

**B.      The Debtors' Pension Plan**

5.      The Standard Register Company ("SRC") sponsored The Stanreco Retirement

Plan ("Pension Plan" or "Plan"), a single-employer defined benefit pension plan covered under

Title IV of ERISA.  All other Debtors are members of SRC's controlled group.[4]  SRC, as Plan

sponsor, and the other Debtors, as controlled group members, are responsible for certain

liabilities with regard to the Pension Plan that are joint and several.  *See* 26 U.S.C. § 412(b)(2);

29 U.S.C. §§ 1082(b)(2), 1307(e)(2), 1362(a).

6.      The Plan covers approximately 8,500 of the Debtors' current and former

employees and is underfunded by an estimated $322,200,000.

---

[4] A group of trades or business under common control, referred to as a "controlled group," includes, for
example, a parent and its 80% owned subsidiaries. Another example includes brother-sister groups of
trades or business under common control. *See* 29 U.S.C. § 1301(a)(14)(A), (B); 26 U.S.C. § 414(b),
(c); 26 C.F.R. §§ 1.414(b)-1, 1.414(c)-1, 1.414(c)-2.

7.       On August 31, 2015, the Pension Plan terminated pursuant to 29 U.S.C.

§ 1342(c), and PBGC became statutory trustee of the Plan.

**C.      The Debtors' Bankruptcy Proceeding**

8.       On March 12, 2015, the Debtors each filed a voluntary petition for relief under

Chapter 11 of the Code.  On March 13, 2015, the Court entered an Order jointly administering

the Debtors' bankruptcy cases for procedural purposes.[5]

9.       On May 21, 2015, PBGC filed thirty-three proofs of claims against the Debtors

("Original Claims") for (i) the unfunded benefit liabilities of the Pension Plan; (ii) due and

unpaid minimum funding contributions owed to the Pension Plan; and (iii) statutory premiums

owed to PBGC.[6]  On August 11, 2015, PBGC filed amended proofs of claims ("Amended

Claims").[7]

10.      On September 18, 2015, the Debtors filed (i) the Disclosure Statement for Chapter

11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (D.I. 1063) and (ii) the

Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (D.I. 1062).

11.      On September 22, 2015, the Debtors filed the Disclosure Statement for First

Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (D.I.

1087) ("Amended Disclosure Statement") and the current Liquidating Plan.

---

[5] *See* D.I. 46.

[6] *See* Claim Nos. 910, 931, 932, 934-950, 952, 954, 955, 957-963, 965, 1229 and 1234.

[7] *See* Claim Nos. 2405-2416, 2418-2429, 2431-2439.  As a result of the Debtors' Fourth Omnibus
Objection to Claims (D.I. 1039) and this Court's order sustaining the Debtors' Objection (D.I. 1182), the
Amended Claims remain on the Debtors' claims register.

12.     On September 21, 2015, this Court granted preliminary approval of the Amended Disclosure Statement and set a deadline of November 2, 2015 to object to (i) final approval of the Amended Disclosure Statement and (ii) confirmation of the Liquidating Plan.[8]

## II.   ARGUMENT

The Liquidating Plan, in its current state, cannot be confirmed.  A Chapter 11 plan must comply with each of the requirements set forth in Section 1129(a) of the Code to be confirmed. *See* 11 U.S.C. § 1129(a); *see also In re Armstrong World Indus.*, 432 F.3d 507, 511 (3d Cir. 2005).  Two requirements are that (i) the plan comply with the applicable provisions of Title 11; and (ii) the plan be proposed in good faith and not by any means forbidden by law.  *See* 11 U.S.C. § 1129(a)(1), (3).

Here, the Liquidating Plan fails to satisfy the two requirements in Section 1129(a)(1),(3). In particular, the Liquidating Plan fails to satisfy Section 1141(d)(3) of Title 11 by effectively discharging the liquidating, corporate Debtors.  The Liquidating Plan also violates Section 524(e) of Title 11 by providing for non-consensual releases of third parties, without any proof of necessity to the reorganization, fairness, and reasonable consideration.  For these reasons, the Liquidating Plan cannot be confirmed.

