# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | ) Case No. 15-10541 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Related to Docket Nos. 698 & 1239** |
| | ) **Hearing Date: November 19, 2015 at 9:30 a.m..** |

## PARTIAL OBJECTION OF GRAPHIC LABEL SOLUTIONS
## TO ASSUMPTION OF CONTRACT

Graphic Label Solutions, by and through its undersigned counsel, hereby files this partial objection (the "Partial Objection") to the Twelfth Notice Regarding Designation as Post-Closing Transferred Contract and Assumption and Assignment thereof (the "Assumption") and in support thereof hereby avers as follows:

### OBJECTION

1.  Objector is Graphic Label Solutions ("GLS") a counterparty to certain contracts with debtor, The Standard Register Company ("Debtor").

2.  On or about June 19, this Court entered an order authorizing the sale of substantially all of the Debtor's assets (the "Sale Order") [D.I.698]. As part of that sale and the underlying sale process, the Debtor was authorized to assume and assign certain executory contracts.

3.  In fact, the process regarding assumption and assignment of the Debtor's contracts included a 90 day period in which the Debtor was precluded from rejecting or terminating any "Potential Contracts" as that term was defined in the Sale Order. During this 90

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number are EI Wind Down, Inc. f/k/a Edgenet, Inc. [4977] and EHC Holding Wind Down Corp. f/k/a Edgenet Holding Corp. [4146].

PHIL1 4998696v.1

day "Asset Review Period" (also as defined in the Sale Order), the buyer of the Debtor's assets, Taylor Corporation ("Buyer" or "Taylor"), was authorized to utilize the Debtor's contracts to conduct business until it decided if it desired such contract to be assumed or not, as long as it paid for all such services and goods it ordered and obtained under such contracts.

4. The closing on the sale to Taylor occurred on July 31, 2015, so the 90 day Asset Review period ended 0n October 31, 2015.

5. On October 29, 2015 the Debtor filed its twelfth notice of the assumption (the "Notice") of certain contracts and the assignment of same to Taylor.

6. Two contracts (the "Contracts") between GLS and Debtor were listed on Exhibit A to the Notice. Pursuant to the Sale Order, the assumption and assignment of a contract is effective 5 business days after the notice is filed and served.

7. As part of the sale process counterparties to contracts assumed and assigned are "forever barred, estopped…from raising or asserting against the Debtors or the Buyers or the property of any of them any…claim of pecuniary loss…arising under or related to the Transferred Contracts, existing as of the date of the Sale hearing, or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of a Transferred Contract…". (Sale Order at paragraph 40)

8. GLS does not object to the cure amount set forth on Exhibit A attached to the Notice, nor does it take issue with the adequate assurance of future performance of the Buyer under the Contracts, however, paragraph 40 of the Sale Order would seem to indicate that upon assumption and assignment, GLS has no right to claim as against Buyer for amounts owed to GLS for services provided to Buyer since July 31 2015.

9. GLS objects to the assumption and assignment to the extent that the Sale Order or the sale process in any way, provides that Taylor is not obligated to, and GLS cannot look to Taylor to, pay the $361,814.16 currently owed to it for services it has been providing under the Contracts since July 31, 2015.

10. Further, while utilizing the Contracts pursuant to the Sale Order, without any notice or advance warning whatsoever, or agreement from GLS, Taylor surreptitiously, in September began slipping into the "Debtor's purchase orders" (as the purchase orders from Taylor were made to look as if coming from the Debtor) a 16 page document titled "Terms and Conditions" which Taylor may now assert altered the terms of the Contracts.

11. To be clear, GLS does not object to the assumption and assignment of the Contracts, according to the terms and conditions which existed as of July 31, 2015 (which includes the terms of the "Subcontractor Policy/Procedures" agreed to in writing by GLS in 2011. It does, however, object to the modification of the Contracts or any attempted assumption and assignment of the Contracts modified in any way, as GLS has not and does not accept the "Terms and Conditions".

12. Pursuant to the Bankruptcy Code at Section 365, the Debtor must assume (and therefore can only assign) the entire contract, not merely part of a contract and may not unilaterally "modify" a contract and then assume and assign such "modified" contract. Here, GLS has not consented, and does not consent, to any modification of the Contracts in any way.

## CONCLUSION

13. GLS does not object to the assumption and assignment of the Contracts in existence as of July 31, 2015. It objects to the assumption and assignment of the Contracts to the extent same have been deemed to be modified in any way. Further, GLS does not consent to the assumption and assignment of the Contracts to the extent that Taylor is not obligated to pay in the ordinary course all sums due and owing to GLS for all goods and services it provided under the Contracts since July 31, 2015.

Dated: November 5, 2015
       Wilmington, Delaware

*/s/ Raymond H. Lemisch*
Raymond H. Lemisch (DE Bar ID 4204)
KLEHR HARRISON HARVEY
BRANZBURG, LLP
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426 9193
rlemisch@klehr.com