**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | Jointly Administered |
| | **Docket Ref. No. 1286** |

**OMNIBUS REPLY IN SUPPORT OF SECOND AMENDED**
**CHAPTER 11 PLAN OF LIQUIDATION**
**FOR SRC LIQUIDATION COMPANY AND ITS AFFILIATES**

SRC Liquidation Company and its above-captioned affiliated debtors and debtors in

possession (each, a "Debtor," and collectively, the "Debtors") hereby file this omnibus reply in

support of the Debtors' *Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation*

*Company and Its Affiliates* [Docket No. 1286] (as amended from time to time, the "Plan")[2] and

respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.       Nine limited objections were filed to the Debtors' Plan.  The Debtors have

resolved several of these objections and are working to resolve the remaining objections, to the

extent possible, prior to the Confirmation Hearing.  The unresolved objections do not render the

Plan unconfirmable and should be overruled for the reasons set forth herein.

---

[1]       The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## REPLY

A.    **Limited Objection of CareSource and CareSource Management Group Co. to First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates [Docket No. 1243] (the "CareSource Objection")**

1.    **The Debtors' Errors and Omissions Policy and the Proceeds Thereof Are Property of the Debtors' Estates**

2.    CareSource principally objects on the grounds that Section 2.3.7 of the Plan impermissibly transfers the Debtors' *Professional and Technology Based Services, Technology Products, Information Security & Privacy, and Multimedia and Advertising Liability Insurance Policy*, policy number W147C2140201, which is underwritten by Syndicate 2623/623 at Lloyd's (the "E&O Policy") to the Secured Creditor Trust.  The E&O Policy is a general liability policy.  The "Named Insured" under the E&O Policy is SRC Liquidation Company.  CareSource is not an "additional insured" under the E&O Policy nor does CareSource have any other special rights to the proceeds of the E&O Policy.[3]

3.    According to CareSource, the E&O Policy does not constitute property of the Estates and therefore "the Plan cannot purport to transfer any interest in [the proceeds of the E&O Policy] free and clear of liens, claims or encumbrances . . . ."  CareSource Obj. at ¶ 18.

4.    CareSource's Objection is based on a false premise because the E&O Policy and its proceeds are, in fact, property of the Estates.  "'It has long been the rule in th[e] [Third]

---

[3]    CareSource makes a variety of vague and unsubstantiated assertions that the Debtors "stated numerous times that CareSource would have access to proceeds from the insurance policies to the extent the Performance Defaults resulted in civil liability and damages for CareSource."  CareSource Obj. at ¶ 13.  The Debtors are unaware of any such statements and CareSource has not submitted any evidence that such statements were, in fact, made.  If any such statements were made, they were likely made as part of confidential settlement discussions subject to Federal Rule of Evidence 408 regarding what the Debtors might agree to provide CareSource in the context of a negotiated resolution of claims—not as a statement of CareSource's rights in the absence of a settlement.

What the Debtors did do, as CareSource admits, is provide CareSource with a copy of the E&O Policy so that CareSource could evaluate for itself the relative rights of the Debtors and CareSource under the E&O Policy.  *See* CareSource Obj. at ¶ 13.  Non-binding offers made by the parties in the context of settlement discussions cannot override the terms of the E&O Policy in the absence of a settlement.

Circuit that insurance policies are considered part of the property of a bankruptcy estate.'" *In re W.R. Grace & Co.*, 475 B.R. 34, 81 (D. Del. 2012) (quoting *ACandS, Inc. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006)) (brackets in original; additional citations omitted); *see also In re Nutraquest, Inc.*, 434 F.3d 639, 647 n.4 (3d Cir. 2006) (citing *Am. Bankers Ins. Co. of Fla. v. Maness*, 101 F.3d 358, 362 (4th Cir. 1996); *St. Clare's Hosp. & Health Ctr. v. Ins. Co. of N. Am.*, 934 F.2d 15, 18-19 (2d Cir. 1991); *Tringali v. Hathaway Mach. Co., Inc.*, 796 F.2d 553, 560 (1st Cir. 1986)); *Maertin v. Armstrong World Ind., Inc.*, 241 F. Supp. 2d 434, 447 (D.N.J. 2002) ("[T]his Court must follow the general rule and find that the debtor's liability insurance policies and their proceeds are property of [the debtor's] estate."); *In re World Health Alt., Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) ("When an insurance policy provides coverage only to the debtor, courts will generally rule that the proceeds are property of the estate." (citation omitted)).

5.      CareSource attempts to sidestep this well-established rule by citing to *Houston v. Edgeworth*, 993 F.2d 51 (5th Cir. 1993) and *In re Louisiana World Exposition*, 832 F.2d 1391 (5th Cir. 1987).  A nearly identical argument based on these cases was recently considered and rejected by the District of Delaware:

> [T]he Libby Claimants' reliance on the holdings of [*Edgeworth*] and [*Louisiana World*] to support their argument that proceeds of a liability policy are not property of the bankruptcy estate is misplaced. Contrary to Appellants' assertion, neither *Edgeworth* nor *Louisiana World* stands for this proposition. Rather, while the *Edgeworth* Court did find that the policy proceeds were not part of the bankruptcy estate under the circumstances present in that case, it explicitly recognized that, in general, "[p]roceeds of . . . insurance policies, if made payable to the debtor rather than a third party such as a creditor, are part of the estate[.]" *Id.* at 56 . [ . . . ] Likewise, while the Fifth Circuit in *Louisiana World* also found that the insurance policy proceeds were not part of the debtor's estate in that case, this exclusion was predicated on the fact that the insurance policies in question only named the corporation's directors and officers as named insureds and did not extend such coverage to the debtor. *Louisiana World*, 832 F.2d at 1399-1400.

\*\*\*

> In the present case, the proceeds of the [Debtor's] insurance policies are payable to [the Debtor], *not* the Libby Claimants. The Libby Claimants are not listed as named insureds under any of these policies. Moreover, the Libby Claimants were in no way involved in the contract negotiations, purchasing of, or decisions to continue this insurance coverage. All such decisions were solely made between [the Debtor] and [the insurer]. Thus, the Libby Claimants' citation to these cases actually undermines its argument, and its reliance on them to establish its rights to the insurance proceeds of the Settlement Agreement is summarily incorrect.

*In re W.R. Grace & Co.*, 475 B.R. 34, 82-83 (Bankr. D. Del. 2012) (internal citations and footnotes omitted).

6.     Here, the E&O Policy is payable to the Debtors, not CareSource.  CareSource is "not listed as [a] named insured[] under . . . the[] polic[y].  Moreover, [CareSource was] in no way involved in the contract negotiations, purchasing of, or decisions to continue this insurance coverage.  All such decisions were solely made between [the Debtors] and [the insurer].  Thus, [CareSource's] citation to [*Edgeworth* and *Louisiana World*] actually undermines its argument, and its reliance on them to establish its rights to the insurance proceeds . . . is summarily incorrect."  *In re W.R. Grace*, 475 B.R. at 82-83.

### 2.     The Plan Does Not Purport to Transfer Assets That Do Not Constitute Property of the Estates

7.     Even if CareSource were correct that the E&O Policy is not property of the Estates (which CareSource is not), CareSource has not articulated a valid Plan objection because the Plan only administers the assets of the Estates.  The Plan does not transfer, or purport to transfer, assets that are not property of the Estates to either the Secured Creditor Trust or the GUC Trust.  Accordingly, if the Court were to determine that the E&O Policy is not property of the Estates, the Debtors are at a loss to discern why that decision would render the Plan unconfirmable.

### 3.    The Plan Injunction is Appropriate

8.    CareSource also "objects to section 1.8 of the Plan to the extent it extends any injunction or stay pursuant to sections 105 and 362 until such time as the Debtors' Bankruptcy Cases are closed."  CareSource Obj. at ¶ 17.  CareSource complains, without support, that the "Plan should not <u>create</u> such a procedural roadblock . . . ."  *Id.* (emphasis added).

9.    The Plan does not "create" the automatic stay, nor extend the term of the stay beyond the period set forth in section 362 of the Bankruptcy Code.  Section 362 provides that the stay continues "until the earlier or—(A) the time the case is closed; (B) the time the case is dismissed; or (C) . . . the time a discharge is granted or denied."  11 U.S.C. § 362(c)(2).  The Plan injunction merely recognizes the continued statutory operation of the stay.

10.    In any event, as explained in more detail in section C, *infra*, the Plan's injunction is an appropriate and necessary provision to ensure that Claims against the Estates are channeled through the Plan's distribution scheme so as to ensure the fair and equitable treatment of all creditors.  *See, e.g.*, *In re Mercado*, 124 B.R. 799, 803 (Bankr. C.D. Cal. 1991) ("Absent some restraint in the plan, the creditor would have the right to commence collection efforts including attachment of debtor's property. In many cases, such collection actions might effectively preclude the reorganized debtor from consummating its plan."); 8 Collier on Bankruptcy ¶ 1141.05[3] (16th ed. rev. 2010) ("[W]hen performance under the plan requires that creditors participate collectively, it may be appropriate to enjoin individual collection efforts.").

