# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION COMPANY, *et al.*,[1] | Case No. 15-10541 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 1087 & 1286** |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF (I) APPROVAL OF
THE DISCLOSURE STATEMENT AND (II) CONFIRMATION OF THE
SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR
<u>SRC LIQUIDATION COMPANY AND ITS AFFILIATES</u>**

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ........................................................................................2

    A.     General Background .................................................................2

    B.     Solicitation of the Plan............................................................3

    C.     Ballot Tabulation ....................................................................4

    D.     Modifications to Plan..............................................................5

    E.     Plan Supplement .....................................................................6

THE DISCLOSURE STATEMENT SHOULD BE APPROVED ................6

THE PLAN SHOULD BE CONFIRMED .................................................8

    A.     The Plan Complies with Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1)...............................................................9

        1.     The Plan Designates Classes of Claims and Equity Interests and Such Classification Is Proper (Sections 1122 and 1123(a)(1))...................9

        2.     Specification of Unimpaired Classes and Treatment of Impaired Classes (Sections 1123(a)(2) and 1123(a)(3)) ...........................................11

        3.     Equal Treatment Within Classes (Section 1123(a)(4))..............................11

        4.     Means for Implementation (Section 1123(a)(5)) ......................................12

        5.     Prohibitions on Issuance of Non-Voting Securities (Section 1123(a)(6)) .................................................................................12

        6.     Selections for Certain Positions (Section 1123(a)(7)) ..............................13

        7.     Provisions Regarding Treatment of Earnings and Future Income (Section 1123(a)(8))..................................................................................14

    B.     The Permissive Provisions Contained in the Plan Are Appropriate .....................14

        1.     The Plan's Provisions Regarding Modification of the Rights of Holders of Claims (Sections 1123(b)(1) and (5)) .....................................15

        2.     The Plan's Treatment of Executory Contracts and Unexpired Leases (Section 1123(b)(2))........................................................................15

        3.     The Plan's Provisions Regarding Retention and Enforcement of Claims Held by the Debtors and Retention of Jurisdiction (Section 1123(b)(3))...................................................................................15

## TABLE OF CONTENTS
(continued)

**Page**

    4.     Modification of Creditor Rights (Section 1123(b)(5)).................................16

    5.     Additional Provisions (Section 1123(b)(6)).....................................16

C.    The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))........................................22

    1.     Compliance with Section 1125 of the Bankruptcy Code: Postpetition Disclosure and Solicitation ....................................22

    2.     Compliance with Section 1126 of the Bankruptcy Code: Acceptance of the Plan...............................................23

D.    The Plan Was Proposed in Good Faith (Section 1129(a)(3)) ...............................24

E.    Payments for Services or Costs and Expenses (Section 1129(a)(4))....................25

F.    Service of Certain Individuals (Section 1129(a)(5))...............................25

G.    Rate Changes (Section 1129(a)(6)) – Not Applicable ...........................26

H.    The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7)).......................27

I.    Acceptance of the Plan by Each Impaired Class (Section 1129(a)(8)).................28

J.    Treatment of Priority Claims (Section 1129(a)(9)) ...............................29

K.    Acceptance of at Least One Impaired Class (Section 1129(a)(10)) ....................30

L.    Feasibility (Section 1129(a)(11)).............................................30

M.    Payment of Certain Fees (Section 1129(a)(12)) ....................................31

N.    Sections 1129(a)(13) Through 1129(a)(16) are not Applicable ..........................31

O.    The Plan Satisfies the "Cram Down" Requirements with Respect to the Non-Accepting Classes...................................................32

    1.     The Plan Does Not Discriminate Unfairly Against Holders of Claims and Equity Interests in the Non-Accepting Classes....................32

    2.     The Plan is Fair and Equitable with Respect to Holders of Claims and Equity Interests in Non-Accepting Classes.........................34

P.    The Plan Satisfies the Requirements of Section 1129(c), (d), and (e) of the Bankruptcy Code ......................................................35

THE PLAN MODIFICATIONS SHOULD BE APPROVED .....................................35

01:17958502.1

# TABLE OF CONTENTS
(continued)

**Page**

WAIVER OF BANKRUPTCY RULES REGARDING NOTICE AND STAY OF
　　ORDER .......................................................................................................................37

ALL OBJECTIONS HAVE BEEN RESOLVED OR SHOULD BE OVERRULED ..................39

CONCLUSION...........................................................................................................................40

01:17958502.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Family Enters.*,
256 B.R. 377 (D.N.J. 2000) ..................................................24

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999)..................................................34

*In re Buttonwood Partners, Ltd.*,
111 B.R 57 (Bankr. S.D.N.Y. 1990) ..................................................33

*In re Celotex Corp.*,
204 B.R. 586 (Bankr. M.D. Fla. 1996) ..................................................36

*In re Century Glove, Inc.*,
1993 U.S. Dist. LEXIS 2286 (D. Del. Feb. 10, 1993) ..................................................36

*In re Century Glove, Inc.*,
1993 WL 239489 (D. Del. Feb. 10, 1993) ..................................................27

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
860 F.2d 94 (3d Cir. 1988)..................................................6

*In re Copy Crafters Quickprint, Inc.*,
92 B.R. 973 (Bankr. N.D.N.Y. 1988) ..................................................7

*In re Coram Healthcare Corp.*,
271 B.R. 228 (Bankr. D. Del. 2001) ..................................................24

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. ..................................................33

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ..................................................10

*In re Entegra Power Group LLC*,
Case No. 14-11859 (PJW) (September 19, 2014)..................................................21

*In re Exide Tech.*,
303 B.R. 48 (Bankr. D. Del. 2003) ..................................................8

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) ..................................................7

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ..................................................21

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Jersey City Med. Ctr.,*
  817 F.2d 1055 (3d Cir. 1987)............................................................................10

*In re Johns-Manville Corp.,*
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other
  grounds*, 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub nom, Kane v. Johns-
  Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ........................................................33

*In re Journal Register Co.,*
  407 B.R. 520 (Bankr. S.D.N.Y. 2009)....................................................................30

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),*
  304 F.3d 223 (2d Cir. 2002)................................................................................16

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
  848 F.3d 414 (3d Cir. 1988)..................................................................................7

*In re Owens Corning,*
  419 F.3d 195 (3d Cir. 2005)................................................................................17

*In re PPI Enters. (U.S.), Inc.,*
  228 B.R. 339 (Bankr. D. Del. 1998) ....................................................................34

*In re PWS Holding Corp.,*
  228 F.3d. 224 (3d Cir. 2000)..........................................................................20, 22

*In re Sea Launch Co., L.L.C.,*
  2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30, 2010)......................................31

*In re Stone & Webster, Inc.,*
  286 B.R. 532 (Bankr. D. Del. 2002) ....................................................................17

*In re Trans World Airlines, Inc.,*
  185 B.R. 302 (Bankr. E.D. Mo. 1995) ..................................................................36

*In re Tribune Co.,*
  464 B.R. 126 (Bankr. D. Del. 2011) ......................................................................8

*United States v. Energy Res. Co.,*
  495 U.S. 545 (1990)............................................................................................30

**Statutes**

11 U.S.C. § 1123(a)(2)............................................................................................11

01:17958502.1

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 1123(a)(3) ............................................................................................................... 11

11 U.S.C. § 1123(a)(4) ............................................................................................................... 12

11 U.S.C. § 1123(a)(5) ............................................................................................................... 12

11 U.S.C. § 1123(a)(5)(B) .......................................................................................................... 17

11 U.S.C. § 1123(b)(6) .......................................................................................................... 14, 16

11 U.S.C. § 1125(a)(1) ................................................................................................................. 6

11 U.S.C. § 1125(b) .................................................................................................................... 23

11 U.S.C. § 1127(a) .................................................................................................................... 36

11 U.S.C. § 1129(a)(1) ................................................................................................................. 9

11 U.S.C. § 1129(a)(3) ............................................................................................................... 24

11 U.S.C. § 1129(a)(4) ............................................................................................................... 25

11 U.S.C. § 1129(a)(5)(A)(i)-(ii) ............................................................................................... 25

11 U.S.C. § 1129(a)(5)(B) .......................................................................................................... 26

