**Exhibit 3**

PH Comments
11/16/15

---

**SECURED CREDITOR TRUST AGREEMENT**

**By and Among**

**THE DEBTORS NAMED HEREIN,**

**as Settlors,**

**WILMINGTON TRUST COMPANY,**

**as Trustee,**

**CLINGMAN & HANGER MANAGEMENT ASSOCIATES, LLC,**

**as Advisor,**

**and**

**SILVER POINT FINANCE, LLC,**

**as Sole Member of the Oversight Committee**

**Dated as of                    , 2015**

---

#36410032 v2

**Table of Contents**

Page

ARTICLE I NAME AND DEFINITIONS ................................................................ 2
   1.1      Creation of Trust and Name ........................................................ 2
   1.2      Certain Terms Defined ................................................................ 2
ARTICLE II NATURE OF TRANSFER .................................................................. 4
   2.1      Purpose of Secured Creditor Trust. ............................................ 4
   2.2      Prohibited Activities .................................................................... 5
   2.3      No Reversion to the Debtors ....................................................... 5
   2.4      Instruments of Further Assurance ............................................... 5
   2.5      Transfer of Secured Creditor Trust Assets Free and Clear; Payment of
            Liabilities .................................................................................... 5
   2.6      Incidents of Ownership ............................................................... 6
ARTICLE III BENEFICIARIES ............................................................................... 6
   3.1      Rights of Beneficiaries ............................................................... 6
   3.2      Transfer of Interests of Beneficiaries ......................................... 6
ARTICLE IV DURATION AND TERMINATION OF TRUST ............................... 7
   4.1      Duration ....................................................................................... 7
   4.2      Other Obligations of Trustee, Advisor or Oversight Committee upon
            Termination ................................................................................. 7
ARTICLE V ADMINISTRATION OF TRUST ASSETS ....................................... 7
   5.1      Sale of Trust Assets .................................................................... 7
   5.2      Payment of Claims, Expenses and Liabilities ............................. 7
   5.3      Interim Distributions ................................................................... 8
   5.4      Final Distribution ........................................................................ 8
   5.5      Federal Income Tax Information ................................................. 8
   5.6      Employment of Agents. ............................................................... 9
ARTICLE VI POWERS OF AND LIMITATIONS ON THE TRUSTEE, ADVISOR
            AND OVERSIGHT COMMITTEE ......................................... 10
   6.1      Limitations on Trustee, Advisor and Oversight Committee ...................... 10
   6.2      Specific Powers of Trustee, Advisor and Oversight Committee .............. 10
ARTICLE VII CONCERNING THE TRUSTEE, ADVISOR, OVERSIGHT
            COMMITTEE, SECOND LIEN AGENT, BENEFICIARIES,
            EMPLOYEES AND AGENTS ................................................. 13
   7.1      Generally ..................................................................................... 13
   7.2      Reliance by Trustee, Advisor or Oversight Committee .............................. 14
   7.3      Liability to Third Persons ........................................................... 15
   7.4      Recitals ........................................................................................ 15
   7.5      Indemnification ........................................................................... 15
   7.6      Rights of Trustee, Advisor, Oversight Committee Members, Employees,
            Independent Contractors and Agents to Engage in Other Business ......... 16
ARTICLE VIII PROTECTION OF PERSONS DEALING WITH THE TRUSTEE,
            ADVISOR OR OVERSIGHT COMMITTEE .......................... 17
   8.1      Action by Trustees, Advisors or Oversight Committee Members ........... 17
   8.2      Delegation ................................................................................... 17
   8.3      Reliance on Statement by Trustee, Advisor or Oversight Committee
            Member ....................................................................................... 18

ARTICLE IX COMPENSATION OF TRUSTEE, ADVISOR AND OVERSIGHT
      COMMITTEE ................................................................................................. 18
  9.1    Amount of Compensation .............................................................. 18
  9.2    Expenses ....................................................................................... 18
ARTICLE X TRUSTEES, ADVISORS, OVERSIGHT COMMITTEE MEMBERS AND
      SUCCESSORS ................................................................................ 19
  10.1    Number and Qualification of Trustees, Advisors and Oversight Committee
      Members ....................................................................................... 19
  10.2    Resignation and Removal of Trustees, Advisors and Oversight Committee
      Members ....................................................................................... 19
  10.3    Appointment of Successor Trustee, Advisor or Oversight Committee
      Member ........................................................................................ 20
  10.4    Acceptance of Appointment by Successor Trustee, Advisor or Oversight
      Committee Member ...................................................................... 20
  10.5    Bonds ........................................................................................... 21
  10.6    Directions in Writing .................................................................... 21
  10.7    Rules Governing Advisor ............................................................. 21
  10.8    Rules Governing Oversight Committee ....................................... 21
ARTICLE XI CONCERNING THE BENEFICIARIES ......................................... 21
  11.1    Evidence of Action by Beneficiaries ........................................... 21
  11.2    Limitation on Suits by Beneficiaries ........................................... 22
  11.3    Requirement of Undertaking ........................................................ 22
ARTICLE XII AMENDMENTS ............................................................................. 23
  12.1    Amendment of Agreement ........................................................... 23
  12.2    Notice and Effect of Amendment ................................................ 23
ARTICLE XIII MISCELLANEOUS PROVISIONS ............................................. 23
  13.1    Filing Documents ........................................................................ 23
  13.2    Intention of Parties to Establish Trust ......................................... 23
  13.3    Governing Law ............................................................................. 24
  13.4    Severability .................................................................................. 24
  13.5    Notices ......................................................................................... 24
  13.6    Interpretation ................................................................................ 26
  13.7    Counterparts ................................................................................. 27

# SECURED CREDITOR TRUST AGREEMENT

THIS SECURED CREDITOR TRUST AGREEMENT (this "Agreement"), dated as of November [•], 2015, by and among (i) SRC Liquidation Company, SR Liquidation Holding Company, SR Liquidation Technologies, Inc., SR Liquidation International, Inc., iMLiquidation, LLC, SR Liquidation of Puerto Rico Inc., SR Liquidation Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de México, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V. and SR Liquidation Technologies Canada ULC (collectively, the "Debtors"), as settlors, (ii) Wilmington Trust Company, as trustee (the "Trustee" and, together with any other persons serving as trustees hereunder, the "Trustees"), (iii) Clingman & Hanger Management Associates, LLC, as advisor (the "Advisor" and, together with any other persons serving as advisors hereunder, the "Advisors"), and (iv) Silver Point Finance, LLC (solely in its capacity as Second Lien Agent), as sole member of the Oversight Committee (as defined in Section 1.2 of this Agreement), is executed to facilitate the implementation of the Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (as amended or supplemented from time to time, the "Plan"), filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in case number 15-10541 on November 11, 2015.

**WHEREAS**, the Bankruptcy Court has scheduled November 19, 2015 as the date of the confirmation hearing to consider entry of an order confirming the Plan in accordance with section 1129 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended (the "Confirmation Order"); and

**WHEREAS**, (i) on the date hereof, this Agreement shall be executed by the Debtors and the Trustee, establishing the trust hereunder (the "Secured Creditor Trust"), and (ii) pursuant to the terms of the Plan and the Confirmation Order, effective as of the Effective Date (as defined in the Plan), Secured Creditor Trust Assets (as defined in the Plan) that have not previously vested in the Secured Creditor Trust shall be deemed to have been granted, transferred, conveyed and delivered to the Trustee on behalf of, and for the benefit of, the Holders of Allowed Class III Second Lien Secured Claims (as each such term is defined in the Plan) (each such Holder, a "Beneficiary", and collectively, the "Beneficiaries"); and

**WHEREAS**, the Secured Creditor Trust is established for the primary purpose of liquidating the Secured Creditor Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries and distributing the proceeds therefrom to the Second Lien Agent on behalf of, and for the benefit of, the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Secured Creditor Trust and the respective provisions of the Plan and the Confirmation Order; and

**WHEREAS**, the Secured Creditor Trust is intended to qualify as a "grantor trust" for federal, state and local income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"),

and any analogous provision of state or local law, with the Beneficiaries treated as grantors and owners of the Secured Creditor Trust; and

**WHEREAS**, each of the Trustee, the Advisor and the Oversight Committee shall have all necessary authority and power to take whatever actions are reasonably necessary to implement the provisions of this Agreement consistent with the respective provisions of the Plan and the Confirmation Order.

