# EXHIBIT 1

## WIND-DOWN SETTLEMENT

**EXECUTION VERSION**

## STANDARD REGISTER WIND-DOWN SETTLEMENT

October 29, 2015

This settlement agreement (this "**Settlement Agreement**") sets forth the terms of a settlement among SRC Liquidation Company and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), Silver Point Finance, LLC, in its capacity as administrative agent under the Debtors' prepetition Second Lien Term Loan Facility (in such capacity, the "**Agent**"), and Taylor Corporation ("**Taylor**") concerning various issues relating to the wind-down of the Debtors' estates and the resolution of certain disputes related thereto. Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Asset Purchase Agreement dated as of June 19, 2015 between the Debtors and Taylor (the "**Asset Purchase Agreement**").

1.     Settlement Consideration

$750,000 (the "**Settlement Payment**") shall be paid to the Agent or the Secured Creditor Trust, as applicable,[1] by the Debtors promptly after entry of a final order of the Bankruptcy Court approving the settlement contemplated by this Settlement Agreement. The Settlement Payment will resolve any and all claims by the Agent and the Second Lien Lenders, and any of their professionals and other advisors, against the Debtors or their estates (other than claims to the Excluded Assets which secure the unpaid balance of the Second Lien Debt pursuant to the settlement between the Debtors, the Agent, and the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "**Committee**"), dated as of June 19, 2015 and filed at docket number 696 in the Debtors' chapter 11 cases (the "**Committee Settlement**")), including without limitation (i) any claims to any further portion of, or further distribution from, the Wind-Down Amount (including, for the avoidance of doubt, with respect to professional fees and expenses presented for payment on October 9, 2015); (ii) any claims to any distribution from the Avoidance Actions (as defined in the Committee Settlement), the D&O Insurance and proceeds of the D&O Claims (both as defined in the Committee Settlement), or the Debtors' right to repayment of the GUC Trust Seed Funding Amount (as defined in the Committee Settlement); (iii) any claims to any deposit from the Wind-Down Amount related to the agreement with Anthem to administer the Debtors' incurred but not reported medical insurance claims; (iv) any claim for substantial contribution; (v) any amount paid or to be paid, either directly to third parties or to reimburse the Debtors for payments made by them, by Taylor under the Asset Purchase Agreement for the Assumed Liabilities and various employee liabilities (but specifically excluding (x) any recovery from the account maintained at Bank of America, N.A. which contains the cash that secures the Debtors' obligations under that certain Cash Collateral Agreement Regarding Letters of Credit contained in the letter dated as of July 31, 2015, by and between The Standard Register Company and Bank of America, N.A. and (y) any refund to the Debtors as a result of any overpayments to third parties that constitute Excluded Assets pursuant

---

[1]  As used herein, "Secured Creditor Trust" means one or more trusts or other suitable vehicles established for purposes of holding and administering certain Excluded Assets for the benefit of the secured lenders under the Second Lien Term Loan Facility.

to Section 2.2(e) of the Asset Purchase Agreement); (vi) any claims to be reimbursed for costs or expenses or to be provided with any other form of adequate protection pursuant to either the interim or the final order that approved the DIP Credit Agreement; (vii) any claims to any refunds that the Debtors have agreed to pay over to Taylor from premiums paid by Taylor on account of property, casualty or general liability insurance for the post-Closing period; (viii) any claims against a professional fee escrow account (or other similar account) established in connection with a chapter 11 plan of liquidation; (ix) any claims against or distribution from the unsecured creditor trust created pursuant to the Committee Settlement (at docket no. 888), and (x) notwithstanding anything else herein, any claims to or on account of retainers held, returned to the Debtors, or distributed on the Debtors' behalf by professionals employed by the Debtors.

(a) Notwithstanding anything to the contrary in any prior agreement, the Debtors shall relinquish any claim to the Settlement Payment.

(b) This Settlement Agreement is subject to approval of Taylor to the provisions hereof.

(c) Unless and until this Settlement Agreement is approved by the bankruptcy court and has become effective, it shall not be admissible in any litigation or other proceedings among the parties for any purpose prohibited by Rule 408 of the Federal Rules of Evidence or any state or local rule of similar import.

(d) The Second Lien Term Lenders shall be responsible for the costs and expenses incurred by the Agent in preparing the Secured Creditor Trust Agreement and negotiation of the terms of such Trust Agreement and the Debtors' chapter 11 plan of liquidation. The Agent acknowledges and agrees that, on and after the plan effective date, neither a plan nor the Trust Agreement shall impose any obligations (whether monetary or otherwise) on the Reorganized Debtors for the administration of the Secured Creditor Trust or any obligations (whether monetary or otherwise, including without limitation for rent, real or personal property taxes, preservation, storage, maintenance, insurance, or disposition costs) with respect to the Excluded Assets on which the Agent retained a security interest pursuant to the Committee Settlement, except as provided below, including with respect to Terre Haute or as contemplated by the De Minimis Assets Order (as defined below).

