**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>SRC LIQUIDATION COMPANY, *et al.*,[1] | Chapter 11<br><br>Case No. 15-10541-BLS<br><br>(Jointly Administered)<br><br>**Hearing Date: January 13, 2016 at 11 a.m. (ET)**<br>**Objection Deadline: December 30, 2015**<br>**Related Docket No.: 698** |

**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE
CLAIM OF VOLT CONSULTING GROUP, LTD. PURSUANT TO THE ORDER
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

Volt Consulting Group, Ltd. ("Volt"), hereby moves for the entry of an order for

allowance and payment of its administrative expense claim pursuant to the *Order (I) Authorizing*

*the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims,*

*Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief* (the "Sale

Order") [D.I. 698].  In support of the motion, Volt respectfully represents as follows:

**JURISDICTION AND VENUE**

1.       The Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334.

Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief sought is 11

U.S.C. § 503(b)(1)(A).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: SRC Liquidation Company (5440); SR Liquidation Holding Company (3186); SR Liquidation Technologies, Inc. (3180); SR Liquidation International, Inc. (1861); iMLiquidation, LLC (6337); SR Liquidation of Puerto Rico Inc. (0578); SR Liquidation Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (4GR4); Standard Register de México, S. de R.L. de C.V. (4FN0); Standard Register Servicios, S. de R.L. de C.V. (43K5); and SR Liquidation Technologies Canada ULC (0001). The headquarters for the above-captioned Debtors is located at 600 Albany Street, Dayton, Ohio 45417.

2.      Pursuant to Local Rule 9013-1(h), Volt consents to the entry of final orders by this Court if it is determined that the Court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

## RELEVANT FACTUAL BACKGROUND

3.      On March 17, 2004, Volt's nominal predecessor[2] entered into a contract (the "Contract") with The Standard Register Company ("Standard"), amended at various times thereafter, to administer the process of identifying and securing contract workers for Standard ("Contract Worker Services"). Pursuant to the Contract, Volt manages around thirty-five (35) staffing companies (the "Vendors") that supply contract workers to the Debtors. Volt oversees the invoicing, billing, coordination, and payment of these Vendors for the Debtors.

4.      Under the terms of the Contract, Standard agreed to pay Volt for its administrative services.  Upon receipt of payment from Standard, Volt remitted payment to the Vendors.  Volt invoices Standard weekly and Standard is required to pay Volt within thirty (30) days of invoice date.

5.      Following Petition Date, Volt continued to provide Contract Worker Services to the Debtors and to Taylor Corporation ("Taylor") as the buyer of the Debtors' assets.  On May 8, 2015, this Court granted the *Order Approving Stipulation Withdrawing Emergency Motion of Volt Consulting Group, Ltd. for the Entry of an Order: (I) Granting Relief from the Automatic Stay under 11 U.S. § 362C. (D)(1), to the Extent Required, to Terminate its Contract with the Debtors; or, Alternatively, (II) Requiring the Debtors to Assume or Reject the Contract under 11 U.S.C. § 362 (D)(2) and Provide Adequate Assurance of Future Performance* (the "Stipulation Order") (D.I. 452).  The Stipulation Order approved a Stipulation agreed between the Debtors and Volt. *See*, Exh. 1 to Stipulation Order (D.I. 452-1) (the "Stipulation"). For ease of reference,

---

[2] On June 28, 2011, following a name change recorded with the Delaware Division of Corporations, the parties agreed that all references to Volt's predecessor in the Contract would be deemed to refer to Volt.

Stipulation Order and Stipulation are attached hereto as **Exhibit A**.  The Stipulation provided

that Debtors would make a "Catch-Up Payment" for services rendered and invoiced post-

petition. *Stipulation*, ¶ 3.  Pursuant to the Stipulation, Debtors agreed that the "Debtors shall

make any additional Catch-Up Payment for post-petition invoices unpaid more than fifteen (15)

days after the Debtors receive such invoices." *Id*, ¶ 4. To date, Volt has provided post-petition

invoices in the amount of $30,351 prior to the rejection of the Contract for which it has not been

paid (the "Post-Petition Services"). Attached hereto as **Exhibit B** is a true and correct summary

of the relevant information relating to the Post-Petition Services. Volt respectfully submits that it

is entitled to an administrative expense claim for the Post-Petition Services (the "Post-Petition

Services Claim").[3]

6.      Further, post-rejection, Taylor continues to avail of the Contract Worker Services

on the previous terms and conditions established through the trade relationship between the

parties, including the obligation to make Catch-Up Payments for post-petition invoices unpaid

more than fifteen days after invoice. *See*, Stipulation ¶ 4.  To date, Volt has provided post-

rejection services in the amount of $794,912 for which it has not been paid (the "Taylor

Services").  Attached hereto as **Exhibit C** is a true and correct summary of the relevant

information relating to the Taylor Services. Volt respectfully submits that it is entitled to an

administrative expense claim for the Taylor Services provided to date, and Volt reserves the right

to add additional amounts as an administrative expense for continued services provided accruing

between the date of rejection of the Contract and the effective date of any new contract for

---

[3] The invoices and back-up documents relating to the Post-Petition Services are voluminous and summaries are submitted in *lieu* thereof under Fed. R. Evid. 1006.  If there is any dispute as to the existence of the documents, they will be made available to the Debtors.

worker services negotiated or agreed between Taylor and Volt, if any (the "Taylor Services Claim"). [4]

## RELIEF REQUESTED

7.      This motion seeks the entry of an order: (i) allowing Volt's Post-Petition Services Claim as an administrative expense; (ii) allowing Volt's Taylor Services Claim as an administrative expense claim; (iii) requiring payment of the Post-Petition Services Claim within ten (10) business days; (iv) requiring payment of the Taylor Services Claim within ten (10) business days and reserving the right for Volt to claim additional amounts as an administrative expense.

