UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:  SRC LIQUIDATION, LLC                    BK No. 15-10541 (BLS)

### OBJECTION OF ENTERPRISE PRINTING & PRODUCTS CORP. TO STANDARD REGISTER'S THIRD OMNIBUS OBJECTION TO SECTION 503(B)(9) CLAIM

NOW COMES Enterprise Printing & Products Corp. (Enterprise) and objects to the objection of Standard Register, Inc. (SRC) to Enterprise's § 503(b)(9) claim.  As grounds, Enterprise states as follows:

### BACKGROUND

Part of SRC's business is the supply of printed materials for its customers' products.  SRC does not have sufficient in-house resources to do this, and subcontracts with Enterprise (and presumably other companies as well) to produce these products for SRC.  The business model is that SRC receives an order for the product from a customer and issues a purchase order to Enterprise, which does the actual production work.  As part of the purchase order, SRC stipulates what method and carrier should be used by Enterprise to ship the goods to SRC's customer.  SRC pays the carrier directly.  Enterprise has no interaction with SRC's carrier other than to deliver the goods to SRC's carrier, which picks up the goods and brings them to SRC's customer.  Enterprise does not hire, direct or control the carrier, which receives its instructions solely from SRC.  The carrier is attorned to SRC, not Enterprise.  Accordingly, once it has delivered the product to SRC's carrier, SRC has received constructive possession of the product, triggering Enterprise's administrative claim.  This arrangement distinguishes Enterprise's relationship with SRC from the cases cited by the Debtor.  As will be noted below, these cases either refuse to acknowledge or fail to implement the idea of constructive possession, or do not deal with a carrier in the sole and exclusive control of the Debtor.

RESPONSE

11 USC § 503(b)(9) was enacted on October 17, 2005 as part of the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 ("BAPCPA"). It grants a vendor and administrative expense claim for "the value of any goods received by the Debtor within 20 days before the date of commencement of the case under [Title 11] in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business."

As the Debtor points out, there is no significant legislative history regarding 503B9. Moreover, there have been very few reported decisions regarding the position, and a mere handful regarding what the term "received by the Debtor" means. In this case, Enterprise has significant and persuasive support for its position that its administrative claim is valid.

1. ENTERPRISE HAS AN ADMINISTRATIVE EXPENSE CLAIM IN A DROP SHIPMENT SITUATION BECAUSE THE DEBTOR HAD CONSTRUCTIVE POSSESSION OF THE GOODS SHIPPED ON STANDARD REGISTER'S CARRIER

The Debtor presumes that Enterprise's role is to produce materials and drop ship them directly to SRC's customer, and as such the goods are not "received by the debtor". The Debtor would seem to request a bright line rule that every drop shipment relationship automatically excludes a creditor from administrative claim status, as the goods are not received by the Debtor, but by the end-user. However, the New Hampshire Bankruptcy Court, affirmed by the New Hampshire District Court (*Ningbo Chenglu Paper Products Mfg. Co. v. Momenta, Inc.*, No. 11-CV-479-SM, 2012 WL 3765171, at *7 (D.N.H. Aug. 29, 2012), declined to follow those cases which defined receipt as exclusively requiring physical possession, and persuasively established that a borrower is considered to have received goods under §503(b)(9) when it has either physical possession or constructive possession:

> "A seller must be entitled to an administrative expense claim where a Debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2–705(2), within twenty days of the commencement of the bankruptcy case. Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the Debtor at some point had constructive possession of the goods." *In re Momenta, Inc.,* 455 B.R. 353, 360 (Bankr. D.N.H. 2011).

In *Momenta,* the Debtor contracted with the claimant to ship goods by sea to a port in England, but the chain of delivery was not introduced into evidence. The court denied the administrative claim as there was no evidence to demonstrate that the Debtor had received constructive possession of the shipment. Momenta 455 B.R. 353, 361. Had such evidence been introduced, the seller may have been entitled to an administrative claim. Momenta, 455 B.R. 353, 360. *In re Plastech Engineered Products, Inc.*, No. 08-42417, 2008 WL 5233014, at *4 (Bankr. E.D. Mich. Oct. 7, 2008), a case cited by the Debtor, similarly did not rule on constructive possession because there were issues of fact that had to be addressed first. The third case cited by the Debtor, *In re World Imports*, 516 B.R. 296 (Bankr. E.D. Pa. 2014), deals with the terms of an international treaty (the CISG), as opposed to the Uniform Commercial Code, and in any event the court was largely in agreement with the court in *Momenta*. ("The Court finds the District Court of New Hampshire's reasoning to be persuasive and will be guided by it.") *In re World Imports*, 516 B.R. 296, 300.

By contrast, Enterprise can in fact produce evidence to demonstrate that SRC received constructive possession of its shipments. The products were always delivered to SRC's required carrier. In the language of *Momenta*, the goods were attorned to the Debtor, resulting in SRC obtaining constructive possession of the goods.

2. SRC IS CONTRACTUALLY DEEMED TO HAVE ACCEPTED POSSESSION BY THE PROVISIONS OF THE AMENDED PREFERRED SUBCONTRACTOR AGREEMENT

The contractual relationship between SRC and Enterprise is governed by a Preferred Subcontractor Agreement (the Agreement). When SRC purchased the assets of Workforce One Solutions, LLC in 2013, it assumed Workforce's Preferred Subcontractor Agreement with Enterprise. In 2014 the Agreement was amended by an Addendum to the Preferred Subcontractor Agreement, dated April 1, 2014. (The Amended Agreement) (Exhibit A). The Amended Agreement, authored by SRC, provides in pertinent part as follows:

"4. The payment terms shall be revised to read as follows: Payment Terms: All payments due hereunder shall be made based on 2% 30 days, net 60 day terms. <u>Risk of loss shall transfer to Standard Register at the point of shipment provided that Standard Register's Carrier is being used</u>. If the subcontractor uses a carrier not approved by Standard Register, risk of loss shall transfer at point of delivery." (Emphasis added)

Attached hereto as Exhibit B are representative order forms submitted by the Debtor to Enterprise. The Court will note that the orders consistently require Enterprise to use only the SRC's shipping agent. Enterprise never pays for freight and is required to use the freight method and carrier ordered by SRC. To emphasize the point, the Agreement pointedly refers to the delivery agent as being "Standard Register's Carrier". In so doing, the parties made clear their contractual agreement that when the product was delivered to Standard Register's Carrier, it was – by agreement - deemed received by the Debtor.

