## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| SRC Liquidation, LLC,[1] | ) | |
| | ) | Case No. 15–10541 (BLS) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| SRC Liquidation, LLC, | ) | Adv. Pro. No. [Refer to Summons] |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Platinum Equity, LLC dba MACtac, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS
## PURSUANT TO 11 U.S.C. §§ 547 AND 550 AND TO
## DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

SRC Liquidation, LLC (the "Liquidating Debtor" or "Plaintiff"), by and through

its undersigned counsel, files this complaint (the "Complaint") to avoid and recover

preferential transfers against Platinum Equity, LLC dba MACtac (the "Defendant") and

to disallow any claims held by Defendant.  In support of this Complaint, Plaintiff hereby

alleges upon information and belief that:

### NATURE OF THE CASE

1.      This action is commenced pursuant to sections 547 and 550 of chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") to avoid and recover from

Defendant, or from any other person or entity for whose benefit the transfers were made,

preferential transfers of property made by SRC Liquidation, LLC (f/k/a SRC Liquidation

---

[1] The last four digits of the Debtor's taxpayer identification number are 5440.

Company f/k/a The Standard Register Company) and/or its related debtors (collectively, the "Debtors") that occurred during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy proceedings.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant.  Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      This court has jurisdiction of this adversary proceeding, which arises under title 11, arises in and relates to a case under title 11 pending in the United States Bankruptcy Court for the District of Delaware (the "Court") captioned *In re SRC Liquidation, LLC,* Case No. 14–10541 (BLS) (the "Bankruptcy Case"), pursuant to 28 U.S.C. §§ 157 and 1334(b) and section 8.1 of the Plan (as defined below).

4.      This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6.      The statutory and legal predicates for the relief sought herein are sections 502, 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

7.      Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff

states that, solely in its capacity as Liquidating Debtor, it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.      On March 12, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court, thereby commencing bankruptcy cases which are now substantively consolidated under Bankruptcy Case No. 15-10541.

9.      On November 19, 2015, the Court entered an order (the "Order") confirming the *Debtors' Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (with Technical Modifications)* (the "Plan"). [D.I. 1331]. The Plan became effective on December 18, 2015.

10.     Pursuant to the Order and Plan, the Liquidating Debtor was granted requisite standing and authority to prosecute, pursue, administer, settle, litigate, enforce and liquidate causes of action, including actions under chapter 5 of Bankruptcy Code  to recover payments made to the Debtors' creditors prior to the Petition Date, and the Debtors expressly reserved the right to pursue the same.[2]

11.     Pursuant to section 1 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

## THE PARTIES

12.     Under the Plan, the Liquidating Debtor was appointed to administer the Trust.  Among other things, the Liquidating Debtor is authorized to prosecute and resolve the GUC Trust Causes of Action and Avoidance Actions (as defined in the Plan) on behalf of and in the name of the Debtors.[3]

13.     As more fully discussed in the disclosure statement filed on September 22, 2015 in support of the Plan, the Debtors were one of the leading providers in the United States of communications services and communications workflow, content and analytics solutions through multiple communication channels, including print, electronic and internet-based communications, to clients in the healthcare, financial services, manufacturing, retail and transportations industries.

14.     The Debtors' operations were divided between two main business units: (a) healthcare, which accounts for almost one-third of the Debtors' revenues, and (b) integrated communications (f/k/a business solutions), which accounts for the remainder of the Debtors' revenues.

15.     Upon information and belief, Defendant is a manufacturer and distributor of highly specialized pressure sensitive materials. Upon further information and belief, Defendant's principal place of business is located at 360 N. Crescent Drive, Beverly Hills, CA 90210.  Upon information and belief, Defendant is a corporation residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

16.     Prior to the Petition Date, in the ordinary course of business, the Debtors, one of the leading providers in the United States of communications services and communications workflow, content and analytics solutions through multiple communication channels, maintained business relationships with various business entities, including vendors, creditors, suppliers and distributors, and regularly purchased, sold, received and/or delivered goods and services in support of their operations.

17.     The Debtors' financial difficulties leading up to the Bankruptcy Case were attributable to a number of different factors.  Historically, the Debtors' printing services and printed goods made up a significant part of their business.  However, over the past few years, the demand for many of the printed forms, training and enrollment materials that the Debtors produced and sold declined as new mobile and web-based communications were integrated with printed material.  Because of the declining demand in the printing space, the Debtors struggled to achieve their revenue and financial targets. At the same time, the Debtors still needed to maintain relatively large fixed costs on account of the required interest payments on their secured debt, together with the required pension plan contributions, and the necessary capital expenditures and investments that the Debtors had to make to finance their operations.  Ultimately, the Debtors concluded that the best alternative required a sale of their business operations as a going concern. Despite diligent efforts to find a potential purchaser, the Debtors were unable to find any party willing to purchase the business operations and assets except within the confines of a bankruptcy proceeding.

---

[3] Plan section 3.2.2.

18.    The Debtors utilized a cash management system (the "Cash Management System") to facilitate the timely and efficient collection, management and disbursement of funds used in the Debtors' business.  As of the Petition Date, the Cash Management System consisted of approximately forty (40) bank accounts including depository accounts, concentration accounts, payroll accounts, accounts payable accounts, tax accounts and postage accounts, which were maintained at Bank of America, N.A. ("BoA"), PNC Bank, N.A. ("PNC") and various other banks.  [*See* D.I. 5].

