IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SRC LIQUIDATION, LLC[1],<br><br>                  Debtor. | Case No.: 15-10541 (BLS)<br><br>Chapter 11<br><br>**Objection Deadline: June 9, 2016 at 4:00 p.m. (ET)**<br>**Hearing date: June 29, 2016 at 10:30 a.m. (ET)**<br><br>[Ref. D.I. 1984] |

## IMAGEMAKER GRAPHICS' RESPONSE IN OPPOSITION STANDARD REGISTER INC.'S FOURTH (4TH) OMNIBUS OBJECTION TO SECTION 503(b)(9) CLAIMS

NOW COMES ImageMaker Graphics ("ImageMaker") to respond in opposition to the objection of Standard Register, Inc. ("Debtor") to ImageMaker's § 503(b)(9) claim. As grounds, ImageMaker states as follows:

### BACKGROUND

For many years, ImageMaker has acted as a vendor to Debtor, producing printed products which are then shipped directly to the Debtor's customers. In furtherance of this relationship, several times over the years -- at the Debtor's request -- ImageMaker has met Debtor's customers or potential customers and was generally described to them as Debtor's "partner." The day-to-day business relationship between Debtor and ImageMaker emphasized the control enjoyed and exercised by Debtor. When Debtor received an order for the product from a customer, it would issue a purchase order to ImageMaker, which does the actual production work. As part of the purchase order, Debtor mandated what method and carrier ImageMaker had to use to ship the goods to Debtor's customer. ImageMaker was required to use a mailing label on all orders prior

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540.

to shipment which expressly memorialized that Debtor, not ImageMaker, was shipping the goods. ImageMaker was instructed to use Debtor's own account with the carrier, meaning that Debtor, not ImageMaker, had the ability to adjust or stop shipment.

Once ImageMaker places the goods with the carrier it has no control over the shipment. ImageMaker does not hire, direct, or control the carrier, which receives its instructions solely from Debtor. Indeed, the contractual relationship between Debtor and ImageMaker requires an automatic five percent (5%) rebate on all orders placed by Debtor.[1]

### RESPONSE

The arguments and decisions on the issue generally have focused on two separate but related questions: (1) Can a drop-shipment creditor generally use § 503(b)(9) to make an administrative claim; and (2) Assuming a drop-shipment creditor can in principle utilize that section, are drop-shipments "goods received by the debtor" as required therein? Here, these questions must be answered in the affirmative. To the extent this Court has ruled otherwise, ImageMaker respectfully requests the Court to reconsider its rulings after considering the arguments made below.

**Reclamation Claim Requirement.**

The argument against allowing drop-shipment creditors to assert an administrative claim under § 503(b)(9) generally follows this line of reasoning: (1) § 503(b)(9) allows for a creditor to assert an administrative claim only if the underlying shipment of goods was eligible for reclamation under § 546; (2) under §§ 2-702 and 2-705 of the UCC, drop-shipments may never be stopped in transit by the creditor/seller and are never eligible for reclamation by the

---

[1] ImageMaker will supplement this Response with the applicable contracts and other relevant representative documents governing its relationship with Debtor.

creditor/seller; and (3) because a drop-shipment creditor/seller may never assert a reclamation claim on goods that were drop-shipped (a prerequisite to the use of that section, according to this argument), such creditor is forestalled from using § 503(b)(9) to make an administrative claim for drop-shipped goods.  This argument (and the related policy argument, also discussed below) is based on false premises.

Debtor's position in the Objection suggests a "bright line" rule that every drop-shipment relationship automatically excludes a creditor from administrative claim status, as the goods are not received by the Debtor, but by the end-user.  The New Hampshire Bankruptcy Court, affirmed by the New Hampshire District Court (*Ningbo Chenglu Paper Products Mfg. Co. v. Momenta, Inc.,* No. 11-CV-479-SM, 2012 WL 3765171, at *7 (D.N.H. Aug. 29, 2012), declined to follow those cases which defined receipt as exclusively requiring physical possession, and established that a debtor is considered to have received goods under § 503(b)(9) when it has <u>either</u> physical possession or constructive possession:

> A seller must be entitled to an administrative expense claim where a Debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the Debtor at some point had constructive possession of the goods." *In re Momenta, Inc.*, 455 B.R. 353, 360 (Bankr. D.N.H. 2011).

