## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC Liquidation, LLC,[1] | Case No. 15-10541 (BLS) |
| Debtors. | **Hearing Date: July 27, 2016 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 15, 2016 at 4:00 p.m. (ET)** |
| | **Ref. No. 1984** |

## KIRKWOOD DIRECT'S RESPONSE IN OPPOSITION TO STANDARD REGISTER, INC.'S FOURTH OMNIBUS OBJECTION TO SECTION 503(b)(9) CLAIMS

Kirkwood Direct, LLC ("Kirkwood Direct"), by and through its attorneys, hereby opposes the Fourth Omnibus Objection to Section 503(b)(9) Claims (Dkt. No. 1984) ("Objection") filed by Standard Register, Inc. ("SRI").

### INTRODUCTION

SRI objects to Kirkwood Direct's proof of claim and seeks reclassification of the administrative expense portion of Kirkwood Direct's claim to general unsecured status. SRI asserts that Kirkwood Direct is not entitled to administrative expense priority for three reasons: (1) That the claim is for goods delivered outside of the twenty days prior to the March 12, 2015 petition date (the "Petition Date"); (2) That the Debtor did not receive the goods shipped directly by Kirkwood Direct to third parties at the Debtor's direction; and (3) That the claim is not for goods. As explained herein, none of SRI's arguments is accurate or persuasive.

First, the addendum to Kirkwood Direct's proof of claim clearly shows that the goods for which Kirkwood Direct seeks administrative expense priority were shipped within the twenty days prior to the Petition Date. Second, SRI's argument that the Debtor did not receive goods

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

that were shipped by Kirkwood Direct to third parties at the Debtor's direction and expense ignores the concept of constructive possession.  Also, SRI's argument contravenes realities of the marketplace and, if accepted, will likely prompt businesses like Kirkwood Direct to transition to the more costly and cumbersome process of delivering materials to the purchaser so that the purchaser can then mail the materials to the third-party recipients.  No one would benefit from such an impractical arrangement.  Third, Kirkwood Direct printed bulk materials for the Debtor, and those materials plainly qualify as "goods" under relevant authorities.

Accordingly, and as explained further below, SRI's objection should be overruled, and Kirkwood Direct's administrative expense claim should not be reclassified.

## BACKGROUND

Kirkwood Direct printed and mailed bulk materials for the Debtor so that the Debtor could fulfill its obligations to its own customers.[2]  More specifically, the Debtor would request that Kirkwood Direct print certain materials for delivery to recipients identified by the Debtor. The Debtor would also provide a list of thousands, if not hundreds of thousands, of addressees to whom the materials were to be mailed.  Rather than deliver the printed materials to the Debtor so that the Debtor could mail the materials, which process would include unnecessarily time-consuming and expensive steps, Kirkwood Direct placed the materials in the mail on the Debtor's behalf.  In most instances, the Debtor paid for domestic postage at the time the materials were mailed through Kirkwood Direct's authorized use of the Debtor's Centralized Account Processing System with the U.S. Postal Service.[3]

---

[2] Kirkwood Direct continues to print bulk materials for the entities that emerged from the Debtor's reorganization.

[3] Kirkwood Direct would scan the materials and apply domestic postage at its facility using the Debtor's CAPS account, which was funded by the Debtor.  International postage or shipping by other carriers (*e.g.*, United Parcel Service) was paid by Kirkwood Direct and then invoiced to the Debtor.

As of the Petition Date, the Debtor owed Kirkwood Direct at least $283,563.69.  Of that total amount, $47,999.24 is owed for printed materials purchased by the Debtor in the ordinary course of its business and shipped within the twenty days immediately preceding the Petition Date.  Kirkwood Direct timely filed its proof of claim on March 20, 2015 (eight days after the Petition Date) and is entitled to administrative expense priority for $47,999.24 of that proof of claim.[4]

## **ARGUMENT**

Bankruptcy Code section 503(b)(9) provides as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— . . .

> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

This provision, enacted on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), increased statutory protections available to vendors like Kirkwood Direct.  "BAPCPA is remedial in nature," and "[a]s a general matter, remedial legislation should be construed in a way that effectuates its remedial purpose." *Miller v. U.S. (In re Miller)*, 519 B.R. 819, 827 (B.A.P. 10th Cir. 2014) (quotations omitted).  With the foregoing in mind, SRI's objection should be overruled.

**I.     Kirkwood Direct Provided Goods Within Twenty Days Immediately Preceding The Petition Date.**

SRI's argument that Kirkwood Direct did not provide goods within twenty days prior to the Petition Date must be rejected.  Here, the twenty-day period ran from February 20, 2015, to March 12, 2015 (the Petition Date).  Kirkwood Direct included with its proof of claim a schedule

---

[4] Kirkwood Direct does not assert that the remaining $235,564.45 is entitled to administrative expense priority.

regarding its provision of goods, and the following plainly fall within the requisite twenty-day period:

| Invoice No. | Date | Amount |
|---|---|---|
| 56832 | 2/25/15 | $20,307.25 |
| 56858 | 2/26/15 | $5,741.88 |
| 55197 | 2/27/15 | $470.00 |
| 56423 | 2/27/15 | $14,790.78 |
| 56703 | 2/27/15 | $1,341.00 |
| 56734 | 2/27/15 | $2,097.51 |
| 56779 | 2/27/15 | $1,009.18 |
| 56780 | 2/27/15 | $1,588.86 |
| 56965 | 2/27/15 | $652.78 |
| | **TOTAL:** | **$47,999.24** |

SRI's assertion that these items do not fall within the twenty-day period lacks merit.

## II.    Kirkwood Direct's Mailing Of The Debtor's Purchases As Directed By The Debtor Satisfies Section 503(b)(9).

SRI argues that the goods underlying Kirkwood Direct's administrative expense claim were not "received by the debtor," as that phrase is used in Bankruptcy Code section 503(b)(9). SRI cites to a few decisions, none of which are controlling, in which courts have concluded that under printing and mailing arrangements, goods were not "received" by the debtor.  (Objection, at ¶ 26.)  These decisions do not, as SRI suggests, hold that actual, physical receipt of the goods by the debtor is required, and the Court should reject the bright line rule that SRI seeks with respect to commercial printing and mailing arrangements.

In *In re Momenta, Inc.*, 455 B.R. 353, 360 (Bankr. D.N.H. 2011), *aff'd sub nom Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, No. 11-cv-479, 2012 U.S. Dist. LEXIS 122615 (D.N.H. 2012), the court expressly recognized that a valid section 503(b)(9) claim exists where a debtor had actual or constructive possession of such goods:

> The same interpretation must apply to § 503(b)(9) because it is related to, and a part of the remedies provided under the provisions of § 546(c).  A seller must be entitled to an administrative expense claim where a debtor receives goods, by

> either physical possession or constructive possession as specified in UCC § 2-705(2), within 20 days of the commencement of the bankruptcy case. Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods.

*See also In re World Imports*, 516 B.R. 296, 300 (E.D. Pa. 2014).  The drafters of the UCC explained in Official Comment 2 to UCC section 2-705 that "constructive receipt" of goods in a commercial printing and mailing occurs when goods are received by the buyer's designee: "'Receipt by the buyer' includes received by the buyer's designated representative, the sub-purchaser, when the shipment is made direct to him and the buyer himself never receives the goods."

The requisite possession that a debtor must have under section 503(b)(9) occurs when a seller "can no longer stop delivery of the goods and is left with only the remedy of reclamation." *In re Bill's Dollar Stores, Inc.*, 164 B.R. 471, 475 (Bankr. D. Del. 1994) (decided under section 546(c)(1)); *Momenta*, 455 B.R. at 360 (same interpretation to be used under sections 503(b)(9) and 546(c)).  "Constructive possession commonly occurs when goods are delivered to the buyer's agent, often a bailee, and the agent has actual possession of them."  *In re Wezbra Dairy, LLC*, 493 B.R. 768, 770 n.4 (Bankr. N.D. Ind. 2013); *Montello Oil Corp. v. Marin Motor Oil, Inc.*, 740 F.2d 220, 225 (3d Cir. 1984) (oil received when pumped into buyer's bailee's storage facility).

