**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 15-10541 (BLS) |
| SRC Liquidation, LLC,[1] | : | |
| | : | |
| Debtors. | : | **Hearing Date: September 28, 2016 at 4:00 p.m. (ET)** |
| | : | **Response Deadline: September 2, 2016 at 4:00 p.m. (ET)** |
| | : | **Related Document No. 2041** |

**REPLY OF COHBER PRESS, INC. TO STANDARD REGISTER
INC.'S FIFTH OMNIBUS (SUBSTANTIVE) OBJECTION TO
CLAIMS ASSERTED PURSUANT TO 11 U.S.C. § 503(b)(9)**

Creditor Cohber Press, Inc. ("Cohber"), by and through its undersigned attorneys, hereby submits this Reply to *Standard Register Inc.'s Fifth (5th) Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* (the "Objection") filed by Taylor Corporation and its Designated Buyer Standard Register Inc. (collectively, "SRI") on August 8, 2016 seeking the entry of an order reclassifying certain section 503(b)(9) claims as general unsecured claims (the "Claim Objection"). In support of this Reply, Cohber respectfully states as follows:

<u>BACKGROUND</u>

1.     On March 12, 2015 (the "Petition Date") the SRC Debtors[2] filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

2.     Prior to the Petition Date, Cohber supplied the SRC Debtors with printed goods, including, without limitation, brochures, flyers, promotional materials, posters, notecards and folders.

---

[1]  The last four digits of the Debtor's federal tax identification number are 5540.
[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

40643858v1

3.     On June 9, 2015, Cohber timely submitted its administrative expense claim pursuant to 11 U.S.C. § 503(b)(9) in the amount of $71,738.45 (the "Cohber 503(b)(9) Claim") (Claim No. 1736).[3]

4.     The Cohber 503(b)(9) Claim represents the amount owed to Cohber with respect to the unpaid value of printed materials (the "Goods") sold to the SRC Debtors in the ordinary course of business and received within the 20 days prior to the Petition Date.

5.     On August 8, 2016, SRI filed the Claim Objection. The Claim Objection asserts that the Cohber 503(b)(9) Claim should be reduced from $71,738.45 to $46,297.26.  SRI alleges that part of the claim is "drop ship" and/or "not for goods" in violation of 11 U.S.C. § 503(b)(9). *See* Exhibits A and B to the Claim Objection.

## DISCUSSION

**I.     The Cohber 503(b)(9) Claim Is *Prima Facie* Valid and SRI Has Failed to Provide Any Evidence as to its Invalidity**

6.     Based on the information provided by Cohber in the Cohber 503(b)(9) Claim and the corresponding supporting documentation that was attached thereto, it is clear that Cohber has sought payment for Goods that are identifiable, were sold to the SRC Debtors in the ordinary course of business and were, in fact, delivered within the twenty (20) days prior to the Petition Date.

7.     Pursuant to section 503(b)(9) of the Bankruptcy Code:

> After notice and a hearing, there shall be allowed administrative expenses …including … (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

---

[3] Cohber also timely filed a proof of claim in the amount of $277,895.41 (Claim No. 2310), which included both its

8.      A proof of claim executed and filed in accordance with Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") constitutes *prima facie* evidence of the validity and amount of the claim.  When a claim is properly filed pursuant to the Bankruptcy Code and Bankruptcy Rules, such claim is entitled to a presumption of validity and amount.  *See In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir. 1993) (citations omitted), cert. denied, 510 U.S. 914 (1993).  The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence.  *Id.*

9.      If the debtor makes an objection, providing evidence equal in force to *the prima facie* case which, if believed, would refute at least one of the allegations essential to the claim's legal sufficiency, the burden shifts back to the creditor to prove the claim by a preponderance of the evidence.  *In re Oneida, LTD.*, 400 B.R. 384, 389 (Bankr.  S.D.N.Y. 2009).  When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law, the claim should be allowed.  *Id.*

10.      In support of the Cohber 503(b)(9) Claim, Cohber provided information setting forth the Goods provided to the SRC Debtors, including a calculation of the total value of such Goods, the invoice number and date associated with the Goods, as well as the dates the Goods were shipped.  Cohber also provided copies of the relevant invoices in support of the Cohber 503(b)(9) Claim.

11.      However, despite having been provided with detailed information regarding the specific nature and identity of the Goods sold to the SRC Debtors and delivered as directed by the SRC Debtors in the twenty (20) day period prior to the Petition Date, SRI simply asserts that the Cohber 503(b)(9) Claim represented services rather than goods and/or that the goods were

---

general unsecured claim for $206,156.96 and its 503(b)(9) claim for $71,738.45.

not received by the SRC Debtors, but instead by a third party. SRI makes no attempt to even describe which items are for services or which items were shipped to a third party.

