**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SRC Liquidation, LLC,<br><br>                        Debtor. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>Hearing Date: September 28, 2016 at 10:30 a.m. (ET)<br>Response Deadline: September 2, 2016 at 4:00 p.m. (ET) |

**RESPONSE OF SANMAR CORPORATION TO**
**STANDARD REGISTER INC.'S FIFTH (5TH) OMNIBUS (SUBSTANTIVE)**
**OBJECTION TO SECTION 503(b)(9) CLAIMS PURSUANT TO SECTION 502 OF THE**
**BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1**

SanMar Corporation ("SanMar"), by and through its undersigned counsel, hereby files this Response in opposition to *Standard Register, Inc.'s Fifth (5th) Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* (the "Objection") [Docket No. 2036]. Through the Objection, Taylor Corporation and its Designated Buyer Standard Register, Inc. (collectively, "SRI") seek reclassification of certain Section 503(b)(9) claims as general unsecured claims. SanMar's Section 503(b)(9) claim, filed on June 5, 2015 in the amount of $173,160.24 under Claim Number 1550 (the "SanMar Claim"),[1] is identified in both Exhibits A and B to the Claim Objection (the "Drop Ship Claims" and the "Claims Not for Goods," respectively) [Docket No. 2036, Ex. A-B].[2]

---

[1] SanMar's total claim is $484,879.28; however, in its proof of claim, SanMar only asserts that it is entitled to priority treatment under Section 503(b)(9) for $173,160.24 of that total claim amount [*See* Claim No. 1550]. Upon further review of its records in response to the Objection, SanMar now asserts that the amount of its total claim entitled to priority treatment under Section 503(b)(9) is $170,957.11. Barton Decl. ¶ 6.

[2] The Objection seeks to reclassify an additional set of Section 503(b)(9) claims: "Goods Delivered Outside of 20 Days" [Docket No. 2036, ¶¶ 23-27, Ex. C]. The SanMar Claim is not identified in Exhibit C; therefore, this Response focuses exclusively on the portion of the Objection concerning the Drop Ship Claims and the Claim Not for Goods.

113540.0218/6748062.5

For the reasons set forth below, SanMar respectfully requests that the Court exclude the SanMar Claim from any reclassification of the Drop Ship Claims or the Claims Not for Goods. In support of this Response, SanMar relies on the Declaration of Chris Barton ("Barton Decl.") and the pleadings and files on record.

## BACKGROUND

SanMar sells various undecorated goods within the promotional products industry. Barton Decl. ¶ 2. Standard Register Company ("SRC"), one of the Debtors, was a customer of SanMar through the petition date. Barton Decl. ¶ 3. SanMar and SRC's ordinary course of business was for SRC to purchase undecorated goods from SanMar, then direct SanMar to ship the undecorated goods to various third-party decorators (the "Decorators") who decorated the goods on SRC's behalf for sale to SRC's customers. Barton Decl. ¶ 4. The Decorators would then ship the decorated goods at the discretion of SRC either to SRC's customers or to SRC itself.[3] Barton Decl. ¶ 4. During the 20-day pre-petition period contemplated under Section 503(b)(9), SRC purchased $170,957.11 of undecorated SanMar goods that were delivered to SRC's decorator agents (the "Undecorated Goods"). Barton Decl. ¶ 5.

## SANMAR'S OPPOSITION TO THE OBJECTION

**A. The Objection Does Not Apply to the SanMar Claim.**

    1. <u>The SanMar Claim is not a Claim Not for Goods</u>.

The Court must deny the Claims Not for Goods Objection to the SanMar Claim, with the exception of $2,203.13, because the balance of the SanMar Claim only represents the aggregate sale price of the Undecorated Goods. SRI argues that the Claims Not for Goods should not

---

[3] SanMar has no specific information on the disposition of its undecorated goods after they are delivered to the Decorators. Barton Decl. ¶ 4.

