## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION, LLC, | Case No.: 15-10541-BLS |
| Debtor. | **Hearing Date: September 28, 2016 at 10:30 a.m. (ET)** |

### CENVEO CORPORATION'S RESPONSE
### TO STANDARD REGISTER INC.'S FIFTH (5TH) OMNIBUS (SUBSTANTIVE) OBJECTION TO SECTION 503(b)(9) CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1

Cenveo Corporation, a Delaware Corporation and a creditor in this case ("Cenveo"), hereby responds to the *Standard Register Inc.'s Fifth (5th) Omnibus (Substantive) Objection To Section 503(B)(9) Claims Pursuant To Section 502 Of The Bankruptcy Code, Bankruptcy Rule 3007 And Local Rule 3007-1* (the "Fifth Objection") filed by Standard Register, Inc. ("Debtor").

I.     FACTS

1.     On March 12, 2015 (the "Petition Date") the Standard Register Company and certain affiliates filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

2.     On June 9, 2015, Cenveo timely filed its proof of claim asserting an administrative expense claim in the amount of $249,381.24, for goods received by the Debtor within twenty (20) days of the Petition Date, pursuant to 11 U.S.C. § 503(b)(9).

3.     Cenveo provides commercial printing, label manufacturing, envelopes, and related goods.  Cenveo provided goods to Debtor and its customers pursuant to that certain *Preferred Subcontractor Confidentiality, Indemnification, Intellectual Property and Non-Competition Agreement* dated July 1, 2009.

4.      On August 8, 2016, Debtor filed the Fifth Objection.  The Fifth Objection asserts that the Cenveo's 503(b)(9) Claim should be reduced from $249,381.24 to $151,759.92 for the reasons that certain shipments by Cenveo were allegedly (i) not for goods; (ii) not delivered within twenty (20) days of the petition date; and/or (iii) for goods "drop-shipped" directly to Debtor's customers.

## II.      ARGUMENT

### a.      The Fifth Objection Lacks the Specificity Required to Overcome the *Prima Facie* Validity of Cenveo's Claim

On June 9, 2015, Cenveo timely filed its 503(b)(9) claim, asserting an administrative priority claim for $249,381.24 in goods shipped between March 3-12, 2015.  The filed 503(b)(9) claim includes, among other items, a list of 138 invoices for product shipped within that time.  The list identifies each shipment by invoice number, date, and amount.

Due to the volume of backup documentation supporting Cenveo's claim, the invoices themselves were not submitted with the proof of claim.  However, upon request from Standard Register, on June 17, 2015 Cenveo transmitted over 1,300 pages of backup documentation, consisting of invoices and proofs of delivery, substantiating the priority claim. [1]

The proof of claim, together with the voluminous backup documentation delivered to Standard Register, constitutes *prima facie* evidence of the claim's validity.  *See In re Hemingway Transport, Inc*., 993 F.2d 915, 925 (1st Cir. 1993) (citations omitted), cert. denied, 510 U.S. 914 (1993).

An objection does not deprive Cenveo's proof of claim of its presumptive validity unless it is supported by substantial evidence.  *Id.*  Here, Debtor's objection appears to level three

---

[1]      Cenveo produced to Debtor the backup documentation relating to the 503(b)(9) claim. Cenveo does not attach the voluminous documents here, but it remains available for submission upon request.

generalized attacks on Cenveo's claim: Debtor claims that the invoices (i) were for services (not goods) and/or (ii) were not delivered within twenty (20) days of the petition date and/or (iii) were for goods "drop-shipped" directly to Debtor's customers.  *See* Fifth Objection at Exs. A, B, C. Debtor states that, as a result of some or all of the foregoing categories, Cenveo's claim should be reduced by $97,621.32 in aggregate.   However, Debtor does not attempt to quantify its objections any further – Debtor does not disclose, for instance, how much of the claim was allegedly for services rather than goods, or how much was allegedly delivered outside the 20-day window, or what products were allegedly drop-shipped.

Debtor's generalized attack on Cenveo's claim is not sufficient to inform Cenveo of the nature of the objection(s), and is not sufficient to overcome the *prima facie* validity of the proof of claim itself.  On this basis alone, the Objection should be overruled.

