## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SRC LIQUIDATION, LLC,** | **Case No. 15-10541 (BLS)** |
| **Debtor.** | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF JOINT CERTIFICATION OF COUNSEL REQUESTING AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND SRC LIQUIDATION, LLC

The United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), respectfully submits this memorandum of law in support of the Joint Certification of Counsel Requesting Approval of Settlement Agreement ("Joint Certification"), which is being filed simultaneously with this memorandum. For the reasons set forth below, the United States requests that this Court approve the proposed Settlement Agreement between the United States and SRC Liquidation LLC ("SRC"), together with ten affiliated debtors (collectively "Debtors"),[1] relating to the North Sanitary Landfill Superfund Site lodged with the Court on January 19, 2017 ("Settlement Agreement"). [D.I. 2145 Ex. 1]

---

[1]      The ten affiliated debtors include (1) SR Liquidation Holding Company f/k/a Standard Register Holding Company, (2) SR Liquidation Technologies, Inc. f/k/a Standard Register Technologies, Inc., (3) SR Liquidation International, Inc. f/k/a Standard Register International, Inc., (4) iMLiquidation, LLC f/k/a iMedConsent, LLC, (5) SR Liquidation of Puerto Rico Inc. f/k/a Standard Register of Puerto Rico Inc., (6) SR Liquidation Mexico Holding Company f/k/a Standard Register Mexico Holding Company, (7) SR Liquidation Technologies Canada ULC f/k/a Standard Register Technologies Canada ULC, (8) Standard Register Holding, S. de R.L. de C.V., (9) Standard Register de México, S. de R.L. de C.V, and (10) Standard Register Servicios, S. de R.L. de C.V.

The proposed Settlement Agreement, if approved, will fully resolve EPA's proof of claim filed against SRC ("Proof of Claim"), which was docketed as Claim No. 2474,[2] contending that SRC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for response costs incurred and to be incurred by the United States at the Valleycrest Landfill Superfund Site (a/k/a/ North Sanitary Landfill) in the City of Dayton, Montgomery County, Ohio.  Under the Settlement Agreement, the United States shall have an allowed general unsecured claim against SRC of $4,300,000 that shall be entitled to treatment as a Class IV Allowed General Unsecured Claim under the confirmed *Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and Its Affiliates (With Technical Modifications)* (the "Plan").  [D.I. 1331 Ex. A]  This Court specifically reserved jurisdiction to "enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate . . . agreements . . . created in connection with the Plan."  Plan § VIII.A13.  As a precondition to the effectiveness of the proposed Settlement Agreement, the Court must approve the fairness of the proposed Settlement Agreement and its consistency with environmental law. This memorandum of law in support of the Joint Certification seeks entry of order approving the proposed Settlement Agreement under environmental law.

As a matter of policy, the U.S. Department of Justice normally solicits public comment before seeking judicial approval of CERCLA settlements.  Notice of this settlement and a solicitation of comments was published in the Federal Register on February 3, 2017, 82 Fed. Reg. 9226.  The United States accepted public comments on the proposed Settlement Agreement through March 6, 2017.  The United States received no comments.

---

[2]    A duplicate copy of the Proof of Claim docketed as Claim No. 2479 has been expunged in accordance with paragraph 1 of the proposed Settlement Agreement.

For the reasons discussed below, the United States has determined that the proposed

Settlement Agreement is fair, reasonable, and consistent with the purposes of CERCLA.

Accordingly, the United States respectfully requests that this Court enter the proposed order,

which is attached to the Joint Certification, approving the proposed Settlement Agreement.

**GENERAL STATUTORY/FACTUAL BACKGROUND**

**A.      Statutory Background**

CERCLA was enacted to provide a framework for cleanup of the nation's worst

hazardous waste sites.  The primary goal of CERCLA is to protect and preserve public health and

the environment from the effects of releases or threatened releases of hazardous substances to the

environment.  See Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1386 (5th Cir.

1989); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir.

1986); New York v. Shore Realty Corp., 759 F.2d 1032, 1040, n.7 (2d Cir. 1985); O'Neil v.

Picillo, 682 F. Supp. 706, 726 (D.R.I. 1988), aff'd, 883 F.2d 176 (1st Cir. 1989).

