# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SRC Liquidation, LLC, | ) | Case No. 15-10541 (BLS) |
|  | ) |  |
| Debtor. | ) | (Jointly Administered) |
|  | ) | Related Docket No. 299 |

**ORDER APPROVING STIPULATION BETWEEN SRC SECURED CREDITOR TRUST AND LIBERTY MUTUAL INSURANCE COMPANY RESOLVING CLAIMS**

SRC Secured Creditor Trust[1] (the "Secured Creditor Trust"), for itself and in its capacity as successor-in-interest to the above-captioned Debtors with respect to the Secured Creditor Trust Assets, and Liberty Mutual Insurance Company (including its affiliates and subsidiaries, "Liberty," and, together with the Secured Creditor Trust, the "Parties") having agreed to entry of this Order pursuant to that certain Stipulation attached hereto as **Exhibit A**; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court hereby finding that (i) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (ii) venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) notice of the Stipulation and the Parties' request for entry of this Order was sufficient under the circumstances; (iv) the Policies and any excess Policy Collateral constitute Secured Creditor Trust Assets, (v) the Secured Creditor Trust has the exclusive authority to compromise and resolve the Disputes, including to provide a full and complete release to Liberty; (vi) neither the GUC Trust nor the Liquidating Debtor has any right, title, or interest in, or lien or claim against, the Policies, the Policy Collateral, and/or the Disputes, and accordingly upon the Secured Creditor Trust's receipt in good funds of the Settlement Amount Liberty shall have all right, title, and interest in the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Stipulation.

remaining Policy Collateral free and clear of any and all rights, claims, liens, or interest of the Secured Creditor Trust, the GUC Trust, and the Liquidating Debtor in accordance with the Stipulation; and (vii) this Court's approval of the Stipulation is warranted; and after due deliberation and good and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The terms of the Stipulation are fair and reasonable, and, pursuant to the terms of this Order, the Stipulation is APPROVED in all respects.

2. The Secured Creditor Trust has the exclusive authority to settle the Disputes, including to provide a full and complete release to Liberty, and neither the Liquidating Debtor nor the GUC trust has any interest in or claim against Liberty relating to the subject matter of the Stipulation, including without limitation the Policies (including the Loss Portfolio Transfer policy), the Policy Collateral, the Disputes, and/or the underlying transactions giving rise to the Disputes.

3. The Parties are authorized to enter into, perform, execute, and deliver all documents, and take all actions necessary, to immediately continue and fully implement the Stipulation in accordance with the terms, conditions, agreements, and releases set forth therein, all of which are hereby approved.

4. The Court retains exclusive jurisdiction over any and all matters arising from or related to the Stipulation and the implementation or interpretation of this Order.

Dated: _____, 2017
       Wilmington, Delaware
                                                     _____
                                                     The Honorable Brendan L. Shannon
                                                     Chief United States Bankruptcy Judge

# EXHIBIT A

**EXECUTION VERSION**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SRC Liquidation, LLC,[1] | ) | Case No. 15-10541 (BLS) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |

**STIPULATION BETWEEN SRC SECURED CREDITOR TRUST AND**
**LIBERTY MUTUAL INSURANCE COMPANY RESOLVING CLAIMS**

SRC Secured Creditor Trust[2] (the "Secured Creditor Trust"), for itself and in its capacity as successor-in-interest to the above-captioned Debtors with respect to the Secured Creditor Trust Assets, and Liberty Mutual Insurance Company (including its affiliates and subsidiaries, "Liberty", and together the Secured Creditor Trust, the "Parties," and each individually, a "Party") hereby stipulate (the "Stipulation") to the following:

**RECITALS**

**WHEREAS**, on March 12, 2015 (the "Petition Date"), The Standard Register Company (n/k/a SRC Liquidation, LLC) and its affiliates (collectively, the "Debtors")[3] each filed voluntary petitions for relief (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court");

