**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC Liquidation, LLC,[1] | Case No. 15-10541 (BLS) |
| Debtor. | **Re: Docket Nos. 2154 and 2162** |
| | **Hearing Date: June 14, 2017 at 9:30 a.m.**<br>**Response Deadline: February 21, 2017 at 4:00 p.m.** |

**REPLY OF STANDARD REGISTER INC. TO INTERNATIONAL IMAGING MATERIALS, INC.'S PRELIMINARY RESPONSE IN OPPOSITION TO STANDARD REGISTER INC.'S SEVENTH (7TH) OMNIBUS (SUBSTANTIVE) OBJECTION TO SECTION 503(B)(9) CLAIMS**

Taylor Corporation and its Designated Buyer, Standard Register, Inc. (together, "SRI"), by and through their undersigned counsel, file this reply to *International Imaging Materials, Inc.'s Preliminary Response in Opposition to Standard Register Inc.'s Seventh (7th) Omnibus (Substantive) Objection to Section (503(b)(9) Claims* [Docket No. 2162] ("IIMAK's Response") and in support thereof, state as follows:

## BACKGROUND

1. On February 6, 2017, SRI filed *Standard Register Inc.'s Seventh (7th) Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* [Docket No. 2154] (the "Omnibus Objection"). The deadline to file responses to the Omnibus Objection was established as February 21, 2017 at 4:00 p.m. (the "Response Deadline").

[1] The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

2. The Omnibus Objection included an objection to IIMAK Claim No. 1737 in the amount of $57,164.80 (the "Disputed Claim"), specifically listing the Disputed Claim on Exhibit B ("Drop Ship Claims") thereto. IIMAK had asserted the total amount of the Disputed Claim as a Section 503(b)(9) administrative expense claim. The Omnibus Objection objected to the Disputed Claim on the basis that, with the exception of a $1,330.58 portion of the Disputed Claim, the relevant goods were not received by the Debtor as required in order to qualify as an administrative expense under Section 503(b)(9), and were instead delivered by IIMAK directly to the customer.

3. Prior to the Response Deadline, IIMAK filed IIMAK's Response asserting, as more fully set forth therein, that "[p]ursuant to the parties' contract and longstanding course of dealings, all of the goods that are the subject of the IIMAK 503(b)(9) Claim were delivered to the Debtor's designated agent, for ultimate delivery to the Debtor's third party customer. . . . Thus, IIMAK's delivery of the goods described in the IIMAK 503(b)(9) Claim to the Debtor's agent constituted, as a matter of law, delivery of such goods to the Debtor." [IIMAK's Response, Section I].

4. On March 6, 2017, the Court entered an *Order Sustaining Standard Register Inc.'s Seventh (7th) Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* [Docket No. 2171] with regard to all claims subject to the Omnibus Objection with the exception of the Disputed Claim. Hearing on the Omnibus Objection as to the Disputed Claim has been adjourned multiple times and is currently scheduled for hearing on June 14, 2017 at 9:30 a.m.

## RELEVANT FACTS

5. SRI and IIMAK have engaged in lengthy communications subsequent to the filing of IIMAK's Response. Based upon SRI's understanding of these communications, the parties are in agreement regarding the following facts:

A. The invoices listed in the Disputed Claim accurately reflect total value of goods: 1) delivered by IIMAK during the relevant twenty day period to the Debtor ("**Category 1 Goods**"); and 2) delivered by IIMAK to UPS for shipping via a Standard Register Account to a third party customer during the relevant twenty day period ("**Category 2 Goods**").

B. There are $2,096.27 in Category 1 Goods. The Category 1 Goods were delivered to the Debtor within the relevant twenty day period and qualify as an administrative expense claim pursuant to Section 503(b)(9). There are shipping charges of $270.01 reflected on the invoices relating to Category 1 Goods that IIMAK contends should also be included in the Section 503(b)(9) claim amount and would increase the Section 503(b)(9) amount relating to Category 1 Goods to $2,366.28. SRI contends that the Claim should be no more than $2,096.27 (or $2,366.28 if the Court allows the $270.01 in shipping charges in the 503(b)(9) claim amount) as this constitutes the value of good received by the Debtor during the relevant twenty day period.

