# EXHIBIT A

## SUPPLY AGREEMENT

This Supply Agreement ("Agreement") is made and entered into as of the 1st day of January, 2011 between The Relizon Company and Workflow Solutions LLC (individually and collectively referred to as "WorkflowOne"), with its primary offices located at 220 East Monument Avenue, Dayton, OH  45402 and **International Imaging Materials, Inc. dba IIMAK**, (referred to as "Seller") with its primary offices located at **310 Commerce Drive Amherst, NY 14228**.  In this Agreement, "Seller" also includes subsidiaries and any other entity controlled by or under common control of the Seller entity referred to above.

WHEREAS, WorkflowOne is in the business of managed print and promotional products;

WHEREAS, it is the intent of WorkflowOne to develop a high level of communication with key sellers in order to promote the objectives of this Agreement;

WHEREAS, WorkflowOne and Seller desire to enter into this Agreement to state how the organizations will work together;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

### 1. Product/Service Deliverables

This Agreement pertains to all purchase transactions between WorkflowOne and Seller for products and/or services rendered. Seller shall design, manufacture, or purchase to make available for sale to WorkflowOne, and WorkflowOne shall purchase from Seller, the merchandise as described in the purchase order. All products and/or services covered by this Agreement regardless of the time will be referred to as "Items" or "Products." WorkflowOne shall purchase Products by issuing a written purchase order signed by an authorized agent of WorkflowOne indicating the specific products, specifications related thereto, quantity, price, shipping instructions, requested delivery dates, "bill to" and "ship to" addresses and any other special instructions ("Product Specifications"). Seller will be notified in writing of any changes to the specifications. Seller must acknowledge, in writing those changes. Before Seller changes its production location or discontinues the manufacture of any products or services available at the time of this Agreement, Seller must give WorkflowOne at least sixty (60) days prior written notice.

### 2. Acceptance/Title to Goods

WorkflowOne and Seller agree to be bound by the terms and conditions set forth herein for the purchase of Items and Products as described in WorkflowOne's purchase orders to Seller.  Any terms or conditions in any purchase order, acknowledgement, invoice or other paper or electronic document, that are contrary to the terms of this Agreement, issued by either Seller or WorkflowOne are superseded by the terms and conditions of this Agreement. By shipping goods or performing services after receipt of a purchase order, Seller shall be deemed to be bound by the terms and conditions of this Agreement.  WorkflowOne will take title to the Products upon risk of loss transferring to WorkflowOne under the applicable shipping terms.

### 3. Price

Seller agrees that the prices, payment terms, credit terms and volume discounts given to WorkflowOne will be equal to the lowest prices, payment terms, credit terms and volume discounts offered to any other customer of Seller for like volumes of products purchased over the same period of time.

### 4. Property Ownership Rights

Except as otherwise set forth in this Agreement, all materials (including any Items and/or Products), dyes, molds, documents, data, information, deliverables and suggestions of every kind, and descriptions supplied to Seller or any Seller employee, subcontractor, agent or authorized representative, or prepared or developed by Seller or any Seller employee, subcontractor, agent or authorized representative, exclusively pursuant to this Agreement, or resulting from the services provided hereunder, shall be the sole and exclusive property of WorkflowOne and shall be deemed confidential information. WorkflowOne shall have the right to make whatever use it deems desirable of any such materials, documents, data and information; provided that Seller may retain copies of such materials as required by applicable laws, rules and regulations. Should Seller provide any design services associated with the items, WorkflowOne will own this design work as well, whether performed by Seller for payment or performed by Seller for WorkflowOne

without cost. Seller will deliver to WorkflowOne, at WorkflowOne's request, all camera ready and other artwork, including digital files, pertaining to such WorkflowOne's customer(s) requested by WorkflowOne (collectively "Artwork"). Contractor hereby assigns to WorkflowOne, its successors and assigns, any and all inventions, creations, improvements, know-how, deliverables or other developments, and all patents, copyrights or applications therefore, related to such Artwork or otherwise related to the Products or Items provided hereunder and hereby agrees to do, and to cause its employees to do, any and all acts, and to execute any and all instruments, which WorkflowOne may reasonably request to secure for itself, its successors and assigns, any such rights. WorkflowOne may sell the Products or Items to any of its customers anywhere in the world for any use or purpose.

