# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| SRC LIQUIDATION, LLC, ) | Case No. 15-10541 (BLS) |
| ) | |
| Debtor. ) | Docket Ref. No. 2154 |
| ) | |

| | |
|---|---|
| Matthew P. Austria, Esquire | Michael Busenkell, Esquire |
| Werb & Sullivan | Gellert Scali Busenkell & Brown, LLC |
| 300 Delaware Avenue, 13th Floor | 1201 North Orange Street, Suite 300 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| | |
| Phillip Bohl, Esquire | Henry P. Baer, Jr., Esquire |
| Gray Plant Mooty Mooty & Bennet, P.A. | Finn Dixon & Herling LLP |
| 500 IDS Center | 6 Landmark Square |
| 80 South Eighth Street | Stamford, CT |
| Minneapolis, MN 55402 | |
| | Counsel to International Imaging |
| Counsel to Standard Register, Inc. | Materials, Inc. |

## **OPINION**

Before the Court is the objection of Standard Register Inc. ("SRI") to International Imaging Materials, Inc.'s ("IIMAK") section 503(b)(9) claim. The issue in the instant case is whether goods were "received by" the Debtor from IIMAK within the meaning of section 503(b)(9) of the Bankruptcy Code. Case law instructs that courts can look to the Uniform Commercial Code (U.C.C.) to inform a section 503(b)(9) analysis, and the parties have briefed the applicability of U.C.C. §§ 2-702 and 2-705. Additionally, the Court has the benefit of the Third Circuit's very recent decision in *In re World Imports, Ltd*, No. 16-1357, 2017 WL 2925429 (3d Cir. July 10, 2017) to inform its analysis. For the reasons set forth below, the Court will sustain the objection pursuant to

11 U.S.C. §§ 502(b) and 503(b)(9) and hold that IIMAK possesses a general unsecured non-priority claim in the amount of $46,318.16.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## BACKGROUND

On March 12, 2014 (the "Petition Date"), Standard Register Company (n/k/a SRC Liquidation, LLC) (referred to hereinafter as the "Debtor" or "SRC") and its affiliates commenced voluntary cases under chapter 11 of the Bankruptcy Code.[1] The Debtor and Taylor Corporation ("Taylor") entered into an Asset Purchase Agreement (the "Purchase Agreement") on June 19, 2015. The Purchase Agreement called for the sale of certain assets from the Debtor to Taylor and the assumption by Taylor of certain liabilities, including section 503(b)(9) claims. The Court approved the Purchase Agreement, and the sale to Taylor closed on July 31, 2015 (the "Closing Date").

Pursuant to section 2.11 of the Purchase Agreement, Taylor was entitled to designate one or more parties (each a "Designated Buyer") to purchase the transferred assets and assumed liabilities. On the Closing Date, a Joinder to the Purchase Agreement was executed that designated Standard Register, Inc. as a Designated Buyer. Accordingly, SRI assumed "all [l]iabilities for amounts owed to vendors as

---

[1] Following the Effective Date of the Debtor's Chapter 11 Plan of Liquidation, the Court entered a *Final Decree Closing Certain Cases and Amending Caption of Remaining Case* [Docket No. 1417] closing the cases of each of the Debtor's affiliates. SRC Liquidation, LLC remains as the sole debtor.

administrative expense claims under [s]ection 503(b)(9)." Asset Purchase Agreement §§ 2.3(a)(iv), .11.

On November 19, 2015, the Court confirmed the Debtor's Chapter 11 Plan of Liquidation (the "Plan"). The Plan provides that SRI has "exclusive authority to compromise, resolve, and [a]llow" any claims it must satisfy under the Purchase Agreement. Chapter 11 Plan of Liquidation § 4.2.

SRI and IIMAK find themselves in a post-confirmation dispute over IIMAK's section 503(b)(9) claim. IIMAK was a vendor to the Debtor, and its products were at times delivered directly to the Debtor, and at other times were delivered to the Debtor's customers (at the Debtor's direction and utilizing the Debtor's account with United Parcel Service). At bottom, the issue here is whether claims for goods sent by IIMAK to the Debtor's customers qualify for priority treatment under section 503(b)(9).

