## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SRC LIQUIDATION, LLC[1] | Case No. 15-10541 (BLS) |
| Debtor. | |
| | **Hearing Date: September 26, 2018 at 10:30 a.m. (ET)** |
| | **Objection Deadline:  August 31, 2018 at 4:00 p.m. (ET)** |

### DEBTOR'S NINETEENTH (19th) OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1

SRC Liquidation, LLC *f/k/a* The Standard Register Company, the above-captioned reorganized debtor (the "Debtor," and together with its chapter 11 debtor affiliates[2], the "Debtors") hereby files this objection (the "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to each of the claims (collectively, the "Disputed Claims") filed against the Debtors and their estates that are listed on Exhibits A through E to the proposed form of order (the "Proposed Order") attached hereto as Exhibit 2, and request the entry of the Proposed Order disallowing, modifying, or reclassifying, as appropriate, each of the Disputed Claims on the grounds set forth herein.  In support of this Objection, the Debtor relies on the

---

[1]    The last four digits of the Debtor's taxpayer identification number are 5540.  Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

[2]    The following Debtors filed for relief under the Bankruptcy Code on the Petition Date: The Standard Register Company (5440); Standard Register Holding Company (3186); Standard Register Technologies, Inc. (3180); Standard Register International, Inc. (1861); iMedConsent, LLC (6337); Standard Register of Puerto Rico Inc. (0578); Standard Register Mexico Holding Company (1624); Standard Register Holding, S. de R.L. de C.V. (n/a); Standard Register de México, S. de R.L. de C.V. (n/a); Standard Register Servicios, S. de R.L. de C.V. (n/a); and Standard Register Technologies Canada ULC.

Declaration of Anthony Calascibetta (the "Calascibetta Declaration"), a copy of which is attached hereto as Exhibit 1. In further support of this Objection, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States constitution. Pursuant to Local Rule 9013-1(f), the Debtor consents to entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, 3008, and Local Rule 3007-1.

## BACKGROUND

### A.      General Background

3.      On March 12, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors managed their financial affairs as debtors in possession. No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4.      By Order entered November 19, 2015, the Court confirmed the *Debtors' Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (With Technical Modifications)* [Docket No. 1331-1] (the "Plan").  The Effective Date (as defined in the Plan) of the Plan occurred on December 18, 2015.  *See Notice of Effective Date of Second Amended Chapter 11 Plan of Liquidation for SRC Liquidation Company and its Affiliates (With Technical Modifications) Under Chapter 11 of the Bankruptcy Code* [Docket No. 1412], ¶ 1.

5.      Section 4.2 of the Plan provides that the Debtor has exclusive authority to "compromise, resolve and Allow any Disputed Claims other than Class I and Class III Disputed Claims."  The Disputed Claims subject to this Objection constitute Disputed Claims under the Plan.

6.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in *Declaration of Kevin M Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 2] (the "First Day Declaration").

**B.      Debtors' Schedules**

7.      On May 11, 205, each of the Debtors filed their Schedules of Assets and Liabilities [Docket Nos. 475, 477, 479, 481, 483, 485, 487, 489, 491, 493, and 495].

**C.      Proofs of Claim**

8.      On March 13, 2015, the Court entered an order [Docket No. 54] appointing Prime Clerk LLC ("Prime Clerk") as claims and noticing agent in these Chapter 11 Cases.  Among other things, Prime Clerk is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these chapter 11 cases and (b) maintain official claims registers for each of the Debtors.

**D.    ACCO Proof of Claim**

9.    On or about July 6, 2015, ACCO Brands USA LLC ("<u>ACCO</u>") filed its proof of

claim against Debtor The Standard Register Company in the amount of $66,070.58 (the "<u>ACCO</u>

<u>Claim</u>").  The ACCO Claim was assigned Claim No. 2115.

10.    Pursuant to the *Debtors' Second (2nd) Omnibus (Substantive) Objection to*

*Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule*

*3007-1*, filed on August 21, 2015 (the "<u>Second Omnibus Objection</u>") [Docket No. 965], the

Debtors objected to the ACCO Claim and sought recharacterization thereof because:

> Claimant does not provide any basis for asserting that its claim is
> entitled to priority status beyond the asserted 503(b)(9) Claim.
> The asserted claim is only partially entitled to administrative
> expense status under section 503(b)(9) of the Bankruptcy Code, if
> at all, and the balance of the claim is a general unsecured claim.

