**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SRC Liquidation, LLC,[1] | Case No. 15-10541 (BLS) |
| Debtor. | **Re: Docket No. 698** |
| | **Hearing Date: September 26, 2018 at 10:30 a.m. (ET)**<br>**Objection Deadline: September 19, 2018 at 4:00 p.m. (ET)** |

**MOTION OF TAYLOR CORPORATION PURSUANT TO
11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S
JUNE 19, 2015 SALE ORDER AND INJUNCTION**

COMES NOW, Taylor Corporation, by and through its undersigned counsel, and moves the Court, pursuant to 11 U.S.C. §§ 105 and 363, to enforce the Court's June 19, 2015 Sale Order and Injunction [Docket No. 698], and enter an order requiring Tim Arnold and Joyce Arnold to immediately dismiss Taylor Corporation from the case styled *Tim & Joyce Arnold v. Taylor Corporation*, filed and currently pending in the United States District Court for the Northern District of Ohio, Western Division (Case No. 3:17-cv-01381) (the "Lawsuit"), with prejudice, and to cease and desist from (i) prosecuting Lawsuit against Taylor Corporation and (ii) asserting any additional claims against Taylor Corporation that relate to, arise from or concern the subject matter of The Lawsuit, including, without limitation, the termination of Plaintiffs' employment with Debtor The Standard Register Company on July 15, 2015.

---

[1]      The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

## INTRODUCTION

Taylor Corporation purchased substantially all of the assets of The Standard Register Company and affiliated Debtors (collectively referred to herein as "Standard Register"), the Debtors in these jointly administered Chapter 11 cases. Through a sale process approved by this Bankruptcy Court, Taylor Corporation acquired various Standard Register assets free and clear of all liens, claims, liabilities and encumbrances against Standard Register, other than liabilities expressly assumed under the relevant Asset Purchase Agreement (the "Asset Purchase Agreement"). This Bankruptcy Court approved the asset purchase transaction and the terms of the Asset Purchase Agreement in a sale order dated June 19, 2015 (the "Sale Order and Injunction") [Docket No. 698]. The sale of assets to Taylor Corporation closed on July 31, 2015 (the "Closing Date") [Docket No. 889].

In approving the sale, the Sale Order and Injunction found that the asset purchase transaction provided the best recovery that was practically possible for Standard Register's creditors. In exchange for the consideration provided by Taylor Corporation, the Asset Purchase Agreement clearly delineated which liabilities would be assumed by Taylor Corporation along with the assets that it would receive, as well as which liabilities were not undertaken by Taylor Corporation, which were designated as "Excluded Liabilities." "Excluded Liabilities" remained with the Debtors, and any amounts recoverable with respect to them attached to the sale proceeds. Thus, the court-approved bargain insulated Taylor Corporation from lawsuits by Standard Register's creditors based on Standard Register liabilities that Taylor Corporation did not assume. The Sale Order and Injunction accordingly enjoined such proceedings against Taylor Corporation and expressly reserved this Court's jurisdiction to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

2

Taylor Corporation would not have agreed to the sale had it not been provided the protections afforded by Section 363, namely that the sale be free and clear of all liens and claims (except for the claims it expressly agreed to assume), including "Excluded Liabilities." This Court approved this sale transaction, which set the framework for Taylor Corporation to begin operating a number of assets that had been purchased from Standard Register.

