# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Tim & Joyce Arnold, | * | Case No. 3:17-cv-01381 |
| Plaintiffs, | * | |
| | * | Judge Jack Zouhary |
| v. | * | |
| Taylor Corporation, | * | **SECOND AMENDED COMPLAINT** |
| | * | |
| Defendant. | * | **JURY DEMAND ENDORSED HEREON** |
| | * | |

Now come Timothy Arnold ("Mr. Arnold") and Joyce Arnold ("Mrs. Arnold") (together hereinafter "Plaintiffs"), through undersigned counsel, and for their Second Amended Complaint, allege as follows:

## INTRODUCTION

1.    This is an action to remedy the violations of the rights of Plaintiffs by Defendant Taylor Corporation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Ohio law prohibiting disability discrimination under Ohio Revised Code § 4112, *et seq.* ("Chapter 4112").

2.    After over 35 years of loyal service, Mr. and Mrs. Arnold were jointly terminated by The Standard Register Company[1] (hereinafter "Standard Register") and Taylor Corporation purportedly because Defendant Taylor Corporation could not afford to rehire them even though

---

[1] Upon information and belief, the Standard Register Company is the ultimate parent company comprised of the following entities reorganized under Chapter 11 of the Bankruptcy Code as more fully explained below as follows: Standard Register Holding Company, Standard Register Technologies, Inc., Standard Register International, Inc., iMedConsent, LLC, Standard Register of Puerto Rico Inc., Standard Register Mexico Holding Company, Standard Register Holding, S. de R.L. de C.V., Standard Register de Mexico, S. de R.L. de C.V., Standard Register Servicios, S. de R.L. de C.V., and Standard Register Technologies Canada ULC (collectively Standard Register Debtors).

# EXHIBIT A

they were both subsequently replaced shortly after their termination by individuals who did not exercise their FMLA rights and are neither disabled or perceived to be disabled by Defendant.

3.     Importantly, Taylor Corporation purchased substantially all of the assets of Standard Register through a chapter 11 bankruptcy reorganization. However, Plaintiffs did not receive actual notice or notice reasonably calculated in all relevant respects to apprise them of their rights under the bankruptcy code during the bankruptcy reorganization proceedings. As such, they were not afforded due process, so their claims are not subject to the Bankruptcy Sale Order and are therefore not discharged by the bankruptcy proceedings.

## JURISDICTION AND VENUE

4.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FMLA, and 28 U.S.C. §1367 for violations of state law so related to the claims in the action within the court's original jurisdiction that together they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, Western Division.

## GENERAL FACTUAL ALLEGATIONS

6.     Plaintiffs are persons residing in Mercer County and were jointly employed by Standard Register and Taylor Corporation at the plant located in Coldwater, Ohio other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before their FMLA-related absences were held against them in Defendant's joint decision to terminate and not rehire them.

7.     At all times relevant, Standard Register was a domestic for profit corporation established and organized under the laws of Ohio with its principal place of business located in Dayton, Ohio, and engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiffs' worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

8.     Defendant Taylor Corporation[2] is a foreign for-profit corporation established and organized under the laws of Minnesota, but authorized to and regularly conducts business in Ohio.

9.     As more fully explained below, Defendant Taylor Corporation was, at all times relevant, a joint "employer" under federal and Ohio law when it took an active role in jointly deciding to terminate Plaintiffs after reviewing Plaintiffs' medical records with personnel of Standard Register and used their serious health conditions and/or disabilities as described herein as a negative factor in their employment, which lead to the joint decision to terminate Plaintiffs' employment.

10.     As such, Defendant either constitutes a single integrated employer of Plaintiffs or it was the joint employer of Plaintiffs.

11.     In the alternative, Defendant Taylor Corporation is also liable as a successor in interest.

---

[2] Taylor Communications, Inc. was the incorrect entity name previously named in the Complaint filed on June 29, 2017. After further investigation of the various relationships among the entities and the corporate structure immediately following the telephonic hearing on October 12, 2017, Taylor Communications is a registered trade name by Standard Register, which further complicated the correct entity names and is further justification for replacing Taylor Communications, Inc. with Taylor Corporation given they are all intricately tied to Taylor Corporation.

**Facts Pertinent to the Bankruptcy Proceedings, the sale of substantially all of Standard Register's Assets to Taylor Corporation, Taylor Corporation's Joint Employment of Plaintiffs, and lack of notice to Plaintiffs with respect to the bankruptcy proceedings**

12.     To provide context, on or about March 12, 2015, Standard Register filed a petition for bankruptcy under Chapter 11 to reorganize its assets in the U.S. Bankruptcy Court for the District of Delaware (hereinafter "Petition Date").

