# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | CHAPTER 11 |
| ) | |
| SRC Liquidation, LLC,[1] ) | Case No. 15-10541 (BLS) |
| ) | |
| ) | **RE: D.I. 2344** |
| ) | **Obj. Deadline: 10/29/2018 @ 4:00 pm** |
| Debtor. ) | **Hearing Date: 11/14/2018 @ 10:00 am** |
| ) | |

## OBJECTION OF TIM AND JOYCE ARNOLD TO THE MOTION OF TAYLOR CORPORATION PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JUNE 19, 2015 SALE ORDER AND INJUNCTION

Tim and Joyce Arnold (the "Arnolds") hereby object to the Motion of Taylor Corporation Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's June 19, 2015 Sale Order and Injunction (the "Motion", D.I. 2344).

## JURISDICTION AND VENUE

1.    Pursuant to Del. Bankr. L.R. 9013-1(h), the Arnolds do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

**A.    The Bankruptcy Proceedings**

2.    On information and belief, The Standard Register Company and certain of its affiliates (the "Debtors") filed for Chapter 11 protection on March 12, 2015 (the "Petition Date"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn:Anthony R. Calascibetta).

On further information and belief, on the same day, the Debtors filed a motion seeking approval of an auction process to sell substantially all of the assets of the Debtors (the "Sale Motion", D.I. 23).

3. On further information and belief, the Bankruptcy Court approved an asset purchase agreement in a sale order dated June 19, 2015 (the "Sale Order", D.I. 698) under which Taylor Corporation ("Taylor") was the purchaser.

4. Taylor has alleged that the asset sale closed on July 31, 2015.

5. There is a dispute about whether the Arnolds were effectively served with notice of the bankruptcy and/or the Sale Motion. Regardless, it is the Arnolds' position that their claims arose, at the earliest, at the time they had constructive knowledge of Taylor's actions, which did not happen until after July 31, 2015.

**B. The Employment Discrimination Action**

6. On June 29, 2017, the Arnolds filed an employment discrimination case against Taylor and The Standard Register[2] in the United States District Court for the Northern District of Ohio, Western Division (the "District Court"), which bears the caption *Joyce and Timothy Arnold v. Taylor Corporation*, Case No. 3:17-cv-1381 (the "District Court Action"). A copy of Plaintiff's Second Amended Complaint (the "Second Amended Complaint", filed August 13, 2018, D.C. D.I. 36) in the District Court Action is attached to the Motion as Exhibit "A".

7. As detailed in the Second Amended Complaint, the Arnolds were employed by The Standard Register for about 35 years. Second Amended Complaint, ¶2. They both suffer from disabilities and utilized intermittent medical leave for themselves, each other, and as

---

[2] The Arnolds later dismissed The Standard Register as a party to the District Court Action.

primary caretakers for their parents under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). *Id.* at ¶¶44-49.

8. The Second Amended Complaint alleges that both before and the Sale Order was entered, Taylor took substantial control over the Debtors' operations. Second Amended Complaint, ¶17. It specifically alleges that Taylor participated in a review of the employment records (including medical records) of The Standard Register's employees. *Id.* at ¶19. It further alleges that Taylor participated in a decision to terminate the Arnolds based on their disabilities. *Id.* at ¶27. That is a key fact: it means that the Arnolds' claims are based on actions of Taylor itself.

9. The Second Amended Complaint also alleges that "Unbeknownst to Plaintiffs until after Taylor Corporation's position statement submitted before the administrative proceedings to investigate the reason for their joint termination of employment, Taylor Corporation was provided a spreadsheet with performance-related information concerning the employees, including Plaintiffs, listed on the payroll of Standard Register." *Id.* at ¶68.

