**EXHIBIT "1"**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Joyce Arnold and Timothy Arnold, | : | Case No. 3:17-cv-1381 |
| Plaintiffs, | : | |
| v. | : | **DEFENDANT TAYLOR CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Taylor Corporation, | : | |
| | : | |
| Defendant. | | |

Defendant Taylor Corporation hereby moves, under Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings on all remaining claims in this case for the reason that the claims are barred by the terms of a June 19, 2015, order of the U.S. Bankruptcy Court for the District of Delaware. That order authorized the sale of certain assets of the former employer of the Plaintiffs to Defendant Taylor Corporation, and directed that the assets transferred were free from any liens or claims, including any successor liability claims. The order also enjoined any person from pursing claims that were barred by the order.

In accordance with the order, the asset sale closed on July 31, 2015, two weeks *after* the date on which the Plaintiffs were discharged from their long-term employment by a bankruptcy debtor, which the Plaintiffs allege was Standard Register International, Inc. ("SRII"). The Plaintiffs recently agreed that their claims against SRII should be dismissed.

This Court should dismiss the remaining claims against Taylor Corporation. The Sixth Circuit follows the majority rule, which enforces "free and clear" asset sale provisions like the one in the June 2015 bankruptcy court sale order at issue in this case.

This motion is supported by the Memorandum of Law of Defendant Taylor Corporation in Support of Motion for Judgment on the Pleadings, which will be filed along with the motion.

*s/ Craig A. Brandt*
Craig A. Brandt (Minn. Bar No. 214036)
SNYDER & BRANDT, P.A.
Canadian Pacific Plaza, Suite 2550
120 South Sixth Street
Minneapolis, MN 55402
(612) 787-3100 (telephone)
(612) 333-9116 (facsimile)
craig.brandt@snyderattorneys.com

JARED A. WAGNER (#0076674)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Tel. 937.224.3333
Fax. 937.224.4311
jawagner@green-law.com

*Attorneys for Defendant Taylor Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and accurate copy of the foregoing has been served electronically through this Court's electronic service system upon counsel for Plaintiff on this the 29th day of May, 2018, and pursuant to Local Rule 7.1(f) I further certify that this action has been assigned to the standard track and that this motion adheres to the page limits and requirements set forth within the local rules and the orders and instructions of Judge Zouhary.

<i>s/ Craig A. Brandt</i>_____
Craig A. Brandt (Minn. Bar #214036)

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Joyce Arnold and Timothy Arnold, | : | Case No. 3:17-cv-1381 |
| Plaintiffs, | : | |
| v. | : | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TAYLOR CORPORATION'S MOTION FOR** |
| | : | **JUDGMENT ON THE PLEADINGS** |
| Taylor Corporation, | : | |
| | : | |
| Defendant. | : | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTS ............................................................................................................................... 2

    I.   Facts Alleged in the First Amended Complaint. ................................................. 2

    II.  Facts Shown in the Bankruptcy Court's Record. .............................................. 4

    III. All of Plaintiffs' Claims are Based on Their Terminations. ............................... 7

ARGUMENT ..................................................................................................................... 7

    I.   Legal Standard. .................................................................................................. 7

    II.  The Sixth Circuit Follows the Majority Rule, Which Enforces Bankruptcy Court "Free and Clear" Sale Orders. ................................................................... 8

    III. The Claims Against Taylor Corporation Should Be Dismissed. ...................... 12

    IV. The Authorities Cited by Plaintiff are Distinguishable. .................................. 13

    V.  The Amended Complaint Fails to State a Viable FMLA Claim Against Taylor Corporation. ...................................................................................................... 14

CONCLUSION ................................................................................................................ 15

## INTRODUCTION

Plaintiffs Joyce and Timothy Arnold allege in this action that they were employed for many years by Standard Register International, Inc. ("SRII") at a plant in Coldwater, Ohio, and that SRII terminated their employment on July 15, 2015.

Plaintiffs have also alleged that SRII and affiliates had earlier filed a Chapter 11 bankruptcy proceeding, and that Taylor Corporation later purchased some assets of the debtors in connection with that proceeding.[1] In the bankruptcy case, the court supervised an auction sale process under which the principal assets of the debtors were sold to a court-approved, third-party high bidder. The bankruptcy court issued a detailed order setting forth the terms of and approving the asset sale, which included that the purchaser acquired the assets free and clear from any liens or claims, including any claim of successor liability.

