**EXHIBIT "4"**

```
 1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF OHIO
 2                    WESTERN DIVISION

 3  JOYCE AND TIMOTHY          Docket No. 3:17CV1381

 4  ARNOLD,

 5          Plaintiffs,           Toledo, Ohio

 6          v.                    August 7, 2018

 7  TAYLOR CORPORATION,

 8          Defendants.

 9  -----------------------------

10               TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE JACK ZOUHARY
11               UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  For the Plaintiffs:  Matthew B. Bryant
                         3450 West Central Avenue
15                       Toledo, Ohio 43606
                         (419) 824-4439
16                              AND

17          Daniel I. Bryant
            1457 South High Street
18          Columbus, Ohio 43207
            (614) 704-0546
19
    For the Defendant:
20                       Craig A. Brandt
                         Snyder & Brandt
21            120 South Sixth Street
              Suite 2550
22                       Minneapolis, Minnesota 55402
                         (612) 787-3100
23

24

25  Court Reporter:      Angela D. Nixon, RMR, CRR
                         1716 Spielbusch Avenue
```

```
 1                    Toledo, Ohio 43624
                      (419) 260-5259
 2

 3   Proceedings recorded by mechanical stenography, transcript

 4   produced by notereading.

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon.  We're here on case

2    number 17CV1381, Arnold versus Standard Register.  This

3    matter is scheduled today for a hearing on the defendant's

4    pending motion for judgment on the pleadings, document

5    number 32.  The plaintiff has opposed, document number 33,

6    and The Court has sent out questions in advance of the

7    hearing to be discussed today, document number 34.

8          Present in court on behalf of the plaintiffs are

9    the Bryant brothers, Daniel and Matthew.  And on behalf of

10   the defendant we have Craig Brant.

11         I tend to conduct these in sort of a crossfire

12   fashion, counsel, so don't be surprised if I ask you to

13   pause so I can hear from the other side.  We have more of a

14   back and forth as opposed to colloquies by one side or the

15   other.

16         So question number one that I posed to all of you

17   is a timeline that we prepared given our understanding.

18   And I just want to confirm for you -- with you, that the

19   timeline is accurate.  And if it's not, tell me so.  Let me

20   start with Craig.  Is it accurate?  Yes, please use the

21   microphone.  You can tell that by speaking close to it,

22   your voice will project.  Make sure the light above the

23   word "push" is lit red, that means it's on.  And the

24   microphones can be moved from the base and from the long

25   gooseneck as well up or down.  Feel free to be seated when

1   you speak or stand, whatever is more comfortable for you.

2       MR. BRANDT:  Thank you, Your Honor.  Craig Brant

3   on behalf of the defendant Taylor Corporation.  Just a

4   brief note, Your Honor, you identified the name of the

5   action at the beginning.

6       THE COURT:  Yes, I see that.

7       MR. BRANDT:  Standard Register is no longer a

8   party.

9       THE COURT:  That's correct.  So we drop the et

10  al., and it's only the defendant Taylor Corporation?

11      MR. BRANDT:  Right.  So the only defendant is the

12  asset purchaser in the bankruptcy asset sale, not a debtor.

13  But to answer The Court's question, the timeline that was

14  provided in question number one we think is not accurate.

15  And there's several points that I wanted to raise in regard

16  to that point, Your Honor.  The most important one is that

17  the timeline is omitting some relevant information about a

18  second claimed bar date that was established by the

19  Bankruptcy Court that post dates that July 8, 2015 general

20  claims bar date that's referenced in The Court's timeline.

21      THE COURT:  So in other words the dates are

22  accurate, but you want to add some additional dates you

23  believe are important?

24      MR. BRANDT:  That is correct, Your Honor.

25      THE COURT:  And give me those dates.  Just give

 1   me the date, please, and what happened on that date.

 2        MR. BRANDT:  On November 18th of 2015 in the

 3   bankruptcy case, there was a second amended Chapter 11 plan

 4   of liquidation submitted.  And then on the following day,

 5   the 19th of November 2015, it was adopted with the

 6   Bankruptcy Court issuing findings of fact, conclusions of

 7   law and an order.  And the key point here is that in -- in

 8   that document, the second amended plan of liquidation, The

 9   Court established an additional claims bar date for claims

10   that arose after the filing of the Bankruptcy Court action

11   in March of 2015, and which accrued from that point in time

12   to a date in December of 2015.  And The Court specified in

13   an order that was issued by the Bankruptcy Court related to

14   this second amended plan that that claims bar date was

15   January 16th -- January -- pardon me, a date in January of

16   2016.  And I can tell you the specific date because I have

17   a copy of that order here, which is available in the

18   Bankruptcy Court record.  That is an order that was filed

19   December 18th of 2015.

20        THE COURT:  Do you have a copy of those orders --

21        MR. BRANDT:  I do, Your Honor.

22        THE COURT:  -- that you just now referred to?

23        MR. BRANDT:  Yes, I do.

24        THE COURT:  Can you please hand one to my clerk.

25   And if you haven't provided one yet to opposing counsel,

1    we'll make copies so they have it as well.

