**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

SRC Liquidation, LLC,[1]

                    Debtor.

Chapter 11

Case No. 15-10541 (BLS)

**Re: Docket No. 698, 2344, and 2363**

**Hearing Date: November 14, 2018 at 10:30 a.m. (ET)**
**Objection Deadline: October 26, 2018 at 4:00 p.m. (ET)**
(Extended to 10/29/18 at 4:00 p.m. (ET) for Tim and Joyce Arnold)

**REPLY OF TAYLOR CORPORATION TO OBJECTION OF TIM**
**AND JOYCE ARNOLD TO THE MOTION OF TAYLOR CORPORATION**
**PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S**
**JUNE 19, 2015 SALE ORDER AND INJUNCTION**

**INTRODUCTION**

    In their Objection to the pending Motion by Taylor Corporation, Joyce and Tim Arnold

do not contest any of the following points:

- They were long-time employees of Debtor The Standard Register Company ("Standard

    Register") and were discharged from that employment by Standard Register on July 15,

    2015, several months after Standard Register and affiliates had filed this Chapter 11

    bankruptcy proceeding.[2]

---

[1]    The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries
regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood
Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

[2]    *See* Objection, ¶¶ 7, 10.

- Taylor Corporation purchased certain assets of the Debtors in an auction process supervised by this Court. The terms of the asset purchase were approved and adopted by this Court in its June 2015 Sale Order and Injunction.[3]

- Taylor Corporation's purchase of the subject assets closed on July 31, 2015.[4]

- Among other terms, this Court directed in the Sale Order and Injunction that:

  o it approved the Asset Purchase Agreement ("APA"), which included the term that "Excluded Liabilities" -- which were *not* assumed by Taylor Corporation -- included "any and all liabilities in any way attributable to (i) the employment or service of current or former employees … of the Sellers … who is not a Transferred Employee, regardless of whether such Liability is attributable to the period before, on or after the Closing Date …."[5];

  o other than for specifically-defined Assumed Liabilities, the subject assets transferred free and clear of any claims or encumbrances associated with those assets which arose prior to the closing of the asset sale,[6] and that "on the Closing Date, all Encumbrances of any kind or nature whatsoever existing as to the Transferred Assets prior to the Closing Date have been unconditionally released, discharged and terminated"[7];

  o that the asset purchaser Taylor Corporation was an independent third-party purchaser for value, which did not share common ownership with the Debtors,

---

[3]     *See Id.*, ¶ 3.

[4]     *See Id.*, ¶ 4.

[5]     Doc. 698-1 at 20, § 2.4(e); *see* §§ 5.5(c) and (h)

[6]     *See, e.g.,* Doc. 698 at 20, ¶ 11.

[7]     *Id.* at 35, ¶ 51.

and that Taylor Corporation could not, following the asset sale, be found or held

liable as a successor in interest to any of the Debtors[8];

- o that "[a]ll persons holding Encumbrances against, on, or in the Debtors or the

  Transferred Assets of any kind or nature whatsoever" were "permanently

  enjoined" from asserting any such claim against Taylor Corporation,[9] and that this

  Court reserved "exclusive jurisdiction" to enforce those terms.[10]

- Each of the Arnolds' claims in the pending Ohio action is alleged to arise from the

  termination of their employment by Standard Register on July 15, 2015. The Arnolds also

  allege in their Ohio action that Taylor Corporation is liable as a joint employer with, or as

  a successor in interest to, Standard Register.[11] The Arnolds were never on the payroll of

  Taylor Corporation.[12]

- In their Second Amended Complaint in the Ohio action, the Arnolds do not allege any

  conduct of Taylor Corporation that occurred after July 31, 2015. The Arnolds have also

  conceded that the alleged decision by Taylor Corporation not to hire them as employees

  occurred before July 31, 2015.[13]

- While the Arnolds originally named a Standard Register debtor as the first defendant in

  the Ohio action, they later voluntarily dismissed their claims against that party without

  obtaining any recovery.

---

[8]   *Id.* at 7, ¶ M; 15, ¶ BB; 37, ¶ 55.

[9]   *Id.* at 38, ¶ 55.

[10]   *Id.* at 44, ¶ 73.

[11]   Exhibit A to Motion at 3, ¶¶ 9-11.

[12]   Exhibit 4 to Objection at 15 (counsel for the Arnolds acknowledges that Taylor Corporation "never paid them on payroll or anything").

