**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Joyce Arnold and Timothy Arnold, | * | Case No. 3:17-cv-1381 |
| Plaintiffs, | * | |
| | | Judge Jack Zouhary |
| v. | * | |
| | * | |
| Taylor Corporation, | | |
| | * | |
| Defendant. | | |
| | * | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TAYLOR
CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Now come Plaintiffs Joyce and Timothy Arnold ("Plaintiffs"), by and through counsel, who hereby file their Response in Opposition to Defendant Taylor Corporation's Motion for Judgment on the Pleadings (Doc. Nos. 32 and 32-1) (hereinafter the "Motion").

## I. INTRODUCTION

On June 29, 2017, Plaintiffs commenced[1] the instant action to remedy the violations of the rights of Plaintiffs by Defendant Taylor Corporation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Ohio law prohibiting disability discrimination under Ohio Revised Code § 4112, *et seq.* ("Chapter 4112"), after they were jointly terminated from their employment by Standard Register International, Inc. ("Standard Register") and Taylor Corporation ("Taylor") on July 15, 2015. Both entities, as joint employers, terminated the Arnolds "after reviewing Plaintiffs' medical records… and us[ing] their serious health conditions and/or

---

[1] This matter was commenced on June 29, 2017 (Doc. No. 1), but a First Amended Complaint was filed thereafter to add the correct entity name (Doc. No. 10).

Page **1** of **19**

EXHIBIT F

disabilities…as a negative factor in their employment." (Doc. No. 10, PageID # 126). As plead in the First Amended Complaint ("FAC"), Plaintiffs were informed by Standard Register and Taylor that they had been selected for termination because they were "too expensive." (*Id*. at PageID # 133) However, as plead in the FAC, Plaintiffs were replaced by individuals who have not exercised their FMLA rights and are neither disabled or perceived to be disabled by Defendants. (*Id*. at PageID # 134)

Meanwhile, Taylor asserts that the U.S. Bankruptcy Court for the District of Delaware provided it with immunity, essentially, and a license to discriminate against Plaintiffs through an asset sale whereby Taylor acquired substantially all of Standard Register's assets "free and clear" of any "claims" associated with those assets. (Doc. No. 32-1, PageID # 511) However, Defendant's Motion is predicated entirely on assuming that Plaintiffs' legal claims against Taylor were actually covered by the Sale Order. Importantly, the Sale Order upon which Taylor Corporation relies was entered on June 19, 2015, which is after a claims bar deadline and the objection period for parties in interest. Plaintiffs were neither creditors nor parties in interest at that time because (1) their legal claims did not ripen until some point after July 15, 2015 (termination date); and (2) they were not apprised with notice or opportunity to be heard about the bankruptcy proceedings.

The crux of Taylor Corporation's argument can be summed up as follows. First, although it denies ever employing Plaintiffs, it must already accept all of the facts in Plaintiffs' First Amended Complaint as true. This admitted fact is critical because it has **admitted** to being Plaintiffs' joint **employer** during the pendency of the bankruptcy petition. To that end, the discriminatory conduct by Taylor Corporation, i.e. terminating Plaintiffs on July 15, 2015, occurred *after* the bankruptcy Petition Date (March 12, 2015) as well as after the Sale Order Date

(June 19, 2015).[2] As such, Plaintiffs' employment discrimination "claims", as that term is defined under the bankruptcy code, did not arise until some point *after* they were terminated. Therefore, Defendant Taylor Corporation's reliance on a "free and clear" order is not applicable because Plaintiffs' legal causes of action were not yet "claims" and a "free and clear" order cannot preclude claims that do not yet exist. As a result, it is liable to Plaintiffs due to its post-petition discriminatory conduct that is not protected by the "free and clear" order. Second, Plaintiffs never received notice and opportunity to be heard with respect to their claims. As a result, even if it was determined that their claims were pre-petition "claims" (which they are not), their claims are not dischargeable under well-established federal jurisprudence. Finally, Defendant's reliance on a "free and clear" sale order for claims that did not exist at the time of the sale order still cannot circumvent the FMLA's eight mandatory factors for determining whether Taylor Corporation is a successor-in-interest entity and therefore liable to Plaintiffs.

