```
 1                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE
 2
                                       .  Chapter 11
 3    IN RE:                           .
                                       .  Case No. 15-10541 (BLS)
 4    SRC LIQUIDATION COMPANY,         .
                                       .  Courtroom No. 1.
 5                                     .  824 Market Street
                                       .  Wilmington, Delaware 19801
 6                                     .
                                       .  November 14,2018
 7                    Debtor.          .  10:30 A.M.
      . . . . . . . . . . . . . . . . .
 8
 9                       TRANSCRIPT OF HEARING
                 BEFORE HONORABLE BRENDAN L. SHANNON
10                  UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For Timothy and Joyce    Christopher Loizides, Esquire
      Arnold:                  LOIZIDES, P.A.
13                             1225 N. King Street
                               Wilmington, Delaware 19801
14
      For Taylor Corporation   Matthew Austria
15                             AUSTRIA SHRUM
                               1201 North Orange Street
16                             Suite 502
                               Wilmington, Delaware 19801
17
                               - and -
18
                               Craig Brandt, Esquire
19                             MOSS & BARNETT
                               150 South Fifth Street
20                             Suite 1200
                               Minneapolis, Minnesota 55402
21
      ECRO:                    DANA MOORE
22
      Transcription Service:   Reliable
23                             1007 N. Orange Street
                               Wilmington, Delaware 19801
24                             Telephone:  (302) 654-8080
                               E-Mail:  gmatthews@reliable-co.com
25
      Proceedings recorded by electronic sound recording:
      transcript produced by transcription service.
```

1

<u>INDEX</u>

2

<u>Page</u>

3

4

#1) Motion of Taylor Corporation Pursuant to 11 U.S.C.
Sections 105 and 163 to Enforce the Court's June 19, 2015
Sale Order and Injunction [Docket No. 2344; Filed 9/5/2018].

5

6

**Ruling:**                                                    44

7

<u>EXHIBITS</u>                                    <u>I.D.</u>    <u>REC'D</u>

8

Movant's Exhibit 6    Second Amended Complaint          23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commence 10:43 a.m.)

2       (Call to order of the Court)

3          MR. AUSTRIA:  Good morning, Your Honor, Matthew

4 Austria of Austria Shrum on behalf of Taylor Corporation.

5          We're here on the motion of Taylor Corporation to

6 enforce this court's June 19th, 2015 sale order and

7 injunction.

8          THE COURT:  Right.

9          MR. AUSTRIA:  Unless Your Honor has any questions,

10 I'd like to introduce my co-counsel, Craig Brandt of Moss &

11 Barnett.

12          THE COURT:  Terrific. Welcome, sir.

13          MR. BRANDT:  Thank you, Your Honor.

14          THE COURT:  Good morning.  Welcome.

15          MR. BRANDT:  May I please the court and good morning

16 to you, Your Honor.  Again, Craig Brandt.  I'm in from

17 Minneapolis.  I represent Taylor Corporation in connection

18 with a lawsuit commenced by the Arnold's in Ohio.

19          The Taylor Corporation, of course, is the asset

20 purchaser in connection with this Chapter 11 proceeding.

21          THE COURT:  Right.

22          MR. BRANDT:  The second amended complaint that was

23 filed by the Arnold's in the Ohio case makes an allegation

24 that the Arnold's claims are not affected by this court's

25 sale order and we, of course, strongly disagree with that

1  conclusion and, accordingly --

2      THE COURT:  This is almost like a law school exam,

3  your fact pattern.  I mean I approved the sale and then the

4  discharge occurs in that gap between the sale order and the

5  closing of the transaction.

6      MR. BRANDT:  It is an interesting set of timing.  I

7  acknowledge that.  And actually, one of the points I wanted

8  to mention to the court about that is that that aspect of the

9  timing in this case is essentially on all floors with the

10 sequence of events that were applied in that NE OpCo decision

11 issued by Judge Sontchi of this court in 2014, the employees

12 in that case, the employees and the debtor, discharged after

13 the sale was approved by this bankruptcy court.

14     And then the closing took place after they were

15 discharged.  Same fact pattern here.  And in the NE OpCo

16 case, of course, this court entered an order enjoining the

17 employees from pursuing any claims against the asset

18 purchaser that accrued before the closing of the asset sale.

19     In part, what we're asking this court to do, just

20 follow that reasoning of NE OpCo and issue an order that

21 confirms that any preclosing claims that are barred by the

22 terms of the sale order.

23     THE COURT:  Let me ask you a question, and I want to

24 be clear so that the record is abundantly clear. If I tinker

25 with your facts and make it more salient.

1          I understand the proposition, and I've certainly

2     read Judge Sontchi's opinion in NE OpCo.  Let me change your

3     facts a little bit and let's assume that we have our timeline

4     precisely as you've described.

5          June 19th, I conduct hearing.  I sign a sale order

6     that gets docketed.  Six weeks later, that sale closes on the

7     31st of July.

8          In the intervening period, there's a meeting.

9     Purchaser sits down and says, we're taking the company. We

10    don't like Black employees.  We don't want any Black

11    employees.  They all need to be gone.

12         I think if you're correct then liability would still

13    rest with the debtor, the seller, who is the active agent in

14    that process by terminating those folks.

15         That goes, obviously, to the merits of the dispute

16    that would be there.  But, nevertheless, the proposition is

17    that the purchaser is still insulated from liability.

18         Is that a fair assessment?

19         MR. BRANDT:  Yes, Your Honor.  I agree with that.

20         THE COURT:  Okay.

21         MR. BRANDT:  Your Honor mentioned having read the NE

22    OpCo decision, and I won't belabor this point.  But I wanted

23    to note that in that decision, Judge Sontchi had surveyed

24    some case law, including another decision called Christ

25    Hospital issued by the bankruptcy court in New Jersey.

1        And it essentially concluded that even though the

2   asset purchaser in that case was essentially seeking

3   insulation from liability for the consequences of its own

4   conduct, the court, nonetheless, entered the injunction order

5   that was being requested.  That's one of the arguments that's

6   being made in opposition to our motion today and I wanted to

7   note that point.

8        There's a difference, though, between the facts in

9   this case and NE OpCo.  Because as the court most definitely

10  recalls in NE OpCo, Judge Sontchi issued an injunction that

11  said all preclosing claims are barred or you're enjoined from

12  pursuing claims that arose before the closing.

13       But in NE OpCo, the employee also asserted a failure

14  to hire claim and there was evidence in that case that the

15  failure to hire claim was based on events that occurred after

16  the closing.  And so, the court made a distinction in its

17  order in NE OpCo saying that post-closing claims were not

18  enjoined.

19       In this case, there's no reason for the court to

20  include any sort of exception of that nature in an order like

21  we're requesting because the Arnold's have conceded in this

22  case, Your Honor, that the decision by Taylor Corporation, my

23  client, not to offer them a job was made -- was an event that

24  occurred preclosing.

