**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re:                                                          :        Chapter 11
                                                                :
SRC LIQUIDATION, LLC, [1]                        :        Case No. 15-BK-10541 (BLS)
                                                                :
                              Debtor.                        :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF JAY ALIX IN SUPPORT OF
MOTION OF MAR-BOW VALUE PARTNERS, LLC, A CREDITOR, FOR RELIEF
FROM ORDERS UNDER BANKRUPTCY RULE 9024 AND CIVIL RULE 60(d)(3)**

JAY ALIX, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury, as follows:

1.        I am the beneficial owner of Mar-Bow Value Partners, LLC, ("**Mar-Bow**), a creditor in the above-captioned proceeding.

2.        On March 12, 2015 (the "**Petition Date**"), The Standard Register Company (n/k/a SRC Liquidation, LLC) and its affiliates (collectively, the "**Debtors**") filed these bankruptcy cases.

3.        Mar-Bow is the transferee of a claim against SRC Liquidation, LLC.[2]

4.        On March 6, 2019, Mar-Bow filed its Motion of Mar-Bow Value Partners, LLC, a Creditor, for Relief from Orders under Bankruptcy Rule 9024 and Civil Rule 60(d)(3), Dkt. 2392 (the "**Motion**").

5.        I respectfully submit this declaration (the "**Declaration**") in support of the Motion.[3]

6.        I have reviewed the Motion and the facts set forth therein, and they are true and

---

[1]        The last four digits of the Debtor's taxpayer identification number are 5540.  Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

[2]        *See* Dkt. 1507 (Notice of Transfer of Claim Other Than for Security, filed Mar. 21, 2016).

[3]        All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

correct to the best of my knowledge, information, and belief.

7.     There are no new facts raised, asserted, or disclosed in this declaration which are not already addressed in the Motion.[4]

**I.     Exhibits**

8.     Attached hereto as Exhibits are true and correct copies of the following documents:

| | |
|---|---|
| **EXHIBIT 1** | McKinsey Website – About Us – Overview |
| **EXHIBIT 2** | McKinsey Forbes Profile – Dec. 31, 2017 |
| **EXHIBIT 3** | McKinsey Website – Locations. |
| **EXHIBIT 4** | Declaration of Kevin M. Carmody, filed June 23, 2017, Dkt. 123-2, *In re GenOn, Inc.*, No. 17-BK-33695(DRJ) (Bankr. S.D. Tex.) ("*GenOn*") |
| **EXHIBIT 5** | McKinsey Website – About RTS |
| **EXHIBIT 6** | Transcript, Deposition of Mark Hojnacki, Dec. 31, 2018 ("**Hojnacki Tr.**") |
| **EXHIBIT 7** | McKinsey Website – Our People – Kevin Carmody |
| **EXHIBIT 8** | McKinsey Website – Our People – Mark Hojnacki |
| **EXHIBIT 9** | Declaration of Mark W. Hojnacki, filed Nov. 8, 2018, *In re Westmoreland Coal Co.*, No. 18-BK-35672(DRJ) (Bankr. S.D. Tex.) ("*Westmoreland*") Dkt. 452, Ex. B |
| **EXHIBIT 10** | McKinsey Website – Our People – Jon Garcia |

---

[4]     This Declaration mentions a few additional Interested Party connections that were not specifically named in the Motion: Automatic Data Processing, Inc.; Cargill, Inc.; Deloitte & Touche LLP; Deloitte Tax LLC; Hewlett-Packard; Hewlett-Packard Financial Services Company; HP Enterprise Services LLC; Lazard Middle Market, LLC; McGuireWoods; National Fire Insurance Company of Hartford; Ohio Bell Telephone Company; the United States of America; the United States Department of Energy; and Xerox Corporation.  *See* Point IV, *infra*. Additionally, this Declaration lists a few additional connections to Interested Parties that were named in the Motion: Wells Fargo's connection as an MIO Service Provider; Deutsche Bank's connections as an MIO Prime Broker, MIO Fund Custodian, and MIO Service Provider.  *See* Point III, *infra*.

**EXHIBIT 11**  McKinsey Website – Our People – Eric Kutcher

**EXHIBIT 12**  Declaration of Mark W. Hojnacki, filed May 5, 2016, *In re SunEdison, Inc.*, No. 16-BK-09992(SMB) (Bankr. S.D.N.Y.) ("***SunEdison***"), Dkt. 202, Ex. B

**EXHIBIT 13**  Declaration of Kevin Carmody, filed Aug. 24 2015, *In re Alpha Natural Resources, Inc.*, No. 15-BK-33896(KRH) (Bankr. E.D.Va.) ("***Alpha Natural Resources***" or "***ANR***"), Dkt. 212, Ex. B

**EXHIBIT 14**  Supplemental Declaration of Mark W. Hojnacki, filed Dec. 17, 2018, *Westmoreland* Dkt. 810

**EXHIBIT 15**  Declaration of Casey Lipscomb, filed Sept. 12, 2018, *ANR* Dkt. 4152

**EXHIBIT 16**  Third Supplemental Declaration of Kevin Carmody, filed May 19, 2016, *ANR* Dkt. 2464

**EXHIBIT 17**  MIO Website – More About MIO

**EXHIBIT 18**  2018 SEC Form ADV, MIO Partners, Inc. ("**MIO**")

**EXHIBIT 19**  Supplemental Declaration of Casey Lipscomb, filed Nov. 9, 2018, *ANR* Dkt. 4160

**EXHIBIT 20**  Amended Declaration of Mark W. Hojnacki, filed June 6, 2016, *SunEdison*, Dkt. 484

**EXHIBIT 21**  Comments of United States Trustee, filed Nov. 30, 2018, *ANR* Dkt. 4164

**EXHIBIT 22**  Supplemental Declaration of Jon Garcia, filed Nov. 30, 2018, *ANR* Dkt. 4159

**EXHIBIT 23**  Miles Johnson and Harriet Agnew, *McKinsey's secret $5bn fund in spotlight*, Financial Times, June 5, 2016

**EXHIBIT 24**  2015 Form 5500, McKinsey Master Retirement Trust ("**MMRT**")

**EXHIBIT 25**  2017 SEC Form ADV, MIO

**EXHIBIT 26**  2018 SEC Form ADV Part 2A, MIO

**EXHIBIT 27**  Excerpt, SEC Form F-1A, Seadrill Limited, filed July 18, 2018

**EXHIBIT 28**  2017 Form 5500, MMRT

**EXHIBIT 29**    Excerpt, Affidavits of Service, filed Apr. 16, 2018, *Seadrill* Dkt. 1168

**EXHIBIT 30**    Excerpt, Declaration in Support of Debtors' Application, filed Sept. 29, 2017, *Seadrill* Dkt. 192-2

**EXHIBIT 31**    Excerpt, Fourth Amended Supplement to the Third Amended Joint Plan of Reorganization, filed May 6, 2016, *Magnum Hunter* Dkt. 1231

**EXHIBIT 32**    Excerpt, Updates to Original Disclosures, filed Nov. 3, 2015, *Caesars* Dkt. 2528-5

**EXHIBIT 33**    Excerpt, Endeavour 8-K Ex. 99.2 Settlement Agreement, dated Aug. 3, 2015

**EXHIBIT 34**    Excerpt, Joint Chapter 11 Plan of Reorganization, filed Sept. 3, 2014, *MPM* Dkt. 943

**EXHIBIT 35**    Excerpt, SEC S-1A, MPM Holdings, filed Nov. 6, 2017

**EXHIBIT 36**    Excerpt, Disclosure Statement, filed Mar. 13, 2011, *New Stream* Dkt. 4

**EXHIBIT 37**    Gretchen Morgenson and Tom Corrigan, *McKinsey Investments Not Disclosed*, Wall Street Journal, June 19, 2018

**EXHIBIT 38**    Mary Williams Walsh, *McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome.*, New York Times, Sept. 26, 2018

**EXHIBIT 39**    McKinsey RTS's disclosures originally filed *in camera* in *ANR* on July 6, 2016 (the "***ANR In Camera Disclosures***"), filed Jan. 16, 2019, *ANR* Dkt. 4195

**EXHIBIT 40**    Excerpts, IA_ADV_Base_A_20150316_20150930, Rows 1, 5993, 12042, 12179, and 12379
**(MIO ID Numbers)**

**EXHIBIT 41**    Excerpts, IA_Schedule_D_7B1A24_20150316_20150930, Rows 1, 6357-6394, 16708-16746, 16897-16932, and 17206-17244
**(MIO Prime Brokers)**

**EXHIBIT 42**    Excerpts, IA_Schedule_D_B1A25_20150316_20150930, Rows II
**(MIO Fund Custodians)**

**EXHIBIT 43**    Bloomberg Profile – Allianz SE

**EXHIBIT 44**    Bloomberg Profile: BW / IP International

**EXHIBIT 45**   Third Supplemental Declaration of Kevin Carmody, filed Feb. 7, 2018, *GenOn* Dkt. 1429

**EXHIBIT 46**   Exelon Website – Terms and Conditions

**EXHIBIT 47**   Reuters Company Profile – CNA Financial Corp.

**EXHIBIT 48**   Thomas Gnau, *Historic foundry has ceased operations*, Dayton Daily News, May 12, 2016

**EXHIBIT 49**   Dow.com Press Release, *DowDuPont Merger Successfully Completed*, Sept. 1, 2017

**EXHIBIT 50**   Jeff Mordock, *Dow, DuPont hire consultant to review post-merger spinoffs*, Delaware Online, Jan. 29, 2017

**EXHIBIT 51**   Second Supplement to Declaration of Kevin M. Carmody, filed Sept. 15, 2017, *GenOn* Dkt. 771

**EXHIBIT 52**   Quentin Hardy, *Meg Whitman Seeks Reinvention for HP as It Prepares for Split*, New York Times, Oct. 30, 2015

**EXHIBIT 53**   Third Supplemental Declaration of Mark W. Hojnacki, filed Dec. 21, 2016, *SunEdison* Dkt. 1958

**EXHIBIT 54**   Bloomberg Profile: L.M. Berry and Company

**EXHIBIT 55**   CNA Website – Licensing Disclosure

**EXHIBIT 56**   AT&T Website – Ohio Residential and Business Publications

**EXHIBIT 57**   First Supplemental Declaration of Kevin Carmody, filed July 13, 2017, *GenOn* Dkt. 221-1

**EXHIBIT 58**   Screenshot: Spending by Prime Award (contracts between McKinsey & Company and U.S. federal government, usaspending.gov query results)[5]

**EXHIBIT 59**   Screenshot: Spending Over Time (contracts between McKinsey & Company and U.S. federal government, usaspending.gov query results)

**EXHIBIT 60**   Screenshot: Spending by Awarding Agency (contracts between McKinsey & Company and U.S. federal government, usaspending.gov query results)

---

[5]   The screenshots attached hereto as Exhibits 58-63 were created by performing queries at the website https://usaspending.gov.

