# EXHIBIT 9

# Exhibit B

**Declaration of Mark Hojnacki**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DECLARATION OF MARK W. HOJNACKI IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS PERFORMANCE IMPROVEMENT ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE AND (II) GRANTING RELATED RELIEF

I, Mark W. Hojnacki, under penalty of perjury, declare as follows:

1.     I am a Practice Leader in the professional services firm of McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS US")[2] with an office at 55 East 52nd Street, New York, NY 10055.  I am also a partner at McKinsey & Company, Inc. ("McKinsey").  I am duly authorized to make this Declaration on behalf of McKinsey RTS US in support of the application (the "Application") of the Westmoreland Coal Company and certain of its affiliates, other than Westmoreland Resource Partners GP,

---

[1]     Due to the large number of debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]     All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the Engagement Letter, as appropriate.

LLC, Westmoreland Resource Partners, LP, and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of an order authorizing the employment and retention of McKinsey RTS US as performance improvement advisor for the Debtors and Debtors in Possession, effective *nunc pro tunc* to the Petition Date under the terms and conditions set forth in the postpetition engagement letter dated as of October 9, 2018 (the "Engagement Letter"), attached as **Exhibit 1** to **Exhibit A** of the Application.  I submit this Declaration (the "Declaration") in accordance with section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

2.      Except as otherwise noted, the statements set forth herein are based on my employment position and diligence undertaken by McKinsey's legal department or myself or professionals reporting to me, and if called and sworn as a witness, I would testify competently thereto.

### Qualifications of McKinsey RTS US

3.      The "Service Team," as used in this Declaration, includes (a) the directors, officers and employees of McKinsey RTS US, and (b) certain consultants borrowed from affiliates of McKinsey RTS US for the purpose of serving the Debtors in these chapter 11 cases.

4.      Members of the Service Team are employed by McKinsey RTS US and McKinsey & Company, Inc. United States and other affiliates that provide consulting services.

5.      McKinsey RTS US is a direct wholly-owned subsidiary of McKinsey & Company, Inc. United States, which in turn is a direct wholly-owned subsidiary of McKinsey Holdings, Inc., which in turn is a direct wholly-owned subsidiary of McKinsey.

6.      The Debtors seek to retain McKinsey RTS US as their performance improvement advisor based on its qualifications, skill, and expertise.  McKinsey RTS US is a global, full service advisory firm that draws on unmatched industry and functional expertise to support companies through all aspects of transformation.  Its members have extensive experience in improving the operational performance of financially troubled companies.  McKinsey RTS US is deeply experienced in working with clients to execute transformation plans that are focused on improving top-line, bottom-line, capital expenditures, and working capital.  McKinsey RTS US has been or is currently involved in numerous large and complex restructurings, including but not limited to: *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 25, 2017) (*ad hoc* lenders' committee); *In re GenOn Energy, Inc.*, 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017); *In re Sun Edison, Inc*., 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 21, 2016); *Alpha Natural Resources, Inc*., 15-33896 (KRH) (Bankr. E.D. Va. Aug. 3, 2015); *The Standard Register Company*, 15-10541 (BLS) Mar. 12, 2015); and *NII Holdings, Inc*., 14-12611 (SCC) (Bankr. S.D.N.Y. Sept. 15, 2014).[3]

7.      In addition, when relevant to a particular engagement, McKinsey RTS US utilizes the expertise of colleagues in the Electric Power and Natural Gas ("EPNG") and

---

[3]    Because of the voluminous nature of the orders cited in this Declaration, they are not attached to this Declaration. Copies of these orders are available upon request to McKinsey RTS US.

Basic Materials industry practices.[4]  The EPNG practice serves integrated electric utilities, independent power producers ("IPPs"), renewable players, new entrants, and transmission, distribution, and natural gas players.  The practice has done 2,045 projects in the sector over the past five years.  Over this time, the practice has served 70% of the 40 largest players and utilities in the sector globally, distributed across all geographies.  The EPNG practice helps clients shape leading growth strategies at a time of disruption in the industry, transform operational performance, achieve step-change in efficiency, and build an agile organization and culture for the future.  The EPNG practice also has proprietary power market analysis tools, providing rigorous strategic insights into forward looking market demand by segment, region, market structure, and expected shifts in operating margins across the value chain.  The EPNG practice has helped clients drive significant cash improvement by driving best-practices in supply chain (contractor productivity, asset/MRO procurement), power plant improvements, lean corporate center, optimizing back-office G&A, and driving capital excellence and productivity across the enterprise.

8.     The Basic Materials practice, which covers global metals & mining activity, has been engaged by clients on nearly 1,000 studies in the mining industry over the last five years and serves the majority of the world's top major diversified mining companies and many of the leading specialist mining companies (including many of the top coal producers).  This experience has given the Engagement Team (defined below) a unique understanding of industry trends and of key strategic operational success factors for the Debtors' business.

---

[4]    As also set forth in Paragraph 3, to the extent McKinsey RTS US borrowed any consultant associated with the EPNG and Basic Materials practices from an affiliate for the purpose of serving the Debtors in these chapter 11 cases, they have been defined to be a part of the Engagement Team, as that term is used in this Declaration.

9. The Basic Materials practice includes a dedicated team of nearly 100 technical experts supporting a group of nearly 500 consultants continuously serving our clients around the globe. These experts include numerous mine engineers, metallurgists, geologists, and business managers, each with deep operational experience in mining. The practice is backed by an extensive program of proprietary research, high-impact management tools, and information experts who (a) provide insight into industry structure and dynamics (including supply, demand, trade flows, and future prospects for all major mining commodities) and (b) ensure that consulting teams have access to the latest thinking, approaches, and analyses on financial, market, operational, organizational, and strategic matters. The Basic Materials practice has also implemented several knowledge development initiatives in the mining sector, including multi-year research projects addressing the most urgent client topics (e.g., a "Cost-Curve Initiative" looking at mining cost-economics of numerous commodities and several proprietary benchmarks including a benchmark that allows mine operators to assess performance against a broad set of peers and the "McKinsey Mining Productivity Index," which tracks and compares the productivity of worldwide mining operations). These initiatives, projects, and benchmarks ensure that the Basic Materials practice remains at the forefront of industry information and trends.

