# EXHIBIT 12

# EXHIBIT B

**Hojnacki Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re:                                                       :    **Chapter 11**
                                                             :
**SUNEDISON, INC.,** *et al.,*                               :    **Case No. 16-10992 (SMB)**
                                                             :
                        **Debtors.**[1]                      :    **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

**DECLARATION OF MARK W. HOJNACKI IN SUPPORT OF DEBTORS'
APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a), 328, 330, 331, AND
1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND
2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1
AUTHORIZING THE EMPLOYMENT AND RETENTION OF MCKINSEY
RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS RESTRUCTURING
ADVISOR FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

        I, Mark W.  Hojnacki, under penalty of perjury, declare as follows:

        1.        I am a Practice Leader in the professional services firm of McKinsey

Recovery & Transformation Services U.S., LLC ("McKinsey RTS US")[2] with an office at 55

East 52nd Street, New York, NY 10055.  I am duly authorized to make this Declaration on

behalf of McKinsey RTS in support of the application (the "Application") of SunEdison, Inc. and

certain of its affiliates, the debtors and debtors in possession in the above-captioned cases for

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2]      All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the Engagement Letter, as appropriate.

entry of an order authorizing the employment and retention of McKinsey RTS US as

restructuring advisor for the Debtors, *nunc pro tunc* to the Petition Date under the terms and

conditions set forth in the Engagement Letter, attached to the Application as Exhibit C.  I submit

this Declaration in accordance with section 327(a) of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2014(a), 2016 and 5002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Bankruptcy Rules").

2.      Except as otherwise noted, the statements set forth herein are based on my

employment position and diligence undertaken by me or by professionals working under my

direction and, if called and sworn as a witness, I would testify competently thereto.

## QUALIFICATIONS OF MCKINSEY RTS

3.      McKinsey RTS as used in this Declaration, includes (i) the directors,

officers and employees of McKinsey RTS US and (ii) certain consultants borrowed from

affiliates of McKinsey RTS US for the purpose of serving the Debtors in these Chapter 11 Cases.

McKinsey RTS is highly qualified to serve as the Debtors' restructuring advisor in these Chapter

11 Cases.

4.      McKinsey RTS is a global, full service restructuring advisory and crisis

management firm that draws on unmatched industry and functional expertise to support

companies through all aspects of recovery and transformation. McKinsey RTS' professionals are

deeply experienced in providing chapter 11 advisory services, which include contingency

planning, interim management, cash flow and liquidity assessment, forecasting and management,

analysis and/or development of business and strategic plans, development and implementation of

creditor and/or supplier strategies and development and implementation of operational and/or

-2-

financial improvement or restructuring plans. McKinsey RTS has been or is currently involved in numerous large and complex restructurings

5. In addition, McKinsey RTS utilizes the expertise of its affiliates' Electric Power and Natural Gas ("EPNG") and Sustainability and Resource Productivity ("SRP") practices, which serves incumbent utilities, independent power producers (IPPs), power project developers, and new entrants in the power generation, transmission, distribution, and natural gas distribution sectors. McKinsey RTS affiliates help these EPNG and SRP clients with issues related to strategy, organization, and front-line operations. McKinsey RTS' affiliates' conventional and renewables power market analysis tools provide rigorous strategic insights into forward looking market demand by segment by region, market structure and operating margins. The EPNG practice's operational performance improvement packages improve total installed renewables costs, and operating margins for major developers and IPPs across the globe. Moreover, the EPNG practice's procurement expertise ensures clients capture the lowest costs available on the market today and its capital productivity tools help clients deliver more value with less risk in major capital projects.

6. The EPNG practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds. The practice is backed by dedicated research and information experts who provide insight into industry structure and dynamics, and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational, organizational and strategic matters for the consulting teams. The SRP practice brings deep insights into the solar and wind technologies, markets, and regulatory/policy structures.

-3-

7.     McKinsey RTS also utilizes the expertise of its affiliate, the Advanced Electronics (AE) sub-sector, that supports Solar Original Equipment Manufacturers (OEMs), Wind OEMs and Semiconductor companies globally across the full value chain. From design to materials sourcing to production to distribution to partnership and M&A, McKinsey RTS understands the complex needs of solar and wind OEMs, and semiconductor players and their respective customers. Within polysilicon, we have worked with clients around its uses in solar, including R&D, the monetization of IP, scaling up of new manufacturing facilities and increasing the capital productivity of those manufacturing assets.  AE is part of the broader Advanced Industries group, which serves Aerospace & Defense and Automotive, Machinery and Assembly companies.

