# EXHIBIT 20

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                   :

| | |
|---|---|
| **In re:** | **Chapter 11** |
| | |
| **SUNEDISON, INC.,** *et al.,* | **Case No. 16-10992 (SMB)** |
| | |
| **Debtors.** [1] | **(Jointly Administered)** |

---------------------------------------------------------------x

**AMENDED DECLARATION[2] OF MARK W. HOJNACKI IN SUPPORT OF DEBTORS'
APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a), 328, 330, 331, AND
1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND
2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1
AUTHORIZING THE EMPLOYMENT AND RETENTION OF MCKINSEY
RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS RESTRUCTURING
ADVISOR FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Mark W.  Hojnacki, under penalty of perjury, declare as follows:

1.       I am a Practice Leader in the professional services firm of McKinsey

Recovery & Transformation Services U.S., LLC ("McKinsey RTS US")[3] with an office at 55

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2]    A redline document showing cumulative changes made to the original declaration of Mark W. Hojnacki dated May 5, 2016 is attached as Exhibit A hereto.

East 52nd Street, New York, NY 10055.  I am duly authorized to make this Declaration on

behalf of McKinsey RTS in support of the application (the "Application") of SunEdison, Inc. and

certain of its affiliates, the debtors and debtors in possession in the above-captioned cases for

entry of an order authorizing the employment and retention of McKinsey RTS US as

restructuring advisor for the Debtors, *nunc pro tunc* to the Petition Date under the terms and

conditions set forth in the Engagement Letter, attached to the Application as Exhibit C.  I submit

this Declaration in accordance with section 327(a) of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2014(a), 2016 and 5002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Bankruptcy Rules").

> 2.     Except as otherwise noted, the statements set forth herein are based on my

employment position and diligence undertaken by me or by professionals working under my

direction and, if called and sworn as a witness, I would testify competently thereto.

## QUALIFICATIONS OF MCKINSEY RTS

> 3.     McKinsey RTS as used in this Declaration, includes (i) the directors,

officers and employees of McKinsey RTS US and (ii) certain consultants borrowed from

affiliates of McKinsey RTS US for the purpose of serving the Debtors in these Chapter 11 Cases.

McKinsey RTS is highly qualified to serve as the Debtors' restructuring advisor in these Chapter

11 Cases.

> 4.     Members of McKinsey RTS are employed by McKinsey Recovery &

---

[3]     All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the
Engagement Letter, as appropriate.

Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, McKinsey & Company Canada and McKinsey & Company Africa (Pty) Ltd.

5.      McKinsey Recovery & Transformation Services U.S., LLC is a direct wholly-owned subsidiary of McKinsey & Company, Inc. United States which, in turn, is a direct wholly-owned subsidiary of McKinsey Holdings, Inc. which, in turn, is a direct wholly-owned subsidiary of McKinsey & Company, Inc.

6.      McKinsey RTS is a global, full service restructuring advisory and crisis management firm that draws on unmatched industry and functional expertise to support companies through all aspects of recovery and transformation. McKinsey RTS's professionals are deeply experienced in providing chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and development and implementation of operational and/or financial improvement or restructuring plans. McKinsey RTS has been or is currently involved in numerous large and complex restructurings

7.       In addition, McKinsey RTS utilizes the expertise of its affiliates' Electric Power and Natural Gas ("EPNG") and Sustainability and Resource Productivity ("SRP") practices, which serves incumbent utilities, independent power producers (IPPs), power project developers, and new entrants in the power generation, transmission, distribution, and natural gas distribution sectors. McKinsey RTS affiliates help these EPNG and SRP clients with issues related to strategy, organization, and front-line operations. McKinsey RTS's affiliates' conventional and renewables power market analysis tools provide rigorous strategic insights into forward looking market demand by segment by region, market structure and operating margins.

3

The EPNG practice's operational performance improvement packages improve total installed renewables costs, and operating margins for major developers and IPPs across the globe. Moreover, the EPNG practice's procurement expertise ensures clients capture the lowest costs available on the market today and its capital productivity tools help clients deliver more value with less risk in major capital projects.

8.      The EPNG practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds. The practice is backed by dedicated research and information experts who provide insight into industry structure and dynamics, and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational, organizational and strategic matters for the consulting teams. The SRP practice brings deep insights into the solar and wind technologies, markets, and regulatory/policy structures.

9.      McKinsey RTS also utilizes the expertise of its affiliate, the Advanced Electronics (AE) sub-sector, that supports Solar Original Equipment Manufacturers (OEMs), Wind OEMs and Semiconductor companies globally across the full value chain. From design to materials sourcing to production to distribution to partnership and M&A, McKinsey RTS understands the complex needs of solar and wind OEMs, and semiconductor players and their respective customers. Within polysilicon, we have worked with clients around its uses in solar, including R&D, the monetization of IP, scaling up of new manufacturing facilities and increasing the capital productivity of those manufacturing assets.  AE is part of the broader Advanced Industries group, which serves Aerospace & Defense and Automotive, Machinery and Assembly companies.

4

10.     The combination of McKinsey RTS and the EPNG, AE and SRP practices'
experience offer an extensive knowledge and expert base which will benefit the Debtors in these
Chapter 11 Cases.  Given McKinsey RTS's substantial experience, prior to the filing of these
Chapter 11 Cases, the Debtors retained McKinsey RTS and affiliates to serve as their advisor
pursuant to an agreement, dated September 10, 2015 (the "Prepetition Agreement"), which
engagement was principally for the purpose of providing services related to capital productivity
and asset level cost optimization.  The scope of the services provided under the Prepetition
Agreement later transitioned to supporting the Debtors with evaluating various strategic and
restructuring alternatives, as well as assisting the Debtors' senior management to develop a 5-
year strategic business plan (the "Business Plan").

11.     As a result of the prepetition work performed on behalf of the Debtors by
McKinsey RTS and affiliates, McKinsey RTS is familiar with the Debtors and their businesses,
including the Debtors' financial affairs, debt structure, operations, employee groups, cost
structures, and related matters.  Since McKinsey RTS's initial engagement, McKinsey RTS
personnel have worked closely with the Debtors' management and other professionals on
numerous tasks related to the development of the Business Plan.  In addition, McKinsey RTS
and affiliates supported management in preparing supplemental analyses related to the Business
Plan and a potential restructuring and helped management prepare for diligence discussions with
various financial advisors to certain of the Debtors' significant creditor constituencies.
McKinsey RTS and affiliates have also worked on behalf of the Debtors to develop a short-term
cash flow forecasting process and implement cash management strategies, tactics, and processes.
Moreover, as a result of the services provided under the Prepetition Agreement, McKinsey RTS
and affiliates have substantial knowledge of the Debtors' and non-Debtor subsidiaries' operating

assets. Consequently, the Debtors believe that McKinsey RTS has developed significant relevant experience and expertise regarding the Debtors and the circumstances of these cases and has the skills, qualifications, and expertise necessary to assist the Debtors with their restructuring efforts in an efficient and cost-effective manner.

## TERMS AND SCOPE OF ENGAGEMENT

12.     The parties have entered into the Engagement Letter, the terms of which will govern the Debtors' retention of McKinsey RTS during these Chapter 11 Cases, except as explicitly set forth in any order granting the Application. As contemplated by Section 10 of the Engagement Letter, McKinsey RTS requests approval of the Engagement Letter *nunc pro tunc* to the Petition Date. The Engagement Letter was negotiated between the Debtors and McKinsey RTS at arm's length and in good faith, and reflects the parties' mutual agreement as to the substantial efforts that will be required during the course of this engagement.

13.     McKinsey RTS will perform a broad range of services during these Chapter 11 Cases, including, without limitation, the following:[4]

   a.     supporting the development of a strategic business plan with the Company's Chief Restructuring Officer and other key functional leaders that can be used to facilitate discussions with the Company's lenders and certain other stakeholders;

   b.     assisting the Company's Chief Restructuring Officer and Chief Financial Officers with matters related to financial planning and analysis, as requested;

   c.     assisting in developing a short-term cash flow forecasting process and implementing cash management strategies, tactics, and processes and working with the Company's treasury department and other professionals and coordinating the activities of the representatives of other constituencies in the cash management process;

---

[4]     Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the descriptions provided herein.

6

  d.  assisting with the Company's financial and treasury functions as they respond to the analytical requests and other requests for information that are placed upon the Company;

  e.  along with management, developing and establishing a weekly financial reporting package that provides additional transparency into the Company's near term cash position, including a forecast to actual variance analysis;

  f.  providing strategic advice to support the overall restructuring process;

  g.  in cooperation with the Company's officers, investment bankers and other engaged professionals and counsel, developing and preparing a chapter 11 plan of reorganization;

  h.  assisting the Company in managing its bankruptcy process including managing outside stakeholders and their professionals;

  i.  assisting with the evaluation of certain near term operational cost reduction and value enhancement opportunities (e.g., SG&A, fixed costs and procurement);

  i.  planning and executing the Company's business support functions re organization and cost reduction goals;

  j.  working with the Company's counsel ("Counsel") on supporting data in order for Counsel to prepare first day motions, the petitions for relief and other documents and evidence needed to implement any Chapter 11 bankruptcy case filed by the Company;

  k.  assisting the Company with developing a detailed communications plan;

  l.  providing local support with development of various strategic and restructuring alternatives for international operations;

  m.  providing testimony and other litigation support as requested by Counsel in connection with matters upon which McKinsey RTS is providing Services; and

  n.  assisting with all such other restructuring matters as may be requested by Counsel and/or the Board that fall within McKinsey RTS's expertise and that are mutually agreed upon between the Parties.

  14.  The services provided by McKinsey RTS are necessary to enable the Debtors to maximize the value of their estates. Specifically, McKinsey is instrumental in helping the Debtors' develop, evaluate, and execute strategic and restructuring alternatives. The

Business Plan prepared with the assistance of McKinsey RTS will continue to be used to develop and analyze potential options for the Debtors' business and forms the foundation for the restructuring of the Debtors' capital structure.

15.     McKinsey RTS's services will complement, and not duplicate, the services rendered by any other professionals retained in these Chapter 11 Cases. The Debtors and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services that McKinsey RTS is being retained to perform. To the extent that the Debtors request services other than those detailed in the Engagement Letter, the Debtors will seek further approval from the Court for a supplement to the retention and any related modifications to the Engagement Letter and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

**FEE AND EXPENSE STRUCTURE**

16.     Subject to Court approval, the Debtors will compensate McKinsey RTS in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

17.    <u>Hourly Rates</u>:  McKinsey RTS's fees are to be based on the hours worked
by McKinsey RTS personnel at the following hourly billing rates:

| Title of Professional | Hourly Rate |
|---|---|
| Practice Leader: | $950-$1,075 |
| Senior Vice President: | $700-$875 |
| Vice President: | $600-$700 |
| Senior Associate: | $500-$575 |
| Associate: | $400-$475 |
| Analyst: | $250-$350 |
| Paraprofessional: | $225-$250 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS
adjusts its rates generally.  Prior to applying any increases in its hourly rates as set forth herein,
McKinsey RTS will file a supplemental affidavit with the Court and provide ten days' notice to
the Debtors, the United States Trustee, any official committee appointed in these Chapter 11
Cases, counsel to the Tranche B Lenders (as defined in the debtor-in-possession credit agreement)
and the steering committee of the second lien creditors, and counsel to the administrative agent
under the debtor-in-possession financing facility, which supplemental affidavit shall explain the
basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy
Code and state whether the Debtors have consented to the rate increase.

