# EXHIBIT 21

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| IN RE: | Case No. 15-33896-KRH |
| ALPHA NATURAL RESOURCES, INC., *et al.*, | Chapter 11 |
| Debtors | (Jointly Administered) |

**COMMENTS OF UNITED STATES TRUSTEE REGARDING
MCKINSEY RTS'S OPPOSITION TO MAR-BOW PARTNERS, LLC'S
(I) MOTION TO REOPEN CASE AND (II) MOTION FOR RELIEF FROM
JUDGMENTS AND FOR INDICATIVE RULING**

John P. Fitzgerald, III, the Acting United States Trustee for Region 4 (the "U.S. Trustee"), provides these comments as a supplement to his response filed on July 31, 2018 (the "July Response") to the (i) *Motion to Reopen Case* (the "Motion to Reopen") and (ii) *Motion for Relief from Judgments and for Indicative Ruling* (the "Judgment Relief Motion") (collectively with the Motion to Reopen, the "Motions") filed by Mar-Bow Value Partners, LLC ("Mar-Bow") and in response to both the *Opposition* to the Motions (Docket No. 4149) ("Opposition") filed by McKinsey Recovery and Transformation Services U.S., LLC ("McKinsey") and McKinsey's declarations in support of the Opposition.

Based on the U.S. Trustee's latest investigation into McKinsey's disclosures in these cases, McKinsey's repeated characterization in 2016 of MIO's status as a "blind trust" was inaccurate. MIO was not a blind trust and Jon Garcia, McKinsey's president, ratified MIO investment decisions. Nevertheless, it was not until September 2018 that McKinsey publicly disclosed that Mr. Garcia sat on the MIO board, including its investment subcommittee, during these cases. And it was not until the most recent disclosures filed in November 2018 that McKinsey publicly disclosed that, because of these roles, Mr. Garcia affirmatively ratified MIO's investment decisions. Moreover, McKinsey still has not adequately disclosed

1

information about MIO's direct investments and Mr. Garcia's role in supervising them. Finally, despite representations to the U.S. Trustee that it would publicly file the remaining disclosures relating to MIO that it provided in-camera to the Court in 2016, to date McKinsey has not done so. Had McKinsey accurately disclosed its MIO relationship and how MIO operated from the start (i.e., that MIO was not a "blind trust"), the U.S. Trustee would have asked the court to require full disclosures of MIO's investments in interested parties. Rule 2014 mandates as much. McKinsey's deficient and potentially misleading representations about its relationship with MIO, and the lack of timely, voluntary, and direct candor in making disclosures warrant redress and justify the reopening of the case so that the Court can order the disgorgement of fees or any other remedies that this Court deems appropriate.

## DISCUSSION

1. More than two years ago, the U.S. Trustee moved to compel further disclosures from McKinsey, Docket No. 2315 ("Motion to Compel"), because of McKinsey's blanket assertion of confidentiality and its failure to identify its client connections by name. In justifying its decision to withhold public disclosures of MIO's connections to interested parties, among other things, McKinsey asserted that McKinsey Investment Office ("MIO") was a blind trust. In response to the Motion to Compel, McKinsey filed additional public disclosures identifying formerly "confidential" clients. McKinsey also made further in-camera disclosures to the Court pursuant to its Order directing McKinsey to disclose, among other things, the identities of MIO's third party fund managers who were interested parties in these cases (the "Supplemental Disclosure Order").[1] Thereafter, the Court determined that McKinsey was disinterested.

---

[1] Order Compelling McKinsey Recovery & Transformation Services U.S., LLC, Turnaround Advisor for the Debtors, to Comply With the Requirements of Bankruptcy Rule 2014 (July 1, 2016, Docket No. 2895).

2

2. As the U.S. Trustee has repeatedly stated, professionals' rigorous compliance with Bankruptcy Rule 2014 is critical to the integrity and transparency required of the bankruptcy system. Therefore, once Mar-Bow recently raised new and previously unknown allegations after case closure that called McKinsey's earlier disclosures and disinterestedness into question once again, the U.S. Trustee conducted another investigation. In his investigation, the U.S. Trustee sought information from McKinsey independently from Mar-Bow, and also engaged with Mar-Bow's representatives.

