# EXHIBIT 22

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-33896 (KRH) |
| Debtors. | Jointly Administered |

| | |
|---|---|
| MAR-BOW VALUE PARTNERS, LLC., | |
| Movant, | |
| v. | |
| MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC, | |
| Respondent. | |

### SUPPLEMENTAL DECLARATION OF JON GARCIA

I, Jon Garcia, under penalty of perjury, declare as follows:

1. I am the President of McKinsey Recovery & Transformation Services U.S., LLC ("RTS") and have held that position since 2010. From December 8, 2006 through June 9, 2017, I also served as a member of the board of directors ("Board") of MIO Partners, Inc. ("MIO"), the entity that manages McKinsey & Company's pension and investment programs and their assets held by McKinsey Master Retirement Trust.

2. I submit this supplemental declaration to further respond to certain questions asked by the United States Trustee in his pleading entitled "United States Trustee's Response to Mar-Bow Partners LLC's (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling," dated July 31, 2018 ("Mar-Bow's Motion") [Doc.

# 4126] in the Alpha Natural Resources chapter 11 case in the Eastern District of Virginia, Richmond Division (Case No. 15-33896 (KRH)). This declaration supplements my prior declaration in this matter, which was filed on September 12, 2018.

3. I make this declaration based on personal knowledge, recollection, and memory except to the extent I identify public records or business records maintained in the regular course of RTS or MIO's activities from which I have obtained information reported here.

4. During my time on the MIO Board, I was a member of the Investments Committee, a subcommittee of the full Board that would meet to discuss issues related to investments, including the ratification of certain investment decisions made by MIO's professional staff. I understood ratification in this context to mean the approval of fund-level allocation and redemption decisions made by MIO's professional staff in the previous quarter. Allocations and redemptions are increases and reductions in the amount of money designated for a third-party managed fund. To the best of my recollection, I was never asked to ratify allocation or redemption decisions related to specific investments made by the third-party managers. Because the MIO Board delegated responsibility for making investments to MIO's professional staff, we reviewed those investments at a high level, to exercise our fiduciary responsibilities. Unless an investment posed a specific issue—for example, an investment in a particular fund that brought MIO close to a pre-established risk threshold—we typically did not discuss these investments at board meetings.

5. The Investments Committee would from time to time discuss whether or not to invest with a new third-party fund manager. These conversations were about general issues related to the manager's track record and performance rather than information about

particular investments the manager made or planned to make. It was rare for discussions about a particular manager to take up significant time during board or committee meetings. I do not recall any discussions about approving managers toward the end of my Board service in 2017—the function was fully delegated to the MIO staff.

6. I have no recollection of discussing Whitebox during my time on the MIO Board.

7. In June 2017, I stepped down from my role on the MIO Board. While I do not believe there was any conflict that arose from my position on the board, I generally understood that there had been some external challenges to RTS's bankruptcy disclosures and it would streamline RTS's disclosure process going forward if I did not serve on the MIO board.

8. I also am aware, from my consulting work for McKinsey RTS, that McKinsey maintains a number of policies and procedures designed, among other things, to safeguard confidential client information. In particular, every other year McKinsey mandates that each member of the Firm complete training modules designed to ensure compliance with its policies on confidentiality and, in particular, the importance of maintaining information relating to client engagements in strictest confidence – *e.g.*, only sharing such information on a "need to know" basis. In practice, that means that the information relating to a client engagement would remain within the members of the client service team ("CST") for a particular engagement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Jon Garcia

President

3

McKinsey Recovery & Transformation
Services U.S., LLC

4