# EXHIBIT 38

McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome. ...    https://www.nytimes.com/2018/09/26/business/mckinsey-puerto-rico.html

Case 15-10541-BLS    Doc 2417-38    Filed 04/24/19    Page 2 of 4
Case 18-35672    Document 669-1    Filed in TXSB on 12/03/18    Page 64 of 95

# The New York Times

# McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome.

By **Mary Williams Walsh**

Sept. 26, 2018

McKinsey & Company is advising the Puerto Rican government on a financial overhaul to lighten its crippling debts — a process that will determine how much money the bankrupt territory's creditors recoup on their investments.

The giant consulting firm has millions of dollars riding on the outcome. The reason: McKinsey owns bonds issued by Puerto Rico.

That creates a potential conflict of interest between McKinsey's client, which wants to save as much money as possible, and McKinsey itself, which wants to make as much money as possible on the bonds.

In a normal American bankruptcy proceeding, such a conflict would need to be disclosed to the court and to the public. But the legal framework established by Congress to deal with Puerto Rico's financial collapse — the territory has $123 billion in debts — left out the disclosure rules.

Affiliates of McKinsey revealed their investments in filings in federal court in Puerto Rico's capital, San Juan. The filings were not made under McKinsey's name, and were among nearly 165,000 bankruptcy claims.

McKinsey so far has received $50 million in fees to advise Puerto Rico's federal oversight board on drafting a blueprint for the island's fiscal affairs over the next decade. That plan projected how Puerto Rico's economy would respond to the changes.

It also determined how much money the island could afford to pay back to its bond holders. But the decision about which investors will receive how much was left to other institutions.

McKinsey, according to regulatory filings and court documents, is one of those bondholders. It owns at least $20 million — and possibly considerably more — of such securities.

"It's a conflict of interest," said Lynn M. LoPucki, a law professor at the University of California, Los Angeles, and the founder of the school's Bankruptcy Research Database. "They are making decisions that will determine how much money is given to themselves."

A spokesman for McKinsey, D. J. Carella, said the firm had fully complied with all legal requirements, "including those regarding potential conflicts, and we will continue to do so."

After The New York Times contacted McKinsey with questions about its investments, the federal oversight board became aware of the firm's bond holdings, according to a board spokeswoman. The oversight board then requested that an outside ethics firm conduct a review of the situation, she said. The review found that McKinsey's investment unit operated independently of its consulting business.

The Treasury Department asked during the Obama administration that the disclosure provision be left out of Puerto Rico's restructuring law, said Kristina Baum, a spokeswoman for the House Committee on Natural Resources. No one considered the request controversial.

Traditionally, a key aim of filing for bankruptcy is to reduce the amount of money the borrower owes, in bonds or in loans, to outside parties. That often means that people and institutions owning bonds issued by the now-bankrupt entity get back only a fraction of what they had originally lent.

Exactly how much Puerto Rico's bondholders will recoup is a central question facing the territory's oversight board. Puerto Rico's current debts include several different types of bonds, whose priorities are in dispute. The holders of those bonds are jockeying to get the greatest amount of the available money. McKinsey's projections determined how much money is available to repay creditors.

"Whoever's doing the numbers has tremendous power," including over how much money will ultimately flow to McKinsey itself, Mr. LoPucki said.

McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome. ... https://www.nytimes.com/2018/09/26/business/mckinsey-puerto-rico.html

Case 15-10541-BLS    Doc 2417-38    Filed 04/24/19    Page 3 of 4
Case 18-35672   Document 609-1   Filed in TXSB on 12/03/18   Page 63 of 95

The biggest battle so far has been over some bonds that were marketed as nearly risk-free because they were backed by expected revenue from Puerto Rico's sales tax. Holders of those bonds argued that they deserved almost all of their money back, but that meant that owners of other Puerto Rican bonds would get less.

A bankruptcy claim listing Puerto Rican bonds held by Compass CSS High Yield, a fund owned by McKinsey. Two columns, highlighted for this photograph, show their face value, left, and the claim amounts.

In August, the dispute was resolved. The outcome was surprisingly generous to the owners of those sales-tax bonds. They were offered new bonds that would be valued at either 93 percent or 56 percent of what the old ones originally were worth, depending on the terms of the old bonds. (The amounts that investors in many other bonds will receive haven't yet been settled.)

