# EXHIBIT 67

**Exhibit 1**

**Engagement Letter**

# AGREEMENT

Mr. Mark McFarland
Mr. Scott Leonard
GenOn Energy, Inc.
804 Carnegie Center
Princeton, New Jersey 08540


Dear Mr. McFarland:

      This letter (the "Agreement"), dated as of June 14, 2017, (the "Effective Date"), is between McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS US") and GenOn Energy, Inc. (the "Client"), and sets forth the terms of McKinsey RTS US's engagement to provide consulting services to the Client as expressly contemplated by this Agreement (the "Engagement"). McKinsey RTS US and the Client are collectively referred to in this Agreement as the "Parties," and each a "Party".

    1.    SERVICES.

    (a)    The Client hereby agrees to retain McKinsey RTS US to provide the services (the "Services") described in this Section 1.

    (b)    To fulfill its responsibilities on a timely basis McKinsey RTS US will rely on the Client's timely cooperation regarding the Engagement, including the Client's making available to McKinsey RTS US relevant data, information and personnel, performing any tasks or responsibilities assigned to the Client and notifying McKinsey RTS US of any issues or concerns the Client may have relating to the Services. The Client understands and acknowledges that McKinsey RTS US's delivery of the Services and the Fees (as defined below) charged hereunder are dependent upon timely decisions and approvals by the Client and its management. The Client shall be responsible for any delays, additional costs or other deficiencies caused by not completing their respective responsibilities.

    (c)    The general responsibilities of McKinsey RTS US will be as follows:

    1)    Develop, monitor, reforecast a short-term cash flow forecasting process and implement a cash management strategy;

    2)    Provide strategic advice and develop relevant analyses to support the overall restructuring process;

    3)    In cooperation with the Client's officers, legal counsel, investment bankers and other engaged professionals and counsel, develop and prepare a chapter 11 plan of reorganization;

    4)    Assist the Client in managing its chapter 11 bankruptcy process, including managing outside stakeholders and their professionals and assisting Client in developing financial reports and other materials that are required to be filed with the bankruptcy court;

    5)    Assist in development of supporting diligence materials and presentations for use in various stakeholder meetings, attend diligence sessions and working meetings with various stakeholders and constituents and provide ad hoc support to the management team;

    6)    Assist with the evaluation of certain near term operational cost reduction and value

enhancement opportunities (e.g., SG&A, fixed costs and procurement);

7) Provide testimony and other litigation support as requested by Client in connection with matters upon which McKinsey RTS US is providing Services; and

8) Assist with all such other restructuring matters as may be requested by Client and/or the Board that fall within McKinsey RTS US's expertise and that are mutually agreed upon between the Parties.

During the term of the Engagement, priorities may shift or unexpected events may occur which will necessitate changes to the Services. In this event, McKinsey RTS US and the Client will jointly discuss the anticipated impact on the Services and agree on any appropriate adjustments, including to the scope of work, timeframe, budget and fees.

2. COMPENSATION. The Client shall compensate McKinsey RTS US for its professional fees and expenses, including payment of a retainer, in connection with the Services for the Engagement in the amounts set forth in Schedule 1 attached hereto (the "Fees"). Prior to commencing work under this Agreement and for this Engagement, McKinsey RTS US was paid a total retainer in the amount of $1,500,000. McKinsey RTS US shall bill Client on a monthly basis with payment due immediately upon receipt of the invoice. All invoiced amounts shall be applied against the retainer. McKinsey RTS US shall issue periodic statements for replenishing the retainer. These statements, which shall be due upon receipt by the Client, shall be submitted with sufficient frequency that a retainer balance sufficient to pay the Fees shall always be maintained. The retainer shall remain in place until work under this Agreement is concluded, or this Agreement is amended in writing. All retainer balances shall be credited against any outstanding amounts due upon termination of the Engagement, with the remainder to be returned to the Client upon satisfaction of all payment obligations due under this Agreement. In the event the retainer balance is insufficient to pay any invoice, which remains unpaid for more than 30 days after presentation, interest will accrue on the outstanding amount at the rate of 1% per month, calculated from the 31st day after presentation until the date of payment.

