# EXHIBIT 71

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-33896 (KRH) |
| Debtors. | Jointly Administered |

| |
|---|
| MAR-BOW VALUE PARTNERS, LLC., |
| Movant, |
| v. |
| MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC, |
| Respondent. |

### DECLARATION OF JON GARCIA IN RESPECT OF QUESTIONS PROFFERED BY UNITED STATES TRUSTEE IN RESPONSE DATED JULY 31, 2018

I, Jon Garcia, under penalty of perjury, declare as follows:

1. I am the President of McKinsey Recovery & Transformation Services U.S., LLC ("RTS") and have held that position since 2010. During the pendency of the Alpha Natural Resources chapter 11 case, I was also on the board of directors of MIO Partners, Inc. ("MIO"). MIO is appointed by the McKinsey Master Retirement Trust ("MMRT") to manage McKinsey & Company's pension and investment programs and their assets held by MMRT.

2. I submit this declaration to respond to the questions for which I have personal knowledge of the answers, which questions were asked by the United States Trustee in his pleading entitled "United States Trustee's Response to Mar-Bow Partners, LLC's (I) Motion to

Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling," dated July 31, 2018 ("Mar-Bow's Motion") [Doc. # 4126] in the Alpha Natural Resources chapter 11 case in the Eastern District of Virginia, Richmond Division (Case No. 15-33896 (KRH)).

3. I make this declaration based on personal knowledge, except to the extent I identify public records or business records maintained in the regular course of RTS or MIO's activities from which I have obtained information reported here.

4. As a member of MIO's board of directors, I was on its Audit Committee and Investment Committee. The board focused on risk management, technology, and client service, and participated in reviewing the performance of MIO's Investment Management Team. The board oversaw the overall return on MMRT's assets to monitor whether such returns were satisfactory or better relative to investment benchmarks for different types of investments. To attain appropriate diversification, we needed funds with many different attributes, such as funds correlated and uncorrelated with the economy, and funds that would do well in good times and other funds that would do well in bad times.

5. In the course of my tenure on the board, I was provided lists of MIO's third party fund managers. I now know some of the lists may have included Whitebox funds. Because MIO typically invests in more than one hundred fund managers and underlying funds, their individual names had little significance to me. It was rare that I discussed an individual fund inside MIO, and I have no recollection of ever discussing Whitebox.

6. As a director of MIO, I knew I was not supposed to discuss its investments outside MIO, and I adhered strictly to that policy. I never discussed MMRT's investment in Whitebox with anyone at RTS or McKinsey & Company, and could not have done so because I did

not memorize the funds in which MMRT was invested and have no recollection of ever noticing that Whitebox had funds in which MMRT invested.

7. Upon RTS's involvement in a new chapter 11 engagements, I—like all other partners and employees of McKinsey—was sent surveys designed to help RTS identify connections between myself and any parties on the debtor's Interested Parties list. These surveys were typically sent to me via email or an online platform. The surveys asked, *inter alia*, whether I had certain types of connections (*e.g.*, all clients I had served in the previous three years (whether through McKinsey or another employer) that were on the Interested Parties list; whether I worked at any party on the Interested Parties list in the past three years, etc.). I responded to any such survey by reviewing the debtor's Interested Parties list, determining to the best of my ability whether I had any responsive connections to the listed parties, and truthfully disclosing any responsive connections I had discovered.

8. As President of RTS, I was aware of its engagement to serve Alpha Natural Resources. I completed an online survey designed to identify conflicts I might have had with parties on the Interested Parties list that Alpha Natural Resources had provided to RTS and other professionals who were applying for an order of employment under Rule 2014(a). I reviewed the Interested Parties list and responded to the survey truthfully, to the best of my knowledge. The Interested Parties list did not include Whitebox. Nor was I aware that Whitebox had any involvement in the Alpha Natural Resources chapter 11 case. Consequently, I did not investigate whether I had any connection to Whitebox, whether through my capacity as a director of MIO or for any other reason.

9. I did not bill any time to the Alpha Natural Resources engagement and did not participate in providing services to Alpha Natural Resources during its chapter 11 case. I first

3

learned of Whitebox's involvement in the case in April 2018, when reporters from the *Wall Street Journal* contacted RTS with regard to a report that was forthcoming and has since been published.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Jon Garcia
President

McKinsey Recovery & Transformation
Services U.S., LLC

Subscribed in my presence and sworn to before me, _Nhan C. Tran_, a notary public in and for state of Maryland and Montgomery county, this 05th day of September, 2018, by _Jon C. Garcia_.

_____ Notary Public

NHAN C. TRAN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires March 8, 2022

4