# EXHIBIT 74

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

**Hearing Date:  May 19, 2016**

**Hearing Time: 10:00 a.m.**

---------------------------------------------------------x

In re

SUNEDISON, INC. *et al.*,

                          Debtors.

Chapter 11

Case No. 16-10992 (SMB)

(Jointly Administered)

---------------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION FOR ORDER PURSUANT TO SECTIONS 327(a), 328, 330, 331, AND 1107(b) OF THE BANKRUPTCY CODE, BANKRUTPCY RULES 2014(a) AND 2016(b), AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1 AUTHROIZING THE EMPLOYMENT AND RETENTION OF MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS RESTRUCTURING ADVISOR FOR THE DEBTORS <u>NUNC PRO TUNC TO THE PETITION DATE</u>

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), respectfully objects to the application (the "Application") filed by the Debtors to retain McKinsey Recovery & Transformation Services U.S., LLC. ("McKinsey RTS") as restructuring advisor.  ECF No. 202.  In support of his objection, the United States Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Bankruptcy Rule 2014 requires that professionals to be employed file a verified statement of "all of the person's connections" to the debtor, creditors, and any other parties interest.  The Debtors seek to retain McKinsey RTS as their restructuring advisor, but McKinsey RTS' declaration discloses numerous vague and amorphous connections to creditors and other major parties in interest.  McKinsey RTS has failed to identify many of these connections by name and to provide sufficient insight into the nature of the connections.  Bankruptcy Rule 2014 requires that disclosures be sufficiently explicit for a court and other parties to determine whether a

professional is disinterested or holds or represents an adverse interest.  An indeterminate

statement of connections with a creditor does not satisfy Rule 2014.  Rather, "complete and

candid disclosure . . . is indispensable to the court's discharge of its duty to assure the

[professional's] eligibility for employment under section 327(a) . . . ."  In re eToys, Inc., 331

B.R. 176, 189 (Bankr. D. Del. 2005).  Rigorous compliance with Rule 2014 is critical to the

integrity and transparency required of the bankruptcy system.  Accordingly, the Application

should be denied.[1]

## BACKGROUND

### General Background

1.       On April 21, 2016 (the "Petition Date"), the Debtors each filed petitions for relief

under chapter 11, title 11, United States Code (the "Bankruptcy Code").  ECF No. 1.

2.       The Debtors are developers of renewable-energy solutions.  See Application at ¶

6.  In addition to its development business, the Debtors own, operate and/or provide maintenance

services for clean power generation assets.  Id.

3.       The Debtors cases are jointly administered.  ECF No. 66.

4.       The Debtors currently are operating their business and managing their affairs

pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.       The Debtors have moved for the appointment of an examiner.  ECF No. 11.  A

hearing on the examiner motion is scheduled for May 19, 2016.

6.       On April 29, 2016, the United States Trustee appointed an official committee of

unsecured creditors.  ECF No. 148.

---

[1]       The United States Trustee Program and McKinsey RTS are engaged in continuing discussions regarding
these matters.

**The Retention Application**

7.        On May 6, 2016, the Debtors filed the Application seeking to retain McKinsey

RTS as Restructuring Advisors.  Pursuant to the Declaration of Mark W. Hojnacki (the

"Declaration") annexed to the Application, McKinsey RTS has numerous connections to parties

in interest in this case.  See Declaration at ¶¶ 24-63.  McKinsey RTS, however, does not

adequately disclose the identity of many of these connections.

8.        Specifically, according to the Declaration, McKinsey RTS represents (i) a

confidential client that is a competitor of the Debtors, (ii) five confidential clients that are

customers of the Debtors, (iii) one confidential client that is a utility for the Debtors, and (iv) one

confidential client that is a vendor for the Debtors.  Declaration at ¶¶ 32, 34, 53, and 54.

McKinsey RTS does not disclose the identity of these confidential clients.

9.        In addition, the Declaration contains boilerplate disclosures that indicate that there

may be additional undisclosed connections.  For example, the Declaration states that McKinsey

RTS and certain affiliates serve clients in a manner that protects the confidentiality of each

client, including the confidentiality of the engagement itself.  Id. at ¶ 55.  Thus, McKinsey RTS

and its affiliates may have in the past, may presently, and may in the future provide services to

parties in interest in this case that, to the best of their knowledge, do not focus on direct

relationships or transactions with the Debtors.  Id.  Such parties in interest are not disclosed.

