# EXHIBIT 77

**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**HENRY G. HOBBS, JR.**
**ACTING UNITED STATES TRUSTEE**
**REGION 7, SOUTHERN and WESTERN DISTRICTS OF TEXAS**
**HECTOR DURAN**
**TRIAL ATTORNEY**
**515 Rusk, Suite 3516**
**Houston, Texas   77002**
**Telephone:  (713) 718-4650 x 241**
**Fax:  (713) 718-4670**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| WESTMORELAND COAL COMPANY, | § | 18-35672 (DRJ) |
| *et al.,* | § | (Chapter 11) |
| | § | |
| DEBTORS[1] | § | (Jointly Administered) |

**ACTING UNITED STATES TRUSTEE'S**
**(1) OBJECTION TO DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AS PERFORMANCE IMPROVEMENT ADVISORS TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE; AND**
**(2) RESPONSE TO COURT'S ORDER DATED NOVEMBER 30, 2018**

TO THE HONORABLE DAVID R. JONES
CHIEF UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Henry G. Hobbs, Jr., the Acting United States Trustee for Region 7 (the

"U.S. Trustee"), by and through the undersigned counsel, who respectfully (1) objects to Debtors'

*Application for Entry of an Order Authorizing the Retention and Employment of McKinsey*

---

[1]  Due to the large number of debtors in these chapter 11 cases, which are jointly administered, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

.

1

*Recovery & Transformation Services U.S., LLC as Performance Improvement Advisors to the Debtor Nunc Pro Tunc to the Petition Date* (the "Application") [Doc. No. 452] and (2) responds to the Court's Order dated November 30, 2018 (the "November 30th Order") [Doc. No. 632]. The U.S. Trustee states:

## I. Preliminary Statement

Rigorous compliance with professional retention rules is critical to the integrity and transparency required of the bankruptcy system. All professionals should be held to the same baseline standards of transparent and complete disclosures. And all professionals must meet the Bankruptcy Code's requirements for retention, including that they be free from conflict and satisfy the standards for disinterestedness.

Here, the disclosures of McKinsey Recovery & Transformation Services, U.S., LLC ("McKinsey RTS"), are not transparent and by its own admission are incomplete. The Application withholds critical details about McKinsey RTS's connections to interested parties—including the identity of a "Confidential Client" that generates a staggering 17.5% of the firm's gross annual revenue. McKinsey RTS has a pattern in previous cases of withholding the identities of some of its clients and has made changes to provide greater disclosures in response to the United States Trustees' intervention in those cases. Notwithstanding, McKinsey has continued the practice in this case. The naked fact that one of the undisclosed clients represents such a substantial source of McKinsey RTS's income renders it difficult to contemplate how McKinsey RTS can satisfy the requirements for retention in this case. This fact also underscores the firm's failure to satisfy the bedrock disclosure mandates of Bankruptcy Rule 2014.

McKinsey RTS also concedes that it has not completed its conflicts search and disclosure of potential connections. Specifically, it has not yet run a conflicts check for 150 vendors disclosed

2

in the initial interested parties list and also has not completed its review of 230 additional interested parties that were later added to the list.  McKinsey has made no suggestion as to the likely impact of these omissions or whether they are likely to lead to the disclosure of more "Confidential Client" connections.

McKinsey RTS also violates section 327(a)'s disinterested person requirement for retention.  It admits that it holds a $96,000 claim as a creditor in this case and has publicly announced that it is seeking to collect its pre-petition claim against the Debtors.

The Application should be denied because of a lack of transparent disclosure, necessary conflicts checks have yet to be undertaken, and McKinsey RTS patently lacks disinterestedness. Moreover, because McKinsey RTS has not met section 327(a)'s threshold requirements, the Court need not further consider the matters raised in the November 30th Order.[2]

## II. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

1.  The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this district under 28 U.S.C. § 1408.

2.  The Court has constitutional authority to enter a final order in this matter.  If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the U.S. Trustee consents to the entry of a final order or judgment by this Court in this matter.

