# EXHIBIT 80

```
1              IN THE UNITED STATES BANKRUPTCY COURT
                 EASTERN DISTRICT OF VIRGINIA (RICHMOND)
2
    In Re:                          )  Case No. 15-33896-KRH
3                                   )  Richmond, Virginia
    ALPHA NATURAL RESOURCES, INC.,  )
4   ET AL.,                         )
                                    )  January 9, 2019
5          Debtors.                 )  2:05 p.m.
                                    )
6   ------------------------------- )

7
                        TRANSCRIPT OF HEARING ON
8      (4122) MOTION TO REOPEN CASE (FEE) FILED BY MAR-BOW VALUE
                            PARTNERS, LLC;
9      (4128) MOTION TO DETERMINE FILED BY MAR-BOW VALUE PARTNERS.
                 BEFORE THE HONORABLE KEVIN R. HUENNEKENS
10                  UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:
    For the Debtors:                HENRY P. LONG, III, ESQ.
12                                  HUNTON ANDREWS KURTH LLP
                                    951 East Byrd Street
13                                  Riverfront Plaza East Tower
                                    Richmond, VA 23219
14
    Office of the United States     HUGH M. BERNSTEIN, ESQ.
15  Trustee:                        UNITED STATES DEPARTMENT OF
                                    JUSTICE
16                                  101 West Lombard Street
                                    Suite 2625
17                                  Baltimore, MD 21201

18  For Mar-Bow Value Partners,     DAVID R. RUBY, ESQ.
    LLC:                            THOMPSONMCMULLAN, P.C.
19                                  100 Shockoe Slip
                                    Third Floor
20                                  Richmond, VA 23219

21  For Mar-Bow Value Partners,     SEAN F. O'SHEA, ESQ.
    LLC:                            BOIES SCHILLER FLEXNER
22                                  575 Lexington Avenue
                                    7th Floor
23                                  New York, NY 10022

24

25
```

```
 1   APPEARANCES:

 2   For Mar-Bow Value Partners,      STEVEN RHODES, ESQ.
     LLC:                            STEVEN RHODES CONSULTING LLC
 3                                   1610 Arborview Boulevard
                                     Ann Arbor, MI 48103
 4
     For McKinsey Recovery &          CHRISTOPHER L. PERKINS, ESQ.
 5   Transformation Services U.S.,    LECLAIRRYAN
     LLC:                            919 East Main Street
 6                                   24th Floor
                                     Richmond, VA 23219
 7
     For McKinsey Recovery &          JENNIFER M. SELENDY, ESQ.
 8   Transformation Services U.S.,    SELENDY & GAY PLLC
     LLC:                            1290 Avenue of the Americas
 9                                   New York, NY 10104

10   For McKinsey Recovery &          M. NATASHA LABOVITZ, ESQ.
     Transformation Services U.S.,    DEBEVOISE & PLIMPTON LLP
11   LLC:                            919 Third Avenue
                                     New York, NY 10022
12

13

14

15

16

17

18

19

20

21   Transcription Services:         eScribers, LLC
                                     7227 North 16th Street
22                                   Suite #207
                                     Phoenix, AZ 85020
23                                   (973) 406-2250

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

1       THE CLERK:  Alpha Natural Resources, Inc., scheduling

2  conference on motion to reopen and motion to determine.

3       THE COURT:  Well, for a successfully concluded Chapter

4  11 bankruptcy case, we certainly have a lot of fuss that's

5  being made here.

6       MR. RUBY:  Good afternoon.

7       THE COURT:  Good afternoon, Mr. Ruby.

8       MR. RUBY:  Good afternoon, Your Honor.  David Ruby on

9  behalf of Mar-Bow Value Partners.  Your Honor, I'd like to

10  reintroduce to the Court, Mr. Steven Rhodes, who's been

11  admitted pro had vice.  I'd also like to introduce to the Court

12  Mr. Sean O'Shea.

13       THE COURT:  Mr. O'Shea.

14       MR. RUBY:  Mr. O'Shea is partner at Boies Schiller

15  Flexner in New York, and his motion for admission pro hac vice

16  has been filed and is pending before the Court.

17       THE COURT:  It's granted.

18       MR. RUBY:  Thank you, Your Honor.

19       MR. O'SHEA:  Thank you, Your Honor.

20       THE COURT:  Mr. Rhodes?

21       MR. RHODES:  Good afternoon, Your Honor.  And may it

22  please the Court, we are here this afternoon for a preliminary

23  scheduling conference in this matter.  It seems to us that

24  among the preliminary matters to discuss today are really first

25  the motion to reopen that we have filed.

1          It is our belief that that matter has been fully

2     briefed and that it is ready now for Your Honor's decision.

3     We, of course, believe that the motion should be granted.

4     Granting a motion to reopen is simply an administrative matter

5     to really let us in the door.

6          So if Your Honor would like oral argument on that, we

7     are prepared to do that today.  I should tell the Court that

8     when we were scheduling this conference here today we all

9     agreed that this would not be an oral argument on the merits of

10    our motion, and we want to respect that.

11         If Your Honor would prefer to set another date for a

12    hearing on the motion to reopen, we'll of course be happy to do

13    that -- to do that with you.  But really, we think it's ready

14    for decision today and that the motions should be granted.

15         In his regard, I would note for the Court that the

16    United States Trustee's Office does support the motion to

17    reopen, and it has been opposed by the debtor and by McKinsey

18    RTS here.

19         Beyond that, Your Honor --

20         THE COURT:  Well, I don't think the debtor wants to

21    pay the reopening fees and the Chapter 11 fees.

22         MR. RHODES:  Right.  And we get that.  And that's why

23    we volunteered, in our reply to that response, that Mar-Bow

24    will pay those fees or reimburse the debtor for that, however

25    that needs to be worked out administratively.  We don't want --

1   we don't want any prejudice of any kind to result to the debtor

2   from these proceedings between Mar-Bow and McKinsey.  So we

3   understand and respect that concern and believe that this offer

4   on our part should fully resolve that.

5        One more preliminary matter, Your Honor.  I'm sure

6   Your Honor is aware that the U.S. Trustee's Office has filed

7   papers in this case that seek relief here.  They seek a

8   disgorgement of McKinsey's fees here.  The grounds that they

9   assert are relatively narrow grounds.  They're not as expansive

10  as what Mar-Bow has asserted here.

11       Your Honor, has a choice to make about whether to hear

12  the U.S. Trustee's issue at the same time as our issues, which

13  may well be somewhat down the line after what we hope will be a

14  period of discovery, or to hear the U.S. Trustee's issues early

15  on in the proceedings.  And Your Honor may well choose to do

16  that, because as a matter of efficiency, if they do prevail,

17  then many -- maybe not all -- but many of the issues that Mar-

18  Bow raises may become moot.

19       So we would support whichever way Your Honor wanted to

20  do it and whichever way the U.S. Trustee wanted to handle that.

21       That said, Your Honor, at this time I'd like to turn

22  the podium over to Mr. O'Shea to talk to Your Honor about how

23  we would like to roll out these proceedings.

24       THE COURT:  All right.  Thank you, Mr. Rhodes.

25       Mr. O'Shea?

1          MR. O'SHEA:  Thank you, Your Honor.  I have a -- Your

2    Honor, a proposal for going forward in discovery, and I'd just

3    like to hand it up to you; and Your Honor you can follow along.

4    And we can pass these out to our adversary.

5          Your Honor, we propose a schedule of discovery that

6    would last until approximately the end of May.  It's an

7    aggressive schedule, because we think the -- twelve

8    individuals' depositions need to be taken between now and then,

9    and documents exchanged.  We believe nine entities' 30(b)(6)

10   depositions need to be taken in that time, again, as well as

11   documents to be exchanged.  And that's outlined in the

12   submission I just handed to Your Honor.

13         And the issues that we think should be covered during

14   that discovery period are McKinsey Investment Office's

15   investments in Contura, which as Your Honor knows from the

16   submissions, are very troubling, given the fact it seems to

17   indicate that not only did McKinsey have a direct investment in

18   the debtor, but profited greatly from that investment.

19         Also, the interactions between the MIO and McKinsey

20   itself; I think Your Honor's been dealing with representations

21   that there is a blind trust here.  We think that there's

22   substantial information that that is false and that we can

23   prove it with adequate discovery.

24         We think that the discovery period should deal with

25   what we think are equity holdings that McKinsey had through the

1  MIO in four entities that held investments in the debtor prior
2  to bankruptcy.  We think that the discovery period should deal
3  with the investment in ANR through Compass, which is an
4  investment arm -- a direct investment arm of the McKinsey
5  Investment Office.  Also investments in ANR through Black Rock,
6  more indirect investments.  McKinsey's ownership of Massey
7  Energy, in which they took stock in ANR prior to the bankruptcy
8  in exchange for Massey stock, needs to be examined through the
9  discovery process.  McKinsey Investment Office's investment in
10 Contura through Black Rock, another indirect investment in the
11 debtor estate.

12         Also investments in thirty-one interested parties that
13 were not disclosed to the court, investments -- excuse me --
14 connections to United States Steel.  Your Honor, at the same
15 time McKinsey is involved with the debtor estate in ANR, they
16 had a conflict, because they were advising ANR on reducing
17 costs for things like coal.  And we know -- we have very good
18 information on this, and we think that there are documents
19 within McKinsey that will further show it, as well as two
20 witnesses we've identified, Rajesh Krishnan and Richard
21 Sellschop, S-E-L-L-S-C-H-O-P, both of whom were working on both
22 assignments, Your Honor, at the very same time; McKinsey's
23 connection to ANR through Toos Daruvala, who was on the MIO and
24 also at the Royal Bank of Canada.

25         So this, in addition to other additional undisclosed

1  connections should be the subject matter of this discovery.

2  Again, we're talking about what we think is a very aggressive

3  schedule to try and get this completed by the end of May.  We

4  would probably need Your Honor to deal with disputes on sort of

5  an expedited basis.  But we think that if all sides work very

6  diligently, that this can get done by the start of the summer.

7           THE COURT:  All right.  Thank you.  Have you discussed

8  this with any of the other parties?

9           MR. O'SHEA:  We have not discussed this yet with our

10 adversary, but we've had -- just handed the schedule to them.

11          THE COURT:  All right, thank you, sir.

12          MR. O'SHEA:  Thank you, Your Honor.

13          MR. PERKINS:  Good afternoon, Your Honor.

14          THE COURT:  Good afternoon.

15          MR. PERKINS:  Chris Perkins of LeClairRyan, on behalf

16 of McKinsey Recovery & Transformation Services US, LLC.  Judge,

17 I'm joined by a number of colleagues behind me, both from the

18 company and counsel, two of whom are new to the case.  And I'm

19 not going to introduce everybody, but I do want to introduce

20 those two individuals to you.

21          First, Natasha Labovitz.  Ms. Labovitz, as the Court

22 may know, is with Debevoise & Plimpton LLP, and is the chair of

23 their business, restructuring, and workouts group.  And

24 Jennifer Selendy.  Ms. Selendy is the founding partner of

25 Selendy & Gay, PLLC, and she specializes in complex commercial

1   litigation.

2          Your Honor, they were added to the team for the simple

3   reason that as the dispute has been escalated here, and given

4   the allegations that have been levied, we felt that prior

5   counsel, my other co-counsel -- and I'm referring to Mr.

6   Bienenstock and Proskauer Rose, could potentially have become a

7   fact witness in the case.  So that's the reason we have new

8   members of the team.

9          Both Ms. Labovitz and Ms. Selendy have been admitted

10  pro hac vice and will address the Court today.

