# EXHIBIT 81

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF VIRGINIA (RICHMOND)
 2
    In Re:                          )  Case No. 15-33896-KRH
 3                                   )  Richmond, Virginia
    ALPHA NATURAL RESOURCES, INC.,   )
 4  ET AL.,                          )
                                     )  January 15, 2019
 5          Debtors.                 )  11:13 a.m.
                                     )
 6  ------------------------------- )
 
 7
                       TRANSCRIPT OF HEARING ON
 8                       STATUS CONFERENCE
                 BEFORE THE HONORABLE KEVIN R. HUENNEKENS
 9                 UNITED STATES BANKRUPTCY JUDGE

10  APPEARANCES:
    For the Debtors:             HENRY POLLARD LONG, III, ESQ.
11                                HUNTON ANDREWS KURTH LLP
                                  951 East Byrd Street
12                                Richmond, VA 23219

13  For Mar-Bow Value Partners,  SEAN F. O'SHEA, ESQ.
    LLC:                         BOIES SCHILLER FLEXNER
14                                575 Lexington Avenue
                                  7th Floor
15                                New York, NY 10022

16  For Mar-Bow Value Partners,  STEVEN RHODES, ESQ.
    LLC:                         STEVEN RHODES CONSULTING LLC
17                                1610 Arborview Boulevard
                                  Ann Arbor, MI 48103
18
    For McKinsey Recovery &      JENNIFER M. SELENDY, ESQ.
19  Transformation Services U.S., SELENDY & GAY PLLC
    LLC:                         1290 Avenue of the Americas
20                                New York, NY 10104

21  For Office of the United States HUGH M. BERNSTEIN, ESQ.
    Trustee:                     (TELEPHONICALLY)
22                                UNITED STATES DEPARTMENT OF
                                  JUSTICE
23                                101 West Lombard Street
                                  Suite 2625
24                                Baltimore, MD 21201

