```
1                     UNITED STATES BANKRUPTCY COURT
                             DISTRICT OF DELAWARE
2

3                                      .   Chapter 11
   IN RE:                              .
4                                      .   Case No. 15-10541 (BLS)
   SRC LIQUIDATION LLC,                .
5                                      .   Courtroom No. 1
                                       .   824 North Market Street
6                                      .   Wilmington, Delaware 19801
                                       .
7                     Debtor.          .   May 9, 2019
   . . . . . . . . . . . . . . . . .       2:00 P.M.
8

9                   TRANSCRIPT OF TELEPHONIC HEARING
              BEFORE THE HONORABLE BRENDAN L. SHANNON
10                   UNITED STATES BANKRUPTCY JUDGE

11 TELEPHONIC APPEARANCES:

12 For McKinsey Recovery    William Bowden, Esquire
   & Transformation         ASHBY & GEDDES, P.A.
13 Service:                 500 Delaware Avenue, 8th Floor
                            Wilmington, Delaware 19801
14
                            - and -
15
                            John Gleeson, Esquire
16                          DEBEVOISE & PLIMPTON LLP
                            919 Third Avenue
17                          New York, New York 10022

18
   Audio Operator:          Electronically Recorded
19                          by Dana L. Moore, ECRO

20
   Transcription Company:   Reliable
21                          1007 N. Orange Street
                            Wilmington, Delaware 19801
22                          (302)654-8080
                            Email:  gmatthews@reliable-co.com
23

24 Proceedings recorded by electronic sound recording,
   transcript produced by transcription service.
25
```

1    TELEPHONIC APPEARANCE (Continued):

2    For Mar-Bow Value          Marc Abrams, Esquire
     Partners:                  WHITEFORD TAYLOR & PRESTON LLP
3                               The Renaissance Centre, Suite 500
                                405 North King Street
4                               Wilmington, Delaware 19801

5                               - and -

6
                                Steven Rhodes, Esquire
7                               STEVEN RHODES, ATTORNEY AT LAW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commenced at 2:07 p.m.)

2       (Call to order of the court)

3       THE COURT:  Good afternoon, counsel.  This is

4  Judge Shannon.  I understand from the operator that all

5  necessary parties are on the call this afternoon.  This is a

6  telephonic hearing in the SRC Liquidation case; case number

7  15-10541.

8       The genesis of this afternoon's hearing is a

9  letter received by the court from, I believe, Mr. Bowden

10  dated May 1st.  And we have gotten responsive submissions.

11  Obviously, all of this relates to a motion for relief from

12  orders under Bankruptcy Rule 9024 and Rule 60.  That has been

13  filed by Mar-Bow Value Partners and is opposed by McKinsey

14  entities.  I believe that is scheduled for May 15th.  And the

15  purpose, again, of this call is to determine precisely what

16  it is that's going to be addressed, and argued by the

17  parties, and presented to the court at that hearing coming

18  up.

19       As I understand it the threshold point by McKinsey

20  is a request that the hearing be bifurcated so that the court

21  exclusively address questions of standing before turning to

22  any of the merits issues that would, otherwise, be raised in

23  the motion and that is opposed by Mar-Bow.  I have had an

24  opportunity to review the parties' submissions and, again, I

25  appreciate everyone getting on the phone with me this

1 afternoon.

2         I would also express my appreciation and, frankly,

3 my apologies for any disruption.  I know we have a lot of

4 people on the call.  It had been originally scheduled for one

5 o'clock, but I had a trial that just went long.  So, I

6 appreciate everyone's flexibility in indulging my calendar a

7 little bit.  We are on at two o'clock.

8         I will hear first from counsel for McKinsey.

9         MR. BOWDEN:  Your Honor, thank you very much.

10 It's Bill Bowden with Ashby & Geddes.

11         I'm joined on the phone, Your Honor, by John

12 Gleeson, Natasha Labovitz, and Erica Weisberger of the

13 Debevoise & Plimpton Firm, as well as David Flugman and Maria

14 Ginzburg from the Selendy & Gay Firm.  Your Honor, Mr.

15 Gleeson will be addressing my client, McKinsey RTS's request

16 that Your Honor consider the standing issue at the May 15th

17 hearing.

18         I am aware that we have other parties on the line

19 to, Your Honor.  So, unless Your Honor prefers to hear from

20 us out of the box there may well be other parties that would

21 like to make introductions.

22         THE COURT:  No.  I don't want to do introductions.

23 That just gets really clumsy.  You know, one of the luxuries

24 I have is I think probably everybody on the phone here, in

25 one capacity or another, has been in my court.  So, the one

1  thing is everyone will have an opportunity to certainly be

2  heard.  With this many parties I'm just going to try to

3  impose a little bit of structure.

