# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SRC LIQUIDATION, LLC,[1] | ) | Case No. 15-10541 (BLS) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 257, 823, 2392, 2404, 2405, 2406, 2417,** |
| | ) | **2427, 2441, 2442** |

## SUPPLEMENTAL BRIEF ON
## *MISSION PRODUCT HOLDINGS, INC. v TEMPNOLOGY, LLC*
## SUBMITTED BY MAR-BOW VALUE PARTNERS, LLC

---

[1] The last four digits of the Debtor's taxpayer identification number are 5540. Inquiries regarding the Debtor should be directed to the GUC Trustee, c/o EisnerAmper LLP, 111 Wood Avenue South, Iselin, NJ 08830-2700 (Attn: Anthony R. Calascibetta).

## I. Introduction

1. On May 20, 2019, the United States Supreme Court entered its decision in the case of *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17-1657, 2019 WL 2166392 (U.S. May 20, 2019). That decision, joined in by eight Justices, clarified that "[i]f there is any chance of money changing hands," then a "live controversy" exists. *Id*. at *4. The Supreme Court stated, "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Id*.

2. On May 29, 2019, this Court advised Mar-Bow Value Partners, LLC ("Mar-Bow"), a creditor in these cases, and McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey"), that it would accept simultaneous briefs limited to a discussion of *Mission Product*.

3. As set forth below, *Mission Product* plainly rejects McKinsey's argument that, if Mar-Bow must demonstrate a "pecuniary interest" in the claims it has asserted in its *Motion for Relief from Orders*[2] (the "Motion") to establish standing, any such pecuniary interest must be "concrete."[3] Indeed, *Mission Product* endorses Mar-Bow's argument that it has set forth a legally justifiable path for a financial recovery in this matter and, therefore, has standing to pursue the Motion.

## II. The *Mission Product* Decision

4. The substantive issue of bankruptcy law that the Supreme Court faced in *Mission Product* was whether, under 11 U.S.C. § 365, the rejection of a trademark licensing contract by the debtor, Tempnology, deprived the licensee, Mission, of its rights to use the trademark. *Id*. at

---

[2] Dkt. 2392, filed Mar. 6, 2019.

[3] Mar-Bow maintains that it does not need to demonstrate a "pecuniary interest" in the claims that it has presented in the Motion to establish standing. Mar-Bow's submission of this supplemental post-hearing brief should not be construed to waive or diminish any arguments made in its Reply Brief (Dkt. 2426, filed May 8, 2019) or at the hearing before the Court on May 15, 2019.

*2. The Court held that it does not. *Id*. But before addressing that substantive bankruptcy issue, however, the Court first considered Tempnology's claim that the case was moot. Tempnology argued the license agreement had expired by its terms and there was nothing the Court could do to restore Mission's ability to use Tempnology's trademarks. *Id.* at *4-5. Mission responded that *if it prevailed*, *it would, on remand*, seek money damages from Tempnology's estate for the profits it lost when, out of respect for the bankruptcy court's order, it refrained from using the trademarks while its license still existed. *Id.*

> 5. The Supreme Court held that the case was not moot. The Court reasoned:
>
> Mission has presented a claim for money damages—essentially lost profits—arising from its inability to use the Coolcore trademarks between the time Tempnology rejected the licensing agreement and its scheduled expiration date. See Reply Brief 22, and n. 8. **Such claims, if at all plausible, ensure a live controversy.** See *Memphis Light, Gas & Water Div. v. Craft*, 436 U. S. 1, 8–9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). **For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents.** See 13C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3, p. 2 (3d ed. 2008) (Wright & Miller) ("[A] case is not moot so long as a claim for monetary relief survives"). **Ultimate recovery on that demand may be uncertain or even unlikely for any number of reasons, in this case as in others. But that is of no moment. If there is any chance of money changing hands, Mission's suit remains live.** See *Chafin* [*v. Chafin*], 568 U. S. [165] at 172, 133 S.Ct. 1017 [(2013)].

*Id*. at *4 (emphasis added).

6. The Court then pointed out that "Tempnology makes a flurry of arguments about why Mission is not entitled to damages[.]" *Id*. Tempnology argued that Mission suffered no injury because it never used the trademarks during the post-rejection period; that Mission's non-use was its own choice, for which damages cannot lie; that Tempnology bore no blame and thus should not have to pay for Mission's injury because all it did was ask the bankruptcy court to make a ruling; and that Mission will be unable to convert any judgment in its favor to hard cash because the bankruptcy estate had already distributed all of its assets. *Id*. at *4-5.

The Court rejected all of these arguments, concluding, "[N]one [of these arguments] so clearly precludes recovery as to make this case moot." *Id.* at *4. "So although this suit 'may not make [Mission] rich,' or even better off, it remains a live controversy—allowing us to proceed." *Id.* at 5 (quoting *Chafin*, 568 U. S. at 176, 133 S.Ct. 1017). The Court held that Mission's claim created a live controversy *even though Mission had not yet even filed a claim in the bankruptcy court for money damages.* Mission first "presented" its claim for money damages *in the Supreme Court* in response to Tempnology's argument that the case was moot.

