**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>SRC Liquidation LLC, *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 15-10541 (BLS)<br>Jointly Administered<br><br>Re: Docket No. 2392 |

Marc Abrams, Esq.
Whiteford, Taylor & Preston LLC
405 N. King Street
Wilmington, DE 19801

Steven Rhodes, Esq.
Steven Rhodes Consulting, LLC
1610 Arborview Blvd.
Anne Arbor, MI 48103

Sheldon Toll, Esq.
Law Offices of Sheldon Toll, PLLC
29580 Northwest Highway, Ste. 1000
Southfield, MI 48034

*Attorneys for Mar-Bow Value Partners, LLC*

William Bowden, Esq.
Ashby & Geddes, P.A.
500 Delaware Ave., 8th Floor
Wilmington, DE 19801

Faith Gay, Esq.
Selendy & Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

John Gleeson, Esq.
Debevoise & Plimpton LLP
919 Third Ave.
New York, NY 10022

*Attorneys for McKinsey Recovery & Transformation Services U.S., LLC*

**OPINION**[1]

The matter before the Court is a Motion filed by Mar-Bow Value Partners, LLC ("Mar-Bow") for Relief from Orders previously entered by this Court under Fed. R. Civ. P. 60(d)(3) (made applicable to this proceeding through Fed. R. Bankr. P. 9024). The heart of the issue is the retention and appointment of McKinsey Recovery & Transformation Services U.S., LLC ("RTS") as turnaround professionals for the Debtors. Mar-Bow alleges RTS failed to disclose its affiliations with a variety of entities that, in one way or another, hold or held interests that are averse to the Debtors. Mar-Bow alleges that the failure to disclose was so egregious that RTS has committed fraud on the Court and that an examiner should be appointed to investigate the extent of RTS' conflicts and misstatements. For the reasons that follow, this Court will deny Mar-Bow's Motion.

The Court does not write on a clean slate. As discussed at length below, the dispute here has been brought and litigated extensively in front of at least three other bankruptcy courts. Similar claims involving the same parties have travelled up through the Eastern District of Virginia, to the 4th Circuit, and then were denied review by the Supreme Court. These parties have also battled in the bankruptcy courts in the Southern Districts of Texas and New York. In each instance these parties have argued over a substantially identical set of facts. This Court therefore has the benefit of the record in those proceedings and the wisdom imparted by those able judges.

[1] Pursuant to Fed. R. Civ. P. 52(a)(3) (made applicable through Fed. R. Bankr. P. 7052), this Court does not make findings of fact or conclusions of law for purposes of a motion filed under Rule 9024.

## I. BACKGROUND

The Standard Register Company and its affiliates (collectively, the "Debtors") filed petitions for Chapter 11 relief on March 12, 2015. Shortly thereafter, the Debtors filed an application to employ RTS as turnaround professionals.[2] As is typical with such applications, RTS filed a Declaration that contained a description of RTS' prepetition connections to the Debtors (the "Declaration").[3] The Declaration affirmatively stated that "after reasonable inquiry," RTS had determined that it "[did] not have any connection with the Debtors or their affiliates, their creditors, or any other Interested Parties in these cases."[4] No one objected to the application and the Court subsequently granted it.[5] Over the course of their reorganization, the Debtors sold most of their assets and ultimately reorganized into SRC Liquidation LLC.[6] The Debtors' remaining assets were largely divided into separate trusts for the secured and general unsecured creditors.

The issues raised by Mar-Bow, however, have little to do with the substance of the Debtors' reorganization. Mar-Bow's interest in this Bankruptcy stems from a general unsecured claim for $7,219 it bought from another creditor in 2016—long after the Plan had been confirmed and gone effective. Prior to purchasing that claim, Mar-Bow had no interest in the Debtors or this proceeding whatsoever. Mar-Bow's grievances revolve around RTS and other entities in its corporate family:

---

[2] Docket No. 87.
[3] Docket No. 87-3.
[4] *Id.*
[5] Docket No. 257.
[6] Docket No. 1316 (the "Plan").

namely, RTS' parent McKinsey and Co, Inc. ("McKinsey") and one of McKinsey's other subsidiaries, the McKinsey Investment Office (the "MIO"). Mar-Bow alleges that RTS failed to disclose information relating to McKinsey's clients and the MIO's investments. These relationships, Mar-Bow posits, extend to entities that themselves have interests averse to the Debtors—mostly as Debtors' creditors, but also as its insurers and landlords (the "Interested Parties"). Because RTS did not disclose any of McKinsey's or the MIO's relationships with the Interested Parties, Mar-Bow alleges RTS has committed fraud upon the Court and that RTS must disgorge any fees received for this engagement and be investigated for further misdeeds.