**A.     The Liquidating Plan provides for improper discharges and releases of the Liquidating Debtor and Non-Debtor Third Parties**

The relevant provisions of the Liquidating Plan that provide for the improper discharge and releases are Sections 7.2, 7.3, and 7.5:

**7.2     Plan Injunction**.  Confirmation of the [Liquidating] Plan shall operate as an injunction against the commencement or continuation of any act or action to collect, recover, or offset from the Estates…the GUC Trust, the Secured Creditor Trust, or any of their property, any Claim or Equity Interest treated in the [Liquidating] Plan or any actions to interfere with the

---

[8]  *See* D.I. 1073.

implementation and consummation of the [Liquidating] Plan, except as otherwise expressly permitted by the [Liquidating] Plan or the Confirmation Order or by Final Order enforcing the terms of the [Liquidating] Plan.  The Bankruptcy Court shall have jurisdiction to determine and award damages and/or other appropriate relief at law or in equity for any violation of such injunction, including compensatory damages, professional fees and expenses, and exemplary damages for any willful violation of said injunction.

**7.3    Exculpation and Limitation of Liability**.  None of the Debtors, the Committee or the Second Lien Agent, or any of their respective current members, partners, officers, directors, employees, advisors, professionals, or agents and advisors of any of the foregoing (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Entities) but solely in their capacities as such (collectively, the "Exculpated Parties") shall have or incur any liability to any Holder of any Claim or Equity Interest for any act or omission on or before the Effective Date in connection with, related to, or arising out of the Chapter 11 Cases, the negotiation and execution of the purchase agreements for the sale of the Debtors' Assets to Taylor during the Chapter 11 Cases, the negotiation and execution of the Committee Settlement, the negotiation and execution of the [Liquidating] Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of the [Liquidating] Plan, the consummation of the [Liquidating] Plan, or the administration of the [Liquidating] Plan, and the property to be distributed under the [Liquidating] Plan on or before the Effective Date, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the [Liquidating] Plan except in case of fraud, willful misconduct, intentional misconduct, or gross negligence by such Exculpated Party as determined by a Final Order.

**The Confirmation Order shall serve as a permanent injunction against any party seeking to enforce any claim or Cause of Action against the Exculpated Parties that has been exculpated pursuant to the Section 7.3 of the [Liquidating] Plan.**

**7.5    Releases Contained in Committee Settlement**.  For the avoidance of doubt, nothing in the [Liquidating] Plan shall limit the scope or timing of the releases approved through the Committee Settlement, all of which shall be deemed incorporated by reference herein and shall remain in full force and effect.

**The Confirmation Order shall serve as a permanent injunction against any party seeking to enforce any claim or Cause of Action against the**

> **Released Parties that has been released pursuant to the Committee Settlement or Section 7.4 of the [Liquidating] Plan.**

As further discussed below, because Sections 7.2, 7.3, and 7.5 provide improper discharges and releases in violation of Sections 1141(d)(3) and 524(e) of Title 11, the Debtors' Liquidating Plan cannot be confirmed.

> 1.    **The Liquidating Plan's injunction and exculpation provisions in Sections 7.2 and 7.3 effectively discharge the Debtors in violation of Section 1141(d)(3) of the Code.**

13.    Section 1141(d)(3) of the Code makes clear that a liquidating corporate debtor is not entitled to a discharge in bankruptcy.  It states, "[c]onfirmation of a Chapter 11 plan does not discharge a debtor if:  (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under Section 727(a) of this title if the case were a case under chapter 7 of this title."  11 U.S.C. § 1141(d)(3).  Section 727(a) does not grant a discharge if the debtor is not an individual.  11 U.S.C. § 727(a)(1).

14.    Here, the Debtors are not individuals.  They are corporate entities that ceased operations, sold substantially all of their assets, proposed a liquidating Chapter 11 plan, and will not continue in business post-confirmation.[9]  The Debtors are not allowed a discharge.

15.    The Debtors improperly attempt to effect a discharge through the Liquidating Plan's overly broad injunction and exculpation provisions in Sections 7.2 and 7.3.  An injunction such as the one in Section 7.2 is "inappropriate as applied to the Debtors because a liquidating Chapter 11 plan may not provide for a discharge of the debtor."  *In re Bigler LP*, 442 B.R. 537,

---

[9]  *See* Amended Disclosure Statement, Section 5.1.2 at p.27 ("The Plan is a plan of liquidation . . . ."); Section 6.1.2 at p.27 ("Substantially all of the Debtors' tangible Assets have already been liquidated during the Chapter 11 cases"); Section 6.2 at p.28 ("The Debtors are not a going concern and thus there is no benefit to remaining in chapter 11").