### 4.    The Disgorgement Provision in the Plan Is Proper

11.    Prior to the Sale, the Debtors' secured lenders had liens on the vast majority of the Debtors' assets.  Distributions to general unsecured creditors in the amounts contemplated by the Plan were only made possible by the settlement entered into by and among the Debtors, the Committee and Silver Point in connection with the Sale.  And, Silver Point's agreement to the

Committee Settlement was predicated on the condition that the Plan provide that recipients of the funds provided by Silver Point not turn around and sue Silver Point. Given that the funds were only made available to general unsecured creditors on the condition that those creditors not sue Silver Point, the Plan's disgorgement provision, which implements this agreement, is reasonable and proper.

12.    CareSource apparently objects to the Plan's disgorgement provision because it has sued Silver Point, among others, in a declaratory judgment action, seeking a declaration that Silver Point has no interest in the E&O Policy. *See CareSource v. SRC Liquidation Co.*, Adv. Proc. No. 15-51775-BLS. However, CareSource contends that the E&O Policy is not property of the Estates, and Silver Point has never asserted an interest in any property that is not property of the Estates. Thus, even if CareSource were correct that the E&O Policy is not property of the Estates (which CareSource is not), CareSource would not need to sue Silver Point to obtain a declaration that Silver Point does not have an interest in that property. The only "necessary" party to CareSource's baseless adversary proceeding is SRC Liquidation Company. The Plan's disgorgement provision was an integral part of the Committee Settlement and properly protects Silver Point from being needlessly named in baseless litigation such as the adversary proceeding filed by CareSource. *See, e.g.*, *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 90-91 (S.D.N.Y. 2008) *aff'd*, 379 F. App'x 10 (2d Cir. 2010) ("[T]hese disgorgement provisions express the Joint Plan's aim of preventing duplicative payments in the interplay between the Joint Plan and the ongoing [avoidance litigation against secured lenders]."); *Aurelius Capital Master, Ltd. v. Tousa Inc.*, Nos. 08-61317-CIV, 08-61335-CIV, 2009 WL 6453077, at *17-18 (S.D. Fla. Feb. 6, 2009) (bankruptcy court cash collateral order including "heavily negotiated"

disgorgement provision "was premised on Debtor's reasoned business judgment and represented a fair and equitable compromise").

B.  **United States Trustee's Limited Objection to Confirmation of Debtors' First Amended Joint Plan of Liquidation [Docket No. 1247] (the "<u>United States Trustee Objection</u>")**

13.     The United States Trustee's Objection focuses exclusively on Silver Point's inclusion in the list of Exculpated Parties that are entitled to receive the protections set out in Section 7.3 of the Plan.  Significantly, the United States Trustee does not object to Section 7.3 generally (as some other claimants discussed below do).  Indeed, the United States Trustee expressly acknowledges that "the Debtors, the Debtors' officers, directors and employees serving during the Chapter 11 case in their capacity as such, the Committee, and their respective attorneys, financial advisors and other professionals" "are eligible for exculpation in these cases."  United States Trustee Obj. at ¶ 12.  And for good reason, because these parties are appropriately exculpated.  *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (release provision insulating committee members and professionals from any liability except willful misconduct or gross negligence did not violate Bankruptcy Code); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (approving and finding appropriate proposed exculpations in Chapter 11 plan applicable to estate fiduciaries).

14.     Silver Point has agreed to be removed from the list of "Exculpated Parties" and the revised version of the Plan reflects this amendment.  Accordingly, the Debtors believe that the United States Trustee Objection has been resolved.

01:17958547.1

C.    **Objection of the Pension Benefit Guaranty Corporation to the First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates [Docket No. 1256] (the "PBGC Objection")**

15.    The PBGC, a member of the Committee that submitted a letter in support of the Plan, voted to reject the Plan and makes two objections to confirmation.  Both should be overruled.

**1.    The Debtors are Not Discharged By the Plan**

16.    First, the PBGC asserts that the "Plan's injunction and exculpation provisions in Sections 7.2 and 7.3 effectively discharge the Debtors in violation of Section 1141(d)(3) of the Code."  PBGC Obj. at 7.

17.    Sections 7.2 and 7.3 of the Plan do not discharge the Debtors, nor do they purport to do so.  Section 7.2 of the Plan is the injunction which bars the "commencement or continuation of any act or action to collect, recover, or offset from the Estates . . . any Claim or Equity Interest treated in the Plan or any actions to interfere with the implementation and consummation of the Plan . . . ."  Plan § 7.2 (emphasis added).  This section doesn't "discharge" the Debtors from any liability; to the contrary, the Debtors remain fully liable for all Claims and Equity Interests until such time as those Claims and Equity Interests are paid in full.  The injunction simply operates to channel the Claims against and Equity Interests in the Debtors that are treated in the Plan through the Plan's distribution scheme.

18.    Absent the injunction, creditors would race to courthouses around the country to obtain judgments against the Debtors and to enforce those judgments against the Debtors' assets so as to obtain an enhanced recovery to the detriment of the Debtors' other creditors, including Holders of Administrative and Priority Claims.  That result would undermine the entire function of the Plan.  *See, e.g.*, *Martin v. United States (In re Martin)*, 150 B.R. 43, 46 (Bankr. S.D. Cal. 1993) ("Although a plan cannot discharge the debt, it may otherwise subject the debt to its

provisions."); *In re Mercado*, 124 B.R. at 803 ("[A] broad flexible approach to § 1141(d)(2) to

give a debtor the ability to deal effectively with its nondischargeable claims would not be

inconsistent with the views of the Supreme Court as expressed in *Energy Resources.* [ . . . ]

Absent some restraint in the plan, the creditor would have the right to commence collection

efforts including attachment of debtor's property. In many cases, such collection actions might

effectively preclude the reorganized debtor from consummating its plan. [ . . . ] [T]he bankruptcy

court has the power to find that an injunction in the plan is appropriate should it be necessary for

the success of the plan and the other requirements of § 1129 are satisfied." (citing *United States*

*v. Energy Resources Co.*, 495 U.S. 545 (1990)); 8 Collier on Bankruptcy ¶ 1141.05[3] ("[W]hen

performance under the plan requires that creditors participate collectively, it may be appropriate

to enjoin individual collection efforts.").  For this reason, liquidating plans approved by this

Court regularly contain injunction provisions similar to the one contained in Section 7.2 of the

Plan.  *See, e.g.*, *In re Universal Cooperatives, Inc.*, No. 14-11187 (MFW), Dkt. Nos. 1237, 1237-

1 § 13.3 (Sep. 3, 2015); *In re FBI Wind Down Inc.*, No. 13-12329 (CSS), Dkt. Nos. 1840, 1840-1

§ 13.5 (Jul. 14, 2014).

      19.     Congress made liquidating corporations ineligible for a discharge not to foster a

post-effective date race to the debtor's assets, which would be the result if the Section 7.2

injunction were denied, but to "restrict[] the manipulative use of bankruptcy shells in violation of

securities laws and other legislation protecting public investors in and creditors of corporations."

Report of the Commission on Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, Part

1, 93rd Cong., 1st Sess. (1973), reprinted in Collier on Bankruptcy, App. B, Pt. 4-703 through 4-

704 (15th rev. ed. 2002).  Precluding liquidating corporations from obtaining a discharge

prevents trafficking in corporate shells by eliminating the economic incentive to misuse the shell.

In *In re Fairchild Aircraft Corp.*, the court explained that section 1141(d)(3) of the Bankruptcy Court achieves the Congressional goal of discouraging trading in corporate shells "by freighting the shell with all the claims, so that any claims or portions of claims not paid by the liquidation will attach to the shell, making the shell much less attractive for use in starting up another enterprise."  128 B.R. 976, 982 (Bankr. W.D. Tex. 1991); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2004 Bankr. LEXIS 2549, at *216 (Bankr. S.D.N.Y. July 15, 2004) ("[T]he policy underlying section 1141(d)(3)(A) is to prevent trafficking in empty corporate shells for tax avoidance." (citing H.R. No. 95-595, 95th Cong. at 384 (1977); *In re Rath Packing Co.*, 55 B.R. 528, 537 (Bankr. N.D. Iowa 1985)).

20.     None of the Congressional concerns regarding a liquidating corporation's eligibility for a discharge in chapter 11 has any relevance to this Plan or its injunction provision. Indeed, where these policy concerns are not implicated, many courts have held that even where a plan contemplates liquidation and the debtor is winding down its business operations, the debtor will continue to "engage in business after consummation of the plan" within the meaning of section 1141(d)(3)(B) of the Bankruptcy Code such that the anti-discharge provisions of section 1141(d)(3) do not apply.  *See, e.g.*, *In re Enron Corp.*, 2004 Bankr. LEXIS 2549 at *244-45 (holding that where a liquidating debtor would retain and administer a limited pool of assets, it is appropriate to grant debtor a discharge).