11 U.S.C. § 1129(a)(7)(A) .......................................................................................................... 27

11 U.S.C. § 1129(a)(10) ............................................................................................................. 30

11 U.S.C. § 1129(a)(11) ............................................................................................................. 30

11 U.S.C. § 1129(a)(12) ............................................................................................................. 31

11 U.S.C. § 1129(a)(13) ............................................................................................................. 31

11 U.S.C. § 1129(b) .................................................................................................................... 32

11 U.S.C. § 1129(b)(1) ............................................................................................................... 32

11 U.S.C. § 1129(b)(2)(B)(ii) ..................................................................................................... 34

11 U.S.C. § 1129(c) .................................................................................................................... 35

28 U.S.C. §§ 157 and 1334 ......................................................................................................... 16

01:17958502.1

vi

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

28 U.S.C. § 1930 .................................................................................................................... 31

Pub. L. No. 109-8, § 431(1), 119 Stat. 106, 109-110 (2005) .......................................... 7

**Other Authorities**

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ............................ 9

**Rules**

Fed. R. Bankr. P. 3016(c) ................................................................................................. 19

Fed. R. Bankr. P. 3019 ...................................................................................................... 36

Fed. R. Bankr. P. 3020(e) ................................................................................................. 38

Fed. R. Bankr. P. 3020(e) ................................................................................................. 38

01:17958502.1

## PRELIMINARY STATEMENT

1.      Following the sale of substantially all of the Debtors' assets to Taylor

Corporation, the Debtors worked diligently and expeditiously to file a chapter 11 plan that

provided for the quick and orderly liquidation of the Debtors' remaining assets.

2.      The proposed Plan[2] generally provides for (i) the substantive consolidation of the

Debtors; (ii) the liquidation of the Debtors' remaining assets; (iii) satisfaction of all Allowed

Administrative Expense Claims, Priority Claims, Other Secured Claims, and other Unclassified

Claims; (iv) a Distribution to the Holders of the Second Lien Claims; (v) Cash Distributions to

Holders of Allowed General Unsecured Claims; (vi) exculpations, releases, and injunctions; and

(vii) the wind-down and dissolution of the Debtors.  The Plan represents the culmination of the

tremendous cooperative good faith efforts of the Debtors, the Committee, Silver Point, Taylor,

and others.

3.      Nine limited objections were filed to the Plan, and the Debtors have worked

diligently to resolve objections where possible.  The remaining objections are addressed

separately in the Reply filed concurrently herewith.  The unresolved objections do not render the

Plan unconfirmable and should be overruled for the reasons set forth in the Reply.

4.      Of the Holders of Claims eligible to vote on the Plan, an overwhelming majority

voted to accept the Plan.  All Holders of Claims in Class III (Second Lien Claim) voted to accept

the Plan.  More than 90% of Holders of Claims in Class IV (General Unsecured Claims) voted to

---

[2] References to the "Plan" are references to the *Debtors' Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No. 1286], as the same may be amended, modified, and/or supplemented prior to the Confirmation Hearing.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and the *Disclosure Statement for First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No. 1087].

01:17958502.1

accept the plan; however, the PBGC voted to reject the Plan, and its Claim was sufficiently large enough to cause the Class to reject the Plan.  Nevertheless, as explained in detail below, the Plan still satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

5.       Accordingly, the Debtors, with the support of the Committee and Silver Point, submit that the Plan should be confirmed.

## BACKGROUND

A.       **General Background**

6.       On March 12, 2015, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

7.       On March 24, 2015, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

8.       Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in *Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2].

9.       On July 31, 2015, the Debtors consummated the sale of substantially all of their Assets (the "Sale") to Taylor Corporation ("Taylor").  *See* Docket No. 889.  In connection with

01:17958502.1

2

the Sale, the Debtors, the Committee, and Silver Point Finance, LLC ("Silver Point") entered

into a settlement agreement [Docket No. 696] (the "Committee Settlement"), which was

approved by the Court as part of the Sale Order.  The Committee Settlement provided for certain

payments and releases and provided a framework for the Plan.

10.     The Debtors respectfully refer the Court to (a) the Plan; (b) the Disclosure

Statement; (c) the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation*

*of Votes and Tabulation of Ballots Cast on the First Amended Chapter 11 Plan of Liquidation*

*for SRC Liquidation Company and its Affiliates* [Docket No. 1271] (the "Voting Declaration");

(d) the *Declaration of Landen C. Williams in Support of Confirmation of the Debtors' Second*

*Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates*

[Docket No. 1289] (the "Williams Declaration"), filed contemporaneously herewith; (e) the

*Omnibus Reply in Support of the Second Amended Chapter 11 Plan of Liquidation for SRC*

*Liquidation Company and its Affiliates* [Docket No. 1290] (the "Reply"), filed

contemporaneously herewith; and (f) the entire record of the Chapter 11 Cases for an overview

of the Debtors and all other relevant facts that may bear on confirmation of the Plan.

**B.     Solicitation of the Plan**

11.     On August 31, 2015, the Debtors filed a motion to approve their solicitation

procedures [Docket No. 992] (the "Solicitation Motion").  By an order entered September 21,

2015 [Docket No. 1073] (the "Solicitation Order"), the Court preliminarily approved the

Disclosure Statement and authorized the Debtors to solicit acceptances of the *First Amended*

*Chapter 11 Plan Of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No.

1086] (the "First Amended Plan").

01:17958502.1

3

12.    As required by the Solicitation Order, the Debtors, through their noticing and claims agent, Prime Clerk LLC ("Prime Clerk"), timely mailed to Holders of Claims entitled to vote on the Plan, Solicitation Packages (the "Solicitation Packages") each containing (a) a cover letter describing the contents of the Solicitation Package; (b) notice of a combined hearing on confirmation of the First Amended Plan and approval of the Disclosure Statement (the "Combined Hearing Notice"); (c) the Disclosure Statement together with the exhibits thereto, including the First Amended Plan (either by paper copy or in "pdf" format on a CD-ROM); (d) a statement in support of the Plan issued by the Committee; and (e) an appropriate Ballot, instructions regarding how to complete the Ballot, and a Ballot return envelope.  *See* Docket Nos. 1140 & 1191.  In addition, the Combined Hearing Notice was published in the national edition of *USA Today* on September 29, 2015.  *See* Docket No. 1125.

13.    Pursuant to the Solicitation Order, Ballots were required to be submitted to Prime Clerk no later than 5:00 p.m. (Eastern Time) on November 2, 2015 (as may be extended, the "Voting Deadline").

**C.    Ballot Tabulation**

14.    The two Classes that were entitled to vote are Class III (Second Lien Secured Claim) and Class IV (General Unsecured Claims).  Class III accepted the Plan, and an overwhelming majority of Holders in Class IV voted to accept the Plan; however, the total amount of Claims in Class IV did not accept the Plan.  As reflected in the Voting Declaration, the voting results are as follows:

| Class | Class Description | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting | Class Voting Result |
|-------|------------------|------------------|------------------|------------------|------------------|---------------------|
| | | % | % | % | % | |
| III | Second Lien Secured Claim | 5 | 0 | $10,000,000.00 | $0.00 | ACCEPTS |
| | | 100% | 0.00% | 100% | 0.00% | |
| IV | General Unsecured Claims | 732 | 57 | $110,268,387.11 | $377,174,962.82 | REJECTS |
| | | 92.78% | 7.22% | 22.62% | 77.38% | |

**D.     Modifications to Plan**

15.     On November 11, 2015, the Debtors filed a copy of the Plan along with the *Notice of Filing of Blacklined Version of Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates* [Docket No. 1287], which includes a blackline against the First Amended Plan showing certain modifications contained in the Plan (collectively, the "Plan Modifications").  The Plan Modifications are comprised of clarifications made by the Debtors in their continuing review of the Plan or revisions made in response to informal and formal objections or requests for clarification from parties in interest.  For example, the Debtors clarified the treatment of Unclassified Claims and Priority Claims, added language to ensure the insurance neutrality of the Plan, clarified certain corporate governance matters, clarified the rights of various Creditors with respect to the vesting of Assets in the GUC Trust and the Secured Creditor Trust, reduced the Claims Objection Deadline to 180 days following the Effective Date, clarified the treatment of the Wind-Down Amount in light of the Wind-Down Settlement, and clarified certain rights of the PBGC.