**NOW, THEREFORE**, in consideration of the foregoing premises, the parties hereto agree as follows:

## ARTICLE I

## NAME AND DEFINITIONS

1.1     _Creation of Trust and Name_.  There is hereby created a trust which shall be known as the "Secured Creditor Trust," in accordance with the Plan.

1.2     _Certain Terms Defined_.  For all purposes of this Agreement, unless the context otherwise requires:

(a)     _Advisor_ shall have the meaning given to such term in the preamble to this Agreement.

(b)     _Agent_ shall have the meaning given to such term in Section 5.6 of this Agreement.

(c)     _Agreement_ shall mean this instrument as originally executed, as it may from time to time be amended pursuant to the terms hereof.

(d)     _Bankruptcy Court_ shall have the meaning given to such term in the preamble to this Agreement.

(e)     _Beneficial Interest_ shall mean each Beneficiary's proportionate share of the Secured Creditor Trust Assets, as determined in accordance with the Plan and the Confirmation Order.

(f)     _Beneficiaries_ shall have the meaning given to such term in the preamble to this Agreement.

(g)     _Confirmation Order_ shall have the meaning given to such term in the preamble to this Agreement.

(h)     _Debtors_ shall have the meaning given to such term in the preamble to this Agreement.

(i)     _Effective Date_ shall have the meaning given to such term in the Plan.

2

(j)     *GUC Trust* shall have the meaning given to such term in the Plan.

(k)     _Indemnified Person_ shall have the meaning given to such term in Section 7.5 of this Agreement.

(l)     _Internal Revenue Code_ shall have the meaning given to such term in the preamble to this Agreement.

(m)     *Liquidating Debtors* shall have the meaning given to such term in the Plan.

(n)     _Oversight Committee_ means a committee comprised of one or more individuals or entities to perform certain oversight functions delegated to it hereunder.  The initial member of the Oversight Committee shall be the Second Lien Agent.

(o)     _Person_ shall mean an individual, a corporation, a partnership, an association, a joint stock company, a limited liability company, a trust, a joint venture, any unincorporated organization or a government or political subdivision thereof.

(p)     _Plan_ shall have the meaning given to such term in the preamble to this Agreement.

(q)     _Revenue Procedure 82-58_ shall mean and refer to the revenue procedure issued by the Internal Revenue Service and reported at 1982-2 C.B. 847, as amplified by Revenue Procedure 91-15, and as the same may be further amended, supplemented or modified.

(r)     _Second Lien Agent_ shall have the meaning given to such term in the Plan.

(s)     _Secured Creditor Trust_ shall mean the trust created by this Agreement.

(t)     _Secured Creditor Trust Assets_ shall have the meaning given to such term in the Plan.

(u)     _Taylor_ shall have the meaning given to such term in the Plan.

(v)     _Trust Assets_ shall mean all the property held from time to time by the Trustee under this Agreement, which may include, without limitation, the Wind-Down Settlement Payment and, as of the Effective Date, the Secured Creditor Trust Assets granted, assigned and conveyed to the Trustee by the Debtors pursuant to the Plan or the Confirmation Order, and, in addition, shall thereafter include all dividends, income, proceeds and other receipts of, from, or attributable to any assets held

3

by the Secured Creditor Trust. The Trust Assets may be contributed to one or more limited liability companies or other suitable entities formed by the Trustee for the purpose of holding such Trust Assets, in which case, the membership interest in such entity shall also be held by the Trustee and constitute a Trust Asset.

(w)     *Trustee* shall have the meaning given to such term in the preamble to this Agreement.

(x)     *Wind-Down Settlement* means that certain agreement between the Debtors, Taylor, and the Second Lien Agent dated as of October 29, 2015.

(y)     *Wind-Down Settlement Payment* means the $750,000.00 payment to be made by the Debtors pursuant to the Wind-Down Settlement. The Wind-Down Settlement Payment will be made first to the Second Lien Agent to satisfy the professionals fees incurred by the Second Lien Agent as of the date of payment, with the remainder of the Wind-Down Settlement Payment to be made to the Secured Creditor Trust to be administered as a Secured Creditor Trust Asset.

ARTICLE II

NATURE OF TRANSFER

2.1     *Purpose of Secured Creditor Trust.*

(a)     The sole purpose of this Secured Creditor Trust is to hold the Trust Assets in a manner calculated to collect and distribute the income and proceeds of the Trust Assets to the Second Lien Agent on behalf of, and for the benefit of, the Beneficiaries, in as prompt and orderly fashion as practicable after the payment of, or provision for, expenses and liabilities of the Secured Creditor Trust, including, without limitation, payments to Persons who are identified in, or entitled to be indemnified under, Section 7.5 of this Agreement.

(b)     The Secured Creditor Trust Assets granted, released, assigned, conveyed and delivered to the Trustee subject to the terms and provisions hereof will be held in the Secured Creditor Trust, and the Trustee, at the direction of the Advisor, acting with the consent of the Oversight Committee, will: (i) further liquidate the Secured Creditor Trust Assets if necessary or appropriate to carry out the purpose of the Secured Creditor Trust and facilitate distribution of the Trust Assets; (ii) allocate, protect and conserve the Trust Assets in accordance with the terms and conditions hereof; (iii) complete the winding up of the affairs of the Debtors as and to the extent set forth in the Plan and Confirmation Order; and (iv) distribute the Trust Assets in accordance with the terms and conditions hereof.

(c)     The Debtors are granting, assigning and conveying the Secured Creditor Trust Assets to the Trustee pursuant hereto as agent for, and on behalf of, the Beneficiaries. Accordingly, it is intended that the granting, assignment and conveyance of the Secured Creditor Trust Assets by the Debtors to the Trustee pursuant hereto shall be treated for federal and state income tax purposes as if the Debtors made

4

such distributions directly to the Beneficiaries.  It is further intended that for federal, state and local income tax purposes the Secured Creditor Trust shall be treated as a liquidating trust under Treasury Regulation Section 301.7701-4(d) and any analogous provision of state or local law, and the Beneficiaries shall be treated as the owners of their respective shares of the Secured Creditor Trust pursuant to Sections 671 through 677 of the Internal Revenue Code and any analogous provision of state or local law and shall be taxed on their respective shares of the Secured Creditor Trust's taxable income (including both ordinary income and capital gains) pursuant to Section 671 of the Internal Revenue Code and any analogous provision of state or local law.  The Trustee, at the direction of the Advisor, acting with the consent of the Oversight Committee, shall file or cause to be filed all tax returns required to be filed with any governmental agency consistent with this position, including, but not limited to, any tax returns required of grantor trusts pursuant to Treasury Regulation Section 1.671-4(a).

     2.2    *Prohibited Activities*.  The Secured Creditor Trust shall not continue or engage in the conduct of any trade or business or reinvestment of proceeds (except solely temporary reinvestments as expressly provided in this Agreement), and the Trustee is expressly prohibited from, and shall have no power or authority to, continue or engage in the conduct of any trade or business or reinvestment of proceeds (except solely temporary reinvestments as expressly provided in this Agreement) on behalf of the Secured Creditor Trust, the Second Lien Agent or the Beneficiaries, and all of the terms and conditions hereof shall be construed accordingly.

     The Secured Creditor Trust shall not receive transfers of any unlisted stock of a single issuer that represents eighty percent (80%) or more of the outstanding stock of such issuer.

     2.3    *No Reversion to the Debtors*.  In no event shall any part of the Secured Creditor Trust Assets revert to or be distributed to the Debtors or any person other than the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiaries.

     2.4    *Instruments of Further Assurance*.  Such Persons as shall have the right and power to so act on behalf of the Debtors shall, upon reasonable request by the Trustee, the Advisor or the Oversight Committee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to carry out effectively the purposes of this Agreement, to confirm or effectuate the transfer to the Trustee of any property intended to be covered hereby, and to vest in the Trustee, its successors and assigns, the estate, powers, instruments or funds in trust hereunder.