2. Disposition of Excluded Assets

(a) Terre Haute facility ("**Terre Haute**")

(i) Terre Haute will not vest in the Secured Creditor Trust under any circumstances and neither the Agent nor the Secured Creditor Trust shall be responsible for the administration of the Terre Haute property or assume any liabilities or costs in connection therewith.

(ii) The Debtors will endeavor, but not be required, to sell Terre Haute to a third-party buyer prior to the effective date of a chapter 11 plan on an "as-is" basis (i.e., subject to all environmental liabilities and clean-up costs).

**EXECUTION VERSION**

> The net proceeds (i.e., proceeds net of costs of sale, costs incurred by the Debtors from and after the date hereof for environmental remediation and/or administration, closing costs and prorations, including real estate taxes) of any sale of Terre Haute shall be paid to the Agent or the Secured Creditor Trust, as applicable. The Agent will support any sale of Terre Haute on an as-is basis, or otherwise, regardless of the price.

(iii) The Debtors shall be entitled to retain lease payments or other revenue derived from Terre Haute at any time prior to the date Terre Haute is sold to the extent of any costs incurred by the Debtors in maintaining the Terre Haute property, any excess thereof to be remitted to the Agent or the Secured Creditor Trust, as applicable.

(b) All other real and personal property

(i) All other owned real property designated as an Excluded Asset by Taylor shall vest in the Secured Creditor Trust pursuant to the Order Establishing Procedures for Debtors to Transfer, Abandon, or Sell De Minimis Assets [Docket No. 1096] (the "**De Minimis Assets Order**"). For the avoidance of doubt, (a) the Debtors shall not lease back to Taylor any owned real property designated as an Excluded Asset except with the written consent of the Agent or the Secured Creditor Trust and (b) neither the Agent nor the Secured Creditor Trust shall lease back to Taylor any owned real property designated as an Excluded Asset without Taylor's agreement to pay any tax obligations that are or become due with respect to such property on or prior to the termination of such lease, including, without limitation, taxes owed as of the closing of the Taylor Sale whether or not such taxes relate to a pre-petition or post-petition period.

(ii) The terms of the De Minimis Assets Order shall continue to govern assets designated as Excluded Assets after the date of this Settlement Agreement; *provided, however,* that, in the event of a conflict between this Settlement Agreement and the De Minimis Assets Order, the De Minimis Assets Order shall govern.

3. Plan Support

(a) The Agent shall vote in favor of, and not object to, (a) the First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates [Docket No. 1086] (together with its implementation documents, the "**Plan**"), or (b) any other amended chapter 11 plan that the Debtors propose so long as it does not materially conflict with the Committee Settlement and this Settlement Agreement.

4. Taylor hereby agrees:

(a) Notwithstanding anything to the contrary in any prior agreement, including the Asset Purchase Agreement, Taylor shall relinquish any beneficial or reversionary

3

**EXECUTION VERSION**

interest or other claim to the Wind-Down Amount, including the Settlement Payment; and

(b) Taylor will not seek the return or proration of any portion of any monthly lease payment (or other payment made by Taylor related to a Potential Contract or Potential Asset) based on designation of such Potential Contract or Potential Asset as a Removed Contract or Removed Asset prior to expiration of the end of the period to which such payment relates.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized, where applicable.

**SRC LIQUIDATION COMPANY**

By: _/s/ Landen C. Williams_
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

**SR LIQUIDATION INTERNATIONAL, INC.**

By: _/s/ Landen C. Williams_
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

**SR LIQUIDATION TECHNOLOGIES, INC.**

By: _/s/ Landen C. Williams_
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

**SR LIQUIDATION HOLDING COMPANY**

By: _/s/ Landen C. Williams_
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

[Signature Page to Settlement Agreement]

SR LIQUIDATION MEXICO
HOLDING COMPANY

By: _____
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

IMLIQUIDATION, LLC

By: _____
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

SR LIQUIDATION OF PUERTO RICO INC.

By: _____
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

STANDARD REGISTER HOLDING, S. DE R.L. DE C.V.

By: _____
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

STANDARD REGISTER SERVICIOS, S. DE R.L. DE C.V.

By: _____
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

**STANDARD REGISTER DE MEXICO, S. DE R.L. DE C.V.**

By: /s/ Landen C. Williams
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

**SR LIQUIDATION TECHNOLOGIES CANADA ULC**

By: /s/ Landen C. Williams
Name: Landen C. Williams
Title: Chief Restructuring Officer and Treasurer

[Signature Page to Settlement Agreement]

**SILVER POINT FINANCE, LLC**
in the capacities set forth in the preamble hereto

By: _____
Name:
Title:   Michael A. Gatto
         Authorized Signatory

[Signature Page to Settlement Agreement]

**TAYLOR CORPORATION**

By: _____/s/ Suzanne M. Spellacy_____
Name: Suzanne M. Spellacy
Title: Vice President · General Counsel

[Signature Page to Settlement Agreement]