## BASIS FOR RELIEF REQUESTED

8.      On June 19, 2015, this Court entered the Sale Order (D.I. 698).  The Sale Order provided that Taylor would have 90 days after the Closing to assume or reject executory contracts designated as "Potential Contracts."  *See*, Sale Order (D.I. 698), ¶ 27.

9.      Exhibit B to the Sale Order designated, "Amendment #9 to Managed Services Program Full Supplier Contract Master Agreement" ("Amendment #9") as a potential contract to be assumed. *See*, **Exhibit D** attached hereto, p. 124. The Sale Order identified the counterparty to Amendment #9 as "Volt Consulting Managed Service Programs."  *Id.*  As shown on Amendment #9, "Volt Consulting Managed Service Programs" is a division of Volt Consulting Group, Ltd. For the purposes of this Motion, Amendment #9 is understood to be the Contract.

10.      The 90 day period to assume or reject executory contracts, defined by the Sale Order as the "Asset Review Period," ran from the date of the closing of the sale.  *See*, Sale

---

[4] The invoices and back-up documents relating to the Taylor Services are voluminous and summaries are submitted in *lieu* thereof under Fed. R. Evid. 1006.  If there is any dispute as to the existence of the documents, they will be made available to the Debtors.

Order, ¶ 27.  The closing occurred on July 31, 2015.  *See*, D.I. 889.  Thus, the Asset Review

Period ended on October 29, 2015.

11.      On November 4, 2015, Taylor served Volt with a *Notice Regarding Contract*

*Deemed Rejected* (the "Rejection Notice").  *See*, **Exhibit E** attached hereto. The Rejection Notice

was served despite Volt's repeated attempts to encourage Debtors and/or Taylor to assume the

Contract.  Pursuant to the Rejection Notice, the Contract was deemed rejected upon the

expiration of five business days from the date of the Rejection Notice (the "Rejection Date").

The Rejection Notice provided that:

> [I]n accordance with paragraph 37 of the Sale Order, counterparties to the
> Removed Contracts shall have thirty days to assert any Potential Contract
> Administrative Claim or rejection damage claim relating to the rejection of
> such Removed Contracts.  *See*, Rejection Notice, Exhibit E, p. 2.

12.      Defining the term, "Potential Contract Administrative Claim," the Sale Order

provides as follows:

> The Buyers shall be obligated to timely pay any and all amounts arising or
> otherwise due under any Potential Contract, and to timely perform any
> obligations of the Debtors under any Potential Contract, that relate to the
> period between the Closing date and the date such Potential Contract is
> either assumed...or is rejected by the Debtors after becoming a Removed
> Contract[.]  ('<u>Potential Contract Administrative Claims</u>').  *See*, Sale Order,
> ¶ 29 (underlining in original).

13.      Paragraph 37 of the Sale Order requires that "[a]ny Potential Contract

Administrative Claims and/or rejection damages claim related to a Potential Contract that is

deemed rejected...shall be asserted no later than thirty (30) days after the delivery of notice that

the Potential Contract is a Removed Contract."  *See*, Sale Order, ¶ 37.  However, the Sale Order

does not provide any procedure for the assertion of such claims.

14.      Volt's Post-Petition Services Claim is a Potential Contract Administrative Claim

(Sale Order, ¶ 29), and its Taylor Services Claim is a "rejection damages claim related to a

Potential Contract."  *Id* ¶ 37.  Since both claims are administrative in nature, Volt is asserting

them by way of motion rather than merely filing a proof of claim.  *See*, 4 Collier on Bankruptcy

¶ 503.02[1] (Alan N. Resnick & Henry J. Sommer, eds. 16th rev. ed. 2013) ("A request for

payment of an administrative expense is not properly asserted in a proof of claim[.]")

## CONCLUSION

15.      For the foregoing reasons, Volt respectfully requests allowance and payment of its

Post-Petition Services Claim and its Taylor Services Claim in accordance with the proposed

order submitted herewith as **Exhibit F.**

Dated: Wilmington, Delaware
       December 4, 2015

Respectfully submitted,


 */s/ Peter M. Sweeney*
Peter M. Sweeney (DE # 3671)
BLAKELEY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 415-9908
Email: psweeney@blakeleyllp.com

– and –

David M. Mannion
BLAKELEY LLP
54 W. 40th Street
New York, NY 10018
Telephone: (917) 472-9587
Email: dmannion@blakeleyllp.com

*Attorneys for Volt Consulting Group, Ltd.*