3. THE CASE LAW HAS OVERLOOKED THE REMEDIAL NATURE OF BAPCPA AND §503(B)(9), AND HAS INCORRECTLY USED THE STRICTLY CONSTRUED STANDARD.

The debtor, citing *Momenta*, *supra*, states that administrative expenses are an exception to general quality principles of the bankruptcy code and must be strictly construed. But there is another way of looking at BAPCPA and the provisions of §503(b)(9).

There have been many theories floated as to the purpose of §503(b)(9). One suggestion is that it was a way to reign in critical vendor orders which were being imposed with ill-defined standards. Another was to prevent Debtor's from "loading up" on inventory in anticipation of the bankruptcy. Other suggestions are that it was intended to fortify reclamation rights which often foundered because of pre-existing senior lien rights, or to encourage vendors to continue working with companies even if they were facing difficult financial times. *See Gage, Repeal Bankruptcy Code Section 503(b)(9)*, ABI Law Review Vo1. 19:217 (2011).

Implicit in each one of these ideas is that the provision was intended to <u>increase</u> vendor protection, not decrease it. Although the Debtor has argued that administrative claims should be strictly construed, Enterprise would argue that, on the contrary, this particular administrative

expense, which was designed to increase vendor rights should be interpreted accordingly. As a result, when interpreting the language of the provision, the court should interpret it in such a way as to follow increase, not decrease, protection for lenders.

The phrase "received by the Debtor" is not defined in the bankruptcy code. It is a canon of statutory construction a particular statutory provision should not be viewed in isolation. The meaning or ambiguity of certain words or phrases "may only become evident when placed in context." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S. Ct. 1291, 1300-01, 146 L. Ed. 2d 121 (U.S. 2000). With this in mind, Enterprise suggests that it is incorrect to interpret only the portion of the sentence "received by the Debtor". The entire pertinent phrase is "the value of any goods received by the Debtor." Viewing that expanded phrase, it is evident that the subject word "goods" has two modifiers, "the value of any" and "received". If one considers the modifier phrase "value of any" as being the principal modifier, the phrase would not require receipt of any physical goods at all, but merely their value (i.e. **"the value of any goods** received by the Debtor within 20 days before the date of commencement of the case).

Conversely, if one considers the modifier word "received" as being the principal modifier, the phrase accentuates the receipt of the goods, not merely their value (i.e."the value of any **goods received** by the Debtor within 20 days before the date of commencement of the case).

Without any binding authority to guide it, the court in *Plastech* agreed with the latter interpretation. The court viewed the modifier "received" as modifying the word "goods", and considered the word "value" to simply measure the amount of the claim. *In re Plastech Engineered Products, Inc.,* No. 08-42417, 2008 WL 5233014, at *2-3 (Bankr. E.D. Mich. Oct. 7, 2008). While well-reasoned, it can be surmised that the court in *Plastech* did not view the task of interpretation with the mindset that 503(b)(9) was intended to enhance vendor rights. Had it done so, it might have reached the opposite conclusion, because both ways of interpreting the phrase

are equally valid.  Looking at the statute as a whole, and keeping in mind the reasonable and logical purpose for which the provision was promulgated, the administrative claim should not be limited to goods actually received, but should include <u>the value of</u> any goods received by the Debtor.  This also has the advantage of simplicity and clarity.  It is a bright line rule that brings order to ambiguity, similar to the way in which the 90 day preference time-limit has brought order and predictability to preference litigation.

BAPCPA is remedial legislation, and as such should be construed broadly to effectuate its purpose. *In re Kucharz,* 418 B.R. 635, 642 (Bankr. C.D. Ill. 2009).   On the other hand, exceptions to remedial legislation should be construed narrowly. *E.E. O.C. v. Fox Point–Bayside School Dist.,* 772 F.2d 1294, 1302 (7th Cir.1985).  Thus, §503(b)(9) should be construed such as to bestow an administrative claim on any vendor to the extent of "the value of any goods" received by the Debtor within 20 days before the date of commencement of the case, whether or not actually received by the Debtor.

## RELIEF REQUESTED

For the reasons set forth above, Enterprise requests that the Debtor's Third Omnibus Objection to the 503(b)(9) claim of Enterprise be denied, and that such claim be allowed in full.

## RESERVATION OF RIGHTS

Enterprise reserves the right to amend, modify, or supplement this response.

Respectfully submitted,

/s/ Ronald J. Drescher, Esq.
Bar No. 4087
1 Commerce Center
1201 N. Orange Street, Suite 722
Wilmington, Delaware 19801
Phone: (410) 484-9000
Fax: (410) 484-8120

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2016, I electronically filed the Objection with the Clerk of the Bankruptcy Court for the District of Delaware using the CM/ECF System. The following participants have received notice electronically:

and I hereby certify that I have mailed by United States Postal Service, postage pre-paid, the document electronically filed with the court to the following non CM/ECF participants:

**SEE ATTACHED MATRIX**

/s/DAWN PEMENTAL