19.    Specifically, the Debtors maintained several zero balance depository accounts (the "Depository Accounts").  These accounts were used to deposit funds into the Debtors' Cash Management System.  Excess funds remaining in these Depository Accounts at the end of each day were swept into the Debtors' concentration accounts (the "Concentration Accounts") maintained at BoA by Debtor The Standard Register Company.  Funds from the Depository Accounts, and various other accounts, including payroll accounts, accounts payable accounts and postage accounts, were swept daily to and from the Concentration Accounts.  Debtor The Standard Register Company also maintained various accounts for payroll (the "Payroll Accounts") and accounts payable (the "AP Accounts," and collectively with Payroll Accounts, the "Bank Accounts").  The Payroll Accounts and AP Accounts were funded from the relevant Concentration Accounts as checks, ACH and wire transfers were presented for payments to vendors.

20.    During the ninety (90) day period prior to the Petition Date, that is, between December 12, 2014 and March 12, 2015 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by

checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise, to various entities.

21.     During the course of their relationship, the Defendant and one or more of the Debtors, including The Standard Register Company, entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements").  The details of the Agreements paid for during the Preference Period are set forth on Exhibit A attached hereto and incorporated by reference, including the "Invoice Number," "Invoice Date" and "Invoice Amount."

22.     Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

23.     As identified in the Agreements, one or more of the Debtors purchased goods and/or services from Defendant.

24.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest in the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

25.     Plaintiff has determined that one or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments under the Agreements aggregating an amount not less than $1,233,297.24 (the "Transfer" or "Transfers").  The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference, including the "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

26.     During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the

Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Plan and the Liquidating Trust Agreement, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

27.     Plaintiff acknowledges that some of the Transfers might be subject to defenses under Bankruptcy Code section 547(c), for which Defendant bears the burden of proof under section 547(g).

## FIRST CLAIM FOR RELIEF
### (Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547(b) and 550)

28.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

29.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made the Transfers to or for the benefit of Defendant in an aggregate amount of not less than $1,233,297.24.

30.     The Transfers were made from one or more of the Bank Accounts, and constituted transfers of an interest in property of the transferring Debtor(s).

31.     During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying to the Debtor(s) identified on Exhibit A the goods and/or

services identified in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A was obligated to pay following delivery in accordance with such Agreements.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code, because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A hereto.

33.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s), as set forth on Exhibit A hereto.

34.     Each Transfer was made while the Debtors were insolvent.  Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

35.     Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36.     As a result of each Transfer, Defendant received more than Defendant would have received if:  (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.  As evidenced by the Debtors' schedules filed in the underlying Bankruptcy Case, the proofs of claim that have been received to date and the impaired treatment afforded General Unsecured Creditors under

the Plan, the Debtors' liabilities exceed their assets to the point that General Unsecured

Creditors will not receive a payment in full on account of their respective allowed claims

from the Debtors' bankruptcy estates.

37.     Defendant was the initial transferee of the Transfers or the immediate or

mediate transferee of such initial transferee or the person for whose benefit the Transfers

were made.

38.     Based upon the foregoing, Plaintiff is entitled to an order and judgment

against Defendant:   (i) avoiding the Transfers under section 547(b) of the Bankruptcy

Code; and (ii) entitling Plaintiff to recover the Transfers or the value of the Transfers

from Defendant under section 550(a) of the Bankruptcy Code, together with the award of

pre- and post-judgment interest thereon from the date of demand to the date of payment

or other satisfaction of such order and judgment and the costs of this action.

**SECOND CLAIM FOR RELIEF**
**(Disallowance of Claims – 11 U.S.C. §§ 502(d) and (j))**

39.     Plaintiff hereby incorporates all previous allegations as though fully set

forth herein.

40.     Defendant is a transferee of Transfers avoidable pursuant to section 547 of

the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy

Code.

41.     Defendant has not paid the amount of the Transfers or turned over such

property for which Defendant is liable under section 550 of the Bankruptcy Code.

42.     Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of

Defendant against the Debtors must be disallowed until such time as Defendant pays

Plaintiff the amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

43.     Pursuant to 11 U.S.C. § 502(j), any and all previously allowed claims of Defendant against the Debtors, including any and all claims assigned by Defendant, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff the amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief against Defendant:

A.     On Plaintiff's First Claim for Relief, judgment in favor of Plaintiff and against Defendant, avoiding the preferential Transfers and directing Defendant to return to Plaintiff the amount of the preferential Transfers, pursuant to 11 U.S.C. §§ 547(b) and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.     On Plaintiff's Second Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims filed by Defendant against any of the Debtors until Defendant returns the Transfers to Plaintiff pursuant to 11 U.S.C. §§ 502(d) and (j); and

C.     Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: May 5, 2016
      Wilmington, Delaware

**BAYARD, P.A.**

*/s/  Justin R. Alberto*
Justin R. Alberto (No. 5126)
Gregory J. Flasser (No. 6154)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: jalberto@bayardlaw.com
      gflasser@bayardlaw.com

-and-

**ASK LLP**
Joseph L. Steinfeld, Jr.
Gary D. Underdahl (*Admitted Pro Hac Vice*)
Edward E. Neiger
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota  55121
Telephone: (651) 406-9665
Email: jsteinfeld@askllp.com
      gunderdahl@askllp.com
      eneiger@askllp.com

*Counsel to SRC Liquidation, LLC*