Thus, no such bright-line test exists.

It has been asserted by Debtor and at least one court that the provisions of § 503(b)(9) must be read in conjunction with § 546.[2]  Section 503(b)(9) was passed by Congress in the same law which added the provisions of § 546 and was included in the "Reclamation" section of the

---

[2] ImageMaker does not agree with this assertion, but merely assumes it to be true for the purpose of this Response.

Bankruptcy Abuse Prevention and Consumer Protection Act. The general thrust of the argument is that because these provisions of the Bankruptcy Code were enacted together, they must be read together. This premise has been incorrectly interpreted to mean that § 503(b)(9) only applies to creditors who had reclamation rights under § 546(c)(1), but whose rights were extinguished because the creditor did not timely assert those rights.[3] The argument goes on to state that because drop-shipments do not qualify for reclamation rights (or the right to stop goods in transit, for that matter), no such shipments qualify for administrative claim treatment under § 503(b)(9).

Interpreted in this manner, § 503(b)(9) acts as a sort of back-up plan or consolation prize for the reclamation claim creditor. If the creditor fails to properly reclaim the goods (assuming, of course, that the other requirements of § 546(c) are met) and thus loses the right to do so, the creditor may nevertheless receive at least partial recompense by asserting a § 503(b)(9) claim. With due deference given to prior decisions on this issue, there is neither textual nor logical support to limit the application of § 503(b)(9) only to creditors which had reclamation claims.

---

[3] At least one court, however, has held that reclamation has nothing to do with § 503(b)(9):

> Likewise, there is no basis to import a requirement that the goods be reclaimable, as argued by the Debtor. Congress added § 503(b)(9) to the Bankruptcy Code as part of § 1227 of BAPCPA, entitled "Reclamation." Most of BAPCPA § 1227 is devoted to amending § 546 of the Bankruptcy Code, which provides relief to sellers of goods who failed to give an effective notice for reclamation. The Debtor reads this scant legislative history as an indication that § 503(b)(9) is a reclamation concept, and suggests that goods must be reclaimable in order for a seller to have a §503(b)(9) claim. **However, there is nothing in § 503(b)(9) that requires a claimant to also be entitled to a reclamation right under § 546. Section § 546 does not limit or control in any way the rights that a claimant has under § 503(b)(9).**

*In re Plastech Engineered Products, Inc.*, 397 B.R. 828, 838, (Bankr. E.D. Mich. 2008) (emphasis added).

Prior decisions and discussion on this issue have looked to the Uniform Commercial Code ("UCC") for support. Under § 2-702 and § 2-705 of the UCC, a drop-shipment creditor has no right to stop goods in transit[4] nor any right to reclaim the goods. Section 2-705 allows a creditor/seller to stop delivery of goods in transit to the debtor/buyer if the debtor/buyer is insolvent. This right continues until the goods actually have been received by the debtor/buyer or "constructively received" by the debtor/buyer, which occurs in certain circumstances, three of which are described in § 2-705(2)(b)-(d), but none of which expressly describes a typical drop-shipment situation.

The common thread running through the situations described in § 2-705(2)(b)-(d) is that the goods have been delivered by the creditor/seller to a carrier (and are presumably still under the control of the creditor/seller) but then the debtor/buyer obtains or asserts control over the goods. Critically, it is debtor/buyer's unilateral control over the goods which forestalls the creditor/seller's right to stop transit of the goods and creates "constructive receipt" of the goods by the debtor/seller. Because Official Comment 2 to UCC §2-705 makes it clear that a creditor/seller does not have the right to stop drop-shipment goods in transit (even though, once the goods are received by the sub-purchaser the goods have been "received" by the debtor/buyer), arguments that the debtor/buyer has constructively received the drop-shipped

---

[4]Official Comment 2 to § 2-705 makes it clear that drop-shipment sellers may not stop goods in transit to a "sub-purchaser" (i.e., the buyer's customer) even though delivery by the seller to the sub-purchaser constitutes receipt by the buyer:

> Receipt by the buyer includes receipt by the buyer's designated representative, the sub-purchaser, when shipment is made direct to him and the buyer himself never receives the goods. It is entirely proper under this Article that the seller, by making such direct shipment to the sub-purchaser, be regarded as acquiescing in the latter's purchase and is thus barred from stoppage of the goods as against him.

goods have thus far been unavailing. Similarly, under UCC § 2-702 there is found no right for a drop-shipment creditor/seller to reclaim the goods after delivery to the sub-purchaser because the right to reclaim "is subject to the rights of a buyer in ordinary course or other good-faith purchaser." UCC § 2-702(C).