Here, the goods produced by Kirkwood Direct were constructively possessed by the Debtor *either* at the moment that Kirkwood Direct placed the goods into the mail system on the Debtor's behalf (and for the Debtor's benefit) *or* at the moment the goods were received by the Debtor's third-party recipients.  As noted, the Debtor required Kirkwood Direct to mail the printed materials to third-party recipients, and Kirkwood Direct utilized the Debtor's CAPS account to purchase postage for the mailings.  Once Kirkwood Direct deposited the mailings into

the postal system, and certainly upon delivery to the addressees selected by the Debtor, Kirkwood Direct was powerless to stop delivery of the materials. Either the mail carrier or the addressees themselves should be recognized as the Debtor's designee for purposes of Bankruptcy Code section 503(b)(9).

Equity and public policy support the recognition of Kirkwood Direct's administrative expense priority claim. As a court of equity, the Court should avoid the unfair and inequitable results that would obviously flow from sustaining SRI's Objection. The Debtor required Kirkwood Direct to mail the printed materials to third-party recipients. Kirkwood Direct should not be prejudiced on account of the mere technicality that Kirkwood Direct did not deliver the materials directly to the Debtor. Indeed, Kirkwood Direct could have tendered the printed materials directly to the Debtor so that the Debtor would have physically possessed the materials and could have completed the mailings itself. But, that additional step would have significantly increased the time, energy, and expense required to complete the mailings. Kirkwood Direct should not be penalized for utilizing an efficient and cost-effective process that inured to the Debtor's benefit.

Moreover, as one court put it, Bankruptcy Code section 503(b)(9) was added in order to afford "protection to sellers of goods on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of whether the technical requirements for reclamation were met." *In re TI Acquisition, LLC*, 410 B.R. 742, 746 (Bankr. N.D. Ga. 2009). Protecting sellers like Kirkwood Direct in circumstances like these will incentivize sellers to continue providing goods to companies facing financial difficulties, a legitimate goal recognized in other bankruptcy contexts. *Cf. Friedman's Liquidating Trust v. Roth Staffing Cos. LP (In re Friedman's Inc.)*, 738 F.3d 547, 558 (3d Cir. 2013) (new value preference defense "designed 'to encourage trade

creditors to continue dealing with troubled businesses'"").  SRI's Objection contravenes these basic principles of equity and public policy.

**III.      Kirkwood Direct Provided "Goods."**

SRI's final argument in support of its Objection is that Kirkwood Direct did not provide "goods."  As SRI points out, courts have looked to the definition of "goods" in Article 2 of the UCC:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of this title) and things in action.

*See, e.g.*, *In re NE Opco, Inc.*, 501 B.R. 233, 241 (Bankr. D. Del. 2013).  The printed materials generated by Kirkwood Direct for the Debtor plainly meet this definition of "goods" and provide a sound basis upon which Kirkwood Direct may assert an administrative expense claim.  SRI's conclusory argument should be rejected.

## CONCLUSION

Based on the foregoing, the Court should overrule SRI's Objection, declare that Kirkwood Direct has a valid, allowed administrative expense in the amount of $47,999.24, and grant Kirkwood Direct such other and further relief as the Court deems just.

Dated:  July 15, 2016
            Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_____*/s/ William E. Chipman, Jr.*_____
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:          chipman@chipmanbrown.com
                   olivere@chipmanbrown.com

- and -

Louis DiFronzo
Seyfarth Shaw LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA  02210-2028
Telephone:      (617) 946-4870
Facsimile:      (617) 946-4801

*Counsel for Kirkwood Direct, LLC*