12. By making such a broad, conclusory objection and without providing additional evidence to substantiate the Claim Objection, SRI has not met its burden of disputing the *prima facie* validity of the Cohber 503(b)(9) Claim. As such, the Claim Objection should be overruled, and the Cohber 503(b)(9) Claim should be allowed.

## II. The 503(b)(9) Claim Should Be Allowed as a Claim for the Value of Goods Provided to the SRC Debtors

13. In the event that the Court declines to dismiss the Claim Objection due to the lack of evidence as to the alleged invalidity of Cohber's claim, Cohber respectfully submits that the claim should be allowed in full as the claim concerns Goods sold to the SRC Debtors within the 20-day period prior to the Petition Date. The Cohber 503(b)(9) Claim, detailed through attached invoices, represents the value of the Goods provided to the SRC Debtors in the 20-day period prior to the bankruptcy filing.

14. The term "goods" is not defined in the Bankruptcy Code with respect to 503(b)(9) claims. Therefore, courts have looked to the Uniform Commercial Code's (the "UCC") definition of goods, that is: "all things (including specifically manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action". DE UCC § 2-105(1). Moreover, the "goods must be both existing and identified before any interest in them can pass." DE UCC § 2-105(2).

15. The Goods described in the Cohber 503(b)(9) Claim are printed materials sold to the SRC Debtors by Cohber as finished products, and fall squarely within the UCC's definition of moveable, manufactured goods that were existing at the time Cohber sold the Goods to the

SRC Debtors.  Further, as stated above, Cohber provided copies of the invoices to substantiate and evidence the Goods with the Cohber 503(b)(9) Claim.

16.    Therefore, as the nature and value of the Goods provided to the SRC Debtors within the 20 days prior to the Petition Date is easily ascertainable and supported by documentation from Cohber, the Cohber 503(b)(9) Claim should be allowed in its full amount.

17.    Further, Cohber respectfully submits that the only relevant inquiry as to the *value* of goods delivered is the invoice amount of the Goods sold to the SRC Debtors, which can be easily ascertained and identified with the information provided by Cohber in support of its claim.

## III.    Goods were Received by the SRC Debtors When Delivered by Cohber to the Designated Shipping Agent

18.    SRI argues, through the Claim Objection, that because certain of the Goods were "drop shipped" to the SRC Debtors' customers, such Goods were not physically received by the SRC Debtors, and therefore, were not "received by the debtor" within the meaning of section 503(b)(9) of the Bankruptcy Code.  To the extent that SRI seeks disallowance of the Cohber 503(b)(9) Claim for this reason, such argument is without merit.

19.    As a preliminary matter, SRI has not provided any detailed statement of which Goods were allegedly "drop shipped" or not delivered to the SRC Debtors.  Furthermore, even if and to the extent any third parties received certain of the Goods, Cohber would have delivered the Goods to the SRC Debtors via the SRC Debtors' designated shipping agent on the SRC Debtors' instructions.  Under any circumstances, delivery through the SRC Debtors' shipping agent would be tantamount to delivery to the SRC Debtors themselves, as risk of loss shifted, and Cohber's right to stop delivery terminated, upon delivery to the Debtor's designated agent.

20.    Section 503(b)(9) applies to give a claim for goods "sold" by the creditor to the debtor.  The Bankruptcy Code does not define "sale" but the Uniform Commercial Code

includes the following definition:    "the passing of title from the seller to the buyer for a price"

UCC § 2-106(1).  Here, Cohber clearly sold the Goods to the SRC Debtors.

21.    After the enactment of section 503(b)(9) and revisions to section 546(c) of the

Bankruptcy Code as part of BAPCPA, many courts speculated regarding the applicability of pre-

2005 case law concerning reclamation rights to revised 546(c) and newly-created 503(b)(9).  In

particular, section 503(b)(9)'s relationship to reclamation rights under section 546(c) of the

Bankruptcy Code has proved helpful in interpreting various concepts presented by section

503(b)(9).  *See, e.g., In re TI Acquisition, LLC*, 410 B.R. 742, 745 (Bankr.  N.D. Ga. 2009)

("[t]he treatment of expenses in Section 503(b)(9) appears to be an outgrowth of the policy that

first appeared in 11 U.S.C. § 546(c)").

22.    However, other courts have held that since section 503(b)(9) is meant to be an

expansion of reclamation rights[4] and available where traditional reclamation rights would not be,

503(b)(9) should be interpreted on its face, and separately from traditional interpretations of

section 546 of the Bankruptcy Code.  *See In re Erving Indus.  Inc*., 432 B.R. 354, 373 (Bankr.