2

qualify as Section 503(b)(9) claims because "at least a portion of each claim is for services, wages, freight, postage, and rent, among other things." Objection ¶ 22.

> The only relevant determination under § 503(b)(9) is the value of the 'goods' that were delivered, irrespective of whether the contract also called for the delivery and sale of services… There is nothing in § 503(b)(9) that somehow disqualifies a § 503(b)(9) claim just because the contract pursuant to which the goods were sold also provides for the sale of services.

*In re Plastech Engineered Products, Inc.*, 397 B.R. 828, 837-838 (Bankr. E.D. Mich. 2008). SanMar concedes the SanMar Claim as asserted in Claim Number 1550, included $2,203.13 of charges for items other than the Undecorated Goods [see Claim Number 1550]. Barton Decl. ¶ 6. SanMar's invoices related to the Undecorated Goods distinguish between the applicable sale prices and the costs associated with shipping and handling, and the SanMar Claim in the adjusted amount of $170,957.11 only includes the total sale price amount of such goods. Barton Decl. ¶ 7, Ex. A. Therefore, other than the $2,203.13 portion identified above, the Objection has no bearing on the SanMar Claim insofar as it asserts that the SanMar Claim is not exclusively for the value of "goods." The SanMar Claim should be allowed as a Section 503(b)(9) claim in the amount of $170,957.11.

    2. <u>The SanMar Claim is not a Drop Ship Claim</u>.

The Court must deny the Drop Ship Objection to the SanMar Claim because the Undecorated Goods were received by SRC through delivery to its decorator agents, and not drop-shipped to SRC's customers. Neither the legal support cited by SRI, nor this Court's prior rulings regarding Section 503(b)(9) and Drop Ship Claims, are applicable to the SanMar Claim. Accordingly, the Court should not reclassify the SanMar Claim as a general unsecured claim; rather, the Court should allow the SanMar Claim in full as an administrative expense claim under Section 503(b)(9).

SRI argues that the Drop Ship Claims should not qualify as Section 503(b)(9) claims because the goods in question were "delivered directly to the Debtors' customers," rather than being "received by the debtor" as Section 503(b)(9) requires. Objection ¶ 18. That argument is fundamentally flawed as applied to the Undecorated Goods because the Undecorated Goods were not delivered directly to the Debtors' customers. Instead, SanMar delivered the Undecorated Goods to the Decorators, who received the Undecorated Goods on behalf of SRC.

SRI cites three cases in support of the proposition that "[m]any courts have held that goods delivered to an entity other than the debtor, in a drop-shipment arrangement, were not 'received' by the debtor for purposes of Section 503(b)(9)"; however, all three of those cases involve goods delivered to customers and are readily distinguishable with regards to the SanMar Claim because SanMar did not deliver the Undecorated Goods directly to SRC's customers. In *World Imports*, "four of the five shipments were delivered directly to the Debtor's customers," and the fifth shipment was allowed as an administrative expense claim under Section 503(b)(9). *In re World Imports*, 516 B.R. 296, 298 (Bankr. E.D. Pa. 2014). Likewise, in *Momenta*, the disputed shipments were all shipped directly from the claimant to the debtor's customers. *In re Momenta, Inc.*, 455 B.R. 353, 356 (Bankr. D.N.H. 2011). Finally, and perhaps most notably, in *Plastech*, fact issues precluded the court from determining whether shipments to the debtor's customer qualified for administrative priority under Section 503(b)(9) because "the record in this case has not yet been sufficiently developed to enable the Court to determine whether [the customer] took actual physical possession of the goods as an agent, designee, bailee, or in some other representative capacity for the Debtor." *In re Plastech Engineered Products, Inc.*, 08-42417, 2008 WL 5233014, at *4 (Bankr. E.D. Mich. Oct. 7, 2008).