**b.**    **The 503(b)(9) Claim is for Goods, Not Services**

The products that are the subject of the 503(b)(9) claim are printed materials ordered from Cenveo and delivered to Debtor or its designees.  While the Bankruptcy Code does not provide a definition of goods, bankruptcy courts looks to the Uniform Commercial Code (UCC) definition to determine whether a claim is for "goods."  Pursuant to UCC 2-105(1), goods consist of "all things (including specifically manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action."

Here, the Cenveo claim is for "goods" within the meaning of the UCC.  The products shipped by Cenveo within twenty (20) days of the petition date were labels and other printed materials – clearly "goods" within the meaning of the UCC and § 503(b)(9).  To the extent

Debtor contends that any portion of Cenveo's claim should be disallowed because it is for services and not goods, the objection should be overruled.

      **c.**      <u>**The Goods Were Received Within Twenty Days of the Petition Date**</u>

This element is clearly met. The documentation in Debtor's possession establishes that the goods that are the subject of Cenveo's claim were shipped and received within the twenty (20) days prior to the Petition Date, within the statutory window for an administrative expense claim.

      **d.**      <u>**Drop-Shipped Goods Were Actually or Constructively Received by Debtor Within the Meaning of 503(b)(9)**</u>

Cenveo's records indicate that out of its $249,381.24 claim, only $52,172.07 is for goods that were "drop-shipped" directly to Debtor's customers. Attached as Exhibit "A" are Cenveo's invoices showing the remaining $197,209.17 that shipped directly to Debtor-owned facilities or distribution centers.

With respect to the remaining $52,172.07 of goods shipped directly to Debtor's customers, they should nevertheless be considered actually or constructively "received" by Debtor under § 503(b)(9), and therefore entitled to administrative priority.

Since the Bankruptcy Code lacks any definition of the term "received," Courts once again look to the definitions provided by the UCC. *See, e.g., In re Momenta, Inc.,* 455 B.R. 353, 358-359 (Bankr. D.N.H. 2011). UCC § 2-103(1)(c) states that, "unless the context otherwise requires," the term "receipt" means "actual physical possession." However, "[u]nder general principles of law, the buyer's agent may be able to obtain actual possession of the goods for the buyer." *Cargill Inc. v. Trico Steel Co. (In re Trico Steel Co.),* 282 B.R. 318, 323 (Bankr. D. Del. 2002) (*citing In re Maloney Enterprises, Inc.*, 37 B.R. 290, 294 (Bankr. E.D. Ky. 1983)). Here, the drop-shipped goods were delivered directly to Debtor's customers, presumably pursuant to

written agreements with Debtor or at the Debtor's express instructions.  Cenveo does not have access to those agreements but discovery may reveal that Debtor's customers received the goods as agent for Debtor, by contract or by operation of law.  The Court should not rule on the issue of whether the goods were actually received by Debtor before discovery is had on the issue of whether Debtor's customers received Cenveo's goods as agents for Debtor.

Additionally, the case law on drop-shipped claims recognizes that even where the debtor never came into physical possession, administrative priority may nevertheless be appropriate where the debtor had *constructive* possession of the goods at issue.  For instance, in *In re Momenta,* the Bankruptcy Court for the District of New Hampshire stated:

> [a] seller ***must*** be entitled to an administrative expense claim where a debtor received goods, by having either physical possession ***or constructive possession*** as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. ***Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods***.

455 B.R. at 360-61 (emphasis added).

UCC § 2-705(2) describes one actual and three constructive ways for a debtor to "receive" goods for UCC purposes.  *Id.* at 360.  A debtor receives goods by:

> (a) receipt of the goods by the buyer; or
>
> (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
>
> (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or
>
> (d) negotiation to the buyer of any negotiable document of title covering the goods.

UCC § 2-705(2)(a)-(d).

Here, it is likely that Debtor constructively received Cenveo's goods by one of the methods described in UCC 2-705(2)(b)-(d).  It is Debtor, not Cenveo, who possesses the relevant information and documents, and the Court should allow discovery on these issues prior to deciding whether Debtor constructively received the $52,172.07 in goods drop-shipped to Debtor's customers.

## III.    CONCLUSION

For the reasons stated above, Cenveo requests that the Court overrule Debtor's objection to Cenveo's § 503(b)(9) claim and enter an order allowing that claim in full.

Respectfully submitted,

Dated: September 8, 2016
Wilmington, Delaware

*/s/ David A. Felice*
David A. Felice (#4090)
Bailey & Glasser, LLP
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Phone: (302) 504-6333
Fax: (302) 504-6334
Email: dfelice@baileyglasser.com