CERCLA also created a Hazardous Substance Superfund, known simply as the

Superfund, to finance federal response actions undertaken pursuant to CERCLA.  Although

CERCLA authorizes cleanup of hazardous waste sites using money provided by the Superfund,

the Superfund is a limited source and cannot finance cleanup of all of the many hazardous waste

sites nationwide.  See S. Rep. No. 96-842, 848, 96th Cong., 2d Sess. at 17-18 (1980), reprinted in

1 Sen. Comm. on Env't & Pub. Works, Legislative History of CERCLA 305, 324-25 (1983).

Replenishment of expended Superfund monies is crucial to the continuing availability of funds

for future cleanups.  Thus, the United States is tasked with seeking to ensure that potentially

responsible parties ("PRPs") pay for or perform site cleanups, or that the limited Superfund

monies expended by the federal government in response to a release or threatened release of

3

hazardous substances are recovered through the liability scheme set forth in Section 107 of

CERCLA wherever possible.  See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir.

1992) (one statutory purpose of CERCLA is to hold responsible parties liable for the costs of the

cleanup).

Section 107(a) of CERCLA permits the United States to recover its costs of responding to

releases of hazardous substances from PRPs.  42 U.S.C. § 9607(a).  Pursuant to Section 107(a),

PRPs include the owners and operators of Superfund sites at the time of the disposal of

hazardous substances at the sites, the current owners and operators of Superfund sites, as well as

the generators and transporters of hazardous substances sent to Superfund sites.  See id.; United

States v. Alcan Aluminum Corp., 990 F.2d 711, 722 (2d Cir. 1993); O'Neil, 883 F.2d at 178;

United States v. Monsanto, 858 F.2d 160, 168-171 (4th Cir. 1988).  Section 107(a) of CERCLA

creates strict, joint and several liability to the United States where the environmental harm is

indivisible.  See Alcan Aluminum Corp., 990 F.2d at 722; United States v. Alcan Aluminum

Corp., 964 F.2d 252, 259, 268-71 (3d Cir. 1992).

Having created the liability system and enforcement tools to allow EPA to pursue

responsible parties for Superfund cleanups, Congress expressed a strong preference that the

United States settle with responsible parties in order to avoid spending resources on litigation

rather than on cleanup.  42 U.S.C. § 9622(a).[3]  CERCLA encourages settlements, *inter alia*, by

providing parties who settle with the United States protection from contribution claims for

---

[3]     See United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1184 (3d Cir. 1994); United States v.
Akzo Coatings of America, Inc., 949 F.2d 1409, 1436 (6th Cir. 1991); In re Cuyahoga Equipment
Corporation, 980 F.2d 110 (2d Cir. 1992) (citing City of New York v. Exxon Corp., 697 F. Supp. 677, 693
(S.D.N.Y. 1988)); United States v. Cannons Engineering Corp., 899 F.2d 79, 92 (1st Cir. 1990); United
States v. DiBiase, 45 F.3d 541, 545-46 (1st Cir. 1995); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80
(1985), reprinted in 1986 U.S. Code Cong. & Ad. News 2862.

matters addressed in the settlement.  42 U.S.C. § 9613(f)(2).  This provision provides settling

parties with a measure of finality in return for their willingness to settle.[4]

**B.      Procedural Background**

On March 12, 2015 (the "Petition Date"), Debtors filed with the Court a voluntary

petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532

(as amended, the "Bankruptcy Code").

On September 9, 2015, the United States, on behalf of the EPA, filed its Proof of Claim

against SRC, alleging, *inter alia*, liabilities for past and future response costs with respect to the

Valleycrest Landfill Superfund Site ("Site").  Specifically, the United States alleged that the Site

is a former sand and gravel quarry in Dayton, Ohio where industrial and municipal wastes were

dumped from 1966 to 1989.  The United States alleged that SRC arranged for the disposal of

hazardous substances at the Site, and as a result, is liable under Section 107(a) of CERCLA, 42

U.S.C. §§ 9607(a), for response costs incurred, or to be incurred, by EPA in connection with the

Site, plus statutory prejudgment interest on such costs.  The United States estimated that it had

incurred $630,563 in response costs as of May of 2014, and it estimated that that the net present

value cost of future response actions to implement a final remedy for the Site to be approximately

$35.5 million.  Finally, the Proof of Claim also included protective claims for work that SRC

might be required to perform in the future pursuant to regulatory requirements or in compliance

with court or administrative orders imposed by law that are not claims under 11 U.S.C. § 105(5).