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[3] In addition to The Standard Register Company, the Debtors are (a) SR Liquidation Holding Company (f/k/a Standard Register Holding Company), (b) SR Liquidation Technologies, Inc. (f/k/a Standard Register Technologies, Inc.), (c) SR Liquidation International, Inc. (f/k/a Standard Register International, Inc.), (d) iMLiquidation, LLC (f/k/a iMedConsent, LLC), (e) SR Liquidation of Puerto Rico Inc. (f/k/a Standard Register of Puerto Rico Inc.), (f) SR Liquidation Mexico Holdings Company (f/k/a Standard Register Mexico Holdings Company), (g) SR Liquidation Holdings, S. de R.L. de C.V. (f/k/a Standard Register Holdings, S. de R.L. de C.V.), (h) SR Liquidation de Mexico, S. de R.L. de C.V. (f/k/a Standard Register de México, S de R.L. de C.V.), (i) SR Liquidation Servicios, S. de R.L. de C.V. (f/k/a Standard Register Servicios, S. de R.L. de C.V., and (j) SR Liquidation Technologies Canada ULC (f/k/a Standard Register Technologies Canada ULC).

2

**WHEREAS**, on March 24, 2015, the Office of the United States Trustee for the District of Delaware, at an organizational meeting of creditors, appointed seven (7) of the Debtors' largest unsecured creditors to serve as members of the Official Committee of Unsecured Creditors;

**WHEREAS**, on June 19, 2015, the Debtors and Taylor Corporation ("Taylor") entered into an Asset Purchase Agreement [Docket No. 698-1] (the "Purchase Agreement") providing for the sale of certain Transferred Assets (defined therein) by the Debtors to Taylor and the assumption by Taylor of certain Assumed Liabilities (defined therein) of the Debtors upon the terms and conditions set forth in the Purchase Agreement;

**WHEREAS**, on June 19, 2015, the Court entered an Order [Docket No. 698] approving the Purchase Agreement and authorizing the Debtors to consummate the transactions contemplated in the Purchase Agreement (the "Sale Order"). The sale to Taylor, pursuant to the provisions of the Purchase Agreement and the Sale Order, closed on July 31, 2015;

**WHEREAS**, on November 19, 2015, the Court entered an Order (the "Confirmation Order") [Docket No. 1331] confirming the Debtors' Second Amended Chapter 11 Plan of Liquidation originally filed September 22, 2015 [Docket No. 1086], as revised with technical modifications (the "Plan") [Docket No. 1316];

**WHEREAS** the Effective Date of the Plan occurred on December 18, 2015 [Docket No. 1412];

**WHEREAS**, pursuant to the Plan, the Debtors' estates were substantively consolidated and, on and after the Effective Date, all remaining Assets and Liabilities of the Debtors were deemed to be Assets and Liabilities of a single, consolidated Entity;

**WHEREAS**, pursuant to the Plan, Confirmation Order, and that certain Secured Creditor Trust Agreement, as amended, on the Effective Date, the Secured Creditor Trust was established to, among other things, liquidate the Secured Creditor Trust Assets, including resolution of Disputed Claims as necessary;

**WHEREAS**, pursuant to that certain Secured Creditor Trust Agreement, the Secured Creditor Trust has the exclusive authority, among other things, to determine the nature and amount of consideration to be received with respect to the disposition of the Secured Creditor Trust Assets, and to collect, liquidate, or otherwise convert into cash all property, assets, and rights in the Secured Creditor Trust Assets;