C. The originally asserted Disputed Claim amount was $57,164.89. The parties agree that $8,750.46 in invoices relating to Category 2 Goods were paid to IIMAK after the Disputed Claim was filed and should be removed from the Disputed Claim amount. The parties agree that there are shipping charges totaling $1608.37 on the

invoices relating to Category 2 Goods that remain unpaid. IIMAK contends that the total amount of its allowed 503(b)(9) claim should be $48,414.43 after subtracting the $8,750.46 in paid invoices. SRI disagrees that the value of Category 2 Goods and shipping charges on related invoices should be included in the 503(b)(9) claim amount because said goods were not received by the Debtor and, instead, were shipped to a third party. However, to the extent the Court rules in favor of IIMAK and determines that goods provided by IIMAK to UPS for shipping via a Standard Register Account constitutes receipt by the Debtor for purposes Section 503(b)(9), SRI agrees that IIMAK's 503(b)(9) claim amount should be $48,414.43, but less the $1,608.37 in shipping charges, or $46,806.06.

D. The attached Supply Agreement, Addendum to Preferred Subcontractor Agreement, and Schedules 1 and 2 (together, attached hereto as Exhibit "A" and collectively referred hereto as the "Supply Agreement") were applicable during the relevant time period.

E. In sum, SRI currently maintains that IIMAK's allowed 503(b)(9) claim should be $2,096.27 corresponding with the amount of Category 1 Goods, while IIMAK currently maintains that its allowed 503(b)(9) claim should be $48,414.43 corresponding with the total amount of Category 1 and 2 Goods and including the shipping charges reflected in the relevant invoices.

## REPLY

**I. IIMAK does not hold a valid Section 503(b)(9) claim for the value of goods shipped to customers via UPS using the Debtors' account because the goods were not "received by the debtor" as required under Section 503(b)(9).**

6. The dispute between SRI and IIMAK appears to be limited to the legal issue of whether IIMAK's shipment of goods to customers during the relevant twenty-day period, via UPS and using a Standard Register account, constituted constructive receipt by the debtor for purposes of satisfying the "received by the debtor" requirement under Section 503(b)(9). SRI contends that shipping in this manner did not satisfy the "received by debtor" requirement in Section 503(b)(9) because the Debtor never had actual physical possession of the goods and none of the constructive receipt situations under U.C.C. § 2-705(2)(b)-(d) are present.

7. Moreover, the shipping practices employed by IIMAK were not materially different than those employed by multiple other 503(b)(9) claimants[2] that responded to the *First (1st) Omnibus (Substantive) Objection to Claims (Drop-Ship Administrative Priority Claims)* (the "First Omnibus Objection") [Docket No. 1138]. In sustaining the Debtors' First Omnibus

---

[2] *See* the Response of Harmony Press, Inc. in Opposition to First Omnibus Objection: "The goods provided by Harmony were required by the Debtors to be drop shipped to the Debtors' customers. In addition, upon information and belief, some or all of the goods that form the basis of Harmony's 503(b)(9) Claim were delivered using the Debtors' selected carrier." Response of Harmony Press, par. 8. *See also* The Envelope Printery's Response to the First Omnibus Objection: "Every order of Debtors was shipped using a shipping carrier selected by the Debtors or Debtors' designees." Declaration, par. 9. "Delivery of the goods to the Debtors' or Debtors designees's designated carriers constituted delivery of the goods under the Uniform Commercial Code Section 2-503." Response of The Envelope Printery, par. 12. *See also* TLF Graphics, Inc.'s Response to the First Omnibus Objection: Given the long-standing contractual and business relationship between the Debtors and TLF Graphics, particularly the subcontract arrangement that provides for specific shipping instructions that make it appear that the goods are being delivered by the Debtors, there should be at a minimum, a determination that the goods were constructively received by the Debtors." Response of TLF Graphics, par. 31. Counsel for TLF Graphics further argued at the hearing on the First Omnibus Objection that "the shipments and packing slip very, very clearly say, and these were provided to my client by the Debtor when the purchase order was submitted. They specifically say they are coming from Standard Register and, you know, whatever the particular [indiscernible] of Standard Register. So the customer believed that these goods were actually coming from the Debtor. I think that that is a very critical distinction from the other drop ship cases that the Debtors site." Transcript, Oct. 15, 2015 Hearing, page 8.