### 5. Trademarks

The parties hereto agree that all Products supplied may be required to bear trademarks to be selected by WorkflowOne. WorkflowOne shall authorize Seller in writing of any trademarks that Seller is authorized to apply to the Products.

### 6. Representations and Warranties of Seller

Seller expressly represents and warrants the following with respect to the Items and/or Products delivered under this Agreement: all Items and Products will be of high quality and free from defects or workmanship issues, fit for WorkflowOne's particular purposes and of merchantable quality; Seller will comply with all applicable international, federal, state, and local laws, rules, and regulations and ordinances in the performance of its obligations under this Agreement; the discoveries, inventions, products, services or processes used in the business of Seller do not infringe upon or conflict with any right or patent of any third party, or any discovery, invention, product or process which is the subject of a patent application filed by any third party; Products or Items delivered to WorkflowOne pursuant to this Agreement shall comply with the most stringent of WorkflowOne's or Seller's specifications, performance guarantees and requirements as amended from time to time; and all items shall be sold to WorkflowOne free and clear of any encumbrances.

Seller's warranties and guarantees shall survive inspection, delivery and acceptance of the items and/or payment by WorkflowOne. If the items do not conform to any of these representations or warranties, then, at WorkflowOne's option, Seller shall replace defective items, DDU (as defined in Incoterms–2000 Edition) WorkflowOne's designated site at Seller's expense, or in the case of services, re-perform the services at Seller's expense. WorkflowOne has the right to withhold payment for all items that do not meet the specification until such time that Seller replaces said items. In the event that, in the reasonable opinion of WorkflowOne, Seller cannot replace the items, or re-perform the services, within a reasonable period of time, then WorkflowOne may take all steps necessary to have the breach of warranty cured and/or may terminate the purchase order and/or this Agreement, at its sole option. In any event, Seller shall be responsible for all expenses and damages which WorkflowOne incurs because of the breach of warranty or representation. The foregoing warranties, representations and obligations shall also apply to the items supplied by Seller in such repair, replacement or re-performance. Seller shall pass on to WorkflowOne the benefit of any manufacturer's warranties.

### 7. Delivery

Seller shall deliver the items to WorkflowOne on the date(s) indicated in the purchase order, in accordance with any other requirements of WorkflowOne and, in addition, as set forth in any other documents agreed to in writing by the parties. If Seller fails to make delivery of any part of the items on the date(s) indicated WorkflowOne may, but shall not be required to, terminate the purchase order and/or this Agreement and pursue other remedies.

### 8. Payment Terms

WorkflowOne shall pay Seller in accordance with the terms and any incentives specified on Schedule 1. Payment for any Item or Product under this Agreement will not constitute acceptance thereof.

### 9. Inspection of Goods and Facilities

WorkflowOne may inspect any items ordered hereunder during their manufacture, construction or preparation at reasonable times and shall have the right to inspect such items at the time of their delivery and/or completion. Items furnished hereunder may at any time be rejected for defects revealed by inspection or analysis even though such items may have previously been inspected and accepted. Such rejected items may, at WorkflowOne's option, be returned to Seller for full refund to WorkflowOne, including removal, shipping and transportation charges or credited towards future deliveries. Seller also grants WorkflowOne, or third parties representing WorkflowOne, the right to inspect facilities of subcontractors at any time in order to assess working conditions.

#### 10. Covenant of Cooperation

Seller agrees that it will comply with WorkflowOne's instructions for shipment and delivery to its warehouses and customers, instructions for proper invoicing, and any other reasonable request by WorkflowOne related to order processing. Subject to the terms and conditions herein provided, each of the parties hereto shall use its best effort to take, or cause to be taken, all action, or do, or cause to be done, all things reasonably necessary, proper or advisable to minimize the cost and loss to the other caused by elimination of items that are currently being provided by Seller or termination of this Agreement on expiration or because of fault of the other party. With respect to termination or the expiration of the term of this Agreement, the parties shall cooperate to minimize at termination the amount of finished goods, work in process and raw materials.