The parties have stipulated to the following relevant facts:

a. Goods delivered by IIMAK directly to the Debtor during the relevant twenty day period (the "Directly Delivered Goods") total $2,096.27. The parties agree that Directly Delivered Goods qualify as an administrative expense claim pursuant to section 503(b)(9). In addition, shipping charges of $270.01 relate to Directly Delivered Goods. SRI contends the claim relating to Directly Delivered Goods should exclude the shipping charges. IIMAK disagrees and argues that the shipping charges should increase the section 503(b)(9) claim relating to Directly Delivered Goods to $2,366.28.

b. Goods delivered by IIMAK to UPS for shipping via a Standard Register account to a third party SRC customer during the relevant twenty day

3

       period (the "Drop Shipped Goods") total $53,190.24. IIMAK already received $8,750.46 relating to Drop Shipped Goods. Therefore, the balance of the Drop Shipped Goods is $44,439.78. Furthermore, shipping charges of $1,608.37 relate to Drop Ship Goods. IIMAK contends that the allowed 503(b)(9) claim relating to Drop Ship Goods should be $46,048.15, the sum of both the $44,439.78 balance amount and the shipping charges. SRI disagrees and asserts that Drop Ship Goods, including the shipping charges, should be excluded from the 503(b)(9) claim.

  c.    In sum, SRI maintains that IIMAK's allowed 503(b)(9) claim should total $2,096.27. IIMAK alleges that its 503(b)(9) claim is $48,414.43.

## LEGAL STANDARD

Section 503(b)(9) of the Bankruptcy Code accords administrative expense priority to a claim equal to the value of any goods sold to the debtor in the ordinary course of the debtor's businesses and received by the debtor within twenty days before the petition date:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including –
> 
> . . .
> 
>   (9) the value of any goods *received by* the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9) (emphasis added). Administrative expenses listed in section 503(b) are "discrete exceptions to the general equality principle." *Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, No. 11–cv–479–SM, 2012 WL 3765171, at *4 (D.N.H. Aug.

4

29, 2012). Accordingly, "they must be strictly construed and be 'clearly authorized by Congress.'" *Id.* (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006)). The claimant bears the ultimate burden of establishing a valid administrative expense claim by a preponderance of the evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992).

## DISCUSSION

SRI and IIMAK disagree as to whether IIMAK's shipment of goods during the relevant twenty day period, via UPS and using the Debtor's account, constituted receipt by the Debtor for purposes of satisfying the "received by the debtor" requirement under section 503(b)(9). The phrase "received by the debtor" is not defined in the Bankruptcy Code. However, case law teaches that courts may look to Article 2 of the U.C.C. when analyzing section 503(b)(9) claims. *See, e.g.*, *In re Momenta, Inc.*, 455 B.R. 353, 358 (Bankr. D.N.H. 2011); *In re Erving Indus., Inc.*, 432 B.R. 354, 364 (Bankr. D. Mass. 2010). Therefore, courts can construe the meaning of "received by the debtor" by reading relevant provisions of the U.C.C. and section 503(b)(9) as a harmonious whole.

The U.C.C. defines receipt of goods as "taking physical possession of them," "unless the context clearly requires otherwise." U.C.C. § 2-103(1)(c). An example of a "context [that] clearly requires otherwise" includes stoppage and reclamation rights. *See* U.C.C. §§ 2-702, -705. Section 2-705 of the U.C.C. specifies four situations in which a buyer "receives" goods such that the stoppage provisions of section 2-705 no longer apply and the reclamation provisions of section 2-702 come into play: one situation involves physical possession of the goods by the buyer and the other three situations include "constructive receipt," each of which require physical possession of the goods

through an agent.[2] *See* U.C.C. § 2-705(2). Accordingly, the U.C.C. recognizes "receipt" in both its actual and constructive forms. *See* U.C.C. §§ 2-103(1)(c), -705(2).

SRI relies on *Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.)*, 740 F.2d 220 (3d Cir. 1984) to argue that receipt under section 503(b)(9) should be restricted to the four situations listed under section 2-705 of the U.C.C., none of which constitute receipt in the instant case. *Id.* at 224-26. However, IIMAK seeks to distinguish *Marin Motor Oil* by noting that it is in fact a Bankruptcy Code section 546(c) reclamation case, not a section 503(b)(9) case. *Id.* at 224. Although sections 546(c) and 503(b)(9) both require the debtor to *receive* goods before the seller can pursue the sections' provided rights, the remedies provided under each section are materially different. Section 546(c) allows a seller, in a limited capacity, to exercise its state law reclamation rights established in U.C.C. §§ 2-702 and 2-705. *See In re Momenta*, 455 B.R. at 358. Thus, IIMAK reasons, section 2-705 appropriately defines receipt only in a reclamation context. *Id.*; *Marin Motor Oil*, 740 F.2d at 224-26. In contrast, section 503(b)(9) allows a seller to pursue an administrative expense claim, a remedy bearing no connection to the state law rights found within U.C.C. §§ 2-702 and 2-705. *In re Erving Indus., Inc.*, 432 B.R. at 373. IIMAK alleges that the definition of receipt for a section 503(b)(9) claim

---

[2] Specifically, the examples of receipt listed in U.C.C. § 2-705 include:
    (a) receipt of the goods by the buyer; or
    (b) acknowledgement to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
    (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or
    (d) negotiation to the buyer of any negotiable document of title covering the goods.
U.C.C. § 2-705(2)(a)-(d). Items (b), (c), and (d) are deemed constructive receipt.

may include constructive receipt situations that differ from those established in U.C.C. § 2-705, if the situation so requires.