*See* Second Omnibus Objection, Proposed Order, Ex. A, p. 2.

11.    On September 17, 2015, the Court entered its Order Sustaining Debtors' Second

(2nd) Omnibus (Substantive) Objection to Claims Pursuant to Section 502 of the Bankruptcy

Code, Bankruptcy Rule 3007 and Local Rule 3007-1 (the "<u>Second Omnibus Order</u>") [Docket

No. 1054].  The entry for the ACCO Claim in the "Modified Claim Status" column of Exhibit A

to the Second Omnibus Order erroneously stated that the ACCO Claim would be reclassified as

follows:

> 503(b)(9) Claim: $7,018.87
> Administrative Claim: $35,682.26
> General Unsecured Claim: $43.194.00

*See* Second Omnibus Order, Ex. A, p. 2.  The basis for the recharacterization of the ACCO

Claim set forth in the "Reason for Classification" column was:

> Claimant does not provide any basis for asserting that its claim is
> entitled to priority status beyond the asserted 503(b)(9) Claim.
> The asserted claim is only partially entitled to administrative

expense status under section 503(b)(9) of the Bankruptcy Code, if
at all, and the balance of the claim is a general unsecured claim.

*Id.*

12.    The Second Omnibus Order further provides that "[p]ursuant to Local Rule 3007-1(f), nothing in this Order shall be construed to prejudice the rights of the Debtors, or any other party in interest, to object to the Disputed Claim listed on Exhibit A (as reclassified) on any other grounds, including further objection to classification or amount asserted." *See* Second Omnibus Order, ¶ 2.

13.    By correspondence dated July 23, 2018, counsel for the Debtor sought to address the erroneous entry with counsel for ACCO.  Counsel for ACCO has not responded to the Debtor's correspondence.

**E.    CareSource Proof of Claim and Litigation**

14.    On or about July 8, 2015, CareSource Management Group Co. ("CareSource") filed its proof of claim in the estimated amount of $973,271.98 plus unliquidated damages (the "CareSource Claim").  The CareSource Claim  was assigned Claim No. 2249

15.    In the *Attachment to Proof of Claim of CareSource Management Group Co. Filed in the Chapter 11 Case of The Standard Register Company, et al. Case No. 15-10541* (the "CareSource Attachment"), CareSource asserts three distinct claims as part of the CareSource Claim:

(a)    The "Printing Error Claim": An unliquidated and estimated claim purportedly based on allegedly misprinted materials that contained errors "that have created issues and damages for CareSource and that will continue to create issues and damages" the amount of which CareSource estimates to be in the amount of $750.000"; CareSource Att., ¶¶ 2.J, 3.A;

(b)    The "Incentive Claim":  A pre-petition and post-petition claim for amounts purportedly due to CaseSource based on an undisclosed formula allegedly "in the Master Services Agreement that determines the amount of [such claim]."  The CareSource Attachment alleges that the prepetition value of the Incentive Claim is

$223,271.98 and the post-petition value is $16,295.10.  CareSource further states that "Post-petition, Standard Register issued a credit to CareSource in the amount of $150,000.00, which CareSource applied to offset Standard Register post-petition obligations"; CareSource Att., ¶¶ 2.L, 3.B.

(c)    The "Savings Guarantee Claim":  A purportedly unliquidated and estimated "post-petition obligation to CareSource pursuant to a clause in the Master Services Agreement in which Standard Register guaranteed CareSource a savings of a specified percentage in the first year of the Master Services Agreement, from the amount CareSource spent on printing the previous year ('Baseline Spend') before CareSource entered into the Master Services Agreement."  While CareSource alleges that "[t]here is a formula in the Master Services Agreement that determines the amount of the Savings Guarantee Claim," the CareSource Attachment does not disclose such formula.  Rather, CareSource alleges that the Savings Guarantee Claim is "estimated" to be in range from $1,314,499.60 to $1,596,178.08.  CareSource further stated that it "believes the Savings Guarantee Claim is a post-petition administrative claim… ."  However, "CareSource reserve[d] the right to assert that a portion of the Savings Guarantee Claim, based on CareSource spend (sic) with Standard Register from July 22, 2014 through March 11, 2015, is a prepetition claim."  CareSource Att., ¶¶ 2.M, 3.C.