Faced with this bar to their claims against Taylor Corporation, in June 2017, more than two years after the Sale Order and Injunction was issued, two former employees of Standard Register who were discharged by Standard Register before the asset sale to Taylor Corporation, Tim and Joyce Arnold ("Plaintiffs"), filed a complaint in the United States District Court for the Northern District of Ohio, Western Division, against both Standard Register and Taylor Corporation asserting claims for liabilities that, under the Sale Order and Injunction, were retained by Standard Register and that are barred against Taylor Corporation.[2] Specifically, Plaintiffs' Complaint alleges employment law violations relating to the Plaintiffs' employment with Standard Register and the termination of their employment that <u>pre-date</u> the closing of the asset sale transaction described in the Asset Purchase Agreement.[3] Both Plaintiffs allege that they were employed for many years by Standard Register and discharged by Standard Register, allegedly in coordination with Taylor Corporation, "on July 15, 2015."[4]

---

[2]      In the original version of the Complaint filed on June 29, 2017, the second defendant was identified as "Taylor Communications of Minnesota (Taylor Communications, Inc.)." In October 2017, the Plaintiffs filed a First Amended Complaint, which substituted "Taylor Corporation" as the second defendant. Plaintiffs later, on August 13, 2018, filed a Second Amended Complaint. It names only a single defendant, Taylor Corporation, and does not assert claims against Standard Register. A copy of Plaintiffs' Second Amended Complaint is attached as Exhibit A.

[3]      *See* Second Amended Complaint, ¶¶ 42-43.

[4]      *Id.*

Also, in a change from earlier versions of their complaint in the Lawsuit, in the Second Amended Complaint, which was recently filed on August 13, 2018, Plaintiffs allege that "their claims are not subject to the Bankruptcy Sale Order and are therefore not discharged by the bankruptcy proceedings."[5] In support of this allegation, Plaintiffs contend that they did not receive notice of the bankruptcy proceedings or of the asset sale order, but those allegations are undermined by proofs of service in the record in this case, which confirm that both of the Plaintiffs were served with notice of the Standard Register bankruptcy proceeding and of the asset sale hearing.[6]

The law is settled, however, that Plaintiffs may not treat the Sale Order and Injunction as nonexistent and may not collaterally attack it in another court. *See In re NE Opco, Inc.*, 513 B.R. 871, 877 (Bankr. D. Del. 2014) ("This progression of cases leads the court to find that, even though Cenveo [the asset purchaser] may have committed a wrongdoing *after* the Court approved and entered the Sale Order but *prior* to the sale Closing, the Sale Order and the injunction contained therein bars Torres [an employee of the debtor] from asserting pre-closing claims against Cenveo related to Cenveo's impending purchase of assets from the Debtors."). As the United States Supreme Court explained in *Celotex Corp. v. Edwards,* 514 U.S. 300, 306 (1995), the rule is "well-established" that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Id.* (quotation marks omitted).

---

[5]    *Id.*, ¶ 3.

[6]    Copies of these materials are attached as Exhibits B (proof of service of Notice of Commencement of Chapter 11 Cases [Docket No. 132]) and C (proof of service of Notice of Sale, Sale Procedures, Auction and Sale Hearing [Docket No. 295]).

Accordingly, Taylor Corporation seeks entry of an Order directing Plaintiffs to cease prosecuting the Lawsuit and to dismiss with prejudice their claims against Taylor Corporation in the Lawsuit in accordance with the Sale Order and Injunction.

## BACKGROUND

### A.    BANKRUPTCY PROCEEDINGS.

1.    The Standard Register Company and certain of its affiliates (the "Debtors") filed for Chapter 11 protection on March 12, 2015, in the United States Bankruptcy Court for the District of Delaware. Also on March 12, 2015, the Debtors filed a motion seeking approval of an auction process to sell substantially all of the assets of the Debtors [Docket No. 23]. The terms of Taylor Corporation's bid, which was determined to be the highest and best bid at the auction, were incorporated into the Asset Purchase Agreement [Docket No. 698-1]. The Asset Purchase Agreement provided that Taylor Corporation would assume only certain specifically-identified liabilities (i.e. the "Assumed Liabilities"), while all other liabilities would be retained by the Debtors. Asset Purchase Agreement, §§ 2.3(a) and 2.4 [Docket No. 698-1].