13.     On May 8, 2015, pursuant to Bankruptcy Rule 3003(c)(2), which outlines the procedures for filing proof of claims or equity security interests in Chapter 9 Municipality or Chapter 11 Reorganization Cases, the U.S. Bankruptcy Court for the District of Delaware set bar dates to any creditor and/or party in interest to file claims, among other relief, against Standard Register that arose, or is deemed to have arisen, prior to March 12, 2015 and whose claim is either (i) not listed on the Debtors' schedules of assets and liabilities (collectively, the "Schedules") or (ii) is listed on the schedules as disputed, contingent or unliquidated.

14.     The May 8, 2015 Order required that Standard Register send Notice of the bankruptcy proceedings to all parties who had potential claims against the Debtors (i.e. Standard Register) on or before March 12, 2015, so that all proofs of claims could be filed on or before July 8, 2015 at 5:00 pm (hereinafter "General Bar Date") in order to be covered by any discharge order in the bankruptcy proceedings.

15.     In the same Order, it required that all claims deemed to have arisen on or prior to the Petition Date under section 503(b)(9) of the Bankruptcy Code must be filed on or prior to June 9, 2015 at 5:00 pm (hereinafter the "503(b)(9) Bar Date").

16.     However, as more fully explained below, Plaintiffs did not receive actual notice or notice reasonably calculated in all relevant respects to apprise them of their rights under the bankruptcy code during the bankruptcy reorganization proceedings.

17. During 2015, as part of the acquisition process, Standard Register and Taylor Corporation began actively making joint decisions of the business operations, including, but not limited to the employment decisions of their employees, including Plaintiffs.

18. To that end, upon information and belief that will be more fully developed throughout discovery, there was a group meeting or several group meetings believed to be held at some point beginning in May through June, 2015, whereby Plaintiffs, other employees, managerial employees, and plant managers gathered to discuss some changes that would be implemented by Taylor Corporation.

19. Specifically, Plaintiff Mr. Arnold and other employees were told that their personnel files, including medical information and other personal information, had been sent to the Dayton headquarters. At that time, they were told by supervisory personnel that the request to review their personnel files likely came from the new company taking over the operations of Standard Register.

20. Subsequently, on June 19, 2015 (hereinafter "Bankruptcy Sale Order Date"), the U.S. Bankruptcy Court for the District of Delaware approved of the sale of substantially all of the assets of Standard Register to Taylor Corporation (hereinafter "Bankruptcy Sale Order"). The Bankruptcy Sale Order referenced that all claims as of the Petition Date of March 12, 2015 and those within the asset purchase agreement as of June 19, 2015 between Standard Register and Taylor Corporation be included in the bankruptcy proceedings.

21. Thereafter, Taylor Corporation continued ramping up the implementation process and continued exercising control over employment decisions with respect to the operations of Standard Register, including Plaintiffs.

22.     For example, during June, 2015 at the Coldwater, Ohio plant, Plaintiff Mr. Arnold attended and was present during a "welcome" video presentation/conference call (that appeared to be a recording rather than a live presentation) with some of his co-workers during third shift.

23.     Upon information and belief, during this recorded presentation, Deb Taylor of Taylor Corporation explained to him and other co-workers present during the recording that Taylor Corporation had purchased Standard Register.

24.     As a second example of Taylor Corporation's joint conduct, as part of the implementation process, but prior to the asset sale transaction, "Taylor Corporation concluded that it would not be able to offer employment" to all persons employed by Standard Register.

25.     At that time, unbeknownst to Plaintiffs, Taylor Corporation was provided a spreadsheet with performance-related information concerning the employees, including Plaintiffs, listed on the payroll of Standard Register.

26.     Taylor Corporation and Standard Register reviewed the information contained in Plaintiffs' personnel files, including the medical history of Plaintiffs revealing their serious health conditions, absences related to their use of FMLA, their disabilities, and any other absences related to their disabilities.

27.     Based on this information, and "working with the Standard Register Company," Taylor Corporation and Standard Register jointly decided to terminate Plaintiffs. In making these decisions about Plaintiffs, Taylor Corporation had "considered input from [Standard Register's] management team, information about the job performance of plant employees, as well as the business needs for the future."