10. The Second Amended Complaint also alleges that the Arnolds were terminated on July 15, 2015. *Id.* ¶¶42-43.

11. On May 29, 2018, Taylor filed a Motion for Judgment on the Pleadings along with a supporting memorandum of law (the "Motion for Judgment", D.C. D.I. 32). A copy of that motion and the supporting memorandum are attached as Exhibit "1" hereto. In that motion, Taylor sought to have the District Court Action dismissed because it was barred by the Sale Order. As Taylor states: "[T]his motion is grounded on the key point that the bankruptcy court sale order mandated that the assets transferred to Taylor Corporation were free and clear of any 'claims' associated with those assets." Motion for Judgment (Memorandum, p. 2.).

12. On June 19, 2018, the Arnolds filed their objection to the Motion for Judgment (D.C. D.I. 33, Exhibit "2" hereto).

13. On July 19, 2018, the District Court issued an order directing counsel to be prepared to address certain questions at the oral argument on the Motion for Judgment, which was scheduled for August 7, 2018. A copy of that Order (D.C. D.I. 34) is attached as Exhibit "3" hereto.

14. On August 7, 2018, the District Court heard oral argument on the Motion for Judgment. A copy of the transcript ("Tr." or "Transcript") (D.C. D.I. 43) of that argument is attached as Exhibit "4" hereto.

15. The Court denied the Motion for Judgment. In support of its ruling, the Court stated:

> Defendant believes that the
> Bankruptcy Court orders are all this Court needs to decide
> this motion. The argument today further confirms that this
> Court disagrees with that conclusion. Given the
> allegations in the complaint, discovery is appropriate to
> determine what role, if any, Taylor had with Standard and
> the transition, and whether there is sufficient evidence to
> find Taylor was a joint or a successor employer.

Tr. p. 28.

16. On August 8, 2018, the District Court entered an order denying the Motion for Judgment. A copy of the District Court's Order denying the Motion for Judgment (the "District Court Order") is attached as Exhibit "D" to the Motion. Although the District Court Order does not state the specific reasons for the Court's decision, it refers to the Transcript.

17. Not satisfied with that result, after the District Court denied the Motion for Judgment, Taylor filed the Motion with this Court on September 5, 2018. The Motion seeks

effectively the same relief that Taylor sought in the Motion for Judgment—namely, a determination that the District Court Action is barred by the Sale Order.

18. At the same time that it filed the Motion, Taylor filed its Motion to Transfer Venue to the U.S. Bankruptcy Court for the District of Delaware or, in the Alternative, to Stay This Action Pending Resolution of Taylor Corporation's Pending Motion in the U.S. Bankruptcy Court to Enforce That Court's 2015 Sale Order and Injunction (the "Motion to Transfer", D.C. D.I. 39).

19. By Memorandum Order dated October 17, 2018, the District Court denied the Motion to Transfer. A copy of that order (the "Transfer Order", D.C. D.I. 44) is attached as Exhibit "5" hereto.

**OBJECTION**

**I. THIS COURT SHOULD PERMISSIVELY ABSTAIN FROM HEARING THIS MATTER TO AVOID THE POSSIBILITY OF CONFLICTING ORDERS**

20. In the interests of judicial comity, the Arnolds respectfully request that this Court exercise its discretion to abstain from hearing this matter. The District Court has already ruled that the Sale Order is not an absolute bar to the District Court Action. Taylor now effectively seeks a decision from this Court overruling the District Court. This jurisdictional conflict is a creation of Taylor's own making. Taylor chose to bring the issue of the Sale Order before the District Court. Only after having lost its Motion for Judgment did it run to this Court seeking what amounts to a reversal.

21. Permissive Abstention is governed by 28 U.S.C. § 1334(c)(1) which provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

22.     To guide the decision as to whether or not to abstain, bankruptcy courts in this District have considered the following factors as part of their analysis:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in a state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.)*, 156 B.R. 441, 443 (Bankr. D. Del. 1993); *see also In re Mobile Tool Int'l*, 320 B.R. 552, 556-57 (Bankr. D. Del. 2005).