The successful bidder was Taylor Corporation, a Minnesota-based company, which did not share common ownership or management with any of the bankruptcy debtors.[2] The court order approving the asset sale was issued on June 19, 2015,[3] and the transaction closed on July 31, 2015, about two weeks *after* SRII had terminated the employment of both of the Plaintiffs.

Nearly two years later, in July 2017, the Plaintiffs brought employment-related claims in this action against SRII, their alleged former employer. Plaintiffs also named Taylor Corporation as a second defendant on the same claims. While the Plaintiffs did not plead facts to show that they were ever actually employed by Taylor Corporation, they nonetheless alleged that Taylor

---

[1]     *See* Dkt. 1 at 3 ¶2. The bankruptcy proceeding was filed in March 2015. *See* Dkt. 27 (copy of June 2015 Sale Order) at 3.

[2]     *See* Dkt. 27 at 7.

[3]     In this case, the Court previously asked defense counsel to file a copy of the bankruptcy court's sale order. It was filed in this case on April 4, 2018, as Dkt. 27.

1

Corporation should be found liable along with SRII as a "joint employer" or as a "single integrated employer," or, alternatively, that Taylor Corporation is a successor in interest to SRII.[4]

Plaintiffs recently agreed to voluntarily dismiss their claims in this action against SRII,[5] which leaves Taylor Corporation as the sole remaining defendant.

While Taylor Corporation denies that it ever employed the Plaintiffs or that it discharged them from employment, those points are not the primary basis for the instant motion. Instead, this motion is grounded on the key point that the bankruptcy court sale order mandated that the assets transferred to Taylor Corporation were free and clear of any "claims" associated with those assets. Thus, the Plaintiffs' claims in this action, claims which are associated with the transferred assets and which are based on events that occurred before Taylor Corporation acquired the assets, did not transfer and, per the order, Taylor Corporation is not liable or responsible for such claims. Recent decisions from the Sixth Circuit, this Court, and other courts confirm that the terms of a "free and clear" sale order like the one here must be enforced. In accordance with those legal authorities, this Court should promptly dismiss the claims against Taylor Corporation.

## FACTS

This motion is based both on facts alleged by the Plaintiffs in their pleading and also on facts concerning the SRII bankruptcy proceeding.

## I.    Facts Alleged in the First Amended Complaint.

The First Amended Complaint alleges:

---

[4]      Dkt. 10 at 3, ¶¶ 9-11.

[5]      SRII was dismissed as a defendant in this case by an order dated May 8, 2018. Dkt. 28.

- Plaintiffs Joyce and Timothy Arnold were previously employed by "Defendant Standard Register International, Inc. at the plant located in Coldwater, Ohio …."[6]

- Joyce Arnold began working for SRII in 1990. By 2015, she was employed with SRII as a Press Operator II, earning approximately $18 per hour. Timothy Arnold began working for SRII in 1979. In 2015, he held a position as a Stock Cutter and earned approximately $18 per hour.[7]

- "[A]t some point in early 2015, it became apparent to Plaintiffs that their use of medical leave had been previously used as a negative factor against them and was still being used against them as a negative factor in their employment."[8]

- In May 2015, the Plaintiffs and other employees of SRII "gathered to discuss some changes that would be implemented by Taylor Corporation for its future operations of Defendant Standard Register,"[9]

- The Plaintiffs were terminated from employment by a SRII supervisor on July 15, 2015. Plaintiffs allege that they a "received a telephone call from a plant superintendent of Defendant Standard Register. During the call, Plaintiffs were informed that they were terminated from Standard Register and Taylor Corporation purportedly because Taylor Corporation could not afford to keep them since it began taking a more noticeable and active role in the business operations in May 2015."[10]

---

[6]     First Amended Complaint, Dkt. 10 at 2, ¶ 5.

[7]     *Id.* at 6, ¶¶ 23, 25, 26

[8]     *Id.* at 8, ¶ 34.

[9]     *Id.* at 4, ¶ 13.

[10]    *Id.* at 10, ¶ 51.