2         MR. BRANDT:  I only have one hard copy of the

3    second amended order, but I would note, Your Honor, that

4    this was filed in the record of the case.  It's part of

5    that lengthy submission, I think it's docket 26.

6         THE COURT:  If it's already filed, then you don't

7    need to hand up a copy.

8         MR. BRANDT:  But the one that is not of record is

9    the related order that sets the second bar date.  So I

10   will, if Your Honor permits, provide a copy.  And I do have

11   multiple copies of this so I can give one to opposing

12   counsel right now, hereto for The Court.

13        THE COURT:  Thank you.

14        MR. BRANDT:  I believe it's paragraph -- pardon

15   me, I believe it's paragraph seven of that order which

16   established the deadline of January 16 for what I referred

17   to in this docket as administrative expense claims.  I'm

18   not a bankruptcy practitioner, but I did -- The Court may

19   recall that some months ago there was still some

20   uncertainty about whether the bankruptcy debtor was or was

21   not a defendant, had it been served, et cetera.  And The

22   Court, in one of our status conferences, had asked me to

23   try to make contact with one of the bankruptcy lawyers for

24   Standard Register, which I did, which ended up leading to

25   the letter that was sent to me which The Court asked me

1    subsequently to submit and file, which is docket 26.  And

2    in that letter that was filed by the lawyer representing

3    the debtors in the bankruptcy case, that's the letter dated

4    April 2 that's part of The Court file.  One of the points

5    that the bankruptcy lawyer made, he had first said that the

6    claims were barred by the initial claims bar date, but then

7    he said on Page 2 of his letter of April 2nd of this year,

8    he said, third, any claims against the Standard debtors are

9    barred and enjoined by another order of the Bankruptcy

10   Court.  And then he went on to explain that this order

11   entered on November 19 set a subsequent bar date, and made

12   the point that the plaintiffs in the case never filed a

13   claim in the bankruptcy process by that second bar date.

14   So, therefore, their claims against the debtors were

15   proposed by the terms of the confirmation plan and order

16   issued by the Bankruptcy Court then later in 2015.

17            THE COURT:  Who received notice of this order

18   that you've just handed out?  To whom was it sent?  Would

19   it have been sent, more specifically, and please answer

20   yes, no or I don't know, would it have been sent to

21   employees of the company?

22            MR. BRANDT:  I don't know the answer, Your Honor.

23            THE COURT:  That's all I need to know.

24            MR. BRANDT:  Okay.

25            THE COURT:  But go ahead.

1          MR. BRANDT:  In the letter that I was just

2     quoting, that the letter that the lawyer for -- in the

3     bankruptcy case had written in the paragraph just before

4     the one I was just quoting --

5          THE COURT:  Well, I'm not going to have you quote

6     from a letter that's not in the record and the person's not

7     here to testify about it.

8          MR. BRANDT:  It is in the record, Your Honor.

9          THE COURT:  Okay.  Is this document 26?

10          MR. BRANDT:  Yes.  It's the introductory letter

11     that introduced and provided in a number of the Bankruptcy

12     Court material.

13          THE COURT:  That's fine.

14          MR. BRANDT:  But he explained in that paragraph

15     what efforts were made to provide notice of the initial

16     claims bar date order.  He didn't address the topic of what

17     efforts were made to provide notice of the second claims

18     bar date order in his letter, and I don't know, in fact,

19     what happened.  I did not address this subject in our

20     motion papers because I thought this was not in dispute.  I

21     thought this was clear that the plaintiffs had not filed a

22     claim in the bankruptcy case, their argument about their --

23          THE COURT:  I don't think anyone is disputing

24     that, are you?

25          MR. BRYANT:  No, Judge.

1            THE COURT:  No.  No one's disputing that they

2    didn't file a claim in the bankruptcy case.

3            MR. BRANDT:  Right, but their argument has been

4    that the claims bar date preceded the accrual of their

5    claims.  And my point is I don't believe that's accurate.

6            THE COURT:  Well, if you can answer my question

7    of whether, and to whom this second notice was sent to,

8    then their argument may still be well taken.