[13]   *Id.* at 13 ("Taylor Corporation concluded that it would not be able to offer employment to all persons, and this is before the asset transaction occurred.").

These uncontested points are fatal to the Arnolds' misguided attempt to seek a recovery from Taylor Corporation in their pending Ohio action. Accordingly, this Court should promptly issue the requested injunction.

The Arnolds' Objection offers no valid reason for the Court to deny the requested relief. First, it is no doubt appropriate, and it makes perfect sense, that this Court, which in 2015 reserved exclusive jurisdiction over the issue, should decide the impact of the Sale Order and Injunction on the Arnolds' claims, a matter which the Ohio court has *not* conclusively decided. Moreover, the multiple arguments tossed out by the Arnolds in summary fashion in their Objection in support of their overall contention that "the Sale Order is not a bar to their clams"[14] have no merit. The Court in Ohio has made no ruling on any of these specific points.

## ARGUMENT

I.    **THIS COURT SHOULD NOT ABSTAIN FROM INTERPRETING ITS OWN 2015 SALE ORDER AND INJUNCTION.**

1.    The Arnolds have not cited any authority in which a bankruptcy court has held that it should abstain from interpreting an asset sale order issued by that very court, over which the court had previously reserved exclusive jurisdiction, as the Arnolds ask this Court to do. None of the abstention cases cited by the Arnolds in their Objection involved a bankruptcy court's asset sale order such as the one issued in this case, which is the basis for the pending Motion.

2.    This Court in *In re NE Opco*, faced with similar material facts, did not even consider whether it should permissively abstain. The Court stated:

"It is well-settled that a bankruptcy court retains jurisdiction to interpret and enforce its prior orders, especially where, as here, the bankruptcy court expressly

---

[14]    Objection, ¶ 45.

retains jurisdiction to do so." As such, this Court has jurisdiction to interpret and enforce the Sale Order.[15]

The Arnolds did not address *In re NE Opco* in their Objection.

3.      The holding of *In re NE Opco* on this point is consistent with other decisions in cases involving asset sale orders. *See, e.g., In re Personal Communications Devices, LLC*, 556 B.R. 45, 57 (Bankr. E.D.N.Y. 2016) ("On balance, the Court finds that that the presence of factors in support of partial abstention outweigh those against; however, because this Court presided over the sale process and entered the Sale Order, the construction of the Sale Order and APA are issues better left for this Court to decide.").

4.      One of the abstention cases which was cited by the Arnolds, *McMahon Books, Inc. v. New Castle Associates*, 173 B.R. 868 (Bankr. D. Del. 1994), also supports the conclusion that this Court should decide issues relating to the impact of the Sale Order and Injunction. In *McMahon Books*, this Court recognized the common-sense proposition that, where a court has previously reserved to itself jurisdiction to interpret or enforce a document approved by that court, such a reservation "in all probability" means that the court which approved the earlier document "has exclusive jurisdiction over claims relating to it." *McMahon*, 173 B.R. at 874-76 ("Because the declaratory relief sought … calls for the 'effectuation and administration' of the Settlement Agreement, a matter which remains in the jurisdiction of the District Court, I find that this court should abstain from exercising its jurisdiction over the matter."). Here, this Court had reserved to itself exclusive jurisdiction to enforce the Sale Order and Injunction long before the Arnolds commenced their Ohio lawsuit.

---

[15]     *In re NE Opco, Inc.*, 513 B.R. 871, 875 (Bankr. D. Del. 2014) (quoting *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 247-48 (Bankr. S.D.N.Y. 2011), *aff'd*, 467 B.R 694 ( S.D.N.Y. 2012)).

5.     Other case law cited by the Arnolds also suggests that permissive abstention is not appropriate in this instance. In one of the cases, *Crown Village Farm LLC v. Arl, LLC*, 415 B.R. 86, 95 (Bankr. D. Del. 2009), this Court stated:

> [A]bstention is [only] appropriate in a few carefully defined situations.... [It] remains `the exception, not the rule ...'. [It] is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.... Therefore, `abstention rarely should be invoked.'" *Gwynedd Properties, Inc. v. Lower Gwynedd Tp.*, 970 F.2d 1195, 1199 (3d Cir.1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976); *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992)) (internal quotation marks omitted).