## II. FACTS THAT MUST BE ACCEPTED AS TRUE

As delineated more fully below, Plaintiffs' legal claims were triggered on their termination date of July 15, 2015, which occurred *after* the bankruptcy Petition Date (March 12, 2015), *after* the Bankruptcy Sale Order (June 19, 2015), and Plaintiffs did not have any notice of any potential claim until *after* the Bar Date (July 8, 2015) because they were terminated on July 15, 2015. As a result, Plaintiffs' causes of action were never "claims" and thus, not dischargeable in bankruptcy and not subject to the bankruptcy sale order. For purposes of a Motion for Judgment on the Pleadings, all allegations as plead in Plaintiffs' First Amended Complaint must be accepted as true. For this reason alone, Taylor Corporation's Motion for a variety of reasons explained below.

### A. Taylor Corporation must accept that it was a Joint Employer in the decision to jointly terminate Plaintiffs' Employment on July 15, 2015.

First and foremost, Taylor Corporation must accept as true that it was a joint "employer" under 29 U.S.C. § 2611(4)(A)(ii)(I) (and Ohio law) because it jointly maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including the promulgation and enforcement of policies affecting FMLA medical leave because "it took an active role in jointly deciding to terminate Plaintiffs after reviewing Plaintiffs' medical records with Defendant Standard Register and used their serious health conditions and/or disabilities as described herein as a negative factor in their employment relationships with Defendants." (Doc. 10, PageID # 126-129) It must also accept as true that it shared the same matters governing the essential terms and conditions of Plaintiffs' employment, including but not limited to (1) interrelation of operations, (2) common management, (3) centralized control of labor relations and personnel, and (4) common ownership and financial control. (*Id*. at PageID # 128) Taylor Corporation was also either a single integrated employer of Plaintiffs and/or a successor in interest, liable for its actions under 29 U.S.C. § 2611(4)(A)(ii)(II) and 29 C.F.R. § 825.107. (*Id*. at PageID # 126-129) For example, Plaintiffs have plead (and, as a result, Taylor Corporation must accept as true) that (1) there is substantial continuity of the similar if not the same business operations; (2) Defendant Taylor Corporation uses the similar or same plant; (3) there is a similar or the same continuity of the workforce; (4) the jobs and working conditions of its employees are similar to, if not the same as, its predecessor; (5) the supervisory personnel of Defendant Taylor Corporation and its predecessor are similar, if not the same; (6) the machinery, equipment, and production methods of Defendant Taylor Corporation and its predecessor are similar, if not the same; (7) the products or services of Defendant Taylor Corporation and its predecessor are similar, if not the

same; and (8) there are doubts with respect to whether or not the predecessor (Standard Register) is able to provide relief for Plaintiffs' claims herein given that Taylor Corporation took over all operations at some point in early 2015. *See* 29 C.F.R. § 825.107. (*Id*. at PageID # 128-129) As such, Defendant is estopped from asserting anything to the contrary for purposes of the instant Motion.

### B. Timeline of Bankruptcy Proceedings and Taylor Corporation's Post-petition Conduct.

#### (i) The Bankruptcy Petition Date of March 12, 2015.

Importantly, on March 12, 2015, the Standard Register Company n/k/a Standard Register International, Inc. filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. (*See* Doc. No. 6-1, PageID # 56) (March 12, 2015 hereinafter the "Petition Date"). On May 8, 2015, the United States Bankruptcy Court for the District of Delaware specifically set bar dates to creditors and parties in interest to file claims, among other relief, whereby a Notice was sent to all applicable parties as follows:

"**ORDERED, ADJUDGED, AND DECREED THAT:**

\* \* \* \*

3. Pursuant to Bankruptcy Rule 3003(c)(2), any creditor (as defined in section 101(10) of the Bankruptcy Code) or equity security holder (as defined in section 101(17) of the Bankruptcy Code) who asserts a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to March 12, 2015 (the "Petition Date") and whose claim is either (i) not listed on the Debtors' schedules of assets and liabilities (collectively, the "Schedules") or (ii) is listed on the schedules as disputed, contingent or unliquidated **MUST FILE A PROOF OF CLAIM ON OR PRIOR TO JULY 8, 2015 AT 5:00 PM.** (Prevailing

Eastern Time) (the "General Bar Date") as provided in this Order." (*See* Doc. No. 26, PageID # 238). Further, in section 4 of the same Order, it required that a claim under section 503(b)(9) of the Bankruptcy Code, **MUST FILED ON OR PRIOR TO JUNE 9, 2015 AT 5:00 PM.** (*Id.*)

    **(ii)**     **Taylor Corporation begins to implement its employment policies and procedures in May, 2015**

Next, Plaintiffs alleged (and Defendant must accept as true) that at some point in May, 2015, which is *after* the *Petition Date*, there was a group meeting whereby Plaintiffs, other employees, managerial employees, and plant managers gathered to discuss some changes that would be implemented by Taylor Corporation for its future operations of Standard Register, which would eventually conduct business as Taylor Communications. (Doc. No. 10, PageID # 127 and # 132) Specifically, Plaintiffs and other employees were told that their personnel files, including medical information and other person information, had been sent to the Dayton headquarters to be thoroughly and jointly reviewed by Standard Register and Taylor Corporation because <u>Taylor Corporation had taken over the business operations of Standard Register at or before that time period and would continue to make decisions about their employees, including Plaintiffs, from that point forward</u>. (*Id.*) (emphasis added.) During the meeting, Plaintiffs, their co-workers, managerial employees, and plant managers watched a "welcome" video to introduce the new leadership and top management of Taylor Corporation. (*Id.* at PageID # 132) Plaintiffs continued to exercise or attempt to exercise their FMLA rights for their own serious health conditions and/or for Mr. Arnolds' parents' serious health conditions. (*Id.*) Mrs. Arnold also exercised her FMLA rights when she suffered a period of incapacity from approximately May 29, 2015 through June 30, 2015. (*Id.* at PageID # 133).

    **(iii)**     **June 19, 2015 – Bankruptcy Sale Order Date.**

On June 19, 2015, the U.S. Bankruptcy Court for the District of Delaware approved of the sale of substantially all of the assets. (*See* Doc. No. 6-1, PageID # 97) (hereinafter "Bankruptcy Sale Order") (June 19, 2015 hereinafter "Sale Order Date") Importantly, it again referenced the claims as of the Petition Date of March 12, 2015 and also confirmed that any additional claim identified by the debtors against such assets in the asset purchase agreement as of June 19, 2015 between Standard Register and Taylor Corporation were included in the bankruptcy proceedings. (*Id*. at PageID # 54-58). Plaintiffs, as current employees on this date, were not among those claims identified because they did not have "claims" until after they were terminated on July 15, 2015.

    **(iv)**     <u>**July 15, 2015 – Taylor Corporation's joint termination of Plaintiffs triggers their legal causes of action, which is Post-petition (and therefore not subject to the Sale Order)**</u>

Taylor Corporation accepts as true that it jointly reviewed the information contained in Plaintiffs' personnel files, including the medical history of Plaintiffs revealing their serious health conditions, absences related to their use of FMLA, their disabilities, and any other absences related to their disabilities and, based on this information, jointly decided to terminate Plaintiffs on July 15, 2015. (Doc. No. 10, PageID # 133) Taylor Corporation accepts as true that it jointly terminated Plaintiffs <u>because of their use of FMLA leave, their disabilities, actual or perceived, and otherwise discriminated against them in the terms and conditions of their employment</u>. (*Id*.) As a result, Plaintiffs' health conditions/disabilities as well as the taking of FMLA leave were used as a negative factor in Defendant Taylor Corporation's joint decision to terminate Plaintiffs. (*Id*.) As a result, Defendant's joint discriminatory actions constitute post-petition conduct, which is not protected by the bankruptcy code – as even the Bankruptcy Court's orders themselves provide.