25       And in looking over some materials last evening,

1  just to prepare, I noticed that that point is confirmed twice

2  in the second amended complaint, both at paragraph 24 and

3  paragraph 67.  The Arnold's have conceded that the decision

4  not to hire them was made before the closing occurred.

5         And so, that claim -- and I would say that claim

6  hasn't been pled in the second amended complaint.  But if the

7  Arnold's were thinking of making an argument like that, it's

8  foreclosed by their admissions in their current pleading that

9  that event occurred before the closing.

10        Let's talk about procedurally where we are then

11 because, to me, that seems to me, I understand the points

12 that you're making but, procedurally, this litigation was

13 commenced in the Ohio District Court, right?

14        MR. BRANDT:  Yes, sir.

15        THE COURT:  And remains pending there.

16        MR. BRANDT:  That's correct.

17        THE COURT:  That court considered a motion for

18 judgment on the pleadings, essentially on the basis of the

19 terms of the sale order and denied that.  And I've read the

20 transcript from Judge Zouhary?

21        MR. BRANDT:  Zouhary, that's correct.

22        THE COURT:  Zouhary.

23        MR. BRANDT:  Yes, sir.

24        THE COURT:  And, likewise, and then there was a

25 motion to transfer venue to bring the proceeding to this

1  court, essentially, for what I think would be this argument.

2          MR. BRANDT:  Yes, sir.

3          THE COURT:  And that, likewise, was denied by an

4  opinion by his honor which I similarly read.

5          MR. BRANDT:  Yes, sir.

6          THE COURT:  How do I deal with that?

7          MR. BRANDT:  Well, of course, this court in the sale

8  order reserved exclusive jurisdiction to decide matters

9  relating to the sale order.  We informed Judge Zouhary in

10 Ohio of the fact that this motion had been filed when we made

11 or motion to transfer venue and to stay the case.

12         Subsequent to that, there was a phone call between

13 counsel in the Ohio case and Judge Zouhary where they talked

14 about this motion and the timing of it. And the Arnold's in

15 the Ohio case requested some additional time before they

16 would submit their brief to this court.

17         We agreed to that.  So, Judge Zouhary was well aware

18 that we were proceeding with this motion here.  I acknowledge

19 he denied our motion to transfer venue or to stay the case,

20 but he said nothing, either in the status conference with the

21 lawyers or in his order denying our transfer motion, to

22 suggest that this court should not or was not able to make a

23 decision.

24         And, of course, the court reserved jurisdiction to

25 do that.  So, and the judge acknowledged in our status

1  conference that this sort of case was now becoming what he

2  called a two-front war and did the parties want to sit down

3  and settle the case.

4         And he didn't seem to be concerned about us

5  proceeding with the motion here.  And he said nothing in his

6  order denying transfer which --

7         THE COURT:  I saw that.

8         MR. BRANDT:  Yeah.

9         THE COURT:  And I do note from the transfer opinion

10  that he issued that or the transfer ruling that he issued

11  that he was cognizant of this pending motion.

12         MR. BRANDT:  Yes, sir.

13         THE COURT:  Okay.  So, procedurally then, we have a

14  motion for judgment on the pleadings that was denied, so the

15  matter is pending and live. We have a motion to transfer

16  venue that was denied.  So, therefore, the matter is pending

17  and live in Ohio.

18         If I were to grant the motion that you filed and

19  find that the claims are precluded by the terms of the sale

20  order --

21         MR. BRANDT:  Yes, sir.

22         THE COURT:  -- then that would -- I assume that you

23  would move promptly for a dismissal of the Ohio litigation,

24  is that correct?

25         MR. BRANDT:  Most likely it would.  Of course, it

1   would depend on what the terms of this court's ruling are --

2           THE COURT:  The terms of the order, sure.

3           MR. BRANDT:  But if there were an injunction issued

4   as we have requested, I would imagine that the Arnold's

5   would, you know, stand down, but we would pursue a motion and

6   inform the court, of course, of that.  And ask for

7   appropriate relief based on the terms of this court's order.

8           THE COURT:  Okay.

9           MR. BRANDT:  One of the points I wanted to mention,

10  Your Honor.  I don't want to interrupt your question.

11          THE COURT:  Sure.  No, that's okay.

12          MR. BRANDT:  But much has been made in the opposing

13  side's submission about the ruling from Judge Zouhary with

14  regard to our motion for judgment on the pleadings.

15          And, you know, I like Judge Zouhary very much and I

16  appeared before him for that argument, but I believe that the

17  court misapprehended some of the key facts of the case in

18  making its ruling.  And I would note also that when the

19  ruling was issued and explaining his analysis that Judge

20  Zouhary made clear that he could well reach a different

21  conclusion at a later time if a subsequent motion were filed.

22  Essentially, he found that there were some open questions

23  that he was unsure about.

24          THE COURT:  And I saw the transcript.  I saw it.

25          MR. BRANDT:  Yes.  And the key area, I believe, that

1  informed Judge Zouhary's ruling was that he felt that the

2  plaintiffs or concluded that the plaintiffs were terminated

3  after what he referred to a bankruptcy discharge or a claims

4  bar date.  And it's really just the opposite as it relates to

5  the asset purchase and the plans were terminated before July

6  31, the closing of the asset sale.

7       The Judge didn't explain this and we have to just go

8  by the wording of the transcript.  But I believe there was

9  some confusion on the part of the court about whether Taylor

10 Corp was claiming that it was insulated by a bankruptcy

11 discharge or, instead, by the terms of the sale order.

12      THE COURT:  Right and your point is this is not a

13 discharge issue.

14      MR. BRANDT:  Correct.

15      THE COURT:  This is a 363(f) sale order issue.

16      MR. BRANDT:  Exactly.  Exactly, Your Honor.

17      THE COURT:  I understand.

18      MR. BRANDT:  I think there was some confusion on the

19 court's part in Ohio about that.  And the court was focusing

20 at the argument in Ohio on a claims bar date order issue that

21 would, you know, relates to liability of the debtors.  But

22 our argument had been based solely on the terms of this

23 court's sale order.

24      So, I believe Judge Zouhary clearly signaled that he

25 was open to making a different conclusion.  And there was a

1  question that he raised in the transcript when he was

2  inquiring of the Arnold's counsel.  Essentially, this is at

3  page 19 of the transcript.

4       He asked a question and said, gosh, Mr. Brandt is

5  saying that the timing is just the opposite.  But the

6  plaintiffs were terminated before the claims bar date.  And

7  if that's the case, wouldn't that take all the wind out of

8  your sails?

9       And there was an answer given by the Arnold's

10  question, but I think that passage reflects that if Judge

11  Zouhary understood the facts as I believe they are, he would

12  agree with the conclusion that we've advanced which is that

13  the claims are barred by the terms of the sale order.

14       I think there was a misunderstanding on the part of

15  the court.  And I don't believe there's been any sort of

16  definitive or final decision made.  And Judge Zouhary

17  certainly signaled that he was -- could well make a different

18  decision later.