**EXHIBIT 61**  Screenshot: Spending by Prime Award (contracts between McKinsey & Company and Department of Defense, usaspending.gov query results)

**EXHIBIT 62**  Screenshot: Spending Over Time (contracts between McKinsey & Company and Department of Defense, usaspending.gov query results)

**EXHIBIT 63**  Screenshot: Spending by Awarding Agency (contracts between McKinsey & Company and Department of Defense, usaspending.gov query results)

**EXHIBIT 64**  Amended and Restated Agreement of McKinsey RTS and Alpha Natural Resources, Inc., dated Aug. 3, 2015, *ANR* Dkt. 212, Ex. A

**EXHIBIT 65**  Hearing Transcript, dated June 28, 2016, *ANR* Dkt. 2839

**EXHIBIT 66**  Agreement between McKinsey RTS and SunEdison, Inc., dated Apr. 21, 2016, *SunEdison* Dkt. 202, Ex. C

**EXHIBIT 67**  Agreement between McKinsey RTS and GenOn Energy, Inc., dated June 14, 2017, *GenOn* Dkt. 123-1, Ex. 1

**EXHIBIT 68**  Agreement between McKinsey RTS and Westmoreland Coal Company, dated Oct. 9, 2018, *Westmoreland* Dkt. 452, Ex. 1

**EXHIBIT 69**  Michael Forsythe, Walt Bogdanich, and Bridget Hickey, *As McKinsey Sells Advice, Its Hedge Fund May have a Stake in the Outcome*, New York Times, Feb. 19, 2019

## II.    MIO Representations

9.    On its website, McKinsey & Co., Inc. ("**McKinsey**") publicly represents: "We are a global management consulting firm."[6]  McKinsey has  approximately 27,000 employees,[7] in more than 120 cities and over 60 countries.[8]

10.    McKinsey operates through numerous subsidiaries.  One of those subsidiaries is McKinsey Recovery & Transformation Services U.S., LLC ("**McKinsey RTS**"), which is a direct

---

[6]    *See* Ex. 1 (McKinsey Website – About Us – Overview).
[7]    *See* Ex. 2 (McKinsey Forbes Profile – Dec. 31, 2017).
[8]    *See* Ex. 3 (McKinsey Website – Locations).

wholly-owned subsidiary of McKinsey & Company, Inc. United States, which, in turn, is a direct wholly-owned subsidiary of McKinsey Holdings, Inc., which, in turn, is a direct wholly-owned subsidiary of McKinsey.[9]

11.     McKinsey established McKinsey RTS in 2010.[10]

12.     Publicly available information helps to demonstrate that McKinsey RTS is not truly a "separate" entity.

13.     For example, McKinsey's own website describes McKinsey RTS as a "unit" of McKinsey and further notes that it is "tightly integrated with McKinsey & Company."[11]

14.     Further, there is no indication that McKinsey RTS has its own office space.[12]

15.     In addition, McKinsey RTS partners are also partners of McKinsey, including Kevin Carmody, the McKinsey RTS (and McKinsey) partner who signed McKinsey RTS's disclosures in this matter.[13]

16.     It is also my understanding, based on several conversations with Dominic Barton, who was the immediate predecessor of McKinsey's current global managing partner, Kevin Sneader, that McKinsey's global managing partner exercises oversight responsibility for all of

---

[9]     *See* Ex. 4 (*GenOn* Dkt. 123-2) at 4 ¶ 5.
[10]    *See* Ex. 5 (McKinsey Website – About RTS) at 2.
[11]    *See* Ex. 5 (McKinsey Website – About RTS) at 1-2.
[12]    *See* Ex. 3 (McKinsey Website – Locations); Ex. 6 (Hojnacki Tr.) at 16:25-19:9.
[13]    *See, e.g.*, Ex. 7 (McKinsey Website – Our People – Kevin Carmody) (identifying Mr. Carmody as "Senior Partner, Chicago" for McKinsey as well as "global leader of [McKinsey's] Corporate Restructuring work within McKinsey's RTS Practice."); *see also, e.g.*, Ex. 8 (McKinsey Website – Our People – Mark Hojnacki) at 2 (identifying Mr. Hojnacki as "a partner in McKinsey RTS's restructuring practice); Ex. 9 (*Westmoreland* Dkt. 452) at 35 ¶ 1 ("I am a Practice Leader in the professional services firm of McKinsey Recovery & Transformation Services U.S., LLC ('McKinsey RTS US') . . . I am also a partner at McKinsey & Company, Inc. ('McKinsey')"); Ex. 10 (McKinsey Website – Our People – Jon Garcia (identifying Mr. Garcia as "a senior partner at McKinsey and president at RTS") and "Found of McKinsey's RTS unit").

McKinsey's business units, including McKinsey RTS.  This oversight responsibility is exercised by and through McKinsey's "Shareholders Council," which McKinsey describes as akin to the company's board of directors.[14]

17.    Based on my experience as a certified public accountant, entities structured like McKinsey typically prepare consolidated financial statements that include the revenues of their subsidiaries and file consolidated tax returns for the entire family of entities.  Thus, McKinsey likely prepares consolidated financial statements that include the revenues of its subsidiaries and files consolidated tax returns for the entire McKinsey organization."

18.    Moreover, my review of McKinsey's filings in bankruptcy cases makes it clear to me that McKinsey RTS itself cannot fulfill its core mission—advising firms that are insolvent or approaching insolvency—without "borrowing" consultants from McKinsey's broader management consultancy practice.[15]

19.    Indeed, the indemnification paragraph of McKinsey RTS's engagement agreement with the Debtors applies to all of McKinsey and everyone associated with it, and states that:

> The Company and its affiliates hereby agree (i) to indemnify, hold harmless and defend McKinsey RTS, and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons . . . .

Dkt. 87-4 at 7 ¶ 6(a).

---

[14]    *See, e.g.*, Ex. 11 (McKinsey Website – Our People – Eric Kutcher) (referring to "McKinsey's Shareholders Council (its Board of Directors)").

[15]    *See, e.g.*, Ex. 12 (*SunEdison* Dkt. 202) at 35 ¶ 3; Ex. 4 (*GenOn* Dkt. 123-2) at 3-4 ¶¶ 4, 6; Ex. 13 (*ANR* Dkt. 212) at 2 ¶ 2 ("Certain employees of McKinsey RTS, along with certain consultants borrowed from affiliates of McKinsey RTS, are together serving the debtors and shall be referred to as the '<u>McKinsey RTS Team</u>' for purpose of this Declaration."); Ex. 14 (*Westmoreland* Dkt. 810) at 2-3 ¶ 4; *see also* Ex. 6 (Hojnacki Tr.) at 81:25-82:5, 84:18-85:22.

20.     Effectively, then, McKinsey RTS appears to serve little purpose beyond enabling McKinsey to minimize the number of disclosures it makes in bankruptcy cases.

21.     The McKinsey Investment Office, or MIO, encompasses MIO Partners, Inc. and its sister company, MIO Partners (EU) Limited.  Like McKinsey RTS, they are wholly-owned indirect subsidiaries of McKinsey.[16]

22.     MIO operates in the United States through MIO Partners, Inc.  MIO Partners, Inc. is owned by MIO Group, Inc. which is, in turn, owned by McKinsey & Co., Inc.[17]

23.     MIO is an investment firm that manages approximately $25 billion of assets on behalf of current and former McKinsey employees and their families.[18]

24.     According to public filings, of the $25 billion managed by MIO, approximately $6.7 billion is managed for the benefit of the McKinsey Master Retirement Trust.[19]  The remaining approximately $18.7 billion (*see id.*) comprises privately managed assets that MIO invests on behalf of current and former McKinsey partners and their families.[20]

25.     MIO has no assets beyond those provided either directly by McKinsey, or by current or former McKinsey members on account of their work for McKinsey.  *See id.*

---

[16]     *See* Ex. 15 (*ANR* Dkt. 4152) at 1-2 ¶ 3.
[17]     S*ee* Ex. 16 (*ANR* Dkt. 2464) at 8-9 ¶ 20.
[18]     *See* Ex. 17 (MIO Website - More About MIO); Ex. 17 (SEC Form ADV – 2018) at 10-11.
[19]     *See* Ex. 18 (SEC Form ADV – 2018) at 10-11.
[20]     *See* Ex. 19 (*ANR* Dkt. 4160) at 2 ¶ 3.

26.    On its website, MIO presents itself as making investments "essentially on a 'blind trust' basis,"[21] an assertion that McKinsey RTS has repeated in sworn declarations in multiple bankruptcy proceedings.[22]

27.    Despite this assertion, however, many facts indicate that MIO is not "essentially a 'blind trust'" nor does it, as McKinsey RTS has represented,[23] "operate separately" from McKinsey and McKinsey RTS.