10. The EPNG and Basic Materials practices include general consultants, dedicated practice consultants, and experts with relevant industry experience and academic backgrounds. The practices are backed by dedicated research and information experts who provide insight into industry structure and dynamics and ensure that teams have access to the latest approaches and analyses on financial, market, operational, organizational, and

strategic matters for the consulting teams.  The experience of McKinsey RTS US, along with the experience of the EPNG and Basic Materials practices offers an extensive knowledge and expert base which will benefit the Debtors in these chapter 11 cases.

11.     Given McKinsey RTS US's substantial experience, prior to the filing of these chapter 11 cases, the Debtors, through McKinsey RTS US, retained members of the Service Team (all individuals retained to serve the Debtors in these bankruptcy cases, whether employed by McKinsey RTS US or borrowed from affiliates of McKinsey RTS US, are referred to in this Declaration as the "Engagement Team") to serve as their performance improvement advisor pursuant to an agreement dated July 17, 2018 (the "Prepetition Agreement"), which engagement was principally for the purpose of providing an initial diligence assessment to rapidly test areas of performance improvement opportunities, and to identify performance improvement initiatives with the intention to enhance the Debtors' performance.  The scope of the services provided under the Prepetition Agreement also included developing the infrastructure to support a broader execution program, supporting the Debtors in discussions with the *ad hoc* group of the Debtors' first lien creditors and the *ad hoc* group of the secured term lenders of Westmoreland Resource Partners LP, and providing other advisory services mutually agreed upon by the Debtors and McKinsey RTS US.

12.     As a result of the prepetition work performed on behalf of the Debtors by McKinsey RTS US, the Engagement Team is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures, and related matters.  Since McKinsey RTS US's initial engagement, members of the Engagement Team have worked closely with the Debtors' management

and other professionals on numerous tasks related to performance improving opportunities, revenue drivers, and cost reduction opportunities.  Moreover, as a result of the services provided under the Prepetition Agreement, the Engagement Team has substantial knowledge of the Debtors' and non-Debtor subsidiaries' operating assets.  Consequently, the Engagement Team has developed significant relevant experience and expertise regarding the Debtors and the circumstances of these chapter 11 cases and has the skills, qualifications, and expertise necessary to assist the Debtors with their performance improvement efforts in an efficient and cost-effective manner.

### Terms and Scope of Engagement

13.     The parties have entered into the Engagement Letter, the terms of which will govern the Debtors' retention of McKinsey RTS US during these chapter 11 cases, except as explicitly set forth in any order granting the Application.  As contemplated by Section 12 of the Engagement Letter, McKinsey RTS US requests approval of the Engagement Letter *nunc pro tunc* to the Petition Date.  The Engagement Letter was negotiated between the Debtors and McKinsey RTS US at arm's length and in good faith and reflects the parties' mutual agreement as to the substantial efforts that will be required during the course of this engagement.

14.     The Engagement Team will perform a broad range of services during these chapter 11 cases, including, without limitation, the following:[5]

■        <u>Operational Improvement Planning</u> – Assist the Debtors with identifying and planning detailed initiatives to support improvements in operating

---

[5]     Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern in the event of any conflict between the Engagement Letter and the descriptions provided herein.

performance in mining operations, corporate functions, and commercial agreements.

- ■ <u>Operational Support</u> – Provide the Debtors with hands-on support to implement the detailed initiatives to support operational improvements.

- ■ <u>Business Plan</u> – Support the Debtors and their Restructuring Advisor, Alvarez & Marsal North America, LLC, with incorporating the operational improvement plans into the Debtors' business plan, disclosure statement, and plan(s) of reorganization.

- ■ <u>Constituent Management</u> – Assist in development of supporting diligence materials and presentations for use in various stakeholder meetings, attend diligence sessions and working meetings with various stakeholders and constituents, and provide related *ad hoc* support to the management team on matters related to the operational improvement plans.

- ■ <u>Other Operational Services</u> – As appropriate, assist the Debtors with other matters as may be requested by the Debtors and that are mutually agreed upon between McKinsey RTS US and the Debtors.

15.    The services provided by the Engagement Team are necessary to enable the Debtors to maximize the value of their estates.  Specifically, the Engagement Team is instrumental in helping the Debtors develop and execute strategies related to significant operational improvements.

16.    The Engagement Team will complement, and not duplicate, the services rendered by any other professionals retained in these chapter 11 cases.  In particular, McKinsey RTS US has been retained to provide, and will carry out, unique functions that are not duplicative of the work performed by Centerview Partners LLC or Alvarez & Marsal North America, LLC and will coordinate with the Debtors and their other retained professionals to avoid the unnecessary duplication of services.  To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court for a supplement to the retention of McKinsey RTS US and any related modifications to the Engagement Letter, and such application shall

set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

### Fee and Expense Structure

17.     Subject to Court approval, the Debtors will compensate McKinsey RTS US in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

18.     Hourly Rates:  McKinsey RTS US's fees are to be based on the hours worked by members of the Engagement Team at the following hourly billing rates:

| Title of Professional | Hourly Rate |
| --- | --- |
| Practice Leader: | $995-$1,150 |
| Senior Vice President: | $735-$925 |
| Vice President: | $640-$735 |
| Senior Associate: | $530-$615 |
| Associate: | $425-$515 |
| Analyst: | $300-$425 |
| Paraprofessional: | $250-$275 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS US adjusts its rates generally.

19.     At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS US under the Engagement Letter.

20.     Expenses:  The Debtors will reimburse McKinsey RTS US for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but not limited to, travel, consultants, case administrators, lodging,

postage, and communications charges following McKinsey RTS US's standard expense reporting. As McKinsey RTS US clients frequently request that McKinsey RTS US professionals travel to their offices and work there for extended periods of time, McKinsey RTS US developed its own official reimbursement policy with respect to its professionals' documentation of expenses (the "RTS Reimbursement Policy"). More specifically, members of the Engagement Team will seek reimbursement for expenses over thirty-five dollars ($35) that (a) have been charged on a McKinsey RTS US-provided corporate credit card or have a receipt, and (b) have a receipt for lodging. For amounts under thirty-five dollars ($35), members of the Engagement Team will seek reimbursement when exact amounts are submitted in lieu of a receipt. McKinsey RTS US intends to maintain detailed documentation of its professionals' actual and necessary costs and expenses in accordance with the RTS Reimbursement Policy.