8.     The combination of McKinsey RTS and the EPNG, AE and SRP practices' experience offer an extensive knowledge and expert base which will benefit the Debtors in these Chapter 11 Cases.Given McKinsey RTS's substantial experience, prior to the filing of these Chapter 11 Cases, the Debtors retained McKinsey RTS and affiliates to serve as their advisor pursuant to an agreement, dated September 10, 2015 (the "Prepetition Agreement"), which engagement was principally for the purpose of providing services related to capital productivity and asset level cost optimization.  The scope of the services provided under the Prepetition Agreement later transitioned to supporting the Debtors with evaluating various strategic and restructuring alternatives, as well as assisting the Debtors' senior management to develop a 5-year strategic business plan (the "Business Plan").

9.     As a result of the prepetition work performed on behalf of the Debtors by McKinsey RTS and affiliates, McKinsey RTS is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, employee groups, cost

-4-

structures, and related matters. Since McKinsey RTS's initial engagement, McKinsey RTS
personnel have worked closely with the Debtors' management and other professionals on
numerous tasks related to the development of the Business Plan. In addition, McKinsey RTS
and affiliates supported management in preparing supplemental analyses related to the Business
Plan and a potential restructuring and helped management prepare for diligence discussions with
various financial advisors to certain of the Debtors' significant creditor constituencies.
McKinsey RTS and affiliates have also worked on behalf of the Debtors to develop a short-term
cash flow forecasting process and implement cash management strategies, tactics, and processes.
Moreover, as a result of the services provided under the Prepetition Agreement, McKinsey RTS
and affiliates have substantial knowledge of the Debtors' and non-Debtor subsidiaries' operating
assets. Consequently, the Debtors believe that McKinsey RTS has developed significant relevant
experience and expertise regarding the Debtors and the circumstances of these cases and has the
skills, qualifications, and expertise necessary to assist the Debtors with their restructuring efforts
in an efficient and cost-effective manner.

## TERMS AND SCOPE OF ENGAGEMENT

10.    The parties have entered into the Engagement Letter, the terms of which
will govern the Debtors' retention of McKinsey RTS during these Chapter 11 Cases, except as
explicitly set forth in any order granting the Application. As contemplated by Section 10 of the
Engagement Letter, McKinsey RTS requests approval of the Engagement Letter *nunc pro tunc* to
the Petition Date. The Engagement Letter was negotiated between the Debtors and McKinsey
RTS at arm's length and in good faith, and reflects the parties' mutual agreement as to the
substantial efforts that will be required during the course of this engagement.

11.    McKinsey RTS will perform a broad range of services during these

Chapter 11 Cases, including, without limitation, the following:[3]

a.    supporting the development of a strategic business plan with the Company's Chief Restructuring Officer and other key functional leaders that can be used to facilitate discussions with the Company's lenders and certain other stakeholders;

b.    assisting the Company's Chief Restructuring Officer and Chief Financial Officers with matters related to financial planning and analysis, as requested;

c.    assisting in developing a short-term cash flow forecasting process and implementing cash management strategies, tactics and processes and working with the Company's treasury department and other professionals and coordinating the activities of the representatives of other constituencies in the cash management process;

d.    assisting with the Company's financial and treasury functions as they respond to the analytical requests and other requests for information that are placed upon the Company;

e.    along with management, developing and establishing a weekly financial reporting package that provides additional transparency into the Company's near term cash position, including a forecast to actual variance analysis;

f.    providing strategic advice to support the overall restructuring process;

g.    in cooperation with the Company's officers, investment bankers and other engaged professionals and counsel, developing and preparing a chapter 11 plan of reorganization;

h.    assisting the Company in managing its bankruptcy process including managing outside stakeholders and their professionals;

i.    assisting with the evaluation of certain near term operational cost reduction and value enhancement opportunities (e.g., SG&A, fixed costs and procurement);

i.    planning and executing the Company's business support functions re organization and cost reduction goals;

---

[3]    Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

j.   working with the Company's counsel ("Counsel") on supporting data in order for Counsel to prepare first day motions, the petitions for relief and other documents and evidence needed to implement any Chapter 11 bankruptcy case filed by the Company;

k.   assisting the Company with developing a detailed communications plan;

l.   providing local support with development of various strategic and restructuring alternatives for international operations;

m.   providing testimony and other litigation support as requested by Counsel in connection with matters upon which McKinsey RTS is providing Services; and

n.   assisting with all such other restructuring matters as may be requested by Counsel and/or the Board that fall within McKinsey RTS's expertise and that are mutually agreed upon between the Parties.