18.    At this time, it is not possible to estimate the number of professional hours
that will be required to perform the services contemplated by the Engagement Letter.
Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS
under the Engagement Letter.

19.    <u>Expenses</u>:  The Debtors will reimburse McKinsey RTS for all reasonable
and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but

9

not limited to, travel, consultants, case administrators, lodging, postage, and communications
charges following McKinsey RTS's standard expense reporting.  As McKinsey RTS clients
frequently request that McKinsey RTS restructuring advisors travel to their offices and work
there for extended periods of time, McKinsey RTS developed its own official reimbursement
policy with respect to its turnaround advisors' documentation of expenses (the "RTS
Reimbursement Policy").  More specifically, McKinsey RTS professionals serving the Debtors
will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged
on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for
lodging.  For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement
when exact amounts are submitted in lieu of a receipt.  McKinsey RTS intends to maintain
detailed documentation of its professionals' actual and necessary costs and expenses in
accordance with the RTS Reimbursement Policy.

   20. Consistent with the scope of services to be provided by McKinsey RTS
under the Engagement Letter, the Debtors and McKinsey RTS negotiated and agreed upon the
Fee and Expense Structure described above.  In addition, McKinsey RTS believes that the
foregoing Fee and Expense Structure is reasonable and market-based and consistent with
McKinsey RTS's normal and customary billing levels for comparably sized and complex cases,
both in and out-of-court, involving the services to be provided to the Debtors by McKinsey RTS.
To the best of my knowledge, the compensation arrangement reflected herein is consistent with,
and typical of, arrangements entered into by other turnaround advisory firms rendering similar
services for clients such as the Debtors.

   21. Pursuant to the Engagement Letter, McKinsey RTS received
$2,000,000.00 as a retainer (the "Retainer") in connection with its prepetition work.  McKinsey

RTS has not drawn any amounts under the Retainer for services rendered and expenses incurred

prior to the Petition Date.  A balance of $2,000,000.00 remains on the Retainer.  In the ninety

days leading up to the Petition Date, McKinsey RTS received payments totaling $8,250,965.00

(including the Retainer) in the aggregate for services rendered and expenses incurred on behalf

of the Debtors as follows:

| Invoice Date | Payment Date | Billing Period (ending on the last day of the calendar week, as applicable) | Payment Amount |
|---|---|---|---|
| 2/11/16 | 2/16/16 | 2/13/16 - 2/19/16 | $664,965.00 |
| 2/18/16 | 2/19/16 | 2/20/16 - 2/26/16 | 665,000.00 |
| 2/26/16 | 2/26/16 | 2/27/16 – 3/14/16 | 665,000.00 |
| 3/02/16 | 3/30/16 | 3/05/16 – 3/11/16 | 665,000.00 |
| 3/10/16 | 3/11/16 | 3/12/16 – 3/18/16 | 665,000.00 |
| 3/17/16 | 3/30/16 | 3/19/16 – 3/25/16 | 665,000.00 |
| 3/23/16 | 3/30/16 | 3/26/16 – 4/01/16 | 665,000.00 |
| 3/31/16 | 4/05/16 | 4/02/16 – 4/08/16 | 665,000.00 |
| 4/08/16 | 4/08/16 | Retainer | 2,000,000.00 |
| 4/13/16 | 4/15/16 | 4/09/16 – 4/15/16 | 665,000.00 |
| 4/19/16 | 4/19/16 | 4/16/16 – 4/19/16 | 266,000.00 |
| 4/20/16 | unpaid | 4/20/16 | 133,000.00 |
| TOTAL WITHOUT RETAINER | | | $6,250,965.00 |
| GRAND TOTAL | | | $8,250,965.00[5] |

McKinsey RTS received no other payments from the Debtors during the ninety days immediately

preceding the Petition Date.  As of the Petition Date, the Debtors owed McKinsey RTS a total of

$133,000.00 for fees and expenses incurred prior to the Petition Date (the "Prepetition Balance").

Pursuant to the Application, the Debtors seek to modify the automatic stay to allow McKinsey

RTS to apply the Retainer to the Prepetition Balance.  Any remaining amounts of the Retainer

after reconciliation with its outstanding prepetition fees and expenses will be applied as a credit

---

[5]        The grand total does not include the Prepetition Balance.

toward postpetition fees and expenses, after such postpetition fees and expenses are approved in

accordance with any other applicable procedures and orders of the Court awarding fees and

expenses to McKinsey RTS.

22.    In addition to the prepetition amounts owed to McKinsey RTS, total

amounts due to McKinsey and Company, Inc. United States ("McKinsey U.S.") for its

prepetition services in 2016 totaled $4,000,000.00[6].  At various times during the ninety days

prior to the commencement of these Chapter 11 Cases, McKinsey U.S received fees from the

Debtors but ultimately refunded such payments in full, resulting in  "net zero" payments from the

Debtors in the ninety days leading up to the Petition Date.  The refunds to the Debtors were

generated because (i) ultimately certain non-Debtor affiliates paid McKinsey U.S.'s fees and (ii)

the Debtors made an overpayment.  With respect to (i), the Debtors determined that, based on the

scope of services being provided by McKinsey U.S., certain of its non-debtor project affiliates

(the "Non-Debtor Project Affiliates")  were receiving the benefit of McKinsey U.S.'s prepetition

services and thus were the more appropriate payors of McKinsey U.S.'s fees relating to those

services. While the Debtors remained responsible contractually for McKinsey U.S.'s fees and

made certain payments as set forth below, McKinsey U.S. ultimately returned all of the

payments made by the Debtors after receiving payments from the Non-Debtor Project Affiliates

(as described in paragraph 23 below) covering such amounts.  With respect to (ii), McKinsey

U.S. also refunded an overpayment made by the Debtors during the ninety day prepetition period

in the amount of $1,627,965.00.

---

[6]    McKinsey U.S. subsequently provided a discount of $400,000.00 on the prepetition services, and then
ultimately wrote off an additional $36,832.22, leaving a residual amount due of $3,563,167.78

23.     At the direction of the Debtors, during the ninety days prior to the
commencement of these Chapter 11 Cases, the Non-Debtor Project Affiliates paid McKinsey
U.S. a total of $3,563,167.78 covering the full amount of the fees owed for prepetition services
that the Debtors determined were provided for the benefit of such affiliates.  Such payments were
made according to the following schedule:

| Invoice Date | Payment Date | Payment Source | Payment Amount |
|---|---|---|---|
| 1/25/2016 | 2/03/16 | Granite Mountain Holdings | $229,871.84 |
| 1/25/2016 | 2/03/16 | Iron Springs Holdings | 141,025.67 |
| 2/10/2016 | 3/04/16 | Four Brothers Solar, LLC | 1,991,937.80 |
| 2/10/2016 | 3/04/16 | Granite Mountain Holdings | 726,061.57 |
| 2/10/2016 | 3/04/16 | Iron Springs Holdings | 474,270.90 |
| TOTAL | | | $3,563,167.78 |

24.     During the ninety days prior to the commencement of these Chapter 11
Cases, the Debtors initially paid McKinsey U.S. a total of $4,857,032.49 in connection with
prepetition services, consisting of (i) $3,229,067.49 in partial payments toward the outstanding
$3,563,167.78 in fees for 2016 services that were ultimately refunded after they were covered by
the payments made by the Non-Debtor Project Affiliates as outlined in paragraph 23 above and
(ii) $1,627,965.00 in payment for 2015 prepetition services provided by McKinsey U.S. that
were refunded because this amount was mistakenly paid twice by the Debtors.  The schedule of
such payments by the Debtors and the subsequent refunds of those amounts are outlined below:

| Invoice Date | Payment Date from Debtors | Payment Amount from Debtors | Refund Date to Debtors | Refund Amount to Debtors | Reason for Refund to Debtors |
|---|---|---|---|---|---|
| 12/4/2015 | 1/22/16 | $1,627,965.00 | 3/08/16 | $1,627,965.00 | Duplicate |
| 2/11/2016 | 2/12/16 | 1,999,965.00 | 3/09/16 | 1,999,965.00 | Project payments from Four Brothers Solar, |

13

| | | | | | LLC; Iron Springs Holdings; and Granite Mountain Holdings |
|---|---|---|---|---|---|
| N/A – partial advance payment of outstanding non-Debtor project affiliate invoices | 2/29/16 | 564,000.00 | 3/10/16 | 564,000 | Project payments from Four Brothers Solar, LLC; Iron Springs Holdings; and Granite Mountain Holdings |
| N/A – partial advance payment of outstanding non-Debtor project affiliate invoices | 3/01/16 | 665,102.49 | 3/11/16 | 665,102.49 | Project payments from Four Brothers Solar, LLC; Iron Springs Holdings; and Granite Mountain Holdings |
| **TOTAL** | | **$4,857,032.49.00** | | **$4,857,032.49.00** | |

**RECORD KEEPING**

25. McKinsey RTS intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred and submit monthly fee statements with reasonable detail in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.

26. Such applications will include time records setting forth, in reasonable detail, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. McKinsey RTS will maintain and file contemporaneous time records in one-tenth hour (.1) increments.

14

Case 15-10541-BLS   Doc 2467-20   Filed 04/24/19   Page 16 of 66

McKinsey RTS also will maintain detailed records of any actual and necessary costs and
expenses incurred in connection with the services as discussed above.

## INDEMNIFICATION PROVISIONS

27.     As part of the overall compensation payable to McKinsey RTS under the
terms of the Engagement Letter, the Debtors have agreed to certain indemnification and
contribution provisions described in the Engagement Letter (the "Indemnification Provisions").
The Indemnification Provisions provide that the Debtors will indemnify, hold harmless, and
defend McKinsey RTS (including its past, present, and future affiliates) and each of their
directors, officers, managers, shareholders, partners, members, employees, agents,
representatives, advisors, and controlling persons (each, an "Indemnified Party," and collectively,
the "Indemnified Parties") against liabilities arising out of or in connection with the Engagement
Letter and/or McKinsey RTSs retention by the Debtors in these Chapter 11 Cases, except for any
liabilities judicially determined by a court of competent jurisdiction to have resulted from the
willful misconduct or gross negligence of any of McKinsey RTS or the other Indemnified Parties
in connection with McKinsey RTS's services provided under the Engagement Letter.  In addition,
if indemnification or reimbursement obligations are held to be unavailable by any court (other
than in circumstances where a court determines that liability is from the willful misconduct or
gross negligence of the Indemnified Party), the Engagement Letter allocates contribution
obligations based on the relative benefits and faults of McKinsey RTS and the Debtors.  The
Engagement Letter further sets forth that McKinsey RTS's aggregate liability shall be no more
than the amount of its fees actually received under the Engagement Letter.