3. Mar-Bow's most recent allegations include, among other things, that MIO disseminated public information regarding its investments—which called into question McKinsey's statements in 2016 that MIO operated as a blind trust.[2] In particular, McKinsey asserted that it need not disclose MIO's connections because "[t]here's no way [McKinsey] can find out about [MIO's] investments"[3] and MIO operated as a "blind trust." McKinsey characterized MIO's status as a "blind trust" no less than four times in sworn disclosures, sworn testimony, or in statements to the Court—all of which occurred after the Motion to Compel—including:

- The Third Supplemental Declaration of Kevin Carmody Practice Leader in McKinsey Recovery & Transformation Services U.S., LLC, dated May 19, 2016, ¶ 20 (Docket No. 2464) ("Third Carmody Declaration") ("MIO investors make investments with MIO essentially on a 'blind trust' basis, with such MIO investors having no access to information about the underlying holdings in the third-party funds.");

---

[2] Mar-Bow's Judgment Relief Motion also alleged that McKinsey committed separate disclosure violations and otherwise suffered from disqualifying conflicts. On November 21, 2018, Mar-Bow filed a Supplemental Memorandum in Response to Affidavits filed by Respondent McKinsey RTS (Docket No. 4163) raising further allegations regarding McKinsey's disinterestedness. The U.S. Trustee anticipates that McKinsey will further respond to these allegations.

[3] McKinsey's oral argument during June 28, 2016 Court hearing ("June 28, 2016 Oral Argument") (Transcript Docketed at No. 2834, p. 142).

3

- Mr. Carmody's deposition docketed September 1, 2016 (Docket No. 3360, pp. 143-144) ("Carmody Deposition") ("My understanding was [MIO] was a blind trust");

- June 28, 2016 Oral Argument (Transcript Docketed at No. 2834, p. 142) ("[MIO] is walled off. We cannot search it. We know nothing about it. There's no way we can find out about their investments, and we don't know about their investments."); and

- The Amended Declaration of Mark W. Hojnacki, Practice Leader in McKinsey Recovery & Transformation Services U.S., LLC, dated June 6, 2016 and filed in *In re SunEdison*, *Inc.*, No. 16-10992-smb (Bankr. S.D.N.Y. Jun. 6, 2016) (Docket No. 484) ("Hojnacki Declaration") ("MIO investors make investments with MIO essentially on a 'blind trust' basis, with such MIO investors having no access to information about the underlying holdings in the third-party funds.").

4. The U.S. Trustee's most recent investigation focused primarily on whether McKinsey and its employees either actually knew or had constructive knowledge about MIO's investments in interested parties when it made both its public and its in-camera disclosures dating back to 2016. This information was critical to assessing whether McKinsey accurately represented its relationship to MIO and fulfilled its disclosure obligations from the outset of these cases.

5. McKinsey failed on both accounts. McKinsey filed a total of seven declarations in September and November 2018 (collectively, the "2018 Declarations")[4] that demonstrate that its prior "blind trust" explanation in 2016 was, at best, misleading in a way that deflected further

---

[4] The seven 2018 Declarations consist of two separate sets of additional public disclosures. McKinsey filed the first set on September 12, 2018 (Docket Nos. 4150-4152) (collectively, the "September 2018 Declarations"), consisting of the declarations from:

(a) Jon Garcia, President of McKinsey and former member of the board of directors of MIO;
(b) Casey Lipscomb, General Counsel and Secretary of MIO; and
(c) Kevin Carmody, former Practice Leader of McKinsey and current McKinsey Senior Partner.

In response to the U.S. Trustee's specific concerns, McKinsey filed four additional declarations on November 9, 2018, (Docket Nos. 4159-4162) (collectively, the "November 2018 Declarations"), which included additional declarations from Jon Garcia and Casey Lipscomb.