That was a boon for many investors, given that the bonds were trading for as little as 9 percent of their face value as recently as December.

McKinsey owns some of those bonds.

The investments were made through a subsidiary of the consulting firm, MIO Partners. MIO manages roughly $25 billion for McKinsey's thousands of employees, alumni and retirees. MIO, in turn, runs three hedge funds — Compass CSS High Yield, Compass ESMA and Compass TSMA — that have reported owning the sales-tax bonds and are seeking $20 million in repayments, according to regulatory filings and bankruptcy claims in San Juan's federal court.

Even if all of those $20 million in bonds were redeemed at the lower amount of 56 percent, that would be an $11.2 million payment for McKinsey. The actual amount will probably be bigger. Filings by Compass CSS indicate that it stood to recoup about $10 million of its $16.3 million claim. Compass CSS originally paid $4.5 million for its bonds, the filings show, so the McKinsey-owned hedge fund could more than double its investment.

Mr. Carella, the McKinsey spokesman, said its internal investments were managed by an independent unit, "separate from McKinsey's consulting operations."

Another McKinsey investment in Puerto Rico appears to be through a company called Whitebox Advisors, which as of 2016 managed

McKinsey Advises Puerto Rico on Debt. It May Profit on the Outcome. ...    https://www.nytimes.com/2018/09/26/business/mckinsey-puerto-rico.html

Case 15-10541-BLS    Doc 2417-38    Filed 04/24/19    Page 4 of 4
Case 18-35672   Document 609-1   Filed in TXSB on 12/03/18   Page 66 of 95

about $100 million for McKinsey's retirement plans, according to regulatory filings.

Whitebox, through various investment funds, holds more than $140 million of Puerto Rican bonds. One of those funds is called Pandora Select, which as of 2016 held money on behalf of McKinsey.

In most other bankruptcies, McKinsey would have been required to disclose any Puerto Rican investments it had via Whitebox.

Whitebox manages money for a number of clients, and court records do not show how much of its Puerto Rican assets are held for McKinsey. A Whitebox spokesman, Gregory Marose, said the firm had properly disclosed its investments.

Mr. Carella acknowledged that McKinsey had attended some meetings with creditors. Over all, though, the consulting firm's role is to "design a comprehensive fiscal plan" for Puerto Rico, he said. He noted that other companies were handling the negotiations that would determine how much creditors, including McKinsey, recovered.

In many other American bankruptcies, a potential conflict of interest like McKinsey's — no matter how innocuous — would have to be disclosed to the public, the court and the Justice Department. The purpose of such disclosures is to protect the integrity of the bankruptcy process and avoid the appearance of inside dealing or cheating.

If a judge finds that the disclosed conflicts of interest could influence the proceedings, the judge can remove parties, such as consulting firms, from the case or force them to relinquish their fees.

When it won the job advising the oversight board, McKinsey signed a three-page Vendor Conflict of Interest Disclosure Certification. It states that McKinsey is not separately working with any people on the oversight board or any branch of the Puerto Rican government. But it says nothing about McKinsey's own investments or other potential conflicts of interest.

To comply with disclosure requirements, banks, law firms, appraisers, accounting firms and consultants that work for creditors have had to file more than 15,000 pages of paperwork about potential conflicts of interest.

Aside from the three-page certification, McKinsey has filed nothing.

That's because Congress, as it wrote Puerto Rico's restructuring law, excluded advisers to the territory's oversight board from the disclosure requirements that applied to everyone else. It's unclear why lawmakers created that exemption.

McKinsey this year has faced scrutiny for failing to disclose conflicts of interest in other bankruptcy cases. In May, Jay Alix, the founder of the restructuring firm AlixPartners, sued McKinsey in federal court in Manhattan, accusing the firm of concealing conflicts of interest in 13 bankruptcies in which it advised the companies.

This month, four members of Mr. Alix's legal team — two academic experts on bankruptcy law and two retired bankruptcy judges — filed a sworn declaration in the case, calling McKinsey's alleged evasion of disclosure rules "unprecedented."

"We have never seen anything like it," they wrote. "We have seen many cases in which a professional has negligently, recklessly or even intentionally failed to disclose a connection. But in our collective experience, no professional has ever made the conscious decision not to specifically identify *any* of its connections."

A version of this article appears in print on Sept. 28, 2018, on Page B1 of the New York edition with the headline: Debt Adviser To Puerto Rico Stands to Profit