3. CONFIDENTIALITY.

(a) McKinsey RTS US will keep confidential any confidential information furnished by the Client to McKinsey RTS US in connection with the Services ("Confidential Information"). McKinsey RTS US will disclose Confidential Information only to its employees and agents who have a need to know and are bound to keep it confidential and will use Confidential Information only for purposes of performing the Services including preparing Proposals and evaluating potential services, or as otherwise authorized by the Client. Subject to its confidentiality obligations, where the agreed upon Services include benchmarking services, McKinsey RTS US may also incorporate Confidential Information into its benchmarking databases for use in reporting on sanitized or aggregate trends and metrics without attribution to the Client. To bring the best of McKinsey RTS US's global resources to serve the Client, the Client agrees that McKinsey RTS US may transfer Confidential Information to geographies other than those in which it was collected or received to facilitate any activities authorized by the Client, provided that at all times Confidential Information will be treated as confidential and protected in accordance with this Agreement. Confidential Information shall not include information that is or becomes publicly available, already known to McKinsey RTS US, or independently acquired or developed by McKinsey RTS US, or legally required to be disclosed. In performing the Services, McKinsey RTS US will use and rely primarily on information available from public sources and the Confidential Information, and Client acknowledges that it is authorized to provide McKinsey with such Confidential Information for its use in connection with the agreed Services and that McKinsey

will have no
obligation to independently verify such information.

4. <u>Use of McKinsey RTS US NAME AND DELIVERABLES</u>. In connection with the Engagement, McKinsey RTS US may furnish the Client with information, advice, reports, analyses, presentations or other such materials (the "<u>Deliverables</u>"). The Client understands and agrees that any such Deliverables are furnished or presented solely for the Client's internal use and benefit (limited to management and the Board) and may not be furnished or conveyed in whole or in part to any person or entity other than as described in this Section 4 without McKinsey RTS US's prior written consent or as required by law. The Client may furnish and convey Deliverables to its management and directors (and to its legal counsel), in each case only if such persons (i) need to know the information set forth, or embodied in, such Deliverables, (ii) are informed of the confidential nature of the Deliverables, and (iii) agree to comply with the restrictions stated in this Section 4. The Deliverables may not be furnished, conveyed or presented to any person or entity other than as described in this Section 4 unless (A) the Client has received McKinsey RTS US's oral or written consent to furnish or convey such information, and (B) such third parties (x) are informed of the confidential nature of the information and (y) prior to Client's disclosure, each third party to whom it seeks to disclose such information executes and delivers to McKinsey RTS US a letter agreement in a form reasonably acceptable to McKinsey RTS US. The Client further agrees that, without McKinsey RTS US's prior written consent, it shall not refer to McKinsey RTS US or attribute any information to McKinsey RTS US in any document or communication external, or reasonably likely to be disseminated externally, to the Client for any purpose, including in press releases and web sites. The Client also agrees that it shall not, and shall not permit its advisors to, refer to McKinsey RTS US or attribute any information to McKinsey RTS US, either generically or by name, without McKinsey RTS US's prior written approval except as required by law. McKinsey RTS US shall not issue any press release which references this Agreement or the Client without the Client's prior written consent.

5. <u>INTELLECTUAL PROPERTY</u>. Upon payment in full of McKinsey RTS US's fees, the Client will own all Deliverables prepared for and furnished by McKinsey RTS US to the Client in connection with the Services, save that McKinsey RTS US retains ownership of all concepts, analyses, know-how, tools, frameworks, software, algorithms, models and industry perspectives developed or enhanced outside of or in connection with the Services (the "McKinsey Tools"), it being understood that none of the McKinsey Tools will contain the Client's Confidential Information. To the extent the Deliverables include any McKinsey Tools, McKinsey RTS US hereby grants the Client a non- exclusive, non-transferable, non-sublicenseable, worldwide, royalty-free license to use and copy the McKinsey Tools solely as part of the Deliverables and subject to the above limitations herein on the use of McKinsey RTS US name and Deliverables.