10.        Similarly, McKinsey RTS states that it, and its affiliates, provides services to

companies that operate in the solar and wind sectors in which the Debtors operate, which could

include a review and comment on publicly available information and strategic considerations

with respect to the Debtors, as well as other companies.  Id. at ¶ 56.  Such companies are not

disclosed.

11.     It is further disclosed that McKinsey RTS and its affiliates may also have business

associations with certain parties in interest or interests adverse to such parties in interest which,

to the best of their knowledge, have no connections with these proceedings.  *Id.*  Such business

associations are not disclosed.

12.     Finally, McKinsey RTS discloses that its representation of J.P. Morgan, a

convertible noteholder, represents an amount greater than one percent of its annual revenue as of

March 31, 2016.  *Id.* at 61.  The actual amount of gross revenue is not disclosed.

## OBJECTION

### A.     Statutory Framework.

Section 327 provides that the trustee or debtor in possession may employ, with court

approval, professionals who are disinterested and who do not hold or represent interests adverse

to the estate.  11 U.S.C. § 327.  Bankruptcy Rule 2014 imposes a complementary duty of

disclosure so that courts and parties can determine whether a professional to be employed

satisfies section 327's ethical requirements. Said differently, Bankruptcy Rule 2014 has one

primary purpose—to facilitate compliance with section 327.  But Bankruptcy Rule 2014 is also

much broader than section 327:  "[T]he requirements of Fed. R. Bankr. P. 2014 are more-

encompassing than those governing the disinterestedness inquiry under section 327.  For while

retention under section 327 is only limited by interests that are 'materially adverse,' under Rule

2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed." In re Leslie

Fay Companies, Inc., 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).  Thus, professionals must

disclose "all of the [professional's] connections with the debtor, creditors, any other party in

interest, their respective attorneys and accountants, the United States Trustee, or any person

employed in the office of the United States trustee."  See Bankruptcy Rule 2014. "Bankruptcy

Rule 2014 disclosure is not optional; it's mandatory." In re Dickson Properties, LLC, 2012 WL
2026760, *8 (Bankr. E.D. Va. June 5, 2012); see also In re Granite Partners LP, 219 B.R. 22, 44
(Bankr. S.D.N.Y. 1998) ("The trustee broke the cardinal principle of Rule 2014(a). He arrogated
to himself a disclosure decision that the court must make.").

These statutory provisions, which prohibit conflicting interests in bankruptcy "serve the
important policy of ensuring that all professionals appointed pursuant to section 327(a) tender
undivided loyalty and provide untainted advice and assistance." Rome v. Braunstein, 19 F.3d
54, 58 (1st Cir. 1994). "Because '[t]he objective of requiring disclosure is not so much to protect
against prejudice to the estate, but to ensure undivided loyalty and untainted advice from
professionals . . . . [L]ack of disclosure in and of itself is sufficient to warrant disqualification,
even if in the end there was no prejudice." In re Byington, 454 B.R. 648, 657 (Bankr. W.D. Va.
2011) (quoting Midway Indus. Contractors, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001)).
Professionals must "be meticulous in disclosing 'all connections' with the debtor and other
parties in interest, the failure to do so justifying a court's taking significant punitive or corrective
action." Id.; see also In re EBW Laser Inc., 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005)
(quotation omitted) ("The Bankruptcy Court may, in its discretion, disqualify counsel, or deny
compensation, as a sanction for failure to make the disclosure required.").

The requirement to disclose all connections is not subjective, "whereby the professional
discloses only those 'connections' that he/she/it concludes are relevant." In re Matco Elec.
Group, Inc., 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008). Said differently, "the existence of a
conflict of interest is not the *quid pro quo* for whether or not disclosure must be made." Id; see
also Granite Partners, L.P., 219 B.R. at 35 (court should not have to "rummage through files or
conduct independent fact finding investigations" to determine whether a professional should be

disqualified).  And the duty to disclose under Bankruptcy Rule 2014 is ongoing, continues

throughout the case, and "requires 'spontaneous, timely, and complete disclosure.'"  In re The

Harris Agency, 462 B.R. 514, 524 (E.D. Pa. 2011) (citation omitted).

### B. Vague Disclosures That Do Not Identify Connections Do Not Comply with the Bankruptcy Rules and Bankruptcy Code

Rule 2014 requires that disclosures be sufficiently explicit for a court and other parties to

determine whether a professional is disinterested or holds or represents an adverse interest.  In re

Lewis Road, LLC, 2011 WL 6140747, *8 (Bankr. E.D. Va. 2011).  An indeterminate statement

of "connections with a creditor" does not satisfy Rule 2014.  Id. at *12.  Disclosing the existence

of a connection without disclosing the identity of the connection is insufficient.  See In re

Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991) (holding that "[c]oy or incomplete disclosures

which leave the court to ferret out pertinent information from other sources are not sufficient.").