3.  Henry G. Hobbs, Jr. is the duly appointed Acting United States Trustee for Region 7, Southern and Western Districts of Texas, under 28 U.S.C. § 581(a)(7).  Pursuant to 11 U.S.C. § 307, the Acting United States Trustee has standing to appear and be heard on any issue

---

[2]  The U.S. Trustee's response to the November 30th Order appears in Section V.

in a case or proceeding under the Bankruptcy Code. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq* (the "Code"). Specifically, the U.S. Trustee is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Code, including monitoring the progress of such cases and taking such actions as the U.S. Trustee deems to be appropriate to prevent undue delay. 28 U.S.C. § 586(a)(3)(G).

### III. Factual Background

4. On November 8, 2018, the Debtors filed the Application seeking to employ McKinsey RTS as performance improvement advisors. The Application is supported by the Declaration of Mark Hojnacki (the "Declaration"), a Practice Leader at McKinsey RTS. *See* Application, Doc. No. 452 at 2.

5. The Application and Declaration make two important disclosures:

   (1) "As of the Petition Date, the Debtors owed McKinsey RTS $96,000.00 in fees incurred prior to the Petition Date." *See* Application, ¶ 28, Doc. No. 452 at 11 and Declaration, ¶ 26, Doc. No. 452 at 46; and

   (2) The Declaration states that a full and complete search of connections to Parties in Interest has not occurred. *See* Declaration, ¶¶ 31 and 33 and n. 8, Doc. No. 452 at 48-49.

6. The Application and Declaration fail to disclose the identity of six "Confidential Client(s)" who are parties in interest and have connections to McKinsey RTS. *See* Declaration, ¶¶ 50, 55, 58, 71, and 77, Doc. No. 452 at pp. 56, 58, 60, 62-63, and 66. The "Confidential Clients" include one 5% or more shareholder, three contract counterparties, one HR benefits party, and one vendor.[3] *See id*. One of these "Confidential Clients" "accounts for approximately 17.5% of McKinsey RTS US's gross annual revenues as of September 30, 2018." *See id*. at ¶ 77, p. 66.

---

[3] McKinsey RTS has not generally specified whether any of these six "Confidential Client" connections overlap with the same interested party.

4

## IV. Grounds for Objection

**A. McKinsey RTS's Inadequate Disclosures Circumvent Mandatory Requirements and Effectively Shift the Burden of Obtaining Professional Disclosures to Stakeholders.**

7.  Bankruptcy Rule 2014 requires that a professional's disclosure of connections be sufficiently explicit for a court and other parties to determine whether a professional is disinterested or holds or represents an adverse interest.[4] "[C]omplete and candid disclosure . . . is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment under section 327(a) . . . ." *In re eToys*, *Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

8.  Although Bankruptcy Rule 2014's primary purpose is to facilitate compliance with section 327, the rule is much broader than section 327. "The disclosure requirements of Rule 2014(a) are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a)." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012) (*citing In re Cornerstone Prods., Inc.*, 416 B.R. 591, 608 (Bankr. E.D. Tex. 2008) (stating that "all" connections must be disclosed). The burden of adequate disclosure rests with McKinsey RTS alone, and it is not the job of the Court, creditors or parties in interest to wrestle this information from proposed professionals.

9.  McKinsey RTS has not met its burden of adequate disclosure. McKinsey RTS has withheld information with respect to the identity of its clients, including one of its largest clients. McKinsey RTS has also narrowly interpreted Rule 2014's disclosure requirements to artificially

---

[4] The Rule requires that the professionals disclose "all of the [professional's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States trustee." *See* Bankruptcy Rule 2014(a).

limit its disclosures of connections. Withholding information and limiting the nature and scope of searches for connections run counter to the transparency expected under Rule 2014.

### i. McKinsey Cannot Simply Ignore and be Excused from Required Disclosures Based on Claims that its Clients are Confidential.

10. In this case, McKinsey RTS disclosed the existence of six purportedly "Confidential Client" connections. *See supra* at ¶ 12. One of these six (apparently a contract counterparty and/or vendor) "accounts for approximately 17.5% of McKinsey RTS US's gross annual revenues as of September 30, 2018." *See* Declaration, ¶ 77, Doc. No. 452 at 66.