11         THE COURT:  All right, thank you very much, Mr.

12  Perkins.

13         MR. PERKINS:  Thank you, Your Honor.

14         THE COURT:  Welcome to the court.

15         MS. LABOVITZ:  Thank you, Your Honor.  It's a pleasure

16  to appear before you, although I never would have thought I

17  would do it in this particular context.

18         Your Honor, I've been a debtors' lawyer for more years

19  than I care to admit.  Perhaps like you, I've never seen a

20  proceeding like this in a case that's already been closed.  I

21  have, once in my life, reopened a closed case in an effort to

22  enforce a discharge in a mass tort context.  That was an

23  interesting legal issue.

24         This is something wholly different.  I think we agree

25  that this is intended as a scheduling conference.  That may be

1   the extent of our agreement with the Mar-Bow point of view here

2   today.

3         The first point of disagreement, Your Honor, is that

4   the entry of an order reopening a closed bankruptcy case is

5   something that is administrative and procedural.  From my

6   perspective, it is entirely substantive.  It is opening

7   jurisdiction over a company that has happily escaped the

8   jurisdiction of this court and is off reorganized, doing its

9   thing, pursuing new transactions.  And this --

10         THE COURT:  So you would disagree with Mr. Rhodes that

11  I should conduct a hearing on that, not just proceed on papers

12  that have been filed?

13         MS. LABOVITZ:  We think, Your Honor, you could proceed

14  on the papers.  And I do respect that this is not the day for

15  oral argument, if you think that oral argument would be

16  appropriate or necessary --

17         THE COURT:  I'm thinking whether you think it's

18  appropriate?

19         MS. LABOVITZ:  We think that there is nothing in any

20  of the papers that have been filed with the request to reopen

21  the case that rises to the level of the fraud on the court that

22  would be required to reopen the case in the manner that they're

23  seeking.

24         THE COURT:  No, what I was asking is do you think that

25  we need to have oral argument on that point?

1          MS. LABOVITZ:  We do not.

2          THE COURT:  Okay.

3          MS. LABOVITZ:  However, Your Honor, we do note that

4    the U.S. Trustee filed a submission after the briefing was

5    concluded, and in fact, after the McKinsey side had filed a

6    motion taking some objection to the fact that the Mar-Bow side

7    seemed to be willing to engage in what seemed like endless

8    briefing on this point.

9          Your Honor, I have respect for the docket and the fact

10   that we didn't see a procedural mechanism for us to file a

11   reply to the U.S. Trustee's submission.  We have not filed a

12   reply.  To the extent that the Court thinks that it would be

13   useful, we would welcome the opportunity to make an additional

14   submission on the subject of the U.S. Trustee's reply, and we

15   are anxious to get into some of the substantive points.

16         On the other hand, we're also cognizant of the fact

17   that the points the U.S. Trustee raised relate to proceedings

18   that were conducted in this court during the ANR case, and the

19   Court may feel that you have enough knowledge and background,

20   based on the docket that's before you today that you don't need

21   an additional submission.

22         So from our perspective, we are ready to proceed

23   without additional submission.  We are happy to go through an

24   oral argument if the Court thinks it would be useful.  But we

25   believe that you could decide without the benefit of any of

1   that to deny the motion, because it does not rise to the level

2   of alleging any actual facts that would relate to fraud on the

3   court.

4          THE COURT:  All right.

5          MS. LABOVITZ:  Let me pause there and ask if there are

6   any questions?  If not, we're happy to address -- I have not

7   had a chance at all to digest the discovery that's requested.

8   But we're happy to address why we think that would not be

9   necessary or appropriate here.

10          THE COURT:  Okay.  Well, we'll get to that in just a

11  minute.  How do you see that we should be proceeding -- this is

12  supposed to be a scheduling conference -- as far as this case

13  is concerned?

14          MS. LABOVITZ:  Correct.  Your Honor, if --

15          THE COURT:  And I assume the answer -- I'm sorry to

16  interrupt you.  But I said I assume the answer is that I just

17  rule that no, the case won't be opened and then everybody goes

18  home and lives happily ever after.  But assuming that that's

19  not the case, how would you perceive that we would go forward?

20          MS. LABOVITZ:  Correct.  Your Honor, to the extent

21  that you're not prepared to rule today -- and I don't think, by

22  the way, everyone would go happily after ever (sic) -- go home

23  happily ever after.  I expect there would be an appeal of that

24  decision as well.  And --

25          THE COURT:  Everything gets appealed that I do.

1  That's okay.  It lets me sleep at night.

2          MS. LABOVITZ:  So far you're doing pretty well in this

3  case on appeal, Your Honor.

4          So to the extent that the Court is not prepared to

5  rule today, we would be prepared to move very quickly to file

6  an additional submission in response to the U.S. Trustee

7  submission.  And we do think that would be appropriate.  As I

8  said, we have held off from doing so, so far, only out of

9  respect for the docket and the process.

10         But we would welcome the opportunity to do that.

11  After that -- and I do believe we could put that on file in a

12  matter of weeks -- two weeks, no need for more -- and then we

13  think that the case would be fully briefed, could be decided on

14  the papers.  And again, we believe that you could deny the

15  motion without more.

16         We believe that you would be able to deny the U.S.

17  Trustee motion as well on the papers.  If not, we would be

18  prepared to move to oral argument, again, very quickly.  We

19  think that the issues are clear and the legal standard is

20  clear.

21         To the extent that the case were opened, at that

22  stage, we know that the U.S. Trustee does not believe that any

23  additional discovery is necessary.  These issues have been

24  extensively addressed.  Mar-Bow itself knows that McKinsey has

25  filed multiple declarations on the subjects on which they seek

1  additional information.  And I don't think any additional

2  information is necessary.

3          This is not a situation in which a massive white-

4  collar-style investigation would be appropriate.  The question

5  really boils down to -- well, it's a constantly shifting ground

6  in terms of what Mar-Bow's objection is to the McKinsey

7  disclosures.  Originally it boiled down to was it appropriate

8  to disclose connections by category instead of by name.  That

9  was addressed in this case early on.  The U.S. Trustee

10  requested that disclosure, and the disclosure was made.

11          It's a question of whether disclosure of connections

12  of MIO was required.  That also, in this case, was addressed,

13  Your Honor.  McKinsey had disclosed that there was overlap on

14  the boards between MIO and RTS.  As I understand it, this Court

15  said we think that disclosure of MIO connections would be

16  appropriate; and that disclosure was made.

17          So I don't think we need an extensive investigation

18  about that.  We could have, I suppose, some limited

19  investigation as to why the interested party, Whitebox, did not

20  appear on the interested party list that was provided to

21  McKinsey.  That wouldn't take very long, but I think that

22  would -- that might be a question that the Court might be

23  interested in understanding.  We don't think that requires

24  multiple depositions at all.

25          So to that end, if we got to the point of the case

1  being reopened, we would view this is a limited exercise that

2  does not require extensive discovery.  And the question really

3  is, did McKinsey hide something?  And we don't think that

4  requires a lot.

5          THE COURT:  All right, thank you.

6          MS. LABOVITZ:  Thank you, Your Honor.

7          THE COURT:  All right.

8          MR. LONG:  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.

10          MR. LONG:  Toby Long on behalf of the reorganized

11  debtors who are supposed to be enjoying their fresh start.  And

12  I think to Your Honor's point regarding the number of people

13  here, we may have more people here today than we did at the

14  confirmation hearing.

15          THE COURT:  I was going to say that, but that's --

16          MR. LONG:  I did.  And there are a few points I do

17  want to address.  One sort of regarding sort of the procedural

18  posture of where we are.  Everybody keeps referring to this as

19  a scheduling hearing.  And when the motions were filed, I think

20  we were looking toward Mar-Bow as to how to proceed.  In this

21  court's motion practice, you file your motions, you schedule

22  from a hearing, and we go forward.

23          The parties are here to respond to this, but they

24  reached out and asked us if we wanted to have a scheduling

25  conference.  And let me be frank, the reorganized debtors don't

1  necessarily agree that additional scheduling is necessary.

2  What we largely discussed is that we're here to ask Your Honor

3  how Your Honor wants us to proceed.  And certainly the first

4  issue -- and to your question -- is the motion to reopen.  That

5  is the gating issue.

6           And I echo the sentiments of McKinsey when they said

7  they disagree with the statement of Mr. Rhodes that it's

8  administrative.  This is very much not administrative.  If you

9  look at 350 of the Bankruptcy Code, there's three bases for why

10  you can do this.  It's one, to administer assets; two, to

11  accord relief to the debtors; and three, for other cause.

12           And case law -- and it's well briefed for Your

13  Honor -- is very clear, that if you're seeking to reopen for

14  other cause, which is precisely what Mar-Bow is seeking to do

15  here, that standard is very high.  And the Court should only do

16  it under the most compelling circumstances.

17           And in response to Your Honor's question as to whether

18  an evidentiary hearing is necessary or whether you can rule on

19  the papers, the case law, I think, instructs that no, an

20  evidentiary hearing is not necessary or appropriate.  And the

21  question is, the Court looking at the papers, and as a matter

22  of law, whether Mar-Bow has demonstrated that cause exists to

23  even have that hearing for their underlying question.  But we

24  shouldn't, in connection with a motion to reopen, have the

25  hearing on the merits for their underlying question of relief.

1          And certainly, again, from the --

2          THE COURT:  Do you think -- I'm sorry --

3          MR. LONG:  Yes, sir.

4          THE COURT:  -- to interrupt you.  But do you think

5    that an undisclosed equity interest in the debtor would have

6    been cause?  I mean, if -- I know that there's a dispute, but

7    do you think that that would be cause?

8          MR. LONG:  I think, Your Honor, that's a big -- I

9    mean, it's certainly what we're looking at are the Rule 2014

10   disclosures, right, and whether the adequacy of the Rule 2014

11   disclosures --

12         THE COURT:  No, it goes beyond that.  It --

13         MR. LONG:  It --

14         THE COURT:  -- goes to disinterestedness.

15         MR. LONG:  It goes -- and frankly, Your Honor, I think

16   it goes even beyond that.  It goes to what's the movant here

17   and sort of --

18         THE COURT:  And I realize there's a standing issue.

19   We'll get to that.

20         MR. LONG:  The standing issue and what's their

21   purpose, and is there -- I think it's very clear from, frankly,

22   every court that's looked at this issue, that their issue and

23   their agenda has absolutely nothing to do with these bankruptcy

24   cases.  And I question whether they have anything to do with

25   protecting the integrity of Rule 2014.

1        And I also recognize, and we said it in our papers, is

2   the UST did file, as well, their statement and their request

3   for sanctions here, and their concern with the disclosures.

4   And I stand here and I'll say, Your Honor, the reorganized

5   debtors oppose Mar-Bow seeking to reopen these cases and don't

6   think that cause exists for Mar-Bow to reopen these cases.  But

7   we do appreciate the U.S. Trustee's filing.

8        And if the Court -- to the extent the Court wants to

9   address that, then look, we're not going to stand in your way

10  and oppose that.  What we will say is that I don't think the

11  Court needs to have a hearing to address it.  I think it's, as

12  McKinsey suggested, McKinsey just needs to file a response to

13  the U.S. Trustee.

14       Certainly if the U.S. -- if the Court wants to have a

15  hearing, it can do that.  But we don't need Mar-Bow involved in

16  these cases.  We don't need Mar-Bow to be doing discovery.  We

17  don't need Mar-Bow on their fishing expedition.

18       The U.S. Trustee read Mar-Bow's papers.  They

19  conducted their own investigation.  They narrowed the issues.