25
```

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   Transcription Services:           eScribers, LLC
                                    7227 North 16th Street

22                                    Suite #207
                                    Phoenix, AZ 85020

23                                    (973) 406-2250

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1          THE CLERK:  All rise.  The United States Bankruptcy

2   Court for the Eastern District of Virginia is now in session,

3   the Honorable Kevin R. Huennekens presiding.

4          Please be seated and come to order.

5          THE COURT OFFICER:  Alpha Natural Resources, Inc.,

6   status conference.

7          THE COURT:  Good morning.  Thank you all for

8   responding so quickly to the notice that I'd sent out last week

9   scheduling this status conference on what I know is relatively

10  short notice.

11         I published an agenda yesterday which, just to give

12  everybody an idea of what I had in mind, because I know that it

13  sort of took you by surprise when I scheduled this, my

14  intention is to go through the agenda item by item.  I'm going

15  to start at 1, go to 2, then 3, and then we'll open it up at

16  the end for anything else that we need to resolve before we

17  adjourn today.

18         Now, before we start, though, I wanted to make sure

19  that Mr. Bernstein was with us on the phone.

20         Mr. Bernstein, are you on the phone, sir?

21         MR. BERNSTEIN:  Yes, Your Honor, I'm here.

22         THE COURT:  Okay.  Very good.  Thank you.

23         All right.  And I recognize everybody else in the

24  courtroom.

25         So the first item I wanted to do -- and this was

1   geared toward Mr. Paget's concerns about the reopening a case

2   for limited purposes and everything which I want to do.  I'm

3   not opening this case up for everything in the whole wide

4   world.  And also, I had some concerns about the statutory fee

5   that was going to be incurred as a result of going forward.

6           So my idea was -- which I apologize I didn't have it

7   quickly enough last week, otherwise I would have shared it with

8   you then -- was that we could open up the bankruptcy case, the

9   main bankruptcy case, which I've already ruled I would -- I'm

10  just waiting to enter the appropriate order, but then open up a

11  miscellaneous proceeding, assign it an adversary proceeding

12  number, or whatever, and then immediately close the bankruptcy

13  case so that we can proceed in the one limited matter that

14  we've got going forward which involves the issues dealing with

15  McKinsey, Mr. Alix, and the Office of the U.S. Trustee.

16          Does any party have an issue with proceeding in that

17  manner?

18          Mr. Rhodes?

19          MR. RHODES:  Good morning, Your Honor.  May it please

20  the Court.  We have no issue, we support the concept, and we'll

21  do anything, administratively, that needs to be done to make

22  that happen.

23          THE COURT:  Okay.  Thank you.

24          MS. SELENDY:  Good morning, Your Honor.  Jennifer

25  Selendy --

1          THE COURT:  Good to see you back.

2          MS. SELENDY:  Thank you.  I'm happy to be back.

3          Your Honor, we also have no opposition to this; we

4  think it's a good idea.  It solves a lot of problems that Your

5  Honor was grappling with at the last hearing.  We just want to

6  be clear that there's no intent, by doing this through

7  miscellaneous proceeding, to impact the question of Mar-Bow's

8  standing, one way or the other.

9          THE COURT:  All right.  Everything is as it is.  All

10  right.

11          MS. SELENDY:  All right.  Thank you, Your Honor.

12          THE COURT:  Mr. Paget?

13          MR. LONG:  Good afternoon, Your Honor.

14          MR. BERNSTEIN:  Your Honor, this is Hugh Bernstein.

15          THE COURT:  Okay.  Mr. Bernstein, let me hear from

16  Mr. --

17          MR. BERNSTEIN:  We don't object to --

18          THE COURT:  Mr. Bernstein, let me hear from Mr. Paget

19  first --

20          MR. BERNSTEIN:  Sure.

21          THE COURT:  -- and then I'll address you.  And I

22  promise I'm going to give you a chance to weigh in on

23  everything --

24          MR. BERNSTEIN:  Sure.

25          THE COURT:  -- Mr. Bernstein.

1       All right.

2               MR. LONG:  And I'm sorry, Your Honor.  I

3   appreciate the --

4               MR. BERNSTEIN:  Not a problem.  Thank you, Your Honor.

5               MR. LONG:  -- the comparison to my colleague, Justin

6   Paget, but Toby Long on behalf of the reorganized debtors.

7   It's just fine.

8               I also, Your Honor, have no problem, and the parties

9   have been working on a draft of an order.  And what I'd suggest

10  is we incorporate the language about the miscellaneous

11  proceeding, and we can submit that, unless of course Your Honor

12  had already had an order that --

13              THE COURT:  I've got an order.  What I will do is I

14  will let you -- I'll circulate my order at the conclusion of

15  today, let you add whatever.  What I want to do, and you

16  probably noticed by how quickly I scheduled this, is I want to

17  move this thing along and get it resolved.  I mean, there are

18  very troubling issues as far as what has been brought before

19  the Court, and there are very troubling issues as far as

20  McKinsey is concerned, if none of this is true, which they're

21  denying.

22              So we need to get this resolved, we need to do it

23  quickly, and it really does impact the whole integrity of the

24  bankruptcy system.  And so I want to do it quickly, so I want

25  you to turn that order around quickly.

1          MR. LONG:  Understood, Your Honor.

2          THE COURT:  Okay.

3          MR. LONG:  Thank you very much.

4          THE COURT:  All right.  Thank you.

5          All right.  Mr. Bernstein, your turn.

6          MR. BERNSTEIN:  Yes.  Yes, thank you, Your Honor.  The

7  United States Trustee doesn't have an objection to proceeding

8  in this manner.

9          I just wanted to raise two points.  First is that

10 obviously the United States Trustee is seeking relief specific

11 to this particular case, so as long as that's understood and

12 isn't going to be a problem, by proceeding through a

13 miscellaneous proceeding, that's certainly fine with us.

14         And the second issue I just wanted to bring up, just

15 so it was clear and everyone knows, there probably, in fact

16 will most certainly be some quarterly fee, because once the

17 case gets reopened, it may be the minimum or something close to

18 the minimum, but if it's open, it's my understanding a fee does

19 get imposed.  So I didn't want anyone to be under the

20 impression that there'll be absolutely no quarterly fee,

21 although it could be very small.

22         THE COURT:  Mr. Bernstein, I've looked at that as

23 well.  I agree with you.  While I'm not making any ruling, one

24 way or the other, it does not appear, by the language of the

25 statute, that that is a fee that the Court can waive or do

1  anything about.  And I think the fact that the case is reopened
2  and then closed probably does trigger the fee or some fee for
3  some -- even if it's the minimum amount.  But we'll deal with
4  that, and Mr. Rhodes has already offered a way of dealing with
5  it, which we can without -- but then we can minimize the
6  impact.

7          My idea here, as far as Mr. Long is concerned, was
8  that we would -- and everybody else and also Mr. Bernstein is
9  that we would incorporate all of the -- by reference, all of
10  the pleadings that have been filed that relate to this in the
11  main case into this miscellaneous proceeding so that they would
12  be deemed to be filed in both, and such, as we go through.  And
13  this is really just a procedural manner of being able to skin
14  this cat.  So that's nothing, from a substantive standpoint,
15  that's going to impact or prejudice any party whatsoever as a
16  result of this.  That's the Court's intent.  All right?

17          All right.  Great.  So now that moves us onto item
18  number 2 which is a proposed joint order with the United States
19  Bankruptcy Court in the Southern District of Texas for a joint
20  judicial mediation.

21          And let me tell you what I have in mind there.  I've
22  consulted with Judge Jones.  I'm well aware of the issues that
23  are pending before him.  He is well aware of the issues that
24  are pending here.  Again, consistent with my desire to get this
25  matter resolved in some sort of expeditious manner, where I see

1  a lot of litigation, both from a procedural and substantive
2  standpoint, on the horizon, continuing down the path we're on,
3  this would be a good way of being able to resolve issues.

4          Now, a couple of things that I want to make clear.
5  Judge Isgur has agreed to mediate this matter.  I don't know
6  how familiar any of you are with Judge Isgur, but he is
7  obviously a known commodity to me, very highly respected, and
8  would be a perfectly capable jurist that could, if anybody, get
9  this matter resolved.  He's a no-nonsense type of person, and
10  he can get to the bottom of whatever needs to be resolved.

11          Any resolution that would come from the mediation
12  would be subject to notice and approval by both bankruptcy
13  courts, so that once the mediation is over you would need to
14  come back here, I would -- after the proposed resolution, if
15  there is a resolution, would be notice to all of the parties-
16  in-interest that are entitled to notice, and we would probably
17  again reopen the main case to allow that to occur.  I don't
18  know.  I just -- you know, that's a thinking out loud kind of
19  thing, but we can cross that bridge when we come to it.  But my
20  idea is that -- and Judge Jones' idea is that it would be
21  subject to each of our approval going forward so that that
22  would have to be done.

23          As far as the relief that would be accorded, that can
24  be as creative as the parties can be.  It can resolve issues,
25  it can -- certainly my hope and intent is that it resolves

1  everything so that this doesn't continue to smolder so that we

2  have a solution, a long-term solution that involves other cases

3  and other proceedings.

4          I know McKinsey, for one, wants to continue to do

5  business in bankruptcy courts all around the country, and

6  they've got to know that everybody's watching.  And the same

7  token we need to -- as I said earlier, this is terribly

8  disturbing, and if there are issues that need to be resolved

9  and fleshed out, I'm confident Judge Isgur can suggest a course

10  of action that will be acceptable to both me and Judge Jones.

11          There was a suggestion that there might be other

12  matters that are going to be filed.  I can't do anything about

13  that.  Whatever happens happens, and the parties can deal with

14  that in due course.

15          As far as the participation, my primary concern was

16  with the participation of the Office of the U.S. Trustee.  And

17  Mr. Bernstein, I'm going to give you an opportunity to address

18  the Court first on this issue in just a moment, but obviously

19  I'm concerned about budgetary issues.  Not only are they

20  affecting the justice department, but they're affecting all

21  branches of government, and we need to work that through.

22          I've discussed that with Judge Isgur.  He is prepared

23  to be as flexible as possible to allow your participation.  And

24  I will more than likely not require -- I'll leave that to his

25  discretion, in the proposed order, as far as how that would

1    occur, whether it be telephonically, whether it be by video

2    conference, whether it be by person, or whatever.

3              But I would invite your input on that issue, Mr.

4    Bernstein, at this time.

5              MR. BERNSTEIN:  Thank you, Your Honor.  I guess the

6    first thing I'd say is there's obviously a little bit of

7    unclarity and I can't totally foresee the future and where

8    we're going with the funding issues.

9              But let me say this.  If the Court orders it, we will

10   manage to be there and do whatever we have to do to

11   participate.  You allayed some of those concerns because I

12   think our biggest concern, budgetary-wise, was certainly going

13   to be travel because incurring debt at this time is a little

14   more difficult for us than, obviously, at a normal time.  But

15   you've pointed out some ways that that could be alleviated.

16             So I think the answer with respect to the logistics is

17   the U.S. Trustee, if you do enter an order having us mediate,

18   we'll arrange to participate somehow.  I'm not worried that we

19   would be unable, especially if Judge Isgur, or whoever is

20   mediating, can be somewhat flexible with us on the logistical

21   matters.

22             THE COURT:  All right.  Thank you, Mr. Bernstein.

23             All right.  Now I will invite the other parties --

24             MR. BERNSTEIN:  And I will --

25             THE COURT:  I'm sorry; go ahead, Mr. Bernstein.

1        MR. BERNSTEIN:  Oh, I'm sorry.  And I was saying I was

2   going to reserve speaking about our views on mediation until

3   the end, unless you wanted to hear from me now on that.

4        THE COURT:  I would be delighted to hear from you now

5   on that.  I could probably tell you what you're going to tell

6   me, but that's okay.

7        MR. BERNSTEIN:  Sure.  I suspect you probably can.

8   Obviously, again, I just want to reiterate, whatever the Court

9   orders, we will participate, and we will happily participate,

10  and we would be there.

11       We have some concerns with respect to mediating,

12  specifically because we view our cause of action and our claims

13  to be separate from those of Mar-Bow and the other parties.

14  And so we don't want to get -- we're not totally interested in

15  being pulled into their disputes.

16       In addition, because you've mentioned a few times

17  moving this thing along, which I think is in everybody's

18  interest, our claims against McKinsey and our issues with

19  McKinsey are basically ready to go except for the very short

20  briefing schedule that you outlined at the prior hearing.

21       And it seems that if we could go through that briefing

22  schedule and have our hearing, which could possibly happen on

23  March 5th at the next hearing, those issues could be resolved

24  quicker than going through the entire mediation.

25       So our view would be -- our preference would be to

1  handle it that way for us.  However, again, I just need to
2  reiterate, whatever the Court orders we will participate fully.
3           We also have a little bit of concern because of the
4  unique position the U.S. Trustee, as the sort of watchdog
5  entity, that our claims aren't really often like monetary
6  claims that can be settled by splitting things or compromised.
7  I mean, we, for example, with respect to the Westmoreland case,
8  I mean, it really, to us, is kind of an issue of are they
9  conflicted out or are they not.  They can't be sort of
10 conflicted out.  But again, I leave that to the Court.  I just
11 wanted to make those views known.
12          THE COURT:  All right.  And I'm familiar with your
13 views on that, and I thank you for putting them on the record.
14          All right.  Mr. Rhodes, do you wish to speak to the
15 mediate -- I'm sorry.
16          MR. O'SHEA:  I'll speak to that.
17          THE COURT:  Okay.
18          MR. RHODES:  Mr. O'Shea is --
19          THE COURT:  Mr. O'Shea?
20          MR. RHODES:  -- is going to handle this one.
21          MR. O'SHEA:  Good morning, Your Honor.  We first heard
22 about this proposed process from debtors' counsel to
23 Westmoreland on January 5th.  And as I told debtors' counsel,
24 we're happy to engage the process.  So we're happy to engage
25 the process that Your Honor and Judge Jones contemplate.

1    But I will say that when debtors' counsel proposed it,
2  the second thing out of his mouth was, you know, we don't see,
3  and it's a difficult issue to grapple with, how this can be
4  mediated.  And this goes back to what Mr. Bernstein just said,
5  but in a much more serious way:  how do you compromise the