4          MR. BOWDEN:  Very well.

5          THE COURT:  Let me also make one admonitory

6  comment to the parties as well.  I have had an opportunity,

7  as I said, to review, I haven't studied the Rule 60 pleadings

8  that have been filed in detailed, but I have reviewed them

9  and I'm certainly familiar with the issues that are raised.

10         I would just remind the parties that the focus of

11 today's call is not the merits of the issues that are raised

12 in Rule 60(b) or even allegations of what was done or not

13 done recently or years ago.  The issue is whether or not this

14 court should conduct a hearing that is limited to certain

15 threshold points identified by McKinsey entities or whether

16 the court conducts the full hearing on the merits.

17         So, I just want to remind the parties that this

18 not the Rule 60 hearing.  So, hopefully, we can keep the

19 discussion and the argument focused.

20         So, I believe it would then be Mr. Gleeson.

21         MR. GLEESON:  Yes.  Thank you, Judge.  Thank you

22 for taking the time.  We know you're busy.

23         I'm going to take three or four minutes because my

24 intention, even before you told us to narrow our focus to the

25 discreet issue before you, is not to argue merits, but just

1   to argue in support of our request that the sole focus of

2   next week's argument be the standing of Mar-Bow to make this

3   application; the essence of which is an allegation of fraud

4   on the court.

5          Very, very briefly, the plan was confirmed in

6   November of 2015, became effective in December of that year.

7   Mar-Bow purchased an unsecured claim in March of 2016 and

8   three years later has brought the pending motion, which as

9   you mentioned, Your Honor, seeks relief from certain orders

10  of the court based on allegations of fraud on the court.

11         The allegations aren't new.  They've been raised

12  in other bankruptcy courts as early as the spring of 2016.

13  They're also the subject of a civil RICO that's pending in

14  Southern New York.

15         The other two bankrutpcy courts, Judge Shannon, in

16  which Mar-Bow's allegations are postured the way they are

17  before you, the courts have done what we're asking you to do

18  here which is hear argument limited to this threshold issue

19  of Mar-Bow standing.  And in both courts that issue was

20  recently argued and is currently sub judice.

21         Our opposition, in broad strokes, to Mar-Bow's

22  motion, which we filed on April 11th, makes several

23  arguments.  One is the standing issue that we seek to have

24  argued next Wednesday.  The -- we also contend that even if

25  there is standing on Mar-Bow's, that Mar-Bow has standing, it

1  sat on its rights for three years and so we make a latches

2  claim.  We also contend that if the allegations it made were

3  proved even then it would not rise to the level necessary to

4  find fraud on the court.  Finally, we dispute, strenuously,

5  the merits of the underlying allegations.  They're false and

6  in many instances intentionally so.

7         A couple of weeks after we filed our opposition

8  challenging Mar-Bow's standing and making these other

9  arguments, specifically on April 24th, Mar-Bow made a filing

10  that put in the record sixty-nine exhibits totaling almost

11  1,600 pages purportedly in support of its underlying claims

12  of fraud.  That filing, Your Honor, coupled with the way Mar-

13  Bow has comported itself in other proceedings caused us to

14  seek Mar-Bow's agreement that next week's oral argument of

15  the motion focused solely on the threshold issue of whether

16  Mar-Bow has standing to make the claim it's made.

17         We have no doubt that we can defeat those claims

18  on the merits, but doing so would involve significant

19  expenditure of resources on our part, on the parties part, on

20  the courts part.  So, we want to address the threshold issue

21  first.  Mar-Bow declined that proposal and the letter you got

22  on May 1st from us, which is impetus for this conference,

23  includes our decent because of our strongly felt view that

24  the May 15th proceeding not descend into another lengthy

25  recitation of numerous false allegations by Mar-Bow's

1  counsel.

2        Almost as though the record didn't support

3  sufficiently our motion to have the threshold issue addressed

4  first, just yesterday Mar-Bow filed another additional,

5  almost three hundred pages of exhibits in support of its

6  motion.  To be blunt, you know, it's our view that its acting

7  in a way that suggests pretty clearly that the last thing it

8  wants this court to focus on next week is on whether it has

9  standing to pursue its claim.

10        We have, obviously, read Mr. Abrams letter in

11  opposition to our request.  It asserts that McKinsey is

12  trying to isolate and bury, that's Mr. Abrams phrase, claims

13  of fraud.  The truth is, Judge, we get this courts authority

14  under Rule 60(d)(3) and the last thing we would do is ask you

15  or expect you to allow a colorable claim of fraud on the

16  court brought by a party with standing to be buried.

17        I can't help but point out that none of the

18  creditor groups that are the real economic parties in

19  interest in this case, has joined in the motion on the merits

20  or is trying to bring any claims against McKinsey on its own.

21  They're, obviously, aware of this situation and these

22  allegations which have been made elsewhere and made publicly.