### III. Because the *Mission Product* Ruling Is Rooted in the Article III Requirement for a "Case" or a "Controversy,' It Applies Both to Mootness and to Standing

7.  It is legally irrelevant that *Mission Product* addressed the issue of "live controversy" in the context of mootness rather than standing. Both mootness and standing considerations have their roots in the Article III limitation on the power of the federal courts to decide a "case" or "controversy." U.S. CONST. art. III, § 2.

8.  As the Supreme Court observed in *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975), "[t]he standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness-whether the occasion for judicial intervention persists." And in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), the Supreme Court reiterated that "[t]he Constitution's case-or-controversy requirement limitation on federal judicial authority, Art. III, Section 2, underpins both our standing and mootness jurisprudence[.]"

9.  Third Circuit case law echoes the Supreme Court's view. *See Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 385 n.11 (3d Cir. 1999) ("[T]he question of standing 'bears close affinity' to the question of mootness" because "[b]oth standing and mootness involve the consideration of whether an Article III case or controversy exists.") (quoting *Warth*,

422 U.S. at 499 n.10); *see also Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013) (explaining that "'[c]ourts enforce the case-or-controversy requirement through several justiciability doctrines,' that are related 'includ[ing] standing, ripeness, [and] mootness'") (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)).

10. It is clear, therefore, that the Supreme Court's holding in *Mission Product* on what constitutes a "case" or "controversy" under Article III applies here to Mar-Bow's Motion.

## IV. Applying *Mission Product* to the Dispute in These Cases

11. Mar-Bow's Motion alleged that McKinsey RTS, an estate fiduciary, committed multiple frauds on this Court that warrant this Court's remedies in order to preserve the integrity of its process. Based on *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946), and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), Mar-Bow asserts (1) that this Court should impose a substantial monetary sanction against McKinsey for its frauds on the Court, (2) that the distribution of any monetary sanctions that the Court imposes on McKinsey RTS for its abuses of the judicial process is entirely in the Court's discretion, and (3) that because McKinsey RTS's frauds primarily harmed unsecured creditors (like Mar-Bow's transferors), the Court should exercise its discretion to order that all monetary sanctions be distributed broadly to those unsecured creditors on a *pro-rata* basis, including Mar-Bow.

12. Pursuant to the standard articulated and applied in *Mission Product* for a "live controversy" under Article III, Mar-Bow's monetary claim for sanctions is more than adequate for this Court to find that the dispute between McKinsey and Mar-Bow is a "live controversy." Mar-Bow's claim for sanctions is *at least* a "plausible claim," sufficient therefore under *Mission Product* to "ensure a live controversy." *Mission Prod.*, at *4. It is of "no moment" that Mar-Bow's ultimate recovery on its demand may be uncertain or even unlikely. *Id.* Because "there is

4

[a] chance of money changing hands," a live controversy exists here. *Id.* And none of McKinsey's arguments on the merits "so clearly precludes recovery as to make this case moot." *Id.* Finally, even though Mar-Bow's Motion "may not make [it] rich, or even better off, it remains a live controversy—allowing [this Court] to proceed." *Id.* at *5.

**V.    Conclusion**

13. If this Court determines that a pecuniary interest is required for Mar-Bow to proceed on its Motion, then *Mission Product* confirms that Mar-Bow does have standing. Like the creditor in *Mission Product*, Mar-Bow has made a claim for monetary relief for sanctions. And, as in *Mission Product*, Mar-Bow's claim is a "plausible claim" and "there is [a] chance of money changing hands." *Id.* at *4.

14. Indeed, Mar-Bow's argument for standing is even stronger than the creditor's argument for standing in *Mission Product*. The creditor in *Mission Product* had neither asserted a claim for monetary relief in the bankruptcy court nor articulated any specific legal theory of recovery. Mar-Bow has done both.

15. As the Supreme Court stated in *Mission Product*, "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Id.*

WHEREFORE, under the Supreme Court's decision in *Mission Product*, Mar-Bow has standing to assert its claims of fraud on the Court against McKinsey.

Dated: June 7, 2019
      Wilmington, Delaware

Respectfully submitted,

Steven Rhodes, Esq.
STEVEN RHODES CONSULTING, LLC
1610 Arborview
Ann Arbor, Michigan 48103
Telephone:    (734) 646-7406
Facsimile:    (734) 665-6915
Email:    rhodessw@comcast.net

  - and -

Sheldon S. Toll, Esq.
LAW OFFICES OF SHELDON S. TOLL, PLLC
29580 Northwest Highway
Suite 1000
Southfield, Michigan 48034
Telephone:    (248) 351-5480
Facsimile:    (248) 358-2740
Email:    sst@lawtoll.com

  - and -

Sean O'Shea, Esq.
Michael Petrella, Esq.
Amanda Devereux, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
Telephone:    (212) 504-5700
Facsimile:    (212) 504-6666
Email:    sean.oshea@cwt.com
      michael.petrella@cwt.com
      amanda.devereux@cwt.com

*Lead Counsel for Mar-Bow Value Partners, LLC*

  - and -

/s/ Marc R. Abrams
Marc R. Abrams (No. 955)
Stephen B. Gerald (No. 5857)
WHITEFORD, TAYLOR & PRESTON LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Telephone: (302) 357-3282
Facsimile: (302) 357-3270
Email: mabrams@wtplaw.com
sgerald@wtplaw.com

*Local Counsel for Mar-Bow Value Partners, LLC*

10083334