Looking at this dispute in isolation, Mar-Bow's enthusiasm in pursuing RTS seems out of sync with its economic interests. Should Mar-Bow succeed, it would receive a relatively low payout—if any—in light of the small value of its claim and the fact that it would share the pro rata distribution with other general unsecured creditors.

But Mar-Bow is obviously interested in something greater. For its part, Mar-Bow has positioned itself as a defender of public confidence in the bankruptcy system, arguing that strict enforcement of the Rule 2014 disclosure requirements is essential "to ensure the integrity of the bankruptcy process."[7] Mar-Bow has also attempted to vacate the appointment of RTS in front of bankruptcy courts in New

[7] Mar-Bow's Motion for Relief from Orders [Dkt. No. 2392] (quoting *In re Watson*, 94 B.R. 111, 117 (Bankr. S. D. Ohio 1988)).

York, Virginia, and Texas.[8] Significantly, in *Alpha Natural Resources* Mar-Bow initially objected to RTS' Rule 2014 disclosures regarding its connections to the Debtors and its fee applications. The bankruptcy court overruled Mar-Bow's objections. On appeal the district court affirmed and held that Mar-Bow lacked appellate standing because it had "no pecuniary interest in the outcome of [the] appeals."[9] The 4th Circuit then affirmed,[10] and the Supreme Court denied *certiorari*.[11] Undeterred, Mar-Bow brought motions to reconsider the retention of RTS to the bankruptcy courts in New York and Virginia, requesting substantially the same relief they seek here. Those courts have denied Mar-Bow's motions for lack of standing and declined to order *sua sponte* the appointment of an independent examiner.[12]

RTS has also sparred over its disclosures with the United States Trustee (the "UST"). In various other fora, the UST filed motions to compel RTS to make additional disclosures. Following mediation, RTS and the UST proposed an agreed order to the bankruptcy courts in New York, Virginia, and Texas. On April 16, 2019, those courts held a joint hearing and ultimately approved a comprehensive agreement between RTS and the UST.[13] The settlement contemplated that the UST

---

[8] *See In re SunEdison, Inc.*, Case No. 16-10992 (Bankr. S.D.N.Y.); *In re Alpha Natural Resources, Inc.*, Case Nos. 15-33869 and 19-00302 (Bankr. E.D. Va.); and *In re Westmoreland Coal Co.*, Case No. 18-35672 (Bankr. S.D. Tex.).

[9] *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, No. 3:16CV799, 2017 WL 4414155, at *18 (E.D. Va. Sept. 30, 2017).

[10] *In re Alpha Nat. Res., Inc.*, 736 F. App'x 412 (4th Cir. 2018).

[11] *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S. LLC*, No. 18-974, 2019 WL 342275 (U.S. Apr. 22, 2019).

[12] *In re Old ANR, LLC*, No. 19-00302-KRH, 2019 WL 2179717 (Bankr. E.D. Va. May 17, 2019); *In re SunEdison, Inc.*, No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019).

[13] Case No. 19-00302 (E.D. Va.), Docket No. 43.

would withdraw its objections and otherwise settle its litigation against RTS for the alleged failure to disclose in a number of cases in which RTS had acted as turnaround professionals, including this one.[14] Though it has been very active in those cases, Mar-Bow was not a party to that agreement.

After a long journey, RTS and Mar-Bow have now arrived in this Court. As noted, Mar-Bow filed the Motion [Docket No. 2392] (the "Motion") and RTS objected [Docket No. 2405]. RTS then filed a letter requesting the Court bifurcate the hearing on the Motion to first address the threshold issue of Mar-Bow's standing. Mar-Bow opposed that request but, following a telephonic hearing, the Court determined that bifurcating the proceedings would best serve the interests of judicial economy and efficiency. The Court thereafter conducted oral argument on the limited question of whether Mar-Bow has standing to seek relief contemplated in the Motion, and took the matter under advisement. Subsequently, the parties requested the opportunity to file additional briefs in light of the Supreme Court's ruling in *Mission Product Holdings, Inc. v. Tempnology, LLC*.[15] The Court granted that request and has reviewed the briefs that were subsequently submitted by counsel.[16] This matter has been fully briefed and argued, and is now ripe for disposition.