545-46 (Bankr. S.D. Tex. 2010) ("An injunction preventing the post-confirmation prosecution of claims would certainly operate as a discharge of the [d]ebtors. . . . For the same reasons, actions against property of the Estate may not be enjoined after the confirmation of a liquidating plan").

16.    Similarly, the exculpation provision in Section 7.3, as applied to the Debtors, impermissibly provides them with a discharge. *See In re Sis Corp*., 120 B.R. 93, 96 (Bankr. N.D. Ohio 1990) (language that limits a debtor's liability is impermissible in a liquidating plan because the language would effectively "provide the [d]ebtors with a discharge on those specific obligations which are not otherwise treated in the Plan. Such an effort is contrary to the letter and intent of § 1141(d)(3) of the Code"); *see also In re The Fairchild Corp.*, C.A. No. 09-10899,  2014 WL 7215211, at *3 (D. Del. Dec. 17, 2014) (confirmation of a liquidating plan denies a discharge and dissolves the automatic stay).

17.    Because Sections 7.2 and 7.3 of the Liquidating Plan violate Section 1141(d)(3) of the Code by discharging the Debtors from liability, the Liquidating Plan cannot be confirmed.

**2.    The Liquidating Plan improperly releases Non-Debtor Third Parties.**

18.    Section 524(e) of the Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).  Accordingly, the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-debtors of their liabilities. *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000).

19.    Although the Third Circuit has not established a blanket rule permitting or proscribing non-debtor releases, it has stated that the hallmarks of permissible, non-consensual, non-debtor releases include specific factual findings that such releases are (i) necessary to the reorganization and (ii) fair – i.e., given in exchange for reasonable consideration.  *Id*. at 214, n.11; *see also In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 603 (Bankr. D. Del. 2001).

20.     To determine whether non-debtor releases are necessary to the reorganization, the plan's proponent must demonstrate that there is a relationship between the debtors' successful reorganization and the non-consensual parties' release, and that the releasees have provided a critical financial contribution to the debtors' plan that is necessary to make the plan feasible in exchange for receiving a release of liability. *In re Genesis Health*, 266 B.R. at 607.

21.     Where the debtors are liquidating, the non-consensual, third-party releases can never be necessary to the reorganization because the liquidation can be successfully accomplished with or without the releases. *See In re Nickels Midway Pier, LLC*, 2010 WL 20345442, at *13 (Bankr. D.N.J. May 21, 2010), *cited by In re Wash. Mut., Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011).

22.     If the Code prohibits a discharge to a liquidating corporate debtor, so should non-debtor releases be prohibited in a liquidating Chapter 11 proceeding. "It would indeed be anomalous if the Bankruptcy Code prohibited a plan from discharging a liquidating non-individual debtor that will not remain in business postconfirmation, but allowed that plan effectively to discharge non-debtor third parties by means of releases and permanent injunctions." *In re New Towne Dev., LLC*, 410 B.R. 225, 232 (Bankr. M.D. La. 2009); *see also In re Berwick Black Cattle Co.*, 394 B.R. 448, 461 (Bankr. C.D. Ill. 2008) ("The rationale for granting third-party releases is far less compelling, if it exists at all, in a liquidation than in a reorganization"); *In re Optical Techs., Inc.*, 216 B.R. 989, 994 (Bankr. M.D. Fla. 1997) ("[I]n a liquidation case, a third-party injunction is not essential to the continued operation of the debtor because the purpose of such an injunction is to aid in the rehabilitation of an ongoing business").

23.     This Court has noted that, even if the *Continental* criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied, they still should be

rejected, absent extraordinary circumstances. *See In re Genesis Health*, 266 B.R. at 608. This Court has recognized the Third Circuit's warning against exercising "'unfettered discretion to discharge nondebtors from liability.'" *Id.* (discussing *Cont'l*, 203 F.3d at 212, 213 n.9).

24.     Even in jurisdictions that have adopted a more "flexible approach," those courts approved non-consensual third-party releases only in extraordinary cases involving massive tort liabilities against the debtors and co-liable parties. *Id.* (discussing *Cont'l*, 203 F.3d at 212). This Court has repeatedly noted the Third Circuit's acknowledgement that non-debtor releases are rare and should not be considered, absent a showing of exceptional circumstances. *Id.* (discussing *Cont'l*, 203 F.3d at 212, 213 n.9); *see also In re Wash. Mut.*, 442 B.R. at 351 ("While the Third Circuit has not barred third party releases, it has recognized that they are the exception, not the rule.").