21.     Section 7.3 of the Plan likewise does not constitute a general "discharge" of the Debtors.  Section 7.3 contains a limited exculpation for acts taken in connection with "the Chapter 11 Cases, the negotiation and execution of the purchase agreements for the sale of the Debtors' Assets to Taylor during the Chapter 11 Cases, the negotiation and execution of the Committee Settlement, the negotiation and execution of the Plan, the Disclosure Statement, the

solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the

Plan, or the administration of the Plan, and the property to be distributed under the Plan."

### 2.    The Plan Does Not Improperly Release Non-Debtor Third Parties

22.    The PBGC next asserts that the Plan's injunction, exculpation, and Committee

Settlement release provisions contained in Sections 7.2, 7.3, and 7.5 constitute inappropriate

non-consensual third-party releases.

23.    As a threshold matter, the PBGC appears to misapprehend the nature of a "third-

party" release because neither Section 7.2 nor Section 7.5 even arguably constitutes a third-party

release.[4]  Section 7.2 is the Plan's injunction provision, which is discussed at length above.  This

Section does not release anyone from liability, let alone third parties.  It only applies, by its

terms, to actions brought against the "Estates."  Consequently, the Debtors are at a loss to discern

how this section constitutes an impermissible third-party release.

24.    Section 7.5 of the Plan simply incorporates the releases that were already given by

the Debtors and the Committee by the very terms of the Committee Settlement previously

approved by this Court.  The Debtors and the Committee (of which the PBGC is a member) were

signatories to the Committee Settlement, and therefore the releases contained therein are "direct"

releases, not "third-party" releases.  Moreover, the releases contained in the Committee

Settlement were given as part of the resolution of numerous claims and issues and in

---

[4]    Section 7.4 of the Plan does contain an appropriate opt-out third-party release.  The justification for Section 7.4 of the Plan is contained in pargraphs 57-59 of the *Debtors' Memorandum of Law In Support of (I) Approval of the Disclosure Statement and (II) Confirmation of the Second Amended Chapter 11 Plan of Liquidation For SRC Liquidation Company and Its Affiliates*, which was filed substantially contemporaneously herewith (the "Confirmation Brief").  The PBGC opted out of Section 7.4's third-party release, does not object to Section 7.4 of the Plan, and would lack standing to prosecute such an objection even if it had.  *Cf. In re Indianapolis Downs, LLC*, 486 B.R. at 304 ("In the context of a confirmation hearing, creditors 'have standing *only* to challenge those parts of a reorganization plan that affect their direct interests.'" (quoting *In re Orlando Investors, L.P.*, 103 B.R. 593, 596-97 (Bankr. E.D. Pa. 1989) (emphasis in original))).

consideration for millions of dollars that are now available for distribution to the Debtors'
general unsecured creditors.

25.     Section 7.5 also contains an injunction that enjoins parties from "seeking to
enforce any claim or Cause of Action against the Released Parties that has been released
pursuant to the Committee Settlement or Section 7.4 of the Plan."[5]  This injunction is not a
release; it only operates to enjoin actions that have already been released elsewhere.  Thus, the
PBGC is mistaken when it states that Section 7.5 "effectively negates" Claimants' ability to opt-
out of Section 7.4 and "renders the non-debtor third party release in [Section 7.4] non-consensual
as well."  PBGC Obj. at ¶ 26.  If a party such as the PBGC did not give the release contained in
Section 7.4 of the Plan, then it is <u>not</u> enjoined by Section 7.5 from pursuing those actions that
have not been released.

26.     Thus, the only provision challenged by PBGC that actually releases any third
parties is the narrow exculpation set out in Section 7.3 of the Plan.  As it relates to the
exculpation of the Committee and its professionals, the PBGC's objection is puzzling given that
the PBGC is a member of the Committee.  More broadly, courts in this district and elsewhere
treat exculpation provisions differently than third-party release provisions and they routinely
approve such exculpation provisions.  As this Court has recently observed: "The Third Circuit
has held that a creditors' committee, its members, and estate professionals may be exculpated
under a plan for their actions in the bankruptcy case except for willful misconduct or gross
negligence."  *In re Indianapolis Downs, LLC*, 486 B.R. at 306 (citing *In re PWS Holding Corp.*,
228 F.3d 224, 246 (3d Cir. 2000); *In re Washington Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D.
Del. 2011)) (internal quotation marks omitted).  Indeed, exculpation provisions such as the one

---

[5]   Section 7.4 is the consensual third-party release provision that the PBGC does not find objectionable.

found in Section 7.3 of the Plan that contain a carve-out for fraud, willful misconduct, intentional misconduct, or gross negligence simply restate the "standard of liability . . . that already applies" and therefore "affect[] no change in liability."  *PWS*, 228 F.3d at 246.  For this reason, the United States Trustee stated that "the Debtors, the Debtors' officers, directors and employees serving during the Chapter 11 case in their capacity as such, the Committee, and their respective attorneys, financial advisors and other professionals" "are eligible for exculpation in these cases."  United States Trustee Obj. at ¶ 12.

27.    In short, the Plan does not contain impermissible third-party releases.

**3.    With Modifications, the PBGC's Proposed Language Is Acceptable to the Debtors**

28.    In its Objection, the PBGC proposed language to be included in Section 8.14 of the Plan that would resolve the PBGC's Objection.  The language originally proposed by the PBGC is not acceptable to the Debtors.  However, the Debtors would agree to the language as modified below:

> Nothing in the ~~Debtors' bankruptcy proceedings,~~ Confirmation Order, the Plan ~~of Liquidation,~~ or the Bankruptcy Code (and § 1141 thereof)~~, or any other document filed in the Debtors' bankruptcy cases~~ shall in any way be construed to discharge, release, limit, or relieve ~~the Debtors or~~ any ~~other~~ party, in any capacity, from any liability or responsibility with respect to The Stanreco Retirement Plan ("Pension Plan") or any other defined benefit pension plan under any law, governmental policy, or regulatory provision. ~~PBGC~~ The Pension Benefit Guaranty Corporation ("PBGC") and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan ~~of Liquidation,~~ Confirmation Order, or Bankruptcy Code~~, or any other document filed in the Debtors' bankruptcy cases~~.  Notwithstanding the foregoing, the PBGC and the Pension Plan shall continue to be subject to the provisions of Section 1.6 of this Plan, and all Claims of the PBGC (including the amended claims filed by the PBGC for the Pension Plan's unfunded benefit liabilities, unpaid premiums, and unpaid minimum contributions) against the Debtors, to the extent Allowed, shall be fully satisfied by the treatment of such Allowed Claims as Unsecured Claims in Class IV of the Plan.

01:17958547.1

D.    **Objection of Commonwealth of Pennsylvania, Department of Revenue to Confirmation of the Debtors' First Amended Plan of Liquidation [Docket No. 1261] (the "Pennsylvania Objection")**

29.    Pennsylvania lodges two objections to the Plan.  First, Pennsylvania acknowledges that the "Plan provides for payment of priority tax claims," but asserts that the Plan "unfairly and blatantly disallows for the full payment of priority tax claims should such claims be disputed and insufficient funds remain in the Disputed Claims Reserve."  Pennsylvania Obj. at ¶ 2.

30.    Section 3.3.1 of the Plan provides that "the Debtors . . . shall . . . (e) deposit or allocate funds in the Disputed Claims Reserve for each timely-Filed Unclassified Claim (other than Professional Fee Claims) and Priority Claim that is Disputed as of the Effective Date in the amount asserted for such Claim as of the Effective Date or in such other amount as may be ordered by the Bankruptcy Court, after notice and hearing . . . ."  The Debtors have amended Section 3.3.2 of the Plan to provide that if the funds in the Disputed Claims Reserve are insufficient to pay all Disputed Priority Claims in full to the extent they become Allowed, Liquidating SRC will fund the shortfall into the Disputed Claims Reserve.  Accordingly, the Plan now ensures that all Priority Claims will be paid in full.[6]

31.    Pennsylvania also states that the "Debtors' anti-setoff provision nullifies protections afforded to taxing authorities under Section 553(a)."  Pennsylvania Obj. at ¶ 3. Pennsylvania does not cite to any particular provision of the Plan, so the Debtors are unclear which provision of the Plan constitutes such an alleged "anti-setoff" provision.  Perhaps Pennsylvania is referring to the injunction contained in Section 7.2 of the Plan, which enjoins

---

[6]    The version of the Plan that was sent out for solicitation contemplated that Administrative Expense Claims would also be paid from the Disputed Claims Reserve.  The Debtors also amended the Plan to provide that Administrative Expense Claims will be paid directly by Liquidating SRC and not out of the Disputed Claims Reserve.

actions to "offset from the Estates (unless such offset rights were asserted in writing prior to the

Confirmation Date)."  To the extent Pennsylvania is concerned with that provision of the Plan, it

can fully protect itself by asserting whatever setoff rights it thinks it has prior to the

Confirmation Date.  *Cf. In re Indianapolis Downs, LLC*, 486 B.R. at 304 ("In the context of a

confirmation hearing, creditors 'have standing *only* to challenge those parts of a reorganization

plan that affect their direct interests.'" (quoting *In re Orlando Investors, L.P.*, 103 B.R. 593, 596-

97 (Bankr. E.D. Pa. 1989) (emphasis in original)).  To the extent Pennsylvania is concerned with

a different provision of the Plan, it should so state.