16.     As described further below, the Plan Modifications do not cause the Plan to fail to meet the requirements of section 1122 or 1123 of the Bankruptcy Code and do not require resolicitation of the Plan.

01:17958502.1

**E.**      **Plan Supplement**

17.      Prior to the Confirmation Hearing, the Debtors will file certain Plan-related

documents (the "Plan Supplement"), which will include a draft final decree for the closure of all

Chapter 11 Cases except for *SRC Liquidation Company*, Case No. 15-10541 (BLS) and an

Implementation Memorandum.

## THE DISCLOSURE STATEMENT SHOULD BE APPROVED

18.      The Debtors request that the Court approve the Disclosure Statement as providing

"adequate information" in accordance with section 1125 of the Bankruptcy Code.  For the

reasons described below, the Debtors submit that such approval is warranted and appropriate.

19.      Section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as
> far as is reasonably practicable in light of the nature and history of the debtor and
> the condition of the debtor's books and records, including a discussion of the
> potential material Federal tax consequences of the plan to the debtor, any
> successor to the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical investor of
> the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

20.      A disclosure statement should provide all material information that creditors and

interest holders affected by a proposed plan need to make an informed decision on whether to

vote to accept or reject a plan.  *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d

94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to

the creditor asked for its vote.").  Congress intended that such informed judgments would be

needed to both negotiate the terms of, and vote on, a plan of reorganization.  *Id.*  Essentially, a

disclosure statement "must clearly and succinctly inform the average unsecured creditor what it

is going to get, when it is going to get it, and what contingencies there are to getting its

distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

21.     Section 1125 grants a bankruptcy court broad discretion to determine whether a

disclosure statement provides adequate information. *See Oneida Motor Freight, Inc. v. United*

*Jersey Bank*, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of section 1125 we

discern that adequate information will be determined by the facts and circumstances of each

case."). Accordingly, the determination of whether a disclosure statement contains adequate

information is made on a case-by-case basis. *See In re Copy Crafters Quickprint, Inc.*, 92 B.R.

973, 979 (Bankr. N.D.N.Y. 1988). Furthermore, Congress amended section 1125(a)(1) in 2005

to provide that, when a court evaluates the adequacy of the information provided in a disclosure

statement, the court should consider "the cost of providing additional information" to creditors.

Pub. L. No. 109-8, § 431(1), 119 Stat. 106, 109-110 (2005).

22.     Here, the Disclosure Statement provided Creditors with sufficient information to

make an informed decision whether to vote to accept or reject the Plan. For example, the

following information is included in the Disclosure Statement:

> (i)      Overview of the Disclosure Statement:  Article 1 of the Disclosure
> Statement contains an explanation of the purpose of the Disclosure
> Statement and a discussion of voting on the Plan;
>
> (ii)     Description of the Debtors:  Article 2 of the Disclosure Statement includes
> a discussion of the Debtors' corporate history, an overview of their
> business operations and capital structure, and certain events leading to the
> commencement of the Chapter 11 Cases;
>
> (iii)    Events During the Reorganization Cases:  Articles 2 and 3 of the
> Disclosure Statement discuss certain key events that have taken place
> during the course of the Chapter 11 Cases, including the sale of
> substantially all of the Debtors' assets to Taylor and the Committee
> Settlement;

(iv)    <u>Summary of the Plan</u>:  Article 4 of the Disclosure Statement contains a detailed summary of (a) the classification and treatment of Claims and Equity Interests under the Plan and (b) the implementation of the Plan;

(v)    <u>Feasibility</u>:  Article 5 of the Disclosure Statement contains a discussion of the feasibility of the Plan;

(vi)    <u>Liquidation Analysis</u>:  Article 6 of the Disclosure Statement includes a liquidation analysis setting forth the estimated return that Creditors would receive under chapter 7;

(vii)    <u>Summary of Injunction, Release, and Exculpation Provisions</u>:  In accordance with Bankruptcy Rule 3016(c), Article 7 of the Disclosure Statement describes in specific and conspicuous language certain releases and related injunctions that are essential components of the Plan;

(viii)    <u>Risk Factors</u>:  Article 8 of the Disclosure Statement discusses certain risk factors that may affect the Plan; and

(ix)    <u>Tax Consequences of the Plan</u>:  Article 9 of the Disclosure Statement discusses certain U.S. federal income tax law consequences of the Plan.

23.    Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and should be approved.

## THE PLAN SHOULD BE CONFIRMED

24.    As proponents of the Plan, the Debtors bear the burden of establishing that all elements necessary for confirmation of the Plan under section 1129(a) of the Bankruptcy Code have been met by a preponderance of the evidence.  *See In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del. 2011) (explaining that the plan proponent bears the burden of establishing the plan's compliance with section 1129(a) of the Bankruptcy Code) (citing *In re Exide Tech.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003)).

25.    Through this Memorandum of Law, the record of these Chapter 11 Cases, the Williams Declaration submitted in support of confirmation of the Plan, and any evidence that

may be presented at the Confirmation Hearing, the Debtors will demonstrate, by a preponderance of the evidence, that the Plan complies with the requirements of section 1129(a) of the Bankruptcy Code.  Accordingly, the Plan should be confirmed.

A.    **The Plan Complies with Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1)**

26.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the "applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).  In determining whether the Plan complies with section 1129(a)(1), the Court must consider section 1123(a) of the Bankruptcy Code, which sets forth certain elements that a plan must contain, and section 1122 of the Bankruptcy Code, which governs the classification of claims.  *See* H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368.

1.    **The Plan Designates Classes of Claims and Equity Interests and Such Classification Is Proper (Sections 1122 and 1123(a)(1))**

27.    Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims (with the exception of certain administrative and priority claims) and all interests, and that such classification comply with section 1122 of the Bankruptcy Code.  With the exception of Administrative Expense Claims and Professional Fee Claims, which are not required to be classified, Article 1 of the Plan designates Classes of Claims and Equity Interests, which includes the following:

- Class I (Other Secured Claims) includes any Secured Claim that is not a Second Lien Secured Claim;

- Class II (Priority Claims) includes all Claims, other than an Administrative Expense Claim, entitled to priority in right of payment under section 502(i) or 507(a) of the Bankruptcy Code;

01:17958502.1

9

- <u>Class III (Second Lien Secured  Claim)</u> includes any Claim derived from, based upon, relating to, or arising from the Second Lien Term Loan Facility, other than a Second Lien Deficiency Claim;

- <u>Class IV (General Unsecured Claims)</u> includes any Claim that is not an Administrative Expense Claim, a Priority Claim, an Other Secured Claim, a Second Lien Secured Claim, an Intercompany Claim, a Subordinated Claim, or an Equity Interest, including any Second Lien Deficiency Claim and any portion of an Other Secured Claim that exceeds the value of the collateral securing such Other Secured Claim unless an election has been made under section 1111(b) of the Bankruptcy Code;[3]

- <u>Class V (Subordinated Claims)</u> provides for the separate classification of Penalty Claim, Securities Law Claim, or other Claim that is subordinated to General Unsecured Claims pursuant to section 510 of the Bankruptcy Code or Final Order of the Bankruptcy Court;

- <u>Class VI (Equity Interests)</u> provides for the separate classification of Equity Interests.

*See* Plan, Art 1.

28.     "A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within a particular class are substantially similar."  *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).  Courts also are afforded broad discretion in approving a plan proponent's classification structure and should consider the specific facts of each case when making such a determination.  *See, e.g.*, *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (observing that "Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case").

---

3   None of the Debtors' Secured Creditors have made an election under section 1111(b) of the Bankruptcy Code. In connection with the Committee Settlement, the Silver Point Entities agreed that their unsecured deficiency Claim will be allowed for voting purposes but that such Holders will waive their right to a Distribution on account of such deficiency Claim.