     2.5    *Transfer of Secured Creditor Trust Assets Free and Clear; Payment of Liabilities*.  Pursuant to the Plan, the Debtors shall transfer to the Secured Creditor Trust all of their right, title and interest in and to all of the Secured Creditor Trust Assets, including any portion of the Wind-Down Settlement Payment not paid to the Second Lien Agent in accordance with the Wind-Down Settlement, which assets shall automatically vest in the Secured Creditor Trust pursuant to section 1141 of the Bankruptcy Code free and clear of all Claims and Liens (as defined in the Plan) other than the Claims and Liens of the Second Lien Agent (as defined in the Plan) and, solely

934155.02A-CHISR01A - MSW

as to the BofA Cash Collateral Account (as defined in the Plan), Bank of America, N.A. Accordingly, the Trustee shall not, either in its capacity as trustee or in its individual capacity, assume any claims, liabilities or obligations (including unascertained or contingent liabilities and expenses) of the Debtors with respect to the Secured Creditor Trust Assets, other than as set forth in the Plan or Confirmation Order.  Should any liability nonetheless be asserted against the Trustee as the transferee of the Secured Creditor Trust Assets, the Trustee may use such part of the Secured Creditor Trust Assets as may be necessary or appropriate in contesting any such liability or in payment thereof, but in no event shall the Trustee, the Second Lien Agent, the Beneficiaries or employees or agents of the Secured Creditor Trust or their respective officers, employees or agents be personally liable, nor shall resort be had to the private property of such Persons, in the event the Secured Creditor Trust Assets are not sufficient to satisfy the liabilities of the Secured Creditor Trust.

2.6    _Incidents of Ownership_.  The Beneficiaries shall be the beneficial owners of the Secured Creditor Trust and the Trustee shall retain only such incidents of legal ownership as are necessary to undertake the actions and transactions authorized herein.

ARTICLE III

BENEFICIARIES

3.1    _Rights of Beneficiaries_.  Each Beneficiary shall be entitled to participate in the rights and benefits due to a Beneficiary hereunder according to its Beneficial Interest.  Each Beneficiary shall take and hold the same subject to all the terms and provisions of this Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or control of, the Trust Assets except as herein expressly provided.  The whole title to all the Trust Assets shall be vested in the Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such Beneficiaries under this Agreement.

3.2    _Transfer of Interests of Beneficiaries_.  The Beneficial Interest of a Beneficiary may not be transferred, in whole or in part, by the Beneficiary acting through any Person (including a properly appointed legal representative of the Beneficiary) without the prior written consent of the Trustee, nor may a Beneficiary have authority to sell, assign, transfer, encumber, or in any other manner anticipate or dispose of, in whole or in part, its Beneficial Interest without such prior written consent; provided, however, that the Beneficial Interest shall be assignable or transferable by operation of law without such prior written consent.

The Beneficial Interests of the Beneficiaries hereunder shall not be subject to attachment, execution, sequestration or any order of a court, nor shall such interests be subject to the contracts, debts, obligations, engagements or liabilities of any Beneficiary, but the interest of a Beneficiary shall be paid by the Trustee, at the direction of the Advisor, acting with the consent of the Oversight Committee, to the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiary free and clear of all

6

assignments, attachments, anticipations, levies, executions, decrees and sequestrations, and shall become the property of the Beneficiary only when actually received by such Beneficiary.

## ARTICLE IV

## DURATION AND TERMINATION OF TRUST

4.1     *Duration*.  The existence of this Secured Creditor Trust shall terminate upon the earliest of (i) a termination required by the applicable laws of the State of Delaware, (ii) a termination due to the distribution of all the Trust Assets as provided in Section 5.4 of this Agreement, or (iii) the expiration of a period of two (2) years from the date of the creation of the Secured Creditor Trust, unless the Bankruptcy Court, upon a motion filed on or before such second (2nd) anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which motion shall automatically extend the term of the Secured Creditor Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary or appropriate to facilitate or complete the recovery and liquidation of the Trust Assets.  Any such extension must comply in all respects with the provisions of the Plan.  Notwithstanding the foregoing clause (iii), the Secured Creditor Trust shall not in any event terminate pursuant to such clause (iii) prior to the date the Trustee is directed to make a final distribution in accordance with Section 5.4 of this Agreement.

4.2     *Other Obligations of Trustee, Advisor or Oversight Committee upon Termination*.  Upon distribution of all the Trust Assets, the Trustee shall provide for the retention of the books, records, lists of holders of Beneficial Interests and files which shall have been delivered to or created by the Trustee.  At the Trustee's discretion, all of such records and documents may be destroyed at any time after six (6) years from the distribution of all the Trust Assets.  Except as otherwise specifically provided herein, upon the distribution of all the Trust Assets, no Trustee, Advisor or member of the Oversight Committee shall have any further duties or obligations hereunder.

## ARTICLE V

## ADMINISTRATION OF TRUST ASSETS

5.1     *Sale of Trust Assets*.  The Advisor may, at such times as it may deem appropriate and acting with the consent of the Oversight Committee, direct the Trustee to transfer, assign, or otherwise dispose of all or any part of the Trust Assets as the Advisor deems appropriate at public auction or at private sale for cash, securities or other property, or upon credit (either secured or unsecured as the Advisor, acting with the consent of the Oversight Committee, shall determine).

5.2     *Payment of Claims, Expenses and Liabilities*.  The Trustee, at the direction of the Advisor, acting with the consent of the Oversight Committee, shall pay from the Trust Assets all claims, expenses, charges, liabilities, and obligations of the

Secured Creditor Trust and all liabilities and obligations which the Trustee, in its capacity as trustee and not in its individual capacity, specifically assumes and agrees to pay pursuant to this Agreement and such transferee liabilities which the Trustee may be obligated to pay, in its capacity as trustee and not in its individual capacity, as transferee of the Trust Assets, including, and without limiting the generality of the foregoing, interest, penalties, taxes, assessments and public charges of every kind and nature and the costs, charges, and expenses connected with or growing out of the execution or administration of this Secured Creditor Trust and such other payments and disbursements as are provided in this Agreement or which may be determined to be a proper charge against the Trust Assets by the Trustee, acting at the direction of the Advisor, with the consent of the Oversight Committee.  Notwithstanding a termination of the Secured Creditor Trust for any reason, the Advisor may, in its discretion, acting with the consent of the Oversight Committee (which shall not be unreasonably withheld), direct the Trustee to make provisions by reserve or otherwise out of the Trust Assets, for such amount as the Advisor in good faith may determine to be necessary or appropriate to meet present or future claims and liabilities of the Secured Creditor Trust, whether fixed or contingent.

      5.3    *Interim Distributions*.  If at any time the Advisor determines that the then fair market value of the Trust Assets exceeds the value that the Advisor in good faith determines may be necessary or appropriate to meet present or future claims and liabilities of the Secured Creditor Trust, whether fixed or contingent (such excess value, the "Distributable Amount"), the Advisor may, at such times as it may deem appropriate and acting with the consent of the Oversight Committee, direct the Trustee to distribute such portion or all of the Distributable Amount as the Advisor deems appropriate to the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiaries, to be distributed to the Beneficiaries in proportion to their interests in the Trust Assets.

      5.4    *Final Distribution*.  If the Advisor reasonably determines that all claims, expenses, charges, liabilities and obligations of the Secured Creditor Trust have been paid, discharged or otherwise provided for pursuant to Section 5.2 of this Agreement, or if the existence of the Secured Creditor Trust shall terminate pursuant to Section 4.1 of this Agreement and the Advisor has reasonably determined that all claims, expenses, charges, liabilities and obligations of the Secured Creditor Trust have been paid, discharged or otherwise provided for pursuant to Section 5.2 of this Agreement, the Advisor, acting with the consent of the Oversight Committee, shall direct the Trustee, as expeditiously as is consistent with the conservation and protection of the Trust Assets, to distribute the Trust Assets to the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiaries, to be distributed to the Beneficiaries in proportion to their interests therein.