Accordingly, following the above analysis it has been determined that since the creditor/seller has no right to reclaim the drop-shipped goods, it has no right to assert an administrative claim under § 503(b)(9). This entire conclusion, however, is based on the premise that only a creditor with a reclamation claim may take advantage of § 503(b)(9). There is, however, no logical or textual support for this requirement.

The primary argument advanced in support of the reclamation claim requirement focuses on the wrongfully perceived undeserved "benefit" afforded to a drop-shipment creditor if it is permitted to make an administrative claim. This "benefit" is wrongfully perceived because it is premised on the idea that since drop-shipments are not eligible for § 503(b)(9) treatment and are only general unsecured claims, to nevertheless allow § 503(b)(9) treatment for drop-shipments gives the creditor/seller a "windfall" by elevating the status of a general unsecured claim to an administrative claim, with the preferential treatment which comes with such status. Stated another way, it is wrongfully argued that a drop-shipment creditor must be prevented from attempting to benefit from the debtor/buyer filing bankruptcy by giving the creditor/seller more rights than it would have had than if the debtor/buyer had not filed for bankruptcy protection.

This argument against giving a drop-shipment creditor a "windfall" fails to acknowledge the status of the failed reclamation claim. If a creditor fails to demand reclamation through the required §546(c) notice, the creditor has lost its reclamation right and has only a general

unsecured claim. Thus, in that situation the creditor with the lost reclamation claim is in the same position as the drop-shipment creditor – both hold general unsecured claims. However, § 546(c)(2) gives guidance to the lost reclamation claim creditor by alerting such creditor that it may still assert an administrative claim under § 503(b)(9). Importantly, § 546(c)(2) does not give the lost reclamation claim creditor the **right** to file a § 503(b)(9) claim but only alerts such a creditor to the option of obtaining some relief under that section: "If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)."

Accordingly, the drop-shipment creditor and the lost reclamation claim creditor are in exactly the same situation when each asserts an administrative claim under § 503(b)(9). Both would have general unsecured claims but for the possibility of asserting an administrative claim. If the use of § 503(b)(9) by the drop-shipment creditor is characterized as providing a "windfall," the use of that section by the lost reclamation claim creditor should also be characterized as providing that creditor with a "windfall." Yet, the latter use is favored while the former use is disparaged. At the point when each of these creditor types would assert an administrative claim, they are in exactly the same situation. Both have general unsecured claims, and both would use § 503(b)(9) to convert at least part of the unsecured claim into an administrative claim. Nowhere in the text of § 503(b)(9) is the use of that section tied to, or dependent upon, a creditor failing to satisfy the reclamation provision of § 546(c)(1) – a condition which Congress could easily have added if that was the intention. Rather, Congress' deliberate omission of such a requirement demonstrates that § 503(b)(9) is not intended to, nor designed to, be limited to only failed

reclamation claim creditors, but instead is available to any creditor who satisfied the conditions therein.

Having thus dispensed with the faulty premise that only a creditor who possessed a reclamation claim is eligible to make a § 503(b)(9) administrative claim, focus turns to the second issue, namely whether drop-shipped goods have been "received" by the debtor as that section required. Ineluctably, a close examination of the arguments against drop-shipped goods being constructively received by the Debtor reveals their flaws and reveals the antithetical premise.

**Receipt of the Goods.**

As has been stated numerous times in this debate, nowhere does the Bankruptcy Code define what constitutes the debtor "receiving" the goods. Debtors invariably point to UCC § 2-103(A)(3)[5] and argue that it requires actual physical possession of the goods. Drop-shipment creditors similarly argue that debtor's "constructive" receipt of the goods is sufficient (a necessary position, since in the drop-shipment situation the goods are not delivered to the debtor/buyer but, instead, to the buyer's customer (i.e., the sub-purchaser)). Debtors retort that even if "constructive" receipt of the goods would suffice, the goods are not even constructively received by the debtor because none of the situations described in UCC § 2-705(2)(b)-(d)[6] occurs.