D. Mass. 2010 ("Section 546 does not limit or control in any way the rights that claimant has

under § 503(b)(9)"); *In re Plastech Engineered Prods*., 397 B.R. 828, 838 (Bankr.  E.D. Mich

2008) ("However, there is nothing in § 503(b)(9) that requires a claimant to also be entitled to a

reclamation right under § 546.").  Taken on its face, it is not clear whether 503(b)(9) requires that

"goods [are] received" by the debtor or if it is sufficient that "value [is] received" which value is

related to "goods" sold to the debtor.  Although this argument has been made by commentators

since the enactment of section 503(b)(9), in *In re Plastech Engineered Products, Inc.,* 397 B.R.

---

[4] *See In re Circuit City Stores Inc*., 416 B.R. 531, 536 (Bankr. E.D. Va. 2009) ("[Section 503(b)(9)] appears to have been adopted as an attempt by Congress to enhance certain types of reclamation claims raised by creditors in bankruptcy case.").

at 838, the court ultimately held that "[i]t is the goods and not the value that must be received by the debtor to trigger § 503(b)(9)".

23.    Since the enactment of 503(b)(9), another court considering the issue of goods sold to a debtor, but shipped to a third party, looked to the UCC for guidance as no definition of "received" exists in the Bankruptcy Code context.  *In re Circuit City Stores, Inc.*, 432 B.R. 225 (Bankr. E.D.Va. 2010) (considering 503(b)(9) in a consignment context and holding that "received" is defined as set forth in the UCC).  The word "receipt" is defined in section 2-103(c)(1) of the UCC as "actual physical possession."

24.    In considering the relationship between reclamation rights under the UCC and section 503(b)(9), however, one cannot end the inquiry there.  In this context, the term "received" under section 503(b)(9) is defined through the definition of "receipt" under the UCC.  "Receipt" under section 2-103 of the UCC may be either constructive or actual.  The Bankruptcy Court for the District of New Hampshire agreed with a constructive possession interpretation of "received by the debtor" for purposes of section 503(b)(9) and held that a 503(b)(9) claim would be available to a creditor where the debtor had constructive possession of the goods, but ultimately found there to be insufficient evidence to prove constructive possession for the relevant claims at issue.  *In re Momenta, Inc.,* 455 B.R. 353, 357-58 (Bankr. D.N.H. 2011), aff'd 2012 U.S. Dist. LEXIS 122615 (D.N.H. Aug. 29, 2012).  Notably, the *Momenta* decision has been followed in the 3rd Circuit.  *See In re World Imps.*, 516 B.R. 296 (Bankr. E.D. Pa. 2014).

25.    In reaching its decision, the *Momenta* court reasoned that, although shipping through an international common carrier alone did not necessarily give the debtor constructive possession, if the goods had been delivered to an agent or bailee of the debtor, then "receipt" by

the debtor would have been achieved for purposes of section 503(b)(9). The *Momenta* court ultimately held that:

> [a] seller must be entitled to an administrative expense claim where a debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. <u>Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods.</u>

*In re Momenta*, 455 B.R. at 360-61 (emphasis supplied). The SRC Debtors had actual or constructive possession of the Goods here in any case, due to the SRC Debtors' control over the shipping agent or bailee and Cohber's lack of control and ability to stop shipment after it delivered the Goods per the SRC Debtors' instructions to the shipper. Even if a portion of the Goods were to be shipped to a third party, at the point at which Cohber delivered such Goods to the shipping agent or bailee, the SRC Debtors exercised constructive possession, held the risk of loss, and controlled the destination of the Goods bound for its customers through its relationship with its shipping agent or bailee.

## CONCLUSION

26.     For all of the reasons set forth above, Cohber respectfully submits that it is entitled to the full allowance of the Cohber 503(b)(9) Claim, as such claim is based on the sale of goods over which the SRC Debtors had possession within the 20-day period prior to the Petition Date.

**WHEREFORE**, Cohber respectfully requests that this Court enter an Order:

(a) allowing the Cohber 503(b)(9) Claim in full as SRI has failed to submit information sufficient to rebut the Cohber 503(b)(9) Claim's presumption of validity;

(b) allowing the Cohber 503(b)(9) Claim in full, as the SRC Debtors received goods from Cohber within the 20-day period prior to the Petition Date; and

(c) granting such other and further relief as the Court deems just and proper.

Dated: September 2, 2016
      Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Evelyn J. Meltzer
Evelyn J. Meltzer (DE No. 4581)
1313 North Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500 (telephone)
302.421.8390 (facsimile)

and

BOND SCHOENECK & KING, PLLC
Sara C. Temes, Esq.
Olga F. Peshko, Esq.
Sarah M. Harvey, Esq.
One Lincoln Center
Syracuse, NY 13202
315.218-8000 (telephone)
315.218.8100 (facsimile)

*Attorneys for Cohber Press, Inc.*