SRI relies not only on the language of Section 503(b)(9) and the three cases distinguished above, but also on this Court's prior rulings sustaining similar omnibus objections to Section 503(b)(9) claims. Specifically, SRI quotes the Court's October 15, 2015 oral ruling, where the Court stated that "it is appropriate to incorporate into the 503(b)(9) analysis Article 2 considerations given that we talk about receipt of goods" [Obj. ¶ 17, quoting Docket No. 1214, Transcript, Oct. 15, 2015, p. 12]. Given the material distinction between the SanMar Claim and the Drop Ship Claims, and based on the Court's support for incorporating considerations from Article 2 of the Uniform Commercial Code (the "UCC") into the Section 503(b)(9) analysis, the SanMar Claim should not only be spared from the reclassification faced by the other Drop Ship Claims, but also allowed in the amount of $170,957.11 as a Section 503(b)(9) administrative expense claim because the Undecorated Goods *were* "received" by SRC within the meaning of Section 503(b)(9) as articulated by the Court's prior rulings and orders.

**B. The SanMar Claim is Entitled to Administrative Priority Pursuant to Section 503(b)(9).**

Creditors are entitled to administrative priority for "the value of any goods received by the debtor within 20 days [pre-petition] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Therefore, in determining whether a Section 503(b)(9) claim should be allowed, Delaware bankruptcy courts require claimants to establish three elements: (1) the claimant sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business. *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009). It is indisputable that the SanMar Claim satisfies the first and third elements, and that the Undecorated Goods were received by SRC's Decorators within the 20-day pre-petition period; the only dispute centers on whether the Undecorated Goods were "received" by SRC.

5

The Bankruptcy Code does not define the term "received," so courts attempting to decipher the meaning of "received" in Section 503(b)(9) routinely consider the following bankruptcy and non-bankruptcy provisions: Section 546(c), which addresses reclamation rights and references Section 503(b)(9), UCC § 2-103(1)(c), which defines "receipt" of goods as "taking physical possession of them," UCC § 2-702, which was "essentially adopted" by Section 546(c), and UCC § 2-705, which is referenced in UCC § 2-702 and concerns a seller's right to stop delivery. *See Momenta*, 455 B.R. at 358-360 (collecting cases). Considering those various bankruptcy and non-bankruptcy provisions in unison, courts generally conclude that the answer to what it means to "receive" goods lies in UCC § 2-705(2), which sets forth four events, any one of which terminates a seller's right to stop goods in transit. *Id*. at 359.

Only one of the four events set forth in UCC § 2-705(2) that terminates a seller's interest in goods involves the buyer directly taking possession of the goods. UCC § 2-705(2)(a); *see also* Del. Code tit. 6, § 2-705(2)(a); RCW 62A.2-705(2)(a). The other three events terminating a seller's interest in goods involve various forms of third-party possession on behalf of the buyer. UCC § 2-705(2)(b)-(d); *see also* Del. Code tit. 6, § 2-705(2) (b)-(d); RCW 62A.2-705(2) (b)-(d). Courts recognize that constructive possession through a third-party pursuant to UCC § 2-705(2) can satisfy the receipt requirement of Section 503(b)(9). *See Momenta*, 455 B.R. at 360; *see also In re Wezbra Dairy, LLC*, 493 B.R. 768, 770-771 (Bankr. N.D. Ind. 2013); *Matter of Marin Motor Oil, Inc.*, 740 F.2d 220, 226 (3d Cir. 1984). For instance, the *Momenta* court held that

> A seller must be entitled to an administrative expense claim where a debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. Consequently, *a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods*.

*Momenta*, 455 B.R. at 360 (emphasis added).