---

[4]      Cannons Engineering, 899 F.2d at 92; O'Neil v. Picillo, 883 F.2d 176, 178-79 (1st Cir. 1989);
United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96 (1st Cir. 1994); H.R. Rep. No.
253, pt. 1, 99th Cong., 1st Sess. 80 (1985), reprinted in 1986 U.S. Code Cong. & Ad. News 2862.

On November 19, 2015, the Court entered an order confirming the Plan.  The Effective

Date of the Plan (as defined in the Plan) occurred on December 18, 2015.  Pursuant to the Plan,

the Debtors' estates were substantively consolidated such that all of their assets and liabilities

were merged and each claim filed against any of the Debtors is deemed a single claim against and

a single obligation of the Debtors.  See Plan, §§ 2.2, 2.3.3.  The Court also reconfirmed the

establishment of the SRC Liquidating GUC Trust (the "GUC Trust"), a liquidating trust

established under Treasury Regulation Section 301.7701-4(d) for the benefit of the Debtors'

general unsecured creditors as more fully set forth in the GUC Trust Agreement (Doc. 888)

("GUC Trust Agreement").  See Plan § 2.4.3.

## C.    Proposed Settlement

The proposed Settlement Agreement resolves all claims set forth in the Proof of Claim by

giving to the United States a general unsecured claim of $4,300,000 that shall be entitled to

treatment as a Class IV Allowed General Unsecured Claim under the Plan ("Allowed Claim").

See Settlement Agreement at ¶ 2.  The Allowed Claim shall receive the same treatment under the

Plan, without discrimination, as all other Class IV Allowed General Unsecured Claims, with all

attendant rights provided by the Bankruptcy Code and other applicable law, and shall not be

entitled to any priority in distribution over other Class IV Allowed General Unsecured Claims.

Id. at ¶ 3.  In no event shall the Allowed Claim be subordinated to any other Class IV Allowed

General Unsecured Claim pursuant to any provision of the Bankruptcy Code or other applicable

law that authorizes or provides for subordination of allowed claims, including, without

limitation, Sections 105, 510, and 726(a)(4) of the Bankruptcy Code.  Id.

EPA may, in its sole discretion, deposit any cash distributions it receives pursuant to the

proposed Settlement Agreement, or the proceeds of any non-cash distributions it receives

pursuant to the proposed Settlement Agreement, into the Hazardous Substance Superfund or into

an EPA special account established for the Site within the Hazardous Substance Superfund, to be

retained and used to conduct or finance response actions at or in connection with the Site, or to

be transferred to the Hazardous Substance Superfund.  Id. at 4.  In consideration of the

distributions that will be made under the terms of the proposed Settlement Agreement, and

except as specifically provided in Paragraphs 9 through 11 of proposed Settlement Agreement,

EPA covenants not to file a civil action or take administrative action against Debtors or the GUC

Trust with respect to the Site under Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or

9607.  Id. at ¶ 8.

The Court (or, upon withdrawal of the Court's reference, the United States District Court

of Delaware) shall retain jurisdiction over the subject matter of the proposed Settlement

Agreement and the parties for the duration of the performance of the terms and provisions of the

Settlement Agreement for the purpose of enabling any of the parties to apply at any time for such

further order, direction, and relief as may be necessary or appropriate for the construction or

interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

 Id. at 22.

## ARGUMENT

**A.     The Court Should Approve the Proposed Settlement Agreement Because It is Fair, Reasonable, and Consistent with CERCLA**

Approval of a CERCLA settlement is a judicial act committed to the informed discretion

of the Court.  In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 206-07 (3d Cir. 2003);

In re Cuyahoga Equipment Corp., 908 F.2d 110, 118 (2d Cir. 1992). In exercising that discretion,

the Court should give "deference to the administrative agencies' input during consent decree

negotiations and the law's policy of encouraging settlement." Tutu Water Wells, 326 F.3d at

207.  For the reasons discussed below, the Court should approve the Settlement Agreement

because it is fair, reasonable, and furthers the goals of CERCLA.  See id. ("A court should

approve a consent decree if it is fair, reasonable, and consistent with CERCLA's goals.")

Cannons, 899 F.2d at 85.