**WHEREAS**, pursuant to the Plan, the Secured Creditor Trust Assets include all of the Debtors' Assets other than (i) the Rabbi Trust Proceeds, (ii) the Wind-Down Amount other than the Wind-Down Settlement Payment, (iii) the Wind-Down Funds Account, (iv) the Avoidance Actions, (v) the GUC Trust Causes of Action and proceeds thereof, (vi) the D&O Insurance and D&O Policies, (vii) the Taylor Utility Deposits, (viii) those GUC Trust Assets transferred to the GUC Trust in connection with closing of the Taylor Sale in accordance with the Committee Settlement, (ix) the obligation of Taylor to pay the Taylor Payment Receivable, (x) the obligation of the GUC Trust to repay the GUC Trust Seed Funding Amount, (xi) Terre Haute (as defined in the Wind-Down Settlement), and (xii) the Equity Interests in any of the Debtors or Liquidating SRC (the "Liquidating Debtor"); provided, however, that Secured Creditor Trust Assets do not include any Assets that the Agent, the Second Lien Lenders, and any of their professionals and other advisors relinquished pursuant to Section 1 of the Wind-Down Settlement;

**WHEREAS**, pursuant to Section 4.2 of the Plan, from and after the Effective Date, the Secured Creditor Trust was granted the exclusive authority to compromise, resolve, and Allow

3

any Class I Disputed Claims ("Other Secured Claims") without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Secured Creditor Trust with respect to the Allowance of any Class I Disputed Claims shall be conclusive evidence and a final determination of the Allowance of such Claim;

**WHEREAS**, the Liberty Claim (as defined below) constitutes a Class I Disputed Claim;

**WHEREAS**, pursuant to the Plan, Confirmation Order, and that certain Standard Register Company General Unsecured Creditors' GUC Trust Agreement, as amended, on the Effective Date, the liquidating trust established thereby (the "GUC Trust") was established to, among other things, liquidate the GUC Trust Assets and resolve certain Disputed Claims;

**WHEREAS**, the GUC Trust Assets are (a) the Assets of the Debtors transferred to the GUC Trust on the closing of the Taylor Sale (including, without limitation, the right to any proceeds of the D&O Insurance), (b) the Liquidating SRC Membership Interests, and (c) the GUC Trust Causes of Action;

**WHEREAS**, pursuant to Section 4.2 of the Plan, from and after the Effective Date, the Liquidating Debtor and the GUC Trust were granted the exclusive authority to compromise, resolve, and Allow any Disputed Claim other than Class I and Class III Disputed Claims and Disputed Taylor Claims;

**WHEREAS**, prior to the Petition Date, Liberty provided certain insurance policies and related agreements related to workers' compensation, (together, the "Policies"), pursuant to which insurance coverage was provided for some or all of the Debtors for the period from approximately July 1, 2003 through July 31, 2015;

**WHEREAS**, certain of the Policies included provisions whereby premiums were subject to future audit or retrospective adjustment, or whereby the Debtors were responsible to pay

4

certain amounts within the deductible layer of such Policies;

**WHEREAS**, pursuant to the Policies, the Debtors' obligations under the Policies were secured by a letter of credit in the amount of $2,240,000 and a held escrow in the amount of $104,260 (the "Policy Collateral");

**WHEREAS**, on April 13, 2015, Liberty filed Proof of Claim Number 642 seeking the allowance and payment of $10,735,890.45 for amounts allegedly due under the Policies, which amounts included $2,344,250 on a secured basis and $8,391,630.49 on an unsecured basis;

**WHEREAS**, on June 23, 2015, Liberty filed Proofs of Claim Numbers 1918, 1922, 1923, 1924, 1957, 1961, 1963, 1964, and 1969, as well as Proof of Claim Number 1979 (the "Liberty Claim"), which amended and restated Proof of Claim Number 642 and sought the allowance and payment of partially contingent and unliquidated amounts allegedly due under the Policies, in an amount not less than $2,344,260;

**WHEREAS**, on March 3, 2016, the Debtors filed their Eleventh (11th) Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 (the "Eleventh Omnibus Objection") [Docket No. 1492] whereby the Debtors objected to, among other claims, Proof of Claim Number 642, seeking disallowance of that claim on the basis of the amended and restated Liberty Claim;