Objection and overruling all claimants' responses thereto, this Court stated, "….case law teaches as a threshold matter that administrative priorities are to be strictly and carefully construed by Bankruptcy Courts and that it is incumbent upon a Claimant to clearly demonstrate their entitlement." [Transcript, Oct. 15, 2015 Hearing, page 11]. "In this instance, I believe that it is appropriate to incorporate into the 503(b)(9) analysis Article 2 considerations given that we talk about receipt of goods….as a practical matter it does not seem to me that within the terms of the uniform commercial code that these goods have been 'received by the Debtor.'" [Transcript, Oct. 15, 2015, page 12].

8. With regard to IIMAK's claim, under the same Article 2 analysis applied by this Court at the hearing on the First Omnibus Objection, the goods that IIMAK shipped to customers via UPS using a Standard Register account were not received by the Debtor. Therefore, the value of such goods does not qualify as an administrative expense claim under Section 503(b)(9).

9. The U.C.C. defines receipt of goods as "taking physical possession of them," "unless the context clearly requires otherwise." U.C.C. § 2-103. Section 2-705 of the U.C.C. specifies the four situations in which a buyer "receives" goods such that the stoppage provisions of section 2-705 no longer apply and the reclamation provisions of section 2-702 come into force: "(a) receipt of the goods by the buyer; or (b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or (d) negotiation to the buyer of any negotiable document of title covering the goods." U.C.C. § 2-705(2).

10. As the Debtor argued in it Omnibus Reply to the First Omnibus Objection, constructive receipt does not occur in the drop ship scenario. Courts have termed the situations outlined in subsections (b) through (d) of U.C.C. § 2-705(2) "constructive receipt" situations and

have held that a buyer receives goods for purposes of both section 2-705 and section 2-702 when one of these constructive receipt situations is present. *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225-26 n.13 (3d Cir. 1984). However, they have limited "constructive receipt" to the three situations specifically delineated in U.C.C. § 2-705(2)(b)-(d)—each of which involves physical control of the goods in question through an agent. *See, e.g.*, *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225-26 n.13 (3d Cir. 1984) (holding that the buyer did not constructively receive goods where the alleged constructive receipt in question did "not fit under any of the constructive receipt provisions contained in 2-705").

11. The drop-ship scenario does not fit within any of the constructive receipt situations specified in U.C.C. § 2-705(b)-(d); that is, the drop-ship scenario does not involve an "(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or (d) negotiation to the buyer of any negotiable document of title covering the goods." U.C.C. § 2-705(2). As a result, no court has held that a debtor-buyer constructively receives goods within the meaning of U.C.C. sections 2-702 and 2-705, or by extension sections 546(c) and 503(b)(9) of the Bankruptcy Code, in the drop-ship scenario.

12. IIMAK contends that "[p]ursuant to the parties' contract and longstanding course of dealings, all of the goods that are the subject of the IIMAK 503(b)(9) Claim were delivered to the Debtor's designated agent, for ultimate delivery to the Debtor's third-party customer." [IIMAK's Response, Section I]. During discussions between the parties regarding the Omnibus Objection, IIMAK produced the Supply Agreement and has relied upon the following language therein to support its constructive receipt argument: "WorkflowOne [i.e., Standard Register] will take title to the Products upon risk of loss transferring to WorkflowOne under the applicable

shipping terms." IIMAK has also referred SRI to Section 4 of the Addendum to Preferred Subcontractor Agreement that states, in part, "the Risk of Loss shall transfer to Standard Register at the point of shipment provided that Standard Register's carrier is being used." According to IIMAK, because Standard Register's carrier was used, risk of loss and title transferred to Standard Register at the point of shipment by UPS.

13. Curiously, IIMAK omits reference to Schedule 2 of the Supply Agreement that details how UPS was involved in the transactions between IIMAK and Standard Register. Schedule 2 makes no reference to an agency relationship between UPS and Standard Register, and includes no language that could reasonably be construed to establish an agency relationship between UPS and Standard Register. The Debtor was to assist IIMAK in establishing "a separate UPS, or other parcel carrier designated by WorkflowOne [Standard Register], account number, in the name of Seller as a WorkflowOne [Standard Register] Trade Partner, for each of Seller's applicable distribution points." Supply Agreement, Schedule 2. This does not constitute an agency relationship.