#### 11. Assignment

Neither party may assign this Agreement, or any right thereunder, without prior written consent of the other except that WorkflowOne shall have the right to assign it to any entity into which it shall be merged, with which it shall be consolidated, or by which it or all or substantially all of its assets shall be acquired.

#### 12. Taxes and Other Charges

In addition to the price of the items sold hereunder, unless otherwise agreed, Seller will pay all foreign charges including, by way of example but without limitation, excise taxes, value added taxes, and export taxes.

#### 13. Packing and Marking Requirements

No charges for packing, containers or transportation will be allowed unless specified in instructions received on the face of any purchase order. Seller shall be responsible for any damage to merchandise caused by improper boxing, crating, or packing.

#### 14. Insurance

Seller agrees to maintain, throughout the term of this Agreement, Products Liability and Comprehensive General Liability Insurance coverage of no less than two million U.S. dollars (US $2,000,000) per occurrence. Such insurance shall (a) be with a U.S. insurance company acceptable to WorkflowOne and shall name WorkflowOne as an Additional Insured for liability arising out of this Agreement, (b) acknowledge that Seller's insurance is primary and that any insurance carried by WorkflowOne is excess or secondary insurance, and (c) contain a provision requiring Seller's insurers to provide WorkflowOne with written notice of any cancellation or adverse material change in such insurance shall not be effective as to the benefit and/or Interest of the Additional Insureds for thirty (30) days after written notice of such cancellation or adverse material change is received by WorkflowOne. Prior to execution of this Agreement, Seller shall furnish WorkflowOne with certificates of insurance evidencing the above insurance.

#### 15. Indemnification

Seller shall indemnify and hold harmless WorkflowOne, its assigns and customers, against all losses, expenses (including reasonable attorneys' fees), fines, penalties, damages, claims and liabilities of any nature for any violation of the Agreement by Seller or allegation relating to a potential violation of law, or injuries to persons or damage to property occurring due to or arising out of (a) the sale, recall or use of the Products, if such injury or damage is caused by defective Products or if the Products fail to perform as warranted or represented by Seller; (b) any Product characteristic, failure to provide warnings or other suitable labels, or any manufacturing defect or failure to meet Product Specifications; (c) any breach or violation of any representation, warranty or other obligation of Seller under this Agreement.

#### 16. Subcontracting

Seller shall identify to WorkflowOne upon request any and all third parties ("Subcontractors") from whom Seller obtains the merchandise supplied to WorkflowOne by Seller pursuant to this Agreement. Seller shall obtain assurances from each Subcontractor that (a) the merchandise conforms to and has been tested in accordance with WorkflowOne's specifications, (b) the Subcontractor shall comply with the provisions of this Agreement and of any other agreements between the parties with respect to trademarks and treatment of confidential information.

#### 17. Audits

Seller shall immediately notify WorkflowOne of, and provide WorkflowOne copies of, any inquiries, correspondence or communications to or from any governmental or regulatory authority relating to this Agreement, including, but not limited to, requests for inspection of the Seller's facilities, and Seller shall permit WorkflowOne to attend any such inspections. Seller will make reasonable efforts to separate, and not disclose, confidential materials that are not required to be disclosed during such inspections.

#### 18. Freight Terms

All freight terms shall be as described on Schedule 2 to this Agreement, but if there is no Schedule 2, the freight terms shall be as agreed to by the parties in writing.

### 19. Termination of Purchase Order

WorkflowOne may terminate work under an order in whole or in part at any time by providing written notice to Seller that states the extent and effective date of such termination. On receipt of such notice, Seller shall, to the extent directed by WorkflowOne, stop work under such order, and take any necessary action to protect property in Seller's possession that belongs to WorkflowOne or in which WorkflowOne has an interest. WorkflowOne shall only pay for the work completed prior to the written notice and WorkflowOne shall be entitled to any and all partial Items or Products as a result of such completed work.