Despite the different remedies provided under sections 546(c) and 503(b)(9), the word "received" in both provisions should and does hold the same meaning. When two words are similar and concern related issues, they may be treated as "functional equivalent[s]" and interpreted identically. *In re Circuit City Stores, Inc.*, 432 B.R. 225, 229 (Bankr. E.D. Va. 2010) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)). The Bankruptcy Code and its legislative history show that sections 546(c) and 503(b)(9) operate to "enhance certain types of reclamation claims." *In re Circuit City Stores, Inc.*, 432 B.R. at 229. First, both the creation of section 503(b)(9) and the amendments to section 546(c) were enacted in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 under a section titled "Reclamation." *In re Momenta*, 455 B.R. at 357. In addition, section 546(c) directly references section 503(b)(9) as a substitute to the right of reclamation, stating that "[i]f the seller of goods fails to provide [proper] notice [of its reclamation rights], the seller may still assert the rights contained in section 503(b)(9)." 11 U.S.C. 546(c)(2). Because of this direct link between sections 546(c) and 503(b)(9), the words "received" in both provisions are related and entitled to identical interpretation.

IIMAK argues that the courts' use of U.C.C. § 2-705(2) to interpret receipt under section 546(c) fails to consider the commercial realities surrounding section 503(b)(9) claims. Given the array of possible shipping procedures between sellers, debtors, and third parties, IIMAK alleges that only the passing of title can provide a clear answer as to if and when a debtor received any goods. However, the U.C.C. does not rely on the

concept of title for purposes of establishing rights of buyers and sellers: possession is the key. *See* U.C.C. § 2-401; *Marin Motor Oil*, 740 F.2d at 225.

Subsequent to the parties' briefing, the Third Circuit issued an opinion bearing directly on this matter. In *World Imports*, sellers shipped goods to a debtor company via common carrier from China to the United States "free on board" at the port of origin, so the risk of loss passed to the debtor upon transfer at the port. *World Imports*, 2017 WL 2925429, at *1. The sellers and debtor disagreed as to what action constituted receipt under section 503(b)(9): the transfer of goods to the carrier in China, or the physical acceptance of goods by the debtor in the United States. *Id.* The court in *World Imports* rejected the proposition that the passing of title or risk of loss constituted receipt. *Id.* at *5. Rather, the court held that "receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or its agent," and it is well-established that "common carriers do not qualify as agents." *Id.* at *5-6. Accordingly, consistent with the holding in *World Imports*, this Court finds physical possession by the buyer or its agent, as interpreted in U.C.C. § 2-705(2), not the passing of title, the appropriate indicator as to when the Debtor "received" goods for purposes of section 503(b)(9).

Considering the above analysis, the Court finds that IIMAK failed to carry its burden to demonstrate its entitlement to an administrative priority for the value of the goods identified in its 503(b)(9) claim. As stipulated by the parties, these goods were delivered by IIMAK to a common carrier (UPS) for shipping via the Debtor's account to a third party SRC customer during the relevant twenty day period. The Debtor never physically possessed the goods. Only UPS possessed the goods, and as a carrier UPS

does not qualify as an agent. *World Imports*, 2017 WL 2925429, at *5. The goods were never received by the Debtor from IIMAK within the meaning of section 503(b)(9).

## **CONCLUSION**

For the foregoing reasons, the Court will sustain SRI's objection and disallow IIMAK's administrative expense claim. The Court will allow IIMAK a non-priority, general unsecured claim in the amount of $46,318.16.

An appropriate order follows.

By the Court:

Dated: July 13, 2017

Brendan Linehan Shannon
Chief United States Bankruptcy Judge

---

[3] An administrative priority claim under section 503(b)(9) is limited to the provision of goods. *See In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 134 (Bankr. D. Del. 2009). SRI argues that the definition of "goods" set forth in Article 2 of the U.C.C. is instructive for section 503(b)(9). Yet, IIMAK contends the "predominate purpose" of the contract was the sale of goods, not services, and therefore section 503(b)(9) applies to all costs. The majority of courts, including this Court, agree with SRI's position and use the U.C.C.'s definition of "goods" provided in section 2-105(1) when interpreting section 503(b)(9). *See, e.g.*, *In re Erving Indus., Inc.*, 432 B.R. at 365-66, 372; *In re Goody's*, 401 B.R. at 134. Shipping charges do not fall within this definition.