16.    On October 30, 2015, CareSource and Caresource Management Group Co. (collectively, "CareSource") filed an adversary complaint (the "CareSource Complaint") against the Debtors, Silver Point Finance LLC ("Silver Point"), Bank of America, N.A. ("BofA") and Wells Fargo Bank, N.A. ("Wells Fargo") (A.P. No. 15-51775) (the "CareSource Adversary Proceeding").

17.    The CareSource Complaint alleged that:

The Debtors failed to perform in accordance with the Contracts in many ways (the "Performance Defaults").  The Performance Defaults are well documented in detail by sealed pleadings filed by CareSource in the Debtors' chapter 11 case.  In sum, the Debtors made errors in certain printed materials, exposing CareSource to possible liability. CareSource timely filed a proof of claim for damages arising from the Performance Defaults.

See CareSource Complaint, at ¶ 13.

18.    In the CareSource Adversary Proceeding, CareSource sought to ensure that the proceeds from certain insurance policies would be available to satisfy its Printing Error Claims

(if they were ever to materialize) and the Insurance Policies and would not be subject to the claims of the Debtors' secured creditors. Specifically, CareSource sought, *inter alia*, a declaration that the proceeds from certain insurance policies were not property of the Debtors' estate and were not "subject to claims, liens and encumbrances of the Defendants, and that Defendants' claims in proceeds from the Insurance Policies are not valid," or, alternatively, that "Defendants' claims, liens and encumbrances, if any, in proceeds from the Insurance Policies are subordinate to CareSource's claims arising from the Performance Defaults." *See id.*, at p. 10.

19.     On July 27, 2017, Silver Point filed a Rule 12(b)(1) Motion to Dismiss (the "CareSource Motion to Dismiss") [A.P. Docket No. 52] that was joined by other defendants, including the Debtors. [A.P. Docket No. 59].

20.     On January 10, 2017, the Court entered a Stipulation of Settlement and Dismissal With Prejudice of Claims Against Defendants Bank of America, N.A. and Wells Fargo Bank, N.A. (the "CareSource Settlement Stipulation") in the CareSource Adversary Proceeding [A.P. Docket No. 84], dismissing BofA and Wells Fargo from the CareSource Adversary Proceeding with prejudice. The CareSource Settlement Stipulation provides that:

> Each of BofA and Wells Fargo stipulates that it has no right, title or interest in any of the Insurance Policies or their proceeds; agrees that it shall not assert any claim against, interest in, or lien upon, any of the Insurance Policies or their proceeds; agrees that it does not, and shall not, assert any claims against CareSource in connection with the facts and circumstances relating to this adversary proceeding; and hereby waives and releases any and all claims (if there be any) it has under the Secured Creditor Trust Agreement to any of the Insurance Policies or their proceeds.

CareSource Settlement Stipulation, ¶ 1.

21.     In 2017, the Court entered an Order denying the CareSource Motion to Dismiss [A.P. Docket No. 88] and issued an accompanying opinion. CareSource and CareSource

<u>Management Group Co. v. SRC Liquidation, et. al.</u>, 2017 WL 6033019 (Bankr. D. Del. Dec. 1, 2017) (the "<u>CareSource Opinion</u>").  In the CareSource Opinion, the Court stated that:

> It is undisputed that, to date, CareSource has not been presented with any claims from third parties based on the work done by SRC, and CareSource has not filed any claims against the insurance policies.

2017 WL 6033019, at *1.

22.    Following settlement with the secured lenders with respect to access to (and division of) insurance proceeds, on May 21, 2018, the Court entered a *Stipulation of Dismissal* (the "<u>CareSource Dismissal Stipulation</u>") in the CareSource Adversary Proceeding [A.P. Docket No. 89], dismissing the remaining defendants with prejudice.