2.    On June 19, 2015, this Court entered the Sale Order and Injunction, finding that the bid submitted by Taylor Corporation and memorialized by the Asset Purchase Agreement was the successful bid (Sale Order and Injunction, ¶ E), and that "the APA constitutes the highest and best offer for the transferred assets." *Id.*, ¶ J. The Court found also that Taylor Corporation "would not have entered into the APA and would not consummate the transactions contemplated hereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Transferred Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever (subject only, in the case of the Buyers with respect to the Transferred Assets, to the Permitted Encumbrances and the Assumed Liabilities)." *Id.*, ¶ S. Accordingly, the Sale Order

5

and Injunction approved the sale of substantially all of Standard Register's assets "free and clear of all obligations and Encumbrances … of any kind or nature whatsoever, including without limitation, rights or claims … arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates …." *Id.*, ¶ 7. Indeed, the Sale Order and Injunction directed that all Encumbrances would "attach to the cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force, and effect which they now have as against the Transferred Assets, subject to any claims and defenses the Debtors may possess thereto." *Id.* It also enjoined claims against the asset purchaser, Taylor Corporation, by "all persons and entities, including … employees" with interests "of any kind or nature whatsoever in the Transferred Assets." *Id.*, ¶ 12. Numerous other provisions in the Sale Order and Injunction reinforce that Taylor Corporation is not liable for claims, like Plaintiffs', arising out of the Transferred Assets. *Id.*, ¶¶ BB, 20-22, 54, 73.

3.      Furthermore, this Court found as fact that the Asset Purchase Agreement was "negotiated, proposed, and entered into by the Debtors and the Buyers, without collusion, in good faith, and from arms-length bargaining positions." *Id.*, ¶ L. Indeed, the Court found that Taylor Corporation and its affiliates "are good faith purchasers for value and, as such, are entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law." *Id.*, ¶ M.

4.      Additionally, according to Section 2.4(e) of the Asset Purchase Agreement, "any and all liabilities in any way atrributable to (i) the employment or service of current or former employees, directors or consultants of Sellers or any current or former Subsidiary of Sellers who is not a Transferred Employee, regardless of whether such Liability is attributable to the period before, on or after the Closing Date" are defined as "Excluded Liabilities" that were not

purchased or assumed by Taylor Corporation. Asset Purchase Agreement § 2.4; *see also* APA Section 5.5(c) and (h).

5.      Taylor Corporation closed on its purchase under the Asset Purchase Agreement on July 31, 2015 [Docket No. 889].

**B.      PLAINTIFFS' LAWSUIT.**

6.      On or about June 29, 2017, Plaintiffs filed an action in the United States District Court, Northern District of Ohio, Western Division, against "Standard Register International, Inc." (which was one of the Debtors in this proceeding) and "Taylor Communications of Minnesota" alleging that the Plaintiffs had been employed by and discharged by Standard Register, and further alleging that "Taylor Communications of Minnesota" was liable to the Plaintiffs either as a joint employer with Standard Register or as a successor to Standard Register. Plaintiffs' action was assigned Court File No. 3:17-cv-1381. In said action, Plaintiffs asserted claims against both defendants under the Family and Medical Leave Act as well as under Ohio law.

7.      On October 19, 2017, Plaintiffs filed their First Amended Complaint in the Lawsuit. In it, Plaintiffs asserted the same set of claims against "Standard Register International, Inc." and against "Taylor Corporation" as had been in the original Complaint, but they did not mention the Standard Register bankruptcy proceeding or the Sale Order and Injunction. Later, on May 8, 2018, Plaintiffs voluntarily dismissed Standard Register International, Inc. from the Lawsuit, which left Taylor Corporation, the asset purchaser and not a debtor, as the sole defendant.

8.      On August 13, 2018, Plaintiffs filed their Second Amended Complaint in the Lawsuit.[7] It asserts the same four counts against Taylor Corporation. The claims in question are alleged to be based upon acts that occurred during the Plaintiffs' employment with The Standard Register Company or in connection with their termination of employment by The Standard Register Company, which occurred on July 15, 2015,[8] more than two weeks before July 31, 2015, when Taylor Corporation closed on its purchase of assets of the Debtors pursuant to the terms of the Sale Order and Injunction.