28.     As such, even though Taylor Corporation did not have Plaintiffs listed on its payroll, Defendant Taylor Corporation was still a joint "employer" for purposes of the FMLA and

Ohio law because it had a direct, ongoing employment relationship with Standard Register through the bankruptcy proceedings, and, during all times relevant, retained sufficient control of the terms and conditions of employment of the employees, including Plaintiffs, who were jointly employed by Standard Register and Taylor Corporation in their joint decision to terminate Plaintiffs.

29.    Importantly, Plaintiffs still did not receive actual notice or notice reasonably calculated in all relevant respects to apprise them of their rights under the bankruptcy code to file a proof of claim and/or make an objection in two main respects. As such, their employment discrimination claims are not subject to the bankruptcy proceedings.

30.    First, Plaintiffs were known claimants of Standard Register because Standard Register and Taylor Corporation jointly reviewed their personnel files beginning in or around May, 2015 and, at some point thereafter, in concert with managerial employees of Standard Register and Taylor Corporation, jointly selected them to be terminated them because of their attempt to and/or exercise of their FMLA rights and/or because of their disabilities, actual or perceived,  and replaced them with individuals who did not exercise their FMLA rights and are neither disabled or perceived to be disabled by Defendant.

31.    As such, known claimants/creditors must receive actual notice in order for their claims to be subject to the bankruptcy sale order and dischargeable in bankruptcy.

32.    Second, in the event it is determined that Plaintiffs were not known creditors, the Notice that was supposed to be sent to all claimants, including Plaintiffs, failed to conform with generally accepted due process requirements because it was not reasonably calculated under all circumstances to apprise Plaintiffs of the bankruptcy proceedings and therefore did not afford them an opportunity to be heard and present their claims.

33.     As a result, Plaintiffs were not afforded the due process required, so their claims are not subject to the Bankruptcy Sale Order and are therefore not discharged by the bankruptcy proceedings.

34.     Indeed, during this time period as part of the chapter 11 bankruptcy proceedings, Standard Register and Taylor Corporation shared the same matters governing the essential terms and conditions of Plaintiffs' employment, including but not limited to (1) interrelation of operations (i.e. purchasing the assets of Standard Register and reviewing personnel files in the joint decision to terminate Plaintiffs), (2) common management (i.e. co-determining who would be terminated, including Plaintiffs), (3) centralized control of labor relations and personnel (i.e. exchanging personnel data and co-managing labor relations when evaluating employees' prospects of remaining with or being terminated by Taylor Corporation), and (4) common ownership and financial control (i.e. the Bankruptcy Sale Order approving the sale of substantially all of the assets of Standard Register to Taylor Corporation).

35.     Furthermore, during all relevant times, Defendant Taylor Corporation jointly maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including the promulgation and enforcement of policies affecting FMLA medical leave and other matters relevant to this action because it based its decision to terminate Plaintiffs off of information contained in their personnel files, including their medical history, given they were terminated for "attendance" when absences related to attendance were directly related to their FMLA rights and/or their disabilities.

36.     Indeed, based on the information revealed after the joint review of Plaintiffs' medical records and other personal information contained in their personnel files, and "working with the Standard Register Company," Taylor Corporation and Standard Register jointly decided

to terminate Plaintiffs. In making these decisions about Plaintiffs, Taylor Corporation had "considered input from [Standard Register's] management team, information about the job performance of plant employees, as well as the business needs for the future."

37.     As such, Defendant Taylor Corporation was a joint "employer" within the FMLA under 29 U.S.C. § 2611(4)(A)(ii)(I) and Ohio law.

**Facts Pertinent to Taylor Corporation's Liability as a Successor in Interest**

38.     Further stating, in the alternative, Defendant Taylor Corporation was at all times relevant an "employer" under 29 U.S.C. § 2611(4)(A)(ii)(II) as a successor in interest, as defined by 29 CFR § 825.107 for several reasons.

39.     Specifically, Defendant Taylor Corporation meets all of the following factors of the successor in interest test when analyzed under the totality of the circumstances, including but not limited to:

a.     (1) there is substantial continuity of the similar if not the same business operations. For example, prior to the bankruptcy proceedings, Standard Register operated as a commercial printing business. After the acquisition, Taylor Corporation maintained (and still maintains) the same printing operations (now known as Taylor Communications, Inc., which is a wholly-owned subsidiary of Taylor Corporation)

b.     (2) Defendant Taylor Corporation uses the similar or same plant. For example, prior to the bankruptcy proceedings, Standard Register maintained its Coldwater, Ohio plant located at 515 W. Sycamore St., Coldwater, Ohio 45828. After the bankruptcy proceedings, Taylor Corporation maintains the same or similar plant at the same address.