23.     These factors are not to be applied in a mechanical fashion. Rather, courts should consider the totality of the circumstances and give extra weight to the substantive factors governing abstention. C*rown Village Farm, LLC v. Arl, LLC (In re Crown Village Farm, LLC)*, 415 B.R. 86, 95 (Bankr. D. Del. 2009).

24.     An additional factor courts have considered in determining whether to exercise their discretion to abstain is the risk of inconsistent rulings. For example, in *In re McMahon Books, Inc.,* the defendant-landlord moved to dismiss the plaintiff-debtor's complaint that sought a declaratory judgment, injunctive relief, and relief pursuant to Delaware Landlord-Tenant Code. *In re McMahon Books, Inc.,* 173 B.R. 868, 870 (Bankr. D. Del. 1994). Before the proceedings in this Court commenced, the debtor's sole shareholder and president had acted as the representative plaintiff in a class action case against the defendant in the Delaware District

Court. *Id.* Although the parties to that class action entered into a settlement agreement, that matter was still pending in the District Court at the time the debtor filed its complaint. *Id.* at 871. The District Court had reserved jurisdiction over administration and effectuation of the settlement agreement, and the parties to that class action were yet to enter into new lease agreements. *Id.*

25. This Court held that it had subject matter jurisdiction over all three claims in the debtor's complaint but abstained "in the interest of justice" because exercising jurisdiction over those claims would subject the settlement agreement to possible inconsistent interpretations thus interfering with the District Court's rulings under the settlement agreement. *Id.* at 873-75; *accord In re Premier Hotel Dev. Grp.,* 270 B.R. 243, 257 (Bankr. E.D. Tenn. 2001) ("If the core matters are tried in this court and the non-core issues are tried in state court, the parties to this action will incur the expense of separate lawsuits and run the risk of inconsistent judgments.").

26. Here, the risk of inconsistent rulings is manifest. In denying the Motion for Judgment, the District Court has already held that there are disputed factual issues that preclude dismissing the District Court Action based on the Sale Order at this time. In the Motion, Taylor is effectively seeking to have this Court overturn the District Court. In the event that this Court were to grant the Motion, the Court's order would be in direct conflict with the District Court Order. There would then be two directly conflicting orders in different courts and different circuits. While the ultimate outcome is difficult to predict, one thing should be obvious—having two competing orders will create confusion, delay, expense and uncertainty.

27. Importantly, Taylor's litigation choices have placed this Court in this untenable situation. Taylor chose to file the Motion for Judgment in the District Court before it filed anything with this Court. Taylor and the Arnolds submitted briefs. The District Court conducted

oral argument on the motion and, after reviewing the briefs and hearing argument, denied the motion. It was only after Taylor lost that motion that it brought the Motion before this Court. Taylor is trying to have its proverbial second bite.

28. Taylor tries to downplay the litigation history here by shuffling its discussion of the Motion for Judgment to the very end of the Motion under the ordinarily boiler-plate section on previous requests for the same relief. But Taylor, knowing it has a problem, appears to hang its hat on the fact that it filed the Motion only after the Arnolds filed the Second Amended Complaint; and that the District Court's Order was based on the First Amended Complaint. ("Since the date of that order, the Plaintiffs have filed a Second Amended Complaint in the Lawsuit, which in some respects is quite different from the First Amended Complaint." Motion p. 17).

29. But the fact that the Motion was filed after the filing of the Second Amended Complaint is a red herring. The Motion for Judgment squarely raised the bar of the Sale Order. The District Court held that the issue could not be decided as a matter of law and denied that motion. The Motion filed here essentially asks this Court to ignore the District Court's prior order and overrule it.