## II.  Facts Shown in the Bankruptcy Court's Record.

The bankruptcy court order approving the asset sale to Taylor Corporation ("Sale Order") is dated June 19, 2015.[11] The Sale Order authorized the sale of substantially all of the assets of SRII and related entities (collectively, the "Debtors") pursuant to, among others, §§ 363(b) and (f) of the Bankruptcy Code.[12] In accordance with the terms of the Sale Order, the asset sale closed on July 31, 2015.[13]

In the Sale Order, the court concluded, "[c]onsummation of the sale of the Transferred Assets at this time is in the best interests of the Debtors, their creditors, their estates and all other parties in interest."[14] The Court also found that the sale was an arm's length transaction, that the Buyers were good faith purchasers for value, and that there was "no common identity of directors, or officers … among the Buyers and the Debtors."[15]

The Sale Order directed that the transferred assets be conveyed "free and clear of all obligations and Encumbrances (other than permitted Encumbrances and the Assumed Liabilities)," "including, without limitation, rights or claims based on any taxes or successor or transferee liability ….," and that the failure to include this requirement would have "adversely impact[ed] the Debtors' efforts to maximize the value of the of their estates." (*Id.* at 11.)

In a related provision, the Court determined:

**Buyers Are Not Insiders and No Successor Liability.** The Buyers are not "insiders" or "affiliates" of the Debtors, as those terms are defined in the

---

[11]     Dkt. 27 at 44.

[12]     *Id.* at 1, 17-19. 11 U.S.C. § 363(f) allows the trustee to sell property of the estate "free and clear of any interest in such property of an entity other than the estate …."

[13]     *See* Dkt. 889 in Case No. 15-10541 (BLS), U.S. Bankruptcy Court for the District of Delaware (Notice of Closing).

[14]     Dkt. 27 at 6.

[15]     *Id.* at 6-7.

Bankruptcy Code, and there has been no common identity of incorporators or directors existing between the Buyers and the Debtors. The transfer of the Transferred Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale Transaction) to the Buyers, except as otherwise set forth in the APA, does not, and will not, subject the Buyers to any liability whatsoever, with respect to the operation of the Debtors' businesses *prior to the closing of the Sale Transaction* or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, or vicarious liability. Pursuant to the APA, the Buyers are not purchasing all of the Debtors' assets in that, among other things, the Buyers are not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyers are not holding themselves out to the public as a continuation of the Debtors. The Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyers and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Buyers and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyers. The Buyers are not a mere continuation of the Debtors or the Debtors' estates, and the Buyers do not constitute successors to the Debtors or the Debtors' estates.[16]

The Sale Order specifically directed that the Transferred Assets would be free and clear of all obligations and encumbrances, including any "successor or transferee liability, including, without limitation, … all claims arising in any way in connection with any agreements, acts or failures to act, of any of the Debtors … whether known or unknown, contingent or otherwise, *whether arising before or subsequent to the commencement of these Chapter 11 Cases*, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal, state or foreign tax laws or doctrines of successor or transferee liability …."[17]

The court further addressed the subject of successor liability within the following section of the Sale Order:

---

[16]     *Id*. at 15-16 (emphasis added).

[17]     *Id*. at 19 (emphasis added).

## NO SUCCESSOR LIABILITY

*The Buyers are not "successors" to the Debtors or their estates by reason of any theory of law or equity, and the Buyers shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates*, other than the Assumed Liabilities, with respect to the Transferred Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability. Except to the extent the Buyers assume Assumed Liabilities and the Buyers are ultimately permitted to assume the Transferred Contracts pursuant to the APA, *neither the purchase of the Transferred Assets by the Buyers nor the fact that the Buyers are using any of the Transferred Assets previously operated by the Debtors will cause the Buyers to be deemed successors in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any* foreign, federal, state, or local revenue, pension, ERISA, tax, *labor, employment*, environmental, or other *law, rule or regulation* (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.[18]

In a later section of the Order, the Court directed:

The Buyers shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Transferred Assets other than for the Assumed Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Buyers shall not be liable for any claims against the Debtors or any of their predecessors or affiliates other than the Assumed Liabilities, and the Buyers shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising whether fixed or contingent, with respect to the Debtors, the Transferred Assets, or any obligations of the Debtors arising prior to the Closing Date ....