9            MR. BRANDT:  I don't know.  I would imagine, Your

10   Honor, that that information is revealed in the Bankruptcy

11   Court file, but I didn't address that subject in my motion

12   papers because, like I said, I thought this was not in

13   dispute.  I didn't realize there was an issue about the

14   claims bar date being after the date on which the

15   plaintiffs' claim to accrue.

16           THE COURT:  Okay.

17           MR. BRANDT:  So that, I believe, is an inaccuracy

18   of the timeline.  There are a couple of other points that I

19   wanted to raise about --

20           THE COURT:  Not now.  I want to get through my

21   questions.

22           MR. BRANDT:  Yes, sir.

23           THE COURT:  I'm only focused on the timeline

24   right now.

25           MR. BRANDT:  These are about the timeline.

```
 1              THE COURT:  What other dates do you have for me?
 2              MR. BRANDT:  Well, the other points I wanted to
 3      make, Your Honor --
 4              THE COURT:  No, I just want dates.  That's all
 5      this question is focused on, dates that might be important.
 6      I'll, of course, entertain other arguments as we go through
 7      these.
 8              MR. BRANDT:  I have other points to make about
 9      the timeline, but they don't relate to the dates as such,
10      but, rather, the characterization of events that occurred
11      on dates and the language that The Court used.  And I can
12      address those now, or I can wait if you prefer.
13              THE COURT:  Tell me what's wrong with our very
14      brief summary of what occurred on those dates.  Give me the
15      date and what your problem is with the description.
16              MR. BRANDT:  Yes, Your Honor.  On the date May
17      2015, the first sentence says "Taylor took over the
18      business operations of Standard Register."  I believe that
19      allegation, I would acknowledge that there's allegations in
20      the complaint to that effect, but my point is that that is
21      inconsistent with factual findings made by the Bankruptcy
22      Court in the asset purchase order dated June -- I believe
23      June 19 of 2015, which had confirmed a number of points
24      that relate to that subject, one of which was that the
25      purchaser would not acquire the assets until the end of
```

1    July of 2015, that was the independent party, that there

2    was no common ownership between the purchaser and the

3    debtor, that the purchase was a purchase for value by a

4    third party.  And the allegation that Taylor had took over

5    the business in May is totally inconsistent with those

6    findings of fact made by the Bankruptcy Court.  So I

7    believe that allegation is inaccurate for that reason.

8            The other point I wanted to make of this same

9    nature, it relates to the date July 15, 2015 where The

10   Court's recitation refers to the plaintiffs being

11   terminated and not retired by Taylor.  The complaint here

12   is with the use of the term "rehire."  The plaintiffs were

13   never employed by Taylor Corporation, we submit.  So they

14   were not hired by Taylor, but it wasn't a matter of rehire

15   because they were never employed with -- the plaintiffs

16   were never employed with Taylor Corporation at any time.

17           THE COURT:  Okay.

18           MR. BRANDT:  That's the point I wanted to make.

19           THE COURT:  Thank you.

20           MR. BRANDT:  Thank you.

21           THE COURT:  Any problems from the other side with

22   the timeline or that first question?  Feel free to amend or

23   clarify if you wish.

24           MR. DANIEL BRYANT:  Yes, Your Honor, this is

25   Daniel Bryant on behalf of the plaintiffs.  First, I would

1    like to lead with all of the facts that were pled in the

2    first amended complaint must be accepted as true.

3            THE COURT:  I know, and let me do the same thing

4    with you.  I get -- we've read your brief, I understand the

5    legal standard, I get that.  All I'm focused on now is this

6    timeline and what's wrong with it, if anything.  Okay?

7    Thank you.  And if there's nothing wrong with it, sit down.

8            MR. DANIEL BRYANT:  I think just one point, Your

9    Honor.

10           THE COURT:  Fine.  Go for it.

11           MR. DANIEL BRYANT:  The second bar date that

12   defendant has mentioned is only for administrative fees.

13   It's not for, you know, parties' interest, unsecured

14   creditors.

15           THE COURT:  That's what the heading says, that

16   it's only for administrative fees.

17           MR. DANIEL BRYANT:  Correct.

18           THE COURT:  I saw that as well.

19           MR. DANIEL BRYANT:  So I don't think that is

20   material to this timeline -- to the receiving notice on

21   behalf of plaintiffs.