> Matters for which permissive abstention is reserved include: (1) matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented, *In re Stephen Smith Home for the Aged, Inc.*, 80 B.R. 678, 682-87 (E.D.Pa.1987); (2) matters in which the proceeding has been removed from state court and/or there is a parallel state court action pending, *In re Tidwell Industries, Inc.*, 87 B.R. 345, 348-50 (Bankr.E.D.Pa.1988); (3) the proceedings principally involve claims asserted by or against non-debtors, *In re Futura Industries, Inc.*, 69 B.R. 831, 835-36 (Bankr.E.D.Pa.1987); and (4) matters in which some other truly extraordinary aspect is present.

6.     In this case, applying the above standards, Taylor Corporation's Motion to enforce the Sale Order and Injunction: 1) does not invoke difficult, uncertain issues of state law or those in which the state has a unique interest; 2) does not involve a matter in which the proceeding has been removed from state court and/or there is a parallel state court action pending; 3) does not principally involve claims asserted by or against non-debtors; and 4) does not contain some other truly extraordinary aspect, as the movant here is merely asking the Court to enforce its own order where the Court previously expressly retained jurisdiction to do so. This is not a matter reserved for possible permissive abstention and, therefore, it is respectfully submitted that the Court should not even proceed to the point of applying the twelve-factor test sometimes applied in resolving abstention motions.

7.      Of the four instances reserved for permissive abstention discussed in *Crown Village*, it appears the Arnolds' rely on the assertion that the proceeding principally involves claims asserted by or against a non-debtor. Any such assertion has no merit. The "proceeding" for these purposes is the instant motion to enforce the provisions of the Sale Order and Injunction, not the claims being litigated in the Ohio action. While the underlying claims may be asserted against a non-debtor, Taylor Corporation is asking the Court to enforce the terms of an asset sale to which the Debtors were a party. There is a clear interest in the Court doing so with respect to these Debtors and its creditors in the bankruptcy case.

8.      Even if the Court determines that it is appropriate to apply the twelve-factor permissive abstention analysis, one need not look any further than paragraph 73 of this Court's Sale Order to determine the ultimate outcome under such analysis:

> 73. Except as otherwise specifically ordered here in, **this Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the APA**, all amendments thereto, any waivers and consents are thereunder, and of each of the agreements executed in connection there with in all respects, **including, but not limited to, retaining jurisdiction to** (a) compel delivery of the Transferred Assets to the Buyer is free and clear of Encumbrances (other than Permitted Encumbrances), or compel the performance of other obligations owed by the Buyers or the Debtors, (b) compel delivery of the purchase price or performance of other obligations oh to the Debtors, (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein, **(d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyers against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Transferred Assets or Transferred Contracts,** or (iii) any encumbrances asserted on or in the Debtors or the Transfer Assets, of any kind or nature whatsoever.[16]

As is evident from the express provisions of the Sale Order, the Court has already considered these factors and does not wish to permissively abstain from such matters. If it wished to permissively abstain or believed permissive abstention was appropriate, it would not have

---

[16]      Doc. 698, ¶ 73, at 44 (emphasis added).

expressly retained exclusive jurisdiction to interpret, implement, and enforce the provisions of the Sale Order, and protect the Buyer against any claims of successor or vicarious liability related to the Transferred Assets. Given the express provisions of the Sale Order, Taylor Corporation does not see any scenario in which application of the twelve-factor analysis would possibly support permissive abstention in this instance.

9.      Finally, there is little risk of inconsistent results in the two cases if this Court decides Taylor's pending motion. The Court in Ohio made clear in denying Taylor Corporation's motion for judgment on the pleadings in August 2018 that it had not made a final or conclusive determination on the question of what impact this Court's Sale Order and Injunction may have on the Arnolds' claims against Taylor Corporation, as the Court said then that it could well reach a "different conclusion" on that issue in response to a subsequent motion.[17]

10.      Another reason why there is little if any risk of inconsistent results in the two cases is that, at the time the court in Ohio denied Taylor Corporation's motion for judgment on the pleadings, the pleading being challenged by the motion was the Arnolds' First Amended Complaint, which made no mention of this bankruptcy proceeding and which did not allege, as their current pleading does, that "their claims are not subject to the Bankruptcy Sale Order."[18] In other words, the Ohio Court's August 2018 order related to the sufficiency of a pleading by the Arnolds that is no longer current or operative in the Ohio case. It is the Arnolds' current pleading, their Second Amended Complaint (filed on August 13, 2018), which contains the untenable assertion that the Arnolds' claims "are not subject to the Bankruptcy Sale Order."[19]

---

[17]      Exhibit 4 to Objection at 29. The Arnolds omitted this portion when they quoted the hearing transcript in their Objection.