Meanwhile, Taylor asserts at the same time that the bankruptcy court provided it with, essentially, a license to discriminate against Plaintiffs through an asset sale that approved Taylor Corporation's acquisition of Standard Register "free and clear" of any "claims" associated with those assets. (Doc. No. 32-1, PageID # 511) Equally important to the fact that Defendant's joint discriminatory post-petition conduct occurred *after* the Petition Date and *after* the Sale Order Date, the bankruptcy order at issue was entered on June 19, 2015, which is *after* a claims bar deadline and *after* an objection period for parties in interest. Plaintiffs were neither creditors nor parties in interest at that time because they were current employees and had no idea that their rights were affected until after their termination on July 15, 2015. Further, they were not apprised with notice or opportunity to be heard about the bankruptcy proceedings at any point during their employment. As such, Plaintiffs never had any "claims" to be asserted until they were terminated on July 15, 2015. As a result, their "claims" are not subject to the bankruptcy order.

### III. LAW AND ARGUMENT

**A. Fed. R. Civ. P. 12(c) Legal Standard.**

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 697 (6th Cir.2005). Accordingly, in reviewing a motion for judgment on the pleadings under Rule 12(c), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them relief." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir.2008) (citing *Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir.2005)). To survive a motion for judgment on the pleadings,

the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (quoting *Meziboy v. Allen,* 411 F.3d 712, 716 (6th Cir.2005)).

The controlling legal principle is that, "[u]nder Rule 12(b)(6) 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *Accord Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (Rule 12(b)(6) dismissal improper unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). The complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 820 F.2d 10, 11 (6th Cir. 1987).

The consequence of that principle is that, in considering such a motion, the Court must accept all facts in the complaint as true and construe the complaint liberally in favor of the plaintiff. *Kottmyer*, supra. *Accord Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir.2001) ("treat[ ] all well-pleaded allegations in the complaint as true"). Applying that principle involves neither weighing of evidence nor assessing of credibility. *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). The sole question is "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). The answer depends on whether the elements of a cause of action have been sufficiently alleged. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Both the direct and "inferential allegations respecting all the material elements" are assumed to be true. *Scheid*, 859 F.2d at 436 (citation and

quotation omitted). Moreover, even ambiguous allegations must be construed in the plaintiff's favor. *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir.1997).

The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a), which requires that a pleading "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976); *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel & Forged Products,* 577 F.3d 625, 629–30 (6th Cir. 2009), *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### B. Plaintiffs' claims against Taylor Corporation concerning its *post-petition* joint conduct are not precluded by "free and clear" orders.

The Bankruptcy Code provides that the confirmation of a reorganization plan discharges any debt, including claims, owed by the debtor that occurred ***pre-petition as of the date of confirmation, unless such plan provides otherwise***. *In re Travel Agent Com'n Antitrust Litigation*, No. 1:03-cv-30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007), citing 11 U.S.C. § 1141(d)(1)(emphasis added). Taylor Corporation incorrectly argues that all of Plaintiffs' claims should be dismissed as a matter of law because the Sale Order essentially provided it with immunity to discriminate against Plaintiffs even though their "claims" did not arise until their termination date of July 15, 2015. In support, it relies on the Sixth Circuit authority from the case of *Al Perry Enterps. v. Appalachian Fuels, LLC,* 503 F.3d 538, 541 (6th Cir. 2007), which held that