19       And we're essentially teeing up that motion now

20  before this court which reserves exclusive jurisdiction over

21  the issue.

22       And the argument that we're making, Your Honor,

23  seems to be well supported by a number of recent cases

24  including the NE OpCo and the Christ Hospital decision from

25  the bankruptcy court in New Jersey, same sort of fact

1  patterns where claims are being alleged against the asset

2  purchaser that accrued preclosing and the courts are issuing

3  those injunctions as we have requested.

4       Now, the opposition here leads with the argument

5  about abstention. We like to address that briefly.

6       THE COURT:  Yeah, I'd like to.  I mean I realize

7  that Mr. Loizides is going to raise that -- is going to make

8  that argument, but I think I'd like to talk about abstention

9  a little bit while you're at the podium.

10       MR. BRANDT:  Yes, please. And I'd be glad to respond

11 to counsel's remarks --

12       THE COURT:  You'll certainly have an opportunity.

13       MR. BRANDT:  Thank you, Judge.

14       We know, at this point, in our opposition reply

15 brief that no legal authority has been cited by the Arnold's

16 supporting application of abstention and circumstances like

17 there where the bankruptcy court issued an order reserving

18 exclusive jurisdiction.

19       And there are ample cases on the opposite side

20 involving sale orders where the courts say, where the

21 bankruptcy court say we are going to decide issues concerning

22 the sale order even if other matters belong for resolution in

23 some other forum.

24       Examples of that are, you know, NE OpCo and the

25 Christ Hospital case.  I have mentioned reviewing that --

1          THE COURT:  Can I ask you a question?

2          MR. BRANDT:  Yes, sir.

3          THE COURT:  And this is going to sound like a

4    softball, but I want -- so, --

5          MR. BRANDT:  I like softballs.

6          THE COURT:  So, don't swing early.  Wait for it.

7          MR. BRANDT:  Okay.

8          THE COURT:  The question I have is the objection

9    really an abstention objection?  Because abstention -- it's

10   an objection to your motion that I make certain findings.  I

11   guess, it's a question of which court -- their point is which

12   court should deal with this. This is already pending in front

13   of the Ohio court.  We'll let that go forward.

14         MR. BRANDT:  Yes.

15         THE COURT:  I understand that.  I guess when I read

16   the objection, I wasn't necessarily certain that abstention

17   was the real predicate for the objection.  Usually, it's seen

18   in -- I understand the argument, but usually I see it in a

19   different context.  We have plenty of case law on abstention.

20         MR. BRANDT:  Sure.

21         THE COURT:  I think there's like fourteen factors

22   that have been laid out by the parties.

23         MR. BRANDT:  Yes, sir.

24         THE COURT: I'd like your thoughts on -- what I'm

25   asking you to do and what you're taking the opportunity to do

1  is characterize the objection.  But I think I'd like your

2  thoughts on whether or not, is it really an abstention

3  question or is it a just a question of an objection on the

4  merits of your motion?

5          MR. BRANDT:  Yeah.  I don't think it is an

6  abstention question, Your Honor.  And actually, at one point,

7  we noticed on that looking at the case law is that in that

8  Christ Hospital decision, the one from May of 2014, the same

9  argument was made in that case about abstention by the

10  employees who were seeking to avoid the effect of the sale

11  order.  The court issues the injunction against those

12  employees and also denied the request for abstention.

13          And in so doing, the court said that abstention

14  under Section 1334, and this is a quote from page -- right at

15  the end of the opinion -- said that abstention runs from

16  district court to state court and not between district

17  courts.  Citing to a Third Circuit decision called Hi-Tech.

18          We didn't include that point in our reply brief, but

19  I saw it last evening as I was re-reading the cases and I

20  thought that's an important point here.

21          THE COURT:  Right.  Well, I think the distinction

22  then is one effective of venue, right?

23          MR. BRANDT:  Perhaps.  Maybe a commodity between the

24  two different courts and I understand the tension associated

25  with, you know, making a ruling where there's a pending case

1  also and the court has decided that it belongs there.

2       THE COURT:  Yeah.

3       MR. BRANDT:  But it doesn't change the fact that

4  this court two years before the Arnold's started their case

5  reserved exclusive jurisdiction. And, perhaps, one could

6  fault me for not coming here first rather than going to Ohio.

7  But I guess we viewed the matter as really being one that

8  wasn't even a close call and that we would obtain a ruling

9  from the Ohio court that would be in line with what we're

10 asking this court to do.

11      THE COURT:  Then, at least, the last question I have

12 and, obviously, if you've got other points to make, then feel

13 free.

14      MR. BRANDT:  Yes.

15      THE COURT:  And, as I said, you'll certainly have an

16 opportunity to reply to Mr. Loizides.

17      MR. BRANDT:  Yes, sir.

18      THE COURT:  But your last point touches on a theme,

19 a major theme from their objection, which is you choose one

20 court, you had an adverse ruling, or two adverse rulings, I

21 guess, and now you came here.  Is that -- and basically,

22 they're tagging you with that's not an option.  You could

23 have come at the beginning or not.  But you don't get to try

24 to find a different forum characterizing their objection.

25      But I think that's pretty much what you read and I

1    read. I'd like your thoughts.

2         MR. BRANDT:  Well, first point, Your Honor, is that

3    the most more recent ruling about the motion to transfer

4    venue and to stay the case, I don't think it contains any

5    analysis by the Ohio court that relates specifically to what

6    we're asking about here.

7         THE COURT:  Agreed.

8         MR. BRANDT:  As to the first ruling, I acknowledge

9    that, yes, we sought relief there which was denied.  But,

10   again, that was not a final determination and there really is

11   very limited analysis offered by Judge Zouhary and he's made

12   clear specifically that he could reach a different conclusion

13   later.

14        And this is not a matter where a final decision was

15   made and we're contesting it.  But we're essentially bringing

16   the second motion that Judge Zouhary himself was sort of

17   forecasting when he said I could make a different conclusion

18   at a later time after more information is available.

19        And there's a point to be made there, Your Honor.

20   And when I was at the argument in Ohio back in August in

21   front of Judge Zouhary, the Arnold's were arguing that no

22   notice of the bankruptcy case had been served upon them and

23   no notice of the sale hearing.

24        And that was sort of a new issue that was raised at

25   the hearing.  And to be candid, I was not informed about the

1 specifics of the notice issue at the time.  The judge was

2 curious about that and asked me some questions which I was

3 not able to answer because I did not anticipate the argument.

4        Subsequent to the hearing, we tracked down the

5 affidavits of service which were in this court's file

6 relating to the Chapter 11 case and confirmed that the

7 affidavits of service had been mailed to both of the Arnold's

8 with respect to both the commencement of the case and the

9 sale order hearing.

10        And so, that issue became sort --

11        THE COURT:  I saw that in your papers.

12        MR. BRANDT:  -- of moot, in my view.  There were

13 reasons, I think, to sort of give this matter a fresh look.