28.    First, MIO is overseen by a board of directors largely comprised of current and former McKinsey partners.  As of September 12, 2018, nine of the eleven directors of MIO were either current or former McKinsey partners.[24]

29.    Prior to November 1, 2017, all of the members of MIO's board of directors were either current or former McKinsey partners.  *See id.*

30.    As corporate directors, MIO's board members have fiduciary duties to maximize the value of MIO for the benefit of its only beneficial shareholder:  McKinsey & Co., Inc.

31.    Jon Garcia, who has been the President of McKinsey RTS since its founding in 2010, also served on MIO's board of directors from December 8, 2006 through June 9, 2017.[25] Thus, Mr. Garcia served on MIO's board of directors for nearly a decade before and for the two years following the Petition Date in this case.

---

[21]    *See* Ex. 17 (MIO Website - More About MIO).

[22]    *See, e.g.*, Ex. 20 (*SunEdison* Dkt. 484) at 27 ¶ 67; Ex. 16 (*ANR* Dkt. 2464) at 8-9 ¶ 20; *see also* Ex. 21 (*ANR* Dkt. 4164) at 3-4 ¶ 3 (citing instances in which McKinsey RTS has used the term "blind trust" to describe MIO).

[23]    *See* Ex. 21 (*ANR* Dkt. 4164) at 1-2.

[24]    *See* Ex. 14 (*ANR* Dkt. 4152) at 2-3 ¶ 8.

[25]    *See* Ex. 10 (McKinsey Website – Our People – Jon Garcia); Ex. 22 (*ANR* Dkt. 4159) at 1 ¶ 1.

32.     As a member of MIO's board of directors, Mr. Garcia was provided information regarding MIO's investments.[26]

33.     Mr. Garcia also served on the Investment Committee and the Audit Committee of MIO's board of directors—a fact which was only revealed publicly for the first time in late 2018, after Mar-Bow filed its successful motion to re-open the *ANR* case.[27]

34.     As a member of MIO's Investment Committee, Mr. Garcia affirmatively ratified MIO's investment decisions.[28]

35.     MIO's board of directors, including Mr. Garcia and its other members who are McKinsey partners, oversee MIO's investments.  As confirmed by McKinsey's recently revealed *in camera* disclosures in the *ANR* case and described below in Point III, MIO's investments include investments in McKinsey clients and in Interested Parties in McKinsey's Chapter 11 bankruptcy cases, including the debtors and their creditors, competitors, customers, and suppliers.

36.     MIO has a suspiciously impressive track record, with one article noting that its flagship fund, Compass, made money for 24 of the 25 years from 1991 to 2016, a period that included the dotcom bust and the global financial crisis.[29]   The New York Times recently reported that "from 2000 to 2010, MIO's flagship fund, the Compass Special Situations Fund, had an average annual return above 9 percent, compared with a 1.6 percent loss in the S&P 500 Index.  In 2008, when the broader United States market fell more than 36 percent, the Special Situations Fund lost about half that amount."[30]

---

[26]     *See* Ex. 19 (*ANR* Dkt. 4160) at 4 ¶ 6.
[27]     *See* Ex. 22 (*ANR* Dkt. 4159) at 2 ¶ 4.
[28]     *See* Ex. 21 (*ANR* Dkt. 4164) at 1-2.
[29]     *See* Ex. 23 (*McKinsey's secret $5bn fund in spotlight*, Financial Times, June 5, 2016).
[30]     *See* Ex. 69 (Michael Forsythe, Walt Bogdanich, and Bridget Hickey, *As McKinsey Sells Advice, Its Hedge Fund May have a Stake in the Outcome*, New York Times, Feb. 19, 2019) at 1.

37.     As part of its responsibilities as an investment advisor, MIO provides McKinsey partners who have invested in MIO funds with various items of information regarding their holdings and the funds' performance.[31]

38.     Consistent with its role as an investment advisor, MIO also files Forms ADV with the U.S. Securities and Exchange Commission ("**SEC**").  These forms, which are available to the public through the SEC's website, provide certain information about MIO, including the names of some of the funds that it operates; the names of some of its vendors, managers, and brokers; and the composition of its board of directors.[32]

39.     In connection with its management of McKinsey's pension operations, MIO furnishes participants in McKinsey's retirement plans with information regarding the performance of various funds in which they have invested as well as funds in which they may choose to invest.[33] The third-party manager of those funds, State Street Global Advisors, in turn furnishes participants with information regarding the funds' underlying holdings.[34]

40.     Separately, pursuant to the Employee Retirement Income Security Act ("**ERISA**"), the McKinsey Master Retirement Trust ("**MMRT**"), which is run by MIO, files "Forms 5500" with the U.S. Department of Labor.  MMRT's annual Forms 5500, which are available to the public through the Department of Labor's website, contain detailed information regarding MMRT's holdings and their performance.[35]

41.     As discussed further in Point III, MMRT's Form 5500 for the year 2015 (filed in 2016), along with other publicly available documents, provides information regarding MIO

---

[31]     *See* Ex. 21 (*ANR* Dkt. 4164) at 7-9 ¶¶ 16-23.
[32]     *See, e.g.*, Ex. 18 (SEC Form ADV – 2018).
[33]     *See* Ex. 21 (*ANR* Dkt. 4164) at 7-9 ¶¶ 16-23.
[34]     *See* Ex. 21 (*ANR* Dkt. 4164) at 7 ¶ 16.
[35]     *See, e.g.*, Ex. 24 (2015 Form 5500 – MMRT).

investments in numerous Interested Parties in bankruptcy cases in which McKinsey RTS was simultaneously serving as a bankruptcy professional, including this case.

42.     MIO frequently invests in companies that are either in bankruptcy or approaching bankruptcy, both through MIO's flagship Compass funds and through third-party manager Aristeia Capital ("**Aristeia**").[36]

43.     In filings with the SEC, MIO has made clear that investing in "distressed" companies is one of its investment strategies, stating:

> Distressed Investing. ***This strategy typically involves purchasing securities of companies in or near bankruptcy***, liquidation or reorganization and ***sometimes selling stock of the same companies short***.[37]

44.     Public bankruptcy filings reveal at least six (6) recent Chapter 11 bankruptcies in which MIO has invested:

    a.     *In re Seadrill Ltd.*, No. 17-BK-60079 (Bankr. S.D. Tex., filed Sept. 21, 2017) ("***Seadrill***"): MIO's funds ***Compass TSMA*** and ***Compass ESMA*** were listed as 5% or More Shareholders in the debtor's SEC filings.[38]  They also both appear on a service list in the bankruptcy case.[39]  Additionally, ***Aristeia Capital*** appeared on Interested Parties lists as a Bondholder.[40]

---

[36]     *See, e.g.*, Ex. 18 (SEC Form ADV – 2018) at 17, 21, 27, 50, 63, 67, 87 (Compass funds); Ex. 25 (MIO SEC Form ADV – 2017) at 109-110 (Aristeia Capital).

[37]     Ex. 26 (MIO SEC Form ADV Part 2A – 2018) at 12 (emphasis added).

[38]     *See* Ex. 27 (Seadrill Form F-1A) at 40/81; *see also* Ex. 28 (MMRT Form 5500 2017) at 39-41 (listing Compass ESMA); Ex. 25 (MIO SEC Form ADV 2017) at 108 (listing Compass TSMA).

[39]     *See* Ex. 29 (Excerpt, *Seadrill* Dkt. 1168) at 108-109.

[40]     *See* Ex. 30 (Excerpt, *Seadrill* Dkt. 192-2).

b. *In re Magnum Hunter Res. Corp.*, No. 15-BK-12533 (Bankr. D. Del., filed Dec. 15, 2015) ("*Magnum Hunter*"): MIO's funds *Compass ESMA* and *Compass TSMA*, along with *Aristeia*, appeared in a supplement to the debtor's plan.[41]

c. *In re Caesars Ent'mt Operating Co.*, No. 15-BK-01145 (Bankr. N.D. Ill., filed Jan. 15, 2015) ("*Caesars*"): MIO's funds *Compass ESMA*; *Compass TSMA*; and *Compass Offshore HTV PCC LTD* appear on Interested Parties lists as Lenders.[42]

d. *In re Endeavour Operating Corp.*, No. 14-BK-121308 (Bankr. D. Del., filed Oct. 10, 2014) ("*Endeavour*"): MIO's funds *Compass Offshore HTV PCC Ltd. and Compass HTV LLC Ltd.* were identified as Term Loan Lenders and *Whitebox* was identified as a Lender in an SEC filing.[43]

e. *In re MPM Silicones, LLC*, No. 14-BK-22503 (Bankr. S.D.N.Y., filed Apr. 13, 2014) ("*MPM*"): MIO's funds *Compass TSMA* and *Compass ESMA*, along with *Aristeia*, were identified as Chapter 11 plan Lenders,[44] and all three became shareholders of MPM Holdings, the successor to debtor MPM Silicones. Compass TSMA, Compass ESMA, and Aristeia then became a 3.51% shareholder of MPM Holdings, the successor to MPM Silicones.[45]

f. *In re New Stream Secured Capital, Inc.*, No. 11-BK-10753 (Bankr. D. Del., filed Mar. 13, 2011) ("*New Stream*"): MIO's funds *SSALT Fund Limited*; *Compass Special Situations Fund LLC*; *Compass COSS Master Limited*; and *Special*

---

[41] *See* Ex. 31 (Excerpt, *Magnum Hunter* Dkt. 1231) at 76.
[42] *See* Ex. 32 (Excerpt, *Caesars* Dkt. 2528-5) at 6; *see also* Ex. 28 (MMRT 2017 Form 5500) at 40, 42 (listing Compass funds).
[43] *See* Ex. 33 (Excerpt, Endeavour 8-K EX-99.2) at 14-15.
[44] *See* Ex. 34 (Excerpt, *MPM* Dkt. 943) at 71.
[45] *See* Ex. 35 (Excerpt, MPM Holdings SEC S-1A) at 12.