21. Consistent with the scope of services to be provided by the Engagement Team, the Debtors and McKinsey RTS US negotiated and agreed upon the Fee and Expense Structure described above. In addition, McKinsey RTS US believes that the Fee and Expense Structure is reasonable and market-based and consistent with McKinsey RTS US's normal and customary billing levels for comparably sized and complex cases, both in and out-of-court, involving the services to be provided to the Debtors by the Engagement Team. To the best of my knowledge, the compensation arrangement reflected herein is consistent with, and typical of, arrangements entered into by other advisory firms rendering similar services for clients such as the Debtors.

22. Pursuant to the Prepetition Agreement, the Debtors paid McKinsey RTS US a retainer in the amount of $1,500,000 (the "Retainer") on August 1, 2018 in connection

with prepetition services to be performed by McKinsey RTS US. The Prepetition Agreement further provided that the Debtors would pay McKinsey RTS US the amount of $325,000 per week in exchange for the services set forth therein. On or about September 17, 2018, the parties entered into an oral agreement (the "Oral Agreement") to increase the weekly compensation payable to McKinsey RTS US to $480,000 based upon additional services related to a bottom-up planning analysis that McKinsey RTS agreed to provide. Accordingly, pursuant to the Prepetition Agreement, McKinsey RTS US was paid $325,000 per week for the period from July 23, 2018 through and including September 16, 2018, and pursuant to the Oral Agreement, McKinsey RTS US was paid $480,000 per week from September 17, 2018 through and including October 5, 2018.

23.     McKinsey RTS US periodically invoiced the Debtors for its prepetition services. The Retainer was applied to McKinsey RTS US's prepetition invoices in accordance with the table set forth in paragraph 24 below, and such payments were used to replenish the Retainer. As of the Petition Date, the Retainer balance was $1,500,000.

24.     During the ninety (90) days prior to the Petition Date, the Debtors paid McKinsey RTS US a total of $5,540,000 (inclusive of the Retainer and reimbursable expenses), in connection with prepetition services, as set forth below:

Case 15-10541-BLS   Doc 2417-9   Filed 04/24/19   Page 14 of 38
Case 15-33571   Document 492   Filed in TXSB on 04/18/18   Page 9 of 194

| Date of invoice | Date of payment receipt | Description | Transaction Type | Billed | Payment/Application | Fee Advance Balance |
|---|---|---|---|---|---|---|
| July 27, 2018 | August 1, 2018 | Fee Advance | ACH | | $1,500,000 | $1,500,000 |
| August 29, 2018 | September 17, 2018 | Services through 7/27/2018 | Bill | $325,000 | -$325,000 | $1,175,000 |
| August 29, 2018 | September 17, 2018 | Services through 8/3/2018 | Bill | $325,000 | -$325,000 | $850,000 |
| August 29, 2018 | September 17, 2018 | Services through 8/10/2018 | Bill | $325,000 | -$325,000 | $525,000 |
| August 29, 2018 | September 17, 2018 | Services through 8/17/2018 | Bill | $325,000 | -$325,000 | $200,000 |
| August 29, 2018 | September 17, 2018 | Fee Advance | ACH | | $1,300,000 | $1,500,000 |
| September 21, 2018 | October 5, 2018 | Services through 8/24/2018 | Bill | $325,000 | -$325,000 | $1,175,000 |
| September 21, 2018 | October 5, 2018 | Services through 8/31/2018 | Bill | $325,000 | -$325,000 | $850,000 |
| September 21, 2018 | October 5, 2018 | Services through 9/7/2018 | Bill | $325,000 | -$325,000 | $525,000 |
| September 21, 2018 | October 5, 2018 | Services through 9/14/2018 | Bill | $325,000 | -$325,000 | $200,000 |
| October 3, 2018 | October 5, 2018 | Services through 9/21/2018 | Bill | $480,000 | -$480,000 | -$280,000 |
| October 3, 2018 | October 5, 2018 | Services through 9/28/2018 | Bill | $480,000 | -$480,000 | -$760,000 |
| October 3, 2018 | October 5, 2018 | Services through 10/5/2018 | Bill | $480,000 | -$480,000 | -$1,240,000 |
| September 21, 2018 | October 5, 2018 | Fee Advance | ACH | | $1,300,000 | $60,000 |
| October 3, 2018 | October 5, 2018 | Fee Advance | ACH | | $1,440,000 | $1,500,000 |

25.     McKinsey RTS US received no other payments from the Debtors during the ninety (90) days immediately preceding the Petition Date.[6]

26.     As of the Petition Date, the Debtors owed McKinsey RTS US $96,000 in fees and expenses incurred prior to the Petition Date (the "Prepetition Balance").[7]  By this Application, the Debtors seek to modify the automatic stay to allow McKinsey RTS US to apply the Retainer to the Prepetition Balance.  Any remaining amounts of the Retainer after reconciliation with its outstanding prepetition fees and expenses will be applied as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved in accordance with any applicable procedures and orders of the Court awarding fees and expenses to McKinsey RTS US.

### Record Keeping

27.     McKinsey RTS US intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred

---

[6]     The Retainer shortfall for the prepetition work noted above resulted from delays of days or weeks in payments or invoicing for work performed by McKinsey RTS US. To resolve any preference issue, McKinsey RTS US has offered to repay that shortfall and to waive any claim under Section 502(h) of the Bankruptcy Code.

[7]     Specifically, the Prepetition Balance comprises services provided and expenses incurred by McKinsey RTS US on behalf of the Debtors on October 8, 2018.

in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court.

28.     Such applications will include time records setting forth, in reasonable detail, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. McKinsey RTS US will maintain and file contemporaneous time records in one-tenth hour (.1) increments.  McKinsey RTS US also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services as discussed above.