12.   The services provided by McKinsey RTS are necessary to enable the Debtors to maximize the value of their estates. Specifically, McKinsey is instrumental in helping the Debtors' develop, evaluate, and execute strategic and restructuring alternatives. The Business Plan prepared with the assistance of McKinsey RTS will continue to be used to develop and analyze potential options for the Debtors' business and forms the foundation for the restructuring of the Debtors' capital structure.

13.   McKinsey RTS's services will complement, and not duplicate, the services rendered by any other professionals retained in these Chapter 11 Cases. The Debtors and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey RTS is being retained to perform. To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court for a supplement to the retention and any related modifications to the Engagement Letter and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

## FEE AND EXPENSE STRUCTURE

14.     Subject to Court approval, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

15.     Hourly Rates:  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS personnel at the following hourly billing rates:

| Title of Professional | Hourly Rate |
|---|---|
| Practice Leader: | $950-$1,075 |
| Senior Vice President: | $700-$875 |
| Vice President: | $600-$700 |
| Senior Associate: | $500-$575 |
| Associate: | $400-$475 |
| Analyst: | $250-$350 |
| Paraprofessional: | $225-$250 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS adjusts its rates generally.  Prior to applying any increases in its hourly rates as set forth herein, McKinsey RTS will file a supplemental affidavit with the Court and provide ten days' notice to the Debtors, the United States Trustee, any official committee appointed in these Chapter 11 Cases, counsel to the Tranche B Lenders (as defined in the debtor-in-possession credit agreement) and the steering committee of the second lien creditors, and counsel to the administrative agent under the debtor-in-possession financing facility, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

16.     At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter.

Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS

under the Engagement Letter.

17.    <u>Expenses</u>:  The Debtors will reimburse McKinsey RTS for all reasonable

and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but

not limited to, travel, consultants, case administrators, lodging, postage, and communications

charges following McKinsey RTS's standard expense reporting.  As McKinsey RTS clients

frequently request that McKinsey RTS restructuring advisors travel to their offices and work

there for extended periods of time, McKinsey RTS developed its own official reimbursement

policy with respect to its turnaround advisors' documentation of expenses (the "<u>RTS</u>

<u>Reimbursement Policy</u>").  More specifically, McKinsey RTS professionals serving the Debtors

will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged

on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for

lodging.  For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement

when exact amounts are submitted in lieu of a receipt.  McKinsey RTS intends to maintain

detailed documentation of its professionals' actual and necessary costs and expenses in

accordance with the RTS Reimbursement Policy.

18.    Consistent with the scope of services to be provided by McKinsey RTS

under the Engagement Letter, the Debtors and McKinsey RTS negotiated and agreed upon the

Fee and Expense Structure described above.  In addition, McKinsey RTS believes that the

foregoing Fee and Expense Structure is reasonable and market-based and consistent with

McKinsey RTS's normal and customary billing levels for comparably sized and complex cases,

both in and out-of-court, involving the services to be provided to the Debtors by McKinsey RTS.

To the best of my knowledge, the compensation arrangement reflected herein is consistent with,

and typical of, arrangements entered into by other turnaround advisory firms rendering similar services for clients such as the Debtors.

19.    Pursuant to the Engagement Letter, McKinsey RTS received $2,000,000.00 as a retainer (the "Retainer") in connection with its prepetition work.  McKinsey RTS has not drawn any amounts under the Retainer for services rendered and expenses incurred prior to the Petition Date.  A balance of $2,000,000.00 remains on the Retainer.