## DISCLOSURE REGARDING MCKINSEY RTS'S DISINTERESTEDNESS

28.     In anticipation of its proposed retention, McKinsey RTS emailed:
(a) members of McKinsey RTS , to determine the existence of any client service provided by

15

McKinsey RTS US or affiliates within the last two years to parties-in-interest (the "Interested

Parties") on the interested parties list attached hereto as Schedule 1 (the "Interested Parties

List"),[7] (b) members of McKinsey RTS and partners at affiliates that provide consulting services

to determine the existence of client services provided by employees within the last two years to

any client that focused on a direct commercial relationship or transaction with the Debtors and (c)

all members of McKinsey RTS to request information on any relationships with the Debtors, the

United States Trustee and the Bankruptcy Court, as well as equity ownership in the Debtors.  In

addition, McKinsey searched its global client database, which covers clients of all its consulting

affiliates, to determine the existence of any client service provided by McKinsey RTS US or

affiliates within the last two years to Interested Parties.   Based on its findings from this database

search, McKinsey RTS made inquiry to the partners at its affiliates world-wide that provide

consulting services, who are responsible for those clients appearing on the Interested Parties List,

as to whether any services McKinsey RTS or its affiliates provided over the past two years or are

currently providing to such Interested Parties focused or focuses on a direct commercial

relationship or transaction with the Debtors.

29.     Based upon responses to the above inquiries, McKinsey RTS included

disclosures in this Declaration to the extent that (i) any member of McKinsey RTS currently

provides consulting services, or in the past two years has provided consulting services, to any of

the Interested Parties or (ii) any partner at its affiliates confirmed that consulting services have

been provided by such affiliates, either currently or in the past two years, to Interested Parties on

matters focused on a direct commercial relationship or transaction with the Debtors.  In respect

---

[7]     The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors'
other professional advisors.

of (i) above, all consulting services provided by McKinsey RTS to members of the Interested

Parties List are disclosed in paragraphs 29 through 58 below.  In respect of (ii) above, no partner

of the affiliates of McKinsey RTS has provided in the past two years, or currently provides,

services to Interested Parties on matters focused on a direct commercial relationship or

transaction with the Debtors.

> 30.    Based on the searches described above, to the best of my knowledge and

information, after reasonable inquiry, except as set forth herein, McKinsey RTS (a) does not

have any connection with the Debtors or their affiliates, their creditors, or any other Interested

Parties in these cases, as identified on the Interested Parties List, other than as set forth herein; (b)

is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code;

(c) does not hold or represent any interest adverse to the Debtors' estates or any class of creditors

or equity security holders, by reason of any direct or indirect relationship to, connection with, or

interest in the Debtors; (d) is not and has not been a creditor, an equity security holder, or an

insider of the Debtors, except that McKinsey RTS has previously rendered services to the

Debtors for which it has been compensated and is owed the Prepetition Balance as set forth in

paragraphs 17 and 18 herein; (e) is not and has not been, within two years before the Petition

Date, a director, officer or employee of the Debtors.

> 31.    Based upon the research described above, McKinsey RTS has ascertained

that McKinsey RTS currently serves or in the past two years has served, either through

McKinsey RTS or an affiliate thereof, the following parties on the Interested Parties List, but on

matters unrelated to the Debtors and their Chapter 11 Cases. McKinsey RTS has reviewed its

confidentiality obligations to each of its clients identified as Interested Parties and, to the extent

necessary, instructed the relationship partner for each affected client to request the consent of

such client to disclose its name in connection with this Declaration.  As a standard policy, every McKinsey RTS partner is required to send a memorandum of confirmation to a client prior to beginning any work on an engagement for such client, in which McKinsey RTS represents to the client that (i) it will "not make public client names, client materials, or reports prepared for clients without their permission" and (ii) to the extent it becomes involved in a legal action, McKinsey RTS will, "where permitted by law, advise you promptly [of such legal action] and work with you and your legal counsel to respond appropriately" to any disclosures regarding such client that may be prompted by the proceedings of such legal action. To the extent applicable, those clients that did not provide the consent described in this paragraph would be identified herein as "confidential clients", however, there are no confidential clients in this case. More specifically, to the best of my knowledge and belief:

32.    **Debtors.**  Members of McKinsey RTS serving the Debtors served the Debtors' predecessor company, Monsanto Electronic Material Company or MEMC since 2009. One member of McKinsey RTS serving the Debtors has known the Debtor's CEO, Ahmad Chatila, from past professional relationships prior to 2009. In addition, one member of McKinsey RTS serving the Debtors knows James Williams, a board member of the Debtors, from both previous and current professional relationships.

33.    **1st Lien Lenders**.  Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following 1st Lien Lenders or entities or individuals that are affiliates of such 1st Lien Lenders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such 1st Lien Lenders' claims against the Debtors: Apollo Credit.

34.    **1st Lien Professionals.**  No member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the 1st Lien Professionals or entities or individuals that are affiliates of such 1st Lien Professionals.

35.    **2nd Lien Lenders.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following 2nd Lien Lenders or entities or individuals that are affiliates of such 2nd Lien Lenders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such 2nd Lien Lenders' claims against the Debtors: Apollo; Apollo A-N Credit Fund (Delaware), L.P.; and Apollo Credit Strategies Master Fund.

36.    **2nd Lien Professionals**. A member of McKinsey RTS was previously employed, in the past two years, by the following 2nd Lien Professional but on matters unrelated to the Debtors and the Debtors' Chapter 11 Cases: Houlihan Lokey.

37.    **Board Members (last 5 years)**. A member of McKinsey RTS serving the Debtors knows James Williams, a board member of the Debtors from both previous and current professional relationships.

38.    **Competitors.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Competitors or entities or individuals that are affiliates of such Competitors in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Competitors' claims against the Debtors: Enel S.p.A.; NextEra Energy Partners LP; NextEra Energy, Inc.; NRG Energy, Inc; and NRG Yield, Inc.  In addition, members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with Vivint Solar, a Competitor on the Interested Parties List, to discuss the potential to apply established Debtor operational processes to Vivint's

solar products.  Finally, at the request of the Debtors, certain of McKinsey RTS's affiliate's pre-

petition work was paid by special purpose vehicles owned in part by the Debtors and in part by

Dominion Resources, Inc., a Competitor on the Interested Parties List.

        39.    **Convertible Note Holders.** Members of McKinsey RTS currently serve,

or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the

following Convertible Note Holders or entities or individuals that are affiliates of such

Convertible Note Holders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or

such Convertible Note Holders' claims against the Debtors: JPMorgan Chase & Co.; and Oaktree

Capital Management.

        40.    **Customers.** Members of McKinsey RTS currently serve, or in the past

two years have served, either through McKinsey RTS or an affiliate thereof, the following

Customers or entities or individuals that are affiliates of such Customers in matters unrelated to

the Debtors, the Debtors' Chapter 11 Cases, or such Customers' claims against the Debtors:

Anheuser-Busch Companies, Inc.; AT&T; Dignity Health; J. P. Morgan; Pacific Gas & Electric;

Tata Power Delhi Distribution Limited; Tata Communications Limited - India; Tata America

International Corp.; Xcel Mn; Xcel PSCo; Whirlpool of India Ltd; and Southern California

Edison.

        41.    **Debtors Professionals**. To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Debtors Professionals or entities or individuals that are affiliates of such Debtors

Professionals.

42.     **Depository Banks.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

43.     **Director Affiliates.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Director Affiliates or entities or individuals that are affiliates of such Director Affiliates.

44.     **Executive Officers (last 5 years).** One member of McKinsey RTS serving the Debtors has known the Debtor's CEO, Ahmad Chatila, from past professional relationships prior to 2009.

45.     **Government Bodies.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

46.     **Institutional Shareholders > 1%.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the listed Institutional Shareholders or entities or individuals that are affiliates of such Institutional Shareholders.

47.     **Insurance Providers.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Insurance Providers or entities or individuals that are affiliates of such Insurance Providers.

48.     **Labor Unions.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Labor Unions or entities or individuals that are affiliates of such Labor Unions.

21

49.     **Landlords.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Landlords or entities or individuals that are affiliates of such Landlords.

50.     **LC Issuers.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

51.     **Licensees.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Licensees or entities or individuals that are affiliates of such LC Issuers.

52.     **Lien Claimants.**  To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

53.     **Litigants.**  Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Litigants or entities or individuals that are affiliates of such Litigants in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Litigants' claims against the Debtors: E.I. du Pont de Nemours and Company; Riverstone/Carlyle Renewable Energy Grant GP; and ThyssenKrupp. In addition, members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with Vivint Solar, a Litigant on the Interested Parties List, to discuss the potential to apply established Debtor operational processes to Vivint's solar products.

54.     **Official Committee of Unsecured Creditors.**  Members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with

Vivint Solar, a member of the Committee of Unsecured Creditors, to discuss the potential to apply established Debtor operational processes to Vivint's solar products.

55.     **Ordinary Course Professionals.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Ordinary Course Professionals or entities or individuals that are affiliates of such Ordinary Course Professionals.

56.     **Registration Rights Parties.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Registration Rights Parties or entities or individuals that are affiliates of such Registration Rights Parties.

57.     **Surety Providers.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Surety Providers or entities or individuals that are affiliates of such Surety Providers.

58.     **Taxing Authorities.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Taxing Authorities or entities or individuals that are affiliates of such Taxing Authorities.

59.     **Transfer Agent.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Transfer Agent or entities or individuals that are affiliates of the Transfer Agent.

60.     **Utilities.** Members of McKinsey currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Utilities or entities or individuals that are affiliates of such Utilities in matters unrelated to the Debtors, the

Debtors' Chapter 11 Cases, or such Utilities' claims against the Debtors: AT&T, Inc.; and

Southern California Edison.

61.　　**Vendors.**　Members of McKinsey currently serve, or in the past two years

have served, either through McKinsey RTS or an affiliate thereof, the following Vendors or

entities or individuals that are affiliates of such Vendors in matters unrelated to the Debtors, the

Debtors' Chapter 11 Cases, or such Vendors' claims against the Debtors: Xcel Energy; and

Southern California Edison.

62.　　In addition, affiliates of McKinsey RTS serve clients across a broad range

of industries, functions, and geographies, and, within industries, serve competitors and do so in a

manner that protects the confidentiality of each client's information (including the confidentiality

of the engagement itself). Thus, certain affiliates of McKinsey RTS may have in the past

provided services for, may presently be providing services for, and may in the future provide

services for entities that are determined to be creditors, lenders, shareholders, insurers, customers,

competitors, vendors, contract counterparties in each case of the Debtors or otherwise Interested

Parties named on the Interested Parties List; however, to the best of my current knowledge, such

services are unrelated to the Debtors and those Chapter 11 cases, and specifically do not focus on

direct commercial relationships or transactions between such companies and the Debtors. If any

work for other clients of affiliates of McKinsey RTS specifically focused on or affected the

Debtors, it would have been explicitly stated in this Declaration. Further, if McKinsey RTS

becomes aware of any work for other clients of affiliates of McKinsey RTS that specifically

focuses on or affects the Debtors after the date of this Declaration, it will update the Court in a

supplement to this Declaration.

63.     McKinsey RTS and its affiliates do however, from time to time provide

overall strategic analysis and advice to companies that operate in the solar and wind sector in

which the Debtors operate, which analysis and advice could include review and comment on

publicly available information and strategic considerations with respect to the Debtors, as well as

other companies.  McKinsey RTS and affiliates' service to other companies in the industry in

which the Debtors operate may focus on the macro landscape of the industry but should have no

direct effect on the Debtors given the nature of the market.  If any work for other clients of

McKinsey RTS or its affiliates specifically focused on or affected the Debtors, it would have

been explicitly stated in this Declaration. Further, if McKinsey RTS becomes aware of any work

for other clients that specifically focuses on or affects the Debtors after the date of this

Declaration, it will update the Court in a supplement to this Declaration.