4

questions about MIO at the outset. In particular, the 2018 Declarations finally reveal that: (a) MIO publicly disclosed its investments to regulatory authorities; and (b) Jon Garcia, McKinsey's president, sat on the MIO board, including its investment subcommittee, during these cases and affirmatively ratified MIO's investment decisions.

6. McKinsey was not forthcoming about Mr. Garcia's service on the MIO board and its investment subcommittee. In 2016, McKinsey acknowledged that it shared a common director with MIO[5]—but failed to identify the individual by name or specific title. McKinsey also failed to state whether that common director sat on the investment subcommittee.[6] Regrettably, McKinsey's subsequent statements in 2016 only muddied the waters further. Indeed, at a later hearing in connection with the Motion to Compel, the Court asked whether there were any "McKinsey RTS employees on the board of McKinsey Investment." In response, McKinsey continued to withhold Mr. Garcia's identity and didn't even proffer to the Court that the common employee was a McKinsey officer and director. Instead, McKinsey merely acknowledged that "there's one McKinsey RTS person not on the ANR case who is on the [MIO] board."[7] This was not just any McKinsey employee—this was the president of the company who on some level supervised all of McKinsey's engagements. McKinsey's misleading representation and lack of transparency about Mr. Garcia's role undermines the very

---

[5] *See* Third Carmody Declaration, ¶ 20 (Docket No. 2464) ("Certain members of MIO's board of directors are also employees of McKinsey RTS and its affiliates, including one director who is also a director and officer of McKinsey RTS.").

[6] Third Carmody Declaration, ¶ 20 (Docket No. 2464). Disclosing the unnamed director's membership on the investment committee was important in light of McKinsey's statement that "MIO's board of directors … through the investment committee of that board … is primarily responsible for overseeing, reviewing and approving MIO's overall allocation [of ] … managed investment products." *Id.*

[7] June 28, 2016 Oral Argument (Transcript Docketed at No. 2834, p. 155).

5

purpose of Rule 2014. Ultimately, McKinsey did not publicly disclose Mr. Garcia's role until September 2018. *See Declaration of Jon Garcia in Respect of Questions Proffered by United States Trustee in Response Dated July 31, 2018* ("Garcia I Declaration"), ¶ 4 (Docket No. 4151) ("As a member of MIO's board of directors, I was on its Audit Committee and Investment Committee."); *Declaration of Casey Lipscomb in Respect of Questions Proffered by United States Trustee in Response Dated July 31, 2018* ("Lipscomb I Declaration"), ¶ 8 (Docket No. 4152) ("Jon Garcia served as a Director of MIO from December 8, 2006 through June 9, 2017.").

7. And it was not until the November 2018 Declarations that McKinsey explained how the MIO board, including Mr. Garcia during these cases prior to his resignation, makes investments and handles information. McKinsey's disclosures in September instead focused on the investment activities of MIO's professional staff and their alleged ability to act independently and without intervention from the board regarding MIO's investments—a recitation that at best was not forthcoming. Specifically, according to the first declaration of Casey Lipscomb in September, the board delegated to MIO professional staff members responsibility to both (a) engage and supervise third party fund managers and (b) make direct investments:

- "The MIO Board is not responsible for making investment decisions on behalf of the Plans or the Funds. Rather, the MIO Board delegates responsibility for making investment decisions on behalf of the Plans and the Funds, and engaging and supervising Third Party Managers, to MIO's professional staff. The staff is responsible for principally using third party fund managers who make investment decisions based on their own investment discretion, without input from or consultation with, MIO [including the MIO board] ('Third Party Managers')."

- "The MIO Board is not responsible for making MIO Direct Investments on behalf of the Plans or Funds and does not exercise investment discretion with respect to such investments. Rather, the MIO Board delegates responsibility for making MIO Direct Investments to MIO's professional staff."