6. <u>INDEMNIFICATION</u>

(a) In order to induce McKinsey RTS US to provide the Services to the Client, the Client and its affiliates hereby agree (i) to indemnify, hold harmless and defend McKinsey RTS US, and its past, present and future affiliates, and each of their respective directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors and controlling persons (collectively, the "<u>Indemnified Parties</u>" and each individually, an "<u>Indemnified Party</u>"), to the fullest extent lawful, from and against any and all losses, claims, penalties, damages or liabilities (or actions in respect thereof), joint or several, caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any

actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any Services provided to or termination of, any employee benefit plan (including any defined contribution plan)); and (ii) to reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel and the costs of McKinsey RTS US's professional time) as and when they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (whether or not such Indemnified Party is a formal party to any such action, suit, dispute, inquiry, investigation or proceeding), caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any Services provided to or termination of, any employee benefit plan (including any defined contribution plan)), and in enforcing this Agreement. However, the Client and its affiliates shall not be liable under the foregoing indemnity and reimbursement provisions for any loss, claim, damage, penalty or liability which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted primarily and directly from the willful misconduct or gross negligence of such Indemnified Party toward the Client and its affiliates, but pending any such judicial determination, the Client and its affiliates shall continue to be obligated on, and shall continue to perform, its indemnification and reimbursement obligations.

(b) If for any reason the foregoing indemnification or reimbursement is held by a court of competent jurisdiction to be unavailable to any Indemnified Party or insufficient fully to indemnify or reimburse any such Indemnified Party or to hold it harmless in respect of any losses, claims, damages, penalties, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Client and its affiliates shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, penalties, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Client and its affiliates, on the one hand, and McKinsey RTS US, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Client and its affiliates shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Client and its affiliates, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. The Client, its affiliates and McKinsey RTS US agree that it would not be just and equitable if contribution pursuant to this Section 6(b) were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above in this Section 6(b). Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of Fees (but not expenses) actually received by McKinsey RTS US from the Client and its affiliates pursuant to this Agreement.

(c) The Client and its affiliates shall not, without the prior written consent of McKinsey RTS US, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification, reimbursement of expenses or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto).

(d) The Client and its affiliates agree that neither McKinsey RTS US nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, its affiliates or any person or entity asserting claims on behalf of or in right of the Client and its affiliates caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, or any actions taken or omitted to be taken by an Indemnified Party or the Client and its affiliates in connection with this Agreement or the Engagement (including, without limitation, any acts taken or omitted to be taken by an Indemnified Party as a representative, agent, fiduciary or in any other capacity of, or in connection with any services provided to or termination of, any employee benefit plan (including any defined contribution plan)), except for losses, claims, damages, penalties or liabilities incurred by the Client and its affiliates which are finally judicially determined by a court of competent jurisdiction on the merits to have resulted primarily and directly from the willful misconduct or gross negligence of McKinsey RTS US or any other Indemnified Party. In no event, however, shall McKinsey RTS US's or any other Indemnified Party's liability to the Client or its respective affiliates, successors, or any person claiming on behalf of or in right of the Client, including Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors, exceed, when taken together with all losses for which McKinsey RTS US or such other Indemnified Party is liable in connection with this Agreement or the Engagement, the amount of Fees actually received by McKinsey RTS US in connection with the Engagement.

(e) The indemnity, reimbursement, and other obligations and agreements of the Client and its affiliates set forth in this Section 6: (i) shall apply to any Services provided by McKinsey RTS US in connection with the Engagement (whether provided prior to, on or after the Effective Date) and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Client and its affiliates may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Client, its affiliates, or any Indemnified Party, or any other person or entity, (iv) shall survive the completion of the Services described in, and any expiration or termination of the relationship established by, this Agreement, and (v) shall be binding on any successor or assign of the Client and its affiliates. In no event shall any Indemnified Party be responsible for any lost profits or special, punitive, exemplary, indirect or consequential damages.

7. **CLIENT ACKNOWLEDGMENT**. It is McKinsey RTS US's long-standing policy to serve competing clients and clients with potentially conflicting interests as well as counter-parties in merger, acquisition and alliance opportunities, and to do so without compromising McKinsey RTS US's professional responsibility to maintain the confidentiality of client information. Consistent with such practice and McKinsey RTS US's confidentiality obligations to its other clients, McKinsey RTS US is not able to advise or consult with the Client about McKinsey RTS US's serving the Client's competitors or other parties. To avoid situations of potential conflict, McKinsey RTS US will not assign consultants, who are providing the Services and who receive Confidential Information, to a competitively sensitive project for a significant period of time (typically two years) following an assignment for the Client.

8. **TERM AND TERMINATION**. The Engagement will commence as of the Effective Date and shall continue until the earlier of: (a) the completion of the Services hereunder, or (b) the termination of this Agreement by either the Party by giving five (5) days' written notice to the other Party. In the event of any termination, the Client will pay McKinsey RTS US's fees and expenses up to the effective date of termination.