Rather, "complete and candid disclosure . . . is indispensable to the court's discharge of its duty

to assure the [professional's] eligibility for employment under section 327(a) . . . ."  In re eToys,

Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).

In Lewis Road, LLC, the Court found that the statement that a firm had "connections

with a creditor" did not comply with Rule 2014. The debtor filed an application to employ

counsel (without a verified statement) that disclosed that "[p]roposed counsel has connections

with the debtor (including prepetition advice concerning the debtor's financial situation and the

preparation and filing of its chapter 11 petition) and *connections with a creditor*."  2011 WL

6140747, *2 (emphasis in original).  The professional firm "did not disclose with whom it held

connections nor did it describe what those connections were in its Application."  Id. at *9.

> The purported "disclosure" that was made was woefully inadequate and
> not in compliance with the requirement that the disclosure be "explicit
> enough for the court and other parties to gauge whether the person to be

6

employed is not disinterested or holds an adverse interest." [citation
omitted]. This lack of proper disclosure alone warrants the firm's
disqualification from the case.

Id. The firm's failure to provide "any information concerning the identity, nature, or scope of its

'connections with a creditor'" compelled the Court's conclusion that the purported disclosure did

"not contain the detail sufficient to comply with Rule 2014." Id. at *2, *12. Based on a finding

of an actual conflict of interest as well as the failure to disclose the actual conflict and all

connections, the Court ordered complete disgorgement of all amounts paid to counsel.[2]

Other courts presented with similarly vague or boilerplate disclosures have rightly

disapproved them too. See Matco Elect. Group, 383 B.R. 848; In re Filene's Basement, Inc., 239

B.R. 845 (Bankr. D. Mass. 1999); Leslie Fay Cos., 175 B.R. at 537; see also In re Digerati Tech.,

Inc., 524 B.R. 666, 688 (Bankr. S.D. Tex. 2015) (denying final fee application for, among other

things, failure to comply with the requirements of Bankruptcy Rule 2014 when the investment

banker had failed to disclose connection with debtor's law firm). In Leslie Fay, the court found

that boilerplate language that the firm at issue may have in the past represented, currently

represents, and may in the future represent entities which are claimants of the debtors was

insufficient to alert the court to the firm's representation of a large creditor. The court further

stated that while "[t]he boilerplate is reasonable to cover inadvertent failures to disclose

insignificant connections; it is not an adequate substitute for disclosure of representation of

known and significant creditors." Id.

In Filene's Basement, the debtors filed an application to employ PricewaterhouseCoopers

LLP ("PWC") as financial advisor and consultant. Another of PWC's clients, T.A.C. Group,

---

[2]    The connection and conflict issue arose in connection with a Rule 60(b) motion filed by the
chapter 11 trustee to set aside an order approving a settlement that included, among other provisions, payment of
attorney's fees incurred by the debtor-in-possession before the trustee was appointed. After the settlement had been
approved, the United States Trustee learned and informed the Court that DIP's counsel was representing both the
DIP and a junior creditor.

Inc. ("TAC"), filed a motion to reconsider PWC's appointment as advisors, alleging that PWC

was not disinterested because it had served as TAC's advisor in a prepetition state court action

brought by TAC against the debtors.  PWC's disclosure declaration stated, among other things:

> In the spring of 1999, a PricewaterhouseCoopers LLP partner was
> retained by the plaintiff's law firm to potentially provide expert
> witness testimony in a litigation matter that involved the Debtors
> [as] defendants.    When PricewaterhouseCoopers LLP was
> subsequently retained by the Debtor to provide financial advisory
> and consulting services, both parties to that litigation were notified.
> . . . That litigation is now stayed as a result of the Debtors filing
> for Chapter 11 protection.

Id. at 847.  Missing from PWC's Rule 2014 disclosures was the identity of the plaintiff, the

nature of the litigation, or any other fact that could have alerted the court to any potential

problem.  The Court ultimately disqualified PWC and held that "[PWC's] failure to include TAC

in its list of clients and the inconspicuous and anonymous disclosure regarding that litigation

fails to satisfy the requirements of the rule." Id. at 850.