11. McKinsey RTS's use of "Confidential Client" in the Application does not comport with Bankruptcy Rule 2014 and circumvents its transparency and mandatory disclosure requirements. An indeterminate statement of "connections with a creditor" does not satisfy Bankruptcy Rule 2014. *See In re Leslie Fay Companies, Inc.*, 175 B.R. 525 (Bankr. S.D.N.Y. 1994). Disclosing the existence of a connection without disclosing the identity of the connection is insufficient. *In re Brennan*, 187 B.R. 135, 144 (Bankr. D.N.J. 1995), *rev'd on other grounds sub nom*, *In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999) ("must also be disclosure of the identities").

12. McKinsey RTS does not even try to address its pervasive disclosure deficiencies that cover about one fifth of its annual revenues. Despite McKinsey RTS's professed engagement with the U.S. Trustee, to date it has disregarded the suggestion to seek appropriate relief with the court, for example, by filing a motion to seal under section 107.[5] Nor did McKinsey RTS provide

---

[5] Professionals may be excused from publicly filing mandatory disclosures only if the bankruptcy court grants a motion to seal documents under 11 U.S.C. § 107 or similar authority. Section 107 provides limited grounds to seal, including trade secrets, confidential research, confidential commercial information, and scandalous or defamatory information. *See* 11 U.S.C. § 107. To be clear, the U.S. Trustee was not taking a position on the merits of such a motion, and does not concede that McKinsey RTS can meet its burden under section 107.

6

any specific evidence in its Application that would prohibit McKinsey RTS from disclosing the identities of any of the six "confidential" clients—including perhaps the firm's single largest client.[6]  Instead, McKinsey RTS made a calculated decision not to disclose the identities of its clients.

13.     Unfortunately, McKinsey RTS's approach to disclosure is not unique to these cases. Instead, it is part of a pattern of withholding the identities of clients across several cases where the firm has been retained.  In *In re Alpha Natural Resources, Inc.*, No. 15-33896 (Bankr. E.D. Va.), McKinsey RTS withheld the name of every single one of its client connections on the basis of confidentiality.  After the United States Trustee for Region 4 moved to compel McKinsey RTS to comply with Bankruptcy Rule 2014, McKinsey RTS eventually identified all formerly "Confidential" client connections by name on the public record.[7]

---

[6]     Regardless of any private contractual agreements McKinsey RTS may have with its clients that led to these circumstances, they do not and cannot supersede the ethics and disclosure requirements of the Code and Rules.  By analogy, courts have held that conflict waivers obtained from a creditor by a law firm do not, by contractually permitting the firm to represent the debtor on some matters adverse to creditors, trump the statutory requirements governing the estate's employment of professionals.  *See In re Project Orange*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010). In that case, debtor's counsel argued that because General Electric ("GE") had contractually permitted the firm to represent the debtor on some matters adverse to GE, the waiver cured all conflicts for purposes of section 327(a).  But the court held that "an agreement between [the firm] and GE, *i.e.*, the Conflicts Waiver, cannot trump the requirements of section 327(a).  Even if GE agreed that [the firm] could act against GE on all issues, through litigation, negotiation or otherwise, [the firm] must still satisfy the statutory requirements of section 327(a) to be retained as general bankruptcy counsel." *Id.* at 374.  *See also Granite Partners*, 219 B.R. at 34 (Bankr. S.D.N.Y. 1998) (observing that while clients may, in some instances, waive conflicts, "the mandatory provisions of section 327(a) do not allow for waiver.").

[7]     The U.S. Trustee filed her motion to compel on May 3, 2016.  *In re Alpha Natural Resources, Inc.*, No. 15-33896 (Bankr. E.D. Va. May 3, 2016), Doc. No. 2308.  In response, McKinsey RTS voluntarily disclosed the majority of these names in a supplemental declaration filed on May 19, 2016.  *Id.*, Doc. No. 2464.  The bankruptcy court then ordered that the remaining "Confidential" client names be made to the court *in camera* and subsequently on a confidential basis to the U.S. Trustee, the debtors, and the official committee of unsecured creditors. In response to the United States Trustee's recommendation, McKinsey RTS publicly disclosed the remaining "Confidential" client names. *Id.*, Doc. No. 3223.