20  And they've sought very narrow and specific relief with this

21  Court.

22            THE COURT:  All right, thank you, sir.

23            MR. LONG:  Thank you.

24            THE COURT:  All right.  Mr. Bernstein?  I would say

25  that it's good to see you back, but you're probably here on

1  your own nickel, and I appreciate the fact that you are here

2  today and are taking an interest in this matter.  And I take

3  what the Office of the U.S. Trustee has to say very seriously,

4  as you know.  So you may proceed.

5          MR. BERNSTEIN:  Thank you, Your Honor.  And in fact, I

6  am actually very happy to be here again.  It is nice to be in

7  front of you again.  And I do -- I would like to thank you for

8  giving us all the opportunity to be heard on this.

9          I think that most of my -- the U.S. Trustee's position

10 kind of came out in everybody else's presentation.  As you

11 heard, and as you saw in our paper, we do believe the case

12 ought to be reopened.  And it's our position that there is some

13 remedial action that needs to be taken as a result of what's

14 going on.

15         Where we differ with at least Mar-Bow's aspect is that

16 we think there's enough in the record now to deal with that.

17 And so the United States Trustee is not going to be seeking to

18 take any of its own discovery.  We think there's -- the record

19 is there.  We can have legal argument.  If there's -- it's

20 pretty well briefed.  If the Court wants more briefing,

21 that's -- we can figure all that out.  But we're not going to

22 be taking any more discovery.

23         That being said, we're also not standing in anybody

24 else's way.  If Mar-Bow or -- feels they need discovery to

25 pursue this; if McKinsey feels they need discovery to defend

1    this, we're not standing in their way.  But the United States

2    Trustee thinks there's sufficient evidence that's undisputed

3    evidence in the record, already there, to go forward and for

4    the Court to really -- just to have, perhaps, some more legal

5    argument; but we don't need any more factual basis to get to

6    where we feel we need to be.

7            So I'm kind of along for the ride when it comes to

8    that.  We're ready to go whenever the Court is.  If the Court

9    feels discovery is necessary, we're not going to stand in the

10   way.  Discovery will go forward.

11           If I could jump back?  You had initially asked before

12   about reopening the case.  And I do agree with -- I think

13   everybody seems to agree that there's enough on the record now

14   to make a ruling.  And again, that's consistent with what we've

15   been saying.  It's our belief that the Court ought to reopen

16   the case.

17           I think McKinsey indicated that the -- that there'd

18   need to be a showing of fraud on the court just to reopen.  I

19   think that was a little off.  That was putting a bit of the

20   cart before the horse.

21           It is more than -- the parties have gone through the

22   standards.  It is just cause that needs to be shown.  And I

23   think that there -- given the allegations and the evidence that

24   we have here, I think cause certainly would be shown.  However,

25   if the Court feels it needs more evidence on reopening the case

1  first, obviously we can put that into the schedule.

2          So beyond that, Your Honor, unless you have some

3  specific questions for me --

4          THE COURT:  I do.  I've got a number of specific

5  questions.

6          MR. BERNSTEIN:  Of course.

7          THE COURT:  Number one -- well, first of all, the

8  reopening fee, you've joined the motion.  Can I reopen the case

9  and waive the fee on the grounds that the U.S. Trustee wants

10  the case to be reopened?

11          MR. BERNSTEIN:  So when -- we're talking about the

12  reopening fee or the quarterly fees?  I just want to make sure

13  we're talking about the same --

14          THE COURT:  I'm going to get to -- that's going to be

15  question two.

16          MR. BERNSTEIN:  Okay.

17          THE COURT:  Question one is the reopening fee.

18          MR. BERNSTEIN:  Okay.  So with the reopening fee, yes,

19  the United States Trustee has the ability to move to reopen a

20  case without the fee.  I think, yes, you can do that.

21          If the Court wants a specific actual motion by us, we

22  would certainly do that, because I don't want to cause the

23  debtor any extra expenses in this case.

24          THE COURT:  Okay.  All right, now, what about the

25  quarterly fees?

1          MR. BERNSTEIN:  Quarterly fees, of course, are

2    statutory.

3          THE COURT:  I know.

4          MR. BERNSTEIN:  The United States Trustee has no

5    ability to waive a statute.  However, in this case, as Judge

6    Rhodes indicated before, Mar-Bow has agreed to pay those.  So

7    we don't think that will work to the detriment of the debtor

8    and should really -- it shouldn't really factor in to whether

9    or not to reopen the case given the importance of the issues.

10         THE COURT:  All right.  The third question I have is:

11   what is your life expectancy as far as being able to be

12   involved in this case?  Are you going to be able to

13   participate?  Are you going to be able to be here?  Are you

14   going to be able to be involved?  And the answer may be you

15   don't have a clue.  I don't know.

16         MR. BERNSTEIN:  It is our intent to be fully involved.

17   We may need to ask for a little flexibiltiy here and there,

18   because we really don't know what is coming down the pike with

19   respect to the lapse in funding.

20         However, we have people who are showing up for work.

21   We were able to get here today.  We were able to -- we are able

22   to file papers to the extent that you need them.  We will do

23   everything in our power to be here and fully participate.  And

24   we think we can.

25         THE COURT:  All right, thank you very much.

1          MR. BERNSTEIN:  Thank you, Your Honor.  And again,

2    it's good to see you again.

3          THE COURT:  Okay.  Everybody's standing up, so

4    obviously no one's liked my comments so far.

5          MS. SELENDY:  May I be heard briefly?

6          THE COURT:  Yes, because I've not heard from --

7    Selendy?

8          MS. SELENDY:  Yes, Ms. Selendy.

9          THE COURT:  Okay, very good.

10          MS. SELENDY:  Thank you.  Thank you very much, Your

11    Honor.  And I'm going to be very brief.  I think Ms. Labovitz

12    covered most everything.  But I think that as you are aware,

13    that the allegations that have been made in this case we

14    strongly, strongly disagree with.  We think in our papers --

15          THE COURT:  I would hope you would.

16          MS. SELENDY:  They are very serious, and they are

17    very, very --

18          THE COURT:  They're very serious.

19          MS. SELENDY:  -- unsubstantiated.  And Your Honor, for

20    example, mentioned the notion of an undisclosed equity interest

21    in the debtor.

22          THE COURT:  That's the allegation.

23          MS. SELENDY:  That is very, very serious.  And --

24          THE COURT:  I mean, how can I ignore that?  I mean,

25    that is --

1          MS. SELENDY:  Well, that's exactly the point.  They

2     have escalated to the point that they've made such allegations

3     that no judge could ignore them.  Right?  And this is all in

4     the service of them being able to get an open-ended -- a vast

5     discovery covering many months, to then try to show you that

6     there was an undisclosed equity interest.

7          But Your Honor, we believe that the record as it

8     stands shows that they are conflating McKinsey RTS and a wholly

9     separate company, MIO.  But that doesn't matter for this

10    record, Your Honor, because you found that just on the basis of

11    there being an RTS employee on that MIO board, that we had to

12    disclose all of MIO's connections.  And we did disclose them to

13    you.

14          THE COURT:  Well, Contura wasn't on the list.

15          MS. SELENDY:  Well, ANR -- Contura is the reorganized

16    company.

17          THE COURT:  Right.

18          MS. SELENDY:  Right?

19          THE COURT:  That was never disclosed.

20          MS. SELENDY:  Well, Contura -- there's no evidence

21    whatsoever that McKinsey RTS ever had an interest in Contura.

22    What they are talking about, what they have raised in their

23    papers, is the notion that because MIO had an investment in the

24    parties that we disclosed to you in camera, right -- we told

25    you these are MIO's connections --

1        THE COURT:  Whitebox wasn't on the in camera

2   disclosures.

3        MS. SELENDY:  And the only reason for that was that it

4   wasn't on -- that it wasn't on the interested party list that

5   we got from Jones Day.

6        THE COURT:  But that's not -- you don't get to rely on

7   that.  Everyone's got to still disclose their connections.  And

8   one like that would sort of be -- if it is true, sort of be a

9   loud beacon.  How could you miss that?

10        MS. SELENDY:  Well, it is -- because nobody knew that

11   it was on the interested party list when we went to do the

12   check at MIO.  We didn't have it on the interested parties

13   list.  We went to MIO to make the disclosure that Your Honor

14   asked for.  And every one of those parties that were disclosed

15   in camera were similarly situated to Whitebox.  And if Whitebox

16   had been on that list, it would have ended up on the in camera

17   disclosures.

18        So every one of those parties that we disclosed to you

19   was an interested party in the case.  So now bringing up

20   arguments that well, MIO wasn't sufficiently separate or MIO,

21   through these parties that we disclosed to you, had investments

22   in ANR or Contura, right, that was disclosed as part of the in

23   camera submission to you.

24        Those parties that were first lienholders in the case

25   were on the list that we gave to you in camera with one party

1  missing, and that was Whitebox.  So on this record, to distort

2  and argue that we hid something from you -- we gave you every

3  connection of MIO that we knew of in camera.

4         And as Ms. Labovitz said, if you feel that we should

5  investigate why Whitebox wasn't on that list, that's a very

6  narrow issue.  But to suggest that we hid things from this

7  Court about those MIO investments when they were disclosed in

8  camera, is extremely serious.

9         So my limited point that I wanted to make is that

10  these allegations are unsubstantiated.  And they are

11  speculative.  And they are wild accusations in that paper.

12         We feel, if Your Honor is going to go down the road of

13  discovery, that the first step in discovery, the gating issue,

14  is whether there is any good-faith basis for accusing McKinsey

15  of intentionally hiding things from this Court.  And that

16  should be the limited nature of discovery.

17         You should look first whether he had any legitimate

18  basis for making those very serious allegations, putting them

19  in the public record and having us having to deal with those;

20  because that is a serious issue.  Making false and

21  unsubstantiated allegations of fraud is also very serious.

22         McKinsey took its disclosure obligations extremely

23  seriously, Your Honor.  And we feel that discovery is not

24  necessary, and you can decide this on the record.  We have

25  serious responses to the U.S. Trustee's position as well, as we

1  think that if Your Honor reexamines the very record in this

2  case, you'll see some revisionist history going on.  And we'd

3  like to be able to make that submission to Your Honor so that

4  you can see it before you rule.

5          But if you go down the road of discovery, there is a

6  gating issue, a preliminary issue, which is:  is there a good

7  faith basis for the things they've accused us of?  And we'd

8  like an opportunity to explore that first.  Thank you.

9          THE COURT:  All right, thank you.

10         All right, Mr. Rhodes?

11         Oh, I'm sorry.

12         MR. LONG:  Your Honor, apologies.  Again, Toby Long.

13  I just wanted to briefly address the quarterly fee issue,

14  because again, reopening the case, and the quarterly fees in

15  particular, are very important to the reorganized debtors.

16         There is -- it's probably no surprise to Your Honor,

17  there's not a lot of case law out there on the subject.  But

18  certainly, from our position -- and I sat here and told you we

19  don't think you should reopen the case for Mar-Bow.  If Your

20  Honor does reopen it from the U.S. Trustee, I'm sure Mar-Bow

21  takes their offer to pay those quarterly fees off the table.

22         There are solutions though, still, Your Honor, to

23  minimize prejudice.  We put those in our brief.  One, Your

24  Honor, is just reopening the lead case.  Two, Your Honor, is

25  just reopening -- and again, to the extent Your Honor believes

1  it's appropriate to reopen -- to reopen it for the limited

2  purpose of addressing just the U.S. Trustee or Mar-Bow's

3  request for leave, and then closing automatically.

4       What I don't want is other parties to be able to run

5  in here without having to also meet the high standard for cause

6  to reopen.  And so again -- and what else we don't want is to

7  have to spend the reorganized debtors' money to file another

8  motion to close these cases.  So I'd like to see the case

9  closed automatically.