6  kinds of allegations that we've raised and the kind of evidence
7  that we've put before both these two courts?  That's a
8  difficult issue.

9    That said, we're willing to go forward.  I guess one
10  of the other concerns -- and Your Honor's addressed the U.S.
11  Trustee's participation, which we're happy to have -- is what
12  happens to discovery, because the local rules here contemplate
13  that a mediation process would not operate as a stay or
14  postponement of the proceedings.  And that's Rule 9019.  And
15  the other thing is, how do we, Your Honor, as we go through the
16  mediation process, if we don't have discovery, know how we
17  settle this thing?  How do we know the full contours of
18  McKinsey's conduct?

19    And let me just give you an example.  We've talked
20  about the Contura investment, and that investment was by the
21  MIO into -- just on behalf of the retirement part of the MIO.
22  There's two-thirds of that fund that could have invested in MIO
23  as well.  There's also BlackRock and its investments in Contura
24  that we'd be concern -- we'd be concerned with.  There's the
25  U.S. Steel issue, the conflict, where McKinsey is operating at

1    the same time on behalf of U.S. Steel.  If we don't have full

2    discovery about that, it's kind of hard to envision -- and

3    that's -- frankly, it's kind of hard to envision how you get to

4    some sort of a resolution.

5            And that's really why, a lot of times, civil

6    litigation these mediations happen after fuller sort of

7    development through discovery.  So we would just ask that the

8    discovery go forward at the same time and that we operate

9    diligently, and we're happy to engage the process.

10           THE COURT:  All right, thank you very much.

11           Does anybody else wish to be heard?

12           MS. SELENDY:  Thank you, Your Honor.  We are also very

13   open to this process, Your Honor.  We welcome the opportunity

14   to work with a mediator like Judge Isgur, and we appreciate the

15   Court's assistance.  We share the same concerns that Mar-Bow

16   has just stated.  You know that our position is that they have

17   filed false pleadings.  They have made false statements under

18   oath that are defamatory of McKinsey and of McKinsey partners.

19   And we very much want a day in court to prove that those are

20   false.

21           That being said, we know that good mediators can

22   sometimes narrow issues.  We know that there could be some

23   value to this process, and so we remain very open.  But we

24   would request, Your Honor, that it be done very expeditiously,

25   that it start immediately, that we don't have a mediator

 1    selection process, that we go through Judge Isgur, that there
 2    could be a time horizon for check-ins with the Court, for
 3    example, so that it's not just an endless open process but
 4    where we report back to Your Honor, to Judges Jones as well,
 5    that we can figure out pretty quickly whether it's possible to
 6    come up with some sort of creative solution, as you suggest, or
 7    whether we really need to be moving towards trial.

 8          And to that end, our position on discovery is as
 9    follows.  We agree with Mar-Bow, for example, in this case,
10    that the standing -- we've agreed to a briefing schedule and a
11    hearing on that standing motion, and we can work in parallel on
12    that.

13          And with respect to discovery, there is no discovery
14    currently permitted in this case, but there is an ongoing
15    process for discussing discovery in Westmoreland.  It hasn't
16    been ordered yet, but it is already the subject of very
17    contentious motion practice.  And there's disagreement about
18    the scope and the time horizon for that discovery in front of
19    Judge Jones.

20          So we have two possible solutions to that.  Number
21    one, I don't think we should trouble Your Honor with arguing
22    with you about discovery in the Westmoreland matter.  But it's
23    possible that we take that issue back to Judge Jones or even
24    that we have the mediator play a role.  It's possible that a
25    mediator could be helpful in helping define the scope of any

1    discovery that would go forward in the Westmoreland matter

2    while the mediation was pending.  We would welcome the

3    mediator's input on that.

4         With respect to the U.S. Trustee participation, I have

5    heard Mr. Bernstein, and I think he raises very good points.

6    We obviously welcome the U.S. Trustee's participation in the

7    joint mediation, but we almost see that there's an opportunity.

8    We have extended an open-ended invitation to the U.S. Trustee's

9    office to engage in dialogue about the ANR issues, and we are

10   set to meet with them next week.  We are willing, and we think

11   it makes sense, to continue that dialogue, and it can run in

12   parallel.

13        If, at any time, the U.S. Trustee wants the mediator's

14   participation in it, we're happy to have that.  But given the

15   constraints on their budget and their travel schedule and

16   whatnot, there's also no reason why we can't continue those

17   negotiations and the submission that Your Honor had agreed that

18   we could make.  And I'd like to hear if Mr. Bernstein thinks

19   that's at least a possible route to continuing those

20   communications on a parallel track and trying to resolve any

21   concerns that the U.S. Trustee has.

22        But that's one way to avoid confusing the Mar-Bow

23   issues with the U.S. Trustee issues, because we're completely

24   open to that dialogue.  Thank you.

25        THE COURT:  Thank you.

1          Mr. Long, do you have a horse in this race?

2          MR. LONG:  No, Your Honor.

3          THE COURT:  All right, thank you.

4          MR. WONG:  Thank you.

5          THE COURT:  So again, what my thinking is, first of

6   all, everybody's ultimately going to get their day in court if

7   you can't resolve this.  So nobody's not -- is going to be

8   deprived of anything.  This is an opportunity in order to get

9   things resolved.  Nothing is going to be delayed.  I think

10  that, if anything, you've seen how quickly the Court has

11  convened this hearing, and we're going to be proceeding.  Judge

12  Jones is prepared to proceed at the same pace there.  Judge

13  Isgur is available and is ready to proceed.  So that will all

14  happen.  There is not going to be delay.

15         As far as discovery and the matter, I have not ordered

16  any discovery in this case.  Quite frankly, I don't know what

17  Judge Jones has done in his case.  But I will leave that to

18  Judge Isgur if he thinks that something needs to be done, and

19  he can certainly keep the Court aware of progress or lack

20  thereof that is being made in the mediation.  And of course,

21  any party can come back here at any time with regard to any

22  matter that they think that the Court needs to address.

23         As far as dialogue is concerned, I invite everybody to

24  continue to talk with each other.  And if you can resolve these

25  matters without a mediator, that's wonderful.  I'm all in favor

1    of it.  But I don't see that happening.  What I do see is the

2    contentious motion practice that was referenced a minute ago,

3    and I see that going on.  I see it happening in a host of

4    different places, which is not going to get to the substance of

5    what we're talking about, whereas this gives an opportunity to

6    do that, to drill down on it, get it resolved, and get it

7    resolved to everybody's satisfaction, again, subject to the

8    approval of Judge Jones and myself.

9              So the Court is going to order the mediation.  And the

10   idea will be that the Region 7 trustee will be invited but not

11   required to attend.  The Region 4 trustee or his

12   representative, Mr. Bernstein, no doubt, will be required to

13   participate and that the level or the way a participation, will

14   be left to Judge Isgur.

15             So that is the ruling of the Court.  Any questions on

16   that front?

17             That, I suggest, will be entered as soon as the order

18   reopening the case is --

19             MR. O'SHEA:  And Your Honor, in terms of proceeding

20   from here, should the parties contact Judge Isgur directly?

21             THE COURT:  Yes, the order will provide for that --

22             MR. O'SHEA:  Okay.

23             THE COURT:  -- and have specific time deadline for

24   doing that.  And he will be waiting for your calls, no doubt.

25             All right.  So that brings us to the third item on my

1  status conference, which was the unsealing of the documents

2  that were produced to me in camera.  Does any party wish to be

3  heard on that issue?

4          MS. SELENDY:  Your Honor, as a preliminary matter --

5  and we were not able to run this down this morning -- but the

6  recollection of Mr. Perkins was that there was not actually

7  anything filed on the docket that was sealed.  But this is just

8  a matter of whether McKinsey is ordered to produce what it

9  shared in camera with Your Honor.

10         THE COURT:  There was a document that was produced to

11 me in camera --

12         MS. SELENDY:  Um-hum.

13         THE COURT:  -- that was filed with me for in camera

14 review at the time in question.  I had reviewed that.  I still

15 have that document.

16         MS. SELENDY:  Um-hum.

17         THE COURT:  And that is the document that I would

18 propose to put on the record.  My understanding was that I had

19 ordered the parties to enter into a protective order --

20         MS. SELENDY:  That's right.

21         THE COURT:  -- and to make that document then

22 available to the Office of the U.S. Trustee, to the debtor, and

23 to the committee of unsecured creditors, their respective

24 counsel.  The U.S. Trustee, in its papers, has said that they

25 have not received that document, and that is disturbing to me.

1   And that's why I want to put it on the record.

2          MS. SELENDY:  I think that the position -- Mr.

3   Bernstein can correct me if I'm wrong, but we've had

4   discussions with the office about that.  I think that their

5   issue is that the U.S. Trustee's office asked us not to give it

6   to them but to make it public, right, to file it publicly.

7   McKinsey took that under consideration, and we declined to do

8   so, not that we did not provide it to them pursuant to the

9   protective order.  And I'm sure Mr. Bernstein will correct that

10  I'm wrong.

11         But I think the dispute with the U.S. Trustee was that

12  they wanted us to make it public.  And I know Ms. Labovitz was

13  involved in those communications with Ms. Itel (ph.) from the

14  U.S. Trustee's office, where they asked, will you make this

15  public.  We said we will take that under consideration.  But

16  ultimately, for reasons that I will explain to you, we declined

17  to make it public.  And it is for that reason, Your Honor, that

18  McKinsey opposes this order to the extent that we asked the

19  Court to be given the opportunity to establish that Rule 2014

20  does not require -- and it certainly does not require

21  automatically -- that the connections of an affiliate to the

22  party being retained have to be disclosed.

23         The rule speaks in terms of the person that is being

24  retained and that it is not necessarily the case that an

25  affiliate's connections have to be disclosed.  And that is that

1   there is no -- the MIO, as you may know, is a separate company

2   that is deliberately operated separately and walled off from

3   McKinsey RTS for very specific reasons.  And that separateness

4   that is maintained would be violated if the materials that we

5   showed you in camera became public.

6         It is our position that these connections of MIO are

7   not connections of McKinsey RTS.  They are not -- they are not

8   connections that would create any kind of a material adverse

9   interest to the debtor because they are unknown by the people

10  at RTS who serve Chapter 11 debtors.  And it's not unlike other

11  professionals -- 401(k) plans or mutual funds that they might

12  invest in -- where they do not have access to the information.

13  At the time they make a disclosure, they don't know where their

14  money is specifically invested, whereas if this were made

15  public, Your Honor, then thousands of McKinsey employees and

16  their families, who don't currently have visibility into those

17  investments, would potentially, if it's in the public, learn of

18  those investments.

19        And that would be a sea change for the company given

20  the procedures and polies that are in place to keep that

21  information walled off from the very consultants who are

22  serving Chapter 11 debtors.  They don't have the information.

23        Now, even if it were a connection, if MIO connection

24  was considered an RTS connection, our position is that it would

25  be a de minimis connection because there are hundreds of these

1    third parties who invest the pension money and who invest the

2    after-tax money in thousands of different ways and that that

3    information is not available.  And even if it were, it would be

4    a de minimis investment and a de minimis connection.

5         We think that there is so much disinformation that

6    Mar-Bow has put in the record about this.  And agreed, it's

7    complicated, right?  This is a fund that invests pension money,

8    that is subject to ERISA laws.  It also invests after-tax

9    money.  The vast majority of it is managed by third parties,

10   not McKinsey-affiliated entities.  Those third parties that are

11   on that list that were shown to you in camera, they have

12   complete discretion to invest in whatever they choose within

13   the risk parameters that are created for them.  And that is not

14   information that is available to McKinsey RTS.  And it is

15   purposely that way, Your Honor.  Right?

16        So they're -- for example, even today, there is a

17   McKinsey partner, for example, who has a wife who is a federal

18   court judge.  And they can invest in MIO because it's like a

19   mutual fund to them.  They don't have visibility into those

20   investments.  Public disclosure of that information would

21   change the playing field for thousands of people.  And all we

22   ask, Your Honor, is that before you decide to unseal and put

23   that information on the record, that you would allow us to

24   brief that issue for you because, remember, back in 2016, the

25   opportunity to show you in camera, to reassure you that there

1  was nothing suspect going on here, that gave McKinsey the

2  opportunity not to litigate this issue, not to argue that the

3  law didn't require the disclosure but to provide the disclosure

4  in a way that didn't compromise this separateness that is so

5  carefully calibrated between these two entities.

6          And that separateness is true even though there was a

7  McKinsey RTS senior executive who sat on the MIO board, because

8  that board is tasked with -- that one of their responsibilities

9  is to enforce those procedures of separateness.  And that

10 McKinsey RTS executive never worked on the Chapter 11 matters.

11 So he had no visibility into the Chapter 11 client service

12 team, right?  But Your Honor allowed us to make those

13 disclosures in a way that would not violate this principle of

14 separateness, that would not put into the public domain

15 investment information that these employees don't currently

16 have.

17         And this, Your Honor, is one of the central disputes

18 in the Westmoreland matter.  And we ask that Your Honor not

19 prejudge this issue without allowing us to prove that the

20 separateness is real, to prove that there is no sharing of that

21 information with the people who work on Chapter 11 cases, that

22 McKinsey takes its conflicts of interest policies very, very

23 seriously and, therefore, has training, has people tasked with

24 making sure that the kind of conflicts that they're referring

25 to can't occur, because, in disinterestedness, if somebody

1  doesn't know about an investment that is in a fund of funds,

2  they can't be disposed to act in a particular way that would be