23  And they're capable of speaking up when they want to, but

24  they're not pursuing any claims against McKinsey.

25        In any event, as I mentioned, the last thing we'd

1 expect of this court is to ignore proper allegations of fraud

2 on the court, but the of the matter is the first thing that

3 we expect, respectfully, is that it apply Article 3 and

4 bankruptcy court standing requirements to any entity that

5 advances those claims.

6       For that reason we are asking you to do what Judge

7 Henican has done in Eastern Virginia, and Judge Bernstein has

8 done here in the Southern District of New York which is to

9 address the standing issues first, that issue.  And if that

10 issue is decided in Mar-Bow's favor then address the

11 remaining issues raised by our opposition.  At bottom, Mar-

12 Bow has waited three years before bringing this claim. It can

13 wait a little longer while this court decides whether it has

14 standing to do so.

15       That's all I've got, Judge, unless, of course,

16 you've got any questions.

17       THE COURT:  No.  I don't think I have any

18 questions at this point, Mr. Gleeson.

19       I would ask if there's any party that wishes to be

20 heard in support of the positons laid out by Mr. Gleeson and

21 then I would, of course, hear from Mar-Bow in response.

22     (No verbal response)

23       THE COURT:  Okay.  Then I believe it would be

24 appropriate to hear from Mar-Bow in response.  Is that Mr.

25 Abrams?

1        MR. ABRAMS:  Good afternoon.  Yes, it's Marc

2   Abrams, Whiteford Taylor & Preston, local counsel for Mar-

3   Bow.

4        Your Honor, our presentation today will be

5   presented by Steven Rhodes.  I am also joined by colleagues

6   from Cadwalader as well who may wish to be heard, but Mr.

7   Rhodes will handle the bifurcation request and response.  If

8   Your Honor would like to hear more on the timing of

9   submissions and communications regarding that, Whiteford has

10  personal knowledge of those events, but at this point I feel

11  it appropriate to defer to Mr. Rhodes.

12       THE COURT:  Okay.  That sounds fine.  Again, as I

13  said at the outset, I will hear from any party that wishes to

14  be heard, but I'm happy to hear from Mr. Rhodes.

15       Good afternoon, sir.

16       MR. RHODES:  Good afternoon, Your Honor; this is

17  Steven Rhodes on behalf of Mar-Bow.

18       It is our position, Your Honor, that the

19  efficiency that McKinsey argues in support of its request

20  will not be achieved by bifurcation.  We have, as counsel

21  indicated, twice now argued the issue of standing as a

22  preliminary matter or threshold matter in the (indiscernible)

23  Resources case and in the SunEdison case.

24       Our experience in both of those cases confirms

25  that our position that the issue of standing is inextricably

1 intertwined with the issue of the merits of the claim.  It is

2 impossible to argue the issue of who has standing without a

3 thorough going argument and explanation on the nature of the

4 claim, the factual basis of the claim, and the remedies that

5 will result when, as we expect, the court will sustain the

6 claim.

7        Indeed, Your Honor, to some extent our position

8 was confirmed here by counsel's presentation on even whether

9 this issue of standing should be bifurcated and heard first.

10        The issue of who owns this claim, who's entitled

11 to bring it is intertwined with the nature of the claim

12 itself.  And that is so because a claim of fraud on the court

13 is of a different character then other claims that courts

14 commonly here.  So, in order for us to argue our standing

15 position, as we did in these other two cases, we have to

16 thoroughly review the nature of a fraud on the court claim

17 and how it applies in the context of what McKinsey has done

18 here.

19        We have to talk about who owns that claim, if

20 anyone indeed.  We have to talk about what happens to a or

21 with a distribution of any sanctions that the court may

22 impose here.  Your Honor has already seen in the papers that

23 there is, at least, three and maybe even four different views

24 on how that distribution should be done.

25        Our position is that the court has complete

1  discretion on any distribution of sanctions because it's a

2  wrong on the court, not a wrong on any particular party.  Our

3  claim is not a fraud on a party.  Our claim is a fraud on the

4  court.  So, we believe that under law the court has complete

5  discretion as to how to distribute the proceeds.  And as a

6  result of that Mar-Bow does have standing.

7          Finally, Your Honor, it simply cannot be the case

8  that even if Mar-Bow does not have standing, a position,

9  obviously, we contest, but even if the court finds that we

10 don't have standing it cannot be the case that these well-

11 founded claims of fraud on the court that we have brought and

12 that we believe we have evidence of simply go away.

13         The court has an independent duty, we believe, to

14 examine the merits of the claim and to investigate them and

15 to remedy them as appropriate.  So, there is no efficiency

16 whatsoever in first reviewing the issue of standing and then

17 turning to the issue of merits.  The issue of merits is

18 before the court.  We certainly want the issue of merits to

19 be determined by the court and if I hear McKinsey correctly

20 it does as well.