---

[14] *Id.*
[15] 139 S. Ct. 1652 (2019).
[16] Dkt. Nos. 2443 and 2444.

## II. THE PARTIES' POSITIONS

RTS' challenge to Mar-Bow's standing has three prongs. First, it argues that if there is a claim against RTS for sanctions, it belongs to the secured creditors pursuant to the terms of the confirmed Plan, and not to Mar-Bow. Second, it alleges that the Plan prohibited unsecured creditors from selling their claims. Because Mar-Bow bought the claim after the Plan went effective, RTS alleges it holds neither a valid claim nor a pecuniary interest in this proceeding. Finally, RTS argues the facts of this case do not justify an exercise of the Court's inherent authority to order an examination. This dispute is about the scope of Rule 2014, RTS posits, not fraud on the Court.

Mar-Bow relies as a threshold matter on § 1109, which grants the "right to be heard on any issue" to "any party in interest." As a claim holder asserting an interest in potential proceeds from sanctions and disgorgement, Mar-Bow posits that it has standing under § 1109 and Article III. Mar-Bow also argues that this Court is not bound by the Plan in addressing its request for relief: should the Court decide to impose sanctions upon RTS, Mar-Bow argues the Court would have broad latitude to determine how to distribute those proceeds irrespective of the terms of the confirmed Plan. Because Mar-Bow could, in the Court's discretion, receive some of those proceeds, it argues that is has a pecuniary interest in this matter. In the alternative and if the Court determines Mar-Bow does not have standing, it argues that this Court should nevertheless exercise its inherent authority to order an examiner to investigate its allegations of fraud upon the Court.

## III. JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This dispute relates to orders previously entered in this Chapter 11 proceeding that appointed RTS as turnaround professionals. This Court "plainly [has] jurisdiction to interpret and enforce [its] own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).[17]

## IV. ANALYSIS

As noted, Mar-Bow first argues that it has standing under both Bankruptcy Code § 1109 and Article III. In the alternative, it contends this Court has an independent responsibility to investigate RTS' alleged fraud. These arguments are addressed in turn.

### A. STANDING

There are two distinct, but similar, grounds for Mar-Bow to assert standing in this matter: 11 U.S.C. § 1109 and Article III. Under § 1109, any "party in interest . . . may raise and may appear and be heard on any issue in a case." The term "party in interest" is not defined by the Code, but the Third Circuit has defined it as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re Global Indus. Tech., Inc.,* 645 F.3d 201, 210 (3d. Cir. 2011) (quoting *In re James Assocs.,* 965 F.2d 160, 169 (7th Cir.1992)).

---

[17] In its Motion, Mar-Bow consented to the authority of this Court to enter a final order on this matter. RTS' Objection did not contain such a statement. Pursuant to Local Rule 9013-1(h), RTS has therefore waived the right to contest this Court's authority to enter a final order.

Article III, meanwhile, demands that Mar-Bow demonstrate (1) it has suffered a concrete injury that is actual or imminent, (2) there is a causal connection between the alleged injury and the challenged conduct, and (3) a favorable decision would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Some courts have disagreed over whether the standing analyses under Art. III and § 1109 are identical,[18] but the Third Circuit has provided clear guidance on this topic and has ruled that "Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Global Indus. Tech.,* 645 F.3d at 212. Consistent with the Third Circuit's treatment of the issue, this Court will consider the analyses under Art. III and § 1109 as essentially identical.

*1. Injury*

Pursuant to Supreme Court and Third Circuit precedent, Mar-Bow has standing in this matter only if it has a legally protected interest that has been injured. *Id*. Mar-Bow argues it has such an interest because, should this Court impose sanctions on RTS, the Court might distribute those proceeds to general unsecured creditors, including Mar-Bow. RTS replies that Mar-Bow does not have standing because (1) all general unsecured claims belong to the General Unsecured Creditor Trust ("GUC Trust"), not individual creditors, (2) Mar-Bow's purchase of the claim was invalid, and (3) per the Plan, any distribution of sanction proceeds would flow only to the Secured Creditor Trust ("SC Trust").