25.     Here, the non-debtor third party releases are non-consensual. Creditors can only opt out of Section 7.4, which states that creditors who vote to accept the Liquidating Plan or who do not opt out of Section 7.4 shall be deemed to release non-debtor third parties, referred to as "Released Parties." There is no provision to opt out of Sections 7.2, 7.3, and 7.5 of the Liquidating Plan, and creditors remain bound by those Sections, regardless of how they vote.

26.     Additionally, Section 7.5 enjoins creditors from bringing claims or causes of action against the Released Parties of Section 7.4. Section 7.5 states in bold, "**The Confirmation Order shall serve as a permanent injunction against any party seeking to enforce any claim or Cause of Action against the Released Parties that has been released pursuant to the Committee Settlement or Section 7.4 of the [Liquidating] Plan.**" Section 7.5 effectively negates their ability to opt out of Section 7.4 and renders the non-debtor third party release in this Section non-consensual as well. *See In re Wash. Mut.*, 442 B.R. at 351 (third-

party releases were non-consensual where the Plan provided that "even parties who thought they were opting out of the releases by checking the box on their ballot would be bound by the releases").

27.     The non-consensual releases cannot be necessary to the Debtors' reorganization because their bankruptcy is a routine liquidation, which is essentially complete.  The sale of Debtors' assets already closed.  Additionally, none of the Released Parties provided a critical financial contribution to creditors or the Estate in exchange for their release.  *See U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 145 (Bankr. D. Del. 2010) (actions undertaken to "formulate and negotiate" the plan of reorganization were not a "critical financial contribution" needed to obtain approval of non-consensual releases).

28.     And, there are no extraordinary circumstances in Debtors' liquidating bankruptcy to warrant the non-consensual third-party Releases.

29.     Because the Debtors' Liquidating Plan improperly provides for non-consensual third-party Releases, it cannot be confirmed.

### III.     PROPOSED LANGUAGE

30.     The releases in Sections 7.2, 7.3, and Section 7.5 of the Liquidating Plan could irreparably harm PBGC and the Pension Plan by prohibiting PBGC from collecting against a fiduciary or party-in-interest who is personally liable for any losses to the Pension Plan resulting from fiduciary breaches and/or prohibited transactions.

31.     PBGC only became statutory trustee of the Pension Plan on August 31, 2015. The agency is currently working to gather documents and information relating to the Plan and its 8,500 participants so that it may calculate and pay benefits under the Plan – a process that may take upwards of 3 years given the size of the Plan and the number of Plan participants.  PBGC is

also simultaneously reviewing all documents received for any potential causes of action under

ERISA.

32.    While PBGC at this time is not aware of any fiduciary breaches with respect to

the Pension Plan, PBGC often learns of a fiduciary breach well after its termination of a pension

plan.

33.    Accordingly, all objections set forth in herein can be resolved if Section 8.14 of

the Liquidating Plan is struck in its entirety and replaced with the following language:

> "Nothing in the Debtors' bankruptcy proceedings, Confirmation Order, Plan of
> Liquidation, the Bankruptcy Code (and § 1141 thereof), or any other document
> filed in the Debtors' bankruptcy cases shall in any way be construed to discharge,
> release, limit, or relieve the Debtors or any other party, in any capacity, from any
> liability or responsibility with respect to The Stanreco Retirement Plan ("Pension
> Plan") or any other defined benefit pension plan under any law, governmental
> policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined
> or precluded from enforcing such liability or responsibility by any of the
> provisions of the Plan of Liquidation, Confirmation Order, Bankruptcy Code, or
> any other document filed in the Debtors' bankruptcy cases."

## IV.    CONCLUSION

For the foregoing reasons, confirmation of the Liquidating Plan must be denied absent sufficient revision to Section 8.1.4 of the Liquidating Plan to include PBGC's proposed language, which will resolve PBGC's objections outlined herein.

DATED: November 2, 2015
Washington, D.C.

Respectfully submitted,

By: /s/ Courtney L. Morgan
ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
ANDREA WONG
Assistant Chief Counsel
COURTNEY L. MORGAN
MELISSA T. NGO
QUINETTE BONDS
Attorney
Office of the Chief Counsel
**PENSION BENEFIT GUARANTY CORPORATION**
1200 K Street, N.W.
Washington, D.C.  20005
(202) 326-4020 ext. 3738
(202) 326-4112 (fax)
morgan.courtney@pbgc.gov and
efile@pbgc.gov

*Attorneys for Pension Benefit Guaranty Corporation*