E.    **Texas Comptroller of Public Accounts Objection to Confirmation of the Debtors'
      First Amended Plan of Liquidation [Docket No. 1253] (the "Texas Comptroller
      Objection")**

         32.    The Texas Comptroller asserts eleven objections to the Plan.  Set out below are

the Debtors' responses to the Texas Comptroller's wish-list of changes it would make to the Plan

if it were the Plan sponsor.

         **1.    The Debtors Have and Will File All Appropriate Tax Returns**

         33.    The Texas Comptroller admits that the Debtors "timely filed and paid an

extension payment" in the amount of $290,000 with respect to 2015 franchise taxes.

Nonetheless, the Texas Comptroller asserts that the return for such franchise taxes is now due.

         34.    The Debtors have since filed the tax return in question and will ensure that all tax

returns are appropriately filed.  *See* Exhibit A hereto.  Accordingly, the Texas Comptroller's

suggestion that the "Plan should provide mechanisms to ensure" that tax returns are filed is

unnecessary, and is not required by section 1129 of the Bankruptcy Code.  *Cf.* Texas Comptroller

Obj. at ¶ 13.  Because the provision suggested by the Texas Comptroller is not required by

section 1129 of the Bankruptcy Code and is not necessary, the Texas Comptroller's objection

should be overruled.

2.      **The Plan's Provision for Payment of Administrative Expense Taxes Is Appropriate**

35.      The Texas Comptroller states that the Plan "should make clear" that postpetition taxes "will be paid in full in one lump sum when due."  Texas Comptroller Obj. at 3.

36.      Section 1.1 of the Plan provides that "Allowed Unclassified Claims [which include Administrative Expense Claims] . . . shall be paid . . . on the later of the Effective Date or the date such Claim becomes due and payable (or as soon as reasonably practicable after) if such Claim is Allowed as of the Effective Date . . . [or] in accordance with Section 3.3 of the Plan if such Claim is not Allowed as of the Effective Date."  Section 3.3, as amended to address the Pennsylvania Objection discussed in section D, *supra*, provides that Administrative Expense Claims that are not Allowed as of the Effective Date will be paid within thirty days of the date they are Allowed.  These provisions for the payment of Administrative Expense Claims are appropriate and already provide for the treatment requested by the Texas Comptroller.

37.      The Texas Comptroller also states that the "Plan needs to make clear that the Texas Comptroller shall not be required to make any request for payment of a post-petition tax in order for post-petition taxes to be paid." Texas Comptroller Obj. at ¶ 15 (citing 11 U.S.C. § 503(b)(1)(D)).  The Debtors have amended the Plan to clarify that the Administrative Expense Claims Bar Date does not apply to the claims specified in sections 503(b)(1)(B) and 503(b)(1)(C) of the Bankruptcy Code.

3.      **The Plan's Provision for Payment of Priority Tax Claims Is Appropriate**

38.      The Bankruptcy Code specifically allows debtors to pay Priority Claims over a five-year period from the Petition Date.  *See* 11 U.S.C. § 1129(a)(9)(C)(ii).  Apparently unhappy with Congress, the Texas Comptroller states that the Plan's provision for payment of priority claims in accordance with the Bankruptcy Code "does not make sense and is not proposed in

good faith." Texas Comptroller Obj. at ¶ 16.  The Texas Comptroller goes on to state that "the Debtors cannot establish the feasibility of payment of priority tax claims over a five year period" and that "[t]he likelihood of nonpayment increases with the passage of time." *Id.*

39.     There is no basis for this objection.  First, the Bankruptcy Code authorizes the Plan's treatment of Priority Claims (as the Texas Comptroller acknowledges).  Compliance with the Bankruptcy Code is not "bad faith."  Second, the Debtors have submitted evidence that they have the ability to pay all Priority Tax Claims in full.  *See Declaration of Landen C. Williams in Support of Confirmation of the Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No. 1289], at Exhibit A.  Third, the passage of time will likely, in fact, increase the assets that are available to pay Priority Claims as the Debtors pursue available Avoidance Actions.  Nonetheless, the Debtors have amended Section 3.3.1 of the Plan to provide that all Priority Claims which are Allowed on the Effective Date will be paid on the Effective Date.[7]

#### 4.     As Amended, the Plan Calls for the Appropriate Payment of Interest

40.     The Texas Comptroller next makes several observations regarding the payment of interest.

41.     First, the Texas Comptroller asserts that the "Plan or confirmation order should make clear that priority tax claims will commence and continue to accrue interest from the Effective Date at the rate prescribed by 11 U.S.C. § 511 until the claim and all accrued interest are paid in full." Texas Comptroller Obj. at ¶ 17.   The Debtors have amended Section 1.3 of the

---

[7]   To the extent a Priority Claim is not Allowed as of the Effective Date, it will be paid, with interest at the applicable rate, in accordance with Section 3.3.2 of the Plan.

Plan to make clear that following the Effective Date, Priority Tax Claims will accrue interest to the extent required by section 1129(a)(9)(C) of the Bankruptcy Code.

42.     Next, the Texas Comptroller asserts that its Administrative Expense Claims should include interest, if applicable. Nothing in the Plan cuts off a party's right to assert its right to interest, if applicable, as part of its Administrative Expense Claim and accordingly, this Objection is baseless.

43.     Finally, the Texas Comptroller asserts that "the Plan should clearly require the full tax and interest amounts of the claims, plus accruing interest, to be held in the Disputed Claims Reserve." Texas Comptroller Obj. at 5. As noted above and in Section D, *supra*, the Debtors have amended the Plan to clarify that interest will accrue on Priority Tax Claims following the Effective Date and to provide that Liquidating SRC will remain liable to fund any shortfalls into the Disputed Claims Reserve. Taken together, these two amendments address the Texas Comptroller's concerns.

## 5.     The Plan Properly Preserves the Debtors' Setoff Rights

44.     The Texas Comptroller next misreads Section 1.2 of the Plan as granting the Debtors setoff rights where none existed before, and complains that as applied to Texas this provision (so misread) would render the "voluntary reporting tax system . . . unworkable." In relevant part, Section 1.2 of the Plan states as follows: "Nothing in the Plan shall affect the rights, defenses, or remedies of the Debtors, the Estates, or the Trustees in respect of any Claim, including all rights, defenses, and remedies in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims." This section merely preserves any existing setoff rights, and does not create new setoff rights. Accordingly, if the Debtors don't have setoff rights against the State of Texas under applicable non-bankruptcy law (as Texas asserts), then the Plan does nothing to change that result.

6.      **The Plan Properly Addresses the Setoff Rights of Others**

45.      Section 7.2 of the Plan properly enjoins parties from asserting new setoff rights against the Debtors that were not asserted prior to the Confirmation Date.  *See, e.g.*, *United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998) ("[T]he right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim.").

46.      Texas has asserted its setoff rights; accordingly, it is not affected by Section 7.2 of the Plan and Texas thus lacks standing to object to this provision of the Plan (which is otherwise proper).  *See, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. at 304 ("In the context of a confirmation hearing, creditors 'have standing *only* to challenge those parts of a reorganization plan that affect their direct interests.'" (quoting *In re Orlando Investors, L.P.*, 103 B.R. at 596-97 (emphasis in original))).

7.      **The Plan Does Not Discharge the Debtors**

47.      The Texas Comptroller next complains that the injunction and release provisions contained in Article 7 of the Plan "in essence, grant the equivalent of a discharge" and therefore "violate 11 U.S.C. § 1141(d)(3)."  Texas Comptroller Obj. at ¶ 29.

48.      This objection was also raised by the PBGC and the Debtors' response is contained in section C, infra.

8.      **Texas Is Not Bound By the Third Party Release**

49.      Texas also objects to the Plan to the extent that it constitutes an "attempt to prevent the Texas Comptroller from pursuing a non-debtor."  Texas Comptroller Obj. at ¶ 32. Texas does not hold a Claim in any of Classes I-IV and therefore is not subject to the opt-out Third Party Release contained in Section 7.4 of the Plan (which only apply to Holders of Claims

in Classes I-IV).  None of the other provisions of the Plan plausibly operates to "prevent the Texas Comptroller from pursuing a non-debtor" and the Texas Comptroller doesn't even assert that they do.  Accordingly, the Texas Comptroller lacks standing to raise this baseless objection as well.  *See, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. at 304.

### 9.        The Claims Objection Deadline Is Appropriate

50.        Texas further asserts that the period for objecting to claims—one year—is "an unreasonably long period of time."  Texas Comptroller Obj. at ¶ 35.  First, Texas has not even stated a valid objection.  Nothing in section 1129 requires the Plan to contain a shorter claims objection period.  The fact that Texas would like the Plan to say something different is irrelevant.  *See, e.g.*, *In re Adelphia Commcn's Corp.*, 441 B.R. 6, 17 (Bankr. S.D.N.Y. 2010) ("[C]ourts have historically not found a plan provision to be impermissible because it is not 'appropriate' except where the plan provision, while not inconsistent with the provisions of [the Bankruptcy Code], is violative of a statutory provision found elsewhere in the U.S.C. (*i.e.*, is violative of nonbankruptcy federal statutory law), or is violative of existing caselaw.").