29.     Here, the Plan's classification structure meets these standards.  The Plan provides for the separation of Claims and Equity Interests into six Classes based upon differences in the legal nature and/or priority of Claims and Equity Interests.  Each Class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Hence, the Plan's classification structure is factually and legally reasonable and is necessary to implement the Plan.  Accordingly, the Debtors submit that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

**2.      Specification of Unimpaired Classes and Treatment of Impaired Classes (Sections 1123(a)(2) and 1123(a)(3))**

30.     Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2).  Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3).  The Classes, which include all Claims and Equity Interests that are required to be classified, are summarized in Article 1 of the Plan along with an indication of whether such Classes are Impaired or Unimpaired.  Article 1 also sets for the applicable treatment for each Class under the Plan in a manner consistent with the provisions of the Bankruptcy Code.  Thus, the Plan satisfies the requirements of sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

**3.      Equal Treatment Within Classes (Section 1123(a)(4))**

31.     Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).  Article 1 of the Plan satisfies this requirement in that all Holders of Claims

and Equity Interests within a particular Class are receiving identical treatment under the Plan,

unless any such Holder has agreed to accept less favorable treatment.

### 4.      Means for Implementation (Section 1123(a)(5))

32.      Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate

means for the plan's implementation."  11 U.S.C. § 1123(a)(5).  The Plan provides adequate

means for implementation of the Plan through, among other things, (i) the substantive

consolidation of the Debtors; (ii) the establishment of the GUC Trust and the Secured Creditor

Trust and the appointment of the respective Trustees; (iii) the provisions governing Distributions

under the Plan; (iv) the dissolution or wind-down of certain of the Debtors in accordance with

applicable law and consistent with the implementation of the Plan; and (v) the procedures

governing the allowance of Claims under the Plan.  *See* Plan, Arts. 2, 3, and 4.  Additionally, as

explained in the Williams Declaration, the Debtors will have sufficient cash to make all

payments required pursuant to the Plan.

33.      Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the

Bankruptcy Code.

### 5.      Prohibitions on Issuance of Non-Voting Securities (Section 1123(a)(6))

34.      Section 1123(a)(6) of the Bankruptcy Code requires that a chapter 11 plan provide

for the inclusion in the charter of (i) the debtor, (ii) certain entities to which property of the estate

is transferred, and/or (iii) certain entities with which the debtor is merged or consolidated, a

provision prohibiting the issuance of non-voting equity securities and providing an appropriate

distribution of voting power among voting classes of equity securities.  Pursuant to Section 2.3.3

of the Plan, SRC Liquidation Company will be converted from an Ohio corporation into an Ohio

limited liability company, and all of the existing Equity Interests in the Debtors (including all

instruments evidencing such Equity Interests) shall be automatically deemed cancelled[4] and

extinguished without the requirement of any further action under any applicable agreement, law,

regulation, or rule.  Liquidating SRC, in turn, will issue all of the Liquidating SRC Membership

Interests, all of which shall be voting, to the GUC Trust.  The Plan also provides that the

applicable governing documents of the Liquidating Debtors will be amended, if necessary, to

prohibit the issuance of non-voting equity securities.  As such, the Plan does not provide for the

issuance of non-voting equity securities, and therefore satisfies section 1123(a)(6) of the

Bankruptcy Code.

   **6.      Selections for Certain Positions (Section 1123(a)(7))**

   35.      Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only

provisions that are consistent with the interests of creditors and equity security holders and with

public policy with respect to the manner of selection of any officer, director, or trustee under the

plan and any successor to such officer, director, or trustee."

   36.      Section 2.3.2 of the Plan provides that from and after the Effective Date, the GUC

Trust Oversight Committee will have the authority to select, appoint, remove, replace, and

establish the compensation (if any) of the manager(s), officer(s) and director(s) of the

Liquidating Debtors, other than the Mexico Debtors.  The GUC Trust Oversight Committee will

be initially comprised of all members of the Committee, and it has selected Jane W. Mitnick as

the post-Effective Date director of the Liquidating Debtors, other than the Mexico Debtors.  *See*

---

4    Equity Interests in any subsidiary of SRC Liquidation Company which is wholly owned, directly or indirectly,
     by SRC Liquidation Company will be preserved solely for the benefit of the Holders of Allowed Claims as
     provided in the Plan.

01:17958502.1

13

Docket Nos. 888 & 1223.  EisnerAmper LLP has been appointed as the GUC Trustee.  *See*

Docket No. 888.  Wilmington Trust Company has been appointed as the Secured Creditor

Trustee.  None of the GUC Trustee, Secured Creditor Trustee, and the members of the GUC

Trust Oversight Committee are insiders, as that term is defined in section 101(31) of the

Bankruptcy Code.   Pursuant to Section 2.3.1 of the Plan, the managers, officers, directors, and

other similar agents of the Mexico Debtors shall retain their positions on and after the Effective

Date, unless removed and/or replaced in accordance with the constituent documents and law

applicable to such Mexico Debtors.  The initial officers of the Mexico Debtors will be Gerard D.

Sowar as sole administrator and Javier Lizardi as secretary.

37.     Accordingly, the Plan's provisions related to the selection of directors, officers or

trustees are consistent with the interests of Holders of Claims and Equity Interests and with

public policy.

**7.     Provisions Regarding Treatment of Earnings and Future Income (Section 1123(a)(8))**

38.     Section 1123(a)(8) applies to cases where the Debtor is an individual and,

accordingly, is inapplicable to the Debtors and the Plan.

**B.     The Permissive Provisions Contained in the Plan Are Appropriate**

39.     Section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any

other appropriate provision not inconsistent with the applicable provisions of this title."

11 U.S.C. § 1123(b)(6).  The Plan contains a number of these provisions, each of which is

consistent with the applicable provisions of the Bankruptcy Code.

01:17958502.1

14

1. **The Plan's Provisions Regarding Modification of the Rights of Holders of Claims (Sections 1123(b)(1) and (5))**

40.     Consistent with sections 1123(b)(1) and (b)(5) of the Bankruptcy Code, Articles 1 and 3 of the Plan modify or leave unaffected, as the case may be, the rights of Holders of Claims and Equity Interests within each Class.

2. **The Plan's Treatment of Executory Contracts and Unexpired Leases (Section 1123(b)(2))**

41.     Consistent with section 1123(b)(2) of the Bankruptcy Code, Article 5 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases of the Debtors that have not been assumed and assigned, or rejected, prior to the Confirmation Date, except for certain Executory Contracts and/or Unexpired Leases specifically referenced in in the Plan. Such treatment of Executory Contracts and Unexpired Leases is typical in chapter 11 cases and is appropriate.

3. **The Plan's Provisions Regarding Retention and Enforcement of Claims Held by the Debtors and Retention of Jurisdiction (Section 1123(b)(3))**

42.     Consistent with section 1123(b)(3) of the Bankruptcy Code, Section 3.2.2 of the Plan provide for the preservation of all Causes of Action other than Causes of Action transferred to Taylor pursuant to the Asset Purchase Agreement or expressly released or waived pursuant to the Plan.  In addition, pursuant to Article 8 of the Plan, the Court will generally retain jurisdiction as to all matters involving the Plan, including, among other things, allowance of Claims, determination of tax liability under section 505 of the Bankruptcy Code, resolution of Plan-related controversies, and approval of matters related to the assumption or rejection of Executory Contracts or Unexpired Leases.

01:17958502.1

43.     Significantly, the above matters are matters that the Court would otherwise have jurisdiction over during the pendency of the Chapter 11 Cases.  *See* 28 U.S.C. §§ 157 and 1334. This retention of jurisdiction by the Court post-confirmation is permitted by the Bankruptcy Code.  *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.").  Therefore, the Court's retention of jurisdiction is appropriate.

### 4.     Modification of Creditor Rights (Section 1123(b)(5))

44.     Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  As set forth in Articles 1 and 3 of the Plan, the Plan Impairs Class III (Second Lien Secured Claim) and provides treatment in a manner consistent with section 1123(b)(5).

### 5.     Additional Provisions (Section 1123(b)(6))

#### a.     Substantive Consolidation

45.     Section 2.2 of the Plan provides for the substantive consolidation of the Debtors and their respective estates for all purposes, including voting, confirmation, and distributions. The Debtors believe that such substantive consolidation is fair, appropriate and necessary and should be approved.

46.     "Substantive consolidation . . . emanates from equity [and] treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and

liabilities." *In re Owens Corning,* 419 F.3d 195, 205 (3d Cir. 2005) (citations omitted).