      5.5    *Federal Income Tax Information*.  As soon as practicable after the close of each taxable year, the Advisor shall direct the Trustee to mail to each Beneficiary at the close of the year, a statement showing on a unit basis (i) the dates and amounts of all distributions made by the Trustee, (ii) all items of income, gain, deductions and credits

8

against federal income tax of the Secured Creditor Trust for the preceding year and (iii) such other information as is reasonably available to the Trustee which may be helpful in determining the amount of taxable income attributable to the Secured Creditor Trust that such Beneficiary should include in such Beneficiary's federal income tax return for the preceding year.  In addition, after receipt of a request in good faith, or in its discretion without such request, or at the direction of the Advisor or the Oversight Committee in its respective discretion, or if required by applicable law, the Trustee shall furnish to a Person who has been a Beneficiary at any time during the preceding year a statement containing such further information as is reasonably available to the Trustee which may be helpful in determining the amount of taxable income which such Person should include in such Person's federal income tax return.

5.6    <em><u>Employment of Agents.</u></em>

(a)    The Trustee, acting together with the Advisor and the Oversight Committee pursuant to this Agreement, shall be responsible for the general policies of the Secured Creditor Trust and for the general supervision of the activities of the Secured Creditor Trust conducted by all agents, employees, advisors or managers of the Secured Creditor Trust.  However, none of the Trustee, the Advisor or the Oversight Committee shall be required personally to conduct the activities of the Secured Creditor Trust required of such Trustee, Advisor or Oversight Committee pursuant to this Agreement, and, consistent with their ultimate responsibility as stated above, each of the Trustee, the Advisor and the Oversight Committee shall have the power to appoint, employ or contract with any Person or Persons (including one or more of themselves or any corporation, partnership, or trust in which one or more of them may be directors, officers, partners or trustees) as the Trustee, the Advisor or the Oversight Committee, as the case may be, may deem necessary or appropriate for the transaction of the activities of the Secured Creditor Trust.  Each of the Trustee, the Advisor and the Oversight Committee may therefore employ or contract with such Person or Persons (herein referred to as an "<u>Agent</u>") and may grant or delegate such authority to the Agent as the Trustee, the Advisor or the Oversight Committee, as the case may be, may in its sole discretion deem necessary or appropriate to carry out the purpose of the Secured Creditor Trust without regard to whether such authority is normally granted or delegated by trustees, advisors or any other governing body.  Each of the Trustee, the Advisor and the Oversight Committee may exercise broad discretion in allowing the Agent to administer and regulate the operations of the Secured Creditor Trust, to act as agent for the Secured Creditor Trust, to execute documents on behalf of the Trustee, the Advisor or the Oversight Committee, as the case may be, and to make executive decisions which conform to general policies and general principles previously established by the Trustee, the Advisor or the Oversight Committee on whose behalf such Agent is acting.

(b)    The Agent or other Person employed by the Trustee, the Advisor or the Oversight Committee, as the case may be, shall not be required to administer the Secured Creditor Trust as its sole and exclusive function and may have other business interests and may engage in other activities similar or in addition to those relating to the Secured Creditor Trust, including the rendering of advice or services of any kind to investors or any other Persons and the management of other investments.

9

ARTICLE VI

POWERS OF AND LIMITATIONS ON THE TRUSTEE, ADVISOR AND
OVERSIGHT COMMITTEE

6.1 *Limitations on Trustee, Advisor and Oversight Committee*. None
of the Trustee, the Advisor or the Oversight Committee shall, at any time, on behalf of
the Secured Creditor Trust, the Second Lien Agent or the Beneficiaries, enter into or
engage in any trade or business or reinvestment of proceeds (except solely temporary
reinvestments as expressly provided in this Agreement), and no part of the Trust Assets
shall be used or disposed of by the Trustee, the Advisor or the Oversight Committee in
furtherance of any trade or business or reinvestment of proceeds (except solely temporary
reinvestments as expressly provided in this Agreement). The Trustee shall be restricted
to the holding and collection of the Trust Assets and the sale and redemption thereof and
the subsequent payment and distribution thereof for the purposes set forth in this
Agreement and the administration thereof in accordance with the provisions of this
Agreement, and neither the Advisor nor the Oversight Committee shall act or give any
direction in contravention of such restriction. In no event shall the Trustee, the Advisor
or the Oversight Committee receive any property, make any distribution, satisfy or
discharge any claims, expenses, charges, liabilities or obligations or otherwise take any
action (including directing any of the foregoing) which would jeopardize the status of the
Secured Creditor Trust as a "liquidating trust" for federal income tax purposes within the
meaning of Treasury Regulation Section 301.7701-4(d). This limitation shall apply
irrespective of whether the conduct of any such action is deemed by the Trustee, the
Advisor or the Oversight Committee, as the case may be, to be necessary or appropriate
for the conservation and protection of the Trust Assets. None of the Trustee, the Advisor
or the Oversight Committee shall invest (or direct the investment of) any of the funds
held as Trust Assets, except that the Trustee may continue to hold assets in the form
transferred to the Secured Creditor Trust and may, at the direction of the Advisor, acting
with the consent of the Oversight Committee, invest any portion of the Trust Assets in (i)
direct obligations of the United States of America or obligations of any agency or
instrumentality thereof which mature not later than six (6) months from the date of
acquisition thereof, (ii) money market deposit accounts or funds, checking accounts,
savings accounts, or certificates of deposit, or other time deposit accounts which mature
not later than six (6) months from the date of acquisition thereof which are issued by a
commercial bank or savings institution organized under the laws of the United States of
America or any state thereof, (iii) non-interest bearing accounts, or (iv) any other
investments which may be determined by the Trustee to be permissible under Revenue
Procedure 82-58.

6.2 *Specific Powers of Trustee, Advisor and Oversight Committee*.
Subject to the provisions of Section 6.1 of this Agreement, each of the Trustee, the
Advisor and the Oversight Committee shall have the following specific powers in
addition to any powers conferred upon the Trustee, the Advisor or the Oversight
Committee, as the case may be, by any other Section or provision of this Agreement or
any statutory laws of the State of Delaware; provided, however, that the enumeration of
the following powers shall not be considered in any way to limit or control the power of

10

the Trustee, the Advisor or the Oversight Committee to act as specifically authorized by any other Section or provision of this Agreement and to act in such a manner as the Trustee, the Advisor or the Oversight Committee, as the case may be, may deem necessary or appropriate to conserve and protect the Trust Assets or to confer on the Beneficiaries (or on the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiaries) the benefits intended to be conferred upon them by this Agreement:

(a)    To determine the nature and amount of the consideration to be received with respect to the sale or other disposition of, or the grant of interests in, the Trust Assets.

(b)    To collect, liquidate or otherwise convert into cash, or such other property as it deems appropriate, all property, assets and rights in the Trust Assets, and to pay, discharge and satisfy all other claims, expenses, charges, liabilities, and obligations existing with respect to the Trust Assets, the Secured Creditor Trust, the Advisor, the Oversight Committee or the Trustee.

(c)    To elect, appoint, engage, retain or employ any Persons as agents, representatives, employees, or independent contractors (including, without limitation, investment advisors, custodians, accountants, administrators, transfer agents, attorneys-at-law, advisors, appraisers, brokers, or otherwise) in one or more capacities, and to pay compensation from the Trust Assets for services in as many capacities as such Person may be so elected, appointed, engaged, retained or employed, to prescribe the titles, powers and duties, terms of service and other terms and conditions of the election, appointment, engagement, retention or employment of such Persons and, except as prohibited by law, to delegate any of the powers and duties of the Trustee, the Advisor or the Oversight Committee to any one or more Trustees, Advisors, agents, officers, representatives, employers, independent contractors or other Persons.

(d)    To retain and set aside such funds out of the Trust Assets as the Trustee or Advisor (with the consent of the Oversight Committee) shall deem necessary or expedient to pay, or provide for the payment of, (i) unpaid claims, expenses, charges, liabilities, and obligations of the Secured Creditor Trust or the Debtors with respect to the Secured Creditor Trust Assets, (ii) contingencies, and (iii) expenses of administering the Trust Assets.

(e)    To do and perform any and all acts necessary or appropriate for the conservation and protection of the Trust Assets, including acts or things necessary or appropriate to maintain assets held by the Trustee pending sale or other disposition thereof or distribution thereof to the Second Lien Agent, on behalf of, and for the benefit of, the Beneficiaries.