---

[5] "'Receipt' of goods means taking physical possession of them."

[6] (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
(c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or
(d) negotiation to the buyer of any negotiable document of title covering the goods.

However, just as the debtors make reference to UCC § 2-705(2)(b)-(d) to argue that none of the construction receipt situations exists, Official Comment 2 to that Section makes it expressly clear that "receipt by the buyer" includes "receipt by the buyer's representative, the sub-purchaser" when the goods are drop-shipped. The debtor may argue that the language of the Comment only applies when determining whether a creditor/seller has the right to stop goods in transit. If so, then the three constructive receipt situations only apply in that context as well, and nothing forecloses the possibility of other situations where the debtor has constructively received the drop-shipped goods. Either that section and the Comment are applicable only to determine whether a seller has the right to stop goods in transit (in which case they are arguably completely irrelevant to this discussion) or they may be more universally applied, in which case it is clear that drop-shipped goods, at least when they are received by the sub-purchaser (if not before), are "received" by the debtor/buyer. Thus, if the goods have been "received" by the debtor within 20 days of filing, the creditor/seller is entitled to an administrative claim under § 503(b)(9) for the value of the goods.

Having thus established the right to a § 503(b)(9) claim upon the goods being delivered to the sub-purchaser within the applicable time period, with regard to ImageMaker the right has its genesis when the goods were delivered to the carrier for transit to the sub-purchaser. It must be reemphasized that Debtor instructed ImageMaker to drop-ship the orders and in most cases to use Debtor's account with the carrier when doing so. The goods were shipped using Debtor's label to create memorialize that the goods were coming directly from Debtor. Accordingly, once the goods were delivered to the carrier, ImageMaker had no control over the goods – Debtor possessed sole control. The common element of the constructive receipt situations described in

UCC § 2-705 is the acquisition of control over the goods obtained by the debtor/buyer. Similarly, here Debtor required ImageMaker to ship the goods in such a fashion that Debtor, not ImageMaker, had control over the goods once they were delivered to the carrier. These deliberate actions create the same common element – control – as the UCC § 2-705 situations, and there is no logical basis for treating the situations differently.

## CONCLUSION

ImageMaker has asserted an administrative claim under § 503(b)(9). The Debtor objected to the claim, asserting that drop-shipments are not entitled to this relief because drop-shipments are not entitled to reclamation rights and Debtor never received the goods. As shown above, and with all due respect to prior decisions, there is demonstrably no requirement that before an administrative claim may be asserted the goods which constitute the basis of the claim must have been subject to the creditor's reclamation claim. Lost reclamation claim creditors and drop-shipment creditors stand in the same position relative to the assertion of a § 503(b)(9) claim, and there is no reasonable justification for treating the two types of creditors differently. Based on the very laws which debtors use to argue against "receipt" of the goods by the debtor, once carefully examined the arguments against holding that the debtor has constructively received drop-shipped goods collapses. "Receipt of the goods" expressly includes receipt of the goods by the sub-purchaser. Therefore, at least when the Debtor's customer received the goods drop-shipped by ImageMaker, but arguably when the goods were placed with the carrier within the 20 days before the filing of the petition, ImageMaker has a valid administrative claim and this Court must overrule the Debtor's objection.

## RELIEF REQUESTED

For the reasons set forth above, ImageMaker requests that the Debtor's Fourth Omnibus Objection to the § 503(b)(9) claim of ImageMaker be denied, and that such claim be allowed in full.

## RESERVATION OF RIGHTS

ImageMaker reserves the right to amend, modify, or supplement this response.

        */s/ Thomas D. Walsh*
Thomas D. Walsh, Esq. (DE #3783)
Marshall Dennehey Warner Coleman & Goggin
Nemours Building
1007 North Orange Street, Suite 600
P.O. Box 8888
Wilmington, DE 19899
Telephone: 302-552-4325
Facsimile: 302-552-4340
TDWalsh@mdwcg.com

*Counsel for ImageMaker Graphics*