6

This Court appears to have adopted this analysis, ruling that "it is appropriate to incorporate into the 503(b)(9) analysis Article 2 considerations given that we talk about receipt of goods," and noting that "[m]any, many Courts have dealt with this issue" [Transcript, Oct. 15, 2015, p. 12]. SRI, too, has promoted this exact analysis [*see* Docket No. 1138 ¶¶ 3-7]. Specifically, SRI has previously argued that the only way for a Drop Ship Claim to escape reclassification and survive as an allowed Section 503(b)(9) claim is under one of the three "constructive receipt" situations outlined in UCC § 2-705(2): (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or (d) negotiation to the buyer of any negotiable document of title covering the goods [Docket No. 1138 ¶¶ 5-6, citing UCC § 2-705(2) and *Marin Motor Oil*, 740 F.2d at 225-26 n. 13].

Unlike the majority of the Drop Ship Claims, the Undecorated Goods *were* received by SRC pursuant to UCC § 2-705(2). Specifically, the Undecorated Goods were constructively received by SRC upon its bailees' receipt of such goods and the corresponding acknowledgment to SRC by its bailees of the goods (the Decorators), as contemplated by UCC § 2-705(2)(b). This is demonstrated by the contractual relationships between SRC and the Decorators, which constituted bailments as established by (1) delivery of the Undecorated Goods by SanMar to the Decorators to be used for a specific purpose as directed by SRC, (2) acceptance of that delivery by the Decorators, and (3) an express or implied contract that the purpose would be carried out and that the Undecorated Goods would then be returned to SRC or delivered as otherwise directed by SRC. *In re Magna Entm't Corp.*, 438 B.R. 380, 396 (Bankr. D. Del. 2010). Under these bailment relationships, the "specific purpose" was decorating the Undecorated Goods, and the express or implied contracts regarding carrying out that purpose were entered into between

7

SRC and the Decorators. Therefore, the Decorators received the Undecorated Goods as bailees for SRC, and the Undecorated Goods were "received" by SRC within the meaning of Section 503(b)(9) upon the Decorators' acknowledgement to SRC that they were in receipt of the various Undecorated Goods and were holding them for SRC for the purpose of decorating them as instructed by SRC.[4]  Alternatively, the Decorators were SRC's authorized agent or designee, and their possession constituted SRC's receipt of the Undecorated Goods.  *See Plastech*, 2008 WL 5233014 at *4 (contemplating delivery to a third party as "an agent, designee, bailee, or in some other representative capacity" satisfying Section 503(b)(9)'s "received" element); *Wezbra Dairy*, 493 B.R. at 770 ("[c]onstructive possession commonly occurs when goods are delivered to the buyer's agent, often a bailee, and the agent has actual possession of them."); *Crumlish v. Price*, 266 A.2d 182, 183 (Del. 1970) (acts of authorized agent bind principal).

## CONCLUSION

For the foregoing reasons, SanMar respectfully requests that the Court deny the Objection with regards to the SanMar Claim, and allow the SanMar Claim as an administrative claim in the amount of $170,957.11 pursuant to Section 503(b)(9).

Dated: Wilmington, Delaware
September 2, 2016

        */s/ Davis Lee Wright*
Davis Lee Wright (DE I.D. # 4324)
MONTGOMERY, McCRACKEN, WALKER &
RHOADS, LLP
1105 North Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 504-7800
Facsimile: (302) 504-7820

---

[4] In the alternative, if there are issues of fact regarding whether the Decorators received the Undecorated Goods as contemplated under UCC § 2-705(2)(b), SanMar respectfully requests that the Court follow the guidance of *Plastech* and "not decide today [SRI's] objection to [SanMar's] assertion that the goods in this case were constructively received by [SRC] through an agent or other representative of [SRC], when [the Decorators] took actual physical possession of the goods." *Plastech*, 2008 WL 5233014 at *4.

113540.0218/6748062.5

dwright@mmwr.com

*Counsel to SanMar Corporation*

OF COUNSEL:

Gregory Fox, Esquire
James B. Zack, Esquire
Lane Powell PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
FoxG@lanepowell.com
ZackJ@lanepowell.com

113540.0218/6748062.5