1.      The Settlement is Fair

The fairness of a CERCLA settlement involves both procedural fairness and substantive

fairness.  Tutu Water Wells, 326 F.3d at 207; Cannons, 899 F.2d at 86-88.  To measure

procedural fairness, the Court "should "'look to the negotiation process and gauge its candor,

openness, and bargaining balance.'" Tutu Water Wells, 326 F.3d at 207 (quoting Cannons).

Here, the negotiation of the Settlement Agreement was procedurally fair because it was

negotiated at arm's length over a period of several months, and the parties were represented by

experienced counsel.

To measure "substantive" fairness, the Court should consider whether the settlement is

"based upon, and roughly correlated with, some acceptable measure of comparative fault,

apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much

harm each PRP has done." Cannons , 899 F.2d at 87.  Accord Tutu Water Wells, 326 F.3d at

207.  The proposed Settlement Agreement is "substantively" fair.  It was the product of a

complex analysis of SRC's environmental liabilities, as well as litigation risks, the existence of

other PRPs, the circumstances under which contamination occurred, SRC's equitable share or

comparative fault at the Site, and multiple other factors.  These issues formed the backdrop for

the negotiations between the parties.  The resulting terms of the settlement, which permit the

United States to recover an appropriate portion of the past and estimated future response costs for

8

the Site, are substantively fair.

        2.      <u>The Settlement is Reasonable</u>

Courts evaluating the reasonableness of CERCLA settlements have considered three

factors: technical adequacy of the cleanup work to be performed; satisfactory compensation to

the public for response costs; and the risks, costs, and delays inherent in litigation.  <u>See</u> <u>Cannons</u>,

899 F.2d at 89-90.

Although the first prong of the reasonableness inquiry is not at issue in this settlement, as

neither SRC nor the GUC Trust is performing any cleanup, the proposed Settlement Agreement

does satisfy the other considerations relevant to reasonableness.  As discussed above, the United

States will receive an Allowed Claim totaling $4.3 million.  The recovery on that claim will help

compensate the public and the negotiated claim amount reasonably balances competing factors,

including the strength of the United States' case against SRC, the strength of SRC's potential

objections to the Proof of Claim, and the need to recover funds for cleanup of the Site.

Accordingly, the proposed Settlement Agreement is reasonable.

        3.      <u>The Settlement is Consistent with the Goals of CERCLA</u>

The primary goals of CERCLA are to "encourage prompt and effective responses to

hazardous waste releases and to impose liability on responsible parties," and to "encourage

settlements that would reduce the inefficient expenditure of public funds on lengthy litigation."

<u>In re Cuyahoga</u>, 980 F.2d at 119.  This settlement furthers these statutory goals.  As discussed

above, the proposed Settlement Agreement will yield an appropriate recovery to help defray past

and estimated future response costs at the Site.  The settlement also furthers CERCLA's goal of

resolving parties' liabilities through settlements, thereby reducing litigation and transaction costs.

**CONCLUSION**

For the reasons stated above, the Court should enter the proposed Order approving the

Settlement Agreement.


Dated:  March 27, 2017                          Respectfully submitted,

                                                THOMAS A. MARIANI, JR.
                                                Section Chief
                                                U.S. Department of Justice
                                                Environmental Enforcement Section
                                                Environment and Natural Resource Division


                                                /s/ Joseph W.C. Warren
                                                JOSEPH W.C. WARREN
                                                Senior Counsel
                                                U.S. Department of Justice
                                                Environmental Enforcement Section
                                                D.C. Bar No. 452913
                                                P.O. Box 7611
                                                Washington, DC  20044
                                                Telephone:  (202) 616-1303
                                                Email:  Joseph.Warren@usdoj.gov

                                                DAVID C. WEISS
                                                Acting United States Attorney for the
                                                District of Delaware

                                                ELLEN SLIGHTS
                                                Assistant U.S. Attorney
                                                U.S. Attorney Office
                                                District of Delaware
                                                1007 Orange Street, Suite 700
                                                Wilmington, DE  19801


Of Counsel:
Nicole Wood-Chi
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5

## CERTIFICATE OF SERVICE

I, Joseph Warren, the undersigned attorney, hereby certify that on March 27, 2017, I caused a copy of United States' Memorandum in Support of Joint Certification of Counsel Requesting an Order Approving the Settlement Agreement between the United States and SRC Liquidation, LLC to be filed via the Court's ECF system and served upon the parties registered to receive ECF notice.


S/      *Joseph Warren*
Joseph Warren