**WHEREAS**, on April 11, 2016, the Court entered an Order sustaining the Debtors' Eleventh Omnibus Objection;

**WHEREAS**, on April 22, 2016, the Debtors filed their Fourteenth (14th) Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 (the "Fourteenth Omnibus Objection") [Docket No. 1546] to

Proofs of Claim Numbers 1918, 1922, 1923, 1924, 1957, 1961, 1963, 1964, and 1969 on the basis that such proofs of claim were duplicative of Proof of Claim Number 1979;

**WHEREAS**, on May 24, 2016, the Court entered an Order sustaining the Debtors' Fourteenth Omnibus Objection;

**WHEREAS**, on July 27, 2016, Liberty drew on the letter of credit serving as the Policy Collateral in the amount of $2,240,000 to satisfy the Debtors' obligations pursuant to the Policies and subsequently utilized the proceeds of the letter of credit to pay obligations owing from the Debtors to Liberty;

**WHEREAS**, as of October 24, 2016, Liberty held $1,949,567.91 of Policy Collateral;

**WHEREAS**, the Parties dispute the amount of the Policy Collateral required to provide for the Debtors' contingent obligations under the Policies and the amount of Policy Collateral that should be returned to the Debtors' estates;

**WHEREAS**, pursuant to the Plan, any excess Policy Collateral constitutes a Secured Creditor Trust Asset over which the Secured Creditor Trust retains the exclusive authority to administer;

**WHEREAS**, the Policies and any excess Policy Collateral constitute Secured Creditor Trust Assets, and the Secured Creditor Trust has the exclusive authority to compromise and resolve the Disputes;

**WHEREAS**, neither the GUC Trust nor the Liquidating Debtor has any right, title, or interest in the Policies (including the Loss Portfolio Transfer policy), the Policy Collateral, and/or the Disputes;

**WHEREAS**, the Parties have exchanged information regarding any and all disputes between and among them including, without limitation, the calculation of the Liberty Claim and

the disposition of the Policy Collateral (the "Disputes") and now desire to amicably resolve the Disputes and all related matters, pursuant to the terms and conditions set forth herein;

**NOW, THEREFORE**, after good faith, arm's length negotiations between the Parties, and in consideration of the foregoing Recitals and of the mutual promises, covenants, and releases hereinafter set forth and for other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged by the Parties, the Parties hereto agree as follows:

## STIPULATION

1. Each of the Recitals set forth above is incorporated herein by reference.

2. This Stipulation is subject to and conditioned upon the entry of a Final Order (as defined herein) of the Court approving this Stipulation (the "Stipulation Effective Date"). In the event that the Stipulation Effective Date does not occur, this Stipulation shall be deemed null and void and of no force or effect, and the Parties' rights, claims, and defenses with respect to the Liberty Claim and the Policy Collateral shall revert to their prior positions, without prejudice. In such event, nothing (including the Recitals) contained in this Stipulation, any motion, or certification filed seeking an order from the Court approving this Stipulation, or any correspondence or other communications related to the negotiations, drafting, or approval of this Stipulation, shall be argued or deemed to be an admission against any Party's interest in any litigation by and between any parties, and the Parties shall be automatically returned to their respective positions status quo ante. As used herein, the term "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or

may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice, <u>provided</u>, <u>however</u>, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order, as long as such motion has not actually been filed.

       3.       Subject to the occurrence of the Stipulation Effective Date, Liberty shall pay from the Policy Collateral to the Secured Creditor Trust the aggregate amount of $924,641 (the "<u>Settlement Amount</u>") in full and final settlement of the Disputes. Payment of the Settlement Amount shall be made on or before 4:00 p.m. (prevailing Eastern Time) on or before ten (10) days after the Stipulation Effective Date by check to SRC Secured Creditor Trust.