14. Even if title and risk of loss shifted from IIMAK to Standard Register at the point of shipment under the Supply Agreement, the shift in title and risk of loss did not constitute receipt of the goods by the Debtor for purposes of Section 503(b)(9).[3] In *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225 (3d Cir. 1984), the Court clarified that the U.C.C. does not rely on the

[3] Harmony Press, Inc. asserted the seemingly identical constructive receipt argument to IIMAK in its Response in Opposition to the First Omnibus Objection: "The goods provided by Harmony were required by the Debtors to be drop shipped to the Debtors' customers. In addition, upon information and belief, some or all of the goods that form the basis of Harmony's 503(b)(9) Claim were delivered using the Debtors' selected carrier. See Second Amendment, Paragraph 4, providing that risk of loss transfers to Standard Register at point of shipment when using Standard Register's carrier. Accordingly, Harmony lost the power to stop delivery of the goods when it turned possession over to the Debtors' carrier, and the Debtors had constructive possession of such goods at that point in time, which was within the 20 days prior to the Petition Date." Harmony Press, Inc. Response to First Omnibus Objection, par. 8. The Court overruled the response and sustained the First Omnibus Objection as to Harmony Press, Inc.'s asserted 503(b)(9) claim. *See Second Order Sustaining Debtors' First (1st) Omnibus (Substantive) Objection to Claims (Drop-Ship Administrative Priority Claims) Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* [Docket No. 1332].

concept of “title” for establishing the rights of buyers and sellers under the Code, and physical possession by the carrier does not constitute physical possession by the debtor:

> There is no definition of "receipt" in the Bankruptcy Code, but U.C.C. Sec. 2-103(1)(c) defines receipt of goods as "taking physical possession of them." Marin [the Debtor] argues that it should be deemed to have taken possession of the goods at the time the gas was loaded onto the common carrier because at that point, under the terms of the sales contract, "title" and risk of loss passed to Marin. The first problem with this argument is that it ignores the plain language of U.C.C. Sec. 2-103(1)(c)--"physical possession"--and it ignores the fact that the U.C.C. does not rely on the concept of "title" for purposes of establishing the rights of buyers and sellers under the Code. See Note, Disengaging Sales Law from the Sale Contract, 96 Harv.L.Rev. 470 (1982).
>
> The second problem with Marin's argument is that it ignores U.C.C. Sec. 2-705, which views goods given by a seller to a common carrier for delivery to a buyer as being in the possession of the common carrier not the buyer, and gives the seller the right to stop delivery of the goods upon discovery of the buyer's insolvency. This right to stop delivery applies regardless of which party bears the risk of loss, and regardless of which party is deemed to have "title" to the goods while they are in the carrier's possession.
>
> *In re Marin Motor Oil, Inc.*, 740 F.2d 220, 225 (3d Cir. 1984),

15. Consistent with the Third Circuit’s guidance in *Marin*, regardless of whether IIMAK or the Debtor bore the risk of loss, and regardless of whether IIMAK or the Debtor was deemed to hold title at the point of shipment, physical possession by UPS, the parcel carrier, was not physical possession by the Debtor.

16. As the Debtor never took physical possession of the goods that were shipped by IIMAK to customers, and because none of the constructive receipt situations specified in U.C.C. § 2-705(b)-(d) apply, the Omnibus Objection should be sustained as to the portion of IIMAK’s asserted 503(b)(9) claim relating to goods shipped via UPS to customers.

WHEREFORE, for the reasons set forth herein and in the Objection, SRI respectfully requests that the Court (a) enter the Proposed Order attached hereto as Exhibit "B" sustaining the Omnibus Objection, and (b) grant such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 9, 2017
Wilmington, DE

**WERB & SULLIVAN**

*/s/ Matthew P. Austria*
Matthew P. Austria (DE No. 4827)
300 Delaware Avenue, 13th Floor
P.O. Box 25046
Wilmington, Delaware 19899
(For courier: 19801)
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
E-mail: maustria@werbsullivan.com

-and-

**GRAY, PLANT, MOOTY,**
**MOOTY & BENNET, P.A.**
Phillip Bohl (MN No. 139191)
Abigail McGibbon (MN No. 393263)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3019
Telephone: (612) 632-3009
Facsimile: (612) 632-4019
Facsimile: (612) 632-4009
Email: phillip.bohl@gpmlaw.com
Email: abigail.mcgibbon@gpmlaw.com

*Counsel to Taylor Corporation and its Designated Buyer Standard Register, Inc.*