### 20. Duration and Breach of Agreement

This Agreement will be for a period of one year starting on the date at the top of this Agreement, and will automatically renew from year-to-year, unless a party notifies the other that this Agreement will not be renewed or will be renegotiated at least thirty (30) days prior to the expiration of any term. Each party will perform its respective obligations under this Agreement through the effective date of the termination. The occurrence of any of the following shall constitute an event of breach hereunder:

a) The failure of Seller to keep, perform or observe any term, covenant or condition of this Agreement which failure is not remedied within thirty (30) days after receipt of written notice thereof from WorkflowOne.

b) Any insolvency, receivership, general assignment for the benefit of creditors; any voluntary bankruptcy or other proceeding for relief of debtors, protection of creditors, or termination of the corporate existence by Seller; or any involuntary bankruptcy or similar proceeding against Seller which is not dismissed within thirty (30) days after its initiation.

Upon the occurrence of an event of default as set forth above, WorkflowOne shall have the right to immediately terminate this Agreement upon written notice thereof to Seller. Such right shall be cumulative with all other rights provided for hereby and at law. In addition to its other remedies, WorkflowOne may withhold and retain from time to time out of any money due Seller hereunder amounts sufficient fully to reimburse and compensate itself for any loss or damage which it sustains, or may sustain, as the result of any liens, suits, actions, legal proceedings, claims, demands, damages or costs, or as a result of any damage it incurs, or may incur, due to delays or default or breaches on the part of Seller in the performance of this Agreement.

### 21. Independent Contractor

Seller will provide the services to WorkflowOne as an independent contractor and not as an employee or agent of WorkflowOne. Seller will not have any right or authority to represent, commit or bind WorkflowOne in any way without the prior written consent of an authorized representative of WorkflowOne. Seller will not be entitled to any employee benefits offered to executives or employees of WorkflowOne and Seller will be responsible for all taxes on amounts paid by WorkflowOne for any services.

### 22. Confidential Information, Non-Solicitation

In the process of Seller filling orders from WorkflowOne under this Agreement, Seller will obtain valuable proprietary information concerning many aspects and details of the Products, Items and trade relationship between WorkflowOne and its customers ("Customers"). In exchange for the placement by WorkflowOne of product orders with Seller anticipated by this Agreement, Seller agrees that Seller will not and will not permit any of its officers, directors, employees, agents or independent contractors to, disclose to any third party or use for Seller's or such person's own benefit, at any time, either directly or indirectly any of the proprietary information to which it has access as a result of its relationship with WorkflowOne. During the term of this Agreement and for a period of two (2) years after the date of the last order (the "Termination Period"), Seller will not: (i) directly or indirectly, solicit or attempt to solicit the sale of any product or service to any Customer of Seller; or during the Termination Period accept, fulfill, knowingly sell or agree to fulfill Customer orders for products or services which are substantially similar to orders Seller previously fulfilled for such Customers on behalf of WorkflowOne unless such orders are submitted by WorkflowOne, or (ii) knowingly allow a current or former WorkflowOne employee to (other than expressly on WorkflowOne's behalf), directly or indirectly, acquire products or services from Seller on behalf of a Customer. In the event WorkflowOne submits a purchase order for a Customer that is also an existing Customer of Seller, then Seller shall immediately notify WorkflowOne, in writing, of that fact and describe the scope of Seller's existing work for that Customer ("Notice"). Upon receipt of that Notice, provided it is not inaccurate, the obligations

of subparagraphs (i) and (ii) above shall not apply, only to the Customer and only to the scope of the existing work, identified and described in the Notice. Seller acknowledges and agrees that any violation of the covenants contained in this paragraph may cause irreparable damage to WorkflowOne. Therefore, in the event Seller breaches any of its obligations in this paragraph, WorkflowOne will have the right to (a) equitable relief including but not limited to having the foregoing specifically enforced by any court; and (b) require Seller to account for and to pay over to WorkflowOne all damages, lost profits and costs (including attorneys' fees) incurred by WorkflowOne as a result of such breach. WorkflowOne's rights as set forth above shall be in addition to and independent of all other rights and remedies available to WorkflowOne.

### 23. Representations
The representations, warranties, indemnities, ownership, confidentiality, nondisclosure, and non-solicitation provisions contained herein shall survive the termination or expiration of this Agreement.

### 24. Entire Agreement
This Agreement constitutes the entire understanding of the parties with respect to the provision of Items and Products and no representation or statement not included herein shall be binding unless signed by both parties; provided, however, additional information in any purchase order, which is not contradictory to the terms of this Agreement, shall also apply.