## RELIEF REQUESTED

23.    By this Objection, the Debtor seeks entry of an order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1, disallowing, modifying, or reclassifying, as appropriate, each of the Disputed Claims as set forth herein.

24.    In accordance with Local Rule 3007-1(e)(i)(E), the Debtor believes that this Objection complies in all material respects with Local Rule 3007-1.

## OBJECTION

25.    Under section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities, and (b) the claim is otherwise allowable. 11 U.S.C. § 101(5); *see also* 11 U.S.C. §§ 101(10) and 502.

26.    Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest …

objects." 11 U.S.C. § 502(a). Once an objection to a claim is filed, the Court, after notice and a

hearing, shall determine the allowed amount of the claim. *See* 11 U.S.C. § 502(b).  When a claim

objection is filed in a bankruptcy case, the burden of proof as to the validity of the claim rests on

different parties at different times. *In re Samson Resources Corp.*, 2017 Bankr. LEXIS 4294, at *

5 (Bankr. D. Del. Dec. 13, 2017) (quotations omitted).

27.    As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of

claim constitutes prima facie evidence of the validity and the amount of the claim under section

502(a) of the Bankruptcy Code.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

To receive the benefit of the prima facie validity, however, "the proof of claim must 'set forth

facts necessary to support the claim.'" *In re Chain*, 255 B.R. 278, 280 (Bankr. D. Conn. 2000)

(*quoting In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988)).  The failure to allege sufficient

facts in support of a claim deprives the claim of prima facie validity. *In re Jorczak*, 314 B.R.

474, 481 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof

with respect to the allowance of claims).

28.    In addition, a claimant's proof of claim is entitled to the presumption of prima

facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes at least one of

the allegations that is essential to the claim's legal sufficiency. *See In re Allegheny Int'l*, 954

F.2d at 173-74.  Once such an allegation is refuted, the burden reverts to the claimant to prove

the validity of the claim by a preponderance of the evidence. *See id*. at 174; *In re Oneida Ltd*.,

400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  In other words, once the prima facie validity of a

claim is rebutted, "it is for the claimant to prove his claim, not for the objector to disprove it." *In

re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).  The burden of persuasion

with respect to the validity of a claim is always on the claimant. *In re Allegheny Int'l*, 954 F.2d at 174.

## A.    Reclassified Claim

29.    The Debtors object to the Disputed Claim listed on <u>Exhibit A</u> to the Proposed Order (the "<u>Reclassified Claim</u>") because, based on a review of the Debtors' books and records and the relevant proofs of claim, such claims should be reclassified for the reasons set forth on <u>Exhibit A</u> to the Proposed Order.  The Disputed Claim had been characterized in the ACCO Proof of Claim as a priority claim by the applicable claimant but the ACCO Proof of Claim did not specify a basis for priority under section 507(a) of the Bankruptcy Code.  Moreover, the Disputed Claim was incorrectly classified, in part, as an administrative claim in the Second Omnibus Order.  Clearly, the "Reason for Reclassification" set forth in the Second Amended Order that "[t]he asserted claim is only partially entitled to administrative expense status under section 503(b)(9) of the Bankruptcy Code, if at all, and the balance of the claim is a general unsecured claim" does not comport with a reclassified claim that includes a 503(b)(9) Claim in the amount of $7,018.87, as well as an administrative claim in the amount of $35,682.26.  Moreover, when one considers the additional general unsecured claim in the amount of $43,194.00, the total ACCO Claim was increased from $66,070.58 to $85,895.13.

30.    The Debtors submit that, upon a review of the Debtors' books and records and the supporting documentation submitted with the Reclassified Claim, there is no discernible basis to characterize the Reclassified Claims as priority or an administrative claim or in the increased amount.  The Reclassified Claim contains no information or documentation supporting the asserted administrative status, and the Debtors' books and records reflect that such claim is not entitled to administrative status.  Accordingly, the Debtors request that the Court reclassify the Reclassified Claim identified on Exhibit A to the Proposed Order as a general unsecured claim in

the amount of $59,051.71.  A component of the claim, subject to treatment under section 503(b)(9) of the Bankruptcy Code, has already been satisfied.