9.      As noted above, in the Second Amended Complaint, in a change from their earlier pleadings in the Lawsuit, the Plaintiffs allege specifically that "their claims are not subject to the Bankruptcy Sale Order and are therefore not discharged by the bankruptcy proceedings."[9]

10.      Plaintiffs' Second Amended Complaint asserts claims against Taylor Corporation that are barred in their entirety by the Sale Order and Injunction. In the Sale Order and Injunction, this Court retained jurisdiction "to interpret, implement, and enforce the provisions of this Order, and … to protect the Buyers against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the transferred assets or transferred contracts, or (iii) any Encumbrances asserted on or in the Debtors or the Transferred Assets, of any kind or nature whatsoever." (Sale Order and Injunction, ¶ 73.) Accordingly, Taylor Corporation seeks relief directly from this Court. Taylor Corporation intends to move the United States District Court for the Northern District of Ohio, Western Division, to stay the Lawsuit pending this Court's ruling on the instant motion.

---

[7]      A copy is attached as Exhibit A.

[8]      *Id.*, ¶¶ 42-43.

[9]      *Id.*, ¶ 3.

11.     Plaintiffs allege in their Second Amended Complaint that each of them were employed for many years by The Standard Register Company.[10] The Second Amended Complaint also alleges that "Taylor Corporation purchased substantially all of the assets of Standard Register through a Chapter 11 bankruptcy reorganization."[11] The Second Amended Complaint likewise does not contest the point that the Plaintiffs were discharged from their employment with Standard Register before the closing of the sale of assets of Standard Register to Taylor Corporation, which occurred on July 31, 2015.[12] While the Plaintiffs allege generally that Taylor Corporation was involved along with Standard Register in reviewing information about the Plaintiffs and in making the decision to discharge them from employment with The Standard Register Company on July 15, 2015, *see, e.g.*, Second Amended Complaint, ¶ 71, the Second Amended Complaint does not allege any facts that occurred after the closing on July 31, 2015, as a basis for any claim against Taylor Corporation. In other words, all of the allegations of conduct by Taylor Corporation purportedly giving rise to the Plaintiffs' claims in the Lawsuit are based on events that occurred prior to the closing of the asset sale transaction.

12.     The Second Amended Complaint asserts four claims against Taylor Corporation, two under the federal Family and Medical Leave Act (FMLA) and two counts under Ohio law. All of these counts seek relief based on the Plaintiffs' terminations, which occurred on July 15, 2015.[13] The FMLA claims are invalid because Plaintiffs were not ever actually employed by Taylor Corporation, as Taylor Corporation acquired assets of their former employer Standard Register only after the Plaintiffs had been discharged by Standard Register. *Braden v. County of*

---

[10]     *Id.*, ¶ 2.

[11]     *Id.*, ¶ 20.

[12]     *See id.*, ¶¶ 42-43.

[13]     *See*, *e.g., id.* at ¶¶ 84, 90, 98 & 107.

*Washington,* No. 08-574, 2010 WL 1664895, at *2-3 (W.D. Pa. Apr. 23, 2010) (holding that a non-employee cannot state a claim for FMLA interference or retaliation because both causes of action presuppose an employment relationship with the defendant).

## ARGUMENT

13.    The Lawsuit as reflected in their current Second Amended Complaint represents an impermissible collateral attack on this Court's Sale Order and Injunction. Plaintiffs may not rewrite the Court-approved sale to a good faith purchaser by simply ignoring the Sale Order and Injunction. As the Supreme Court noted in its *Celotex* decision: "If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law." *Celotex,* 514 U.S. at 313. These settled principles bind the Lawsuit. Plaintiffs, whether they were known or unknown creditors at the time, are subject to the terms of the Court's Sale Order and Injunction, and are barred by this Court's injunction from pursuing the Lawsuit against Taylor Corporation because their claims constitute "Excluded Liabilities."