c.     (3) there is a similar or the same continuity of the workforce. For example, upon information and belief, prior to the bankruptcy proceedings, Standard Register maintained the same or similar continuity of employees. After the bankruptcy proceedings, upon information and belief, Taylor Corporation maintains the same or similar continuity of workforce with the same or similar job classifications, job duties, and/or personnel (aside from the eight that were terminated).

d.     (4) the jobs and working conditions of its employees are similar to, if not the same as, its predecessor. For example, prior to the bankruptcy proceedings, Standard Register operated as a commercial printing business. After the bankruptcy proceedings, Taylor Corporation still operates the same or similar commercial printing operations (via Taylor Communications, Inc., its wholly-owned subsidiary, which was formed on or about May 25, 2016 to continue the Standard Register operations under the new brand name) that can be found on its website.

e.     (5) the supervisory personnel of Defendant Taylor Corporation and its predecessor are similar, if not the same. For example, prior to the bankruptcy proceedings, Standard Register had certain supervisory personnel on its staff, including, but not limited to Daniel Driscoll, David Clapper, Andy Smith, Keith Young, Bill Key, Julie Geier, and/or Dane Riesen. After the bankruptcy proceedings, Taylor Corporation, upon information and belief, maintained the same or similar supervisory personnel that oversaw Plaintiffs and similarly situated employees during their employment.

f.     (6) the machinery, equipment, and production methods of Defendant Taylor Corporation and its predecessor are similar, if not the same. For example, prior to

the bankruptcy proceedings, Standard Register used the same or similar machinery, equipment, and productions methods for its printing operations. Upon information and belief, following the bankruptcy proceedings, Taylor Corporation operated/operates the same commercial printing business that Standard Register did and has the same or similar machinery and production methods after the bankruptcy proceedings.

g.        (7) the products or services of Defendant Taylor Corporation and its predecessor are similar, if not the same. For example, the products or services used by Standard Register as a commercial printing business prior to the bankruptcy proceedings are the same or similar as those used by Taylor Corporation following the bankruptcy proceedings.

h.        (8) there are doubts with respect to whether or not the predecessor (Standard Register) is able to provide relief for Plaintiffs' claims. Given that Taylor Corporation took over all operations at some point in 2015 and, based on a recent review of the Ohio Secretary of State records, Standard Register is a defunct entity and therefore cannot provide the relief for Plaintiffs' claims. *See* 29 C.F.R. § 825.107.

### Facts Pertinent to Plaintiffs' Employment Discrimination Claims

40.        All of the preceding paragraphs are realleged as if fully rewritten herein.

41.        Plaintiff Joyce Arnold began working for Standard Register and subsequent iterations, now owned and operated by Defendant Taylor Corporation, since June, 1990.

42.        After a brief absence from employment in 2001, she returned to work for Standard Register in 2002 until she was jointly terminated on July 15, 2015. At the time of her termination

on July 15, 2015, she was employed on a full-time basis as a Press Operator II. She was compensated approximately $18 per hour and worked forty hours per week.

43.     Plaintiff Timothy Arnold began working for Standard Register and subsequent iterations, now owned and operated by Defendant Taylor Corporation, since January 29, 1979 until he was jointly terminated by Defendant on July 15, 2015. At the time of his joint termination, he was employed on a full-time basis as a Stock Cutter. He was compensated approximately $18 per hour and worked forty hours per week.

44.     Throughout Plaintiffs' longstanding employment with Standard Register, including their joint employment relationship with Defendant Taylor Corporation, Plaintiffs exercised their rights under the FMLA for diagnosis and/or ongoing treatment for their own serious health conditions.

45.     Specifically, Mrs. Arnold suffers from life-long migraine headaches that forces her to be unable to perform her job functions, and other major life activities including but not limited to seeing, sleeping walking, during symptomatic episodes. Mrs. Arnold was approved for FMLA leave on an intermittent basis when she suffers symptomatic episodes. Plaintiff's most recent FMLA certification was approved in January, 2015.

46.     Mr. Arnold suffers from his own serious health condition, namely, Meniere's disease, and experiences symptoms such as vertigo, hearing loss, ear ringing, ear pressure, severe nausea and imbalance. During symptomatic episodes, his condition affects his ability to walk, think, hear, and work, among others.

47.     Plaintiff Mr. Arnold also obtained an FMLA certification on an intermittent basis to care for his parents, who also suffer from serious health conditions.