30. The District Court's later decision to deny the Motion to Transfer further supports abstention. It is abundantly clear from the Transfer Order that the District Court believes that it is the proper forum for the resolution of the dispute between the parties. ("This Ohio-centered dispute has very little impact on the Delaware-based asset sale, which has long since closed. ***Perhaps that is why, in the fifteen months since this case was filed, Taylor had not sought to transfer it to Delaware -- that is, until now, after this Court denied its Motion for Judgment on the Pleadings.***" Transfer Order, p. 5) (emphasis added).

31. Because the risk of inconsistent rulings is unavoidable, the Arnolds submit that this factor alone conclusively supports abstention. To the extent that it is necessary to consider the *Continental* factors, however, those factors too weigh overwhelmingly in favor of abstention:

        (1)      <u>Efficient Administration of the Estate.</u>

32. This dispute is purely among non-debtor parties concerning events that occurred several years ago. Nothing in the Motion suggests that there will be *any* effect on the administration of the bankruptcy. Strongly favors abstention.

        (2)      <u>Predominance of State Law Issues.</u>

33. As noted by the District Court "this case [also] involves Ohio law, with which this Court is quite familiar." Transfer Order, p. 5. Hence, there are both state law and non-bankruptcy federal law issues involved in the District Court Action. Favors abstention.

        (3) <u>Unsettled Nature of Applicable Law.</u>

34. There are no particularly novel issues involved. Neutral or favors abstention.

        (4)      <u>Presence of Related Proceedings</u>.

35. This factor overwhelmingly supports abstention. The District Court Action has been pending for well over a year. The District Court considered and decided a motion that addressed the precise issue raised in the instant Motion—namely, whether the Sale Order bars the District Court Action. The District Court denied that motion. It was only after that denial that Taylor filed the Motion in this Court.

        (5)      <u>Jurisdiction Other than Under 28 U.S.C. § 1334.</u>

36. There is no other jurisdictional basis for this Court; favors abstention.

 (6) <u>Degree of Relatedness.</u>

37. The relationship between the District Court Action and the bankruptcy is attenuated. Taylor purchased its assets over three years ago. There are no debtor parties involved. Favors abstention.

 (7) <u>Core/Noncore.</u>

38. Section 28 U.S.C. § 157(b) provides that sale orders comprise "core" proceedings; but the instant Motion, brought over three years after entry of the Sale Order, is not a section 363 motion but a motion to enjoin the District Court Action after Taylor sought but was denied that relief. Moreover, the claims by the Arnolds against Taylor (both non-debtor parties) arise solely under State law and non-bankruptcy federal law and are plainly non-core. *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594 (2011). Favors abstention.

 (8) <u>Severability.</u>

39. This factor is not implicated here as the District Court has subject matter jurisdiction to decide all issues. Not applicable or favors abstention.

 (9) <u>Burden on the Court's Docket.</u>

40. The entry of a 363 sale order does not put this Court at the beck and call of a purchaser *in perpetuity*. This Court knows the burden on its docket and it is understood that this docket is among the heaviest in the nation.

 (10) <u>Forum Shopping.</u>

41. The District Court, in the Transfer Order, appears to view Taylor's decision to file the Motion after it denied the Motion for Judgment as an attempted end-run around the District

Court. Transfer Order, p. 5. This factor overwhelmingly supports abstention. A judicial system cannot operate efficiently if a frustrated litigant, unhappy with the results of its own litigation choices, can simply file a proceeding in a different forum to obtain a different result. If Taylor had wanted this Court to decide the issue of the effect of the Sale Order, it could have but did not file the Motion with this Court soon after the District Court Action was commenced. Instead, it sought the same relief before the District Court; lost; and now seeks a rehearing.

(11)     Jury Demand.

42.     The Arnolds have demanded a jury trial, which this Court cannot conduct absent the consent of the parties. Favors abstention.

(12)     Presence of Non-debtor Parties.

43. The only parties to the District Court Action are non-debtor parties. Favors abstention.

In sum, the *Continental* factors overwhelmingly support abstention. But the overarching point here is that granting the Motion would necessarily result in directly conflicting orders. Taylor could have avoided that risk if it had brought the Motion before filing the Motion for Judgment in the District Court. That litigation choice may have been perfectly reasonable. But having made it, Taylor should not be permitted to use this Court to seek to reverse the District Court.