Under no circumstances shall the Buyers be deemed successors to the Debtors for any Encumbrances against or in the Debtors or the Transferred Assets of any kind or nature whatsoever. The sale, transfer, assignment, and delivery of the Transferred Assets and the Transferred Contracts shall not be subject to any Encumbrance, and Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances) shall remain with, and continue to be obligations of, the Debtors. All persons holding Encumbrances against, on, or in the Debtors or the Transferred Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting,

---

[18]     *Id.* at 25 (emphasis added).

or otherwise pursuing such Encumbrances of any kind or nature whatsoever (except Permitted Encumbrances) against the Buyers, ….[19]

## III.    All of Plaintiffs' Claims are Based on Their Terminations.

The First Amended Complaint (Dkt. 10) asserts four counts, two under the Family and Medical Leave Act, 29 U.S.C. § 2615, *et seq.*, and two under Ohio state law. All counts arise from and are based upon the Plaintiffs' terminations from employment by SRII, which occurred on July 15, 2015.

Counts I and II assert that, by terminating their employment, the defendants interfered with Plaintiffs' exercise of rights under the FMLA,[20] or retaliated against them for their alleged exercise of FMLA rights.[21] Similarly, Counts III and IV allege that, by terminating their employment, defendants violated Ohio code sections that bar discrimination against employees based on disability and retaliation.[22]

## ARGUMENT

## I.    Legal Standard.

"A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion under Rule 12(b) (6)." *Oehlers v. Ohio Dep't of Transp. Dist. 2*, No. 3:11 CV 6, 2011 WL 3021883, at *1 (N.D. Ohio W. Div. 2011). Under that standard,

> An action may be dismissed if the Complaint fails to state a claim upon which relief can be granted. … At this stage, this Court must accept all well-pled factual allegations as true and construe the Complaint in the light most favorable to [the non-moving party]. Although the Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic

---

[19]    *Id.* at pp. 37-38.

[20]    Dkt. 10 at 12, ¶¶ 63-64. 29 U.S.C. § 2615(a)(1) prohibits an "employer" from interfering with an employee's right to FMLA leave.

[21]    *Id.* at 13, ¶¶ 70-71. 29 U.S.C. § 2615(a)(2) provides that it is unlawful for an employer to "discharge … any individual for opposing any practice made unlawful by [the FMLA]."

[22]    *Id.* at 14-16, ¶¶ 77-79, 86-88.

recitation of the elements of a cause of action." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Pension Benefit Guaranty Corp. v. Findlay Indus.*, Case No. 3:15 cv 1421, 2016 WL 7474404, at *1 (N.D. Ohio W. Div. 2016) (selected citations omitted). "The court need not, however, accept unwarranted factual inferences." *Oehlers*, 2011 WL 3021883, at *1 (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1997)).

In deciding a motion under Rule 12, the Court may take judicial notice of prior bankruptcy proceedings and consider orders from such proceedings. *Crull v. Dana Corp.*, Case No. 1:12 CV 854, 2012 WL 3241803, at *2 (N.D. Ohio W. Div. 2012) ("It is well established courts may consider public records and take judicial notice of appropriate facts.").

## II.   The Sixth Circuit Follows the Majority Rule, Which Enforces Bankruptcy Court "Free and Clear" Sale Orders.

In *Al Perry Enterps. v. Appalachian Fuels, LLC*, 503 F.3d 538, 541 (6th Cir. 2007), the Sixth Circuit for the first time "considered the effect of a bankruptcy court's approval of the sale of a bankrupt party's assets 'free and clear' of all liens, claims and encumbrances.'" In that case, the plaintiff entered into a sales agency contract with a party that later filed for bankruptcy. After making product sales, the plaintiff claimed it was owed commissions on sales under the contract. Plaintiff asserted those claims against the party which had later acquired the debtor's assets through a bankruptcy auction sale. The sale order, as here, provided that the assets were sold free and clear of all liens and claims.

The Sixth Circuit said, "The bankruptcy court has clear power to approve the sale of debtors' assets free and clear of any interest or claims that could be brought against the bankrupt

estate during bankruptcy pursuant to 11 U.S.C. § 363(f)." 503 F.3d at 543. Section 363(f)

provides that a debtor may sell property "free and clear of any interest in such property of an

entity other than the estate." 11 U.S.C. § 363(f).