22           The second point I would like to make very, very

23   briefly, Your Honor, is -- is May 2015 where it is -- the

24   evidence would show, and based on Taylor Corporation's

25   initial disclosures, an affidavit from an employee revealed

1   in the administrative proceedings as well that's referenced

2   in the first amended complaint, is -- and I have a copy of

3   it for The Court's convenience, is, you know, it does say

4   that -- in the initial disclosures it does say that Taylor

5   Corporation concluded that it would not be able to offer

6   employment to all persons, and this is before the asset

7   transaction occurred.  So the exercise of control over the

8   management of Standard Register at that time is rather

9   clear.  And so it's plaintiffs' position that they were --

10          THE COURT:  How do you connect those two dots,

11   the fact that Taylor announced that it would not be able to

12   maintain all the employees doesn't mean it had control over

13   the employees at that time.  What it suggests to me is they

14   made an initial assessment, and one of the items on their

15   agenda was going to be that some folks weren't going to

16   have a job once they took over.

17          MR. DANIEL BRYANT:  Well, for point of

18   clarification, Your Honor, one of the employees works with

19   Taylor Corporation to -- based on information contained in

20   a spreadsheet that was provided to Taylor Corporation.  And

21   based on that spreadsheet, Taylor Corporation decided who

22   would and who would not be employed as of a certain date,

23   and of course plaintiffs were part of that process.  And

24   that is consistent with plaintiffs' opposition that they --

25   their employee -- their personnel files, including their

 1   medical information, were reviewed by Standard Register and

 2   Taylor Corporation, the same individual, Mr. David Clapper.

 3   I have a copy of his affidavit, he's already testified to

 4   that effect.  I have a copy of that if you'd like me to

 5   bring it to The Court's clerk.  If not, that's okay too.

 6         THE COURT:  It's not filed on the record?  It's

 7   not something which either side, at least up to this point,

 8   has sought to make part of the record for purposes of

 9   deciding this motion; is that right?

10         MR. DANIEL BRYANT:  It's referenced in the first

11   amended complaint, but it's not part of any pleadings.

12         THE COURT:  Got you.  If you want to give it to

13   The Court, you may.  It's up to you.  Do you have a copy

14   for opposing counsel?

15         MR. DANIEL BRYANT:  I do.

16         THE COURT:  Thank you.  And this would, for the

17   record, be the affidavit of Dave Clapper, C-L-A-P-P-E-R,

18   and it contains on three pages, four paragraphs with the

19   fourth paragraph having many subparts, A through G.  It's

20   dated July 10 of 2015.  Okay.  We now have that.

21         MR. DANIEL BRYANT:  That's correct, Your Honor.

22         THE COURT:  Anything else on the timeline?

23         MR. DANIEL BRYANT:  Just for purposes of

24   clarifying, of course, the -- it's plaintiffs' -- based on

25   the first amended complaint, Taylor Corporation did jointly

1    employ the plaintiffs during the relevant time period at

2    issue here.  So in terms of the defendant indicating that

3    they never employed them, that is true in the fact that it

4    never paid them on payroll or anything.  But the standard

5    isn't whether they're listed on the payroll, it's about the

6    relationships and control over the aspects of employment,

7    which is evident here.  But other than that and the

8    timeline, there's nothing else from plaintiffs.

9            THE COURT:  Let's go on to question number two.

10    This is for the defendant.

11            What do you think about the Detroit case, a

12    distinction without a difference or with a difference?

13            MR. BRANDT:  Your Honor, it is a distinction with

14    a difference we submit.  Let me explain if I may.  The

15    Court in *City of Detroit* recog -- first of all, the

16    bankruptcy proceeding in *City of Detroit* was a Chapter 9

17    proceeding, not a Chapter 11 proceeding.

18            THE COURT:  Does that make a difference?

19            MR. BRANDT:  It does, and let me explain what

20    happened in that case.

21            THE COURT:  No, just tell me why it makes a

22    difference for purposes of our legal analysis.

23            MR. BRANDT:  Well, it has to do, in part, with

24    the argument that the plaintiff -- or that the -- the party

25    that was not the debtor was making in the *City of Detroit*

1   case.  And if –– the City of Detroit case, Your Honor, The

2   Court recognized that under Chapter 11 where a Bankruptcy

3   Court confirms the debtor's plan that discharges the debtor

4   of all debts arising pre–confirmation, and that was the

5   point that the *City of Detroit* Court made.  And that's

6   cited at footnote 58 of that case.  And in *City of Detroit,*

7   the debtor –– pardon me, the City, which is the debtor, and

8   the Chapter 9 has to do with bankruptcy filings by, I

9   believe public entities, cities and things, where they

10  don't –– where they reorganize and continue in operation,

11  whereas Chapter 11 there's a sale of assets so it's

12  different in nature.  But in *City of Detroit,* the debtor,

13  the city, was not even arguing that claims that post dated

14  its filing for bankruptcy were discharged by the

15  confirmation plan, whereas The Court in *City of Detroit*

16  specifically recognized that in Chapter 11 cases, claims

17  that arose after the bankruptcy filing, post–petition

18  claims but which predated the confirmation plan and order,

19  were discharged by the confirmation plan.  And this relates

20  to the argument that the plaintiffs were making here, which

21  is that any –– because their claims are post petition,

22  they're not barred, and I don't think that claim has any

23  merit, that argument has any merit.  But in *City of*

24  *Detroit,* the debtor essentially conceded that point and

25  wasn't even arguing that any post–petition claims were

1    barred.