[18]      Exhibit A to Motion to Enforce Sale Order at 2.

[19]      Exhibit A to Taylor Corporation Motion, at 2, ¶ 3.

11.    In denying Taylor Corporation's motion for judgment on the pleadings with

respect to the Arnolds' First Amended Complaint, the Ohio Court said:

> After a careful review of the filings in this case as well as the argument we just
> held, this Court concludes that the defendant's motion for judgment on the
> pleadings should be denied. While some facts are undisputed today, perhaps some
> facts are disputed. This court believes as follows: Taylor bought Standard
> Register in an asset sale related to a Chapter 11 bankruptcy proceeding. No one's
> disputing that. Taylor claims it cannot be held liable as either a successor or a
> joint employer. Plaintiff argues the decision to terminate took place post petition
> and cannot be included in any bankruptcy discharge. Plaintiff further suggests that
> Standard Register held an employee meeting in May before the Bankruptcy Court
> orders of June and July where the staff was advised that Taylor was reviewing
> employee records, and further suggests that the decision on which the employee
> should be terminated was made by Taylor with input from Standard. Defendant
> believes that the Bankruptcy Court orders are all this Court needs to decide this
> motion. The argument today further confirms that this Court disagrees with that
> conclusion. Given the allegations in the complaint, discovery is appropriate to
> determine what role, if any, Taylor had with Standard and the transition, and
> whether there is sufficient evidence to find Taylor was a joint or a successor
> employer.
>
> It is unclear from the Bankruptcy records that the closing of the Bankruptcy took
> place before plaintiffs' claims arose. Seems to me it does, but I can't say with
> certainty. This disputed fact alone distinguishes the cases cited by defendant
> where the specifics of this case are not included, or the arguments not made in
> those other cases. Indeed, neither side has, frankly, provided me with a case on
> point with this case.
>
> So given the status of this case, that is a motion for judgment on the pleadings
> with the burden being heavy on the defendant, this Court is denying the
> defendant's motion. All of this may be appropriate in reaching a different
> conclusion on summary judgment. I cannot say today, because there needs to be a
> further record for this Court.[20]

12.    Notably, in deciding Taylor Corporation's motion, the Ohio Court did not

expressly address the impact of the language in the Sale Order and Injunction in which this Court

directed that Taylor Corporation could not be liable, following the closing of the asset sale, as a

successor in interest to the Debtors. The Ohio Court also did not address in its ruling the effect of

---

[20]    Exhibit 4 to Objection at 28-29.

the provision in the APA (approved by this Court) which provided that Excluded Liabilities, which did not transfer to Taylor Corporation, included claims by employees of the Debtors who were not Transferred Employees, regardless of when those claims arose. The Arnolds were not Transferred Employees.

13.     The above-quoted passage from the Ohio hearing transcript also suggests that, in making its August 2018 ruling, the Ohio Court may have misapprehended the timeline of underlying events. While the Ohio Court did not make a finding on the question, it noted its understanding "that the closing of the Bankruptcy took place before plaintiffs' claims arose."[21] As the record here shows, though, the Arnolds were actually discharged from employment by a Debtor more than two weeks *before* the closing of the sale of Debtor assets to Taylor Corporation.

14.     Finally, the Ohio Court, after recently being informed of the pendency of the instant motion in this Court, made no mention in its October 2018 ruling denying transfer of the Ohio action of a risk of inconsistent rulings in the two cases, nor did it suggest that this Court should abstain from interpreting and enforcing its own Sale Order and Injunction.[22]

---

[21]     *Id.* at 28. The Ohio Court's apparent misunderstanding of the sequence of underlying events also appears to be reflected in the July 2018 pre-hearing list of questions for counsel issued by the Ohio Court, in which the Court said, "In this case, Plaintiffs were not terminated until after the claims bar date." Exhibit 3 to Objection at 2, ¶ 4.

[22]     *See* Exhibit 5 to Objection.

## II.    THE ARNOLDS' ARGUMENTS AIMED AT AVOIDING THE IMPACT OF THIS COURT'S SALE ORDER AND INJUNCTION HAVE NO MERIT.

15.    In paragraph 45 of the Objection, the Arnolds list briefly four points in support of their overall contention that this Court's "Sale Order is not a bar to their claims." These points have no merit.