Page **10** of **19**

"[t]he bankruptcy court has clear power to approve the sale of debtors' assets free and clear of any interest or claims that could be brought against the bankrupt estate pursuant to 11 U.S.C. 363(f)." However, Taylor Corporation's reliance on this case is misplaced and is easily distinguishable. In *Appalachian Fuels,* the Plaintiff therein was precluded from brining any claim against the debtor or its assets because, at the moment plaintiff learned of the bankruptcy proceedings, he knew his rights would be affected, was aware of the notice to file a proof of claim and notice to contest the sale, but did nothing. Specifically, the Court reasoned that:

> Perry had notice that its right to receive commissions was about to be extinguished by virtue of the asset purchase by Appalachian Fuels and had knowledge that the sale would be free and clear of all liens and claims except for those expressly assumed by the purchaser of Bowie's assets. <u>Nevertheless, Perry chose not to file an objection to the sale of the assets and, but for the sale of assets, Perry would have no claim against Appalachian Fuels</u>. As stated by the district court, to the extent that Perry assumed its interest in the commissions was protected by the asset purchase agreement language, "[i]t made this assumption at its peril.

*Al Perry Enterprises, Inc. v. Appalachian Fuels, LLC*, 503 F.3d 538, 542–43 (6th Cir. 2007)(emphasis added).

In the case at present, unlike in *Appalachian Fuels*, the Plaintiffs, Mr. and Mrs. Arnold, learned that their rights were affected at some point *after* the time of their termination date, which is well beyond the Petition Date of March 12, 2015 and the Sale Order Date of June 19, 2015. As such, Plaintiffs' case is entirely distinguishable in that the claims before this Court involve *post-petition* discriminatory conduct by Standard Register and Taylor Corporation, the discriminatory conduct and timing of events of which must be accepted as admitted for purposes of the instant Motion. As a result, Taylor Corporation's reliance on and analysis of this case as justification for its Motion fails under the slightest scrutiny and should be ignored given this critical distinction.

For similar reasons, Taylor Corporation's reliance on and misuse of *In re Polyurethane Foam Antitrust Litig.,* 86 F.Supp. 3d 769 (N.D. Ohio, W. Div. 2015) is also not applicable because that case also involved pre-petition conduct. In *Polyerethan Foam,* this Court noted that "confirmation of a reorganization plan 'discharges the debtor from any debt that arose before the date of ... confirmation" pursuant to 11 U.S.C. § 1141(d).[3] *In re Polyurethane Foam Antitrust Litig.,* 86 F. Supp. 3d 769, 780 (N.D. Ohio 2015). Plaintiffs' claims arose subsequent to the filing of bankruptcy relief (Petition Date) and confirmation of the sale of assets (Sale Order Date) through the joint conduct of Standard Register and Taylor Corporation, as is alleged in Plaintiff's First Amended Complaint. Had Plaintiffs had cognizable claims at the time Standard Register sought relief, then they would have been afforded an opportunity to file a proof of claim or contest the sale via appropriate due process. From there, "the claims at issue would have been converted to dollar amounts and the claimants would have received the distribution provided to other general, unsecured creditors on account of their claims." *In re Trans World Airlines, Inc.,* 322 F.3d 283, 291 (3d. Cir. 2003). Thus, Defendant's reliance on and analysis of this case is not applicable to the facts of Plaintiffs' case.

Taylor Corporation's flawed analysis is underscored again with its reliance on *In re NE Opco, Inc.,* 513 B.R. 871, 872 (Bkr. D. Del. 2014), which is unpersuasive jurisprudence outside of the Sixth Circuit. While *In re NE Opco, Inc.* held that the *pre-closing* claims were barred due to the "free and clear order," Plaintiffs are not aware of federal jurisprudence that stands for the same