14 And Judge Zouhary, again, noted a different conclusion could

15 be reached when he signaled with that question about, on page

16 19, that if he understood the facts as I believe they are in

17 terms of the timeline of events, his view was that it would

18 take the wind out of the sails of the Arnold's argument.  And

19 that's all we're asking this court to do essentially is

20 follow on to that reasoning which I believe is the correct

21 outcome.

22        Now, the Arnold's, Your Honor, in addition to what

23 they call the abstention argument offered at the very end of

24 their brief.  This is sort of a short list of arguments that

25 they say support the conclusion that the sale order doesn't

1 affect their claims.  No new facts or sort of legal analysis

2 was submitted on those points.

3        And I just wanted to note them briefly because I

4 don't think any of them really have any merit.  First of all,

5 of course, is that argument about the notice.  They claim

6 they didn't receive notice.  We've provided the affidavits of

7 service.  We provided the case law, and the legal authority

8 about the notice being sufficient.

9        This court found specifically in the sale order that

10 notice had been adequate and sufficient.  There's no need for

11 discovery on that issue.  And the plaintiffs have submitted

12 nothing, Your Honor.  More than 90 days have passed since

13 Judge Zouhary ruled and there's been nothing submitted by the

14 plaintiffs to buttress their argument about lack of notice.

15 There's no reason for discovery on that issue.

16        Next point they make is that the sale order doesn't

17 preempt federal law.  And this gets specifically to a

18 provision in the Family Medical Leave Act that essentially

19 says that a successor to an employer can be liable under the

20 FMLA.  And on that point, the Christ Hospital decision went

21 specifically to that issue and found that the sale order in

22 that case trumped or took precedence over that FMLA successor

23 provision.

24        As far as we know, that's the most current authority

25 on that issue specifically ruling against the plaintiffs, the

1    Arnold's and rejecting the one case that they had cited on

2    that issue, Miller (ph), so that issue is now resolved in

3    favor of the asset purchaser.

4          The other argument that's made is that a sale order

5    can absolve the purchaser from consequences of its own

6    conduct.  And that is clearly not accurate in my view based

7    on rulings like NE OpCo where the court essentially said that

8    the asset purchaser is insulated from consequences of its own

9    conduct that occurred before the closing, same facts that we

10   have.

11         Now the final point they make, again with no factual

12   support or legal authority, they allege in the objection,

13   Your Honor, that their claims accrued after the asset sale

14   closed on July 31 of 2015.  But that position is directly

15   contrary, Your Honor, to and a flip flop from what the

16   Arnold's alleged to Judge Zouhary.

17         And in that -- at page 3 of the brief they filed in

18   Ohio before Judge Zouhary ruled, they said that their claims

19   accrued on July 15.  They said their claims were triggered on

20   July 15, 2015 which is right.  They were triggered then when

21   they were terminated, and we cited some case law making, you

22   know, which confirms the point that claims arising from a

23   termination occurred when the termination happens.

24         And that's what the Arnold's had said four months

25   ago in Ohio and now they're saying just the opposite that

1  they accrued later, but they've offered no facts and no legal

2  authority to support that contention.  It doesn't have any

3  merit.

4          Your Honor, there are some important policy

5  considerations that relate to the sale orders that strongly

6  support the motion and I urge the court to take those into

7  account.

8          This argument that the Arnold's are making where

9  they're alleging in their pleadings in Ohio that their claims

10 are unaffected by this court's order raise serious questions

11 about whether a bankruptcy court can effectively scrap

12 transferred assets of employee claims.

13         And it's important that the law is clear that that

14 can happen because the system depends on asset purchasers

15 coming to the table and making offers for value.  And if

16 there's a risk that these kinds of disputes will happen

17 later, even though the language of the sale order really

18 couldn't be more clear that they're barred, that creates a

19 serious risk to the operation of the system.

20         And essentially the Arnold's are asking to be put in

21 the position where they're in a preferential status as

22 compared to other unsecured creditors, which courts have

23 repeatedly said is not permitted. And we're just asking for

24 the court to issue an order that's consistent with what it

25 already directed back in 2015.

1        That's the balance of my comments, Your Honor.  I'd

2   be glad to answer any questions you have.

3        THE COURT:  I don't have any questions right now,

4   Mr. Brandt, but I'll hear from Mr. Loizides and I'll hear

5   from you in reply.

6        MR. BRANDT:  Thank you.

7        THE COURT:  Thank you.  Mr. Loizides.  Good morning.

8   Good to see you.

9        MR. LOIZIDES:  Good morning, Your Honor.  Good to

10  see you too.

11       Your Honor, before turning to the argument, and I

12  have mentioned this to the movant's counsel.  Both parties

13  have talked a lot about the first amended complaint and the

14  difference between the first amended claim and the second

15  amended claim, but none of us actually bothered to put into

16  the record, so I do have a copy I'd like to hand up.

17       THE COURT:  Sure.  That would be great.  Thank you.

18       Yeah, I think I read the first amended.

19       MR. LOIZIDES:  You have the second amended.

20       THE COURT:  Oh, all right.

21       MR. LOIZIDES:  I think.

22       THE COURT:  I don't know.  I read a complaint.

23       MR. LOIZIDES:  And I premarked that as our Exhibit 6

24  to follow sequentially.

25       THE COURT:  Okay.  That sounds fine.

1          MR. LOIZIDES:  To the extent it's necessary and also

2   move for the admission of the exhibits.

3          THE COURT:  Any objection to admission of the --

4          MR. BRANDT:  No, sir.

5          THE COURT:  Very well.  It's admitted.  It's part of

6   our record for the argument.

7      (Movant's Exhibit 6 received in evidence)

8          MR. LOIZIDES:  Excuse me, Your Honor; I'm sorry.

9   Trying to find my notes.

10         THE COURT:  You want a moment?

11         MR. LOIZIDES:  Well, actually, let me do this, Your

12  Honor.  I'm looking for my notes.

13         But the court raised --

14         THE COURT:  Want me to take just a two-minute break?

15         MR. LOIZIDES:  No, but the court raised a question

16  just now that whether this is really an abstention case and

17  that seemed to be a major issue for the court.  And I thought

18  it made some sense to just go right there.

19         THE COURT:  Sure.

20         MR. LOIZIDES:  Candidly, Judge, I thought this was

21  an abstention case or I would (indiscernible) argument.

22         THE COURT:  Yeah.  I mean I understand the -- it's

23  just not -- this is not typically the context in which I

24  would see abstention.

25         MR. LOIZIDES:  Yes.  Is the issue, Your Honor, and I

1  did look at this issue.  It's, obviously, not briefed.  If

2  the issue is whether this court has the authority to abstain

3  given the fact that the other proceeding is pending in

4  federal court instead of state court, that very issue was

5  addressed on the McMahon case that we cited.  The Judge Walsh

6  case that we cited in our materials.