14

***Situations Fund LP*** were DIP Lenders and party to the Plan Support Agreement. They also purchased estate assets.[46]

45. Moreover, MIO's various investments with two hedge funds, Whitebox Advisors LLC ("**Whitebox**") and Strategic Value Partners LLC, have given McKinsey a stake in either the debtors, other Interested Parties, or both, in at least seven Chapter 11 bankruptcies in which McKinsey RTS and/or McKinsey served as bankruptcy professionals:

    a. *In re Westmoreland Coal Co.*, No. 18-BK-35672 (Bankr. S.D. Tex., filed Oct. 9, 2018);

    b. *In re SunEdison, Inc.*, No. 16-BK-0992 (Bankr. S.D.N.Y., filed April 21, 2016);

    c. *In re Alpha Natural Resources, Inc.*, No. 15-BK-33896 (Bankr. E.D. Va., filed Aug. 3, 2015);

    d. *In re NII Holdings, Inc.*, No. 14-BK-12611 (Bankr. S.D.N.Y., filed Sept. 15, 2014);

    e. *In re Edison Mission Energy*, No. 12-BK-49219 (Bankr. N.D. Ill., filed Dec. 17, 2012);

    f. *In re AMR Corp.*, No. 11-BK-15463 (Bankr. S.D.N.Y., filed Nov. 29, 2011); and

    g. *In re UAL Corp.*, No. 02-BK-48191 (Bankr. N.D. Ill., filed Dec. 9, 2002).[47]

46. Additionally, in the bankruptcy case of *In re Commonwealth of Puerto Rico*, No. 17-03282 (D.P.R., filed July 3, 2017), which is not a Chapter 11 proceeding, MIO has investments in Puerto Rico bonds through Compass and Aristeia, while at the same time, McKinsey is also serving as a debt restructuring advisor and consultant to the Puerto Rico Oversight Board.[48]

---

[46]   *See* Ex. 36 (Excerpt, *New Stream* Dkt. 4) at 35, Ex. C.

[47]   *See, e.g.,* Ex. 37 (*McKinsey Investments Not Disclosed*, Wall Street Journal, June 19, 2018); *see also* Ex. 9 (*Westmoreland* Dkt. 452) at 141 (identifying Whitebox as an Interested Party).

[48]   *See* Ex. 38 (Mary Williams Walsh, *McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome.*, New York Times, Sept. 26, 2018).

### III.    Undisclosed Investment and Other Connections Through MIO

47.    Based on a review of the Interested Parties List in the *Standard Register* bankruptcy[49] and extensive research that I have directed, numerous connections to Interested Parties (including many MIO investment connections) have been uncovered which McKinsey RTS was required to disclose in this case but never did.  Those undisclosed connections are discussed in detail below.

48.    On March 23, 2015, the Debtors filed a Motion for Order Authorizing the Debtors to (I) Employ and Retain McKinsey Recovery & Transformation Services U.S., LLC to Provide Interim Management Services Pursuant to 11 U.S.C. § 363, and (II) Designate Kevin Carmody as Chief Restructuring Officer *Nunc Pro Tunc* to the Petition Date (the "**Application**").[50]

49.    In support of their Application, the Debtors' filed a Declaration of Kevin Carmody (the "**Carmody Declaration**"), a McKinsey partner and McKinsey RTS practice leader.[51]

50.    Although the Carmody Declaration purported to address the issue of McKinsey RTS's disinterestedness and its connections to the Debtors and other Interested Parties in these cases, McKinsey failed to name any of its numerous connections to the Debtors and Interested Parties.[52]

51.    On April 13, 2015, the Court granted the Debtors Application, stating: "McKinsey RTS shall disclose any and all facts that may have a bearing on whether the firm, its subsidiaries, certain of its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.  The obligation to disclose

---

[49]    *See* Dkt. 87-3 at 18-27.
[50]    Dkt. 87.
[51]    Dkt. 87-3
[52]    *See* Dkt. 87-3 at 10-16 ¶¶ 21-36.

identified in this subparagraph is a continuing obligation."[53]

52.    Despite its obligation to do so, McKinsey RTS never amended or supplemented the Carmody Declaration to name any of its many connections to Interested Parties in these cases.

53.    On January 16, 2019, the Court in the *ANR* bankruptcy publicly docketed disclosures that McKinsey RTS belatedly made in that case *in camera* on July 6, 2016.  The *ANR In Camera* disclosures, which were made less than four months after the Petition Date in this case, reveal numerous connections to Interested Parties in this case, including MIO investment connections, that McKinsey RTS was required to disclose in this case but never did.[54]

54.    As noted above in Point II, MMRT's Form 5500 filed with the Department of Labor for the years ending December 31, 2015 is attached hereto as Exhibit 24 and MIO's Forms SEC ADV for the years 2017 and 2018 are attached hereto as Exhibits 18 and 25-26.

55.    For years prior to the current year (*e.g.*, for 2015), the SEC maintains compilations of filers' (including MIO) responses in spreadsheets contained in files in .csv format, available on the SEC's website at https://www.sec.gov/foia/docs/form-adv-archive-data.htm.  Clicking on the link labelled "Form ADV Complete RIA January 2001 to December 31, 2018," will cause a zip file containing approximately 500 .csv files to appear.

56.    Due to the size and format of the .csv files, it would not be practical to attach full printouts of the documents to this Declaration.  Instead, this Declaration identifies the names of relevant files that can be downloaded from the SEC's website and attaches printouts of relevant excerpts of those files as Exhibits 40-42.[55]

---

[53]    Dkt. 257 (Order, filed Apr. 13, 2015) ¶ 2(h).
[54]    *See* Ex. 39  (*ANR In Camera* Disclosures).
[55]    If desired by the Court, Mar-Bow could also provide the Court with electronic copies of the full .csv files from the SEC website.

57.     In the file named "IA_ADV_Base_A_20150316_20150930," the following identifying numbers are assigned to MIO: #884622; #920177; #921188; and #924208.  Exhibit 40 hereto contains excerpts from that file, showing the rows in which those numbers are assigned to MIO.[56]

58.     The file named "IA_ADV_Schedule_D_7B1A24_20150316_20150930" lists Prime Brokers for entities that filed Form ADVs with the SEC in 2015, including MIO.  Exhibit 41 hereto contains excerpts from that file, showing the Prime Brokers listed for MIO for 2015.[57]

59.     The file named "IA_ADV_Schedule_D_7B1A25_20150316_20150930" lists Fund Custodians for entities that filed Form ADVs with the SEC in 2015, including MIO.  Exhibit 42  hereto contains excerpts from that file, showing the Fund Custodians listed for MIO for 2015.[58]

60.     McKinsey RTS concealed numerous connections which were undisclosed investment connections that McKinsey, its partners, and its employees, including those working on McKinsey RTS matters, held in numerous Interested Parties or their affiliates through MIO, as described below.

61.     **Allianz SE** was an Insurance Company of the Debtors.[59]  Allianz SE is the parent company of PIMCO.[60]

62.     In 2015, MIO held substantial investments in multiple PIMCO funds:

    a.     ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 1***;

    b.     ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 2***;

---

[56]     *See* Ex. 40 (Excerpts, IA_ADV_Base_A_20150316_20150930).
[57]     *See* Ex. 41 (Excerpts, IA_ADV_Schedule_D_7B1A24_20150316_20150930).
[58]     *See* Ex. 42 (Excerpts, IA_ADV_Schedule_D_7B1A25_20150316_20150930).
[59]     *See* Dkt. 87-3 at 25 (item M.2)
[60]     *See* Ex. 43 (Bloomberg Profile – Allianz SE).

    c.    ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 3***;

    d.    ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 4***;

    e.    ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 5***; and

    f.    ***PIMCO Global Inflation Linked Bond Fund Ltd – Class A Series 6***.[61]

McKinsey RTS did not disclose that information to this Court.[62]

    63.    **Bank of America** was one of the Debtors' 50 Largest Unsecured Creditors.[63]  It also provided post-petition financing to the Debtors pursuant to an agreement negotiated while McKinsey RTS's Kevin Carmody served as the Debtors' Chief Restructuring Officer.[64]  ***Bank of America, N.A.*** was an MIO investment.[65]  Additionally, both ***Bank of America, N.A.*** and ***Merrill Lynch Professional Clearing Corp.*** (Bank of America) were Prime Brokers for MIO;[66] and ***Bank of America, N.A.***; ***Bank of America Securities LLC***; ***Merrill Lynch Government Securities Inc.***; ***Merrill Lynch International***; and ***Merrill Lynch, Pierce, Fenner & Smith Inc.*** were all MIO Fund Custodians.[67]  MMRT's Form 5500 for 2015 also lists ***Bank of America, N.A.*** as a Service Provider.[68]  McKinsey RTS did not disclose any of that information to this Court.[69]

---

[61]    *See* Ex. 24 (MMRT 2015 Form 5500), Stmt. #1, Sched. H, Line 4i ("Schedule of Assets Held for Investment").

[62]    As noted below in Point IV, McKinsey RTS also failed to disclose that ***Allianz*** was a McKinsey client.

[63]    *See* Dkt. 87-3 at 20 (item E.16).

[64]    *See* Dkt. 2 (Declaration of Kevin Carmody in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief, filed Mar. 12, 2015) at 10 ¶ 26; Dkt. 15 (Debtors' Motion to Approve Postpetition Financing, filed Mar. 12, 2015) at 2; Dkt. 87 at 3 ¶ 5.

[65]    *See* Ex. 39 (*ANR in Camera* Disclosures) at 20 (Sched. 3).

[66]    *See* Ex. 41 (Excerpts, IA_Schedule_D_7B1A24_20150316_20150930).

[67]    Ex. 42 (Excerpts, IA_Schedule_D_7B1A25_20150316_20150930).

[68]    *See* Ex. 24 (MMRT 2015 Form 5500), Sched. C at 3-1.

[69]    As noted below in Point IV, McKinsey RTS also failed to disclose that ***Bank of America*** was a McKinsey client.