### Indemnification Provisions

29.     As part of the overall compensation payable to McKinsey RTS US under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions described in the Engagement Letter (the "Indemnification Provisions").  The Indemnification Provisions provide that the Debtors will indemnify, hold harmless, and defend McKinsey RTS US (including its past, present, and future affiliates) and each of their directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors, and controlling persons (each, an "Indemnified Party," and collectively, the "Indemnified Parties") against liabilities arising out of (directly or indirectly) the Engagement Letter and/or McKinsey RTS US's retention by the Debtors in these chapter 11 cases, except for any liabilities judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of any of McKinsey RTS US or the other Indemnified Parties in connection with McKinsey RTS US's services provided under the Engagement Letter.  In addition, if indemnification or reimbursement obligations are held to be unavailable by any court

(other than in circumstances where a court determines that liability is from the willful misconduct or gross negligence of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the relative benefits and faults of McKinsey RTS US and the Debtors.  The Engagement Letter further sets forth that McKinsey RTS US's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

### Disclosure Regarding Disinterestedness of McKinsey RTS US

30.     McKinsey RTS US and its consulting affiliates have a long-standing policy of serving competing companies and do so in a manner that protects the confidentiality of each client's information.  Because of its practice of serving clients with overlapping or competing interests, these consulting affiliates do not have in place any centralized conflicts identification process, and instead have a global database of clients and engagements performed for those clients, which is kept principally for record keeping purposes and does not contain detailed descriptions of the client support.

31.     In anticipation of its proposed retention, on October 16, 2018 McKinsey RTS US received a list of potential parties in interest provided by the Debtors directly or through their other professional advisors (the "October 16, 2018 List") and, but for certain exceptions described below, reviewed the parties on that list for connections (the "Potential Parties in Interest").  The Potential Parties in Interest reviewed by McKinsey RTS US are reproduced as Schedule 1.  After Debtors' counsel, Kirkland & Ellis, LLP ("K&E") filed its Declaration, McKinsey RTS US learned that K&E had generated a new list of potential parties in interest (reproduced here as "**Schedule 2**"), which included approximately 230 entities not previously identified on the October 16, 2018 List.  The searches described in this Declaration were conducted based on the list attached as **Schedule 1** which has been

organized so that the categories of Potential Parties in Interest track the categories used by K&E in **Schedule 2**.  McKinsey RTS US has started the process of searching the additional entities included on **Schedule 2** that were not searched as part of the **Schedule 1** search and will submit a supplemental declaration prior to the hearing date to identify any connections to those additional entities.

32.     To determine the existence of any client services provided to Potential Parties in Interest since October 1, 2016, McKinsey RTS US: searched the global client database, which covers clients of McKinsey RTS US and all affiliates that provide consulting services; reviewed billing records for members of the Service Team; and compiled and reviewed the list of all clients identified in McKinsey's financial records as clients of McKinsey RTS US.

33.     To date and to the best of my knowledge McKinsey RTS US has searched its global client database for the names of all entities on the October 16, 2018 List provided to McKinsey RTS US on October 16, 2018 with the following exceptions.  Consistent with the search conducted by <u>K&E</u> relating to its retention, McKinsey RTS US did not search employees set forth on the October 16, 2018 List, or twenty-four (24) "Intercompany" entities that were determined by K&E to be inapplicable to these chapter 11 cases. McKinsey RTS US also searched entities in the category called Vendors in the October 16, 2018 List to the extent the entity spend was $500,000 or more from January 1, 2017 through August 14, 2018.[8]

---

[8]     Unlike K&E, McKinsey RTS US did not search approximately 150 Vendors with a spend of as low as $1,000 during this time period, and intends to do so and provide any applicable search results in a supplement to this Declaration.

34.     In anticipation of its proposed retention, McKinsey RTS US also surveyed by email: (a) members of the Service Team to determine the existence of any client services provided by members of the Service Team to the Potential Parties in Interest on **Schedule 1** and to identify any former employers or relationships, that members of the Service Team had or have with individuals or officers or directors at companies listed as Potential Parties in Interest on **Schedule 1**, since October 1, 2016, 2018, (b) members of the Service Team and partners at McKinsey RTS US and its affiliates globally that provide consulting services to determine the existence of client services provided since October 1, 2016 to any client that focused on a direct commercial relationship or transaction with the Debtors, (c) partners identified through its search of the global client database as bearing primary responsibility for services provided to Potential Parties in Interest listed on **Schedule 1** since October 1, 2016 to determine whether that service focused on a direct commercial relationship or transaction with the Debtors, and (d) all employees of McKinsey RTS US and its affiliates globally that provide consulting services to determine any personal or family relationships with, or employment by, the Debtors, the U.S. Trustee for Region 7, attorneys and employees at the Office of the U.S. Trustee for Region 7, and the bankruptcy judges in the Southern District of Texas, as well as any equity ownership in the Debtors.

35.     Based upon responses to the above inquiries, McKinsey RTS US included disclosures in this Declaration to the extent that (i) any member of the Service Team, since October 1, 2016, has provided consulting services to any of the Potential Parties in Interest on **Schedule 1**, or since October 1, 2016 was employed by or had relationships with individuals or officers or directors at companies listed as Potential Parties in Interest on **Schedule 1,** other than transient, incidental relationships; (ii) any member of the Service

Team or a partner at McKinsey RTS US or one of its consulting affiliates, since October 1, 2016 has provided services to any client focused on a direct commercial relationship or transaction with the Debtors; and (iii) any employee of McKinsey RTS US or its consulting affiliates, or any of their family members, since October 1, 2016, has had a personal relationship with or has been employed by the Debtors, the U.S. Trustee for Region 7, attorneys and employees at the Office of the U.S. Trustee for Region 7, or the bankruptcy judges in the Southern District of Texas, other than in the case of a transient, incidental relationship, or held equity ownership in the Debtors.  In respect of (i) above, to the best of my knowledge, all consulting services provided by the Service Team to Potential Parties in Interest on **Schedule 1**, and former employers or relationships with individuals or directors and officers of companies (other than transient, incidental relationships) on the list of Potential Parties in Interest included in **Schedule 1** are disclosed in paragraphs 47 through 71 below.  In respect of (ii) above, to the best of my knowledge, no member of the Service Team or partner at McKinsey RTS US or one of its consulting affiliates since October 1, 2016 has provided services to any client that focused on a direct commercial relationship or transaction with the Debtors.  In respect of (iii) above, to the best of my knowledge, no employee of McKinsey RTS US or its consulting affiliates, or any of their family members, since October 1, 2016, has had a personal relationship (other than a transient, incidental one) with or has been employed by the Debtors, the U.S. Trustee for Region 7, attorneys and employees at the Office of the U.S. Trustee for Region 7, or the bankruptcy judges in the Southern District of Texas, or has held equity ownership in the Debtors.