20.    In the ninety days leading up to the Petition Date, McKinsey RTS received payments totaling $8,250,965.00 (including the Retainer) in the aggregate for services rendered and expenses incurred on behalf of the Debtors.  McKinsey RTS received no other payments from the Debtors during the ninety days immediately preceding the Petition Date.  As of the Petition Date, the Debtors owed McKinsey RTS a total of $133,000.00 for fees and expenses incurred prior to the Petition Date.  Pursuant to the Application, the Debtors seek to modify the automatic stay to allow McKinsey RTS to apply the Retainer to the Prepetition Balance.  Any remaining amounts of the Retainer after reconciliation with its outstanding prepetition fees and expenses will be applied as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved in accordance with any other applicable procedures and orders of the Court awarding fees and expenses to McKinsey RTS.

**RECORD KEEPING**

21.    McKinsey RTS intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred and submit monthly fee statements with reasonable detail in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.

22.     Such applications will include time records setting forth, in reasonable

detail, a description of the services rendered by each professional and the amount of time spent

on each date by each such individual in rendering services on behalf of the Debtors.  McKinsey

RTS will maintain and file contemporaneous time records in one-tenth hour (.1) increments.

McKinsey RTS also will maintain detailed records of any actual and necessary costs and

expenses incurred in connection with the services as discussed above.

## INDEMNIFICATION PROVISIONS

23.     As part of the overall compensation payable to McKinsey RTS under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution provisions described in the Engagement Letter (the "Indemnification Provisions").

The Indemnification Provisions provide that the Debtors will indemnify, hold harmless, and

defend McKinsey RTS (including its past, present, and future affiliates) and each of their

directors, officers, managers, shareholders, partners, members, employees, agents,

representatives, advisors, and controlling persons (each, an "Indemnified Party," and collectively,

the "Indemnified Parties") against liabilities arising out of or in connection with the Engagement

Letter and/or McKinsey RTSs retention by the Debtors in these Chapter 11 Cases, except for any

liabilities judicially determined by a court of competent jurisdiction to have resulted from the

willful misconduct or gross negligence of any of McKinsey RTS or the other Indemnified Parties

in connection with McKinsey RTS's services provided under the Engagement Letter.  In addition,

if indemnification or reimbursement obligations are held to be unavailable by any court (other

than in circumstances where a court determines that liability is from the willful misconduct or

gross negligence of the Indemnified Party), the Engagement Letter allocates contribution

obligations based on the relative benefits and faults of McKinsey RTS and the Debtors.  The

Engagement Letter further sets forth that McKinsey RTS's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

## DISCLOSURE REGARDING MCKINSEY RTS'S DISINTERESTEDNESS

24.    In anticipation of its proposed retention, McKinsey RTS emailed: (a) members of McKinsey RTS and searched its global client database to determine the existence of any client service provided by McKinsey RTS US or affiliates within the last two years to parties-in-interest (the "Interested Parties") on the interested parties list attached hereto as Schedule 1 (the "Interested Parties List"),[4] (b) members of McKinsey RTS and partners at affiliates that provide consulting services to determine the existence of client services provided by employees within the last two years to any client that focused on a direct commercial relationship or transaction with the Debtors and (c) all members of McKinsey RTS to request information on any relationships with the Debtors, the United States Trustee and the Bankruptcy Court, as well as equity ownership in the Debtors.

25.    Based on the searches described above, to the best of my knowledge and information, after reasonable inquiry, except as set forth herein, McKinsey RTS (a) does not have any connection with the Debtors or their affiliates, their creditors, or any other Interested Parties in these cases, as identified on the Interested Parties List, other than as set forth herein; (b) is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code; (c) does not hold or represent any interest adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors; (d) is not and has not been a creditor, an equity security holder, or an insider of the Debtors, except that McKinsey RTS has previously rendered services to the

---

[4]    The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors' other professional advisors.

Debtors for which it has been compensated and is owed the Prepetition Balance as set forth in

paragraphs 17 and 18 herein; (e) is not and has not been, within two years before the Petition

Date, a director, officer or employee of the Debtors.

26.     Based upon the research described above, McKinsey RTS has ascertained

that McKinsey RTS currently serves or in the past two years has served, either through

McKinsey RTS or an affiliate thereof, the following parties on the Interested Parties List, but on

matters unrelated to the Debtors and their Chapter 11 Cases.  More specifically, to the best of my

knowledge and belief:

27.     **Debtors.**  Members of McKinsey RTS serving the Debtors served the

Debtors' predecessor company, Monsanto Electronic Material Company or MEMC since 2009.