64.     As noted, McKinsey RTS and its affiliates have a long-standing policy of

serving competing companies and do so in a manner that protects the confidentiality of each

client's information.  In fact, McKinsey RTS's expertise which the Debtors desire to utilize for

the purposes described herein derives from McKinsey RTS's and its affiliates' broad-based

service in many different aspects of the industry and business sector in which the Debtors

operate.  Because of its practice of serving clients with overlapping or competing interests, these

affiliates do not have in place any centralized conflicts identification process, and only have a

central database of clients and engagements performed for those clients, which is kept principally

for record keeping purposes, but does not contain detailed descriptions of the client support.

65.     McKinsey RTS completed the following steps in order to make the

representations contained herein:

  a.  McKinsey RTS made inquiry of all of its members, including consultants
     borrowed from affiliates for the purpose of serving the Debtors in these

25

Chapter 11 Cases, as to whether they provided over the past two years or
are currently providing consulting services to any of the entities named on
the Interested Parties List.

b.  McKinsey RTS made inquiry to all partners at its affiliates world-wide
that provide consulting services, about whether they currently provide
consulting services to entities that focus on a direct commercial
relationship or transaction with the Debtors.

c.  McKinsey RTS made inquiry to the partners at its affiliates world-wide
that provide consulting services, who are responsible for those clients
appearing on the Interested Parties List, as to whether any services
McKinsey RTS or its affiliates provided over the past two years or are
currently providing to such Interested Parties focused on a
direct commercial relationship or transaction with the Debtors.

d.  McKinsey RTS made inquiry of all employees at all of its affiliates
worldwide, as to whether such member or a member of his/her immediate
family is related to or employed by the Debtors, the United States Trustee
and/or the Bankruptcy Court.

e.  Additionally, McKinsey RTS made inquiry of all employees at all of its
affiliates worldwide, as to whether such member or a member of his/her
immediate family owns equity securities of the Debtors.

f.  Finally, McKinsey RTS requested that partners of McKinsey RTS and its
affiliates world-wide that provide consulting services immediately inform
the office of the General Counsel, for the duration of McKinsey RTS's
retention by the Debtors, if proposed support for any of their clients would
focus on a direct commercial relationship with the Debtors.

Based upon responses to the above inquiries, McKinsey RTS included disclosures in this

Declaration to the extent that (i) any member of McKinsey RTS currently provides consulting

services, or in the past two years has provided consulting service, to any of the Interested Parties

or (ii) any partner at its affiliates confirmed that consulting services have been provided by such

affiliates, either currently or in the past two years, to Interested Parties on matters focused on a

direct commercial relationship or transaction with the Debtors.  In respect of (i) above, all

consulting services provided by McKinsey RTS to members of the Interested Parties List are

disclosed in paragraphs 29 through 58 below.  In respect of (ii) above, no partner of the affiliates

26

of McKinsey RTS has provided in the past two years, or currently provides, services to
Interested Parties on matters focused on a direct commercial relationship or transaction with the
Debtors.

66.     Based upon the responses to these inquires, to the best of my knowledge
and belief, (i) no members of McKinsey RTS or its affiliates are or have immediate family
members that are related to or employed by (A) the Debtors, (B) any judge or employee of the
United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")
or (C) any employee of the office of the United States Trustee (the "U.S. Trustee") and (ii) one
employee of an affiliate of McKinsey RTS, who is not serving the Debtors in these Chapter 11
Cases, holds 2,000 shares of the equity securities of SunEdison, Inc.[8]

67.     Two of McKinsey RTS's affiliates, MIO Partners, Inc. and MIO Partners
(EU) (together "MIO"), do not provide consulting services and were not included in the above
inquiries. MIO serves McKinsey's pension plans, partners, and former partners by offering a
portfolio of investment products with a variety of structures, risk levels, and currencies. The
team primarily uses third-party fund managers who make investment decisions independently of
MIO. MIO investors make investments with MIO essentially on a "blind trust" basis, with such
MIO investors having no access to information about the underlying holdings in the third-party
funds. MIO is managed independently, and all its investment activities are separate from
McKinsey's consulting operations. As such, MIO does not make any investment decisions based

---

[8]     In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information
as to whether any member of McKinsey RTS or member of his/her immediate family: (a) indirectly owns,
through a public mutual fund or through partnerships in which certain employees have invested but as to
which such professionals have no control over or knowledge of investment decisions, securities of the
Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest. If any
such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness or
otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors'
estates.

on the use of McKinsey RTS and affiliates' client information. Certain members of MIO's board

of directors are also employees of McKinsey RTS and its affiliates, including one director who is

also a director and officer of McKinsey RTS.  MIO's board of directors (through the investment

committee of that board which generally meets on a quarterly basis) is primarily responsible for

overseeing, reviewing and approving MIO's overall allocation amongst the various MIO

managed investment products.

        68.      In addition, as part of its practice, McKinsey RTS and its affiliates provide

support to clients on purchasing and supply management relating to direct and indirect materials

and services, including in the solar and wind sectors.  Generally, the services consist of fact-

based analysis to understand the client's costs and who other potential vendors are, support in

developing requests for proposal, and analysis of and advice relating to the responses from

vendors.  McKinsey RTS and its affiliates do not directly contact or negotiate with vendors for

their clients, except that McKinsey RTS may negotiate as agreed with its clients in certain

circumstances.  While we do not believe that such support is adverse to the interests of the

Debtors, out of an abundance of caution, McKinsey RTS will independently evaluate the request

of any member of McKinsey RTS to provide purchasing and supply management support

relating to solar and wind sector to any company for whom any of the Debtors are either an

incumbent provider or a potential vendor, prior to confirming such support. If, based on

McKinsey RTS's knowledge and belief, any purchasing and supply management work for other

clients of McKinsey RTS or its affiliates specifically focused on or was adverse to the interests

of the Debtors, it would have been explicitly stated in this Declaration. Further, if McKinsey

RTS becomes aware of any such work for other clients that specifically focused on or is adverse

28

to the interests of the Debtors after the date of this Declaration, it will update the Court in a

supplement to this Declaration.

69.     To the best of my knowledge and belief, J.P. Morgan, a client of

McKinsey RTS US who is identified on the Interested Parties List accounts for more than one

percent, but less than two percent, of McKinsey RTS US's gross annual revenue as of March 31,

2016.  McKinsey RTS US's support to J.P. Morgan is on matters unrelated to the solar or energy

industry and is unrelated to the Debtors and their Chapter 11 Cases.

70.     McKinsey RTS has adopted procedures to identify any potential support

by McKinsey RTS that focuses on a direct commercial relationship or transaction with the

Debtors, so that McKinsey RTS may either make disclosure of such potential engagement to the

Bankruptcy Court or take other appropriate steps.  If and when retained, McKinsey RTS will

again communicate to all partners in McKinsey RTS and its affiliates directing them to notify the

office of McKinsey's general counsel of any such proposed client engagements. In addition,

McKinsey RTS will again communicate with all of its Members directing them to notify the

office of McKinsey's general counsel of proposed client engagements involving Interested

Parties.

71.     Finally, as part of its diverse practice, McKinsey RTS and its affiliates are

involved in numerous matters and transactions involving many different professionals, including

virtually all of the professionals named on the Interested Parties List in these Chapter 11 Cases.

Further, McKinsey RTS and its affiliates may have in the past been represented by, may

currently be represented by, and may in the future be represented by attorneys, law firms, or

financial advisors who are involved in these proceedings, including law firms and financial

advisors representing the Debtors.  Specifically, McKinsey RTS and its affiliates have been

represented, in the past two years, by the following professionals (or affiliates thereof) named on

the Interested Parties List in other matters unrelated to the Debtor and these Chapter 11 Cases:

Deloitte Touche Tohmatsu, Ernst & Young, Eversheds LLP, Houlihan Lokey, Kirkland & Ellis,

LLP, KPMG, LLP, Morgan Lewis & Bockius LLP, PricewaterhouseCoopers LLP, Skadden,

Arps, Slate, Meagher & Flom LLP, and White & Case, LLP.  Further, McKinsey RTS and its

affiliates may in the past have served, may currently serve, and may in the future serve

professionals in these cases on matters unrelated to the Chapter 11 Cases.  In addition, as noted

above, McKinsey RTS and its affiliates in the past have worked with, or currently work with,

virtually all of the professionals named on the Interested Parties List, and likely will continue in

the future to work with professionals involved in these cases, on matters unrelated to these cases.

Lastly, McKinsey RTS and its affiliates may have in the past contracted with, may currently

contract with, and may in the future contract with certain service providers listed on the

Interested Parties List for necessary business services.   McKinsey RTS does not have a specific

agreement to refer or accept referrals from any professional in this case. Further, McKinsey RTS

does not receive a significant portion of its referrals from any professional retained in this case.

Based upon my current knowledge of the professionals involved, to the best of my knowledge,

none of these business relations constitute interests materially adverse to the Debtors herein in

matters upon which McKinsey RTS is to be employed, and none are in connection with these

cases.

72.     McKinsey RTS has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

73.     Based upon the foregoing, I believe that McKinsey RTS does not hold an adverse interest to the Debtors' estates, and that McKinsey RTS is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

74.     McKinsey RTS reserves the right to supplement this Declaration in the event it becomes aware of any relationship or other information that requires disclosure. McKinsey RTS understands it has the obligation pursuant to Bankruptcy Rule 2014 to further supplement its declarations in the event it becomes aware of any relationship or other information that requires disclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 6, 2016
        New York, New York

                                        /s/  *Mark W. Hojnacki*
                                        Mark W. Hojnacki
                                        Practice Leader

31

**<u>EXHIBIT A</u>**

**<u>Redline Document Showing Changes Against Original Declaration of Mark W. Hojnacki</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
SUNEDISON, INC., *et al.*,                    :    Case No. 16-10992 (SMB)
                                              :
                          Debtors. [1]        :    (~~Joint Administration~~
                                              :    ~~Pending~~Jointly Administered)
------------------------------------------------------------x

AMENDED DECLARATION[2] OF MARK W. HOJNACKI IN SUPPORT OF DEBTORS'
APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a), 328, 330, 331, AND
1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014(a) AND
2016(b) AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1
AUTHORIZING THE EMPLOYMENT AND RETENTION OF MCKINSEY
RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS RESTRUCTURING
ADVISOR FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

        I, Mark W. Hojnacki, under penalty of perjury, declare as follows:

        1.       I am a Practice Leader in the professional services firm of McKinsey

Recovery & Transformation Services U.S., LLC ("McKinsey RTS US")[23] with an office at 55

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
        number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc.
        (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind
        California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings,
        Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc.
        (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC
        (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio
        Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International,
        LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison
        Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower
        Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio,
        LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock
        Renewables Holdings, LLC (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport
        Dr., Maryland Heights, Missouri 63043.

[2]     A redline document showing cumulative changes made to the original declaration of Mark W. Hojnacki
        dated May 5, 2016 is attached as Exhibit A hereto.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

East 52nd Street, New York, NY 10055.  I am duly authorized to make this Declaration on

behalf of McKinsey RTS in support of the application (the "Application") of SunEdison, Inc. and

certain of its affiliates, the debtors and debtors in possession in the above-captioned cases for

entry of an order authorizing the employment and retention of McKinsey RTS US as

restructuring advisor for the Debtors, *nunc pro tunc* to the Petition Date under the terms and

conditions set forth in the Engagement Letter, attached to the Application as Exhibit C.  I submit

this Declaration in accordance with section 327(a) of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2014(a), 2016 and 5002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Bankruptcy Rules").