6

Lipscomb I Declaration, ¶ 8 (Docket No. 4152). [8]

8.      Although the Lipscomb I Declaration acknowledged that the MIO board exercises some "oversight and supervisory functions" over MIO professional staff, it failed to explain how the MIO board receives investment information. Lipscomb I Declaration, ¶ 11 (Docket No. 4152).[9] Instead, it offered an incomplete acknowledgement that "members of the MIO Board may become aware of MIO Direct Investments, the identities of Third Party Managers with whom money has been invested, and individual investments made by such Third Party Managers." *Id*. That description fell short of explaining what actions Mr. Garcia would reasonably undertake to fulfill his duties. McKinsey's failure to clarify demonstrates a continued lack of candor.

9.      Moreover, in his first declaration in September, Mr. Garcia did not offer any specifics about how he used MIO investment information to supervise MIO investment staff. Instead, he appeared to downplay the significance of the information itself:

- "In the course of my tenure on the board, I was provided lists of MIO's third party fund managers . . . . Because MIO typically invests in more than one hundred

---

[8]     Even if the Lipscomb I Declaration was accurate, these statements nonetheless ignored the fact that delegation does not absolve a principal from responsibility. *See, e.g.*, *Arakelian v. Nat'l W. Life Ins. Co.*, 755 F. Supp. 1080, 1084 (D.D.C. 1990) (fact that "functions of the [retirement] Plan were delegated to the Plan administrator (National Western) did not and does not absolve the trustees of their duty to review and insure that the administrator was acting in the best interests of the participants.").

[9]     In November 2018, McKinsey subsequently explained that "On a quarterly basis, consistent with their fiduciary duties to the Funds managed by MIO, the Investment Committee of the MIO Board reviews a list of redemption and allocation decisions made by MIO's professional investment staff. Redemptions are decisions to reduce the amount of, or eliminate, an investment in a fund or Separate Account managed by a Third-Party Manager, and allocations are decisions to establish, or increase the amount of, an investment in a fund or Separate Account managed by a Third-Party Manager. In connection with this quarterly process, the Investment Committee reviews materials prepared by the MIO staff." Lipscomb II Declaration, ¶ 6 (Docket No. 4160). The U.S. Trustee requested that McKinsey publicly file these redemption and allocation lists to assess the extent of Mr. Garcia's knowledge about specific MIO investments.

7

> fund managers and underlying funds, their individual names had little significance to me."

- "As a member of MIO's board of directors, I was on its Audit Committee and Investment Committee. The board focused on risk management, technology, and client service, and participated in reviewing the performance of MIO's Investment Management Team. The board oversaw the overall return on MMRT's assets to monitor whether such returns were satisfactory or better relative to investment benchmarks for different types of investments."

Garcia I Declaration, ¶¶ 4, 5 (Docket No. 4151).

10. It was not until its most recent declarations filed in November 2018 that McKinsey publicly disclosed that its president affirmatively ratified MIO's investment decisions. *See* Supplemental Declaration of Casey Lipscomb ("Lipscomb II Declaration"), ¶¶ 6-8 (Docket No. 4160). ("the Investment Committee was responsible for taking a vote to ratify the allocation and redemption decisions presented to the Investment Committee").

11. McKinsey's disclosures concerning Mr. Garcia's role on the MIO board remain incomplete. Although Mr. Garcia's statements provide some information about his review of third party fund managers, they say nothing about MIO's direct investments (a separate category of investments altogether) and his role in supervising them.[10] McKinsey likewise failed to: (1) confirm clearly whether Mr. Garcia ever ratified MIO's direct investments in interested parties involved in these cases; or (2) provide the dates on which Mr. Garcia ratified investments.

---

[10] The Lipscomb II Declaration filed in November discloses that MIO's "investment staff may also make MIO Direct Investments on behalf of the Non-Investable Compass Funds." Lipscomb II Declaration, ¶ 12 (Docket No. 4160). Neither this declaration nor the others described how the MIO board exercised its oversight over these particular investments. Likewise, it is unclear whether McKinsey disclosed these direct investments made through Compass when it submitted its in-camera disclosures in 2016 concerning MIO's direct investments in interested parties.