9. **RELATIONSHIP OF THE PARTIES**. The Parties intend that an independent contractor relationship will be created by this Agreement. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create, a fiduciary or agency relationship between McKinsey RTS US and the Client, or its Board of Directors. More specifically, for purposes of this Agreement, neither McKinsey RTS US, its affiliates, nor any individual consultant providing services to the Client shall be acting as an officer, director, manager, trustee, or in any other agency or fiduciary capacity. Notwithstanding McKinsey RTS US's provision of the Services described in Section 1, none of McKinsey RTS US, its affiliates, nor any individual consultant providing services to the Client shall be (i) deemed a fiduciary; or (ii) be required to perform any tasks, actions or functions, and shall not be required to assume any roles, assignments or capacities, that (in any such case) could give rise to fiduciary status to McKinsey RTS US, its affiliates or any Indemnified Party with respect of the Client.

10. **BANKRUPTCY FILING.** The Client commenced a case under chapter 11 of title 11 of the United States Code. The Client will apply to the Bankruptcy Court, on the date of filing or as soon thereafter as practicable, to obtain approval of McKinsey RTS US's retention and retainer, nunc pro tunc to the date of filing. It is understood that in a chapter 11 case, the terms and conditions of this Agreement, particularly the compensation provisions, are subject to (a) prior approval of the Bankruptcy Court to be treated as administrative expenses of the bankruptcy case; and (b) may be subject to a standard of reasonableness. McKinsey RTS US shall file applications for approval of its fees and expenses in accordance with the terms of any interim compensation orders or other orders approved by the Bankruptcy Court.

11. **MISCELLANEOUS**. This Agreement and any schedules hereto constitute the entire agreement between the parties, and there are no prior or contemporaneous oral or written representations, understandings or agreements relating to this subject matter that are not fully expressed herein or therein. This agreement and the Proposals shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of law principles and shall inure to the benefit of and be binding on the successors and assigns of the Client and McKinsey RTS US. The following Sections shall survive the completion or any termination of the Services: 3 (Confidentiality), 4 (Use of McKinsey RTS US Name and Deliverables), 5 (Intellectual Property), 6 (Indemnification), 7 (Client Acknowledgement), 8 (Term and Termination), 9 (Relationship of the Parties), 10 (Bankruptcy Filing), and 11 (Miscellaneous) and any other provision which by law or by its nature should survive. Neither party may assign its rights or obligations under this agreement to any person or entity without the written consent of the other party, not to be unreasonably withheld, provided, however, that either party may assign its rights and obligations under this agreement to its affiliates upon reasonable written notice to the other party but without the written consent of the other party. Assignment shall not relieve either party of its obligations hereunder.

*Remainder of Page Intentionally Blank*

                    McKinsey Recovery & Transformation
                    Services U.S., LLC

By: _____

Name:    Kevin Carmody

Title:     Practice Leader

ACCEPTED AND AGREED TO

GenOn Energy, Inc.

By: _____

Name:   Scott LEONARD

Title:    GenOn, Corp. Officer

NY 73152475

8

**Schedule 1**

**Fees for Services**

In exchange for its services, Client will compensate McKinsey RTS US in accordance with the terms of this Agreement, which provides for payment of Fees as follows:

(a) Retainer: A retainer of $1,500,000 was received prior to this Engagement, as described in Section 2 of the Agreement.

(b) Hourly rates: Following a bankruptcy filing, McKinsey RTS US's fees are to be based on the hours worked by McKinsey RTS US's personnel at the following hourly rates:

| | | |
|---|---|---|
| i. | Practice Leader: | $980- $1,100 |
| ii. | Senior Vice President: | $720 - $900 |
| iii. | Vice President: | $620 - $720 |
| iv. | Senior Associate | $515 - $590 |
| v. | Associate: | $410 - $490 |
| vi. | Analyst: | $260 - $360 |
| vii. | Paraprofessional: | $230 - $260 |

McKinsey RTS US reviews and revises its billing rates on or about January 1 of each year.

(c) Expenses: The Client will reimburse McKinsey RTS US for all reasonable out-of-pocket expenses incurred in connection with the Engagement, such as travel, lodging, case administrators, and working meals.

8