Similarly, in Matco Elect. Group, the affidavit in support of the retention of the

Unsecured Creditors Committee's counsel disclosed that "[m]ember(s) and/or employees of [the

firm] may from time to time maintain *de minimis* stock holdings in creditors(s) of the Debtors,

which stock is publicly traded on national markets and an attorney is related to and [sic] officer

and shareholder of one of the general unsecured creditors of the Debtors." Matco, 383 B.R. at

850.  But it was later discovered that the attorney referred to in the affidavit was a partner who,

at the time of the execution of the affidavit, was the son-in-law of the Chief Executive Officer

and President of a significant creditor, who petitioned for the debtors' involuntary bankruptcy

and became an active member of the creditors' committee.  Upon a motion for the review and

disallowance of professionals' fees, the court was ultimately faced with the question of whether

the disclosure was "a sufficient compliance with the requirements of Fed. R. Bankr. P. 2014 in

light of facts which were known only to the firm at the time the disclosure was made." Id. at 853.

The firm's argument in its defense was that somehow the adequacy of the disclosure required by Bankruptcy Rule 2014 should be judged by the failure of any party in interest to request additional information from the firm beyond the statement in its declaration. Id. at 853. The court, however, dismissed the argument and condemned the gamesmanship:

> Fed. R. Bankr. P. 2014 is not intended to condone a game of cat and mouse where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court or other parties in interest, and the burden shifts to those entities to make inquiry in an effort to expand the disclosure.

Id. at 853-54; see also Filene's Basement, Inc., 239 B.R. at 856 (indicating that "'coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient.'") (quotations omitted). The Matco Elect. Group court ultimately concluded that the disclosures appeared to have been purposefully vague and denied some of the requested fees. Id. at 856.

### C.  McKinsey RTS Fails to Adequately Disclose its Connections

McKinsey RTS filed a Declaration that is deficient and vague; it discloses the existence of various connections without disclosing the identity of many of those connections. See supra at ¶¶ 7-12. Even if such connections ultimately prove unrelated to the Debtors or these chapter 11 cases, McKinsey RTS's disclosures are insufficient to satisfy Rule 2014. There is no information regarding the identity, nature, or scope of many of the connection. Stated another way, the Declaration gives the appearance of compliance without actually complying with Rule 2014. As in Lewis Road, it is not "explicit enough."

Although McKinsey RTS may have private contractual confidentiality agreements, they do not and cannot supersede the ethics and disclosure requirements of the Bankruptcy Code and Rules.  See In re Project Orange, 431 B.R. 363 (Bankr. S.D.N.Y. 2010) (conflict waivers obtained from a creditor by a law firm do not, by contractually permitting the firm to represent the debtor on some matters adverse to creditors, trump the statutory requirements governing the estate's employment of professionals); see also Granite Partners, 219 B.R. at 34 (Bankr. S.D.N.Y. 1998) (observing that while clients may, in some instances, waive conflicts, "the mandatory provisions of section 327(a) do not allow for waiver.").  Moreover, client confidentiality is a common concern with other professionals, including law firms which are also bound by the duties of professional responsibility and confidentiality, yet other professional firms routinely satisfy their disclosure requirements.  McKinsey RTS, to the United State Trustee's knowledge, is the only professional firm claiming contractual confidentiality is a blanket shield from, and superior to, the disclosure requirements applicable to every bankruptcy professional under the Bankruptcy Code and Bankruptcy Rules.

To be clear, the United States Trustee has no information that any of the undisclosed McKinsey RTS connections amount to a disabling conflict under section 327(a).  But the United States Trustee also has no information that the undisclosed McKinsey RTS connections are not a conflict under section 327(a) either—and that is precisely the point.  To borrow a colloquialism: "You don't know what you don't know."  Fortunately, the requirements of Bankruptcy Rule 2014 "transcend those of § 327, as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness." Filene's Basement, 239 B.R. at 849.  Once disclosures are properly made, the Court and the parties can objectively satisfy themselves whether there are no conflicts or disabling connections.

WHEREFORE, the United States Trustee respectfully requests that the Court (i) deny the

Application and (ii) grant such other relief as the Court deems appropriate and just.

Dated: New York, New York
      May 12, 2016

                            Respectfully submitted,

                            WILLIAM K. HARRINGTON
                            UNITED STATES TRUSTEE, Region 2
                            By: */s/ Paul K. Schwartzberg*
                            Paul K. Schwartzberg
                            Trial Attorney
                            201 Varick Street, Room 1006
                            New York, New York 10014
                            Tel. (212) 510-0500