Due to specific representations made by McKinsey RTS, the U.S. Trustee did not recommend the public disclosure of connections of McKinsey RTS's investing affiliate.  Because the U.S. Trustee recently learned that those representations were inaccurate, the U.S. Trustee also requested that McKinsey RTS publicly file these remaining *in camera* disclosures not previously made public, but to date McKinsey RTS has failed to do so.

7

14. Likewise, in *In re SunEdison, Inc*., No. 16-10992 (SMB) (Bankr. S.D.N.Y.), the United States Trustee for Region 2 objected to McKinsey RTS's retention application, which again designated "Confidential" clients. *Id.* (Bankr. S.D.N.Y. May 12, 2016), Doc. No. 265. McKinsey RTS publicly identified all "Confidential" clients after the United States Trustee filed his objection.

15. Notwithstanding the outcomes in these other cases, in this case McKinsey RTS "doubled down" on its pattern of failed transparency by withholding the identity of perhaps the firm's most consequential client. Given the amount of revenue this client accounts for, without further information, it is difficult to envision how this connection could not impact disinterestedness. McKinsey RTS's only justification why such a consequential financial relationship does not amount to a disqualifying adverse interest is the unsubstantiated statement that the connection does not relate to the Debtors or these cases. *See* Declaration, ¶ 77, Doc. No. 452 at 66. This limited disclosure is clearly at odds with Bankruptcy Rule 2014, which "is not intended to condone a game of cat and mouse, where the professional seeking appointment provides only enough disclosure to whet the appetite of the UST, the court or other parties in interest, and then the burden shifts to those entities to make inquiry in an effort to expand the disclosure." *In re Matco Electronics Group Inc*., 383 B.R. 848, 853-54 (N.D.N.Y. 2008).[8]

  ii. **McKinsey RTS's Narrow Interpretation of the Rules' Disclosure Requirements Shuns Transparency in Favor of Limiting its Duty to Disclose Connections.**

16. In McKinsey RTS's Preliminary Response to the Amended Objection of Mar-Bow to the Debtors' Application, Doc. No. 763, McKinsey RTS tries to very subtly limit its burden of

---

[8] The same can be said for McKinsey RTS's connections to JPMorgan Chase & Co., American International Group, and GenOn, Inc.—each of which account for more than 1% of the firm's revenues. *See* Declaration, ¶ 77, Doc. No. 452 at 66.

8

disclosing its connections. When describing the search that it undertook, McKinsey RTS expressly admits that it limited its search for the connections of its consulting affiliates to identify only those services and connections that "focused on a direct commercial relationship with the Debtor." *Id.* at 7 and Declaration, Doc. No. 452, ¶¶ 34-35, at pp. 50-51. Nowhere in the Code, Bankruptcy Rules, or case law is the term "connections" limited to "a direct commercial relationship" to the debtor or, for that matter, limited at all. McKinsey RTS once again strives to achieve an appearance of transparency regarding disclosures of its connections, while in reality it limited its disclosure of connections despite the clear language of Bankruptcy Rule 2014.

17. Adding even more confusion, McKinsey RTS has not been clear about the scope of its connections search. The Declaration claims that McKinsey RTS searched the connections of its affiliates who have provided personnel to the client service team in these cases. Declaration, Doc. No. 452, ¶¶ 34-35, at pp. 51-51. The Declaration does not, however, identify the specific affiliates who have loaned McKinsey RTS personnel for this engagement nor the specific non-McKinsey RTS individuals on the client service team. It is also unclear whether McKinsey RTS would supplement its affiliate disclosures if it later borrowed additional personnel.

18. Finally, after describing the limitations on its search process, McKinsey RTS tries to diminish its burden to provide disclosures that are clear and complete by offering that no "interested parties with a real economic interest will object to RTS's disinterestedness." Doc. No. 763 at 5-6. Even if true, it would be impossible to assess whether the lack of objection was due to McKinsey RTS's disinterestedness or McKinsey RTS's non-compliant disclosures. This cat and mouse game is not tolerated under the Code and Rules.