10      And then lastly, Your Honor, there's certainly a

11  number of other courts that have addressed this issue, have

12  simply entered the order on the motion to reopen the same day

13  it entered the dispositive order, and so therefore the case is

14  literally opened for a minute before it's closed.  And so

15  that's certainly one way to minimize the fees.

16      THE COURT:  How do I do that?

17      MR. LONG:  Well, Your Honor, technically -- and if we

18  could delay the hearing on the motion to reopen until we have

19  the hearing on the underlying motion for relief.  You don't

20  technically -- we don't technically need -- there's nothing in

21  the Code or the Rules that says we have to reopen the case to

22  have the hearing on the preliminary -- on the underlying

23  request for relief.

24      And so we could just continue the hearing on the

25  motion to reopen to the hearing on the dispositive issue, to

1  the extent Your Honor wishes to proceed that way.  And that,

2  again, I think would minimize the burden of these U.S. Trustee

3  fees.

4          THE COURT:  And meanwhile everybody keeps filing

5  pleadings in a closed case?

6          MR. LONG:  Well, again, I think to the extent that

7  we're just here on the U.S. Trustee, we're not going to have

8  that problem.  And with respect to the request for pleadings,

9  if we're here on Mar-Bow, Mar-Bow has offered to pay the fees,

10  and so that answers the question.  If we're here for the U.S.

11  Trustee, then I don't anticipate we're going to have multitudes

12  of pleadings that are going require relief from Your Honor.

13          THE COURT:  All right.  Thank you.

14          MR. RHODES:  So I thought we weren't going to argue

15  the merits of the reopening today, but the issue has been

16  breached, so let me just dive in a little bit, Your Honor.

17          All it takes is cause.  All it takes is a reason to

18  reopen the case.  Is there a reason?  And frankly, Your Honor,

19  I don't think I could have articulated a better reason than Ms.

20  Selendy did herself.

21          The issues that we raised are of the utmost importance

22  to the integrity of the court's process and to this court.  If

23  that isn't reason enough to reopen this case, I frankly don't

24  know what would be.

25          We recognize the seriousness of the issues that we

1   have raised, and as we were formulating our objections, we were

2   extremely careful to have an evidentiary basis for every single

3   one of the paragraphs in our objections here -- in our motion

4   here, Your Honor.

5          To say that there's a gating issue to get your foot in

6   the door is not a regular part of our judicial process.  If

7   Your Honor wants to walk down that road, we'll do it, and we'll

8   make Mr. Alix available for a deposition, and he will explain

9   on a paragraph-by-paragraph basis what the evidentiary basis

10  for each of our allegations is.  It's an unusual process, but

11  if it's necessary to do it, we will.

12         But the reality here is, Your Honor, that all of the

13  allegations that we have raised in our motion here, relate to

14  facts that we have determined and identified long after

15  confirmation in this case.  These facts were not available to

16  us at the time of confirmation and they were not available to

17  Your Honor.

18         And here, I just want to remind, really, everyone that

19  when Your Honor found that McKinsey was disinterested, it was a

20  finding that was based on what was available to the Court at

21  the time, both on the in camera disclosure and --

22         THE COURT:  I'm well aware of that.

23         MR. RHODES:  Yeah, yeah.  So we have developed

24  significant new evidence that we believe shows that McKinsey

25  not only had investments in the debtor but in interested

1  parties and specifically in the interested parties that wound

2  up with the assets of this case, and that as a result of those

3  investments, McKinsey earned -- it didn't earn -- McKinsey

4  realized a profit of at least fifty million dollars, and we

5  have reason to believe it's substantially more than that.

6       That's an illegal profit.  It's one, frankly, that

7  McKinsey should be ordered to disgorge, because it's illegal,

8  after we prove it.  And we will be able to prove that, Your

9  Honor.

10      So at this point, I'd like to again turn the podium

11 back over to Mr. O'Shea to explain in some more detail why we

12 need the discovery that we have asked for, in light of the

13 objections to that, that have been asserted by McKinsey.

14      THE COURT:  Well, you know, I don't think I need that,

15 because --

16      MR. RHODES:  Okay.

17      THE COURT:  -- because here's what I'm thinking.

18      MR. RHODES:  Um-hum.

19      THE COURT:  I don't need more briefing.  I've read

20 through all of everybody's submissions in this case.  And these

21 are some of the most serious allegations I've ever seen.  And I

22 take you at your word that you don't make them lightly.

23      I also take you at your word that they're completely

24 false and not true.  But we've got to get to the bottom of it.

25      MR. RHODES:  Right.

1           THE COURT:  This is -- these allegations are extremely
2    serious.  So I am going to reopen the case.
3           I'm going to waive the filing fee.  I'm going to open
4    only the lead case.  We don't need to have all of the cases
5    open.  And if there's some reason that we need to reopen
6    another case, we can deal with that as we go through.
7           But that's what we're going to do today.  And now I'd
8    like to do what we're set upon to do, and that's have a
9    scheduling conference, as far as how we're going to take these
10   matters, because one of the matters I need to hear quickly at
11   the front end is, quite frankly, your standing to be here.
12   Okay?
13          And that's been raised by the debtor.  It's been
14   raised by a number of the parties and such.  And I'm concerned
15   about the Fourth Circuit's made a decision, and that's binding
16   on me.
17          MR. RHODES:  Right.
18          THE COURT:  And what -- so I want a hearing on that.
19   I'd like that to be fleshed out.  So that's a hearing that I
20   would like.  I'd like to have that first.  And I'd like to
21   resolve that hearing before I order discovery.
22          MR. RHODES:  Okay.
23          THE COURT:  Because if I find that you don't have --
24          MR. RHODES:  Sure.
25          THE COURT:  -- standing, then you're done, right?

1           MR. RHODES:  Yes, we are, indeed.

2           THE COURT:  Okay.  Or you can go back and tell them

3    again why you have standing.  But in any event, we can address

4    that, okay, and get that done.  And it seems to me that that

5    ought to be one of the early hearings that we have.

6           And then as far as how we separate things between what

7    Mr. Bernstein wants to pursue and what you want to pursue, I

8    think that we'd take that up at that time, once we've made that

9    decision.

10          Now, that's what I'm thinking.  And I want reaction to

11   what I just said.

12          MR. RHODES:  Okay.  So my -- that's fine.  We will be

13   back whenever Your Honor sets a hearing on the issue of

14   standing.  The only thing -- the only reaction I have, frankly,

15   Your Honor, is the U.S. Trustee's standing, of course, is

16   entirely separate from ours.

17          THE COURT:  I realize that.  But that don't want to do

18   discovery.

19          MR. RHODES:  Right.  So what I was going to suggest

20   was maybe that hearing could be a combined hearing on our

21   standing and their objection, since no one seems to think that

22   any discovery is necessary for that.  But I leave that to you

23   and them to work out.

24          THE COURT:  Well, I'll ask Mr. Bernstein what he wants

25   to do on that.

1        MR. RHODES:  Yeah, yeah.

2        THE COURT:  I'm assuming that we have no reason to

3   address at all your motion for an indicative ruling, because

4   that's moot.

5        MR. RHODES:  That's moot at this point.  We agree.

6        THE COURT:  Got it.  Okay, very good.  All right.

7        MS. SELENDY:  So two things, Your Honor.  I think that

8   we would like to -- we could fairly quickly put in papers on

9   standing and be prepared to argue that.  So two to three weeks,

10  something like that, we could be back here.

11       THE COURT:  Okay.

12       MS. SELENDY:  And then the separate issue, I think, is

13  before we have any hearing on the U.S. Trustee's position, we

14  would like to be able to respond, to be able to put in --

15       THE COURT:  I'm going to give you a chance to respond.

16       MS. SELENDY:  Okay.

17       THE COURT:  I got the impression, reading the papers,

18  that people were afraid to file too many pleadings with me.  I

19  don't have a problem reading what you have to say, so long as

20  you're not just saying it over and over and over again.

21       MS. SELENDY:  Okay.

22       THE COURT:  And because that helps me make a decision.

23       MS. SELENDY:  Yep.

24       THE COURT:  And I want to -- I want to make sure that

25  I get it right.  So I have no problem with you filing a

1  response.  And when would you like to be able to file that

2  response?  How long do you need; two weeks?

3          MS. SELENDY:  So I think two weeks would be -- we

4  could have that done in two weeks, Your Honor.

5          THE COURT:  Okay.  And then certainly Mr. Bernstein

6  would be able to respond to that two weeks after that, if you

7  want to, to whatever is filed.  Okay?

8          MR. BERNSTEIN:  That would be fine, Your Honor.  The

9  only thing I would say is, as I pointed out before, I may need

10  a little flexibility if we ask, just because this lapse of

11  funding.

12          MS. SELENDY:  And we have no problem --

13          THE COURT:  Okay, and going to put every party on

14  notice about that, that if Mr. Bernstein asks for flexibility,

15  I expect everyone to give him the courtesy of that, because I

16  am.  And you'll be able to get that.  You know what you can do

17  reasonably, and so we're all on uncharted territory as far this

18  was concerned.

19          MR. BERNSTEIN:  Thank you, Your Honor.

20          THE COURT:  So hopefully the doors stay open.  We'll

21  see.  Okay.

22          MS. SELENDY:  Absolutely.  So you would -- do you want

23  us to agree with Mar-Bow on the briefing schedule for --

24          THE COURT:  Yes.

25          MS. SELENDY:  Okay, and then --

1          THE COURT:  This is how I'd like to proceed.  I'd like

2    the parties to get together and agree on dates and then submit

3    those to me, and then I can approve them or whatever.

4          MS. SELENDY:  Okay.

5          THE COURT:  But that -- now, if you come in because

6    you can't agree, I'm going to be very disappointed.

7          MS. SELENDY:  Yeah, I'm -- fingers crossed, I think we

8    should be able to agree on that.

9          THE COURT:  Okay, very good.

10         MS. SELENDY:  Thank you.

11         THE COURT:  All right.  Would you like to be excused

12   from the case now?

13         MR. LONG:  No comment, Your Honor.  My only question

14   is a point of clarification with respect to the Court's

15   decision to reopen the cases, because a big concern of the

16   reorganized debtors is other parties who are firing at them

17   right now and will continue.  They are an operating company.

18   And for better or for worse, when you're sitting there and

19   doing well, parties come at you for claims that were discharged

20   and enjoined in this bankruptcy case.

21         And I'm prepared, this afternoon, Your Honor, to be

22   filing a response to another party who's seeking to reopen this

23   case.  And my issue, Your Honor, is that anybody who wants to

24   reopen the case at this point should have to meet the standard

25   of 350.  And so I would ask --

1          THE COURT:  Yeah, it's not open season.  We're opening
2  it for a discrete reason.

3          MR. LONG:  For the limited purposes, yes, sir.

4          THE COURT:  Yes, the limited purpose of what has been
5  raised in these papers.  And we can put that into the reopening
6  order.

7          MR. LONG:  Yes, sir.

8          THE COURT:  Okay.

9          MR. LONG:  Thank you very much.

10          THE COURT:  Okay.  So would you help me put together
11  that order so that we've got the language that you want?

12          MR. LONG:  Certainly, Your Honor.  Certainly.

13          THE COURT:  Okay, very good.

14          MR. LONG:  Thank you.

15          MR. RHODES:  And that's what I was going to volunteer
16  to do, Your Honor, since it's our motion.  Why don't we take
17  the first cut at a proposed order and circulate it and work out
18  the differences and then submit it to Your Honor?