3  inconsistent with the interest of the debtor.

4          And we simply ask Your Honor to be able to lay this

5  out for you in a way that is clear to the Court and that you

6  can make the decision about whether to unseal, whether to order

7  us to change the playing field in this way with full

8  information.  Thank you.

9          THE COURT:  Thank you very much.

10          Does any other party wish to be heard?  Mr. Rhodes?

11          MR. RHODES:  What we just heard, Your Honor, was a

12  motion for reconsideration.  This ship has sailed.  Your Honor

13  held very specifically on the record in June of 2016 that

14  because, not just some senior executive of McKinsey RTS, but

15  Mr. Garcia, the president of McKinsey RTS, was on the board of

16  the MIO, these connections were required to be disclosed under

17  Rule 2014.  You did say disclosed to you in camera because you

18  had pending before you a matter of days later the confirmation

19  in the case.  And so you were struggling with a way to deal

20  with the weight of this issue with the weight of the

21  confirmation that was bearing down on all of the parties in the

22  case.  So rather than take the time to litigate all the facts

23  surrounding this, you chose to look at this in camera and make

24  a judgment about it.

25          Beyond that, Your Honor, we need an answer in this

1    proceeding as to why it was that Whitebox wasn't disclosed to

2    Your Honor, the one connection that wasn't disclosed to Your

3    Honor, that our evidence shows led to a fifty million dollar

4    profit for McKinsey.  And if that's what they got, it's

5    illegal.

6          Now, we can argue today about why there is no law.

7    There is no law.  Information flows freely in both directions.

8    MIO is managed and run by McKinsey people.  It's not an

9    independent operation; it is not.  People who want to invest

10   their funds, whether retirement or otherwise, through the MIO

11   go to the MIO and get advice on how to invest that money.  And

12   the people at MIO have access to everything that happens in all

13   of McKinsey RTS' cases on the internet, through PACER.

14         We found out, after this case was confirmed, on the

15   internet where the MIO invests its money on the retirement

16   side.  Anyone in McKinsey, including anyone at McKinsey RTS,

17   can see the investments where the retirement funds are placed.

18   By law, whether it's on the retirement side or the investment

19   side, the investors get regular information about the

20   investments that are made.

21         On the issue of whether this should be disclosed now,

22   Your Honor, we would strongly urge Your Honor to disclose that

23   information now.  A, it will facilitate and promote settlement

24   discussions in the mediation; but B, and perhaps much more

25   importantly, the evidence demonstrates that McKinsey did not

1    deal with that list and Your Honor in the most upright and
2    appropriate manner.  And if we're going to get to the truth of
3    what happened here, expeditiously, as Your Honor has indicated
4    is in everyone's best interest here, the time to begin is now.
5    We think it's appropriate and necessary for Your Honor to
6    release that list now so that we can use the tools that we have
7    in our resources, including what's on the internet, to see if
8    there were any other objectionable and disqualifying
9    connections that need to be made here.

10           Frankly, Your Honor, the assertion that the MIO
11   connections here are de minimis is bizarre.  We're talking
12   about investment connections by the employees of McKinsey,
13   including, potentially, the employees of McKinsey RTS, in
14   interested parties and in the debtor, and most specifically, in
15   the interested parties that wound up with the assets of this
16   case.  To call that de minimis, it's crazy.  It's bizarre, Your
17   Honor.  And we just -- we don't buy it, and we don't think Your
18   Honor should but it either.  If we're going to get this process
19   going, this is a really good place to start right now, Your
20   Honor.

21           THE COURT:  Thank you.

22           All right.  Mr. Bernstein, do you wish to weigh in on
23   this?

24           MR. BERNSTEIN:  Certainly, Your Honor.  Thank you.

25           Your Honor, it's been the United States Trustee's

1   position for some time now that the in camera disclosures ought
2   to be made public.  And so we would support that -- we would
3   support that order.  And I think that -- I don't know if I have
4   much more to say than that.  We do support it, and it's part of
5   the relief we've been asking for.

6          THE COURT:  All right.  Thank you, sir.

7          MS. SELENDY:  May I be heard, Your Honor?

8          THE COURT:  Yes, you may.

9          MR. BERNSTEIN:  Thank you, Your Honor.

10         MS. SELENDY:  The statement that you just heard from
11   Mr. Rhodes is a huge part of the problem in these matters, Your
12   Honor.  A great deal of what he said is completely false.  I
13   want to put a flag in it -- the fifty million dollars.  I'm
14   telling you that my middle school son could prove to you that
15   that's a made-up number and that it is false.

16         But today is not the day for us to put on evidence.
17   What I want to say to you is that they don't know the facts.
18   Their client testified in a deposition that he doesn't have any
19   insight into how MIO works.  They don't know that there isn't a
20   wall.  They can't reasonably and fairly make these
21   representations when they don't know.

22         And what I'm asking you to do is allow us to put those
23   facts forward to you and to establish that the points that he
24   just made to you are wholly false and that what we would like
25   to do is to show you why the MIO is no different from the

1    401(k) plan or that mutual fund that any bankruptcy

2    professional could have that, under federal law, sure, they

3    could go research on the internet, months or years later, and

4    find out where last year's 401(k) plan was invested.  Any

5    bankruptcy professional could do that.  The Form 5500 that he

6    is referring to, ERISA requires every pension fund in America

7    to file them.  But they are not filed until months and months

8    after the investments are made.

9         So the question of disclosure is what does an RTS

10   professional know about his or her investments at the time the

11   disclosure is required, not what Mr. Rhodes could research on

12   the internet years later, where any professional's 401(k) plan

13   could be investigated.  That's what he's talking about.  And

14   that's why we need a chance to put those facts in front of Your

15   Honor and make sure that you understand that there was no

16   intentional misleading.  We did choose to make an in camera

17   disclosure because Your Honor made that avenue available.  Had

18   it not been available, we would have been making these

19   arguments and arguing to Your Honor the very same thing back in

20   2016.  So all we're asking for is an opportunity to put the

21   appropriate facts before you so that you understand the full

22   consequences of any ruling.

23        Thank you.

24        THE COURT:  Thank you, Ms. Gay (sic).

25        All right.  Mr. Long, you have nothing --

1          MR. LONG: No, thank you.

2          THE COURT:  -- on this one either?

3          All right.  The Court then has, on the third issue,

4   about whether or not it's going to make this document public,

5   the Court is going to file the document on the record.

6          Ms. Gay (sic), you will get your opportunity to be

7   able to argue all those things.  Quite frankly, I'm not

8   familiar with the de minimis exception in Rule 2014.  But

9   you'll be given an opportunity to argue that and show me.

10         But for the time being, I had clearly ruled that this

11  information was supposed to be released to the Office of the

12  U.S. Trustee; for whatever reason it was not.

13         Mr. Bernstein says that he wants this information to

14  be made public.  It will be made public.  That is the predicate

15  of how disclosures in bankruptcy work.  I understand the

16  concerns about investments, and 401(k) plans, and everything

17  else, and I hear exactly what you're saying, but I can tell you

18  that from a federal judge standpoint, I do disclose, every

19  year, all of the investments in my 401(k).  And every federal

20  judge in this country does that because it's absolutely

21  important.  And I've got to know, in real time, whether or not

22  I'm invested in an entity that appears before me.  And that's

23  what Rule 2014 requires.  And it's McKinsey's burden to be able

24  to provide that information.  That's what we're missing here, a

25  little bit.

1           But in any event, we'll get to the bottom of all of
2    that.  I trust that Judge Isgur will do that.  But for the time
3    being, the Court will unseal those documents.  The Court will
4    place them on the docket.
5           Yes, Ms. --
6           MS. SELENDY:  One last request -- I'm sorry, Your
7    Honor.
8           I just really want to clarify.  We are certain that
9    the U.S. Trustee was given copies, as your order previously
10   directed.  And I would like to perhaps ask Mr. Bernstein to
11   confirm that and confirm that what their request actually is
12   was for it to be made public, not that he didn't receive it.
13          THE COURT:  And we'll get to the bottom of that, too.
14          MS. SELENDY:  Okay.
15          THE COURT:  For my ruling today, I'm going to put it
16   on the record.
17          MS. SELENDY:  Okay.  Thank you.
18          THE COURT:  All right, very good.
19          Mr. Rhodes, something else?
20          MR. RHODES:  Just a couple of brief, really,
21   administrative matters, if Your Honor please.
22          There's a little bit of confusion about the extent to
23   which our motion for relief has been deemed moot.  Our
24   understanding was that the only piece of it that related to the
25   request for an indicative ruling was deemed moot, but that the

1  rest --

2          THE COURT:  It has to be because there was a --

3          MR. RHODES:  Yeah.

4          THE COURT:  -- a ruling by the Fourth Circuit.

5          MR. RHODES:  Right.  We agree that that piece of it is

6  moot, but that the balance of it -- the request for relief

7  under Rule 60(d)(3) is still pending before the Court.

8          THE COURT:  Well, I haven't ruled on anybody's

9  requests or anything of that sort.  I just wanted to make sure

10 that for purposes of what I had before me --

11         MR. RHODES:  Right.

12         THE COURT:  -- that the motion for indicative ruling

13 had been rendered --

14         MR. RHODES:  Yeah.

15         THE COURT:  -- moot because it seems obvious to me,

16 and I just wanted to put that --

17         MR. RHODES:  Right.

18         THE COURT:  -- on the record.  And I think you --

19         MR. RHODES:  We certainly --

20         THE COURT:  -- agreed with me on that.

21         MR. RHODES:  We certainly do agree with that, Your

22 Honor.  We'll -- as part of the motion to reopen, perhaps we'll

23 put in a sentence that says exactly that.

24         THE COURT:  Which is fine with me.  What we -- all I

25 was doing is saying that the indicative ruling part was moot --

1          MR. RHODES:  Okay.

2          THE COURT:  -- for obvious reasons.

3          MR. RHODES:  So --

4          THE COURT:  I have not ruled on anybody's substantive

5    rights, okay?

6          MR. RHODES:  So on the motion for a reopening, we will

7    await your proposed order?

8          THE COURT:  I will have my law clerk circulate that to

9    counsel today so that you will have that.  And then you can see

10   what I'm thinking, incorporate that into your order.  But I

11   want the order back from you quickly because both Judge Jones

12   and I want to get this going, and I have to reopen the case

13   before I can order the mediation.

14         MR. RHODES:  Okay.  We have a separate order prepared

15   that deals with the briefing schedule and hearing schedule on

16   the standing issue.  Can we submit that to you at this point as

17   well?

18         THE COURT:  You may submit that to me for my

19   consideration.  I may very well put that off.  I don't know.

20   I'm going to ask Judge Isgur what his preference is on that

21   because I don't want to rain on his parade either.

22         MR. RHODES:  Okay.

23         THE COURT:  And I've, quite frankly, not asked him

24   that question.

25         MR. RHODES:  Okay.

1          THE COURT:  Okay?

2          MR. RHODES:  Okay.

3          THE COURT:  All right.

4          Any other business that we need to take up today?

5          All right.

6          MR. BERNSTEIN:  Your Honor, it's Hugh Bernstein again.

7          THE COURT:  All right, Mr. Bernstein.

8          MR. BERNSTEIN:  Is now a good time?

9          THE COURT:  Yes.

10          MR. BERNSTEIN:  So at the last hearing -- and I don't

11  know how much, if any of this, is changed.  But at the last

12  hearing, you outlined a briefing order on the issues between

13  the Unites States Trustee and McKinsey.  It was a two-week

14  schedule for their response to our comments paper.  And then we

15  had it two weeks after that.  And then we were -- so we had put

16  down -- or we spoke with McKinsey to sort of solidify the dates

17  running that two weeks from the last hearing, which would have

18  put their paper due on January 23rd and ours due on February

19  6th.  It was then our intent to ask the Court to consider that

20  at the March 5th hearing.

21          I don't know if the Court still wants to proceed on

22  that schedule for briefing, if it still wants to hold a hearing

23  on March 5th about that, or maybe it never did.  So I just

24  wanted to raise that with Your Honor.

25          THE COURT:  All right.  Well, let me ask.  I have no

1  problem adhering to the former briefing schedule.  As far as

2  conducting a hearing that might interfere with Judge Isgur's

3  mediation, it's not my intention to do that or to resolve that

4  issue until Judge Isgur has had an opportunity to meet with the

5  parties and resolve it.  I'm just not going to do anything

6  that's going to interfere with his process.

7          So Ms. Selendy, is it your -- can you still get the

8  two-week period or have I screwed everything up by --

9          MS. SELENDY:  No.  No, Your Honor.  You haven't

10  screwed it up at all.  We have committed to that briefing

11  schedule.  We'll keep to it.  We may even get the brief sooner,

12  if we can, to the U.S. Trustee.

13          THE COURT:  Okay, very good.

14          MS. SELENDY:  Absolutely.

15          THE COURT:  All right.  So Mr. Bernstein, does that

16  still work for you, sir?

17          MR. BERNSTEIN:  It does still work for us.

18          THE COURT:  Okay.  So we'll stick with the same

19  schedule, then, as far as the briefing is concerned.  But the

20  Court's going to hold off conducting a hearing on that until

21  after Judge Isgur has had an opportunity to conduct his

22  proceeding.  All right?

23          Anything further?

24          All right.  Once again, I thank everybody for

25  obviously disrupting your busy schedules to be here today.  I

1   thank you for your presentations here today.  These are

2   difficult issues, and I thank everyone for the reasoned manner

3   in which everything has been presented.  It certainly helps me

4   in making my determinations.

5           Thank you all.

6           MS. SELENDY:  Thank you.

7           THE CLERK:  All rise.

8           MR. BERNSTEIN:  Thank you, Your Honor.

9           THE CLERK:  Court is now adjourned.

10       (Whereupon these proceedings were concluded at 12:06 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37

1                             I N D E X

2

3

4    RULINGS:                                      PAGE   LINE

5    Joint order with the United States Bankruptcy   19      9
     Court in the Southern District of Texas
6    for joint judicial mediation ordered granted
     Sealed documents to be unsealed                 30      3
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