21         It wants to be exonerated, and we understand that,

22 and we want it to have its day in court, but we want our day

23 in court as well.  In any event removing the messenger here,

24 Your Honor, doesn't remove the message.  The burden will be

25 on the court, we believe, to sort through all of this

1  regardless of who the messenger is.  So, there is no economy

2  here in proceeding first on standing and later on the merits.

3        That would be my argument at this point, Your

4  Honor.

5        THE COURT:  Very good.  Thank you.

6        I'd hear from any other party that would be in

7  support of the position from Mar-Bow that Mr. Rhodes has just

8  laid out.

9     (No verbal response)

10        THE COURT:  All right.  Mr. Gleeson, did you wish

11  to provide a brief reply?

12        MR. GLEESON:  Very brief, Judge.  Thank you.

13        The argument defeats itself.  Mr. Rhodes's

14  argument defeats itself.  Of course standing is always a

15  threshold issue. It's not inextricably bound up in the

16  merits.  I'm not going to descend into an argument of the

17  merits of the standing issue, but the fact of the matter is

18  it's determined by reference to factors that are completely

19  intrinsic of the merits; the economic interest of the party

20  advancing the claim.

21        So, unless the court has questions I don't see the

22  reason to detain you any further.  But the threshold issue of

23  standing always gets addressed first.  That is why we call it

24  a threshold issue and it need not, especially if the parties

25  with the real economic interest were completely aware of the

1  allegations don't, themselves, bring any claims along these

2  lines; yes, there will be tremendous inefficiency in the path

3  that Mr. Rhodes wants to chart for the courts.

4        So, unless you have any questions, Judge, we will

5  rest on our letter and on the argument I've given you.

6        THE COURT:  Very good.  Does any other party wish

7  to be heard?

8      (No verbal response)

9        THE COURT:  Okay.  All right.  Here is what we're

10  going to do; I am satisfied that the position laid out by

11  McKinsey in their May 1st letter is well-founded.  It seems

12  to me that structurally the posture of the matter that's been

13  brought before me -- just the question of standing is, as Mr.

14  Gleeson noted, always a threshold question, but I think that

15  it is pointed up just procedurally where we are.

16        I make no comment on the merits, obviously, of the

17  standing issue.  I want the opportunity to hear from both

18  sides.  I clearly understand Mr. Rhodes's comment about the

19  court's responsibility in the context of the allegations that

20  have been made.  So, I get that.

21        I am satisfied that the principals of judicial

22  economy and efficiency would be best served by proceeding

23  first to address exclusively the question of standing and

24  then depending upon the court's ruling moving forward to the

25  substance of the motion, itself.

1    The question I have, and given the number of

2 parties, I'm not going to actually poll the parties on the

3 call.  I am going to ask that the parties confer promptly.

4 As I said, I have surveyed, but not studied the briefs as I

5 will in advance of the hearing, but it does seem to me that

6 the parties have briefed the issue of standing.

7    Given that we have now tinkered with or changed

8 the format, and structure and subject matter of the hearing

9 coming up on the 15th I don't know if that would implicate

10 any parties request or interest in filing supplemental

11 submissions that are then, perhaps, more focused or

12 addressing more specifically the question of standing.  So, I

13 want the parties to confer on that.

14    I would like the hearing to continue to go forward

15 on the 15th, but if it does not then I would be prepared to

16 accommodate the parties if there's a request for a different

17 scheduling if, indeed, additional submissions are needed.

18 Again, I see this one as being presented to me.  I think that

19 McKinsey has properly identified a threshold inquiry.  That

20 will be the subject of the court's inquiry at the hearing on

21 the 15th.

22    I would look to be advised by the parties within,

23 perhaps by end of day tomorrow about whether they expect any

24 additional submissions and if so when they would come in and

25 whether or not the hearing on the 15th can hold or do we need

1  to find a new date.  So, again, I'm really at the parties

2  pleasure on that, but, again, given the number of moving

3  parts and the question that's now been answered by the court

4  I think we're best off allowing the parties to confer and

5  then moving forward.

6              Are there any questions?

7              MR. RHODES:  Not from Mar-Bow, Your Honor.

8              MR. GLEESON:  Not from McKinsey either, Judge.

9  Thank you.

10             THE COURT:  Very well.  Thanks very much everyone.

11  I appreciate it.  Again, I appreciate everyone's patience

12  with rescheduling the hearing.  We are adjourned.

13         (Proceedings concluded at 2:30 p.m.)

14

15

16                          CERTIFICATE

17

18  I certify that the foregoing is a correct transcript from the

19  electronic sound recording of the proceedings in the above-

20  entitled matter.

21  /s/Mary Zajaczkowski_____          May 9, 2019

22  Mary Zajaczkowski, CET**D-531

23

24

25