---

[18] *See In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 855 (Bankr. E.D. Va. 2016).

The Court agrees that Mar-Bow does not have a legally protected interest in this matter and therefore holds that it lacks standing to assert the Motion. As noted, the confirmed Plan divided the Debtors' assets between trusts for the secured and unsecured creditors. The Plan described twelve specific categories of assets that *did not* vest in the SC Trust.[19] Other than those enumerated categories, all of the Debtors' assets went to the SC Trust.[20] A claim for disgorgement or sanctions does not fit into one of those twelve categories.[21] Therefore, if the Debtors had a claim for sanctions against RTS, the confirmed Plan conferred that claim upon the SC Trust and Mar-Bow, as a general unsecured creditor, has no interest in potential proceeds from sanctions and disgorgement.

In addition, Mar-Bow's alleged interest in the potential sanction proceeds is too hypothetical to satisfy the *Lujan* standing test. To receive anything, Mar-Bow would need to succeed in proving RTS committed fraud on the Court, that sanctions and disgorgement are the appropriate remedy, and then convince this Court to take the extraordinary step of disregarding the confirmed Plan and distributing those proceeds to unsecured creditors. Such an attenuated path to recovery on its claim does not establish an "actual or imminent injury." *Lujan,* 504 U.S. at 560.

---

[19] As defined by the Plan, those assets are (1) the Rabbi Trust Proceeds, (2) the Wind-Down Amount other than the Wind-Down Settlement Payment, (3) the Wind-Down Funds Accounts, (4) the Avoidance Actions, (5) the GUC Trust Causes of Action, (6) the D&O Insurance and D&O Policies, (7) the Taylor Utility Deposits, (8) those GUC Trust Assets transferred to the GUC Trust in connection with the closing of the Taylor Sale under the Committee Settlement, (9) the obligation of Taylor to pay the Taylor Payment Receivable, (10) the obligation of the GUC Trust to repay the GUC Trust Seed Funding Amount, (11) Terre Haute (as defined in the Wind-Down Settlement), and (12) the Equity Interest in any of the Debtors or Liquidating Debtors. *See* Plan, Ex. A at 10.

[20] Plan at 8.

[21] To the extent that a general unsecured creditor could assert a claim to an Avoidance Action against RTS, it would be time-barred under § 546(a).

Mar-Bow's appeal to the Supreme Court's holding in *Tempnology* likewise does not save its claim. In *Tempnology*, the Supreme Court addressed whether the rejection of a trademark license under § 365 deprived the licensee of the right to use the trademark. The plaintiff in *Tempnology* argued the relevant trademark had expired and therefore the § 365 issue was moot. The Supreme Court rejected that argument and reasoned "[i]f there is any chance of money changing hands, [the defendant's] suit remains live."[22] Because Mar-Bow believes money may exchange hands here, it argues this issue is not moot.

The Court does not reach the question of whether this issue is moot under *Tempnology* because it does not need to. The issue here is standing, not mootness. Up to the moment the Supreme Court issued *Tempnology*, none of the parties had raised mootness. For purposes of this Opinion, the Court assumes there may be a live controversy relating to RTS' disclosures and, indeed, the objections raised by the UST in front of the bankruptcy courts in New York, Virginia, and Texas would appear to confirm that assumption. Even so, the question remains whether Mar-Bow's interests have been injured. They have not. The Supreme Court has cautioned against "confus[ing] mootness with standing." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This Court will heed that advice.

In addition, the Court does not draw a conclusion on whether Mar-Bow's purchase of the claim was valid. The Court notes, however, that the case cited by

---

[22] *Tempnology,* 139 S. Ct. at 1660.

RTS is inapposite. RTS argues that the GUC Trust restricted general unsecured creditors from assigning their claims to other entities. RTS is correct that a contract *may* restrict claims trading, but to do so it must contain "express language that any subsequent assignment will be void or invalid." *In re Woodbridge Grp. of Companies, LLC*, 590 B.R. 99, 103 (Bankr. D. Del. 2018) (internal citations omitted). If a contract does not contain such express language, then a claim assignment is "valid and enforceable but generates a breach of contract action that the non-assigning party may bring against the party assigning its interest." *Id*. The GUC Trust provides the claims are "not transferrable," but it does not appear to contain express language voiding claims that are subsequently assigned. Therefore, Mar-Bow's purchase of the claim may have generated a breach of contract action against the original claimholder. But under *Woodbridge*, Mar-Bow would likely still hold a valid claim.