51.        Second, the one-year claims objection period is completely appropriate in a case of this size.  More than 2,500 claims, seeking billions of dollars, have been asserted against the Estates.  It is not "unreasonable" to allow a one-year period to reconcile such a large claims pool.  For this reason, courts in this District have approved Plans with one-year claims objection deadlines.  *See, e.g.*, *In re Milagro Holdings*, 15-11520-KG, Dkt. No. 305 (Bankr. D. Del. Oct. 8, 2015) (order confirming plan with one-year claims objection deadline); *In re ZCO Liquidating Corp.*, No. 13-13126 (PJW), Dkt. No. 618 (Jul. 30, 2014) (same).  Nonetheless, the Debtors have amended Section 4.1 of the Plan to provide for a 180-day Claims Objection Bar Date.

10.    **The Plan's Provisions Regarding Estimation of Claims Are Appropriate**

52.    The Texas Comptroller further asserts that Section 4.7 of the Plan constitutes an "attempt to re-write the law of estimation." Texas Comptroller Obj. at 9.  Section 4.7 does no such thing.  In fact, it does little more than preserve Liquidating SRC's right to "request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code."  (emphasis added).  The Section in no way enlarges or otherwise attempts to change the substantive rights of parties to an estimation proceeding; and the effects of any such estimation proceeding shall be "as determined by the Bankruptcy Court."  Section 4.7 is an appropriate provision and the Texas Comptroller's objection to it should be summarily overruled.

11.    **The Plan Contains Adequate Means of Implementation**

53.    Finally, the Texas Comptroller asserts that the Plan "should" contain an explicit "default remedies" provision.  Texas Comptroller Obj. at 9.  The Plan already contains adequate means for creditors to raise any issues and does not need an additional default remedies provision.  For example, Section 8.1 of the Plan provides that the Bankruptcy Court shall have continuing jurisdiction to "[e]nsure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan," to "[e]nter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan," to "[r]esolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan," to "[a]djudicate any and all disputes arising from or relating to Distributions under the Plan," to "[d]etermine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code," and to "[h]ear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code."

Taken together, these provisions constitute adequate means for the implementation of the Plan

and the handling of any disputes with respect to any alleged defaults under the Plan.

F.   **Limited Objection of International Paper Company to Confirmation [Docket No. 1248] (the "<u>International Paper Objection</u>") and Limited Objection of Leedsworld, Inc., Bullet Line, LLC, and Timeplanner Calendars, Inc. to Confirmation [Docket No. 1249] (the "<u>Leedsworld et al. Objection</u>")**

54.    The International Paper Objection and the Leedsworld et al. Objection each

complain that the Plan does not "expressly preserve" the objecting parties' defenses, including

setoff and recoupment rights.  *See* International Paper Obj. at 2; Leedsworld et al. Obj. at 2.

55.    The Debtors are not aware of any provision in chapter 11 that requires a plan to

"expressly preserve" the rights and defenses of creditors.  Nonetheless, the Debtors propose to

resolve the International Paper Objection and the Leedsworld et al. Objection[8] by agreeing to

include the following language in the Confirmation Order:

> Notwithstanding anything in the Plan or this Order to the contrary, the rights of International Paper Company, Bullet Line, LLC, Leedsworld, Inc., and Timeplanner Calendars, Inc. to assert any defenses preserved by Section 16 of the Sale Order, including any right to setoff or recoupment, shall not be affected, impaired or otherwise modified.

G.   **Limited Objection of Morgan Adhesives Company, LLC d/b/a MACtac to Confirmation of the First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates [Docket No. 1252] (the "<u>MACtac Objection</u>")**

56.    MACtac raises two objections to the Plan.[9]  First, MACtac incorrectly reads

Section 7.2 of the Plan to bar the allowance of claims that arise under section 502(h) of the

Bankruptcy Code.  The Debtors never intended to cut off the rights of Creditors that have claims

---

[8]   The applicable claimants have confirmed that this language resolves the Leedsworld et al. Objection.

[9]   MACtac also makes a gratuitous statement that the Disclosure Statement contains a "typographical error." MACtac does not assert that the error renders the disclosures contained in the Disclosure Statement "inadequate," and in fact correctly identified the intended reference from the context of the section in question.

under section 502(h) of the Bankruptcy Code.  MACtac proposed language to be included in the

Confirmation Order which would rectify the perceived problem with the Plan.  The Debtors

agree to include that language in the Confirmation Order, with certain conforming changes as set

out below:

> Notwithstanding anything to the contrary in 11 U.S.C. §1141(d) or the Plan
> Documents, nothing in the Plan Documents or this Confirmation Order shall
> impair: (i) any General Unsecured Creditor's right to assert a Claim under 11
> U.S.C. § 502(h) (a "Section 502(h) Claim"), or (ii) the ability of a Holder of an
> Allowed Section 502(h) Claim to become a beneficiary of the GUC Trust (or of
> any other trust of which such Creditor is entitled to be or become a beneficiary) in
> respect of such Section 502(h) Claim.  If any Creditor has a Section 502(h) Claim,
> then, to the extent that such Claim is Allowed, the Creditor shall be entitled to
> share as a beneficiary of the GUC Trust (and as a beneficiary of any other trust of
> which said creditor is entitled to be or become a beneficiary) and all appropriate
> entries shall be made on the official register(s) maintained by the GUC Trustee
> and/or any other trustee to reflect such beneficial interest in respect of the Section
> 502(h) Claim of such Creditor.  Any Section 502(h) Claim shall be Filed, if at all,
> no later than thirty (30) days after such claim arises.  To the extent a Section
> 502(h) Claim is not timely Filed, such Claim shall not constitute an Allowed
> Claim for any reason, including for Distribution purposes.

57.      The Debtors believe that the inclusion of this language in the Confirmation Order

resolves MACtac's objection with respect to section 502(h) claims.

58.      MACtac also objects to the Plan for the reasons set forth in the International Paper

Objection and the Leedsworld et al. Objection; namely, that the Plan fails to "expressly preserve"

MACtac's defenses to any claims brought by the Estates.  As noted above, the Debtors are not

aware of any provision in chapter 11 that requires a plan to "expressly preserve" the rights and

defenses of creditors.  Nonetheless, the Debtors propose to resolve the MACtac Objection by

including the following language in the Confirmation Order:

> Notwithstanding anything in the Plan or this Order to the contrary, the rights of
> Morgan Adhesives Company, LLC d/b/a MACtac to assert any defenses
> preserved by Section 16 of the Sale Order, including any right to setoff or
> recoupment, shall not be affected, impaired or otherwise modified.

H.      **Local Texas Tax Authorities' Objection to Confirmation of First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates [Docket No. 1263] (the "Texas Local Objection")**

59.     The Debtors understand that the Texas Local Objection has been withdrawn.

## CONCLUSION

60.     Where appropriate, the Debtors have agreed to amend the Plan and/or the Confirmation Order to address legitimate issues raised by objecting parties.  The remaining objections lodged by the objectors should be overruled for the reasons set forth herein.

*[Remainder of Page Intentionally Left Blank]*

01:17958547.1

24

WHEREFORE, for the reasons set forth herein and in the Confirmation Brief, the

Debtors respectfully request that the Court confirm the Plan and grant such other and further

relief as may be just and proper.

Dated:    November 11, 2015
          Wilmington, Delaware                  */s/ Andrew L. Magaziner*
                                      Michael R. Nestor (No. 3526)
                                      Kara Hammond Coyle (No. 4410)
                                      Andrew L. Magaziner (No. 5426)
                                      YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone:  (302) 571-6600
                                      Facsimile:  (302) 571-1253
                                      mnestor@ycst.com
                                      kcoyle@ycst.com
                                      amagaziner@ycst.com

                                      -and-

                                      Michael A. Rosenthal (NY No. 4697561)
                                      Jeremy L. Graves (CO No. 45522)
                                      Matthew G. Bouslog (CA No. 280978)
                                      GIBSON, DUNN & CRUTCHER LLP
                                      200 Park Avenue
                                      New York, New York 10166-0193
                                      Telephone: (212) 351-4000
                                      Facsimile: (212) 351-4035
                                      mrosenthal@gibsondunn.com
                                      jgraves@gibsondunn.com
                                      mbouslog@gibsondunn.com

                                      *Counsel to the Debtors and*
                                      *Debtors in Possession*

**Exhibit A**

**Texas Franchise Tax Return**

## Cumulative e-File History 2014

| Texas | |
|---|---|
| Locator: | 00023Y |
| Taxpayer Name: | SRC Liquidation Company & Subsidiaries |
| Return Type: | 1120, C |
| | |
| | |
| Submitted Date: | 11/10/2015 11:23:49 |
| Acknowledgement Date: | 11/10/2015 12:23:52 |
| Status: | Accepted |
| Submission ID: | 31120820153145000000 |

4D52B7 3.000

TX2015    05-158-A
Ver. 6.0    (Rev.9-13/7)