Although the power to substantively consolidate bankruptcy estates is not explicitly authorized

by any provision of the Bankruptcy Code, it is well established that bankruptcy courts may use

their equitable powers under section 105 of the Bankruptcy Code to consolidate cases involving

related debtors.  *See In re Stone & Webster, Inc.*, 286 B.R. 532, 539 (Bankr. D. Del. 2002).

Moreover, section 1123(a)(5)(C) of the Bankruptcy Code expressly contemplates plan provisions

that provide for a merger or consolidation of the debtor with one or more persons as a means for

the implementation of the Chapter 11 plan.  *See* 11 U.S.C. § 1123(a)(5)(B); *In re Stone &*

*Webster*, 286 B.R. at 542 ("[S]ubstantive consolidation such as that proposed by the Plan is, by

reason of § 1123(a)(5)(C), clearly an allowable provision in a Chapter 11 plan.").

47.     Under the circumstances of these Chapter 11 Cases, substantive consolidation is

appropriate.  The Debtors are separate legal entities and, while management of the Debtors'

operations was coordinated and shared certain aspects of their cash management system, the

various Debtors generally observed corporate formalities.  Nonetheless, the Debtors submit that

substantive consolidation is appropriate here because observing the separate legal status of the

individual Debtors could (a) add significant expenses to the estates and (b) result in inequitable

treatment of Creditors.  Moreover, no Creditor has objected to the substantive consolidation

provided under the Plan.  Accordingly, substantive consolidation is consistent with section

1123(b)(6) of the Bankruptcy Code and should be approved.

### b.      The Disgorgement Provision

48.    Section 1.6 of the Plan (the "<u>Disgorgement Provision</u>") provides that if any

Holder of a Class IV Claim initiates a lawsuit in its individual capacity against any Released

Party (which includes, among others, the Silver Point Entities and affiliates), such Holder

(a) must pay an amount equal to any Distributions it has received from the GUC Cash Payment

to the Second Lien Agent and (b) will be deemed to have automatically waived its right to any

further Distributions under the Plan or from the GUC Trust.

49.    The Disgorgement Provision is appropriate because Distributions to General

Unsecured Creditors in the amounts contemplated by the Plan were only made possible as a

result of the Committee Settlement, which included a $5 million payment from the Silver Point

Entities in exchange for a complete release of claims against the Silver Point Entities.  The

agreement of the Silver Point Entities to enter into the Committee Settlement was predicated on

the inclusion of the Disgorgement Provision in the Plan as a way to effectuate the release

contained in the Committee Settlement.  Hence, the Disgorgement Provision is appropriate and

should be approved.

### c.    The Release, Exculpation, and Injunctive Provisions

50.    The Plan's release, exculpation, and injunctive provisions are necessary and

appropriate for the implementation of the Plan and are otherwise consistent with the Bankruptcy

Code and Third Circuit precedent.  Accordingly, the release, exculpation, and injunctive

provisions should be approved.

### (1)    Injunction

51.    Section 1.8 of the Plan states that all injunctions or stays provided for in the

Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the applicable

Chapter 11 Cases are closed."  Plan § 1.8.  Additionally, Section 7.2 of the Plan includes an

01:17958502.1

injunction that bars the "commencement or continuation of any act or action to collect, recover, or offset from the Estates . . . any Claim or Equity Interest treated in the Plan or any actions to interfere with the implementation and consummation of the Plan . . . ."  Plan § 7.2.

52.     The injunctions included in the Plan are necessary and appropriate to prevent Holders of Claims against and Equity Interests in the Debtors from dissipating the value of the Assets and to protect the Debtors and the Trusts from the costs, Professional fees, and time delay associated with any potential litigation from prepetition Creditors and equity holders after the Effective Date.  Any such litigation would hinder the efforts of the Debtors and the Trusts to fulfill their responsibilities under the Plan and undermine their efforts to maximize value for Holders of Allowed General Unsecured Claims.  The injunction provisions are narrowly tailored to achieve that critical objective.

53.     Further, Sections 1.8 and 7.2 of the Plan comply with the requirements of Bankruptcy Rule 3016(c), which provides that a plan must "describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).  The injunction provision is clearly identified in the Plan, is displayed in bold font, and specifically identifies all acts to be enjoined and all entities that would be subject to the injunction.  For the foregoing reasons, the Debtors submit that the injunction provisions set forth in Section Sections 1.8 and 7.2 of the Plan should be approved.

### (2)     Exculpation

54.     Section 7.3 of the Plan contains an exculpation provision (the "Exculpation Provision") that was an integral component of the complex negotiations and compromises

01:17958502.1

19

underlying the Committee Settlement and the Plan.  This provision is fair and equitable,

supported by consideration, in the best interests of the Debtors and all parties in interest, and

necessary to the realization of the value provided by the Plan for Creditors.  Specifically, Section

7.3 of the Plan contains an Exculpation Provision that limits the liability of the Debtors'

Professionals, the Committee, and certain related parties with respect to acts and omissions to be

taken in connection with or arising out of the Chapter 11 Cases.[5]  The Exculpation Provision has

no effect on liability that is determined to have constituted willful misconduct, fraud, or gross

negligence.

55.    The Debtors believe that all of the parties to be exculpated under the Plan made a

significant contribution to the success of these Chapter 11 Cases by foregoing certain rights and

claims or by expending significant time and effort negotiating, designing, implementing, and

facilitating the Plan.  Moreover, the Debtors do not believe that the Debtors or the Estates are

forfeiting any valuable claims or Causes of Action against the parties to be exculpated.

56.    Moreover, the Debtors submit that the Exculpation Provision is consistent with

the applicable provisions of the Bankruptcy Code and is authorized under section 105(a) of the

Bankruptcy Code, the equitable powers of this Court, and the applicable case law in this Circuit.

*See In re PWS Holding Corp.*, 228 F.3d. 224, 246-47 (3d Cir. 2000) (approving a plan with an

exculpation provision that protected the debtors, creditor representative and the committee as

well as their professionals and agents from "any liability to any holder of a Claim or Equity

Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11

---

[5]    Silver Point was originally included in the list of "Exculpated Parties" but agreed to be removed following an objection by the United States Trustee.

01:17958502.1

Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the

Administration of the Plan or the property to be distributed under the Plan, except for willful

misconduct or gross negligence"); *see also In re Entegra Power Group LLC*, Case No. 14-11859

(PJW) [Docket No. 138] (September 19, 2014).  Accordingly, the Exculpation Provision is

appropriate and should be approved.

### (3) Consensual Third-Party Releases

57.    Section 7.4 of the Plan is a consensual third-party release of the Released Parties

(the "Third Party Release") that is given only by (i) Holders of Claims who are presumed to

accept the Plan under section 1126(f) of the Bankruptcy Code and (ii) Holders of Claims who are

entitled to vote on the Plan and either (x) voted in accept the Plan or (y) voted to reject the Plan,

or abstained from voting on the Plan, and did not make a proper and timely Third Party Opt-Out

Election.

58.    "Courts in this jurisdiction have consistently held that a plan may provide for a

release of third party claims against a nondebtor upon consent of the party affected."  *In re

Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013).  Courts in this jurisdiction

have also determined that third-party releases similar to the Debtors' Third Party Release are

consensual.  *See id.* at 304-05 (determining release is consensual when applied to creditors "who

(i) affirmatively vote to accept or reject the Plan and do not opt out of granting the releases,

(ii) are unimpaired pursuant to the Plan and therefore deemed to accept the Plan pursuant to

section 1126(f) of the Bankruptcy Code, or (iii) abstain from voting on the Plan and who do not

otherwise submit a Ballot indicating their desire to opt out of the releases.").

01:17958502.1

59.     Moreover, the Plan, the Disclosure Statement, and each Ballot clearly identified in bold typeface (and in many cases, capital letters) the procedure for opting out of the Third Party Release and notified Holders of Claims that if they did not opt out of the release provisions contained in Section 7.4 of the Plan, they would be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all claims and causes of action against the Released Parties.  Accordingly, the Third Party Release is appropriate under applicable case law and should be approved.