(f)    To hold legal title to property of the Secured Creditor Trust in the name of the Secured Creditor Trust, or in the name of the Trustee, or of any other Person, without disclosure of the interest of the Secured Creditor Trust therein.

11

(g)     To cause any investments or any part of the Trust Assets to be registered and held in the name of the Trustee or in the names of a nominee or nominees without increase or decrease of liability with respect thereto.

(h)     To institute or defend actions or declaratory judgments or other actions and to take such other action, in the name of the Secured Creditor Trust, the Trustee or the Debtors with respect to the Secured Creditor Trust Assets or as otherwise required, as the Trustee or Advisor (with the consent of the Oversight Committee) may deem necessary or desirable to enforce any instruments, contracts, agreements, causes of action or rights relating to or forming a part of the Trust Assets, or in connection with, related to or arising from the activities of the Debtors with respect to the Secured Creditor Trust Assets, and to pay the Trust Assets to Persons who are entitled to be indemnified by the Secured Creditor Trust pursuant to the Plan or other contracts to which the Trustee is a party.

(i)     To determine conclusively from time to time the value of and to revalue the securities and other property of the Secured Creditor Trust, in accordance with public market quotations, independent appraisals or other information as the Trustee, the Advisor or the Oversight Committee, as case may be, deems satisfactory.

(j)     To cancel, terminate, or amend any instruments, contracts, agreements, obligations or causes of action relating to or forming a part of the assets or liabilities of the Secured Creditor Trust, and to execute new instruments, contracts, agreements, obligations or causes of action, notwithstanding that the terms of any such instruments, contracts, agreements, obligations or causes of action may extend beyond the terms of this Secured Creditor Trust, provided that no such new instrument, contract, agreement, obligation or cause of action shall permit the Trustee, the Advisor or the Oversight Committee to engage in any activity prohibited by Section 6.1 of this Agreement.

(k)     To vote by proxy or otherwise on behalf of the Beneficiaries and with full power of substitution of all securities held by the Trustee hereunder and to exercise every power, election, discretion, option and subscription right and give every notice, make every demand, and to do every act or thing in respect to any securities held by the Trustee which the Trustee might or could do if it were the absolute owner thereof.

(l)     In connection with the sale or other disposition or distribution of any securities held by the Trustee, to comply with the applicable Federal and state securities laws, and to enter into agreements relating to sale or other disposition or distribution thereof.

(m)     To authorize transactions between corporations or other entities whose securities or other interests therein (either in the nature of debt or equity) are held by the Trustee as part of the Trust Assets.

(n)     To perform any act authorized, permitted, or required under any instrument, contract, agreement, right, obligation or cause of action relating to or forming a part of the Trust Assets whether in the nature of an approval, consent, demand or notice thereunder or otherwise, unless such act would require the consent of the Beneficiaries in accordance with the express provisions of this Agreement.

ARTICLE VII

CONCERNING THE TRUSTEE, ADVISOR, OVERSIGHT COMMITTEE, SECOND LIEN AGENT, BENEFICIARIES, EMPLOYEES AND AGENTS

7.1     *Generally*.  Each of the Trustee, the Advisor and the initial member of the Oversight Committee accepts and undertakes to discharge the Secured Creditor Trust upon the terms and conditions hereof on behalf of the Beneficiaries.  The Trustee, the Advisor and the Oversight Committee shall exercise such of the rights and powers vested in each of them by this Agreement, and use the same degree of care and skill in their exercise as is required of each of them under the laws of the State of Delaware.  No provision of this Agreement shall be construed to relieve the Trustee, the Advisor or the Oversight Committee from liability resulting from their respective willful misconduct, gross negligence or fraud.

(a)     No Trustee, Advisor or Oversight Committee member shall be responsible for the acts or omissions of any other Trustee, Advisor, Oversight Committee member or Beneficiary if done or omitted without its actual knowledge or consent unless it shall be proved that such Trustee, Advisor or Oversight Committee member was grossly negligent in ascertaining the pertinent facts, and no successor Trustee, successor Advisor or new member of the Oversight Committee shall be in any way responsible for the acts or omissions of any Trustee, Advisor or Oversight Committee member in office prior to the date on which it becomes a Trustee, Advisor or Oversight Committee member, as the case may be.

(b)     No Trustee, Advisor or Oversight Committee member shall be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Trustee, Advisor or any Oversight Committee member.

(c)     In the absence of bad faith on the part of the Trustee, the Advisor or an Oversight Committee member, the Trustee, the Advisor and any Oversight Committee member may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee, the Advisor and/or any Oversight Committee member and conforming to the requirements of this Agreement.

(d)     No Trustee, Advisor or Oversight Committee member shall be liable for any error of judgment made in good faith.

13

(e)     Whenever, pursuant to the terms of this Agreement, a Trustee acts at the direction of the Advisor and/or the Oversight Committee as to any particular matter, such Trustee shall, as provided in Section 3313 of Title 12 of the Delaware Code, have no liability with respect to such matter except in cases of the Trustee's own willful misconduct, gross negligence or fraud, proven by clear and convincing evidence in the court then having primary jurisdiction over the Secured Creditor Trust.

Notwithstanding the foregoing, the Trustee shall act solely at the direction, and with the prior consent, of the Advisor and, where the consent of the Oversight Committee is required, the Oversight Committee, except as to functions which are purely clerical or administrative in nature.

7.2     _Reliance by Trustee, Advisor or Oversight Committee_.  Except as otherwise provided in Section 7.1 of this Agreement:

(a)     The Trustee, the Advisor and the Oversight Committee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(b)     The Trustee, the Advisor and the Oversight Committee may consult with legal counsel, auditors, actuaries, tax professionals or other experts to be selected by them, including firms of which a Trustee, Advisor or member of the Oversight Committee may be a member or with which a Trustee, Advisor or member of the Oversight Committee may be associated, and the advice or opinion of such counsel, auditors or other experts shall be full and complete personal protection to each Trustee, Advisor, member of the Oversight Committee, officer, employee and agent of the Secured Creditor Trust in respect of any action taken or suffered by them in good faith and in reliance on, or in accordance with, such advice or opinion.

(c)     Persons dealing with the Trustee, the Advisor or the Oversight Committee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee, the Advisor or the Oversight Committee to such Person in carrying out the terms of this Secured Creditor Trust, and neither the Trustee, the Advisor nor any member of the Oversight Committee shall have any personal or individual obligation to satisfy any such liability.

(d)     Each of the Trustee, the Advisor and the Oversight Committee shall cause the following legend to be included in all correspondence and any written instrument creating an obligation of the Secured Creditor Trust:

"Pursuant to the Secured Creditor Trust Agreement dated as of October [•], 2015 (the "Trust Agreement"), and subject to all of the provisions of the Trust Agreement, none of the Beneficiaries, the Second Lien Agent, the Trustee, the Advisor, the Oversight Committee or any of its members

14

(as each such term is defined in the Trust Agreement) or any officer, employee or agent of the Secured Creditor Trust shall be personally liable to any third party in respect of any claim or obligation, and any such third party shall look solely to the Secured Creditor Trust's assets for the payment of any such claim or the performance of any such obligation."

However, the omission of such provision from any such instrument shall not render the Beneficiaries, the Second Lien Agent, the Trustee, the Advisor, the Oversight Committee or their respective agents liable, nor shall the Trustee, the Advisor or the Oversight Committee be liable to anyone for such omission.

7.3    *Liability to Third Persons*.  Neither the Second Lien Agent nor any Beneficiary or Debtor shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person in connection with the Trust Assets or the affairs of this Secured Creditor Trust; and no Trustee, Advisor, Oversight Committee member, officer, employee or agent of this Secured Creditor Trust shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person in connection with the Trust Assets or the affairs of this Secured Creditor Trust, except for his or its own willful misconduct, knowingly and intentionally committed in bad faith; and all such other Persons shall look solely to the Trust Assets for satisfaction of claims of any nature arising in connection with the affairs of this Secured Creditor Trust.  The Advisor, acting with the consent of the Oversight Committee, may direct the Trustee to maintain insurance for the protection of the Trust Assets, the Beneficiaries, the Second Lien Agent, the Trustee, the Advisor, the Oversight Committee or the officers, employees and agents of the Secured Creditor Trust in such amount as the Advisor (with the consent of the Oversight Committee) shall deem adequate to cover all foreseeable liability to the extent available.