       4.       Upon receipt by the Secured Creditor Trust of the Settlement Amount in good funds from Liberty, the Secured Creditor Trust shall not have any further monetary obligation to Liberty, and Liberty shall look solely to the remaining Policy Collateral for payment. In furtherance of the foregoing, Liberty shall issue a Loss Portfolio Transfer policy to the Secured Creditor Trust in a form sufficient for Liberty to assume from the Secured Creditor Trust all monetary obligations relating to or arising from the Policies. Liberty and the Secured Creditor Trust expressly agree that this Stipulation and the loss portfolio transfer is intended as a full transfer of the Secured Creditor Trust's financial obligations relating to the Policies. In the case of a conflict between the Loss Portfolio Transfer policy and this Stipulation, this Stipulation shall control.

5. Upon receipt in good funds of the Settlement Amount by the Secured Creditor Trust, Liberty shall have all right, title, and interest in the remaining Policy Collateral free and clear of any and all rights, claims, liens, or interest of the Secured Creditor Trust and shall retain the balance of the Policy Collateral on account of the Policies. To the extent any taxes are due to any federal, state, or local taxing authorities as a result of this Stipulation, Liberty agrees that it shall be solely liable for payment of any such taxes.

6. Upon the Stipulation Effective Date, the Liberty Claim shall be dismissed, disallowed, and expunged. Liberty shall have no other claims against the Secured Creditor Trust, whether filed or scheduled, and, shall not be entitled to any distributions from the Secured Creditor Trust or any successors or assigns of the Secured Creditor Trust. Liberty shall further be precluded from asserting any additional claims against the Secured Creditor Trust, except as expressly set forth herein.

7. Except for: (a) a breach of this Stipulation and (b) the enforcement of rights, obligations and duties arising under, or related to, this Stipulation, upon occurrence of the Stipulation Effective Date and receipt of the Settlement Amount in good funds by the Secured Creditor Trust, the Parties, and their predecessors, successors, and assigns do hereby fully and finally mutually compromise and settle with, and forever release, remise, relieve, waive, relinquish, and discharge each other from all claims, whether scheduled or filed, all causes or causes of action, suits, debts, refunds, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts, agreements, covenants, contracts, judgments, reckonings, liens, and liabilities of every kind and nature whatsoever, whether at law or in equity, whether based upon statute, common law or otherwise, whether matured, contingent, or non-contingent, whether direct or indirect, whether

#43786590 v2

known or unknown, whether suspected or unsuspected, whether or not hidden and without regard to the subsequent discovery or existence of different or additional facts, from the beginning of the world, which the Parties ever had, now have, or may claim to have against, arising out of, based on, asserted in, or in connection with the Policies, the Liberty Claim, and the Policy Collateral.

8. Notwithstanding anything to the contrary provided for in paragraph 7 or other terms of this Stipulation, until the earlier of (a) twelve (12) months from the date of entry of an Order approving this Stipulation or (b) dissolution of the Secured Creditor Trust consistent with the terms of the Secured Creditor Trust Agreement, the Secured Creditor Trust shall indemnify and hold Liberty harmless against all claims, costs, damages, losses, liabilities, and expenses (including attorneys' fees and costs, whether incurred as the result of a third party claim or a claim to enforce this provision) made or brought against Liberty (any "Action") by the GUC Trust and/or the Liquidating Debtor solely with respect to the Disputes, and the underlying transactions giving rise to the Disputes, that are the subject of this Stipulation, with such indemnification obligation not to exceed the Settlement Amount.

9. Notwithstanding anything to the contrary in the Loss Portfolio Transfer Policy and the release in paragraph 7 or other terms of this Stipulation:

   a. Liberty shall have no duty to continue to investigate, defend, handle, settle, and administer claims, suits, or proceedings if any, other than as set forth in the Policies subject in all respects to the terms, conditions, limitations, and exclusions of the Policies (the "Covered Claims");

   b. The Secured Creditor Trust, in consultation with the Liquidating Debtor and the GUC Trust, will use commercially reasonable efforts to promptly notify Liberty in writing of any claims and cooperate with Liberty in the investigation and administration of the Covered Claims as Liberty may request by, among other things, continuing to deliver reasonably available information regarding the Covered Claims that is in the possession, custody, or control of the Secured Creditor Trust and by authorizing third parties who may be in possession of such

information, including without limitation the Liquidating Debtor and/or the GUC Trust, to deliver it to Liberty.