### 25. Waiver
No waiver by either party at anytime of any of the terms, conditions or covenants of this Agreement, or non-compliance therewith, shall be treated at anytime thereafter as a waiver of the same or of any other term, condition or covenant herein contained, nor of the strict and prompt performance thereof.

### 26. Governing Law\Jurisdiction
The rights and obligations of the parties under this Agreement shall not be governed by the provisions of the 1980 United Nations Convention on Contracts for the International Sale of Goods; rather, these rights and obligations shall be governed by the laws of the State of Ohio, USA, excluding its conflicts of laws provisions. Seller agrees that the U.S., Ohio and/or Montgomery County courts shall have exclusive jurisdiction regarding any disputes between the parties, and Seller consents to such jurisdiction.

### 27. Governing Language
The governing language of this Agreement shall be English, and this Agreement has been executed in English. If either party prepares a translation of this Agreement, such translation shall not have any authority and the English version of this Agreement shall at all times prevail.

### 28. Force Majeure
Neither party will be responsible for any delays or failures in performance caused by acts of God, war, terrorism, riots, fire, explosion, flood, strike, governmental laws or regulations; provided that the party who is affected or threatened by such event immediately notifies the other party of the nature and estimated effect upon its performance. Seller will use its best efforts to remove any force majeure event to the extent possible. At WorkflowOne's discretion, the period specified for delivery of goods or services and any warranties will be extended by the period of delay occasioned by any such cause and deliveries omitted will be made during such extension, or the total quantity will be reduced by the deliveries affected by the suspension of such performance, but the balance of a purchase order will remain unaffected. WorkflowOne will have the option to terminate this Agreement or any then open purchase order without liability to Seller in the event of a force majeure situation. In the event of allocation by Seller as a result of a force majeure condition, Seller will allocate its total available supply of production and goods among WorkflowOne's and Seller's most favored customers on a fair and equitable basis.

### 29. Notice
Notices under this Agreement shall be sufficient if sent by United States certified mail, postage prepaid or by an air courier service, prepaid as follows:

If to WorkflowOne:

WorkflowOne
Attention: Contract Administration
220 East Monument Avenue
Dayton, OH 45402

If to Seller:

_____
_____
_____
_____

### 30. Enforceability
Should any provision of this Agreement become invalid or unenforceable, the remaining provisions shall remain unaffected, and each provision of this

Agreement shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first mentioned above.

SELLER

By: _____

Printed Name: Doug Wagner

Title: Ex VP Sales & Marketing

WORKFLOWONE:
The Relizon Company and Workflow Solutions LLC

By: _____

Printed Name: NATHAN JENKIN

Title: VP, SOURCING

1/24/11

# ADDENDUM
## TO
## PREFERRED SUBCONTRACTOR
## AGREEMENT

THIS ADDENDUM ("Addendum") is made effective as of April 1st, 2014 ("Effective Date"), by and between THE STANDARD REGISTER COMPANY, an Ohio corporation, having its principal place of business at 600 Albany Street, Dayton, Ohio 45417, ("Standard Register"), __IIMale Inc.__, a __Delaware__ corporation, on its own behalf and on behalf of its Affiliates, with its principal place of business located at __310 Commerce Dr. Amherst NY 14228__ ("Subcontractor") and augments the Preferred Subcontractor Agreement dated __1-1-2011__ ("Agreement") entered into by and between Standard Register and/or WorkflowOne – a Standard Register Company and Subcontractor.

WHEREAS, Standard Register and Subcontractor now desire to modify the Agreement to reflect certain changes in the terms or conditions of the Agreement;

NOW, THEREFORE, In consideration of the mutual covenants hereinafter set forth, and intending to be legally bound by the terms of this Addendum, Standard Register and Subcontractor agree that;

1. Standard Register shall now be defined to include its subsidiary WorkflowOne. So that either Standard Register or WorkflowOne may utilize this Agreement for the purchase of Goods or Services from Subcontractor.