31.     For the foregoing reasons, the Debtors request entry of the Proposed Order reclassifying the Reclassified Claim on Exhibit A to the Proposed Order.  Failure to grant the requested relief would result in the applicable claimant receiving an unwarranted recovery against the Debtors' estates, to the detriment of other creditors in these Chapter 11 Cases.

32.     This objection to the Reclassified Claims relates only to the *classification* of such claims and, accordingly, does not constitute an objection to amounts asserted in such claims. Pursuant to Local Rule 3007-1(f), this Objection to the Reclassified Claim does not prejudice the rights of the Debtors or of any other party in interest to object to such claim (as reclassified) on any other grounds whatsoever.

**B.     Modified Claim**

33.     The Debtors object to the Disputed Claim listed on Exhibit B to the Proposed Order (the "Modified Claim") for the reasons set forth above and on Exhibit B to the Proposed Order.  The Disputed Claim had been characterized in the ACCO Proof of Claim by the applicable claimant as being in the amount of $66,070.58.  The total value of such claim was erroneously increased to $85,895.13 in the Second Omnibus Order.

34.     The Debtors submit that, upon a review of the Debtors' books and records and the supporting documentation submitted with the Modified Claim, there is no discernible basis for the increased amount of the ACCO Claim.  The Modified Claim contains no information or documentation supporting the increased claim amount, and the Debtors' books and records reflect that such increase is not appropriate.  Accordingly, the Debtors request that the Court modify the Modified Claim identified on Exhibit B to the Proposed Order to return the claim to the original claim amount.

35.     For the foregoing reasons, the Debtors request entry of the Proposed Order reclassifying the Reclassified Claim on <u>Exhibit B</u> to the Proposed Order.  Failure to grant the requested relief would result in the applicable claimant receiving an unwarranted recovery against the Debtors' estates, to the detriment of other creditors in these Chapter 11 Cases.

**C.     No Liability Claims**

36.     A chapter 11 debtor has the duty to object to the allowance of any claim that is improper.  11 U.S.C. §§ 704(a)(5), 1106(a)(1) and 1107(a); *see also In re Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.),* 922 F.2d 659, 661-62 (11th Cir. 1991).

37.     The Debtors object to the Disputed Claims listed on <u>Exhibit C</u> to the Proposed Order because, based on a review of the Debtors' books and records and the relevant proofs of claim, the Debtor has identified such proofs of claim as erroneously asserting liabilities that are not reflected in the books and records (collectively, the "<u>No Liability Claims</u>").  The Debtor has reviewed each such claim and all supporting information and documentation provided therewith, made reasonable efforts to research each claim and determined that the estate is not liable for such claims.

38.     Pursuant to the first component of its Claim, the Printing Error Claim, CareSource alleges estimated damages in the amount of $750,000.  The CareSource Claim includes zero support for this "estimated" amount and recites no facts to support that element of its claim.  The documents are attached to support this claim are simply blacked out form pages.  There is no reference to how the amount was calculated. In fact, the CareSource Opinion, the Court recognized that "[i]t is undisputed that, to date, CareSource has not been presented with any claims from third parties based on the work done by SRC,... ."  2017 WL 6033019, at *1.  The

Printing Error Claim has no support in the Debtors' books and records or the relevant proofs of claim.

39.     The Incentive Claim and the Savings Guarantee Claim also has no support in the Debtors' books and records or the relevant proof of claim.   The CareSource Claim is intentionally vague about how such claim amounts were calculated and state that there as undisclosed formulas.   The claims also provide vague information regarding whether such claim amounts arose with prepetition or post-petition or regarding how certain post-petition payments were applied to alleged and undisclosed post-petition obligations.   Further, despite numerous requests, claimant has declined to provide the Debtor with any information substantiating its alleged claim.

40.     Because the No Liability Claims have no support in the Debtors' books and records or the relevant proofs of claim, the Debtors are not liable for the asserted obligations.   As such, claims on Exhibit C to the Proposed Order should be disallowed.

41.     Failure to grant the requested relief would result in the applicable claimants receiving an unwarranted recovery against the Debtors' estates, to the detriment of other creditors in these Chapter 11 Cases.