## A.    THIS COURT HAS JURISDICTION TO ENFORCE ITS SALE ORDER AND INJUNCTION AGAINST PLAINTIFFS.

14.    It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *See Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009); *In re Lazy Days' RV Ctr. Inc.,* 724 F.3d 418, 423 (3d Cir. 2013) (noting that the Bankruptcy Court was "well suited to provide the best interpretation of its own order"); *In re Cont'l Airlines, Inc.,* 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have

specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order."). In addition, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and accordingly "codif[ies] the bankruptcy court's inherent power to enforce its own orders." *Back v. LTV Corp. (In re Chateaugay Corp.),* 213 B.R. 633, 640 (S.D.N.Y. 1997).

15.    Consistent with these authorities, this Court retained subject matter jurisdiction to enforce its Sale Order and Injunction. *See* Sale Order and Injunction ¶ 73. Similarly, when faced with lawsuits brought against New GM, the purchaser of the assets of the bankrupt Old GM, based on liabilities that had been excluded from the relevant sale order and asset purchase agreement, the Bankruptcy Court for the Southern District of New York enforced the sale order and injunction. *See In re Motors Liquidation Co.,* No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) (ordering plaintiffs to dismiss with prejudice civil actions against New GM that were barred by the sale order and injunction).

16.    Contrary to Taylor Corporation's bargained-for rights under the APA and the Court's Sale Order and Injunction, Plaintiffs have brought the Lawsuit against Taylor Corporation for actions taken by Standard Register, in the course of Plaintiffs' employment relationship with Standard Register, in the United States District Court for the Northern District of Ohio, Western Division. Plaintiffs may not simply ignore the Court's injunction through a collateral attack in another court, especially since the Sale Order and Injunction is a final order no longer subject to appeal. *See Celotex Corp.,* 514 U.S. at 306, 313 ("'[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed . . .'" (quoting *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.,* 445

U.S. 375, 386 (1980))); *Pratt v. Ventas, Inc.,* 365 F.3d 514, 520 (6th Cir. 2004) (applying

doctrine to dismiss suits filed in violation of injunction in confirmation order entered by

bankruptcy court); *In re McGhan,* 288 F.3d 1172, 1180-81 (9th Cir. 2002) (applying doctrine to

enforce discharge order in favor of debtors and holding that only the bankruptcy court could

grant relief from the order); *see also Spartan Mills v. Bank of Am. Ill.,* 112 F.3d 1251, 1255 (4th

Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and clear

of liens).

**B.      TAYLOR CORPORATION CANNOT BE HELD LIABLE FOR STANDARD
         REGISTER'S ALLEGED CONDUCT, EITHER DIRECTLY, AS A JOINT
         EMPLOYER, OR AS A SUCCESSOR TO STANDARD REGISTER.**

        17.     As described above, and by Plaintiffs' own admission, Plaintiffs' employment

with Standard Register was terminated effective July 15, 2015, prior to the closing of the Asset

Purchase Agreement on July 31, 2015. *See* Second Amended Complaint at ¶¶ 2, 42-43 (alleging

that Plaintiffs had many years of service as employees of Standard Register and were terminated

from that employment on July 15, 2015). Thus, it is not practically possible that Plaintiffs were

ever employees of Taylor Corporation. *Cf. Carcasole-Lacal v. Am. Airlines, Inc.,* No.

CIV.A.CV-02-4359 DGT, 2003 WL 21525484, at *6 (E.D.N.Y. July 8, 2003) (dismissing

employment discrimination claims against asset purchaser where plaintiff was never employed

by purchaser), *aff'd,* 04-5082-CV, 2005 WL 1587303 (2d Cir. July 7, 2005).