48.     Specifically, Mr. Arnold's mother suffers from congestive heart failure necessitating Mr. Arnold's assistance with required medical appointments and ongoing treatment. Mr. Arnold's father suffers from strokes and heart attacks, which necessitate Mr. Arnold's assistance for medical appointments and ongoing treatment.

49.     Although Plaintiffs were absent from work at various times throughout their employment relationship in 2014 and 2015 because of their own serious health conditions, to care for each other's serious health conditions, and/or to care for ill parents who suffer from serious health conditions, their absences were well within the range recommended by their healthcare provider and approved in their FMLA certification documentation.

50.     Standard Register and Defendant Taylor Corporation were provided with enough information of the absences to acquire knowledge that Plaintiffs' absences may be for an FMLA-qualifying reason, but failed to notify Plaintiffs as required under federal regulations governing the FMLA.

51.     However, at some point in 2015, it became apparent to Plaintiffs that their use of medical leave had been previously used as a negative factor against them and was still being used against them as a negative factor in their employment.

52.     Upon information and belief, Plaintiffs were assessed occurrence points by Standard Register for one or more of the absences listed herein even though the absences were directly related to one or more FMLA-qualifying reason.

53.     In other instances, Standard Register outright denied Plaintiff Mr. Arnold FMLA leave.

54.     Plaintiffs made requests that the attendance points be removed or not be held against them. By way of illustration and not limitation, Plaintiffs made these requests to their direct supervisors of Standard Register, but their requests were ignored or not taken seriously.

55.     Upon information and belief, at least one or more of Plaintiffs' performance evaluations were also negatively impacted by the use of FMLA leave.

56.     Plaintiff Mrs. Arnold was also absent from work at various points throughout 2014 and 2015 to care for Plaintiff Mr. Arnold when he suffered a symptomatic episode due to his serious health condition.

57.     Prior to leaving the workplace to take care of Plaintiff Mr. Arnold, Plaintiff Mrs. Arnold informed her shift supervisor or group leader at Standard Register of her need to leave work to care for Mr. Arnold and/or help him seek medical treatment.

58.     Standard Register was aware of the underlying reasons for Mrs. Arnolds' absences because, when she needed to care for Mr. Arnold, Plaintiffs left their shift at the same time as Plaintiff Arnold could not walk or drive due to his symptomatic episodes; Plaintiffs informed the shift supervisor or group leader for Mr. Arnold's need to leave due to symptomatic episodes; and Plaintiffs informed the shift supervisor or group leader of Mrs. Arnold's need to drive him home, assist him with seeking medical treatment, and care for Mr. Arnold.

59.     Therefore, Standard Register had knowledge and was on notice that Plaintiff Mrs. Arnold's absences may be for one or more FMLA-qualifying reason(s), but failed to inquire further with respect to the reasons for her absences.

60.     Instead, Standard Register continued to assess Plaintiff Mrs. Arnold occurrence points for her absences.

61.     To that end, upon information and belief that will be more fully developed throughout discovery, there was a group meeting or several group meetings believed to be held at some point beginning in May through June, 2015, whereby Plaintiffs, other employees, managerial employees, and plant managers gathered at the Coldwater, Ohio plant location to discuss some changes that would be implemented by Taylor Corporation.

62.     Specifically, Plaintiff Mr. Arnold and other employees were told that their personnel files, including medical information and other personal information, had been sent to the Dayton headquarters. At that time, they were told by supervisory personnel that the request to review their personnel files likely came from the new company taking over the operations of Standard Register.

63.     During that time period, Plaintiffs continued to exercise or attempt to exercise their FMLA rights for their own serious health conditions and/or for Mr. Arnold's parents' serious health conditions.

64.     Mrs. Arnold also exercised her FMLA rights when she suffered a period of incapacity from approximately May 29, 2015 through June 30, 2015. Her absences from work during this period were also approved through an FMLA certification.

65.     At the same time, upon information and belief, Taylor Corporation continued ramping up the implementation process and continued making employment decisions with respect to the operations of Standard Register.

66.     For example, during June, 2015 at the Coldwater, Ohio plant, Plaintiff Mr. Arnold attended and was present during a "welcome" video presentation/conference call (that appeared to be a recording rather than a live presentation) with some of his co-workers during third shift.

67.     As a second example of Taylor Corporation's joint conduct and knowledge of
Plaintiffs' serious health conditions and/or disabilities, as part of the implementation process, but
prior to the asset sale transaction, "Taylor Corporation concluded that it would not be able to offer
employment" to everyone, including Plaintiffs.