**II.    IN THE EVENT THAT THE COURT DECLINES TO ABSTAIN, THE ARNOLDS REQUEST THAT THE COURT ESTABLISH A PRETRIAL DISCOVERY SCHEDULE.**

44.     The Arnolds submit that the Sale Order is not a bar to their claims. The Arnolds refer to the arguments set forth in their opposition to the Motion for Judgment.

45.     Without limiting the foregoing, the Arnolds submit that the Sale Order is not a bar to their claims because (i) the Arnolds did not receive constitutionally sufficient notice of the

bankruptcy and the Sale Motion, in violation of their due process rights; (ii) the Sale Order does not preempt the application of federal employment law under which Taylor is alleged to be a joint employer and a successor; (iii) the Sale Order does not and cannot absolve Taylor from the consequences of its own conduct (particularly conduct occurring after the Sale Order was entered); and (iv) the Arnolds' claims did not accrue until after July 31, 2015.

46. Discovery is needed on a variety of issues, including (i) the notice purportedly provided to the Arnolds; (ii) the timing and nature of Taylor's conduct and degree of control it exercised; and (iii) facts related to the time of accrual of the Arnolds' claims.

47. The Arnolds, however, strongly urge this Court to exercise its discretion to abstain from hearing this matter. All of the issues involved are now being addressed by a federal court of competent jurisdiction.[3] There is simply no need for this Court to get involved at this stage.

WHEREFORE, the Arnolds pray that the Court abstain from hearing the Motion; that Motion be denied on that basis; or in the alternative, that the Court deny the Motion on the merits; and that the Court grant such other and further relief as is just and proper.

DATED: October 29, 2018

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
Email:         loizides@loizides.com

*Counsel for Tim and Joyce Arnold*

---

[3] Throughout its Motion, Taylor argues that the District Court Action represents and improper collateral attack on the Sale Order. However, Taylor can presumably raise that argument before the District Court.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| SRC Liquidation, LLC,[1] | ) | Case No. 15-10541 (BLS) |
| | ) | |
| | ) | **RE: D.I. 2344** |
| | ) | **Obj. Deadline: 10/17/2018 @ 4:00 pm** |
| Debtor. | ) | **Hearing Date: 10/24/2018 @ 10:00 am** |
| | ) | |

## **CERTIFICATE OF SERVICE**

I, Christopher D. Loizides, hereby certify that on October 29, 2018, I did cause to be served true and correct copies of the foregoing OBJECTION OF TIM AND JOYCE ARNOLD MOTION OF TAYLOR CORPORATION PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JUNE 19, 2015 SALE ORDER AND INJUNCTION on the parties listed on the attached service list as indicated thereon.

DATED:  October 29, 2018

                                          /s/ Christopher D. Loizides
                                    Christopher D. Loizides (No. 3968)
                                    LOIZIDES, P.A.
                                    1225 King Street, Suite 800
                                    Wilmington, DE  19801
                                    Telephone:     (302) 654-0248
                                    Facsimile:      (302) 654-0728
                                    Email:             loizides@loizides.com

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn:Anthony R. Calascibetta).

## SERVICE LIST

## VIA EMAIL AND FIRST-CLASS MAIL

Matthew P. Austria
Austria Shrum LLC
1201 N. Orange Street
Suite 502
Wilmington, Delaware 19801
maustria@austriashrum.com

Phillip Bohl
Gray, Plant Mooty, Mooty, &
Bennet, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
phillip.bohl@gpmlaw.com

Craig A. Brandt
Snyder & Brandt, P.A.
Canadian Pacific Plaza, Suite 2550
120 South Sixth Street
Minneapolis, MN 55402
craig.brandt@snyderattorneys.com