Since the plaintiff in *Appalachian Fuels* had not asserted its claim in the bankruptcy

court, the Sixth Circuit declared that the claim was barred by the bankruptcy court's sale order

unless the asset buyer had expressly assumed the obligation to pay commissions to the plaintiff.

*Id*. at 543. The court concluded that the sale order made no mention any obligation to pay

commissions, and explained:

> Adoption of the interpretation of the purchase agreement argued by [plaintiff]
> would result in the assumption of a myriad of obligations by the buyer of an
> executory contract even though those obligations were not created by the
> executory contract and were not expressly referred to in an asset purchase
> agreement or an order of the bankruptcy court. As [plaintiff] concedes, its
> interpretation of the language of the purchase agreement would require [the asset
> buyer] to assume various 'ancillary liabilities', such as federal and state permits,
> rail contracts and third party vendor agreements, which are only tangentially
> related to the previous owner's operation under the contract. Such a reading of the
> purchase agreement would lead to potentially absurd results and would have a
> detrimental effect on the ability of a bankruptcy court to manage bankruptcy
> estates so as to maximize their value. We, therefore, decline to find an assumption
> of such obligations by the purchaser of a bankrupt estate's assets absent an
> express assumption of the obligations.[23]

In 2015, in a case presenting a similar issue, this Court observed that the Sixth Circuit's

decision in *Appalachian Fuels* "appears to bring the Sixth Circuit into alignment with the

majority view" on the question whether a bankruptcy asset sale order providing for the transfer

of assets "free and clear" can "cleanse" those assets of "claims" against the property. *In re*

*Polyurethane Foam Antitrust Litig.*, 86 F. Supp. 3d 769, 780 (N.D. Ohio, W. Div. 2015).

Following that majority approach, this Court held in that case that the sale order's "free and

clear" provision meant that antitrust claims being pursued by the direct purchaser claimants

---

[23]     503 F.3d at 544.

(which were based on pre-sale conduct of the debtor) "attached to the net cash proceeds of the Asset Sale belonging to [the debtor] and not to [the buyer's] purchased assets." *Id*. at 780-81.

In *Polyurethane Foam*, this Court cited *In re Trans World Airlines, Inc*., 322 F.3d 283, 293 (3rd Cir. 2003), as an example of another decision in the majority, reading section 363(f) "more broadly to extinguish, as against purchasers, not only 'interests' in property being sold but also claims against that property." *Id*. at 780. In *Trans World Airlines*, the Third Circuit held that employment discrimination claims brought by employees of the debtor, which were based on events that occurred before the asset sale, qualified as "interests in the property" under section 363(f), and enforced the "free and clear" provision by holding that the asset purchaser was not responsible for those claims. *Id* at 289-93. The court stated that "it was the assets of the debtor which gave rise to the claims," and explained, "Had TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen." *Id*. at 290. The court also explained:

> Moreover, the sale of TWA's assets to American at a time when TWA was in financial distress was likely facilitated by American obtaining title to the assets free and clear of these civil rights claims. Absent entry of the Bankruptcy Court's order providing for a sale of TWA's assets free and clear of the successor liability claims at issue, American may have offered a discounted bid.[24]

The majority approach of enforcing bankruptcy court "free and clear" sale orders has also been applied to employee claims under the FMLA. An example is *Re: Christ Hospital*, Case No. 12-12906 TBA, 2014 WL 2135942, at *3 (Bkr. D. Del. 2014). The facts of that case are very similar to the instant case: the employee was discharged by the bankruptcy debtor shortly before a sale of her former employer's assets through a bankruptcy auction process; the sale order

---

[24] *Id*. at 292-93.

included a "free and clear" provision; and, the employee later brought an FMLA action against both the debtor and the asset purchaser.

The asset purchaser filed a motion to dismiss the action, and also filed a motion with the bankruptcy court for an injunction to enforce the earlier sale order provision which barred claims against the purchaser. 2014 WL 2135942, at *1. In response, the employee argued that language within the FMLA that provides for successor liability trumped the "sale free and clear" provision of 11 U.S.C. § 363(f). *Id.*[25] The bankruptcy court flatly rejected that argument. The court cited *In re Trans World Airlines, Inc*., 322 F.3d 283, 293 (3rd Cir. 2003), and noted a "trend in case law toward expanding the interpretation of" section 363(f). The court concluded, "[t]his Court believes *Trans World Airlines* and its rationale control the situation *sub judice* and that protection afforded by § 363 and the injunction contained in the Sale Order prevent plaintiff's claims being pursued against [the asset purchaser]." 2014 WL 2135942, at *4.