2            THE COURT:  So *Detroit* did not raise or discuss

3    the point that is being made by the plaintiffs in this

4    case?

5            MR. BRANDT:  That is right.

6            THE COURT:  So let me ask the other side.  So

7    what good does *Detroit* do you?

8            MR. BRANDT:  Well, Your Honor, one issue is that,

9    as the *In Re: City of Detroit* case concludes, that the

10   claim is based on when a petition, of course, is filed.

11   The plaintiffs in this case did not have any notice at any

12   point during their employment or after their employment of

13   when -- of notice of the bankruptcy proceedings.  And so

14   with respect to whether the difference in Chapter 9 and 11,

15   there is no difference.  The -- in fact, I just perused,

16   and I'm not a Chapter 9, Chapter 11 bankruptcy practitioner

17   primarily, but I just went on the uscourts.gov website, and

18   Chapter 9 is -- they have the same confirmation standards

19   as well -- they have the same confirmation standards as

20   Chapter 11, and those confirmation standards are derived

21   from Chapter 11.  And there really is, in essence, no

22   difference except Chapter 9 is for municipalities, and

23   Chapter 11 is for businesses.

24           MR. BRYANT:  Do you think *NE Opco*, cited in

25   question number three, helps you?

           1          MR. DANIEL BRYANT:  Admittedly, *NE Opco* is a bit

           2   of a hybrid case, Your Honor.  From my knowledge it hasn't

           3   been cited by any Court in -- from my review of the federal

           4   jurisprudence.

           5          THE COURT:  Forget the citations by any other

           6   Court.  Do you agree with the reasoning?  And if not,

           7   what's wrong with the reasoning?

           8          MR. DANIEL BRYANT:  I don't agree with the

           9   reasoning.

          10          THE COURT:  Because?

          11          MR. DANIEL BRYANT:  Because that decision, in

          12   essence, flips the entire bankruptcy proceedings upside

          13   down.  If the -- under The Sixth Circuit standard where the

          14   fair contemplation test -- that that is whether the

          15   plaintiffs, at the time the petition is filed, whether they

          16   have the reasonable diligence, whether they had a claim or

          17   not.  Here they didn't have any notice whatsoever.  In

          18   fact, based on the timeline that we established, Taylor

          19   Corporation and Standard Register knew that the plaintiffs

          20   potentially would have a claim.  And so -- but they did not

          21   notify them based on the information contained in the

          22   spreadsheet.  They just didn't follow those proceedings.

          23   So now after the fact, of course there is one case in the

          24   entire U.S. that does have pre-closing claims are -- are

          25   within the discharge so long as they're relating to that

1  closing.

2          Again, regardless of that position, the

3  plaintiffs in this case did not have any notice of the

4  bankruptcy proceedings.  Solely because they knew that

5  Taylor Corporation was potentially buying or taking over

6  Standard Register does not mean that they were notified

7  properly.  So there was no due process.

8          THE COURT:  The other side has argued today that

9  there was another claims bar date, and so plaintiffs were,

10  according to the defendant, were terminated before that

11  second claims bar date.  And if, in fact, that's the case,

12  doesn't that take the wind out of your sails?

13          MR. DANIEL BRYANT:  Well, no, Your Honor, because

14  they didn't have any notice of that claims bar date solely

15  because, you know, that a second date was reissued or

16  amended through their claim, they could have added the

17  plaintiffs to that plan knowing, as far back May 2015,

18  potentially that there would be a claim.  They didn't amend

19  any schedules, they didn't include any employees.  And

20  based on the record, Taylor Corporation doesn't know if

21  they even sent out any notice to any employees.

22          THE COURT:  Go to question number six, please.

23  Answer that question for me.  We're switching gears here.

24  Have you adequately pled the relevant factors required to

25  establish a successor relationship?  I understand you're

1    arguing both, a joint and a successor relationship.