### A.    The Arnolds Received Sufficient Notice of this Bankruptcy Proceeding and of the Sale Order.

16.    The Arnolds allege that they received "constitutionally insufficient notice of the bankruptcy and the Sale Motion," an argument that they made previously in Ohio. That Court, though, did not make any finding on that issue.

17.    Since the August 7, 2018, hearing in the Ohio case, Taylor Corporation located in the record in this proceeding affidavits of service upon both of the Arnolds of (i) a notice of the filing of this proceeding as well as (ii) a notice of the hearing concerning this Court's Sale Order and Injunction.[23] These documents indicate that the notices in question were served on the Arnolds "1) in the manners set forth on the Core/2002 Service List … and 2) via first class mail …".[24]

18.    As this Court has recognized:

In *Mullane v. Cent. Hanover Bank & Trust Co.*, the Supreme Court held that for notice to satisfy due process it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*In re Freedom Commc'ns Holdings, Inc.* 472 B.R. 257, 260-61 (Bankr. D. Del. 2012). In *Freedom Commc'ns*, this Court held that, "as is generally the case, mailing a notice to a party's last-known address is 'reasonably calculated' to provide actual notice." *Id.* at 262 (citing *Tulsa*

---

[23]    Copies of these affidavits were attached to the Motion as Exhibits B and C.

[24]    *See* Exhibits B and C to Taylor Corporation's pending Motion.

*Professional Collection Servs., Inc. v. Pope*, 458 U.S. 478, 490 (1988) ("We have repeatedly

recognized that mail service is an inexpensive and efficient mechanism that is reasonably

calculated to provide actual notice")). In their Objection, the Arnolds offer *no* facts to support a

conclusion that the notices referenced in the affidavits of service were not mailed to their last-

known address.

19.     Moreover, this Court has previously specifically found that notice of the Sale

Order and Injunction and sale hearing was adequate and sufficient. In particular, the Court made

the following determination:

> F. **Notice.** As evidenced by the affidavits of service and publication
> previously filed with the Court, and based on the representations of counsel at the
> Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the
> Sale Hearing, the Sale Transaction, the Assumption and Assignment Procedures
> (including the objection deadline with respect to any proposed Cure Claim) and
> the assumption and assignment of the Transferred Contracts and the Cure Claims
> has been provided in accordance with sections 102(1),363, and 365 of the
> Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and in compliance
> with the Sale Procedures Order, (ii) such notice was good, sufficient, and
> appropriate under the particular circumstances, and (iii) no other or further notice
> of the Motion, the Sale Hearing, the Sale Transaction, or the assumption and
> assignment of the Transferred Contracts or the Cure Claims is or shall be
> required. With respect to individuals and entities whose identities are not
> reasonably ascertained by the Debtors, publication of the Sale Notice (as defined
> in the Motion) in (i) the *New York Times* on April 20, 2015, (ii) the *Dayton
> Business Journal* on April 24, 2015, and (iii) the *Dayton Business Journal
> Morning Edition email newsletter* in five (5) consecutive daily issues dated April
> 20, 2015 through April 24, 2015, was sufficient and reasonably calculated under
> the circumstances to reach such individuals and entities.

Doc. 698 at 4-5. In the Sale Order, this Court also determined that, "a fair and reasonable

opportunity to object or be heard with respect to the Motion and the relief requested therein has

been afforded to all interested persons and entities …." *Id*. at 5.

20.     The Arnolds' Objection ignores this Court's prior, specific finding that notice of

the sale hearing was "proper, timely, adequate and sufficient."

**B.     The Sale Order Preempts Application of General Standards for Finding Successor Liability**.

21.     As they did in the Ohio action, the Arnolds contend in their Objection that this Court's Sale Order and Injunction does not "preempt" the FMLA standard for finding successor liability, but they offer no legal authority in their Objection to support that contention.[25] The Ohio Court made no ruling on this issue.