---

[3] Section 101(12) of the Bankruptcy Code defines "debt" as "liability on a claim," and Section 101(5) provides that a "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, [or] unmatured." *In re Polyurethane Foam Antitrust Litig.*, 86 F. Supp. 3d 769, 780 (N.D. Ohio 2015)

position. While Defendant Taylor Corporation desires to have unfettered authority, the same decision should not be extended in the case *sub judice* because it would have an overwhelmingly chilling effect on the entire bankruptcy reorganization process that would jeopardize employees' rights under federal law. For example, a company (i.e. Taylor Corporation) could simply decide that it desired to terminate all of its employees who exercised their rights under the FMLA and/or have disabilities, file for chapter 11 protection to cleanse its workforce of individuals with disabilities and/or serious health conditions, draft an overly broad "free and clear order," have the bankruptcy court approve of the sale via a sale order, then specifically terminate the individuals who suffer from disabilities and/or serious health conditions during the time period from the sale order date to the closing date, and subsequently claim that it is "free and clear" of any and all employment discrimination claims without any legal ramification. Indeed, Chapter 11 of the bankruptcy code was not designed as or intended to be used as a mechanism to discriminate against employees in violation of federal and Ohio law. For the same reason, Taylor Corporation's reliance on the remaining unpersuasive authority should be ignored.

Rather, the case of *In re City of Detroit, Michigan*, 548 B.R. 748, 767-769 (E.D. Mich. 2016) is instructive because the same issue before this Court was decided with respect to various plaintiffs as to whether their claims arose pre or post-petition to the defendant's bankruptcy petition. The Court held that it must use the "fair contemplation" test[4]" for determining whether an employment discrimination claim is cognizable within the context of a bankruptcy filing turns on <u>when the conduct occurred in relationship to the petition for relief</u>. *Id*. at 767. To that end, a

---

[4] The fair contemplation test is followed by the bankruptcy court in this district. *See In re Bennett*, No. 10-37438, 2015 WL 8147588, at *5 (Bankr. N.D. Ohio Dec. 7, 2015)(Whipple, J.).

Page **13** of **19**

claim is considered to have arisen pre-petition (and therefore dischargeable in bankruptcy) only if the creditor "could have ascertained through the exercise of reasonable due diligence that it had a "claim" at the time the petition is filed. *Id.* at 763 (emphasis added). The "fair contemplation test" has the advantage of allowing the Court to examine all of the circumstances surrounding a particular claim—the debtor's conduct, the parties' pre-petition relationship, the parties' knowledge, the elements of the underlying claim—and use its best judgment to determine what is fair to the parties, in context. *Id*. In *City of Detroit*, one of the plaintiffs failed to return to work, in violation of city policy, the same day that the city filed for bankruptcy (July 18, 2013). *Id*., 548 B.R. at 767. He was subsequently discharged more than a week later on July 26, 2013. *Id*. The City of Detroit argued that his claim arose pre-petition because he could have fairly contemplated a claim against the City for wrongful termination or discharge when he failed to report to work on July 18, 2013. *Id*. The Court rejected the City's arguments and found that an employment claim for wrongful discharge was not within fair contemplation prior to the City filing its bankruptcy petition because the claims arose *post-petition*. *Id*. at 768. Therefore, the employment discrimination claim survived the bankruptcy reorganization because they were not "claims" that arose pre-petition. *Id*. ("the City neither notified Mr. Cook that he would be discharged not initiated disciplinary proceedings against Mr. Cook for the July 18, 2013 incident until *after* the bankruptcy petition was filed.") (emphasis added.)

Similar to the decision in *City of Detroit*, the Northern District of Ohio decided a very similar issue before this Court with respect to the importance of the petition date. Specifically, in *Kudela*, the individual filed bankruptcy on October 20, 2009 to try and avoid his obligations under a collective bargaining agreement. *Kudela v. Kocon*, No. 1:10-cv-999, 2013 WL 256159 at *3

Page **14** of **19**

(N.D. Ohio Jan. 23, 2013). The individual argued that since the bankruptcy discharge order was January 25, 2010, any and all claims prior to that date were discharged. *Id*. However, the Court rejected the individual's arguments and indicated that any claims from November 1, 2009 (post-petition date) going forward were <u>not dischargeable</u> because the obligations arose after the bankruptcy petition date. *Id*. ("This Court clearly determined that the Trustees' claims in the within Complaint, for obligations against [the individual], under the CBA for the period from November 1, 2009 going forward, were **not dischargeable**.") (emphasis added.)