7         And in that case, obviously, you had a proceeding.

8  It was in the Delaware District Court and the court abstained

9  in favor of the Delaware District Court.  So, you can have

10 abstention between two federal courts basically.

11        THE COURT:  Okay.

12        MR. LOIZIDES:  And the judge cites a Tenth Circuit

13 on that.

14        I have looked at the Third Circuit decision cited in

15 the Christ Hospital case.  But the quotation there just makes

16 a general statement that in general abstention is used with

17 respect to proceedings in state court, but I don't know that

18 it's limited to that.

19        THE COURT:  Well, I don't want to head down a rabbit

20 hole on that because I did raise the question and I heard

21 from Mr. Brandt in reply, and I understand your argument.

22        And I understand that there is a, as a practical

23 matter, there are different factors that are considered.  But

24 at the end of the day, the inquiry is the same -- which is

25 the appropriate forum in which to deal with this issue.

1  Either this court because it's my order and I ran the sale

2  process or the Ohio court because the matter is pending

3  before that court and it made certain rulings and decisions

4  already.

5          Whether we call it abstention; whether we call it

6  venue; or whether we call it ruling on your objection, it

7  seems to me that the functional considerations for me and the

8  same. So, I don't want to get too hung up on what we call it.

9          MR. LOIZIDES:  Okay. I appreciate that, Your Honor.

10         And, you know, Your Honor may be right.  Maybe this

11  is really a venue issue rather than an abstention issue.

12  That's not the way I have thought of it, Your Honor.  But I

13  think the facts are the same facts.

14         And if I can now look, it should take a second.

15         THE COURT:  Sure.

16         MR. LOIZIDES:  Here we go.

17         Yes, Your Honor, from our papers whether this is

18  abstention or venue or what have you, we do view this as a

19  situation where Taylor is basically asking this court to

20  correct or contradict the District Court. And I don't think

21  that's an avoidable conclusion.

22         The District Court -- Taylor raised the issue of the

23  bar of this court's sale order squarely in its motion for

24  judgment on the pleadings and that's what that whole motion

25  is directed to.  It's a detailed motion.  If I can say it was

1  well written and well-reasoned.  Okay.  Obviously, we don't

2  agree with it, but still it was a good work.

3       And there were substantial briefing on this issue.

4  There was some proceedings that I'm not familiar with in

5  terms of questions being handed out before oral argument.

6  And it's very clear that the court took this very seriously,

7  Your Honor.  So, they went through that whole process and

8  they did not prevail.

9       And what the court said is that Taylor was not

10  entitled to judgment as a matter of law.  Yes, it's clearly

11  an interrogatory order, Your Honor. We're not arguing it's a

12  final order.  We're denying a motion for judgment on the plea

13  this can't possibly be a final order.

14       If it were a final order, we'd be arguing res

15  judicata or collateral estoppel.  But I don't think we can do

16  that.

17       But, Your Honor, for purposes of permissive

18  abstention or possibly venue, the fact that the court said

19  you can come back -- said to Taylor, you can come back,

20  actually cuts in favor of abstention because Taylor's got a

21  remedy.  They can, indeed, file either a renewed motion to

22  dismiss or a motion for summary judgment or whatever it is.

23       It's just not --it's not the way things should

24  operate where a party voluntarily raises an issue before one

25  court, gets a decision it obviously doesn't like.  And then

1  comes to another court to seek a different result.

2        THE COURT:  Let me ask you.  I started with some

3  different and, perhaps, little bit more charged facts when I

4  conferred with Mr. Brandt a few moments ago.  But let me ask

5  you procedurally your phrase a moment ago was this is not how

6  this should go.  And I think I quoted from your papers or

7  characterized them to Mr. Brandt saying, the objection is

8  basically you chose to litigate in Ohio.  You had some

9  rulings you didn't like.  You don't get to run to this court

10 to try to either correct them, so I get that argument.

11       Let me ask you.  I know that this is not the facts

12 that we have.  But I'd like your thoughts on whether or not

13 Taylor would have been able at the outset to try to move this

14 matter to Delaware or to try to transfer venue or to try to

15 stay it and immediately come here.

16       Is your point that by engaging with the District

17 Court that the matter should remain with the District Court

18 or when you say this is not how this should have been done,

19 how should it have been done if they wanted to get here?

20       MR. LOIZIDES:  Your Honor, right.  Well, to be

21 clear, Your Honor, as we've said in our papers, we're not

22 saying that Taylor did anything improper or unwise in filing

23 its motion for judgment on the pleadings and raising the bar

24 of Your Honor's order in that court.  This sort of thing

25 happens all the time.

1      Right, you have an order from another court.  It may

2  come up in another proceeding.  But our view is that once

3  they made that decision, they have to live with the

4  consequences.

5      Now, I think they could have, if they wanted this

6  court to rule on this issue in the first instance, they could

7  have filed their motion, this motion, much earlier in the

8  process.  But it isn't even so much an issue of timing.  It

9  is an issue of the fact that they raised this very issue

10 before the District Court.

11     I think timing comes into it.  The fact that they

12 waited a year is extremely problematic.  And, you know, if

13 you think of it from the District Court's perspective, you

14 know, you've got this proceeding in front of the court for a

15 while.  And then you make a decision that not well taken and

16 then they try to then, and only then, do they come to this

17 court and seek a different ruling.

18     And I think that also goes into the fact that the

19 District Court denied the motion for a stay.  Obviously, I

20 wasn't present at this colloquy with the judge, so I don't

21 know what was said then, Your Honor.  But the judge's opinion

22 here is that he was not going to stay these proceedings.

23     And I would mention, Your Honor, if you look at the

24 Christ Hospital case, it is true that there was a request to

25 abstain there.  And, indeed, the court agreed with many of

1   the arguments that are being made by Taylor that at the end,

2   the court says most importantly, after argument on the

3   motion, the District Court issue an order directing a stay of

4   the District Court's suit with respect to Hudson until there

5   was a motion to enforce, as a resolved, by the bankruptcy

6   court.

7           So, in that case, Your Honor, it's very clear that

8   the District Court essentially was saying, was deferring to

9   the bankruptcy court quite conscientiously.

10          In this case, Your Honor, as I said, Taylor

11  presented the very issue of the sale order to the District

12  Court in the first instance.  And I have no reason to think

13  that that occurred either in NE OpCo or in Christ Hospital.

14          THE COURT:  Let me directly ask you a question and

15  I'll give you the same warning I gave Mr. Brandt.  This is a

16  softball to you, but I'm going to ask Mr. Brandt this

17  question as well.  I had forgotten to ask it while he was up

18  there.

19          The thrust of your argument is the Ohio court has

20  considered this precise question.  It's actually considered

21  really the two questions that are before me.

22          First whether or not the sale order precludes the

23  litigation generally and, second, whether or not the

24  Bankruptcy Court or the Ohio District is the proper forum for

25  hearing this.  Both of those questions have been addressed by

1  the Ohio court.  Okay.