64.    **Bank of America Corp.** was one of the Debtors' Largest Customers.[70]  As noted above, McKinsey RTS failed to disclose that Bank of America, N.A. was an MIO investment; both Bank of America, N.A. and Merrill Lynch Professional Clearing Corp. were Prime Brokers for MIO; Bank of America, N.A.; Bank of America Securities LLC; Merrill Lynch Government Securities Inc.; Merrill Lynch International; and Merrill Lynch, Pierce, Fenner & Smith Inc. were all MIO Fund Custodians; and Bank of America, N.A. was an MIO Service Provider.  McKinsey RTS did not disclose any of that information to this Court.

65.    **Bank of America, N.A.** was a Secured Creditor of the Debtors.[71]  As noted above, McKinsey RTS failed to disclose that it was also an MIO investment, as well as an MIO Prime Broker, Fund Custodian, and Service Provider.  Additionally, as noted above, McKinsey RTS also failed to disclose that Merrill Lynch Professional Clearing Corp. (Bank of America) was a Prime Broker for MIO;  and Bank of America Securities LLC; Merrill Lynch Government Securities Inc.; Merrill Lynch International; and Merrill Lynch, Pierce, Fenner & Smith Inc. were all MIO Fund Custodians.  McKinsey RTS did not disclose any of that information to this Court.

66.    **Citibank** was one of the Debtors' Largest Customers.[72]  *Citigroup Global Markets* was an MIO investment.[73]  Additionally, *Citibank, N.A.*; *Citigroup Global Markets Limited*, and *Citigroup Global Markets Inc.* were all MIO Fund Custodians.[74]  McKinsey RTS did not disclose any of that information to this Court.[75]

---

[70]    *See* Dkt. 87-3 at 25 (item L.2).

[71]    *See* Dkt. 87-3 at 19 (item D.17).

[72]    Dkt. 87-3 at 25 (item L.3).

[73]    *See* Ex. 39 (*ANR in Camera* Disclosures) at 20 (Sched. 3).

[74]    *See* Ex. 42 (Excerpts, IA_Schedule_D_7B1A25_20150316_20150930).

[75]    As noted below in Point IV, McKinsey RTS also failed to disclose that parent company *Citigroup* was a McKinsey client.

67.     **Credit Suisse**; **Credit Suisse AG, Cayman Islands Branch**; and **Credit Suisse Loan Funding LLC** were all Secured Creditors of the Debtors.[76]   *Credit Suisse* was an MIO investment.[77]   Additionally, *Credit Suisse AG*; *Credit Suisse International*; *Credit Suisse Securities (Europe) Limited*; and *Credit Suisse Securities (USA) LLC* were all MIO Fund Custodians.[78]  McKinsey RTS did not disclose any of that information to this Court.[79]

68.     **Deutsche Bank Mexico SA** was a Landlord of the Debtors.[80]  *Deutsche Bank* was an MIO investment.[81]  Additionally, both *Deutsche Bank AG* and *Deutsche Bank Securities, Inc.* were MIO Prime Brokers;[82] and *Deutsche Bank AG*; *Deutsche Bank Securities, Inc.*; and *Deutsche Bank Trust Company Americas* were all MIO Fund Custodians.[83]  MMRT's Form 5500 for 2015 also lists *Deutsche Bank* as a Service Provider.[84] McKinsey RTS did not disclose any of that information to this Court.[85]

---

[76]     *See* Dkt. 87-3 at  19 (items D.8, D.9, D.16).
[77]     *See* Ex. 39 (*ANR in Camera* Disclosures) at 20 (Sched. 3).
[78]     *See* Ex. 42 (Excerpts, IA_Schedule_D_7B1A25_20150316_20150930).
[79]     As noted below in Point IV, McKinsey RTS also failed to disclose that *Credit Suisse Group* was a McKinsey client.
[80]     Dkt. 87-3 at 20 (item F.54).
[81]     *See* Ex. 39 (*ANR in Camera* Disclosures) at 20 (Sched. 3).
[82]     *See* Ex. 41 (Excerpts, IA_Schedule_D_7B1A24_20150316_20150930).
[83]     *See* Ex. 42 (Excerpts, IA_Schedule_D_7B1A25_20150316_20150930).
[84]     *See* Ex. 24 (MMRT 2015 Form 5500), Sched. C at 3-1.
[85]     As noted below in Point IV, McKinsey RTS also failed to disclose that *Deutsche Bank AG* was a McKinsey client.

69.    Additionally, **Wells Fargo** was a Secured Creditor of the Debtors.[86]  ***Wells Fargo Bank, N.A.*** was an MIO Service Provider.[87]  McKinsey RTS did not disclose that information to this Court.[88]

## IV.    Undisclosed Connections to McKinsey Clients and Service Providers

### A.  Undisclosed McKinsey Clients

70.    As detailed below, McKinsey RTS also concealed connections with dozens of McKinsey clients who were identified as Interested Parties in the Debtors' cases.

71.    **AIG** (American International Group) was an Insurance Company for the Debtors.[89] It was also a McKinsey client.[90]  McKinsey RTS did not disclose that information to this Court.

72.    **Allianz SE**  was an Insurance Company for the Debtors.[91]  It is also the parent company of McKinsey client ***Allianz Global US***.[92]  McKinsey RTS did not disclose that information to this Court.[93]

73.    **American Electric Power Co.** was a Utility Provider for the Debtors.[94]  ***American Electric Power Co. Inc.*** was a McKinsey client.[95]   McKinsey RTS did not disclose that information to this Court.

---

[86]    *See* Dkt. 87-3 at 19 (item D.18).
[87]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 19 (Sched. 2).
[88]    As noted below in Point IV, McKinsey RTS also failed to disclose that ***Wells Fargo & Company*** was a McKinsey client.
[89]    Dkt. 87-3 at 25 (item M.1).
[90]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[91]    Dkt. 87-3 at 25 (item M.1).
[92]    *See* Ex. 37 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[93]    As noted above in Point III, McKinsey RTS also failed to disclose MIO investments in ***Allianz's PIMCO funds***.
[94]    *See* Dkt. 87-3 at 25 (item N.6).
[95]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).

74.    **Anheuser Busch LLC** was a party to significant litigation relating to the Debtors.[96] Just one year after the Petition Date in this case, McKinsey RTS disclosed in the *SunEdison* bankruptcy that **Anheuser-Busch Companies, Inc.** was a McKinsey Client.[97]  McKinsey RTS did not disclose that information to this Court.

75.    **AT&T** was a Utility Provider for the Debtors.[98]  It was also a McKinsey client.[99] McKinsey RTS did not disclose that information to this Court.

76.    **AT&T Corp.** was a party relating to significant litigation involving the Debtors.[100] As noted above, McKinsey RTS did not disclose that ***AT&T*** was a McKinsey client.

77.    **Bank of America** was one of the Debtors' 50 Largest Unsecured Creditors.[101] ***Bank of America Corp.*** was a McKinsey client.[102]  ***Bank of America*** was also a McKinsey Service Provider.[103]  McKinsey RTS did not disclose any of that information to this Court.[104]

78.    **Bank of America Corp.** was one of the Debtors' Largest Customers.[105]   As noted above, McKinsey RTS failed to disclose that it was also a McKinsey client.

79.    **Bank of America, N.A.** was a Secured Creditor of the Debtors.[106]   As noted above, McKinsey RTS failed to disclose that ***Bank of America Corp.*** was a McKinsey client.

---

[96]    *See* Dkt. 87-3 at 22 (item J.23).
[97]    *See* Ex. 20 (*SunEdison* Dkt. 484) at 20 ¶ 40; *id.* at 74.
[98]    *See* Dkt. 87-3 at 25 (item N.7).
[99]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[100]    *See* Dkt. 87-3 at 22 (item J.31).
[101]    *See* Dkt. 87-3 at 20 (item E.16).
[102]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).
[103]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 18 (Sched. 1).
[104]    As noted in Point III above, McKinsey also failed to disclose that MIO had investments in ***Bank of America, N.A.***; that ***Bank of America N.A.***, and ***Merrill Lynch Professional Clearing Corp.*** (Bank of America) were MIO Prime Brokers; that ***Bank of America, N.A.*** was an MIO Service Provider; and that ***multiple Bank of America entities*** were MIO Fund Custodians.
[105]    *See* Dkt. 87-3 at 25 (item L.2).
[106]    *See* Dkt. 87-3 at 19 (item D.17).

80.   **BMO Harris Bank N.A.** (Bank of Montreal) was a Landlord of the Debtors.[107]  Its parent company **Bank of Montreal** is a McKinsey client.[108]  McKinsey RTS did not disclose that information to this Court.

81.   **BW / IP International Inc.** was a party to significant litigation relating to the Debtors.[109]  BW / IP International Inc. is a subsidiary of **Flowserve Corporation**.[110]  In the *GenOn* bankruptcy, McKinsey RTS admitted that **Flowserve Pump Division** and/or its affiliates were McKinsey clients.[111]  McKinsey RTS did not disclose that information to this Court.

82.   **Cargill, Inc.** was a party to significant litigation relating to the Debtors.[112]  In the *GenOn* bankruptcy, McKinsey RTS admitted that **Cargill Incorporated Natural Gas Trading** and/or its affiliates were McKinsey clients.[113]  McKinsey RTS did not disclose that information to this Court.

83.   **CBRE, Inc.** was a Landlord of the Debtors.[114]  **CBRE Group, Inc.** was a McKinsey client.[115]  McKinsey RTS did not disclose that information to this Court.

84.   **Century Link** and **Century Telephone** were both Utility Providers for the Debtors.[116]  **CenturyLink Inc.** was a McKinsey client.[117]  McKinsey RTS did not disclose that information to this Court.

---

[107]   *See* Dkt. 87-3 at 21 (item F.74).
[108]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).
[109]   *See* Dkt. 87-3 at 22 (item J.25).
[110]   *See* Ex. 44 (Bloomberg Profile: BW / IP International)
[111]   *See* Ex. 4 (*GenOn* Dkt. 123-2) at 15-16 ¶ 42; *id.* at 71.
[112]   *See* Dkt. 87-3 at 22 (item J.58).
[113]   *See* Ex. 4 (*GenOn* Dkt. 123-2) at 14 ¶ 32.
[114]   *See* Dkt. 87-3 at 21 (item F.79).
[115]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).
[116]   *See* Dkt. 87-3 at 25 (items N.14, N.15).
[117]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).