36.     McKinsey RTS US has an affiliate, MIO Partners, Inc. ("MIO Partners"), which is a wholly-owned indirect subsidiary of McKinsey and which is registered with the U.S. Securities and Exchange Commission as an investment adviser.  MIO Partners does not provide consulting services.  It manages assets for (i) pension plans sponsored by McKinsey ("Plans") in which current and former McKinsey employees participate ("Participants"), and (ii) privately offered investment vehicles ("Funds") in which McKinsey partners, former partners and their immediate family members ("Investors") can invest.  Certain McKinsey consulting affiliates, not including McKinsey RTS US, have invested funds with MIO solely for the purpose of satisfying obligations to guarantee benefits to Participants in defined-benefit pension plans.

37.     By design, MIO Partners is operated separately and distinctly from McKinsey's consulting services including for the purpose of ensuring McKinsey's disinterested service to its consulting clients.  The staff of MIO Partners is dedicated to MIO Partners.  No staff member of MIO Partners is engaged in the client service activities of McKinsey or is an employee of any McKinsey affiliate that provides consulting services to clients.  Subject to paragraph 38 below regarding Board members, Participants and Investors have no control over the investments made by the Plans or the Funds.  They have no ability to direct purchases or sales of any asset in the Plans or the Funds.

38.     While members of the Board of Directors of MIO Partners have oversight responsibilities with respect to the Plans and the Funds, no member of the Service Team serves on that Board.  Further, the Board of MIO Partners has delegated responsibility for making investment decisions on behalf of the Plans and the Funds to the professional staff of MIO Partners.  These professional staff are principally responsible for engaging and

supervising third-party managers who make investment decisions based on their own discretion. MIO Partners' staff also make investment decisions on behalf of the Plans and the Funds in investment vehicles operated by MIO Partners.

39.     Pursuant to McKinsey data protection protocols, client information obtained in the course of serving clients is maintained by McKinsey on servers which employees of MIO Partners lack the credentials to access. The investment records of MIO Partners are stored on servers maintained by MIO Partners which employees of McKinsey affiliates who provide consulting services lack the credentials to access.

40.     Because of the separateness of MIO Partners from McKinsey RTS US and its consulting affiliates, McKinsey RTS US has not asked MIO Partners to search for connections to the Potential Parties in Interest.

41.     As a result of an independent search performed in April 2018 by McKinsey RTS US relating to the publication of an article dated April 27, 2018 in the *Wall Street Journal*, and allegations set forth in a motion filed in *In re Alpha Natural Resources, Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va.) and a pleading filed in *Alix v. McKinsey & Co., Inc.,* Case No. 18-04141 (JMF) (S.D.N.Y.), McKinsey RTS US learned that MIO Partners had an investment manager relationship with Whitebox Advisors, Inc. ("Whitebox"). McKinsey RTS US is unaware of whether MIO Partners's connection to Whitebox is ongoing and is also unaware of which Whitebox funds have connections to the Debtors. Accordingly, McKinsey RTS US is unaware whether any funds invested by MIO Partners are placed with any Whitebox funds with connections to the Debtors.

42.     Based on the searches described above, to the best of my knowledge, after reasonable inquiry, except as set forth herein, including McKinsey RTS US's prepetition

work for the Debtors, McKinsey RTS US (a) does not have any connection with the Debtors or their affiliates, their creditors, or any other Potential Parties in Interest in these cases, (b) is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, (c) does not hold or represent any interest adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, (d) is not and has not been a creditor, an equity security holder, or an insider of the Debtors, and (e) is not and has not been, since October 1, 2016, a director, officer, or employee of the Debtors.

43.     Mar-Bow Value Partners, LLC ("Mar-Bow") alleges that it is a creditor of the Debtors.   McKinsey RTS is currently involved in litigation against Mar-Bow. Specifically, Mar-Bow is currently seeking to reopen *In re Alpha Natural Resources, Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va.), formerly pending before the United States Bankruptcy Court for the Eastern District of Virginia, and to conduct discovery in aid of a motion for relief from judgments on the basis of fraud on the court purportedly committed by McKinsey RTS US.  Mar-Bow's motions are fully briefed and a scheduling conference is scheduled before the court on December 5, 2018.

44.     McKinsey also owns a proprietary program management tool used by McKinsey clients, including clients of McKinsey RTS US and its consulting affiliates.  The tool enables the client service team and the client to define initiatives and track progress.  The tool is created by uploading and processing information obtained from clients; however, confidential information is segregated by client and maintained strictly confidentially.  Access to confidential client information is provided, on a "need to know" basis, to members of the team of McKinsey employees and agents who are dedicated to

supporting the program management tool and are bound to maintain the confidentiality of client information.

45.     McKinsey owns a proprietary knowledge benchmarking tool which incorporates confidential operational data and information of clients in the mining industry who elect to participate in the benchmarking model ("Benchmarking Confidential Information").  The benchmarking tool is maintained by a team of McKinsey professionals (the "Benchmarking Tool Team") who provide it to McKinsey RTS US and its affiliates to use in serving clients.  The benchmarking tool is used to enable participants to compare their own data with the aggregated, disguised data of other participants in the benchmark.  Benchmarking Confidential Information is maintained strictly confidential and in a manner that does not allow participants to be identified.  It is disclosed only to members and agents of the Benchmarking Tool Team on a "need to know" basis.

46.     Based upon the research described above, McKinsey RTS US has ascertained that since October 1, 2016 the Service Team has served, either through McKinsey RTS US or one of its consulting affiliates, the following Potential Parties in Interest, but unless indicated otherwise, on matters unrelated to the Debtors and their chapter 11 cases.  More specifically, to the best of my knowledge and belief:

47.     Pursuant to an agreement dated as of March 26, 2018, McKinsey RTS US was retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP, in its capacity as counsel to those certain unaffiliated holders of the 12% Senior Secured Notes due 2021 issued by Tru Taj LLC and TRU Taj Finance, Inc., and guaranteed by Toys "R" Us, Inc. and certain other parties (each a "Member" and collectively, the "Ad Hoc Group") to provide services unrelated to the Debtors, the Debtors' chapter 11 cases, or the claims of any Members of

the Ad Hoc Group against the Debtors.  The following Members of the Ad Hoc Group, or their affiliates, are included in the list of Potential Parties in Interest on **Schedule 1**: Barclays Bank PLC, Barclays PLC, Bluemountain CLO Ltd, Bluemountain CLO 2012-2 Ltd, Bluemountain CLO 2013-1 Ltd, Bluemountain CLO 2013-4, Bluemountain CLO 2014-1 Ltd, Bluemountain CLO 2014-3 Ltd, Bluemountain CLO 2014-4, Ltd, Bluemountain CLO 2015-1, Bluemountain CLO 2015-2 Ltd, Bluemountain CLO 2015-4 Ltd, Bluemountain CLO 2016-1 Ltd, Bluemountain CLO 2016-2 Ltd, Bluemountain CLO 2016-3 Ltd, Cerberus Business Finance, LLC, Stonehill Institutional Partners L.P., Stonehill Master Fund Ltd, Stonehill Capital Management Inc., Stonehill Capital Management LLC, York Credit Opportunities Fund L.P., and York Credit Opportunities Investments Master.