One member of McKinsey RTS serving the Debtors has known the Debtor's CEO, Ahmad

Chatila, from past professional relationships prior to 2009. In addition, one member of McKinsey

RTS serving the Debtors knows James Williams, a board member of the Debtors, from both

previous and current professional relationships.

28.     **1st Lien Professionals.**  No member of McKinsey RTS currently serves,

or in the past two years has served or been employed by, any of the 1st Lien Professionals or

entities or individuals that are affiliates of such 1st Lien Professionals.

29.     **2nd Lien Lenders.** Members of McKinsey RTS currently serve, or in the

past two years have served, either through McKinsey RTS or an affiliate thereof, the following

2nd Lien Lenders or entities or individuals that are affiliates of such 2nd Lien Lenders in matters

unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such 2nd Lien Lenders' claims

against the Debtors:**.** Apollo; Apollo A-N Credit Fund (Delaware), L.P.; and Apollo Credit

Strategies Master Fund.

-13-

30.     **2nd Lien Professionals.** A member of McKinsey RTS was previously employed, in the past two years, by the following 2nd Lien Professional but on matters unrelated to the Debtors and the Debtors' Chapter 11 Cases: Houlihan Lokey.

31.     **Board Members (last 5 years)**. A member of McKinsey RTS serving the Debtors knows James Williams, a board member of the Debtors from both previous and current professional relationships.

32.     **Competitors.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Competitors or entities or individuals that are affiliates of such Competitors in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Competitors' claims against the Debtors: NextEra Energy Partners LP; NextEra Energy, Inc.; and one confidential client.  In addition, members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with Vivint Solar, a Competitor on the Interested Parties List, to discuss the potential to apply established Debtor operational processes to Vivint's solar products. Finally, at the request of the Debtors, certain of McKinsey RTS's affiliate's pre-petition work was paid by a special purpose vehicle of the Debtor's which included a pro rata payment by Dominion Resources, Inc., a Competitor on the Interested Parties List.

33.     **Convertible Note Holders.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Convertible Note Holders or entities or individuals that are affiliates of such Convertible Note Holders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Convertible Note Holders' claims against the Debtors: JPMorgan Chase & Co.; and Oaktree Capital Management.

34.     **Customers.** Members of McKinsey RTS currently serve, or in the past
two years have served, either through McKinsey RTS or an affiliate thereof, the following
Customers or entities or individuals that are affiliates of such Customers in matters unrelated to
the Debtors, the Debtors' Chapter 11 Cases, or such Customers' claims against the Debtors:
AT&T; J. P. Morgan; Tata Power Delhi Distribution Limited; Tata Communications Limited -
India; Tata America International Corp.; Xcel Mn; Xcel PSCo; and five confidential clients.

35.     **Depository Banks.** To the best of my knowledge, no member of
McKinsey RTS currently serves, or in the past two years has served or been employed by, any of
the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

36.     **Director Affiliates.** To the best of my knowledge, no member of
McKinsey RTS currently serves, or in the past two years has served or been employed by, any of
the Director Affiliates or entities or individuals that are affiliates of such Director Affiliates.

37.     **Executive Officers (last 5 years).** One member of McKinsey RTS
serving the Debtors has known the Debtor's CEO, Ahmad Chatila, from past professional
relationships prior to 2009.

38.     **Government Bodies.** To the best of my knowledge, no member of
McKinsey RTS currently serves, or in the past two years has served or been employed by, any of
the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

39.     **Institutional Shareholders > 1%.** To the best of my knowledge, no
member of McKinsey RTS currently serves, or in the past two years has served or been
employed by, any of the listed Institutional Shareholders or entities or individuals that are
affiliates of such Institutional Shareholders.

40.     **Insurance Providers.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Insurance Providers or entities or individuals that are affiliates of such Insurance Providers.

41.     **Labor Unions.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Labor Unions or entities or individuals that are affiliates of such Labor Unions.

42.     **Landlords.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Landlords or entities or individuals that are affiliates of such Landlords.

43.     **LC Issuers.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

44.     **Licensees.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Licensees or entities or individuals that are affiliates of such LC Issuers.