~~1~~2.      Except as otherwise noted, the statements set forth herein are based on my

employment position and diligence undertaken by me or by professionals working under my

direction and, if called and sworn as a witness, I would testify competently thereto.

### QUALIFICATIONS OF MCKINSEY RTS

~~2~~3.      McKinsey RTS as used in this Declaration, includes (i) the directors,

officers and employees of McKinsey RTS US and (ii) certain consultants borrowed from

affiliates of McKinsey RTS US for the purpose of serving the Debtors in these Chapter 11 Cases.

McKinsey RTS is highly qualified to serve as the Debtors' restructuring advisor in these Chapter

11 Cases.

4.      Members of McKinsey RTS are employed by McKinsey Recovery &

---

~~2~~3      All capitalized terms used but not defined herein shall have the meanings set forth in the Application or the
Engagement Letter, as appropriate.

Transformation Services U.S., LLC, McKinsey & Company, Inc. United States, McKinsey & Company Canada and McKinsey & Company Africa (Pty) Ltd.

    5.  McKinsey Recovery & Transformation Services U.S., LLC is a direct wholly-owned subsidiary of McKinsey & Company, Inc. United States which, in turn, is a direct wholly-owned subsidiary of McKinsey Holdings, Inc. which, in turn, is a direct wholly-owned subsidiary of McKinsey & Company, Inc.

    36. McKinsey RTS is a global, full service restructuring advisory and crisis management firm that draws on unmatched industry and functional expertise to support companies through all aspects of recovery and transformation. McKinsey RTS'RTS's professionals are deeply experienced in providing chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and development and implementation of operational and/or financial improvement or restructuring plans. McKinsey RTS has been or is currently involved in numerous large and complex restructurings

    47. In addition, McKinsey RTS utilizes the expertise of its affiliates' Electric Power and Natural Gas ("EPNG") and Sustainability and Resource Productivity ("SRP") practices, which serves incumbent utilities, independent power producers (IPPs), power project developers, and new entrants in the power generation, transmission, distribution, and natural gas distribution sectors. McKinsey RTS affiliates help these EPNG and SRP clients with issues related to strategy, organization, and front-line operations. McKinsey RTS'RTS's affiliates' conventional and renewables power market analysis tools provide rigorous strategic insights into forward looking market demand by segment by region, market structure and operating margins.

3

The EPNG practice's operational performance improvement packages improve total installed renewables costs, and operating margins for major developers and IPPs across the globe. Moreover, the EPNG practice's procurement expertise ensures clients capture the lowest costs available on the market today and its capital productivity tools help clients deliver more value with less risk in major capital projects.

58.    The EPNG practice includes general consultants, dedicated practice consultants and experts with particularly relevant industry experience and academic backgrounds. The practice is backed by dedicated research and information experts who provide insight into industry structure and dynamics, and ensure that teams have access to the latest thinking, approaches and analyses on financial, market, operational, organizational and strategic matters for the consulting teams. The SRP practice brings deep insights into the solar and wind technologies, markets, and regulatory/policy structures.

69.    McKinsey RTS also utilizes the expertise of its affiliate, the Advanced Electronics (AE) sub-sector, that supports Solar Original Equipment Manufacturers (OEMs), Wind OEMs and Semiconductor companies globally across the full value chain. From design to materials sourcing to production to distribution to partnership and M&A, McKinsey RTS understands the complex needs of solar and wind OEMs, and semiconductor players and their respective customers. Within polysilicon, we have worked with clients around its uses in solar, including R&D, the monetization of IP, scaling up of new manufacturing facilities and increasing the capital productivity of those manufacturing assets.  AE is part of the broader Advanced Industries group, which serves Aerospace & Defense and Automotive, Machinery and Assembly companies.

710.     The combination of McKinsey RTS and the EPNG, AE and SRP practices' experience offer an extensive knowledge and expert base which will benefit the Debtors in these Chapter 11 Cases.  Given McKinsey RTS's substantial experience, prior to the filing of these Chapter 11 Cases, the Debtors retained McKinsey RTS and affiliates to serve as their advisor pursuant to an agreement, dated September 10, 2015 (the "Prepetition Agreement"), which engagement was principally for the purpose of providing services related to capital productivity and asset level cost optimization.  The scope of the services provided under the Prepetition Agreement later transitioned to supporting the Debtors with evaluating various strategic and restructuring alternatives, as well as assisting the Debtors' senior management to develop a 5-year strategic business plan (the "Business Plan").

811.     As a result of the prepetition work performed on behalf of the Debtors by McKinsey RTS and affiliates, McKinsey RTS is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, employee groups, cost structures, and related matters.  Since McKinsey RTS's initial engagement, McKinsey RTS personnel have worked closely with the Debtors' management and other professionals on numerous tasks related to the development of the Business Plan.  In addition, McKinsey RTS and affiliates supported management in preparing supplemental analyses related to the Business Plan and a potential restructuring and helped management prepare for diligence discussions with various financial advisors to certain of the Debtors' significant creditor constituencies. McKinsey RTS and affiliates have also worked on behalf of the Debtors to develop a short-term cash flow forecasting process and implement cash management strategies, tactics, and processes. Moreover, as a result of the services provided under the Prepetition Agreement, McKinsey RTS and affiliates have substantial knowledge of the Debtors' and non-Debtor subsidiaries' operating

assets.  Consequently, the Debtors believe that McKinsey RTS has developed significant relevant

experience and expertise regarding the Debtors and the circumstances of these cases and has the

skills, qualifications, and expertise necessary to assist the Debtors with their restructuring efforts

in an efficient and cost-effective manner.

### TERMS AND SCOPE OF ENGAGEMENT

~~9~~**12**.    The parties have entered into the Engagement Letter, the terms of which

will govern the Debtors' retention of McKinsey RTS during these Chapter 11 Cases, except as

explicitly set forth in any order granting the Application.  As contemplated by Section 10 of the

Engagement Letter, McKinsey RTS requests approval of the Engagement Letter *nunc pro tunc* to

the Petition Date.  The Engagement Letter was negotiated between the Debtors and McKinsey

RTS at arm's length and in good faith, and reflects the parties' mutual agreement as to the

substantial efforts that will be required during the course of this engagement.

~~10~~**13**.    McKinsey RTS will perform a broad range of services during these

Chapter 11 Cases, including, without limitation, the following:~~3~~**4**

  a.    supporting the development of a strategic business plan with the
        Company's Chief Restructuring Officer and other key functional leaders
        that can be used to facilitate discussions with the Company's lenders and
        certain other stakeholders;

  b.    assisting the Company's Chief Restructuring Officer and Chief Financial
        Officers with matters related to financial planning and analysis, as
        requested;

  c.    assisting in developing a short-term cash flow forecasting process and
        implementing cash management strategies, tactics, and processes and
        working with the Company's treasury department and other professionals

---

~~3~~**4**    Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of
the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the
descriptions provided herein.

and coordinating the activities of the representatives of other constituencies in the cash management process;

d.     assisting with the Company's financial and treasury functions as they respond to the analytical requests and other requests for information that are placed upon the Company;

e.     along with management, developing and establishing a weekly financial reporting package that provides additional transparency into the Company's near term cash position, including a forecast to actual variance analysis;

f.     providing strategic advice to support the overall restructuring process;

g.     in cooperation with the Company's officers, investment bankers and other engaged professionals and counsel, developing and preparing a chapter 11 plan of reorganization;

h.     assisting the Company in managing its bankruptcy process including managing outside stakeholders and their professionals;

i.     assisting with the evaluation of certain near term operational cost reduction and value enhancement opportunities (e.g., SG&A, fixed costs and procurement);

i.     planning and executing the Company's business support functions re organization and cost reduction goals;

j.     working with the Company's counsel ("Counsel") on supporting data in order for Counsel to prepare first day motions, the petitions for relief and other documents and evidence needed to implement any Chapter 11 bankruptcy case filed by the Company;

k.     assisting the Company with developing a detailed communications plan;

l.     providing local support with development of various strategic and restructuring alternatives for international operations;

m.     providing testimony and other litigation support as requested by Counsel in connection with matters upon which McKinsey RTS is providing Services; and

n.     assisting with all such other restructuring matters as may be requested by Counsel and/or the Board that fall within McKinsey RTS's expertise and that are mutually agreed upon between the Parties.

7

11 14.   The services provided by McKinsey RTS are necessary to enable the
Debtors to maximize the value of their estates.  Specifically, McKinsey is instrumental in helping
the Debtors' develop, evaluate, and execute strategic and restructuring alternatives.   The
Business Plan prepared with the assistance of McKinsey RTS will continue to be used to develop
and analyze potential options for the Debtors' business and forms the foundation for the
restructuring of the Debtors' capital structure.

12 15.   McKinsey RTS's services will complement, and not duplicate, the
services rendered by any other professionals retained in these Chapter 11 Cases.  The Debtors
and McKinsey RTS will use reasonable efforts to ensure that there is no duplication of services
that McKinsey RTS is being retained to perform.  To the extent that the Debtors request services
other than those detailed in the Engagement Letter, the Debtors will seek further approval from
the Court for a supplement to the retention and any related modifications to the Engagement
Letter and such application shall set forth, in addition to the additional services to be performed,
the additional fees sought to be paid.

## FEE AND EXPENSE STRUCTURE

13 16.   Subject to Court approval, the Debtors will compensate McKinsey RTS in
accordance with the terms and conditions of the Engagement Letter, which provides a
compensation structure (the "Fee and Expense Structure") as outlined below.

1417.   Hourly Rates:  McKinsey RTS's fees are to be based on the hours worked by McKinsey RTS personnel at the following hourly billing rates:

| Title of Professional | Hourly Rate |
|---|---|
| Practice Leader: | $950-$1,075 |
| Senior Vice President: | $700-$875 |
| Vice President: | $600-$700 |
| Senior Associate: | $500-$575 |
| Associate: | $400-$475 |
| Analyst: | $250-$350 |
| Paraprofessional: | $225-$250 |

Such rates and ranges will be subject to adjustment annually at such time as McKinsey RTS adjusts its rates generally.  Prior to applying any increases in its hourly rates as set forth herein, McKinsey RTS will file a supplemental affidavit with the Court and provide ten days' notice to the Debtors, the United States Trustee, any official committee appointed in these Chapter 11 Cases, counsel to the Tranche B Lenders (as defined in the debtor-in-possession credit agreement) and the steering committee of the second lien creditors, and counsel to the administrative agent under the debtor-in-possession financing facility, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.

1518.   At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to McKinsey RTS under the Engagement Letter.

1619.   Expenses:  The Debtors will reimburse McKinsey RTS for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but not limited to, travel, consultants, case administrators, lodging, postage, and communications charges following McKinsey RTS's standard expense reporting.  As McKinsey RTS clients frequently request that McKinsey RTS restructuring advisors travel to their offices and work there for extended periods of time, McKinsey RTS developed its own official reimbursement policy with respect to its turnaround advisors' documentation of expenses (the "RTS Reimbursement Policy").  More specifically, McKinsey RTS professionals serving the Debtors will seek reimbursement for expenses over thirty-five dollars ($35.00) that (a) have been charged on a McKinsey RTS-provided corporate credit card or have a receipt and (b) have a receipt for lodging.  For amounts under thirty-five dollars ($35.00) McKinsey RTS will seek reimbursement when exact amounts are submitted in lieu of a receipt.  McKinsey RTS intends to maintain detailed documentation of its professionals' actual and necessary costs and expenses in accordance with the RTS Reimbursement Policy.