8

## CONCLUSION

12.     Rule 2014 places the burden on estate professionals to make required disclosures to ensure their disinterestedness.  Nevertheless, over the past two years, the U.S. Trustee has devoted substantial time and effort in bringing the Motion to Compel and conducting this latest investigation.  In addition, Mar-Bow has expended significant resources, including millions in professionals' fees and expenses, in probing McKinsey's disclosures in these cases.[11]  The Code and Rules require transparent, timely, and accurate disclosures by professionals, and do not contemplate the U.S. Trustee, the Court, or interested parties having to search for needles in haystacks to ensure the disinterestedness of professionals.

13.     Here, in connection with the U.S. Trustee's investigation, it took seven declarations and many months to elicit important information that McKinsey should have disclosed years earlier.  Further, in response to the U.S. Trustee's request, McKinsey represented that it would file on the public record the remaining information (consisting of MIO investment disclosures) provided to the Court in 2016 for in-camera review in connection with the Motion to Compel, but it has not yet done so.

14.     Full and complete disclosures ensure that bankruptcy professionals render undivided loyalty and untainted advice to their clients and enhance creditor and public confidence in the fairness of the bankruptcy proceedings.  Throughout this case McKinsey had repeated opportunities to provide relevant information.  More than two years ago McKinsey told this Court that:

> "[MIO] is walled off. We cannot search it. We know nothing about it.  There's no way we can find out about their investments, and we don't know about their investments. … [W]e have no ability to get their information."

---

[11]     McKinsey's suggestions of bad faith motives by Mar-Bow do not excuse either its opposition to making public disclosures that should have been made voluntarily, or the deficiencies in the disclosures it ultimately made.

9

June 28, 2016 Oral Argument (Transcript Docketed at No. 2834, p. 142). Disclosing only recently that the president of McKinsey sat on the board of MIO falls far short of its obligations and undermines public confidence in the bankruptcy process.

15. The U.S. Trustee respectfully submits that the Court should reopen this case and order the disgorgement of fees or impose any other remedies that it deems appropriate. The Court should impose such remedies to address McKinsey's conduct without regard to whether Bankruptcy Rule 2014 mandates disclosure of retirement account investments. Simply put, McKinsey inaccurately characterized MIO's status as a "blind trust" on at least four occasions and failed to identify Mr. Garcia and explain his role as an MIO board member—those alone amount to failures to disclose. Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of fees. *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) (citations omitted).

Respectfully Submitted,

Dated: June 20, 2018

John P. Fitzgerald, III
Acting United States Trustee Region 4

By: /s/Robert B. Van Arsdale
Robert B. Van Arsdale (Va. Bar No. 17483)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
(804) 771-2310
robert.b.van.arsdale@usdoj.gov

By: /s/ *Hugh M. Bernstein*
Hugh M. Bernstein (Md. Fed. Bar No. 23489)
Office of the United States Trustee
101 W. Lombard Street, Suite 2650

10

Baltimore, MD 21201
(410) 962-4300
hugh.m.bernstein@usdoj.gov

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that on June 20, 2018, I caused a copy of the foregoing pleading to be served by email on the parties on the attached list with email addresses, and all parties receiving notices in this case through the Court's ECF system.