9

**B.     McKinsey RTS has not completed a full connection search of interested parties.**

19.     McKinsey RTS acknowledges that it has not searched for conflicts with all interested parties in these cases.  Although McKinsey RTS asserts that counsel for the Debtors initially provided to it an incomplete list of interested parties, it acknowledges that it still has not completed a conflicts search of the 150 vendors on that list.  McKinsey RTS also concedes that other professionals have completed that same review.  In addition, McKinsey received a supplemental list that included 230 additional interested parties and concedes that it has not completed its conflicts review of that list, either.

20.     Instead, McKinsey states that it will file a supplemental declaration prior to the hearing. *See* Declaration, ¶¶ 31 and 33, n. 8, Doc. No. 452 at 49.  It has failed to do so yet.  Accordingly, stakeholders have no means to gauge the likely impact of these omissions or whether they are likely to lead to McKinsey RTS's disclosure of more connections or further withholding of information based on confidentiality.

**C.     McKinsey RTS is Not Disinterested.**

21.     The Code requires that a professional retained by the debtor in possession not "hold or represent an interest adverse to the estate," and that the professional be "disinterested." 11 U.S.C. § 327(a).  *See also In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 461 (5th Cir. 2012) (citations omitted).  Specifically, the term "disinterested person" means a person that –

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason.

10

11 U.S.C. § 101(14). The Code defines a "creditor" as any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

22. McKinsey RTS acknowledges *that it is a creditor owed $96,000*. This facially violates the Code's express disinterested person requirement. As then Circuit Judge Alito wrote more than twenty years ago, "these provisions, taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties." *U.S. Trustee v. Price Waterhouse (In re Sharon Steel Corp.),* 19 F.3d 138, 141 (3d Cir. 1994) (interpreting 11 U.S.C. §§ 101(10)(A), 101(14), 301, 327(a), and 1107(a)) (citations omitted). Moreover, in addressing "the practical benefits of employing" the professional in that case as urged by "the appellees, like the bankruptcy court and the district" below, the Third Circuit ruled that "bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language." *Id.* at 142.[9]

23. Rather than waiving the prepetition claim, McKinsey RTS attempts to cure this fatal defect by seeking payment from its retainer. *See* Declaration, ¶ 26, Doc. No. 452 at pp. 45-46.[10] McKinsey RTS's proposed cure is wholly unacceptable because it would lessen the value of the estates—the very definition of a prohibited adverse interest.[11] In reducing the size of its

---

[9] To the extent that McKinsey RTS relies on *In re Talsma*, 436 B.R. 908 (Bankr. N.D. Tex. 2010), or the limited cases that rely on it, such as *In re SBMC Healthcare, LLC*, 473 B.R. 871 (Bankr. S.D. Tex. 2012) (Bohm, J.), these cases are not precedential and contrary to the plain language of the statute.

[10] McKinsey RTS seeks relief from the automatic stay to do so. The Declaration includes similar language. *See* Declaration, ¶ 26, Doc. No. 452 at 46.

[11] A party has an "adverse interest" to the estate if they: "(1) [ ] possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) [ ] possess a predisposition under circumstances that render such a bias against the estate." *Am. Int'l Refinery*, 676 F.3d at 461 (citations omitted). In the Fifth Circuit, the determination of an adverse interest must be made "with an eye to the specific facts of each case" and the standards for finding a conflict

11

retainer, McKinsey RTS is obligating the Debtors to expend more money for McKinsey RTS's future services. Surely the Debtors would—and should—be unwilling to modify the automatic stay to allow every unsecured creditor to collect on their claims. Therefore, McKinsey RTS is not a "disinterested person" eligible for retention.

### V. Response to Court Order Requesting Recommendation

24. The November 30th Order "requests [that] the United States Trustee . . . review the allegations set forth in the Mar-Bow objection and make a written recommendation to the Court on how best to proceed." Doc. No. 629 at 1. The Mar-Bow objection raises a host of serious concerns regarding this case and other cases in which McKinsey RTS has served or is serving. The overarching dispute pertains to the adequacy of McKinsey RTS's disclosures.