19          THE COURT:  That'll be fine.  But please be mindful of
20  what --

21          MR. RHODES:  Yes.

22          THE COURT:  -- the debtors' concerns are, because that
23  is a very real concern.

24          MR. LONG:  And one other point, I don't think -- and
25  just to make clear, is with respect to the fees.  I know you

1   waived the fee to reopen.  But with respect to the quarterly

2   fees?

3           THE COURT:  You can raise -- you can address that in

4   the order that you submit --

5           MR. LONG:  That will be covered by our friends.

6           THE COURT:  -- okay, because that way Mr. Bernstein

7   can make sure that he's happy with however it's been worked out

8   as well.

9           MR. LONG:  Yes, Your Honor.

10          THE COURT:  Okay?

11          MR. LONG:  Thank you.

12          THE COURT:  All right.  If you pay the fees, does that

13  automatically give you standing?

14          MR. RHODES:  We would accept that ruling, Your Honor.

15          THE COURT:  All right.  Okay, what else do we need to

16  address as far as scheduling is concerned today?

17          I'm going to get papers in two weeks responding to the

18  U.S. Trustee, and then perhaps two weeks after that, but Mr.

19  Bernstein's going to let us know.  Then I'm going to want to

20  schedule a hearing.  But I'm going to ask all the parties to

21  get together to coordinate whether they want to combine the

22  standing with Mr. Bernstein's motion or whether we want to

23  separate those.  And again, I invite you to talk with each

24  other and come up with a plan and then submit that to me in a

25  way that we can go forward.

 1         I'm going to defer ruling on any discovery until after

 2  we've decided the standing issue.

 3         Anything else that we need to raise or go through

 4  today?

 5         All right, thank you all very much, then.  We'll be

 6  adjourned.

 7         IN UNISON:  Thank you, Your Honor.

 8         THE COURT OFFICER:  All rise.  Court is now adjourned.

 9     (Whereupon these proceedings were concluded at 2:53 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

1                           I N D E X

2

3

4    RULINGS:                                    PAGE   LINE

5    Motion to admit Sean O'Shea pro hac          3      17
     vice is granted.
6
     Motion to reopen granted.                   32      2
7
     Filing fee is waived.  Only lead case       32      3
8    will be reopened.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1                    C E R T I F I C A T I O N

 2

 3          I, Penina Wolicki, the court-approved transcriber, do

 4   hereby certify the foregoing is a true and correct transcript

 5   from the official electronic sound recording of the proceedings

 6   in the above-entitled matter.

 7

 8

 9                                    January 10, 2019

10   _____      _____

11   PENINA WOLICKI                        DATE

12   AAERT Certified Electronic Transcriber CET-569

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 43 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

# A

**ability (2)**
21:19;22:5
**able (18)**
13:16;22:11,12,13,
14,21,21,21;24:4;
27:3;28:4;31:8;
34:14,14;35:1,6,16;
36:8
**absolutely (2)**
17:23;35:22
**accept (1)**
38:14
**accord (1)**
16:11
**accusations (1)**
26:11
**accused (1)**
27:7
**accusing (1)**
26:14
**action (1)**
19:13
**actual (2)**
12:2;21:21
**actually (1)**
19:6
**added (1)**
9:2
**addition (1)**
7:25
**additional (9)**
7:25;11:13,21,23;
13:6,23;14:1,1;16:1
**address (11)**
9:10;12:6,8;15:17;
18:9,11;27:13;33:3;
34:3;38:3,16
**addressed (4)**
13:24;14:9,12;
28:11
**addressing (1)**
28:2
**adequacy (1)**
17:10
**adequate (1)**
6:23
**adjourned (2)**
39:6,8
**administer (1)**
16:10
**administrative (4)**
4:4;10:5;16:8,8
**administratively (1)**
4:25
**admission (1)**
3:15
**admit (1)**
9:19
**admitted (2)**
3:11;9:9

**adversary (2)**
6:4;8:10
**advising (1)**
7:16
**afraid (1)**
34:18
**afternoon (10)**
3:6,7,8,21,22;8:13,
14;15:8,9;36:21
**again (20)**
6:10;8:2;13:14,18;
17:1;19:6,7;20:14;
23:1,2;27:12,14,25;
28:6;29:2,6;31:10;
33:3;34:20;38:23
**agenda (1)**
17:23
**aggressive (2)**
6:7;8:2
**agree (9)**
9:24;16:1;20:12,
13;34:5;35:23;36:2,
6,8
**agreed (2)**
4:9;22:6
**agreement (1)**
10:1
**Alix (1)**
30:8
**allegation (1)**
23:22
**allegations (11)**
9:4;20:23;23:13;
24:2;26:10,18,21;
30:10,13;31:21;32:1
**alleging (1)**
12:2
**along (2)**
6:3;20:7
**Alpha (1)**
3:1
**although (1)**
9:16
**among (1)**
3:24
**ANR (9)**
7:3,5,7,15,16,23;
11:18;24:15;25:22
**anticipate (1)**
29:11
**anxious (1)**
11:15
**apologies (1)**
27:12
**appeal (2)**
12:23;13:3
**appealed (1)**
12:25
**appear (2)**
9:16;14:20
**appreciate (1)**
18:7;19:1
**appropriate (9)**

**10:16,18;12:9;
13:7;14:4,7,16;
16:20;28:1**
**approve (1)**
36:3
**approximately (1)**
6:6
**argue (3)**
26:2;29:14;34:9
**argument (9)**
4:6,9;10:15,15,25;
11:24;13:18;19:19;
20:5
**arguments (1)**
25:20
**arm (2)**
7:4,4
**articulated (1)**
29:19
**aspect (1)**
19:15
**assert (1)**
5:9
**asserted (2)**
5:10;31:13
**assets (2)**
16:10;31:2
**assignments (1)**
7:22
**assume (2)**
12:15,16
**assuming (2)**
12:18;34:2
**automatically (3)**
28:3,9;38:13
**available (4)**
30:8,15,16,20
**aware (3)**
5:6;23:12;30:22

# B

**back (6)**
18:25;20:11;
31:11;33:2,13;34:10
**background (1)**
11:19
**Bank (1)**
7:24
**bankruptcy (7)**
3:4;7:2,7;10:4;
16:9;17:23;36:20
**based (2)**
11:20;30:20
**bases (1)**
16:9
**basis (9)**
8:5;20:5;24:10;
26:14,18;27:7;30:2,
9,9
**beacon (1)**
25:9
**become (2)**

**5:18;9:6**
**behalf (3)**
3:9;8:15;15:10
**behind (1)**
8:17
**belief (2)**
4:1;20:15
**believes (1)**
27:25
**benefit (1)**
11:25
**Bernstein (17)**
18:24;19:5;21:6,
11,16,18;22:1,4,16;
23:1;33:7,24;35:5,8,
14,19;38:6
**Bernstein's (2)**
38:19,22
**better (2)**
29:19;36:18
**Beyond (4)**
4:19;17:12,16;
21:2
**Bienenstock (1)**
9:6
**big (2)**
17:8;36:15
**binding (1)**
32:15
**bit (2)**
20:19;29:16
**Black (2)**
7:5,10
**blind (1)**
6:21
**board (1)**
24:11
**boards (1)**
14:14
**Boies (1)**
3:14
**boiled (1)**
14:7
**boils (1)**
14:5
**both (5)**
7:21,21;8:17;9:9;
30:21
**bottom (1)**
31:24
**Bow (1)**
5:18
**breached (1)**
29:16
**brief (2)**
23:11;27:23
**briefed (4)**
4:2;13:13;16:12;
19:20
**briefing (5)**
11:4,8;19:20;
31:19;35:23
**briefly (2)**

**23:5;27:13**
**bringing (1)**
25:19
**burden (1)**
29:2
**business (1)**
8:23

# C

**came (1)**
19:10
**camera (9)**
24:24;25:1,15,16,
23,25;26:3,8;30:21
**can (26)**
6:3,4,22;8:6;
16:10,18;18:15;
19:19,21;21:1,8,20;
22:24;23:24;26:24;
27:4;32:6;33:2,3;
35:16;36:3;37:5;
38:3,3,7,25
**Canada (1)**
7:24
**care (1)**
9:19
**careful (1)**
30:2
**cart (1)**
20:20
**case (56)**
3:4;5:7;8:18;9:7,
20,21;10:4,21,22;
11:18;12:12,17,19;
13:3,13,21;14:9,12,
25;16:12,19;19:11;
20:12,16,25;21:8,10,
20,23;22:5,9,12;
23:13;25:19,24;27:2,
14,17,19,24;28:8,13,
21;29:5,18,23;30:15;
31:2,20;32:2,4,6;
36:12,20,23,24
**cases (7)**
17:24;18:5,6,16;
28:8;32:4;36:15
**category (1)**
14:8
**cause (11)**
16:11,14,22;17:6,
7;18:6;20:22,24;
21:22;28:5;29:17
**certainly (13)**
3:4;16:3;17:1,9;
18:14;20:24;21:22;
27:18;28:10,15;
35:5;37:12,12
**chair (1)**
8:22
**chance (2)**
12:7;34:15
**Chapter (2)**

Case 15-10541-BLS     Doc 2427-11     Filed 05/08/19     Page 44 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

3:3;4:21
**check (1)**
  25:12
**choice (1)**
  5:11
**choose (1)**
  5:15
**Chris (1)**
  8:15
**Circuit's (1)**
  32:15
**circulate (1)**
  37:17
**circumstances (1)**
  16:16
**claims (1)**
  36:19
**clarification (1)**
  36:14
**clear (5)**
  13:19,20;16:13;
  17:21;37:25
**CLERK (1)**
  3:1
**close (1)**
  28:8
**closed (6)**
  9:20,21;10:4;28:9,
  14;29:5
**closing (1)**
  28:3
**clue (1)**
  22:15
**coal (1)**
  7:17
**co-counsel (1)**
  9:5
**Code (2)**
  16:9;28:21
**cognizant (1)**
  11:16
**collar-style (1)**
  14:4
**colleagues (1)**
  8:17
**combine (1)**
  38:21
**combined (1)**
  33:20
**coming (1)**
  22:18
**comment (1)**
  36:13
**comments (1)**
  23:4
**commercial (1)**
  8:25
**company (5)**
  8:18;10:7;24:9,16;
  36:17