```
 1                    C E R T I F I C A T I O N

 2

 3            I, Dena Farbman, the court-approved transcriber, do

 4      hereby certify the foregoing is a true and correct transcript

 5      from the official electronic sound recording of the proceedings

 6      in the above-entitled matter.

 7

 8

 9                                            January 15, 2019

10      _____         _____

11      DENA FARBMAN                            DATE

12      AAERT Certified Electronic Transcriber CET-629

13

14

15

16                                    Digitally signed by
                                      eScribers LLC
17                                    DN: cn=eScribers LLC
                                      gn=eScribers LLC c=United
18                                    States l=US
19                                    e=operations@escribers.ne
                                      t
20      
                                      Reason: I attest to the
21                                    accuracy and integrity of
22                                    this document
                                      Location:
23                                    Date: 2019-01-15
24                                    13:35-08:00

25
```



eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 40 of 47

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

19:2

## A

**able (6)**
8:13;9:3;20:5;
25:4;30:7,23
**absolutely (3)**
7:20;30:20;35:14
**acceptable (1)**
10:10
**access (2)**
22:12;26:12
**accorded (1)**
9:23
**act (1)**
25:2
**action (2)**
10:10;12:12
**actually (2)**
20:6;31:11
**add (1)**
6:15
**addition (1)**
12:16
**address (3)**
5:21;10:17;18:22
**addressed (1)**
14:10
**adhering (1)**
35:1
**adjourn (1)**
3:17
**adjourned (1)**
36:9
**administrative (1)**
31:21
**administratively (1)**
4:21
**adversary (1)**
4:11
**adverse (1)**
22:8
**advice (1)**
26:11
**affecting (2)**
10:20,20
**affiliate (1)**
21:21
**affiliate's (1)**
21:25
**afternoon (1)**
5:13
**after-tax (2)**
23:2,8
**Again (9)**
8:24;9:17;12:8;
13:1,10;18:5;19:7;
34:6;35:24
**against (1)**
12:18
**agenda (2)**
3:11,14
**ago (1)**

**agree (4)**
7:23;16:9;32:5,21
**agreed (5)**
9:5;16:10;17:17;
23:6;32:20
**ahead (1)**
11:25
**Alix (1)**
4:15
**allayed (1)**
11:11
**allegations (1)**
14:6
**alleviated (1)**
11:15
**allow (4)**
9:17;10:23;23:23;
28:22
**allowed (1)**
24:12
**allowing (1)**
24:19
**almost (1)**
17:7
**along (2)**
6:17;12:17
**Alpha (1)**
3:5
**although (1)**
7:21
**America (1)**
29:6
**amount (1)**
8:3
**ANR (1)**
17:9
**apologize (1)**
4:6
**appear (1)**
7:24
**appears (1)**
30:22
**appreciate (2)**
6:3;15:14
**appropriate (4)**
4:10;27:2,5;29:21
**approval (3)**
9:12,21;19:8
**argue (4)**
24:2;26:6;30:7,9
**arguing (2)**
16:21;29:19
**arguments (1)**
29:19
**around (2)**
6:25;10:5
**arrange (1)**
11:18
**assertion (1)**
27:10
**assets (1)**
27:15

**assign (1)**
4:11
**assistance (1)**
15:15
**attend (1)**
19:11
**automatically (1)**
21:21
**available (6)**
18:13;20:22;23:3,
14;29:17,18
**avenue (1)**
29:17
**avoid (1)**
17:22
**await (1)**
33:7
**aware (3)**
8:22,23;18:19

## B

**back (10)**
5:1,2;9:14;14:4;
16:4,23;18:21;
23:24;29:19;33:11
**balance (1)**
32:6
**Bankruptcy (11)**
3:1;4:8,9,12;6:24;
8:19;9:12;10:5;29:1,
5;30:15
**basically (1)**
12:19
**bearing (1)**
25:21
**became (1)**
22:5
**begin (1)**
27:4
**behalf (3)**
6:6;14:21;15:1
**Bernstein (43)**
3:19,20,21;5:14,
14,15,17,18,20,24,
25;6:4;7:5,6,22;8:8;
10:17;11:4,5,22,24,
25;12:1,7;14:4;17:5,
18;19:12;21:3,9;
27:22,24;28:9;
30:13;31:10;34:6,6,
7,8,10;35:15,17;36:8
**best (1)**
27:4
**Beyond (1)**
25:25
**biggest (1)**
11:12
**bit (4)**
11:6;13:3;30:25;
31:22
**bizarre (2)**
27:11,16

**BlackRock (1)**
14:23
**board (3)**
24:7,8;25:15
**both (7)**
8:12;9:1,12;10:10;
14:7;26:7;33:11
**bottom (3)**
9:10;31:1,13
**branches (1)**
10:21
**bridge (1)**
9:19
**brief (3)**
23:24;31:20;35:11
**briefing (9)**
12:20,21;16:10;
33:15;34:12,22;35:1,
10,19
**bring (1)**
7:14
**brings (1)**
19:25
**brought (1)**
6:18
**budget (1)**
17:15
**budgetary (1)**
10:19
**budgetary-wise (1)**
11:12
**burden (1)**
30:23
**business (2)**
10:5;34:4
**busy (1)**
35:25
**buy (1)**
27:17

## C

**calibrated (1)**
24:5
**call (1)**
27:16
**calls (1)**
19:24
**camera (11)**
20:2,9,11,13;22:5;
23:11,25;25:17,23;
28:1;29:16
**can (36)**
4:13;6:11;7:25;
8:5,5;9:10,19,23,24,
24,25;10:9,13;11:20;
12:7;13:6;14:3;
15:21;16:5,11;
17:11;18:19,21,24;
21:3;23:18;25:6;
26:6,17;27:6;30:17;
33:9,13,16;35:7,12
**capable (1)**

**9:8**
**carefully (1)**
24:5
**case (22)**
4:1,3,8,9,13;7:11,
17;8:1,11;9:17;13:7;
16:9,14;18:16,17;
19:18;21:24;25:19,
22;26:14;27:16;
33:12
**cases (3)**
10:2;24:21;26:13
**cat (1)**
8:14
**cause (1)**
12:12
**central (1)**
24:17
**certain (1)**
31:8
**certainly (10)**
7:13,16;9:25;
11:12;18:19;21:20;
27:24;32:19,21;36:3
**chance (2)**
5:22;29:14
**change (3)**
22:19;23:21;25:7
**changed (1)**
34:11
**Chapter (5)**
22:10,22;24:10,11,
21
**check-ins (1)**
16:2
**choose (2)**
23:12;29:16
**chose (1)**
25:23
**Circuit (1)**
32:4
**circulate (2)**
6:14;33:8
**civil (1)**
15:5
**claims (2)**
12:12,18;13:5,6
**clarify (1)**
31:8
**clear (4)**
5:6;7:15;9:4;25:5
**clearly (1)**
30:10
**CLERK (4)**
3:1;33:8;36:7,9
**client (2)**
24:11;28:18
**close (2)**
4:12;7:17
**closed (1)**
8:2
**colleague (1)**
6:5

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 41 of 47
ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

comments (1)
34:14
committed (1)
35:10
committee (1)
20:23
commodity (1)
9:7
communications (2)
17:20;21:13
company (2)
22:1,19
comparison (1)
6:5
complete (1)
23:12
completely (2)
17:23;28:12
complicated (1)
23:7
compromise (2)
14:5;24:4
compromised (1)
13:6
concept (1)
4:20
concern (4)
10:15;11:12;13:3;
14:24
concerned (6)
6:20;8:7;10:19;
14:24;18:23;35:19
concerns (8)
4:1,4;11:11;12:11;
14:10;15:15;17:21;
30:16
concluded (1)
36:10
conclusion (1)
6:14
conduct (2)
14:18;35:21
conducting (2)
35:2,20
conference (4)
3:6,9;11:2;20:1
confident (1)
10:9
confirm (2)
31:11,11
confirmation (2)
25:18,21
confirmed (1)
26:14
conflict (1)
14:25
conflicted (2)
13:9,10
conflicts (2)
24:22,24
confusing (1)
17:22
confusion (1)

31:22
connection (6)
22:23,23,24,25;
23:4;26:2
connections (9)
21:21,25;22:6,7,8;
25:16;27:9,11,12
consequences (1)
29:22
consider (1)
34:19
consideration (3)
21:7,15;33:19
considered (1)
22:24
consistent (1)
8:24
constraints (1)
17:15
consultants (1)
22:21
consulted (1)
8:22
contact (1)
19:20
contemplate (2)
13:25;14:12
contentious (2)
16:17;19:2
continue (5)
10:1,4;17:11,16;
18:24
continuing (2)
9:2;17:19
contours (1)
14:17
Contura (2)
14:20,23
convened (1)
18:11
copies (1)
31:9
counsel (5)
13:22,23;14:1;
20:24;33:9
country (2)
10:5;30:20
couple (2)
9:4;31:20
course (4)
6:11;10:9,14;
18:20
Court (90)
3:2,5,7,22;4:20,23;
5:1,9,12,15,18,21,25;
6:13,19;7:2,4,22,25;
8:19;10:18;11:9,22,
25;12:4,8;13:2,10,
12,17,19;15:10,19;
16:2;17:25;18:3,5,6,
10,19,22;19:9,15,21,
23;20:10,13,17,21;
21:19;23:18;25:5,9;

27:21;28:6,8;29:24;
30:2,3,5;31:3,3,13,
15,18;32:2,4,7,8,12,
15,18,20,24;33:2,4,8,
18,23;34:1,3,7,9,19,
21,25;35:13,15,18;
36:9
courtroom (1)
3:24
courts (3)
9:13;10:5;14:7
Court's (3)
8:16;15:15;35:20
crazy (1)
27:16
create (1)
22:8
created (1)
23:13
creative (2)
9:24;16:6
creditors (1)
20:23
cross (1)
9:19
currently (3)
16:14;22:16;24:15

**D**

dates (1)
34:16
day (3)
15:19;18:6;28:16
days (1)
25:18
de (6)
22:25;23:4,4;
27:11,16;30:8
deadline (1)
19:23
deal (5)
8:3;10:13;25:19;
27:1;28:12
dealing (2)
4:14;8:4
deals (1)
33:15
debt (1)
11:13
debtor (4)
20:22;22:9;25:3;
27:14
debtors (3)
6:6;22:10,22
debtors' (3)
13:22,23;14:1
decide (1)
23:22
decision (1)
25:6
declined (2)
21:7,16

deemed (3)
8:12;31:23,25
defamatory (1)
15:18
define (1)
16:25
delay (1)
18:14
delayed (1)
18:9
deliberately (1)
22:2
delighted (1)
12:4
demonstrates (1)
26:25
denying (1)
6:21
department (1)
10:20
deposition (1)
28:18
deprived (1)
18:8
desire (1)
8:24
determinations (1)