*2. Redressability*

Even if Mar-Bow could articulate some tangible injury caused by RTS' alleged fraud, its requested relief would not redress its injury. To satisfy the redressability element of Article III standing, Mar-Bow must show a substantial likelihood that the requested relief will prevent or redress its claimed injury. *Pub. Employees for Envtl. Responsibility v. U.S. Dep't of the Interior*, 832 F. Supp. 2d 5, 19 (D.D.C. 2011). Mar-Bow bears the burden of showing the redressability of its injury is "likely as opposed to speculative." *Id.* (internal citations omitted).

Again, Mar-Bow's claim for injury derives from a general unsecured claim for about $7,000. To redress that claim, it seeks a full investigation into RTS' conduct and interests, which Mar-Bow believes may result in sanctions, which could be paid to the general unsecured creditors, which may flow to Mar-Bow.

Mar-Bow's claim to disgorgement or sanction proceeds is entirely speculative. Mar-Bow would need to jump several lofty hurdles to even approach the chance to receive sanction proceeds. The requested relief—an investigation—would be the first step in a long journey. Assuming that Mar-Bow somehow did prove that an investigation and sanctions are appropriate, the likely result would be a payment to secured creditors for the reasons described above.

Again, Mar-Bow speculates that this Court could bypass secured creditors and direct the payment to unsecured creditors. But it has not offered any reason for why the Court would do that. The Court cannot conceive of what circumstances would compel it to re-arrange the Plan's payment scheme in this case, particularly when the secured creditors appear to also be innocent bystanders to RTS' alleged failure to disclose.

The Court's ruling is further bolstered by the UST's decision to settle its claims against RTS. As noted, the UST had raised the disclosure issue in various other forums and ultimately settled its claims against RTS in a number of cases, *including this one*. While this Court certainly enjoys the power to order an investigation where circumstances warrant, the UST has already raised and resolved the issue. The Court also notes that the settlement between the UST and

RTS contained a carve-out for fraud and the UST remains free to pursue those claims.[23] If there are genuine allegations of fraud against RTS, then the UST—as the congressionally appointed bankruptcy "watchdog"—is the appropriate entity to evaluate and bring those claims in the first instance.[24]

B. THE COURT'S EQUITABLE POWER TO INVESTIGATE FRAUD

Mar-Bow has also requested that this Court exercise its equitable powers under § 105(a) and appoint an independent examiner. Mar-Bow made similar requests in front of the courts in New York and Virginia, which both declined the invitation. For similar reasons and for those stated above, this Court will also decline to exercise its equitable authority to appoint an examiner.

## V. CONCLUSION

For the reasons stated above, Mar-Bow's Motion is denied. The parties are requested to confer and submit a proposed form of order consistent with this Opinion with fourteen days of the date hereof.

Dated: September 12, 2019
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge

[23] The legislative history of the Code provides that the UST will oversee the administration of bankruptcy cases and act as "watchdogs ... prevent[ing] fraud, dishonesty, and overreaching in the bankruptcy arena." H.Rep. No. 989, 95th Cong., 2d Sess. 88, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6049.

[24] The Court's conclusion today is further informed by the proceedings in the litigation brought by Mar-Bow's owner Jay Alix against McKinsey in the Southern District of New York. *See* Case No. 18-cv-4141 (S.D.N.Y.). Consistent with the courts that have addressed Mar-Bow's allegations against RTS, that court found that Mr. Alix had failed to adequately allege that he had suffered a harm as a result of McKinsey's alleged failure to disclose. *JAY ALIX, Plaintiff, v. MCKINSEY & CO., INC., et al., Defendants. Additional Party Names: McKinsey & Co. Inc., McKinsey Holdings, Inc., McKinsey Recovery & Transformation Servs. U.S., LLC*, No. 18-CV-4141 (JMF), 2019 WL 3889855, at *5 (S.D.N.Y. Aug. 19, 2019).