# Texas Franchise Tax Report - Page 1

■ **Tcode** 13250 Annual

| ■ Taxpayer number | ■ Report year | Due date | Privilege period covered by this report |
|---|---|---|---|
| 13104554400 | 2015 | 11/16/2015 | 01/01/2015 — 12/31/2015 |

Taxpayer name

SRC Liquidation Company

Mailing address    600 Albany Street / P.O. Box 1167

Secretary of State file number
or Comptroller file number

0001053406

| City | State | Country | ZIP Code | Plus 4 | Check box if the address has changed ☐ |
|---|---|---|---|---|---|
| Dayton | OH | US | 45401 | 1167 | |

Check box if this is a combined report ☒

Check box if Total Revenue is adjusted for Tiered Partnership Election, see instructions ☐

Check box if this is a Corporation or Limited Liability Company ☒    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

**If not twelve months, see instructions for annualized revenue

| | m m d d y y | | m m d d y y | SIC code | NAICS code |
|---|---|---|---|---|---|
| Accounting year begin date** ■ | 123013 | Accounting year end date ■ | 122814 | ■ 2759 | ■ 323100 |

## REVENUE (Whole dollars only)

| | | | | |
|---|---|---|---|---|
| 1. | Gross receipts or sales | 1. ■ | 891872733 | .00 |
| 2. | Dividends | 2. ■ | 0 | .00 |
| 3. | Interest | 3. ■ | 6546 | .00 |
| 4. | Rents (can be negative amount) | 4. ■ | 0 | .00 |
| 5. | Royalties | 5. ■ | 1338460 | .00 |
| 6. | Gains/losses (can be negative amount) | 6. ■ | 570242 | .00 |
| 7. | Other income (can be negative amount) | 7. ■ | 101974 | .00 |
| 8. | Total gross revenue (Add items 1 thru 7) | 8. ■ | 893889955 | .00 |
| 9. | Exclusions from gross revenue (see instructions) | 9. ■ | −143608 | .00 |
| 10. | TOTAL REVENUE (item 8 minus item 9 if less than zero, enter 0) | 10. ■ | 894033563 | .00 |

## COST OF GOODS SOLD (Whole dollars only)

| | | | | |
|---|---|---|---|---|
| 11. | Cost of goods sold | 11. ■ | 585678151 | .00 |
| 12. | Indirect or administrative overhead costs (Limited to 4%) | 12. ■ | 346256 | .00 |
| 13. | Other (see instructions) | 13. ■ | 0 | .00 |
| 14. | TOTAL COST OF GOODS SOLD (Add items 11 thru 13) | 14. ■ | 586024407 | .00 |

## COMPENSATION (Whole dollars only)

| | | | | |
|---|---|---|---|---|
| 15. | Wages and cash compensation | 15. ■ | 224417515 | .00 |
| 16. | Employee benefits | 16. ■ | 56503174 | .00 |
| 17. | Other (see instructions) | 17. ■ | 0 | .00 |
| 18. | TOTAL COMPENSATION (Add items 15 thru 17) | 18. ■ | 280920689 | .00 |

## Texas Comptroller Official Use Only

| VE/DE | ☐ |
|---|---|
| PM Date | |

7001

4D5240 3.000

TX2015    05-158-B
Ver. 6.0    (Rev.9-13/7)

**Texas Franchise Tax Report - Page 2**

■ **Tcode** 13251 Annual

| ■ Taxpayer number | ■ Report year | Due date | Taxpayer name |
|---|---|---|---|
| 13104554400 | 2015 | 11/16/2015 | SRC Liquidation Company |

**MARGIN** *(Whole dollars only)*

| | | | |
|---|---|---|---|
| 19. **70% revenue** *(item 10 X .70)* | 19. ■ | | 625823494 .00 |
| 20. **Revenue less COGS** *(item 10 - item 14)* | 20. ■ | | 308009156 .00 |
| 21. **Revenue less compensation** *(item 10 - item 18)* | 21. ■ | | 613112874 .00 |
| 22. **Revenue less $1 million** *(item 10 - $1,000,000)* | 22. ■ | | 893033563 .00 |
| 23. **MARGIN** *(see instructions)* | 23. ■ | | 308009156 .00 |

**APPORTIONMENT FACTOR**

| | | | |
|---|---|---|---|
| 24. **Gross receipts in Texas** *(Whole dollars only)* | 24. ■ | | 78429154 .00 |
| 25. **Gross receipts everywhere** *(Whole dollars only)* | 25. ■ | | 894033563 .00 |
| 26. **APPORTIONMENT FACTOR** *(Divide item 24 by item 25, round to 4 decimal places)* | | 26. ■ | 0.0877 |

**TAXABLE MARGIN** *(Whole dollars only)*

| | | | |
|---|---|---|---|
| 27. **Apportioned margin** *(Multiply item 23 by item 26)* | 27. ■ | | 27012403 .00 |
| 28. **Allowable deductions** *(see instructions)* | 28. ■ | | 0 .00 |
| 29. **TAXABLE MARGIN** *(item 27 minus item 28)* | 29. ■ | | 27012403 .00 |

**TAX DUE**

| | | | |
|---|---|---|---|
| 30. **Tax rate** *(see instructions for determining the appropriate tax rate)* | X   X   X | 30. ■ | 0.009500 |
| 31. **Tax due** *(Multiply item 29 by the tax rate in item 30) (Dollars and cents)* | 31. ■ | | 256617.83 |

**TAX ADJUSTMENTS** *(Dollars and cents) (Do not include prior payments)*

| | | | |
|---|---|---|---|
| 32. **Tax credits** *(item 23 from Form 05-160)* | 32. ■ | | 1215.00 |
| 33. **Tax due before discount** *(item 31 minus item 32)* | 33. ■ | | 255402.83 |
| 34. **Discount** *(see instructions, applicable to report years 2008 and 2009)* | 34. ■ | | 0.00 |

**TOTAL TAX DUE** *(Dollars and cents)*

| | | | |
|---|---|---|---|
| 35. **TOTAL TAX DUE** *(item 33 minus item 34)* | 35. ■ | | 255402.83 |

**Do not include payment if item 35 is less than $1,000** or if annualized total revenue is less than the no tax due threshold (see instructions). If the entity makes a tiered partnership election, ANY amount in item 35 is due. Complete Form 05-170 if making a payment.

| Print or type name | Area code and phone number |
|---|---|
| Landen C Williams | (937) 221-1000 |
| I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief. | **Mail original to:** Texas Comptroller of Public Accounts |

**sign here** ▶

| Date |
|---|
| 11/10/2015 |

P.O. Box 149348
Austin, TX 78714-9348

If you have any questions regarding franchise tax, you may contact the Texas Comptroller's field office in your area or call 1-800-252-1381.
Instructions for each report year are online at www.window.state.tx.us/taxinfo/taxforms/05-forms.html.

**Texas Comptroller Official Use Only**

| VE/DE | ☐ |
|---|---|
| PM Date | | | | | |



7001

4D52C3 3.000
TX2015    05-160
Ver. 6.0    (Rev.9-13/4)

# Texas Franchise Tax Credits Summary Schedule

■ **Tcode** 13254 Annual

| ■ Taxpayer number | ● Report year | Taxpayer name |
|---|---|---|
| 13104554400 | 2015 | SRC Liquidation Company |

## Part A - Credit Limit

| | | |
|---|---|---|
| 1. **Tax due before credits** *(Item 31 of the tax report, Form 05-158-B)* | 1. ■ | 256617.83 |
| 2. **Credit limit** *(Item 1 x 50% (0.50))* | 2. ■ | 128308.92 |

## Part B - Credits Available

| | | |
|---|---|---|
| 3. **Investment credit installment from prior years** | 3. ■ | 0.00 |
| 4. **Investment credit carried forward from prior years** | 4. ■ | 0.00 |
| 5. **Investment credit available** *(Add Item 3 plus Item 4)* | 5. ■ | 0.00 |
| 6. **Jobs creation credit carried forward from prior years** | 6. ■ | 0.00 |
| 7. **Research credit carried forward from prior years** | 7. ■ | 0.00 |
| 8. **Temporary credit for Business Loss Carryforward (BLC) from prior years** | 8. ■ | 44726.00 |
| 9. **R & D activities credit available** *(Item 14 from Form 05-178)* | 9. ■ | 0.00 |
| 10. **Eligible historic structure credit** | 10. ■ | 0.00 |
| 11. **Historic structure credit carried forward from prior years** | 11. ■ | 0.00 |
| 12. **Historic structure credit available** *(Add Item 10 plus Item 11)* | 12. ■ | 0.00 |
| 13. **1992 Temporary credit** | 13. ■ | 0.00 |