### (4)     The Debtor Release

60.     Section 7.5 of the Plan incorporates releases that were already given by the Debtors and the Committee in the Committee Settlement, which was previously approved by the Court.  Accordingly, this provision is appropriate and should be approved.

## C.     The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))

61.     Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply with the applicable provisions of title 11.  Courts have interpreted the 1129(a)(2) requirement to include satisfaction of the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.  *See In re PWS Holding Corp.*, 228 F.3d 224, 224 (3d Cir. 2000).

### 1.     Compliance with Section 1125 of the Bankruptcy Code: Postpetition Disclosure and Solicitation

62.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written

01:17958502.1

22

disclosure statement approved . . . by the court as containing adequate information."  11 U.S.C. § 1125(b).

63.    Here, the Debtors have complied with the applicable provisions of section 1125 of the Bankruptcy Code.  The Court entered the Solicitation Order on September 21, 2015, which preliminarily approved the Disclosure Statement for solicitation and approved the Solicitation Package.  The Solicitation Packages were distributed to parties in accordance with the Solicitation Order.  *See* Voting Declaration ¶ 4; Docket Nos. 1140 & 1191.  In addition, the Combined Hearing Notice was published in the national edition of *USA Today* on September 29, 2015.  *See* Docket No. 1125.  Furthermore, the Debtors have complied with all orders of the Court entered during the pendency of these Chapter 11 Cases and with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules with respect to disclosure and solicitation of votes on the Plan.

**2.    Compliance with Section 1126 of the Bankruptcy Code: Acceptance of the Plan**

64.    Under section 1126 of the Bankruptcy Code, only holders of claims and interests in impaired classes that will receive or retain property under a plan may vote to accept or reject such plan.  In accordance with section 1126 of the Bankruptcy Code, the Debtors only solicited acceptances or rejections from the Classes III and IV, which were the only Classes eligible to vote (the "Voting Classes").  The Voting Classes are Impaired but will receive Distributions under the Plan.  The results of voting on the Plan are set forth in the Voting Declaration.

65.    The Claims in Classes I and II are Unimpaired under the Plan, and, as a result, the Holders of such Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

01:17958502.1

66.     In contrast, the Claims and Equity Interests in Classes V and VI are Impaired but will not receive or retain any Distribution or property under the Plan.  Holders of such Claims and Equity Interests are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and their votes were not solicited.

67.     Accordingly, the Debtors have fully complied with all the provisions of title 11 and, in particular, with the provisions of sections 1125 and 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules.  Consequently, the Debtors have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

**D.      The Plan Was Proposed in Good Faith (Section 1129(a)(3))**

68.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Good faith is generally interpreted to mean that there exists a reasonable likelihood that a plan will achieve a result consistent with the "objectives and purposes of the Bankruptcy Code." *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted).  "In evaluating the totality of circumstances surrounding a plan a court has 'considerable discretion in finding good faith, with the most important feature being an inquiry into the fundamental fairness of the plan.'" *Id.* at 234 (quoting *In re Am. Family Enters.*, 256 B.R. 377, 401 (D.N.J. 2000)).

69.     The Plan has been proposed by the Debtors in good faith, with legitimate and honest purposes of allowing Creditors to realize the highest possible recoveries under the circumstances of these Chapter 11 Cases.  The Plan is the culmination of significant arm's-length, good faith negotiations among the Debtors, the Committee, the Silver Point Entities, Taylor, and others.  The Debtors submit that the Plan is fundamentally fair to all stakeholders

01:17958502.1

24

and has been proposed with the legitimate purpose of liquidating and winding down the affairs of the Debtors and expeditiously distributing value to Creditors.  Accordingly, the Plan has been filed in good faith and satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

## E.    Payments for Services or Costs and Expenses (Section 1129(a)(4))

70.    Section 1129(a)(4) of the Bankruptcy Code requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," either be approved by the court as reasonable or subject to approval of the court as reasonable.  11 U.S.C. § 1129(a)(4).  To date, all such payments have been made pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 260] and other orders of the Court or are subject to the approval of the Court pursuant to Section 2.2 of the Plan.  Article 9 the Plan provides a procedure for Court review of Professional Fee Claims.  These procedures for the Court's review and ultimate determination of the fees, costs, and expenses to be paid by the Debtors satisfy the requirements of section 1129(a)(4) of the Bankruptcy Code.

## F.    Service of Certain Individuals (Section 1129(a)(5))

71.    Section 1129(a)(5)(A) requires the proponent of any plan to disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(i)-(ii).  Additionally, section 1129(a)(5)(B) requires the proponent of a plan to disclose the "identity

of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B).

72.    The Debtors have fully satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  The GUC Trust Oversight Committee selected Jane W. Mitnick as the post-Effective Date director of the Liquidating Debtors, other than the Mexico Debtors, as set forth in the October 26, 2015 filing [Docket No. 1223].  Pursuant to the Plan, The managers, officers, directors, and other similar agents of the Mexico Debtors shall retain their positions on and after the Effective Date, unless removed and/or replaced in accordance with the constituent documents and law applicable to such Mexico Debtors.  The initial officers of the Mexico Debtors shall be Gerard D. Sowar as sole administrator and Javier Lizardi as secretary, and the compensation arrangement is set forth in the Williams Declaration.  EisnerAmper LLP has been appointed as the GUC Trustee.  *See* Docket No. 888.  Wilmington Trust Company has been appointed as the Secured Creditor Trustee.  The proposed Trustees and the officers of the Mexico Debtors and the other Liquidating Debtors are consistent with the interests of Holders of Claims and Equity Interests and with public policy.  As a result, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**G.    Rate Changes (Section 1129(a)(6)) – Not Applicable**

73.    Section 1129(a)(6) of the Bankruptcy Code requires any governmental regulatory commission having jurisdiction over the rates charged by the post-confirmation debtor in the operation of its business to approve any rate change provided for in the plan.  The Debtors do not have rates subject to the jurisdiction of any governmental regulatory commission.

01:17958502.1

**H.      The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))**

74.     Section 1129(a)(7) of the Bankruptcy Code requires that holders of impaired

claims or interests which do not vote to accept the chapter 11 plan at issue "receive or retain

under the plan on account of such claim or interest property of a value, as of the effective date of

the plan, that is not less than the amount that such holder would so receive or retain if the debtor

were liquidated under chapter 7 of [the Bankruptcy Code] on such date." 11 U.S.C.

§ 1129(a)(7)(A); *see also In re Century Glove, Inc.*, 1993 WL 239489, at*7 (D. Del. Feb. 10,

1993).

75.     The best interests test is satisfied as to each Holder of an Impaired Claim or

Equity Interest, and no party in interest has argued otherwise.  The Debtors' updated liquidation

analysis (the "Updated Liquidation Analysis"), which is attached to the Williams Declaration,

demonstrates that Holders of Claims and Equity Interests would not receive more value in a

hypothetical chapter 7 liquidation than they will under the Plan.

76.     The Plan provides for the orderly liquidation of the Debtors' remaining Assets

and for the Distribution of the proceeds in accordance with the priority scheme established by the

Bankruptcy Code and applicable law.  The Updated Liquidation Analysis demonstrates that

Administrative Expense Claims and Priority Claims will be paid in full, with a surplus available

to pay the Holders of General Unsecured Claims of between approximately $1.3 million and $3.5

million.  In addition to this surplus, Holders of Allowed General Unsecured Claims will receive,

through their interest in the GUC Trust, their Pro Rata Share of (a) the $5 million GUC Cash

Payment, plus (b) the net value of any recoveries from the Avoidance Actions and the GUC

Trust Adversary Proceeding.  The Updated Liquidation Analysis reflects that there is no

01:17958502.1

27

reasonable scenario in which total Distributions available to pay General Unsecured Claims will exceed the anticipated Allowed amount of General Unsecured Claims, which are projected to be approximately $550-650 million.