7.4    *Recitals*.  Any act or written instrument creating an obligation of this Secured Creditor Trust shall be conclusively taken to have been executed or done by the Trustee, the Advisor, member of the Oversight Committee or an officer, employee or agent of this Secured Creditor Trust only in its capacity as Trustee, Advisor or member of the Oversight Committee under this Agreement or in its capacity as officer, employee or agent of the Secured Creditor Trust.

7.5    *Indemnification*.  Each Trustee, Advisor, Oversight Committee member, officer, employee and agent (including any Agent) of the Secured Creditor Trust (each, an "Indemnified Person", and collectively, the "Indemnified Persons") shall be indemnified out of the Trust Assets against all liabilities, damages and expenses, including amounts paid in satisfaction of judgments, in compromise or as fines and penalties, and counsel fees, reasonably incurred by such Indemnified Person in connection with the defense or disposition of any action, suit or other proceeding by the Secured Creditor Trust or any other Person, whether administrative, civil or criminal, in which such Indemnified Person may be involved or with which such Indemnified Person may be threatened (i) in the exercise and performance of any of its powers and duties hereunder and (ii) in the case of any Trustee, Advisor, Oversight Committee member or

15

any officer, employee or agent of the Secured Creditor Trust, while in office or thereafter, by reason of its being or having been such a Trustee, Advisor, Oversight Committee member, officer, employee or agent of the Secured Creditor Trust; provided, however, that an Indemnified Person shall not be entitled to such indemnification in respect of any matter which has been determined by a final judgment (after exhaustion of all appeals) of a court of competent jurisdiction to have resulted from such Indemnified Person's willful misconduct, gross negligence or fraud.  The rights accruing to any Indemnified Person under these provisions shall not exclude any other right to which the Indemnified Person may be lawfully entitled; provided, however, that no Indemnified Person may satisfy any right of indemnity or reimbursement granted herein or to which the Indemnified Person may be otherwise entitled except out of the Trust Assets, and neither the Second Lien Agent nor any Beneficiary shall be personally liable to any Person with respect to any claim for indemnity or reimbursement or otherwise.  The Advisor, acting with the consent of the Oversight Committee, may direct the Trustee to make advance payments in connection with indemnification under this Section, provided that the Indemnified Person shall have given a written undertaking to the Trustee, the Advisor and the Oversight Committee to repay any amount advanced to the Indemnified Person and to reimburse the Secured Creditor Trust in the event it is subsequently determined by a final judgment of a court of competent jurisdiction, after exhaustion of all appeals, that pursuant to the first sentence of this Section 7.5 the Indemnified Person is not entitled to such indemnification.  The Advisor, acting with the consent of the Oversight Committee, may direct the Trustee to purchase such insurance as the Advisor feels, in the exercise of its discretion, adequately insures that each Indemnified Person shall be indemnified against any such loss, liability or damage pursuant to this Section.  Notwithstanding the foregoing, nothing contained herein shall restrict the right of the Advisor, acting with the consent of the Oversight Committee, to direct the Trustee to indemnify or reimburse an Indemnified Person in any proper case even though not specifically provided for herein, nor shall anything contained herein restrict the right of any Indemnified Person to contribution under applicable law.

7.6    *Rights of Trustee, Advisor, Oversight Committee Members, Employees, Independent Contractors and Agents to Engage in Other Business*.  Any Trustee, Advisor, Oversight Committee member, officer, employee, manager, independent contractor or agent may, in his or its personal capacity or in a capacity of Trustee, Advisor, officer, director, partner, member, agent, employee of any Person or otherwise, have business interests and holdings similar to or in addition to those relating to the Secured Creditor Trust.  Subject to the provisions of Article V hereof, any Trustee, Advisor, Oversight Committee member, officer, employee, manager, independent contractor or agent of the Secured Creditor Trust may be a trustee, advisor, officer, director, partner, member, agent, employee or independent contractor of, or otherwise have a direct or indirect interest in, any Person who may be engaged to render advice or services to the Secured Creditor Trust, and may receive compensation from such Person as well as compensation as Trustee, Advisor, Oversight Committee member, officer, employee, manager, independent contractor or agent or otherwise hereunder.  None of these activities shall be deemed to conflict with his or its duties as Trustee, Advisor, Oversight Committee member, employee, independent contractor or agent.

16

# ARTICLE VIII

## PROTECTION OF PERSONS DEALING WITH THE TRUSTEE, ADVISOR OR OVERSIGHT COMMITTEE

8.1 *Action by Trustees, Advisors or Oversight Committee Members*. If more than one Trustee, Advisor or member of the Oversight Committee of the Secured Creditor Trust, respectively, is serving, all action required or permitted to be taken by the Trustee, Advisor or Oversight Committee, as the case may be, in such respective capacities, shall be taken (i) at a meeting at which a quorum is present, having been duly called by one or more of the Trustees, Advisors or Oversight Committee members, as the case may be, on at least twenty-four (24) hours prior written or telephonic notice to all of the Trustees, Advisors or Oversight Committee members then serving, or (ii) without a meeting, by a written consent, vote, resolution, or other writing signed by all the Trustees, Advisors or Oversight Committee members then serving, as the case may be. Notice of a meeting may be waived in writing by any Trustee, Advisor or Oversight Committee member, as applicable, either before or after such meeting and the attendance of a Trustee, Advisor or Oversight Committee member shall constitute a waiver of notice of such meeting except where a Trustee, Advisor or Oversight Committee member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting has not been lawfully called or convened. All or any one or more Trustees, Advisors, or Oversight Committee members, as the case may be, may participate in the meeting of the Trustees, Advisors or Oversight Committee, as applicable, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other and participation in a meeting pursuant to which such communications are used by a Trustee, Advisor or Oversight Committee member shall constitute presence in person at such meeting. Except where this Agreement otherwise provides, all action taken at such a meeting shall be by vote or resolution of a majority of such of the Trustees, Advisors or Oversight Committee members, as the case may be, as are present, and shall have the same force and effect as if taken by all the Trustees, Advisors or Oversight Committee members, as the case may be. A majority of each of the Trustees, Advisors or Oversight Committee members, as applicable, then serving shall constitute a quorum. Any action taken by the Trustees, Advisors or Oversight Committee members, as applicable, pursuant to this Section 8.1 may be implemented by any one Trustee, Advisor or Oversight Committee member, as the case may be, unless otherwise specified by the Trustees, Advisors or Oversight Committee members authorizing or approving such action. Such implementation may include, without limitation, the execution and delivery of documents. Without limiting any of the foregoing provisions of this Article VIII and subject to the approval of the Trustees, Advisors or Oversight Committee as herein provided, any one Trustee may hold title to, or an interest in, any and all of the Trust Assets, for and on behalf of the Secured Creditor Trust and the Trustees.

8.2 *Delegation*. Subject to prior approval by the Oversight Committee, any Trustee or Advisor may, at any time and from time to time, by an instrument in writing, delegate any or all of its rights, powers, duties, authority and privileges, whether or not discretionary, to any other Trustee or Advisor, as the case may

17

be, for such period or periods of time as may be specified in such written instrument; provided, however, that any such instrument shall be revocable at any time and that any Trustee or Advisor who is granted any discretionary power hereunder may not delegate such discretionary power to any Trustee or Advisor who is not granted such discretionary power.

        8.3     _Reliance on Statement by Trustee, Advisor or Oversight Committee Member_. Any Person dealing with a Trustee, Advisor or Oversight Committee member shall be fully protected in relying upon the Trustee's, Advisor's or Oversight Committee member's certificate signed by any one or more of the Trustees, Advisors or Oversight Committee members, as the case may be, that they have authority to take any action under this Secured Creditor Trust. Any Person dealing with a Trustee, Advisor or Oversight Committee member shall be fully protected in relying upon the Trustee's, Advisor's or Oversight Committee member's certificate setting forth the facts concerning the calling of any meeting of the Trustees, Advisors or Oversight Committee, the giving of notice thereof, and the action taken at such meeting.