c. Liberty's contractual obligation, if any, to consult with, or provide reports and other information related to the Policies, as well as all executory duties, if any, owed by the Secured Creditor Trust to Liberty other than expressly reserved herein, will terminate upon the effectiveness of the releases set forth in paragraph 7 of this Stipulation; and

d. Nothing in this Agreement or in any other document, pleading, or order in the Bankruptcy Case will be deemed to (i) modify the coverage provided by the Policies or in any way affect or impair Liberty's rights under the Policies, including rights, defenses, and obligations concerning Covered Claims and coverage, which will be determined thereunder, except nothing contained herein or in any other document, pleading, or order shall require the Secured Creditor Trust to pay or reimburse Liberty on account of any Covered Claims; or (ii) create or permit a direct right of action against Liberty by any holder of a Covered Claim concerning the existence, primacy, and/or scope of available coverage under any alleged applicable policy.

10. The Parties and the Debtors' claims agent are authorized to take any and all actions necessary to effectuate this Stipulation including, without limitation, amending the claims register in the chapter 11 cases to reflect the terms of this Stipulation.

11. This Stipulation is the entire agreement between the Parties with respect to the subject matter hereof. This Stipulation supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein. No statements, promises, or representations have been made by any Party to any other, or relied upon, and no consideration has been offered, promised, expected, or held out other than as expressly provided for herein.

12. The Parties each represents and warrants that the undersigned is fully authorized and empowered to execute and deliver this Stipulation on behalf of, and to bind, each Party, as applicable, to the terms and conditions of this Stipulation.

13. In the event of any ambiguity in this Stipulation, no inferences shall be drawn against any Party on the basis of authorship of this Stipulation.

14. No modification, amendment, or waiver of any of the terms or provisions of this Stipulation shall bind any Party unless such modification, amendment, or waiver is in writing, has been approved by the Court, and has been executed by a duly authorized representative of the Party against whom such modification, amendment, or waiver is sought to be enforced. If any part of this Stipulation is held to be unenforceable by any court of competent jurisdiction, the unenforceable provision shall be deemed amended to the least extent possible to render it enforceable and the remainder of this Stipulation shall remain in full force and effect.

15. This Stipulation shall be governed by and construed in accordance with the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws principles thereof. This Stipulation shall be binding upon and inure to the benefit of the Parties and their respective successors, assignees, agents, attorneys, and representatives.

16. The Parties acknowledge and agree that the Court shall retain jurisdiction over all disputes concerning or related to the subject matter of this Stipulation.

17. This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronic mail, each of which when so executed shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same Stipulation.

#43786590 v2

Dated: May 18, 2017

| SRC SECURED CREDITOR TRUST, by Clingman & Hanger Management Associates, LLC, not individually but solely as Advisor to the Secured Creditor Trust<br><br>By: *Teresa S. Hanger* (signature)<br>Name: Teresa S. Hanger<br>Title: Principal | LIBERTY MUTUAL INSURANCE COMPANY on behalf of itself and its property casualty affiliates identified on the first page of this Agreement<br><br>By: _____<br>Name:<br>Title: |

#43786590 v2

Dated: May 18, 2017

| SRC SECURED CREDITOR TRUST, by Clingman & Hanger Management Associates, LLC, not individually but solely as Advisor to the Secured Creditor Trust<br><br>By: _____<br>Name: Teresa S. Hanger<br>Title:  Principal | LIBERTY MUTUAL INSURANCE COMPANY on behalf of itself and its property casualty affiliates identified on the first page of this Agreement<br><br>By: *[signature]*<br>Name: Chris Wallace<br>Title: Manager, Underwriting Specialized Sure |

#43786590 v2