2. A new section shall be added as follows: Taxes and Other Charges

    In addition to the price of the items sold hereunder, unless otherwise agreed, Seller will pay all foreign charges including, by way of example but without limitation, excise taxes, value added taxes, and export taxes. *- The Process for handling these charges should be addressed prior to the acceptance of the purchase order.*

3. The Rebate Covenant shall be deleted and replaced with the following: Rebate: Subcontractor shall pay Standard Register a rebate in the amount of 5% of the sale price of all Products( less taxes, freight and postage ) and Services in the previous month for all Subcontracted Work ("Rebate"). Standard Register shall deduct the Rebate amount from each Invoice received from Subcontractor. Standard Register intends to auto deduct the above incentive (rebate) from Invoices at the time they are presented for payment as soon the Account Payables is transitioned to ORACLE. Amble notice will be provided by Standard Register as this change occurs.

    For Legacy Standard Register purchase orders: Monthly accruals and monthly payments will still have to be accounted for and made for those transactions until Oracle has been adopted as the company-wide A/P platform.

    For Legacy WorkflowOne purchase orders: Auto deduct Incentive (rebate) at time of invoice payment

4. The Payment Terms shall be revised to read as follows" Payment Terms : All payments due hereunder shall be made based on ~~2%-30 days, Net 60 days terms~~ *Net 30 Days*. Risk of loss shall transfer to Standard Register at the point of shipment provided that Standard Register's carrier is being used. If the Subcontractor uses a carrier not approved by Standard Register, risk of loss shall transfer at point of delivery.

5. Packaging and Shipping Requirements shall be deleted and replaced with the following: Freight and Packing Terms : All freight terms shall be as described on Schedule 2 to this Agreement as well as the supplemental Order Fulfillment Guidelines (OFIs). Seller shall be responsible for any damage to merchandise caused by improper boxing, crating, or packing

6. In the event of a conflict between the terms and conditions of this Addendum and the Agreement, the terms and conditions of this Addendum shall control.

7. This Addendum is limited precisely as written and shall not constitute a waiver or modification of any other term or condition of the Agreement. Except as expressly modified by this Addendum, the Agreement shall remain in full force and effect.

8. Standard Register and Subcontractor represent and warrant to each other that the execution, delivery and performance of this Addendum have been duly authorized by all requisite corporate action.

IN WITNESS WHEREOF, Standard Register and Subcontractor, by their duly authorized officers or representatives, have executed this Addendum as of the Effective Date.

| THE STANDARD REGISTER COMPANY | [Subcontractor] IIMAK, Inc. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Thomas Farnbacher | Name: Scott Survina |
| Title: VP, Global Strategic Sourcing | Title: VP Sales & Marketing |
| Date: 7/7/14 | Date: 6/10/2014 |

## SCHEDULE 1

### (IIMAK)

The terms and conditions stated herein apply to all accumulated sales to WorkflowOne and its subsidiaries from all Seller subsidiaries.

INCENTIVE STRUCTURE

7 % of the sale price of all Products, less taxes, freight and postage

PAYMENT TERMS

Net 30 days

## SCHEDULE 2

### (IIMAK)

### PARCEL TRADE PARTNER PROGRAM:

United Parcel Service (UPS): WorkflowOne will assist Seller in establishing a separate UPS, or other parcel carrier as designated by WorkflowOne, account number, in the name of Seller as a WorkflowOne Trade Partner, for each of Seller's applicable distribution points. It will be the Seller's responsibility to ensure that all WorkflowOne parcel ground shipments weighing 350 pounds or less, or WorkflowOne parcel air shipments weighing 100 pounds or less, or any other designated air shipment requested by WorkflowOne Sales, be shipped using the account number(s) established. Additionally, the Seller will be responsible for payment to UPS, or other parcel carrier as designated by WorkflowOne, for all charges incurred on the account(s). To be reimbursed for all UPS, or other parcel carrier as designated by WorkflowOne, charges, the Seller will add all UPS, or other parcel carrier as designated by WorkflowOne, shipping charges to the applicable product invoice.

### ALL OTHER FREIGHT:

All other freight charges payable by WorkflowOne for product shipments will be as outlined in the WorkflowOne "Order Fulfillment Instructions" which may be updated from time-to-time and may include mutually agreed upon customer requests.