42.     Pursuant to Local Rule 3007-1(f), this Objection to the No Liability Claims does not prejudice the rights of the Debtor or of any other party in interest to object to such claims on any other grounds whatsoever.

**D.     Contingent/Unliquidated Claims**

43.     As a result of its review of the Debtors' books and records, the Debtor has identified certain Proofs of Claim based, entirely or in part, upon the occurrence of a contingency that has not occurred, otherwise do not reflect a valid liability of the Debtor and the estate, and/or are asserted in an estimated and/or unliquidated amount due (the "Contingent/Unliquidated

Claims"). After reviewing each Contingent/Unliquidated Claim and all supporting information and documentation provided therewith, the Debtor made reasonable efforts to research each Unliquidated Claim and determined that the estate is not liable for such Contingent/Unliquidated Claims or, pursuant to section 502(c) of the Bankruptcy Code, the Contingent/Unliquidated Claims cannot be allowed unless liquidated or estimated. The Claimant asserting each of the Contingent/Unliquidated Claim has not filed amended claims or otherwise sought to assert an actual claim in a specified amount.

44.      The Contingent/Unliquidated Claims consist of the unliquidated portions of the CareSource Claim, specifically (i) the Printing Error Claim; and (ii) the Savings Guarantee Claim.

45.      CareSource's estimated damages with respect to the Printing Error Claim appear to be created from whole cloth. In the CareSource Attachment, CareSource "currently estimates that that the amount of the Printing Error Claim will be $750,000." CareSource Attachment, ¶ 3.A. CareSource does not explain any basis for its asserted damages. As detailed above, the Court has recognized that no third party claims have been brought against CareSource with respect to the purported Printing Error to date. CareSource provides nothing to serve as a benchmark for estimating its potential damages. CareSource has provided no way for the Debtor or this Court to ascertain even the approximate damages the Debtor could owe CareSource if its allegations had merit. CareSource cannot include in its claim an estimated amount of damages that may arise while providing no facts or evidence to support that estimate and no information regarding the effect of the purported Printing Error—to permit otherwise would allow CareSource an inflated recovery to the detriment of the Debtors' estates and other creditors. Accordingly, the Printing Error Claim should be disallowed.

46.    CareSource's Savings Guarantee Claim is also admittedly "estimated" and undoubtedly inflated.  The CareSource Attachment does not disclose the formula used for calculating the claim.  Moreover, the CareSource Attachment states that CareSource "believes the Savings Guarantee Claim is a post-petition administrative claim… ."  It is clear that the Savings Guarantee Claim was filed as a protective measure rather than as an attempt to assert an actual claim.

47.    Accordingly, the Debtors do not have any liability associated with the Contingent/Unliquidated Claims and the Debtor requests that such Claims be disallowed and expunged.

**(F)    Estimation of Unliquidated Claims**

48.    A claim is unliquidated where its amount "has not been determined" and is not "capable of ready computation." *In re RNI Wind Down Corp.*, 369 B.R. 174, 183 (Bankr. D. Del. 2007) (citing Black's Law Dictionary, p.264 (8th ed. 2004); *Anuco, Inc. v. Business Cards Tomorrow, Inc. (In re Nugent)*, 254 B.R. 14, 36 (Bankr. D.N.J. 1998) (*quoting Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 30 (B.A.P. 9th Cir. 1997)).

49.    Multiple components of CareSource's claims, including the Savings Guarantee Claim and The Printing Error Claim, are unliquidated.   Estimation at $0.00 is appropriate to avoid undue delay and a windfall to CareSource.

50.    Congress intended that "all claims, including unliquidated and contingent claims, be 'dealt with' in the bankruptcy proceeding." *Addison v. Langston (In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1340 (5th Cir. 1984) (citation omitted).  Accordingly, section 502(c) of the Bankruptcy Code provides that there "shall be estimated for purposes of allowance under this section … any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." *Id.*; 11 U.S.C. § 502(c)(1).

Recognizing, however, that liquidating all contingent and unliquidated claims in the normal course could "unduly delay the administration of the case," 11 U.S.C. § 502(c)(1), Congress afforded bankruptcy courts wide latitude to estimate contingent and unliquidated claims using whatever methods best suit the needs of the case. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 123 (D. Del. 2006).