        18.     Furthermore, as stated above, the Sale Order and Injunction provided for

Standard Register's retention of liabilities related to Plaintiffs' employment, which attached to

the proceeds of the sale. The assets purchased by Taylor Corporation were transferred to Taylor

Corporation free and clear of liabilities except for liabilities expressly assumed in the Asset

Purchase Agreement. *See Castillo v. General Motors Co. (In re Motors Liquidation Co.),* No.

09-50026 (REG), 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012) (entering judgment in

favor of New GM and noting that "[t]he most critical language appears in the Sale Agreement's

definition of 'Assumed Liabilities'"), *aff'd,* 500 B.R. 333, 335 (S.D.N.Y. 2013). Under the

Bankruptcy Code, employment discrimination and similar claims are "interests" in property that

may be excluded from the sale of assets to a purchaser under Section 363. *In re Trans World*

*Airlines, Inc.,* 322 F.3d 283, 289-90 (3d Cir. 2003).

19.     Taylor Corporation cannot be held liable for Standard Register's alleged

conduct, either directly, as an alleged "single enterprise" or "joint employer" with Standard

Register, or as an alleged successor to Standard Register. In the Sale Order and Injunction, this

Court found as fact that:

> The Buyers are not "insiders" or "affiliates" of the Debtors, as those terms are
> defined in the Bankruptcy Code, and there has been no common identity of
> incorporators or directors existing between the Buyers and the Debtors. The
> transfer of the Transferred Assets and the assumption of the Assumed Liabilities
> (including any individual elements of the Sale Transaction) to the Buyers, except
> as otherwise set forth in the APA, does not, and will not, subject the Buyers to
> any liability whatsoever, with respect to the operation of the Debtors' businesses
> prior to the closing of the Sale Transaction or by reason of such transfer under
> the laws of the United States, any state, territory, or possession thereof, or the
> District of Columbia, based, in whole or in part, directly or indirectly, in any
> theory of law or equity including, without limitation, any laws affecting antitrust,
> successor, transferee, or vicarious liability. Pursuant to the APA, the Buyers are
> not purchasing all of the Debtors' assets in that, among other things, the Buyers
> are not purchasing any of the Excluded Assets or assuming the Excluded
> Liabilities, and the Byers are not holding themselves out to the public as a
> continuation of the Debtors. The Sale Transaction does not amount to a
> consolidation, merger or de facto merger of the Buyers and the Debtors and/or
> the Debtors' estates. There is not substantial continuity between the Buyers and
> the Debtors, and there is no continuity of enterprise between the Debtors and the
> Buyers. The Buyers are not a mere continuation of the Debtors or the Debtors'
> estates, and the Buyers do not constitute successors to the Debtors or the
> Debtors' estates.

*Id.*, ¶ BB.

20.     Plaintiffs should therefore be ordered to dismiss their claims against Taylor

Corporation because they violate the Sale Order and Injunction.

C.    **PLAINTIFFS' FEDERAL EMPLOYMENT LAW CLAIMS AGAINST TAYLOR CORPORATION DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S SALE ORDER AND INJUNCTION.**

21.    According to the Third Circuit, the inclusion of employment law claims in Section 363's definition of "interests" (which may therefore be excluded from an asset sale) serves two purposes. First, it supports the Bankruptcy Code priority scheme by ensuring that similarly situated creditors are treated the same. *See Trans World Airlines,* 322 F.3d at 292 ("To allow the claimants to assert successor liability claims against [the purchaser] while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme."). Second, by protecting a purchaser from these liabilities, it maximizes the price purchasers are willing to pay for assets and accordingly benefits all creditors. *Id.; see also Douglas v. Stamco,* 363 F. App'x 100, 102-03 (2d Cir. 2010) ("Moreover, to the extent that the 'free and clear' nature of the sale . . . was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors."). To allow a claimant to "use the transfer as a basis to assert claims against the Prevailing Bidder arising from the Debtors' presale conduct" would frustrate the purposes of a sale order and of Section 363. *In re Dura Auto. Sys., Inc.,* No. 06-11202 KJC, 2007 WL 7728109, at *95 (Bankr. D. Del. Aug. 15, 2007).