68.     Unbeknownst to Plaintiffs until after Taylor Corporation's position statement
submitted before the administrative proceedings to investigate the reason for their joint termination
of employment, Taylor Corporation was provided a spreadsheet with performance-related
information concerning the employees, including Plaintiffs, listed on the payroll of Standard
Register.

69.     Furthermore, David Clapper, who was a managerial employee of Standard Register
during this time period, but upon information and belief was subsequently employed by Taylor
Corporation after the bankruptcy proceedings described above, submitted an affidavit in support
of Taylor Corporation's position statement before the administrative proceedings.

70.     In Mr. Clapper's affidavit, he testified that Taylor Corporation had been "working
with the Standard Register Company," and Taylor Corporation, as the buyer of assets described
above, "had determined which current employees of the Standard Register Company's Coldwater
plant would and would not be offered employment with the Buyer." To that end, when describing
how Taylor Corporation decided on who it would be terminating, "in making these decisions," the
Buyer (i.e. Taylor Corporation) had "considered input from [Standard Register's] management
team, information about the job performance of plant employees, as well as the business needs for
the future."

71.     As outlined above, upon information and belief, Taylor Corporation and Standard
Register jointly reviewed the information contained in Plaintiffs' personnel files, including the

medical history of Plaintiffs revealing their serious health conditions, absences related to their use of FMLA, their disabilities, any other absences related to their disabilities, their continued absences related to their medical leave, and also considered the input from managerial employees of Standard Register, the input of which was a spreadsheet containing performance-related information of Plaintiffs.

72.  Based on this information, and just two weeks after Mrs. Arnold's most recent use of FMLA leave, Standard Register and Taylor Corporation jointly decided to terminate Plaintiffs on or about July 15, 2015.

73.  Specifically, Plaintiffs received a telephone call from a Plant Superintendent of Standard Register. During the call, Plaintiffs were informed that they were terminated because Taylor Corporation could not afford to keep them.

74.  However, the proffered reason for the joint decision to terminate Plaintiffs is merely pretextual.

75.  Instead, despite being told they were too expensive, Taylor Corporation held a job fair and replaced Plaintiffs with individuals who after a reasonable opportunity for further investigation or discovery Plaintiffs will likely be able to show have not exercised their FMLA rights and are neither disabled or perceived to be disabled by Defendant.

76.  Over the course of Plaintiffs' decades of employment with Standard Register, including the most recent time period with Taylor Corporation, Plaintiffs did not have attendance issues that were not permitted by law or sanctioned by their employers.

77.  Plaintiffs were also not previously disciplined or counseled for any performance issues.

78.     Plaintiffs' consistently met or exceeded the expectations with respect to performance.

79.     As such, Plaintiffs were jointly terminated by Standard Register and Defendant Taylor Corporation because of their use of FMLA leave, their disabilities, actual or perceived, and otherwise discriminated against in the terms and conditions of their employment.

## CAUSES OF ACTION

### COUNT ONE
### (FMLA Interference with Rights – 29 U.S.C. § 2615, *et seq.*)

80.     All of the preceding paragraphs are realleged as if fully rewritten herein.

81.     Throughout Plaintiffs employment relationship with Standard Register, including the time period where Defendant Taylor Corporation became involved in exercising its control over the terms and conditions of Plaintiffs' employment, Plaintiffs exercised and/or attempted to exercise their rights under the FMLA when they requested, were approved of, and subsequently took intermittent medical leave for qualifying reasons under the FMLA.

82.     Standard Register and Defendant had knowledge that Plaintiffs intended to continue utilizing FMLA leave for their own ongoing serious health conditions, to take care of each other during symptomatic episodes, and to take care of Mr. Arnold's parents who also suffer from serious health conditions.

83.     Standard Register and Defendant knew of Plaintiffs' use of medical leave as evidenced by Plaintiffs' notice to their joint employer, completion of all requisite FMLA paperwork for the qualifying events, and Defendant Taylor Corporation's joint termination of Plaintiffs in consideration for taking protected leave.

84.     Given Plaintiffs' unblemished and lengthy work history, the admission that Plaintiffs were terminated because Defendant Taylor Corporation purportedly could not afford

them so they were terminated, the contradictory business justifications for their adverse employment actions, frequent disparaging comments by Standard Register, through one or more of its agents or employees, directed at Mr. Arnold, including, but not limited to, that he "should just go on disability," the fact that Plaintiffs' personnel files, including absences directly related to their FMLA rights and/or disabilities, were jointly reviewed by Standard Register and Defendant, and that the information was used as basis for their termination, it is plausible to infer that the reason for Plaintiffs' termination was because of Plaintiffs' taking of medical leave and intent to continue taking medical leave for FMLA qualifying events as described above.