The Bankruptcy Court in Delaware has since followed *Christ Hospital*. In *In re NE Opco, Inc.*, 513 B.R. 871, 872 (Bkr. D. Del. 2014 ), the facts involved an employee, Torres, who had been employed for many years with a company that later filed for Chapter 11 bankruptcy protection. On September 13, 2013, the debtor notified Torres that his employment was terminated. A few days later, on September 16, an asset purchaser closed on its purchase of assets of the debtor, which had been approved by the bankruptcy court. The court's order provided that the assets transferred "free and clear." *Id.* at 873. Torres later filed an action against both the debtor and the asset purchaser, alleging a variety of employment-related claims. Most of the claims were based on events that occurred prior to the closing of the asset purchase, and the court referred to those claims as "pre-closing claims." *Id.* at 875.

---

[25] The FMLA defines the term "employer" to include "any successor in interest of an employer." 29 U.S.C. Sect. 2611(4)(A)(ii)(II).

In its analysis, the court reviewed the holdings in cases including *TransWorld Airlines*
and *Christ Hospital* and held:

> This progression of cases leads the Court to find that, even though [the asset
> purchaser] may have committed a wrongdoing *after* the Court approved and
> entered the Sale Order but *prior* to the sale Closing, the Sale Order and the
> injunction contained therein bars Torres from asserting pre-closing claims against
> [the asset purchaser] related to [its] impending purchase of assets from the
> debtors.

513 B.R. at 877. The court noted also that the terms of the asset sale order "benefited the Debtors
and their creditors," *Id.* at 877, and explained:

> Torres will not be able to circumvent the priority scheme of the Bankruptcy Code
> by asserting successor liability claims against [the asset purchaser] while other
> creditors satisfy their claims against the Debtors, and the debtors received the
> maximum price for the assets because [the asset purchaser] was given some
> comfort through the injunction language contained in the sale order.

> As such, the Court finds that pre-Closing claims against [the asset purchaser]
> related to the sale of the assets do not survive the Closing. Consequently, Torres'
> pre-Closing claims are barred by the Sale Order and enjoined from continuing
> against [the asset purchaser].[26]

## III. The Claims Against Taylor Corporation Should Be Dismissed.

Under the majority view previously adopted by the Sixth Circuit and this Court, the
claims against Taylor Corporation should be dismissed. As the Sixth Circuit said, "The
bankruptcy court has clear power to approve the sale of debtors' assets free and clear of any
interest or claims that could be brought against the bankrupt estate during bankruptcy pursuant to
11 U.S.C. § 363(f)." 503 F.3d at 543.

Here, the Sale Order could not have been more clear and emphatic in stating that Taylor
Corporation did not acquire any "claims" associated with the transferred assets, and also that
Taylor Corporation could not be found to be a successor to the debtors on any theory. As an
example, the Sale Order directed: "Under no circumstances shall the Buyers be deemed

---

[26]     *Id.* (footnote omitted).

successors to the Debtors for any Encumbrances against or in the Debtors or the Transferred Assets of any kind or nature whatsoever." For the Sale Order to be given effect, its terms should be enforced via an order dismissing Plaintiff's remaining claims in this action as a matter of law.

It is beyond dispute that all of those claims are based on alleged facts that occurred *before* Taylor Corporation acquired the subject assets. The Sale Order makes clear that the transfer of assets would not subject the Buyers to any liability whatsoever with respect to the operation of the Debtors' businesses "prior to the closing of the Sale Transaction,"[27] which was on July 31, 2015. Since the Plaintiffs were terminated from employment with SRII before that date, their claims in this action seek to impose liability on Taylor Corporation based on the operations of the Debtors' businesses prior to the asset sale, which is precisely what the Sale Order prohibits.

## IV.    The Authorities Cited by Plaintiff are Distinguishable.

The Court recently asked the parties to submit their leading legal authority. Plaintiffs' response was submitted on May 10, 2018, Dkt. 31. None of the authorities cited in that submission undercut the legal authorities discussed above.