2           MR. DANIEL BRYANT:  Well, yes, Your Honor.  The

3    plaintiffs' employment status, they were both previously

4    approved for FMLA, both for themselves and for their

5    parents who also suffered from disability and other health

6    conditions.  The successor in interest factors that are

7    codified in 29 U.S.C. 2611(4)(A)(ii)(I), as well as the

8    Federal Regulation Section 825.107.

9           The first is the substantial continuity of the

10   same business operations.  Nothing has changed.  That is

11   pled on Page ID Number 128 of plaintiffs' first amended

12   complaint.  The use of the same plants, which is the second

13   factor, again, nothing has changed.  They're still in the

14   Coldwater, Ohio plant.  That's the same paragraph.

15          The continuity of workforce, that is virtually

16   the same, because the same managerial folks are still

17   there.  The similarity of jobs and working conditions,

18   again, they haven't changed, from our perspective, in terms

19   of the operations.  It's just a matter of taking over that

20   work site.

21          The similarity of supervisory personnel, that is

22   satisfied as well within the same page, especially

23   considering David Clapper, who filled out an affidavit in

24   2016, is still -- was still an employee at that time, so

25   that remains unchanged.  The similarity in machinery

1    equipment and production methods, while I can't identify

2    specific machinery and equipment, the same production

3    methods, based on talking to the plaintiffs, remains the

4    same as well.

5         The products and services, we've pled facts to

6    indicate that that remains the same.

7         And the ability of the predecessor, that's been

8    established that they're basically defunct entities.  So

9    there is no real relief that could be obtained from

10   Standard Register.

11        So based on those factual allegations, they have

12   satisfied those factors that are required (phonetic) for

13   successor interest, Your Honor.

14        THE COURT:  Let me hear from defendant on the

15   several questions that I've asked opposing counsel.

16        MR. BRANDT:  Thank you, Your Honor.  I just want

17   to briefly follow up to a couple of comments, and I'll

18   proceed to those questions.

19        Counsel -- opposing counsel is making the point

20   that his clients didn't have notice of the bankruptcy

21   process, that the claims bar date, et cetera.  That point

22   is not covered in the amended complaint.  It's not in the

23   record.  It's just argument of counsel, statements in the

24   brief.  So it's not part of the record on which the motion

25   is based, and it's not in the record.

1          Counsel referred to the affidavit of Mr. Clapper.
2    I read the amended complaint this morning in preparation
3    for the hearing.  I didn't see any reference to the
4    affidavit.  I may have missed it, but I don't believe this
5    is part of the complaint either.  Mr. Clapper says in the
6    affidavit that was handed out this morning, at the time of
7    these events in July of 215 he was an employee of Standard
8    Register.  He hadn't been hired by Taylor Corporation, and
9    that didn't happen until two weeks later at the end of the
10   July.

11         Now, with regard to question three about that *NE*
12   *Opco* case, we think that that represents the analysis that
13   The Court should apply in this case, Your Honor.  The Court
14   did get it correct that the case is very much factually
15   similar with the fact pattern that The Court is dealing
16   with in this matter.  The legal issue had to do with the
17   effect of the free and clear provision in the sale order
18   which related to the claims against the asset purchaser,
19   Taylor Corporation.  And the reasoning that The Court
20   adopted in *NE Opco*, and also which had been adopted in that
21   *Christ Hospital* case decided by the District Court or the
22   Vegas Court in Delaware just a few minutes before *NE Opco*
23   reaching the same basic holding.  In those cases The Courts
24   looked at and followed the approach of a Third Circuit
25   decision called *Transworld Airlines* which addressed the

```
 1   subject of this 363(f) of the Bankruptcy Code of these free
 2   and clear sale provisions.  And in a nutshell, The Court
 3   said we're going to follow this approach of *Transworld*
 4   *Airlines* which is now the majority view.  It's a change in
 5   the law, but it's the majority view now.  And that same
 6   approach, the *Transworld Airline* approach, has been adopted
 7   by The Sixth Circuit.  And The Court recognize that point
 8   in the *Polyurethane Foam* case that we cited in our brief.
 9            THE COURT:  That's an excellent opinion, isn't
10   it?
11            MR. BRANDT:  Very much so.  But since the --
12   since those -- the Bankruptcy Courts in Delaware, which
13   were addressed, said we need to follow the approach of
14   *Transworld Airlines*, which leads us to conclude that we
15   must follow the terms of the free and clear sale provision,
16   and that that free and clear provision extinguishes claims
17   that accrued before the closing of the asset sale.  Those
18   opinions reflect what we can predict The Sixth Circuit
19   might decide on that same question since the Sixth Circuit
20   has adopted that *Transworld Airlines* analysis.  So that I
21   think is a clear guidepost for what The Court ought to do.