22.     The Arnolds made the same argument in the Ohio action, but supported it with a citation to a lone 2005 case, *Miller v. Level 3 Communications, LLC*, No. A03-4451, 2005 WL 1529419, at *8-10 (D.N.J. 2005),[26] whose conclusion on that point has since been rejected by the same court which issued the *Miller* decision, the U.S. Bankruptcy Court for the District of New Jersey. In a 2014 decision by that court, *Re: Christ Hosp.*, Case No. 12-12906 TBA, 2014 WL 2135942 (Bankr. D.N.J. 2014), which involved facts quite similar to this case, an employee who had been discharged by the bankruptcy debtor shortly before a sale of her former employer's assets through a bankruptcy auction process alleged that language within the federal Family and Medical Leave Act, which provides for successor liability in some settings, took precedence over the "free and clear" provision of the bankruptcy court's sale order. The bankruptcy court flatly rejected the argument, and said "that protection afforded by § 363 and the injunction contained in the Sale Order prevent plaintiff's claims being pursued against" the asset purchaser.[27]

23.     This Court has since followed the reasoning of *Christ Hospital* in *In re NE Opco, Inc.*, 513 B.R. 871, 877 (Bankr. D. Del. 2014). In that case, this Court said that *Christ Hospital*

---

[25]     Objection at ¶ 45.

[26]     See page 18 of the Arnolds' Response in Opposition to Taylor Corporation's Motion for Judgment on the Pleadings in the Ohio action, a copy of which is attached hereto as Exhibit F. Please note Exhibits A through E were attached to the Motion.

[27]     *Id.* at *3.

"allows successor liability claims to be cut-off as against the purchaser for the purchaser's pre-closing alleged wrongdoing." *Id*. The Arnolds do not address these decisions in their Objection.

C.    A **Bankruptcy Court's Sale Order Can Absolve an Asset Purchaser from the Consequences of its Own Conduct**.

24.    This Court should reject the Arnolds' contention that a sale order issued by a bankruptcy court cannot absolve an asset purchaser from the consequences of its own conduct. This is a new argument, not previously made by the Arnolds in Ohio, and the argument is not supported by any legal authority or analysis set forth in the Objection.

25.    Moreover, the contention is plainly inconsistent with both the plain language of this Court's Sale Order and Injunction, as well as the holdings of recent cases involving similar facts. As noted, the Sale Order and Injunction directs that the assets transferred free and clear of claims "existing as to the Debtors or the Transferred Assets prior to the Closing of the Sale Transaction."[28] This standard encompasses any claims based on pre-closing conduct of the asset purchaser that was associated with the transferred assets, such as what the Arnolds describe as Taylor Corporation's alleged involvement, along with Debtor Standard Register, in selecting them for termination prior to July 15, 2015, when the Arnolds were notified of their terminations by the Debtor.

26.    Recent case law confirms this conclusion. For example, in *In re Christ Hosp.*, 502 B.R. 158 (Bankr. D.N.J. 2013), the court authorized a transfer of a debtor's assets to a purchaser free and clear of claims. Thereafter, a competitor filed a state court action against the debtor and the asset purchaser, and alleged that the purchaser's pre-closing conduct diminished the value of the assets, which in turn harmed the value of its claims against the debtor. The bankruptcy court enjoined the state court litigation against the asset purchaser to the extent that the plaintiff sought

---

[28]    Doc. 698 at 20, ¶ 11.

redress for tortious interference allegedly committed by the purchaser in the course of negotiating and consummating the asset sale because such claims directly related to the purchaser's acquisition and use of the transferred assets. Accordingly, the holding of *In re Christ Hospital* confirms and illustrates that a bankruptcy court's sale order can permissibly absolve an asset purchaser from the circumstances of its own alleged conduct.

27.      As this Court recognized in a later decision, *In re Christ Hospital* "allows successor liability claims to be cut-off as against the purchaser for the purchaser's pre-closing alleged wrongdoing." *In re NE Opco, Inc.*, 513 B.R. 871, 877 (Bankr. D. Del. 2014). This Court went on to hold in *In re NE Opco, Inc.* that a bankruptcy court's sale order absolved the asset purchaser in that case from claims alleging that it engaged in misconduct that harmed the plaintiff after the bankruptcy court had entered the sale order but before the closing of the asset sale. *Id.* Again, the Arnolds do not address these on-point authorities in their Objection.

   **D.      There is No Basis to Conclude that the Arnolds' Claims Accrued After the Closing of the Asset Sale on July 31, 2015.**

28.      The Arnolds aver in their Objection that their claims against Taylor Corporation "did not accrue until after July 31, 2015,"[29] but the Objection includes no legal authority or analysis to support that conclusion. The Arnolds did not make this argument to the court in Ohio, nor did they submit authority or analysis on that point to the Ohio court. The Ohio court has not made any ruling about when the Arnolds' claims accrued.