In this case, the timing of the events as plead in Plaintiff's First Amended Complaint underscores the fact that Plaintiffs' claims were never "claims" as that term is used under the bankruptcy code because there is no way the Plaintiffs could have ascertained through the exercise of due diligence that they ever had a "claim" at the time of the Petition Date (March 12, 2015). Indeed, Plaintiffs were discharged on July 15, 2015, which is after the Petition Date and after the Sale Order Date (June 19, 2015). For this reason alone, consistent with *City of Detroit* and *Kudela*, Plaintiffs' claims are not barred by the bankruptcy sale order and Taylor Corporation's Motion should be denied.

   **C. Successor-in-Interest Liability against Taylor Corporation remains Proper because the lack of Due Process, notably "notice and opportunity to be heard," eviscerates Taylor Corporation's position that the Bankruptcy Court's "free and clear" order granted it a license to discriminate against Plaintiffs.**

Equally important to the fact that Plaintiffs' causes of actions were never "claims" until well after the Petition and Sale Order dates, pertinent here is that under 11 U.S.C. § 1109(b), all "parties in interest" must be given adequate notice and opportunity to be heard before their interests may be adversely affected. *See* 11 U.S.C. § 1109(b). As held by the United States Supreme Court and the Fifth Amendment to the Constitution, they require meaningful notice, which is at the heart

of Due Process. *See Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) ("Failure to give notice violates the rudimentary demands of due process of law.")

To satisfy due process, it is axiomatic that a party seeking relief must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Rideout*, 86 B.R. 523, 526-27 (N.D. Ohio 1988)(Speer, J.), quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). A sale order under § 363(f) that purports to free a purchaser from the debtor's liabilities does not bind parties in interest that did not receive appropriate notice of the sale. *Mullane*, 70 S.Ct. at at 721; *cf. Johns–Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns–Manville Corp.),* 600 F.3d 135, 158 (2d Cir.2010) (party who was not adequately represented in bankruptcy and did not receive adequate notice of the proceedings leading to orders that exonerated third parties from *in personam* liability was not bound by those orders), *cert. denied sub nom., Travelers Indem. Co. v. Chubb Indem. Ins. Co.,* ––– U.S. –––, 131 S.Ct. 644, 178 L.Ed.2d 512 (2010). Accordingly, a debtor is required to inform creditors, claimants, and parties in interest with sufficient notice and opportunity to be heard before interests can be adversely impacted. *See Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 720 (1st Cir.1994).

While § 363(f) authorizes a Bankruptcy Court to absolve the buyer of in personam liability for pre-confirmation claims in a chapter 11 case, where a party has no notice and opportunity to be heard, rights cannot be impacted. *See also In re Yoder Co.*, 758 F.2d 1114, 1116 (6th Cir. 1985) (even a creditor's knowledge that a reorganization of the debtor is taking place does not substitute for mailing notice of a bar date.) If the Court cannot vacate a bankruptcy order, the lack of adequate

notice would result in the plaintiffs claims not being bound by the bankruptcy reorganization plan and therefore the obligation would not be discharged. *In re Rideout*, 86 B.R. 523, 529 (N.D. Ohio 1988)(Speer, J.)