2         MR. LOIZIDES:  I would agree.

3         THE COURT:  At least, for purposes of a Rule 12

4  motion and a 1412 transfer motion.

5         As a practical matter if I were to grant Taylor's

6  motion, am I functionally reversing the rulings of the Ohio

7  court?

8         MR. LOIZIDES:  Yes, Your Honor, that really is our

9  point. And then we think that is unavoidable, Your Honor.

10         And as we said, first of all, the fact that it's an

11  interlocutory order doesn't mean that you wouldn't be doing

12  exactly that because the court said they're not entitled to

13  judgment as a matter of law.

14         I think part of their response is well, but we filed

15  the second amended complaint that's very different.  But,

16  Your Honor, if you look at the two complaints, and I realize

17  you just got the first complaint, the four counts are the

18  same.  The claim is the same.  The factual background for the

19  claim is the same.

20         True, the second amended complaint got a lot of

21  allegations about the bankruptcy that are absent from the

22  first amended complaint.  But it's not as if that the

23  Arnold's injected that issue into the case.  Taylor -- this

24  was all raised in the context of a motion for judgment on the

25  pleadings where Taylor, again, raised the bar of this court's

1  sale order and the bankruptcy proceedings.

2        It seems to me the only way you could ever get to

3  any relevance for the second amended complaint is if there

4  were binding admissions in the second amended complaint

5  absent from the first amended complaint that obviated the

6  need for any discovery.

7        First of all, Taylor hasn't made that argument.  I

8  don't think they can make that argument.  But if that's what

9  they really believed, Your Honor, I would respectfully submit

10 that go back to the court that you've got.

11       You say, hey, plaintiffs just shot themselves in the

12 foot.  Okay.  We don't need discovery because now the second

13 amended complaint contains binding issues.  I said I don't

14 think Taylor has made that argument.  Their position is very

15 clear.  Whether you're talking about the first amended

16 complaint or the second amended complaint, Taylor's position

17 is they're entitled to judgment as a matter of law.  That

18 there just is no difference -- for that purpose, there is no

19 difference between the two.

20       And so, I think Your Honor inevitably would be

21 contradicting the District Court.  I just -- you know, I

22 don't think we should try to candy-coat that.  It's just a

23 reality.

24       THE COURT:  Okay.

25       MR. LOIZIDES:  Your Honor has actually anticipated a

1  lot of what I was going to say so I'm just sort of skipping

2  through some of this.

3          On the subject of exclusive jurisdiction, Your

4  Honor, this is not so much an argument that they're not

5  contradicting the District Court, it is that essentially this

6  court retained exclusive jurisdiction in the sale order and,

7  therefore, essentially a District Court order has no effect

8  or something like that.

9          Your Honor, first of all, Taylor obviously raised

10  the issue of the bar of this court's sale order with the

11  District Court.  And presumably wouldn't have done that if

12  they didn't think the District Court had jurisdiction to

13  decide that issue.

14          If they did that believing that, that strikes me as

15  extremely problematic.  So, I think they are taking basically

16  inconsistent positions on that.

17          Your Honor, I understand this may be a delicate

18  issue.  I would respectfully suggest that I am -- I might

19  question whether an exclusive jurisdiction provision like

20  this is fully enforceable in all context.  I understand this

21  has become almost boilerplate in the sale orders.  But,

22  obviously, the 1334 of Title 28 says this court has exclusive

23  jurisdiction over bankruptcy cases.  And then has

24  jurisdiction over a variety of other things that's not

25  exclusive.

1        I don't think you could possibly take the position

2   that the District Court in deciding this issue about the

3   applicability of the sale order was exercising or purporting

4   to exercise jurisdiction over this bankruptcy case.

5        But even putting that aside, Your Honor -- Your

6   Honor looks puzzled.

7        THE COURT:  No, I follow your argument.

8        MR. LOIZIDES:  Oh, okay.  All right.

9        But the -- I'm sorry; I lost my train of thought.

10       Oh, the other point is, Your Honor, is that there's

11   a suggestion in Taylor's reply brief that the exclusive

12   jurisdiction provision basically didn't belong there if there

13   was any possibility that this court might abstain from

14   adjudicating the interpretation or enforcement of the order.

15       But, Your Honor, I don't see how the court could

16   have foreseen this kind of circumstance where the buyer goes

17   to another court, asks for a decision, and then comes back

18   here.  So, I don't think Your Honor somehow tied your hands

19   in signing the sale order and said I will never abstain; the

20   court will never abstain under any circumstances.

21       I'm not sure you can because Congress has given the

22   court that authority under 1334(c)(1).  So, the bottom-line,

23   Your Honor, the exclusive jurisdiction provision is this

24   court, nevertheless, has the ability to abstain.  And, like I

25   said, if I hit the wrong button, then maybe it's a venue

1  issue and, at which case, we don't even get to that issue of

2  exclusive jurisdiction.

3           THE COURT:  I understand.

4           MR. LOIZIDES:  There's also been a significant

5  suggestion that the District Court is confused about the

6  facts or has misapprehended the facts.  Your Honor, again, if

7  that's really what they think and, obviously, my familiarity

8  with this case is not that different from Your Honor's.

9           THE COURT:  Sure.

10          MR. LOIZIDES:  I'm looking at a paper --

11          THE COURT:  On a paper record.

12          MR. LOIZIDES:  Right.  I'm looking at a pulled

13  record.  Of course, I've had discussions with my co-counsel,

14  but you know of limited nature.  So, but, again, sometimes

15  judges misapprehend facts.  That can happen.  And what do you

16  do?  You file a motion for reconsideration based on plain

17  error.

18          I don't suggest that Taylor or anybody else would do

19  that lightly.  But if this is a sincere belief that this is

20  just a matter of a simple confusion, I don't think they

21  should come -- respectfully, Your Honor, I don't think coming

22  to this court and having this court tell the District Court

23  that it misapprehended the facts is the right way of doing

24  it, Your Honor.

25          Your Honor, in sum, I think that it is simply not

1 | possible for this court to avoid the conclusion that if the
2 | court were to grant Taylor's motion that it would be directly
3 | contrary to the District Court order and possibly, as Your
4 | Honor suggested, maybe both orders.

5 | I think I already mentioned this about NE OpCo that
6 | in NE OpCo in the reply, Taylor says that the court in NE
7 | OpCo didn't consider the issue of abstention.  But as far as
8 | I know, there's no indication anybody raised that issue.

9 | So, in any case, Your Honor, there's no indication
10 | in either NE OpCo or Christ Hospital that either party in
11 | those cases first raised the issue of the bar at the sale
12 | order in the other court and that is a very significant
13 | distinction, at least for purposes of abstention or the right
14 | forum.

15 | Your Honor, we have not focused on the merits in our
16 | response, I think for obvious reasons because, again, we
17 | think that this belongs in the Ohio court at this juncture
18 | given the procedural history.