85.    __Chartis__ was an Insurance Company of the Debtors.[118]   Its parent company *American International Group (AIG)* was a McKinsey client.[119]  McKinsey RTS did not disclose that information to this Court.

86.    __Chubb__ was an Insurance Company of the Debtors.[120]  *Chubb Corporation* was a McKinsey client.[121]  McKinsey RTS did not disclose that information to this Court.

87.    __Citibank__ was one of the Debtors' Largest Customers.[122]   Its parent company *Citigroup* was a McKinsey client.[123]  McKinsey RTS did not disclose that information to this Court.[124]

88.    __CNA Financial Corp.__ was an Insurance Company of the Debtors.[125]  It was also a McKinsey client.[126]  McKinsey RTS did not disclose that information to this Court.

89.    __Columbia Casualty Company__ was an Insurance Company of the Debtors.[127]  Its parent company, *CNA Financial Corp.*, was a McKinsey client.[128]   McKinsey RTS did not disclose that information to this Court.

90.    __Columbia Gas of Massachusetts__; __Columbia Gas of Ohio__; and __Columbia Gas of Pennsylvania__ were all Utility Providers for the Debtors.[129]  In the *GenOn* bankruptcy, McKinsey

---

[118]    *See* Dkt. 87-3 at 25 (item M.5).
[119]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[120]    *See* Dkt. 87-3 at 25 (item M.6).
[121]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).
[122]    Dkt. 87-3 at 25 (item L.3).
[123]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[124]    As noted above in Point III, McKinsey RTS also failed to disclose MIO's investments in *Citigroup Global Markets* and that *Citibank, N.A*; *Citigroup Global Markets, Inc.*; and *Citigroup Global Markets Limited* were all MIO Fund Custodians.
[125]    *See* Dkt. 87-3 at 25 (item M.6).
[126]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[127]    *See* Dkt. 87-3 at 25 (item M.8).
[128]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[129]    *See* Dkt. 87-3 at 25 (items N.30 – N.23).

RTS admitted that **Columbia Gas of Ohio Inc.**; **Columbia Gas of Pennsylvania**; **Columbia Gas Transmission Corporation**; and **Columbia Gas Transmission Company LLC**, and/or their affiliates were McKinsey clients.[130]  McKinsey RTS did not disclose that information to this Court.

91.     **Constellation Newenergy Inc.** was a Utility Provider for the Debtors.[131]  It is a subsidiary of Exelon Corporation.[132]  In the *GenOn* bankruptcy, McKinsey RTS revealed that **Exelon Corporation** and **Exelon Generation Company LLC** (**f/k/a Constellation Energy Commodities Group Inc.**), and/or their affiliates, were McKinsey clients.[133]  McKinsey RTS did not disclose that information to this Court.

92.     **Continental Casualty** was an Insurance Company for the Debtors.[134]  It is a subsidiary of **CNA Financial Corp.**,[135] which was a McKinsey client.[136]  McKinsey RTS did not disclose that information to this Court.

93.     **Credit Suisse**; **Credit Suisse AG, Cayman Islands Branch**; and **Credit Suisse Loan Funding LLC** were all Secured Creditors of the Debtors.[137]  **Credit Suisse Group** was a McKinsey client. [138]  McKinsey RTS did not disclose that information to this Court.[139]

---

[130]     *See* Ex. 45 (*GenOn* Dkt. 1429) at 4 ¶ 8 & n.4; *id.* at 5 ¶ 11; *id.* at 7 ¶ 17.
[131]     *See* Dkt. 87-3 at 25 (item N.40).
[132]     *See, e.g.*, Ex. 46 (Exelon Website – Terms and Conditions) at 1.
[133]     *See* Ex. 45 (*GenOn* Dkt. 1429 at 4 ¶ 8; *id.* at 5 ¶ 9; *id.* at 6 ¶¶ 12, 15; *id.* at 7 ¶¶ 18-19.
[134]     *See* Dkt. 87-3 at 25 (item M.9).
[135]     *See* Ex. 47 (Reuters Company Profile – CNA Financial Corp.) at 1.
[136]     *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[137]     *See* Dkt. 87-3 at  19 (items D.8, D.9, D.16).
[138]     *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[139]      As noted above in Point III, McKinsey RTS also failed to disclose that **Credit Suisse** was an MIO investment and that **multiple Credit Suisse entities** were MIO Fund Custodians.

94.    **Deutsche Bank Mexico SA** was a Landlord of the Debtors.[140]  *Deutsche Bank AG* was a McKinsey client.[141]  McKinsey RTS did not disclose that information to this Court.[142]

95.    **Duke Energy**; **Duke Energy Progress**; **Duke Energy-Charlotte**; **Duke Energy-Louisville** were all Utility Providers for the Debtors.[143]  *Duke Energy Corporation* was a McKinsey client.[144]  McKinsey RTS did not disclose that information to this Court.[145]

96.    **Duriron Corporation** was a party to significant litigation relating to the Debtors.[146]  Duriron's parent company is *Flowserve Corporation*.[147]  In the *GenOn* bankruptcy, McKinsey RTS admitted that *Flowserve Pump Division* and/or its affiliates were McKinsey clients.[148]  McKinsey RTS did not disclose that information to this Court.

97.    **E.I. DuPont de Nemours and Company** was a Secured Creditor of the Debtors.[149] One year after the Petition Date in this case, McKinsey RTS revealed in the *SunEdison* bankruptcy

---

[140]    Dkt. 87-3 at 20 (item F.54).

[141]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).

[142]    As noted above in Point III, McKinsey RTS also failed to disclose that *Deutsche Bank* was an MIO investment and Service Provider; *Deutsche Bank AG* and *Deutsche Bank Securities, Inc.* were both MIO Prime Brokers and MIO Fund Custodians; and *Deutsche Bank Trust Company Americas* was an MIO Fund Custodian.

[143]    *See* Dkt. 87-3 at 26 (items M.48 – M.51).

[144]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1); Ex. 57 (*GenOn* Dkt. 221-1) at 3 ¶ 7; *id.* at 7 ¶ 17.

[145]    Additionally, on October 3, 2016, McKinsey client *Duke Energy* acquired *Piedmont Natural Gas*, which was a Utility Provider for the Debtors.  *See* Dkt. 87-3 at 26 (item N.91); Ex. 57 (Piedmont Natural Gas Website – *Duke Energy Acquisition*).  Additionally, another energy company *Dominion East Ohio*, was also a Utility for Provider for the debtors.  *See* Dkt. 87-3 at 25 (item N.45).  In the *SunEdison* bankruptcy, McKinsey RTS admitted that it had received payments from *Dominion Energy, Inc.  See* Ex. 12 (*SunEdison* Dkt. 202) at 37 ¶ 32.

[146]    *See* Dkt. 87-3 at 23 (item J.109).

[147]    *See, e.g.*, Ex. 48 (Thomas Gnau, *Historic foundry has ceased operations*, Dayton Daily News, May 12, 2016) at 2 ("Flowserve was created in the 1997 merger of Durco International and BW/IP Inc.  Durco itself had been known as the Duriron Co. since the early 20th . . . .").

[148]    *See* Ex. 4 (*GenOn* Dkt. 123-2) at 15-16 ¶ 42; *id.* at 71.

[149]    *See* Dkt. 87-3 at 19 (item D.23).

that it was a McKinsey client.[150]  McKinsey RTS did not disclose that information to this Court.[151]

98.    **Emerson Electric Co.** was a party to significant litigation relating to the Debtors.[152]  In the *GenOn* bankruptcy, McKinsey RTS admitted that its subsidiary, ***Emerson Process Management***, and/or its affiliates, were McKinsey clients.[153]

99.    **Ernst & Young LLP** was an Ordinary Course Professional for the Debtors.[154]  It was also a McKinsey client.[155]  ***Ernst & Young*** was also a McKinsey Service Provider.[156] McKinsey RTS did not disclose that information to this Court.

100.    **Federal Insurance Company** was an Insurance Company for the Debtors.[157]  Its parent company, ***Chubb Corporation***, was a McKinsey client.[158]  McKinsey RTS did not disclose that information to this Court.

101.    **Flowserve Corporation** and **Flowserve US Inc.** were both parties to significant litigation relating to the Debtors.[159]  In the *GenOn* bankruptcy, McKinsey RTS admitted that ***Flowserve Pump Division*** and/or its affiliates were McKinsey clients.[160]

---

[150]    *See* Ex. 20 (*SunEdison* Dkt. 484) at 22 ¶ 53.
[151]    Additionally, ***Dow Chemical Co.*** was a party to significant litigation relating to the Debtors.  *See* Dkt. 87-3 at 23 (item N.106).  In 2017, E.I. DuPont de Nemours and Company merged with Dow Chemical Co. to form DowDuPont Inc.  *See* Ex. 49 (Dow.com Press Release, *DowDuPont Merger Successfully Completed*, Sept. 1, 2017).  Prior to the merger, it was reported that McKinsey was advising both Dow and DuPont in connection with planned spinoff entities. *See* Ex. 50 (Jeff Mordock, *Dow, DuPont hire consultant to review post-merger spinoffs*, Delaware Online, Jan. 29, 2017) at 2.
[152]    *See* Dkt. 87-3 at 23 (item J.116).
[153]    *See* Ex. 51 (*GenOn* Dkt. 771) at 5 ¶ 13.
[154]     *See* Dkt. 87-3 at 26 (item O.13).
[155]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[156]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 18 (Sched. 1).
[157]    *See* Dkt. 87-3 at 25 (item M.10).
[158]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 10 (Sched. 1).
[159]    *See* Dkt. 87-3 at 23 (items J.120, J.121).
[160]    *See* Ex. 4 (*GenOn* Dkt. 123-2) at 15-16 ¶ 42; *id.* at 71.