48.    **Debtor Affiliates.**  As the Engagement Team is serving the Debtors, members of the Service Team have a connection to affiliates of the Debtors included in this and other categories on the list of Potential Parties in Interest.

49.    **Directors & Officers.**  To the best of my knowledge, no member of the Service Team is related to or has a relationship (outside of service to the Debtors) with any of the individuals identified in this category.

50.    **5% or More Shareholders.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following 5% or More Shareholders: American International Group, American International Group Inc.; Bank of America Corp.; BNP Paribas, BNP Paribas Arbitrage SA; JP Morgan Asset Management, Japan JPMorgan Chase & Co.; State Street Corp.; and one (1) Confidential Client.  Members of the Service Team were previously employed, since October 1, 2016,

by the following 5% or More Shareholders on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such 5% or more Shareholders' claims against the Debtors: JP Morgan Asset Management, Japan JPMorgan Chase & Co.

51.    **Bank-Lender-Administrative Agents.**    Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Bank-Lender-Administrative Agents or entities that are affiliates of such Bank-Lender-Administrative Agents on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Bank-Lender-Administrative Agents' claims against the Debtors: Oaktree Capital Management Inc., Oaktree Opportunities Fund X Holding, Oaktree Value Opportunities Fund, Oaktree Value Opportunities Fund Holdings LP; State Street Corp.; and US Bank NA.

52.    **Bankruptcy Judges.**    To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Bankruptcy Judges included on the list of Potential Parties in Interest.

53.    **Bankruptcy Professionals.**    Members of the Service Team were previously employed, since October 1, 2016, by the following Bankruptcy Professionals on matters unrelated to the Debtors and the Debtors' chapter 11 cases: Alvarez & Marsal North America LLC; Ernst & Young LLP; and FTI Consulting Inc.

54.    **Bondholders-Indentured Trustee.**    To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Bondholders-Indentured Trustees or entities or individuals that are affiliates of such Bondholders-Indentured Trustees.

55.  **Contract Counterparties.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Contract Counterparties  or entities or individuals that are affiliates of such Contract Counterparties on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Contract Counterparties' claims against the Debtors: Bank of America National Trust & Savings Association, Bank of New England, Bank of New England NA; Vistra BV; BHP Billiton, BHP Billiton Ltd., BHP Billiton New Mexico Coal Co., BHP Mine Management Co., BHP Minerals International Inc., BHP Navajo Coal Co.; Alight; BP Canada Energy Group; Caterpillar, Caterpillar Financial, Caterpillar Financial Services, Caterpillar Financial Service Ltd., Caterpillar Financial Services Corp., Caterpillar Financial Services Leasing ULC, Caterpillar Financial Services Ltd., Caterpillar Inc., Mining Financial Services; Duke Energy Kentucky Inc.; HP Channel Services Network; Cyprus Creek Land Co., Cyprus Creek Land Resources, Cyprus Creek Land Resources LLC, Peabody Coal Co. LLC, Peabody Development Co. LLC; Shell Mining Co.; TransAlta Centralia Generation LLC, TransAlta Cogeneration LP, TransAlta Generation Partnership, TransAlta Utilities Corp., Transalta Corp.; Grainger Industrial Supply, Grainger Industrial Supply India Ltd., WW Grainger Inc.; Northern States Power Co., Xcel Energy Services Inc.; Xerox Corp.; Chase Manhattan Bank NA; and three (3) Confidential Clients.  A member of the Service Team, since October 1, 2016 has served, either through McKinsey RTS US or an affiliate thereof a Crown corporation which is controlled by the following Contract Counterparty or one of its related instrumentalities on matters unrelated to the Debtors or the Debtors' chapter 11 cases: Alberta, Province of (Canada), Minister of Finance.  Members of the Service Team, since October 1, 2016 have served, either through

McKinsey RTS US or an affiliate thereof, GenOn Energy, Inc., a wholly owned subsidiary of the following Contract Counterparties or an affiliate of such Contract Counterparties on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Contract Counterparties' claims against the Debtors: NRG Energy, Inc., NRG Texas Power LLC, and NRG Texas Power LLC as Beneficiary. Members of the Service Team were previously employed, since October 1, 2016, by the following Contract Counterparties on matters unrelated to the Debtors and the Debtors' chapter 11 cases: Chase Manhattan Bank NA; FTI Consulting Inc.; Enbridge Pipelines (East Texas) LP; Portland General Electric Co., General Electric Capital Corp.; United States Government; and Alvarez & Marsal North America LLC. A member of the Service Team was previously employed, since October 1, 2016, by the following Contract Counterparty on matters unrelated to the Debtors and the Debtors' chapter 11 cases and continues to maintain relationships with certain officers at such Contract Counterparty: Peabody Energy Corporation.

56. **Customers.** A member of the Service Team was previously employed, since October 1, 2016, by the following Customer on matters unrelated to the Debtors and the Debtors' chapter 11 cases: Portland General Electric Company.

57. **Governmental/Regulatory Agencies.** From time to time, members of the Service Team serve on engagements for departments and agencies of the US Federal government and various state governments as well as instrumentalities or entities under the control of the Canadian government and various provincial governments. To the best of my knowledge and except as set forth in paragraph 55 above, no member of the Service Team since October 1, 2016 has served or been employed by any of the U.S. or Canadian

federal, state or provincial departments, agencies, instrumentalities or controlled entities identified on the list of Potential Parties in Interest.