45.     **Lien Claimants.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

46.     **Litigants.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Litigants or entities or individuals that are affiliates of such Litigants in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Litigants' claims against the Debtors: E.I. du Pont de Nemours and Company; Riverstone/Carlyle Renewable Energy Grant GP; and ThyssenKrupp.

In addition, members of McKinsey RTS serving the Debtors provided pre-petition services to the

Debtors that included meeting with Vivint Solar, a Litigant on the Interested Parties List, to

discuss the potential to apply established Debtor operational processes to Vivint's solar products.

47.    **Official Committee of Unsecured Creditors.**    Members of McKinsey

RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with

Vivint Solar, a member of the Committee of Unsecured Creditors, to discuss the potential to

apply established Debtor operational processes to Vivint's solar products.

48.    **Ordinary Course Professionals.** To the best of my knowledge, no

member of McKinsey RTS currently serves, or in the past two years has served or been

employed by, any of the Ordinary Course Professionals or entities or individuals that are

affiliates of such Ordinary Course Professionals.

49.    **Registration Rights Parties.** To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Registration Rights Parties or entities or individuals that are affiliates of such Registration

Rights Parties.

50.    **Surety Providers.** To the best of my knowledge, no member of McKinsey

RTS currently serves, or in the past two years has served or been employed by, any of the Surety

Providers or entities or individuals that are affiliates of such Surety Providers.

51.    **Taxing Authorities.** To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Taxing Authorities or entities or individuals that are affiliates of such Taxing Authorities.

52.     **Transfer Agent.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Transfer Agent or entities or individuals that are affiliates of the Transfer Agent.

53.     **Utilities.** Members of McKinsey currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Utilities or entities or individuals that are affiliates of such Utilities in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Utilities' claims against the Debtors: AT&T, Inc.; and one confidential client.

54.     **Vendors.**  Members of McKinsey currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof,  the following Vendors or entities or individuals that are affiliates of such Vendors in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Vendors' claims against the Debtors: Xcel Energy; and one confidential client.

55.     In addition, McKinsey RTS and its affiliates serve clients across a broad range of industries, functions, and geographies, and, within industries, serve competitors and do so in a manner that protects the confidentiality of each client's information (including the confidentiality of the engagement itself).  Thus, McKinsey RTS and certain of its affiliates may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, contract counterparties in each case of the Debtors or otherwise Interested Parties named on the Interested Parties List; however, to the best of my current knowledge, subject to the disclosures set forth herein, such services do not focus on direct commercial relationships or transactions between such companies and the Debtors.

56.     McKinsey RTS and its affiliates do however, from time to time provide overall strategic analysis and advice to companies that operate in the solar and wind sector in which the Debtors operate, which analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as other companies.  Similarly, McKinsey RTS and its affiliates may have business associations with certain of the Debtors' creditors, professionals, service providers, or other Interested Parties, or interests adverse to such creditors, professionals, service providers, or Interested Parties herein, which associations to the best of my knowledge and information have no connection with these proceedings.

57.     As noted, McKinsey RTS and its affiliates have a long-standing policy of serving competing companies and do so in a manner that protects the confidentiality of each client's information.  In fact, McKinsey RTS's expertise which the Debtors desire to utilize for the purposes described herein derives from McKinsey RTS's and its affiliates' broad-based service in many different aspects of the industry and business sector in which the Debtors operate.  Because of its practice of serving clients with overlapping or competing interests, these affiliates do not have in place any centralized conflicts identification process, and only have a central database of clients and engagements performed for those clients, which is kept principally for record keeping purposes, but does not contain detailed descriptions of the client support.

58.     However, McKinsey RTS completed the following steps in order to make the representations contained herein:

a.      McKinsey RTS made inquiry to all partners at its affiliates world-wide that provide consulting services, about whether they currently provide consulting services to entities that focus on a direct commercial relationship or transaction with the Debtors.

b.      McKinsey RTS made inquiry to the partners at its affiliates world-wide that provide consulting services, who are responsible for those clients

-19-

appearing on the Interested Parties List, as to whether any services McKinsey RTS or its affiliates provided over the past two years or are currently providing to such Interested Parties focused or focuses on a direct commercial relationship or transaction with the Debtors.

c.      McKinsey RTS made inquiry of all members of McKinsey RTS, as to whether such member or a member of his/her immediate family is related to or employed by the Debtors, the United States Trustee and/or the Bankruptcy Court.

d.      Additionally, McKinsey RTS made inquiry of all members of McKinsey RTS as to whether such member or a member of his/her immediate family owns equity securities of the Debtors.

e.      Finally, McKinsey RTS requested that partners of McKinsey RTS and its affiliates world-wide that provide consulting services immediately inform the office of the General Counsel, for the duration of McKinsey RTS's retention by the Debtors, if proposed support for any of their clients would focus on a direct commercial relationship with the Debtors.