1720.   Consistent with the scope of services to be provided by McKinsey RTS under the Engagement Letter, the Debtors and McKinsey RTS negotiated and agreed upon the Fee and Expense Structure described above.  In addition, McKinsey RTS believes that the foregoing Fee and Expense Structure is reasonable and market-based and consistent with McKinsey RTS's normal and customary billing levels for comparably sized and complex cases,

10

both in and out-of-court, involving the services to be provided to the Debtors by McKinsey RTS.
To the best of my knowledge, the compensation arrangement reflected herein is consistent with,
and typical of, arrangements entered into by other turnaround advisory firms rendering similar
services for clients such as the Debtors.

> 18<ins>21</ins>.   Pursuant to the Engagement Letter, McKinsey RTS received
$2,000,000.00 as a retainer (the "Retainer") in connection with its prepetition work.  McKinsey
RTS has not drawn any amounts under the Retainer for services rendered and expenses incurred
prior to the Petition Date.  A balance of $2,000,000.00 remains on the Retainer.

> 19.     In the ninety days leading up to the Petition Date, McKinsey RTS received
payments totaling $8,250,965.00  (including the Retainer) in the aggregate for services rendered
and expenses incurred on behalf of the Debtors <ins>as follows:</ins>

| Invoice Date | Payment Date | Billing Period (ending on the last day of the calendar week, as applicable) | Payment Amount |
|---|---|---|---|
| 2/11/16 | 2/16/16 | 2/13/16 - 2/19/16 | $664,965.00 |
| 2/18/16 | 2/19/16 | 2/20/16 - 2/26/16 | 665,000.00 |
| 2/26/16 | 2/26/16 | 2/27/16 – 3/14/16 | 665,000.00 |
| 3/02/16 | 3/30/16 | 3/05/16 – 3/11/16 | 665,000.00 |
| 3/10/16 | 3/11/16 | 3/12/16 – 3/18/16 | 665,000.00 |
| 3/17/16 | 3/30/16 | 3/19/16 – 3/25/16 | 665,000.00 |
| 3/23/16 | 3/30/16 | 3/26/16 – 4/01/16 | 665,000.00 |
| 3/31/16 | 4/05/16 | 4/02/16 – 4/08/16 | 665,000.00 |
| 4/08/16 | 4/08/16 | Retainer | 2,000,000.00 |
| 4/13/16 | 4/15/16 | 4/09/16 – 4/15/16 | 665,000.00 |
| 4/19/16 | 4/19/16 | 4/16/16 – 4/19/16 | 266,000.00 |
| 4/20/16 | unpaid | 4/20/16 | 133,000.00 |
| **TOTAL WITHOUT RETAINER** | | | $6,250,965.00 |
| **GRAND TOTAL** | | | $8,250,965.00[5] |

---

[5]     The grand total does not include the Prepetition Balance.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

McKinsey RTS received no other payments from the Debtors during the ninety days immediately preceding the Petition Date. As of the Petition Date, the Debtors owed McKinsey RTS a total of $133,000.00 for fees and expenses incurred prior to the Petition Date (the "Prepetition Balance"). Pursuant to the Application, the Debtors seek to modify the automatic stay to allow McKinsey RTS to apply the Retainer to the Prepetition Balance. Any remaining amounts of the Retainer after reconciliation with its outstanding prepetition fees and expenses will be applied as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved in accordance with any other applicable procedures and orders of the Court awarding fees and expenses to McKinsey RTS.

22.     In addition to the prepetition amounts owed to McKinsey RTS, total amounts due to McKinsey and Company, Inc. United States ("McKinsey U.S.") for its prepetition services in 2016 totaled $4,000,000.00[6]. At various times during the ninety days prior to the commencement of these Chapter 11 Cases, McKinsey U.S received fees from the Debtors but ultimately refunded such payments in full, resulting in "net zero" payments from the Debtors in the ninety days leading up to the Petition Date. The refunds to the Debtors were generated because (i) ultimately certain non-Debtor affiliates paid McKinsey U.S.'s fees and (ii) the Debtors made an overpayment. With respect to (i), the Debtors determined that, based on the scope of services being provided by McKinsey U.S., certain of its non-debtor project affiliates (the "Non-Debtor Project Affiliates") were receiving the benefit of McKinsey U.S.'s prepetition services and thus were the more appropriate payors of McKinsey U.S.'s fees relating to those services. While the Debtors remained responsible contractually for McKinsey U.S.'s fees and

---

[6]     McKinsey U.S. subsequently provided a discount of $400,000.00 on the prepetition services, and then ultimately wrote off an additional $36,832.22, leaving a residual amount due of $3,563,167.78

12

made certain payments as set forth below, McKinsey U.S. ultimately returned all of the payments made by the Debtors after receiving payments from the Non-Debtor Project Affiliates (as described in paragraph 23 below) covering such amounts. With respect to (ii), McKinsey U.S. also refunded an overpayment made by the Debtors during the ninety day prepetition period in the amount of $1,627,965.00.

      23.    At the direction of the Debtors, during the ninety days prior to the commencement of these Chapter 11 Cases, the Non-Debtor Project Affiliates paid McKinsey U.S. a total of $3,563,167.78 covering the full amount of the fees owed for prepetition services that the Debtors determined were provided for the benefit of such affiliates. Such payments were made according to the following schedule:

| Invoice Date | Payment Date | Payment Source | Payment Amount |
|---|---|---|---|
| 1/25/2016 | 2/03/16 | Granite Mountain Holdings | $229,871.84 |
| 1/25/2016 | 2/03/16 | Iron Springs Holdings | 141,025.67 |
| 2/10/2016 | 3/04/16 | Four Brothers Solar, LLC | 1,991,937.80 |
| 2/10/2016 | 3/04/16 | Granite Mountain Holdings | 726,061.57 |
| 2/10/2016 | 3/04/16 | Iron Springs Holdings | 474,270.90 |
| TOTAL | | | $3,563,167.78 |

      24.    During the ninety days prior to the commencement of these Chapter 11 Cases, the Debtors initially paid McKinsey U.S. a total of $4,857,032.49 in connection with prepetition services, consisting of (i) $3,229,067.49 in partial payments toward the outstanding $3,563,167.78 in fees for 2016 services that were ultimately refunded after they were covered by the payments made by the Non-Debtor Project Affiliates as outlined in paragraph 23 above and (ii) $1,627,965.00 in payment for 2015 prepetition services provided by McKinsey U.S. that

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

were refunded because this amount was mistakenly paid twice by the Debtors.  The schedule of

such payments by the Debtors and the subsequent refunds of those amounts are outlined below:

| Invoice Date | Payment Date from Debtors | Payment Amount from Debtors | Refund Date to Debtors | Refund Amount to Debtors | Reason for Refund to Debtors |
|---|---|---|---|---|---|
| 12/4/2015 | 1/22/16 | $1,627,965.00 | 3/08/16 | $1,627,965.00 | Duplicate |
| 2/11/2016 | 2/12/16 | 1,999,965.00 | 3/09/16 | 1,999,965.00 | Project payments from Four Brothers Solar, LLC; Iron Springs Holdings; and Granite Mountain Holdings |
| N/A – partial advance payment of outstanding non-Debtor project affiliate invoices | 2/29/16 | 564,000.00 | 3/10/16 | 564,000 | Project payments from Four Brothers Solar, LLC; Iron Springs Holdings; and Granite Mountain Holdings |
| N/A – partial advance payment of outstanding non-Debtor project affiliate invoices | 3/01/16 | 665,102.49 | 3/11/16 | 665,102.49 | Project payments from Four Brothers Solar, LLC; Iron Springs Holdings; and Granite Mountain Holdings |
| TOTAL | | $4,857,032.49.00 | | $4,857,032.49.00 | |

**RECORD KEEPING**

~~20~~25.  McKinsey RTS intends to apply to this Court for allowance of

compensation for professional services rendered and reimbursement of expenses incurred and

submit monthly fee statements with reasonable detail in accordance with the applicable

14

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any

other applicable procedures and orders of the Court.

21 26.   Such applications will include time records setting forth, in reasonable

detail, a description of the services rendered by each professional and the amount of time spent

on each date by each such individual in rendering services on behalf of the Debtors.  McKinsey

RTS will maintain and file contemporaneous time records in one-tenth hour (.1) increments.

McKinsey RTS also will maintain detailed records of any actual and necessary costs and

expenses incurred in connection with the services as discussed above.

### INDEMNIFICATION PROVISIONS

22 27.   As part of the overall compensation payable to McKinsey RTS under the

terms of the Engagement Letter, the Debtors have agreed to certain indemnification and

contribution provisions described in the Engagement Letter (the "Indemnification Provisions").

The Indemnification Provisions provide that the Debtors will indemnify, hold harmless, and

defend McKinsey RTS (including its past, present, and future affiliates) and each of their

directors, officers, managers, shareholders, partners, members, employees, agents,

representatives, advisors, and controlling persons (each, an "Indemnified Party," and

collectively, the "Indemnified Parties") against liabilities arising out of or in connection with the

Engagement Letter and/or McKinsey RTSs retention by the Debtors in these Chapter 11 Cases,

except for any liabilities judicially determined by a court of competent jurisdiction to have

resulted from the willful misconduct or gross negligence of any of McKinsey RTS or the other

Indemnified Parties in connection with McKinsey RTS's services provided under the

Engagement Letter.  In addition, if indemnification or reimbursement obligations are held to be

unavailable by any court (other than in circumstances where a court determines that liability is

15

from the willful misconduct or gross negligence of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the relative benefits and faults of McKinsey RTS and the Debtors.  The Engagement Letter further sets forth that McKinsey RTS's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

**DISCLOSURE REGARDING MCKINSEY RTS'S DISINTERESTEDNESS**

~~23~~28.   In anticipation of its proposed retention, McKinsey RTS emailed: (a) members of McKinsey RTS ~~and searched its global client database~~, to determine the existence of any client service provided by McKinsey RTS US or affiliates within the last two years to parties-in-interest (the "Interested Parties" on the interested parties list attached hereto as Schedule 1 (the "Interested Parties List"),[47] (b) members of McKinsey RTS and partners at affiliates that provide consulting services to determine the existence of client services provided by employees within the last two years to any client that focused on a direct commercial relationship or transaction with the Debtors and (c) all members of McKinsey RTS to request information on any relationships with the Debtors, the United States Trustee and the Bankruptcy Court, as well as equity ownership in the Debtors.  In addition, McKinsey searched its global client database, which covers clients of all its consulting affiliates, to determine the existence of any client service provided by McKinsey RTS US or affiliates within the last two years to Interested Parties.   Based on its findings from this database search, McKinsey RTS made inquiry to the partners at its affiliates world-wide that provide consulting services, who are responsible for those clients appearing on the Interested Parties List, as to whether any services

---

[47]     The identities of the Interested Parties were provided to McKinsey RTS by the Debtors or the Debtors' other professional advisors.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

McKinsey RTS or its affiliates provided over the past two years or are currently providing to such Interested Parties focused or focuses on a direct commercial relationship or transaction with the Debtors.