| | |
|---|---|
| Alpha Natural Resources, Inc.<br>Attn: Richard H. Verheij, Esq.*<br>Executive Vice President,<br>General Counsel & Corporate Secretary<br>One Alpha Place<br>P.O. Box 16429<br>Bristol, Virginia 24209<br>Email: rverheij@alphanr.com<br>*[Debtors]* | Alpha Natural Resources, Inc.<br>Attn: Mark M. Manno<br>One Alpha Place<br>Bristol, Virginia 24202<br>*[Debtor]* |
| David G. Heiman, Esq.*<br>Carl E. Black, Esq.*<br>Thomas A. Wilson, Esq.*<br>Jones Day<br>North Point<br>901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>dgheiman@jonesday.com;<br>ceblack@jonesday.com;<br>tawilson@jonesday.com<br>*[Counsel to the Debtors]* | Tyler P. Brown, Esq.*<br>Henry P. (Toby) Long, III, Esq.*<br>Hunton & Williams LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>*[Local counsel to Debtors]* |
| Robert B. Van Arsdale, Esq.*<br>Shannon F. Pecoraro, Esq.*<br>Office of the United States Trustee,<br>Eastern District of Virginia<br>701 East Broad Street, Suite 4304<br>Richmond, Virginia 23219<br>*[Office of United States Trustee]* | Hugh M. Bernstein, Esq.*<br>Office of the United States Trustee,<br>District of Maryland<br>101 West Lombard Street, Suite 2625<br>Baltimore, Maryland 21201<br>Email: Hugh.M.Bernstein@usdoj.gov<br>*[Office of United States Trustee]* |
| Elisabetta G. Gasparini, Esq.*<br>Office of the United States Trustee<br>1835 Assembly Street, Suite 953<br>Columbia, South Carolina 29201<br>Email: elisabetta.g.gasparini@usdoj.gov<br>*[Office of United States Trustee]* | Dennis F. Dunne, Esq.*<br>Evan R. Fleck, Esq.*<br>Eric K. Stodola, Esq.*<br>Milbank, Tweed, Hadley & McCoy LLP<br>28 Liberty Street<br>New York, NY 10005<br>Email: ddunne@milbank.com;<br>efleck@milbank.com;<br>estodola@milbank.com<br>*[Counsel to Creditors' Committee]* |
| Andrew L. LeBlanc, Esq.*<br>Milbank, Tweed, Hadley & McCoy LLP<br>1850 K Street, N.W., Suite 1100<br>Washington, D.C. 20006<br>Email: aleblanc@milbank.com<br>*[Counsel to Creditors Committee]* | William A. Gray, Esq.*<br>W. Ashley Burgess, Esq.*<br>Roy M. Terry, Jr., Esq.*<br>Sands Anderson P.C.<br>P.O. Box 1998<br>Richmond, VA 23218-1998<br>*[Local counsel to Creditors Committee]* |
| Lynn Lewis Tavenner, Esq.*<br>Paula S. Beran, Esq.*<br>David N. Tabakin, Esq.*<br>Tavenner & Beran, PLC<br>20 North Eighth Street, Second Floor<br>Richmond, VA 23219<br>*[Counsel to Retiree Committee]* | John R. Owen, Esq.*<br>Jeremy D. Capps, Esq.*<br>Melissa Y. York, Esq.*<br>Harman, Claytor, Corrigan & Wellman<br>P. O. Box 70280<br>Richmond, VA 23235<br>*[Counsel to Retiree Committee]* |

| | |
|---|---|
| Damian S. Schaible, Esq.*<br>Damon P. Meyer, Esq.*<br>Bradley A. Schecter, Esq.*<br>Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Email: damian.schaible@davispolk.com;<br>damon.meyer@davispolk.com;<br>bradley.schecter@davispolk.com<br>*[Co-counsel to DIP Agent and First Lien Agent]* | Dion W. Hayes, Esq.*<br>K. Elizabeth Sieg, Esq.*<br>McGuireWoods LLP<br>Gateway Plaza<br>800 East Canal Street<br>Richmond, Virginia 23219<br>*[Co-counsel to DIP Agent and First Lien Agent]* |
| Paul M. Basta, Esq.*<br>Stephen E. Hessler, Esq.*<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Email: pbasta@kirkland.com;<br>stephen.hessler@kirkland.com<br>*[Counsel to Ad Hoc Committee of Second Lien Noteholders]* | Gregory F. Pesce, Esq.*<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Email: gregory.pesce@kirkland.com<br>*[Counsel to Ad Hoc Committee of Second Lien Noteholders]* |
| Debra A. Dandeneau, Esq.*<br>John J. Dedyo, Esq.*<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>Email: debra.dandeneau@weil.com<br>Email: john.dedyo@weil.com<br>*[Counsel to General Electric Credit Corporation]* | Michael A. Condyles, Esq.*<br>Peter J. Barrett, Esq.*<br>Jeremy S. Williams, Esq.*<br>KUTAK ROCK LLP<br>1111 East Main Street, Suite 800<br>Richmond, VA 23219-3500<br>*[Local counsel to Ad Hoc Committee of Second Lien Noteholders]* |