25. In this case, the Court should deny the Application based on the reasons identified above. McKinsey RTS has failed to disclose the identity of confidential clients, which collectively amount to more than 20% of its revenue, and it has failed to complete an adequate conflicts check. In addition, McKinsey RTS is a creditor and thereby ineligible for retention under § 327.

26. Because the Application should be denied based upon these threshold reasons, this Court need not reach the remaining concerns identified in the November 30th Order. Should the Court instead conclude that McKinsey RTS successfully addressed these fundamental deficiencies in the Application, the Court should require McKinsey RTS to address the issues raised by Mar-Bow.[12]

---

are "strict." *Id.* at 461-462 (*quoting In re West Delta Oil Co.*, 432 F.3d 347, 356 (5th Cir. 2005) (further citations omitted).

[12] McKinsey RTS has acknowledged that many of the allegations raised by Mar-Bow in its objection filed in this case were also raised in letters it sent to the United States Trustee Program setting forth myriad allegations regarding McKinsey RTS's disclosure practices. Doc. No. 763 at 16. The U.S. Trustee has attached these letters as Exhibit 1 hereto. These public disclosures not only provide interested parties an opportunity to consider these issues and to investigate (if desired), it ensures that the U.S. Trustee does not become a broker of information that this Court will be called upon to assess.

27. If the Court considers Mar-Bow's objections, the Court must undertake a fact intensive inquiry that initially requires a detailed response on the public record from McKinsey RTS concerning the specific alleged conflicts. To resolve these issues, the Court will necessarily have to consider the scope of the duty of any professional firm retained in bankruptcy cases to disclose both the clients of its affiliates and the holdings of investment funds that benefit the firm or its employees. This will require a fact intensive investigation of the separateness of each of McKinsey RTS's affiliates from each other and the strength of the information barriers that have been established between these organizations. Such an inquiry will require extensive discovery on what is likely to be a lengthy timetable that cannot be determined at this time. Ultimately, the Court's decision in this case should be specific to McKinsey RTS, but its determination may have broad implications for the entire industry of bankruptcy professionals.

## VI. Reservation of Rights

28. The U.S. Trustee reserves his rights to object at the hearing on the Application to other deficiencies or amendments, including supplemental disclosures. To the extent that McKinsey RTS files amendments to the Application after the objection deadline but before the hearing, interested parties will be deprived of proper notice as required under Bankruptcy Rule 2002. Accordingly, the U.S. Trustee also reserves his rights to object on the grounds that any amendments should require proper notice under the Bankruptcy Rules with adequate time to object.

## VII. Conclusion

29. In sum, the Court has been presented with an Application to employ a professional where potentially substantial connections have been affirmatively withheld, conflicts checks for numerous other connections have not even been run yet, and the professional admits that it holds a claim as a creditor for which it intends to seek to be paid. McKinsey RTS must be held to the same standard as any other professional. No other professional would be allowed to do this. The Court should deny the Application thereby preventing McKinsey RTS from receiving any compensation from these estates.

**WHEREFORE**, the U.S. Trustee respectfully requests that this Court enter an order denying the Application unless the Debtors cure the defects cited herein, and order any and all further relief as may be equitable and just.

Dated: December 14, 2018                    Respectfully Submitted,

                                                 HENRY G. HOBBS, JR.
                                                 ACTING UNITED STATES TRUSTEE
                                                 REGION 7, SOUTHERN and WESTERN
                                                 DISTRICTS OF TEXAS

                                               By:   /s/ Hector Duran
                                                      Hector Duran
                                                      Trial Attorney
                                                      Texas Bar No. 00783996
                                                      515 Rusk, Suite 3516
                                                      Houston, TX 77002
                                                      Telephone: (713) 718-4650 x 241
                                                      Fax: (713) 718-4670

## CERTIFICATE OF CONFERENCE

     I hereby certify that on December 14, 2018, I conferred with Susan D Golden, counsel for the Debtors, as required by BLR 9013-1(g), but the parties were unable to resolve the matter before the objection deadline.

                                                            /s/ Hector Duran
                                                            Hector Duran

CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission or BNC noticing to all Pacer System participants in these bankruptcy cases, on the 14th day of December, 2018.

                                       /s/ Hector Duran
                                       Hector Duran, Trial Attorney