**Compass (1)**
  7:3
**compelling (1)**

16:16
**completed (1)**
  8:3
**completely (1)**
  31:23
**complex (1)**
  8:25
**concern (4)**
  5:3;18:3;36:15;
  37:23
**concerned (4)**
  12:13;32:14;
  35:18;38:16
**concerns (1)**
  37:22
**concluded (3)**
  3:3;11:5;39:9
**conduct (1)**
  10:11
**conducted (2)**
  11:18;18:19
**conference (7)**
  3:2,23;4:8;9:25;
  12:12;15:25;32:9
**confirmation (3)**
  15:14;30:15,16
**conflating (1)**
  24:8
**conflict (1)**
  7:16
**connection (3)**
  7:23;16:24;26:3
**connections (8)**
  7:14;8:1;14:8,11,
  15;24:12,25;25:7
**consistent (1)**
  20:14
**constantly (1)**
  14:5
**context (2)**
  9:17,22
**continue (2)**
  28:24;36:17
**Contura (7)**
  6:15;7:10;24:14,
  15,20,21;25:22
**coordinate (1)**
  38:21
**costs (1)**
  7:17
**counsel (2)**
  8:18;9:5
**course (5)**
  4:3,12;21:6;22:1;
  33:15
**COURT (135)**
  3:3,7,10,11,13,16,
  17,20,22;4:7,15,20;
  5:24;7:13;8:7,11,14,
  21;9:10,11,14,14;
  10:8,10,17,21,24;
  11:2,12,18,19,24;
  12:3,4,10,15,25;

13:4;14:14,22;15:5,
  7,9,15;16:15,21;
  17:2,4,12,14,18,22;
  18:8,8,11,14,21,22,
  24;19:20;20:4,8,8,
  15,18,25;21:4,7,14,
  17,21,24;22:3,10,25;
  23:3,6,9,15,18,22,24;
  24:14,17,19;25:1,6;
  26:7,15;27:9;28:16;
  29:4,13,22;30:20,22;
  31:14,17,19;32:1,18,
  23,25;33:2,17,24;
  34:2,6,11,15,17,22,
  24;35:5,13,20,24;
  36:1,5,9,11;37:1,4,8,
  10,13,19,22;38:3,6,
  10,12,15;39:8,8
**courtesy (1)**
  35:15
**courts (1)**
  28:11
**court's (3)**
  15:21;29:22;36:14
**covered (3)**
  6:13;23:12;38:5
**covering (1)**
  24:5
**crossed (1)**
  36:7
**cut (1)**
  37:17

———

## D

**Daruvala (1)**
  7:23
**date (1)**
  4:11
**dates (1)**
  36:2
**David (1)**
  3:8
**day (3)**
  10:14;25:5;28:12
**deal (6)**
  6:24;7:2;8:4;
  19:16;26:19;32:6
**dealing (1)**
  6:20
**Debevoise (1)**
  8:22
**debtor (14)**
  4:17,20,24;5:1;
  6:18;7:1,11,15;17:5;
  21:23;22:7;23:21;
  30:25;32:13
**debtors (6)**
  15:11,25;16:11;
  18:5;27:15;36:16
**debtors' (3)**
  9:18;28:7;37:22
**decide (2)**

11:25;26:24
**decided (2)**
  13:13;39:2
**decision (7)**
  4:2,14;12:24;
  32:15;33:9;34:22;
  36:15
**declarations (1)**
  13:25
**defend (1)**
  19:25
**defer (1)**
  39:1
**delay (1)**
  28:18
**demonstrated (1)**
  16:22
**deny (3)**
  12:1;13:14,16
**deposition (1)**
  30:8
**depositions (3)**
  6:8,10;14:24
**detail (1)**
  31:11
**determine (1)**
  3:2
**determined (1)**
  30:14
**detriment (1)**
  22:7
**developed (1)**
  30:23
**differ (1)**
  19:15
**differences (1)**
  37:18
**different (1)**
  9:24
**digest (1)**
  12:7
**diligently (1)**
  8:6
**direct (2)**
  6:17;7:4
**disagree (3)**
  10:10;16:7;23:14
**disagreement (1)**
  10:3
**disappointed (1)**
  36:6
**discharge (1)**
  9:22
**discharged (1)**
  36:19
**disclose (4)**
  14:8;24:12,12;
  25:7
**disclosed (9)**
  7:13;14:13;24:19,
  24;25:14,18,21,22;
  26:7
**disclosure (8)**

14:10,10,11,15,16;
  25:13;26:22;30:21
**disclosures (6)**
  14:7;17:10,11;
  18:3;25:2,17
**discovery (30)**
  5:14;6:2,5,14,23,
  24;7:2,9;8:1;12:7;
  13:23;15:2;18:16;
  19:18,22,24,25;20:9,
  10;24:5;26:13,13,16,
  23;27:5;31:12;
  32:21;33:18,22;39:1
**discrete (1)**
  37:2
**discuss (1)**
  3:24
**discussed (3)**
  8:7,9;16:2
**disgorge (1)**
  31:7
**disgorgement (1)**
  5:8
**disinterested (1)**
  30:19
**disinterestedness (1)**
  17:14
**dispositive (2)**
  28:13,25
**dispute (2)**
  9:3;17:6
**disputes (1)**
  8:4
**distort (1)**
  26:1
**dive (1)**
  29:16
**docket (3)**
  11:9,20;13:9
**documents (3)**
  6:9,11;7:18
**dollars (1)**
  31:4
**done (4)**
  8:6;32:25;33:4;
  36:4
**door (2)**
  4:5;30:6
**doors (1)**
  35:20
**down (7)**
  5:13;14:5,7;22:18;
  26:12;27:5;30:7
**during (2)**
  6:13;11:18

———

## E

**early (3)**
  5:14;14:9;33:5
**earn (1)**
  31:3
**earned (1)**

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 45 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

31:3
echo (1)
16:6
efficiency (1)
5:16
effort (1)
9:21
else (3)
28:6;38:15;39:3
else's (2)
19:10,24
employee (1)
24:11
end (4)
6:6;8:3;14:25;
32:11
ended (1)
25:16
endless (1)
11:7
Energy (1)
7:7
enforce (1)
9:22
engage (1)
11:7
enjoined (1)
36:20
enjoying (1)
15:11
enough (4)
11:19;19:16;
20:13;29:23
entered (2)
28:12,13
entirely (2)
10:6;33:16
entities (1)
7:1
entities' (1)
6:9
entry (1)
10:4
equity (4)
6:25;17:5;23:20;
24:6
escalated (2)
9:3;24:2
escaped (1)
10:7
estate (2)
7:11,15
even (2)
16:23;17:16
event (1)
33:3
everybody (6)
8:19;12:17;15:18;
19:10;20:13;29:4
Everybody's (2)
23:3;31:20
everyone (3)
12:22;30:18;35:15

Everyone's (1)
25:7
evidence (6)
20:2,3,23,25;
24:20;30:24
evidentiary (4)
16:18,20;30:2,9
exactly (1)
24:1
examined (1)
7:8
example (1)
23:20
exchange (1)
7:8
exchanged (2)
6:9,11
excuse (1)
7:13
excused (1)
36:11
exercise (1)
15:1
exists (2)
16:22;18:6
expansive (1)
5:9
expect (2)
12:23;35:15
expectancy (1)
22:11
expedited (1)
8:5
expedition (1)
18:17
expenses (1)
21:23
explain (2)
30:8;31:11
explore (1)
27:8
extensive (2)
14:17;15:2
extensively (1)
13:24
extent (10)
10:1;11:12;12:20;
13:4,21;18:8;22:22;
27:25;29:1,6
extra (1)
21:23
extremely (4)
26:8,22;30:2;32:1

**F**

fact (8)
6:16;9:7;11:5,6,9,
16;19:1,5
factor (1)
22:8
facts (3)
12:2;30:14,15

factual (1)
20:5
fairly (1)
34:8
faith (1)
27:7
false (3)
6:22;26:20;31:24
far (9)
12:12;13:2,8;
22:11;23:4;32:9;
33:6;35:17;38:16
fee (9)
21:8,9,12,17,18,
20;27:13;32:3;38:1
feel (5)
11:19;20:6;26:4,
12,23
feels (4)
19:24,25;20:9,25
fees (15)
4:21,21,24;5:8;
21:12,25;22:1;27:14,
21;28:15;29:3,9;
37:25;38:2,12
felt (1)
9:4
few (1)
15:16
fifty (1)
31:4
figure (1)
19:21
file (10)
11:10;13:5,11;
15:21;18:2,12;
22:22;28:7;34:18;
35:1
filed (11)
3:16,25;5:6;10:12,
20;11:4,5,11;13:25;
15:19;35:7
filing (5)
18:7;29:4;32:3;
34:25;36:22
find (1)
32:23
finding (1)
30:20
fine (3)
33:12;35:8;37:19
fingers (1)
36:7
firing (1)
36:16
first (12)
3:24;8:21;10:3;
16:3;21:1,7;25:24;
26:13,17;27:8;
32:20;37:17
fishing (1)
18:17
fleshed (1)

32:19
flexibility (2)
35:10,14
flexibiltiy (1)
22:17
Flexner (1)
3:15
follow (1)
6:3
foot (1)
30:5
formulating (1)
30:1
forward (6)
6:2;12:19;15:22;
20:3,10;38:25
found (2)
24:10;30:19
founding (1)
8:24
four (1)
7:1
Fourth (1)
32:15
frank (1)
15:25
frankly (7)
17:15,21;29:18,
23;31:6;32:11;33:14
fraud (4)
10:21;12:2;20:18;
26:21
fresh (1)
15:11
friends (1)
38:5
front (2)
19:7;32:11
fully (5)
4:1;5:4;13:13;
22:16,23
funding (2)
22:19;35:11
further (1)
7:19
fuss (1)
3:4

**G**

gating (4)
16:5;26:13;27:6;
30:5
gave (2)
25:25;26:2
Gay (1)
8:25
gets (1)
12:25
given (4)
6:16;9:3;20:23;
22:9
giving (1)

19:8
goes (6)
12:17;17:12,14,15,
16,16
Good (16)
3:6,7,8,21;7:17;
8:13,14;15:8,9;
18:25;23:2,9;27:6;
34:6;36:9;37:13
good-faith (1)
26:14
granted (3)
3:17;4:3,14
Granting (1)
4:4
greatly (1)
6:18
ground (1)
14:5
grounds (3)
5:8,9;21:9
group (1)
8:23

**H**

hac (2)
3:15;9:10
hand (2)
6:3;11:16
handed (2)
6:12;8:10
handle (1)
5:20
happily (4)
10:7;12:18,22,23
happy (6)
4:12;11:23;12:6,8;
19:6;38:7
hear (3)
5:11,14;32:10
heard (2)
19:8,11;23:5,6
hearing (24)
4:12;10:11;15:14,
19,22;16:18,20,23,
25;18:11,15;28:18,
19,22,24,25;32:18,
19,21;33:13,20,20;
34:13;38:20
hearings (1)
33:5
held (2)
7:1;13:8
help (1)
37:10
helps (1)
34:22
here's (1)
31:17
herself (1)
29:20
hid (2)

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 46 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

26:2,6
hide (1)
15:3
hiding (1)
26:15
high (2)
16:15;28:5
history (1)
27:2
holdings (1)
6:25
home (2)
12:18,22
Honor (92)
3:8,9,18,19,21;4:6,
11,19;5:5,6,11,15,19,
21,22;6:1,2,3,5,12,
15;7:14,22;8:4,12,
13;9:2,13,15,18;
10:3,13;11:3,9;
12:14,20;13:3;
14:13;15:6,8;16:2,3,
13;17:8,15;18:4;
19:5;21:2;23:1,11,
19;24:7,10;25:13;
26:12,23;27:1,3,12,
16,20,22,24,24,25;
28:10,17;29:1,12,16,
18;30:4,7,12,17,19;
31:9;33:13,15;34:7;
35:4,8,19;36:13,21,
23;37:12,16,18;38:9,
14;39:7
Honor's (4)
4:2;6:20;15:12;
16:17
hope (2)
5:13;23:15
hopefully (1)
35:20
horse (1)
20:20

I

identified (2)
7:20;30:14
ignore (2)
23:24;24:3
illegal (2)
31:6,7
importance (2)
22:9;29:21
important (1)
27:15
impression (1)
34:17
Inc (1)
3:1
indeed (1)
33:1
indicate (1)
6:17

indicated (2)
20:17;22:6
indicative (1)
34:3
indirect (2)
7:6,10
individuals (1)
8:20
individuals' (1)