36:4
development (1)
15:7
dialogue (4)
17:9,11,24;18:23
different (3)
19:4;23:2;28:25
difficult (4)
11:14;14:3,8;36:2
diligently (1)
15:9
directed (1)
31:10
directions (1)
26:7
directly (1)
19:20
disagreement (1)
16:17
disclose (2)
26:22;30:18
disclosed (7)
21:22,25;25:16,
17;26:1,2,21
disclosure (7)
22:13;23:20;24:3,
3;29:9,11,17
disclosures (3)
24:13;28:1;30:15
discovery (14)
14:12,16;15:2,7,8;
16:8,13,13,15,18,22;
17:1;18:15,16
discretion (2)
10:25;23:12
discussed (1)

10:22
discussing (1)
16:15
discussions (2)
21:4;26:24
disinformation (1)
23:5
disinterestedness (1)
24:25
disposed (1)
25:2
dispute (1)
21:11
disputes (2)
12:15;24:17
disqualifying (1)
27:8
disrupting (1)
35:25
District (2)
3:2;8:19
disturbing (2)
10:8;20:25
docket (2)
20:7;31:4
document (7)
20:10,15,17,21,25;
30:4,5
documents (2)
20:1;31:3
dollar (1)
26:3
dollars (1)
28:13
domain (1)
24:14
done (5)
4:21;9:22;15:24;
18:17,18
doubt (2)
19:12,24
down (5)
9:2;19:6;20:5;
25:21;34:16
draft (1)
6:9
drill (1)
19:6
due (3)
10:14;34:18,18

**E**

earlier (1)
10:7
Eastern (1)
3:2
either (3)
27:18;30:2;33:21
else (6)
3:16,23;8:8;15:11;
30:17;31:19
employees (4)

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 42 of 47

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

22:15;24:15;
27:12,13
**end (3)**
3:16;12:3;16:8
**endless (1)**
16:3
**enforce (1)**
24:9
**engage (2)**
13:24,24;15:9;
17:9
**enough (1)**
4:7
**enter (3)**
4:10;11:17;20:19
**entered (1)**
19:17
**entire (1)**
12:24
**entities (2)**
23:10;24:5
**entitled (1)**
9:16
**entity (2)**
13:5;30:22
**envision (2)**
15:2,3
**ERISA (2)**
23:8;29:6
**especially (1)**
11:19
**establish (2)**
21:19;28:23
**even (7)**
8:3;16:23;22:23;
23:3,16;24:6;35:11
**event (1)**
31:1
**everybody (5)**
3:12,23;8:8;18:23;
35:24
**everybody's (4)**
10:6;12:17;18:6;
19:7
**everyone (2)**
7:15;36:2
**everyone's (1)**
27:4
**evidence (4)**
14:6;26:3,25;
28:16
**exactly (2)**
30:17;32:23
**example (6)**
13:7;14:19;16:3,9;
23:16,17
**except (1)**
12:19
**exception (1)**
30:8
**executive (3)**
24:7,10;25:14
**expeditious (1)**

8:25
**expeditiously (2)**
15:24;27:3
**explain (1)**
21:16
**extended (1)**
17:8
**extent (2)**
21:18;31:22

## F

**facilitate (1)**
26:23
**fact (2)**
7:15;8:1
**facts (5)**
25:22;28:17,23;
29:14,21
**fairly (1)**
28:20
**false (6)**
15:17,17,20;28:12,
15,24
**familiar (3)**
9:6;13:12;30:8
**families (1)**
22:16
**far (10)**
6:18;19;8:7;9:23;
10:15,25;18:15,23;
35:1,19
**favor (1)**
18:25
**February (1)**
34:18
**federal (4)**
23:17;29:2;30:18,
19
**fee (7)**
4:4;7:16,18,20,25;
8:2,2
**few (1)**
12:16
**field (2)**
23:21;25:7
**fifty (2)**
26:3;28:13
**figure (1)**
16:5
**file (3)**
21:6;29:7;30:5
**filed (7)**
8:10,12;10:12;
15:17;20:7,13;29:7
**find (1)**
29:4
**fine (3)**
6:7;7:13;32:24
**first (7)**
3:25;5:19;7:9;
10:18;11:6;13:21;
18:5

**flag (1)**
28:13
**fleshed (1)**
10:9
**flexible (2)**
10:23;11:20
**flows (1)**
26:7
**follows (1)**
16:9
**foresee (1)**
11:7
**Form (1)**
29:5
**former (1)**
35:1
**forward (7)**
4:5,14;9:21;14:9;
15:8;17:1;28:23
**found (1)**
26:14
**Fourth (1)**
32:4
**frankly (5)**
15:3;18:16;27:10;
30:7;33:23
**freely (1)**
26:7
**front (3)**
16:18;19:16;29:14
**full (4)**
14:17;15:1;25:7;
29:21
**fuller (1)**
15:6
**fully (1)**
13:2
**fund (6)**
14:22;23:7,19;
25:1;29:1,6
**funding (1)**
11:8
**funds (4)**
22:11;25:1;26:10,
17
**further (1)**
35:23
**future (1)**
11:7

## G

**Garcia (1)**
25:15
**gave (1)**
24:1
**Gay (2)**
29:24;30:6
**geared (1)**
4:1
**gets (1)**
7:17
**given (5)**

17:14;21:19;
22:19;30:9;31:9
**gives (1)**
19:5
**goes (1)**
14:4
**Good (15)**
3:7,22;4:19,24;
5:1,4,13;9:3;13:21;
15:21;17:5;27:19;
31:18;34:8;35:13
**government (1)**
10:21
**grapple (1)**
14:3
**grappling (1)**
5:5
**Great (2)**
8:17;28:12
**guess (2)**
11:5;14:9

## H

**handle (2)**
13:1,20
**happen (4)**
4:22;12:22;15:6;
18:14
**happened (1)**
27:3
**happening (2)**
19:1,3
**happens (4)**
10:13,13;14:12;
26:12
**happily (1)**
12:9
**happy (6)**
5:2;13:24,24;
14:11;15:9;17:14
**hard (2)**
15:2,3
**hear (6)**
5:15,18;12:3,4;
17:18;30:17
**heard (8)**
13:21;15:11;17:5;
20:3;25:10,11;28:7,
10
**hearing (14)**
5:5;12:20,22,23;
16:11;18:11;33:15;
34:10,12,17,20,22;
35:2,20
**held (1)**
25:13
**helpful (1)**
16:25
**helping (1)**
16:25
**helps (1)**
36:3

**highly (1)**
9:7
**hold (2)**
34:22;35:20
**Honor (65)**
3:21;4:19,24;5:3,
5,11,13,14;6:2,4,8,
11;7:1,6;11:5;13:21,
25;14:15;15:12,13,
24;16:4,21;17:17;
18:2;19:19;20:4,9;
21:17;22:15;23:15,
22;24:12,17,18;25:4,
11,12,25;26:2,3,22,
22;27:1,3,5,10,17,18,
20,24,25;28:7,9,12;
29:15,17,19;31:7,21;
32:22;34:6,24;35:9;
36:8
**Honorable (1)**
3:3
**Honor's (1)**
14:10
**hope (1)**
9:25
**horizon (3)**
9:2;16:2,18
**horse (1)**
18:1
**host (1)**
19:3
**Huennekens (1)**
3:3
**huge (1)**
28:11
**Hugh (2)**
5:14;34:6
**hundreds (1)**
22:25

## I

**idea (7)**
3:12;4:6;5:4;8:7;
9:20,20;19:10
**illegal (1)**
26:5
**immediately (2)**
4:12;15:25
**impact (4)**
5:7;6:23;8:6,15
**important (1)**
30:21
**importantly (1)**
26:25
**imposed (1)**
7:19
**impression (1)**
7:20
**Inc (1)**
3:5
**including (3)**
26:16;27:7,13

Case 15-10541-BLS   Doc 2427-12   Filed 05/08/19   Page 43 of 47

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

**inconsistent (1)**
25:3
**incorporate (3)**
6:10;8:9;33:10
**incurred (1)**
4:5
**incurring (1)**
11:13
**independent (1)**
26:9
**indicated (1)**
27:3
**indicative (3)**
31:25;32:12,25
**information (16)**
22:12,21,22;23:3,
14,20,23;24:15,21;
25:8;26:7,19,23;
30:11,13,24
**in-interest (1)**
9:16
**input (2)**
11:3;17:3
**insight (1)**
28:19
**integrity (1)**
6:23
**intent (4)**
5:6;8:16;9:25;
34:19
**intention (2)**
3:14;35:3
**intentional (1)**
29:16
**interest (5)**
12:18;22:9;24:22;
25:3;27:4
**interested (3)**
12:14;27:14,15
**interfere (2)**
35:2,6
**internet (5)**
26:13,15;27:7;
29:3,12
**into (10)**
8:11;12:15;14:21;
20:19;22:16;23:19;
24:11,14;28:19;
33:10
**invest (7)**
22:12;23:1,1,12,
18;26:9,11
**invested (4)**
14:22;22:14;29:4;
30:22
**investigated (1)**
29:13
**investment (7)**
14:20,20;23:4;
24:15;25:1;26:18;
27:12
**investments (10)**
14:23;22:17,18;

23:20;26:17,20;29:8,
10;30:16,19
**investors (1)**
26:19
**invests (3)**
23:7,8;26:15
**invitation (1)**
17:8
**invite (3)**
11:3,23;18:23
**invited (1)**
19:10
**involved (1)**
21:13
**involves (2)**
4:14;10:2
**Isgur (15)**
9:5,6;10:9,22;
11:19;15:14;16:1;
18:13,18;19:14,20;
31:2;33:20;35:4,21
**Isgur's (1)**
35:2
**issue (20)**
4:16,20;7:14;
10:18;11:3;13:8;
14:3,8,25;16:23;
20:3;21:5;23:24;
24:2,19;25:20;
26:21;30:3;33:16;
35:4
**issues (18)**
4:14;6:18,19;8:22,
23;9:3,24;10:8,19;
11:8;12:18,23;
15:22;17:9,23,23;
34:12;36:2
**Itel (1)**
21:13
**item (5)**
3:14,14,25;8:17;
19:25

**J**

**January (2)**
13:23;34:18
**Jennifer (1)**
4:24
**joint (3)**
8:18,19;17:7
**Jones (10)**
8:22;10:10;13:25;
16:4,19,23;18:12,17;
19:8;33:11
**Jones' (1)**
9:20
**Judge (29)**
8:22;9:5,6,20;
10:9,10,22;11:19;
13:25;15:14;16:1,19,
23;18:11,12,17,18;
19:8,14,20;23:18;

30:18,20;31:2;33:11,
20;35:2,4,21
**Judges (1)**
16:4
**judgment (1)**
25:24
**judicial (1)**
8:20
**June (1)**
25:13
**jurist (1)**
9:8
**justice (1)**
10:20
**Justin (1)**
6:5

**K**

**keep (3)**
18:19;22:20;35:11
**Kevin (1)**
3:3
**kind (7)**
9:18;13:8;14:6;
15:2,3;22:8;24:24
**kinds (1)**
14:6
**known (2)**
9:7;13:11
**knows (1)**
7:15

**L**

**Labovitz (1)**
21:12
**lack (1)**
18:19
**language (2)**
6:10;7:24
**last (8)**
3:8;4:7;5:5;29:4;
31:6;34:10,11,17
**later (3)**
25:18;29:3,12
**law (6)**
24:3;26:6,7,18;
29:2;33:8
**laws (1)**
23:8
**lay (1)**
25:4
**learn (1)**
22:17
**least (1)**
17:19
**leave (3)**
10:24;13:10;18:17
**led (1)**
26:3
**left (1)**
19:14

**level (1)**
19:13
**likely (1)**
10:24
**limited (2)**
4:2,13
**list (3)**
23:11;27:1,6
**litigate (2)**
24:2;25:22
**litigation (2)**
9:1;15:6
**little (5)**
11:6,13;13:3;
30:25;31:22
**local (1)**
14:12
**logistical (1)**
11:20
**logistics (1)**
11:16
**LONG (12)**
5:13;6:2,5,6;7:1,3,
11;8:7;18:1,2;29:25;