## Part C - Credits Claimed

| | | |
|---|---|---|
| 14. **Investment credit claimed** *(Amount cannot exceed the credit limit in Item 2 or the credit available in Item 5)* | 14. ■ | 0.00 |
| 15. **Jobs creation credit claimed** *(Amount cannot exceed the credit limit in Item 2 or the credit available in Item 6)* | 15. ■ | 0.00 |
| 16. **Research credit claimed** *(Amount cannot exceed the credit limit in Item 2 or the credit available in Item 7)* | 16. ■ | 0.00 |
| 17. **Temporary credit for BLC from this year only** | 17. ■ | 0.00 |
| 18. **Temporary credit for BLC from prior years claimed** *(Amount cannot exceed the credit available in Item 8)* | 18. ■ | 1215.00 |
| 19. **R & D activities credit claimed** *(Amount cannot exceed the credit limit in Item 2 or the credit available in Item 9)* | 19. ■ | 0.00 |
| 20. **Historic structure credit claimed** *(Cannot exceed amount in Item 12)* | 20. ■ | 0.00 |
| 21. **1992 Temporary credit less additional tax due** | 21. ■ | 0.00 |
| 22. **Other** *(see instructions)* | 22. ■ | 0.00 |
| 23. **Total credits claimed** *(Add Items 14, 15, 16, 17, 18, 19, 20, 21 and 22)* *(Enter this amount on Item 32 of the tax report, Form 05-158-B)* | 23. ■ | 1215.00 |

**Texas Comptroller Official Use Only**

| VE/DE | ☐ |
|---|---|



7001

4D52B1 3.000

TX2015    05-166
Ver. 6.0    (Rev.9-13/5)

# Texas Franchise Tax Affiliate Schedule

■ **Tcode**   13253   Annual

| ■ Reporting entity taxpayer number | ■ Report year | Reporting entity taxpayer name |
|---|---|---|
| 13104554400 | 2015 | SRC Liquidation Company |

Reporting entity must be included on Affiliate Schedule. Affiliate reporting period dates must be within combined group's accounting period dates.

---

**1. Legal name of affiliate**
SRC Liquidation Company

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
13104554400

**■ 3. Affiliate NAICS code**
323100

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☐

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 **.**00

**■ 9. Gross receipts everywhere** *(before eliminations)*
888894757 **.**00

**■ 10. Gross receipts in Texas** *(before eliminations)*
78429154 **.**00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
580886663 **.**00

Check box if this is a Corporation or Limited Liability Company ☒    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

**1. Legal name of affiliate**
Standard Register Mexico Holding Company

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
204101624

**■ 3. Affiliate NAICS code**
541519

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☒

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 **.**00

**■ 9. Gross receipts everywhere** *(before eliminations)*
0 **.**00

**■ 10. Gross receipts in Texas** *(before eliminations)*
0 **.**00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
0 **.**00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

**1. Legal name of affiliate**
Standard Register Technologies, Inc.

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
020623180

**■ 3. Affiliate NAICS code**
541519

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☒

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 **.**00

**■ 9. Gross receipts everywhere** *(before eliminations)*
0 **.**00

**■ 10. Gross receipts in Texas** *(before eliminations)*
0 **.**00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
0 **.**00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

The reporting entity of a combined group with a temporary credit for business loss carryforwards preserved for itself and/or affiliates must submit common owner information. The information must be provided to satisfy franchise tax reporting requirements. Learn more at www.window.texas.gov/commonowner/.
An information report (Form 05-102 or Form 05-167) must be filed for each affiliate that is organized in Texas or that has a physical presence in Texas.

## Texas Comptroller Official Use Only

| VE/DE | ☐ | FM | ☐ |
|---|---|---|---|



7001

4D52B2 3.000

TX2015  05-166
Ver. 6.0  (Rev.9-13/5)

# Texas Franchise Tax Affiliate Schedule

■ **Tcode**  13253 Annual

| ■ Reporting entity taxpayer number | ■ Report year | ■ Reporting entity taxpayer name |
|---|---|---|
| 13104554400 | 2015 | SRC Liquidation Company |

Reporting entity must be included on Affiliate Schedule. Affiliate reporting period dates must be within combined group's accounting period dates.

---

**1. Legal name of affiliate**
Standard Register of Puerto Rico, Inc.

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
275160578

**■ 3. Affiliate NAICS code**
323100

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☒

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 .00

**■ 9. Gross receipts everywhere** *(before eliminations)*
5138806 .00

**■ 10. Gross receipts in Texas** *(before eliminations)*
0 .00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
5137744 .00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

**1. Legal name of affiliate**
WorkflowOne LLC

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
12748322109

**■ 3. Affiliate NAICS code**
323100

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☐

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 .00

**■ 9. Gross receipts everywhere** *(before eliminations)*
0 .00

**■ 10. Gross receipts in Texas** *(before eliminations)*
0 .00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
0 .00

Check box if this is a Corporation or Limited Liability Company ☒    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

**1. Legal name of affiliate**
Standard Register International, Inc.

**■ 2. Affiliate taxpayer number** *(if none, use FEI number)*
223891861

**■ 3. Affiliate NAICS code**
323100

**4. Check box if entity is disregarded for franchise tax** ■ ☐

**5. Check box if this affiliate does NOT have NEXUS in Texas** ■ ☒

**6. Affiliate reporting begin date** m m d d y y
123013

**7. Affiliate reporting end date** m m d d y y
122814

**■ 8. Gross receipts subject to throwback in other states** *(before eliminations)*
0 .00

**■ 9. Gross receipts everywhere** *(before eliminations)*
0 .00

**■ 10. Gross receipts in Texas** *(before eliminations)*
0 .00

**■ 11. Cost of goods sold or compensation** *(before eliminations)*
0 .00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

The reporting entity of a combined group with a temporary credit for business loss carryforwards preserved for itself and/or affiliates must submit common owner information. The information must be provided to satisfy franchise tax reporting requirements. Learn more at www.window.texas.gov/commonowner/.
An information report (Form 05-102 or Form 05-167) must be filed for each affiliate that is organized in Texas or that has a physical presence in Texas.

**Texas Comptroller Official Use Only**

| VE/DE | ☐ | FM | ☐ |



7001

4D52B2 3.000
TX2015    05-166
Ver. 6.0    (Rev.9-13/5)

# Texas Franchise Tax Affiliate Schedule

■ **Tcode** 13253 Annual

■ Reporting entity taxpayer number

13104554400

■ Report year

2015

Reporting entity taxpayer name

SRC Liquidation Company

Reporting entity must be included on Affiliate Schedule. Affiliate reporting period dates must be within combined group's accounting period dates.

---

1. Legal name of affiliate

Standard Register Holding Company

■ 2. Affiliate taxpayer number *(if none, use FEI number)*

020623186

■ 3. Affiliate NAICS code

541519

4. Check box if entity is disregarded for franchise tax ■ ☐

5. Check box if this affiliate does NOT have **NEXUS** in Texas ■ ☒

■ 6. Affiliate reporting begin date
m m d d y y
123013

■ 7. Affiliate reporting end date
m m d d y y
122814

■ 8. Gross receipts subject to throwback in other states *(before eliminations)*
0 .00

■ 9. Gross receipts everywhere *(before eliminations)*
0 .00

■ 10. Gross receipts in Texas *(before eliminations)*
0 .00

■ 11. Cost of goods sold or compensation *(before eliminations)*
0 .00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

1. Legal name of affiliate

■ 2. Affiliate taxpayer number *(if none, use FEI number)*

■ 3. Affiliate NAICS code

4. Check box if entity is disregarded for franchise tax ■ ☐

5. Check box if this affiliate does NOT have **NEXUS** in Texas ■ ☐

■ 6. Affiliate reporting begin date
m m d d y y

■ 7. Affiliate reporting end date
m m d d y y

■ 8. Gross receipts subject to throwback in other states *(before eliminations)*
0 .00

■ 9. Gross receipts everywhere *(before eliminations)*
0 .00

■ 10. Gross receipts in Texas *(before eliminations)*
0 .00

■ 11. Cost of goods sold or compensation *(before eliminations)*
0 .00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

1. Legal name of affiliate

■ 2. Affiliate taxpayer number *(if none, use FEI number)*

■ 3. Affiliate NAICS code

4. Check box if entity is disregarded for franchise tax ■ ☐

5. Check box if this affiliate does NOT have **NEXUS** in Texas ■ ☐

■ 6. Affiliate reporting begin date
m m d d y y

■ 7. Affiliate reporting end date
m m d d y y

■ 8. Gross receipts subject to throwback in other states *(before eliminations)*
0 .00

■ 9. Gross receipts everywhere *(before eliminations)*
0 .00

■ 10. Gross receipts in Texas *(before eliminations)*
0 .00

■ 11. Cost of goods sold or compensation *(before eliminations)*
0 .00

Check box if this is a Corporation or Limited Liability Company ☐    Check box if this is an Entity other than a Corporation or Limited Liability Company ☐

---

The reporting entity of a combined group with a temporary credit for business loss carryforwards preserved for itself and/or affiliates must submit common owner information. The information must be provided to satisfy franchise tax reporting requirements. Learn more at www.window.texas.gov/commonowner/.
An information report (Form 05-102 or Form 05-167) must be filed for each affiliate that is organized in Texas or that has a physical presence in Texas.