77.    The present value of the distributions to Holders of Claims would be less in a hypothetical chapter 7 liquidation than the present value of distributions under the Plan for two primary reasons:  (i) the increased costs and expenses of a liquidation under chapter 7 arising from statutory fees payable to a chapter 7 trustee and from the fees and expenses of the chapter 7 trustee's professionals, and (ii) the substantial delay in distributions under chapter 7.  Finally, the Updated Liquidation Analysis reflects that neither the Plan nor the chapter 7 scenario provides any recovery to the Holders of Subordinated Claims or Equity Interests.  Based on the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**I.    Acceptance of the Plan by Each Impaired Class (Section 1129(a)(8))**

78.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  As set forth above, Holders of Claims in Class I (Other Secured Claims) and Class II (Priority Claims) are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have voted to accept the Plan.  Thus the requirements of section 1128(a)(8) have been satisfied as to Classes I and II.

79.    With respect to the impaired classes entitled to vote to accept or reject a plan, sections 1126(c) and 1126(d) of the Bankruptcy Code specify the requirements for acceptance of a plan by classes of claims and equity interest.  Classes III and IV are Impaired Classes of Claims eligible to vote on the Plan.  As explained above, Class III voted to accept the Plan, and

Class IV voted to reject the Plan.  Classes V and VI are Impaired and were deemed to reject the

Plan.  As set forth below, notwithstanding the rejection by Classes IV, V, and VI, the Plan may

be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

**J.        Treatment of Priority Claims (Section 1129(a)(9))**

80.        Under section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed, a plan

must satisfy administrative and priority tax claims in full in cash.  Accordingly, Section 3.3.1 of

the Plan requires the Debtors to pay (or reserve and promptly pay) in Cash on the later of (a) the

Effective Date or (b) the date on which such Claims become due and payable the Allowed

amount of all Unclassified Claims (other than Professional Fee Claims) and Priority Claims to

the extent such Claims are Allowed as of the Effective Date.

81.        With respect to Unclassified Claims (other than Professional Fee Claims) that are

not Allowed as of the Effective Date, they will be paid within thirty (30) days of becoming

Allowed Claims.  With respect to Priority Claims that are not Allowed as of the Effective Date,

they will be reserved for in the Disputed Claims Reserve and paid upon the resolution of all

Disputed Priority Claims.

82.        With respect to Professional Fee Claims, Section 9.1 of the Plan provides that any

unpaid portion of such Claims will be paid, unless otherwise agreed, from the Professional Fee

Escrow Account before the later of (a) the Effective Date or (b) three Business Days after the

order approving such Person's final fee application.

83.        The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the

Bankruptcy Code.

01:17958502.1

29

K.      **Acceptance of at Least One Impaired Class (Section 1129(a)(10))**

84.      Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance

of the Plan by at least one class of impaired claims, "determined without including any

acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  As set forth in the Voting

Declaration, Class III, which is not comprised of insiders, voted to accept the Plan.  Thus, the

Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

L.      **Feasibility (Section 1129(a)(11))**

85.      Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to

confirming a plan of reorganization, that confirmation "is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the debtor or any successor to the

debtor under the plan."  11 U.S.C. § 1129(a)(11).  The feasibility test set forth in section

1129(a)(11) requires the Court to determine whether the Plan may be implemented and has a

reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549

(1990).

86.      In the context of a liquidating plan, feasibility is established by demonstrating that

the debtor is able to satisfy the conditions precedent to the effective date and otherwise has

sufficient funds to meet its post-confirmation date obligations to pay for the costs of

administering and fully consummating the Plan and closing the Chapter 11 Cases.  *See, e.g., In

re Journal Register Co.*, 407 B.R. 520, 539 (Bankr. S.D.N.Y. 2009) (explaining that the

feasibility test is "whether the things which are to be done after confirmation can be done as a

practical matter under the facts") (internal quotations omitted).

87.     The Williams Declaration demonstrates that the Debtors have far more Cash than they need to (a) pay all Allowed Unclassified Claims and Allowed Priority Claims, (b) reserve for all Disputed Priority Claims and Disputed Administrative Expense Claims, and (c) reserve for future expenses to be incurred in completing the administration of the Debtors' Assets.  Thus, the Debtors have proven that they will have sufficient Assets to administer and consummate the Plan, satisfy post-Confirmation Date obligations, and close the Chapter 11 Cases, thereby satisfying the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**M.     Payment of Certain Fees (Section 1129(a)(12))**

88.     Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under 28 U.S.C. § 1930 "have been paid or the plan provides for the payment of all such fees on the effective date of the plan."  11 U.S.C. § 1129(a)(12).  Section 8.8 of the Plan provides that U.S. Trustee Fees incurred by the U.S. Trustee prior to the Effective Date shall be paid on or before the Effective Date.  Thus, this requirement is satisfied.

**N.     Sections 1129(a)(13) Through 1129(a)(16) are not Applicable**

89.     Section 1129(a)(13) of the Bankruptcy Code requires that a chapter 11 plan provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13).  The Debtors have no obligations to provide any such retiree benefits.  Nor are the Debtors (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts. Accordingly, the Debtors submit that sections 1129(a)(13) through (16) of the Bankruptcy Code are not applicable.  *See In re Sea Launch Co., L.L.C.*, 2010 Bankr. LEXIS 5283, at *41 (Bankr.

D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts

that are *not* moneyed, business, or commercial.") (internal citations omitted).

**O.      The Plan Satisfies the "Cram Down" Requirements with Respect to the Non-Accepting Classes**

90.      As stated above, Class IV voted to reject the Plan, and Classes V and VI were not

entitled to vote on the Plan because such Classes were deemed to reject the Plan pursuant to

section 1126(g) of the Bankruptcy Code (collectively, the "Non-Accepting Classes").

91.      Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation

of a plan when the plan is not accepted by all impaired classes of claims or interests.

Specifically, section 1129(b) provides, in pertinent part:

> [I]f all of the applicable requirements of subsection (a) of [section 1129] other
> than paragraph (8) are met with respect to a plan, the court, on request of the
> proponent of the plan, shall confirm the plan notwithstanding the requirements of
> such paragraph if the plan does not discriminate unfairly, and is fair and equitable,
> with respect to each class of claims or interests that is impaired under, and has not
> accepted, the plan.

11 U.S.C. § 1129(b).

92.      This section essentially provides two requirements for "cramdown" of a plan on a

dissenting impaired class: (i) that the plan does not discriminate unfairly, and (ii) that it be fair

and equitable, with respect to such class.  11 U.S.C. § 1129(b)(1).

**1.      The Plan Does Not Discriminate Unfairly Against Holders of Claims and Equity Interests in the Non-Accepting Classes**

93.      Section 1129(b)(1) does not prohibit discrimination between classes.  Rather, it

prohibits discrimination that is unfair.  Under section 1129(b) of the Bankruptcy Code, a plan

unfairly discriminates where similarly situated classes are treated differently without a

reasonable basis for the disparate treatment.  *See WorldCom Inc.*, 2003 WL 23861928, at *59

(citing *In re Buttonwood Partners, Ltd.*, 111 B.R 57, 63 (Bankr. S.D.N.Y. 1990)); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub nom, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)).  As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, *see, e.g., In re Johns-Manville Corp.*, 68 B.R. at 636, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.  *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 715 (separate classification and treatment was rational where members of each class "possess[ed] different legal rights").  In the perspective of the foregoing standards, the Plan does not "discriminate unfairly" with respect to the Non-Accepting Classes.

94.      The Plan includes only one Class for Holders of General Unsecured Claims—Class IV.  The senior Classes are comprised of either Secured Claims or Priority Claims.  Pursuant to the Plan, Holders of Holders of Allowed Claims in Class IV will receive their Pro Rata Share of the total beneficial interests in the GUC Trust.  This difference in treatment is necessary and appropriate given the dissimilar nature of the Claims in Classes I, II, and III as compared to Class IV.

95.      The Plan treatment of Holders of Allowed Claims in Class V (Subordinated Claims) is based on the statutory mandate of section 510 of the Bankruptcy Code.  Indeed, to comply with section 1129(a)(1) of the Bankruptcy Code, which requires that a chapter 11 plan comply with applicable provisions of the Bankruptcy Code, section 510 must be enforced.  Moreover, the Claims in Class V are not similarly situated to any other Class, and the disparate

treatment of such Classes in comparison to other Classes of Claims that are not subordinated is not unfair.