## ARTICLE IX

## COMPENSATION OF TRUSTEE, ADVISOR AND OVERSIGHT COMMITTEE

        9.1     _Amount of Compensation_. Each of the Trustee and Advisor shall receive compensation from the Trust Assets for all services rendered in the performance of its duties in accordance with this Agreement. The fees shall be paid in the ordinary course without further Court order.

        For compensation for services rendered, Advisor shall be paid its customary hourly rate for services performed by its professionals that are in effect from time to time. Advisor's current customary hourly rate for its professionals is $395. Any increase in the $395 hourly rate shall be subject to approval by the Oversight Committee, which approval shall not be unreasonably withheld.

        For compensation for services rendered, Trustee shall be paid its fees as set forth in its Fee Proposal to Serve as Trustee, dated as of November 3, 2015, a copy of which has been reviewed and approved by each of the signatories to this Agreement. For the avoidance of doubt, no fees shall be paid or payable by the Debtors or Liquidating Debtors.

        9.2     _Expenses_. Each Trustee, Advisor, Oversight Committee member, officer or employee of the Secured Creditor Trust shall be reimbursed from the Trust Assets for all expenses incurred by him, her or it in the performance of his, her or its duties in accordance with this Agreement. The expenses incurred (including, without limitation, costs for fees and expenses of legal counsel, auditors, actuaries, tax professionals, or other experts to be employed under Section 7.2 of this Agreement) shall be paid in the ordinary course without further Court order. For the avoidance of doubt, all expenses shall be paid out of the Trust Assets and no expenses shall be paid or payable by the Debtors or Liquidating Debtors.

ARTICLE X

TRUSTEES, ADVISORS, OVERSIGHT COMMITTEE MEMBERS AND
SUCCESSORS

10.1 *Number and Qualification of Trustees, Advisors and Oversight
Committee Members*. Subject to the provisions of Section 10.3 of this Agreement
relating to the period pending the appointment of a successor Trustee, Advisor or
Oversight Committee member, (i) there shall always be at least one Trustee of this
Secured Creditor Trust who shall be authorized to act as a corporate fiduciary under the
laws of the State of Delaware (a "Delaware Trustee"), (ii) there shall always be at least
one Advisor of this Secured Creditor Trust, (iii) there shall always be at least one
Oversight Committee member of this Secured Creditor Trust, and (iv) each Trustee,
Advisor and Oversight Committee member of this Secured Creditor Trust shall be a
citizen and resident of or a corporation or limited liability company which is incorporated
under the laws of a state of the United States. Within the limits set forth in this Section
10.1, the number of Trustees, Advisors or Oversight Committee members may be
increased or decreased from time to time by the Advisor, in its discretion, acting with the
consent of the Oversight Committee.

If any corporate Trustee, Advisor or Oversight Committee member shall
ever change its name, or shall reorganize or reincorporate, or shall merge with or into or
consolidate with any other bank or trust company, such corporate Trustee, Advisor or
Oversight Committee member shall be deemed to be a continuing entity and shall
continue to act as a Trustee, Advisor or Oversight Committee member hereunder, as the
case may be, with the same liabilities, duties, powers, titles, discretions and privileges as
are herein specified for such Trustee, Advisor or Oversight Committee member.

10.2 *Resignation and Removal of Trustees, Advisors and Oversight
Committee Members*. Any Trustee, Advisor or Oversight Committee member may resign
and be discharged from the Secured Creditor Trust hereby created by giving written
notice thereof to each remaining Trustee, Advisor and Oversight Committee member at
their respective addresses as they appear herein or in the records of the Trustee. Such
resignation shall become effective on the day specified in such notice or upon the
appointment of such Trustee's, Advisor's or Oversight Committee member's successor
and such successor's acceptance of such appointment, whichever is earlier; provided,
however, that any such resignation by a Trustee who is the sole Delaware Trustee shall
not become effective until a successor Delaware Trustee has been appointed and has
accepted such appointment. If no successor Delaware Trustee shall have been appointed
and accepted its appointment as provided in this Section 10.2 within ninety (90) days
after delivery of an instrument of resignation in accordance with this Section 10.2, the
resigning Delaware Trustee or the Advisor, acting with the consent of the Oversight
Committee (which shall not be unreasonably withheld), may petition at the expense of the
Secured Creditor Trust any court of competent jurisdiction for the appointment of a
successor Delaware Trustee. Such court may thereupon, after prescribing such notice, if
any, as it may deem proper and prescribe, appoint a successor Delaware Trustee.

934155.02A-CHISR01A - MSW

(b)        Any Trustee or Advisor may be removed by the Oversight Committee by giving written notice thereof to each remaining Trustee or Advisor, as the case may be, at their respective addresses as they appear in the records of the Trustee. Any such removal shall become effective on the day specified in such notice or upon the appointment of such Trustee's or Advisor's successor and such successor's acceptance of such appointment, whichever is earlier; provided, however, that any such removal of a Trustee who is the sole Delaware Trustee shall not become effective until a successor Delaware Trustee has been appointed and has accepted such appointment.  If no successor Delaware Trustee shall have been appointed and accepted its appointment as provided in this Section 10.2 within ninety (90) days after delivery of an instrument of removal in accordance with this Section 10.2, the Advisor, acting with the consent of the Oversight Committee (which shall not be unreasonably withheld), may petition at the expense of the Secured Creditor Trust any court of competent jurisdiction for the appointment of a successor Delaware Trustee.  Such court may thereupon, after prescribing such notice, if any, as it may deem proper and prescribe, appoint a successor Delaware Trustee.

10.3        *Appointment of Successor Trustee, Advisor or Oversight Committee Member*.  Should at any time a Trustee, Advisor or Oversight Committee member resign or be removed, die, become mentally incompetent or incapable of action (as determined by the Oversight Committee, in its sole discretion), or be adjudged bankrupt or insolvent, a vacancy shall be deemed to exist and a successor may be appointed by the Advisor, acting with the consent of the Oversight Committee (if a member of the Oversight Committee is then serving).  If at any time there shall be no Advisor of this Secured Creditor Trust for any reason, the Oversight Committee may appoint a successor Advisor.  If at any time there shall be no member of the Oversight Committee of this Secured Creditor Trust for any reason, the Advisor or, if no Advisor is then serving, a majority of the Beneficiaries may appoint a successor member of the Oversight Committee.  Pending the appointment of a successor Trustee, Advisor or member of the Oversight Committee, the remaining Trustees, Advisors or members of the Oversight Committee then serving, as the case may be, if any, may take any action in the manner set forth in Section 8.1 of this Agreement.

10.4        *Acceptance of Appointment by Successor Trustee, Advisor or Oversight Committee Member*.  Any successor Trustee, Advisor or Oversight Committee member appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver a counterpart thereof to each other Trustee, Advisor and Oversight Committee member and, in case of a resignation, to the retiring Trustee, Advisor or Oversight Committee member, as the case may be.  Thereupon such successor Trustee, Advisor or Oversight Committee member shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Secured Creditor Trust hereunder with like effect as if originally named herein; provided, however, that a retiring Trustee, Advisor or Oversight Committee member shall, when requested in writing by a successor Trustee, Advisor or Oversight Committee member or by the remaining Trustees, Advisors or Oversight Committee members, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee, Advisor or Oversight Committee member, all the estates, properties,

20

rights, powers and trusts of such retiring Trustee, Advisor or Oversight Committee member, and shall duly assign, transfer and deliver to such successor Trustee, Advisor or Oversight Committee member all property and money held by it hereunder.

10.5    *Bonds*.  Unless a bond is required by law, no bond shall be required of any original Trustee, Advisor or Oversight Committee member hereunder. Unless required by a majority vote of the Trustees, Advisors or Oversight Committee members prior to a successor Trustee's, Advisor's or Oversight Committee member's acceptance of an appointment as such pursuant to Sections 10.2 and 10.4, as applicable, or unless a bond is required by law and such requirement cannot be waived by or with approval of the Beneficiaries, no bond shall be required of any successor Trustee, Advisor or Oversight Committee member hereunder.  If a bond is required by law, no surety or security with respect to such bond shall be required unless required by law and such requirement cannot be waived by or with approval of the Beneficiaries.  If a bond is required by a majority vote of the Trustees, Advisors or Oversight Committee members, the Trustees,  Advisors or Oversight Committee members, as the case may be, shall determine whether, and to what extent, a surety or security with respect to such bond shall be required.