51.    The Bankruptcy Code does not prescribe a specific methodology for estimating claims; instead, "the bankruptcy court should use whatever method is best suited to the circumstances." *In re Brints Cotton Mktg.*, 737 F.2d at 1341; *Bittner v. Borne Chemical Co.,* 691 F.2d 134, 135 (3d Cir. 1982) (when estimating claims, bankruptcy courts may use "whatever method is best suited to the particular contingencies" of the case).  *See also Armstrong World Indus.*, 348 B.R. at 123 ("The Code does not provide a roadmap for estimation. . . . The only requirement is that the value of the claim be determined in accordance with the legal rules that will govern the final amount of the claim, and 'there are no other limitations . . . save those general principles which should inform all decisions made pursuant to the Code.'" (quoting *Bittner v. Borne Chemical Co.*, 691 F.2d at 135-36)).

52.    Estimation of claims serves at least two purposes.  First, it facilitates the efficient resolution of a bankruptcy case by eliminating the need to defer the confirmation and consummation of a chapter 11 plan until contingent and/or unliquidated claims are resolved. Second, it promotes fair distributions to creditors by requiring that uncertain claims be assessed realistically. *See First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992).

53.    Estimation of a contingent or unliquidated claim is "mandatory" where such claim would otherwise unduly delay administration of a bankruptcy case. *In re G-I Holdings, Inc.*, 323

B.R. 583, 599 (Bankr. D. N.J. 2005). Defining "undue delay" under section 502(c) of the Bankruptcy Code, is "a problem whose solution ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question." *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 222 (Bankr. D. Or. 2006). This analysis implicates both (1) "how long it will take before . . . [a] claim will be liquidated and determined," and (2) whether a "plan of reorganization can be confirmed so long as [the relevant] claim remains unliquidated and not estimated." *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986).

54.     The Debtors submit that, to the extent the CareSource claim is not disallowed, estimation of the unliquidated components of the CareSource's claim for distribution purposes in these Chapter 11 Cases is necessary to facilitate the Debtors' reorganization and avoid the undue delay in the administration of these cases that may result if the CareSource claim remains unliquidated. *See, e.g., In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (claims estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine"). *See also Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir. 1985) (estimation necessary for a determination of plan feasibility); *In re Lane*, 68 B.R. at 611 (ordering estimation in part because "[n]o plan of reorganization can be confirmed so long as this claim remains unliquidated and not estimated"). Accordingly, the unliquidated components of the CareSource Claim should be estimated at $0.00 by this Court for distribution purposes.[3]

---

[3] As noted above, this Court has broad discretion to shape estimation procedures best suited to the case at issue. Methods used by bankruptcy courts to estimate a claim include summary trials, evidentiary hearings, and simple

### E.    Satisfied Claim

55.    In addition, even if CareSource set forth a valid Printing Error Claim, such claim should still be disallowed.  Pursuant to Bankruptcy Rule 3007(d), a debtor may object to claims and seek their disallowance where such claims "have been satisfied or released…"  Fed. R. Bankr. P. 3007(d)(5).

56.    The obligations denominated as the Printing Error Claim in the CareSouce Claim are or relate to claims for Performance Defaults at issue in the CareSource Adversary Proceeding.  As detailed in the CareSource Complaint and pleadings filed in connection with related dismissal motion, CareSource seeks to recover from the Debtors' insurance policies for claims arising from the Performance Defaults.  Pursuant to prior orders of the Court, the obligations giving rise to the Printing Error Claim (to the extent they ever materialize) have been or will be satisfied by insurance proceeds litigated in the CareSource Adversary Proceeding, or otherwise.  Accordingly, if the Printing Error Claim is not disallowed, the holders thereof could potentially receive a double recovery on account of obligations that have already been satisfied. *In re Big, M, Inc.*, 2014 WL 5822655 (Bankr. D. N.J. Nov. 6, 2014) (DHS) (overruling landlord's objection and expunging administrative claims filed in connection with assumed lease); *In re Beitdashtoo*, 2013 WL 1897853, *2 (Bankr. D. D.C. May 7, 2013) (expunging claim and holding that "a lease that has been assumed…does not give rise to a claim") (citations omitted).  A claimant is not entitled to multiple recoveries for a single liability against a debtor. *In re Handy Andy Home Improvement Ctrs., Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("as it is axiomatic that one cannot [sic] recover for the same debt twice").[4]

---

review of the pleadings and oral argument.  *In re Mud King Prod., Inc.*, 2015 WL 862319, at *3 (S.D. Tex. Feb. 27, 2015).