22.    Thus, courts have routinely relied on the Third Circuit's rationale in *Trans World Airlines* and rejected employment discrimination and similar employment claims arising from pre-sale conduct and events. *See, e.g., In re NE Opco, Inc.*, 513 B.R. 871, 876-77 (Bankr. D. Del. 2014) (citing *Trans World Airlines* and holding "that pre-closing claims against [the asset purchaser] related to the sale of the assets do not survive the closing," and accordingly are

14

"barred by the Sale Order and enjoined from continuing against" the asset purchaser); *Re:*

*Christ Hosp.*, Case No. 12-12906 TBA, 2014 WL 2135942, at *4 (Bankr. D.N.J. 2014) ("[t]his

Court believes *Trans World Airlines* and its rationale control the situation *sub judice* and that

protection afforded by § 363 in the injunction contained in the sale order prevent plaintiff's

claims being pursued against [the asset purchaser]"); *Maguire v. Capmark Fin., Inc.,* No.

CIV.A. 09-0692, 2010 WL 5067672, at *2 (E.D. Pa. Dec. 6, 2010) (holding that "Maguire's

claim for discrimination is an interest in property within the meaning of the Bankruptcy Code

because it arises from the sale of business assets to Berkadia. The Bankruptcy Court's order

approving the sale of the MSB business 'free and clear' of successor liability precludes Maguire

from asserting his discrimination claim against Berkadia" (citations omitted)); *Dunope v.*

*Weirton Steel Corp.,* No. CA 01-2017, 2012 WL 366595, at *2 (W.D. Pa. Feb. 2, 2012);

*Faulkner v. Bethlehem Steel/Int'l Steel Grp.,* No. 2:04-CV-34 PS, 2005 WL 1172748, at *3

(N.D. Ind. Apr. 27, 2005) (applying *Trans World Airlines* where Plaintiffs' employment was

terminated due to bankruptcy filing and plaintiff was not reemployed following asset sale). The

operative fact here is that Plaintiffs' claims against Taylor Corporation "arise from the property

being sold," *Trans World Airlines,* 322 F.3d at 290, because they would not exist against Taylor

Corporation but for its purchase of the assets from Standard Register. *Maguire v. Capmark Fin.,*

*Inc.,* 2010 WL 5067672, at *2.

    23.    In the *Christ Hospital* case, in which that court recently enforced the terms of a

similar bankruptcy court sale order, the court addressed and decided an issue that may arise in

this case, i.e., whether the bankruptcy court's sale order trumped language in the FMLA that

provides for liability to a successor of the employer in certain settings. Distinguishing an earlier

case (*Miller v. Level 3 Communications, LLC*, 2005 WL 1529419 (D.N.J. June 2005), the *Christ*

*Hospital* court held that *Trans World Airlines* and the protection afforded by § 363, as well as the injunction contained in the sale order in that case, barred the employee in that case from pursuing her FMLA successor liability theory against the asset purchaser. *Id.* at 3.

## CONCLUSION

24.     Taylor Corporation has no liability for the Plaintiffs' employment claims in the Lawsuit because such claims constitute "Excluded Liabilities" that were released and enjoined by the Sale Order and Injunction. The exclusion of such liabilities from Taylor Corporation's purchase was the product of a negotiated, arm's-length bargain that was approved by this Court pursuant to a final order. Plaintiffs cannot now simply ignore the Sale Order and Injunction by continuing to pursue their claims against Taylor Corporation in the Lawsuit. Accordingly, the Court should enforce the terms of its Sale Order and Injunction by ordering Plaintiffs to promptly dismiss all of their claims against Taylor Corporation.