85.     By engaging in the foregoing conduct, Standard Register and Defendant Taylor Corporation have jointly interfered with Plaintiffs' exercise of their FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

86.     The foregoing actions were taken in bad faith and were a violation of 29 U.S.C. § 2615, causing Plaintiffs to lose wages, salary, and employment benefits and entitling them to reinstatement and to recover double their actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

## COUNT TWO
### (FMLA Retaliation – 29 U.S.C. § 2615, *et seq.*)

87.     All of the preceding paragraphs are realleged as if fully rewritten herein.

88.     Throughout Plaintiffs employment relationship with Standard Register, including the time period where Defendant Taylor Corporation became involved in exercising its control over the terms and conditions of Plaintiffs' employment, Plaintiffs exercised and/or attempted to exercise their rights under the FMLA when they requested, were approved of, and subsequently took intermittent medical leave for qualifying reasons under the FMLA.

89.     Standard Register and Defendant had knowledge that Plaintiffs intended to continue utilizing FMLA leave for their own ongoing serious health conditions, to take care of each other during symptomatic episodes, and to take care of Mr. Arnold's parents who also suffer from serious health conditions.

90.     Standard Register and Defendant knew of Plaintiffs' use of medical leave as evidenced by Plaintiffs' notice to their joint employer, completion of all requisite FMLA paperwork for the qualifying events, and Defendant Taylor Corporation's joint termination of Plaintiffs in consideration for taking protected leave as described above.

91.     Given Plaintiffs' unblemished and lengthy work history, the admission that Plaintiffs were terminated because Defendant Taylor Corporation purportedly could not afford them so they were terminated, the contradictory business justifications for their adverse employment actions, frequent disparaging comments by Standard Register, through one or more of its agents or employees, directed at Mr. Arnold, including, but not limited to, that he "should just go on disability," the fact that Plaintiffs' personnel files, including absences directly related to their FMLA rights and/or disabilities, were jointly reviewed by Standard Register and Defendant, and that the information was used as basis for their termination, it is plausible to infer that the reason for Plaintiffs' termination was because of Plaintiffs' taking of medical leave and intent to continue taking medical leave for FMLA qualifying events as described above.

92.     By engaging in the foregoing conduct, Standard Register and Defendant Taylor Corporation have jointly retaliated against Plaintiffs' exercise of their FMLA rights, in violation of 29 U.S.C. § 2615(a)(2).

93.     The foregoing actions were taken in bad faith and were a violation of 29 U.S.C. § 2615, causing Plaintiffs to lose wages, salary, and employment benefits and entitling them to

reinstatement and to recover double their actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

## COUNT THREE
### (Disability Discrimination – R.C. § 4112.02, *et seq.*)

94.    All the preceding paragraphs are realleged as if fully rewritten herein.

95.    At all times relevant herein, Plaintiffs were each able to perform the essential functions of their jobs despite their disabilities had Defendant not held their absences relating to their disabilities against them when jointly making the decision to terminate them.

96.    Defendant knew that Plaintiffs were disabled, had a record of a disability, and/or regarded them as disabled given it had reviewed their personnel files and jointly considered input from managerial personnel of Standard Register.

97.    Their use of medical leave as described above was reasonable and definite in duration.

98.    Standard Register and Defendant discriminated against Plaintiffs because of their disabilities by taking the following non-exhaustive list of actions: disciplining them in the form of occurrences or attendance points when the absences were related to their disabilities, terminating their employment because Defendant purportedly could not afford to rehire them even though Plaintiffs were subsequently replaced with individuals who are neither disabled or perceived to be disabled by Defendant, and/or otherwise discriminating against Plaintiffs in the terms, privileges, and conditions of their employment with Standard Register and Defendant.

99.    Upon information and belief, Defendant jointly fired Plaintiffs and denied them employment, and replaced them with someone that after a reasonable opportunity for further investigation or discovery Plaintiffs will likely be able to show is neither disabled or perceived to be disabled by Defendant.