The first case cited by the Plaintiffs, *In re City of Detroit, Mich.*, 548 B.R. 748 (E.D. Mich. 2016), did not involve a bankruptcy court-supervised sale of assets with a "free and clear" provision. Instead, the court applied the "fair contemplation" test for determining whether a claim is cognizable within the context of a bankruptcy filing, which turns on when the conduct occurred in relationship to the petition for relief. *City of Detroit* has no application to the instant facts, particularly since the Sale Order in this case specified that the Buyers assumed no liabilities or claims based on the operation of the Debtors "prior to the closing of the Sale Transaction."

---

[27]    Dkt. 27 at 15.

13

The second case cited by Plaintiffs, *In re Grumman Olson Indus., Inc.*, 445 B.R. 243 (S.D.N.Y. 2011), is also inapplicable because there the plaintiff's right to bring the claim at issue had not accrued at the time of the bankruptcy asset sale, which makes that case quite different.

The final case cited by Plaintiffs, *Miller v. Level 3 Communications, LLC*, No. A03-4451, 2005 WL 1529419 (D.N.J. June 29, 2005), is one that does not reflect the majority trend in the case law discussed above. Moreover, the court's analysis in *Miller* was expressly rejected by the bankruptcy court for the District of New Jersey in the *Christ Hospital* case discussed above. 2014 WL 2135942, at *3. While the court in *Miller* had concluded that the bankruptcy court's sale order was not dispositive as to whether the asset buyer was a successor to the debtor, the *Christ Hospital* court rejected that view and instead found that "*TransWorld Airlines* and its rationale control the situation …." As noted above, the *Christ Hospital* court's analysis was recently expressly adopted in another bankruptcy case from New Jersey, the *NE Opco* case.

## V. The Amended Complaint Fails to State a Viable FMLA Claim Against Taylor Corporation.

Where a pleading fails to allege a substantive element of the plaintiff's claim for relief, it does not state a claim. *See Shaw v. Total Image Specialists, Inc.*, No. 2:07-cv-717, 2010 WL 1390470, at *4 (S.D. Ohio E. Div. 2010) (dismissing FMLA claim because complaint did not plead that defendant had the requisite number of employees, "a substantive element of" the claim).

Under the FMLA, "An employee becomes eligible … after working for a covered employer for at least 12 months." *Grace v. USCAR*, 521 F.3d 655, 671 (6th Cir. 2008) (citing 29 U.S.C. § 2611(2)(A)(i)). Here, in contrast to the allegations against SRII (*see* First Amended Complaint, Dkt. 10 at 2-3, ¶¶ 5-6), the First Amended Complaint includes no allegation that the

Plaintiffs were employed by Taylor Corporation for that minimum period, and accordingly it is "insufficient to state a claim under the FMLA" against Taylor Corporation. *Id.*

## CONCLUSION

Plaintiffs do not state a viable claim for relief against Taylor Corporation. Taylor Corporation acquired assets of the Plaintiff's former employer, but that purchase was conditioned on the lawful requirement that the assets would transfer free and clear of all claims based on pre-sale conduct. Since the claims against Taylor Corporation are based on alleged acts that occurred before the asset sale, the claims are barred by the Sale Order and should be dismissed.

Respectfully submitted,

*s/ Craig A. Brandt*
Craig A. Brandt (Minn. Bar No. 214036)
SNYDER & BRANDT, P.A.
Canadian Pacific Plaza, Suite 2550
120 South Sixth Street
Minneapolis, MN 55402
(612) 787-3100 (telephone)
(612) 333-9116 (facsimile)
craig.brandt@snyderattorneys.com

JARED A. WAGNER (#0076674)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Tel. 937.224.3333
Fax. 937.224.4311
jawagner@green-law.com

*Attorneys for Defendant Taylor Corporation*

15

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing has been served electronically through this Court's electronic service system upon counsel for Plaintiff on this the 29th day of May, 2018, and pursuant to Local Rule 7.1(f) I further certify that this action has been assigned to the standard track and that this motion adheres to the page limits and requirements set forth within the local rules and the orders and instructions of Judge Zouhary.


*s/ Craig A. Brandt*
Craig A. Brandt (Minn. Bar #214036)