22            And there are two -- at least two decisions from
23   that same Bankruptcy Court within the last four years on
24   this precise issue, and both of them adopted the same
25   holding, concluding that any claims that accrued prior to
```

1   the asset sale, not the filing of the bankruptcy case, but

2   prior to the closing of the transaction were barred.  And

3   in *Northeast Opco* I think The Court went even further and

4   said this is a case where the claims accrued after the

5   bankruptcy filing, post petition, and even after the

6   issuance of the Bankruptcy Court order approving the sale,

7   but then accrued between the order approving the sale and

8   the closing date of the sale, which is basically what we

9   have here, given that the terminations occurred on July 15,

10  2015, which post dated the Bankruptcy Court order approving

11  the asset sale, but predated the closing by more than two

12  weeks.

13          So those same analysis ought to apply here, that

14  *Christ Hospital* case, which adopted the same approach, has

15  the additional overlay, Your Honor, of involving FMLA

16  claims like are at issue in this case.  And in *Christ*

17  *Hospital* The Court went one step further and said the

18  363(f) of the bankruptcy code and the law reflected in this

19  *Transworld Airlines* decision trumps the general standard

20  for successor liability that are provided for under the

21  FMLA.  And those standards relate to the question, The

22  Court's question number six, about how the plaintiffs

23  adequately pleaded those counts.

24          The first phrase of the question was assuming

25  plaintiffs' claims survive the bankruptcy discharge --

1  there I would assume the bankruptcy discharge, the
2  bankruptcy discharge extinguished the claims against the
3  debtor which is no longer a party to the case.  It was the
4  Bankruptcy Court's order approving the asset sale which
5  extinguished the claims against Taylor Corporation which
6  predated the closing of the transaction.

7          Respectfully, I don't believe those have been
8  properly pled, Your Honor.  And the paragraph in question
9  is paragraph 21 of the amended complaint.  It's a
10  conclusory allegation involving legal conclusions.  That's
11  the first point.  But beyond that, Your Honor, some of the
12  allegations are directly contrary, again, to factual
13  findings made by the Bankruptcy Court in the sale order.

14          One of the examples that Mr. Bryant mentioned was
15  this point about continuity.  And they just pled in
16  their paragraph 21, the language of the standard.  There is
17  substantial continuity of the similar, if not the same
18  business operations, they pled.  But that's totally
19  inconsistent with the finding on that specific point made
20  in May -- or pardon me, made years before in the sale order
21  that was in June of 2015 where the Bankruptcy Court said,
22  and this is quoted at Page 5 of our brief, there is not
23  substantial continuity between the buyers and the debtors.
24  So pleading something that's totally inconsistent with
25  findings of fact made previously by a Federal Court is not

1    satisfactory pleading of the standard.  I just don't think

2    it's occurred.  So I guess I'll -- I'll -- I'll conclude my

3    comments about those questions, Your Honor.  If you have

4    other questions, I'll be glad to answer those.

5            THE COURT:  Thank you.  I'll give you the last

6    word.

7            MR. DANIEL BRYANT:  Well, Your Honor, I'm going

8    to -- I'm not going to reread the brief that's in

9    opposition to the defendant's motion in terms of how to

10   distinguish the various case law that's already been cited

11   for the record.  But one point with the case in the

12   bankruptcy was a case out of the *Opco* case.  The *Opco* case

13   is much different than the facts before -- before The Court

14   now because in two main respects.  Really there's no

15   argument based on my -- my reading of that decision or of

16   that opinion, that no arguments were raised, nor any

17   notice, opportunity to be heard or due process.  It was

18   just much different than the case here because that is a

19   material issue in this case.

20           Second, there's no apparent joint participation

21   by the acquiring entity in the discriminatory practices

22   like there are here.  The fact that -- those two

23   differences are key because, in essence, the *Opco* case

24   didn't have the argument of notice and due process to

25   consider before The Court when making that decision.  So

1    that is a key distinction under these facts because we have

2    raised that issue.  And plaintiffs have not received

3    notice, and, therefore, they didn't have due process at any

4    point during the bankruptcy proceeding, so their claims did

5    not arise until well after the closing.  They found out

6    that Taylor Corporation had a job fair and that they were

7    hiring for the same positions that the plaintiffs held.  So

8    that's what spurred them to contact and consult an

9    attorney.  That's the only way they actually figured out

10   that there was maybe something wrong with the way they were

11   terminated since they had been employed there from, in

12   essence, their entire lives, 1979 and I believe in 1990.

13   So that's really -- their claims aren't subject to

14   discharge or the sale.  And that's key -- a key distinction

15   in this case versus the *Opco* one.