29.      An FMLA claim arising from a termination of employment accrues when the employee was terminated. *See, e.g., Williams v. Northwest Airlines, Inc.*, 53 Fed. Appx. 350, 352 (6th Cir. 2002) ("Because Williams's claim accrued in January 1999, when he was terminated, it is time-barred …"). Similarly, under Ohio law, a claim for wrongful termination "accrues on the

---

[29]      Objection at ¶ 45.

actual date of termination from employment." *Gleason v. Ohio Army Nat'l Guard*, 142 Ohio App. 3d 697, 703, 756 N.E.2d 1243 (2001).

30.     The Objection provides no basis for ignoring these legal principles, which confirm that the Arnolds' claims against Taylor Corporation accrued on July 15, 2015, well before the closing of the asset sale.

31.     The Arnolds assert (at page 2 of the Objection) that it is their position that their claims arose "at the earliest, at the time they had constructive knowledge of Taylor's actions, which did not happen until after July 31, 2015," but no evidence nor any legal authority was offered in the Objection to support this assertion. Moreover, the Second Amended Complaint identifies no alleged conduct of Taylor Corporation that occurred after July 31, 2015, and the Arnolds' counsel has conceded "that Taylor Corporation concluded that it would not be able to offer employment to all persons, and this is before the asset transaction occurred."[30]

## III.    AN ORDER CONFIRMING THAT THE ARNOLDS ARE ENJOINED FROM PURSUING THEIR INSTANT CLAIMS AGAINST TAYLOR CORPORATION IS CONSISTENT WITH THE STRONG PUBLIC POLICY FAVORING THE FINALITY AND ENFORCEMENT OF ASSET SALE ORDERS IN CHAPTER 11 PROCEEDINGS.

32.     In *In re NE Opco*, this Court stated:

[T]he Court finds that Cenveo negotiated the assumed assets and liabilities, excluded assets and liabilities, and provisions of the Sale Order, including the injunction; and such negotiations led to a bargained for price of the transaction, which benefited the Debtors' and their creditors. **As set forth above, the "free and clear" findings in section 363(f) serves two policies — both which are met here: Torres will not be able to circumvent the priority scheme of the Bankruptcy Code by asserting successor liability claims against Cenveo while other creditors satisfy their claims against the Debtors; and the Debtors received the maximum price for the assets because Cenveo was given some comfort through the injunction language contained in the Sale Order.**[31]

---

[30]     Exhibit 4 to Objection at 13.

[31]     513 B.R. at 877 (emphasis added; footnote omitted).

33.     Essentially, not enforcing this Sale Order and Injunction in this case would enable the Arnolds, creditors of the Debtors, to circumvent the priority scheme of the Bankruptcy Code by asserting successor liability claims against Taylor Corporation while other creditors were left to attempt to satisfy their claims against the Debtors in the bankruptcy process.

34.     "Section 363(m) reflects a strong preference for safeguarding the finality of a sale in bankruptcy." *In re Parker*, 499 F.3d 616, 626 (6th Cir. 2007). "'Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property.'" *Id.* (quoting *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986)). In *Parker*, based on these considerations, the court rejected a litigant's attempt to "collaterally attack" the bankruptcy court's sale order, as the Arnolds attempt to do in their Ohio action.

## CONCLUSION

Based on the points discussed above, and those set forth in Taylor Corporation's pending Motion (Doc. 2344), asset purchaser Taylor Corporation respectfully requests that the Court: (i) enter an order substantially in the form as set forth in Exhibit E to Taylor Corporation's Motion; and (ii) granting Taylor Corporation such other and further relief as the Court deems just and proper.

Dated:    November 8, 2018          **AUSTRIA SHRUM LLC**
          Wilmington, DE

                                    */s/ Matthew P. Austria*
                                    Matthew P. Austria (DE No. 4827)
                                    1201 N. Orange Street, Suite 502
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 521-5197
                                    Facsimile: (302) 543-6386
                                    E-mail: maustria@austriashrum.com

                                    -and-

**GRAY, PLANT, MOOTY,**
**MOOTY & BENNET, P.A.**
Phillip Bohl (MN No. 139191)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3019
Facsimile: (612) 632-4019
Email: phillip.bohl@gpmlaw.com

-and-

**MOSS & BARNETT, P.A.**
Craig A. Brandt (MN No. 214036)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: 612-877-5360
Facsimile: 612-877-5218
Email: craig.brandt@lawmoss.com

*Counsel to Taylor Corporation*

18