The case of *In re Grumman Olson Indus., Inc.,* 445 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2011), aff'd, 467 B.R. 694 (S.D.N.Y. 2012) is illustrative. In *Grumman*, the Court determined that individuals injured due to a faulty product (a vehicle) were not precluded from seeking a claim against the debtor or its purchaser because it had no knowledge of the debtor's bankruptcy proceedings, and they also didn't have a "claim" upon which to seek redress until after the order of relief. *In re Grumman*, 445 B.R. at 254-56. The Court concluded, "every case that we have found addressing this issue has concluded for reasons of practicality or due process, or both, that a person injured after the sale (or confirmation) by a defective product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and is not affected by either the § 363(f) sale order or the discharge under 11 U.S.C. § 1141(d)." *Id.*

In the case at present, Plaintiffs did not possess a "claim" against either Defendant until well after they were terminated by Standard Register and Taylor Corporation on July 15, 2015. While Defendant was seemingly aware that it was combing through the personnel files of employees, such as Plaintiffs, including their medical history revealing their serious health conditions, absences related to their use of FMLA, their disabilities, any other absences related to their disabilities, and their continued absences related to their medical leave when it jointly decided to terminate Plaintiffs (Doc. No. 10, PageID # 126-133), it cannot be rewarded now. As such, Taylor Corporation's position is entirely misplaced because a "free and clear" sale order does not exonerate a buyer from successor liability claims or from post-petition conduct by parties who, at

the time of the sale order, had not yet been injured and had no identifiable connection as potential creditors. *See In re Grumman Olson Indus., Inc.,* 445 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2011), aff'd, 467 B.R. 694 (S.D.N.Y. 2012).

### D. Federal statutory mandates, such as the FMLA, are not optional "claims" to be assumed or not; Congress has specifically afforded successor in interest liability within the FMLA to protect employees within this entitlement program for covered individuals.

A "free and clear" sale order still cannot circumvent federal statutory mandates such as the FMLA because these mandates are not a liability that is assumed or not assumed in a sales transaction and to conclude otherwise would be to improperly circumvent the reason for placing the successor in interest language in the FMLA: to protect employees when the company they are working for is purchased by another company. Likewise, the bankruptcy order at issue may not defeat the application of the eight factors set forth by the Secretary of Labor. *Miller v. Level 3 Communications, LLC*, No. A03-4451, 2005 WL 1529419 at *8-10 (D.N.J. Jun. 29, 2005). Once those factors were applied, they were not precluded by the bankruptcy court's sale order. *Id*. As a result, the court found that the bankruptcy order could not defeat application of the eight factors set forth by the Secretary of Labor and, once the factors are applied, outweigh any effect of the bankruptcy order. *Id*. In the case at present, Defendant must accept as true that it is a successor in interest under the FMLA regulation, 29 C.F.R. § 825.107. As such, the Sale Order upon which it relies cannot circumvent the mandates set forth by the Secretary of Labor and determine that Taylor Corporation is not subject to any successor-in-interest liability without first making a merits determination in accordance with statutory mandates of the FMLA.

                                              Respectfully submitted,

                                              **BRYANT LEGAL, LLC**

                                              */s/ Matthew B. Bryant*
                                              Matthew B. Bryant (0085991)
                                              3450 W. Central Avenue, Suite 370
                                              Toledo, Ohio 43606
                                              Telephone: (419) 824-4439
                                              Facsimile: (419) 932-6719
                                              Email: Mbryant@BryantLegalLLC.com

| | |
|---|---|
| | */s/ Daniel I. Bryant* |
| Laren E. Knoll (0070594) | Daniel I. Bryant (0090859) |
| **The Knoll Law Firm, LLC** | 1457 S. High St. |
| 7240 Muirfield Drive, Suite 120 | Columbus, Ohio 43207 |
| Dublin, Ohio 43017 | Telephone: (614) 704-0546 |
| Telephone: (614) 372-8890 | Facsimile: (614) 573-9826 |
| Facsimile: (614) 452-4850 | Email: Dbryant@BryantLegalLLc.com |
| Email: lknoll@knolllaw.com | |

                                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing was filed with the Court's electronic filing system this 19th day of June 2018.

                                              Respectfully submitted,

                                              */s/ Matthew B. Bryant*
                                              Matthew B. Bryant (0085991)

                                              *An Attorney for Plaintiffs*