19 | Your Honor has raised this issue over the situation
20 | where you have direct conduct, the allegation anyway, which
21 | must be taken for true at this stage of the proceeding,
22 | direct contact by a buyer after the sale order, but prior to
23 | the closing.  Can that be essentially prospectively absolved.

24 | I understand that NE OpCo does appear to stand for
25 | the proposition that it can be under certain circumstances.

1   As far as I know, however, there's no binding authority in

2   this district on that subject.  So, I think it's a -- it's

3   not that I don't think that Judge Sontchi did not marshal

4   very powerful bankruptcy-related policy arguments in favor of

5   that conclusion.  I'm not saying that.  But I'm not sure,

6   nevertheless, that that conclusion necessarily follows.

7          THE COURT:  I know that the parties have briefed it

8   and Mr. Brandt argued it, and you've raised it as well.  I

9   guess my point is I'm not certain that that's essential

10  consideration for the question that's before me today which I

11  think it really boils down to which court should be dealing

12  with this question and what's the effect of the court's sale

13  order.  So, I think I understand that, but again I'm not --

14         MR. LOIZIDES:  Yeah and that takes us back to the

15  first point, Your Honor and that is that given the procedural

16  history here, given the fact that Taylor raised the issue of

17  they barred the sale order the first instance before the

18  District Court and also due to the fact the recent District

19  Court's decision denying the request to stay as a transfer

20  venue, we would respectfully request that this court either

21  abstain or enter an appropriate order transferring venue in

22  favor of the District Court in Ohio.

23         THE COURT:  Very good.

24         MR. LOIZIDES:  Unless the court has any questions,

25  that's all I've got.

1          THE COURT:  I do not.

2          MR. LOIZIDES:  Thank you, Your Honor.

3          THE COURT:  All right, Mr. Brandt.

4          I think I said I was going to want your thoughts on

5   the question that I had asked Mr. Loizides about the

6   interplay between granting your motion and the pending

7   proceedings.

8          And you've answered my question about what would

9   happen in Ohio, but I think the question is can I -- I'm not

10  trying to raise a collateral estoppel question.  I think I

11  raised the question -- I'll let you answer it, hopefully, or

12  you can articulate it more clearly than I can right now.

13         MR. BRANDT:  I did.  I think you were asking would

14  you be functionally reversing the order of Judge Zouhary, the

15  August order in which you denied our motion for judgment on

16  the pleadings.  I have a couple of points to mention in

17  regard to that, Your Honor.

18         First of all, it wasn't until the second amended

19  complaint was filed in the Arnold's Ohio case which occurred

20  after Judge Zouhary's ruling. And the plaintiff's alleged in

21  their pleading that their claims were unaffected by this

22  court's order.

23         That didn't happen until after Judge Zouhary had

24  ruled.  And if the Arnold's were seeking that relief, a

25  determination that their claims weren't affected by this

1  court's order, they should have come to this court, in the

2  first place, rather than filing in Ohio which they did.

3          And Judge Zouhary noted when he ruled in the

4  transcript of the hearing that one of the reasons that was

5  informing his ruling was the very high standard that applies

6  to motions for judgment on the pleadings which is the motion

7  that was before the court.  And he cited that high standard

8  of review denying that motion.  And so, there were fact

9  issues, but he did that and he clearly, as I said, reserved

10 judgment as to the --

11         THE COURT:  He did.

12         MR. BRANDT:  -- final ruling.  So, this isn't the

13 same motion.

14         There's overlap, I acknowledge, but it's not the

15 same motion; the standard of review is different, the facts

16 in this case are not in dispute.  And I don't think this

17 court would be reversing Judge Zouhary.

18         And Judge Zouhary seemed to have no trouble when we

19 had a status conference with him and as his recent October 18

20 order denying transfer of venue, he didn't seem to be

21 troubled at all by the fact that we were coming to the court

22 that it had issued the sale order and asking for this court's

23 interpretation of what the effect of that order was with

24 respect to the Arnold's.

25         And so, I don't think you would be reversing the

1    court.  If this court denies their motion, what will happen?

2    Well, in time, they'll make the same motion again to Judge

3    Zouhary. And we'll probably have to wait until the end of the

4    discovery period to do that, so we'll have to wait a few more

5    months.  But the sale motion will be presented again.

6           And so, some court is going to have to make a

7    determination shouldn't that be the court that reserved

8    exclusive jurisdiction over the issue.

9           THE COURT:  Let me ask you a question. Mr. Loizides

10   touch on this issue and you, obviously, referenced it in your

11   briefing with respect to this court's jurisdiction.

12          I sign orders all the time that reserve jurisdiction

13   and he used the term boilerplate, but I mean it's important.

14          MR. BRANDT:  Yes.

15          THE COURT:  And this is not the first time that I've

16   had buyers or other parties, counterparties, beneficiaries of

17   relief under a particular order come back to this court for

18   enforcement of an order.

19          MR. BRANDT:  Right.

20          THE COURT:  So, it's not a novel proposition.

21          MR. BRANDT:  Sure.

22          THE COURT:  But I've never really been asked what is

23   the meaning or the significance of a retention, for example,

24   of exclusive jurisdiction.  Does that give you an argument

25   that the Ohio court -- we're getting a little off topic, but

1  it's an interesting question and you're at the podium so I'm

2  going to ask.

3        MR. BRANDT:  Sure.

4        THE COURT:  Does that give you an argument that the

5  Ohio court lacks subject matter jurisdiction over the

6  dispute?

7        MR. BRANDT:  Perhaps, it would.  I would say that

8  just responding to that.

9        One of the comments that was made by opposing

10  counsel is that we waited a year before doing certain things,

11  et cetera.  I don't mean to belabor this, but there were a

12  number of months at the beginning of the Ohio case when

13  Taylor Corporation was not a party to that case.

14        THE COURT:  Right.

15        MR. BRANDT:  It was not added until months after the

16  commencement of the case.  We've responded to that initial

17  first amended complaint, the one that counsel provided to the

18  court today with our motion for judgment on the pleadings

19  which, of course, was denied.

20        But then the court, Judge Zouhary, permitted the

21  plaintiffs to file a second amended complaint which was done.

22  And the answer to that complaint, which is in the record of

23  the Ohio case, was flagged right away.  Hey, they're alleging

24  that their claims are unaffected by the bankruptcy court sale

25  order.

1      The bankruptcy court has exclusive jurisdiction over

2 that issue that was flagged in the answer the first time we

3 got to submit an answer on behalf of Taylor Corp which was

4 after Judge Zouhary had ruled.  We flagged that issue.

5      Now, I acknowledge, we have filed the motion on an

6 earlier stage, but we could have, perhaps, maybe we should

7 have, come to this court at that time.  But, frankly, we saw

8 the issue as not even a close call.  And figured we'd get the

9 same relief there that they we would get here.  Why bother,

10 but I mean hindsight is 20/20 on that.

11      But I believe Judge Zouhary when he is fully

12 informed about the sequence of events and is currently

13 understanding that the plaintiffs were discharged before the

14 asset sale closed, I think he'll rule our way and he forecast

15 that intent in the question that's reflected at page 19 of

16 the transcript.