102.   **General Electric Co.** was a party to significant litigation relating to the Debtors.[161] *General Electric Company* was a McKinsey client.[162]   McKinsey RTS did not disclose that information to this Court.

103.   **Hewlett-Packard** ("**HP**") was one of the Debtors' Largest Vendors and Subcontracting Vendors.[163]  It was also a McKinsey client.[164] McKinsey RTS did not disclose that information to this Court.

104.   **Hewlett-Packard Financial Services Company** was a Secured Creditor of the Debtors.[165]  As noted above, McKinsey RTS did not disclose that its parent company, *HP,* was a McKinsey client.

105.   **HP Enterprise Services LLC** was one of the Debtors' 50 Largest Unsecured Creditors.[166]  As noted above, McKinsey RTS did not disclose that its parent company, *HP,* was a McKinsey client.

106.   **IBM** was a Significant Vendor for the Debtors;[167] and **International Business Machines Corp.** (IBM) was a party to significant litigation relating to the Debtors.[168]   In the *SunEdison* bankruptcy, McKinsey RTS admitted that IBM was a McKinsey client.[169]   McKinsey RTS did not disclose that information to this Court.

---

[161]   *See* Dkt. 87-3 at 23 (item J.131).
[162]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[163]   *See* Dkt. 87-3 at 21 (item E.23).
[164]   *See* Ex. 52 (Quentin Hardy, *Meg Whitman Seeks Reinvention for HP as It Prepares for Split*, New York Times, Oct. 30, 2015) (describing HP as a McKinsey client); *see also* Ex. 9 (*Westmoreland* Dkt. 452, Ex. B) ¶ 55 (disclosing McKinsey's client connection to HP Channel Services Network, an HP subsidiary).
[165]   *See* Dkt. 87-3 at 19 (item D.27).
[166]   *See* Dkt. 87-3 at 20 (item E.23).
[167]   *See* Dkt. 87-3 at 22 (item I.4).
[168]   *See* Dkt. 87-3 at 23 (item J.167).
[169]   *See* Ex. 53 (*SunEdison* Dkt. 1958) at 8 ¶ 22.

107.   **Illinois National Ins. Co.** was an Insurance Company for the Debtors.[170]  Its parent company, ***American International Group (AIG)***, was a McKinsey client.[171]  McKinsey RTS did not disclose that information to this Court.

108.   **Lazard Freres & Co., LLC** and **Lazard Middle Market, LLC** were both Chapter 11 Professionals for the Debtors.[172]  ***Lazard Ltd.*** was a McKinsey client.[173]  McKinsey RTS did not disclose that information to this Court.

109.   **Liberty Mutual** was an Insurance Company for the Debtors.[174]  ***Liberty Mutual Group*** was a McKinsey client.[175]  McKinsey RTS did not disclose that information to this Court.

110.   **Liberty Mutual Insurance** was one of the Debtors' Largest Customers.[176]  As noted above, McKinsey RTS did not disclose to the Court that ***Liberty Mutual Group*** was a McKinsey client.

111.   **L.M. Berry and Company LLC** was a party to significant litigation relating to the Debtors.[177]  It is a subsidiary of ***AT&T, Inc.***,[178] which was a McKinsey client.[179]  McKinsey RTS did not disclose that information to this Court.

---

[170]   *See* Dkt. 87-3 at 25 (item M.13).
[171]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[172]   *See* Dkt. 87-3 at 27 (items P.3, P.4).
[173]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 12 (Sched. 1).
[174]   *See* Dkt. 87-3 at 25 (item M.14).
[175]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 12 (Sched. 1).
[176]   *See* Dkt. 87-3 at 25 (item L.4).
[177]   *See* Dkt. 87-3 at 23 (item J.182).
[178]   *See* Ex. 54 (Bloomberg Profile: L.M. Berry and Company).
[179]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).

112.  **National Fire Insurance Company of Hartford** was an Insurance Company of the Debtors.[180]  Its parent company, *CNA Financial Corp.*,[181] was a McKinsey client.[182] McKinsey RTS did not disclose that information to this Court.

113.  **National Union Fire Insurance Co. Pittsburgh** was an Insurance Company for the Debtors.[183]  Its parent company, *American International Group (AIG)*, was a McKinsey client.[184]  McKinsey RTS did not disclose that information to this Court.

114.  **Ohio Bell Telephone Company** was a party to significant litigation relating to the Debtors.[185]  Its parent company, *AT&T*,[186] was a McKinsey client.[187]  McKinsey RTS did not disclose that information to this Court.

115.  **Pacific Gas & Electric Co.** and **PG&E** were Utility Providers for the Debtors.[188] McKinsey RTS revealed in the *SunEdison* bankruptcy that *Pacific Gas & Electric* was a McKinsey client.[189]  McKinsey RTS did not disclose that information to this Court.

116.  **Southern California Edison** was a Utility Provider for the Debtors.[190]  McKinsey RTS revealed in the *SunEdison* bankruptcy that it was a McKinsey client.[191]  McKinsey RTS did not disclose that information to this Court.

---

[180]   *See* Dkt. 87-3 at 25 (item M.15).
[181]   *See* Ex. 55 (CNA Website – Licensing Disclosure).
[182]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 11 (Sched. 1).
[183]   Dkt. 87-3 at 25 (item M.16).
[184]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[185]   *See* Dkt. 87-3 at 24 (item J.211).
[186]   *See, e.g.*, Ex. 56 (AT&T Website – Ohio Residential and Business Publications) at 2 (identifying the Ohio Bell Telephone Company as AT&T Ohio).
[187]   *See* Ex. 39 (*ANR In Camera Disclosures*) at 9 (Sched. 1).
[188]   *See* Dkt. 87-3 at 26 (items N.89, N.90).
[189]   *See* Ex. 20 (*SunEdison* Dkt. 484) at 20 ¶ 40; *id.* at 74.
[190]   *See* Dkt. 87-3 at 27 (item N.103).
[191]   *See* Ex. 20 (*SunEdison* Dkt. 484) at 20 ¶ 40; *id.* at 24 ¶ 61; *id.* at 74.

117.    **Thomson Reuters** was an Ordinary Course Professional for the Debtors.[192]
***Thomson Reuters Corporation*** was a McKinsey client.[193]   It was also a McKinsey Service
Provider.[194]   McKinsey RTS did not disclose that information to this Court.

118.    **Travelers** was an Insurance Company for the Debtors.[195]   ***The Travelers***
***Companies Inc.*** was a McKinsey client.[196]   McKinsey RTS did not disclose that information to
this Court.

119.    The **United States Department of Defense**; the **United States Department of**
**Energy**; and the **United States of America** were all parties to significant litigation relating to the
Debtors.[197]   They were also McKinsey clients.[198]   Indeed, in 2015 alone, McKinsey stood to
receive over $59 million from the U.S. federal government,[199] including more than $7 million from
the Department of Defense.[200]   McKinsey RTS did not disclose that information to this Court.

---

[192]    *See* Dkt. 87-3 at 27 (item O.55).
[193]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).
[194]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 18 (Sched. 1).
[195]    *See* Dkt. 87-3 at 25 (item M.19).
[196]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).
[197]    *See* Dkt. 87-3 at 23 (item J.295).
[198]    *See, e.g.*, Ex. 58 (Screenshot: Spending by Prime Award, McKinsey & Company,
usaspending.gov query results); Ex. 59 (Screenshot: Spending Over Time, McKinsey & Company,
usaspending.gov query results); Ex. 60 (Screenshot: Spending by Awarding Agency, McKinsey
& Company, usaspending.gov query results); Ex. 61 (Screenshot: Spending by Prime Award,
McKinsey & Company and Department of Defense, usaspending.gov query results); Ex. 62
(Screenshot: Spending Over Time, McKinsey & Company and Department of Defense,
usaspending.gov query results); Ex. 63 (Screenshot: Spending by Awarding Agency, McKinsey
& Company and Department of Defense, usaspending.gov query results).
[199]    *See* Ex. 59 (Screenshot: Spending Over Time, McKinsey & Company, usaspending.gov
query results).
[200]    *See* Ex. 62 (Screenshot: Spending Over Time, McKinsey & Company and Department of
Defense, usaspending.gov query results).

120.    **United States Steel Corporation** was a party to significant litigation relating to the Debtors.[201]   It was also a McKinsey client.[202]   McKinsey RTS did not disclose that information to this Court.

121.    **Verizon** was one of the Debtors' Largest Customers.[203]   ***Verizon Communications*** was a McKinsey client.[204]   McKinsey RTS did not disclose that information to this Court.

122.    **Verizon** and **Verizon Wireless** were both Utility Providers for the Debtors.[205]   As noted above, McKinsey RTS failed to disclose that ***Verizon Communications*** was a McKinsey client.

123.    **Verizon New York Inc.** and **Verizon North LLC** were both parties to significant litigation relating to the Debtors.[206]   As noted above, McKinsey RTS failed to disclose that ***Verizon Communications*** was a McKinsey client.

124.    **Wells Fargo** was a Secured Creditor of the Debtors.[207]   ***Wells Fargo & Company*** was a McKinsey client.[208]   McKinsey RTS did not disclose that information to this Court.[209]

125.    **Windstream** was a Utility Provider for the Debtors.[210]   It was also a McKinsey client.[211]   McKinsey RTS did not disclose that information to this Court.

---

[201]    *See* Dkt. 87-3 at 24 (item J.298).
[202]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).
[203]    *See* Dkt. 87-3 at 25 (item L.8).
[204]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).
[205]    *See* Dkt. 87-3 at 26 (items N.120, N.121).
[206]    *See* Dkt. 87-3  at 24 (items N.307, N.308).
[207]    *See* Dkt. 87-3 at 19 (item D.18).
[208]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).
[209]    As noted above in Point III, McKinsey RTS also failed to disclose that ***Wells Fargo Bank, N.A.*** was an MIO Fund Custodian.
[210]    *See* Dkt. 87-3 at 26 (item N.125).
[211]    *See* Ex. 39 (*ANR In Camera Disclosures*) at 14 (Sched. 1).