58.     **HR Benefits**.  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following entities included in HR Benefits on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such HR Benefits entities' claims against the Debtors: Automatic Data Processing Inc.; and one (1) Confidential Client.

59.     **Insurance.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Insurance entities or entities or individuals that are affiliates of such Insurance entities on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Insurance entities' claims against the Debtors: AIG Insurance Co. of Canada, and National Union Fire Insurance Company of Pittsburgh.

60.     **Landlords.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Landlords or entities or individuals that are affiliates of such Landlords.

61.     **Litigation.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Litigation parties or entities or individuals that are affiliates of such Litigation parties.

62.     **Ordinary Course Professionals.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Ordinary Course Professionals included on the list of Potential Parties in Interest.

63.     **Other Significant Creditors.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Other Significant Creditors or entities or individuals that are affiliates of such Other Significant Creditors**.**

64.     **Significant Competitors.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Significant Competitors or entities or individuals that are affiliates of such Significant Competitors on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Significant Competitors' claims against the Debtors: Peabody Energy Corp. A member of the Service Team was previously employed by the following Significant Competitor and continues to maintain relationships with certain officers at such Significant Competitor: Peabody Energy Corporation.[9]

65.     **Sureties.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Sureties or entities or individuals that are affiliates of such Sureties.

66.     **Taxing Authorities.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Taxing Authorities or entities that are affiliates of such Taxing Authorities.

67.     **Top 50 Creditors.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Top 50 Creditors or entities that are affiliates of such Top 50 Creditors.

---

[9]     Peabody Energy Corporation or its affiliates appear in the category Contract Counterparties on the list of Potential Parties in Interest.

68.     **U.S. Trustee Office.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by the Office of the U.S. Trustee Office in the Southern District of Texas.

69.     **Unions.**  To the best of my knowledge, no member of the Service Team, since October 1, 2016 has served or been employed by any of the Unions or entities or individuals that are affiliates of such Unions.

70.     **Utilities.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Utilities or entities or individuals that are affiliates of such Utilities on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Utilities' claims against the Debtors: Dish Network Corp.; Columbia Gas, and Columbia Gas of Ohio Inc.  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, GenOn Energy, Inc., a wholly owned subsidiary of the following Utilities or an affiliate of such Utilities on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Utilities' claims against the Debtors: NRG Energy, Inc., NRG Texas Power LLC, and NRG Texas Power LLC as Beneficiary.

71.     **Vendors.**  Members of the Service Team, since October 1, 2016 have served, either through McKinsey RTS US or an affiliate thereof, the following Vendors or entities or individuals that are affiliates of such Vendors on matters unrelated to the Debtors, the Debtors' chapter 11 cases, or such Vendors' claims against the Debtors: ADP, ADP, Inc; BHP Billiton New Mexico Coal Inc.; BP Energy Co.; Cat Financial Services Corp., Cat Rental Store, Caterpillar Finance Services, Caterpillar Financial Services, Caterpillar Financial Services Corp; Orica Canada Inc.; U.S. Bank; Acklands – Grainger

Inc., Grainger Inc.; and one (1) Confidential Client.  Members of the Service Team were previously employed, since October 1, 2016, by the following Vendors on matters unrelated to the Debtors and the Debtors' chapter 11 cases: General Electric Canada Inc.; Ernst & Young.

72.      In addition, McKinsey RTS US and its affiliates serve clients across a broad range of industries, functions, and geographies, and within industries, serve competitors and do so in a manner that protects the confidentiality of each client's information (including the confidentiality of the engagement itself).  Thus, certain affiliates of McKinsey RTS US may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, or contract counterparties in each case of the Debtors or otherwise Potential Parties in Interest; however, to the best of my knowledge, such services are unrelated to the Debtors and these chapter 11 cases unless explicitly stated otherwise herein, and do not focus on a direct commercial relationship or transaction with the Debtors.  If any work for other clients of affiliates of McKinsey RTS US focused on a direct commercial relationship or transaction with the Debtors, it is explicitly stated in this Declaration.  Further, if McKinsey RTS US becomes aware of any work for other clients of affiliates of McKinsey RTS US that focuses on a direct commercial relationship or transaction with the Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

73.      McKinsey RTS US and its affiliates do, however, from time to time, provide overall strategic analysis and advice to companies that operate in the wholesale power generation and North American coal mining sectors in which the Debtors operate, which

analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as other companies. McKinsey RTS US and affiliates' service to other companies in the industry in which the Debtors operate may focus on the macro landscape of the industry but should have no direct effect on the Debtors given the nature of the market. If any work for other clients of McKinsey RTS US or its affiliates focused a direct commercial relationship or transaction with the Debtors, it is explicitly stated in this Declaration. Further, if McKinsey RTS US becomes aware of any work for other clients that focuses on a direct commercial relationship or transaction with the Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

74.     As noted, McKinsey RTS US and its affiliates have a long-standing policy of serving competing companies and do so in a manner that protects the confidentiality of each client's information. In fact, McKinsey RTS US's expertise which the Debtors desire to utilize for the purposes described herein derives from McKinsey RTS US's and its affiliates' broad-based service in many different aspects of the industry and business sector in which the Debtors operate.

75.     Based upon the responses to the inquiries described in this Declaration, to the best of my knowledge, no members of the Service Team, McKinsey RTS US and its consulting affiliates are or have immediate family members that are related to or employed by (A) the Debtors, (B) the U.S. Trustee for Region 7, Hector Duran, Jr., employees at the Office of the U.S. Trustee, or (C) any judge or employee of the United States Bankruptcy Court for the Southern District of Texas. In addition, to the best of my knowledge, no

member of the Service Team, McKinsey RTS US, and its consulting affiliates or their family members hold equity securities of the Debtors.[10]

76.      In addition, as part of its practice, McKinsey RTS US and its consulting affiliates provide support to clients on purchasing and supply management relating to direct and indirect materials and services, including in the wholesale power generation and global coal mining sectors.  Generally, the services consist of fact-based analysis to understand the client's costs and who other potential vendors are, support in developing requests for proposal, and analysis of and advice relating to the responses from vendors.  McKinsey RTS US and its affiliates do not directly contact or negotiate with vendors for their clients, except that McKinsey RTS US may negotiate as agreed with its clients in certain circumstances.  While we do not believe that such support is adverse to the interests of the Debtors, out of an abundance of caution, McKinsey RTS US will independently evaluate the request of any member of the Service Team to provide purchasing and supply management support relating to the wholesale power generation and North American coal mining sectors to any company for whom any of the Debtors are either an incumbent provider or a potential vendor, prior to confirming such support.  Further, if McKinsey RTS US becomes aware of any such work for other clients, by McKinsey RTS US or its affiliates that provide client services, that focuses on or is adverse to the interests of the

---

[10]     In reviewing its records and the relationships of its professionals, McKinsey RTS US did not seek information as to whether any member of McKinsey RTS US or its consulting affiliates or their family members: (a) indirectly own, through a public mutual fund, or MIO Partners Plan or Fund, or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) have engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, it would not impact McKinsey RTS US's disinterestedness including for the reasons stated elsewhere in this Declaration, or otherwise give rise to a finding that McKinsey RTS US holds or represents an interest adverse to the Debtors' estates.

Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

77.     To the best of my knowledge, JPMorgan Chase & Co. and American International Group each account for slightly more than one (1%) percent of McKinsey RTS US's gross annual revenue as of September 30, 2018.  To the best of my knowledge, GenOn Energy, Inc., an affiliate of NRG Energy, Inc.,[11] accounts for approximately 6.97% of McKinsey RTS US's gross annual revenue as of September 30, 2018, and one Confidential Client[12] accounts for approximately 17.5% of McKinsey RTS US's gross annual revenues as of September 30, 2018.[13]  In each case, McKinsey RTS US's support to JPMorgan Chase & Co., American International Group, GenOn Energy, Inc. and one (1) Confidential Client is on matters unrelated to the Debtors and their chapter 11 cases.

78.     Members of the Service Team served GenOn Energy, Inc. in its chapter 11 cases which were presided over by Judge Jones, but such members had no relationship with Judge Jones other than with respect to their professional services on behalf of GenOn.

79.     McKinsey RTS US has adopted procedures to identify any proposed support by any McKinsey RTS US affiliate that provides client services and focuses on a direct commercial relationship or transaction with the Debtors, so that McKinsey RTS US may either make disclosure of such potential engagement to the Court or take other

---

[11]   As part of the plan of reorganization for GenOn Energy, Inc., NRG's equity interest in GenOn Energy, Inc. will be eliminated as of the Effective Date, which is expected to be within the next thirty (30) days.

[12]   This Confidential Client is included in the following categories on the list of Potential Parties in Interest in **Schedule 1**:  Contract Counterparties, Vendors.

[13]   McKinsey RTS US is a small business within McKinsey and accordingly, clients that account for these percentages of McKinsey RTS US's gross annual revenues in a 12-month period do not account for a significant percent of McKinsey's gross annual revenues in the same period.

appropriate steps. If and when retained, McKinsey RTS US will again communicate to all partners at McKinsey RTS US and its affiliates directing them to notify the office of McKinsey's General Counsel of any such proposed client engagements. In addition, McKinsey RTS US will again communicate with all of its members directing them to notify the office of McKinsey's General Counsel of proposed client engagements involving Potential Parties in Interest.

80.     Finally, as part of its diverse practice, McKinsey RTS US and its affiliates are involved in numerous matters and transactions involving many different professionals, including many of the professionals named as Potential Parties in Interest in these chapter 11 cases. Further, McKinsey RTS US and its affiliates may have in the past been represented by, may currently be represented by, and may in the future be represented by or work with attorneys, law firms, or financial advisors who are involved in these proceedings, including law firms and financial advisors representing the Debtors. Specifically, McKinsey RTS US and its affiliates have been represented, since October 1, 2016, by the following professionals (or affiliates thereof) named as Potential Parties in Interest on **Schedule 1** or have worked alongside them in other matters unrelated to the Debtors and these chapter 11 cases: Jones Day, Schulte Roth & Zabel, LLP, Bryan Cave LLP, Wilmer Cutler Pickering Hale and Dorr, Deloitte & Touche LLP, Ernst & Young LLP, Lazard Freres and Co. LLC, and Pricewaterhouse Coopers. Further, McKinsey RTS has worked alongside K&E in a prior chapter 11 case, and McKinsey RTS and one of its affiliates have retained K&E on matters unrelated to the Debtors and these chapter 11 cases. McKinsey RTS has retained Morrison & Forester LLP, who is serving as UCC counsel in these chapter 11 cases, and BRG Financial Services (Berkeley Research Group), financial

advisor to the UCC, in matters unrelated to the Debtors and these chapter 11 cases. McKinsey RTS US and its affiliates may in the past have served, may currently serve, and may in the future serve professionals in these cases on matters unrelated to these chapter 11 cases.  In addition, as noted above, McKinsey RTS US and its affiliates in the past have worked with, or currently work with, many of the professionals named as Potential Parties in Interest on **Schedule 1**, and likely will continue in the future to work with professionals involved in these cases, on matters unrelated to these chapter 11 cases.  Lastly, McKinsey RTS US and its affiliates may have in the past contracted with, may currently contract with, and may in the future contract with certain service providers listed as Potential Parties in Interest for necessary business services.  Specifically, McKinsey RTS US and its affiliates have contracted with, since October 1, 2016, the following service providers (or affiliates thereof) named as Potential Parties in Interest or worked with them on other matters unrelated to the Debtors and these chapter 11 cases: Aon PLC and Iron Mountain. McKinsey RTS US does not have a specific agreement to refer or accept referrals from any professional in these chapter 11 cases.  Further, McKinsey RTS US does not receive a significant portion of its referrals from any professional retained in these chapter 11 cases. To the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein on matters upon which the Service Team is to be employed, and none are in connection with these chapter 11 cases.

81.     McKinsey RTS US has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

82.    Based upon the foregoing, I believe that McKinsey RTS US does not hold an adverse interest to the Debtors' estates, and that McKinsey RTS US is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

83.    McKinsey RTS US reserves the right to supplement this Declaration in the event it becomes aware of any relationship or other information that requires disclosure, pursuant to its ongoing internal conflict checking process.  McKinsey RTS US understands it has the obligation pursuant to Bankruptcy Rule 2014 to further supplement its declarations in the event it becomes aware of any relationship or other information that requires disclosure.

[*Remainder of page left intentionally blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 8, 2018
      New York, New York

*/s/ Mark W. Hojnacki*
Mark W. Hojnacki
Practice Leader