59.     Based upon the responses to these inquiries, to the best of my knowledge and belief, no members of McKinsey RTS are or have immediate family members that are related to or employed by (i) the Debtors, (ii) any judge or employee of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or (iii) any employee of the office of the United States Trustee (the "U.S. Trustee").  In addition, to the best of my knowledge and belief, no members of McKinsey RTS or their family members hold equity securities of the Debtors.[5]

60.     In addition, as part of its practice, McKinsey RTS and its affiliates provide support to clients on purchasing and supply management relating to direct and indirect materials and services, including in the solar and wind sectors.  Generally, the services consist of fact-

---

[5]     In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information as to whether any member of McKinsey RTS or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness  or otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors' estates.

based analysis to understand the client's costs and who other potential vendors are, support in developing requests for proposal, and analysis of and advice relating to the responses from vendors. McKinsey RTS and its affiliates do not directly contact or negotiate with vendors for their clients, except that McKinsey RTS may negotiate as agreed with its clients in certain circumstances. While we do not believe that such support is adverse to the interests of the Debtors, out of an abundance of caution, McKinsey RTS will independently evaluate the request of any member of McKinsey RTS to provide purchasing and supply management support relating to solar and wind sector to any company for whom any of the Debtors are either an incumbent provider or a potential vendor, prior to confirming such support.

61.     To the best of my knowledge and belief, J.P. Morgan, a client of McKinsey RTS US who is identified on the Interested Parties List accounts for more than one percent of McKinsey RTS US's gross annual revenue as of March 31, 2016.

62.     McKinsey RTS has adopted procedures to identify any potential support by McKinsey RTS that focuses on a direct commercial relationship or transaction with the Debtors, so that McKinsey RTS may either make disclosure of such potential engagement to the Bankruptcy Court or take other appropriate steps. If and when retained, McKinsey RTS will again communicate to all partners in McKinsey RTS and its affiliates to notify the office of McKinsey's general counsel of any such proposed client engagements.

63.     Finally, as part of its diverse practice, McKinsey RTS and its affiliates are involved in numerous matters and transactions involving many different professionals, including attorneys, accountants, and financial consultants, some of whom may represent the Debtors or claimants and Interested Parties in the Chapter 11 Cases. For instance, McKinsey RTS and its affiliates may have in the past been represented by, may currently be represented by, and may in

the future be represented by attorneys, law firms, or financial advisors who are involved in these proceedings, including law firms and financial advisors representing the Debtors. Further, McKinsey RTS and its affiliates may in the past have served, may currently serve, and may in the future serve professionals in these cases on matters unrelated to the Chapter 11 Cases. In addition, McKinsey RTS and its affiliates may in the past have worked with, may currently work with, and likely will in the future work with professionals in these cases on matters unrelated to these cases. Lastly, McKinsey RTS and its affiliates may have in the past contracted with, may currently contract with, and may in the future contract with certain service providers listed on the Interested Parties List for necessary business services. Based upon my current knowledge of the professionals involved, to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which McKinsey RTS is to be employed, and none are in connection with these cases.

64.    McKinsey RTS has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

65.    Based upon the foregoing, I believe that McKinsey RTS does not hold an adverse interest to the Debtors' estates, and that McKinsey RTS is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

66.    McKinsey RTS reserves the right to supplement this Declaration in the event it becomes aware of any relationship or other information that requires disclosure.

Case 15-10541-BLS    Doc 2467-12    Filed 04/24/19    Page 25 of 25

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  May 5, 2016
          New York, New York

                                                    /s/   Mark W. Hojnacki
                                                    Mark W. Hojnacki
                                                    Practice Leader