29.    Based upon responses to the above inquiries, McKinsey RTS included disclosures in this Declaration to the extent that (i) any member of McKinsey RTS currently provides consulting services, or in the past two years has provided consulting services, to any of the Interested Parties or (ii) any partner at its affiliates confirmed that consulting services have been provided by such affiliates, either currently or in the past two years, to Interested Parties on matters focused on a direct commercial relationship or transaction with the Debtors.  In respect of (i) above, all consulting services provided by McKinsey RTS to members of the Interested Parties List are disclosed in paragraphs 29 through 58 below.  In respect of (ii) above, no partner of the affiliates of McKinsey RTS has provided in the past two years, or currently provides, services to Interested Parties on matters focused on a direct commercial relationship or transaction with the Debtors.

24 30.    Based on the searches described above, to the best of my knowledge and information, after reasonable inquiry, except as set forth herein, McKinsey RTS (a) does not have any connection with the Debtors or their affiliates, their creditors, or any other Interested Parties in these cases, as identified on the Interested Parties List, other than as set forth herein; (b) is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code; (c) does not hold or represent any interest adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors; (d) is not and has not been a creditor, an equity security holder, or an insider of the Debtors, except that McKinsey RTS has previously rendered services to the

Debtors for which it has been compensated and is owed the Prepetition Balance as set forth in

paragraphs 17 and 18 herein; (e) is not and has not been, within two years before the Petition

Date, a director, officer or employee of the Debtors.

~~25~~31.    Based upon the research described above, McKinsey RTS has ascertained

that McKinsey RTS currently serves or in the past two years has served, either through

McKinsey RTS or an affiliate thereof, the following parties on the Interested Parties List, but on

matters unrelated to the Debtors and their Chapter 11 Cases. McKinsey RTS has reviewed its

confidentiality obligations to each of its clients identified as Interested Parties and, to the extent

necessary, instructed the relationship partner for each affected client to request the consent of

such client to disclose its name in connection with this Declaration.  As a standard policy, every

McKinsey RTS partner is required to send a memorandum of confirmation to a client prior to

beginning any work on an engagement for such client, in which McKinsey RTS represents to the

client that (i) it will "not make public client names, client materials, or reports prepared for

clients without their permission" and (ii) to the extent it becomes involved in a legal action,

McKinsey RTS will, "where permitted by law, advise you promptly [of such legal action] and

work with you and your legal counsel to respond appropriately" to any disclosures regarding

such client that may be prompted by the proceedings of such legal action. To the extent

applicable, those clients that did not provide the consent described in this paragraph would be

identified herein as "confidential clients", however, there are no confidential clients in this case.

More specifically, to the best of my knowledge and belief:

~~26~~32.    **Debtors.**  Members of McKinsey RTS serving the Debtors served the

Debtors' predecessor company, Monsanto Electronic Material Company or MEMC since 2009.

One member of McKinsey RTS serving the Debtors has known the Debtor's CEO, Ahmad

Chatila, from past professional relationships prior to 2009. In addition, one member of McKinsey RTS serving the Debtors knows James Williams, a board member of the Debtors, from both previous and current professional relationships.

33.     **1st Lien Lenders**.  Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following 1st Lien Lenders or entities or individuals that are affiliates of such 1st Lien Lenders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such 1st Lien Lenders' claims against the Debtors: Apollo Credit.

~~27~~34.     **1st Lien Professionals.**  No member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the 1st Lien Professionals or entities or individuals that are affiliates of such 1st Lien Professionals.

~~28~~35.     **2nd Lien Lenders.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following 2nd Lien Lenders or entities or individuals that are affiliates of such 2nd Lien Lenders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such 2nd Lien Lenders' claims against the Debtors:~~.~~ Apollo; Apollo A-N Credit Fund (Delaware), L.P.; and Apollo Credit Strategies Master Fund.

~~29~~36.     **2nd Lien Professionals.** A member of McKinsey RTS was previously employed, in the past two years, by the following 2nd Lien Professional but on matters unrelated to the Debtors and the Debtors' Chapter 11 Cases: Houlihan Lokey.

~~30~~37.     **Board Members (last 5 years)**. A member of McKinsey RTS serving the Debtors knows James Williams, a board member of the Debtors from both previous and current professional relationships.

19

31 38.   **Competitors.** Members of McKinsey RTS currently serve, or in the past

two years have served, either through McKinsey RTS or an affiliate thereof, the following

Competitors or entities or individuals that are affiliates of such Competitors in matters unrelated

to the Debtors, the Debtors' Chapter 11 Cases, or such Competitors' claims against the Debtors:

Enel S.p.A.; NextEra Energy Partners LP; NextEra Energy, Inc.; NRG Energy, Inc; and one

confidential client NRG Yield, Inc.  In addition, members of McKinsey RTS serving the Debtors

provided pre-petition services to the Debtors that included meeting with Vivint Solar, a

Competitor on the Interested Parties List, to discuss the potential to apply established Debtor

operational processes to Vivint's solar products.  Finally, at the request of the Debtors, certain of

McKinsey RTS's affiliate's pre-petition work was paid by a special purpose vehicle of the

Debtor's which included a pro rata payment vehicles owned in part by the Debtors and in part by

Dominion Resources, Inc., a Competitor on the Interested Parties List.

32 39.   **Convertible Note Holders.** Members of McKinsey RTS currently serve,

or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the

following Convertible Note Holders or entities or individuals that are affiliates of such

Convertible Note Holders in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or

such Convertible Note Holders' claims against the Debtors: JPMorgan Chase & Co.; and Oaktree

Capital Management.

33 40.   **Customers.** Members of McKinsey RTS currently serve, or in the past

two years have served, either through McKinsey RTS or an affiliate thereof, the following

Customers or entities or individuals that are affiliates of such Customers in matters unrelated to

the Debtors, the Debtors' Chapter 11 Cases, or such Customers' claims against the Debtors:

Anheuser-Busch Companies, Inc.; AT&T; Dignity Health; J. P. Morgan; Pacific Gas & Electric;

20

Tata Power Delhi Distribution Limited; Tata Communications Limited - India; Tata America

International Corp.; Xcel Mn; Xcel PSCo; ~~and five confidential clients~~Whirlpool of India Ltd;

and Southern California Edison.

       41.    **Debtors Professionals**. To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Debtors Professionals or entities or individuals that are affiliates of such Debtors

Professionals.

       ~~34~~42.  **Depository Banks.**  To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

       ~~35~~43.  **Director Affiliates.** To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Director Affiliates or entities or individuals that are affiliates of such Director Affiliates.

       ~~36~~44.  **Executive Officers (last 5 years).** One member of McKinsey RTS

serving the Debtors has known the Debtor's CEO, Ahmad Chatila, from past professional

relationships prior to 2009.

       ~~37~~45.  **Government Bodies.** To the best of my knowledge, no member of

McKinsey RTS currently serves, or in the past two years has served or been employed by, any of

the Depository Banks or entities or individuals that are affiliates of such Depository Banks.

       ~~38~~46.  **Institutional Shareholders > 1%.**  To the best of my knowledge, no

member of McKinsey RTS currently serves, or in the past two years has served or been

employed, by, any of the listed Institutional Shareholders or entities or individuals that are

affiliates of such Institutional Shareholders.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

~~39~~47. **Insurance Providers.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Insurance Providers or entities or individuals that are affiliates of such Insurance Providers.

~~40~~48. **Labor Unions.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Labor Unions or entities or individuals that are affiliates of such Labor Unions.

~~41~~49. **Landlords.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Landlords or entities or individuals that are affiliates of such Landlords.

~~42~~50. **LC Issuers.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

~~43~~51. **Licensees.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Licensees or entities or individuals that are affiliates of such LC Issuers.

~~44~~52. **Lien Claimants.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the LC Issuers or entities or individuals that are affiliates of such LC Issuers.

~~45~~53. **Litigants.** Members of McKinsey RTS currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Litigants or entities or individuals that are affiliates of such Litigants in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Litigants' claims against the Debtors: E.I. du Pont de Nemours and Company; Riverstone/Carlyle Renewable Energy Grant GP; and ThyssenKrupp.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

In addition, members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with Vivint Solar, a Litigant on the Interested Parties List, to discuss the potential to apply established Debtor operational processes to Vivint's solar products.

~~46~~54.  **Official Committee of Unsecured Creditors.**  Members of McKinsey RTS serving the Debtors provided pre-petition services to the Debtors that included meeting with Vivint Solar, a member of the Committee of Unsecured Creditors, to discuss the potential to apply established Debtor operational processes to Vivint's solar products.

~~47~~55.  **Ordinary Course Professionals.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Ordinary Course Professionals or entities or individuals that are affiliates of such Ordinary Course Professionals.

~~48~~56.  **Registration Rights Parties.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Registration Rights Parties or entities or individuals that are affiliates of such Registration Rights Parties.

~~49~~57.  **Surety Providers.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Surety Providers or entities or individuals that are affiliates of such Surety Providers.

~~50~~58.  **Taxing Authorities.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Taxing Authorities or entities or individuals that are affiliates of such Taxing Authorities.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

5159.  **Transfer Agent.** To the best of my knowledge, no member of McKinsey RTS currently serves, or in the past two years has served or been employed by, any of the Transfer Agent or entities or individuals that are affiliates of the Transfer Agent.

5260.  **Utilities.** Members of McKinsey currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof, the following Utilities or entities or individuals that are affiliates of such Utilities in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Utilities' claims against the Debtors: AT&T, Inc.; and one confidential client Southern California Edison.

5361.  **Vendors.**  Members of McKinsey currently serve, or in the past two years have served, either through McKinsey RTS or an affiliate thereof,  the following Vendors or entities or individuals that are affiliates of such Vendors in matters unrelated to the Debtors, the Debtors' Chapter 11 Cases, or such Vendors' claims against the Debtors: Xcel Energy; and one confidential client Southern California Edison.