| | |
|---|---|
| Jayne T. Goldstein, Esq.*<br>Kenneth Pasquale, Esq.*<br>Gabriel E. Sasson, Esq.*<br>Strook, Strook & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038-4982<br>Email: jgoldstein@strook.com;<br>kpasquale@strook.com;<br>gsasson@strook.com<br>*[Counsel to Second Lien Notes Trustee]* | Sharon L. Levine, Esq.*<br>Paul Kizel, Esq.*<br>Philip J. Gross, Esq.*<br>Nicole M. Brown, Esq.*<br>LowensteinSandler LLP<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>Email: slevine@lowenstein.com;<br>pkizel@lowenstein.com;<br>pgross@lowenstein.com;<br>nbrown@lowenstein.com<br>*[Counsel to UMWA]* |
| Troy Savenko, Esq.*<br>Kaplan Voekler Cunningham & Frank, PLC<br>1401 East Cary Street<br>Richmond, VA 23219<br>*[Local counsel to UMWA]* | Kurtzman Carson Consultants LLC<br>Attn: Joe Morrow*<br>2335 Alaska Avenue<br>El Segundo, California 90245<br>Telephone: (310)-823-9000<br>Facsimile: (310) 751-1862<br>Email: AlphaNRinfo@kccllc.com<br>*[Claims and Noticing Agent]* |

| | |
|---|---|
| Harold L. Kaplan, Esq.*<br>Mark F. Hebbeln, Esq.*<br>Foley & Lardner LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, Illinois 60654-5313<br>Telephone: (312) 832-4500<br>Facsimile: (312) 832-4700<br>Email: hkaplan@foley.com<br>Email: mhebbeln@foley.com<br>*[Counsel to the Indenture Trustees for the Debtors' Secured and Unsecured Notes]* | Grant Crandall, Esq.*<br>United Mine Workers of America<br>18354 Quantico Gateway Drive, Suite 200<br>Triangle, Virginia 22172<br>*[United Mine Workers of America]* |
| McKinsey Recovery & Transformation Services U.S., LLC<br>55 East 52nd Street<br>New York, NY 10055<br>   Attn: Mr. Kevin Carmody<br>*[Turnaround Advisor]* | Edward C. Dolan, Esq.<br>Hogan Lovells US LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, D.C. 20004<br>Email: edward.dolan@hoganlovells.com<br>*[Counsel to McKinsey]* |
| Peter A. Ivanick, Esq.<br>Hogan Lovells US LLP<br>875 Third Avenue<br>New York, NY 10022<br>Email: peter.ivanick@hoganlovells.com<br>*[Counsel to McKinsey]* | Bruce H. Matson, Esq.*<br>Christopher L. Perkins, Esq.*<br>LeClair Ryan<br>919 East Main Street<br>Richmond, VA 23219<br>*[Counsel to McKinsey]* |

Martin J. Bienenstock, Esq.*
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
Email: mbienenstock@proskauer.com
*[Counsel to McKinsey]*

Faith E. Gay, *admitted pro hac vice*
Jennifer M. Selendy, *admitted pro hac vice*
Maria Ginzberg, *admitted pro hac vice*
Selendy & Gay PLLC
1290 Avenues of the Americas
New York, New York 10104
Email: fgay@selendygay.com
Email: jselendy@selendygay.com
Email: mginzburg@selendygay.com
*[Counsel to McKinsey]*

M. Natasha Labovitz, *admitted pro hac vice*
John Gleeson, *admitted pro hac vice*
Nick S. Kaluck, III, *admitted pro hac vice*
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Email: nlabovitz@debevoise.com
Email: jgleeson@debevoise.com
Email: nskaluk@debevoise.com
*[Counsel to McKinsey]*