6:8
information (4)
6:22;7:18;14:1,2
initially (1)
20:11
instead (1)
14:8
instructs (1)
16:19
integrity (2)
17:25;29:22
intended (1)
9:25
intent (1)
22:16
intentionally (1)
26:15
interactions (1)
6:19
interest (5)
17:5;19:2;23:20;
24:6,21
interested (10)
7:12;14:19,20,23;
25:4,11,12,19;30:25;
31:1
interesting (1)
9:23
interrupt (2)
12:16;17:4
into (3)
11:15;21:1;37:5
introduce (3)
3:11;8:19,19
investigate (1)
26:5
investigation (4)
14:4,17,19;18:19
Investment (11)
6:14,17,18;7:3,4,4,
5,9,9,10;24:23
investments (10)
6:15;7:1,5,6,12,13;
25:21;26:7;30:25;
31:3
invite (1)
38:23
involved (5)
7:15;18:15;22:12,
14,16
issue (22)
5:12;9:23;16:4,5;
17:18,20,22,22;26:6,
13,20;27:6,6,13;

28:11,25;29:15;
30:5;33:13;34:12;
36:23;39:2
issues (10)
5:12,14,17;6:13;
13:19,23;18:19;
22:9;29:21,25

J

Jennifer (1)
8:24
joined (2)
8:17;21:8
Jones (1)
25:5
Judge (3)
8:16;22:5;24:3
judicial (1)
30:6
jump (1)
20:11
jurisdiction (2)
10:7,8

K

keeps (2)
15:18;29:4
kind (3)
5:1;19:10;20:7
knew (2)
25:10;26:3
knowledge (1)
11:19
knows (2)
6:15;13:24
Krishnan (1)
7:20

L

Labovitz (15)
8:21,21;9:9,15;
10:13,19;11:1,3;
12:5,14,20;13:2;
15:6;23:11;26:4
language (1)
37:11
lapse (2)
22:19;35:10
largely (1)
16:2
last (1)
6:6
lastly (1)
28:10
law (4)
16:12,19,22;27:17
lawyer (1)
9:18
lead (2)
27:24;32:4

least (2)
19:15;31:4
leave (2)
28:3;33:22
LeClairRyan (1)
8:15
legal (4)
9:23;13:19;19:19;
20:4
legitimate (1)
26:17
lets (1)
13:1
level (2)
10:21;12:1
levied (1)
9:4
lienholders (1)
25:24
life (2)
9:21;22:11
light (1)
31:12
lightly (1)
31:22
liked (1)
23:4
limited (7)
14:18;15:1;26:9,
16;28:1;37:3,4
line (1)
5:13
list (8)
14:20;24:14;25:4,
11,13,16,25;26:5
literally (1)
28:14
litigation (1)
9:1
little (4)
20:19;22:17;
29:16;35:10
lives (1)
12:18
LLC (1)
8:16
LLP (1)
8:22
long (28)
14:21;15:8,10,10,
16;17:3,8,13,15,20;
18:23;27:12,12;
28:17;29:6;30:14;
34:19;35:2;36:13;
37:3,7,9,12,14,24;
38:5,9,11
look (3)
16:9;18:9;26:17
looked (1)
17:22
looking (3)
15:20;16:21;17:9
lot (3)

3:4;15:4;27:17
loud (1)
25:9

M

making (2)
26:18,20
manner (1)
10:22
many (4)
5:17,17;24:5;
34:18
Mar- (1)
5:17
Mar-Bow (22)
3:9;4:23;5:2,10;
10:1;11:6;13:24;
15:20;16:14,22;18:5,
6,15,16,17;19:24;
22:6;27:19,20;29:9,
9;35:23
Mar-Bow's (4)
14:6;18:18;19:15;
28:2
mass (1)
9:22
Massey (2)
7:6,8
massive (1)
14:3
matter (10)
3:23;4:1,4;5:5,16;
8:1;13:12;16:21;
19:2;24:9
matters (3)
3:24;32:10,10
may (15)
3:21;5:13,15,18;
6:6;8:3,22;9:25;
11:19;15:13;19:4;
22:14,17;23:5;35:9
maybe (2)
5:17;33:20
McKinsey (32)
4:17;5:2;6:14,17,
19,25;7:4,9,15,19;
8:16;11:5;13:24;
14:6,13,21;15:3;
16:6;18:12,12;
19:25;20:17;24:8,
21;26:14,22;30:19,
24;31:3,3,7,13
McKinsey's (3)
5:8;7:6,22
mean (4)
17:6,9;23:24,24
meanwhile (1)
29:4
mechanism (1)
11:10
meet (2)
28:5;36:24

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 47 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

**members (1)**
9:8
**mentioned (1)**
23:20
**merits (3)**
4:9;16:25;29:15
**might (2)**
14:22,22
**million (1)**
31:4
**mindful (1)**
37:19
**minimize (3)**
27:23;28:15;29:2
**minute (2)**
12:11;28:14
**MIO (15)**
6:19;7:1,23;14:12,
14,15;24:9,11,23;
25:12,13,20,20;26:3,
7
**MIO's (2)**
24:12,25
**miss (1)**
25:9
**missing (1)**
26:1
**money (1)**
28:7
**months (1)**
24:5
**moot (3)**
5:18;34:4,5
**more (15)**
5:5;7:6;9:18;
13:12,15;15:13;
19:20,22;20:4,5,21,
25;31:5,11,19
**most (4)**
16:16;19:9;23:12;
31:21
**motion (28)**
3:2,2,15,25;4:3,4,
10,12,16;11:6;12:1;
13:15,17;15:21;16:4,
24;21:8,21;28:8,12,
18,19,25;30:3,13;
34:3;37:16;38:22
**motions (3)**
4:14;15:19,21
**movant (1)**
17:16
**move (3)**
13:5,18;21:19
**much (6)**
9:11;16:8;22:25;
23:10;37:9;39:5
**multiple (2)**
13:25;14:24
**multitudes (1)**
29:11

## N

**name (1)**
14:8
**narrow (3)**
5:9;18:20;26:6
**narrowed (1)**
18:19
**Natasha (1)**
8:21
**Natural (1)**
3:1
**nature (1)**
26:16
**necessarily (1)**
16:1
**necessary (11)**
10:16;12:9;13:23;
14:2;16:1,18,20;
20:9;26:24;30:11;
33:22
**need (28)**
6:8,10;8:4;10:25;
11:20;13:12;14:17;
18:15,16,17;19:24,
25;20:5,6,18;22:17,
22;28:20;31:12,14,
19;32:4,5,10;35:2,9;
38:15;39:3
**needs (7)**
4:25;7:8;18:11,12;
19:13;20:22,25
**New (5)**
3:15;8:18;9:7;
10:9;30:24
**nice (1)**
19:6
**nickel (1)**
19:1
**night (1)**
13:1
**nine (1)**
6:9
**nobody (1)**
25:10
**note (2)**
4:15;11:3
**notice (1)**
35:14
**notion (2)**
23:20;24:23
**number (6)**
8:17;15:12;21:4,7;
28:11;32:14

## O

**objection (3)**
11:6;14:6;33:21
**objections (3)**
30:1,3;31:13
**obligations (1)**
26:22
**obviously (2)**
21:1;23:4
**off (4)**
10:8;13:8;20:19;
27:21
**offer (2)**
5:3;27:21
**offered (1)**
29:9
**Office (4)**
4:16;5:6;7:5;19:3
**OFFICER (1)**
39:8
**Office's (2)**
6:14;7:9
**once (2)**
9:21;33:8
**One (17)**
5:5;15:17;16:10;
21:7,17;25:8,14,18,
25;27:23;28:15;
30:3;31:6;32:10;
33:5;21;37:24
**one's (1)**
23:4
**only (10)**
6:17;13:8;16:15;
25:3;30:25;32:4;
33:14,14;35:9;36:13
**open (4)**
32:3,5;35:20;37:1
**opened (3)**
12:17;13:21;28:14
**open-ended (1)**
24:4
**opening (2)**
10:6;37:1
**operating (1)**
36:17
**opportunity (4)**
11:13;13:10;19:8;
27:8
**oppose (2)**
18:5,10
**opposed (1)**
4:17
**oral (7)**
4:6,9;10:15,15,25;
11:24;13:18
**order (8)**
10:4;28:12,13;
32:21;37:6,11,17;
38:4
**ordered (1)**
31:7
**Originally (1)**
14:7
**O'Shea (10)**
3:12,13,14,19;
5:22,25;6:1;8:9,12;
31:11
**ought (3)**

19:12;20:15;33:5
**ours (1)**
33:16
**out (13)**
4:25;5:23;6:4;
13:8;15:24;19:10,
21;27:17;32:19;
33:23;35:9;37:17;
38:7
**outlined (1)**
6:11
**over (6)**
5:22;10:7;31:11;
34:20,20,20
**overlap (1)**
14:13
**own (3)**
18:19;19:1,18
**ownership (1)**
7:6

## P

**paper (2)**
19:11;26:11
**papers (17)**
5:7;10:11,14,20;
13:14,17;16:19,21;
18:1,18;22:22;
23:14;24:23;34:8,
17;37:5;38:17
**paragraph-by-paragraph (1)**
30:9
**paragraphs (1)**
30:3
**part (3)**
5:4;25:22;30:6
**participate (2)**
22:13,23
**particular (2)**
9:17;27:15
**parties (18)**
7:12;8:8;15:23;
20:21;24:24;25:12,
14,18,21,24;28:4;
31:1,1;32:14;36:2,
16,19;38:20
**partner (2)**
3:14;8:24
**Partners (1)**
3:9
**party (8)**
14:19,20;25:4,11,
19,25;35:13;36:22
**pass (1)**
6:4
**pause (1)**
12:5
**pay (6)**
4:21,24;22:6;
27:21;29:9;38:12
**pending (1)**
3:16

**people (4)**
15:12,13;22:20;
34:18
**perceive (1)**
12:19
**Perhaps (3)**
9:19;20:4;38:18
**period (4)**
5:14;6:14,24;7:2
**PERKINS (5)**
8:13,15,15;9:12,13
**perspective (2)**
10:6;11:22
**pike (1)**
22:18
**plan (1)**
38:24
**pleadings (4)**
29:5,8,12;34:18
**please (2)**
3:22;37:19
**pleasure (1)**
9:15
**Plimpton (1)**
8:22
**PLLC (1)**
8:25
**PM (1)**
39:9
**podium (2)**
5:22;31:10
**point (14)**
10:1,3,25;11:8;
14:25;15:12;24:1,2;
26:9;31:10;34:5;
36:14,24;37:24
**pointed (1)**
35:9
**points (3)**
11:15,17;15:16
**position (5)**
19:9,12;26:25;
27:18;34:13
**posture (1)**
15:18
**potentially (1)**
9:6
**power (1)**
22:23
**practice (1)**
15:21
**precisely (1)**
16:14
**prefer (1)**
4:11
**prejudice (2)**
5:1;27:23
**preliminary (5)**
3:22,24;5:5;27:6;
28:22
**prepared (7)**
4:7;12:21;13:4,5,
18;34:9;36:21

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 48 of 50

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

**presentation (1)**
19:10
**pretty (2)**
13:2;19:20
**prevail (1)**
5:16
**prior (3)**
7:1,7;9:4
**pro (3)**
3:11,15;9:10
**probably (3)**
8:4;18:25;27:16
**problem (4)**
29:8;34:19,25;
35:12
**procedural (3)**
10:5;11:10;15:17
**proceed (8)**
10:11,13;11:22;
15:20;16:3;19:4;
29:1;36:1
**proceeding (2)**
9:20;12:11
**proceedings (5)**
5:2,15,23;11:17;
39:9
**process (5)**
7:9;13:9;29:22;
30:6,10
**profit (2)**
31:4,6
**profited (1)**
6:18
**proposal (1)**
6:2
**propose (1)**
6:5
**proposed (1)**
37:17
**Proskauer (1)**
9:6
**protecting (1)**
17:25
**prove (3)**
6:23;31:8,8
**provided (1)**
14:20
**public (1)**
26:19
**purpose (3)**
17:21;28:2;37:4
**purposes (1)**
37:3
**pursue (3)**
19:25;33:7,7
**pursuing (1)**
10:9
**put (8)**
13:11;21:1;27:23;
34:8,14;35:13;37:5,
10
**putting (2)**
20:19;26:18

## Q

**quarterly (7)**
21:12,25;22:1;
27:13,14,21;38:1
**quickly (4)**
13:5,18;32:10;
34:8
**quite (1)**
32:11

## R

**raise (2)**
38:3;39:3
**raised (8)**
11:17;24:22;
29:21;30:1,13;32:13,
14;37:5
**raises (1)**
5:18
**Rajesh (1)**
7:20
**reached (1)**
15:24