30:1
**long-term (1)**
10:2
**look (1)**
25:23
**looked (1)**
7:22
**lot (3)**
5:4;9:1;15:5
**loud (1)**
9:18

**M**

**made-up (1)**
28:15
**main (3)**
4:9;8:11;9:17
**maintained (1)**
22:4
**majority (1)**
23:9
**makes (1)**
17:11
**making (4)**
7:23;24:24;29:18;
36:4
**manage (1)**
11:10
**managed (2)**
23:9;26:8
**manner (6)**
4:17;7:8;8:13,25;
27:2;36:2
**Mar-Bow (5)**
12:13;15:15;16:9;
17:22;23:6
**Mar-Bow's (1)**
5:7

**March (3)**
12:23;34:20,23
**material (1)**
22:8
**materials (1)**
22:4
**matter (12)**
4:13;8:25;9:5,9;
16:22;17:1;18:15,
22;20:4,8;24:18;
25:18
**matters (6)**
10:12;11:21;
18:25;24:10;28:11;
31:21
**May (8)**
4:19;7:17;22:1;
28:7,8;33:18,19;
35:11
**maybe (1)**
34:23
**McKinsey (32)**
4:15;6:20;10:4;
12:18,19;14:25;
15:18,18;20:8;21:7,
18;22:3,7,15;23:14,
17;24:1,7,10,22;
25:14,15;26:4,8,13,
16,16,25;27:12,13;
34:13,16
**McKinsey-affiliated (1)**
23:10
**McKinsey's (2)**
14:18;30:23
**mean (3)**
6:17;13:7,8
**mediate (3)**
9:5;11:17;13:15
**mediated (1)**
14:4
**mediating (2)**
11:20;12:11
**mediation (14)**
8:20;9:11,13;12:2,
24;14:13,16;17:2,7;
18:20;19:9;26:24;
33:13;35:3
**mediations (1)**
15:6
**mediator (5)**
15:14,25;16:24,
25;18:25
**mediators (1)**
15:21
**mediator's (2)**
17:3,13
**meet (2)**
17:10;35:4
**mentioned (1)**
12:16
**middle (1)**
28:14
**might (3)**

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 44 of 47

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

10:11;22:11;35:2
million (2)
26:3;28:13
mind (2)
3:12;8:21
minimis (6)
22:25;23:4,4;
27:11,16;30:8
minimize (1)
8:5
minimum (3)
7:17,18;8:3
minute (1)
19:2
MIO (17)
14:21,21,22;22:1,
6,23;23:18;24:7;
25:16;26:8,10,11,12,
15;27:10;28:19,25
miscellaneous (5)
4:11;5:7;6:10;
7:13;8:11
misleading (1)
29:16
missing (1)
30:24
moment (1)
10:18
monetary (1)
13:5
money (7)
22:14;23:1,2,7,9;
26:11,15
months (3)
29:3,7,7
moot (5)
31:23,25;32:6,15,
25
more (5)
10:24;11:14;14:5;
26:24;28:4
morning (5)
3:7;4:19,24;13:21;
20:5
most (3)
7:16;27:1,14
motion (8)
16:11,17;19:2;
25:12;31:23;32:12,
22;33:6
mouth (1)
14:2
move (1)
6:17
moves (1)
8:17
moving (2)
12:17;16:7
much (9)
7:3;14:5;15:10,19;
23:5;25:9;26:24;
28:4;34:11
mutual (3)

22:11;23:19;29:1
myself (1)
19:8

N

narrow (1)
15:22
Natural (1)
3:5
necessarily (1)
21:24
necessary (1)
27:5
need (13)
3:16;6:22,22;9:13;
10:7,8,21;13:1;16:7;
25:25;27:9;29:14;
34:4
needs (4)
4:21;9:10;18:18,
22
negotiations (1)
17:17
next (2)
12:23;17:10
nobody's (1)
18:7
none (1)
6:20
no-nonsense (1)
9:9
normal (1)
11:14
notice (5)
3:8,10;9:12,15,16
noticed (1)
6:16
number (4)
4:12;8:18;16:20;
28:15

O

oath (1)
15:18
object (1)
5:17
objection (1)
7:7
objectionable (1)
27:8
obvious (2)
32:15;33:2
obviously (8)
7:10;9:7;10:18;
11:6,14;12:8;17:6;
35:25
occur (3)
9:17;11:1;24:25
off (3)
22:2,21;33:19;
35:20

offered (1)
8:4
Office (8)
4:15;10:16;17:9;
20:22;21:4,5,14;
30:11
OFFICER (1)
3:5
often (1)
13:5
once (3)
7:16;9:13;35:24
one (13)
4:13;5:8;7:23;
10:4;13:20;14:9;
16:21;17:22;24:8,
17;26:2;30:2;31:6
ongoing (1)
16:14
only (2)
10:19;31:24
onto (1)
8:17
open (8)
3:15;4:8,10;7:18;
15:13,23;16:3;17:24
open-ended (1)
17:8
opening (1)
4:3
operate (2)
14:13;15:8
operated (1)
22:2
operating (1)
14:25
operation (1)
26:9
opportunity (13)
10:17;15:13;17:7;
18:8;19:5;21:19;
23:25;24:2;29:20;
30:6,9;35:4,21
opposes (1)
21:18
opposition (1)
5:3
order (26)
3:4;4:10;6:9,12,
13,14,25;8:18;10:25;
11:17;18:8;19:9,17,
21;20:19;21:9,18;
25:6;28:3;31:9;33:7,
10,11,13,14;34:12
ordered (4)
16:16;18:15;20:8,
19
orders (3)
11:9;12:9;13:2
O'SHEA (6)
13:16,18,19,21;
19:19,22
otherwise (2)

4:7;26:10
ought (1)
28:1
ours (1)
34:18
out (11)
3:8;9:18;10:9;
11:15;13:9;10:14:2;
16:5;25:5;26:14;
29:4
outlined (1)
12:20;34:12
over (1)
9:13

P

pace (1)
18:12
PACER (1)
26:13
Paget (3)
5:12,18;6:6
Paget's (1)
4:1
paper (2)
34:14,18
papers (1)
20:24
parade (1)
33:21
parallel (3)
16:11;17:12,20
parameters (1)
23:13
part (5)
14:21;28:4,11;
32:22,25
participate (6)
11:11,18;12:9,9;
13:2;19:13
participation (8)
10:15,16,23;
14:11;17:4,6,14;
19:13
particular (2)
7:11;25:2
parties (14)
6:8;9:24;10:13;
11:23;12:13;19:20;
20:19;23:1,9,10;
25:21;27:14,15;35:5
parties- (1)
9:15
partner (1)
23:17
partners (1)
15:18
party (6)
4:16;8:15;18:21;
20:2;21:22;25:10
path (1)
9:2

pending (5)
8:23,24;17:2;
25:18;32:7
pension (3)
23:1,7;29:6
people (7)
22:9;23:21;24:21,
23;26:8,9,12
perfectly (1)
9:8
perhaps (3)
26:24;31:10;32:22
period (1)
35:8
Perkins (1)
20:6
permitted (1)
16:14
person (3)
9:9;11:2;21:23
ph (1)
21:13
phone (2)
3:19,20
piece (2)
31:24;32:5
place (3)
22:20;27:19;31:4
placed (1)
26:17
places (1)
19:4
plan (3)
29:1,4,12
plans (2)
22:11;30:16
play (1)
16:24
playing (2)
23:21;25:7
pleadings (2)
8:10;15:17
Please (3)
3:4;4:19;31:21
PM (1)
36:10
point (1)
33:16
pointed (1)
11:15
points (3)
7:9;17:5;28:23
policies (1)
24:22
polies (1)
22:20
position (7)
13:4;15:16;16:8;
21:2;22:6,24;28:1
possible (6)
10:23;16:5,20,23,
24;17:19
possibly (1)

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 45 of 47
ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

12:22
**postponement (1)**
14:14
**potentially (2)**
22:17;27:13
**practice (2)**
16:17;19:2
**predicate (1)**
30:14
**preference (2)**
12:25;33:20
**prejudge (1)**
24:19
**prejudice (1)**
8:15
**preliminary (1)**
20:4
**prepared (3)**
10:22;18:12;33:14
**presentations (1)**
36:1
**presented (1)**
36:3
**president (1)**
25:15
**presiding (1)**
3:3
**pretty (1)**
16:5
**previously (1)**
31:9
**primary (1)**
10:15
**principle (1)**
24:13
**prior (1)**
12:20
**probably (6)**
6:16;7:15;8:2;
9:16;12:5,7
**problem (5)**
6:4,8;7:12;28:11;
35:1
**problems (1)**
5:4
**procedural (2)**
8:13;9:1
**procedures (2)**
22:20;24:9
**proceed (4)**
4:13;18:12,13;
34:21
**proceeding (13)**
4:11,11,16;5:7;
6:11;7:7,12,13;8:11;
18:11;19:19;26:1;
35:22
**proceedings (3)**
10:3;14:14;36:10
**process (13)**
13:22,24,25;14:13,
16;15:9,13,23;16:1,
3,15;27:18;35:6

**produce (1)**
20:8
**produced (2)**
20:2,10
**professional (3)**
29:2,5,10
**professionals (1)**
22:11
**professional's (1)**
29:12
**profit (1)**
26:4
**progress (1)**
18:19
**promise (1)**
5:22
**promote (1)**
26:23
**propose (1)**
20:18
**proposed (6)**
8:18;9:14;10:25;
13:22;14:1;33:7
**protective (2)**
20:19;21:9
**prove (4)**
15:19;24:19,20;
28:14
**provide (4)**
19:21;21:8;24:3;
30:24
**public (14)**
21:6,12,15,17;
22:5,15,17;23:20;
24:14;28:2;30:4,14,
14;31:12
**publicly (1)**
21:6
**published (1)**
3:11
**pulled (1)**
12:15
**purposely (1)**
23:15
**purposes (2)**
4:2;32:10
**pursuant (1)**
21:8
**put (17)**
14:7;20:18;21:1;
23:6,22;24:14;28:13,
16,22;29:14,20;
31:15;32:16,23;
33:19;34:15,18
**putting (1)**
13:13

**Q**

**quarterly (2)**
7:16,20
**quicker (1)**
12:24

**quickly (9)**
3:8;4:7;6:16,23,
24,25;16:5;18:10;
33:11
**Quite (3)**
18:16;30:7;33:23

**R**

**race (1)**
18:1
**rain (1)**
33:21
**raise (2)**
7:9;34:24
**raised (1)**
14:6
**raises (1)**
17:5
**rather (1)**
25:22
**ready (2)**
12:19;18:13
**real (2)**
24:20;30:21
**really (9)**
6:23;8:13;13:5,8;
15:5;16:7;27:19;
31:8,20
**reason (3)**
17:16;21:17;30:12
**reasonably (1)**
28:20
**reasoned (1)**
36:2
**reasons (3)**
21:16;22:3;33:2
**reassure (1)**
23:25
**receive (1)**
31:12
**received (1)**
20:25
**recognize (1)**
3:23
**recollection (1)**
20:6
**reconsideration (1)**
25:12
**record (9)**
13:13;20:18;21:1;
23:6,23;25:13;30:5;
31:16;32:18
**reference (1)**
8:9
**referenced (1)**
19:2
**referring (2)**
24:24;29:6
**regard (1)**
18:21
**Region (2)**
19:10,11

**regular (1)**
26:19
**reiterate (2)**
12:8;13:2
**relate (1)**
8:10
**related (1)**
31:24
**relatively (1)**
3:9
**release (1)**
27:6
**released (1)**
30:11
**relief (5)**
7:10;9:23;28:5;
31:23;32:6
**remain (1)**
15:23
**remember (1)**
23:24
**rendered (1)**
32:13
**reopen (3)**
9:17;32:22;33:12
**reopened (2)**
7:17;8:1
**reopening (3)**
4:1;19:18;33:6
**reorganized (1)**
6:6
**report (1)**
16:4
**representations (1)**
28:21
**representative (1)**
19:12
**request (5)**
15:24;31:6,11,25;
32:6