**Texas Comptroller Official Use Only**

| VE/DE | ☐ | FM | ☐ |



7001

4D5235 3.000

TX2015  05-170
Ver. 6.0  (Rev.9-13/7)

# Texas Franchise Tax Payment Form

■ **Tcode** 13050 Annual

| ■ Taxpayer number | ■ Report year | Due date |
|---|---|---|
| 13104554400 | 2015 | 11/16/2015 |

Taxpayer name

SRC Liquidation Company

| | | |
|---|---|---|
| 1. | **Total tax due on this report** *(item 35 from Form 05-158-B or item 17 from Form 05-169)* | 1. | 255402.83 |
| 2. | **Enter prior payment** *(e.g. extension payment)* | 2. | 290000.00 |
| 3. | **Net tax due** *(item 1 minus item 2)* | 3. | -34597.17 |
| 4. | **Penalty** *(see instructions)* | 4. | 0.00 |
| 5. | **Interest** *(see instructions)* | 5. | 0.00 |
| 6. | **TOTAL AMOUNT DUE AND PAYABLE** *(Add items 3, 4 and 5)* | 6. ■ | -34597.17 |
| | *Make amount payable to TEXAS COMPTROLLER* | | |

Taxpayers who paid $10,000 or more during the preceding fiscal year (Sept. 1 thru Aug. 31) are required to electronically
pay their franchise tax. For more information visit www.window.state.tx.us/webfile/req_franchise.html.

**Mail original to:**
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

If you have any questions regarding franchise tax, you may contact the Texas Comptroller's field office in your area or call 1-800-252-1381.
Instructions for each report year are online at www.window.state.tx.us/taxinfo/taxforms/05-forms.html.

## Texas Comptroller Official Use Only

| VE/DE | ☐ |
|---|---|
| PM Date | |



7001

4D5241 3.000
TX2015
Ver. 6.0

05-177
(Rev.9-13/2)

## Texas Franchise Tax Common Owner Information Report

■ **Tcode** 13257 Annual

| ■ Reporting entity taxpayer number | ■ Report year | Reporting entity taxpayer name |
|---|---|---|
| 13104554400 | 2015 | SRC Liquidation Company |

The common owner is the entity or individual that owns more than 50 percent (directly or indirectly) of each affiliate of the combined group. *Note: The reporting entity is not necessarily the common owner.*

### Common Owner Identification

Identification number *(Enter only ONE of the following numbers: Texas taxpayer number, federal employer identification number or Social Security number. )*

1. Texas taxpayer number           1. ■ 13104554400

   **OR**

2. Federal employer identification number    2. ■

   **OR**

3. Social Security number           3. ■

**Federal Privacy Act** - Disclosure of your Social Security number is required and authorized under law, for the purpose of tax administration and identification of any individual affected by applicable law. 42 U.S.C. §405(c)(2)(C)(i); Tex. Govt. Code §§403.011 and 403.078. Release of information on this form in response to a public information request will be governed by the Public Information Act, Chapter 552, Government Code, and applicable federal law.

### Common Owner Name

Common owner business name *OR* common owner first name, middle initial, last name

SRC Liquidation Company

Mailing address

PO Box 1167

| City | State | ZIP Code |
|---|---|---|
| Dayton | OH | 45401 |

### Dates

Enter the date this entity or individual became the common owner of the combined group. (The start date is not the same as the combined group accounting period date or the privilege period.)

■ ☒ Check box if this entity or individual is still the common owner.

| Common owner start date | *m m   d d   y y* | Common owner end date *(if applicable)* | *m m   d d   y y* |
|---|---|---|---|
| ■ | 010102 | ■ | |

| Print or type name | Area code and phone number |
|---|---|
| Landen C Williams | (937) 221-1000 |

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief.

**sign here** ▶

Date: 11/10/2015

**Mail original to:**
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

If you have any questions regarding franchise tax, you may contact the Texas Comptroller's field office in your area or call 1-800-252-1381.
Instructions for each report year are online at www.window.state.tx.us/taxinfo/taxforms/05-forms.html.

*Under Ch. 559, Government Code, you are entitled to review, request and correct information we have on file about you, with limited exceptions in accordance with Ch. 552, Government Code. To request information for review or to request error correction, contact us at the address or phone number listed on this form.*

### Texas Comptroller Official Use Only



| VE/DE | ☐ |
|---|---|

7001

4D5238 3.000

TX2015        05-102
Ver. 6.0      (Rev.9-13/32)

# Texas Franchise Tax Public Information Report
*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Tcode**    13196

| ■ Taxpayer number | ■ Report year | *You have certain rights* under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381. |
|---|---|---|
| 13104554400 | 2015 | |

| Taxpayer name    SRC Liquidation Company | ■ ☐ Check box if the mailing address has changed. |
|---|---|

| Mailing address    600 Albany Street / P.O. Box 1167 | Secretary of State (SOS) file number or Comptroller file number |
|---|---|
| City    Dayton    State OH    ZIP Code 45401    Plus 4 1167 | 0001053406 |

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office

Principal place of business

*Please sign below!*    Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

1310455440015

**SECTION A**    Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | | m m   d d   y y |
|---|---|---|---|---|
| Landen C Williams | Other | ☐ YES | Term expiration | |
| Mailing address    600 Albany Street | City  Dayton | State OH | | ZIP Code 45417 |
| Name | Title | Director | | m m   d d   y y |
| | | ☐ YES | Term expiration | |
| Mailing address | City | State | | ZIP Code |
| Name | Title | Director | | m m   d d   y y |
| | | ☐ YES | Term expiration | |
| Mailing address | City | State | | ZIP Code |

**SECTION B**    Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Standard Register Internationa | OH | | 100.000 |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
| Standard Register Holding Co | OH | | 100.000 |

**SECTION C**    Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | ☐ Check box if you need forms to change the registered agent or registered office information. |
|---|---|
| Agent:    CT Corporation System | |
| Office:  1999 Bryan Street Suite 900    City  Dallas    State TX    ZIP Code 75201 | |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

| I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company. | | | |
|---|---|---|---|
| **sign here** ▶ | Title    CRO | Date    11/02/2015 | Area code and phone number    (937) 221-1000 |

**Texas Comptroller Official Use Only**

| | VE/DE ☐ | PIR IND ☐ |
|---|---|---|



7001

4D5238 3.000

TX2015
Ver. 6.0

05-102
(Rev.9-13/32)

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*

**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Tcode** 13196

■ **Taxpayer number**
13104554400

■ **Report year**
2015

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

Taxpayer name  SRC Liquidation Company

■ ☐ Check box if the mailing address has changed.

Mailing address
600 Albany Street / P.O. Box 1167

City  Dayton | State OH | ZIP Code 45401 | Plus 4 1167

Secretary of State (SOS) file number or Comptroller file number
0001053406

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
Principal place of business

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

1310455440015

**SECTION A**  Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | m m d d y y |
|------|-------|----------|-------------|
| | | ☐ YES | Term expiration |
| Mailing address | City | State | ZIP Code |
| Name | Title | Director ☐ YES | m m d d y y / Term expiration |
| Mailing address | City | State | ZIP Code |
| Name | Title | Director ☐ YES | m m d d y y / Term expiration |
| Mailing address | City | State | ZIP Code |

**SECTION B**  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Standard Register Technologies | OH | | 100.000 |
| Standard Register Mexico Hold | OH | | 100.000 |

**SECTION C**  Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*
Agent:

☐ Check box if you need forms to change the registered agent or registered office information.

Office: | City | State | ZIP Code

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

sign here ▶ | Title | Date | Area code and phone number

**Texas Comptroller Official Use Only**

VE/DE ☐ | PIR IND ☐

7001

4D5238 3.000

TX2015
Ver. 6.0

05-102
(Rev.9-13/32)

■ **Tcode**    13196

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*

**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Taxpayer number**

13104554400

■ **Report year**

2015

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

Taxpayer name  SRC Liquidation Company

■ ☐ Check box if the mailing address has changed.

Mailing address  600 Albany Street / P.O. Box 1167

| City  Dayton | State  OH | ZIP Code  45401 | Plus 4  1167 |
|---|---|---|---|

Secretary of State (SOS) file number or Comptroller file number

0001053406

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office

Principal place of business

**1310455440015**

***Please sign below!***

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

**SECTION A**  Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | | *m  m    d  d    y  y* |
|---|---|---|---|---|
| | | ☐ YES | Term expiration | |
| Mailing address | City | | State | ZIP Code |
| Name | Title | Director | | *m  m    d  d    y  y* |
| | | ☐ YES | Term expiration | |
| Mailing address | City | | State | ZIP Code |
| Name | Title | Director | | *m  m    d  d    y  y* |
| | | ☐ YES | Term expiration | |
| Mailing address | City | | State | ZIP Code |

**SECTION B**  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Standard Register of Puerto Rico, Inc. | DE | | 100.000 |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
| WorkflowOne LLC | DE | 0801391317 | 100.000 |

**SECTION C**  Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*
Agent:

☐ Check box if you need forms to change the registered agent or registered office information.

| Office: | City | State | ZIP Code |
|---|---|---|---|

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

**sign here** ▶

| | Title | Date | Area code and phone number |
|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ☐ | PIR IND | ☐ |
|---|---|---|---|

7001