96.     The Plan also does not "discriminate unfairly" with respect to Class VI (Equity Interests) because all Equity Interests are classified together and afforded the same treatment under the Plan.  As such, there is no discrimination, let alone unfair discrimination, among Holders of Equity Interests.  Thus, the Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Equity Interests.

> **2.      The Plan is Fair and Equitable with Respect to Holders of Claims and Equity Interests in Non-Accepting Classes**

97.     Under section 1129(b)(2) of the Bankruptcy Code, a plan is fair and equitable with respect to dissenting classes of unsecured claims and interests if it follows the "absolute priority" rule, which requires that "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."  11 U.S.C. § 1129(b)(2)(B)(ii); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999); *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 352 (Bankr. D. Del. 1998).

98.     In the instant case, the "fair and equitable" requirement is satisfied as to Classes IV, V, and VI because (a) no Holder of Claims or Equity Interests junior to the Claims in Class IV will receive or retain any property under the Plan on account of such junior Claims or Equity Interests and (b) no Holder of a Claim senior to Class IV will receive more than full value on account of its Claim.  Accordingly, the Plan satisfies the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code with respect to Classes IV, V, and VI and is "fair and equitable" in all respects.

**P.      The Plan Satisfies the Requirements of Section 1129(c), (d), and (e) of the Bankruptcy Code**

99.      Section 1129(c) of the Bankruptcy Code provides that "the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144" of the Bankruptcy Code.  11 U.S.C. § 1129(c).  The Plan is the only plan filed in the Chapter 11 Cases and, as such, section 1129(c) of the Bankruptcy Code does not apply.  Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933 (the "Securities Act").  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the Securities Act, and no party in interest has filed an objection alleging otherwise.  The principal purpose of the Plan is to effectuate the Debtors' orderly liquidation through a Distribution mechanism that will maximize Creditor recoveries.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  Finally, these Chapter 11 Cases are not "small business cases" as defined in the Bankruptcy Code and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## THE PLAN MODIFICATIONS SHOULD BE APPROVED

100.      In seeking confirmation of the Plan, the Debtors seek approval of the Plan Modifications contained therein.  The Plan Modifications do not adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor.

101.      Section 1127(a) of the Bankruptcy Code provides as follows:

The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

01:17958502.1

11 U.S.C. § 1127(a).

102.    Pursuant to section 1127, a plan proponent may modify its plan prior to

confirmation so long as the modified plan meets the requirements of sections 1122 and 1123 of

the Bankruptcy Code.  Bankruptcy Rule 3019 provides as follows:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its
> confirmation, the proponent may file a modification of the plan.  If the court finds
> after hearing on notice to the trustee, any committee appointed under the Code,
> and any other entity designated by the court that the proposed modification does
> not adversely change the treatment of the claim of any creditor or the interest of
> any equity security holder who has not accepted in writing the modification, it
> shall be deemed accepted by all creditors and equity security holders who have
> previously accepted the plan.

Fed. R. Bankr. P. 3019.

103.    Courts consistently have held that a proposed modification to a chapter 11 plan

will be deemed accepted by all creditors and equity security holders who previously accepted the

plan where the proposed modification does not cause a material adverse change in the treatment

of the claim of any creditor or the interest of any equity security holder.  *See, e.g.*, *In re Century

Glove, Inc.*, 1993 U.S. Dist. LEXIS 2286, *12-13 (D. Del. Feb. 10, 1993) (affirming bankruptcy

court's order confirming a modified plan and holding that modifications that do not adversely

impact any creditors who had previously voted in favor of the Plan do not require re-

solicitation); *In re Celotex Corp.*, 204 B.R. 586, 608-09 (Bankr. M.D. Fla. 1996) (holding that

creditors and equity holders who had accepted the debtor's plan of reorganization were deemed

to have accepted modifications that did not adversely change the treatment under the plan of any

claims or interests); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 322 (Bankr. E.D. Mo. 1995)

("In light of the immaterial nature of the Modifications, no additional disclosure under section

1125 is required and, pursuant to Bankruptcy Rule 3019, all Holders of Claims and Equity

Interests that have accepted the Plan prior to the Modifications are conclusively presumed to have accepted the Plan, as amended by the Modifications.").

104.    The Plan Modifications are comprised of clarifications made by the Debtors in their continuing review of the Plan or revisions made in response to informal and formal objections or requests for clarification from parties in interest.  For example, the Debtors clarified the treatment of Unclassified Claims and Priority Claims, added language to ensure the insurance neutrality of the Plan, clarified certain corporate governance matters, clarified the rights of various Creditors with respect to the vesting of Assets in the GUC Trust and the Secured Creditor Trust, reduced the Claims Objection Deadline to 180 days following the Effective Date, clarified the treatment of the Wind-Down Amount in light of the Wind-Down Settlement, and clarified certain rights of the PBGC.    None of the Plan Modifications causes a material adverse change in the treatment of the claim of any creditor or the interest of any equity security holder, and none requires resolicitation of the Plan.

105.    The Debtors submit that the disclosure of the modifications to the Plan in this Memorandum of Law and on the record at the Confirmation Hearing constitutes due and sufficient notice of such modifications and that such modifications are not adverse to any party-in-interest under the Plan who previously voted on the Plan.  Accordingly, the Debtors request that the Court approve the Plan Modifications.

## WAIVER OF BANKRUPTCY RULES REGARDING NOTICE AND STAY OF ORDER

106.    The Debtors seek to implement the Plan as expeditiously as possible. Accordingly, the Debtors also respectfully request that this Court direct that the Confirmation

01:17958502.1

Order shall be effective immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e).

107.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e).  As such, and as the Advisory Committee notes to Bankruptcy Rule 3020(e) state, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately."  Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.  Under the circumstances of these Chapter 11 Cases it is appropriate for the Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtors to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order.  This relief is in the best interests of the Debtors' estates and Creditors and will not prejudice any parties in interest.

108.    According to the Advisory Committee notes to the 1999 amendments to the Bankruptcy Rules, the purpose of Bankruptcy Rule 3020(e) is to permit a party in interest to request a stay of the Confirmation Order pending appeal before the plan is implemented and an appeal becomes moot. *Id.*  Here, no significant issues exist with respect to any of the unresolved confirmation objections, and an appeal of the confirmation order is, at best, unlikely.  Further, to the extent a party wishes to seek an appeal, it may seek to stay the effectiveness of the Confirmation Order in connection with the appeal.  As a result, the immediate consummation of the Plan will not prejudice any party in interest.

109.    The Debtors, therefore, respectfully request that the Court direct that the Confirmation Order be effective immediately upon its entry notwithstanding the stay otherwise

imposed pursuant to Bankruptcy Rule 3020(e) or any other provision of the Bankruptcy Rules,

including Bankruptcy Rule 6004(h), 7062, 9014, or otherwise.

### **ALL OBJECTIONS HAVE BEEN RESOLVED OR SHOULD BE OVERRULED**

110.    The Debtors have worked diligently to resolve objections where possible.  The

remaining objections are addressed separately in the Reply filed concurrently herewith.


*[Remainder of Page Intentionally Left Blank]*

01:17958502.1

## CONCLUSION

111.    For all the foregoing reasons, the Plan should be confirmed pursuant to section

1129 of the Bankruptcy Code.


Dated:    November 11, 2015
           Wilmington, Delaware          */s/ Andrew L. Magaziner*_____
                                         Michael R. Nestor (No. 3526)
                                         Kara Hammond Coyle (No. 4410)
                                         Andrew L. Magaziner (No. 5426)
                                         YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                         Rodney Square
                                         1000 North King Street
                                         Wilmington, Delaware 19801
                                         Telephone:  (302) 571-6600
                                         Facsimile:  (302) 571-1253
                                         mnestor@ycst.com
                                         kcoyle@ycst.com
                                         amagaziner@ycst.com

                                         -and-

                                         Michael A. Rosenthal (NY No. 4697561)
                                         Jeremy L. Graves (CO No. 45522)
                                         Matthew G. Bouslog (CA No. 280978)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         200 Park Avenue
                                         New York, New York 10166-0193
                                         Telephone: (212) 351-4000
                                         Facsimile: (212) 351-4035
                                         mrosenthal@gibsondunn.com
                                         jgraves@gibsondunn.com
                                         mbouslog@gibsondunn.com

01:17958502.1