10.6    *Directions in Writing*.  Notwithstanding any other provision of this Agreement, any direction required or permitted to be made to a Trustee or any consent required or permitted to be given to an Advisor under the terms of this Agreement shall be delivered to the Trustee or Advisor, as the case may be, in writing.

10.7    *Rules Governing Advisor*.  The initial Advisor, acting with the consent of the Oversight Committee, shall establish internal rules of operation for the Advisor, including the manner in which decisions shall be made.  The Advisor shall promptly inform the Trustee and the Oversight Committee, in writing, of its initial rules and any changes thereto.

10.8    *Rules Governing Oversight Committee*

The initial member of the Oversight Committee shall establish internal rules of operation for the Oversight Committee, including the manner in which decisions shall be made. The Oversight Committee shall promptly inform the Advisor, in writing, of its initial rules and any changes thereto.

## ARTICLE XI

## CONCERNING THE BENEFICIARIES

11.1    *Evidence of Action by Beneficiaries*.  Whenever in this Agreement it is provided that the Beneficiaries may take any action (including the making of any demand or request, the giving of any notice, consent, or waiver, the appointment of a successor member of the Oversight Committee, or the taking of any other action), the fact that the Beneficiaries have taken such action shall be evidenced by an instrument or any

21

number of instruments of similar tenor executed by the Beneficiaries in person or by their agent or attorney appointed in writing.

11.2    _Limitation on Suits by Beneficiaries_.  No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party other than the Trustee, Advisor or Oversight Committee upon or under or with respect to the Secured Creditor Trust estate or the agreements relating to or forming part of the Secured Creditor Trust estate, and the Beneficiaries do hereby waive any such right, unless the Beneficiaries shall have made written request upon the Advisor, acting with the consent of the Oversight Committee, to direct the Trustee to institute such action or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee reasonable indemnity against the costs and expenses to be incurred therein or thereby, and (i) the Advisor for thirty (30) days after its receipt of such notice and request shall have unreasonably failed to direct the Trustee to institute any such action or proceeding (including any such unreasonably failure attributable to the Oversight Committee's unreasonable failure to consent to such action) or (ii) the Trustee for thirty (30) days after its receipt of such direction shall have failed to institute any such action or proceeding.

11.3    _Requirement of Undertaking_.  The Trustee, the Advisor or the Oversight Committee may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee, the Advisor or the Oversight Committee for any action taken or omitted by it as Trustee, Advisor or Oversight Committee, as the case may be, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; provided, however, that the provisions of this Section shall not apply to any suit by the Trustee.

## ARTICLE XII

## AMENDMENTS

12.1    *Amendment of Agreement*.  This Agreement may be amended from time to time by the Trustee, at the direction of the Advisor, acting with the consent of the Oversight Committee, to better give effect to the purposes of this Agreement (including to satisfy the requirements of the Internal Revenue Code and Treasury Regulations thereunder with respect to liquidating trusts and grantor trusts), provided such amendment does not result in the material alteration of beneficial interests of the Beneficiaries; provided further that no such amendment shall impose any obligations, financial or otherwise on the Debtors, Liquidating Debtors, or the GUC Trust, or violate any provision of the Plan or Confirmation Order.  Any amendment of this Agreement pursuant to this Section 12.1 shall be made by a written declaration of such amendment executed by the Trustee.

12.2    *Notice and Effect of Amendment*.  Promptly after the execution by the Trustee of any such declaration of amendment, the Trustee shall give notice of the substance of such amendment to the Debtors or the Liquidating Debtors (as applicable), the Second Lien Agent and to the Beneficiaries or, in lieu thereof, the Trustee may send a copy of the amendment to the Debtors or the Liquidating Debtors (as applicable), the Second Lien Agent, and to each Beneficiary.  Upon the execution of any such declaration of amendment by the Trustee, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties, and immunities of the Trustee, the Advisor, the Oversight Committee, the Second Lien Agent and the Beneficiaries under this Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendments, and all the terms and conditions of any such amendment shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    *Filing Documents*.  This Agreement shall be filed or recorded in such office or offices as the Trustee may determine to be necessary or desirable or as the Advisor, acting with the consent of the Oversight Committee, shall direct.  A copy of this Agreement and all amendments hereto shall be maintained in the offices of  the Advisor (or any successor Advisor) and shall be available at all times during regular business hours for inspection by the Second Lien Agent or by any Beneficiary or their respective duly authorized representatives.

13.2    *Intention of Parties to Establish Trust*.  This Agreement is not intended to create and shall not be interpreted as creating a corporation, association, partnership, or joint venture of any kind for purposes of federal income taxation or for

934155.02A-CHISR01A - MSW

any other purpose.  This Agreement is intended to create a trust, and the Secured Creditor Trust created hereunder shall be governed and construed in all respects as a trust.

13.3    *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.  The Debtors, the Trustee, the Advisor, the Oversight Committee and the Beneficiaries consent and agree that this Agreement shall be governed by and construed in accordance with such laws.

13.4    *Severability*.  In the event any provision of this Agreement or the application thereof to any Person or circumstances shall be finally determined by a court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

13.5    *Notices*.  Any notice or other communication by the Trustee or the Advisor to the Second Lien Agent or to any Beneficiary shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the Second Lien Agent or such Beneficiary, as the case may be, at its address as shown in the records of the Secured Creditor Trust.

All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, by any form of public or private mail or courier, or by fax, email or other electronic means to the Trustee, the Advisor, the Debtors, the Liquidating Debtors, or the Oversight Committee, as the case may be, at the following addresses or at such other addresses as shall be specified by the Trustee, the Advisor, the Debtors, the Liquidating Debtors,  or the Oversight Committee by like notice:

**If to the Trustee**


Wilmington Trust Company
Attn: Institutional Client Services
Rodney Square North
1100 North Market Street
Wilmington, DE  19890

with a copy to:

Pepper Hamilton LLP
Attn: David M. Fournier and John H. Schanne II
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19801

934155.02A-CHISR01A - MSW

**If to the Advisor**

Clingman & Hanger Management Associates, LLC
Attn: W. Edward Clingman, Jr. and Teresa S. Hanger
880 Technology Park Drive
Glen Allen, VA 23059

with a copy to:

Pepper Hamilton LLP
Attn: David M. Fournier and John H. Schanne II
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19801

**If to Silver Point Finance, LLC**


Silver Point Finance, LLC
Attn: Anthony J. DiNello
2 Greenwich Plaza
Greenwich, CT 06380


**If to the Debtors (before the Effective Date):**

WilliamsMarston LLC
Attn:  Landen C. Williams
16th Floor
800 Boylston Street
Boston, MA 02199

With a copy to:

Gibson, Dunn & Crutcher LLP
Attn:  Michael A. Rosenthal and Jeremy L. Graves
200 Park Avenue, Suite 4700
New York, New York 10166-0193

**If to the Liquidating Debtors (after the Effective Date):**


EisnerAmper LLP
Attn: Anthony R. Calascibetta
111 Wood Avenue South
Iselin, NJ 08830-2700

With a copy to:

Lowenstein Sandler LLP
Attn:  Sharon Levine, Wojciech F. Jung, and Andrew Behlmann
65 Livingston Avenue
Roseland, NJ 07068


       13.6   *Interpretation*. All paragraph and section headings and captions herein are used for reference only and in no way limit or describe the scope or intent of, or in any way affect, this Agreement.

       (b)    Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular.  All pronouns and variations of a

pronoun in this Agreement will be deemed to refer to the feminine, masculine, or neuter, and to the singular or plural, as the identity of the Person or Persons referred to may require.

      13.7   *Counterparts*.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

934155.02A-CHISR01A - MSW

IN WITNESS WHEREOF, each of the Debtors has caused this Agreement to be executed by an authorized signatory, and each of the Trustee, the Advisor and the Oversight Committee member herein has executed this Agreement, as Trustee, Advisor or Oversight Committee member, as the case may be, and not in its individual capacity, this [•] day of November, 2015.

**[SIGNATURES]**