[4]    Biolitec, AG v. Cyganowski, No. 13-cv-5864, 2013 WL 6795400, *3 (D. N.J. Dec. 16, 2013)(FSH) (describing burden shifting analysis in the claim objection process and holding that "[i]f the objector meets this burden, the

57.     Pursuant to Local Rule 3007-1(f), this Objection to the Disputed Claims does not prejudice the rights of the Debtor or of any other party in interest to object to such claims on any other grounds whatsoever.

## RESERVATION OF RIGHTS

58.     The Debtor expressly reserves the right to amend, modify, or supplement this Objection.  Should one or more of the grounds for this Objection be dismissed or overruled, the Debtors reserve the right to object to any Disputed Claim listed on Exhibit A to the Proposed Order on any other ground.  The Debtor also expressly reserves the right to commence additional proceedings with respect to the claims that are subject to this Objection, including but not limited to proceedings under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code

59.     The Debtor hereby reserves the right to object in the future to any of the proofs of claim listed in this Objection or the exhibits attached hereto on any ground, and to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended or newly filed claims. A separate hearing will be scheduled for any such objection.

60.     Without limiting the foregoing, the Debtor reserves the right to object to the Disputed Claims on any and all other bases, and nothing in the order prejudices such right. Local Rule 3007-1(e) provides that each "Objection shall be filed as either substantive or non-substantive, but not both." Nonetheless, "[a] particular claim may be subject to both a substantive and non-substantive Objection."

---

burden reverts to the claimant to prove the validity of the claim … [t]he burden of persuasion is always on the claimant.")(citations omitted).

## SEPARATE CONTESTED MATTERS

61.     To the extent that a response is filed regarding any claim that is the subject of this Objection and the Debtor is unable to resolve the response, each such claim, and the objection to each such claim asserted herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. Any order entered by the Court regarding an objection asserted in the Objection shall be deemed a separate order with respect to each claim.

## REPLIES TO RESPONSES

62.     Consistent with Local Rules 3007-1(h)(ii) and 9006-1(d), the Debtor may, at its option, file and serve a reply to a claimant's response, if any, no later than 4:00 P.M. (Prevailing Eastern Time) one day prior to the deadline for filing the agenda on any hearing to consider the Objection.

## COMPLIANCE WITH LOCAL RULE 3007-1

63.     To the best of the Debtor's undersigned counsel's knowledge and belief, this Objection and related **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D** and **Exhibit E** to the Proposed Order comply with Local Rule 3007-1.  To the extent that this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the undersigned believes such deviations are not material and respectfully requests that any such requirement be waived.

## NOTICE

64.     The Debtor has provided notice of this Objection to (i) the UST; (ii) the Secured Creditor Trust; (iii) counsel to the Secured Creditor Trust; (iv) the holders of the Disputed Claims; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 and Section 8.10 of the Plan.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit 2</u>, sustaining this Objection in all respects and granting such other and further relief as the Court may deem just and proper.

Dated:  August 10, 2018

Respectfully Submitted,

**LOWENSTEIN SANDLER LLP**
Wojciech F. Jung, Esq.
One Lowenstein Drive
Roseland, NJ  07068
Telephone:  (973-597-2500
Facsimile:  (973) 597-2400

*-and -*

**POLSINELLI PC**

<u>/s/ Justin K. Edelson</u>
Christopher A. Ward (DE 3877)
Justin K. Edelson (DE 5002)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Telephone:  (302) 252-0920
Facsimile:  (302) 252-0921
cward@polsinelli.com
jedelson@polsinelli.com

*Counsel to SRC Liquidation, LLC*