## NOTICE

25.     Notice of this Motion has been provided to the Plaintiffs in the Lawsuit, counsel to the Plaintiffs in the Lawsuit, counsel to the Debtors, counsel to the GUC Trust, the GUC Trustee, counsel to the Secured Creditor Trust, the Secured Creditor Trust, the Office of the United States Trustee, and all parties receiving service via this Court's electronic filing system ("ECF"). Taylor Corporation respectfully submits that no other or further notice is required under the facts and circumstances of this Motion.

## NO PREVIOUS REQUEST

26.     No previous request for the relief sought herein, i.e., an order enforcing the injunction provision of the Sale Order and Injunction, has been made by Taylor Corporation to this or any other court, except as follows:

- In May 2018, Taylor Corporation filed in the U.S. District Court for the Northern
  District of Ohio, Western Division, a motion for judgment on the pleadings,
  which challenged the allegations and claims stated in the First Amended
  Complaint in the Lawsuit, which was then the current version of the complaint but
  which has since been supplanted by the Second Amended Complaint. In an order
  from the bench on August 7, 2018, which was subsequently confirmed in a
  written order dated August 8, 2018, a copy of which is attached as Exhibit D, the
  U.S. District Court for the Northern District of Ohio denied said motion. In
  announcing its ruling, the Court stated that the Plaintiffs' arguments in opposition
  to the motion for judgment on the pleadings raised issues that could not be
  decided based only on the allegations in the then-current pleadings and the
  matters in the record in the Standard Register bankruptcy court proceeding. The
  court also stated that Taylor Corporation could renew its motion at a later time,
  such as on a motion for summary judgment.

  Since the date of that order, the Plaintiffs have filed a Second Amended
  Complaint in the Lawsuit, which in some respects is quite different from the First
  Amended Complaint. In particular, the Second Amended Complaint alleges
  specifically that the Plaintiffs' "claims are not subject to the Bankruptcy Sale
  Order and are therefore not discharged by the bankruptcy proceedings." Second
  Amended Complaint, ¶ 3. Thus, with their recently filed pleading, Plaintiffs in the
  Lawsuit are specifically challenging the application of the Sale Order and
  Injunction issued by this Court to their claims. In support of that theory, Plaintiffs
  allege in the Second Amended Complaint that they did not receive notice of the

17

Standard Register bankruptcy proceeding or of the asset purchase agreement and related sale hearing. *Id.* at ¶¶ 16, 29-33. These allegations fail to take account of the record in this case, which includes both proof of service of notice of the Standard Register Chapter 11 proceeding, as well as proof of service of notice of the Asset Purchase Agreement and the related sale hearing upon both of the Plaintiffs.[14]

WHEREFORE, Taylor Corporation respectfully requests that the Court: (i) enter an order substantially in the form set forth as Exhibit E, granting the relief sought herein; and (ii) granting Taylor Corporation such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  September 5, 2018<br>Wilmington, DE | **AUSTRIA SHRUM LLC** |

*/s/ Matthew P. Austria*
Matthew P. Austria (DE No. 4827)
1201 N. Orange Street, Suite 502
Wilmington, Delaware 19801
Telephone: (302) 521-5197
Facsimile: (302) 543-6386
E-mail: maustria@austriashrum.com

-and-

**GRAY, PLANT, MOOTY,
MOOTY & BENNET, P.A.**
Phillip Bohl (MN No. 139191)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3019
Facsimile:  (612) 632-4019
Email: phillip.bohl@gpmlaw.com

-and-

---

[14]     *See* Exhibits B and C.

**SNYDER & BRANDT, P.A.**
Craig A. Brandt (MN No. 214036)
Canadian Pacific Plaza, Suite 2550
120 South Sixth Street
Minneapolis, MN 55402
Telephone: 612-787-3105
Facsimile: 612-333-9116
Email: craig.brandt@snyderattorneys.com

*Counsel to Taylor Corporation*