100.     Given Plaintiffs' unblemished and lengthy work history, the admission that Plaintiffs were terminated because Defendant Taylor Corporation purportedly could not afford them so they were terminated, the contradictory business justifications for their adverse employment actions, frequent disparaging comments by Standard Register, through one or more of its agents or employees, directed at Mr. Arnold, including, but not limited to, that he "should just go on disability," the fact that Plaintiffs' personnel files, including absences directly related to their FMLA rights and/or disabilities, were jointly reviewed by Standard Register and Defendant, and that the information was used as basis for their termination, it is plausible to infer that the reason for Plaintiffs' termination was because of their disabilities, Defendant's perception of them as disabled, and/or in retaliation for utilizing reasonable medical leave for their disabilities.

101.     By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(A).

102.     The Defendant's foregoing actions were taken with a conscious disregard for the rights of Plaintiffs, causing Plaintiffs to lose wages, salary, employment benefits, emotional pain, suffering, inconvenience, shame, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling her to reinstatement, and to recover her actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

<u>**COUNT FOUR**</u>
**(Retaliation – R.C. § 4112.02(I))**

103.     All the preceding paragraphs are realleged as if fully rewritten herein.

104.     At all times relevant herein, Plaintiffs were each able to perform the essential functions of their jobs despite their disabilities had Defendant not held their absences relating to their disabilities against them.

105.    Standard Register and Defendant knew that Plaintiffs were disabled, had a record of a disability, and/or regarded them as disabled.

106.    Their use of medical leave as described above was reasonable and definite in duration.

107.    Defendant discriminated against Plaintiffs because of their disabilities by taking the following non-exhaustive list of actions: disciplining them in the form of occurrences or attendance points when the absences were related to their disabilities, jointly terminating their employment because Defendant purportedly could not afford to rehire them even though Plaintiffs were subsequently replaced with individuals who are neither disabled or perceived to be disabled by Defendant, and/or otherwise discriminating against Plaintiffs in the terms, privileges, and conditions of employment.

108.    Upon information and belief, Defendant fired Plaintiffs and denied them employment, and replaced them with someone who after a reasonable opportunity for further investigation or discovery Plaintiffs will likely be able to show is neither disabled or perceived to be disabled by Defendant.

109.    Given Plaintiffs' unblemished and lengthy work history, the admission that Plaintiffs were terminated because Defendant Taylor Corporation purportedly could not afford them so they were terminated, the contradictory business justifications for their adverse employment actions, frequent disparaging comments by Standard Register, through one or more of its agents or employees, directed at Mr. Arnold, including, but not limited to, that he "should just go on disability," the fact that Plaintiffs' personnel files, including absences directly related to their FMLA rights and/or disabilities, were jointly reviewed by Standard Register and Defendant, and that the information was used as basis for their termination, it is plausible to infer that the

reason for Plaintiffs termination was their disabilities, Defendant's perception of them as disabled, and/or in retaliation for utilizing reasonable medical leave for their disabilities.

110.    By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(I).

111.    The Defendant's foregoing actions were taken with a conscious disregard for the rights of Plaintiffs, causing Plaintiffs to lose wages, salary, employment benefits, emotional pain, suffering, inconvenience, shame, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling her to reinstatement, and to recover her actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant as follows:

(a)  Ordering Defendant to reinstate Plaintiffs;

(b)  Ordering Defendant to pay monetary relief in an amount sufficient to compensate Plaintiffs for the wages and benefits lost up to the time of their reinstatement;

(c)  Order Defendant to pay monetary relief in an amount sufficient to compensate Plaintiffs for their emotional distress, including pain and suffering;

(d)  Awarding Plaintiffs costs and reasonable attorneys' fees associated with this action;

(e)  Ordering Defendant to pay monetary relief in the amount sufficient to compensate Plaintiffs for future wages and benefits lost in the event reinstatement is not feasible;

(f)  Ordering Defendant to pay liquidated damages in an amount equal to their compensatory damages;

(g)  Order Defendant to pay punitive damages;

(h) Ordering Defendant to pay pre-judgment interest and post-judgment interest;

(i) Injunctive relief prohibiting Defendant from engaging in present, ongoing, and future violations of the FMLA in the form of penalizing their employees for absences related to an FMLA-qualifying reason in Defendant's no-fault attendance policy;

(j) Declaratory judgment that no-fault attendance policies, in form or in application thereof, are a violation of the FMLA; and

(k) Directing such other and further relief as the Court may deem just or appropriate.

Respectfully submitted,

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859), Trial Attorney
1457 S. High St.
Columbus, Ohio 43207
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: Dbryant@BryantLegalLLc.com

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
3450 W. Central Avenue, Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@BryantLegalLLC.com

Laren E. Knoll (0070594)
**The Knoll Law Firm, LLC**
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a jury trial of eight (8) persons to hear all issues so triable.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)