16          THE COURT:  Thank you.

17          MR. DANIEL BRYANT:  Thank you, Your Honor.

18          THE COURT:  After a careful review of the filings

19   in this case as well as the argument we just held, this

20   Court concludes that the defendant's motion for judgment on

21   the pleadings should be denied.  While some facts are

22   undisputed today, perhaps some facts are disputed.  This

23   court believes as follows:  Taylor bought Standard Register

24   in an asset sale related to a Chapter 11 bankruptcy

25   proceeding.  No one's disputing that.  Taylor claims it

1    cannot be held liable as either a successor or a joint

2    employer.  Plaintiff argues the decision to terminate took

3    place post petition and cannot be included in any

4    bankruptcy discharge.  Plaintiff further suggests that

5    Standard Register held an employee meeting in May before

6    the Bankruptcy Court orders of June and July where the

7    staff was advised that Taylor was reviewing employee

8    records, and further suggests that the decision on which

9    the employee should be terminated was made by Taylor with

10   input from Standard.  Defendant believes that the

11   Bankruptcy Court orders are all this Court needs to decide

12   this motion.  The argument today further confirms that this

13   Court disagrees with that conclusion.  Given the

14   allegations in the complaint, discovery is appropriate to

15   determine what role, if any, Taylor had with Standard and

16   the transition, and whether there is sufficient evidence to

17   find Taylor was a joint or a successor employer.

18        It is unclear from the Bankruptcy records that

19   the closing of the Bankruptcy took place before plaintiffs'

20   claims arose.  Seems to me it does, but I can't say with

21   certainty.  This disputed fact alone distinguishes the

22   cases cited by defendant where the specifics of this case

23   are not included, or the arguments not made in those other

24   cases.  Indeed, neither side has, frankly, provided me with

25   a case on point with this case.

1          So given the status of this case, that is a

2     motion for judgment on the pleadings with the burden being

3     heavy on the defendant, this Court is denying the

4     defendant's motion.  All of this may be appropriate in

5     reaching a different conclusion on summary judgment.  I

6     cannot say today, because there needs to be a further

7     record for this Court.  And so with that, I'm going to

8     allow the plaintiffs, if they wish, I'm not saying they

9     should, but given the arguments made, if they wish to an

10    file an amended complaint, they may do so if you give me a

11    date by which you will make that decision.  Because then I

12    want to give the defendant a date certain for filing an

13    answer.  And I want to move this case forward.

14         Do you wish to amend your complaint in any way,

15    shape or form?

16         MR. DANIEL BRYANT:  Your Honor, if it pleases The

17    Court, we're happy to amend the complaint to address those

18    issues.

19         THE COURT:  Would please The Court if you didn't,

20    frankly, but that's your decision, because the time frame

21    will be expended.  I'm not saying you should, you've heard

22    some arguments.  I'm not saying that the complaint needs to

23    obtain every fact that discovery might disclose, but for

24    some reason if you think it's deficient in some way, feel

25    free to beef it up, so to speak, if you wish.  I'm going to

1   give you a week to make that decision, a week from today.

2   If you file an amended complaint, fine.  If you don't,

3   we'll assume you're standing on your original complaint.  I

4   would expect the defendant either way is going to file an

5   answer.  And assuming that you'll get a -- an answer to

6   that question, Craig, by next Tuesday, how much time do you

7   want to file an answer; two weeks?

8          MR. BRANDT:  Two weeks after, that's fine.

9          THE COURT:  Okay.  I'm also going to send out --

10  I don't believe we sent out a report of the parties -- we

11  were focused on this legal issue and whether this case

12  could be decided by this motion on the pleadings.  So I'm

13  also going to send to parties to fill out, and we should

14  have a phone call on that.  The report is your opportunity

15  to talk with each other, meet and confer.  We're double

16  checking the docket.  We've already had a CMC and a report.

17         Let's take a look at doc 19 in the report and see

18  what changes, if any, we need to make to that.  You two can

19  confirm and jointly, please, by e-mail or otherwise, send

20  us how you think that case schedule should be amended, if

21  at all.  And then we'll take a look at what you have and go

22  forward.  Apparently you were anticipating a close of

23  discovery nine months from the date of the order which I

24  just announced and will enter.  So I'll take a look at your

25  report, and I'll doctor it up a little bit and put specific

Case 3:17-cv-01581-BJS   Doc #: 436   Filed: 10/11/18   31 of 32   PageID #: 798

1  dates in there so we all don't have to guess at what those

2  dates are.  So you can forget that additional homework

3  assignment.  I'll take that on myself.

4          And anything else you want to place on the record

5  while we're all together?  No.  Thank you very much.  We

6  are adjourned.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   C E R T I F I C A T E

 2

 3         I certify that the foregoing is a correct transcript

 4    from the record of proceedings in the above-entitled matter.

 5

 6    s:/Angela D. Nixon              October 10, 2018

 7    --------------------------              -----------

 8    Angela D. Nixon, RMR, CRR       Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```