17      Now getting back to a couple of other points made by

18 opposing counsel.  He cited to this McMahon case on the

19 subject of abstention and said that was a case where

20 abstention was applied between two U.S. District Courts.

21      McMahon also is helpful, I believe, Your Honor, for

22 our side because in McMahon, the court recognized that it

23 opts to defer to the court which had reserved jurisdiction to

24 decide matters about, I think it was a settlement agreement

25 that had been approved by that court.

1        And so, the principle there was that who should

2   decide?  Well, it should be the court that originally passed

3   on an issue and reserved jurisdiction, and that's what the

4   McMahon court ended up doing which is fully support what

5   we're asking which is that this court should decide because,

6   of course, dealt with this matter in 2015, two years before

7   the Arnold's brought their case.

8        The policy arguments that have been alluded to, Your

9   Honor, suggest that it would be appropriate, I believe, for

10  this court to rule now.  If there is no ruling and the court

11  essentially says we'll leave it to Ohio, then we'll be

12  waiting for a number of additional months, and we'll tee up

13  essentially the same motion at a later time.  And it's just

14  going to be more costly expense for an asset purchaser that

15  thought it had eliminated this risk pursuant to the

16  negotiated terms of that asset purchase agreement approved by

17  this court.

18       The plaintiffs had argued in Ohio that they needed

19  time to do discovery and Judge Zouhary said in his order, I'm

20  going to give some time for discovery and Mr. Brandt, you can

21  file your motion again at a later time.  More than three

22  months have passed since that order was issued, Your Honor.

23  No discovery has been served.  I don't know if the plaintiffs

24  are ever going to do that, but why do we need to continue

25  waiting.

1          It's appropriate, I think, for this court which

2    issued the order just to clarify what it means.  And there's

3    good reason to do that which was not in the record at the

4    time of our motion to Judge Zouhary because the plaintiffs

5    have affirmatively pled in their current pleading our clients

6    aren't affected by this court's order.

7          So, it's certainly appropriate that this court

8    should decide, at least, that narrow issue even though other

9    issues may remain for resolution to Ohio depending upon what

10   this court rules.

11         I believe that covers the comments I had in mind.

12   Do you have any other questions, Your Honor?

13         THE COURT:  I do not at this point. Thank you.

14         MR. BRANDT:  Thank you very much for hearing us

15   today.

16         THE COURT:  Sure.  Happy to oblige.

17         Okay.  I'm going to go ahead and rule.

18         I do find that the argument was particularly

19   helpful.  As I mentioned, Mr. Brandt, at the outset, this is

20   an interesting fact pattern with the issue arising in that

21   gap period between the sale order and the closing.

22         Nevertheless, based upon the record before me, I'm

23   going to deny Taylor's motion for an order enforcing the sale

24   order and the injunction, and I'll give you my reasons.

25         First, and, perhaps, most importantly, I'm satisfied

1  that this matter is properly before the Ohio court. The

2  matter is pending.  The issues are susceptible to being

3  raised, prosecuted and decided in that court. And I have no

4  concerns with respect to the exercise of that court's

5  authority in that respect, and I think counsel has noted that

6  Taylor expects that they'll have motion practice, that it has

7  expressed a measure of confidence, will achieve a

8  satisfactory result to Taylor in further proceedings in that

9  court.

10         I am, again, as a practical matter, just reluctant

11  to intrude on that process, again, where the particular

12  issues have been raised.  And, again, they're squarely before

13  the Ohio court.  And there is no reason, jurisdictional or

14  otherwise, that I can see that the Ohio court would not be

15  able to address these issues and, ultimately, dispose of them

16  properly.

17         So that really is the upshot of the court's ruling.

18  In addition, we had an extensive discussion with respect to

19  abstention versus venue.  And I honestly am not going to

20  spend a lot of time on the distinction.  I believe it's more

21  properly a venue consideration.  And venue considerations

22  under 1412 require the court to assess the interest of

23  justice and the best interest of the parties.

24         And, again, with the status of the proceedings in

25  Ohio versus in this court, I am satisfied that venue is

1   appropriate.  And I've read Judge Zouhary's opinion with

2   respect to venue denying the request to transfer that

3   proceeding to this court.

4         And I note that effectively to rule and dispose of

5   this matter in this court would be to frustrate, I think, the

6   venue ruling of that court.  While it's a little bit

7   different than the jurisdictional ping pong concept that the

8   Supreme Court addressed in the Christensen case a number of

9   years ago, I do find, as a practical matter, that a measure

10  of deference and commodity is appropriate, and the court has

11  denied the venue transfer motion for reasons, as I said, that

12  have I reviewed and that I don't disagree with.

13        I don't believe I need to really address the

14  abstention issue.  I'm satisfied, again, that the matter can

15  be properly and promptly addressed in Ohio, that it is

16  pending there. And, again, I have no reason to believe that

17  it won't be susceptible to prompt consideration and

18  disposition by the court in Ohio.

19        There's been a good deal of discussion with respect

20  to the merits of the request to rule upon the case and

21  dispose of the matter.  I make no comment on the merits of

22  the issue and the effect of the sale order which is my order.

23        Again, it's not an unusual proposition for another

24  court to be asked to construe and apply the provisions of

25  another court's order.  And, again, I have no reservations

1  with respect to Judge Zouhary doing so with respect to the

2  sale order.

3        These arguments can be raised and made in that

4  court.  And I don't believe that the court's retention of

5  jurisdiction in the sale order precludes or impairs that

6  court's ability to address this matter.

7        So, I understand the issue that has been raised.  It

8  is not, as I said, the first time that I've dealt with a

9  buyer or another buyer that is a beneficiary of an order

10 coming for a ruling to this court to enforce it.  But I don't

11 believe that it is required under the facts that are before

12 me that this court assert jurisdiction over the matter or

13 otherwise enforce the sale order on the terms that have been

14 requested by Taylor.  That is relief that can be presented to

15 and requested from the Ohio court.

16       So, for the reasons that I've stated, the motion is

17 denied.  The court will prepare its own order so providing,

18 but you've got my reasons on the record.

19       Are there any questions this morning?

20       MR. LOIZIDES:  No, Your Honor.

21       MR. BRANDT:  No, sir.

22       THE COURT:  All right.  Again, I appreciate

23 everyone's time and I appreciate the arguments.  They're

24 helpful.

25       We stand in recess.  Thank you.

1          Safe travel, sir.

2      (Proceedings conclude at 11:40 a.m.)

3

4

5

6                          CERTIFICATE

7

8  I certify that the foregoing is a correct transcript from the

9  electronic sound recording of the proceedings in the above-

10 entitled matter.

11
   /s/Mary Zajaczkowski                    November 19, 2018
12 Mary Zajaczkowski, CET**D-531

13

14

15

16

17

18

19

20

21

22

23

24

25