126. **Xcel Energy** was a Utility Provider for the Debtors.[212]  McKinsey RTS revealed in the *SunEdison* bankruptcy that *Xcel Energy*; *Xcel Mn*; and *Xcel PSCo*, and/or their affiliates, were McKinsey clients.[213]  McKinsey RTS did not disclose that information to this Court.

127. **XL** was an Insurance Company of the Debtors.[214]  *XL Group Plc* was a McKinsey client.[215]  McKinsey RTS did not disclose that information to this Court.

128. **Zurich** was an Insurance Company of the Debtors.[216]  *Zurich Financial Services* was a McKinsey client.[217]  McKinsey RTS did not disclose that information to this Court.

**B. Undisclosed McKinsey Clients Disclosed in *Westmoreland*.**

129. Additionally, in the *Westmoreland* bankruptcy, McKinsey RTS disclosed that McKinsey's client relationships with numerous Interested Parties in these cases, including Automatic Data Processing, Inc. and Xerox Corp.  Because McKinsey RTS's self-defined "lookback period" in *Westmoreland* only looked back to October 2016, it is unclear McKinsey had client relationships with those two companies that should have been disclosed during the *Standard Register* bankruptcy.  Given McKinsey's business model, which cultivates longstanding client relationships with repeat engagements with large companies, it is possible and even likely that Automatic Data Processing, Inc. and Xerox Corp. were McKinsey clients during the Standard Register bankruptcy.

---

[212] *See* Dkt. 87-3 at 27 (item N.126).
[213] *See* Ex. 20 (Dkt. 484) at 20 ¶ 40; *id.* at 24 ¶ 61; *id.* at 75, 78.
[214] *See* Dkt. 87-3 at 25 (item L.22).
[215] *See* Ex. 39 (*ANR In Camera Disclosures*) at 15 (Sched. 1).
[216] *See* Dkt. 87-3 at 25 (item L.23).
[217] *See* Ex. 39 (*ANR In Camera Disclosures*) at 15 (Sched. 1).

130.   **Automatic Data Processing, Inc.** was one of the Debtors' Largest Customers.[218] In the *Westmoreland* bankruptcy, McKinsey RTS admitted that it is a McKinsey client.[219] McKinsey RTS did not disclose that information to this Court.

131.   **Xerox Corp.** was a Secured Creditor of the Debtors and one of the Debtors' Largest Vendors and Subcontracting Vendors.[220]   In the *Westmoreland* bankruptcy, McKinsey RTS admitted that **Xerox Corp.** is a McKinsey client.[221]   McKinsey RTS did not disclose any of that information to this Court.

### C.   Undisclosed McKinsey Service Providers.

132.   McKinsey RTS also failed to disclose to this Court the following McKinsey Service Provider connections, all three of which were Ordinary Course Professionals for the Debtors: 1) **Deloitte & Touche LLP**; 2) **Deloitte Tax LLC**; and 3) **McGuireWoods**.[222]

### V.   The Broad Scope of McKinsey RTS's Services in These Cases

133.   In the Application, McKinsey RTS's "broad range of services" in this case are described as follows:

> (a) Developing a strategic business plan with the Company's CFO and other key functional leaders that can be used to facilitate discussions with the Debtors' lenders and certain other stakeholders;
>
> (b) Developing a short-term cash flow forecasting process and implementing cash management strategies;
>
> (c) Establishing a weekly financial reporting package that provides additional transparency into the Debtors' near

---

[218]   *See* Dkt. 87-3 at 25 (item L.1).
[219]   *See* Ex. 9 (*Westmoreland* Dkt. 452) at 60 ¶ 58.
[220]   *See* Dkt. 87-3 at 19 (item D.34); *id.* at 21 (item G.41).
[221]   *See* Ex. 9 (*Westmoreland* Dkt. 452, Ex. B) at 58 ¶ 55.
[222]   *See* Dkt. 87-3 at 26 (items O.10, O.11); *id.* at 27 (item O.37); Ex. 39 (*ANR In Camera Disclosures*) at 18 (Sched. 1) (listing **Deloitte Tax LLP** and **McGuire Woods LLP** as McKinsey Service Providers).

term cash position, including a forecast to actual variance analysis;

(d) Supporting Counsel with the development of various strategic and restructuring alternatives;

(e) Providing strategic advice to support the overall restructuring process;

(f) Participating in stakeholder discussions, negotiations and diligence meetings along with the Debtors' Counsel and the Debtors' financial advisor;

(g) Evaluating certain near term operational cost reduction and value enhancement opportunities (e.g., SG&A and procurement);

(h) Working with Counsel on supporting data in order for Counsel to prepare first day motions, the petitions for relief and other documents and evidence needed to implement the Debtors' Chapter 11 Cases;

(i) Providing testimony and other litigation support as requested by Counsel in connection with matters upon which McKinsey RTS is providing services; and

(j) Assisting with all such other restructuring matters as may be requested by Counsel that fall within McKinsey RTS's expertise and that are mutually agreed upon between the Debtors and McKinsey RTS.[223]

134.    Additionally, as of June 26, 2015, Mr. Carmody committed to serve as "the Debtors' interim President, Chief Executive Officer, and Director, in addition to his current role as Chief Restructuring Officer[.]"[224]

135.    McKinsey RTS submitted five declarations in support of the Debtors' first five Omnibus Objections to Claims in these cases.  In each one of those declarations, Mr. Carmody

---

[223]    Dkt. 87 at 6-7 ¶ 12.

[224]    Dkt. 729 (Debtors' Motion for Order Modifying that Certain Order Authorizing the Retention of McKinsey Recovery & Transformation Services U.S., LLC, to Authorize the Appointment of Kevin Carmody as Interim President, Chief Executive Officer, and Director, filed June 24, 2015) at 6 ¶ 14.

stated: "I am the Chief Executive Officer of SRC Liquidation Company, one of the above captioned affiliated debtors and debtors in possession.  In this capacity, ***I am one of the persons responsible for overseeing the claims reconciliation and objection process in these Chapter 11 cases***."[225]

## VI.   McKinsey RTS's Engagement Letter

136.   McKinsey RTS's engagement agreement in this case states: "Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between McKinsey RTS and the Company, or its Board of Directors."[226]

137.   McKinsey RTS similarly attempted to disavow and evade its responsibility as a fiduciary and court-appointed bankruptcy professional in the *ANR* bankruptcy.  In *ANR*, McKinsey RTS's engagement agreement stated: "Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between McKinsey RTS, and the Client, or its Board of Directors."[227]

138.   In the *ANR* case, on June 28, 2016, Judge Huennekens rejected McKinsey RTS's argument that it was not a fiduciary, stating: "Section 327 talks about professionals.  McKinsey's a professional. . . . They're a fiduciary."[228]

---

[225]   *See* Dkt. 964-2 (Declaration of Kevin Carmody, filed Aug. 21, 2015) at 2 ¶ 1; Dkt. 965-2 (Declaration of Kevin Carmody, filed Aug. 21, 2015) at 2 ¶ 1; Dkt. 966-2 (Declaration of Kevin Carmody, filed Aug. 21, 2015) at 2 ¶ 1; Dkt. 1039-2 (Declaration of Kevin Carmody, filed Oct. 13, 2015) at 2 ¶ 1; Dkt. 1040-2 (Declaration of Kevin Carmody), filed Sept. 14, 2015 at 2 ¶ 1 (emphasis added).

[226]   *See* Dkt. 87-4 at 11 ¶ 11.  Nothing in McKinsey RTS's amended engagement agreement for these cases alters this representation.  *See* Dkt. 729-4 (First Amendment to the Amended and Restate Agreement, dated March 2, 2015 between McKinsey Recovery & Transformation Services U.S., LLC and The Standard Register Company, dated June 23, 2015).

[227]   *See* Ex. 64 (*ANR* Dkt. 212, Ex. A) at 7 ¶ 9.

[228]   *See* Ex. 65 (*ANR* Dkt. 2839) at 158:11-13.

139.    Despite Judge Huenneken's ruling, McKinsey RTS has done nothing to correct its engagement letter in any of its cases.[229]

## VII.    THE DEBTORS' PREFERENCE CLAIM OF $1,477,299.53 AGAINST MCKINSEY.

140.    Within 90 days before the March 12, 2015 Petition Date in these cases, McKisney RTS received a total of $1,477.299.53 from Debtor The Standard Register Company on account of antecedent debts.[230]  Those amounts are summarized in the chart below.

| Billing Period | Invoice Date | Payment Date | Days Between Invoice and Payment | Amount Paid |
|---|---|---|---|---|
| January 14-31, 2015 | February 2, 2015 | February 19, 2015 | 15 | $223,531.25 |
| February 2-27, 2015 | March 3, 2015 | March 6, 2015 | 3 | $905,202.38 |
| March 1-10, 2015 | March 9, 2015 | March 10, 2015 | 1 | $299,972.90 |
| March 11, 2015 | March 11, 2015 | March 11, 2015 | 0 | $48,593.00 |
| TOTAL | | | | $1,477,299.53 |

141.    Because the payments were made within a few days after invoicing, it is apparent that they were not made in the ordinary course of the Debtors' business.  Notably, the last payment, which was made on the same date as the invoice, was made the day before the Petition Date in these cases.

---

[229]    *See* Ex. 66 (*SunEdison* Dkt. 202, Ex. C) at 7 ¶ 10; Ex. 67 (*GenOn* Dkt. 123-1, Ex. 1) at 13 ¶ 9; Ex. 68 (*Westmoreland* Dkt. 452, Ex. 1) at 7-8 ¶ 12.
[230]    *See* Dkt. 87-3 at 9 ¶ 19.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2019.


_____Jay Alix_____

Jay Alix