5462.   In addition, affiliates of McKinsey RTS and its affiliates serve clients across a broad range of industries, functions, and geographies, and, within industries, serve competitors and do so in a manner that protects the confidentiality of each client's information (including the confidentiality of the engagement itself).  Thus, certain affiliates of McKinsey RTS and certain of its affiliates may have in the past provided services for, may presently be providing services for, and may in the future provide services for entities that are determined to be creditors, lenders, shareholders, insurers, customers, competitors, vendors, contract counterparties in each case of the Debtors or otherwise Interested Parties named on the Interested Parties List; however, to the best of my current knowledge, subject to the disclosures set forth herein, such services are unrelated to the Debtors and those Chapter 11 cases, and specifically do

24

not focus on direct commercial relationships or transactions between such companies and the Debtors.  If any work for other clients of affiliates of McKinsey RTS specifically focused on or affected the Debtors, it would have been explicitly stated in this Declaration. Further, if McKinsey RTS becomes aware of any work for other clients of affiliates of McKinsey RTS that specifically focuses on or affects the Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

5563.    McKinsey RTS and its affiliates do however, from time to time provide overall strategic analysis and advice to companies that operate in the solar and wind sector] in which the Debtors operate, which analysis and advice could include review and comment on publicly available information and strategic considerations with respect to the Debtors, as well as other companies.  Similarly, McKinsey RTS and its affiliates may have business associations with certain of the Debtors' creditors, professionals, service providers, or other Interested Parties, or interests adverse to such creditors, professionals, service providers, or Interested Parties herein, which associations to the best of my knowledge and information have no connection with these proceedings.' service to other companies in the industry in which the Debtors operate may focus on the macro landscape of the industry but should have no direct effect on the Debtors given the nature of the market.  If any work for other clients of McKinsey RTS or its affiliates specifically focused on or affected the Debtors, it would have been explicitly stated in this Declaration. Further, if McKinsey RTS becomes aware of any work for other clients that specifically focuses on or affects the Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

5664.    As noted, McKinsey RTS and its affiliates have a long-standing policy of serving competing companies and do so in a manner that protects the confidentiality of each

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

client's information.  In fact, McKinsey RTS's expertise which the Debtors desire to utilize for the purposes described herein derives from McKinsey RTS's and its affiliates' broad-based service in many different aspects of the industry and business sector in which the Debtors operate.  Because of its practice of serving clients with overlapping or competing interests, these affiliates do not have in place any centralized conflicts identification process, and only have a central database of clients and engagements performed for those clients, which is kept principally for record keeping purposes, but does not contain detailed descriptions of the client support.

~~57~~65.  ~~However,~~ McKinsey RTS completed the following steps in order to make the representations contained herein:

a.  McKinsey RTS made inquiry of all of its members, including consultants borrowed from affiliates for the purpose of serving the Debtors in these Chapter 11 Cases, as to whether they provided over the past two years or are currently providing consulting services to any of the entities named on the Interested Parties List.

~~a~~b.  McKinsey RTS made inquiry to all partners at its affiliates world-wide that provide consulting services, about whether they currently provide consulting services to entities that focus on a direct commercial relationship or transaction with the Debtors.

~~b~~c.  McKinsey RTS made inquiry to the partners at its affiliates world-wide that provide consulting services, who are responsible for those clients appearing on the Interested Parties List, as to whether any services McKinsey RTS or its affiliates provided over the past two years or are currently providing to such Interested Parties focused or focuses on a direct commercial relationship or transaction with the Debtors.

~~c~~d.  McKinsey RTS made inquiry of all ~~members of McKinsey RTS~~employees at all of its affiliates worldwide, as to whether such member or a member of his/her immediate family is related to or employed by the Debtors, the United States Trustee and/or the Bankruptcy Court.

~~d~~e.  Additionally, McKinsey RTS made inquiry of all ~~members of McKinsey RTS~~employees at all of its affiliates worldwide, as to whether such member or a member of his/her immediate family owns equity securities of the Debtors.

26

    ~~e~~f.    Finally, McKinsey RTS requested that partners of McKinsey RTS and its affiliates world-wide that provide consulting services immediately inform the office of the General Counsel, for the duration of McKinsey RTS's retention by the Debtors, if proposed support for any of their clients would focus on a direct commercial relationship with the Debtors.

Based upon responses to the above inquiries, McKinsey RTS included disclosures in this Declaration to the extent that (i) any member of McKinsey RTS currently provides consulting services, or in the past two years has provided consulting service, to any of the Interested Parties or (ii) any partner at its affiliates confirmed that consulting services have been provided by such affiliates, either currently or in the past two years, to Interested Parties on matters focused on a direct commercial relationship or transaction with the Debtors.  In respect of (i) above, all consulting services provided by McKinsey RTS to members of the Interested Parties List are disclosed in paragraphs 29 through 58 below.  In respect of (ii) above, no partner of the affiliates of McKinsey RTS has provided in the past two years, or currently provides, services to Interested Parties on matters focused on a direct commercial relationship or transaction with the Debtors.

    ~~58~~66.    Based upon the responses to these inquires, to the best of my knowledge and belief, (i) no members of McKinsey RTS or its affiliates are or have immediate family members that are related to or employed by (~~i~~A) the Debtors, (~~ii~~B) any judge or employee of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or (~~iii~~C) any employee of the office of the United States Trustee (the "U.S. Trustee").~~  In addition, to the best of my knowledge and belief, no members~~ and  (ii) one employee of an affiliate of McKinsey RTS ~~or their family members hold~~, who is not serving the Debtors in these

Chapter 11 Cases, holds 2,000 shares of the equity securities of ~~the Debtors.~~[5]SunEdison, Inc.[8]

       67. Two of McKinsey RTS's affiliates, MIO Partners, Inc. and MIO Partners (EU) (together "MIO"), do not provide consulting services and were not included in the above inquiries. MIO serves McKinsey's pension plans, partners, and former partners by offering a portfolio of investment products with a variety of structures, risk levels, and currencies.  The team primarily uses third-party fund managers who make investment decisions independently of MIO.  MIO investors make investments with MIO essentially on a "blind trust" basis, with such MIO investors having no access to information about the underlying holdings in the third-party funds.  MIO is managed independently, and all its investment activities are separate from McKinsey's consulting operations. As such, MIO does not make any investment decisions based on the use of McKinsey RTS and affiliates' client information. Certain members of MIO's board of directors are also employees of McKinsey RTS and its affiliates, including one director who is also a director and officer of McKinsey RTS.  MIO's board of directors (through the investment committee of that board which generally meets on a quarterly basis) is primarily responsible for

---

[5] ~~In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information as to whether any member of McKinsey RTS or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness or otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors' estates.~~

[8] In reviewing its records and the relationships of its professionals, McKinsey RTS did not seek information as to whether any member of McKinsey RTS or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain employees have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact McKinsey RTS's disinterestedness or otherwise give rise to a finding that McKinsey RTS holds or represents an interest adverse to the Debtors' estates.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

overseeing, reviewing and approving MIO's overall allocation amongst the various MIO managed investment products.

59 68.    In addition, as part of its practice, McKinsey RTS and its affiliates provide support to clients on purchasing and supply management relating to direct and indirect materials and services, including in the solar and wind sectors.  Generally, the services consist of fact-based analysis to understand the client's costs and who other potential vendors are, support in developing requests for proposal, and analysis of and advice relating to the responses from vendors.  McKinsey RTS and its affiliates do not directly contact or negotiate with vendors for their clients, except that McKinsey RTS may negotiate as agreed with its clients in certain circumstances.  While we do not believe that such support is adverse to the interests of the Debtors, out of an abundance of caution, McKinsey RTS will independently evaluate the request of any member of McKinsey RTS to provide purchasing and supply management support relating to solar and wind sector to any company for whom any of the Debtors are either an incumbent provider or a potential vendor, prior to confirming such support. If, based on McKinsey RTS's knowledge and belief, any purchasing and supply management work for other clients of McKinsey RTS or its affiliates specifically focused on or was adverse to the interests of the Debtors, it would have been explicitly stated in this Declaration. Further, if McKinsey RTS becomes aware of any such work for other clients that specifically focused on or is adverse to the interests of the Debtors after the date of this Declaration, it will update the Court in a supplement to this Declaration.

60 69.    To the best of my knowledge and belief, J.P. Morgan, a client of McKinsey RTS US who is identified on the Interested Parties List accounts for more than one percent, but less than two percent, of McKinsey RTS US's gross annual revenue as of March 31,

29

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

2016.  McKinsey RTS US's support to J.P. Morgan is on matters unrelated to the solar or energy industry and is unrelated to the Debtors and their Chapter 11 Cases.

6170.  McKinsey RTS has adopted procedures to identify any potential support by McKinsey RTS that focuses on a direct commercial relationship or transaction with the Debtors, so that McKinsey RTS may either make disclosure of such potential engagement to the Bankruptcy Court or take other appropriate steps.  If and when retained, McKinsey RTS will again communicate to all partners in McKinsey RTS and its affiliates directing them to notify the office of McKinsey's general counsel of any such proposed client engagements. In addition, McKinsey RTS will again communicate with all of its Members directing them to notify the office of McKinsey's general counsel of proposed client engagements involving Interested Parties.

6271.  Finally, as part of its diverse practice, McKinsey RTS and its affiliates are involved in numerous matters and transactions involving many different professionals, including attorneys, accountants, and financial consultants, some of whom may represent the Debtors or claimants and virtually all of the professionals named on the Interested Parties in the List in these Chapter 11 Cases. For instance Further, McKinsey RTS and its affiliates may have in the past been represented by, may currently be represented by, and may in the future be represented by attorneys, law firms, or financial advisors who are involved in these proceedings, including law firms and financial advisors representing the Debtors.  Specifically, McKinsey RTS and its affiliates have been represented, in the past two years, by the following professionals (or affiliates thereof) named on the Interested Parties List in other matters unrelated to the Debtor and these Chapter 11 Cases: Deloitte Touche Tohmatsu, Ernst & Young, Eversheds LLP, Houlihan Lokey, Kirkland & Ellis, LLP, KPMG, LLP, Morgan Lewis & Bockius LLP,

30

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM

PricewaterhouseCoopers LLP, Skadden, Arps, Slate, Meagher & Flom LLP, and White & Case, LLP. Further, McKinsey RTS and its affiliates may in the past have served, may currently serve, and may in the future serve professionals in these cases on matters unrelated to the Chapter 11 Cases. In addition, as noted above, McKinsey RTS and its affiliates may in the past have worked with, may or currently work with, virtually all of the professionals named on the Interested Parties List, and likely will continue in the future to work with professionals involved in these cases, on matters unrelated to these cases. Lastly, McKinsey RTS and its affiliates may have in the past contracted with, may currently contract with, and may in the future contract with certain service providers listed on the Interested Parties List for necessary business services. McKinsey RTS does not have a specific agreement to refer or accept referrals from any professional in this case. Further, McKinsey RTS does not receive a significant portion of its referrals from any professional retained in this case. Based upon my current knowledge of the professionals involved, to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors herein in matters upon which McKinsey RTS is to be employed, and none are in connection with these cases.

      63 72.   McKinsey RTS has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

      64 73.   Based upon the foregoing, I believe that McKinsey RTS does not hold an adverse interest to the Debtors' estates, and that McKinsey RTS is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey
Declaration - 6-6-16 6/6/2016 4:56:32 PM

6574.   McKinsey RTS reserves the right to supplement this Declaration in the

event it becomes aware of any relationship or other information that requires disclosure.

McKinsey RTS understands it has the obligation pursuant to Bankruptcy Rule 2014 to further

supplement its declarations in the event it becomes aware of any relationship or other

information that requires disclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:   May 5June 6, 2016
         New York, New York

                                                    /s/   Mark W. Hojnacki
                                                    Mark W. Hojnacki
                                                    Practice Leader

| Summary report: | |
|---|---|
| **Litéra® Change-Pro TDC 7.5.0.178 Document comparison done on 6/6/2016 4:56:32 PM** | |
| **Style name:** Option 3a Strikethrough Double Score No Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** SUNE - McKinsey Declaration - 5-5-16 - Final.docx | |
| **Modified filename:** SUNE - A&R McKinsey Declaration - 6-6-16.docx | |
| **Changes:** | |
| Add | 165 |
| Delete | 117 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 3 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 20 |
| **Total Changes:** | 305 |

Redline SUNE - McKinsey Declaration - 5-5-16 - Final and SUNE - A&R McKinsey Declaration - 6-6-16 6/6/2016 4:56:32 PM