**reaction (2)**
33:10,14
**read (2)**
18:18;31:19
**reading (2)**
34:17,19
**ready (4)**
4:2,13;11:22;20:8
**real (1)**
37:23
**reality (1)**
30:12
**realize (2)**
17:18;33:17
**realized (1)**
31:4
**really (10)**
3:24;4:5,13;14:5;
15:2;20:4;22:8,8,18;
30:18
**reason (11)**
9:3,7;25:3;29:17,
18,19,23;31:5;32:5;
34:2;37:2
**reasonably (1)**
35:17
**recognize (2)**
18:1;29:25
**record (10)**
19:16,18;20:3,13;
24:7,10;26:1,19,24;
27:1
**Recovery (1)**
8:16
**reducing (1)**
7:16
**reexamines (1)**

27:1
**referring (2)**
9:5;15:18
**regard (1)**
4:15
**regarding (2)**
15:12,17
**regular (1)**
30:6
**reimburse (1)**
4:24
**reintroduce (1)**
3:10
**relate (3)**
11:17;12:2;30:13
**relatively (1)**
5:9
**relief (7)**
5:7;16:11,25;
18:20;28:19,23;
29:12
**rely (1)**
25:6
**remedial (1)**
19:13
**remind (1)**
30:18
**reopen (34)**
3:2,25;4:4,12,17;
10:20,22;16:4,13,24;
18:5,6;20:15,18;
21:8,19;22:9;27:19,
20;28:1,1,6,12,18,21,
25;29:18,23;32:2,5;
36:15,22,24;38:1
**reopened (4)**
9:21;15:1;19:12;
21:10
**reopening (13)**
4:21;10:4;20:12,
25;21:8,12,17,18;
27:14,24,25;29:15;
37:5
**reorganized (8)**
10:8;15:10,25;
18:4;24:15;27:15;
28:7;36:16
**reply (4)**
4:23;11:11,12,14
**representations (1)**
6:20
**request (5)**
10:20;18:2;28:3,
23;29:8
**requested (2)**
12:7;14:10
**require (2)**
15:2;29:12
**required (2)**
10:22;14:12
**requires (2)**
14:23;15:4
**resolve (2)**

5:4;32:21
**Resources (1)**
3:1
**respect (10)**
4:10;5:3;10:14;
11:9;13:9;22:19;
29:8;36:14;37:25;
38:1
**respond (4)**
15:23;34:14,15;
35:6
**responding (1)**
38:17
**response (7)**
4:23;13:6;16:17;
18:12;35:1,2;36:22
**responses (1)**
26:25
**restructuring (1)**
8:23
**result (3)**
5:1;19:13;31:2
**revisionist (1)**
27:2
**Rhodes (25)**
3:10,20,21;4:22;
5:24;10:10;16:7;
22:6;27:10;29:14;
30:23;31:16,18,25;
32:17,22,24;33:1,12,
19;34:1,5;37:15,21;
38:14
**Richard (1)**
7:20
**ride (1)**
20:7
**Right (33)**
4:22;5:24;8:7,11;
9:11;12:4;15:5,7;
17:10;18:22,24;
21:24;22:10,25;24:3,
17,18,24;25:22;27:9,
10;29:13;31:25;
32:17,25;33:19;34:6,
25;36:11,17;38:12,
15;39:5
**rise (2)**
12:1;39:8
**rises (1)**
10:21
**road (3)**
26:12;27:5;30:7
**Rock (2)**
7:5,10
**roll (1)**
5:23
**Rose (1)**
9:6
**Royal (1)**
7:24
**RTS (5)**
4:18;14:14;24:8,
11,21

**RUBY (6)**
3:6,7,8,8,14,18
**rule (8)**
12:17,21;13:5;
16:18;17:9,10,25;
27:4
**Rules (1)**
28:21
**ruling (4)**
20:14;34:3;38:14;
39:1
**run (1)**
28:4

## S

**same (5)**
5:12;7:14,22;
21:13;28:12
**sanctions (1)**
18:3
**sat (1)**
27:18
**saw (1)**
19:11
**saying (2)**
20:15;34:20
**schedule (8)**
6:5,7;8:3,10;
15:21;21:1;35:23;
38:20
**scheduling (10)**
3:1,23;4:8;9:25;
12:12;15:19,24;
16:1;32:9;38:16
**Schiller (1)**
3:14
**Sean (1)**
3:12
**season (1)**
37:1
**seek (3)**
5:7,7;13:25
**seeking (6)**
10:23;16:13,14;
18:5;19:17;36:22
**seemed (2)**
11:7,7
**seems (5)**
3:23;6:16;20:13;
33:4,21
**Selendy (31)**
8:24,24,25;9:9;
23:5,7,8,8,10,16,19,
23;24:1,15,18,20;
25:3,10;29:20;34:7,
12,16,21,23;35:3,12,
22,25;36:4,7,10
**Sellschop (1)**
7:21
**S-E-L-L-S-C-H-O-P (1)**
7:21
**sentiments (1)**

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 49 of 50
ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

16:6
**separate (6)**
24:9;25:20;33:6,
16;34:12;38:23
**serious (10)**
23:16,18,23;26:8,
18,20,21,25;31:21;
32:2
**seriously (2)**
19:3;26:23
**seriousness (1)**
29:25
**service (1)**
24:4
**Services (1)**
8:16
**set (2)**
4:11;32:8
**sets (1)**
33:13
**shifting (1)**
14:5
**show (2)**
7:19;24:5
**showing (2)**
20:18;22:20
**shown (2)**
20:22,24
**shows (2)**
24:8;30:24
**sic (1)**
12:22
**side (2)**
11:5,6
**sides (1)**
8:5
**significant (1)**
30:24
**similarly (1)**
25:15
**simple (1)**
9:2
**simply (2)**
4:4;28:12
**single (1)**
30:2
**sitting (1)**
36:18
**situated (1)**
25:15
**situation (1)**
14:3
**sleep (1)**
13:1
**solutions (1)**
27:22
**somewhat (1)**
5:13
**sorry (3)**
12:15;17:2;27:11
**sort (6)**
8:4;15:17,17;
17:17;25:8,8

**sought (1)**
18:20
**specializes (1)**
8:25
**specific (4)**
18:20;21:3,4,21
**specifically (1)**
31:1
**speculative (1)**
26:11
**spend (1)**
28:7
**stage (1)**
13:22
**stand (3)**
18:4,9;20:9
**standard (4)**
13:19;16:15;28:5;
36:24
**standards (1)**
20:22
**standing (15)**
17:18,20;19:23;
20:1;23:3;32:11,25;
33:3,14,15,21;34:9;
38:13,22;39:2
**stands (1)**
24:8
**start (2)**
8:6;15:11
**statement (2)**
16:7;18:2
**States (6)**
4:16;7:14;19:17;
20:1;21:19;22:4
**statute (1)**
22:5
**statutory (1)**
22:2
**stay (1)**
35:20
**Steel (1)**
7:14
**step (1)**
26:13
**Steven (1)**
3:10
**still (2)**
25:7;27:22
**stock (2)**
7:7,8
**strongly (2)**
23:14,14
**subject (3)**
8:1;11:14;27:17
**subjects (1)**
13:25
**submission (10)**
6:12;11:4,11,14,
21,23;13:6,7;25:23;
27:3
**submissions (2)**
6:16;31:20

**submit (4)**
36:2;37:18;38:4,
24
**substantial (1)**
6:22
**substantially (1)**
31:5
**substantive (2)**
10:6;11:15
**successfully (1)**
3:3
**sufficient (1)**
20:2
**sufficiently (1)**
25:20
**suggest (2)**
26:6;33:19
**suggested (1)**
18:12
**summer (1)**
8:6
**support (2)**
4:16;5:19
**suppose (1)**
14:18
**supposed (2)**
12:12;15:11
**sure (6)**
5:5;21:12;27:20;
32:24;34:24;38:7
**surprise (1)**
27:16

**T**

**table (1)**
27:21
**talk (2)**
5:22;38:23
**talking (4)**
8:2;21:11,13;
24:22
**team (2)**
9:2,8
**technically (3)**
28:17,20,20
**terms (1)**
14:6
**territory (1)**
35:17
**That'll (1)**
37:19
**there'd (1)**
20:17
**therefore (1)**
28:13
**thinking (3)**
10:17;31:17;33:10
**third (1)**
22:10
**thirty-one (1)**
7:12
**though (1)**

27:22
**thought (2)**
9:16;29:14
**three (3)**
16:9,11;34:9
**Toby (2)**
15:10;27:12
**today (16)**
3:24;4:7,8,14;
9:10;10:2;11:20;
12:21;13:5;15:13;
19:2;22:21;29:15;
32:7;38:16;39:4
**together (3)**
36:2;37:10;38:21
**told (2)**
24:24;27:18
**took (2)**
7:7;26:22
**Toos (1)**
7:23
**tort (1)**
9:22
**toward (1)**
15:20
**transactions (1)**
10:9
**Transformation (1)**
8:16
**troubling (1)**
6:16
**true (2)**
25:8;31:24
**trust (1)**
6:21
**Trustee (21)**
5:20;11:4,17;13:6,
17,22;14:9;18:13,18;
19:3,17;20:2;21:9,
19;22:4;27:20;28:2;
29:2,7,11;38:18
**Trustee's (11)**
4:16;5:6,12,14;
11:11,14;18:7;19:9;
26:25;33:15;34:13
**try (2)**
8:3;24:5
**turn (2)**
5:21;31:10
**twelve (1)**
6:7
**two (15)**
7:19;8:18,20;
13:12;16:10;21:15;
27:24;34:7,9;35:2,3,
4,6;38:17,18

**U**

**Um-hum (1)**
31:18
**uncharted (1)**
35:17

**under (1)**
16:16
**underlying (4)**
16:23,25;28:19,22
**undisclosed (4)**
7:25;17:5;23:20;
24:6
**undisputed (1)**
20:2
**UNISON (1)**
39:7
**United (6)**
4:16;7:14;19:17;
20:1;21:19;22:4
**unless (1)**
21:2
**unsubstantiated (3)**
23:19;26:10,21
**unusual (1)**
30:10
**up (8)**
6:3;22:20;23:3;
25:16,19;31:2;33:8;
38:24
**upon (1)**
32:8
**useful (2)**
11:13,24
**UST (1)**
18:2
**utmost (1)**
29:21

**V**

**Value (1)**
3:9
**vast (1)**
24:4
**vice (3)**
3:11,15;9:10
**view (2)**
10:1;15:1
**volunteer (1)**
37:15
**volunteered (1)**
4:23

**W**

**waive (3)**
21:9;22:5;32:3
**waived (1)**
38:1
**walk (1)**
30:7
**wants (11)**
4:20;16:3;18:8,14;
19:20;21:9,21;30:7;
33:7,24;36:23
**way (11)**
5:19,20;12:22;
18:9;19:24;20:1,10;

Case 15-10541-BLS    Doc 2427-11    Filed 05/08/19    Page 50 of 50
ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 9, 2019

28:15;29:1;38:6,25
**weeks (9)**
  13:12,12;34:9;
  35:2,3,4,6;38:17,18
**Welcome (3)**
  9:14;11:13;13:10
**weren't (1)**
  29:14
**what's (3)**
  17:16,20;19:13
**whatsoever (1)**
  24:21
**whenever (2)**
  20:8;33:13
**Whereupon (1)**
  39:9
**whichever (2)**
  5:19,20
**white- (1)**
  14:3
**Whitebox (6)**
  14:19;25:1,15,15;
  26:1,5
**wholly (2)**
  9:24;24:8
**who's (2)**
  3:10;36:22
**wild (1)**
  26:11
**willing (1)**
  11:7
**wishes (1)**
  29:1
**within (1)**
  7:19
**without (5)**
  11:23,25;13:15;
  21:20;28:5
**witness (1)**
  9:7
**witnesses (1)**
  7:20
**word (2)**
  31:22,23
**work (5)**
  8:5;22:7,20;33:23;
  37:17
**worked (2)**
  4:25;38:7
**working (1)**
  7:21
**workouts (1)**
  8:23
**worse (1)**
  36:18
**wound (1)**
  31:1

**Y**

**years (1)**
  9:18
**Yep (1)**

34:23
**York (1)**
  3:15

**1**

**11 (2)**
  3:4;4:21

**2**

**2:53 (1)**
  39:9
**2014 (3)**
  17:9,10,25

**3**

**30b6 (1)**
  6:9
**350 (2)**
  16:9;36:25