**requests (1)**
32:9
**require (4)**
10:24;21:20,20;
24:3
**required (4)**
19:11,12;25:16;
29:11
**requires (2)**
29:6;30:23
**research (2)**
29:3,11
**reserve (1)**
12:2
**resolution (4)**
9:11,14,15;15:4
**resolve (8)**
3:16;9:3,24;17:20;
18:7,24;35:3,5
**resolved (10)**
6:17,22;8:25;9:9,
10;10:8;12:23;18:9;
19:6,7

**resolves (1)**
9:25
**Resources (2)**
3:5;27:7
**respect (5)**
11:16;12:11;13:7;
16:13;17:4
**respected (1)**
9:7
**respective (1)**
20:23
**responding (1)**
3:8
**response (1)**
34:14
**responsibilities (1)**
24:8
**rest (1)**
32:1
**result (2)**
4:5;8:16
**retained (2)**
21:22,24
**retirement (5)**
14:21;26:10,15,17,
18
**review (1)**
20:14
**reviewed (1)**
20:14
**Rhodes (26)**
4:18,19;8:4;13:14,
18,20;25:10,11;
28:11;29:11;31:19,
20;32:3,5,11,14,17,
19,21;33:1,3,6,14,22,
25;34:2
**right (37)**
3:23;5:9,10,11;
6:1;7:4,5,8:16,17;
11:22,23;13:12,14;
15:10;18:3;19:25;
20:20;21:6;23:7,15;
24:12;27:19,22;
28:6;29:25;30:3;
31:18;32:5,11,17;
34:3,5,7,25;35:15,
22,24
**rights (1)**
33:5
**rise (2)**
3:1;36:7
**risk (1)**
23:13
**role (1)**
16:24
**route (1)**
17:19
**RTS (12)**
22:3,7,10,24;
23:14;24:7,10;25:14,
15;26:16;27:13;29:9
**RTS' (1)**

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 46 of 47

ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

26:13
**Rule (7)**
14:14;21:19,23;
25:17;30:8,23;32:7
**ruled (4)**
4:9;30:10;32:8;
33:4
**rules (1)**
14:12
**ruling (8)**
7:23;19:15;29:22;
31:15,25;32:4,12,25
**run (3)**
17:11;20:5;26:8
**running (1)**
34:17

**S**

**sailed (1)**
25:12
**same (7)**
10:6;15:1,8,15;
18:12;29:19;35:18
**sat (1)**
24:7
**satisfaction (1)**
19:7
**saying (3)**
12:1;30:17;32:25
**schedule (11)**
12:20,22;16:10;
17:15;33:15,15;
34:14,22;35:1,11,19
**scheduled (2)**
3:13;6:16
**schedules (1)**
35:25
**scheduling (1)**
3:9
**school (1)**
28:14
**scope (2)**
16:18,25
**screwed (2)**
35:8,10
**sea (1)**
22:19
**sealed (1)**
20:7
**seated (1)**
3:4
**second (2)**
7:14;14:2
**seeking (1)**
7:10
**seems (2)**
12:21;32:15
**selection (1)**
16:1
**SELENDY (19)**
4:24,25;5:2,11;
15:12;20:4,12,16,20;

21:2;28:7,10;31:6,
14,17;35:7,9,14;36:6
**senior (2)**
24:7;25:14
**sense (1)**
17:11
**sent (1)**
3:8
**sentence (1)**
32:23
**separate (3)**
12:13;22:1;33:14
**separately (1)**
22:2
**separateness (6)**
22:3;24:4,6,9,14,
20
**serious (1)**
14:5
**seriously (1)**
24:23
**serve (1)**
22:10
**service (1)**
24:11
**serving (1)**
22:22
**session (1)**
3:2
**set (1)**
17:10
**settle (1)**
14:17
**settled (1)**
13:6
**settlement (1)**
26:23
**share (1)**
15:15
**shared (2)**
4:7;20:9
**sharing (1)**
24:20
**ship (1)**
25:12
**short (2)**
3:10;12:19
**show (3)**
23:25;28:25;30:9
**showed (1)**
22:5
**shown (1)**
23:11
**shows (1)**
26:3
**sic (2)**
29:24;30:6
**side (3)**
26:16,18,19
**simply (1)**
25:4
**skin (1)**
8:13

**small (1)**
7:21
**smolder (1)**
10:1
**solidify (1)**
34:16
**solution (3)**
10:2,2;16:6
**solutions (1)**
16:20
**solves (1)**
5:4
**somebody (1)**
24:25
**somehow (1)**
11:18
**sometimes (1)**
15:22
**somewhat (1)**
11:20
**son (1)**
28:14
**soon (1)**
19:17
**sooner (1)**
35:11
**sorry (5)**
6:2;11:25;12:1;
13:15;31:6
**sort (9)**
3:13;8:25;13:4,9;
15:4,6;16:6;32:9;
34:16
**Southern (1)**
8:19
**speak (2)**
13:14,16
**speaking (1)**
12:2
**speaks (1)**
21:23
**specific (3)**
7:10;19:23;22:3
**specifically (4)**
12:12;22:14;
25:13;27:14
**splitting (1)**
13:6
**spoke (1)**
34:16
**standing (4)**
5:8;16:10,11;
33:16
**standpoint (3)**
8:14;9:2;30:18
**start (4)**
3:15,18;15:25;
27:19
**stated (1)**
15:16
**statement (1)**
28:10
**statements (1)**

15:17
**States (6)**
3:1;7:7,10;8:18;
27:25;34:13
**status (3)**
3:6,9;20:1
**statute (1)**
7:25
**statutory (1)**
4:4
**stay (1)**
14:13
**Steel (2)**
14:25;15:1
**stick (1)**
35:18
**still (7)**
20:14;32:7;34:21,
22;35:7,16,17
**strongly (1)**
26:22
**struggling (1)**
25:19
**subject (5)**
9:12,21;16:16;
19:7;23:8
**submission (1)**
17:17
**submit (3)**
6:11;33:16,18
**substance (1)**
19:4
**substantive (3)**
8:14;9:1;33:4
**suggest (4)**
6:9;10:9;16:6;
19:17
**suggestion (1)**
10:11
**support (4)**
4:20;28:2,3,4
**supposed (1)**
30:11
**sure (9)**
3:18;5:20,24;12:7;
21:9;24:24;29:2,15;
32:9
**surprise (1)**
3:13
**surrounding (1)**
25:23
**suspect (2)**
12:7;24:1
**system (1)**
6:24

**T**

**talk (1)**
18:24
**talked (1)**
14:19
**talking (3)**

19:5;27:11;29:13
**tasked (2)**
24:8,23
**team (1)**
24:12
**telephonically (1)**
11:1
**telling (1)**
28:14
**terms (2)**
19:19;21:23
**terribly (1)**
10:7
**testified (1)**
28:18
**Texas (1)**
8:19
**therefore (1)**
24:23
**there'll (1)**
7:20
**thereof (1)**
18:20
**thinking (3)**
9:18;18:5;33:10
**third (5)**
19:25;23:1,9,10;
30:3
**though (2)**
3:18;24:6
**thousands (3)**
22:15;23:2,21
**times (2)**
12:16;15:5
**Toby (1)**
6:6
**today (10)**
3:17;6:15;23:16;
26:6;28:16;31:15;
33:9;34:4;35:25;
36:1
**token (1)**
10:7
**told (1)**
13:23
**took (2)**
3:13;21:7
**tools (1)**
27:6
**totally (2)**
11:7;12:14
**toward (1)**
4:1
**towards (1)**
16:7
**track (1)**
17:20
**training (1)**
24:23
**travel (2)**
11:13;17:15
**trial (1)**
16:7

Case 15-10541-BLS    Doc 2427-12    Filed 05/08/19    Page 47 of 47
ALPHA NATURAL RESOURCES, INC., et al.
Case No. 15-33896-KRH

January 15, 2019

**trigger (1)**
8:2
**trouble (1)**
16:21
**troubling (2)**
6:18,19
**true (2)**
6:20;24:6
**trust (1)**
31:2
**Trustee (19)**
4:15;7:7,10;10:16;
11:17;13:4;17:4,13,
21,23;19:10,11;
20:22,24;21:11;
30:12;31:9;34:13;
35:12
**Trustee's (6)**
14:11;17:6,8;21:5,
14;27:25
**truth (1)**
27:2
**trying (1)**
17:20
**turn (2)**
6:25;7:5
**two (6)**
7:9;14:7;16:20;
24:5;34:15,17
**two-thirds (1)**
14:22
**two-week (2)**
34:13;35:8
**type (1)**
9:9

**U**

**ultimately (2)**
18:6;21:16
**Um-hum (2)**
20:12,16
**unable (1)**
11:19
**unclarity (1)**
11:7
**under (7)**
7:19;15:17;21:7,
15;25:16;29:2;32:7
**Understood (2)**
7:1,11
**unique (1)**
13:4
**United (5)**
3:1;7:7,10;8:18;
27:25
**Unites (1)**
34:13
**unknown (1)**
22:9
**unless (2)**
6:11;12:3
**unlike (1)**

22:10
**unseal (3)**
23:22;25:6;31:3
**unsealing (1)**
20:1
**unsecured (1)**
20:23
**up (10)**
3:15;4:3,8,10;
7:14;16:6;27:15;
34:4;35:8,10
**upright (1)**
27:1
**urge (1)**
26:22
**use (1)**
27:6

**V**

**value (1)**
15:23
**vast (1)**
23:9
**video (1)**
11:1
**view (2)**
12:12,25
**views (3)**
12:2;13:11,13
**violate (1)**
24:13
**violated (1)**
22:4
**Virginia (1)**
3:2
**visibility (3)**
22:16;23:19;24:11

**W**

**waiting (2)**
4:10;19:24
**waive (1)**
7:25
**wall (1)**
28:20
**walled (2)**
22:2,21
**wants (5)**
10:4;17:13;30:13;
34:21,22
**watchdog (1)**
13:4
**watching (1)**
10:6
**way (15)**
5:8;7:24;8:4;9:3;
13:1;14:5;17:22;
19:13;23:15;24:4,
13;25:2,5,7,19
**ways (2)**
11:15;23:2

**week (3)**
3:8;4:7;17:10
**weeks (2)**
34:15,17
**weigh (2)**
5:22;27:22
**weight (2)**
25:20,20
**welcome (3)**
15:13;17:2,6
**Westmoreland (6)**
13:7,23;16:15,22;
17:1;24:18
**whatnot (1)**
17:16
**what's (1)**
27:7
**whatsoever (1)**
8:15
**whereas (2)**
19:5;22:14
**Whereupon (1)**
36:10
**Whitebox (1)**
26:1
**whole (2)**
4:3;6:23
**wholly (1)**
28:24
**wide (1)**
4:3
**wife (1)**
23:17
**willing (2)**
14:9;17:10
**wish (5)**
13:14;15:11;20:2;
25:10;27:22
**within (1)**
23:12
**without (3)**
8:5;18:25;24:19
**wonderful (1)**
18:25
**WONG (1)**
18:4
**work (7)**
10:21;15:14;
16:11;24:21;30:15;
35:16,17
**worked (1)**
24:10
**working (1)**
6:9
**works (1)**
28:19
**world (1)**
4:4
**worried (1)**
11:18
**wound (1)**
27:15
**wrong (2)**

21:3,10

**Y**

**year (1)**
30:19
**years (2)**
29:3,12
**year's (1)**
29:4
**yesterday (1)**
3:11

**1**

**1 (1)**
3:15
**11 (5)**
22:10,22;24:10,11,
21
**12:06 (1)**
36:10

**2**

**2 (2)**
3:15;8:18
**2014 (4)**
21:19;25:17;30:8,
23
**2016 (3)**
23:24;25:13;29:20
**23rd (1)**
34:18

**3**

**3 (1)**
3:15

**4**

**4 (1)**
19:11
**401k (6)**
22:11;29:1,4,12;
30:16,19

**5**

**5500 (1)**
29:5
**5th (4)**
12:23;13:23;
34:20,23

**6**

**60d3 (1)**
32:7
**6th (1)**
34:19

**7**

**7 (1)**
19:10

**9**

**9019 (1)**
14:14